**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; ELSEVIER INC.; ELSEVIER B.V.; and MCGRAW HILL LLC,<br><br>          *Plaintiffs*,<br><br>v.<br><br>GOOGLE LLC,<br><br>          *Defendant.* | Case No. 1:24-cv-04274-JLR-BCM<br><br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GOOGLE LLC'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND ......................................................................................................................2

    I.      Factual Background ...............................................................................................2

    II.     Procedural History ................................................................................................5

LEGAL STANDARD..............................................................................................................6

ARGUMENT ..........................................................................................................................6

    I.      Plaintiffs Fail To Plead A Vicarious Copyright Infringement Claim (Count II).........................................................................................................................6

          A.      Plaintiffs Fail To Plead That Google Has The Right To Supervise Or Control The Alleged Infringement ........................................................7

          B.      Plaintiffs Fail To Plead That Google Obtains A Financial Benefit From The Alleged Infringement ................................................................10

    II.     Plaintiffs Fail To Plead A Trademark Infringement Claim Under The Lanham Act (Count III) .......................................................................................15

    III.    Plaintiffs Fail To Plead A Deceptive Business Practices Claim Under New York Law (Count IV).........................................................................................19

          A.      Plaintiffs' Section 349 Claim Is Preempted................................................19

          B.      Plaintiffs' Section 349 Allegations Fail On The Merits ............................21

CONCLUSION.......................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arista Recs. LLC v. Lime Group, LLC*,
  784 F. Supp. 2d 398 (S.D.N.Y. 2011)......................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................6, 13, 14

*Atari Interactive, Inc. v. Printify, Inc.*,
  2024 WL 476493 (S.D.N.Y. Jan. 25, 2024) ...............................................16

*Azby Brokerage, Inc. v. Allstate Ins. Co.*,
  681 F. Supp. 1084 (S.D.N.Y. 1988)..............................................................23

*Canada Hockey LLC v. Texas A&M Univ. Athletic Dep't*,
  484 F. Supp. 3d 448 (S.D. Tex. 2020) ..........................................................9

*Chanel, Inc. v. RealReal, Inc.*,
  449 F. Supp. 3d 422 (S.D.N.Y. 2020).........................................................17

*Colpitts v. Blue Diamond Growers*,
  527 F. Supp. 3d 562 (S.D.N.Y. 2021)...................................................21, 22

*Concord Music Grp., Inc. v. X Corp.*,
  2024 WL 945325 (M.D. Tenn. Mar. 5, 2024) ...............................................9

*Ellison v. Robertson*,
  357 F.3d 1072 (9th Cir. 2004) .....................................................................11

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
  844 F.3d 79 (2d Cir. 2016)............................................................................6

*Freeplay Music, Inc. v. Cox Radio, Inc.*,
  409 F. Supp. 2d 259 (S.D.N.Y. 2005).........................................................19

*GMA Accessories, Inc. v. BOP, LLC*,
  765 F. Supp. 2d 457 (S.D.N.Y. 2011).........................................................16

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
  277 F. Supp. 2d 269 (S.D.N.Y. 2003).........................................................23

*Jackpocket, Inc. v. Lottomatrix NY LLC*,
  645 F. Supp. 3d 185 (S.D.N.Y. 2022).........................................................20

*Kaplan Grp. Invs. LLC v. A.S.A.P. Logistics Ltd.,*
    694 F. Supp. 3d 374 (S.D.N.Y. 2023)...................................................................14

*Kelly-Brown v. Winfrey,*
    717 F.3d 295 (2d Cir. 2013).......................................................................................18

*Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC,*
    2014 WL 3368893 (N.D. Ill. July 8, 2014)..............................................................9

*Martin v. New Am. Cinema Grp., Inc.,*
    2023 WL 2024672 (S.D.N.Y. Feb. 15, 2023) (Rochon, J.) ............................21, 23

*Merck Eprova AG v. Brookstone Pharms., LLC,*
    920 F. Supp. 2d 404 (S.D.N.Y. 2013).....................................................................23

*Music Force, LLC v. Sony Music Holdings Inc.,*
    2020 WL 5733258 (C.D. Cal. Aug. 12, 2020)........................................................9

*Noto v. 22nd Century Grp., Inc.,*
    35 F.4th 95 (2d Cir. 2022) ........................................................................................6

*Ohio State Univ. v. Redbubble, Inc.,*
    989 F.3d 435 (6th Cir. 2021) ...................................................................................17

*Pena v. Gen. Motors Fin. Co.,*
    2022 WL 889434 (S.D.N.Y. Mar. 25, 2022) ..........................................................14

*Perfect 10, Inc. v. Giganews, Inc.,*
    847 F.3d 657 (9th Cir. 2017) ...................................................................................14

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,*
    494 F.3d 788 (9th Cir. 2007) ........................................................................9, 10, 18

*Perfect 10 v. Amazon.com, Inc.,*
    508 F.3d 1146 (9th Cir. 2007) ..............................................................................8, 9

*Peter F. Gaito Arch., LLC v. Simone Dev. Corp.,*
    602 F.3d 57 (2d Cir. 2010).........................................................................................6

*Preira v. Bancorp Bank,*
    885 F. Supp. 2d 672 (S.D.N.Y. 2012).....................................................................22

*Routt v. Amazon.com, Inc.,*
    584 F. App'x 713 (9th Cir. 2014) ..........................................................................8, 9

*Saint-Amour v. Richmond Org., Inc.,*
    388 F. Supp. 3d 277 (S.D.N.Y. 2019).....................................................................20

*Securitron Magnalock Corp. v. Schnabolk*,
    65 F.3d 256 (2d Cir. 1995)................................................................................23

*SmileDirectClub, LLC v. Jacqueline I. Fulop, D.M.D., P.C.*,
    2020 WL 1322838 (S.D.N.Y. Mar. 20, 2020) ..........................................23

*Sony Music Ent. v. Cox Commc'ns, Inc.*,
    93 F.4th 222 (4th Cir. 2024) ....................................................11, 12, 13, 15

*State Street Glob. Advisors Tr. Co. v. Visbal*,
    677 F. Supp. 3d 209 (S.D.N.Y. 2023)......................................................13

*Tianhai Lace Co., Ltd. v. ASOS, PLC*,
    2023 WL 3479804 (S.D.N.Y. May 16, 2023) ..........................................20

*Tiffany (NJ) Inc. v. eBay Inc.*,
    600 F.3d 93 (2d Cir. 2010)...............................................................17, 18

*Vans, Inc. v. MSCHF Prod. Studio, Inc.*,
    88 F.4th 125 (2d Cir. 2023) ....................................................................15

