

Michele H. Murphy
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.450.5643
michele@oandzlaw.com

November 12, 2024

**VIA ECF**

Hon. Jennifer L. Rochon
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

**Re:** *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
   Letter Motion for Pre-Motion Conference

Dear Judge Rochon:

Pursuant to Local Civil Rule 37.2 and Rule 2(E) of this Court's Individual Rules of Practice in Civil Cases, Plaintiffs request a pre-motion discovery conference with the Court.

## BACKGROUND

This case centers on Google's pervasive advertisement of infringing copies of Plaintiffs' educational works. Dkt. 38, Counts I, II. When a Google user enters the name of a textbook into Google's search engine, the user sees Google Shopping ads for the textbook, many of which are ads for pirate sellers that divert sales from legitimate sellers to the pirates' websites. Among other counts, Plaintiffs have brought suit for secondary copyright infringement.[1] Google has responded that it intends to assert the safe-harbor defense under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512. Jt. Ltr. to Court, Dkt. 29 at 2. Under the DMCA, a defendant-service provider may be exempt from liability for monetary damages if it meets certain requirements. The discovery Plaintiffs request is essential to Google's safe-harbor defense, relevant to liability, and critical to uncovering the extent of Google's infringement.

## ARGUMENT

**I.   Google must provide discovery into whether it terminated an infringer, as opposed to one of an infringer's multiple accounts.**

To be eligible for the DMCA safe-harbor defense, a defendant must have, among other things, "adopted and reasonably implemented a policy that provides for the *termination* in appropriate circumstances of *subscribers and account holders* of the service provider's system or network who are *repeat infringers*." 17 U.S.C. § 512(i)(1)(A) (emphases added). Plaintiffs thus are entitled to discovery into whether Google did, in fact, terminate "repeat infringers," or instead merely terminated one of a subscriber's accounts. In other words, if one entity operates multiple Google accounts to advertise infringing works, terminating just one of those accounts while leaving the others operating would not be terminating the "repeat infringer."

Plaintiffs seek to investigate what has been their own experience: that when a pirate operates multiple Google Shopping ads accounts, Google often terminates only one of these accounts, allowing the others to continue advertising the pirate's infringing goods. For example, Google advertised infringing works for the pirate site zestudion.*com*. Dkt. 38 ¶ 111. Then, after

---

[1] Google moved to dismiss Count II (vicarious infringement), but not Count I (contributory infringement). Dkt. 44.

Hon. Jennifer L. Rochon
November 12, 2024
Page 2

Plaintiffs sent notices to Google concerning that site, Google advertised infringing works for "zestudion.*net.*" *Id. See also id.* ¶ 112 (providing additional examples of pirates Google advertised with the same domain names, but different top-level domains). Pirates' use of the same email addresses for their multiple pirate sites is also prevalent. For example, Google ran ads for 22 pirate sites that all listed support123@intellectualbook.shop as the contact on the sites; 14 pirate sites that all listed carepro24Hz@gmail.com as the contact on the sites; and 39 pirate sites that all listed ebook2316@gmail.com as the contact on the sites. Atty. Decl. (filed concurrently) ¶¶ 7–9. And while Plaintiffs have been able to identify a handful of these related accounts, only Google knows what other related accounts exist, and Google's knowledge of these accounts is itself relevant.

Plaintiffs' RFP to Google thus request information and data already in Google's possession concerning "Related Ads Merchants," which Plaintiffs define as an ads merchant that "shares with an Infringing Merchant [i.e., a pirate selling works-in-suit that Google advertised and Plaintiffs identified in a notice of infringement] a common identity, common or related business or website ownership or operation, or other similarity that demonstrates a business connection or link between Google account holders." This principally involves RFP 25 ("Documents sufficient to identify each Related Ads Merchant and the Infringing Merchant to which the Related Ads Merchant is related") and RFP 44 ("Documents sufficient to identify and describe any common identity, common or related ownership, or other connection or relationship between any Infringing Merchant and another Shopping Ads Merchant . . . ."). Atty. Decl. Ex. A.[2]

The discovery Plaintiffs seek is readily available to Google. When a pirate creates a Shopping ads account, the pirate provides a wealth of identifying information to Google, which Google retains. Dkt. 38 ¶¶ 73–75. Indeed, Google has produced similar information in other matters with Plaintiffs. Since 2019, Plaintiffs have brought several lawsuits directly against pirate websites who used Google ads. *Id.* ¶¶ 114–119. To comply with subpoenas and/or injunctions in those matters, Google provided Plaintiffs information on Google accounts related to the defendants. When given a pirate's email address, for example, Google provided the associated account's physical addresses, billing information, related Google entity IDs, and identified the defendant's use of other Google services (Gmail, AdSense, Google Payments, YouTube, etc.). Atty. Decl. ¶ 9. Further, Google's publicly-viewable "Ad Transparency Center" states whether each merchant's "identity has been verified by Google," and shows certain ads for the merchant, including for different websites. Dkt. 38 ¶¶ 111–12. Thus, Google has readily retrievable and searchable records that will identify the Related Ads Merchants.

