# <u>Exhibit C</u>

| | |
|---|---|
| **Subject:** | RE: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274 |
| **Date:** | Friday, November 8, 2024 at 9:19:04 PM Eastern Standard Time |
| **From:** | Sara.Sampoli@lw.com |
| **To:** | Jeff Kane, Laura.Bladow@lw.com, Thomas.Buettner@lw.com, Sy.Damle@lw.com, Alli.Stillman@lw.com, Sarah.Tomkowiak@lw.com, Holly.Victorson@lw.com, Joe.Wetzel@lw.com |
| **CC:** | Uriel Lee, Kevin Lindsey, Michele Murphy |
| **Attachments:** | image001.png |

Counsel,

Thank you for identifying the below issues.  We are free on the following times for a conferral:

- Thursday, November 14 at 1:00pm
- Thursday, November 14 at 4:00pm

At our conferral, we will be prepared to discuss the following issues:

- **Issue 3: Revenue from Infringements (RFPs 33, 34, 39, 47)**.
  - We will be prepared to discuss our current understanding whether Google maintains any information on historical bids for Shopping Ads.
- **Issue 4: Google Personnel/Org Charts/Departments (RFPs 2, 41, 42)**.
  - We will be prepared to discuss Plaintiffs' proposal for identifying relevant custodians and search terms.
- **Issue 5: Time Period**
  - We will be prepared to discuss Plaintiffs' proposal for modified time periods on certain of their RFPs.
- **Issue 6: Infringement Notices from Other Parties (RFP 37)**.
  - We will be prepared to discuss Google's responses and objections to RFP 37.

With respect to the new issues you have raised, the relevant RFPs **(RFPs 45, 47, and 48)** appear overbroad, not proportionate to the needs of the case, and seeking privileged information.  With respect to RFP 45, for example, we explained that the request for "all documents concerning the Digital Books Shopping Ads Policy" was vastly overbroad to the extent it sought communications not reasonably connected to Plaintiffs' allegations in this proceeding.  And with respect to RFP 48, we explained that it was oppressively burdensome because it asked Google to identify unspecified lawsuits involving one or more Plaintiffs, commenced at any point in the past against any Shopping Ads Merchants.  We limited our responses to these requests to appropriately cabin discovery to relevant and proportional non-privileged information.  In order to have a productive conversation about these requests, we need to understand Plaintiffs' position regarding why you believe you are entitled to the broad scope of documents sought by these RFPs.

We also seek clarification about your request that Google "explain whether it uses a system to process Shopping Ads Infringement Notices" and "what that system might contain with respect to RFP 22, RFP 29, and RFP 31, and how it can be searched."  This request was posed in the context of Issue 3 (involving org charts), and it's not clear to us what relation these RFPs have to the org chart issue or what Plaintiffs' basis is for requesting this information at this time.

Given our conferrals and exchanges to date, the parties appear to be at an impasse on the following issues:

- **Issue 1: Related Ad Merchants (RFPs 25-27, 29, 31, 36, 38, 44)**.
    - We agree with your assessment that we are at an impasse regarding whether discovery into so-called "Related Ads Merchants," *i.e.*, merchants that share " a common identity, common or related business or website ownership or operation, or other similarity that demonstrates a business connection or link between Google account holders" is proper in this action under Rule 26(b)(1).
    - During our October 25 conferral, Google reiterated its position, which was also stated during the October 17 call, that while it is not obligated to produce any information about related merchants to raise a defense under the DMCA safe harbor, it is willing to investigate whether any relevant merchants that were implicated by Plaintiffs' notices concerning the Asserted Works in this case were subject to Google's efforts to combat clusters of bad actors. To be clear, Plaintiffs' requests to Google did request or require any investigation of Google's "cluster enforcement" practices, and Google has never waived any of its objections by stating its willingness to perform such an investigation. As we have now stated on October 17 and 25 and in our correspondence dated October 21, 23, and November 5, to the extent the relevant merchants were subject to any cluster enforcement efforts, we will produce documents reflecting those efforts.
    - Our understanding of Plaintiffs' position is that because Google must terminate repeat infringers to be eligible for the DMCA safe harbor, Plaintiffs are entitled to demand that Google investigate "related" merchants based on Plaintiffs' interpretation of "repeat infringers" to mean something broader than account holders.

- **Issue 9: Google's DMCA Policy for Shopping Ads (RFP 6)**.
    - The parties have no dispute about the substance of this issue. At our October 25 conferral, Google agreed to prioritize producing Google's DMCA policies once the Court enters a protective order.
    - We agree with your assessment, however, that we are at an impasse with respect to Plaintiffs' request that Google describe the "reasonable search" that Google would run in response to this and other RFPs. Google has explained that it will produce documents as agreed its R&Os and, in conducting a search for such documents, would meet its obligations under Federal Rules of Civil Procedure 26 and 34—that is all that is required. *See Raine Grp. LLC v. Reign Capital, LLC*, 2022 WL 538336, at *1 (S.D.N.Y. Feb. 22, 2022) ("Federal Rules of Civil Procedure 26 and 34 require parties to conduct a reasonable search for documents that are relevant to the claims and defenses."). Plaintiffs have provided no legal or factual basis supporting any entitlement to discovery into discovery. *See Haroun v. ThoughtWorks, Inc.*, No. 20-0100, 2020 WL 6828490, at *1 (S.D.N.Y. Oct. 7, 2020) ("When the discovery sought is collateral to the relevant issues (*i.e.*, discovery on discovery), the party seeking the discovery must provide an 'adequate factual basis' to justify the discovery, and the Court must closely scrutinize the request 'in light of the danger of extending the already costly and time-consuming discovery process *ad infinitum*.'").

We are diligently continuing to investigate the following issues and will provide Plaintiffs with updates once we have them:

- **Issue 3: Revenue from Infringements (RFPs 33, 34, 39)**.

- ○ Google fully maintains its objections that any revenue beyond the Shopping platform is not relevant or proportional to the claims and defenses at issue in this case—indeed, Plaintiffs themselves complained during our October 31 conferral that Google's requests regarding Plaintiffs' enforcement efforts were not limited to the Shopping platform.  However, solely for purposes of investigating a potential compromise on this dispute, Google continues to investigate the feasibility and burden of producing a broader scope of information about revenues tied to ad accounts.  Google reserves all rights to stand on its objections.

- **Issue 6: Infringement Notices from Other Parties (RFPs 27-28)**.
  - ○ Google's investigation into (1) whether there is data that can easily be pulled reflecting notices sent by other parties about the relevant merchants in this case; and (2) whether it is possible for two merchant accounts to advertise the same domain, is ongoing.  Google maintains its objections and reserves all rights.

- **Issue 7: Information Provided to Google (RFPs 35-36)**.
  - ○ Google is looking into the feasibility and/or burden of producing the kind of "ad reports" that Plaintiffs requested, which Plaintiffs represented on our October 25 call cover the information requested in bullets 4, 5, 6, and 7 to RFP 36.  With respect to the first bullet to RFP 36, as we agreed on the October 25 call, Google will also produce non-privileged documents, maintained in the ordinary course of business and located after a reasonable search, reflecting any identifying or merchant account information associated with merchants identified in the notices sent from Plaintiffs to Google regarding the works at issue in this proceeding.

Finally, we have the following update to share about **Issue 8**:

- **Communications with AAP (RFP 52)**: While we are still investigating the full scope of this request based on the information Plaintiffs provided on October 25, we will produce nonprivileged documents responsive to this request in our possession, custody, or control that relate to topics and categories for which Google has already agreed to produce documents, *e.g.*, documents reflecting Google's "actual policies, practices, and procedures concerning removing digital books or ebooks listings from Shopping Ads" (RFP 45), documents reflecting "Google's policies, practices, and procedures concerning actions taken by Google in response to copyright infringement notices concerning ads and listings on the Google Shopping platform generally" (RFPs 6, 50), documents reflecting "actions taken by Google to limit unauthorized sellers of ebooks from advertising on the Shopping platform" (RFP 8), and "reports, studies, summaries, or analyses . . . evaluating copyright or trademark infringement by merchants selling unauthorized ebooks on the Google Shopping platform" (RFPs 9, 32).

