**Sy Damle**
Direct Dial: +1.202.637.3332
sy.damle@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Silicon Valley |
| Hong Kong | Singapore |
| Houston | Tel Aviv |
| London | Tokyo |
| Los Angeles | Washington, D.C. |
| Madrid | |

**LATHAM & WATKINS LLP**

November 18, 2024

**VIA ECF**

The Honorable Jennifer L. Rochon
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1920
New York, NY 10007

    Re:    *Cengage Learning, Inc. v. Google LLC*, No. 1:24-cv-04274-JLR-BCM
             <u>Response to Plaintiffs' Letter Motion for Pre-Motion Discovery Conference</u>

Dear Judge Rochon:

    Pursuant to Local Civil Rule 37.2 and Rule 2(E) of Your Honor's Individual Rules, Defendant Google LLC files this response to Plaintiffs' Letter Motion for a Pre-Motion Discovery Conference (Dkt. 46, "Ltr."). Plaintiffs' proposed motion to compel regarding thirteen Requests for Production relating to what they define as "Related Ads Merchants" is meritless.

    **1. <u>Plaintiffs' Requests Are Irrelevant Because They Are Premised on a Misreading of the DMCA Safe Harbor.</u>** The DMCA safe harbor applies when a service provider (in addition to meeting other criteria not relevant here) "has adopted and reasonably implemented . . . a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers." 17 U.S.C. § 512(i)(1)(A). Plaintiffs argue that this means that they "are entitled to discovery into whether Google did, in fact, terminate 'repeat infringers,' or instead merely terminated one of a subscriber's accounts." Ltr. at 1. In other words, Plaintiffs interpret the safe harbor to impose an obligation on service providers not only to terminate the account that has been used to commit "repeat infringe[ment]," but also to investigate and terminate *any and all* other "related" accounts. *Cf. id.* According to Plaintiffs, this requires a service provider to conduct an in-depth examination of its records to identify any account that shares "a common identity, common or related business or website ownership or operation, or other similarity that demonstrates a business connection or link between Google account holders." Kane Decl. (Dkt. 47), Ex. A (Dkt. 47-1) at 5–6. But Plaintiffs' interpretation of the statute is atextual and flawed.

    Under the DMCA, service providers have no obligation to monitor for or investigate possible infringement on their own. 17 U.S.C. § 512(m); *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 98 (2d Cir. 2016). Thus, a service provider learns of specific instances of claimed infringement from copyright owners, primarily through the statutory notice-and-takedown process. *See* 17 U.S.C. § 512(c). Section 512(i)(1)(A) requires the provider to reasonably implement a policy pursuant to which such an account subject to repeat notices of infringement may be termed a "repeat infringer" and terminated. But because the DMCA imposes no independent duty to monitor or investigate, a service provider is not obligated to undertake

investigation of any *other* "subscribers or account holders" who have not been the subject of infringement claims. *See, e.g.*, *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1111 (9th Cir. 2007) ("To identify and terminate repeat infringers, a service provider need not affirmatively police its users for evidence of repeat infringement."); *Arista Recs. LLC v. Myxer Inc.*, 2011 WL 11660773, at *21 (C.D. Cal. Apr. 1, 2011) (noting "no controlling authority" that a terminated user's ability to re-register under different username and resume infringing "would render a policy insufficient under the DMCA, and the proposition appears unsupported by the [statute's] plain language"). Indeed, Plaintiffs' concept of "related accounts" of repeat infringers, Ltr. at 2, appears nowhere in the text of the DMCA. That is because it is contrary to the safe harbor's purpose—reducing burdens on service providers who enact reasonable policies for combating infringement. *See* H.R. Rep. No. 105-551, pt. 2, at 61 (1998) ("[T]he Committee does not intend this provision to . . . suggest[] that a provider must investigate possible infringements, monitor its service, or make difficult judgments as to whether conduct is or is not infringing.").

**2. Plaintiffs' Requests Are Overbroad, Disproportionate, and Exceptionally Burdensome.** Even if one were to accept Plaintiffs' interpretation of the safe harbor, their request should still be rejected. Plaintiffs have defined "Related Ads Merchants" to mean "any Shopping Ads Merchant that shares with an Infringing Merchant a common identity, common or related business or website ownership or operation, or other similarity that demonstrates a business connection or link between Google account holders." Ex. A at 5–6. This definition is overbroad and disproportionate, unworkable in practice, and exceptionally burdensome.

