**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; ELSEVIER INC.; ELSEVIER B.V.; and MCGRAW HILL LLC, <br><br> *Plaintiffs*, <br><br> v. <br><br> GOOGLE LLC, <br><br> *Defendant*. | Case No. 1:24-cv-04274-JLR-BCM <br><br> **ORAL ARGUMENT REQUESTED** |

**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 1

    I.    Plaintiffs Fail To Plead a Claim for Vicarious Copyright Infringement ................. 1

        A.    Google Does Not Supervise or Control the Alleged Infringement .............. 1

        B.    Google Does Not Obtain a Direct Financial Benefit from the Alleged Infringement ........................................................................................ 3

    II.    Plaintiffs Trademark Infringement Claim Fails ....................................................... 7

    III.    Plaintiffs' State Law Claim Fails ............................................................................... 9

        A.    Plaintiffs' Claim Is Preempted ...................................................................... 9

        B.    Plaintiffs Fail to Plead Consumer Deception ............................................. 10

    IV.    The Court Should Dismiss With Prejudice ............................................................. 11

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

## CASES

*A&M Recs., Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ................................................................................................5

*Arista Recs. v. Lime Group, LLC*,
  784 F. Supp. 2d 398 (S.D.N.Y. 2011) ..................................................................................4, 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................................5, 6

*Atari Interactive, Inc. v. Redbubble, Inc.*,
  515 F. Supp. 3d 1089 (N.D. Cal. 2021) ..................................................................................9

*Blackbird Tech LLC v. Argento SC by Sicura, Inc.*,
  2022 WL 3701084 (S.D.N.Y. Aug. 26, 2022) .......................................................................11

*BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns*,
  149 F. Supp. 3d 634 (E.D. Va. 2015) .....................................................................................2

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
  69 F. Supp. 3d 342 (S.D.N.Y. 2014) ......................................................................................5

*Century 21 Real Estate Corp. v. R.M. Post, Inc.*,
  1988 WL 84741 (N.D. Ill. Aug. 8, 1988) ...............................................................................8

*Chanel, Inc. v. RealReal, Inc.*,
  449 F. Supp. 3d 422 (S.D.N.Y. 2020) ....................................................................................8

*Conboy v. AT&T Corp.*,
  241 F.3d 242 (2d Cir. 2001) .................................................................................................10

*Dial One of the Mid-South, Inc. v. BellSouth Telecommunications, Inc.*,
  269 F.3d 523 (5th Cir. 2001) ..................................................................................................8

*Dreamland Ball Room v. Shapiro, Bernstein & Co.*,
  36 F.2d 354 (7th Cir. 1929) ....................................................................................................5

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
  844 F.3d 79 (2d Cir. 2016) .....................................................................................................7

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
  76 F.3d 259 (9th Cir. 1996) ....................................................................................................5

*Gershwin Pub'g Corp. v. Columbia Artists Mgmt., Inc.*,
    443 F.2d 1159 (2d Cir. 1971)...........................................................................................4

*Gucci America, Inc. v. Hall & Associates*,
    135 F. Supp. 2d 409 (S.D.N.Y. 2001).............................................................................8

*J&J Sports Prods., Inc. v. Enriquez*,
    2019 WL 4963108 (E.D.N.Y. Oct. 7, 2019)....................................................................6

*Leonard v. Stemtech International, Inc.*,
    834 F.3d 376 (3d Cir. 2016).........................................................................................5, 6

*Marino v. Coach, Inc.*,
    264 F. Supp. 3d 558 (S.D.N.Y. 2017)............................................................................11

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005)........................................................................................................2

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007)........................................................................................3

*Perfect 10, Inc. v Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007)..........................................................................................3

*Realsongs v. Gulf Broad. Corp.*,
    824 F. Supp. 89 (M.D. La. 1993)....................................................................................5

*Sony Music Ent. v. Cox Commc'ns, Inc.*,
    93 F.4th 222 (4th Cir. 2024) ...........................................................................................3

