IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; ELSEVIER INC.; ELSEVIER B.V.; and MCGRAW HILL LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>GOOGLE LLC,<br><br>*Defendant*. | Case No. 1:24-cv-04274-JLR-BCM |

**DECLARATION OF CHRISTOPHE WEIBEL IN SUPPORT OF
GOOGLE LLC'S RESPONSE TO PLAINTIFFS' LETTER MOTION
FOR PRE-MOTION DISCOVERY CONFERENCE**

I, Christophe Weibel, declare that:

1. I am a software engineer and technical lead for the Shopping Product at Google LLC ("Google"). I have been employed with Google for over thirteen years.

2. My team is primarily responsible for implementing policy enforcement on the Google Shopping Platform. As part of this responsibility, my team regularly interfaces with the Merchant Center account infrastructure. Through my years of experience working with Merchant Center account data, I generally understand how this data is stored, how it can be accessed, and its relationship to data associated with Google Ads accounts.

3. I submit this declaration in support of Google's response to Plaintiffs' letter motion for a pre-motion discovery conference regarding so-called "Related Ads Merchants."

1

4.      The information contained in this declaration is based on personal knowledge I have acquired from my experience at Google, to the best of my knowledge as it exists today, and where noted below, the understanding I have developed in connection with the preparation of this declaration for purposes of this litigation.

### Google Shopping, Merchant Center Accounts, and Ads Accounts

5.      Google Shopping ("Shopping") is a platform offered by Google that allows advertisers and sellers ("Merchants") to feature their products to Google users.

6.      Merchants who provide information about their products and follow certain policies specified by Google can enable "free listings." If a Merchant enables, and qualifies for, free listings, Google may show the Merchant's listings to Google users in connection with associated search results at no cost to the Merchant. A Merchant can also choose to run paid ads for its products. A **Merchant Center** account is the account created by a Merchant to provide their product information for Shopping. The Merchant Center account maintains product information for creating Shopping listings and ads.

7.      A Google **Ads** account is used to create and pay for advertising campaigns. A Merchant Center account and an Ads account can be linked, but they are separate accounts. A Merchant uses an Ads account to pay for its paid Shopping ads, but an Ads account is not required if the Merchant runs only free Shopping listings. Conversely, an advertiser who only advertises with text ads on Google Search (separate from any Shopping listings) does not require a Merchant Center account.

8.      The "links" between Merchant Center accounts and Ads accounts can be complex, as the potential relationships of Merchant Center accounts to Ads accounts is many-to-many. It is possible for one Merchant Center account to be connected to multiple Ads accounts. By default,

one Merchant Center account can be linked to up to 500 Ads accounts, and that limit can be raised. A single Merchant Center account may be connected to multiple Ads accounts, for example, to assist management of Ads campaigns for different product categories, different geographies, or different target markets. It is also possible for an Ads account to be connected to multiple Merchant Center accounts. A single Ads account might be connected to multiple Merchant Center accounts, for example, if the advertiser is a marketplace with multiple sellers or a manufacturer with multiple brands, or if the advertiser is a marketing company that has been engaged by multiple, unrelated Merchant Center accounts to manage their ad campaigns.

### Identifying and Collecting Data About the Noticed Merchants

9. I understand that Google is currently in the process of compiling the full set of Merchants connected to the URLs provided in the takedown notices that Plaintiffs sent to Google concerning the books identified by the Plaintiffs in this matter (the "Noticed Merchants"). I understand that the Plaintiffs in this litigation have propounded several requests for various data and information associated with those Noticed Merchants, such as email communications between Google and the Noticed Merchants, payments made by the Noticed Merchants to Google, and analytics about the Shopping ads run by the Noticed Merchants. I know from experience at Google that broad requests for disparate categories of data and information implicate multiple databases and sources (put differently, there is no central location or system where such data or information is stored). Collecting multiple categories of data and information about thousands of merchants is a significant effort that has a real impact on Google's resources across various aspects of the business, including on my team.

10. To identify the Noticed Merchants, it is first necessary to identify the domains these Noticed Merchants are associated with. While I have been provided with a list of domains by

counsel (discussed below), I provide in the following paragraph my understanding of the steps Google must take to identify those domains on its own.

11. Specifically, Google must first identify the set of relevant notices associated with the books that the Plaintiffs say are at issue in the lawsuit. As I understand, Google received the applicable notices through different means (including web form, email to Google's DMCA agent, and other email), and slightly different information may be provided with each submission method. This means Google has had to conduct custom investigations and searches to collect the relevant set of notices from Plaintiffs during the appropriate time period. Because, I understand, each notice might contain many different allegedly infringing links or ads for many different works, Google then must identify the relevant set of domains from Plaintiffs' notices actually associated with the books that Plaintiffs have identified in this lawsuit. And because Plaintiffs' notices may not contain the names of the books themselves, this can involve custom and manual investigation of the allegedly infringing URLs from the notices for indicia that they relate to a book asserted by the Plaintiffs in this lawsuit.

