

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
michele@oandzlaw.com

December 16, 2024

**By ECF Filing**

Hon. Jennifer L. Rochon
United States District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re: *Cengage Learning, Inc. et al. v. Google LLC*, Case No. 24-cv-04274-JLR-BCM

Dear Judge Rochon:

    Pursuant to Court's Order (Dkt. 56), the parties submit this joint letter setting forth their positions on the instant discovery dispute. The parties conferred on December 12 and exchanged proposals through several emails. The parties' proposals are attached as Exhibits A and B.

**Plaintiffs' Proposal**

    Following the December 4 hearing, Plaintiffs have worked to narrow the issues for the Court to decide. Plaintiffs provided to Google the 1,264 domains represented in the infringing ads Plaintiffs have noticed. Google represented that compiling that list on its own would have involved significant work. Dkt. 57 at 32:1–7, 33:20–23. Using Plaintiffs' list, Google can determine the Merchant Center Accounts that initiated the infringing ads, a process Google described as "relatively easy. . . ." *Id.* at 32:17–20. Next, Plaintiffs propose that to identify other accounts those *same merchants* operate, Google perform two straightforward searches: (1) identify the accounts that the infringer herself has *already linked* to her Merchant Center Account; (2) identify any accounts that share the same email, phone number, or payment information as the infringer.

    The parties disagree on three issues. First, Google refuses to disclose the other accounts linked to the infringer's Merchant Center "umbrella" account. Ex. A, no. 1. This is absurd. These are accounts that the *infringers themselves* have linked together, and those linkages are readily retrievable in Google's systems. To use paid Shopping Ads, Google even *requires* merchants to link an Ads Account to their Merchant Center Account. Dkt. 59 ¶ 7.

    Second, Google wishes to search only one data field (email address), and asks the Court to decide now that *none* of the resulting accounts will be subject to further discovery. This is no offer at all. The purpose of identifying the other accounts the infringing merchants operate is to obtain information about the merchants and their dealings with Google, e.g., infringement notices implicating them, Google's communications with them, and other Shopping ads they ran. Identifying these accounts is useless if no information about them will be produced.

    Third, Google proposes basing its search on notices only through August 12, 2024, rather than December 12, 2024. Plaintiffs' date is more sensible. Google's infringements have continued through the present. That Google has continued to advertise the infringing works, and on behalf of some of the same infringers, is further evidence of its culpability.

    The discovery Plaintiffs request is critical to this case. Determining whether Google continued assisting known infringers through other accounts those infringers controlled is critical

Hon. Jennifer L. Rochon
December 16, 2024
Page 2

to Google's knowledge and the scope its infringement. Likewise, failing to terminate other accounts an infringer operated shows willfulness and a need for deterrence in determining damages. And, to qualify for the DMCA defense, Google must show that it "reasonably implemented" a "policy" to terminate "subscribers and account holders" who are "repeat infringers . . . .". 17 U.S.C. § 512(i)(1)(A). To determine whether Google met this standard, the Court will need to know whether Google terminated *all* of a pirate's accounts, or terminated one while ignoring others. *Capitol Records, LLC v. Escape Media Grp., Inc.*, 2015 WL 1402049, at *9–12 (S.D.N.Y. Mar. 25, 2015) (termination must "end or discontinue the accounts of repeat infringers, not something short of that . . ."). The cases Google cites to argue otherwise, Dkt. 50 at 1–2, are inapplicable. *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1111 (9th Cir. 2007) and *Capitol Recs., LLC v. Vimeo, LLC*, 826 F.3d 78, 98 (2d Cir. 2016) both involve a service provider's obligation to detect new *infringements* on its own; here, Plaintiffs have notified Google of the infringements at issue. And *Arista Recs. LLC v. Myxer Inc.*, 08-cv-03935, 2011 WL 11660773, at *21 (C.D. Cal. Apr. 1, 2011) involves whether a service provider must prevent already-terminated users from re-registering, not whether existing accounts of the infringer must be terminated.

Google's arguments on alleged burden are unavailing. As explained in the accompanying declaration, ¶¶ 13–20, the linkages and data fields Plaintiffs suggest Google search are visible on a merchant's user interface. That necessarily means they are readily searchable. Google largely does not contest that it can run these searches, but complains that the searches may return a large number of matches. Dkt. 59 ¶¶ 18–19. But the number of hits is a function of the massive scale of Google's infringement. Google allows pirates to spread their infringements across multiple accounts. Google should not be allowed hide behind that system to evade liability now.

