January 15, 2025

**VIA ECF**

The Honorable Jennifer L. Rochon
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1920
New York, NY 10007

   Re: *Cengage Learning, Inc. et al. v. Google LLC*, Case No. 24-cv-04274-JLR-BCM:
      Joint Letter Regarding Protective Order

Dear Judge Rochon,

  Counsel for the parties respectfully submit this joint letter concerning a proposed stipulated protective order ("Protective Order"). Pursuant to Your Honor's Individual Rule 4(B)(iv), the parties propose changes to the Court's Model Protective Order ("Model") and file the required redlined documents as exhibits to their proposed orders (*see* References below). Although the parties have agreed on most aspects of the Protective Order, they are at impasse on two provisions: (1) employee access to "Confidential" documents; and (2) the number of in-house counsel who can review "Highly Confidential–Attorneys' Eyes Only" ("AEO") documents.

**Plaintiffs' Position**

  **Issue 1:** Due to each Plaintiff's size and structure, and the range of issues in this case, up to five non-attorney employees per Plaintiff must be permitted to review documents that Google designates "Confidential." Ex. A ¶ 12(c). First, this does not involve a small subset of documents. Google has only produced 181 documents. Second, Plaintiffs' counsel (outside and in-house) must be able to discuss key documents with the designated employees, who work in relevant departments, "have responsibility over this litigation," and to whom "counsel deem disclosure is reasonably necessary." *Id.* As Plaintiffs have explained to Google, these areas include DMCA notices, copyright/trademark rights, and online advertising. Google's limitation would obstruct counsel's ability to understand the issues and make litigation decisions, including about settlement. Third, Google's provision that "[n]othing . . . shall preclude or impede Outside Counsel's ability to communicate with or advise their client" does not resolve this issue, as it further states that "such communications or advice shall not disclose or reveal the content of any Confidential Discovery Material." *Id.* ¶ 34. For example, Google has not yet produced its DMCA policy regarding repeat infringement; Google wants only one Plaintiff employee to know what it says. Fourth, these employees need access to information about the case because they have decision-making authority or are serving in a key input role. *Id.* ¶ 12(c). This is a critical case for Plaintiffs involving massive infringement and substantial resources. Fifth, absent agreement, there is no legal basis for Google's insistence that disclosure be limited to one employee. Ex. C ¶ 12(c). *Compare FTC v. Sysco Corp.*, 308 F.R.D. 19, 26 (D.D.C. 2015) (refusing to limit the number of employees with access to confidential information or require disclosure of the employees' names), *with Kewazinga Corp. v. Google LLC*, No. 1:20-cv-1106-LGS, 2020 WL 2129393, at *5 (S.D.N.Y. May 5, 2020) (entering *stipulated* provision limiting access). Sixth, there is no tangible risk to Google. Access will be granted to only five employees per Plaintiff who meet specific criteria and

sign the NDA, thus personally agreeing to order's extensive protections. Ex. A ¶ 12(c) & NDA (Ex. A). Nor has Google provided any legitimate basis for its "competitive concerns," which are based only on their speculative accusation that Plaintiffs' employees (most of whom have no involvement in advertising) might use Google's documents to "game the litigation." The employees are bound to use the information solely for purposes of this case (Ex. A ¶ 19), and Plaintiffs and Google are not competitors, as in *Auto Tech Int'l, Inc. v. Siemens VDO Auto Corp.*, No. 06-15756, 2009 WL 388374, at *1 (E.D. Mich. Feb. 13, 2009). Finally, Plaintiffs should not be required to disclose these employees' names. Exs. A & C ¶ 12(c). These are persons with whom counsel has determined they need to communicate about this case; thus, providing this information would reveal counsels' thought processes (if the employees are fact witnesses, they will be identified under Rule 26(a)(1)(A)). The Court should not substitute its (or Google's) judgment for what Plaintiffs' counsel believes is the minimum level of input from key employees needed to properly conduct this case.

**Issue 2:** Up to three in-house counsel per Plaintiff must be permitted to review documents that Google designates as AEO (Ex. A ¶ 13(b)), i.e., the supervising General Counsel and one to two other attorneys who are responsible for the case (one Plaintiff has a General Counsel and a Global General Counsel). This is how Plaintiffs have determined they need to conduct this large case. These attorneys need to be fully informed to evaluate the issues, advise their companies, make litigation decisions, and direct outside counsel. Such counsel are officers of the court, their names and positions will be disclosed to Google, and they will sign the NDA. There is no risk to Google, as the order imposes strict safeguards on AEO documents and prohibits their use outside of the litigation. *Id.* ¶¶ 3, 19. And contrary to Google's bald assertion, these attorneys are not "involved in competitive decisionmaking" with respect to the issues in this case (e.g., they have no responsibility for placing or bidding on Google ads or handling related day-to-day business issues). Instead, their responsibility is to direct the litigation, and the Court should reject Google's attempt to hamstring these efforts. *See, e.g., Avery Dennison Corp. v. 3M*, No. CIV. A. 01–125–JJF, 2001 WL 1339402, at *2 (D. Del. Oct. 26, 2001) (declining to limit disclosure to one in-house attorney, finding that, "[l]ike outside counsel, in-house counsel is bound by professional and ethical responsibilities," and they "should not be denied access to confidential information produced under the terms of an appropriate protective order"). If it would be helpful to the Court, Plaintiffs' in-house counsel will submit a declaration confirming the points set forth herein.

