UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; ELSEVIER INC.; ELSEVIER B.V.; and MCGRAW HILL LLC,<br><br>                      Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>                      Defendant. | Case No. 1:24-cv-04274-JLR-BCM |

**STIPULATED ORDER
REGARDING PROTOCOL FOR PRODUCING DOCUMENTS
AND ELECTRONICALLY STORED INFORMATION**

Plaintiffs Cengage Learning, Inc., Bedford Freeman and Worth Publishing Group, LLC d/b/a Macmillan Learning, Macmillan Holdings, LLC, Elsevier Inc., Elsevier B.V., and McGraw-Hill LLC ("Plaintiffs") and Defendant Google LLC ("Defendant", and collectively with Plaintiffs, "Parties") hereby acknowledge, agree, and stipulate as follows:

1. **PURPOSE**

This Stipulated Order Regarding Protocol for Producing Documents and Electronically Stored Information ("Order") will govern the production of documents, including electronically stored information ("ESI," as further defined below) in this litigation as a supplement to the Federal Rules of Civil Procedure, the Local Rules of the Southern District of New York, this Court's Individual Rules of Practice in Civil Cases, the Stipulated Protective Order issued in this litigation, and any other applicable orders and rules.

1

2. **DEFINITIONS**

   a) "Documents" is defined to be synonymous in meaning and equal in scope to the usage of the term in Fed. R. Civ. P. 34(a) and includes ESI existing in any medium from which information can be translated into reasonably usable form, including but not limited to email and attachments, word processing documents, spreadsheets, graphics, presentations, images, text files, databases, instant messages, transaction logs, audio and video files, voicemail, internet data, computer logs, text messages, and backup materials. The term "Documents" includes Hard Copy Documents, Electronic Documents, and ESI, as defined herein.

   b) "Electronic Documents" means Documents existing in electronic form at the time of collection, including but not limited to e-mail or other electronic communications, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint slides), spreadsheets (e.g., Excel), and image files (e.g., PDF).

   c) "Electronically stored information" or "ESI" means information that is stored electronically as files, documents, or other data on computers, servers, mobile devices, online repositories, disks, USB drives, tape, or other real or virtualized devices or digital media. ESI includes Electronic Documents.

   d) "Hard Copy Documents" means Documents existing in paper form at the time of collection.

   e) "Hash Value" means a numerical identifier that can be determined from a file, a group of files, or a portion of a file, based on a standard mathematical algorithm that calculates a value for a given set of data, serving as a digital fingerprint, and

representing the binary content of the data to assist in subsequently ensuring that data has not been modified and to facilitate duplicate identification.

f) "Inaccessible Data" means any relevant ESI not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B). "Presumptively Inaccessible Data" includes the following:

   i. backup systems or tapes, cold or offline storage, or other long-term storage media, including tapes or storage systems used as a data backup or disaster recovery medium;

   ii. systems no longer in use that cannot be accessed;

   iii. if duplicative of information produced from another source, voice messages and information from handsets, mobile devices, personal digital assistants and tablets;

   iv. automatically saved versions of Documents, including emails;[1]

   v. deleted, slack, fragmented, or other data accessible only by forensics;

   vi. systems, server, and network logs;

   vii. random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve or retrieve without extraordinary affirmative measures that are not utilized in the usual course of business;

   viii. online access data such as temporary internet files, history, cache, cookies, and the like;

   ix. dynamic fields of databases or log files that are not retained in the usual course of business; and

---

[1] This does not alter any preservation or production obligations concerning draft Documents, including emails, that are accessible other than through an automatic save function (e.g., saved on a custodian's computer).

        x. data in Metadata fields that are frequently updated automatically, such as last opened dates.

g) "Load File" is an electronic file containing information identifying a set of paper scanned (static) images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. Load Files also contain data relevant to individual Documents, including extracted and user-created Metadata, coded data, as well as OCR or extracted text. A Load File linking corresponding images is used for productions of static images (e.g., TIFFs).

h) "Metadata" is the term used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file.

i) "Native Format" means the file format associated with the original creating application or a reasonably equivalent file format. For example, the native format of an Excel or Google Sheets workbook is an .xls or .xlsx file.

j) "Optical Character Recognition" or "OCR" means a technology process that captures text from an image for the purpose of creating an ancillary text file that can be associated with the image and searched in a database. OCR software evaluates scanned data for shapes it recognizes as letters or numerals.

k) "Searchable Text" means the native text extracted from an Electronic Document or, when extraction is infeasible, by OCR'd text generated from a Hard Copy Document or electronic image.

3. **COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Local Civil Rule 26.4.

4. **PROPORTIONALITY**

The Parties agree that they are expected to use reasonable, good faith, and proportional efforts to preserve, identify, and produce relevant Documents consistent with Fed. R. Civ. P. 26(b)(1). This includes identifying and using good faith efforts to agree upon appropriate discovery parameters to guide preservation and production issues in accordance with the applicable rules, including but not limited to issues regarding custodians, identification of relevant subject matter, and the time periods for discovery.

5. **LIAISON**

The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

6. **PRESERVATION**

The Parties will discuss their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate in accordance with Fed. R. Civ. P. 26(b)(1) & (b)(2)(B). To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that there is no need to preserve Presumptively Inaccessible Data as a result of this litigation, and Presumptively Inaccessible Data will not be searched, reviewed, or produced in this litigation absent modification of this Order or agreement by the parties or as otherwise required by an order of this Court.

