

Michele H. Murphy
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.450.5643
michele@oandzlaw.com

March 4, 2025

**VIA ECF**

Hon. Jennifer L. Rochon
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

**Re:** *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
    **Letter Request for Pre-Motion Conference**

Dear Judge Rochon:

    More than six months after Plaintiffs issued their Requests for Production, and more than eight months after Plaintiffs filed their complaint, Defendant has produced less than 200 documents. Before fact discovery closes on September 29, 2025, the parties can take (at Defendant's request) up to forty fact depositions, plus five 30(b)(6) depositions. Dkt. 84 ¶¶ 7(d), 19. At its current pace, Defendant will not complete document production in time for depositions and the (already-extended) fact discovery deadline. Plaintiffs therefore ask the Court to enter a production schedule containing interim production deadlines.

## BACKGROUND

    This case centers on Defendant's advertisement of infringing copies of some 4,000 of Plaintiffs' educational works. Plaintiffs allege contributory and vicarious copyright infringement, Counts I and II (Am. Compl. Dkt. 38) in response to which Defendant intends to assert the safe-harbor defense under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, Dkt. 29 at 2. In addition, Defendant's advertisements infringed Plaintiffs' trademarks (Count III). And Defendant's practice of allowing ebook ads from *pirate* sellers while disallowing such ads from *legitimate* sellers violated New York law on deceptive trade practices (Count IV).

    Plaintiffs issued requests for production on September 3, 2024. Dkt. 47-1 at 19. In the following six months, Defendant has produced only 188 documents. Ex. B, Declaration of Jeff Kane ("Atty. Decl.") ¶ 3. Of those, 181 are simply screenshots of publicly-available pages from Defendant's website, and two were produced pursuant to the Court's January 15, 2025 Order (Dkt. 76). *Id.*

    The Case Management Plan does not include a date for the close of document discovery. Dkt. 84. All fact discovery closes on September 29, 2025. *Id.* ¶ 7(e). Before then, the parties are permitted forty fact depositions, plus five 30(b)(6) depositions. *Id.* ¶ 19. Thus, to meet the fact discovery deadline, document production will have to be completed by July 1, 2025 at the very latest (with the bulk of productions completed before that). Unfortunately, Defendant is not nearly on track to do so.

## ARGUMENT

**I.    Documents not-yet produced concern some of the most important issues in this case.**

    The documents Defendant has yet to produce involve some of the most important issues in

Hon. Jennifer L. Rochon
March 4, 2025
Page 2

the case. An entire claim in this case concerns Google's practice of disallowing Shopping Ads for ebooks from legitimate sellers, but allowing such ads from pirate sellers. Dkt. 38, Count IV. Defendant has produced no documents concerning this policy, save for publicly-available pages from Defendant's website. Atty. Decl. ¶ 6. Likewise, another claim in this case concerns Defendant's infringement of Plaintiffs' trademarks. Defendant has produced no documents about its trademark practices, save for publicly-available pages from Defendant's website. *Id.* Defendant has produced no emails or communications on any topic. Atty Decl. ¶ 5. Defendant has produced only five documents concerning its DMCA policy (Defendant's primary defense in the case). *Id.* ¶ 7. Defendant has produced no manuals or guidelines concerning the implementation of the policy, no data concerning how many infringement notices Defendant received or how many merchant accounts it terminated (outside of the merchants implicated by Plaintiffs' notices), and no internal reports concerning the program's operation or assessing the programs' performance. *Id*. Even basic information about the policy remains undisclosed, including the definitions of key terms the policy uses and exceptions the policy provides, and documents to which the policy itself links. *Id.*

To be clear, the related accounts issues that this Court decided last December and the production schedule the Court set for those documents (Dkt. 76) do not cover the overwhelming majority documents Defendant has not yet produced, or even started producing. For example, internal communications concerning Defendant's DMCA policy, materials explaining that policy, documents concerning the technology Defendant deploys to address copyright infringement, documents concerning Defendant's "ban" on Shopping Ads for ebooks, and documents concerning trademark practices all would have to be produced regardless of the Court's prior Order.

