# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; ELSEVIER INC.; ELSEVIER B.V.; and MCGRAW HILL LLC,<br><br>   Plaintiffs,<br><br>  v.<br><br>GOOGLE LLC,<br><br>   Defendant. | Civil Action No. 24-cv-04274-JLR-BCM |

## ATTORNEY DECLARATION OF JEFF KANE

I, Jeff Kane, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am an attorney at the law firm Oppenheim + Zebrak, LLP, counsel for all Plaintiffs in this matter. I submit this declaration in support of Plaintiffs' Letter Request for a Pre-Motion Discovery Conference.

2. I am familiar with the documents Defendant has produced thus far in this case.

3. In six months since Plaintiffs issued their first Requests for Production, Defendant has produced only 188 documents. Of those, 181 are screenshots of publicly-available pages from Defendant's website (GOOG-CENG-00000001 through GOOG-CENG-00000682), and two were produced pursuant to the Court's January 15, 2025 Order, Dkt. 76 (GOOG-CENG-00000703–04).

4. Even leaving aside emails that concerned only the related accounts discovery that this Court ruled on last December, Plaintiffs' counsel has sent thirteen emails to Defendants'

1

counsel (on October 9, October 21, October 22, October 23, November 4, November 25, December 3, 2024; and Jan. 29, Feb. 7, Feb. 11, Feb. 19, Feb. 24, and Feb. 25, 2025), and conducted seven meet-and-confers (on October 17, October 25, November 14, November 15, November 19, February 4, and February 25, 2025).

5. However, Defendant has produced no emails or communications on any topic.

6. In Defendant's production, I have not seen any documents concerning Defendant's purported "ban" on Shopping Ads for ebooks, or its trademark practices, save for publicly-available pages from Defendant's website (e.g., GOOG-CENG-00000416; GOOG-CENG-00000372).

7. Defendant has produced only five documents concerning its DMCA policy. GOOG-CENG-00000683 through GOOG-CENG-00000702. Other than the policy itself, Defendant's production does not include any manuals or guidelines concerning the implementation of the policy, data concerning how many infringement notices Defendant received or how many merchant accounts it terminated (outside of the merchants implicated by Plaintiffs' notices), or internal reports concerning the program's operation or assessing the program's performance. Nor does Defendant's production include the definitions of key terms the policy uses or exceptions the policy provides, or the documents to which the policy itself links.

8. Plaintiffs have made seven productions in this case, on November 14, 2024; November 22, 2024; December 16, 2024; January 30, 2025; February 12, 2025; February 25, 2025; and February 27, 2025. Collectively, those productions comprise more than 185,000 documents.

9. On several occasions (e.g., through emails on November 25, 2024; December 10, 2024; January 10, 2025; January 29, 2025; and February 3, 2025), Plaintiffs have suggested setting deadlines for Defendant's production, or for meaningful updates on its production, or even for

Defendant to state its position on what it will produce, and with respect to many issues, Defendant has refused to do so.

10. During a meet-and-confer in October 2024 (as memorialized in emails on November 4, 5, and 8, 2024) Defendant agreed that it would produce its DMCA policy promptly once a protective order was entered. The Protective Ordered entered on January 17, 2025. Dkt. 82. Defendant waited three weeks to produce its (seven-page) policy on February 7, 2025 (after emails between the two sides on January 24, January 29, February 3, and February 4, 2025; and a meet-and-confer on February 4, 2025).

11. On February 24, 2025, Plaintiffs proposed a production schedule to Defendant. During a meet-and-confer on February 27, 2025, Defendant's counsel stated that the issue of interim production deadlines was "non-negotiable," saying that there was "zero chance" of an agreement. In an email on February 28, Defendant's counsel confirmed that Defendant "is not going to agree to" an interim production schedule. Defendant's counsel stated that Defendant might be willing to agree to a substantial completion date for document productions, but did not provide a date by which it would provide Plaintiffs with Defendant's position. Defendant's counsel likewise stated that Defendant might be willing to agree to a deadline for privilege logs, but likewise did not provide a date by which it would provide Plaintiffs with Defendant's position. As of the February 27 meet-and-confer, Defendant's counsel had not discussed any of these issues with their client. Defendant's counsel stated that their client was attending a conference, and that counsel was "endeavoring to discuss" these issues with their client "early next week" (i.e., the week of March 3).

I declare under penalty of perjury that the foregoing is true and correct.

Executed March 4, 2025, in Washington, D.C.

                                                        /s/ Jeff Kane
                                                        Jeff Kane