Case 1:24-cv-04274-JLR    Document 87    Filed 03/07/25    Page 1 of 4

**Sarah A. Tomkowiak**
Direct Dial: +1.202.637.2335
sarah.tomkowiak@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200 Fax: +1.202.637.2201
www.lw.com

# LATHAM & WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Silicon Valley |
| Hong Kong | Singapore |
| Houston | Tel Aviv |
| London | Tokyo |
| Los Angeles | Washington, D.C. |
| Madrid | |

March 7, 2025

<u>**VIA ECF**</u>

The Honorable Jennifer L. Rochon
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1920
New York, New York 10007

   Re: *Cengage Learning, Inc. v. Google LLC*, No. 1:24-cv-04274-JLR-BCM
     <u>Response to Plaintiffs' Letter Motion for Discovery Conference (Dkt. 85, "Ltr.")</u>

Dear Judge Rochon:

  Plaintiffs' extraordinary request that the Court enter a production schedule containing eight separate deadlines by which the parties must produce documents responsive to specific requests for production (RFPs) is unnecessary, impractical, and contrary to the Federal Rules.

  **<u>Background.</u>** This is an extremely complex case involving five plaintiffs who together are asserting four counts of action involving 4,313 copyrighted works and 12 trademarks. Dkts. 38, 38-1, 38-2.[1] Since at least 2020, Plaintiffs and Google had communications with the shared goal of combating digital piracy on Google's platform, including relating to certain works in suit or other e-books published by Plaintiffs. On June 5, 2024, Plaintiffs abruptly ceased those efforts and filed this suit. Dkt. 1. Fact discovery closes on September 29, 2025. Dkt. 84.

  Plaintiffs' 58 RFPs seek Google documents and communications dating back at least four years, and span a wide variety of topics. Dkt. 47-1. Throughout this initial discovery stage, Plaintiffs have engaged in various litigation tactics in an attempt to inflict maximum pressure on Google and leverage Google's anticipated DMCA defense to claim that Google must produce a staggeringly overbroad scope of discovery. As part of that strategy, Plaintiffs rushed to file a letter motion to compel Google to provide unduly burdensome discovery into merchants potentially "related" to the merchants that ran the allegedly infringing advertisements for the works in suit. Dkt. 46. The Court largely denied that motion, but as a result of that motion, there are two upcoming interim deadlines for Google to produce large sets of discovery in this case: March 31 and July 1. Dkt. 76.

  Despite Google's participation in dozens of substantive pre-production conferrals with Plaintiffs in an attempt to engage in cooperative discovery, Plaintiffs demand more. On Monday, February 24, Plaintiffs advised Google of their "concerns" regarding the pace of discovery, sent Google a proposed production schedule, and threatened to "take up this issue with the Court" unless the parties made "substantial progress on agreeing to a production schedule." Ex. A at 6.

---

[1] Google's motion to dismiss Counts II–IV is pending. Dkts. 43–44.

**LATHAM&WATKINS**LLP

Google's outside counsel agreed to meet and confer with counsel for Plaintiffs on February 27. *Id.* at 5. During that call, counsel for Google explained why imposing interim, RFP-specific document production dates dictated by Plaintiffs was overly complicated and impractical. Counsel for Google indicated that Google might agree to a substantial completion date for document production and to certain timing for serving privilege logs, subject to further client discussion and authorization, which counsel hoped to obtain from Google by "early" the week of March 3, because key Google personnel were unavailable due to conference attendance. *Id.* at 3. At 5:19 pm on Tuesday, March 4, rather than wait for Google's response, Plaintiffs proceeded to file their Letter. Dkt. 85. Later that day, Google proposed a substantial completion date of July 1, 2025,[2] and agreed that privilege logs for any production will be served two weeks after the production is made, except for the production that constitutes the party's final production toward substantial document completion, for which Google proposed a one-week turnaround. Ex. A at 2-3. Plaintiffs refused to agree on this last point, arguing that final privilege logs should be produced within "two business days" after final productions. *Id.* at 1.

**More Interim Deadlines Are Unnecessary.** Plaintiffs have provided no justification as to why certain RFPs (beyond those already subject to a Court order) must be "prioritized," other than their beliefs as to which issues are the "most important" to Plaintiffs. For example, Plaintiffs have offered no rationale for why March 17 is a significant date by which they must be provided Google's trademark infringement policies, nor for why April 15 is significant for documents regarding Google's ban on advertising digital books. That is because there is not one. These deadlines, and all of the deadlines in Plaintiffs' proposal (many of which encompass disparate RFPs not seemingly linked in any logical way), are entirely arbitrary.

