

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
jkane@oandzlaw.com

May 20, 2025

**VIA ECF**

The Honorable Jennifer L. Rochon
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *Cengage Learning, Inc. et al. v. Google LLC*, No. 24-cv-04274-JLR-BCM
 Reply to Defendant's Letter Response

Dear Judge Rochon:

  We represent Plaintiffs in the above-referenced action. We write in response to Defendant's May 19 letter concerning *Arista Records, Inc. v. MP3Board, Inc.*, No. 00-cv-1660, 2002 WL 1997918 (S.D.N.Y. Aug. 29, 2002), Dkt. 100 ("Letter").

  Defendant's attempt to distinguish *MP3Board* from the instant case fails in several ways. First, Defendant points out that MP3Board "provided a tutorial offering users instruction in how to locate and download [media] files," "solicited users to post links on the MP3Board site to other sites containing audio files," and "searched for links to songs and posted the links on [an MP3Board operated] message board, solicited other users to provide the requested works, and obtained and posted passwords to enable users to access certain music files." Letter at 1, quoting *MP3Board*, 2002 WL 1997918 at *1. But the *MP3Board* court did not rely on *any* of those facts in finding that the plaintiffs' vicarious claim should proceed. Instead, the Court's discussion of vicarious infringement relied *only* on the notion that MP3Board could remove links to infringing materials, and could terminate the users who posted them. *Mp3Board*, 2002 WL 1997918, at *11 ("Thus, there is evidence that MP3Board had the right and ability to remove links to infringing works and bar the participation of users who transmitted those infringing files."). Like MP3Board, Google can both remove ads on its platform that link to infringing content, and can terminate merchants who repeatedly initiate such ads. Dkt. 38 ¶¶ 60, 70–80. Indeed, by invoking the DMCA defense, Google affirmatively argues that it can and does take these actions. 17 U.S.C. § 512(d)(1)(C), (i); Dkt. 29 at 2. Google thus had the right and ability to stop or limit all of the direct infringements at issue in this case, just as MP3Board did. Moreover, Google's involvement in the direct infringements alleged here is at least as "direct and extensive" as MP3Board's involvement in that case, Letter at 1. Google takes pirate websites that otherwise would be difficult or impossible to find, creates ads for the infringing products on those pirate sites complete with an appealing image and a too-good-to-be-true price, displays the ad prominently on the world's most popular search engine in response to a query for the infringing product itself, and even excludes competing ads for ebooks from the pirates' (legitimate) competitors. Dkt. 38 ¶¶ 7, 36, 37–38, 43, 49, 65. This is at least as "direct and extensive," Letter at 1, as MP3Board's involvement.

Hon. Jennifer L. Rochon
May 20, 2025
Page 2

      Defendant then attempts to distinguish MP3Board's links to infringing materials from Google's links to infringing materials by saying that Google users are not "using Google's [S]hopping platform to transmit infringing files directly." Letter at 2. But nor were MP3Board's users doing so. MP3Board's users were doing just what Defendant's merchants are: providing links to websites that contain infringing copies of the plaintiffs' copyrighted works. *MP3Board*, 2002 WL 1997918 at *1 ("The record companies allege that MP3Board operates an Internet site which provides users with links to pirated copies of the record companies' copyrighted musical recordings, thereby facilitating the users' infringement of the record companies' copyrights."). The *MP3Board* court is hardly alone. In *Napster*, the Ninth Circuit held that the ability to remove infringing links and the users who post them could satisfy the supervision-and-control prong. *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023–24 (9th Cir. 2001), as amended (Apr. 3, 2001), aff'd sub nom. *A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002), and aff'd sub nom. *A&M Recs., Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002).

      Defendant next claims that it does not "link[] directly to 'infringing works,'" because after clicking on a Shopping ad, a user must *purchase* the infringing work before downloading it, whereas in MP3Board the infringing product was free. This is a distinction without a difference. In both *MP3Board* and here, the defendant is providing the user with a direct link to the infringing content. There is no requirement that the infringing work be made available for free in order for vicarious liability to lie. In *Fonovisa* and *Shapiro*, customers likewise had to pay to obtain the copyrighted works. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 260 (9th Cir. 1996); *Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.2d 304, 306 (2d Cir. 1963). But the Ninth and Second Circuits, respectively, did not hold that the *selling* infringing works as opposed to making them available for free rendered the defendant immune from suit. The same is true here.

      Finally, Defendant's description of the standard for vicarious liability, Letter at 1, leaves out the Supreme Court's important distinction that liability lies where the Defendant has the right and ability to "stop *or limit*" the direct infringement. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). Here, Google had the right and ability to stop or limit the direct infringements alleged in this case. Plaintiffs' vicarious infringement claim should proceed.

                                                       Respectfully Submitted,

                                                       /s/ Jeff Kane
                                                       Jeff Kane