O+Z Oppenheim + Zebrak, LLP
WASHINGTON – NEW YORK

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
jkane@oandzlaw.com

May 28, 2025

**VIA ECF**

The Honorable Jennifer L. Rochon
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

**Re: *Cengage Learning, Inc. et al. v. Google LLC*, No. 24-cv-04274-JLR-BCM**
**Joint Request to Extend Amendment Deadline**

Dear Judge Rochon:

The parties write jointly to request an extension of the deadline for Plaintiffs to amend Exhibits A and B of their Complaint, and a corresponding extension of certain other deadlines in the case. The parties have agreed on a proposed schedule for all but one category of information.

**I. The parties jointly request an extension of the deadline to amend the Complaint, and of certain other deadlines.**

At the initial case management conference, the Court ruled that after obtaining some discovery, Plaintiffs could amend Exhibits A and B of their Complaint solely for the purpose of adding additional works-in-suit and/or additional trademarks to the case. Dkt. 34 ¶ 6. The Court subsequently set a deadline of March 31, 2025 for Defendant to produce certain information that Plaintiffs contend they need in order to make that amendment, and set a deadline of 60 days after that production (May 30, 2025) for Plaintiffs to amend their Complaint. Dkt. 76; Dkt. 84 ¶ 6.

On March 31, Defendant made a production of data and documents that was intended to provide Plaintiffs the information they need to amend the Complaint. The parties currently disagree as to whether Defendant's March 31 production (as supplemented by a subsequent production) complies with the Court's Order and otherwise is sufficient for purposes other than amending the Complaint. The parties are continuing to meet and confer to reach a resolution on those issues. However, the parties have agreed on a set of supplemental information that Defendant has agreed to produce by June 13, 2025, which Plaintiffs contend should allow Plaintiffs to amend their Complaint by July 14. The parties believe this extension is the best way to minimize the potential disputes that may be brought before the Court and to ensure that the remainder of discovery can proceed efficiently.

The parties therefore jointly request that the existing deadline to amend the complaint be extended from May 30, 2025 to July 14, 2025. The parties also request that most other deadlines in the case be extended by approximately 45 days, as indicated in the attached schedule, to provide time to complete discovery after Plaintiffs' contemplated amendment of the complaint. The parties disagree as to whether the deadline for Defendant's production of one category of information should be extended. The parties explain their respective positions below.

**II. Plaintiffs' Position: The deadline for the remaining ads data should not be extended.**

Plaintiffs agreed to Defendant's request to move most document production deadlines from July 1 to August 15, 2025. But July 1 should remain the deadline for Defendant to finish producing data on the ads Defendant ran on behalf of the pirates at issue. This data includes fundamental information such as how many "clicks", "impressions", and "conversions" those merchants' ads generated, the dates those ads ran, and the amount the pirates paid Defendant for each ad (Plaintiffs' RFP 37, bullets 4, 5, and 9 (Dkt. 47-1)).

First, this information is critically important. Data on "clicks" (i.e, how many times a Google user clicked on an ad) and "impressions" (how many times Google advertised a pirate site) shows Defendant's contribution to the infringements, and the scope of the infringements. Data on "conversions" (how often Google users who clicked on certain pirate ads subsequently purchased the infringing product) is important evidence of the underlying direct infringements for which Defendant is liable. The dates those ads ran allows Plaintiffs to test whether Defendant took appropriate action when it received an infringement notice about an ad, and allows Plaintiffs to test whether Defendant terminated pirates in accordance with the DMCA. And the cost that pirates paid for each ad is important evidence of Defendant's infringing profits and its incentive to permit infringement.

Second, postponing this production to the last day of document discovery would leave no time for Plaintiffs to review the production and convince Defendant to fill any gaps. Building in this time is critical. Both of Defendant's previous data productions occurred on the very last date that the Court arguably allowed. And both were materially incomplete and required substantial follow-up. For instance, Defendant's notice data was missing 128 of the 1,239 pirates Plaintiff identified; its ads data was missing 139. Two months later, Defendant has not finished correcting these deficiencies. Indeed, the deficiencies in Defendant's productions are what necessitated the instant joint request to extend the discovery deadlines. And Defendant only agreed to attempt to correct the deficiencies in its productions after substantial follow-up from Plaintiffs, including more than 25 emails and four conferrals. For example, over the course of *three months*, Defendant claimed there were no further records concerning 92 of these pirates, then claimed that records might exist but would be too burdensome to collect, then finally agreed to produce these records (and *still* has not produced all of them). Moreover, it is anything but clear that Defendant has a plan for producing the remaining ads data. For instance, Defendant claimed it does not have data on the dates each ad ran (data that was due on March 31, Dkt. 76). Plaintiffs provided Defendant with information from their own Merchant Center accounts to show this data can be pulled, and only last week did Defendant vaguely admit that it can produce this data for "at least some" of the relevant ads. Allowing Defendant to kick the can down the road until August 15 will only exacerbate the problem.

