IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENGAGE LEARNING, INC, et al.,<br><br>   Plaintiffs,<br><br> v.<br><br>GOOGLE LLC,<br><br>   Defendant. | Civil Action No. 24-cv-04274-JLR-BCM<br><br>*[Filed under seal]*<br>*[Confidential Information Highlighted in Yellow]* |

### ATTORNEY DECLARATION OF
### JEFF KANE

I, Jeff Kane, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

 1. I reviewed notice data from one of the vendors Plaintiffs use to send infringement notices to Google. PL0000543994; PL0000535577. In that data, I counted more than 16,000 instances in which Plaintiffs sent Google an infringement notice identifying a specific Shopping ad for a particular landing page offering an infringing copy of one of Plaintiffs works, but Google continued to run that advertisement after receiving the notice. All of these 16,000+ instances involved domains at issue in this case. This is a conservative estimate because this data does not include all notices Plaintiffs sent, nor does it include notices from third parties.

 2. In that same notice data, I counted more than 17,000 advertisements for infringing copies of Plaintiffs' works that Plaintiffs' vendor observed *after* the Amended Complaint was filed on September 16, 2024 (Dkt. 38). I counted more than 5,000 such advertisements promoting one of the 1,239 domains that Plaintiffs identified to Defendant on December 24, 2024 (Dkt. 72 ¶ 1).

1

3.    I understand that on July 7, 2025, Plaintiffs' vendor observed Shopping ads promoting multiple domains selling infringing copies of Plaintiffs' works, including pirates at issue in this case.

4.    On March 31 and June 2, 2025, Google produced data on "offers" created by the 1,239 domains Plaintiffs identified on December 24, 2024. I understand from Google's counsel that these "offers" represent product information that the pirates provided to Google, from which Google could have then created a Shopping ad. Google's counsel has further represented that as to the database from which this "offer" data was pulled, ███████████████ ███████ Email from Holly Victorson dated July 8, 2025. Google's counsel has also represented that the database is ███████████████████████████████████ ████████████████████████████████████████████ ████████████████████████ *Id.* Google has not yet provided sufficient information for Plaintiffs to estimate the number of ads for which data has been lost as a result of these deletions. But it is likely that data on a very high number of "offers" has been lost.

5.    Google has taken the position that it is not required to preserve this data. Plaintiffs believe that Google is obligated to do so. Incredibly, Google has now proposed that it would conduct "monthly collections of Merchant Center offer data," but *only if Plaintiffs stipulate to Google's proposed stay*. Email from Holly Victorson dated July 15, 2025 ("[W]e would like to discuss whether Plaintiffs would be willing to stipulate to a stay if (1) Google agrees to conduct monthly collections of Merchant Center offer data during the period of the stay . . . ."). Google confirmed during a July 16 meet-and-confer that Google does not agree to perform these data pulls unless Plaintiff agree to a stay.

2

6. I understand that Google has not taken steps to preserve this offer data. Moreover, this preservation issue only came to light because Plaintiffs made multiple detailed inquires to Google explaining that the list of Merchant Center accounts and associated domains that Google produced appeared to be materially incomplete (which prompted Google to produce many additional Merchant Center accounts). Plaintiffs have identified to Google a number of other pieces of evidence that indicate that Google's list of Merchant Center accounts remains incomplete. Even if Google does begin preserving offer data for the Merchant Center accounts Google has identified, it will be insufficient. Plaintiffs must continue discovery in order to determine 1) whether there is an alternate date source for data that already has been lost, and 2) whether there are additional Merchant Center accounts that are missing from Google's list whose offer data must be preserved.

7. Plaintiffs' counsel has observed that, notwithstanding its stated policy to the contrary, Google now allows Shopping Ads for standalone ebooks from some legitimate publishers. Google's counsel had stated that Google will not allow such ads from *Plaintiffs* while the instant litigation is ongoing.

Executed July 17, 2025, in Washington, D.C.

/s/ Jeff Kane  
Jeff Kane
