Sy Damle
Direct Dial: +1.202.637.3332
sy.damle@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

LATHAM & WATKINS LLP

FIRM / AFFILIATE OFFICES
Austin          Milan
Beijing         Munich
Boston          New York
Brussels        Orange County
Century City    Paris
Chicago         Riyadh
Dubai           San Diego
Düsseldorf      San Francisco
Frankfurt       Seoul
Hamburg         Silicon Valley
Hong Kong       Singapore
Houston         Tel Aviv
London          Tokyo
Los Angeles     Washington, D.C.
Madrid

July 22, 2025

**VIA ECF**

The Honorable Jennifer L. Rochon
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1920
New York, New York 10007

Re:   *Cengage Learning, Inc. v. Google LLC*, No. 1:24-cv-04274-JLR-BCM
      <u>Google's Reply in Support of Request for Stay Pending *Cox* Decision</u>

Dear Judge Rochon:

With the Court's permission, Defendant Google LLC respectfully submits this Reply.

*First*, Plaintiffs' claim that fact and expert discovery would be unaffected by the Supreme Court's decision is incorrect. Under the standard articulated by the government, continuing to provide "infrastructure on generally applicable terms—even with knowledge that the infrastructure was being misused" is insufficient to demonstrate contributory copyright infringement. *See* Br. for U.S., 2025 WL 1533667, at *11 (internal quotation omitted). Instead, a plaintiff must show "culpable intent" through "active abetting" of infringement. *Id.* at *10–11.

If the Supreme Court adopts that rule, Google's position is that judgment on the pleadings here would be warranted because Plaintiffs cannot plausibly allege such active abetting. Plaintiffs try to reframe their claims to suggest more involvement by Google, asserting that Google "decides when and to whom to display" Shopping ads and continues to "run specific ads after being notified that those ads promote infringing works." Dkt. 121 at 2–3. But there can be no serious dispute that Google operates an automated platform, just like the platforms the Court addressed in *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023), a case that the government relied on extensively in recommending that certiorari be granted, Br. for U.S., 2025 WL 1533667, at *7, 10–13. In *Twitter*, the Court found the defendants Facebook, Twitter, and Google to have merely engaged in "passive nonfeasance," notwithstanding allegations that their "recommendation algorithms matched ISIS-related content to users most likely to be interested in that content" and that they "knew that ISIS was uploading this content but took insufficient steps to ensure that [its content was] removed." *Taamneh*, 598 U.S. at 498–500. The allegations here are no different, and would be insufficient to state a claim under the standard proposed by the government.

Moreover, even if Plaintiffs could somehow replead a valid contributory infringement claim under a new standard, discovery would be significantly impacted because the list of asserted works in suit would necessarily be different. At a hearing in May, Plaintiffs explained that "the primary way that a work gets into the case is if someone [] sent a notice about one of these pirates

LATHAM&WATKINS LLP

and Google continued running ads for that pirate after the notice, then if they advertise one of our works after that date, we'll add the work to the case." *See* Hr'g Tr. (May 30, 2025) at 9:17–21. But if Google can't be held liable for continuing to provide an advertising platform to merchants even after receiving an infringement notice, then obviously the works in suit could not simply be all the works advertised after that date, as they are now. Assuming it was otherwise proper, Plaintiffs would have to propound an entirely new theory of infringement, which would necessarily lead to a new set of works-in-suit. That in turn would require new discovery about a new set of works, and potentially a new set of merchants that advertised those works. The vast bulk of discovery from both Plaintiffs and Google relates to the specific works, ads, and merchants at issue, so changing the list of works in suit would obviously significantly affect the course of discovery. For that reason, staying the case now—prior to the end of fact discovery, and before depositions (of which the Court has permitted 45) and expert discovery commences—is far less disruptive than staying the case at the summary judgment stage eight months from now. Dkt. 121 at 3; *see Thompson v. Fluent, Inc.*, 2020 WL 8642144, at *2 (S.D.N.Y. Nov. 29, 2020) (holding the second *Kappel* factor favors a stay "to avoid the burden of extensive discovery that may prove unnecessary").

*Second*, Plaintiffs' opposition does not identify any actual prejudice Plaintiffs will face in the event of a stay. Plaintiffs initially argue that during any stay, "Google will continue infringing." *See* Dkt. 121 at 3. Plaintiffs conflate ongoing alleged infringements by *third-party advertisers* with Google's provision of an advertising platform. As the Court already determined in dismissing Plaintiffs' vicarious infringement claim, Google "exercises no control" over the third-party websites where "the actual alleged infringement takes place." Dkt. 111 at 14. And even if Plaintiffs' view was correct, there can be no *additional* harm from a short stay because infringing copies of all asserted works were presumably already posted on the internet before Plaintiffs filed their complaint. Plaintiffs have not articulated a specific, concrete harm that they would suffer if a stay were granted, instead relying on *ipse dixit*. *See* Dkt. 121 at 3 (arguing that the harm from Google's alleged infringement "is impossible to calculate"). Thus, the first *Kappel* factor does not favor Plaintiffs. *See Readick v. Avis Budget Grp., Inc.*, 2014 WL 1683799, at *4 (S.D.N.Y. Apr. 28, 2014) (prejudice requires more than reliance on a "bald, abstract proposition, without articulating in concrete terms the practical, real life effects" of a stay (internal quotation omitted)).

