

Matthew J. Oppenheim
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.450.3958
matt@oandzlaw.com

July 30, 2025

**VIA ECF**

The Honorable Jennifer L. Rochon
United States District Court for the Southern District of New York
500 Pearl Street, Room 1920
New York, NY 10007

> Re:    *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
> <u>Plaintiffs' Sur-Reply in Opposition to Google's Letter Request to Stay Discovery
> and Response to Google's Notice of Supplemental Authority</u>

Dear Judge Rochon:

Google's request to stay of discovery fails on multiple grounds. Discovery should proceed.

First, Google predicts the Supreme Court will upend decades of contributory liability jurisprudence, including its own decisions in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) and *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), by adopting in *Cox* the reasoning the Court deployed in another area of law. That is speculative at best. But it is also irrelevant. Under *any* of the standards advocated in *Cox*, Google faces liability. The parties are taking now the same discovery that they would take if the Supreme Court ruled for Cox. In arguing otherwise, Google's reply ignores Plaintiffs' allegations of Google's intent and affirmative acts, misstates the subjects of discovery in this case, and feebly claims that Plaintiffs would not be prejudiced by Google's continuing infringement, its anticompetitive behavior, and the potential loss of evidence.

Second, contrary to Google's Notice of Supplemental Authority, the stay in *UMG Recordings, Inc. v. Verizon Commc'ns, Inc.*, No. 24-cv-05285 (S.D.N.Y), does not support a stay here. Just like Cox, Verizon is an internet access provider sued for providing internet access to known infringers. But Google is *not* an internet access provider. Thus, the peculiar concerns *Cox* considers about the purported severity of disrupting internet access do not apply to Google. Moreover, The *Verizon* case is in an early procedural posture, with discovery not yet begun and a pending motion to dismiss the entire lawsuit. So that case was essentially already under an informal stay of discovery. And the record label plaintiffs in *Verizon* and *Cox* overlap. None of that is true here. In these circumstances, the considerations weigh heavily against any stay of discovery. Any changes in the law can be addressed by setting an appropriate briefing schedule for summary judgment.

## I.    A decision in *Cox* will not dispose of this case or alter discovery.

***First***, a ruling for the petitioners in *Cox Communications, Inc. v. Sony Music Entertainment*, No. 24-171, 2025 WL 1787701 (U.S. June 30, 2025) would not give Google a basis for a meritorious motion for judgment on the pleadings. Google predicts that the Supreme Court will deploy in *Cox* (a contributory infringement case) the reasoning that the Court applied in *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023) (a case concerning the Justice Against Sponsors of Terrorism Act). Dkt. 129 at 1. This in itself is unlikely; every court to consider whether *Taamneh*

Hon. Jennifer L. Rochon
July 30, 2025

should be extended to contributory copyright infringement has concluded that it should not.[1] But even if the Supreme Court were to do so, Plaintiffs' claims would proceed.

In *Taamneh*, the plaintiffs sought to hold Facebook, Google, and Twitter liable for aiding and abetting a terrorist attack by ISIS at the Reina nightclub in Turkey. *Id.* at 477. What the Supreme Court found lacking in *Taamneh* was a nexus between the general assistance the defendants provided to ISIS and *the specific act of terrorism that ISIS had committed* (the Reina attack). *Id.* at 500–01 ("[T]he relationship between defendants and the Reina attack is highly attenuated . . . given the lack of allegations connecting the Reina attack with ISIS's use of these platforms"). The plaintiffs alleged that the defendants provided "general" assistance to ISIS, not assistance with respect to the Reina attack. *Id.* at 500, 503. Under a common law theory of *general* support, the Supreme Court explained, the evidence of assistance and intent would have to be extreme enough to hold the defendants liable for *any* act of terrorism ISIS committed. *Id.* at 503.[2]

In contrast to the attenuated nexus in *Tammneh*, Plaintiffs here allege the most literal of nexuses: Google actually advertised the pirates' infringing copies of the works-in-suit, and users clicked on those very advertisements and purchased those pirated copies. Thus, even if the Supreme Court holds that the *Taamneh* reasoning somehow should apply to contributory copyright infringement claims, Plaintiffs' claim can succeed. *See id.* at 506 ("When there is a direct nexus between the defendant's acts and the tort, courts may more easily infer such culpable assistance.").

