**Sarang Vijay Damle**
Direct Dial: +1.202.637.3332
sy.damle@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

LATHAM&WATKINS LLP

August 5, 2025

**VIA ECF**

The Honorable Jennifer L. Rochon
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1920
New York, NY 10007

> Re:   *Cengage Learning, Inc. v. Google LLC*, No. 1:24-cv-04274-JLR-BCM
>          Defendant's Omnibus Discovery Letter Motion

Dear Judge Rochon:

Pursuant to this Court's order granting Defendant Google LLC's ("Google") motion for leave to file an omnibus discovery letter motion  (Dkt. 152), Google submits this motion seeking relief from the Court to resolve Plaintiffs' (1) refusal to identify their alleged evidence of direct infringement (if any) on a work-by-work basis and (2) failure to disclose any damages theory in their initial disclosures.  As reflected below, Google also seeks an extension of the deadline for the parties to serve Requests for Admission.

## ARGUMENT

### I. Plaintiffs must either identify their evidence of direct infringement on a work-by-work basis now or be precluded from doing so later

Plaintiffs assert claims of contributory copyright infringement against Google for 7,359 works.  "To recover on a claim based on secondary liability," Plaintiffs "first must establish direct infringement by the relevant third party[.]"  *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398, 423 (S.D.N.Y. 2011).  To prove direct infringement, Plaintiffs must prove a violation of one of the exclusive rights protected by the Copyright Act.  17 U.S.C. § 106.  Plaintiffs must do so on a work-by-work basis, as each work forms the basis of a separate claim under the Copyright Act for which Plaintiffs presumably will be seeking a separate award of statutory damages of up to $150,000.  *Paul Rudolph Found. v. Paul Rudolph Heritage Found*., 2022 WL 4109723, at *7 (S.D.N.Y. Sept. 8, 2022) (limiting copyright infringement counterclaim to the 2 out of 152 works for which defendant alleged specific examples of infringement).  And Plaintiffs bear the burden of demonstrating how Google's actions "materially contributed" to those direct acts of infringement.  *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).

**LATHAM&WATKINS**LLP

  Plaintiffs' theory of the case is that "Pirate Sellers have sold infringing copies of the Authentic Works to Google users who clicked on an Infringing Shopping Ad for a work and purchased the work." FAC ¶ 122; *see also* May 15, 2025 Hrg. Tr. at 27:25-28:2 (Plaintiffs' counsel: "[A]ll of the infringements for which [Google] are being held liable are infringements where someone did click on the ad, go to the pirate site, and buy the book."). Accordingly, Google has sought discovery into the evidence that Plaintiffs rely on to connect an "Infringing Shopping Ad" to the sale of an infringing copy of a work. Google first issued Requests for Production to each Plaintiff to obtain the documents that form the basis of Plaintiffs' allegations of direct infringement by third parties and Google's contribution thereto (e.g., RFPs 18-19, 50, 59-60, 77-80). *See, e.g.*, Ex. 24. To date, Plaintiffs' document production includes nearly 150,000 screenshots purportedly depicting Plaintiffs' works for sale on third-party webpages, advertisements of Plaintiffs' works by pirate sellers on Google's Shopping platform, and documents evidencing Plaintiffs' "test" purchases of their works from the pirate sellers. It appears that at least some of these screenshots relate to works in suit ("Asserted Works"). However, Plaintiffs' document dump also includes screenshots relating to a publisher that is <u>not</u> a plaintiff in this proceeding, and relating to works that are <u>not</u> in suit.[1] *See, e.g.*, Exs. 25-27.

  From this production, Google could not discern which documents support Plaintiffs' claim of infringement on a work-by-work basis (*i.e.*, which "Infringing Shopping Ad" for each Asserted Work purportedly led to a sale by of the Asserted Work by a Google user on which Unauthorized Seller's webpage). Bladow Decl. ¶¶ 11–19. Pursuant to Local Civil Rule 33.3(b), which permits interrogatories when "they are a more practical method of obtaining the information sought than a request for production or a deposition," Google served Interrogatory 4 asking Plaintiffs to identify this (and other) information on a work-by-work basis.[2]

  Plaintiffs objected that the information sought can be found in documents equally accessible to Google, but refused to comply with Federal Rule of Civil Procedure 33(d), which requires that "if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by . . . specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Ex. 23; *see also Brunero v. Vukasinovic*, 2024 WL 4345731, at *6 (S.D.N.Y. Sept. 30, 2024) ("It is not enough that [a party] respond generally that the answer to the interrogatories can be discerned b[y] reviewing the documents that he previously produced. Accordingly, [the party] is directed to respond . . . by providing specific reference to the records

---

[1] Plaintiffs' dump of thousands of documents related to works not in suit was, itself, improper. *See, e.g.*, *S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 409-10 (S.D.N.Y. 2009) ("[Rule 34] prohibits 'simply dumping large quantities of unrequested materials onto the discovering party.'").

