**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr>
<td>
CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; ELSEVIER INC.; ELSEVIER B.V.; and MCGRAW HILL LLC,<br><br>
<em>Plaintiffs</em>,
v.<br><br>
GOOGLE LLC,<br><br>
<em>Defendant</em>.
</td>
<td>
<br><br><br><br><br>
**Case No. 1:24-cv-04274-JLR-BCM**
</td>
</tr>
</table>

**ATTORNEY DECLARATION OF LAURA E. BLADOW**

I, Laura Bladow, declare that:

1.    I am an associate at the law firm Latham & Watkins LLP, counsel for Google LLC ("Google") in this matter.

2.    I submit this declaration in support of Google's letter motion to compel Plaintiffs to fully respond to Google's discovery requests and comply with their obligations under Fed. R. Civ. P. 26(a).  On September 18, 2024, Google served 83 Requests for Production ("RFPs") on each Plaintiff.  Google received responses and objections from Plaintiffs Cengage Learning, Inc. ("Cengage"); Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning ("Macmillan Learning"); Macmillan Holdings, LLC ("Macmillan Holdings"); Elsevier Inc. ("Elsevier"); Elsevier B.V.; and McGraw Hill LLC ("McGraw Hill") on October 18, 2024.  True and correct copies of those responses and objections are attached as Exhibits 1-4.

3.      As of August 5, 2025, Plaintiffs have produced 376,321 documents.  I am familiar with these documents.

4.      On February 14, 2025, Google served six Interrogatories on Plaintiffs Cengage, Macmillan Learning, McGraw Hill, and Elsevier.

5.      Interrogatory 4 reads: "For each Asserted Work for which You are listed as the "Publisher" on Exhibit A to the Amended Complaint, identify All facts supporting Your claim(s) of infringement for that Asserted Work, Including every Unauthorized Seller that You allege engaged in direct acts of infringement for which Plaintiffs contend Google is liable; the domain of every Unauthorized Seller that You allege advertised an Asserted Work on Google's platform; every sale or other distribution of the Asserted Work made by an Unauthorized Seller, Including the date such sale or distribution was made, and to whom such sale or distribution was made; every copy of the Asserted Work made by an Unauthorized Seller, Including when and where such copy was made; the first date You contend You were aware of an Unauthorized Seller's infringement of the Asserted Work; the beginning bates number for the authentic copy of the Asserted Work; *the beginning bates number for each Document depicting an act of public display of an Asserted Work on an Unauthorized Seller's webpage; the beginning bates number for each advertisement of an Asserted Work by an Unauthorized Seller on Google's platform*; every date on which You attempted to advertise the Asserted Work on Google but were not permitted to do so; the first date (if any) that You contacted Google Regarding the Unauthorized Seller's advertisement on Google's platform; the beginning bates number for each Communication (if any) You had with Google Regarding the Unauthorized Seller's advertisement on Google's platform; and the beginning bates number for each Communication (if any) You had with the Unauthorized Seller Regarding their alleged infringement of the Asserted Work." (emphasis added).

6.      Google received responses and objections to Google's Interrogatories from Plaintiffs Cengage, Macmillan Learning, and McGraw Hill on March 17, 2025.  Elsevier served responses and objections on March 24, 2025, pursuant to the Parties' agreement.

7.      In response to Interrogatory 4 each Plaintiff responded:

1.  Plaintiff objects to this interrogatory on the grounds that it is improper under Local Civil Rule 33.3.  This interrogatory asking Plaintiff to "identify All facts supporting [its] claim(s) of infringement for [each] Asserted Work, "Including [but not limited to]" by providing a host of specific information, exceeds the scope of interrogatories permitted at this stage of the litigation under Local Civil Rule 33.3.  *See, e.g., Pauwels v. Bank of N.Y. Mellon Corp.*, 2024 WL 4040357, at *1 (S.D.N.Y. Apr. 9, 2024) (holding that plaintiff need not answer portion of interrogatories that "are overbroad and improper at this stage under Local Rule 33(b)"); *US Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*, 288 F.R.D. 282, 289 (S.D.N.Y. 2012) (holding that plaintiff "need not answer the [] interrogatories" because the interrogatories "exceed the scope of questions permitted by Local Civil Rule 33.3").  On this basis alone, Plaintiff is not required to answer the interrogatory and will not do so. Without waiving this position, Plaintiff sets forth below additional objections to the interrogatory.

