# EXHIBIT 32

| | |
|---|---|
| **From:** | Jeff Kane <JKane@oandzlaw.com> |
| **Sent:** | Friday, January 10, 2025 9:38 PM |
| **To:** | Bladow, Laura (DC); Buettner, Thomas (CH); Damle, Sy (DC-NY); Sampoli, Sara (DC); Stillman, Alli (NY); Tomkowiak, Sarah (DC); Victorson, Holly (DC); Wetzel, Joe (Bay Area) |
| **Cc:** | Uriel Lee; Kevin Lindsey; Michele Murphy |
| **Subject:** | Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274 |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Counsel,

Below are responses concerning several outstanding issues with Defendant's objections to Plaintiffs' RFP.

### Issue 3: Revenues from the Infringements (RFP 33, RFP 34, RFP 39, RFP 47)

#### RFP 33 and RFP 34 (revenue information)

Please provide the update on "the burden of producing revenue information for other ads run in connection with the same Ads accounts that are connected to the Domain-Identified Merchant Center accounts" by January 17th. The parties continue to disagree as to the scope of revenue information that Google must produce. We understand the "investigation" Defendant claims to be conducting into the possible "burden" described above to be an effort to reach common ground on this issue. We note that the parties have been discussing this issue since October, and Google still has not completed its "investigation."

#### RFP 39 (auction data)

First, Plaintiffs have explained several times the importance and relevance of this data. See Dkt. 1 ¶ 96, my October 9 and October 22, 2024 Emails. Your suggestion that Plaintiffs' Rule 26 disclosures on this issue are insufficient ignores that the details you claim to seek are exclusively in Google's possession. As we've explained, and as you seem to acknowledge, Defendant's revenues increase when a pirate places the second-highest bid for an ad run by a legitimate seller. The extent of those revenues is relevant to the financial benefit prong of vicarious liability, as well as to damages. The increased revenues Defendant earned from these pirates goes to Defendant's state of mind, willfulness, and to the need for deterrence. *Union of Orthodox Jewish Congregations of Am. v. Royal Food Distributors Liab. Co.*, 665 F. Supp. 2d 434, 436 (S.D.N.Y. 2009) (statutory damages factors). Likewise, the additional cost Plaintiffs incurred due to these pirates is part of Plaintiffs' actual damages. Plaintiffs cannot possibly quantify these damages (for purposes of a Rule 26 disclosure or otherwise) because Plaintiffs do not know the bids of the second- or third-highest bidder, nor do Plaintiffs even know for any given ad who the second-highest bidder was. That information is in Defendant's possession exclusively. Without that information, Plaintiffs cannot provide even a rough estimate of how much more they paid for Plaintiffs' ads as a result of bids from pirate sellers.

Second, in the three-plus months since the parties began discussing this issue, Defendant has provided no explanation at all of what data it possesses. Defendant has yet to respond to Plaintiffs' prior questions, repeated in my November 6, November 25, and December 10 email, on (1) whether Defendant maintains data that as part of its "automated bidding" program would be responsive to RFP 39; (2) whether the data used to generate Defendant's auction insight reports is responsive to RFP 39; or (3) how Google can calculate reports to

Shopping Ads merchants detailing metrics like "outranking share" and "overlap rate" if Google claims it doesn't have the data Plaintiffs are requesting. As Plaintiffs explained in the November 14, 2024 meet-and-confer and in my November 25, 2024 email, the most relevant data is, for every ad Plaintiffs ran for which the second-place ad came from a pirate, the price that Plaintiffs paid, the competing bid from the pirate, and the competing bid from the third-highest bidder (which represents the price the Plaintiff would have paid in the absence of the pirate bid). A less-helpful but still useful form of data would be a count of the number of times that one of Plaintiffs' ads was run, and the second-highest bid came from a pirate seller. The auction insights reports and Google's provision of automated billing lead us to believe Google likely possess both these forms of data.

Third, you have asked whether Plaintiffs will produce auction insight reports in Plaintiffs' possession. Latham 25.01.07 Email. Plaintiffs will agree to search for and produce auction insight reports that Plaintiffs retrieved and utilized in the ordinary course of business. We note, however, that these reports come from Google itself, and are retrievable going back to October of 2014. Link. Thus, there is no reason that Google should need these reports from Plaintiffs in order to respond to Plaintiffs' RFP 39.

## Issue 4: Custodians/Search Terms

We look forward to receiving Defendant's response to our proposal to exchange custodians and search terms. You represented that you will provide that response this week. We expect that your response will include Defendant's position on which of Plaintiffs' RFP lend themselves to a custodian/search-term approach. O+Z 24.11.04 Email.

## Issue Five (Time-Period)

We understand the parties to be at an impasse on this issue. While the time-period for all RFP is important, Plaintiffs are particularly concerned about Google's June 5, 2021 start-date for documents concerning Google's Digital Books Shopping Ads Policy (RFP 45 and RFP 52). Google has agreed to produce documents concerning this policy, including drafts of the policy. 24.11.19 Meet-and-Confer; 24.11.25 Latham Email; 24.12.04 Latham Email. But that policy was not even implemented until May of 2021, prior to Google's proposed start-date.

Likewise, as explained in my December 10 email, for those RFP where Google has represented that it is extracting information from databases, we fail to understand why an earlier start-date is burdensome. In addition, Defendant has not responded to Plaintiffs' request that Defendant explain what the "lookback" period is. 24.11.25 O+Z Email; 24.12.10 O+Z Email.

## Issue 7: Information Provided to Google (RFP 35, RFP 36, RFP 37)

Below is what we understand to be Defendant's positions.

RFP 36
- **Bullet 1 (identifying information for the owner(s) or operator(s) of the account), Bullet 2 (account access information); Bullet 3 (verification information):** Google will search for and produce account information for the Domain-Identified Merchant Center accounts and the Ads accounts connected to the Domain-Identified Merchant Center accounts reflecting these bullets, to the extent such information is maintained by Google in the ordinary course of business. Latham 25.01.07 Email.
- **Bullet 4 (all items advertised using Shopping Ads); Bullet 5 (Shopping Ads placed on behalf of Infringing/Related Ads Merchants); Bullet 6 (all domains and landing pages to which all such Shopping Ads linked); Bullet 7 (other ads run on behalf of Infringing/Related Ads Merchants):** Google will search for and produce information and metrics reflecting the information sought by these bullets for Shopping ads run by the Domain-Identified Merchant Center accounts between June 5, 2021

to September 16, 2024, to the extent such information is ordinarily maintained by Google in the ordinary course of business. Latham 25.01.07 Email.

- **Bullet 8 (other services offered by Google that the Infringing Merchant or the Related Ads Merchant utilized):** We understand the parties to be at an impasse; Google refused to produce documents in response to this request.

RFP 37

Below is what we understand to be Google's positions.

- **Bullet 1 (the Infringing Merchant or Related Ads Merchant):** Google has agreed to produce this. O+Z 24.12.10 Email.
- **Bullet 2 (the domain and landing page to which the Shopping Ad linked); Bullet 3 (the product the Shopping Ad advertised); Bullet 4 (daily raw counts of clicks, impressions, and conversions); Bullet 5 (the cost-per-click and click-through rate); Bullet 6 (any Bidding Tools used to place the Shopping Ad); Bullet 7 (the dates the ads ran); Bullet 8 (status records, including any reported issues or adjustments to the ad):** Google will search for and produce information and metrics reflecting the information sought by these bullets for Shopping ads run by the Domain-Identified Merchant Center accounts (as Google identified the term in Dkt. 71) between June 5, 2021 and September 16, 2024, to the extent such information is ordinarily maintained by Google in the ordinary course of business. Latham 25.01.07 Email.
- **Bullet 9 (costs, fees, or other compensation paid to Google in connection with the ad):** We understand the parties to be at an impasse; Google has refused to produce this. Nov. 14 Meet-and-Confer; O+Z 24.12.10 Email.
- **Bullet 10 (the top three competing bids for each ad):** the parties have been dealing with this in connection with RFP 39.

For several of the items in RFP 36 and 37, Defendant has agreed to produce documents "to the extent such information is maintained by Google in the ordinary course of business." We take this to mean that despite months of conferrals, Defendant still has not determined whether it possesses this information. If Google determines that it does not possess any of this information, we expect that you will inform us of as much promptly.

As we explained during the call today, Plaintiffs will need to receive much of the information called for in RFP 36 and RFP 37 to determine whether the same pirates Plaintiff identified to Google advertised additional Plaintiff works that should be added to the suit. As you know, the deadline to amend the complaint to add works-in-suit is March 1, 2025. Dkt. 34 ¶ 6. That deadline will not be feasible if Google does not produce this information in very short order.

RFP 30 (in connection with RFP 37, bullet 3+4)

Below is what we understand to be Google's position:

- Bullet 1 (the number of Shopping Ads Google ran for the Infringing Domain) – For Domain-Identified Merchant Accounts, we understand this to be covered by at least by Google's response to bullet 5 of to RFP 36.
- Bullet 2 (Merchant Center ID and Google Ads account for the Shopping Ads Merchant associated with each such ad) – We understand this to be covered at least by Google's response to bullet 5 of to RFP 36.
- Bullet 3 (the total clicks, cost-per-click, click-through rate, impressions, and conversions on ads for the Infringing Domain) – We understand Google to be producing this. Latham 25.01.07 Email.
- Bullet 4 (the use of Bidding Tools) – We understand Google to be producing this in connection with bullet 6 of RFP 37.

\*\*\*

Finally, delays in agreeing on a protective order are not an excuse for Google's refusal to conduct further conferrals on what Google will or will not produce, nor for the months it has taken Google to do so. Indeed, Google waited months to produce what Google itself describes as publicly-available documents.

If issues on the protective order are indeed the hold-up for Google's production of documents, Plaintiffs are willing to agree to treat all documents Google produces as "Attorneys' Eyes Only," sharing documents only among O+Z attorneys until the protective order is final. Once the protective order issues, any already-produced documents would be treated in accordance with the protective order. If Plaintiffs think sharing particular documents with experts would be helpful, we will let you know, and the parties can further discuss.

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

---

**From:** Holly.Victorson@lw.com <Holly.Victorson@lw.com>
**Date:** Tuesday, January 7, 2025 at 06:48
**To:** Jeff Kane <JKane@oandzlaw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Thomas.Buettner@lw.com <Thomas.Buettner@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>, Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>
**Subject:** RE: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

Your mischaracterizations of how discovery has proceeded so far in this case are not well taken.  As Plaintiffs are well aware, the documents Plaintiffs seek are nearly exclusively internal Google documents that will be governed by the confidentiality provisions of the protective order.  As Plaintiffs are also aware, we still do not have a protective order entered in this matter.  As Google told Plaintiffs when it served its responses to Plaintiffs' RFPs on October 3, 2024, "Google will not agree to produce non-public information under any circumstance without an operative Protective Order."  The fact that Plaintiffs' productions to date have consisted solely of the public copyright registrations for the asserted works and other public documents demonstrate the reasonability of Google's position.

While five conferrals regarding one side's RFPs may not be unusual throughout the course of discovery for a case, it is highly unusual to have so many conferrals *before any* documents are produced.  The parties' eleven conferrals concerning Google's responses and objections to Plaintiffs' RFPs and the parties' disputes regarding the protective order and ESI stipulation, are important context because the other six conferrals have to do with the negotiations concerning the Protective Order and ESI stipulation governing the production of documents in this matter—necessary prerequisites to Google's production of the vast majority of documents responsive to Plaintiffs' RFPs.  Google reasonably focused on those prerequisite PO/ESI disputes required to proceed with productions of any responsive documents in the first place, along with the "related" merchant dispute that Plaintiffs already brought to the Court, and conducing the work of identifying the right set of Merchant Center accounts implicated by Plaintiffs' notices, which was necessary for a

significant portion of the RFPs Plaintiffs have identified.  *See also* Dkt. 59 ¶¶ 9–14.  Moreover, Plaintiffs did not identify any list of implicated domains to shortcut that process until December 4, and we received Plaintiffs' final list of domains on December 24, 2024.

In any case, regarding the parties' ongoing disputes, now that the Court has narrowed the scope of many of these disputed requests, Google can better focus on identifying, collecting, and producing the most relevant sets of information.

- Regarding RFPs 33 and 34 (revenue information), Google will search for and produce revenue information for Shopping ads run by the Domain-Identified Merchant Center accounts (as Google identified the term in Dkt. 71) between June 5, 2021 and September 16, 2024, to the extent such information is ordinarily maintained by Google in the ordinary course of business.  To be clear, this will include information derived from the Ads accounts connected to the Domain-Identified Merchant Center accounts, as limited to the Shopping ads run by the Domain-Identified Merchant Center accounts.  We understand Plaintiffs seek all revenue Google received from the "infringing" accounts.  As we have previously explained, Google will not agree to search for or produce *all* revenue received by Google from a Google account that also runs a Merchant Account engaged in "infringing" Shopping ads (*e.g.*, revenue Google received from subscription services), as such revenue is completely disconnected from the alleged infringement.  In the interest of compromise, Google has agreed to investigate the burden of producing revenue information for other ads run in connection with the same Ads accounts that are connected to the Domain-Identified Merchant Center accounts.  However, as we have explained, that investigation is complex, as it implicates potentially complicated relationships between the different types of accounts.  *See* Email from S. Sampoli (December 4, 2024); Dkt. 59 ¶¶ 8, 14.  Accordingly, investigating the burden to determine whether producing this much-less-relevant set of data is proportional to the needs of the case requires looking at the actual Merchant Center and Ads accounts actually implicated by this case.  Given that Plaintiffs first provided the list of allegedly infringing domains on December 4, and many Google employees have been unavailable for the holidays, Google has not yet been able to perform that analysis.  We will report back Google's position regarding this potential compromise after Google has had a chance to evaluate the burden of a broader production with respect to these accounts.

- Regarding RFP 39 (competing bids for Plaintiffs' ad auctions), as we have previously discussed, to the extent any of this data even exists, it is, at best, tenuously connected to the issues in this matter.  We understand Plaintiffs to be requesting the "top three competing bids for each ad" for *Plaintiffs'* Shopping ads, whether or not such ads involved any of the merchants accused to be engaged in infringement.  And, indeed, the sample "Auction Insights Reports" you provided seems to indicate that the primary competitors for Plaintiffs' ads are Plaintiffs' *legitimate* competitors, not pirate sites.  Plaintiffs also have not disclosed any theory or methodology of damages that would justify production of this highly sensitive competitive information.  Indeed, even though Google is "entitled to know Plaintiff[s'] theory of damages," Plaintiffs have entirely failed to meet their requirement to disclose such information under Rule 26(a)(1)(A)(iii).  *See Bernstein v. Cengage Learning, Inc.*, No. 19-CV-7541, 2022 WL 20053735, at *2 (S.D.N.Y. Apr. 21, 2022) (reflecting letter from Cengage Learning arguing that "Plaintiffs are not excused from complying with Rule 26(a)(1)(A)(iii) simply because computing the alleged damages may be difficult. … Rule 26(a)(1)(A)(iii) requires more than merely setting forth the figure demanded and … contemplates an estimate of damages and *some analysis*.") (internal citations omitted); *see* Plaintiffs' Initial Disclosures (Aug. 27, 2024) at 7 (failing to disclose any damages category, methodology, or computation); *see also In re Park W. Galleries, Inc., Mktg. & Sales Pracs. Litig.*, No. 09-2076, 2010 WL 1996600, at *1 (W.D. Wash. May 17, 2010) (finding failure to disclose "specific amounts of" the actual and statutory damages claimed by Plaintiffs "until they obtain further discovery from Defendants" to be "clearly insufficient" under Rule 26(a)(1)(A)(iii) because, *inter alia*, "plaintiffs have not explained how their individual damage calculations depend on information in the possession of another party").  Moreover, we still have not received an answer from Plaintiffs as to whether *Plaintiffs* will be producing the data Plaintiffs claim is relevant here.  Once Plaintiffs supplement their initial disclosures with responses that meet the requirements of Rule 26(a)(1)(A)(iii) and provide an answer as to whether Plaintiffs will be producing the analogous information in Plaintiffs' possession,

Google will consider whether it can agree to compromise on production of some set of information responsive to this request.