*White v. DistroKid*,
    2024 WL 3195471 (S.D.N.Y. June 24, 2024) ...................................11, 13

*Wolk v. Kodak Imaging Net., Inc.*,
    840 F. Supp. 2d 724 (S.D.N.Y. 2012)......................................................11

## STATUTES

15 U.S.C. § 1114(1)(b) ..........................................................................15, 16

17 U.S.C. § 512(c) ........................................................................................4

Copyright Act...........................................................................2, 19, 20

Digital Millennium Copyright Act...............................................1, 4, 5

Lanham Act § 32 ..................................................................... *passim*

New York General Business Law § 349 ..................................... *passim*

## OTHER AUTHORITIES

*About Google: Products*, Google, https://about.google/intl/ALL_us/products/ (last visited Sept.
    30, 2024) ...................................................................................................2

*How Google Merchant Center Works*, Google for Retail, https://www.google.com/retail/how-
    google-merchant-center-works/ (last visited Sept. 30, 2024) ...................................3

*How Search Works*, Google, https://www.google.com/search/howsearchworks/how-search-
        works/ (last visited Sept. 30, 2024)..............................................................................2

*Shopping Ads*, Google Merchant Help Center (May 2021),
        https://support.google.com/merchants/answer/10524536?hl=en (last visited Sept. 30, 2024)..5

6 William F. Patry, *Patry on Copyright* § 21:67 (Sept. 2024 update) ...........................................7

## PRELIMINARY STATEMENT

Google provides a platform called Google Shopping, through which hundreds of thousands of third-party merchants advertise millions of products to Google's billions of search engine users. Those products are not sold through Google's platform, and Google does not share in revenues from such sales. Instead, when users click on Google Shopping advertisements, they are redirected to the websites of the third-party merchants, where the users can choose whether or not to buy a product.

Plaintiffs are academic publishers, with asserted copyrights in textbooks and other related educational publications. The heart of their case is a claim that Google contributorily infringed Plaintiffs' copyrights by not doing enough to stop ads for infringing works from appearing in Google Shopping search results. Google will prevail on the merits of that claim because, among other things, Google has adopted industry-leading measures to combat advertisements for infringing products on its platform, well beyond the requirements of the safe harbors provided by the Digital Millennium Copyright Act ("DMCA"). But this motion is not about Plaintiffs' contributory copyright infringement claim (Count I).

Instead, this motion addresses three ancillary claims, premised on the same alleged underlying conduct, which Plaintiffs have tacked on as part of a kitchen-sink pleading strategy: (1) vicarious liability for copyright infringement (Count II), (2) trademark infringement (Count III), and (3) deceptive business practices under New York law (Count IV). Each of these claims fails as a matter of law, even taking the facts as alleged in the Complaint as true.

*First*, the vicarious infringement claim fails for two separate and independent reasons: Plaintiffs' allegations establish that (a) Google lacks the right or ability to supervise the alleged infringing activities, which occur on third-party websites, and (b) Google does not derive a direct financial benefit from those alleged infringing activities.

1

*Second*, the trademark infringement claim fails because there are no well-pled allegations suggesting that Google, rather than third-party merchants, applied Plaintiffs' marks in the ads at issue.

And *third*, the state law unlawful business practices claim fails because it is preempted by the Copyright Act and the Lanham Act, and even if not preempted, fails because Plaintiffs have not pled any viable unlawful business practices.

Because Plaintiffs cannot cure the defects in these claims, the Court should dismiss them with prejudice, streamlining the case from the start, and enabling the Court and the parties to focus time, energy, and resources on the issues that matter. Google therefore respectfully requests that the Court grant this motion and dismiss Counts II, III, and IV of the Complaint with prejudice.

## BACKGROUND

## I.    FACTUAL BACKGROUND

Plaintiffs describe Google as the world's most popular search engine. *See* First Am. Compl. ("FAC") (Dkt. No. 38) ¶ 3. Every day, users who want to find information on the internet turn to Google for billions of searches. *Id.* ¶ 36. Although Google is perhaps most associated in the popular imagination with its Search business, the company offers a wide variety of other products and business lines too. *See id.* ¶ 35. These range from email service (Gmail), to electronic devices (Chromebook and Pixel), to online shopping (Shopping), to video sharing and streaming (YouTube), and many more. *See generally About Google: Products*, Google, https://about.google/intl/ALL_us/products/ (last visited Sept. 30, 2024).

Google Search indexes hundreds of billions of webpages and other information. FAC ¶ 36. In response to a user's search, Google automatically sorts through that Search index to find the most relevant material. *See id.*; *see also How Search Works*, Google, https://www.google.com/search/howsearchworks/how-search-works/ (last visited Sept. 30, 2024).

Case 1:24-cv-04274-JLR    Document 44    Filed 09/30/24    Page 9 of 32

Depending on the user's search, results may also include ads from Google's Shopping platform. FAC ¶ 37. Through the Shopping platform, sellers can choose to feature their products for sale on Google. To appear in Google Shopping ads, sellers and businesses (collectively, "merchants") must create a "Merchant Center" account and an "Ads" account (and accept Google's related terms of service). *Id.* ¶ 73. Once a merchant has created a Merchant Center account, she can do things like add information about her business, add products from her website, and link to her e-commerce store. *See How Google Merchant Center Works*, Google for Retail, https://www.google.com/retail/how-google-merchant-center-works/ (last visited Sept. 30, 2024).

Through Google Shopping ads, a merchant can pay to promote her products through paid product advertising, which allows a merchant's products listed through Merchant Center to appear more prominently in Shopping search results in response to a user's search. FAC ¶ 37. For these paid advertisements, Google receives payment from merchants based on the number of times users click on the merchant's sponsored ads, regardless of whether a purchase is ultimately made. *Id.* ¶¶ 37, 95. Merchants control how much they spend on paid Shopping ads, by specifying how much they are willing to pay per click on their ad. *Id.* ¶ 44.

All Shopping product data comes exclusively from merchants. *Id.* ¶ 41. In other words, any product information used to populate Google Shopping ads is provided only by merchants themselves—not Google. *See id.* And when a user clicks on a merchant's ad, "[Google] send[s] [the user] to the merchant's website to buy [the advertised product]." *Id.* ¶ 39. Thus, any eventual product sale occurs on the merchant's website—not Google's. *Id.* ¶ 53.