---

[2] In addition, several of Plaintiffs' RFP request information about Infringing Merchants as well as Related Ads Merchants: RFP 26 (Google services utilized by these merchants); RFP 27 (infringement notices concerning these merchants); RFP 29 (Google's communications with these merchants); RFP 31 (warnings and risk assessments concerning these merchants); RFP 36 (account information concerning and items advertised by these merchants); RFP 38 (Shopping ads run by these merchants). Atty. Decl. Ex. A. To the extent that Google has agreed to respond to these RPF at all, it has limited its responses to Infringing Merchants, excluding Related Ads Merchants.

During the meet-and-confer process, however, Google has refused to produce documents sufficient to identify, or concerning, the Related Ads Merchants. Google takes the untenable position that the DMCA does not require Google to terminate the actual infringer, only the particular account associated with the offending ad. Atty. Decl. Ex. C at 10–11, 21. All Google has offered to produce is information regarding instances where Google previously identified one of the Infringing Merchants as being part of a "cluster of bad actors," which apparently is an enforcement tool that Google deploys. *Id.* at 21. Yet in the more-than-two-months since Plaintiffs sent their RFP, Google has yet to provide any further explanation of this "tool," or what information the tool will provide.

Limiting discovery in this way deprives Plaintiffs of information that will assist in testing Google's DMCA defense and in litigating the broader case. On its face, the DMCA requires that, to qualify for the safe-harbor, the service provider terminate "subscribers and account holders" who are "repeat infringers." 17 U.S.C. § 512(i)(1)(A). Courts have made clear that terminating a repeat infringer means removing the infringer from the defendant's platform and nothing short of that.[3] Thus, terminating only one of a subscriber's multiple accounts is not terminating the "subscriber[]" or "account holder[]." Further, Related Ads Merchants will be relevant to statutory damages, as they speak to Google's knowledge, willfulness, and to the revenue Google earned from the infringers. *See Union of Orthodox Jewish Congregations of Am. v. Royal Food Distributors Liab. Co.*, 665 F. Supp. 2d 434, 436 (S.D.N.Y. 2009) (enumerating the statutory damages factors). More broadly, Plaintiffs are entitled to discovery on the full extent of Google's infringement. *See Twentieth Century Fox Film Corp. v. Mow Trading Corp.,* 749 F. Supp. 473, 475 (S.D.N.Y. 1990) (allowing discovery that "may also lead to the discovery of . . . additional infringing merchandise."). For instance, the works-in-suit identified in the Complaint were included because Google advertised pirated copies of the works after receiving notices from Plaintiffs that the pirate site in question was selling infringing material. Dkt. 38 ¶¶ 41, 122, 133. Google may likewise have knowledge of, and be liable for, additional works that it advertised for Infringing Merchants and Related Merchants. Google cannot refuse to produce documents on this crucial topic.

## CONCLUSION

In an effort to reduce the need for judicial intervention, counsel for the parties met and conferred October 17, 2024 and October 25, 2024 regarding the issues in this letter, and exchanged several follow-up emails. Atty Decl. Ex. C. The parties, however, have been unable to reach a resolution. Plaintiffs, therefore, respectfully request a pre-motion conference with the Court.

---

[3] *BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*, 149 F. Supp. 3d 634, 658 (S.D.N.Y. Dec. 1, 2015), aff'd in part, rev'd on other grounds, 881 F.3d 293 (4th Cir. 2018) ("service providers cannot skirt the termination requirement by imposing something short of complete termination of a subscriber or account holder"); *Capitol Records, LLC v. Escape Media Grp., Inc.*, 2015 WL 1402049, at *9–12 (S.D.N.Y. Mar. 25, 2015) (service providers must have a "policy in place that would end or discontinue the accounts of repeat infringers, not something short of that . . .").

Hon. Jennifer L. Rochon
November 12, 2024
Page 4

                                                  Respectfully Submitted,

                                                  /s/ Michele H. Murphy
                                                  Michele H. Murphy
                                                  OPPENHEIM + ZEBRAK, LLP
                                                  4530 Wisconsin Avenue NW, Fifth Floor
                                                  Washington, DC 20016
                                                  Tel: 202-450-5643
                                                  michele@oandzlaw.com