Thanks,
Sara

**Sara Sampoli**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Direct Dial: +1.202.350.5328
Email: sara.sampoli@lw.com
https://www.lw.com

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Wednesday, November 6, 2024 1:44 PM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Buettner, Thomas (CH) <Thomas.Buettner@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Wetzel, Joe (Bay Area) <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

First, on Issue 1 (Related Ads Merchants), we agree that the parties are at an impasse on this issue. Your suggestion that the parties have not discussed RFP 44 is incorrect. The issue of Related Ads Merchants affects numerous requests; your own email listed eight of them. For efficiency, both sides have discussed these requests collectively, referencing specific requests as appropriate to facilitate the discussion. The two sides thus discussed RFP 44 in both the October 17, 2024 meet-and-confer, and in the October 25, 2024 meet-and-confer, as evidenced by the references to RFP 44 in my October 22 email, my November 4 email, and your November 5 email. Moreover, Google's objections to RFP 44 incorporate Google's response to RFP 27 (which in turn incorporates Google's objections to RFP 3, RFP 4, RFP 22, and RFP 24), which the parties discussed specifically and at length. If there are additional points you believe would be helpful to discuss on the issue of RFP 44 in particular, please identify what they are.

Google's offer to "investigate" whether Google previously identified any of the Infringing Merchants as part of "clusters of bad actors" is insufficient to determine whether Google terminated the infringer, as opposed to one account of the infringer, and in the other ways we've explained. Courts have made clear what is evident from the DMCA's text: terminating a repeat infringer means actually removing the infringer, not taking some action short of that. *Atl. Recording Corp. v. Spinrilla, LLC*, 506 F. Supp. 3d 1294, 1318 (N.D. Ga. 2020); *Capitol Records, LLC v. Escape Media Grp., Inc.*, 2015 WL 1402049, at *9-12 (S.D.N.Y. Mar. 25, 2015); *BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*, 149 F. Supp. 3d 634 (S.D.N.Y. Dec. 1, 2015), aff'd in part, rev'd on other grounds, *BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*, 881 F.3d 293 (4th Cir. 2018). And, in any case, Google has failed to provide any results from its supposed "investigation" in the more-than two months since Plaintiffs sent our Requests.

Second, you claim to be "unclear which issues Plaintiffs contend would benefit from further conferral." My November 4, 2024 email lays out these issues in detail. But to remove any doubt, some of the issues we would like to discuss are:

- On Issue 3 – Google needs to update Plaintiffs on what revenue is included in the "Ad Accounts" for which Google suggested producing revenue information. And Plaintiffs would like to discuss the questions Plaintiffs raised below about RFP 39 and RFP 47.

  In addition, we would like to discuss Google's representation that it "does not maintain historical bid information." Google provides reports to Shopping Ads merchants detailing metrics like "outranking share" and "overlap rate." These metrics track how often one

advertiser's ad ranked higher than another advertiser's ad, and how often two advertisers received an impression at the same time. Link.  According to Google, this data is available going back to 2014. *Id.* We would like to discuss whether the data that generates these reports is responsive to RFP 39. Further, to the extent pirate sites are using automated billing, Link, we would like to understand how Google determines the amount an advertiser will bid if Google does not have historical information on prior bids.

- On Issue 4 – Plaintiffs would like to discuss the proposal we made with respect to custodians and search terms, as well as our question about RFP 22, RFP 29, and RFP 31.

- On Issue 5 – Plaintiffs would like to discuss the proposal we made regarding time-periods for particular requests, as well as our question about RFP 6 and RFP 7.

- On Issue 6 – Google agreed to look into providing notice data, as opposed to notices. Google needs to update Plaintiffs on this approach.

- On Issue 7 – Google needs to update Plaintiffs on whether Ad Reports would capture the information identified in these requests. Google also needs to update Plaintiffs on the first, fourth, fifth, sixth, and seventh bullets of RFP 36, and Plaintiffs would like to discuss what Google proposes to produce in response to RFP 37.

- On Issue 8 – Google' written responses and objections agreed to meet-and-confer on this request. Plaintiff provided substantial information concerning this request during the October 25 meet-and-confer; Google had no response on that call and has made no response since. Google needs to inform Plaintiffs of how it intends to respond to this request.

- On Issue 9 – we take from your statements during the October 25, 2024 meet-and-confer and your November 5 email that Google is refusing to confer further on this request.

- On Issue 10 – RFP 45 requested several categories of documents, including communications concerning Google's ebooks policy, documents concerning the development of this policy, and documents concerning the implementation of this policy. Google's written objections state that Google will produce only documents "reflecting Google's actual policies, practices, and procedures concerning removing digital books or ebooks listings from Shopping Ads." Plaintiffs would like to understand Google's basis for limiting its response in this fashion.

- On Issue 11 – Google's written objections state that Google is willing to meet and confer on RFP 48. Among other things, it appears that Google is refusing to search for documents related to the identified cases specifically. Plaintiffs would like to understand Google's basis for this refusal.

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor

Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

---

**From:** Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>
**Date:** Tuesday, November 5, 2024 at 21:38
**To:** Jeff Kane <JKane@oandzlaw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>,
Thomas.Buettner@lw.com <Thomas.Buettner@lw.com>, Sy.Damle@lw.com
<Sy.Damle@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>,
Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Holly.Victorson@lw.com
<Holly.Victorson@lw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele
Murphy <michele@oandzlaw.com>
**Subject:** RE: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests
for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

We agree that a separate conferral is appropriate to discuss the protective order and ESI protocol. We
are free on Monday (11/11) at 10:30am ET to discuss those documents. To maximize the efficiency of
our conferral time, please provide us with the topics you would like to discuss in advance.

Regarding the discovery issues identified in your email, we think our conversation will be more
productive if you identify the issues that you think warrant a discussion and your position on those
issues. We conferred with you for an additional 30 minutes beyond the scheduled block on October 25
to get through all of the issues Plaintiffs raised. It is unclear which issues Plaintiffs contend would benefit
from further conferral. With respect to the two new issues that you've raised, for example, it's not clear
to us what aspects of our responses you find deficient. We agreed to produce certain documents in
response to both RFPs 45 and 48, and it would be helpful for us to know what additional documents you
believe you are entitled to. Once we have a better understanding of what issues you plan to address on
a third conferral call, we can find a time to schedule one.

In addition, please find below some points from our October 25 call that were missing or different from
your summary below.

**Issue One: Related Ads Merchants (RFPs 25-27, 29, 31, 36, 38, 44)**

- The parties have not discussed RFP 44 specifically on any calls to date.
- Your summary mischaracterizes Google's position. During the October 25 call, Google reiterated
  its position, which was also stated during the October 17 call, that while it is not obligated to
  produce any information about related merchants to raise a defense under the DMCA safe harbor,
  it would be willing to produce documents regarding Google's efforts to combat clusters of bad
  actors to the extent relevant to the merchants at issue in this case. In other words, Google has
  agreed to investigate whether any relevant merchants that were implicated by Plaintiffs' notices

were subject to any cluster enforcement.

- Plaintiffs reiterated their position that to be eligible for the DMCA safe harbor, Google must terminate repeat infringers, which has broader meaning than account holders, and that Plaintiffs are entitled on that basis to demand that Google investigate "related" merchants.
  - Google again invited Plaintiffs to identify any caselaw supporting this position, but Plaintiffs have yet to identify any authority supporting their interpretation of 17 U.S.C. § 512(i)(1)(A).