Google is currently in the process of identifying the relevant set of information associated with merchants *actually* implicated by Plaintiffs' DMCA notices about the asserted works. That is a significant discovery effort. Plaintiffs have asserted 4,313 separate works in this case. Dkt. 38-1. And because Plaintiffs have only provided a list of asserted works, Google is in the midst of an arduous process simply to identify, from those 4,313 titles, the set of relevant takedown notices associated with those works, and then connect the domains identified in those notices to the full range of requested merchant data, which in turn requires canvassing multiple other systems outside Google's DMCA notice database. But that reasonable and proportional effort does not satisfy Plaintiffs. Plaintiffs instead demand an exponentially broader investigation of any merchant account that shares an amorphous "business connection or link" to that set of relevant merchant accounts. Plaintiffs then demand that Google collect, review, and produce not just a list of "Related Ads Merchants" accounts (RFPs 25, 44), but all "Google services used by each" such merchant (RFP 26) (e.g., YouTube subscriptions or Gmail accounts), "[a]ll documents concerning Infringement Notices sent to [Google] by any person concerning" any such merchant (RFP 27), "all communications between [Google] and" any such merchant (RFP 29), documents identifying "Google's revenues, costs, expenses, profits, and losses concerning any business conducted with" such merchant, expressly including subscriptions and YouTube ads (RFPs 33–34), "[a]ll documents concerning information provided to [Google] by or on behalf of" each such merchant (RFP 35), documents identifying the owner of the merchant accounts and all "services offered by Google" and utilized by such merchant (RFP 36), detailed information about each ad run on behalf of such merchant (RFPs 36–38), and documents concerning any risk analyses or flags for such merchants (RFPs 12, 31). There can be no doubt that such an exercise will exponentially inflate the scope of the already broad discovery in this case.

LATHAM&WATKINS LLP

The unworkability of Plaintiffs' request is readily apparent. For example, how is Google to determine whether two merchants share a "related business or website ownership or operation," or what the scope of "other similarit[ies]" would be sufficient to "demonstrate[] a business connection or link between Google account holders"? Plaintiffs' examples only make matters worse. They say Google may be able to identify such merchants if they have, "for instance, the same *or substantially similar* individual name, business name, financial account, physical address, or email address." But how is one to determine whether any two items in one of these categories are "substantially similar"? Imagine an "Infringing Merchant" uses a physical address as one of many tenants at the "Gateway Corporate Center" in Harrisburg, Pennsylvania. Are all other tenants at that address "substantially similar"? What about the tenants of the other buildings at the Gateway Corporate Center? There is no internal limiting principle.

Even if there were some principled method to conduct such an investigation, it would require a custom forensic investigation, involving manual review of the account information of an unknown number of merchants with "substantially similar" names, financial accounts, addresses, email addresses, website addresses, and the like. Moreover, to satisfy Plaintiffs' RFPs, sensitive personal and financial information associated with the "Related Ads Merchants"—not one of which is alleged to have advertised for a single asserted work in this dispute—must then be identified and turned over to Plaintiffs. To call this disproportionate is an understatement.

Plaintiffs protest that Google already performs a version of this exercise in response to subpoenas or injunctions related to Plaintiffs' direct lawsuits against Pirate Sellers. *See* Kane Decl. ¶ 9. But that process is different in kind *and* degree from the process that Plaintiffs are asking Google to undertake here. The one-off requests to which Plaintiffs refer often require nothing more than matching one email address to one associated account. Here, by contrast, Plaintiffs' requests do not provide a starting set of any email addresses or other identifying information—instead, they demand that *Google* seek out matching account information for any merchant with a vague "business connection or link" to the set of merchants implicated by notices connected to the asserted works. The email addresses in those lawsuits are also connected to sellers who have already been subject to a court judgment and enforcement order. Here, Plaintiffs seek discovery on any and every merchant who *might* have *some* nebulous association with accounts *alleged* to be selling infringing material.

**3. Plaintiffs' Requests Are Not Relevant to Statutory Damages.** Plaintiffs also argue that this information is relevant to the Copyright Act's statutory damages factors. Ltr. 3; *see Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) (listing factors). But these factors are analyzed with respect to *the alleged infringement*—not as to unasserted works, or as to a defendant's conduct unrelated to the alleged infringement. For that reason, Plaintiffs' requests for evidence unrelated to the asserted infringement cannot be relevant to the statutory damages factors here.

LATHAM&WATKINS LLP

                        Respectfully submitted,

                        */s/ Sarang Vijay Damle*
                        Sarang Vijay Damle
                        of LATHAM & WATKINS LLP

                        *Attorneys for Defendant Google LLC*

cc:    All Counsel of Record (via ECF)