*Warner Recs., Inc. v. Charter Commc'ns*,
    454 F. Supp. 1069 (D. Colo. 2020)..............................................................................2, 7

*White v. DistroKid*,
    2024 WL 3195471 (S.D.N.Y. June 24, 2024) ............................................................1, 5

*Wolk v. Kodak Imaging Net., Inc.*,
    840 F. Supp. 2d 724 (S.D.N.Y. 2012).............................................................................4

*World Wrestling Fed'n Inc. v. Posters, Inc.*,
    2000 WL 1409831 (N.D. Ill. Sep. 26, 2000) ..................................................................8

**STATUTES**

15 U.S.C. § 1114(1)(a)..........................................................................................................7, 9

15 U.S.C. § 1114(1)(b).....................................................................................................7, 8, 9

## OTHER AUTHORITIES

*Apply*, American Heritage Dictionary of the English Language (5th ed. 2022)..............................8

**PRELIMINARY STATEMENT**

Plaintiffs' opposition ("Opp.") confirms that Google's motion ("Mot.") should be granted. Plaintiffs' vicarious copyright claim fails because their own Complaint refutes their arguments that Google either supervises Pirate Sellers' infringement or that Google obtains a direct financial benefit from infringement. Their trademark claim fails because their arguments confirm that Google is not responsible for copying or applying Plaintiffs' marks to ads—Pirate Sellers are. And their state-law claim fails because their arguments confirm that this claim is preempted, and fails on the merits in any event because Google has not engaged in any deceptive practice. Plaintiffs' Complaint should be dismissed with prejudice.

**ARGUMENT**

**I.   PLAINTIFFS FAIL TO PLEAD A CLAIM FOR VICARIOUS COPYRIGHT INFRINGEMENT**

As Google explained (Mot. 6–15), Plaintiffs' vicarious infringement claim fails because Plaintiffs have not alleged facts establishing that Google has (1) the "right and ability to supervise or control" the alleged infringement, or (2) "financial interest in the exploitation of copyrighted materials." *White v. DistroKid*, 2024 WL 3195471, at *7 (S.D.N.Y. June 24, 2024).[1] Plaintiffs' opposition does not change that result.

**A.   Google Does Not Supervise or Control the Alleged Infringement**

Plaintiffs do not dispute that Google lacks the ability to supervise and control the actual acts of infringement by Pirate Sellers, which occur on websites beyond Google's control. *Cf.* Mot. 7–10. Instead, they argue that they have adequately alleged supervision and control because Google, by removing ads and terminating merchants, can "limit" the ability of Pirate Sellers to

---

[1] Unless otherwise noted, citations are omitted and emphasis is added.

reach potential buyers, and by extension *indirectly* reduce the prevalence of infringements. Opp. 12–15. But none of their out-of-circuit cases support their position.

Plaintiffs point to a handful of cases against internet service providers ("ISPs") holding that an ISP's ability to suspend or terminate users is sufficient to meet the "supervision-and-control" element for vicarious infringement. *See* Opp. 13–15.[2] But those cases are inapposite. ISPs have *direct* control over infringement that occurs on their networks because they control "an essential component of the infringing activity"—internet access. *Warner Recs., Inc. v. Charter Commc'ns*, 454 F. Supp. 1069, at 1086 (D. Colo. 2020). As the *Charter* court explained, "[f]ile sharing programs are completely dependent on the internet to facilitate the download and upload of files." *Id.* (quoting *BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns*, 149 F. Supp. 3d 634, 674 (E.D. Va. 2015)). Suspending or terminating infringing users' internet accounts, therefore, directly stops or limits the infringement itself. *Id.*; *see also BMG Rts. Mgmt.*, 149 F. Supp. 3d at 675 ("[W]hen Cox terminates or suspends the relationship with an account holder, it takes away an *essential component* of direct infringement. . . . Without the internet, individuals cannot upload or download illegal content.").