12. Once Google has identified the set of domains associated with the books asserted by Plaintiffs in this lawsuit, Google must then connect those domains to Merchant Center accounts (each of which has a unique "Merchant Center account ID," or "MCID"). Each Merchant Center account can generally only be associated with one specific URL, and that URL can reflect a top-level domain (e.g., christophessneakershop.com) or, in some cases, a URL sub-domain or path (e.g., christophesshop.sneakersbazaar.com or sneakersbazaar.com/christophesshop). Accordingly, Google's database may maintain multiple Merchant Center accounts associated with the same top-level domain (e.g., sneakersbazaar.com).

13. Google has the capability to query its databases for information associated with specific MCIDs. For example, a MCID can be used to identify account creation and (if applicable) suspension dates, along with information about the Merchant's business profile. While it takes human resources to do so, Google can pull this information for a specific MCID in a fairly short amount of time with simple queries. Running a query for many MCIDs in the databases for Merchant Center information, particularly when targeting historical changes to the account, product feeds provided by the Merchant, and ad logs, is more complex and takes significantly more time. This exercise becomes even more complex at a scale of thousands of MCIDs because, depending on the data sought and how stale the data is, this information may be stored in less easily accessible data storage. Such inquiries can require individualized investigations on an account-by-account basis.

14. The MCID can also be used to identify the account numbers of Ads accounts linked to that Merchant Center account. Ads account ID numbers can be used to identify and collect information stored in the Ads account, such as information about the paid ad campaigns (including payment information, like associated bank accounts) run by that Ads account. Information stored in an Ads account linked to a known Merchant Center account is difficult to collect for two reasons. First, the Ads account data is owned by a different team at Google—the Ads Product team—and requires coordination to collect because my team cannot access the data on its own. Second, there is not always a one-to-one relationship between Merchant Center accounts and Google Ads accounts, as I explained in paragraph 8 above, making tying ad campaigns and any associated payments to Google to a particular ad—or even a particular Merchant Center account—a time-consuming and often manual process.

**Identifying and Collecting Data About "Related" Merchants**

15. I understand that on December 5, 2024, Plaintiffs provided Google with a list of 1,044 domains that Plaintiffs claim are connected to Plaintiffs' DMCA notices to Google regarding the asserted works in this lawsuit (the "Domains").

16. At the request of counsel, I used the list of 1,044 Domains provided by Plaintiffs to find all Merchant Center accounts tied to the Domains. That initial search resulted in the identification of over 34,000 unique MCIDs. I inspected those results and observed that approximately half of those MCIDs were associated with one site in Plaintiffs' list of Domains, namely, "shop.spreadshirt.com." Searching for Merchant Center accounts connected to a domain matching "shop.spreadshirt.com" pulled in over 17,000 Merchant Center accounts associated with individual seller sites from spreadshirt.com (e.g., "shop.spreadshirt.com/bible-verse-t-shirts/"). After removing the "shop.spreadshirt.com" domain from the results, 17,304 MCIDs remained, connected to the remaining 1,043 Domains.

17. Next, I pulled the email account identifier for each of the 17,304 MCIDs identified above. Because some MCIDs used the same email account identifier, there were 14,700 email identifiers associated with the 17,304 Merchant Center accounts identified using Plaintiffs' list of Domains.

18. Next, I searched to identify any MCIDs that also had one of the 14,700 email account identifiers. This search returned 28,214 MCIDs, including the 17,304 MCIDs associated directly with the 1,043 Domains provided by Plaintiffs (excluding "shop.spreadshirt.com"). After subtracting those 17,304 MCIDs from the total list of 28,214 MCIDs, there remains 10,910 unique MCIDs that are not directly connected to Plaintiffs' list of Domains (but have an association with MCIDs connected to those Domains by way of common email account identifier) (a 63% increase).

19. To be clear, the 63% increase in MCIDs is the result of (1) searching for all MCIDs connected to the Domains, and (2) expanding the universe of MCIDs connected to the Domains by a common email account identifier. Searching for other connections would further expand the breadth of the Merchant Account information collected for this case. I provide my understanding of the additional connections I understand Plaintiffs have requested in this case in the following paragraphs.

20. *Phone Number.* While Google does collect a phone number in connection with the creation of a Merchant Center account, the purpose of a Merchant providing a phone number is to verify that a valid phone number exists to support a positive user experience. The Merchant may change the phone number over time. Google does not use phone numbers in Merchant Center accounts as a primary means of contacting the Merchant.

21. *Account Name.* To create a Merchant Center account, a Merchant must provide an Account Name. The Account Name is entirely at the discretion of the Merchant and there is no limit on how many Merchant Center accounts can share the same Account Name. In the list of 1,044 Domains that Plaintiffs provided, I observed that many of the associated account names were generic (*e.g.*, "nursing store," "Angela Shop," "Paige Shop").

22. *Payment Information.* The database that contains Merchant Center account information does not include payment information. Merchants may opt to only engage in free listings on Shopping and are not required to create paid ad campaigns. If a Merchant wishes to have paid Shopping Ads, as noted above, they must create an Ads account, and that is where payment information resides. Accessing the data in a Google Ads account requires coordinating with another Product team at Google and takes additional time and permissions. Moreover, Merchant Center accounts may be linked to more than one Google Ads account.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

Executed on December 13, 2024 in Zurich, Switzerland.

_____
Christophe Weibel