**Defendant's Position**

This matter is before the Court because Plaintiffs sought to compel Google to search for and produce a broad swath of information not just from merchant accounts that had received complaints of infringement about the asserted works (what they termed "Infringing Merchants"), but from a group of accounts that had received no complaints, but which had some amorphous and difficult-to-determine "business connection or link" to accounts that had received such complaints (what they termed "Related Ads Merchants"). Importantly, Plaintiffs sought to compel not just the identification of those accounts, but the search and production of documents in response to thirteen RFPs (*see* Dkt. 50 ("Ltr. Resp.") at 2)—documents for merchant accounts that, again, had received no relevant complaints of copyright infringement.

At the hearing, the Court asked the parties to discuss a compromise for a proportional search for "related" merchant accounts. *See* Hrg. Tr. at 44:3–23. While Google maintains that Plaintiffs' requests are irrelevant, overbroad, disproportionate, and exceptionally burdensome, *see* Ltr. Resp.; Dkt. 59 ("Weibel Decl."), Google offered Plaintiffs a compromise in the interest of resolving this dispute. This compromise addresses both the manner in which it will identify the "related" merchant accounts and the documents it will produce with respect to those accounts.

Hon. Jennifer L. Rochon
December 16, 2024
Page 3

  First, Google proposed providing Plaintiffs with: (1) the identities of all Merchant Center accounts linked to **domains** matching those in the spreadsheet that Plaintiffs provided on December 6, 2024 ("**Domain-Identified Merchants**"), *whether or not* such Merchant Center accounts in fact ran ads that were the subject of notices from Plaintiffs about the asserted works; and (2) discovery about Domain-Identified Merchants responsive to Plaintiffs' thirteen RFPs, subject to Google's other objections and the Parties' ongoing negotiations. *See* Ex. B. In other words, Plaintiffs will receive full discovery about the merchant accounts that initiated the ads subject to Plaintiffs' infringement notices *and* all merchant accounts connected to the same domains. That is no small feat on its own. Google estimates there will be **over 17,300** Domain-Identified Merchants connected to 1,043 domains identified by Plaintiffs. Weibel Decl. ¶ 16. Responding to Plaintiffs' 13 discovery requests with respect to these merchants requires collection, review, and production of a trove of data about each merchant, stored across multiple databases and locations, and managed by different product teams. Ltr. Resp. at 2; Weibel Decl. ¶¶ 13–22.

  Second, Google has proposed providing Plaintiffs with additional information about a **further** group of merchants: (1) the identities of all Merchant Center accounts with the same **email account identifiers** associated with the Domain-Identified Merchants ("**Email-Connected Merchants**"); and (2) a subset of information about the Email-Connected Merchants, namely, documents sufficient to identify the merchant name, website homepage, account creation date, and account suspension date. *See* Ex. B. It is not proportional to the needs of this case to further require the production of documents in response to all thirteen of Plaintiffs' RFPs that call for information concerning "Related Ads Merchants." Google estimates there will be **nearly 11,000** additional Email-Connected Merchants connected to the 17,300 Domain-Identified Merchants (themselves connected to 1,043 domains). Weibel Decl. ¶¶ 17–18.

  Google's proposal balances the marginal (at best) relevance of the "Related Ads Merchants" information sought by Plaintiffs against the significant burden of responding to Plaintiffs' discovery requests. *See id.* ¶¶ 15–19. But despite Google's significant moves, Plaintiffs demand more. Plaintiffs have continued to insist that Google use additional fields to "link" and identify various other accounts, including account types that are even further removed from the Shopping ads identified by Plaintiffs' notices.[1] Plaintiffs have also insisted on a right to provide an ever-expanding list of domains as the basis for the search; since sending Google a list of 1,045 domains on December 6, they have proposed adding an additional 215 new domains, with no promise to stop. Notably, while demanding that Google try to find more and more accounts that may or may not be relevant, Plaintiffs have not reduced or limited the scope of information sought by the 13 RFPs for the so-called "Related Ads Merchants." Plaintiffs' unyielding and untenable proposal only serves to show that this entire line of discovery is an unjustified fishing expedition.

---

[1] Paid ad campaign data—including payment information—is housed in a separate database managed by another Product team at Google. *See* Weibel Decl. ¶ 8. There is no uniform "Shopping Ads account" as Plaintiffs suggest.

Hon. Jennifer L. Rochon
December 16, 2024
Page 4

Respectfully Submitted,

| | |
|---|---|
| */s/ Jeff Kane* | */s/ Sarah A. Tomkowiak* |
| Jeff Kane | Sarah A. Tomkowiak |
| OPPENHEIM + ZEBRAK, LLP | Latham & Watkins LLP |
| *Counsel for Plaintiffs* | *Counsel for Defendant* |