**Google's Position**

**Issue 1:** Google proposes limiting disclosure of "Confidential" material to one employee with relevant job duties per party (in addition to an unlimited number of in-house counsel). *See* Ex. C § 12(c). Plaintiffs proposal would allow disclosure of Google's confidential materials, as a matter of right, to up to *twenty* total individuals *beyond* Plaintiffs' in-house counsel. Such extensive disclosure is neither reasonable nor necessary for Plaintiffs to litigate this case. *See Kewazinga Corp. v. Google LLC*, 2020 WL 2129393, at *5–6 (S.D.N.Y. May 5, 2020) (precluding disclosure to any party employees except one in-house counsel); *Auto. Techs. Int'l, Inc. v. Siemens VDO Auto. Corp.*, 2009 WL 388374, at *1 (E.D. Mich. Feb. 13, 2009) (precluding review of confidential information by any non-attorney employees). Google anticipates producing commercially sensitive business information about Google Shopping Ads, how auctions work, and how Plaintiffs' competitors engage in the market. That is precisely the kind of information that would enable Plaintiffs' employees, who are not bound by professional ethical obligations, to game the litigation for competitive advantage. Even the best-intentioned employees could inadvertently use

such knowledge in the course of their regular duties. *See Tailored Lighting, Inc. v. Osram Sylvania Prods., Inc.*, 236 F.R.D. 146, 149 (W.D.N.Y. 2006) (precluding disclosure of proprietary information to a non-competitor because "it seems unreasonable to expect that anyone working to further his own . . . interests would be able assuredly to avoid even the subconscious use of confidential information revealed through discovery that is relevant to those interests" and because outside experts could do the same analysis). Google invited Plaintiffs to describe with particularity their need for so many undisclosed employees to have unfettered access to *all* confidential documents, how any such non-attorney employees "have responsibility over this litigation," or the criteria by which counsel might determine employees "reasonably necessary" for such access. But Plaintiffs still provide no justification beyond a generic "need" to access information. That is not enough, particularly given that Google may only designate documents "Confidential" if they "will create a substantial risk of harm" to the business if disclosed. *See GlobalFoundries U.S. Inc. v. Int'l Bus. Machines Corp.*, 2023 WL 7297266, at *1 (S.D.N.Y. Nov. 6, 2023) (courts must "weigh[] the interests of both sides in fashioning a[] [protective] order").

Google's proposal also includes a requirement that the Receiving Party serve the signed NDAs of its employee(s) upon the Producing Party prior to disclosure, allowing time for objection. *Id.* Waiting until "issues arise" to learn the names of the employees to whom its confidential material has been disclosed fails to allow sufficient protection against disclosure to potentially objectionable employees. *See* Ex. A § 12(c). "[O]nce such confidential information is disclosed, the bell cannot be unrung." *Blackbird Tech LLC v. Service Lighting and Elec. Supplies, Inc.*, 2016 WL 2904592, at *5 (D. Del. May 18, 2016). And practically, without knowing which employees have access, how would Google begin to demonstrate "good cause" to learn their names?

**Issue 2**: To limit disclosure of the parties' most sensitive business and competitive information to as few individuals as reasonably possible, Google's proposal permits disclosure of AEO materials to only one in-house counsel per party. *See* Ex. C § 13(b). Plaintiffs' proposal would allow access of AEO materials to three in-house counsel per party as of right, resulting in exposure of Google's most sensitive business material to twelve of Plaintiffs' employees. But Plaintiffs have not explained why one to two General Counsels and one to two in-house lawyers *all* need access to sensitive AEO documents, particularly given the inclusion of a provision expressly protecting the conferral of advice based on outside counsel's review and evaluation of such material. *See id.* § 5; *see also Kewazinga Corp.*, 2020 WL 2129393, at *5–6 (allowing access to AEO materials by a single in-house counsel). As this Court has recognized, in-house counsel should not be permitted access to sensitive information "solely because she is bound by the rules of professional responsibility." *Travel Leaders Grp. Holdings, LLC v. Thomas*, 2024 WL 2058436, at *1 (S.D.N.Y. May 8, 2024). Sharing sensitive AEO documents with two additional in-house counsel per party, particularly those like General Counsels involved in "competitive decisionmaking with the client"—representing eight additional in-house counsel for Plaintiffs all together—presents a significant risk of inadvertent disclosure that outweighs any purported benefit. *Koninklijke Philips N.V. v. iGuzzini Lighting USA, Ltd.*, 311 F.R.D. 80, 83–84 (S.D.N.Y. 2015) (finding no "particularized need" for an in-house counsel with an oversight and coordination role to read AEO materials); *see also Silversun Indus., Inc. v. PPG Indus., Inc.*, 296 F. Supp. 3d 936, 941–46 (N.D. Ill. 2017) (denying the defendant's associate general counsel access to highly confidential materials). Google's proposal of one in-house counsel per party appropriately balances the benefits of in-house counsel involvement against the risks of inadvertent disclosure.

Respectfully Submitted,

| | |
|---|---|
| */s/ Michele H. Murphy* | */s/ Holly Victorson* |
| Oppenheim + Zebrak, LLP | Latham & Watkins LLP |
| *Counsel for Plaintiffs* | *Counsel for Defendant* |

References:
    (1) Ex. A (Plaintiffs' proposed Protective Order)
    (2) Ex. B (redline comparing Plaintiffs' proposal to the Court's Model)
    (3) Ex. C (Google's proposed Protective Order)
    (4) Ex. D (redline comparing Google's proposal to the Court's Model)
    (5) Ex. E hereto (comparison of Google's proposal and Plaintiffs' proposal)