7. **SEARCH AND PRODUCTION**

    a)    The Parties agree that in responding to a request under Fed. R. Civ. P. 34, they

will meet and confer in an attempt to reach an agreement on any disputed issues regarding ESI that is subject to production in discovery. This includes identifying and using good faith efforts to agree upon appropriate discovery parameters to guide preservation and production issues in accordance with the applicable rules, such as issues related to custodians, the identification of relevant subject matter, and time periods for discovery.

b) The Parties may filter out ESI that is not responsive to the Fed. R. Civ. P. 34 request(s) pursuant to which the ESI is being produced. If applicable, this includes filtering out common system files and application executable files by using a commercially reasonable hash identification process as set forth in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of file types based on file header information may include, but is not limited to: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, MP3 Files, MP4 Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Quicktime Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, TrueType Font Files, Video Media Files, Waveform Audio File Format, Windows Cabinet File, Windows Command Files, Windows File Shortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

c) A party is required to produce only a single copy of a responsive Document, and a party may de-duplicate responsive ESI across custodians. A party is not required to produce Hard Copy Documents that are identical to documents that exist in electronic format.

d) Most evolved emails will be produced with the CC and BCC line displayed in the image. A party may de-duplicate email threads and attachments as follows: In an email thread, only the most evolved responsive email in a thread will be produced, provided that the prior

emails in the thread are not different from what appears in the most evolved email; however, where an earlier-in-thread email has a responsive attachment not contained within the most evolved responsive email, the most evolved earlier-in-thread email containing the attachment will also be produced along with its attachment. In general, an attachment is a file associated with an email for retention and storage as a single message unit. Hyperlinks are different from attachments. Therefore, the Parties agree that they are not obligated to produce such linked Documents in emails in the first instance but further agree that this provision does not excuse the production of linked Documents that are otherwise responsive to a party's requests for production, nor does it preclude a party from requesting production of particular linked Documents that are relevant to the claims or defenses in this case. Any party may make requests, for good cause and subject to the proportionality standard, for production of specifically identified hyperlinks. If necessary, the Parties will meet and confer to discuss this subject.

   e) If applicable, no provision of this Order affects the inspection or production of source code which will be collected and made available consistent with the Stipulated Protective Order governing this case.

   f) The Parties agree not to degrade the searchability of Documents as part of the document production process.

   g) The Parties shall produce ESI in reasonably usable form. Except as otherwise ordered by the Court or agreed to by the Parties, the Parties shall follow the production format specification in Attachment A.

## 8. DOCUMENT UNITIZATION

If a Document that contains an attachment(s) is responsive and otherwise subject to discovery, the Document and the attachment(s) will be produced. If one or more attachment(s) to a Document are responsive and subject to discovery, the parent Document will be produced.

The Parties shall take reasonable steps to ensure that parent-child relationships within a document family (the association between a produced attachment and its parent Document) are preserved. The child Document(s) should be consecutively produced immediately after the parent Document. In addition to the other provisions regarding email attachments set forth above, extracted images from emails where the extracted image is present in the body of the email such as logos or screenshots need not be produced as child Documents.

9. **PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree, as a general matter, that the responding party may produce Documents, including ESI, on a phased (i.e., rolling) basis, and that following the initial production, the responding party will continue to prioritize the order of subsequent productions.

However, this agreement of the Parties does not supersede any dates set by the Court or otherwise agreed to by the Parties regarding deadlines for producing Documents. This agreement also does not preclude any party from maintaining that an opposing party's production has resulted in delay. In that event, the Parties will work together to address the issue and raise it with the Court if they are unable to reach agreement.

10. **DOCUMENTS PROTECTED FROM DISCOVERY**

Nothing in this Agreement shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. By entering into this Agreement, the Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

11. **TECHNOLOGY ASSISTED REVIEW**

Nothing in this Agreement shall be construed or interpreted as precluding a producing Party from performing review and analysis, including the use of Technology Assisted Review

("TAR"), to determine if a document is in fact relevant to the requesting party's request or is privileged or otherwise protected. However, the Parties understand that they remain responsible for searching for Documents and responding to document requests as provided by the applicable rules or the Court, and that a failure to do so is not presumptively obviated by the use of TAR.

**12. PRIVILEGE LOG**

a) If a party reasonably determines that responsive Documents are not discoverable because they are subject to the attorney-client communication privilege or work product doctrine, or otherwise not discoverable on the basis of a recognized protection or privilege (collectively, the "Privileges" and each a "Privilege"), the party shall produce a log for Documents withheld for Privilege, consistent with Local Civil Rule 26.2(c) and all other applicable law, rules, and orders. As a matter of course, a party is not required to log redacted documents, but a short description of the basis for redactions will be indicated on the face of the documents in the overlay text for each redaction (e.g., "Redacted – Privilege").

b) Communications to or from counsel or experts retained for the purpose of this litigation that post-date the filing of the first-filed complaint need not be placed on a privilege log. This provision does not otherwise affect the discoverability of any Documents pursuant to Fed. R. Civ. P. 26.

c) For email communications logged individually, only the most evolved email(s) in the chain will be set forth on the log.

d) Privilege logs provided in lieu of producing requested documents shall be produced at an time agreed to by the Parties. In the event that documents are produced thereafter, the Parties agree to update their privilege logs within a reasonable amount of time, including time sufficiently in advance of the end of fact discovery.

**13. MODIFICATION**

The Parties reserve the right to seek exceptions, amendments, or modifications to this Order by agreement, or from the Court for good cause shown. Any such modified Stipulated Order will be titled sequentially as follows, "First Modified Stipulated Order Regarding Protocol for Producing Documents and Electronically Stored Information," and each modified Stipulated Order will supersede the previous Stipulated Order.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: January 16, 2025

Michele H. Murphy
Oppenheim + Zebrak, LLP
Counsel for Plaintiffs

Dated: January 16, 2025

Holly Victorson
Latham & Watkins LLP
Counsel for Defendant

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: January 17, 2025

Hon. Jennifer L. Rochon
United States District Judge