**II.     Plaintiffs' efforts to obtain documents from Defendant have failed.**

Plaintiffs had hoped that both sides would produce documents on a rolling basis as the case progressed. Plaintiffs have done so, making seven productions totaling over 185,000 documents so far. Atty. Decl. ¶ 8. But despite seven meet-and-confers and thirteen emails from Plaintiffs, Plaintiffs have received less than 200 documents from Defendant. *Id.* ¶ 4. Several times, Plaintiffs have suggested setting deadlines for Defendant's production, for updates on Defendant's production status, or even for Defendant to state its position on what it will produce, and for many issues, Defendant has refused to do so. *Id.* ¶ 9. Plaintiffs had hoped that they had made progress in October 2024 when Defendant agreed that it would produce its DMCA policy promptly once a protective order was entered. But after the Protective Order was entered in January 2025, it took three weeks (after five emails and a meet-and-confer) for Defendant to provide this policy to Plaintiffs. *Id.* ¶ 10.

Greatly concerned about the pace of Defendant's discovery, Plaintiffs proposed a production schedule (attached as Exhibit A) to Defendant on February 24, 2025. Atty. Decl. ¶ 11. In response, Defendant's counsel told Plaintiffs' counsel that there was a "zero chance" that Defendant would agree to any document production deadlines other than an overall substantial completion date, saying that interim deadlines were "non-negotiable." *Id.* Defendant's counsel

Hon. Jennifer L. Rochon
March 4, 2025
Page 3

later confirmed that Defendant "is not going to agree to" an interim production schedule. *Id.* Defendant's counsel further stated that they might agree to deadlines for the substantial completion of the parties' overall document productions and the production of privilege logs, but their client was a conference. Counsel did not offer a date by which Defendant would propose any such deadlines. *Id.* And even if Defendant does respond with a proposed substantial completion date, that alone would not be sufficient to ensure that Defendant will meet the discovery deadline. Defendant, unfortunately, has demonstrated that it will not make meaningful rolling productions absent direction from the Court.

### III.     Plaintiffs' Proposed Production Schedule

Plaintiffs' proposed schedule (Exhibit A) prioritizes documents that will have the most impact on the rest of discovery, so that subsequent discovery can be tailored based on the information already produced. For example, documents describing the details and implementation of Defendant's DMCA and trademark policies are due March 15, 2025, as those documents likely will make clear what other information is needed (or not needed) to investigate those policies. Further, to ensure fairness, Plaintiffs have proposed a schedule *both* for Defendant's productions and for Plaintiffs' own productions. Indeed, Plaintiffs' schedule contemplates Plaintiffs completing their productions by May 1, 2025 while giving Defendant until July 1, 2025 to do so.

Courts do not hesitate to set production deadlines. Indeed, this Court did so in this very case. Dkt. 76. Such deadlines are sometimes necessary to ensure that all parties in the case have "ample time to review documents that are produced prior to conducting depositions," *Fort Worth Emples. Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 114 (S.D.N.Y. Dec. 16, 2013). *See also United States v. ExxonMobil Pipeline Co.*, No. 4:13-cv-00355, 2014 WL 2593781, at *1–*3 (E.D. Ark. June 10, 2014) (setting a production schedule); *City of Colton v. Am. Promotional Events, Inc.*, No. 09-cv-06630, 2011 WL 2222133, at *2 (C.D. Cal. June 7, 2011) (setting a production schedule). Indeed, Rule 34 provides that a production time must be "specifically identified in the response" to a request for production. FED. R. CIV. P. 34(b)(2)(B); *see also id.*, Advisory Committee's Notes on Rules – 2015 Amendment ("When it is necessary to make the production in stages the response should specify the beginning and end dates of the production."). Such a schedule is appropriate here, particularly given that Defendant has had these requests since September 2024. *See Liberty Dialysis-Hawaii LLC v. Kaiser Found. Health Plan, Inc.*, No. 17-cv-00318, 2019 WL 4364383, at *8 (D. Haw. Sept. 12, 2019) (overruling objection to an eight-day production schedule, noting that the defendant had been aware of the document requests since "long before" the production schedule was issued).

### <u>CONCLUSION</u>

Pursuant to Local Civil Rule 37.2 and Rule 2(E) of this Court's Individual Rules of Practice in Civil Cases, Plaintiffs request a pre-motion discovery conference with the Court to set a schedule for both parties' document productions.

Hon. Jennifer L. Rochon
March 4, 2025
Page 4

        Respectfully submitted,

        /s/ Michele H. Murphy
        Michele H. Murphy
        OPPENHEIM + ZEBRAK, LLP
        4530 Wisconsin Avenue NW, Fifth Floor
        Washington, DC 20016
        Tel: 202-450-5643
        michele@oandzlaw.com