Plaintiffs' arguments do not warrant the punitive relief they seek. Plaintiffs assert that interim deadlines of this nature are necessary because Google has not yet produced many documents and "will not make meaningful rolling productions absent direction from the Court." Ltr. 3. This speculation does not account for the fact that Google is diligently locating, sampling, collecting, and reviewing documents responsive to Plaintiffs' RFPs, which requires querying multiple internal Google systems and operating units (not to mention humans), often in bespoke ways that do not map onto Google's day-to-day business data or practices. This process necessarily requires the expense of significant time and energy *before* any document production can occur. Plaintiffs falsely equate the absence of more productions with the absence of efforts by Google to prepare for those productions (and ignore, in the case of custodial data, ongoing efforts to negotiate search terms and custodians). Plaintiffs next cite their "seven productions totaling over 185,000 documents so far," and argue they can meet the deadlines they set for themselves. Ltr. 2. But Plaintiffs' productions are not a meaningful comparator. Neither Google nor the Court knows how long it took Plaintiffs to compile evidence relevant to their anticipated case against Google before filing this suit, so the speed of Plaintiffs' *productions*—the vast majority of which comprise apparent documentation of the alleged infringement dating back to 2021—says nothing

---

[2] This deadline is only one month later than Plaintiffs' proposed substantial completion date of June 1, 2025. Plaintiffs' proposal that July 1, 2025 be a *final* completion date, rather than a *substantial* completion date, is abnormal if not unprecedented. Inevitably, additional documents will be produced after July 1 but before the close of fact discovery, for example, if either party requests additional documents after a deposition is completed, or the Court resolves future discovery disputes on a timeline that requires production after July 1. And it conflicts with the Court's existing order regarding related merchants evidence. *See* Dkt. 76.

about the comparative speed of Google's *collections*. For its part, Google was surprised by Plaintiffs' lawsuit and only began that process mere months ago. Finally, Plaintiffs cite the parties' need to complete "up to forty fact depositions, plus five 30(b)(6) depositions" as justifying their proposed schedule. Ltr. 1. But that, too, is a red herring. As Google has repeatedly explained, Plaintiffs are wrong to treat that *ceiling* for the number of depositions as a *floor* that will certainly be met. Nor is there any requirement that all depositions take place *after* substantial completion. In any event, a substantial completion date of July 1 should provide sufficient time for depositions in the three remaining months of fact discovery.

**RFP-Specific Deadlines Are Impractical and Contrary to Rule 34.** Plaintiffs' proposal should also be rejected because it is wholly unworkable in practice. The schedule is premised on the assumption that Google will be able to target collections from custodial and non-custodial sources that are specific to individual RFP topics, on a set schedule.[3] That assumption ignores the practical realities of gathering the breadth of information Plaintiffs seek. Google cannot guarantee the array of business personnel who must gather this information (while also performing their normal job functions) will be available on dates set by attorneys. And for custodial data (*e.g.*, emails), interim deadlines ignore that such data is collected, processed for search terms, and reviewed for responsiveness and privilege all at once and cannot be searched for, reviewed, or sorted by topic *ex ante*. Moreover, many documents will be responsive to multiple RFPs, but could be subject to different deadlines under Plaintiffs' proposal. The only way to parcel out such evidence by RFP would be to complete *all* collection and review *before* the first deadline in Plaintiffs' proposal. More likely, to the extent evidence could be targeted by RFP at all, it would result in piecemeal collection and inefficiently returning to the same sources repeatedly. There is no reason to depart from the ordinary practice in which each party has the flexibility to collect and produce documents in a manner that works *for that party*.[4] Indeed, Plaintiffs' proposal contravenes the Federal Rules, which allow Google to produce documents "as they are kept in the usual course of business" *or* "organize[d] . . . to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i); *M.G. v. N.Y. City Dep't of Educ.*, 2024 WL 1657433, at *2 (S.D.N.Y. Apr. 17, 2024). And it ignores the parties' ESI agreement, which places responsibility for "prioritiz[ing] the order of subsequent productions" on "the responding party." Dkt. 80, § 9.

**Plaintiffs' Cases Do Not Support Their Proposal.** None of Plaintiffs' cases support an onerous RFP-by-RFP schedule in this case. The majority imposed *one* interim deadline that preceded the close of discovery to complete production of a category of evidence.[5] And Plaintiffs' last case is entirely fact-bound and bears no resemblance to the facts here. *See City of Colton v. Am. Promotional Events, Inc.*, 2011 WL 2222133 (C.D. Cal. June 7, 2011) (imposing a production timetable only after party missed multiple existing deadlines). Plaintiffs' speculation about the possibility for missed deadlines in the future is irrelevant.

---

[3] Even if Google could produce discrete sets of documents by dates certain, it may find additional documents *after* such deadlines, placing the Court in the position of refereeing unnecessary disputes about timely production.

[4] *See, e.g.*, *Hyles v. New York City*, 2016 WL 4077114, at *3 (S.D.N.Y. Aug. 1, 2016); *The Sedona Principles, Third Edition*, 19 Sedona Conf. J. 1, 118 (2019).

[5] *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 114 (S.D.N.Y. 2013); *Liberty Dialysis-Hawaii LLC v. Kaiser Foundation Health Plan, Inc.*, 2019 WL 4364383, at *1-2 (D. Haw. Sept. 12, 2019); *United States v. ExxonMobil Pipeline Co.*, 2014 WL 2593781, at *3 (E.D. Ark. June 10, 2014).

LATHAM&WATKINS LLP

                                                                          Respectfully submitted,

                                                                          */s/ Sarah A. Tomkowiak*
                                                                          Sarah A. Tomkowiak
                                                                          of LATHAM & WATKINS LLP

cc:      All Counsel of Record (via ECF)