Third, the Court's existing July 1 deadline gives Defendant more than *five months* from the Court's January 15 Order to produce this fundamental data. Defendant can pull this data using information that Defendant has had since December 2024. All of this data was called for by Plaintiffs' *September* 2024 document requests. And none of the disputes and discussions concerning Defendant's productions to date have changed what Defendant must produce with respect to these ads. Moreover, Plaintiffs' addition of works to the suit on July 14 will not change the revenue or click/conversion information that Defendant must produce.

Scheduling this production for August 15 would set everyone up for failure.

**III. Defendant's Position**

The parties agreed to seek to extend the deadline for the close of document discovery by 45 days. However, Plaintiffs insist that certain categories of documents subject to the Court's orders at Dkts. 72 and 76—applicable only to Google—must remain subject to the existing July 1, 2025 deadline. In the interest of compromise, Google *has already agreed* to produce certain categories of documents by the existing July 1, 2025 deadline (subject to Plaintiffs' commitment to do the same). The parties only disagree on whether Google's production of one category of data—ad-level clicks, impressions, conversions and revenue data ("ad-level metrics")—should be subject to an accelerated July 1 deadline. Google respectfully submits that it should not.

Plaintiffs' insistence over the last several months that Google divert significant resources to identify additional Merchant Center accounts historically (but no longer) connected to one or more allegedly infringing domains has impeded Google's efforts to produce ad-level metrics by July 1. While Google maintains that Plaintiffs are not entitled to this supplemental discovery, which has required Google to access and collect historical log data that is *presumptively inaccessible* under the ESI Protocol, *see* Dkt. 80 ¶ 2(f)(vi), (xi), Google has agreed to exceed its reasonable discovery obligations to find compromise with Plaintiffs. But these unexpected supplemental efforts, which Plaintiffs insist are necessary to amend their complaint, consumed time and resources that Google would have otherwise spent collecting, reviewing, and producing the information subject to the original July 1 deadline.

Google has been working diligently to collect and produce the ad-level metrics sought by Plaintiffs' RFP 37 bullets 4, 5, and 9, and will produce the data as soon as it is ready. But pulling some of this information requires writing new, bespoke code and performing a custom data pull from an inefficient data source that is not designed for looking up data at the individual ad level. Plus, Google's supplemental efforts, at Plaintiffs' insistence, have added approximately 1,400 additional merchant center accounts historically connected to one or more allegedly infringing domains, and as a result Google has only just recently collected the full set of Shopping ads (which total in the millions) required as inputs for the ad-level metric data pulls. The complex and time-consuming process required to pull ad-level metrics for all the implicated Merchant Center accounts, including the 1,400 historically connected accounts, will likely require additional time beyond July 1.

Plaintiffs now argue they need time to review ad-level metrics before the final document discovery deadline, but as recently as March took the position that the deadline for "completion of document production" should fall on the *same date* as the deadline for the remaining January 7 Order discovery. *See* Dkt. 85-1 at 5. As a compromise, Google has agreed to provide Plaintiffs with merchant-level revenue information by July 1, and will produce ad-level metrics as soon as practicable after that date (likely well in advance of the August 15 deadline). For the reasons articulated above, however, Google is unable to commit to production of the full set of information sought by RFP 37 bullets 4, 5 and 9 by July 1. Google respectfully requests that the Court adopt the deadline the parties agreed to for completion of document discovery for this category of information, consistent with the parties' and the Court's prior treatment of the production deadline.

Respectfully submitted,

| | |
|---|---|
| */s/ Jeff Kane* | */s/ Sarah A. Tomkoviak* |
| Jeff Kane | Sarah A. Tomkowiak |
| OPPENHEIM + ZEBRAK, LLP | LATHAM & WATKINS LLP |
| *Plaintiffs' Counsel* | *Defendant's Counsel* |