Plaintiffs' statistics about supposed ongoing contributory infringement that must be enjoined at the earliest opportunity paint a misleading picture. Plaintiffs claim to have found "more than 17,000 advertisements" for their works since the filing of Plaintiffs' amended complaint in September 2024. Dkt. 121 at 3. But even under the standard that Plaintiffs urge, merely displaying merchants' advertisements for infringing copies of works does not in and of itself count as contributory copyright infringement. *See Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 750 (S.D.N.Y. 2012) (contributory infringement requires "the defendant's *knowledge* of the infringing activity" (emphasis added)); *see also* Dkt. 121 at 2 (Google "fail[s] to terminate known infringers" and "runs specific ads after being notified that those ads promote infringing works" (emphasis removed)). Plaintiffs next assert that "more than 5,000" of those advertisements "promot[ed] one of the 1,239 domains that Plaintiffs identified to Defendant on December 24, 2024." Dkt. 123 ¶ 2; Dkt. 121 at 3. That analysis, however, would appear to sweep in all notices connected to those domains—whether or not they involved works asserted by Plaintiffs in this

suit—since Plaintiffs filed their amended complaint in September 2024. Using the data Plaintiffs rely on, when one looks at more recent data reflecting Plaintiffs' record notices to Google, a very different picture emerges: since February 1, 2025, only five of the 1,239 domains relevant to this case were purportedly noticed to have engaged in infringement of *any* of Plaintiffs' works at all, and those domains are alleged to have advertised only 17 of the 7,359 works on Plaintiffs' Amended Exhibit A. Declaration of Attorney Sarah Tomkowiak ("Atty. Decl.") ¶ 7. Thus, what Plaintiffs' data shows, if anything, is that infringement from the relevant domains has decreased substantially since this lawsuit was filed. And Plaintiffs offer no reason why that trend would not continue, regardless if this litigation remains active or is stayed.

*Next*, a stay does not "risk the loss of important evidence." *See* Dkt. 121 at 3. Google has implemented appropriate litigation holds, confirmed that the ad-level metrics data it produced today come from data sources with extensive retention policies, and is committed to conducting monthly collections of Merchant Center offer data on a going-forward basis during the pendency of a stay. Atty. Decl. ¶¶ 8, 14. Contrary to Plaintiffs' misrepresentation, Google did *not* condition its offer to perform monthly collections of Merchant Center offer data on Plaintiffs' willingness to stipulate to a stay. Instead—and as it made clear to Plaintiffs—Google intends to perform monthly collections during a stay *regardless* of Plaintiffs' position on a potential stipulation. *Id.* ¶¶ 9–14. Far from being "extortionate," *see* Dkt. 126, Google's offer represented a good-faith attempt to address the purported prejudice that Plaintiffs claimed they might suffer if a stay is entered. To be clear, Google is not aware of any other significant sources of information at risk of being "lost," nor have Plaintiffs identified any. Indeed, Google has promptly investigated, continues to investigate, and in many instances has debunked, Plaintiffs' claims (no matter how marginal) about supposedly "missing" data. Google will continue to meet its preservation obligations during a stay. As such, there is *no* risk that important evidence will be lost during a brief stay.

*Finally*, Plaintiffs misrepresent that Google has stated that it "will not allow ebook ads from Plaintiffs until the instant case concludes." *See* Dkt. 121 at 3. Google's current policy remains the same: Shopping ads for content reflecting eBooks (not including audiobooks) are prohibited. Atty Decl. ¶¶ 15–16. Plaintiffs are aware, because Google informed them, that Google is beta testing a potential modification of that policy that would allow certain legitimate publishers to advertise eBooks. *Id.* ¶ 17. Google did not invite Plaintiffs to participate in that beta program; but Google has not taken any position regarding what it will or will not do for the duration of this litigation. Google is not obligated to design special beta test programs for litigation adversaries that it uses with a small group of engaged business partners. *Id.*

The *Kappel* factors favor a stay here. Plaintiffs do not articulate any meaningful prejudice that would result from a stay, while Google (and Plaintiffs) would be forced to conduct significant additional discovery that may prove unnecessary if the Supreme Court rejects the very theory of liability that Plaintiffs' case depends on. Indeed, judicial economy and the public interest would be served by staying this case until the Supreme Court clarifies the proper standard for Plaintiffs' central claim. *See* Dkt. 117; *Thompson*, 2020 WL 8642144, at *2 (finding a stay "conserves judicial resources and avoids unnecessary expense for a cause of action that may ultimately be rendered moot" (internal quotation omitted)). Google respectfully requests that the Court grant its request for a stay.

LATHAM&WATKINS LLP

                                                    Respectfully submitted,

                                                    */s/ Sy Damle*
                                                    Sarang Vijay Damle
                                                    of LATHAM & WATKINS LLP

cc:      All Counsel of Record (via ECF)