Google is rewriting Plaintiffs' claims when it calls Google's conduct "passive nonfeasance." Dkt. 129 at 1. In *Taamneh*, Google didn't create and run advertisements to promote terrorism. The third-party *terrorists* posted videos they created promoting terrorism, and Google attached to those videos advertisements for *other* parties. 598 U.S. at 480. Here, Google actually advertised the infringing product. And it did much more: Google created each ad (First Amended Complaint, Dkt. 38 ¶ 41); decided whether to show the ad at all, and in response to what searches (*id.* ¶ 42); took otherwise obscure websites and featured them prominently on its ubiquitous search engine (*id.* ¶ 7); provided feedback to its merchants on how to improve their ads' performance (*id.* ¶ 45); decided which customers would be allowed to advertise ebooks (*id.* ¶ 65); and earned a commission for each click on a paid ad (*id.* ¶ 95). And, unlike in *Taamneh*, Google received formal notices under penalty of perjury identifying specific infringing ads, but chose to continue running those ads, and often additional ads, for the specific pirates identified therein. This is active participation by any standard.[3]

---

[1] *UMG Recordings, Inc. v. Grande Commc'ns Networks, L.L.C.*, 118 F.4th 697, 714–15 (5th Cir. 2024); *Warner Recs., Inc. v. Altice USA, Inc.*, No. 2:23-cv-00576, 2024 WL 4341933, at *2 (E.D. Tex. Sept. 12, 2024), R&R adopted, 2024 WL 4336731 (Sept. 27, 2024); *In re Frontier Commc'ns Corp.*, 658 B.R. 277, 297–303 (Bankr. S.D.N.Y. 2024). Likewise, the Supreme Court has made clear that where there is established precedent in one area of law, district courts should apply that precedent, not presume that the Supreme Court would instead apply its reasoning from another area of law. *Agostini v. Felton*, 521 U.S. 203, 207 (1997). Indeed, the only Justice to discuss *Taamneh*'s application beyond the JASTA cautioned, "The common-law propositions this Court identifies in interpreting § 2333(d)(2) do not necessarily translate to other contexts." *Taamneh*, 598 U.S. at 507 (Jackson, J. concurring).

[2] Unlike the common-law aiding/abetting at issue in *Taamneh*, copyright law has a statutory safe harbor for qualifying service providers, 17 U.S.C. § 512. The existence of that safe harbor addresses the concerns at issue in *Taamneh*.

[3] Google's claim that this process largely is "automated" makes no difference. *Contra* Dkt. 129 at 1. The automation in *Taamneh* illustrated the lack of nexus between the general assistance the defendants provided to ISIS and the specific Reina attack. 598 U.S. at 498–99. Here, the nexus is not mere general assistance. And, naturally, automation does not preclude liability. *See Grokster*, 545 U.S. 913; *Capitol Recs., LLC v. ReDigi Inc.*, 910 F.3d 649 (2d Cir. 2018).

Hon. Jennifer L. Rochon
July 30, 2025

*Second*, a reversal in *Cox* would not change discovery. The most Google can muster on this point is to repeat its argument that Cox will dispose of this case. Dkt. 129 at 2 ("[I]f Google can't be held liable for continuing to provide an advertising platform to merchants even after receiving an infringement notice" then "Plaintiffs would have to propound an entirely new theory of infringement . . . ."). But for all the reasons Plaintiffs have explained, Plaintiffs' theory of infringement should be the same after *Cox* as it is now, because Google is liable under any of the standards advocated in *Cox*. Google likewise is wrong to suggest that a reversal in *Cox* would lead to different works-in-suit. What drives discovery is the *pirates* Google advertises, identified in Plaintiffs' notices, not the works. No ruling in Cox will change those notices. More fundamentally, much of the discovery in this case is not confined to specific works: how Google operates its platform, Google's DMCA program, its knowledge of the *pirates*, its assistance to merchants and pirates generally, its revenue, and its intent. That discovery will be needed no matter the ruling in *Cox*. Google's argument also is based on multiple levels of speculation: that the Supreme Court will rule for Cox, upend long-established standards for contributory copyright infringement, apply its reasoning from *Taamneh* to copyright, and that if all those things happen, discovery in this case would change. Such attenuated possibilities and abstract concerns do not justify a stay.

## II.    Plaintiffs would be prejudiced by a stay.

A stay would materially and irreparably prejudice Plaintiffs.