[2] Local Rule 33.3(b)(1) does not excuse compliance with Federal Rule of Civil Procedure 33(d). *See, e.g.*, *In re Weatherford Intern. Securities Litigation*, 2013 WL 5788680 (S.D.N.Y. Oct. 28, 2013) (finding that an interrogatory asking defendant to identify dates and amounts of accounting entries and adjustments made by its tax accountant was compliant with LR 33.3, and requiring plaintiffs to respond "by identifying the responsive documents . . . 'in sufficient detail to enable [the plaintiffs] to locate and identify [the records] as readily as [could the defendants]'").

**LATHAM & WATKINS LLP**

to be reviewed with sufficient detail to enable [the other party] to locate and identify them."). Over the course of the meet and confer process, Plaintiffs agreed to identify some of their purported evidence of direct infringement on a work-by-work basis. But Plaintiffs continue to refuse to provide two critical data points requested for each Asserted Work: (1) the beginning bates number for each Document depicting the Asserted Work on an Unauthorized Seller's webpage offering it for sale; and (2) the beginning bates number for each advertisement of an Asserted Work by an Unauthorized Seller on Google's platform that, according to Plaintiffs, led to a sale of that Asserted Work. To be clear: Google is merely asking Plaintiffs to identify, for each Asserted Work, the beginning bates numbers for the <u>documents</u> from which Google can <u>then</u> discern the purportedly infringing advertisement and website on which the direct infringement purportedly occurred.

Plaintiffs claim not to maintain this information on a work-by-work basis and assert that it is unnecessary and highly burdensome to compile the information in this manner, when Google purportedly can do the same thing from Google's own data or a combination of analyzing the documents and accompanying metadata that Plaintiffs produced. As an initial matter, the information supporting Plaintiffs' claim of infringement on a work-by-work basis is <u>not</u> captured by Google's data. The product feed and advertising data Google continues to produce captures only the information third-party merchant advertisers provide to Google and Google's own data about what ads it ran. That data does not identify to Google which of those ads is, by Plaintiffs' allegation, the "Infringing Shopping Ad" for each Asserted Work. Nor does that data reflect what a consumer may see (and what Plaintiffs actually saw) after clicking on a given advertisement. So Google must look to Plaintiffs' produced documents to understand what Plaintiffs saw on the third-parties' webpages when Plaintiffs clicked on an allegedly infringing advertisement to understand Plaintiffs' support for their claim of direct infringement. *See* Ex. 28. But Plaintiffs' documents are not organized in a manner by which Google can easily connect an advertisement with the resulting third-party landing page. Nor does the metadata accompanying Plaintiffs' produced screenshots allow for Google to identify which screenshots correspond to an alleged instance of infringement for each Asserted Work. *See* Bladow Decl. ¶¶ 11-19. Because the information Google seeks is located across hundreds of thousands of screenshots and Google needs Plaintiffs to make the connection between those documents and their claims of direct infringement for thousands of works in suit, Interrogatory 4 is more practical than a request for production or a deposition. *See, e.g.*, *Tyson v. King*, 1998 WL 823667, at *1 (S.D.N.Y. Nov. 25. 1998) (agreeing interrogatories were the more practical means of obtaining information when the alternative options were to "ask witnesses at depositions questions about specific revenues received, or to rummage through tens of thousands of [produced] documents for the answer").