2.  Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, disproportionate to the needs of the case, and seeks information that is not relevant to the claims or defenses in the case, including but not limited on the following bases:

a.    The interrogatory improperly purports to require Plaintiff to extract and catalog significant information that already is contained in documents Plaintiff has or will produce

in this case, including, without limitation, documents regarding the Pirate Sellers and Pirate Sites, as defined in the Amended Complaint, and Plaintiff's infringement notices to Defendant.

b. The interrogatory improperly purports to require Plaintiff to prepare a log related to its document production that is not required by Fed. R. Civ. Pro. 34(b)(2)(E).

c. Certain specific information sought, including but not limited to the first date Plaintiff became "aware of an Unauthorized Seller's infringement of the Asserted Work," has no bearing on the claims or defenses in this case, which is focused on Google's conduct. Nor is requiring Plaintiff to identify "every date on which [Plaintiff] attempted to advertise the Asserted Work on Google but [was] not permitted to do so" relevant and/or proportional, especially when Google purportedly had a policy banning all standalone ebook ads, and Google has all the information regarding ads that it allowed and disallowed.

3. Plaintiff objects to this interrogatory on the grounds that contention interrogatories such as this, which ask for each fact that supports the party's allegations, require the application of law to fact, and/or seek a narrative account of a party's case or a significant part thereof are overbroad, unduly burdensome, and not proportional.

4. Plaintiff objects to this interrogatory on the grounds that it is compound and calls for multiple, separate interrogatory responses.

5. Plaintiff objects to this interrogatory on the grounds that it is unreasonably duplicative of other discovery requests.

6. Plaintiff objects to this interrogatory to the extent it seeks information not within Plaintiff's possession, custody, or control, as well as information that is in Defendant's possession, custody, or control and more readily available to Defendant.

8.      Google met and conferred with Plaintiffs regarding their responses and objections to Google's Interrogatories.  Google and Plaintiffs are at an impasse on a portion of Interrogatory 4, which seeks Plaintiffs' purported evidence of infringement on a work-by-work basis. Specifically, Plaintiffs are refusing to provide Google with (1) the beginning bates number for each Document depicting the Asserted Work on an Unauthorized Seller's webpage offering it for sale; and (2) the beginning bates number for each advertisement of an Asserted Work by an Unauthorized Seller on Google's platform.

9.      Plaintiffs have produced over one hundred and fifty thousand screenshots purportedly depicting the Asserted Works for sale on third-party webpages, advertisements of the Asserted Works by pirate sellers on Google's Shopping platform, and documents evidencing Plaintiffs' purchase of the Asserted Works from the pirate sellers.

10.     Plaintiffs did not cull the more than one hundred thousand screenshots they produced to those relevant to the 7,359 works in suit.  *See, e.g.,* Plaintiffs' document with the beginning bates number PL0000016194, a true and correct copy of which is attached hereto as Ex. 5 (one of over 2,600 "The product could not be found" screenshots); Plaintiffs' document with the beginning bates number PL0000082723, a true and correct copy of which is attached hereto as Ex. 6 (one of numerous works published by Pearson); Plaintiffs' document with the beginning bates number PL0000110880, a true and correct copy of which is attached hereto as Ex. 7 (reflecting a search for "Beginning Algebra 4/E (Annotated Instructor Edition)" with no matching work on Exhibit A).

11.     Plaintiffs claim that Google can use the metadata for these screenshots to ascertain which Asserted Work's infringement a given screenshot is being offered to show.  *See* June 26, 2025 Email from K. Lindsey, a true and correct copy of which is attached hereto as Ex. 8.

12.    But the metadata Plaintiffs have pointed to is limited to the file name for a screenshot.  The filenames often correspond with the URL for the underlying screenshot.  Sometimes that URL includes the title of an Asserted Work or terms that appear in the title of an Asserted Work.  *See id.*  Not every screenshot that Plaintiffs have produced has a file name that would enable Google to match it with an Asserted Work.   *See* Plaintiffs' document with the beginning bates number PL0000008367, a true and correct copy of which is attached hereto as Ex. 9 (file name listed is "https_bookstudy.us_product_dire-wolf-stakes__2023-11-03_04-21-14.png" for a screenshot of a landing page displaying an Asserted Work entitled "Race, Class, and Gender in the United States 11th Edition").