- Regarding RFP 36 and 37, we do not currently understand Google maintains "Ad Reports" generated by and for Google users in the ordinary course of business. However, Google will search for and produce information and metrics reflecting the information sought by bullets 4-7 for RFP 36 and bullets 2-8 of RFP 37 for Shopping ads run by the Domain-Identified Merchant Center accounts (as Google identified the term in Dkt. 71) between June 5, 2021 and September 16, 2024, to the extent such information is ordinarily maintained by Google in the ordinary course of business. Google will also search for and produce account information for the Domain-Identified Merchant Center accounts and the Ads accounts connected to the Domain-Identified Merchant Center accounts reflecting the first three bullets of RFP 36, to the extent such information is maintained by Google in the ordinary course of business. Google will additionally produce the account information for the Email-Connected Merchant Center accounts to the extent ordered by the Court. Google will not search for or produce information responsive to Bullet 8 of RFP 36 ("all other services offered by Google that the Infringing Merchant or Related Ads Merchant utilized").

- Regarding RFP 30, as indicated with respect to RFP 37, Google will search for and produce documents sufficient to show or calculate "the total clicks, cost-per-click, click-through rate, impressions, and conversions on ads" for Shopping ads run by the Domain-Identified Merchant Center accounts (as Google identified the term in Dkt. 71) between June 5, 2021 and September 16, 2024, to the extent such information is ordinarily maintained by Google in the ordinary course of business. To be clear, this may include information derived from the Ads accounts connected to the Domain-Identified Merchant Center accounts, as limited to the Shopping ads run by the Domain-Identified Merchant Center accounts. To the extent Plaintiffs seek production of some larger scope of information, please describe with particularity what additional information Plaintiffs seek and state the relevance of such information.

Regarding custodial searches, we are in receipt of your proposal that we exchange proposed custodians and search terms on January 15. We will confer with our client and respond this week to that proposal.

Finally, we can confirm that we are preparing to produce a set of documents, including documents responsive to RFP 47. We will produce those documents when ready, which we anticipate will be prior to the entry of a protective order in this matter.

There are many misrepresentations in your email, and we have not expressly addressed each one. The parties' responses and exchanges speaks for themselves. Google reserves all rights.

Regards,
Holly

**Holly Victorson**
Pronouns: she/her/hers

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.2336

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Thursday, January 2, 2025 4:26 PM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Buettner, Thomas (CH) <Thomas.Buettner@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Wetzel, Joe (Bay Area) <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy

<michele@oandzlaw.com>
**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

Please respond.

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

--

**From:** Jeff Kane <JKane@oandzlaw.com>
**Date:** Tuesday, December 24, 2024 at 14:31
**To:** Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Thomas.Buettner@lw.com <Thomas.Buettner@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>, Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Holly.Victorson@lw.com <Holly.Victorson@lw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

In the more-than six months since this case was filed, Google has not produced a single document. Now, Google refuses to conduct any further conferrals regarding Plaintiffs' RFP until an undefined point later in discovery. With fact discovery scheduled to end on July 1, 2025, this does not work. Your claim that our conferrals so far "have hampered Google's ability to do the actual work of identifying, reviewing, and producing the documents at the core of this dispute" is not consistent with your conduct. Our last conferral on Plaintiffs' RFP was more than a month ago, on November 19, 2024. To the extent Google needed time to compile documents before conferring again, Google has had that time. Yet in the intervening month, Google has not reported any progress on the issues discussed on that call.

Only five of the eleven conferrals you referenced concerned Plaintiffs' RFP. As Google has had Plaintiffs' RFP for nearly four months now, this is not an unusual number of conferrals. During those conferrals, again and again Google has refused to produce documents, Plaintiffs have offered a workaround, Google has agreed to consider it, and then failed to engage with Plaintiffs on the workaround. For Issue 7, Google agreed nearly two months ago to determine whether its Ads Reports would contain some of the information Plaintiffs seek in RFP 35, RFP 36, and RFP 37. Google has failed to provide any update on this. Similarly, for RFP 47, Google itself proposed producing *publicly available* documents about its auction methodology on November 14, and still has not produced those documents. For RFP 39, Plaintiffs directed Google to its auction insight reports as a possible source of the data Plaintiffs seek. Google has yet to provide any feedback on this possible solution. Likewise,

Google has yet to tell Plaintiffs what revenue information Google proposes producing in response to RPF 33 and RFP 34.

We agree that the parties' conferrals would have been more productive if Google had produced documents coterminously with our discussions. But Google has made *no* productions. Nor has Google committed to a date by which it will do so. Plaintiffs, meanwhile, have produced more than 150,000 documents without a protective order being in place.

Plaintiffs also have been conferring with Google on custodians and search terms for months now. We would welcome meaningful progress on this fundamental issue. As we have said previously, we think waiting until 30 days after the protective order/ESI protocol is entered is too long. We suggest that the parties exchange custodians and search-terms on January 15, 2025.

To avoid unnecessarily bringing issues to the Court, please provide us with a substantive update concerning Issue 3 and Issue 7 by January 6, 2025. Absent your agreement to do so, Plaintiffs will consider the parties to beat an impasse and will raise these issues with the Court as appropriate.

Separately, Plaintiffs wish to confer regarding RFP 30, specifically the conversion tracking requested in the third bullet. The parties previously have discussed RFP 30 only briefly. Please provide your availability to do so.


Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com


--

---

**From:** Holly.Victorson@lw.com <Holly.Victorson@lw.com>
**Date:** Friday, December 20, 2024 at 23:17
**To:** Jeff Kane <JKane@oandzlaw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Thomas.Buettner@lw.com <Thomas.Buettner@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>, Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>
**Subject:** RE: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

We have engaged in no less than eleven conferrals with Plaintiffs since October 17 concerning Google's responses and objections to Plaintiffs' RFPs and the parties' disputes regarding the protective order and ESI stipulation, at least five of which concern the same disputes you now seek to schedule a sixth conferral about. Plaintiffs' demand for a sixth conferral, about these same issues and at this juncture, is unproductive. As we stated on the parties' conferral on December 13, Plaintiffs' ever-expanding demands for the details of the contents of Google's future productions have

hampered Google's ability to do the actual work of identifying, reviewing, and producing the documents at the core of this dispute. Plaintiffs have Google's positions, responses, and objections to Plaintiffs' RFPs, and the sufficiency of such productions can be better addressed once the information is actually produced, instead of discussing the content of productions in the abstract.

Now that the parties have the Court's ruling regarding the "Related Ads Merchants" disputes—and now that the parties better appreciate the accounts, issues, and data sources implicated by those RFPs—Google will be moving forward with collecting, reviewing, and producing the Merchant and Ads accounts data. As we've previously noted, we remain willing to work with Plaintiffs to resolve disputes around the edges of the scope of those productions, but at this juncture we do not think it is productive to continue to engage in lengthy exchanges and multi-hour conferrals to address Plaintiffs' questions concerning precisely what those edges are, absent the context of the broader forthcoming productions and a better understanding of the information accessible through the forthcoming accounts. We are happy to revisit Plaintiffs' specific concerns as those productions materialize and the parties are able to better pinpoint any informational gaps Plaintiffs contend they are entitled to.

With respect to custodial exchanges, we have been trying to engage Plaintiffs in a productive negotiation of a custodial exchange process at least since the parties' October 17 conferral, when we proposed that the parties develop a mutual custodial exchange and conferral process. We are disappointed that Plaintiffs have done little to advance any compromise or mutual agreement on custodial searches. On November 1, 2024, we proposed that the parties exchange initial proposed lists of custodians 30 days after filing the ESI stipulation, along with an exchange schedule for review and revisions of custodians and search terms. Plaintiffs rejected that proposal in its entirety. On November 25, in an attempt to reach a more limited agreement, we proposed that the parties agree to exchange a list of custodians within 30 days of the entry of the ESI order and removed the remainder of the exchange schedule. Plaintiffs countered with an exchange of 7 days following the entry of the ESI order (along with other revisions), and we still have not reached an agreement on even that initial exchange. As we noted in our latest turn of the ESI stipulation, we removed the custodial provision from that document because Plaintiffs' erosion of the substance of that provision rendered it ineffective, but as we stated in the December 17 email, we remain willing to proceed with negotiating a path forward on a mutual process for custodial searches with Plaintiffs. For the same reasons discussed at the December 13 conferral, we think an exchange within 30 days of the date the parties submit the ESI stipulation to the Court is most efficient and allows the parties to develop and confirm as solid and complete lists of custodians as possible. We are preparing Google's proposed list of custodians and search terms which we are willing to share in a mutual exchange in the new year after the client is able to fully review that proposal, and we hope Plaintiffs remain willing to engage in that exchange as we previously contemplated.

Finally, with respect to the time period for Plaintiffs' requests, it is unclear why the RFPs you identified would contain relevant material proportional to the claims at suit or the importance of that information as compared to the additional burden of expanding the scope of the request. If Plaintiffs are targeting a specific fact that justifies a further look back, we are willing to consider that information going forward. For RFP 48 in particular, we fail to understand why the fact that one or more Plaintiffs may have *filed* a lawsuit against third parties unrelated to Google is relevant to whether Google responded to alleged infringements on Google's platform. If, as a result of such suits, Plaintiffs sent subpoenas to Google concerning the merchants/domains at issue in this case, and those subpoenas were received by Google before June 1, 2021, we will consider a targeted look-back for those proceedings.

Google expressly reserves all rights to supplement, revise, and/or amend its discovery responses as discovery and its investigation proceeds.

Regards,
Holly

**Holly Victorson**
Pronouns: she/her/hers

**LATHAM & WATKINS LLP**

555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.2336

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Tuesday, December 17, 2024 10:48 AM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Buettner, Thomas (CH) <Thomas.Buettner@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Wetzel, Joe (Bay Area) <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

Please respond.

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Date:** Tuesday, December 10, 2024 at 21:05
**To:** Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Thomas.Buettner@lw.com <Thomas.Buettner@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>, Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Holly.Victorson@lw.com <Holly.Victorson@lw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

Below are several points in response to your December 4 email. We are available to discuss the below issues at the following dates/times (ET):
- Wednesday 12/11: 9:30–12:15
- Thursday 12/12: 11:00–4:30
- Friday 12/13: 9:30–2:30, 4:15–5:30
- Monday 12/16: 1:00–4:30
- Wednesday 12/18: 10:30–12:15

## Issue 3: Revenues from the Infringements (RFP 33, RFP 34, RFP 39, RFP 47)

RFP 33 and RFP 34 (revenue information): We understand Google to be representing that it will need to identify the universe of relevant merchants before retrieving any revenue information. While we do not see why this is so, Plaintiffs nonetheless have provided Google with the infringing domains and the merchant name that appears on the ad for all ads Plaintiffs noticed through August 12, 2024. Plaintiffs anticipate that later this week, we will update this list to include this information through the present. We assume this will allow Google to identify the relevant merchants (Hr'g. Tr. 32:17–20 (Dec. 5, 2024) (Google "can take the domain that's identified in their notice, tie it to a merchant's account. That's a relatively easy step. It's not, not burdensome.")), and begin pulling the revenue data for these merchants. Google did not address either of the approaches Plaintiffs suggested in my November 25 email (performing the data pull for a subset of the merchants, or agreeing to a date by which Google will have performed the search). For our next meet-and-confer, please be prepared to explain either Google's ability to retrieve revenue information for the relevant merchants, or its ability to provide this data for a subset of the merchants.

Further, your December 4 email says that Google "will provide, at a minimum, the revenue information implicated by the ads for the asserted works for the noticed merchants on the Shopping platform." Please clarify that Google is not limiting its production to revenue associated with specific ads promoting Plaintiffs' works.

In my November 25, 2024 email, Plaintiffs noted that Google's revenue information may later be a topic in a 30(b)(6) notice. The revenue information that Google has on its merchants is not "collateral to the relevant issues," Latham 24.12.04 Email, it goes to the very profits that Google chose to retain from the infringing merchants. Google will need to be able to explain, for example, whether the revenue information provided for Merchant A includes all of the ad accounts that Merchant A operates, whether it includes revenue from other platforms, etc. This is not improper "discovery into discovery," it is basic information about what data Google has and what it produced and didn't produce. Courts have recognized that, particularly when databases are involved, 30(b)(6) topics pertaining to the data available in those databases can be proper. *Winfield v. City of New York*, No. 15-cv-05236, 2018 WL 840085, at *6 (S.D.N.Y. Feb. 12, 2018). Indeed, the very case your email cites explains that "Plaintiff can inquire at deposition both about the documents that have been produced and those that have not been produced . . . ." *Haroun v. ThoughtWorks, Inc.*, No. 20-cv-0100, 2020 WL 6828490, at *2 (S.D.N.Y. Oct. 7, 2020). Your flimsy characterization of Plaintiffs' statement as "unprofessional" is both unwarranted and unproductive. Going forward, we encourage Latham to focus on resolving issues rather than name-calling.

RFP 39 (auction data): Per Google's request, attached are two examples of Auction Insights reports. These are being provided for purposes of this discovery dispute only. You will notice that the reports show "outranking share," which is how often an ad ranked higher than a competing ad Google ran for another advertiser; and "overlap rate," which is how often Google ran an ad for another advertiser at the same time as an ad for a Plaintiff. Link. This would seem to mean that Google has data on what ads were placed after the Plaintiffs' ads. If this is the case, Google may be able to provide data on what advertiser occupied the ad place after a Plaintiffs' ad. Please be prepared to discuss the data from which these reports are generated. We will respond separately to your question about Google's request for Plaintiffs' Auction Insights reports.

Google has yet to respond to Plaintiffs' question about how automated bidding can be accomplished without historical bid information. See my November 6, 2024 and November 25, 2024 emails. Please be prepared to discuss this during our next call.

RFP 47 (auction methodology): We have yet to receive the publicly available documents that Google claims will explain its methodology for auction pricing. We asked Google to provide this by December 6, 2024. When should we expect to receive it? We will respond further on this RFP once we have reviewed this information.

**Issue 4: Google Departments/Personnel (RFP 2, RFP 41, RFP 42)**

During our meet-and-confer on November 27, we suggested exchanging lists of custodians/search terms on December 9, 2024 and December 13, 2024, respectively. Google has not responded to this timeframe. Please tell us your proposal, and be prepared to discuss custodians and search terms on our next call.

**Issue 5: Time Period**
Plaintiffs asked Google to explain what the six-month "lookback" period is. Latham's December 4 email did not address this issue. Please do so.

For the several requests below, we understand Google will be searching dedicated database(s), rather than collecting documents manually or through custodians and search terms. For these requests, we are unclear as to why Google thinks a start-date prior to December 5, 2020 is burdensome. Please explain.