As noted above, merchants must accept Google's terms of service when creating a Merchant Center account. Consistent with those terms, Google can and does remove paid Shopping ads that violate its policies, as well as terminate merchants who promote infringing

content from Google's platforms.  *See id.* ¶¶ 70–72, 76.  Moreover, consistent with the DMCA, Google maintains a notice-and-takedown process for removing Google Shopping ads for products that infringe intellectual property rights.  *See* 17 U.S.C. § 512(c); *see also, e.g.*, FAC ¶¶ 14, 49, 99 (referencing Plaintiffs' "infringement notices").

Plaintiffs claim that merchants selling infringing digital copies of Plaintiffs' textbooks on third-party merchant sites ("Pirate Sites") advertise using paid Google Shopping ads.  *See, e.g.*, FAC ¶ 47.  According to Plaintiffs, Google Shopping ads for infringing copies of their works reflect "artificially low prices" because the merchants "did nothing to create or license [the works]; they just illegally made digital copies."  *Id.* ¶¶ 47, 52.  Plaintiffs claim that these copies "are often inferior" because they "often are of lower resolution, are not compatible with other devices, do not provide access to certain online supplemental materials, and/or do not contain working links" as well as "possess none of the quality control that an authentic ebook does and may contain missing pages, unreadable text, typos resulting from the use of imperfect text recognition software, or other errors."  *Id.* ¶ 94.  Plaintiffs also allege the infringing Google Shopping ads "do not use photos of the pirates' products; rather, they use unauthorized photos of [Plaintiffs'] own textbooks, many which display [their trademarks]."  *Id.* ¶ 38.

Plaintiffs concede that Google has, consistent with its policies, removed Google Shopping ads in response to hundreds of infringement notices identifying thousands of allegedly infringed works submitted by Plaintiffs.  *Id.* ¶¶ 72, 99.  However, Plaintiffs further allege that Google still has not done enough to stop infringing Shopping ads and "prevent further infringement by its Pirate Sellers."  *Id.* ¶ 73.  According to Plaintiffs, this renders Google secondarily liable for two forms of direct infringement:  (1) allegedly infringing *sales* by so-called Pirate Sellers to users who

navigated to their Pirate Sites through infringing Shopping ads, and (2) allegedly infringing *purchases* of the infringing works by consumers on these so-called Pirate Sites. *Id.* ¶ 122.

In May 2021, Google updated its policies to eliminate the advertising of standalone digital books via Shopping ads. *See Policy Update: Digital Books Can No Longer Be Advertised on Shopping Ads*, Google Merchant Help Center (May 2021), https://support.google.com/merchants/answer/10524536?hl=en (last visited Sept. 30, 2024); *cf.* FAC ¶ 68 (referencing "Google's policy is to ban ads for all standalone digital books"). Plaintiffs allege that, despite this policy change, Pirate Sellers selling infringing digital copies of Plaintiffs' works are still able to advertise using paid Google Shopping ads, while "legitimate" merchants are not. *See, e.g.*, FAC ¶ 47.

## II.    PROCEDURAL HISTORY

Plaintiffs claim that they previously sued certain Pirate Sellers directly. *See id.* ¶¶ 114–117. In parallel with those lawsuits, Plaintiffs also contacted Google about the allegedly infringing Shopping ads, and Google engaged with Plaintiffs to try to reach a solution. *Id.* ¶ 115. Apparently unsatisfied with Google's efforts, and with the DMCA's notice-and-takedown process (and frustrated by the actions of the infringers), Plaintiffs have strategically sued Google as an expedient scapegoat with deeper pockets. *Id.* ¶ 119.

Plaintiffs' complaint, filed on June 5, 2024, alleged four claims: (1) contributory copyright infringement (Count I), (2) vicarious copyright infringement (Count II), (3) trademark infringement (Count III), and (4) deceptive business practices under New York law (Count IV). Dkt. No. 1 ¶¶ 120–152. On August 30, 2024, Google moved to dismiss Counts II–IV. Dkt. No. 27. In response, on September 16, 2024, Plaintiffs filed the First Amended Complaint. Plaintiffs identify additional works allegedly infringed, but do not add any causes of action. *See generally* FAC & Ex. A. None of the new allegations save the defects in Counts II–IV that Defendants

identified in their prior motion.  For the reasons that follow, Counts II, III, and IV fail as a matter of law and should be dismissed.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Peter F. Gaito Arch., LLC v. Simone Dev. Corp.*, 602 F.3d 57, 61 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The court accepts well-pleaded factual allegations in the complaint as true and draws reasonable inferences in the plaintiff's favor, but it must "disregard conclusory allegations or legal conclusions couched as factual allegations."  *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 102 (2d Cir. 2022).

## ARGUMENT

### I.    PLAINTIFFS FAIL TO PLEAD A VICARIOUS COPYRIGHT INFRINGEMENT CLAIM (COUNT II)

Plaintiffs' claim for vicarious copyright infringement fails as a matter of law and should be dismissed.  *See* FAC ¶¶ 131–138.  To plead vicarious infringement, a plaintiff must allege facts showing that a defendant has "the right and ability to supervise" the infringement coupled with "an obvious and direct financial interest in the exploitation of copyrighted materials."  *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 99 (2d Cir. 2016) (citation omitted). But Plaintiffs have failed to allege facts sufficient to establish either of the required elements of a vicarious infringement claim:  They have not adequately alleged (1) that Google has the ability to supervise or control the alleged underlying third-party infringement, which occurs entirely on websites not controlled by Google, or (2) that Google benefits financially from this purported infringement, let alone directly so.  Each failure independently requires dismissal of Count II.

A.     **Plaintiffs Fail To Plead That Google Has The Right To Supervise Or Control The Alleged Infringement**

*First*, the Complaint lacks any allegation establishing that Google has the ability to supervise or control the alleged *infringement* itself, rather than the provision of ad space to so-called "Pirate Sellers."  Plaintiffs claim that Google has the "legal and practical right, ability, and responsibility to supervise and control the Direct Infringements" because Google can terminate the allegedly infringing merchants' *accounts* and/or *remove ads*.  FAC ¶ 133; *see id.* ¶ 70 ("There can be no dispute that Google has the legal right to remove ads that promote infringing content and terminate from Google's platforms the merchants who sell such content.").  Plaintiffs further and implausibly allege that termination "would have prevented the Direct Infringements altogether" and stopped or limited the ability for the allegedly infringing merchants to operate. *Id.* ¶ 133.