## Issue Two: Limiting Responses to eBooks (RFPs 8-11, 14, 15)

- For the avoidance of doubt, the parties did not discuss RFPs 11, 14, and 15 during the October 25 call.
- With respect to RFPs 8-10, Google explained that its agreement to provide high-level documents about Google's DMCA policy in response to RFPs 11, 14, and 15 more than covers what is reasonable in this case.
- Google has made its position on RFPs 8-10 clear.  Plaintiffs' offer to narrow RFP 10 to all documents constituting or concerning reports, studies, summaries, research, presentations, analyses, or similar documents concerning "pirate websites that advertise on the Shopping platform and that traffic in allegedly copyright-infringing content" does not resolve Google's objection that the request is unreasonably broad to the extent it seeks information about products not at issue in this litigation.

## Issue Three: Revenue from Infringements (RFPs 33-34, 39)

- With respect to RFP 39, Google informed Plaintiffs that it does not maintain historical bid information in the ordinary course of business.
- With respect to RFPs 33-34, Google maintains its position that while the requests are overbroad and only the revenue received from the implicated merchants concerning the Shopping ads at issue are relevant.  However, without waiving its objections and in the interest of finding a compromise, Google agreed to investigate the feasibility and burden of producing a broader scope of information about revenues tied to the ad accounts connected to the merchants implicated by Plaintiffs' notices.
  - Google asked Plaintiffs to clarify whether they continue to seek revenues from sources beyond Shopping and ad accounts.
    - Plaintiffs maintained their position that the entirety of Google's revenue, from any source, from purportedly infringing merchants is relevant to statutory damages, regardless of the source of that revenue (e.g., subscriptions, merchandise, etc.).  Google expressed its disagreement on that point, as even the statutory damages factors only examine profits *resulting from the claimed infringement*.
    - Google agreed to continue its investigation into the scope of ads revenue, and that investigation is ongoing.

## Issue Four: Google Personnel/Org Charts/Departments (RFPs 2, 41, 42)

- Google explained that because it does not keep static org charts, responding to this RFP would require Google to create custom documents.  It also explained that, as worded, these RFPs are overbroad because they seek documents identifying all employees with any responsibility for Shopping Ads from a company that has over 180,000 employees.
- Because this is an issue that has a parallel impact on Plaintiffs, Google proposed that a mutual exchange of custodians would be a reasonable and efficient solution for providing both parties with the information that they seek.
  - For clarification, Google did not represent that it would be too "confusing" to identify

departments and personnel responsible for the various functions Plaintiffs identified; it was Plaintiffs who represented that their organizational structure was less "confounding and confusing" than what they understood Google's to be.

- We will review and consider the proposal you provided for the first time in your November 4 correspondence.

**Issue Five: Time Period**

- Google explained that June 2021 to present is an appropriate time period not just because of the three-year statute of limitations, but because Plaintiffs' own allegations begin in June 2021 (see Am. Compl. ¶ 99). That being said, Google stated that it would be willing to consider a broader time period for certain subcategories of documents (Google explained, for example, that it would consider producing documents that tend to show strikes for the relevant merchants prior to June 2021 up to the lookback period under Google's DMCA policy).
- While acknowledging that their proposed start date of January 1, 2019 was "arbitrary," Plaintiffs offered two categories of documents that they believed might require a broader time period: 1) documents reflecting copyright infringement notices; and 2) Google's DMCA policies. Plaintiffs agreed to follow up with specific RFPs for Google's consideration.
- We will review and consider the proposal you provided for the first time in your November 4 correspondence.

**Issue Six: Notices Received from Other Parties (RFPs 27-28, 37)**

- The parties did not discuss RFP 37 on the October 25 call.
- Google clarified that in response to RFP 4, it would produce non-privileged documents maintained in the ordinary course of business reflecting adverse actions taken toward the relevant merchants in this case, regardless of whether the adverse action was spurred by a notice from Plaintiffs or someone else.
- Google explained its position that requesting *all* notices received by Google concerning the implicated merchants is overbroad and the information is not relevant or proportional to Plaintiffs' claims. Google stated, however, that it would be open to discussing providing certain data summarizing, or sufficient to identify, prior notices from other rightsholders and strikes relevant to Google's implementation of its DMCA policy.
  - In response, Plaintiffs indicated that summary data about infringement notices and strikes, rather than the notices themselves, might be sufficient.
  - Google agreed to investigate whether there is data that can easily be pulled reflecting notices sent by other rightsholders about the relevant merchants in this case.
- Google asked Plaintiffs to explain whether there is any difference between what Plaintiffs are seeking in RFP 27 (notices about Infringing Merchants) and RFP 28 (notices about Infringing Domains). Plaintiffs stated that it depends on whether more than one Shopping Merchant account can advertise the same domain. If not, then RFP 28 would be duplicative of RFP 27.
  - In response, Google agreed to confirm whether it is possible for two merchant accounts to advertise the same domain.

**Issue Seven: Information Provided to Google (RFPs 35-36)**

- With respect to RFP 35, Google explained that the request is incredibly overbroad, burdensome, and asks for documents with limited relevance to Plaintiffs' claims.
  - In terms of burden, Plaintiffs explained their understanding that Google can produce an "ad report" showing all ads that Google ran on behalf of each merchant. Google agreed to look into the feasibility of producing the kind of "ad reports" that Plaintiffs believe exist.

- With respect to RFP 36, Google explained that the request seeks information regarding a number of different categories, and all of these categories are either covered by other discovery requests or not relevant and proportional to Plaintiffs' claims.
  - Category 1 (bullets 1-3):
    - Without waiving its objections, Google agreed to confirm that the identifying information requested is being produced in response to other Requests, such as RFP 24.
  - Category 2 (bullets 4, 5, 7):
    - Google explained that information about items advertised/ads run by the relevant merchants is largely irrelevant except with respect to the noticed Ads and noticed domains, which would be captured by other RFPs.
    - Notwithstanding that position, Google agreed to explore the burden of producing information in response to these bullets in connection with the "ad reports" identified by Plaintiffs.
  - Category 3 (bullet 6):
    - Google explained that information about domains and landing pages associated with all of the relevant merchants' shopping ads is not relevant to Plaintiffs' claims.
    - Google agreed that if this information is already being collected in response to other RFPs, Google will produce it. Otherwise, however, Google will not agree to canvas all the ads run on behalf of the relevant merchants in this case to respond to this portion of RFP 36.
  - Category 4 (bullet 8):
    - Google explained that information about other Google services used by the relevant merchants in this case is not relevant to Plaintiffs' claims and that Google would maintain its objection to this portion of RFP 36.

**Issue Eight: Communications with AAP (RFP 52)**
- Plaintiffs explained their position that this information is relevant to their deceptive trade practices claim and relates to Google's purported eBook ban.
- Google agreed to consider Plaintiffs' position on relevance and investigate what communications it might have responsive to this Request.

**Issue Nine: Google's DMCA Policy for Shopping Ads (RFP 6)**
- Google agreed to prioritize producing Google's DMCA policies once the Court enters a protective order.
- In response to Plaintiffs' request that Google describe the "reasonable search" that Google would run in response to this and other RFPs, Google explained that it would produce the documents as agreed its R&Os and, in conducting a search for such documents, would meet its obligations under Federal Rules of Civil Procedure 26 and 34.  Plaintiffs have shown no basis for discovery into discovery at this time.

Thanks,

Sara

**Sara Sampoli**

<span style="color:darkred">**LATHAM & WATKINS** LLP</span>

555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Direct Dial: +1.202.350.5328
Email: sara.sampoli@lw.com
https://www.lw.com

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Monday, November 4, 2024 2:16 PM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Buettner, Thomas (CH) <Thomas.Buettner@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Wetzel, Joe (Bay Area) <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

Below is a summary of parties' positions on several issues related to Plaintiffs' First RFP. Also included are two new issues. We suggest a meet-and-confer on these issues. We also suggest the parties meet and confer on the protective order/ESI protocol. It probably makes sense for these to be separate calls. We are available at the below times.