By contrast, Google's termination or suspension of a Pirate Seller from Google Shopping Ads does not remove the Pirate Seller's internet access. Like in *Perfect 10*, "the only result [is] that the ads [are] no longer sourced by Google. It [has] no effect on how the [third-party] website work[s]." *BGM Rts. Mgmt.*, 149 F. Supp. 3d at 675 (distinguishing Google's role as ad provider in *Perfect 10* from Cox's role as ISP). Plaintiffs try to distinguish their allegations from *Perfect 10*, pointing to differences between Google's AdSense and Shopping Ads programs. Opp. 15.

---

[2] Plaintiffs also cite *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005), but the Court did not consider any vicarious infringement claim in that opinion. *Id.* at 930 n.9.

2

Those differences are immaterial. Neither ad program gives Google the right or ability to control infringement that happens on third-party websites, despite those third parties' participation in a Google program. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173–74 (9th Cir. 2007) (finding Google is not empowered "to stop or limit [third parties] from reproducing, displaying, and distributing infringing copies of Perfect 10's images on the Internet").

Courts consistently have declined to cabin *Perfect 10* to its facts, or have otherwise applied its principles more broadly. Mot. 8–10 (citing cases).[3] In *Visa*, for example, the Ninth Circuit held that, "[l]ike Google, the credit card companies 'cannot stop any of the third-party websites from reproducing, displaying, and distributing unauthorized copies of Perfect 10's images because that infringing conduct takes place on the third-party websites.'" *Perfect 10, Inc. v Visa Int'l Serv. Ass'n*, 494 F.3d 788, 805 (9th Cir. 2007). Conceding that these companies could "have some indirect effect on the infringing activity" by "refus[ing] to process credit card payments to the offending merchant within their payment network," the court held this was not sufficient to establish vicarious liability, which requires that a defendant have the "ability to *directly control*" the infringement, "not just affect it." *Id*. at 803, 805. At most, Plaintiffs' allegations establish only that Google has the ability to indirectly *affect* infringement, not supervise or control it.

### B. Google Does Not Obtain a Direct Financial Benefit from the Alleged Infringement

Plaintiffs concede they must show that Google obtains a *direct* financial benefit from the alleged infringement. Opp. 4–5; *see* Mot. 10–15; *Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 231–32 (4th Cir. 2024) (a defendant's financial benefit must "flow directly *from the third-party's acts of infringement*"). Plaintiffs argue that Google has a direct financial interest for two

---

[3] Plaintiffs' opposition fails to address any of Defendant's other cases.

3

reasons: (1) Pirate Sellers pay Google when users click on their Shopping Ads; and (2) infringing textbooks draw Google users to click on Shopping Ads and Pirate Sellers to purchase ad space. Opp. 4–5. But neither allegation establishes Google has a *direct* financial benefit *from the infringement* alleged.

Per Plaintiffs' own allegation, Google gets paid the same amount when a user clicks on the Shopping Ad of a Pirate Seller *regardless* of whether a user goes on to purchase the product advertised on the Pirate Seller's website. FAC ¶ 95 (allegation that Pirate Sellers pay Google when users click on their Shopping Ads "*including* when users click on a Shopping Ad and purchase a pirated copy of the Publishers' works"). That some undefined number of users go on to purchase unauthorized copies of Plaintiffs' works does not establish a direct financial benefit because there is no "causal relationship between the infringing activity and any financial benefit [Google] reaps." *Arista Recs. v. Lime Group, LLC*, 784 F. Supp. 2d 398, 435 (S.D.N.Y. 2011). Plaintiffs' argument that they have pleaded a direct financial benefit through other allegations (i.e., that a successful Pirate Seller will continue to advertise or purchase additional advertising services and that Google earns higher auction fees when Pirate Sellers bid) fails for the same reason. *See* Opp. 5 (citing FAC ¶¶ 96–97). None of those allegations establishes that Google derives a profit from "particular infringement[s]" occurring on third-party websites rather than "the service[s] [it] provide[s]." *Wolk v. Kodak Imaging Net., Inc.*, 840 F. Supp. 2d 724, 747–48 (S.D.N.Y. 2012).