***Continuing Infringement***: Google does not contest that it has continued advertising infringing copies of Plaintiffs' works, as recently as this month. *Compare* Dkt. 121 at 3 with Dkt. 129. Indeed, Google calculated that it ran *more* ads for Plaintiffs' works than Plaintiffs calculated. *Compare* Dkt. 121 at 3 (Plaintiffs stating that Google ran 17,000 such ads since the September 2024 Amended Complaint) with Dkt. 131 ¶ 6 (Google calculating it ran 45,414 such ads). Nor does Google even attempt to claim that it will *stop* advertising infringing works during any stay, which could last anywhere from six to eleven months. Instead, Google callously argues that pirates will continue infringing whether Google promotes their obscure sites in ads or not, ignoring the critical assistance Google's ads provide these pirates (and conflating control for vicarious liability with material assistance for contributory infringement). No one will find these pirate sites without Google advertising them atop its search results. Google then asserts that its continued infringement will not cause any "*additional* harm" because infringing copies of Plaintiffs' works are "already posted on the internet". Dkt. 129 at 2. This is facially absurd. Each time Google's ads place another infringing work in the hands of a student, that student forgoes buying a copy, and can provide additional copies to her friends, classmates, teammates, or strangers on the internet, the full scope of which cannot be quantified.

***Google's Favoring Plaintiffs' Competitors***: Google's reply letter confirms that Google now allows certain legitimate publishers to advertise ebooks, but does not allow *Plaintiffs* to do so. Dkt. 129 at 3. In an email dated June 9, 2025, Google's counsel told Plaintiffs' counsel: "Google has no obligation to include in this test program publishers who have sued, and claim they are entitled to hundreds of millions of dollars in damages from, Google. *While the parties are in active litigation, Google is not interested in this type of business relationship with Plaintiffs.*" Decl. of Jeff Kane ("Atty. Decl.), ¶ 3 & Ex. 1 (emphasis added). Yet Google now tells the Court that it "has not taken any position regarding" whether it will continue excluding Plaintiffs' ebook ads "for the duration of this litigation." Dkt. 129 at 3. This is a distinction without a difference. Google's allowing ebook ads from Plaintiffs' competitors, but not Plaintiffs, prejudices Plaintiffs during any stay. Atty. Decl. ¶ 4 (screenshot showing a search for a Plaintiff's book yielding one ad for a

Hon. Jennifer L. Rochon
July 30, 2025

competitor's ebook and three ads for pirate copies of Plaintiff's ebooks). Google's practice also leaves consumers who search for Plaintiffs' ebooks through Google Shopping with no option other than the pirate sellers or, now, Plaintiffs' competitors.

*Risks of Losing Evidence*: Google's arguments about preservation of data deliberately confuse key facts and miss the larger point. Google claims that certain "ad-level metrics . . . come from data sources with extensive retention policies . . . ." Dkt. 129 at 3. However, as Google is well-aware but omits, the "ad-level metrics" do not identify the product advertised or the pirate site to which the ad linked. Atty. Decl. ¶ 6. To identify the product advertised, one must look to another data set ("offer" data). It is this offer data that Google refuses to preserve *unless* there is a stay. Google then draws a flimsy distinction, claiming that it will preserve the data even if the stay is entered over Plaintiffs' objection, as opposed to with Plaintiffs' consent. Dkt. 129 at 3. This makes no difference; Google conditions preserving this data on the entry of a stay. Google ignores that discovery is needed to find potential alternatives to the data Google already failed to preserve. Moreover, in complex electronic discovery, and as we've seen in this case, issues like this surface only as discovery proceeds. A stay risks not just memories fading but also the loss of documents.

### III.    The stay in *Verizon* does not counsel a stay here.

The stay in *Verizon* does not support Google's request to stay discovery here. Indeed, the circumstances of the stay in *Verizon* illustrate why a stay is *not* appropriate here.

### A.  This case differs from *Verizon* both in subject matter and procedural posture.

*First*, Verizon is a broadband internet access provider, just like Cox. And, as in *Cox*, the plaintiffs in *Verizon* are music companies whose works were pirated by users of Verizon's internet access. The notion of providing *internet access* to a known infringer, as opposed to some other form of assistance, is very much at the center of the *Cox* appeal. The arguments from Cox (and from the Solicitor General) rely heavily on the unique nature of internet access. Both argue that internet service is "essential for a universe of legitimate uses" and so should not be cut off hastily,[4] and that internet subscribers can be "coffee shops with public Wi-Fi," "hospitals, universities," or a "grandmother who unwittingly left her internet connection open to the public," Cert. Pet. 9, 35; SG Br. 15. Similarly, Cox argues that "passive provision of internet services" is not enough to constitute a material contribution to another's infringement, because contributory infringement requires a more active role in the infringement. Cert. Pet. 24.

Google, of course, is not an internet access provider. It does not, as Cox would put it, passively provide the internet access that customers use to commit infringement. Rather, Google actively assists the pirates by advertising the particular infringing works named in this suit to the Google users who purchased those infringing works after clicking on Google's ads, often generating a payment to Google. *See* Part I, *supra*. None of the concerns alleged in *Cox* about the peculiar nature of, and need for, internet access apply to Google's active advertising of infringing copies of textbooks.