Ultimately, Plaintiffs bear the burden of proving direct infringement for *each* Asserted Work they put at issue in this case. *Arista Records LLC*, 784 F. Supp. 2d at 423; *Kelly v. L. L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992) (noting that to sustain a copyright infringement claim, plaintiffs must identify "by what acts during what time the defendant infringed the copyright"); *Psihoyos v. Pearson Educ., Inc.*, 2010 WL 11889066, at *1 (S.D.N.Y. Dec. 7, 2010) (treating different works as separate infringement claims). That burden does not change simply because Plaintiffs have chosen to put more than 7,300 works in suit. Notably, Plaintiffs have already agreed to respond to Google's interrogatories by providing many other data points (e.g., the prices at which Plaintiffs sold the Asserted Works, the Plaintiffs' valuation of the Asserted Works, the

revenue Plaintiffs received for the Asserted Works by year) on a work-by-work basis. Their refusal to do so for these two critical data points sought in Interrogatory No. 4 is puzzling. Given Plaintiffs' representation that "*all* of the infringements for which [Google] are being held liable are infringements where someone did click on the ad, go to the pirate site, and buy the book," May 15, 2025 Hrg. Tr. at 27:25-28:2, Plaintiffs presumably have already compiled this information for each Asserted Work. Indeed, Plaintiffs will have to provide the Court with this proof of direct infringement on a work-by-work basis, whether to survive summary judgment or meet their burden of proof at trial. Google is thus entitled to obtain that information from Plaintiffs in discovery. And, if Plaintiffs do not provide Google with this information during discovery, Plaintiffs should be precluded from identifying their evidence of direct infringement on a work-by-work basis at a later stage in the case. *Transatlantic Bulk Shipping, Ltd. V. Saudi Chartering S.A.*, 112 F.R.D. 185, 189 (S.D.N.Y. 1986) ("When a party refuses to allow discovery of matters going to the merits of a claim or defense, sanctions precluding the delinquent party from raising those claims or defenses are appropriate.").

## II. Plaintiffs' initial disclosures are deficient and the Court should preclude Plaintiffs from seeking more than minimum statutory damages or damages tied to Google's revenues

Under Federal Rule of Civil Procedure 26, a party must, "without awaiting a discovery request," disclose "a computation of each category of damages claimed by" that party, along with "the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). Plaintiffs failed to provide any such calculations or supporting evidence in their initial disclosures as Rule 26 requires. Given Plaintiffs' failure to comply with this basic discovery requirement, the Court should restrict the damages Plaintiffs may seek in two ways.

First, Plaintiffs should be precluded from seeking to recover more than minimum statutory damages. Second, Plaintiffs should be precluded from seeking actual damages, given their failure to identify—despite the approaching close of discovery—any calculation or piece of evidence to support their late-disclosed high-level categories of actual damages. *See* Fed. R. Civ. P. 37(c)(1) (where a party fails to provide the information required by Rule 26(a), "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless."); *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) ("Rule 26(a) requires a party—in addition to providing a calculation of damages—to make 'available for inspection and copying as under Rule 34 the documents or other evidentiary material ... on which such computation is based.'"); *Tang Capital Partners, LP v. BRC Inc.*, 2025 WL 1785245, at *7 (S.D.N.Y. Jun. 27, 2025) (precluding plaintiff from pursuing punitive damages claim where plaintiff "fail[ed] to amend any of its disclosures concerning damages" and thus "deprived [the defendant] of the opportunity to build a proper defense.").

**Background.** Almost a year ago, in Plaintiffs' initial disclosures served on August 27, 2024, they provided the following statement as their Rule 26 "computation of damages":

> Plaintiffs are entitled to obtain damages to the fullest extent of the law applicable to Defendant's violation of their rights. Plaintiffs are not in a position at this time

LATHAM&WATKINS LLP

> to provide a precise computation of damages because information bearing on the subject of damages—specifically including, but not limited to, the extent of Defendant's infringement, the willfulness of Defendant's infringement, and the financial benefits received in connection therewith, including Defendant's financial documents—is in Defendant's possession, custody, or control or will otherwise be developed during the discovery process.

Ex. 29. Google informed Plaintiffs that this disclosure was deficient in January 2025. Ex. 32 at 5. Plaintiffs served amended initial disclosures on March 5, 2025. Despite Google's identification of this deficiency, Plaintiffs left this disclosure untouched, repeating the same assertion verbatim. Ex. 30. Indeed Plaintiffs did not seek to amend this disclosure until August 5, 2025—less than eleven hours before this motion was due to be filed—when they served a second amended set of initial disclosures. Ex. 31.

Plaintiffs' new amended disclosures now state that they "will elect whether to seek [copyright actual or statutory] damages under [17 U.S.C.] § 504(b) or § 504(c)" on a work-by-work basis "at any time before final judgment is rendered." *Id.* at 2. The disclosure then discusses the two types of damages in turn.