13.    Plaintiffs' own example of how to filter the filenames to a particular Asserted Work, Ex. 8, demonstrates that even once some screenshots for an Asserted Work have been isolated based on metadata, a manual review of each screenshot is required to determine whether the screenshot actually contains what Plaintiffs claim it shows.  In Plaintiffs' exemplary set of eighteen screenshots of third-party webpages, four do not actually display any Asserted Work on a third-party's webpage.   *See* Plaintiffs' document with the beginning bates number PL0000014083, a true and correct copy of which is attached hereto as Ex. 10 (404 error); Plaintiffs' document with the beginning bates number PL0000128292, a true and correct copy of which is attached hereto as Ex. 11 (human verification page); Plaintiffs' document with the beginning bates number PL0000130970, a true and correct copy of which is attached hereto as Ex. 12 (human verification page); Plaintiffs' document with the beginning bates number PL0000139504, a true and correct copy of which is attached hereto as Ex. 13 (human verification page).

14.    Additionally, not every screenshot displaying an Asserted Work on a Google Shopping results page or third-party website reflects an instance of alleged direct infringement.

*See* Plaintiffs' document with the beginning bates number PL0000017564, a true and correct copy of which is attached hereto as Ex. 14 (showing Google search results for "Economics 8th" but none of the search results include an advertisement by an unauthorized seller for that title). Plaintiffs have limited their claim of direct infringement to those in which an ad on Google led to a sale on a third-party site after Plaintiffs had sent a takedown notice to Google about that particular advertiser.  May 15, 2025 Hrg. Tr. 17:1-13 ("[A]ll of the direct infringements here, the only universe of infringements that matter in this case, the only ones for which Google could possibly be liable are instances where someone actually did click on a shopping ad, go to the pirate site, and purchase the book. . . . [W]ith respect to all of those infringements, they were all ones that occurred after Plaintiffs had sent at least one notice to Google saying to Google, This pirate website is advertising infringing works.").

15.    This limitation means that it is not as simple as Google reviewing the file name metadata to identify the precise screenshots that Plaintiffs claim evidence direct infringement for each Asserted Work.  To eliminate screenshots that do not show the direct infringement at issue, Google would also have to cross-reference voluminous notice data and Plaintiffs' test purchases to attempt to identify screenshots for ads and third-party websites taken after Plaintiffs first notified Google about a particular third-party and corresponding with one of Plaintiffs' test purchases.

16.    Narrowing down the voluminous set of screenshots by date is not possible using the date/time created metadata fields which differ from what appears to be a date included in the file name for some screenshots.  *See* Plaintiffs' document with the beginning bates number PL0000011838, a true and correct copy of which is attached hereto as Ex. 15 (file name shows November 11, 2023 as the screenshot date, but the date/time created metadata field shows May 13, 2024 as the screenshot date); Plaintiffs' document with the beginning bates number

PL0000106680, a true and correct copy of which is attached hereto as Ex. 16 (similar); Plaintiffs'

document with the beginning bates number PL0000107625, a true and correct copy of which is

attached hereto as Ex. 17 (similar); Plaintiffs' document with the beginning bates number

PL0000115028, a true and correct copy of which is attached hereto as Ex. 18 (same); Plaintiffs'

document with the beginning bates number PL0000115133, a true and correct copy of which is

attached hereto as Ex. 19 (similar).

17.     For example, PL0000259431 is a screenshot of a set of test purchases Plaintiffs

conducted from testbank23.com that is dated April 9, 2024.  A true and correct copy of this

document is attached hereto as Ex. 20.  A search of the File Name field for testbank23 in Plaintiffs'

production yields 10,650 results (prior to the loading of Plaintiffs' most recent productions), none

of which correspond with screenshots of a landing page from that same day.  A search of the File

Name field for a portion of one of the titles in this test purchase, "Families," returns screenshots

of Google Search Result pages dated after this test purchase for "Public and Private Families An

Introduction 7th," a recent addition to Plaintiffs' Asserted Works list.  *See* Plaintiffs' document

with the beginning bates number PL0000100897, a true and correct copy of which is attached

hereto as Ex. 21 (April 12, 2024 Google Search Results).  Google would have to run similar

searches and review the results for the other 21 titles listed in this test purchase screenshot to

attempt to identify the allegedly infringing ad that Plaintiffs saw on Google Shopping that led to

this pruported sale of the work.  Absent this connection, Plaintiffs have no evidence that any of

their test purchases originated from allegedly infringing Google Shopping advertisements.