- RFP 3 (each notice from a Shopping Ads Merchant and how processed)
- RFP 4 (adverse actions against Shopping Ads Merchants for copyright infringement)
- RFP 27 (notices from others concerning Infringing Merchants)
- RFP 29 (communications with Infringing Merchants)
- RFP 31 (red flags for Infringing Merchants)
- RFP 33 (revenue from Infringing Merchants)
- RFP 34 (revenue from Infringing Merchants)
- RFP 38 (ads run for products the Infringing Merchant advertised)

For the requests we identified in my November 25, email, Plaintiffs continue to believe that a start-date of March 1, 2020 is appropriate. For example, for RFP 48, several of the lawsuits referenced in RFP 48 pre-date Latham's proposed start-date of June 1, 2021. *Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning, et al. v. Nguyen, et al.*, 19-cv-10524 (S.D.N.Y.), Dkt. 3 (Nov. 14, 2019); *Cengage Learning, Inc., et al. v. Nguyen, et al.*, 20-cv-00769 (S.D.N.Y), Dkt. 11 (Feb. 18, 2020); *McGraw Hill LLC, et al. v. Chinh Tran Van et al.*, 20-cv-06368 (S.D.N.Y.), Dkt. 5 (Aug. 13, 2020); *Elsevier Inc., et al. v. Quttainah, et al.*, 20-cv-8438 (S.D.N.Y.), Dkt. 28 (Nov. 2, 2020); *Pearson Education, Inc., et al. v. Najji*, et al., 21-cv-03486-RA (S.D.N.Y.), Dkt. 30 (May 13, 2021). Please explain why Google believes a June 1, 2021 cutoff is appropriate for RPF 48.

**Issue 6: Infringement Notices from Other Parties (RFP 27, 28)**
Please clarify whether, for RFP 27 and RFP 28, as to notices from third-parties concerning merchants implicated by Plaintiffs' notices, Google's response will include the rightsholder and (to the extent it's different) the sender of the notice.

**Issue 7: Information Provided to Google (RFP 35, RFP 36, RFP 37)**
During our October 25, 2024 meet-and-confer, Plaintiffs suggested that "Ad Reports" that Google can generate might contain much of the information called for in these Requests. Google repeatedly has agreed to look into this, but in the intervening six weeks, has not reported any results from any such efforts. Google's failure to tell Plaintiff whether the information called for in these requests is captured in ad reports has made it impossible for the two sides to make progress on these requests. Likewise, during our October 25, 2024 meet-and-confer, Google agreed to confirm whether the information called for in bullets one through three of RFP 36 would be captured by other Requests, such as Request 24. Google has failed to confirm as much. We expect that Google will provide a meaningful update by **December 13, 2024** on what information it will be able to retrieve through ad reports (or by other means), and on bullets one through three of RFP 36.

For completeness, we summarize below what we understand to be Google's positions on these RFP. With respect to RFP 35 (information provided by Infringing/Related Ads Merchants), Google agreed to look into whether Ad Reports would capture this information, and the feasibility of providing those reports.

With respect to RFP 36:

- Bullet 1 (identifying information for the owner(s) or operator(s) of the account), Bullet 2 (account access information); Bullet 3 (verification information): During our October 25, 2024 meet-and-confer, Latham stated that it believe this information was being produced in response to other Requests, such as RFP 24, and stated that Latham would confirm as much. 24.11.04 O+Z Email; 24.11.05 Latham Email. Latham has yet to provide an update on this.
- Bullet 4 (all items advertised using Shopping Ads); Bullet 5 (Shopping Ads placed on behalf of Infringing/Related Ads Merchants); Bullet 7 (other ads run on behalf of Infringing/Related Ads Merchants): During our October 25, 2024 meet-and-confer, Google agreed to look into whether this information could be retrieved using Ad Reports. Latham has yet to provide an update on this.
- Bullet 6 (all domains and landing pages to which all such Shopping Ads linked): Google has refused to produce this information, except insofar as it is contained in notice data.
- Bullet 8 (other services offered by Google that the Infringing Merchant or the Related Ads Merchant utilized): Google refused to produce documents in response to this request. While Plaintiffs would expect that some of this information would be reflected in the revenue data Google would produce (Issue 3 above), Google likewise has not explained what revenue streams its data will and won't include.

With respect to RFP 37:

- Bullet 1 (the Infringing Merchant or Related Ads Merchant): Google has agreed to produce this.
- Bullet 2 (the domain and landing page to which the Shopping Ad linked): Google has refused to produce this data except insofar as it is captured by notice data. Nov. 14 Meet and Confer.
- Bullet 3 (the product the Shopping Ad advertised): Google has refused to produce this data except insofar as it is captured by notice data. Nov. 14 Meet and Confer.
- Bullet 4 (daily raw counts of clicks, impressions, and conversions): Google has said only that it will "search for and produce metrics ordinarily maintained by Google regarding user interaction with ads subject to infringement notices from Plaintiffs." Latham 24.12.04 Email.
- Bullet 5 (the cost-per-click and click-through rate): Google has said only that it will "search for and produce metrics ordinarily maintained by Google regarding user interaction with ads subject to infringement notices from Plaintiffs." Latham 24.12.04 Email.
- Bullet 6 (any Bidding Tools used to place the Shopping Ad): Google agreed to look into whether Ad Reports would contain this information. Latham 24.12.04 Email.
- Bullet 7 (the dates the ads ran): Google agreed to look into whether Ad Reports would contain this information. Latham 24.12.04 Email.
- Bullet 8 (status records, including any reported issues or adjustments to the ad): Google has stated that it does not believe status records exist, but that it will produce such records if they do exist. Latham 24.12.04 Email.
- Bullet 9 (costs, fees, or other compensation paid to Google in connection with the ad): Google has refused to produce this. Nov. 14 Meet and Confer.
- Bullet 10 (the top three competing bids for each ad): the parties have been dealing with this in connection with RFP 39.

With respect to RFP 37, bullets four (daily raw count of clicks) and five (cost-per-click and click-through rate), Google has said only that it will "search for and produce metrics ordinarily maintained by Google regarding user interaction with ads subject to infringement notices from Plaintiffs." Latham 24.12.04 Email. This is does not tell us whether Google will be producing the information called for by bullets four and five. Please explain whether Google is agreeing to produce this information.

Contrary to the representations in your December 4 and November 5 emails, Plaintiffs have not guaranteed that the information sought in some of these RFP would be contained in Ad Reports. Plaintiffs have, however, suggested that Ad Reports might contain this information, and Google has agreed to check on this. To date, however, Google has not done so.

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

--

---

**From:** Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>
**Date:** Wednesday, December 4, 2024 at 09:19
**To:** Jeff Kane <JKane@oandzlaw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>,
Thomas.Buettner@lw.com <Thomas.Buettner@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>,
Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com
<Sarah.Tomkowiak@lw.com>, Holly.Victorson@lw.com <Holly.Victorson@lw.com>,
Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy
<michele@oandzlaw.com>
**Subject:** RE: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production -
Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

Please find below some updates and points from our meet and confers on November 14 and November 19 that were
missing or different from your summary.

In terms of scheduling a further meet and confer, we ask that you please review our responses in detail before deciding
if a further meet and confer is warranted on any issues.

**Issue 2: RFPs 8, 9, 10**
- With respect to RFP 8, Google previously agreed to produce documents reflecting actions taken by Google to
  limit unauthorized sellers of ebooks from advertising on the Shopping platform as part of its initial response to
  this RFP.  Google has also now agreed to supplement that response, and its response to RFP 9 with non-
  privileged high-level reports, studies, summaries, or analyses of copyright infringement on the Shopping
  platform, to the extent such documents are maintained in the ordinary course of business and can be identified
  after a reasonable search.  For the avoidance of doubt, Google clarifies that, in performing a reasonable search
  for such documents, it will also search for final, high-level reports, studies, summaries, or analyses regarding
  technical approaches generally aimed at addressing copyright infringement on the Shopping platform.

- With respect to RFP 10, Google intends to produce non-privileged (1) reports, studies, summaries, or analyses
  evaluating copyright or trademark infringement by merchants selling unauthorized eBooks on the Shopping
  platform; and (2) high-level reports, studies, summaries, or analyses of copyright infringement on the Shopping
  platform, to the extent such documents are maintained in the ordinary course of business and can be identified
  after a reasonable search. For the avoidance of doubt, Google clarifies that, in performing a reasonable search
  for such documents, it will also search for final, high-level reports, studies, summaries, or analyses regarding
  copyright infringement by pirate websites on the Shopping platform.

**Issue 3: RFPs 33, 34, 39, 47**

- RFPs 33-34:  Google agreed to investigate the feasibility and burden of producing a broader scope of information about revenues tied to the ad accounts connected to the merchants implicated by Plaintiffs' notices.  During our November 19 call, we explained that our investigation revealed that there is a complicated relationship between merchant accounts and ad accounts such that it is theoretically possible for (a) one merchant account to be connected to multiple ad accounts; and (b) one ad account to be connected to multiple merchant accounts.  This complex connection may make it exceedingly difficult to determine "Google's revenues, costs, expenses, profits, and losses concerning any business conducted" with the noticed merchants beyond those directly tied to the merchant's account.

  - As we have already agreed, we will provide, at a minimum, the revenue information implicated by the ads for the asserted works for the noticed merchants on the Shopping platform.  As we explained, because of the complexity with merchant and ad accounts, it is going to be a significant effort to collect just that revenue information.  We cannot determine, at this time, what the additional burden of producing additional revenue data is, since it will require analysis of noticed merchant accounts.   We explained, however, that we will not artificially separate out, and will produce, additional revenue data to the extent it is ordinarily maintained with the revenue data regarding the ads relating to the asserted works.

  - We will diligently work to identify and produce revenue information in a timely manner; however, as we explained on our call, this data can only be collected after we identify the full universe of noticed merchants implicated by the title information provided in Plaintiffs' amended complaint and the ads associated with those titles.  As we proceed with discovery we anticipate we will be able to provide and produce further details reflecting the scope of the revenue data ordinarily maintained in connection with the specific merchants implicated in this case.

  - "How Google assembled the revenue information it produces" is not an appropriate topic for a 30(b)(6) deposition, as it seeks discovery on discovery.  As we have explained, Plaintiffs have provided no legal or factual basis supporting any entitlement to discovery into discovery.  *See Haroun v. ThoughtWorks, Inc.*, No. 20-0100, 2020 WL 6828490, at *1 (S.D.N.Y. Oct. 7, 2020) ("When the discovery sought is collateral to the relevant issues (*i.e.*, discovery on discovery), the party seeking the discovery must provide an 'adequate factual basis' to justify the discovery, and the Court must closely scrutinize the request 'in light of the danger of extending the already costly and time-consuming discovery process *ad infinitum*.'")  Your "suggestion" that Google keep "careful track" of how this information is assembled is unnecessary and unprofessional.

- RFP 39: Google is continuing to investigate the sources of data that underlie its auction insight reports and its "automated bidding" program, and whether such data would be responsive to Plaintiffs' RFPs.  If Plaintiffs could provide an example (under an AEO designation) of the kind of auction report data they seek, we may be able to more efficiently conduct this investigation.  Relatedly, please let us know whether Plaintiffs will be producing the auction insight reports that are available to them in response to RFP 24—we have not yet received Plaintiffs' position on this issue following our November 15 call.

- RFP 47: Google will produce publicly available documents sufficient to show its auction methodology as soon as possible.

## Issue 4: RFP 2, 41, 42
- As we discussed at the November 27 meet and confer, Google has offered a counterproposal on this issue in connection with its most recent edits to the draft ESI protocol.

## Issue 5: Time period
- Unless otherwise noted, Google's proposed start date for all of Plaintiffs' RFPs is June 1, 2021.  In addition to RFPs 3, 4, 6, 7, 16, 19, and 31, and subject to Google's other objections and reservations, Google will agree to an earlier start date of December 5, 2020 for the following RFPs:

- o RFP 22
- o RFP 27
- o RFP 28
- o RFP 29
- o RFP 45

**Issue 6: RFPs 27, 28**
- Google has already agreed to produce non-privileged information maintained in the ordinary course of business sufficient to show Google's implementation of its DMCA policy and reflecting adverse actions taken toward the relevant merchants in this case, regardless of whether the adverse action was spurred by a notice from Plaintiffs or someone else.
- Subject to Google's other objections and reservations, this will include documents sufficient to show strikes applied to the relevant merchants and documents sufficient to identify the DMCA notices received by Google concerning the relevant merchants, the domains identified in such notices, the dates such notices were received, the dates such notices were actioned, and the final disposition or action resulting from each such notice.
- To the extent RFP 28 would capture any data beyond what is already captured by RFP 27, we will produce analogous documents sufficient to identify the DMCA Notices received by Google concerning Shopping Ads for the relevant domains.

**Issue 7: RFPs 35, 36, 37**
- Plaintiffs' description of what Google has agreed to produce under RFP 37 is not entirely accurate. With respect to bullets six and seven, Google has agreed to look into the feasibility of producing "ad reports" from the noticed merchants. Plaintiffs have not indicated that there is other data sought by these bullets beyond the "ad reports." We are still investigating the availability and feasibility of producing those.
- With respect to bullets 4 and 5 (daily raw counts of clicks, impressions, and conversions and the cost-per-click and click-through rate), Google will agree to search for and produce metrics ordinarily maintained by Google regarding user interaction with ads subject to infringement notices from Plaintiffs.
- With respect to the ninth bullet, Shopping ads are generated based on a product feed directly from the merchant. We don't understand there to be any separate ad 'status records' but we will produce all records maintained by Google reflecting the relevant ads in connection with the relevant merchant accounts, to the extent any such records exist.

**Issue 8: RFP 52**
Google will produce non-privileged documents and communications in its possession, custody and control located after a reasonable search concerning Google's communications with the AAP regarding the Digital Books Shopping Ads Policy or the issue of infringing Shopping Ads for ebooks.

**Issue 10: RFP 45, 47, 48**
With respect to RFP 45, Google will produce non-privileged documents and communications in its possession, custody and control concerning Google's Digital Books Shopping Ads Policy. In addition, while Google does not understand there to be any draft versions of the Digital Books Shopping Ads Policy, it will agree to produce non-privileged draft versions, subject to its other objections and reservations, to the extent any are located after a reasonable search.

**Issue 11: RFP 48**
To the extent they exist, Google will produce non-privileged documents in its possession, custody or control and located after a reasonable search showing communications with Plaintiffs or their counsel as well as internal communications regarding the specified lawsuits the Plaintiffs in this case filed against Shopping Ads Merchants, subject to the parties' negotiations regarding custodians and search terms.

Thanks,
Sara

Sara Sampoli

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Direct Dial: +1.202.350.5328
Email: sara.sampoli@lw.com
https://www.lw.com

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Tuesday, December 3, 2024 5:36 PM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Buettner, Thomas (CH) <Thomas.Buettner@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Wetzel, Joe (Bay Area) <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

Plaintiffs have been conferring with Google on the issue of RFP 27 and RFP 28 for six weeks now, including two discussions (on October 25 and November 14, 2024) and six emails (on October 22, November 4, November 5, November 6, November 8, and November 25, 2024). During that time, Google has not changed its position or provided any of the information Plaintiffs suggested Google provide in order to reach a compromise. Plaintiffs informed Google last week that if Google did not provide a meaningful update by December 2, Plaintiffs would be forced to raise this issue with the Court. Google did not respond, nor has it offered any date by which it intends to update its position.