These conclusory allegations are not enough to support a vicarious infringement claim, however, because Plaintiffs do not (and cannot) contend that either alleged act of Direct Infringement—the sale of unauthorized copies of Plaintiffs' works, or the reproduction of those copies by purchasers—occurs on the Google platform.  The Complaint makes clear that these allegedly infringing acts occurred on *third-party websites*.  *See, e.g.*, *id.* ¶¶ 7, 103–104, 111–112. As a result, Plaintiffs cannot establish that Google's alleged "ability to supervise or control" its merchants extends to the infringing activity.  *Arista Recs. LLC v. Lime Group, LLC*, 784 F. Supp. 2d 398, 435 (S.D.N.Y. 2011) ("The first element of the test for vicarious liability is satisfied if the plaintiff proves that the defendant had the ability to supervise or control the third parties' *infringing activity* and failed to do so." (emphasis added)); *see also* 6 William F. Patry, *Patry on Copyright* § 21:67 (Sept. 2024 update) (explaining first element requires a "causal connection [between a defendant's alleged] supervisory role and the ability to stop the infringement").

Indeed, Plaintiffs' theory is foreclosed by the Ninth Circuit's seminal holding in *Perfect 10 v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007). In that case, the plaintiff, Perfect 10, was the owner of various copyrighted photographs. *Id.* at 1157. Some third-party website publishers republished Perfect 10's copyrighted photos without permission, and Google's search engine (through Google Image Search) automatically indexed some of those pirated images, providing links to those images on the third-party infringers' websites. *Id.* Perfect 10 sued Google, arguing that Google Image Search's display of third-party websites' unauthorized reproductions of Perfect 10's works constituted vicarious copyright infringement. *Id.* at 1173–75. As particularly relevant here, the Ninth Circuit rejected that theory even as to third-party websites that participated in Google's "AdSense" program, through which Google displayed ads on the infringing websites and shared advertising revenue with the website operator. *Id.* at 1173–74. The court held that Google's contractual right to terminate third parties from its AdSense program if they infringed copyrights did not render Google vicariously liable for infringement by those third parties on their own websites. *Id.* As the Ninth Circuit explained, "Google's right to terminate an AdSense partnership [with the infringing website] does not give Google the right to stop direct infringement by third-party websites" because "[a]n infringing third-party website can continue to reproduce, display, and distribute its infringing copies of Perfect 10 images after its participation in [Google's] program has ended." *Id.*; *accord Routt v. Amazon.com, Inc.*, 584 F. App'x 713, 715 (9th Cir. 2014) (affirming dismissal where "the infringing conduct in this case occurs on third-party websites").

So too here. Plaintiffs do not allege that Google has the power to shut down the "Pirate Sites" that allegedly sell infringing copies of Plaintiffs' works. They allege only that the ads posted by the purported pirates "contain direct links" to the pirates' websites, FAC ¶ 4, and that Google could remove those ads as well as terminate the pirates' Merchant Center accounts, *e.g.*, *id.* ¶ 70.

These allegations cannot establish the necessary level of control; to the contrary, they confirm that the infringement does not occur on Google's platform. *See Perfect 10*, 508 F.3d at 1173 (finding no evidence that "Google has contracts with third-party websites that empower Google to stop or limit [merchants] from reproducing, displaying, and distributing infringing copies of Perfect 10's images on the Internet."); *see also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n* ("*Visa*"), 494 F.3d 788, 803 (9th Cir. 2007) (affirming dismissal where "defendants could likely take certain steps that may have the indirect effect of reducing infringing activity on the Internet at large," but lacked the ability to "directly control that activity"); *Concord Music Grp., Inc. v. X Corp.*, 2024 WL 945325, at *9 (M.D. Tenn. Mar. 5, 2024) (dismissing vicarious infringement claim where plaintiffs did not allege that X Corp. had the power to oversee users' drafting of tweets or had any editorial control over the content of tweets, "other than making the yes-or-no decision of whether or not to remove a tweet after it was posted and brought to X. Corp's attention"); *Canada Hockey LLC v. Texas A&M Univ. Athletic Dep't*, 484 F. Supp. 3d 448, 467 (S.D. Tex. 2020) (dismissing vicarious infringement claim where there was "no allegation that the [defendant] owned or operated the website where the alleged infringement occurred"); *Music Force, LLC v. Sony Music Holdings Inc.*, 2020 WL 5733258, at *3 (C.D. Cal. Aug. 12, 2020) ("[T]he right to terminate services or a contract with an infringer does not amount 'to a right and ability to supervise the infringing conduct.'" (quoting *Routt*, 584 F. App'x at 715)); *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, 2014 WL 3368893, at *8 (N.D. Ill. July 8, 2014) (finding a defendant lacked the requisite control where the termination of a third party's affiliate agreement "would not alter [the third party's] ability to post information to the internet").

Plaintiffs' new allegations that Google can "create better ads for its Merchants," "select the keywords in response to which a Shopping Ad for [a] product will appear," and "offers different

ads tailored to merchants' needs" do not compel a different result. FAC ¶¶ 41–42, 44. These allegations do not establish that Google controls or supervises any of the *infringement*, which occurs on third-party websites run by the merchants; they allege only that Google has a role in creating and tailoring ads generally, based on, as Plaintiffs acknowledge, "information provided by Google's merchants." *Id.* ¶ 41. At most, such involvement might give Google the ability to "take steps that may have the indirect effect of reducing infringing activity"; but even if true, these allegations fail to establish that Google has any "direct[] control" over infringement. *Visa*, 494 F.3d at 803.

For all of these reasons, the Court can and should dismiss Plaintiffs' vicarious infringement claim on this basis alone.

### B.  Plaintiffs Fail To Plead That Google Obtains A Financial Benefit From The Alleged Infringement

*Second*, Plaintiffs' vicarious infringement claim fails for the independent reason that Plaintiffs do not adequately allege that Google obtains a direct financial benefit from the alleged infringement occurring on third-party websites (infringing sales and infringing purchases), rather than from selling ads generally, regardless of whether any such sales are made.

Plaintiffs claim that "Google has a direct financial interest in, and has derived an obvious and direct financial benefit from, the direct infringements" because Google "earned revenue from each of the clicks that led to the Direct Infringements, and from clicks on paid infringing Shopping ads generally." FAC ¶ 134. In other words, as Plaintiffs allege, Google is paid based on clicks on Shopping ads regardless of whether those ads are for authorized or unauthorized copies of copyrighted works, and regardless of whether or not a sale is completed. But to establish vicarious liability, the financial benefit to the defendant must "flow directly *from the third party's acts of infringement*," either because the defendant profits directly from infringing activity or because the

infringement draws customers to the defendant's service. *Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 231–32 (4th Cir. 2024) (emphasis added), *petitions for cert. filed*, Nos. 24-171 (Aug. 16, 2024) & 24-181 (Aug. 20, 2024); *see also Arista Recs.*, 784 F. Supp. 2d at 435 ("The second element of the vicarious infringement test requires showing a 'causal relationship between the infringing activity and any financial benefit [the] defendant reaps.'" (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004))).