- Tuesday 11/5 – 9:30–10:45, 12–1, 2:45–5:00 ET
- Wednesday 11/6 – 10:15–1 ET
- Thursday – 9:30–1:45, 3:00–5:00 ET
- Monday 11/11 – 10:15–5:00 ET

**Issue One: Related Ads Merchants (RFP 25, RFP 26, RFP 27, RFP 29, RFP 31, RFP 36, RFP 38, RFP 44)**

For the Requests involving "Related Ads Merchants" (RFP 25, RFP 26, RFP 27, RFP 29, RFP 31, RFP 36, RFP 38, RFP 44), Latham did not provide any updates on what "algorithms and checks" Google performs to identify "clusters of bad actors." Nor has Google provided this information subsequent to the October 25, 2024 meet-and-confer. Plaintiffs informed Google that this issue likely will be the subject of motion practice.

Google instead maintained its position that Google does not affirmatively link related merchants and does not have an obligation to do so. Latham represented that if Google terminates one of a pirate seller's accounts, Google has no obligation to terminate any other related accounts the Pirate Seller owns. E.g., if Google terminates one merchant account for violating Google's repeat infringer policy, and the same entity that operates that merchant account also operates twelve other merchant accounts, Google's position is that the DMCA does *not* require Google to terminate these other twelve accounts. Plaintiffs disagree with Google's position. And, in any case, this information is relevant to Google's knowledge and other issues.

**Issue Two: Limiting Responses to eBooks (RFP 8–11, 14, 15)**

With respect to copyright (as opposed to trademark) infringement:

- Google stated in its written objections that its responses to RFP 8, RFP 9, RFP 10, RFP 11, RFP 14, and RFP 15 would be limited to documents concerning eBooks. During the October 17, 2024 meet-and-confer, Google represented that its responses to RFP 11, RFP 14, and RFP 15 would *not* be limited to ebooks.

- For RFP 8, RFP 9, and RFP 10, Latham confirmed during our October 25, 2024 meet-and-confer that Google's DMCA Policy for the Shopping platform is not limited to ebooks. Nonetheless, Google maintained that with respect to copyright infringement, Google will limit its responses to documents concerning ebooks.

- For RFP 8 and RFP 9, as we explained, this is unacceptably narrow. Since Google's DMCA program is not limited to ebooks, Plaintiffs are entitled to internal reports Google has prepared concerning copyright infringement on the Shopping platform, regardless of whether that infringement involves ebooks specifically.

- For RFP 10, Plaintiffs are willing to narrow this request to pirate websites that advertise on the Shopping platform and that traffic in allegedly copyright-infringing content. Please let us know by Friday November 8 if this is acceptable to Google.

**Issue Three: Revenue from Infringements (RFP 33–34, 39)**

With respect to RFP 39, Google represented that it does not maintain historical bid information concerning Shopping Ads auctions. Please clarify whether Google maintains any information on historical bids for Shopping Ads, including winning bids, names of bidders, aggregated bid data, and prices paid.
In addition, for our next meet-and-confer, please be prepared to discuss Google's objections to RFP 47 (methodology for pricing Shopping Ads).

For RFP 33 and RFP 34, during the October 17, 2024 meet-and-confer, Google suggested producing revenue from "Ads accounts" as a compromise. Latham agreed to get back to us on what revenue streams would be included in "Ads accounts". During the October 25, 2024 meet-and-confer, Latham did not provide us this information. Nor have you provided it to us since.

**Issue Four: Google Personnel/Org Charts/Departments**

During our October 25, 2024 meet-and-confer, Latham was unable to answer the basic question of what department(s) are involved in the processing of Infringement Notices. Latham also declined to say whether Google has a list of employees who work in various departments.

Plaintiffs remain concerned about how Google will compile a list of relevant custodians and search terms, given Latham's representation that it is too "confusing" to identify departments and personnel responsible for the various functions Plaintiffs identified. During our October 25, 2024 meet-and-confer, Plaintiffs asked how Latham will compile a list of custodians and search terms. Latham's response that it will compile the list "the same way as your clients will" does not address Plaintiffs' concerns.

With that caveat, for the below RFP, Plaintiffs are willing to discuss a protocol for devising custodians and search terms.

- RFP 6 (policies and implementation re copyright infringement)
- RFP 7 (policies and implementation re trademark infringement)
- RFP 8 (technology for copyright infringement in Shopping Ads)
- RFP 9 (reports on copyright infringement by Shopping Ads Merchants)
- RFP 10 (reports on copyright infringement by pirate websites generally)
- RFP 13 (policies/procedures considered but not adopted)
- RFP 14 (impact or effectiveness of copyright infringement policies)
- RFP 15 (reports concerning processing of Infringement Notices)
- RFP 16 (reports on Infringement Notices)
- RFP 20 (public statements)
- RFP 32 (reports on other illegal activity by Shopping Ads Merchants)
- RFP 45 (docs concerning Digital Books Shopping Ads Policy)
- RFP 48 (GAPS cases)
- RFP 49 (history off)
- RFP 52 (AAP communications)

We suggest Google provide a list of the custodians it believes are relevant to the above requests by an agreed-upon date. For each custodian, Google would identify the individual's title(s) during the relevant period (see Issue Five below), a brief description of the individual's relevance, and the RFP(s) with respect to which Google believes the custodian has relevant information. After reviewing Google's list, Plaintiffs would send a revised list of custodians, and a list of search terms. Google would run the search terms and report back on the number of hits. The parties would also agree that custodians and search terms can be added and that they will attempt to resolve any disputes regarding additional custodians and search terms in good faith.

For the parties to proceed with the custodian/search term approach outlined above, Google would have to withdraw or substantially alter its objections to RFP 2 (departments/personnel), RFP 41 (employees involved in Shopping Ads for Plaintiffs), and RFP 42 (employees involved in Shopping Ads for Infringing Merchant) insofar as they apply to the Requests above.

For the below RFP, it appears to Plaintiffs that some of the relevant documents might be housed in whatever system Google uses to process Infringement Notices and to take action against merchants who violate Google's DMCA Policy.

- RFP 22 (communications concerning Plaintiffs' notices)
- RFP 29 (communications with Infringing Merchants)
- RFP 31 (red flags for Infringing Merchants)

It would be helpful if Google could explain whether it uses a system to process Shopping Ads Infringement Notices, communicate with merchants, and/or communicate internally at Google about notices and merchants. If so, please explain what that system might contain with respect to RFP 22, RPF 29, and RFP 31, and how it can be searched.

**Issue Five: Time Period**

Plaintiffs proposed a time period of January 1, 2019 through the present; Google proposed a time period starting June 5, 2021. For the below RFP, Plaintiffs propose a compromise of March 1,