Plaintiffs argue it does not matter "[t]hat Google's pricing was tied to the advertisements that led to the infringements, rather than to the act of infringements." Opp. 6. None of Plaintiffs' cases support this theory. *First*, Plaintiffs point to cases where the defendants derived revenues directly from the infringement itself. Opp. 6–8; *see Gershwin Pub'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159 (2d Cir. 1971) (defendant organized and profited from concerts and

"deliberately made no effort to obtain copyright clearance for musical compositions" used); *Realsongs v. Gulf Broad. Corp.*, 824 F. Supp. 89 (M.D. La. 1993) (radio station directly received per-minute fee for airtime to perform copyrighted music); *Dreamland Ball Room v. Shapiro, Bernstein & Co.*, 36 F.2d 354 (7th Cir. 1929) (dance hall owners liable where bands play copyrighted music "for the profit of the proprietor"). Here, in contrast, Plaintiffs allege that Google receives a fee for ad clicks, independent of whether infringing sales occur on third-party websites.

*Second*, Plaintiffs cite *Arista Records* and three other cases for the proposition that "[t]he financial benefit need not be tied directly to the sale of the infringing goods" for the benefit to be "direct." Opp. 6–7 (citing *Arista Recs.*, 784 F. Supp. 2d at 435; *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1010 (9th Cir. 2001); *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 358 (S.D.N.Y. 2014); and *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263 (9th Cir. 1996)). But each found a financial benefit because infringement was a "draw" to customers, a separate theory that Plaintiffs have also failed to adequately plead. *See* Mot. 13–15; *White*, 2024 WL 3195471, at *10 ("[I]n the absence of [] a showing" that the financial benefit is "tied directly to sales of the infringing goods," "there *must be* allegations showing that users are attracted to a defendant's product because it enables infringement.").

Indeed, Plaintiffs' allegations that infringement "draws" consumers and Pirate Sellers to Google's Shopping Ads are conclusory and implausible. Mot. 13–15 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). As to consumers, Plaintiffs' allegations establish only the uncontroversial fact that users are drawn to Shopping Ads to look at advertised products. Mot. 13–14. *Leonard v. Stemtech International, Inc.*, 834 F.3d 376 (3d Cir. 2016), is not on point. There, the court concluded a jury could reasonably have credited testimony indicating that the infringement (an unauthorized reproduction of an image to advertise products) "len[t] legitimacy" to the products

5

and drew customers to buy them. *Id.* at 389; *see also J&J Sports Prods., Inc. v. Enriquez*, 2019 WL 4963108, at *4 (E.D.N.Y. Oct. 7, 2019) (restaurant's unauthorized broadcast of televised boxing match was intended to attract patrons and get them to stay longer). Here, in contrast, the two forms of alleged infringement happen *after* users are "drawn" to Shopping Ads. *See* FAC ¶¶ 122, 133. Plaintiffs have no allegations establishing that the potential to *infringe* (as opposed to the potential to find specific textbooks) draws Google customers to view Shopping Ads.

Plaintiffs' argument that "the opportunity to infringe" draws Pirate Sellers to Shopping Ads is similarly flawed. Opp. 8. The bulk of Plaintiffs' allegations focus on a "draw" that has nothing to do with infringement—Google's allegedly "massive share of the search market" such that Pirate Sellers (like all other sellers) have access to an audience of "unmatched size." FAC ¶¶ 46, 135. Likewise, Plaintiffs point to allegations that "detail[] numerous features of Shopping Ads that make them attractive to Pirate Sellers." Opp. 9. But these features show Shopping Ads are attractive to *all sellers*, not just Pirate Sellers. *See id.* (e.g., asserting Shopping Ads are designed to "draw users to click on them" and contain "important information like the price of the product").[4] Plaintiffs also argue that "Google's lax enforcement policies serve as a further draw," and that "pirates know that Google will in many cases keep advertising their infringing products." *Id.* at 9–10. The Complaint is devoid of any well-pleaded allegations to support these assertions. *See* FAC ¶ 135 (alleging broadly and in conclusory fashion that "[t]he opportunity to carry out that infringement provides a major draw to Google's advertising platforms"). *Charter* is thus