Staying discovery here would stretch the internet-access-specific issues in *Cox* much too far. Under Google's reading, not only would all contributory infringement claims against internet

---

[4] Petition for Writ of Certiorari, *Cox Commc'ns*, No. 24-171, 2025, No. 24-171 (Aug. 15, 2024) ("Cert. Pet.") at 35; Br. for U.S. as Amicus Curiae, *Cox Commc'ns*, 2025 WL 1533667 (U.S. May 27, 2025) ("SG Br.") at 15.

Hon. Jennifer L. Rochon
July 30, 2025

access providers like Cox and Verizon have to be stayed, but *all* contributory copyright infringement claims against *any* defendant would have to be stayed. And indeed, *any* copyright infringement claim alleging willful infringement would have to be stayed. And any trademark or patent infringement claims alleging willful infringement would have to be stayed. This would be a gross over-extension of issues in *Verizon* and *Cox*.[5]

*Second*, the *Verizon* case remains in a nascent procedural state. There is a pending motion to dismiss the entire case, discovery has not begun, an initial conference has not been held. *Verizon*, 1:24-cv-05285, Dkt. 40.[6] Thus, in *Verizon*, there effectively already was an informal stay on discovery. In contrast, here discovery has been proceeding for more than ten months. Likewise, a stay would not conserve judicial resources or avoid conflicting rulings. *Contra* Dkt. 141 at 2. As discussed above, the discovery the parties currently are undertaking will be necessary no matter what the ruling in *Cox*. *See* p. 1, *supra*. The Court can accommodate any changes in contributory infringement doctrine by setting an appropriate briefing schedule at the summary judgment stage. If *Cox* remains undecided when summary judgment briefing begins, the Court can schedule briefing for after the Supreme Court's decision. And even that may not be needed. Under the current schedule, summary judgment will begin in March 2026 at the earliest; under Google's proposed schedule it will begin in June 2026. Dkt. 110 ¶¶ 8(c), 14; Dkt. 138 at 8.

Further, as discussed above, Google has no explanation for how a ruling in *Cox* would change discovery here; Google's arguments about discovery simply repeat its incorrect argument that *Cox* will dispose of the case. *See* p. 3, *supra*. Google's platitudes are insufficient.

### B.  A stay here raises concerns that were not present in *Verizon*.

First, in this case there is a record before the Court of substantial ongoing infringement. Dkt. 121 at 3; p. 3, *supra*. Even Google does not deny this. Dkt. 131 ¶ 6. Google has made no commitment even to attempt to reduce that infringement during the six-to-eleven month stay that it proposes. The full scope of that infringement can't be measured, and therefore money damages cannot adequately address it. Dkt. 121 at 3. Due to its posture, there was not yet a record before the *Verizon* Court of such continuing infringement. *Verizon* Dkt. 52.

Second, during a stay, Google will continue its anti-competitive practice of continuing to advertise ebooks for Plaintiffs' competitors, but not for Plaintiffs. This is a blatant attempt to retaliate against Plaintiffs for enforcing their rights. There was no comparable conduct in *Verizon*.

Third, Google is woefully behind in its discovery. Setting aside data, Google has produced fewer than 800 documents in ten months of discovery. Dkt. 138 at 2 and n.1. Indeed, Google has taken the very approach that the Court warned Google not to take: leaving the bulk of its discovery until the last minute. Dkt. 138 at 4–5. Google's motion for a stay is a plea to kick the can yet farther down the road. There was no comparable discovery violation in *Verizon*; discovery had not begun.

The Court should deny Google's request. Discovery should continue.

---

[5] The Supreme Court has cautioned against applying its copyright decisions outside the context of the circumstances presented. *See Am. Broad. Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431, 444 (2014) ("In other cases involving different kinds of service or technology providers, a user's involvement in the operation of the provider's equipment and selection of the content transmitted may well bear on whether the provider performs within the meaning of the Act").

[6] Indeed, Verizon's pending motion to dismiss raises some of the very same issues that the Supreme Court is deciding in the *Cox* petition. *Id.* at 8–16 (arguing contributory infringement requires "affirmative steps" or "culpable intent").

Hon. Jennifer L. Rochon
July 30, 2025

Respectfully submitted,

/s/ *Matthew J. Oppenheim*
Matthew J. Oppenheim
OPPENHEIM + ZEBRAK, LLP

*Counsel for Plaintiffs*