First, Plaintiffs parrot the relevant statutory damages formulas for their copyright and trademark claims. For copyright, Plaintiffs state they "claim entitlement to [copyright] damages up to $150,000 for each infringed work pursuant to 17 U.S.C. § 504(c)" because they "claim that Defendant's infringement in this case is willful." *Id.* They decline to provide any computation for statutory damages, asserting that "there is no 'computation' to be made by a plaintiff with respect to statutory damages" because "the amount of statutory damages awarded per work will be determined by the jury." *Id.* (citing *Undiscovered Corp. v. Heist Studios*, 2019 WL 8219489 (C.D. Cal. Oct. 1, 2019)). For trademark, Plaintiffs similarly parrot the statute and claim that "there is no 'computation' to be made by a plaintiff" for trademark statutory damages under 15 U.S.C. § 1117(c). *Id.* at 3 (citing *Undiscovered Corp.* again).

Second, Plaintiffs again decline to provide a computation of actual damages for any claim. Plaintiffs' amended disclosures regarding actual damages state:

> The actual damages that Publishers have suffered include, but are not limited to, lost revenue from lost/displaced sales, both from users who click on Google's infringing ads and make a purchase, and from downstream viral distribution of such unprotected copies of Publishers' works; loss of the underlying value of and demand for Publishers' works, including because Google's ads associate them with much lower-priced and lower quality pirated copies, often in the same ads results; and lost adoptions of their works, including with respect to the sale of test banks.

*Id.* at 4–5. Although Plaintiffs' amended disclosures do not adopt any computation of actual damages, they reference evidence produced by Google demonstrating "that Google earned approximately ▮▮▮▮▮ in Shopping ads revenue" from the relevant Merchant Center accounts and complain that Google should provide additional discovery "associated with some ▮▮▮ Pirate Sites." *Id.* at 4.

**Plaintiffs' Disclosures Were, and Remain, Deficient.** By any measure, Plaintiffs' disclosures did not meet the requirements of Rule 26 when they were originally served, and remain sorely deficient eleven months later, as the parties barrel toward the end of fact discovery. In the time since Plaintiffs first served initial disclosures, Google not only raised the absence of this disclosure with Plaintiffs but also sought information in Plaintiffs' possession, custody, or control bearing on the actual and statutory damages analysis. Despite Google's efforts to extract this information—that Plaintiffs are *required* to disclose—each of Plaintiffs' disclosures has failed to provide any computation of damages, for *either* actual *or* statutory damages. And, as a corollary of that failure to provide a computation, Plaintiffs' disclosures by definition do not disclose any particular methodologies to support such a calculation. This is insufficient under the plain text of Rule 26. *See Design Strategy*, 469 F.3d at 295 ("[B]y its very terms Rule 26(a) requires more than providing—without any explanation—undifferentiated financial statements; it requires a 'computation,' supported by documents.").

Plaintiffs' first excuse for their failure to make these required disclosures is the assertion that they cannot perform any damages computation because the evidence and information necessary either (1) is only in Google's custody, or (2) remains to be produced. Ex. 30 at 7 (claiming, in their March 2025 initial disclosures, that the Advisory Committee's Notes do not require parties to provide initial disclosures regarding damages where those disclosures depend on information in another party's possession); Ex. 31 at 4 (claiming, in August 2025 amended disclosures, that "significant information remains outstanding concerning Defendant's profits"). Plaintiffs' assertion is wrong twice over.

Plaintiffs are wrong that the evidence necessary is only in Google's custody. This assertion entirely ignores, as Google has emphasized to Plaintiffs multiple times throughout discovery, that regardless of whether they seek actual or statutory damages, Plaintiffs have always been in the possession of information bearing on damages. *See* Ex. 33 (noting "despite the fact that Plaintiffs may elect statutory damages at a later time in the case, Google is entitled to discovery on the statutory damages factors if Plaintiffs wish to maintain that option). The Second Circuit's statutory damages factors are not limited to information within Google's control and includes, for example, "the revenue lost by the copyright holders." *Bryant v. Media Right Prods.*, 603 F.3d 135, 144 (2d Cir. 2010). That information has always been within Plaintiffs' control. But they did not even identify the *categories* of lost revenue they intend to seek—let alone a computation of the purported *amount* of such losses—until the supplemental disclosures Plaintiffs served today. Indeed, Plaintiffs' disclosures remain deficient because they do not a computation of the amount of damages nor the evidence supporting any computations.