18.     Nothing in the metadata or on the face of the screenshots enables Google determine

whether a particular ad in a screenshot of a Google Shopping results page resulted in a sale that

Plaintiffs claim was infringing.

19.    Complicating this exercise further for Google, neither the metadata for the screenshots of Google Shopping results nor anything in Plaintiffs' notices to Google enable Google to identify which ad in a screenshot of a Google Shopping results page corresponds with which screenshot of a third-party website. This is because the third-party website's display name on Google Shopping ads is often different from the third-party website's domain, a fact that Plaintiffs have previously conceded in other discovery disputes. *See, e.g.*, December 6, 2024 Email from M. Murphy, a true and correct copy of which is attached hereto as Ex. 22.

20.    Plaintiffs claim that Google should be able to obtain the information sought through Google's own internal data. *See, e.g.*, May 27, 2025 Email from K. Lindsey, a true and correct copy of which is attached hereto as Ex. 23 ("In its own data, Google also has information regarding the Unauthorized Sellers' websites and the works they advertised. Thus, Google has the same, if not greater, access to the information in question."). This is not true. Google does not maintain data with the relevant information about the Unauthorized Sellers' advertisements and websites, nor is there a reliable way to match the information Google does have about these Unauthorized Sellers' advertisements to one of Plaintiffs' Asserted Works about which Plaintiffs sent Google a takedown notice.

21.    For instance, even if Google is able to accurately identify a Merchant Center ID associated with an infringing domain subject to a takedown notice, the only data Google has to link those Merchant Center IDs to listings on Google's Shopping platform is by looking at the "offers" associated with those Merchant Center IDs. However, an "offer" is not necessarily a paid ad that ran on Google's platform: offers could have been submitted but never displayed as either a free listing or paid ad. Moreover, the attributes data Google has for each offer is whatever the third-party merchant provided to Google, so that data is inconsistent across offers and merchants.

Google has produced millions (if not billions) of offer entries in this litigation. And the third-party merchants did not enter the titles of works exactly as they appear on Plaintiffs' Amended Exhibit A. This means that to connect any offer to any Asserted Work, Google would need to conduct a manual review of millions of offers to attempt to match an offer to any one of the more than 7,300 Asserted Works. Even if Google undergoes the manual process of parsing through its millions of individual offer records to attempt to match these offers with Plaintiffs' over 7,300 individual Asserted Works, there is no guarantee that this exercise would yield any reliable results due to the nature of the data entered by the third-party merchants.

22.    I submit this declaration also to place before the Court certain documents and information referenced in Defendant Google's motion to compel.

A. Attached hereto as Exhibit 24 is a true and correct copy of Google's First Set of Requests for Production to Cengage Learning, Inc., dated September 18, 2024.

B. Attached hereto as Exhibit 25 is a true and correct copy of Plaintiffs' produced document bearing the beginning Bates number PL0000082729.

C. Attached hereto as Exhibit 26 is a true and correct copy of Plaintiffs' produced document bearing the beginning Bates number PL0000042683.

D. Attached hereto as Exhibit 27 is a true and correct copy of Plaintiffs' produced document bearing the beginning Bates number PL0000067517.

E. Attached hereto as Exhibit 23 is a true and correct copy of an email from K. Lindsey dated May 27, 2025.

F. Attached hereto as Exhibit 28 is a true and correct copy of an email from S. Tomkowiak dated June 16, 2025.

G.  Attached hereto as Exhibit 29 is a true and correct copy of Plaintiffs' Initial

Disclosures made pursuant to Fed. R. Civ. P. 26(a)(1) on August 27, 2024.

H.  Attached hereto as Exhibit 30 is a true and correct copy of Plaintiffs' Amended

Initial Disclosures made pursuant to Fed. R. Civ. P. 26(a)(1) on March 5, 2025.

I.  Attached hereto as Exhibit 31 is a true and correct copy of Plaintiffs' Amended

Initial Disclosures made pursuant to Fed. R. Civ. P. 26(a)(1) on August 5, 2025.

J.  Attached hereto as Exhibit 32 is a true and correct copy of an email from J. Kane

dated January 10, 2025.

K.  Attached hereto as Exhibit 33 is a true and correct copy of an email from L. Bladow

dated April 17, 2025.

L.  Attached hereto as Exhibit 34 is a true and correct copy of an email from M.

Murphy dated April 14, 2025.

I declare under penalty of perjury that the foregoing statements are true and correct.


Executed August 5, 2025, in Washington, D.C.

_____

Laura E. Bladow