We understand Google to have maintained its position that "requesting all notices received by Google concerning the implicated merchants is overbroad and the information is not relevant or proportional to Plaintiffs' claims." (24.11.05 email from Latham). Google agreed to "investigate whether there is data that can easily be pulled reflecting notices sent by other rightsholders about the relevant merchants in this case." *Id.* But in nearly a month since Google made this commitment, Google has failed to report to Plaintiffs what data, if any, Google proposes to provide.

Notices from third-parties concerning the merchants implicated by Plaintiffs' notices are basic information unquestionably necessary to this case. Plaintiffs requested this fundamental data three months ago; Google has known since the complaint was filed six months ago that Google would need to produce it. Plaintiffs cannot wait indefinitely for Google to respond "in due course," given the deadlines set forth in the case management order, Dkt. 34.

If Google has an update on what notices or notice data it intends to produce in response to RPF 27 and RFP 28, please provide it. If Google has not, in the six months since this case began, devised a method to provide this basic data, Plaintiffs will need to raise this issue with the Court.

Separately, please provide your availability to discuss the other issues listed in my email from this morning.

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

--

**From:** Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>
**Date:** Tuesday, December 3, 2024 at 10:30
**To:** Jeff Kane <JKane@oandzlaw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>,
Thomas.Buettner@lw.com <Thomas.Buettner@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>,
Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com
<Sarah.Tomkowiak@lw.com>, Holly.Victorson@lw.com <Holly.Victorson@lw.com>,
Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy
<michele@oandzlaw.com>
**Subject:** RE: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production -
Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

Plaintiffs' apparent appetite to bypass the parties' ongoing conferrals and rush to the Court is not well taken.  We do not
currently see the parties as at an impasse on Issue 6.  While Plaintiffs may of course choose their own path in proceeding
with the Court, we intend to provide Plaintiffs with the professional courtesy of confirming any apparent impasse before
raising that dispute with the Court, and we seek the same basic courtesy from Plaintiffs.  We will respond to your email
from four business days ago in due course.

Thanks,
Sara


**Sara Sampoli**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Direct Dial: +1.202.350.5328
Email: sara.sampoli@lw.com
https://www.lw.com

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Tuesday, December 3, 2024 8:31 AM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Buettner, Thomas (CH) <Thomas.Buettner@lw.com>; Damle, Sy (DC-
NY) <Sy.Damle@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>;
Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Wetzel, Joe (Bay
Area) <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy
<michele@oandzlaw.com>

**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

Having not heard from you on Issue 6 below, we consider the parties to be at an impasse. Plaintiffs will raise this issue with the Court.

We suggest a meet-and-confer on Issue 2, Issue 3, Issue 4, Issue 5, Issue 7, and Issue 11 below. We are available at the following dates/times:

- Thursday December 5: 11:00–4:30 ET
- Friday December 6: 10:00–11:00 and 3:45–4:45 ET
- Monday December 9: 10:30–12:00 ET
- Tuesday December 10: 12:30–4:30 ET
- Wednesday December 11: 10:15–4:15 ET

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

--

**From:** Jeff Kane <JKane@oandzlaw.com>
**Date:** Monday, November 25, 2024 at 11:58
**To:** Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Thomas.Buettner@lw.com <Thomas.Buettner@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>, Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Holly.Victorson@lw.com <Holly.Victorson@lw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

Please see below for a summary of the issues discussed on our November 14 and November 19 meet-and-confers, including several follow-up questions. We note that in several places below we refer to Infringing Merchants, understanding that the extent to which Related Ads Merchants will be included in responses remains an open issue.

## Issue 2: Responses Limited to eBooks (RFP 8, RFP 9, RFP 10)

For RFP 8, RFP 9, and RFP 10, Latham has proposed that in addition to studies and analyses regarding eBooks, Google will search for and produce general investigations and studies of copyright infringement on the

Shopping platform, including reports, studies, and metrics concerning copyright infringement. Google has refused to produce detailed notice-level data for all products on the Shopping platform. At this time, Plaintiffs agree to review the documents Google produces in response to, *inter alia*, RFP 8, RFP 9, RFP 10, RFP 11, RFP 14, and RFP 15. Depending on whether those documents contain the information necessary for a court to determine whether Google qualifies for the DMCA safe harbor, the parties may need to revisit these issues, including the issue of broader notice-level data.

Please clarify what Google is producing in response to RFP 8, which asks specifically about technological measures Google implemented or considered implementing to prevent copyright infringement on the Shopping Ads platform. We are unclear from Google's statements during our calls, and from your November 23 email, whether this will be captured in what Google intends to produce.

Please also clarify that with respect to RFP 10, which calls for documents concerning copyright infringements by pirate websites, Google will include responsive documents to the extent they are captured by the search described above.

### Issue 3: Revenues from the Infringements (RFP 33, RFP 34, RFP 39, RFP 47)

For RFP 33 and RFP 34:

- Google confirmed that it will produce documents showing revenue associated with the Infringing Merchants. The parties have been discussing what revenue streams should be included in that data. Plaintiffs have explained that Google should produce data showing the revenue Google earned from each Infringing Merchant across all Google platforms. Google has taken the position that it need not produce data on all revenue streams.

- The parties have been discussing a possible compromise, by which Google would produce revenue from "Ad Accounts." Plaintiffs asked Google to explain what revenue would be included, and what revenue would not be included, in Ad Accounts. During our call on November 19, Google represented that a Merchant Center account can be used to run free ads. But to run paid ads, an advertiser needs an Ads account. Google further represented that one Merchant Center account can be connected to multiple Ads accounts, and an Ad account can be connected to multiple Merchant Center accounts.

- Google claimed that it will not know what revenue is or isn't included in the data pull for any particular Ad or Merchant account until Google actually performs that data pull. If this is so, please explain what revenue streams potentially will be included, and whether there are any revenue streams that Google knows now will not be included. As we explained during the call, Plaintiffs do not agree that Google can limit the revenue streams for which it produces data. But Plaintiffs are willing to consider a compromise.

- We are unsure from Google's statements during the call whether Google proposes limiting its response to revenue from certain products. Please clarify whether, for example, Google is proposing that if an Infringing Merchant has revenue from two ads accounts, one of which includes eBooks, and the other of which contains clothing, Google would produce only the revenue associated with the ebooks account. Please clarify what Google is proposing.

- Since Google is representing that it will not know what revenue information will be included in a particular data pull until Google performs that data pull, we suggest that Google provide revenue data for a sample (say, ten) of the Infringing Merchants so that the parties can determine what adjustments should be made to the data pull. If Google does not agree to that approach (or something similar), the parties will need to agree on a date by which Google will produce the full dataset, in order to ensure that there is sufficient time for Plaintiffs to review it, make follow-up requests, and utilize the documents in depositions and expert reports. Plaintiffs propose that Google agree to produce this information by **January 15, 2025.**

- As we explained during the call, how Google assembled the revenue information it produces (and what other revenue information Google did not produce) will be a topic for a 30(b)(6) deposition. We suggest that Google keep careful track of how this information is assembled.

For RFP 39 (auction price data), Google maintained that it does not have historical bid information. Google did not respond to the points raised in my November 6 email including whether Google maintains data that as part of its "automated bidding" program that would be responsive to RFP 39. Nor did Google respond to Plaintiffs' question from my November 6 email about regarding Google's auction insight reports, and whether the data used to generate these reports would be responsive to Plaintiffs' RFP.
We explained again that we understand Google provides reports to Shopping Ads merchants detailing metrics like "outranking share" and "overlap rate." These metrics track how often one advertiser's ad ranked higher than another advertiser's ad, and how often two advertisers received an impression at the same time. Link. Thus, if Google in fact does not have historical bid data, information on how many instances a Publisher placed an ad and a pirate was in second place would be useful. Since Google can calculate the overlap rate and the outranking rate, it seems like Google has some data on this.

Further, Plaintiffs repeated that to the extent pirate sites are using automated bidding, Link, we would like to understand how Google determines the amount an advertiser will bid if Google does not have historical information on prior bids.
For our next meet-and-confer, please be prepared to discuss both questions.

For RFP 47 (Google's methodology for pricing Shopping Ads), Google proposed limiting Google's production to publicly available information on its auction methodology (i.e., "help pages to show how the auction works for merchants"). As we explained during the call, Plaintiffs are skeptical that publicly available "help pages" will allow Plaintiffs to fully understand and explain the auction methodology, and its potential impact on the prices Plaintiffs paid for their ads. Nor do Plaintiffs agree that limiting discovery to publicly available documents is appropriate. We likewise expressed that we think it is unlikely that Plaintiffs would need access to proprietary materials like source code for RFP 47. In the interest of reaching a compromise, Plaintiffs are willing to review whatever publicly available documents Google believes are sufficient to satisfy RFP 47, to determine whether Plaintiffs will need additional documentation. As the documents apparently are publicly available, Google should be able to produce them without a protective order/ESI protocol. Please produce these documents by **December 6, 2024**, and Plaintiffs will review them.

## Issue 4: Personnel/Departments (RFP 2, RFP 41, RFP 42)
In my November 4, 2024 email, Plaintiffs proposed an approach for creating a custodian/search-term list for a series of RFP. During the calls on November 14 and 19, Google represented that it would be making a counter-proposal. We understand Google will do so today.
Google represented that any communications between Google and the Infringing Merchants (RFP 29) and any red flags/warnings about the Infringing Merchants (RFP 31) should be contained within Google systems/databases, and so a custodian/search term approach is not necessary. Google intends to search existing databases or systems, and is currently investigating and identifying the different sources that would contain this information. Google identified two such databases (which we will call the "DMCA Database" and "Strike Tracker") that likely will house responsive documents. Google confirmed that within the DMCA Database, Google would collect all documents associated with the "case number" associated with notices concerning the Infringing Merchants (recognizing that Related Ads Merchants are an open issue). For the Strike Tracker, Google confirmed that it will produce documents in respect to the Infringing Merchants.
Google represented that communications amongst Google personnel concerning the Infringing Merchants could be either in a Google system/database or in individual employees' email, chat, etc. Thus, for RFP 22 (communications concerning Plaintiffs' notices), Google represented that it would be necessary to search both

Google systems/databases and use a custodian/search term approach. Incidentally, this is yet another reason that Google's proposal of 10 custodians across all RFP is extraordinarily underinclusive.

**Issue 5: Time-Period**
Plaintiffs initially proposed a start-date of January 1, 2019; Google initially proposed a start-date of June 5, 2021. For several RFP listed in my November 4 email, Plaintiffs proposed a start-date of March 1, 2020. Google has now proposed a start-date of December 5, 2020 for the below RFP.

- RFP 3 (each notice from a Shopping Ads Merchant and how processed)
- RFP 4 (adverse actions against Shopping Ads Merchants for copyright infringement)
- RFP 6 (policies and implementation re copyright infringement)
- RFP 7 (policies and implementation re copyright and trademark infringement)
- RFP 16 (reports on Infringement Notices)
- RFP 19 (reinstated merchants)
- RFP 31 (red flags for Infringing Merchants)

Google described December 5, 2020 as the date of the complaint, minus what Google says is a "lookback" period of six months. Please explain what this "lookback" period is, and why it is six months, as opposed to some other time-period. Our assumption is that under Google's DMCA policy as of June 2021, Google only counted "strikes" or notices that had been accumulated in the prior six months. If this is so, that is all the more reason to produce documents prior to that six-month period. For example, if it turns out that merchants regularly exceeded Google's termination threshold when a lookback period of seven months is used, that would helpful information to a factfinder. More fundamentally, Google could have gained knowledge of the Infringing Merchants at any time, even if Google was only searching back six months.

For all other RFP, Google rejected both of Plaintiffs' proposals from my November 4 email for periods of March 1, 2020 and June 1, 2019. Google did not make a counterproposal. Please clarify whether June 1, 2021 is Google's proposed start-date for the below RFP.

- RFP 5 (adverse actions against Shopping Ads Merchants for other than copyright infringement)
- RFP 22 (communications concerning Plaintiffs' notices)
- RFP 27 (notices from others concerning Infringing Merchants)
- RFP 28 (notices from others concerning Infringing Domains)
- RFP 29 (communications with Infringing Merchants)
- RFP 33 (revenue from Infringing Merchants)
- RFP 34 (revenue from Infringing Merchants)
- RFP 35 (information provided by the Infringing Merchants)
- RFP 36 (information on Infringing Merchants)
- RFP 37 (ads run for Infringing Merchants)
- RFP 38 (ads run for products the Infringing Merchant advertised)
- RFP 44 (common relationships among Infringing Merchants)
- RFP 45 (docs concerning Digital Books Shopping Ads Policy)
- RFP 48 (direct infringement lawsuits against pirates)

For each of these Requests, a start-date of June 1, 2021 is not sensible. For example, Google has agreed to produce data on each notice received concerning an Infringing Merchant and how it was processed (RFP 3) going back to December 5, 2020, but is refusing to produce communications with or concerning those merchants (RFP 22 and RFP 29) from before June 1, 2021. And Google refuses to produce notices from other parties concerning the Infringing Merchants (RFP 27) and Infringing Domains (RFP 28) from prior to June 2021. For documents concerning the ebook ban (RFP 45), Google refuses to produce documents from prior to June 2021, when the policy was implemented prior to that in May 2021.

## Issue 6: Infringement Notices From Other Parties (RFP 27, RFP 28)

For RFP 27 and RFP 28, the only update Google provided was that it would produce responsive documents to show Google followed the DMCA policy with respect to the Infringing Merchants. Google provided no other update regarding the notice data, infringing domain data, or whether it is possible for two merchant accounts to advertise the same domain. As we've discussed before, RFP 27 calls for notice data concerning the Infringing and Related Ads Merchants; RFP 28 requests the same data concerning Infringing Domains. So understanding whether the same domain can be associated with more than one merchant would be helpful.

Though the parties have been discussing this issue for more than a month, Google has provided no update or change in position. If Google does not provide a meaningful update by Monday December 2, 2024, Plaintiffs will consider the parties to be at an impasse, and will raise this issue with the Court.

## Issue 7: Information Provided to Google (RFPs 35, 36, 37)

For RFP 35 and RFP 36, Google provided no update on whether producing Ad Reports for the Infringing Merchants is feasible or would contain the information called for in the requests. Google refused to provide a date by which they would get back to Plaintiffs with this information.

For RFP 37 (information concerning the ads run for Infringing Merchants and Related Ads Merchants): For the second, third, sixth, seventh, and eighth bullet points, Google refused to produce any documents concerning ads that Infringing Merchants and Related Ads merchants ran, except insofar as that information might be captured by notice data that Google produces in response to other requests. Google also argued that Plaintiffs are not entitled to discovery into potential additional infringements. Plaintiffs argued that this information is relevant to the scope of Google's knowledge, to establish whether the pirates were advertising exclusively infringing products, revenue earned from the pirates, as well as Google's material contribution for contributory infringement.

For the fourth and fifth bullet points, Google represented that RFP 30 would cover these requests (which Google has not yet even agreed to produce).

## Issue 8: Communications with the Association of American Publishers (AAP)

For RFP 52, Google confirmed that it will produce non-privileged documents and communications between Google and the AAP regarding the issue of infringing Shopping Ads and Google's practice of banning Shopping Ads from legitimate publishers but allowing such ads from pirate sellers.