In *Sony*, for example, the Fourth Circuit held that Cox, an internet service provider, did not profit from its subscribers' infringing activity even though Cox "repeatedly declined to terminate infringing subscribers' internet service in order to continue collecting their monthly fees" because "[t]he continued payment of monthly fees for the internet service . . . was not a financial benefit flowing directly from *the copyright infringement itself*." *Sony*, 93 F.4th at 232 (emphasis in original); *accord White v. DistroKid*, 2024 WL 3195471, at *9 (S.D.N.Y. June 24, 2024) (citing *Sony* and dismissing vicarious liability claim based on allegations that the defendant accepted user access fees from users engaged in infringing activities); *Wolk v. Kodak Imaging Net., Inc.*, 840 F. Supp. 2d 724, 747–48 (S.D.N.Y. 2012) (citing *Perfect 10* and granting summary judgment because "Defendants' profits are derived from the service they provide, not a particular infringement").

That same logic applies here. Plaintiffs' allegations fall short of establishing a causal relationship between either form of alleged direct infringement and Google's revenue from ad sales. Plaintiffs do not claim that Google earns a cut of each allegedly infringing textbook sale from the merchant. They allege only that Google has earned money from clicks on Shopping ads promoting these products. *See* FAC ¶ 95 (alleging that "Google has profited" from the alleged infringement because "Google earns money each time a user clicks on the ad" for an allegedly infringing product). But, as noted, Google earns money each time a user clicks on *any* ad, whether

the ad directs users to allegedly infringing products or not, and regardless of whether users actually buy the advertised product or not.

That fact pattern is indistinguishable from the facts the Fourth Circuit found inactionable in *Sony*. As the Fourth Circuit explained, making money from *infringing subscribers* is not the same thing as making money from *subscribers' infringement*: "Cox would receive the same monthly fees even if all of its subscribers stopped infringing." 93 F.4th at 232. For that reason, "Cox's financial interest in retaining subscriptions to its internet service did not give it a financial interest in its subscribers' myriad online activities, whether acts of copyright infringement or any other unlawful acts." *Id.* The same is true here. The fact that Google makes money from sellers' ads does not mean that Google makes money from sellers' *infringement*, even if those ads include some products that are infringing, because Google's financial interest is the same regardless of whether infringement occurs. For that reason, Google's financial interest is independent of any of the Pirate Sellers' infringement, just as Cox's was independent of its subscribers' infringement.

Plaintiffs' allegation that "bids from pirate sellers" help Google "generate higher revenue" because legitimate merchants have to pay more to outbid Pirate Sellers, FAC ¶ 96, similarly fails to establish a *direct* causal relationship between infringing activity and Google's financial interests. Increases in ad rates from ad bidding occur regardless of what the bidders are selling. Thus Plaintiffs' theory (that Google might have earned more ad revenue due to competitive bids from Pirate Sellers) is not only speculative and hypothetical, but also foreclosed by *Sony*, because even assuming Plaintiffs' speculation were true, any such financial benefit results regardless of— rather than directly because of—alleged infringement. *See supra* at 11–12.

The same is true of Plaintiffs' new allegation that Google "financially benefits when users purchase goods advertised through Shopping Ads" because, "the more often Google users buy the

infringing products they see advertised on Google Shopping, the more merchants advertise on Google, and the more revenue Google earns." FAC ¶ 97. Even accepting Plaintiffs' syllogism as true, it cannot establish a direct financial benefit from *infringement* because it would apply equally to *non-infringing* product sales through Shopping ads. In other words, Plaintiffs' allegations establish nothing more than Plaintiffs' belief that *any* seller who finds success advertising her products on Google is more likely to continue to advertise on Google; the allegations do not establish anything special about infringing products in that regard. Thus, these allegations, too, fail to establish a *direct* financial benefit from *infringement*.

In short, Plaintiffs' allegations fail to establish that Google's financial interest in ad sales has a sufficiently close nexus to the off-platform infringing activity described in the Complaint. *See White*, 2024 WL 3195471, at *9 (finding no causal relationship between standard subscription payments and infringing activity where "the monthly payments do not increase or decrease based on whether the user uploads infringing or non-infringing products"); *cf. State Street Glob. Advisors Tr. Co. v. Visbal*, 677 F. Supp. 3d 209, 264 (S.D.N.Y. 2023) (finding no direct financial benefit where the infringing use was not a "but-for cause" of the purchase).

Alternatively, Plaintiffs allege that the availability of "low-cost Infringing Works" draws textbook consumers to the Google Shopping platform, and draws Pirate Sellers to Google's advertising platform. FAC ¶ 135; *see also id.* ¶ 47; *see Sony*, 93 F.4th at 231–32 (recognizing that a plaintiff can establish a financial benefit flowing directly from third-party infringement "[i]f copyright infringement draws customers to the defendant's service or incentivizes them to pay more for their service"); *White*, 2024 WL 3195471, at *8–9 (same). But Plaintiffs' claim that textbook consumers are "drawn" to Google because of Shopping ads for allegedly infringing textbooks is wholly conclusory—and implausible to boot. *Iqbal*, 556 U.S. at 679 (assessing

plausibility "requires the reviewing court to draw on its judicial experience and common sense"). Plaintiffs offer no facts to support their conclusion that access to the allegedly infringing works (rather than access to what Plaintiffs say is the world's preferred search engine) draws textbook consumers to the Google platform. *See Kaplan Grp. Invs. LLC v. A.S.A.P. Logistics Ltd.*, 694 F. Supp. 3d 374, 386 (S.D.N.Y. 2023) (dismissing claims where plaintiffs offered only "conclusory allegations devoid of supporting factual detail"); *cf. Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 674 (9th Cir. 2017) (rejecting theory that defendant could be vicariously liable where "some subscribers joined [the platform] to access infringing material *generally*" rather than the works-in-suit specifically (emphasis added)). Thus, the Court should disregard this allegation. *See Pena v. Gen. Motors Fin. Co.*, 2022 WL 889434, at *2 (S.D.N.Y. Mar. 25, 2022) ("[T]he Court is 'not bound' . . . to credit 'mere conclusory statements' or '[t]hreadbare recitals of the elements of a cause of action.'" (quoting *Iqbal*, 556 U.S. at 662, 678)).