2020 (roughly half-way between the two proposals).
- RFP 1 (legal entity)
- RFP 2 (departments/personnel)
- RFP 3 (each notice from a Shopping Ads Merchant and how processed)
- RFP 4 (adverse actions against Shopping Ads Merchants for copyright infringement)
- RFP 5 (adverse actions against Shopping Ads Merchants for other than copyright infringement)
- RFP 8 (technology for copyright infringement in Shopping Ads)
- RFP 9 (reports on copyright infringement by Shopping Ads Merchants)
- RFP 10 (reports on copyright infringement by pirate websites generally)
- RFP 11 (systems for Infringement Notices)
- RFP 12 (policies for Related Ads Merchants)
- RFP 13 (policies/procedures considered but not adopted)
- RFP 14 (impact or effectiveness of copyright infringement policies)
- RFP 15 (reports concerning processing of Infringement Notices)
- RFP 16 (reports on Infringement Notices)
- RFP 17 (circumstances in which you would reject a notice)
- RFP 18 (duplicate notices)
- RFP 19 (reinstated merchants)
- RFP 20 (public statements)
- RFP 21 (scripted responses to notices)
- RFP 23 (policies for sharing infringement notices)
- RFP 24 (Infringing Merchants' associated websites)
- RFP 25 (Related Ads Merchants)
- RFP 26 (Google services used by each Infringing/Related Ads Merchant)
- RFP 32 (reports on other illegal activity by Shopping Ads Merchants)
- RFP 39 (info on ads run for Plaintiffs)
- RFP 40 (info on ads run for Plaintiffs)
- RFP 41 (employees involved in Shopping Ads for Plaintiffs)
- RFP 42 (employees involved in Shopping Ads for Infringing Merchants)
- RFP 43 (visitors to landing page)
- RFP 46 (procedures for labeling accounts "verified")
- RFP 47 (auction methodology)
- RFP 49 (history-off conversations)
- RFP 50 (whether/under what circumstances Google would terminate merchants in other platforms based on Shopping Ads notices)
- RFP 51 (DMCA Agent)
- RFP 52 (AAP)
- RFP 53 (financial performance)
- RFP 54 (performance of Shopping Ads)
- RFP 55 (affirmative defenses)
- RFP 56 (ROGS, RFA)
- RFP 57 (subpoenas)
- RFP 58 (exhibits)

For the below RFP, a longer time-period is appropriate. Plaintiffs propose June 1, 2019.
- Request 22 (communications concerning Plaintiffs' notices)
- RFP 27 (notices from others concerning Infringing Merchants)

- RFP 28 (notices from others concerning Infringing Domains)
- RFP 29 (communications with Infringing Merchants)
- RFP 30 (info on Infringing Merchants/Infringing Domains)
- RFP 31 (red flags for Infringing Merchants)
- RFP 33 (revenue)
- RFP 34 (revenue)
- RFP 35 (information provided by the Infringing Merchants)
- RFP 36 (information on Infringing Merchants)
- RFP 37 (ads run for Infringing Merchants)
- RFP 38 (ads run for products the Infringing Merchant advertised)
- RFP 44 (common relationships among Infringing Merchants)
- RFP 45 (docs concerning Digital Books Shopping Ads Policy)
- RFP 48 (GAPS cases)

For the below RFP, the relevant time-period likely depends on when Google adopted or implemented the policies referenced in the RFP. Please let us know these adoption and implementation dates so that we can evaluate whether a time-period other than the one listed in our RFP might be agreeable.
- RFP 6 (Policies and implementation re copyright infringement)
- RFP 7 (Policies and implementation re trademark infringement)

**Issue Six: Notices Received from Other Parties Concerning Infringing Merchants**

- For RFP 4, Google clarified that it will produce documents showing strikes assessed against all of the Infringing Merchants, i.e., any Shopping Ads Merchant who was the subject of a notice Plaintiffs sent to Google concerning the works-in-suit, regardless of whether the strike resulted from a notice from Plaintiffs or someone else.

- For RFP 27 and RFP 28, Latham took the position that Google would not produce any notices regarding Infringing Merchants received from parties other than the Plaintiffs. As we explained on the call, such notices are highly relevant to Google's knowledge (i.e., a notice from another party could have informed Google that a merchant was infringing) and to Google's DMCA defense (i.e., Google's actions in response to notices about an Infringing Merchant are relevant to whether Google reasonably implemented its DMCA Policy). Latham agreed to look into providing notice data for all notices received concerning these Infringing Merchants (i.e., for each notice, data reflecting fields like notice date, noticing party, ad URL, product advertised, landing page URL, action taken in response, etc.). Please get back to us with Google's position as soon as possible.

**Issue Seven: Information that the Infringing Merchants Provided to Google (RFP 35 and 36)**
- For RFP 35, Google will look into producing Ad Reports for each Infringing Merchant (as we've defined in Issue Six above).

- For RFP 36:
  - For the first three bullets, Latham represented that it believed the information described is being produced in other Requests. Latham will confirm this, and identify the requests in response to which Google is providing this information.

- For the fourth, fifth, and seventh bullets, Plaintiffs explained that information on other products the Infringing Merchants advertised is relevant to whether Google was advertising exclusively infringing products for these merchants. Latham is going to get back to Plaintiffs on this request, including as to whether an Ads Report would contain this information.

- For the sixth bullet, Plaintiffs explained that this information is relevant to whether Google actually terminated repeat infringers, i.e., whether Google was terminating one ad for an infringing pirate site but allowing other ads for the same pirate site. As we explained, Google claims to evaluate landing pages to confirm that the sites' products are eligible for Shopping Ads, ¶ 75; ties the landing pages/sites to a particular merchant, ¶¶ 73–74; and evaluates landing pages/sites as part of its auction pricing. *United States v. Google*, 20-cv-03010, Dkt. 906 ¶ 641(b). Plaintiffs thus expect that Google has the information Plaintiffs have requested.

- For the eighth bullet, Google refused to produce any documents.

• For RFP 37 (information on ads for Infringing Merchants'/Related Ads Merchants' products), we remain unclear on what Google proposes to produce. To the extent Google is incorporating its responses to RFP 3, RFP 4, RFP 22, RFP 24, and RFP 27, please identify the requests in response to which Google intends to produce each of the bulleted items listed in RFP 37.

## Issue Eight: Communications with the Association of American Publishers

For RFP 52 (communications with Association of American Publishers), Plaintiffs explained the reasons for this request. Plaintiffs' understanding is that Google representatives were in high-level discussions with the Association of American Publishers regarding ways of addressing Shopping Ads for pirated ebooks. Plaintiffs identified to Google certain personnel involved and the relevant email domain for AAP (@publishers.org).

## Issue Nine: Google's DMCA Policy for Shopping Ads

Google confirmed that it will produce its DMCA Polic(ies) for Shopping Ads promptly as soon as the Court enters the protective order.

On this issue as well as others, Google refused to describe the search it intends to perform, other than to say that the search will comply with Rules 24 and 26. We encourage Google to meet and confer meaningfully on the searches it proposes to undertake. As we explained on the call, it is inefficient and improper for Google to wait for motion practice before explaining what it intends to search.

## Issue 10: Digital Books Shopping Ads Policy (RFP 45)

For our next meet-and-confer, please be prepared to discuss Google's objections to RFP 45 (documents concerning Google's Digital Books Shopping Ads Policy).

**Issue 11: Lawsuits against Pirates (RFP 48)**

For our next meet-and-confer, please be prepared to discuss Google's objections to RFP 48 (documents concerning prior lawsuits against pirates).


Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com


---

**From:** Holly.Victorson@lw.com <Holly.Victorson@lw.com>
**Date:** Wednesday, October 23, 2024 at 18:13
**To:** Jeff Kane <JKane@oandzlaw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Thomas.Buettner@lw.com <Thomas.Buettner@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>, Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>
**Subject:** RE: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Jeff,

We disagree with your mischaracterizations of the parties' positions in your email.  I do not address every mischaracterization in your email, but write instead to make clear Google's position regarding certain disputes.

**"Related Ads Merchants":** I stated on our call last week, and as stated below, we are investigating the processes by which Google identifies "clusters" of merchants for purposes of enforcement, which go above and beyond the requirements of the DMCA, and we agreed to produce documents reflecting those processes to the extent there exist such documents relevant to the merchants and issues in this dispute.  Plaintiffs have no legal basis for demanding production of unspecified "data fields" for all of Google's Shopping Ads merchants, or for demanding Google now perform custom investigations to identify new connections between merchants.  We disagree with Plaintiffs' apparent interpretation of the DMCA's requirements and your conclusions about how that will affect the case or Google's ability to assert its defenses.