---

[4] Plaintiffs additionally point to the allegation that Google "advertises standalone digital books sold by pirates but does not allow such ads from legitimate sellers like the Publishers." Opp. 9 (citing FAC ¶ 65). In reality, Google's policy banned all e-books from its platform as an effort to stop piracy; the most Plaintiffs' allegations show is that some Pirate Merchants are able to evade that ban. In any event, it is inherently implausible that this policy draws Pirate Sellers to Google, given that Plaintiffs also allege merchants have "no real substitute from any other advertising platform" besides Google. *See* FAC ¶ 46; *Iqbal*, 556 U.S. at 679.

distinguishable. 454 F. Supp. 3d at 1083 (finding direct financial benefit where defendant "tout[ed] specific features" that were attractive to (and did attract) infringers *and* defendant "adopt[ed] a policy of non-enforcement").

Because Plaintiffs have failed to plead sufficient nonconclusory allegations showing that Google had the "obvious and direct" financial interest in infringement required to establish vicarious liability, the Court should dismiss Plaintiffs' vicarious liability claim. *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 99 (2d Cir. 2016).

## II.     PLAINTIFFS TRADEMARK INFRINGEMENT CLAIM FAILS

In their opposition, Plaintiffs agree Google cannot be directly liable for "using" any of Plaintiffs' trademarks under 15 U.S.C. § 1114(1)(a), and disclaim any theory of secondary liability for trademark infringement. Opp. 17–19; *see also* Mot. 15–19. Instead, Plaintiffs assert a single theory for direct trademark liability: what Plaintiffs call "printer-publisher" liability under 15 U.S.C. § 1114(1)(b). Opp. 17–18. But as Google explained, Plaintiffs' allegations fail to establish that Google can be liable under § 1114(1)(b). *See* Mot. 15–19.

In response, Plaintiffs insist Google is directly liable for trademark infringement because it has done "precisely what printer-publisher liability prohibits: copying an image of a trademark and applying that trademark to an ad." Opp. 18. To be sure (and as noted in Google's motion, Mot. 15), § 1114(1)(b) imposes liability on the person who "*reproduce*[*s*], *counterfeit*[*s*], [or] *cop*[*ies*] . . . a registered mark *and appl*[*ies*] such reproduction, counterfeit, [or] copy" to "advertisements." 15 U.S.C. § 1114(1)(b). But *Google* does not "copy" any of Plaintiffs' trademarks or "apply" any trademark to an ad—the Complaint alleges that *Pirate Sellers* do. *See, e.g.*, FAC ¶¶ 41, 88, 144. Plaintiffs do not dispute that Pirate Sellers generate the images that appear in Shopping Ads. It is the Pirate Sellers who copy Plaintiffs' trademarks and then apply those marks to images that appear in Shopping Ads. All Google does is display the image to which

7

copied trademarks have *already* been applied by Pirate Sellers. On these facts, the *Pirate Sellers* are the direct infringers.

Plaintiffs respond that Google has "applied" their trademarks to Shopping Ads because Google "makes adjustments" to the images Pirate Sellers provide, like "automatic cropping." Opp. 18. But when Google makes adjustments like cropping an image that *already* contains a trademark that was applied by a Pirate Seller, Google is not "applying" the trademark to the ad. That is not how any speaker of the English language uses the verb "apply." *Cf. Apply*, American Heritage Dictionary of the English Language (5th ed. 2022) ("To bring into contact with something; put on."). The person who "put [the trademark] on" the ad is the Pirate Seller—not Google.