And Plaintiffs are wrong that outstanding productions of evidence relieve them of their duty to disclose. As an initial matter, Plaintiffs are wrong that there is any information relevant to Plaintiffs' damages calculations remains to be produced. Regardless, even assuming there were, that would not excuse Plaintiffs from complying with their Rule 26(a) obligations. *See Agence France Presse v. Morel*, 293 F.R.D. 682, 684 (S.D.N.Y. 2013) (rejecting plaintiffs' assertion that it was not obligated to disclose theory of damages because information underlying theory was in defendants' possession); *Automated Mgmt. Sys., Inc. v. Rappaport Hertz Cherson Rosenthal, P.C.*, 2024 WL 4987018, at *5 (S.D.N.Y. Dec. 4, 2024) ("While Defendants' refusal to comply with

certain discovery requests may have frustrated Plaintiff's ability to obtain evidence enabling it to compute damages claim figures, the Court finds no substantial justification for Plaintiff's failure to disclose [its damages theory] . . . to the extent such a damages claim would have been based on information requested from, but not produced by, Defendants.").

Plaintiffs' next excuse for their failure to further amend their initial disclosures to provide a damages computation is that they have the option to elect statutory damages before judgment, which Plaintiffs argue are not susceptible to computation and therefore need not be disclosed. *See* Ex. 8 at 21. But the option to elect statutory damages is not an excuse for Plaintiffs' failure to comply with Rule 26(a). Plaintiffs' continued failure to make this basic required disclosure has prejudiced Google's ability to conduct discovery in this case, because regardless of which category of damages Plaintiffs elect Google has no understanding of how Plaintiffs propose to compute either category.

First, the option to potentially elect statutory damages in the future cannot relieve Plaintiffs of the duty to disclose a computation of actual damages unless Plaintiffs are willing to forgo actual damages altogether. If Plaintiffs wish to preserve the option to elect actual damages, they must disclose a computation and the evidence to support that computation. Because Plaintiffs have not done so, Google still has no understanding of what theory Plaintiffs actually intend to pursue and what evidence supports such theory. That has made it impossible to seek targeted document discovery from Plaintiffs, identify the right witnesses, or prepare any rebuttal evidence.

Second, even if Plaintiffs were willing to forgo actual damages, that would not relieve them of the burden to provide a computation and supporting evidence of their claim for statutory damages. Given the many factors involved in determining the amount of statutory damages, Rule 26 demands some computation and disclosure of evidence to support any award above the statutory minimum. *See Marshall v. Marshall*, 2012 WL 1079550, at *26 (E.D.N.Y. Mar. 30, 2012), *aff'd*, 504 F. App'x. 20 (2d Cir. 2012) ("'statutory damages cannot be divorced from economic reality' and 'should bear some relationship to actual damages suffered'") (citation omitted); *Bryant v. Media Right Productions, Inc.*, 603 F. 3d 135, 144 (2d Cir. 2010) (reciting statutory damages factors); *Atari Interactive, Inc. v. Redbubble, Inc.*, 546 F. Supp. 3d 883, 888–89 (N.D. Cal. 2021) ("[T]o avoid a potential windfall, [the copyright holder] must provide some evidence of its lost profits or [defendant's] profits if it seeks an award greater than the statutory minimum."); *Granite Music Corp. v. Center Street Smoke House, Inc.*, 786 F. Supp. 2d 716, 732-33 (W.D.N.Y. 2011) (crediting fact that a proper license to use the infringed material would have cost $10,877 per license to grant award of statutory damages of $10,000 for each infringement).

Plaintiffs resist that conclusion, arguing that "there is no 'computation' to be made" for statutory damages and therefore (apparently) no requirement to make any corresponding disclosure. Ex. 32 at 2–3. In their amended disclosures from less than 11 hours ago,[3] Plaintiffs

---

[3] To the extent Plaintiffs rely on this newly disclosed law (or other previously undisclosed authorities that Google months ago invited Plaintiffs to identify to support their refusal to supplement) in response to this motion, Google reserves the right to consider and seek to respond to Plaintiffs' new argument.

cite *Undiscovered Corp. v. Heist Studios* as support for this contention. But Plaintiffs' argument rests on an overreading of that inapposite case. On its face, *Undiscovered* is limited to the *trademark* context; it did not consider the *copyright* statutory damages requirements or statutory text. 2019 WL 8219489, at *5. Indeed, courts applying *copyright* statutory damages have explicitly distinguished—and declined to adopt—the rationale in the *Undiscovered* case from the copyright context. *See Atari Interactive, Inc.*, 546 F. Supp. 3d at 888. In any event, the plaintiff in *Undiscovered*—unlike Plaintiffs here—actually served disclosures that provided a specific computation and estimate for the profits the plaintiffs sought, as well as for the costs incurred by the trademark holder. *See* 2019 WL 8219489, at *1.