## Issue 10: Digital Books Shopping Ads Policy (RFP 45, RFP 47, RFP 48)

Google confirmed that it will produce any non-privileged documents and communications concerning the ban on eBooks. Google responded it is not aware of any draft policies regarding the Digital Books Shopping Ads Policy.

## Issue 11: Lawsuits Against Pirates (RFP 48)

For the matters listed in RFP 48 (documents concerning prior lawsuits against pirates), Google agreed to search for and produce subpoena responses, and communications with Plaintiffs or Plaintiffs' counsel. Google refused to search for or produce non-privileged communications concerning these matters, stating only that it does not believe it possesses any responsive non-privileged documents. Please confirm that Google plans to take no further action verify that such documents do not exist.

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

**From:** Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>
**Date:** Saturday, November 23, 2024 at 00:03
**To:** Jeff Kane <JKane@oandzlaw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>,
Thomas.Buettner@lw.com <Thomas.Buettner@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>,
Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com
<Sarah.Tomkowiak@lw.com>, Holly.Victorson@lw.com <Holly.Victorson@lw.com>,
Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy
<michele@oandzlaw.com>
**Subject:** RE: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production -
Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

As promised at Tuesday's meet and confer, we write to memorialize our positions on the following:

- **Issue 2 (RFPs 8-10)**:  Subject to final client approval, Google will produce, in addition to non-privileged reports, studies, summaries, or analyses evaluating copyright or trademark infringement by merchants selling unauthorized eBooks on the Shopping platform, non-privileged high-level reports, studies, summaries, or analyses of copyright infringement on the Shopping platform, to the extent such documents are maintained in the ordinary course of business and can be identified after a reasonable search.  For the avoidance of doubt, Google clarifies that it will only search for and produce final reports, studies, summaries, or analyses, and Google will not produce notices or detailed notice-level data beyond what is already captured by such studies and analyses.

- **Issue 5 (time period)**:  While maintaining that its June 2021 cut-off is appropriate for the vast majority of Plaintiffs' discovery requests, Google agrees to produce documents going back to December 5, 2020, in response to the following RFPs, subject to all other objections and limitations described in Google's Responses & Objections and/or during the parties' conferrals.  Please note that this agreement is subject to final client approval.
    - RFP 3 (infringement notices received by Google concerning the works and marks asserted by Plaintiffs in this proceeding and actions taken by Google in response to the same)
    - RFP 4 (adverse actions taken toward merchants that were the subject of one or more notices received by Google concerning the works and marks asserted by Plaintiffs in this proceeding)
    - RFP 6-7 (Google's policies, practices, and procedures concerning actions taken by Google in response to copyright infringement notices concerning ads and listings on the Google Shopping platform generally)
    - RFP 16 (reports sufficient to show the results of DMCA takedown notices received by Google relating to ads and listings on the Shopping platform)
    - RFP 19 (reinstatements or reactivations of suspended or terminated accounts of merchants that were the subject of one or more notices concerning the works asserted in this proceeding)
    - RFP 31 (documents concerning the evaluation of fraudulent, infringing, or other nefarious activity indications concerning the merchants identified in the infringement notices Google received from Plaintiffs concerning the works asserted in this proceeding)

We are also working to provide you with updated redlines of the draft ESI protocol and protective order, as well as a new proposal regarding the exchange of custodians and search terms.  As we previously indicated, we will provide those no later than Monday.

Thanks,

Sara

**Sara Sampoli**

**LATHAM & WATKINS** LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Direct Dial: +1.202.350.5328
Email: sara.sampoli@lw.com
https://www.lw.com

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Thursday, November 14, 2024 3:32 PM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Buettner, Thomas (CH) <Thomas.Buettner@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Wetzel, Joe (Bay Area) <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

During today's meet-and-confer, the two sides did not get to complete our discussion of Issue 4, or to discuss Issues 5, 10, and 11. We are available at the below times to continue our discussion. Please let us know what works for you.

- Friday 11/14 - 10:00–10:45, 12:45–1:15, and 2:45–4:15
- Monday 11/18 – 10:00–12:15, 1:15–4:30
- Tuesday 11/19 – 11:00–12:00, 3:30–4:30

In addition, please send us your availability to discuss the ESI protocol and protective order, per the attached email.

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

---

**From:** Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>
**Date:** Friday, November 8, 2024 at 21:19
**To:** Jeff Kane <JKane@oandzlaw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Thomas.Buettner@lw.com <Thomas.Buettner@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Holly.Victorson@lw.com <Holly.Victorson@lw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>

**Subject:** RE: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

Thank you for identifying the below issues.  We are free on the following times for a conferral:
- Thursday, November 14 at 1:00pm
- Thursday, November 14 at 4:00pm

At our conferral, we will be prepared to discuss the following issues:

- **Issue 3: Revenue from Infringements (RFPs 33, 34, 39, 47)**.
  - o We will be prepared to discuss our current understanding whether Google maintains any information on historical bids for Shopping Ads.
- **Issue 4: Google Personnel/Org Charts/Departments (RFPs 2, 41, 42)**.
  - o We will be prepared to discuss Plaintiffs' proposal for identifying relevant custodians and search terms.
- **Issue 5: Time Period**
  - o We will be prepared to discuss Plaintiffs' proposal for modified time periods on certain of their RFPs.
- **Issue 6: Infringement Notices from Other Parties (RFP 37)**.
  - o We will be prepared to discuss Google's responses and objections to RFP 37.

With respect to the new issues you have raised, the relevant RFPs **(RFPs 45, 47, and 48)** appear overbroad, not proportionate to the needs of the case, and seeking privileged information.  With respect to RFP 45, for example, we explained that the request for "all documents concerning the Digital Books Shopping Ads Policy" was vastly overbroad to the extent it sought communications not reasonably connected to Plaintiffs' allegations in this proceeding.  And with respect to RFP 48, we explained that it was oppressively burdensome because it asked Google to identify unspecified lawsuits involving one or more Plaintiffs, commenced at any point in the past against any Shopping Ads Merchants.  We limited our responses to these requests to appropriately cabin discovery to relevant and proportional non-privileged information.  In order to have a productive conversation about these requests, we need to understand Plaintiffs' position regarding why you believe you are entitled to the broad scope of documents sought by these RFPs.

We also seek clarification about your request that Google "explain whether it uses a system to process Shopping Ads Infringement Notices" and "what that system might contain with respect to RFP 22, RFP 29, and RFP 31, and how it can be searched."  This request was posed in the context of Issue 3 (involving org charts), and it's not clear to us what relation these RFPs have to the org chart issue or what Plaintiffs' basis is for requesting this information at this time.

Given our conferrals and exchanges to date, the parties appear to be at an impasse on the following issues:

- **Issue 1: Related Ad Merchants (RFPs 25-27, 29, 31, 36, 38, 44)**.
  - o We agree with your assessment that we are at an impasse regarding whether discovery into so-called "Related Ads Merchants," *i.e.*, merchants that share " a common identity, common or related business or website ownership or operation, or other similarity that demonstrates a business connection or link between Google account holders" is proper in this action under Rule 26(b)(1).
  - o During our October 25 conferral, Google reiterated its position, which was also stated during the October 17 call, that while it is not obligated to produce any information about related merchants to raise a defense under the DMCA safe harbor, it is willing to investigate whether any relevant merchants that were implicated by Plaintiffs' notices concerning the Asserted Works in this case were subject to Google's efforts to combat clusters of bad actors.  To be clear, Plaintiffs' requests to Google did request or require any investigation of Google's "cluster enforcement" practices, and Google has never waived any of its objections by stating its willingness to perform such an investigation.  As we have now stated on October 17 and 25 and in our correspondence dated October 21, 23, and November 5, to the extent the relevant merchants were subject to any cluster enforcement efforts, we will produce documents reflecting those efforts.

- o Our understanding of Plaintiffs' position is that because Google must terminate repeat infringers to be eligible for the DMCA safe harbor, Plaintiffs are entitled to demand that Google investigate "related" merchants based on Plaintiffs' interpretation of "repeat infringers" to mean something broader than account holders.

- **Issue 9: Google's DMCA Policy for Shopping Ads (RFP 6)**.
  - o The parties have no dispute about the substance of this issue.  At our October 25 conferral, Google agreed to prioritize producing Google's DMCA policies once the Court enters a protective order.
  - o We agree with your assessment, however, that we are at an impasse with respect to Plaintiffs' request that Google describe the "reasonable search" that Google would run in response to this and other RFPs.  Google has explained that it will produce documents as agreed its R&Os and, in conducting a search for such documents, would meet its obligations under Federal Rules of Civil Procedure 26 and 34—that is all that is required.  *See Raine Grp. LLC v. Reign Capital, LLC,* 2022 WL 538336, at *1 (S.D.N.Y. Feb. 22, 2022) ("Federal Rules of Civil Procedure 26 and 34 require parties to conduct a reasonable search for documents that are relevant to the claims and defenses.").  Plaintiffs have provided no legal or factual basis supporting any entitlement to discovery into discovery.  *See Haroun v. ThoughtWorks, Inc.,* No. 20-0100, 2020 WL 6828490, at *1 (S.D.N.Y. Oct. 7, 2020) ("When the discovery sought is collateral to the relevant issues (*i.e.,* discovery on discovery), the party seeking the discovery must provide an 'adequate factual basis' to justify the discovery, and the Court must closely scrutinize the request 'in light of the danger of extending the already costly and time-consuming discovery process *ad infinitum*.'").

We are diligently continuing to investigate the following issues and will provide Plaintiffs with updates once we have them:

- **Issue 3: Revenue from Infringements (RFPs 33, 34, 39)**.
  - o Google fully maintains its objections that any revenue beyond the Shopping platform is not relevant or proportional to the claims and defenses at issue in this case—indeed, Plaintiffs themselves complained during our October 31 conferral that Google's requests regarding Plaintiffs' enforcement efforts were not limited to the Shopping platform.  However, solely for purposes of investigating a potential compromise on this dispute, Google continues to investigate the feasibility and burden of producing a broader scope of information about revenues tied to ad accounts.  Google reserves all rights to stand on its objections.
- **Issue 6: Infringement Notices from Other Parties (RFPs 27-28)**.
  - o Google's investigation into (1) whether there is data that can easily be pulled reflecting notices sent by other parties about the relevant merchants in this case; and (2) whether it is possible for two merchant accounts to advertise the same domain, is ongoing.  Google maintains its objections and reserves all rights.
- **Issue 7: Information Provided to Google (RFPs 35-36)**.
  - o Google is looking into the feasibility and/or burden of producing the kind of "ad reports" that Plaintiffs requested, which Plaintiffs represented on our October 25 call cover the information requested in bullets 4, 5, 6, and 7 to RFP 36.  With respect to the first bullet to RFP 36, as we agreed on the October 25 call, Google will also produce non-privileged documents, maintained in the ordinary course of business and located after a reasonable search, reflecting any identifying or merchant account information associated with merchants identified in the notices sent from Plaintiffs to Google regarding the works at issue in this proceeding.

Finally, we have the following update to share about **Issue 8**:

- **Communications with AAP (RFP 52)**: While we are still investigating the full scope of this request based on the information Plaintiffs provided on October 25, we will produce nonprivileged documents responsive to this request in our possession, custody, or control that relate to topics and categories for which Google has already agreed to produce documents, *e.g.*, documents reflecting Google's "actual policies, practices, and procedures concerning removing digital books or ebooks listings from Shopping Ads" (RFP 45), documents reflecting

"Google's policies, practices, and procedures concerning actions taken by Google in response to copyright infringement notices concerning ads and listings on the Google Shopping platform generally" (RFPs 6, 50), documents reflecting "actions taken by Google to limit unauthorized sellers of ebooks from advertising on the Shopping platform" (RFP 8), and "reports, studies, summaries, or analyses . . . evaluating copyright or trademark infringement by merchants selling unauthorized ebooks on the Google Shopping platform" (RFPs 9, 32).

Thanks,
Sara

**Sara Sampoli**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Direct Dial: +1.202.350.5328
Email: sara.sampoli@lw.com
https://www.lw.com

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Wednesday, November 6, 2024 1:44 PM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Buettner, Thomas (CH) <Thomas.Buettner@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Wetzel, Joe (Bay Area) <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

First, on Issue 1 (Related Ads Merchants), we agree that the parties are at an impasse on this issue. Your suggestion that the parties have not discussed RFP 44 is incorrect. The issue of Related Ads Merchants affects numerous requests; your own email listed eight of them. For efficiency, both sides have discussed these requests collectively, referencing specific requests as appropriate to facilitate the discussion. The two sides thus discussed RFP 44 in both the October 17, 2024 meet-and-confer, and in the October 25, 2024 meet-and-confer, as evidenced by the references to RFP 44 in my October 22 email, my November 4 email, and your November 5 email. Moreover, Google's objections to RFP 44 incorporate Google's response to RFP 27 (which in turn incorporates Google's objections to RFP 3, RFP 4, RFP 22, and RFP 24), which the parties discussed specifically and at length. If there are additional points you believe would be helpful to discuss on the issue of RFP 44 in particular, please identify what they are.

Google's offer to "investigate" whether Google previously identified any of the Infringing Merchants as part of "clusters of bad actors" is insufficient to determine whether Google terminated the infringer, as opposed to one account of the infringer, and in the other ways we've explained. Courts have made clear what is evident from the DMCA's text: terminating a repeat infringer means actually removing the infringer, not taking some action short of that. *Atl. Recording Corp. v. Spinrilla, LLC*, 506 F. Supp. 3d 1294, 1318 (N.D. Ga. 2020); *Capitol Records, LLC v. Escape Media Grp., Inc.*, 2015 WL 1402049, at *9-12 (S.D.N.Y. Mar. 25, 2015); *BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*, 149 F. Supp. 3d 634 (S.D.N.Y. Dec. 1, 2015), aff'd in part, rev'd on other grounds, *BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*, 881 F.3d 293 (4th Cir. 2018). And, in any case, Google has failed to provide any results from its supposed "investigation" in the more-than two months since Plaintiffs sent our Requests.

Second, you claim to be "unclear which issues Plaintiffs contend would benefit from further conferral." My November 4, 2024 email lays out these issues in detail. But to remove any doubt, some of the issues we would like to discuss are:

- On Issue 3 – Google needs to update Plaintiffs on what revenue is included in the "Ad Accounts" for which Google suggested producing revenue information. And Plaintiffs would like to discuss the questions Plaintiffs raised below about RFP 39 and RFP 47.

  In addition, we would like to discuss Google's representation that it "does not maintain historical bid information." Google provides reports to Shopping Ads merchants detailing metrics like "outranking share" and "overlap rate." These metrics track how often one advertiser's ad ranked higher than another advertiser's ad, and how often two advertisers received an impression at the same time. Link.  According to Google, this data is available going back to 2014. *Id.* We would like to discuss whether the data that generates these reports is responsive to RFP 39. Further, to the extent pirate sites are using automated billing, Link, we would like to understand how Google determines the amount an advertiser will bid if Google does not have historical information on prior bids.

- On Issue 4 – Plaintiffs would like to discuss the proposal we made with respect to custodians and search terms, as well as our question about RFP 22, RFP 29, and RFP 31.

- On Issue 5 – Plaintiffs would like to discuss the proposal we made regarding time-periods for particular requests, as well as our question about RFP 6 and RFP 7.

- On Issue 6 – Google agreed to look into providing notice data, as opposed to notices. Google needs to update Plaintiffs on this approach.