Plaintiffs' claim that Pirate Sellers are drawn to Google's advertising platforms because of "the ability to attract users who will purchase infringing copies of the Publishers' works" is conclusory too.  FAC ¶ 135.  And even putting that problem aside, these allegations still fall short of establishing the type of direct financial interest in infringing activity that may support a finding of vicarious liability.  Plaintiffs' allegations establish only that Google (which Plaintiffs describe as "the world's most visited website," "the world's most dominant search engine," and "the world's most dominant provider of digital advertising services," *id.* ¶ 3) "provides the Pirate Sites access to an audience of unmatched size."  *Id.* ¶ 135.  These alleged facts do not establish the requisite direct causal relationship between the alleged acts of infringement and a financial benefit to Google.  Indeed, as Plaintiffs allege, because of Google's "massive share of the search market in the United States, many merchants view Google ads as having no real substitute from any other

advertising platform." *Id.* ¶ 46; *id.* ¶ 93 (discussing the "irreplaceability of Google's advertising platforms").

At bottom, even taken as true, Plaintiffs' allegations establish nothing more than that Google, as a "provider of digital advertising services," *id.* ¶ 3, profits from ad sales, and would necessarily lose money if certain merchants were not allowed to purchase advertisements. But this uncontroversial assertion "demonstrates only that the service provider profits directly from the sale" of ads; vicarious liability, however, "demands proof that the defendant profits directly from the *acts of infringement* for which it is being held accountable." *Sony*, 93 F.4th at 232. Plaintiffs' allegations do not satisfy that standard.

## II.   PLAINTIFFS FAIL TO PLEAD A TRADEMARK INFRINGEMENT CLAIM UNDER THE LANHAM ACT (COUNT III)

In service of their kitchen-sink pleading strategy, Plaintiffs add a claim for trademark infringement that purports to hold Google *directly* responsible for the allegedly infringing marks that Pirate Sellers use in their ads. This claim fails as a matter of law because Plaintiffs do not sufficiently allege that Google—rather than these third-party merchants—reproduced and applied their marks to advertisements from Pirate Sellers. *See* FAC ¶¶ 139–145. This claim, too, should be dismissed with prejudice.

To plead a direct trademark infringement claim under Section 32 of the Lanham Act, a plaintiff must allege facts showing that the "*defendant's use* of a similar mark is likely to cause consumer confusion as to the origin or association of the goods or services." *Vans, Inc. v. MSCHF Prod. Studio, Inc.*, 88 F.4th 125, 135–36 (2d Cir. 2023) (emphasis added). Specifically, Plaintiffs allege a violation of 15 U.S.C. § 1114(1)(b), which makes it unlawful to "*apply*" a "reproduction, counterfeit, copy, or colorable imitation" of a registered mark to advertisements. Plaintiffs allege that Google violated this provision by displaying Shopping ads containing "counterfeits, copies,

or colorable imitations" of Plaintiffs' marks to sell infringing copies of Plaintiffs' books.  FAC ¶ 141.

But Plaintiffs fail to allege that *Google itself* engaged in the acts proscribed by 15 U.S.C. § 1114(1)(b).  As explained above, the allegedly infringing content within Pirate Sellers' Shopping ads (the images and information that contain plaintiffs' marks) are provided *by the Pirate Sellers*— not Google.  *See supra* at 3.  As alleged by Plaintiffs, Google merely generates the resulting ads automatically using that content.  As Plaintiffs' allegations concede, the *Pirate Sellers* reproduce and apply the marks in the images and information that *they provide* to Google for purposes of the advertisements.  FAC ¶ 41 (alleging that Google creates Shopping ads based on information provided by the merchant); *id.* ¶ 144 ("Google knows that . . . the *Pirate Sellers' use* of the Marks on infringing copies of the Publishers' works is unauthorized." (emphasis added)).  Plaintiffs' new allegation that "Google controls the appearance of its Shopping Ads" does not change that result, given Plaintiffs' own allegations that "[w]ith regard to product images, Merchants either provide Google with a link to a product image for Google to include in an ad, or provide Google with the image itself."  *Id.* ¶ 88.  Plaintiffs' allegations that Google "makes adjustments" to ads, like "experimenting with the best display options" or "employing the 'automatic cropping' of images," might establish that Google controls how the overall shopping ad is presented on its platform, but the *image used* in the shopping ad—including any image of Plaintiffs' trademarks—is supplied by the Pirate Sellers.  *Id.* (alteration and citation omitted).

In this context, Plaintiffs' claim against Google fails, because courts widely recognize that a "mere facilitator of sales," like Google, of someone else's counterfeit goods cannot be held liable for direct trademark infringement.  *Atari Interactive, Inc. v. Printify, Inc.*, 2024 WL 476493, at *4 (S.D.N.Y. Jan. 25, 2024) (citation omitted); *accord GMA Accessories, Inc. v. BOP, LLC*, 765 F.

Supp. 2d 457, 464 (S.D.N.Y. 2011) (explaining that if a defendant acted as "merely a broker, rather than a direct seller," it would not be liable for direct trademark infringement); *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 446–48 (6th Cir. 2021) (explaining that "online marketplaces, like eBay and Amazon, that *facilitate* sales for independent vendors generally escape Lanham Act liability" because they do not themselves sell counterfeit goods and "clearly indicate[] to consumers that they are purchasing goods from third-party sellers").

The result is only different when an online business acts as "more than a platform for the sale of goods by vendors," taking on a direct role in the sale of counterfeits. *Chanel, Inc. v. RealReal, Inc.*, 449 F. Supp. 3d 422, 441 (S.D.N.Y. 2020) (distinguishing the RealReal from eBay because the RealReal, unlike eBay, maintains the inventory of merchandise and bears the risk of loss for the products sold on its platform). Here, of course, Plaintiffs have not alleged that Google acts as "more than a platform for the sale of goods by vendors," or had any direct role in selling the allegedly infringing works. Plaintiffs' allegations establish that Google Shopping ads are created from "information provided by Google's merchants" in their "product feed[s]," FAC ¶ 41, that the ads clearly identify the merchants' names, *see id.* Fig. 2, and that merchants control the scope of their ad campaigns, *see id.* ¶ 44 (alleging that *merchants*, rather than Google, "control how much they spend by specifying items such as the price they are willing to pay for each click on their ad or the amount they are willing to spend on an ad campaign" and that merchants choose among different ad campaigns "tailored to [their] needs"). Even accepting Plaintiffs' factual allegations as true, Google is merely a facilitator that does not "represent itself, rather than a third-party vendor, as the seller, or somehow identif[y] the goods as its own." *Ohio State*, 989 F.3d at 448; *accord Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102–03 (2d Cir. 2010) (finding eBay could

not be liable for direct trademark infringement).  Plaintiffs' direct infringement claim accordingly fails as a matter of law.