**RFPs 8–10:** As we stated on the call, these requests, as drafted, are overbroad, as they would encompass collecting documents reflecting Google's analysis of, and efforts to address, all copyright and trademark infringement for *every product* advertised, or resident, on Google's platforms.  And contrary

to your representation on the call, these requests, as drafted, are not even limited to the Shopping platform.  Request No. 9 is limited to Shopping Ads *Merchants*, but not the *platforms* on which such merchants advertise or otherwise engage.  RFP No. 10 is not limited by platform or even limited by Shopping Ads Merchants.  Accordingly, we limited our agreement to produce responsive documents to these broad requests with respect to the ebooks category on the Shopping Ads platform only.  On our call last week, you acknowledged the breadth of these requests but did not propose any narrowing beyond the requests as drafted.  It is not Google's obligation to re-write Plaintiffs' overbroad RFPs.  If Plaintiffs propose a more reasonable scope for these requests, we will consider whether we can agree to a broadening of scope beyond what Google has already agreed.

We are willing to continue discussion of these and the other ongoing disputes, and we are in receipt of your additional issues and will be prepared to discuss on our next call.  We are available on Friday 10/25 at 3:30-4:30pm ET.

Regards,
Holly

**Holly Victorson**
Pronouns: she/her/hers

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.2336

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Tuesday, October 22, 2024 10:36 AM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Buettner, Thomas (CH) <Thomas.Buettner@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Wetzel, Joe (Bay Area) <Joe.Wetzel@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

Below are some points from our call with you last week that were missing or different from your summary below. Also included below are a few points to discuss during the next call. We are not available during the single one-hour window you provided. Here are some dates and times that work for us.

- Thursday 10/24 – 10:15–12:00, 1:30–5:00 ET
- Friday 10/25 – 10:15–11:45, 1:15–2:15, 3:15–5:00 ET
- Monday 10/27 – 10:15–3:00, 4:00–5:00 ET

**Issue One: Related Ads Merchants**

For the Requests we identified in our October 9, 2024 email (RFP 25, RFP 26, RFP 27,

RFP 29, RFP 31, RFP 36, RFP 38, RFP 44, the definition of "Related Ads Merchant"), Latham represented that upon receiving a takedown notice, Google does not affirmatively link related merchants or keep any linked information in the ordinary course of business. Latham represented that Google has "lots of algorithms and checks" that it performs in attempt to identify "clusters of bad actors." Latham is going to provide Plaintiffs with an explanation of what those procedures are.

As we explained during our call, Plaintiffs are open to discussing feasible ways for Google to provide this discovery. For example, if Google does not have any mechanism to search for Related Ads Merchants, Google can provide Plaintiffs with agreed-upon data fields for Shopping Ads Merchants (e.g., email addresses, landing pages, phone numbers, payment information, etc.) and Plaintiffs can determine whether the Infringing Merchants are connected to other Shopping Ads Merchants. Alternatively, if Google does have mechanisms in place to search for Related Ads Merchants, Google can perform this search and offer a 30(b)(6) witness to testify as to how it was accomplished.

This information is highly important to Plaintiffs' claims. In addition, to the extent Google declines to provide discovery into this issue, Google is foreclosed from offering such systems or processes as part of its defenses in this matter. In other words, if Google does not provide discovery into the processes it uses to identify and terminate Related Ads Merchants (both the systems or procedures themselves and the implementation of those systems or procedures), Google may not cite any of those systems as part of its defenses in this case. Nor may Google simply disclose "clusters" or other relationships that it uncovered without turning over data from which Plaintiffs can determine whether Google failed to identify other Related Ads Merchants.

**Issue Two: Limiting Responses to eBooks**

Latham clarified that Google's responses to RFP 11 (technology for processing infringement notices), RFP 14 (documents concerning the effectiveness of infringement policies and procedures), and RFP 15 (studies, etc. on efforts to improve processing) will not be confined to eBooks. Latham also clarified that its responses to these Requests will not be limited to data, but will include prose analyses and written documentation.
For RFP 8 (technology to address infringement in Shopping Ads), RFP 9 (studies, etc. concerning infringement on Shopping Ads), and RFP 10 (studies, etc. concerning infringement by pirate websites): With respect to copyright infringement (as opposed to trademark infringement), Latham will look into removing the limitation for eBooks. With respect to trademark infringement, Google is maintaining its objection to producing documents not related to eBooks. Plaintiffs disagree with Google's position.
For each of these six Requests, Google's responses indicate it will conduct a "reasonable search". Please describe the search Google proposes to conduct.

**Issue Three: Revenues from Infringing Merchants and Related Ads Merchants**

Latham acknowledged that Google will need to produce data on revenue it earned from Infringing Merchants. Latham proposed producing data on revenue earned from Shopping Ads, and from "Ads accounts." Latham will get back to Plaintiffs on what service or platforms are included in "Ads accounts." In addition, it would be helpful for Google to explain what other

revenue Infringing/Related Ads Merchants may have generated for Google, and for which of those Google proposes not producing data.

At this time, Plaintiffs' position remains that Google must disclose all revenue it earned from the Infringing Merchants and Related Ads Merchants, regardless of the platform or service that generated that revenue. However, if Google can provide the explanations indicated above, perhaps there is a narrower universe that will suffice.

As to Plaintiffs' requests concerning Google's auction pricing, Latham said Google is willing to produce some bid information. Latham is going to get back to Plaintiffs on what sort of data Google has with respect to the auctions it conducts for Shopping Ads. As we explained during the call, one issue to which this is relevant is the situation where a Publisher pays a higher price for an ad for its product because the second-highest bid came from a pirate seller. Our understanding is that Google prices Shopping Ads based in part on the bid of the second-highest bidder. So in instances where the Publisher was the winning bidder for an ad, the price the Publisher paid might have increased if the second-highest bid was from a pirate seller. Google's suggestion that it would limit its production of auction data to "bid information for Plaintiffs' ads reflecting the works in suit for which at least one merchant noticed by Plaintiffs was one of the top bidders" is thus underinclusive. The two sides can discuss this issue further during our next call.

**Issue Four: Google Personnel/Org Charts/Departments**

We are confused by your claim that Google "does not keep this information in the ordinary course of business . . . ." The Requests ask Google to identify departments and personnel responsible for various functions. We are unsure why collecting that information would be "unduly burdensome . . . ." Moreover, if this information is as difficult to compile as you suggest, we are concerned about how you will be able to compile a list of relevant custodians, which is the workaround you have suggested.

As to that suggestion, Plaintiffs are open to discussing this as an approach to certain Requests. It would be helpful if Google would describe in more detail what information Google proposes to provide to enable Plaintiffs to gain comfort with the custodians selected. As we explained during the last call, for a custodian/search term approach to be workable, the two sides would have to work out a mechanism for Plaintiffs to become familiar with the potentially relevant departments/personnel. We would suggest that Google agree to provide a list of the departments responsible for certain areas, such as those identified in RFP 2 (departments and personnel responsible for DMCA-related areas) and RFP 41 (employees involved in accepting/rejecting Shopping Ads), and a list of the employees who have worked in those departments since June 2020. The two sides can discuss during our next call.

With respect to RFP 42 (employees involved in accepting/rejecting Shopping Ads from the Infringing Merchants), we are unsure how Plaintiffs would be able to identify the specific employees involved in accepting/rejecting Shopping Ads from the Infringing Merchants. We suggest discussing this on our next call.

**Issue Five: Time Period**

The two sides did not discuss this issue on our last call; we can discuss it on our next one.

**Issue Six: Notices Received from Other Parties Concerning Infringing Merchants**

For RFP 27 (info on infringement notices Google received concerning the Infringing/Related Ads Merchants) and RFP 28 (information on notices Google received about the Infringing Domains), it appears that Google proposes limiting its response to notices received from the Plaintiffs. However, notices from other parties concerning the Infringing/Related Ads Merchants or the Infringing Domains goes directly to Google's knowledge, and to its DMCA defense.

For RFP 37 (information on ads for Infringing Merchants'/Related Ads Merchants' products), Plaintiffs are unclear as to what Google proposes to produce.