That distinguishes Plaintiffs' allegations from those in cases they rely on, which each involved a publisher or printer who *itself* applied an allegedly infringing mark to a product or advertisement. *See Century 21 Real Estate Corp. v. R.M. Post, Inc.*, 1988 WL 84741, at *1, *3 (N.D. Ill. Aug. 8, 1988) (printers of phonebook continued to print listing using trademark after mark owner gave printers notice that customer no longer had license to use mark); *World Wrestling Fed'n Inc. v. Posters, Inc.*, 2000 WL 1409831 (N.D. Ill. Sep. 26, 2000) (printer of posters created infringing posters that used plaintiff's mark).[5] By contrast, when a "Plaintiff does not allege that Defendant *itself* actually produced the counterfeit goods at issue," a "Plaintiff cannot sustain a trademark counterfeiting claim under section [1114](1)(b)" against that defendant. *Chanel, Inc. v. RealReal, Inc.*, 449 F. Supp. 3d 422, 436 n.13 (S.D.N.Y. 2020). In other words, the publisher who creates the infringing image is directly liable under § 1114(1)(b)—not Google, even if Google

---

[5] Plaintiffs' other cases are even further afield. *Dial One of the Mid-South, Inc. v. BellSouth Telecommunications, Inc.*, involved application of the innocent infringer defense—not whether the defendant had "applied" a trademark. 269 F.3d 523, 525–28 (5th Cir. 2001). And *Gucci America, Inc. v. Hall & Associates* addressed whether an ISP was immune from trademark claims under Section 230 or the First Amendment. 135 F. Supp. 2d 409, 412–22 (S.D.N.Y. 2001).

8

provides the platform for that ad. *See, e.g.*, *Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089, 1106 (N.D. Cal. 2021) (concluding defendant Redbubble was directly liable for infringement related to ads it created, even though "Google might select a Redbubble listing that matches the user's search query and browsing history" because "[t]he party that selects listings (Google and other advertising platforms) does so automatically based on parameters specified by Redbubble").

Indeed, as Google explained, it is nothing more than a "facilitator of sales," and courts routinely reject claims of trademark liability in similar circumstances. Mot. 16–18. Plaintiffs try to cabin these cases' applicability to § 1114(1)(a). Opp. 19. But the same principles demonstrate why Google is not involved in direct infringement under § 1114(1)(b). *See* Mot. 16–18. Google is nothing more than a platform for advertising goods sold by third parties. It has no direct role in selling any allegedly infringing works. And it is not responsible for creating images that appear in any ad. Plaintiffs' trademark claim should be dismissed.

### III. PLAINTIFFS' STATE LAW CLAIM FAILS

Plaintiffs' deceptive business practices claim under New York law fails for two reasons: it is preempted by the Copyright and Lanham Acts, and it fails to state a claim on the merits. Plaintiffs' responses do not affect either conclusion.

#### A. Plaintiffs' Claim Is Preempted

As Google explained, Plaintiffs' Section 349 claim is preempted by federal law because it is substantively redundant of Plaintiffs' copyright and trademark claims. Plaintiffs do not seriously dispute that their Section 349 claim is preempted to the extent it overlaps with their copyright or trademark claims. *See* Opp. 20–23. Nor could they—courts in this district routinely conclude that when a Section 349 claim alleges, in essence, nothing more than a copyright or trademark claim,

9

the Copyright and Lanham Acts preempt the state-law claim. *See* Mot. 19–20. That describes Plaintiffs' Section 349 claim here.

Plaintiffs attempt to salvage their Section 349 claim by arguing that it requires an "extra element" of "deception" and therefore is not coextensive with their federal claims. Opp. 20–23. But as explained *infra*, their attempt to plead deceptive conduct *by Google* fails. For that reason, there is no daylight between Plaintiffs' federal and state-law claims.