**Plaintiffs' Deficient Disclosures Have Prejudiced Google.** Plaintiffs' deficient damages disclosures throughout this case have prejudiced, and continue to prejudice, Google. Plaintiffs have used their deficient disclosures as both a sword and a shield: on one hand, Plaintiffs have stymied Google's attempts to obtain damages discovery from Plaintiffs because of a lack of concrete disclosures that would have allowed Google to target evidence from Plaintiffs; on the other hand, Plaintiffs have used their argument that they need information from Google to calculate such damages as an excuse to embark on a fishing expedition for wide-ranging discovery from Google. *See* Ex. 32 at 1 ("Plaintiffs cannot possibly quantify these damages (for purposes of a Rule 26 disclosure or otherwise) because Plaintiffs do not know the bids of the second- or third-highest bidder, nor do Plaintiffs even know for any given ad who the second-highest bidder was."). Even now, with the benefit of Google's voluminous discovery over the course of months, Plaintiffs continue to claim that "[t]he full scope of that infringement can't be measured, and therefore money damages cannot adequately address it." Dkt. 147 at 5. Plaintiffs have maintained that unchanging position despite Google's repeated requests that Plaintiffs disclose their damages theories and calculations. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) ("[Plaintiff's] failure to comply with [Rule 26(a)(1)(A)(iii)] was especially troubling because . . . Defendants specifically requested a calculation of damages.").

That prejudice is not remedied by Plaintiffs' last-minute amended disclosures. Plaintiffs have only now, with ten days left of fact discovery, stated for the first time any *general* categories of *actual* damages Plaintiffs intend to pursue. Plaintiffs' decision to wait until the eve of the close of fact discovery to finally make these disclosures has deprived Google of any opportunity to pursue discovery to test and counter Plaintiffs' undisclosed damages theories. If Plaintiffs had disclosed these categories months ago—as they were required to do under Rule 26—Google could have spent that time obtaining discovery on the evidentiary basis for Plaintiffs' damages theories. But now, under the current schedule, Google will be unable to serve additional document requests to test these newly disclosed theories of damages. Discovery is not meant to be a game of gotcha. *See Gordon v. Target Corp.*, 318 F.R.D. 242, 246 (E.D.N.Y. 2016) ("Discovery is not a matter of gamesmanship nor conducted like a game of chess.").

Google is equally prejudiced with respect to statutory damages, too. Just as Plaintiffs have used their late disclosure of actual damages theories to shield those theories from discovery requests by Google, Plaintiffs seek to shield any calculations underlying a future request for a statutory damages award. Statutory damages must "bear some relationship to the actual damages suffered." *Peer Intern. Corp. v. Luna Recs., Inc.*, 887 F. Supp. 560, 568 (S.D.N.Y. 1995)

LATHAM&WATKINS LLP

(Sotomayor, J.). If Plaintiffs intend to seek, at a future stage of this case, to have the jury award more than the minimum amount of statutory damages, they should have to disclose the computation and basis for that request now. *See Atari*, 546 F. Supp. 3d at 889 (failure to meet the standard for initial disclosures was not harmless "because, without such information, [defendant] is unable to defend against [plaintiff's] damages presentation at trial"). In other words, Plaintiffs should not be permitted to say now that "there is no 'computation' to be made," only to later make an about-face and seek to present the jury with a previously undisclosed theory for why the jury should award a billion dollars in statutory damages ($150,000 for each of the 7,359 works in Amended Exhibit A to the Amended Complaint). Again, Google had a right to test the theories and evidence on which Plaintiffs intend to rely during discovery. Plaintiffs have deprived Google of that chance.