- On Issue 7 – Google needs to update Plaintiffs on whether Ad Reports would capture the information identified in these requests. Google also needs to update Plaintiffs on the first, fourth, fifth, sixth, and seventh bullets of RFP 36, and Plaintiffs would like to discuss what Google proposes to produce in response to RFP 37.

- On Issue 8 – Google' written responses and objections agreed to meet-and-confer on this request. Plaintiff provided substantial information concerning this request during the October 25 meet-and-confer; Google had no response on that call and has made no response since. Google needs to inform Plaintiffs of how it intends to respond to this request.

- On Issue 9 – we take from your statements during the October 25, 2024 meet-and-confer and your November 5 email that Google is refusing to confer further on this request.

- On Issue 10 – RFP 45 requested several categories of documents, including communications concerning Google's ebooks policy, documents concerning the development of this policy, and documents concerning the implementation of this policy. Google's written objections state that Google will produce only documents "reflecting Google's actual policies, practices, and procedures concerning removing digital books or ebooks listings from Shopping Ads." Plaintiffs would like to understand Google's basis for limiting its response in this fashion.

- On Issue 11 – Google's written objections state that Google is willing to meet and confer on RFP 48. Among other things, it appears that Google is refusing to search for documents related to the identified cases specifically. Plaintiffs would like to understand Google's basis for this refusal.

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

---

**From:** Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>
**Date:** Tuesday, November 5, 2024 at 21:38
**To:** Jeff Kane <JKane@oandzlaw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Thomas.Buettner@lw.com <Thomas.Buettner@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Holly.Victorson@lw.com <Holly.Victorson@lw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>
**Subject:** RE: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

We agree that a separate conferral is appropriate to discuss the protective order and ESI protocol. We are free on Monday (11/11) at 10:30am ET to discuss those documents. To maximize the efficiency of our conferral time, please provide us with the topics you would like to discuss in advance.

Regarding the discovery issues identified in your email, we think our conversation will be more productive if you identify the issues that you think warrant a discussion and your position on those issues. We conferred with you for an additional 30 minutes beyond the scheduled block on October 25 to get through all of the issues Plaintiffs raised. It is unclear which issues Plaintiffs contend would benefit from further conferral. With respect to the two new issues that you've raised, for example, it's not clear to us what aspects of our responses you find deficient. We agreed to produce certain documents in response to both RFPs 45 and 48, and it would be helpful for us to know what additional documents you believe you are entitled to. Once we have a better understanding of what issues you plan to address on a third conferral call, we can find a time to schedule one.

In addition, please find below some points from our October 25 call that were missing or different from your summary below.

**Issue One: Related Ads Merchants (RFPs 25-27, 29, 31, 36, 38, 44)**

- The parties have not discussed RFP 44 specifically on any calls to date.
- Your summary mischaracterizes Google's position. During the October 25 call, Google reiterated its position, which was also stated during the October 17 call, that while it is not obligated to produce any information about related merchants to raise a defense under the DMCA safe harbor, it would be willing to produce documents regarding Google's efforts to combat clusters of bad actors to the extent relevant to the merchants at issue in this case. In other words, Google has agreed to investigate whether any relevant merchants that were implicated by Plaintiffs' notices were subject to any cluster enforcement.
- Plaintiffs reiterated their position that to be eligible for the DMCA safe harbor, Google must terminate repeat infringers, which has broader meaning than account holders, and that Plaintiffs are entitled on that basis to demand that Google investigate "related" merchants.

- o   Google again invited Plaintiffs to identify any caselaw supporting this position, but Plaintiffs have yet to identify any authority supporting their interpretation of 17 U.S.C. § 512(i)(1)(A).

**Issue Two: Limiting Responses to eBooks (RFPs 8-11, 14, 15)**
- For the avoidance of doubt, the parties did not discuss RFPs 11, 14, and 15 during the October 25 call.
- With respect to RFPs 8-10, Google explained that its agreement to provide high-level documents about Google's DMCA policy in response to RFPs 11, 14, and 15 more than covers what is reasonable in this case.
- Google has made its position on RFPs 8-10 clear.  Plaintiffs' offer to narrow RFP 10 to all documents constituting or concerning reports, studies, summaries, research, presentations, analyses, or similar documents concerning "pirate websites that advertise on the Shopping platform and that traffic in allegedly copyright-infringing content" does not resolve Google's objection that the request is unreasonably broad to the extent it seeks information about products not at issue in this litigation.

**Issue Three: Revenue from Infringements (RFPs 33-34, 39)**
- With respect to RFP 39, Google informed Plaintiffs that it does not maintain historical bid information in the ordinary course of business.
- With respect to RFPs 33-34, Google maintains its position that while the requests are overbroad and only the revenue received from the implicated merchants concerning the Shopping ads at issue are relevant.  However, without waiving its objections and in the interest of finding a compromise, Google agreed to investigate the feasibility and burden of producing a broader scope of information about revenues tied to the ad accounts connected to the merchants implicated by Plaintiffs' notices.
  - o   Google asked Plaintiffs to clarify whether they continue to seek revenues from sources beyond Shopping and ad accounts.
    - ▪   Plaintiffs maintained their position that the entirety of Google's revenue, from any source, from purportedly infringing merchants is relevant to statutory damages, regardless of the source of that revenue (e.g., subscriptions, merchandise, etc.).  Google expressed its disagreement on that point, as even the statutory damages factors only examine profits *resulting from the claimed infringement*.
    - ▪   Google agreed to continue its investigation into the scope of ads revenue, and that investigation is ongoing.

**Issue Four: Google Personnel/Org Charts/Departments (RFPs 2, 41, 42)**
- Google explained that because it does not keep static org charts, responding to this RFP would require Google to create custom documents.  It also explained that, as worded, these RFPs are overbroad because they seek documents identifying all employees with any responsibility for Shopping Ads from a company that has over 180,000 employees.
- Because this is an issue that has a parallel impact on Plaintiffs, Google proposed that a mutual exchange of custodians would be a reasonable and efficient solution for providing both parties with the information that they seek.
  - o   For clarification, Google did not represent that it would be too "confusing" to identify departments and personnel responsible for the various functions Plaintiffs identified; it was Plaintiffs who represented that their organizational structure was less "confounding and confusing" than what they understood Google's to be.
- We will review and consider the proposal you provided for the first time in your November 4 correspondence.

**Issue Five: Time Period**
- Google explained that June 2021 to present is an appropriate time period not just because of the three-year statute of limitations, but because Plaintiffs' own allegations begin in June 2021 (see Am. Compl. ¶ 99).  That being said, Google stated that it would be willing to consider a broader time period for certain subcategories of documents (Google explained, for example, that it would consider producing documents that tend to show strikes for the relevant merchants prior to June 2021 up to the lookback period under Google's DMCA policy).

- While acknowledging that their proposed start date of January 1, 2019 was "arbitrary," Plaintiffs offered two categories of documents that they believed might require a broader time period: 1) documents reflecting copyright infringement notices; and 2) Google's DMCA policies.  Plaintiffs agreed to follow up with specific RFPs for Google's consideration.
- We will review and consider the proposal you provided for the first time in your November 4 correspondence.

**Issue Six: Notices Received from Other Parties (RFPs 27-28, 37)**
- The parties did not discuss RFP 37 on the October 25 call.
- Google clarified that in response to RFP 4, it would produce non-privileged documents maintained in the ordinary course of business reflecting adverse actions taken toward the relevant merchants in this case, regardless of whether the adverse action was spurred by a notice from Plaintiffs or someone else.
- Google explained its position that requesting *all* notices received by Google concerning the implicated merchants is overbroad and the information is not relevant or proportional to Plaintiffs' claims. Google stated, however, that it would be open to discussing providing certain data summarizing, or sufficient to identify, prior notices from other rightsholders and strikes relevant to Google's implementation of its DMCA policy.
  - o In response, Plaintiffs indicated that summary data about infringement notices and strikes, rather than the notices themselves, might be sufficient.
  - o Google agreed to investigate whether there is data that can easily be pulled reflecting notices sent by other rightsholders about the relevant merchants in this case.
- Google asked Plaintiffs to explain whether there is any difference between what Plaintiffs are seeking in RFP 27 (notices about Infringing Merchants) and RFP 28 (notices about Infringing Domains).  Plaintiffs stated that it depends on whether more than one Shopping Merchant account can advertise the same domain.  If not, then RFP 28 would be duplicative of RFP 27.
  - o In response, Google agreed to confirm whether it is possible for two merchant accounts to advertise the same domain.

**Issue Seven: Information Provided to Google (RFPs 35-36)**
- With respect to RFP 35, Google explained that the request is incredibly overbroad, burdensome, and asks for documents with limited relevance to Plaintiffs' claims.
  - o In terms of burden, Plaintiffs explained their understanding that Google can produce an "ad report" showing all ads that Google ran on behalf of each merchant.  Google agreed to look into the feasibility of producing the kind of "ad reports" that Plaintiffs believe exist.
- With respect to RFP 36, Google explained that the request seeks information regarding a number of different categories, and all of these categories are either covered by other discovery requests or not relevant and proportional to Plaintiffs' claims.
  - o Category 1 (bullets 1-3):
    - ▪ Without waiving its objections, Google agreed to confirm that the identifying information requested is being produced in response to other Requests, such as RFP 24.
  - o Category 2 (bullets 4, 5, 7):
    - ▪ Google explained that information about items advertised/ads run by the relevant merchants is largely irrelevant except with respect to the noticed Ads and noticed domains, which would be captured by other RFPs.
    - ▪ Notwithstanding that position, Google agreed to explore the burden of producing information in response to these bullets in connection with the "ad reports" identified by Plaintiffs.
  - o Category 3 (bullet 6):
    - ▪ Google explained that information about domains and landing pages associated with all of the relevant merchants' shopping ads is not relevant to Plaintiffs' claims.
    - ▪ Google agreed that if this information is already being collected in response to other RFPs, Google will produce it. Otherwise, however, Google will not agree to canvas all the ads run on behalf of the relevant merchants in this case to respond to this portion of RFP 36.
  - o Category 4 (bullet 8):

- Google explained that information about other Google services used by the relevant merchants in this case is not relevant to Plaintiffs' claims and that Google would maintain its objection to this portion of RFP 36.

**Issue Eight: Communications with AAP (RFP 52)**
- Plaintiffs explained their position that this information is relevant to their deceptive trade practices claim and relates to Google's purported eBook ban.
- Google agreed to consider Plaintiffs' position on relevance and investigate what communications it might have responsive to this Request.

**Issue Nine: Google's DMCA Policy for Shopping Ads (RFP 6)**
- Google agreed to prioritize producing Google's DMCA policies once the Court enters a protective order.
- In response to Plaintiffs' request that Google describe the "reasonable search" that Google would run in response to this and other RFPs, Google explained that it would produce the documents as agreed its R&Os and, in conducting a search for such documents, would meet its obligations under Federal Rules of Civil Procedure 26 and 34. Plaintiffs have shown no basis for discovery into discovery at this time.

Thanks,

Sara

**Sara Sampoli**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Direct Dial: +1.202.350.5328
Email: sara.sampoli@lw.com
https://www.lw.com

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Monday, November 4, 2024 2:16 PM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Buettner, Thomas (CH) <Thomas.Buettner@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Wetzel, Joe (Bay Area) <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

Below is a summary of parties' positions on several issues related to Plaintiffs' First RFP. Also included are two new issues. We suggest a meet-and-confer on these issues. We also suggest the parties meet and confer on the protective order/ESI protocol. It probably makes sense for these to be separate calls. We are available at the below times.

- Tuesday 11/5 – 9:30–10:45, 12–1, 2:45–5:00 ET
- Wednesday 11/6 – 10:15–1 ET
- Thursday – 9:30–1:45, 3:00–5:00 ET
- Monday 11/11 – 10:15–5:00 ET

**Issue One: Related Ads Merchants (RFP 25, RFP 26, RFP 27, RFP 29, RFP 31, RFP 36, RFP 38, RFP 44)**

For the Requests involving "Related Ads Merchants" (RFP 25, RFP 26, RFP 27, RFP 29, RFP 31, RFP 36, RFP 38, RFP 44), Latham did not provide any updates on what "algorithms and checks" Google performs to identify "clusters of bad actors." Nor has Google provided this information subsequent to the October 25, 2024 meet-and-confer. Plaintiffs informed Google that this issue likely will be the subject of motion practice.

Google instead maintained its position that Google does not affirmatively link related merchants and does not have an obligation to do so. Latham represented that if Google terminates one of a pirate seller's accounts, Google has no obligation to terminate any other related accounts the Pirate Seller owns. E.g., if Google terminates one merchant account for violating Google's repeat infringer policy, and the same entity that operates that merchant account also operates twelve other merchant accounts, Google's position is that the DMCA does *not* require Google to terminate these other twelve accounts. Plaintiffs disagree with Google's position. And, in any case, this information is relevant to Google's knowledge and other issues.

**Issue Two: Limiting Responses to eBooks (RFP 8–11, 14, 15)**

With respect to copyright (as opposed to trademark) infringement:
- Google stated in its written objections that its responses to RFP 8, RFP 9, RFP 10, RFP 11, RFP 14, and RFP 15 would be limited to documents concerning eBooks. During the October 17, 2024 meet-and-confer, Google represented that its responses to RFP 11, RFP 14, and RFP 15 would *not* be limited to ebooks.

- For RFP 8, RFP 9, and RFP 10, Latham confirmed during our October 25, 2024 meet-and-confer that Google's DMCA Policy for the Shopping platform is not limited to ebooks. Nonetheless, Google maintained that with respect to copyright infringement, Google will limit its responses to documents concerning ebooks.

- For RFP 8 and RFP 9, as we explained, this is unacceptably narrow. Since Google's DMCA program is not limited to ebooks, Plaintiffs are entitled to internal reports Google has prepared concerning copyright infringement on the Shopping platform, regardless of whether that infringement involves ebooks specifically.

- For RFP 10, Plaintiffs are willing to narrow this request to pirate websites that advertise on the Shopping platform and that traffic in allegedly copyright-infringing content. Please let us know by Friday November 8 if this is acceptable to Google.

**Issue Three: Revenue from Infringements (RFP 33–34, 39)**

With respect to RFP 39, Google represented that it does not maintain historical bid information concerning Shopping Ads auctions. Please clarify whether Google maintains any information on historical bids for Shopping Ads, including winning bids, names of bidders, aggregated bid data, and prices paid.
In addition, for our next meet-and-confer, please be prepared to discuss Google's objections to RFP 47 (methodology for pricing Shopping Ads).

For RFP 33 and RFP 34, during the October 17, 2024 meet-and-confer, Google suggested producing revenue from "Ads accounts" as a compromise. Latham agreed to get back to us on what revenue streams would be included in "Ads accounts". During the October 25, 2024 meet-and-confer, Latham did not provide us this information. Nor have you provided it to us since.

**Issue Four: Google Personnel/Org Charts/Departments**

During our October 25, 2024 meet-and-confer, Latham was unable to answer the basic question of what department(s) are involved in the processing of Infringement Notices. Latham also declined to say whether Google has a list of employees who work in various departments.

Plaintiffs remain concerned about how Google will compile a list of relevant custodians and search terms, given Latham's representation that it is too "confusing" to identify departments and personnel responsible for the various functions Plaintiffs identified. During our October 25, 2024 meet-and-confer, Plaintiffs asked how Latham will compile a list of custodians and search terms. Latham's response that it will compile the list "the same way as your clients will" does not address Plaintiffs' concerns.