To the extent Plaintiffs would try instead to plead claims for secondary liability (which they have not done), they cannot do so.  To support a contributory trademark infringement claim, a defendant "must have more than a general knowledge or reason to know that its service is being used to sell counterfeit goods." *Tiffany*, 600 F.3d at 106.  Such a claim requires specific knowledge that "*particular listings* are infringing or will infringe in the future." *Id.* (emphasis added).  Here, however, Plaintiffs have not alleged that Google had knowledge of any specific instances of trademark infringement.  To the contrary, the Complaint alleges only that Plaintiffs sent notices of specific instances of Pirate Sellers' *copyright* infringement, *see* FAC ¶ 100, but lacks similar allegations with respect to trademark infringement, *see id.* ¶¶ 143–144 (alleging, in a conclusory fashion, that Google knew that the Pirate Sellers' ads infringed the Plaintiffs' trademarks).  Even if that conclusory allegation were sufficient to establish Google's general knowledge of trademark infringement by Pirate Sellers (and under *Twombly*/*Iqbal* it is not), such general knowledge is insufficient to plead contributory trademark infringement. *Tiffany*, 600 F.3d at 106–09 (rejecting claim of contributory trademark infringement where plaintiff only established defendant's knowledge of "general allegations of counterfeiting").

And a vicarious trademark infringement claim would fare no better. *Cf. Kelly-Brown v. Winfrey*, 717 F.3d 295, 314 (2d Cir. 2013) (explaining elements of vicarious trademark infringement).  It would fail for the same reasons that Plaintiffs' vicarious copyright infringement claim fails—Google does not exercise authority or control over Pirate Sellers' infringement, and Google derives no direct financial benefit from their infringement. *See Visa*, 494 F.3d at 808 ("For the same reasons that [plaintiff's allegation] does not establish 'right and ability to control' for

copyright purposes, neither does it establish such a 'symbiotic' relationship or 'joint ownership or control' for trademark purposes."); *see supra* Part I.

For all of these reasons, Plaintiffs have no viable theory of trademark infringement here.

## III.   PLAINTIFFS FAIL TO PLEAD A DECEPTIVE BUSINESS PRACTICES CLAIM UNDER NEW YORK LAW (COUNT IV)

Plaintiffs also bring a claim for deceptive business practices under New York General Business Law § 349.  That claim fails because it is preempted by both the Copyright Act and the Lanham Act.  And even if it were not preempted, Plaintiffs' claim would fail on the merits: Plaintiffs have not plausibly alleged that Google's provision of ad space to merchants who sell allegedly infringing products is materially misleading or a cognizable injury to the public-at-large (as opposed to alleged business harm to textbook publishers).  The Court should also dismiss this claim with prejudice.

### A.     Plaintiffs' Section 349 Claim Is Preempted

As a threshold matter, Plaintiffs' Section 349 claim is preempted by both the Copyright Act and the Lanham Act.

State law claims are preempted by the Copyright Act when they are "substantively redundant" of copyright claims.  *Freeplay Music, Inc. v. Cox Radio, Inc.*, 409 F. Supp. 2d 259, 264 (S.D.N.Y. 2005) (citation omitted).  To survive preemption, the state law claim must "change[] the nature of the action so that it is *qualitatively* different from a copyright claim."  *Id.* (emphasis in original).  But Plaintiffs' Section 349 claim is qualitatively *identical* to their copyright infringement claims.  It is premised on the allegations that (1) consumers are harmed because Google causes consumers "unwittingly to commit copyright infringement when they download an unauthorized copy of a Publisher's work," and (2) publishers are harmed because they are deprived of sales when consumers purchase pirated versions of the publishers' textbooks.  FAC ¶¶ 149–

150.  These allegations clearly sound in copyright law—indeed, this is the very same conduct, and the very same harm, that forms the basis of Plaintiffs' contributory infringement claim.  *See, e.g.*, FAC ¶¶ 81–83, 94, 122, 125–126 (alleging contributory copyright infringement based on Google's alleged knowing facilitation of sales of infringing works to consumers, harming consumers via "unwitting[]" "copyright infringement," and harming Plaintiffs via loss of sales of genuine textbooks).  As a result, they are plainly preempted by the Copyright Act and must be dismissed. *See, e.g.*, *Tianhai Lace Co., Ltd. v. ASOS, PLC*, 2023 WL 3479804, at *3–4 (S.D.N.Y. May 16, 2023) (Section 349 claim preempted where the claim "is no more than a copyright infringement claim minimally refashioned with the addition of conclusory allegations that the infringing conduct was directed at consumers"); *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 291 (S.D.N.Y. 2019) (Section 349 claim alleging that defendants are "deceiving the public by claiming to own a copyright" is "not qualitatively different than" a copyright claim).

Likewise, to the extent Plaintiffs' Section 349 claim is premised on allegations that Google "misleads consumers into believing they are getting a legitimate product at a bargain price" because the ads "us[e] unauthorized images of the Publishers' textbooks, which often contain registered trademarks," FAC ¶ 8, their claim is preempted by the Lanham Act.  To the extent those allegations state a claim at all, they sound in trademark.  As a result, they fail to allege "specific and substantial injury to the public interest *over and above* the ordinary trademark infringement," and "are not cognizable under § 349," and must be dismissed.  *Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 280 (S.D.N.Y. 2022) (emphasis in original) (citation omitted) (alterations modified), *aff'd*, 2024 WL 1152520 (2d Cir. Mar. 18, 2024).

For both these reasons, Plaintiffs' Section 349 claim is preempted and must be dismissed.

### B.    Plaintiffs' Section 349 Allegations Fail On The Merits

Preemption aside, Plaintiffs' Section 349 claim fails on its own terms.  Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce in the furnishing of any service in this state [i.e., New York]."  N.Y. Gen. Bus. Law § 349(a).  To plead a claim under this statute, a plaintiff must allege three elements: "(1) that the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."  *Martin v. New Am. Cinema Grp., Inc.*, 2023 WL 2024672, at *7 (S.D.N.Y. Feb. 15, 2023) (Rochon, J.) (citation omitted).  Critically, "New York General Business Law § 349 applies solely to matters affecting the consumer public at large."  *Id.* (citation omitted).