**Issue Seven: Information that the Infringing Merchants Provided to Google**

RFP 35 (information provided to Google by Infringing/Related Ads Merchants), Google has refused to produce documents responsive to this request. We would like to discuss this on the next call.
For RFP 36 (identifying information for Infringing Merchants), Plaintiffs are unclear as to what Google proposes to produce.

**Issue Eight: Communications with the Association of American Publishers**

For RFP 52 (communications with Association of American Publishers), Google indicated it would not search for documents but was willing to meet and confer. Plaintiffs can provide some details on the reason for this request. Our understanding is that from approximately February 2022 through June 2022, several personnel from Google engaged in written correspondence and verbal discussions with personnel from the Association of American Publishers regarding the issue of infringing Shopping Ads and/or Google's practice of banning Shopping Ads from legitimate publishers but allowing such ads from pirate sellers. We understand the following Google employees were involved: Ran Baror, Chelsea Fine, Vishal Jain, and Jason Szczech.

**Issue Nine: Google's DMCA Policy for Shopping Ads**

Plaintiffs properly have requested documents concerning Google's DMCA policy for Shopping Ads and the implementation of that policy. RFP 6. Google has stated it will produce documents "reflecting Google's policies, practices, and procedures concerning actions taken by Google in response to copyright infringement notices concerning ads and listings on the Google Shopping platform generally." Please describe the "reasonable search" Google proposes conducting.

In addition, please confirm that Google has located its DMCA policy(ies) for Shopping Ads for at least the period June 2021 through the Present, and is prepared to produce these promptly once the protective order and ESI protocol are in place. Once the parties' disagreement on Issue Five above is resolved, Google can supplement these materials as necessary.

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

--

---

**From:** Holly.Victorson@lw.com <Holly.Victorson@lw.com>
**Date:** Monday, October 21, 2024 at 16:18
**To:** Michele Murphy <michele@oandzlaw.com>, Jeff Kane <JKane@oandzlaw.com>,
Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Thomas.Buettner@lw.com
<Thomas.Buettner@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>,
Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com
<Sarah.Tomkowiak@lw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>,
Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>
**Subject:** RE: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests
for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

We write to memorialize our discussions from the October 17 conferral call.

**"Related Ads Merchants" (definition and RFPs 25–27, 29, 31, 36, 38):** We explained that, as
drafted, Plaintiffs' definition of "Related Ads Merchants" makes these RFPs impossibly overbroad, and
that the entire line of discovery concerning "related" merchants is disproportionately burdensome to the
needs of the case.  We explained that Plaintiffs' apparent request that Google now conduct multiple
custom investigations to link "related" merchants for purposes of this litigation is unreasonably
burdensome and not required by the DMCA.  We stated Google does not agree with Plaintiffs' apparent
interpretation of "repeat infringers" in 17 U.S.C. § 512(i)(1)(A) as requiring proactive investigation of
related merchants, and we invited Plaintiffs to provide law to support their interpretation.
Notwithstanding those disagreements, we also relayed that we were willing to search for and produce
documents regarding Google's efforts to combat "clusters" of bad actors, to the extent any such
documents are applicable to the merchants reflected in Plaintiffs' notices for the asserted works, and to
the extent such documents can be found after a reasonable search.  However, we emphasized that any
"cluster" enforcement that Google undertakes is an effort that goes above and beyond Google's DMCA
policies and beyond the requirements of the DMCA.  We agreed to follow up with Plaintiffs regarding our
investigation concerning the existence of any cluster enforcement practices that may be relevant to the
merchants and works at issue in this case.

**Limitation of responses to ebooks (RFPs 8–11, 14–15):** For RFPs 8-10, we explained that Plaintiffs'
requests, as drafted, seek information concerning all copyright and trademark infringement on the

Shopping platform, which is disproportionally broad for this case, given the wide array of products on the Shopping platform.  We invited Plaintiffs to propose narrowed versions of these topics for consideration if, in fact, Plaintiffs seek some narrowed subset of documents responsive to these requests.  For RFPs 11, 14, and 15, in addition to our agreement to search for and produce documents as detailed in Google's responses, we agreed to search for and produce non-privileged, high-level documents describing Google's general DMCA processes and systems for the Shopping platform, including documents showing aggregated data and top-level statistics for DMCA notices and processing of the same, to the extent such documents exist and can be found after a reasonable search.

**Revenues (RFPs 33–34, 39):** With respect to RFPs 33 and 34, we explained that these requests were unreasonably broad and burdensome as drafted, as they would seek all revenues that Google may have received from a user associated with a merchant account in any context (e.g., revenues beyond any Ads, including subscription services, merch, devices, etc.).  We agreed to investigate the scope of revenue information that would be captured in connection with an Ads account associated with a Merchant Center account.  With respect to RFP 39, we agreed to investigate to what extent Google maintains historical bid information and whether it would be possible to provide at least some bid information for Plaintiffs' ads reflecting the works in suit for which at least one merchant noticed by Plaintiffs was one of the top bidders.  We also highlighted the concern that this request seeks sensitive business information that Plaintiffs may not want to share with each other.

**Personnel Information / Org Charts (RFPs 2, 41–42):** We explained that Google does not keep this information in the ordinary course of business, and responding to these requests would be unduly burdensome, requiring custom investigation and development of documents reflecting a wide set of teams over numerous years.  We suggested that the parties develop a mutual custodial exchange and conferral process by which the parties identify in good faith the custodians most likely to have information relevant to this action.  For example, the parties might exchange an agreed-upon number of proposed custodians, with each proposed custodian's name, title, dates of employment/dates the relevant position was held, and a brief description of their relevant duties.  The parties could also agree on a process, following such exchange, to confer regarding the proposed custodians and any suggested changes or topical gaps identified by the other party.

Finally, while we tentatively agreed to reconvene on Thursday (Oct. 24) this week to continue discussion of Plaintiffs' identified discovery issues, we are not available on that date.  We are, however, available at the same time block (2pm to 3pm ET) on **Friday, October 25**, if that works for you.

Regards,
Holly


**Holly Victorson**
Pronouns: she/her/hers

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.2336

---

**From:** Michele Murphy <michele@oandzlaw.com>
**Sent:** Saturday, October 12, 2024 2:35 PM
**To:** Victorson, Holly (DC) <Holly.Victorson@lw.com>; Jeff Kane <JKane@oandzlaw.com>; Bladow, Laura

(DC) <Laura.Bladow@lw.com>; Buettner, Thomas (CH) <Thomas.Buettner@lw.com>; Damle, Sy (DC-NY)
<Sy.Damle@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC)
<Sarah.Tomkowiak@lw.com>; Wetzel, Joe (Bay Area) <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>
**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production -
Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Thank you, Holly. This works for us. We will send an invite on Monday morning. Best, Michele

Michele H. Murphy
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, D.C. 20016
202.450.5643
michele@oandzlaw.com  |  www.oandzlaw.com



This e-mail and any attachments may contain information that is private, confidential, or protected by attorney-client or other privilege.
If you are not the intended recipient, please delete it from your system without copying, reviewing or distributing any portion and notify
sender by reply e-mail.

**From:** "Holly.Victorson@lw.com" <Holly.Victorson@lw.com>
**Date:** Friday, October 11, 2024 at 10:45 PM
**To:** Jeff Kane <JKane@oandzlaw.com>, "Laura.Bladow@lw.com" <Laura.Bladow@lw.com>,
"Thomas.Buettner@lw.com" <Thomas.Buettner@lw.com>, "Sy.Damle@lw.com"
<Sy.Damle@lw.com>, "Alli.Stillman@lw.com" <Alli.Stillman@lw.com>,
"Sarah.Tomkowiak@lw.com" <Sarah.Tomkowiak@lw.com>, "Joe.Wetzel@lw.com"
<Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele
Murphy <michele@oandzlaw.com>
**Subject:** RE: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for
Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

Thank you for providing the list of issues Plaintiffs would like to discuss.  We're available to confer on
Thursday, October 17 from 2:00-3:00pm ET.  If that time still works for you, please circulate a dial-in.