### B. Plaintiffs Fail to Plead Consumer Deception

Plaintiffs' Section 349 claim also fails on the merits. Mot. 21–24. Plaintiffs first argue that they have stated a claim as to textbook *purchasers* because "consumers were deceived when they believed they were buying a textbook of publisher-quality and instead received a book of inferior quality." Opp. 24–25. But their claim requires allegations that the *defendant* misled consumers. *See, e.g.*, *Conboy v. AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (rejecting Section 349 claim when plaintiffs did "not allege[] any facts to suggest that [*defendant*] misled them"). And the source of Plaintiffs' alleged deception is not Google—it is Pirate Sellers. Google's only role is to advertise merchants' products through an automatic process that Plaintiffs allege takes place "[w]ithin a fraction of a second" and contains only "information provided by Google's merchants." FAC ¶¶ 41, 43. As these allegations make clear, *Google* has not engaged in any deception toward textbook purchasers—Pirate Sellers have.

Turning to textbook *sellers*, Plaintiffs argue that they have adequately alleged a claim because "Google allows [standalone ebook] ads from pirates while rejecting them from legitimate sellers," even though "Google's stated policy is to ban ads for *all* standalone ebooks." Opp. 25 (emphasis in original). But the automatic publication of merchant-supplied ads that violate Google's ebook policy is not deception *by Google*; it's nothing more than imperfect enforcement

10

of Google's concededly neutral policy for ebook ads.  Plaintiffs have not been deceived.  They just wish that Google could guarantee its enforcement efforts would be 100% effective.

## IV.     THE COURT SHOULD DISMISS WITH PREJUDICE

Plaintiffs request that "if the Court does dismiss any claim, the dismissal should be without prejudice," because "the court should normally give the plaintiff at least one opportunity to amend the complaint." Opp. 23 n.6.  The Court should deny Plaintiffs' request, to the extent it considers it at all.  *See Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 571 n.11 (S.D.N.Y. 2017) ("The Court will not consider arguments raised entirely by footnote . . . .").  Plaintiffs have already had an opportunity to amend their Complaint, with the benefit of Google's first motion to dismiss to highlight the Complaint's infirmities.  And Plaintiffs do not explain what additional facts they would allege if granted leave to amend.  *See, e.g.*, *Blackbird Tech LLC v. Argento SC by Sicura, Inc.*, 2022 WL 3701084, at *2–3 (S.D.N.Y. Aug. 26, 2022) (dismissing with prejudice when "[plaintiff] already had an opportunity to amend its complaint after [defendant] initially moved to dismiss" and "has not explained what additional facts it could now allege").

## CONCLUSION

Google's motion should be granted and Counts II–IV of the Complaint dismissed with prejudice.

Dated: November 20, 2024
New York, New York

Respectfully submitted,

**LATHAM & WATKINS LLP**

*/s/ Sarang Vijay Damle*
Sarang Vijay Damle
Sarah A. Tomkowiak (*pro hac vice*)
Holly K. Victorson (*pro hac vice*)
Laura E. Bladow (*pro hac vice*)
Brent T. Murphy (*pro hac vice*)
Sara E. Sampoli (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: sy.damle@lw.com
　　　sarah.tomkowiak@lw.com
　　　holly.victorson@lw.com
　　　laura.bladow@lw.com
　　　brent.murphy@lw.com
　　　sara.sampoli@lw.com

Allison L. Stillman
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: alli.stillman@lw.com

Joseph R. Wetzel
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: joe.wetzel@lw.com

*Attorneys for Defendant Google LLC*

## CERTIFICATION OF WORD COUNT

I certify that the foregoing reply memorandum of law complies with the formatting and word limit requirements set forth in Rule 3.C of the Court's Individual Rules and Procedures for Civil Cases because it contains 3,492 words, excluding the cover page, table of contents, table of authorities, signature block, and certification of word count.  This reply memorandum of law also complies with the applicable formatting rules because it has been prepared in 12-point font and all text is double-spaced.

In preparing this certification, I relied on the word count of the Microsoft Word computer program used to prepare this reply memorandum of law.


Dated:  November 20, 2024                                */s/ Sarang Vijay Damle*
                                                                          Sarang Vijay Damle