**Google Is Entitled to Relief Based on Plaintiffs' Noncompliance.** Given Plaintiffs' failures to comply with Rule 26 and the quickly approaching close of fact discovery, Google requests that the Court order Plaintiffs to serve amended initial disclosures immediately that provide "a computation of each category of damages" claimed by Plaintiffs, as required by Rule 26(a)(1)(A)(iii). And Google further requests that the Court grant an extension of discovery deadlines to ensure that adequate fact discovery can be conducted regarding the damages theories Plaintiffs ultimately and belatedly disclose.

In the alternative, or if Plaintiffs' disclosures remain deficient, Google further requests that the Court limit the scope of Plaintiffs' available damages in this case pursuant to Rule 37(c)(1). If Plaintiffs elect statutory damages, the Court should preclude Plaintiffs from more than minimum statutory damages. Or if Plaintiffs elect actual damages, the Court should preclude Plaintiffs from seeking damages in an amount greater than the amount of Google's revenue received from the accused infringing merchants, as reflected in the evidence identified in Plaintiffs' disclosures. *See* Ex. 31 at 4; Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *Atari,* 546 F. Supp. 3d at 888–89 (holding copyright holder "offered no justification for its failure to disclose damages calculations or evidence other than its incorrect assertion that no disclosure was required" and limiting copyright holder to the documents provided by the defendant relating to defendant's revenue "in support of [copyright holder's] statutory damages claim"); *cf. Roberts v. Ground Handling, Inc.*, 2007 WL 2753862, at *4 (S.D.N.Y. Sept. 20, 2007) (failure to disclose a theory of damages in Rule 26 initial disclosures "is alone sufficient to preclude [a plaintiff] from submitting evidence of it at trial").

### III. Google seeks an extension of the deadline for the parties to serve Requests for Admission.

In light of these deficiencies in Plaintiffs' discovery responses (among other reasons), Google also requests the Court amend the current deadline for the parties to serve requests for admission from August 29, 2025, to 30 days before the current close of fact discovery (which would make the deadline October 17, 2025 based on the current schedule). The current deadline does not promote an efficient management of discovery in the context of the rest of the schedule and the timing of Plaintiffs' discovery responses. In particular, the current deadline is only two

**LATHAM&WATKINS**LLP

weeks after the deadline for document production and the same day by which Plaintiffs have agreed to provide responses to multiple Google interrogatories (served months ago), on a work-by-work basis, for the over 7,300 works Plaintiffs have put in suit.  *See* Ex. 23.  Google anticipates it will need to consider Plaintiffs' responses to those interrogatories to draft effective requests for admission regarding similar topics, including but not limited to Plaintiffs' purported ownership of the works in suit and Plaintiffs' purported proof of direct infringement of the works in suit.  *U.S. v. Veeraswamy*, 347 F.R.D. 591, 604 (E.D.N.Y. 2024) (noting that requests for admission serve to "narrow[] the factual parameters of the issues presented in the case"); *T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc.*, 174 F.R.D. 38, 42 (S.D.N.Y. 1997) ("The purpose of [Fed. R. Civ. P. 36] is to reduce the costs of litigation by eliminating the necessity of proving facts that are not in substantial dispute, to narrow the scope of disputed issues, and to facilitate the presentation of cases to the trier of fact.").

Google has proposed this schedule amendment and offered to compromise on a deadline earlier than October 17, 2025.  Plaintiffs were not amenable to either proposal, reasoning that they wanted to obtain Google's responses to their requests for admission prior to certain depositions, and at most, they would be willing to agree to a three-week extension of the current deadline to resolve this dispute (with a non-committal suggestion that the parties revisit the issue should Google require more time closer to the deadline).  However, given that Google currently anticipates being unable to sufficiently review and analyze Plaintiffs' interrogatory responses to serve meaningful requests for admission within three weeks of receiving them, Google does not want to rely on Plaintiffs' proposal to revisit this issue in a few weeks' time.  Accordingly, Google requests that the Court amend the current deadline for the parties to serve requests for admission from August 29, 2025, to 30 days before the current close of fact discovery (which would make the deadline October 17, 2025 based on the current schedule).  Of course, if Plaintiffs are ready to serve their own requests for admission sooner (and thus receive Google's responses to their requests for admission sooner), moving the deadline back does not prevent them from doing so.

LATHAM&WATKINS LLP

          Respectfully submitted,

          */s/ Sy Damle*
          Sarang Vijay Damle
          of LATHAM & WATKINS LLP

          *Attorney for Defendant Google LLC*

cc:    All Counsel of Record (via ECF)