With that caveat, for the below RFP, Plaintiffs are willing to discuss a protocol for devising custodians and search terms.

- RFP 6 (policies and implementation re copyright infringement)
- RFP 7 (policies and implementation re trademark infringement)
- RFP 8 (technology for copyright infringement in Shopping Ads)
- RFP 9 (reports on copyright infringement by Shopping Ads Merchants)
- RFP 10 (reports on copyright infringement by pirate websites generally)
- RFP 13 (policies/procedures considered but not adopted)
- RFP 14 (impact or effectiveness of copyright infringement policies)
- RFP 15 (reports concerning processing of Infringement Notices)
- RFP 16 (reports on Infringement Notices)
- RFP 20 (public statements)
- RFP 32 (reports on other illegal activity by Shopping Ads Merchants)
- RFP 45 (docs concerning Digital Books Shopping Ads Policy)
- RFP 48 (GAPS cases)
- RFP 49 (history off)
- RFP 52 (AAP communications)

We suggest Google provide a list of the custodians it believes are relevant to the above requests by an agreed-upon date. For each custodian, Google would identify the individual's title(s) during the relevant period (see Issue Five below), a brief description of the individual's relevance, and the RFP(s) to which Google believes the custodian has relevant information. After reviewing Google's list, Plaintiffs would send a revised list of custodians, and a list of search terms. Google would run the search terms and report back on the number of hits. The parties would also agree that custodians and search terms can be added and that they will attempt to resolve any disputes regarding additional custodians and search terms in good faith.

For the parties to proceed with the custodian/search term approach outlined above, Google would have to withdraw or substantially alter its objections to RFP 2 (departments/personnel), RFP 41 (employees involved in Shopping Ads for Plaintiffs), and RFP 42 (employees involved in Shopping Ads for Infringing Merchant) insofar as they apply to the Requests above.

For the below RFP, it appears to Plaintiffs that some of the relevant documents might be housed in whatever system Google uses to process Infringement Notices and to take action against merchants who violate Google's DMCA Policy.

- RFP 22 (communications concerning Plaintiffs' notices)
- RFP 29 (communications with Infringing Merchants)
- RFP 31 (red flags for Infringing Merchants)

It would be helpful if Google could explain whether it uses a system to process Shopping Ads Infringement Notices, communicate with merchants, and/or communicate internally at Google about notices and merchants.

If so, please explain what that system might contain with respect to RFP 22, RPF 29, and RFP 31, and how it can be searched.

**Issue Five: Time Period**

Plaintiffs proposed a time period of January 1, 2019 through the present; Google proposed a time period starting June 5, 2021. For the below RFP, Plaintiffs propose a compromise of March 1, 2020 (roughly half-way between the two proposals).

- RFP 1 (legal entity)
- RFP 2 (departments/personnel)
- RFP 3 (each notice from a Shopping Ads Merchant and how processed)
- RFP 4 (adverse actions against Shopping Ads Merchants for copyright infringement)
- RFP 5 (adverse actions against Shopping Ads Merchants for other than copyright infringement)
- RFP 8 (technology for copyright infringement in Shopping Ads)
- RFP 9 (reports on copyright infringement by Shopping Ads Merchants)
- RFP 10 (reports on copyright infringement by pirate websites generally)
- RFP 11 (systems for Infringement Notices)
- RFP 12 (policies for Related Ads Merchants)
- RFP 13 (policies/procedures considered but not adopted)
- RFP 14 (impact or effectiveness of copyright infringement policies)
- RFP 15 (reports concerning processing of Infringement Notices)
- RFP 16 (reports on Infringement Notices)
- RFP 17 (circumstances in which you would reject a notice)
- RFP 18 (duplicate notices)
- RFP 19 (reinstated merchants)
- RFP 20 (public statements)
- RFP 21 (scripted responses to notices)
- RFP 23 (policies for sharing infringement notices)
- RFP 24 (Infringing Merchants' associated websites)
- RFP 25 (Related Ads Merchants)
- RFP 26 (Google services used by each Infringing/Related Ads Merchant)
- RFP 32 (reports on other illegal activity by Shopping Ads Merchants)
- RFP 39 (info on ads run for Plaintiffs)
- RFP 40 (info on ads run for Plaintiffs)
- RFP 41 (employees involved in Shopping Ads for Plaintiffs)
- RFP 42 (employees involved in Shopping Ads for Infringing Merchants)
- RFP 43 (visitors to landing page)
- RFP 46 (procedures for labeling accounts "verified")
- RFP 47 (auction methodology)
- RFP 49 (history-off conversations)
- RFP 50 (whether/under what circumstances Google would terminate merchants in other platforms based on Shopping Ads notices)
- RFP 51 (DMCA Agent)
- RFP 52 (AAP)
- RFP 53 (financial performance)
- RFP 54 (performance of Shopping Ads)
- RFP 55 (affirmative defenses)
- RFP 56 (ROGS, RFA)
- RFP 57 (subpoenas)
- RFP 58 (exhibits)

For the below RFP, a longer time-period is appropriate. Plaintiffs propose June 1, 2019.
- Request 22 (communications concerning Plaintiffs' notices)
- RFP 27 (notices from others concerning Infringing Merchants)
- RFP 28 (notices from others concerning Infringing Domains)
- RFP 29 (communications with Infringing Merchants)
- RFP 30 (info on Infringing Merchants/Infringing Domains)
- RFP 31 (red flags for Infringing Merchants)
- RFP 33 (revenue)
- RFP 34 (revenue)
- RFP 35 (information provided by the Infringing Merchants)
- RFP 36 (information on Infringing Merchants)
- RFP 37 (ads run for Infringing Merchants)
- RFP 38 (ads run for products the Infringing Merchant advertised)
- RFP 44 (common relationships among Infringing Merchants)
- RFP 45 (docs concerning Digital Books Shopping Ads Policy)
- RFP 48 (GAPS cases)

For the below RFP, the relevant time-period likely depends on when Google adopted or implemented the policies referenced in the RFP. Please let us know these adoption and implementation dates so that we can evaluate whether a time-period other than the one listed in our RFP might be agreeable.
- RFP 6 (Policies and implementation re copyright infringement)
- RFP 7 (Policies and implementation re trademark infringement)

**Issue Six: Notices Received from Other Parties Concerning Infringing Merchants**

- For RFP 4, Google clarified that it will produce documents showing strikes assessed against all of the Infringing Merchants, i.e., any Shopping Ads Merchant who was the subject of a notice Plaintiffs sent to Google concerning the works-in-suit, regardless of whether the strike resulted from a notice from Plaintiffs or someone else.

- For RFP 27 and RFP 28, Latham took the position that Google would not produce any notices regarding Infringing Merchants received from parties other than the Plaintiffs. As we explained on the call, such notices are highly relevant to Google's knowledge (i.e., a notice from another party could have informed Google that a merchant was infringing) and to Google's DMCA defense (i.e., Google's actions in response to notices about an Infringing Merchant are relevant to whether Google reasonably implemented its DMCA Policy). Latham agreed to look into providing notice data for all notices received concerning these Infringing Merchants (i.e., for each notice, data reflecting fields like notice date, noticing party, ad URL, product advertised, landing page URL, action taken in response, etc.). Please get back to us with Google's position as soon as possible.

**Issue Seven: Information that the Infringing Merchants Provided to Google (RFP 35 and 36)**
- For RFP 35, Google will look into producing Ad Reports for each Infringing Merchant (as we've defined in Issue Six above).

- For RFP 36:
  - For the first three bullets, Latham represented that it believed the information described is being produced in other Requests. Latham will confirm this, and identify the requests in response to which Google is providing this information.

  - For the fourth, fifth, and seventh bullets, Plaintiffs explained that information on other products the Infringing Merchants advertised is relevant to whether Google was advertising exclusively

infringing products for these merchants. Latham is going to get back to Plaintiffs on this request, including as to whether an Ads Report would contain this information.

- o   For the sixth bullet, Plaintiffs explained that this information is relevant to whether Google actually terminated repeat infringers, i.e., whether Google was terminating one ad for an infringing pirate site but allowing other ads for the same pirate site. As we explained, Google claims to evaluate landing pages to confirm that the sites' products are eligible for Shopping Ads, ¶ 75; ties the landing pages/sites to a particular merchant, ¶¶ 73–74; and evaluates landing pages/sites as part of its auction pricing. *United States v. Google*, 20-cv-03010, Dkt. 906 ¶ 641(b). Plaintiffs thus expect that Google has the information Plaintiffs have requested.

- o   For the eighth bullet, Google refused to produce any documents.

- For RFP 37 (information on ads for Infringing Merchants'/Related Ads Merchants' products), we remain unclear on what Google proposes to produce. To the extent Google is incorporating its responses to RFP 3, RFP 4, RFP 22, RFP 24, and RFP 27, please identify the requests in response to which Google intends to produce each of the bulleted items listed in RFP 37.

## Issue Eight: Communications with the Association of American Publishers

For RFP 52 (communications with Association of American Publishers), Plaintiffs explained the reasons for this request. Plaintiffs' understanding is that Google representatives were in high-level discussions with the Association of American Publishers regarding ways of addressing Shopping Ads for pirated ebooks. Plaintiffs identified to Google certain personnel involved and the relevant email domain for AAP (@publishers.org).

## Issue Nine: Google's DMCA Policy for Shopping Ads

Google confirmed that it will produce its DMCA Polic(ies) for Shopping Ads promptly as soon as the Court enters the protective order.

On this issue as well as others, Google refused to describe the search it intends to perform, other than to say that the search will comply with Rules 24 and 26. We encourage Google to meet and confer meaningfully on the searches it proposes to undertake. As we explained on the call, it is inefficient and improper for Google to wait for motion practice before explaining what it intends to search.

## Issue 10: Digital Books Shopping Ads Policy (RFP 45)

For our next meet-and-confer, please be prepared to discuss Google's objections to RFP 45 (documents concerning Google's Digital Books Shopping Ads Policy).

## Issue 11: Lawsuits against Pirates (RFP 48)

For our next meet-and-confer, please be prepared to discuss Google's objections to RFP 48 (documents concerning prior lawsuits against pirates).

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016

202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

---

**From:** Holly.Victorson@lw.com <Holly.Victorson@lw.com>
**Date:** Wednesday, October 23, 2024 at 18:13
**To:** Jeff Kane <JKane@oandzlaw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>,
Thomas.Buettner@lw.com <Thomas.Buettner@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>,
Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>,
Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy
<michele@oandzlaw.com>
**Subject:** RE: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production -
Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Jeff,

We disagree with your mischaracterizations of the parties' positions in your email.  I do not address every
mischaracterization in your email, but write instead to make clear Google's position regarding certain disputes.

**"Related Ads Merchants":** I stated on our call last week, and as stated below, we are investigating the processes by
which Google identifies "clusters" of merchants for purposes of enforcement, which go above and beyond the
requirements of the DMCA, and we agreed to produce documents reflecting those processes to the extent there exist
such documents relevant to the merchants and issues in this dispute.  Plaintiffs have no legal basis for demanding
production of unspecified "data fields" for all of Google's Shopping Ads merchants, or for demanding Google now
perform custom investigations to identify new connections between merchants.  We disagree with Plaintiffs' apparent
interpretation of the DMCA's requirements and your conclusions about how that will affect the case or Google's ability
to assert its defenses.

**RFPs 8–10:** As we stated on the call, these requests, as drafted, are overbroad, as they would encompass collecting
documents reflecting Google's analysis of, and efforts to address, all copyright and trademark infringement for *every
product* advertised, or resident, on Google's platforms.  And contrary to your representation on the call, these requests,
as drafted, are not even limited to the Shopping platform.  Request No. 9 is limited to Shopping Ads *Merchants*, but not
the *platforms* on which such merchants advertise or otherwise engage.  RFP No. 10 is not limited by platform or even
limited by Shopping Ads Merchants.  Accordingly, we limited our agreement to produce responsive documents to these
broad requests with respect to the ebooks category on the Shopping Ads platform only.  On our call last week, you
acknowledged the breadth of these requests but did not propose any narrowing beyond the requests as drafted.  It is
not Google's obligation to re-write Plaintiffs' overbroad RFPs.  If Plaintiffs propose a more reasonable scope for these
requests, we will consider whether we can agree to a broadening of scope beyond what Google has already agreed.

We are willing to continue discussion of these and the other ongoing disputes, and we are in receipt of your additional
issues and will be prepared to discuss on our next call.  We are available on Friday 10/25 at 3:30-4:30pm ET.

Regards,
Holly

**Holly Victorson**
Pronouns: she/her/hers

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304

D: +1.202.637.2336

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Tuesday, October 22, 2024 10:36 AM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Buettner, Thomas (CH) <Thomas.Buettner@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Wetzel, Joe (Bay Area) <Joe.Wetzel@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

Below are some points from our call with you last week that were missing or different from your summary below. Also included below are a few points to discuss during the next call. We are not available during the single one-hour window you provided. Here are some dates and times that work for us.

- Thursday 10/24 – 10:15–12:00, 1:30–5:00 ET
- Friday 10/25 – 10:15–11:45, 1:15–2:15, 3:15–5:00 ET
- Monday 10/27 – 10:15–3:00, 4:00–5:00 ET

## Issue One: Related Ads Merchants

For the Requests we identified in our October 9, 2024 email (RFP 25, RFP 26, RFP 27, RFP 29, RFP 31, RFP 36, RFP 38, RFP 44, the definition of "Related Ads Merchant"), Latham represented that upon receiving a takedown notice, Google does not affirmatively link related merchants or keep any linked information in the ordinary course of business. Latham represented that Google has "lots of algorithms and checks" that it performs in attempt to identify "clusters of bad actors." Latham is going to provide Plaintiffs with an explanation of what those procedures are.

As we explained during our call, Plaintiffs are open to discussing feasible ways for Google to provide this discovery. For example, if Google does not have any mechanism to search for Related Ads Merchants, Google can provide Plaintiffs with agreed-upon data fields for Shopping Ads Merchants (e.g., email addresses, landing pages, phone numbers, payment information, etc.) and Plaintiffs can determine whether the Infringing Merchants are connected to other Shopping Ads Merchants. Alternatively, if Google does have mechanisms in place to search for Related Ads Merchants, Google can perform this search and offer a 30(b)(6) witness to testify as to how it was accomplished.

This information is highly important to Plaintiffs' claims. In addition, to the extent Google declines to provide discovery into this issue, Google is foreclosed from offering such systems or processes as part of its defenses in this matter. In other words, if Google does not provide discovery into the processes it uses to identify and terminate Related Ads Merchants (both the systems or procedures themselves and the implementation of those systems or procedures), Google may not cite any of those systems as part of its defenses in this case. Nor may Google simply disclose "clusters" or other relationships that it uncovered without turning over data from which Plaintiffs can determine whether Google failed to identify other Related Ads Merchants.

## Issue Two: Limiting Responses to eBooks

Latham clarified that Google's responses to RFP 11 (technology for processing infringement notices), RFP 14 (documents concerning the effectiveness of infringement policies and procedures), and RFP 15 (studies, etc. on efforts to improve processing) will not be confined to eBooks. Latham also clarified that its responses to these Requests will not be limited to data, but will include prose analyses and written documentation.

For RFP 8 (technology to address infringement in Shopping Ads), RFP 9 (studies, etc. concerning infringement on Shopping Ads), and RFP 10 (studies, etc. concerning infringement by pirate websites): With respect to copyright infringement (as opposed to trademark infringement), Latham will look into removing the limitation for eBooks. With respect to trademark infringement, Google is maintaining its objection to producing documents not related to eBooks. Plaintiffs disagree with Google's position.