Plaintiffs assert two theories for liability under Section 349:  *First*, they claim that Google deceives New York consumers by redirecting them to Pirate Sites selling infringing copies of Plaintiffs' works, when consumers click on Shopping ads for those sites.  *Second*, they claim that Google deceives New York textbook sellers when Google rejects Shopping ads for the textbook sellers' legitimate standalone e-books, and because consumers purchase pirated e-books rather than the textbook sellers' genuine ones, reducing Plaintiffs' sales.  Neither theory is viable as a matter of law.

### 1.    *Plaintiffs Do Not Plausibly Allege Deceptive Practices That Harmed Consumers*

Plaintiffs' first theory of consumer deception alleges that Google deceives and harms consumers by diverting them away from genuine textbooks and toward purchases of "pirated books that often are of inferior quality to legitimate ebooks."  FAC ¶ 148.  Even accepting these allegations as true, this theory fails to state a claim under Section 349.

"[A]n allegation of a defendant's deception alone does not suffice to plead injury" under Section 349.  *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 576 (S.D.N.Y. 2021).  That

is because, even assuming a consumer was deceived, the consumer still "may have received the benefit of the bargain despite the alleged misrepresentation." *Id.* (citing *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 676-77 (S.D.N.Y. 2012)).  For that reason, Section 349 requires allegations that a consumer "purchased a product," "on account of a materially misleading practice," "and *did not receive the full value of her purchase*." *Id.* (emphasis added).

Applying this principle here, Plaintiffs' own allegations negate their claim.  Plaintiffs themselves allege that although consumers are allegedly deceived into purchasing "pirated books that often are of inferior quality to legitimate books," FAC ¶ 148, consumers also obtain the allegedly infringing digital textbooks for "a fraction of the price" of the "authentic" textbooks, *e.g.*, *id.* ¶ 57; *see id.* ¶ 59 (offering Figure 7 as "higlight[ing] the price disparity between Pirate Sellers and legitimate textbook sellers").  Thus, accepting Plaintiffs' allegations as true, Plaintiffs fail to allege that consumers did not "receive the full value of [their] purchase." *Colpitts*, 527 F. Supp. 3d at 576.

### 2.    *Plaintiffs' Allegations Of Deceptive Practices Directed At Textbook Sellers Are Not Cognizable Under Section 349*

Plaintiffs' second theory under Section 349 is that Google "directs its deceptive practices" at a "group of consumers" "comprise[d] [of] New York textbook-sellers who, like the Publishers, wish to utilize Google's advertising services for their legitimate digital and physical books." FAC ¶ 150.  But these allegations are not cognizable under Section 349.

To start, Plaintiffs have not actually alleged any *deceptive* acts directed at textbook sellers. At bottom, Plaintiffs' complaint is not that New York textbook sellers have been *deceived*, but rather that they have been harmed "by [Google] refusing to allow the Publishers (directly or through their authorized distributors) to advertise standalone ebooks" and by consumers' "purchase[s] [of] pirated versions of the Publishers' textbooks, reducing the Publishers' sales." *Id.*

That is a straightforward gripe about business practices, not an allegation that anyone has been misled.  Plaintiffs cannot avoid that conclusion by dressing up their own alleged business injuries under the guise of consumer injury.  That alone is a reason to dismiss this claim.

But even setting aside the lack of allegations of deceptive conduct, the Section 349 claim fails because the alleged deceptive practices must involve "matters affecting the *consumer public at large*."  *Martin*, 2023 WL 2024672, at *7–8 (emphasis added).  While Section 349 "does not preclude an action by one business against another, the gravamen of the complaint must be consumer injury or harm to the public interest."  *Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F. Supp. 1084, 1089 n.6 (S.D.N.Y. 1988).  In other words, the "critical question" in a Section 349 suit "is whether the matter affects the public interest in New York."  *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995).  Here, however, Plaintiffs' allegations of harm to the narrow class of New York *textbook sellers* do not "affect[] the consumer public at large."  *Martin*, 2023 WL 2024672, at *7.  To the contrary, the gravamen of Plaintiffs' Section 349 claim is an alleged harm to *their businesses* from Google's advertising practices, not harm to the public.  *E.g.*, FAC ¶ 149 ("[A]s a result of Google's practice, the Publishers suffer reduced sales, as well as damage to their reputations.").

As a result, Plaintiffs' Section 349 claim must be dismissed.  *See, e.g.*, *SmileDirectClub, LLC v. Jacqueline I. Fulop, D.M.D., P.C.*, 2020 WL 1322838, at *3 (S.D.N.Y. Mar. 20, 2020) (dismissing Section 349 claim when "[t]he gravamen of plaintiff's amended complaint is harm to its business in the form of lost profits, reputation, and goodwill"); *Merck Eprova AG v. Brookstone Pharms., LLC*, 920 F. Supp. 2d 404, 426 (S.D.N.Y. 2013) (rejecting a business's Section 349 claim when the allegations of consumer confusion were "peripheral to the 'core'" of the claim); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 274 (S.D.N.Y. 2003); *cf. Martin*, 2023

WL 2024672, at *8 (dismissing deceptive practices claim because the complained-of "deceptive acts" were "about the terms of the agreements that were made between individual members and Defendants").

## CONCLUSION

For the foregoing reasons, the motion should be granted and Counts II, III, and IV should be dismissed with prejudice.

Dated:  September 30, 2024
        New York, New York

Respectfully submitted,

**LATHAM & WATKINS LLP**

*/s/ Sarang Vijay Damle*
Sarang Vijay Damle
Sarah A. Tomkowiak (*pro hac vice*)
Holly K. Victorson (*pro hac vice*)
Laura E. Bladow (*pro hac vice*)
Brent T. Murphy (*pro hac vice*)
Sara E. Sampoli (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: sy.damle@lw.com
        sarah.tomkowiak@lw.com
        holly.victorson@lw.com
        laura.bladow@lw.com
        brent.murphy@lw.com
        sara.sampoli@lw.com

Allison L. Stillman
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: alli.stillman@lw.com

Joseph R. Wetzel
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: joe.wetzel@lw.com

*Attorneys for Defendant Google LLC*

## CERTIFICATION OF WORD COUNT

I certify that the foregoing memorandum of law complies with the formatting and word limit requirements set forth in Rule 3.C of the Court's Individual Rules and Procedures for Civil Cases because it contains 7,370 words, excluding the cover page, table of contents, table of authorities, signature block, and certification of word count.  This memorandum of law also complies with the applicable formatting rules because it has been prepared in 12-point font and all text is double-spaced.

In preparing this certification, I relied on the word count of the Microsoft Word computer program used to prepare this memorandum of law.


Dated:  September 30, 2024                    */s/ Sarang Vijay Damle*
                                               Sarang Vijay Damle