Regards,
Holly

**Holly Victorson**
Pronouns: she/her/hers

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.2336

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Friday, October 11, 2024 3:12 PM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Buettner, Thomas (CH) <Thomas.Buettner@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Wetzel, Joe (Bay Area) <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

We've made one revision to the times we sent earlier. We're available:
- Tuesday October 15 – 12:30–5:00 ET
- Wednesday October 16 – 10:15–4:15 ET
- Thursday Oct. 17 – 10:15–11:45, 1:15–5:00 ET

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Date:** Friday, October 11, 2024 at 13:14
**To:** Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Thomas.Buettner@lw.com <Thomas.Buettner@lw.com>, sy.damle@lw.com <sy.damle@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Holly.Victorson@lw.com <Holly.Victorson@lw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

Following up on the below chain. Please let us know when you are available to speak. We are

available at the following dates/times.

Tuesday October 15 – 11:30–5:00 ET
Wednesday October 16 – 10:15–4:15 ET
Thursday Oct. 17 – 10:15–11:45, 1:15–5:00 ET

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Date:** Wednesday, October 9, 2024 at 11:32
**To:** Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Thomas.Buettner@lw.com <Thomas.Buettner@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Holly.Victorson@lw.com <Holly.Victorson@lw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

Per your request, attached is a list of five issues we would like to cover during our call. There are, of course, other items that Plaintiffs wish to discuss in the future. But we're hoping it will be productive to start with the more limited set of items in the attached.

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

--

---

**From:** Holly.Victorson@lw.com <Holly.Victorson@lw.com>

**Date:** Tuesday, October 8, 2024 at 13:54
**To:** Jeff Kane <JKane@oandzlaw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>,
Thomas.Buettner@lw.com <Thomas.Buettner@lw.com>, Sy.Damle@lw.com
<Sy.Damle@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>,
Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Joe.Wetzel@lw.com
<Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele
Murphy <michele@oandzlaw.com>
**Subject:** RE: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests
for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

You don't often get email from holly.victorson@lw.com. Learn why this
is important

Hi Jeff,

Given the broad scope of requests in Plaintiffs' first set of RFPs, we need an identification of issues
Plaintiffs seek to discuss during your requested conferral in order to be prepared and have a productive
discussion.  Once you provide that information, we will be able to scope the call and provide times when
we are available to discuss.

Regards,
Holly

**Holly Victorson**
Pronouns: she/her/hers

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.2336

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Friday, October 4, 2024 11:20 AM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Buettner, Thomas (CH) <Thomas.Buettner@lw.com>;
Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah
(DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Wetzel, Joe (Bay
Area) <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy
<michele@oandzlaw.com>
**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production -
Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

We write to set up a meet-and-confer regarding Google's responses and objections to Plaintiffs'
First Requests for Production. We are available at the below dates/times. Please let us know what
works for you.

- Wednesday 10/9 – 10:15–2:00 ET
- Thursday 10/10 – 11:45–5:00 ET
- Friday 10/11 – 9:30–2:00, 3:30–5:00 ET
- Tuesday 10/15 – 11:30–4:15 ET

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

---

**From:** Thomas.Buettner@lw.com <Thomas.Buettner@lw.com>
**Date:** Thursday, October 3, 2024 at 21:43
**To:** Michele Murphy <michele@oandzlaw.com>, Jeff Kane <JKane@oandzlaw.com>, Uriel
Lee <ULee@oandzlaw.com>, Matt Oppenheim <Matt@oandzlaw.com>, Kevin Lindsey
<KLindsey@oandzlaw.com>
**Cc:** Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sy.Damle@lw.com
<Sy.Damle@lw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>,
Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>, Laura.Bladow@lw.com
<Laura.Bladow@lw.com>, Holly.Victorson@lw.com <Holly.Victorson@lw.com>
**Subject:** Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for
Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Some people who received this message don't often get email from
thomas.buettner@lw.com. Learn why this is important

Counsel,

Please find attached Google LLC'S Responses and Objections to Plaintiffs' First Set of Requests for
Production of Documents to Defendant Google LLC.

Regards,
Tom

**Thomas J. Buettner**
Litigation Analyst

**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.6528
Email: thomas.buettner@lw.com
https://www.lw.com

_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.

Attachment to October 9, 2024 Email from J. Kane to
Laura Bladow et al. (p. 25, *supra*)

*Cengage et al. v. Google*
24-cv-04274
October 9, 2024

### Items to Discuss re Google's October 3, 2024
### Response and Objections to Plaintiffs' First RFP

**Issue One: Related Ads Merchants**

- For several requests, Google has objected to producing documents concerning Related Ads Merchants, i.e., merchants who share a common identity, ownership, etc. with an Infringing Merchant.

- This includes Google' objections to, for example:

    o The definition of "Related Ads Merchant" (¶ 26 of Google's General Objections) (objecting to the definition "to the extent it includes entities unrelated to the allegations in Plaintiffs' complaint" and "to the extent it improperly requires Google to analyze documents or information in order to respond to the request.").

    o RFP 25 (which requests documents sufficient to identify the Related Ads Merchants), RFP 26 (services used by the Related Ads Merchants), RFP 31 (warnings concerning the Related Ads Merchants), RFP 29 (communications with the Related Ads Merchants) – Google proposed producing only account information associated with the "merchants identified in the notices sent from Plaintiffs to Google regarding the works at issue in this proceeding."

    o RFP 27 (infringement notices concerning Related Ads Merchants), RFP 36 (items advertised, other ads placed on behalf of the Related Ads Merchants, etc.), RFP 38 (info on Shopping Ads run by Related Ads Merchants) – Google proposed limiting its response to the works listed in the Amended Complaint or to Plaintiffs' notices.

- Among other things, Related Ads Merchants are central to Google's DMCA defense and to the issue of knowledge. Plaintiffs would like to discuss Google's position.

**Issue Two: Limiting Responses to eBooks**

- For several RFP, Google proposed limiting its response to documents concerning eBooks. This includes, for example:

    o RFP 8 (technology Google deploys to prevent copyright infringement in Shopping Ads)

    o RFP 9 (studies, reports, etc. regarding copyright infringement on the Shopping Ads platform)

    o RFP 10 (studies, etc. concerning infringement by pirate websites)

    o RFP 11 (automated systems used to address infringement notices)

    o RFP 14 (effectiveness of infringement policies and procedures)

    o RFP 15 (reports on processing of infringement notices)

- This narrow limitation does not seem consistent with the broadness of Google's DMCA defense.

**Issue Three: Revenues from the Infringements**

- Google suggested it would meet and confer regarding revenues Google earned related to the Infringing Merchants and Related Ads Merchants.
  - This includes RFP 33 and RFP 34, which concern revenues associated with Infringing Merchants and Related Ads Merchants.

- Of course, this information is relevant to, among other things, infringing profits and statutory damages.

- Google also stated it would meet and confer on RFP 39, which includes a request for bid information from the second- and third-highest bids for each ad that Google placed on behalf of Plaintiffs. As explained in the Amended Complaint, this information is relevant to determining the revenue Google earned from pirate merchants. Under Google's pricing system, the price the auction winner pays for an ad is based on the amount of the second-highest bid.

**Issue Four: Google Personnel/Departments/Org Charts**

- A few of Plaintiffs' requests ask for the departments and personnel responsible for various infringement- and DMCA-related tasks. This includes RFP 2, RFP 41, RFP 42.

- Google has stated it will meet and confer on these requests.

**Issue Five: Time Period**

- Plaintiffs proposed a time period of January 1, 2019 through the present; Google proposed a time period starting June 5, 2021. We'd like to discuss this. Among other things, infringements may have been brought to Google's attention prior to what Google has described as the start of the limitations period for the copyright claims. Further, relevant documents concerning Google's DMCA program may pre-date June 2021.