For each of these six Requests, Google's responses indicate it will conduct a "reasonable search". Please describe the search Google proposes to conduct.

**Issue Three: Revenues from Infringing Merchants and Related Ads Merchants**

Latham acknowledged that Google will need to produce data on revenue it earned from Infringing Merchants. Latham proposed producing data on revenue earned from Shopping Ads, and from "Ads accounts." Latham will get back to Plaintiffs on what service or platforms are included in "Ads accounts." In addition, it would be helpful for Google to explain what other revenue Infringing/Related Ads Merchants may have generated for Google, and for which of those Google proposes not producing data.

At this time, Plaintiffs' position remains that Google must disclose all revenue it earned from the Infringing Merchants and Related Ads Merchants, regardless of the platform or service that generated that revenue. However, if Google can provide the explanations indicated above, perhaps there is a narrower universe that will suffice.

As to Plaintiffs' requests concerning Google's auction pricing, Latham said Google is willing to produce some bid information. Latham is going to get back to Plaintiffs on what sort of data Google has with respect to the auctions it conducts for Shopping Ads. As we explained during the call, one issue to which this is relevant is the situation where a Publisher pays a higher price for an ad for its product because the second-highest bid came from a pirate seller. Our understanding is that Google prices Shopping Ads based in part on the bid of the second-highest bidder. So in instances where the Publisher was the winning bidder for an ad, the price the Publisher paid might have increased if the second-highest bid was from a pirate seller. Google's suggestion that it would limit its production of auction data to "bid information for Plaintiffs' ads reflecting the works in suit for which at least one merchant noticed by Plaintiffs was one of the top bidders" is thus underinclusive. The two sides can discuss this issue further during our next call.

**Issue Four: Google Personnel/Org Charts/Departments**

We are confused by your claim that Google "does not keep this information in the ordinary course of business . . . ." The Requests ask Google to identify departments and personnel responsible for various functions. We are unsure why collecting that information would be "unduly burdensome . . . ." Moreover, if this information is as difficult to compile as you suggest, we are concerned about how you will be able to compile a list of relevant custodians, which is the workaround you have suggested.

As to that suggestion, Plaintiffs are open to discussing this as an approach to certain Requests. It would be helpful if Google would describe in more detail what information Google proposes to provide to enable Plaintiffs to gain comfort with the custodians selected. As we explained during the last call, for a custodian/search term approach to be workable, the two sides would have to work out a mechanism for Plaintiffs to become familiar with the potentially relevant departments/personnel. We would suggest that Google agree to provide a list of the departments responsible for certain areas, such as those identified in RFP 2 (departments and personnel responsible for DMCA-related areas) and RFP 41 (employees involved in

41

accepting/rejecting Shopping Ads), and a list of the employees who have worked in those departments since June 2020. The two sides can discuss during our next call.

With respect to RFP 42 (employees involved in accepting/rejecting Shopping Ads from the Infringing Merchants), we are unsure how Plaintiffs would be able to identify the specific employees involved in accepting/rejecting Shopping Ads from the Infringing Merchants. We suggest discussing this on our next call.

**Issue Five: Time Period**

The two sides did not discuss this issue on our last call; we can discuss it on our next one.

**Issue Six: Notices Received from Other Parties Concerning Infringing Merchants**

For RFP 27 (info on infringement notices Google received concerning the Infringing/Related Ads Merchants) and RFP 28 (information on notices Google received about the Infringing Domains), it appears that Google proposes limiting its response to notices received from the Plaintiffs. However, notices from other parties concerning the Infringing/Related Ads Merchants or the Infringing Domains goes directly to Google's knowledge, and to its DMCA defense.

For RFP 37 (information on ads for Infringing Merchants'/Related Ads Merchants' products), Plaintiffs are unclear as to what Google proposes to produce.

**Issue Seven: Information that the Infringing Merchants Provided to Google**

RFP 35 (information provided to Google by Infringing/Related Ads Merchants), Google has refused to produce documents responsive to this request. We would like to discuss this on the next call.
For RFP 36 (identifying information for Infringing Merchants), Plaintiffs are unclear as to what Google proposes to produce.

**Issue Eight: Communications with the Association of American Publishers**

For RFP 52 (communications with Association of American Publishers), Google indicated it would not search for documents but was willing to meet and confer. Plaintiffs can provide some details on the reason for this request. Our understanding is that from approximately February 2022 through June 2022, several personnel from Google engaged in written correspondence and verbal discussions with personnel from the Association of American Publishers regarding the issue of infringing Shopping Ads and/or Google's practice of banning Shopping Ads from legitimate publishers but allowing such ads from pirate sellers. We understand the following Google employees were involved: Ran Baror, Chelsea Fine, Vishal Jain, and Jason Szczech.

**Issue Nine: Google's DMCA Policy for Shopping Ads**

Plaintiffs properly have requested documents concerning Google's DMCA policy for Shopping Ads and the implementation of that policy. RFP 6. Google has stated it will produce documents "reflecting Google's policies, practices, and procedures concerning actions taken by Google in response to copyright infringement notices concerning ads and listings on the Google Shopping platform generally." Please describe the "reasonable search" Google proposes conducting.

In addition, please confirm that Google has located its DMCA policy(ies) for Shopping Ads for at least the period June 2021 through the Present, and is prepared to produce these promptly once the protective order and ESI protocol are in place. Once the parties' disagreement on Issue Five above is resolved, Google can supplement these materials as necessary.

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

--

**From:** Holly.Victorson@lw.com <Holly.Victorson@lw.com>
**Date:** Monday, October 21, 2024 at 16:18
**To:** Michele Murphy <michele@oandzlaw.com>, Jeff Kane <JKane@oandzlaw.com>,
Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Thomas.Buettner@lw.com
<Thomas.Buettner@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>, Alli.Stillman@lw.com
<Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Joe.Wetzel@lw.com
<Joe.Wetzel@lw.com>, Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>
**Subject:** RE: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production -
Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

We write to memorialize our discussions from the October 17 conferral call.

**"Related Ads Merchants" (definition and RFPs 25-27, 29, 31, 36, 38):** We explained that, as drafted, Plaintiffs' definition of "Related Ads Merchants" makes these RFPs impossibly overbroad, and that the entire line of discovery concerning "related" merchants is disproportionate burdensome to the needs of the case.  We explained that Plaintiffs' apparent request that Google now conduct multiple custom investigations to link "related" merchants for purposes of this litigation is unreasonably burdensome and not required by the DMCA.  We stated Google does not agree with Plaintiffs' apparent interpretation of "repeat infringers" in 17 U.S.C. § 512(i)(1)(A) as requiring proactive investigation of related merchants, and we invited Plaintiffs to provide law to support their interpretation.  Notwithstanding those disagreements, we also relayed that we were willing to search for and produce documents regarding Google's efforts to combat "clusters" of bad actors, to the extent any such documents are applicable to the merchants reflected in Plaintiffs' notices for the asserted works, and to the extent such documents can be found after a reasonable search.  However, we emphasized that any "cluster" enforcement that Google undertakes is an effort that goes above and beyond Google's DMCA policies and beyond the requirements of the DMCA.  We agreed to follow up with Plaintiffs regarding our investigation concerning the existence of any cluster enforcement practices that may be relevant to the merchants and works at issue in this case.

**Limitation of responses to ebooks (RFPs 8-11, 14-15):** For RFPs 8-10, we explained that Plaintiffs' requests, as drafted, seek information concerning all copyright and trademark infringement on the Shopping platform, which is disproportionately broad for this case, given the wide array of products on the Shopping platform.  We invited Plaintiffs to propose narrowed versions of these topics for consideration if, in fact, Plaintiffs seek some narrowed subset of documents responsive to these requests.  For RFPs 11, 14, and 15, in addition to our agreement to search for and produce documents as detailed in Google's responses, we agreed to search for and produce non-privileged, high-level documents describing Google's general DMCA processes and systems for the Shopping platform, including documents showing aggregated data and top-level statistics for DMCA notices and processing of the same, to the extent such documents exist and can be found after a reasonable search.

**Revenues (RFPs 33-34, 39):** With respect to RFPs 33 and 34, we explained that these requests were unreasonably broad and burdensome as drafted, as they would seek all revenues that Google may have received from a user associated with a merchant account in any context (e.g., revenues beyond any Ads, including subscription services, merch, devices, etc.). We agreed to investigate the scope of revenue information that would be captured in connection with an Ads account associated with a Merchant Center account. With respect to RFP 39, we agreed to investigate to what extent Google maintains historical bid information and whether it would be possible to provide at least some bid information for Plaintiffs' ads reflecting the works in suit for which at least one merchant noticed by Plaintiffs was one of the top bidders. We also highlighted the concern that this request seeks sensitive business information that Plaintiffs may not want to share with each other.

**Personnel Information / Org Charts (RFPs 2, 41-42):** We explained that Google does not keep this information in the ordinary course of business, and responding to these requests would be unduly burdensome, requiring custom investigation and development of documents reflecting a wide set of teams over numerous years. We suggested that the parties develop a mutual custodial exchange and conferral process by which the parties identify in good faith the custodians most likely to have information relevant to this action. For example, the parties might exchange an agreed-upon number of proposed custodians, with each proposed custodian's name, title, dates of employment/dates the relevant position was held, and a brief description of their relevant duties. The parties could also agree on a process, following such exchange, to confer regarding the proposed custodians and any suggested changes or topical gaps identified by the other party.

Finally, while we tentatively agreed to reconvene on Thursday (Oct. 24) this week to continue discussion of Plaintiffs' identified discovery issues, we are not available on that date. We are, however, available at the same time block (2pm to 3pm ET) on **Friday, October 25**, if that works for you.

Regards,
Holly

**Holly Victorson**
Pronouns: she/her/hers

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.2336

---

**From:** Michele Murphy <michele@oandzlaw.com>
**Sent:** Saturday, October 12, 2024 2:35 PM
**To:** Victorson, Holly (DC) <Holly.Victorson@lw.com>; Jeff Kane <JKane@oandzlaw.com>; Bladow, Laura (DC) <Laura.Bladow@lw.com>; Buettner, Thomas (CH) <Thomas.Buettner@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Wetzel, Joe (Bay Area) <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>
**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Thank you, Holly. This works for us. We will send an invite on Monday morning. Best, Michele

Michele H. Murphy
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, D.C. 20016
202.450.5643
michele@oandzlaw.com | www.oandzlaw.com



This e-mail and any attachments may contain information that is private, confidential, or protected by attorney-client or other privilege. If you are not the intended recipient, please delete it from your system without copying, reviewing or distributing any portion and notify sender by reply e-mail.

**From:** "Holly.Victorson@lw.com" <Holly.Victorson@lw.com>
**Date:** Friday, October 11, 2024 at 10:45 PM
**To:** Jeff Kane <JKane@oandzlaw.com>, "Laura.Bladow@lw.com" <Laura.Bladow@lw.com>, "Thomas.Buettner@lw.com" <Thomas.Buettner@lw.com>, "Sy.Damle@lw.com" <Sy.Damle@lw.com>, "Alli.Stillman@lw.com" <Alli.Stillman@lw.com>, "Sarah.Tomkowiak@lw.com" <Sarah.Tomkowiak@lw.com>, "Joe.Wetzel@lw.com" <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>
**Subject:** RE: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

Thank you for providing the list of issues Plaintiffs would like to discuss.  We're available to confer on Thursday, October 17 from 2:00-3:00pm ET.  If that time still works for you, please circulate a dial-in.

Regards,
Holly

**Holly Victorson**
Pronouns: she/her/hers

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.2336

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Friday, October 11, 2024 3:12 PM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Buettner, Thomas (CH) <Thomas.Buettner@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Wetzel, Joe (Bay Area) <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

We've made one revision to the times we sent earlier. We're available:
- Tuesday October 15 – 12:30–5:00 ET
- Wednesday October 16 – 10:15–4:15 ET

- Thursday Oct. 17 – 10:15–11:45, 1:15–5:00 ET

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Date:** Friday, October 11, 2024 at 13:14
**To:** Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Thomas.Buettner@lw.com <Thomas.Buettner@lw.com>, sy.damle@lw.com <sy.damle@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Holly.Victorson@lw.com <Holly.Victorson@lw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

Following up on the below chain. Please let us know when you are available to speak. We are available at the following dates/times.

Tuesday October 15 – 11:30–5:00 ET
Wednesday October 16 – 10:15–4:15 ET
Thursday Oct. 17 – 10:15–11:45, 1:15–5:00 ET

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Date:** Wednesday, October 9, 2024 at 11:32
**To:** Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Thomas.Buettner@lw.com <Thomas.Buettner@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Holly.Victorson@lw.com <Holly.Victorson@lw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>

**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

Per your request, attached is a list of five issues we would like to cover during our call. There are, of course, other items that Plaintiffs wish to discuss in the future. But we're hoping it will be productive to start with the more limited set of items in the attached.


Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com


--


**From:** Holly.Victorson@lw.com <Holly.Victorson@lw.com>
**Date:** Tuesday, October 8, 2024 at 13:54
**To:** Jeff Kane <JKane@oandzlaw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>,
Thomas.Buettner@lw.com <Thomas.Buettner@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>,
Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com
<Sarah.Tomkowiak@lw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy
<michele@oandzlaw.com>
**Subject:** RE: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production -
Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

You don't often get email from holly.victorson@lw.com. Learn why this is important
Hi Jeff,

Given the broad scope of requests in Plaintiffs' first set of RFPs, we need an identification of issues Plaintiffs seek to discuss during your requested conferral in order to be prepared and have a productive discussion.  Once you provide that information, we will be able to scope the call and provide times when we are available to discuss.


Regards,
Holly


**Holly Victorson**
Pronouns: she/her/hers

**LATHAM & WATKINS** LLP
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.2336

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Friday, October 4, 2024 11:20 AM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Buettner, Thomas (CH) <Thomas.Buettner@lw.com>; Damle, Sy (DC-

NY) <Sy.Damle@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Wetzel, Joe (Bay Area) <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Counsel,

We write to set up a meet-and-confer regarding Google's responses and objections to Plaintiffs' First Requests for Production. We are available at the below dates/times. Please let us know what works for you.

- Wednesday 10/9 – 10:15–2:00 ET
- Thursday 10/10 – 11:45–5:00 ET
- Friday 10/11 – 9:30–2:00, 3:30–5:00 ET
- Tuesday 10/15 – 11:30–4:15 ET

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com


**From:** Thomas.Buettner@lw.com <Thomas.Buettner@lw.com>
**Date:** Thursday, October 3, 2024 at 21:43
**To:** Michele Murphy <michele@oandzlaw.com>, Jeff Kane <JKane@oandzlaw.com>, Uriel Lee <ULee@oandzlaw.com>, Matt Oppenheim <Matt@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>
**Cc:** Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Holly.Victorson@lw.com <Holly.Victorson@lw.com>
**Subject:** Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274

Some people who received this message don't often get email from thomas.buettner@lw.com. Learn why this is important

Counsel,

Please find attached Google LLC'S Responses and Objections to Plaintiffs' First Set of Requests for Production of Documents to Defendant Google LLC.

Regards,
Tom

**Thomas J. Buettner**
Litigation Analyst

**LATHAM & WATKINS** LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Direct Dial: +1.312.876.6528
Email: thomas.buettner@lw.com
https://www.lw.com

_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.