## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; ELSEVIER INC.; ELSEVIER B.V.; and MCGRAW HILL LLC,

*Plaintiffs*,

v.

GOOGLE LLC,

*Defendant*.

Case No. 1:24-cv-04274-JLR-BCM

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' <u>MOTION TO STRIKE AFFIRMATIVE DEFENSES</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ...................................................................................................................1

LEGAL STANDARD ............................................................................................................2

ARGUMENT .........................................................................................................................3

      I.     Each of Google's Challenged Defenses Is Both Factually Plausible and
            Legally Sufficient ...................................................................................................3

            A.     Statute of Limitations .................................................................................4

            B.     DMCA Safe Harbor ...................................................................................6

            C.     Equitable Defenses ....................................................................................9

            D.     Copyright Act Preemption .......................................................................13

      II.    Plaintiffs Cannot Demonstrate Prejudice .............................................................14

CONCLUSION .....................................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bell Atlantic Corp v. Twombly*,
550 U.S. 554 (2007)......................................................................................................2

*Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*,
655 F. Supp. 2d 177 (E.D.N.Y. 2009) .........................................................................2

*Cardenas v. Abbott Labs.*,
2012 WL 13393036 (N.D. Ill. July 12, 2012)..............................................................5

*Cengage Learning, Inc. v. Google LLC*,
2025 WL 1581258 (S.D.N.Y. June 4, 2025) ................................................................1

*Coach, Inc. v. Kmart Corps.*,
756 F. Supp. 2d 421 (S.D.N.Y. 2010).....................................................................3, 11

*Conopco, Inc. v. Campbell Soup Co.*,
95 F.3d 187 (2d Cir. 1996).........................................................................................12

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003)......................................................................................................13

*Dream Games of Ariz., Inc. v. PC Onsite*,
561 F.3d 983 (9th Cir. 2009) .....................................................................................10

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
844 F.3d 79 (2d Cir. 2016)...........................................................................................6

*Evox Prods., LLC v. Verizon Media Inc.*,
2020 WL 5894564 (C.D. Cal. Aug. 19, 2020)......................................................13, 14

*GEOMC Co. v. Calmare Therapeutics Inc.*,
918 F.3d 92 (2d Cir. 2019)......................................................................................3, 15

*Hill v. W. Bruns & Co.*,
498 F.2d 565 (2d Cir. 1974)........................................................................................13

*Hylton v. Hasten Beds, Inc.*,
2024 WL 1526153 (S.D.N.Y. Apr. 9, 2024).................................................................3

*In re Becker*,
407 F.3d 89 (2d Cir. 2005)..........................................................................................13

*Jackpocket, Inc. v. Lottomatrix NY LLC*,
 645 F. Supp. 3d 185 (S.D.N.Y. 2022)......................................................................10

*Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemp. Dance*,
 380 F.3d 624 (2d Cir. 2004)..............................................................................10

*N. Star IP Holdings, LLC v. Icon Trade Servs., LLC*,
 710 F. Supp. 3d 183 (S.D.N.Y. 2024)....................................................................11

*New London Assocs., LLC v. Kinetic Soc. LLC*,
 2019 WL 2918163 (S.D.N.Y. July 8, 2019) .......................................................3, 14

*Otto v. Hearst Commc'ns, Inc.*,
 345 F. Supp. 3d 412 (S.D.N.Y. 2018)...................................................................12

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
 572 U.S. 663 (2014)......................................................................................4, 12

*Phoenix Ent. Partners v. Rumsey*,
 829 F.3d 817 (7th Cir. 2016) ..............................................................................14

*Pickersgill v. Neely*,
 2021 WL 5163197 (N.D. Tex. Nov. 5, 2021) ...........................................................9

*Pickersgill v. Neely*,
 No. 3:21-cv-773 (N.D. Tex. Nov. 12, 2021)..............................................................9

*Price v. Fox Ent. Grp., Inc.*,
 2007 WL 241387 (S.D.N.Y. Jan. 26, 2007) ...........................................................11

*Psihoyos v. John Wiley & Sons, Inc.*,
 748 F.3d 120 (2d Cir. 2014)..................................................................................4

*QAD, Inc. v. ALN Assocs., Inc.*,
 770 F. Supp. 1261 (N.D. Ill. 1991) ......................................................................11

*Schlueter v. Latek*,
 683 F.3d 350 (7th Cir. 2012) ..............................................................................10

*SEC v. Leibowitz*,
 2025 WL 2056026 (S.D.N.Y. July 23, 2025) .......................................................3, 15

*SEC v. PacketPort.com*,
 2006 WL 2798804 (D. Conn. Sept. 27, 2006) ........................................................12

*Serby v. First Alert, Inc.*,
 934 F. Supp. 2d 506 (E.D.N.Y. 2013) .....................................................................3

*Silva v. Hornell Brewing Co.*,
    2020 WL 8079823 (E.D.N.Y. Dec. 1, 2020) ................................................................5

*Slep-Tone Ent. Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*,
    845 F.3d 1246 (9th Cir. 2017) .....................................................................................13

*T&N plc v. Fred S. James & Co.*,
    1991 WL 190581 (S.D.N.Y. Sept. 16, 1991) ...............................................................5

*Tardif v. City of New York*,
    302 F.R.D. 31 (S.D.N.Y. 2014) ................................................................................2, 5

*Viacom Int'l, Inc. v. YouTube, Inc.*,
    676 F.3d 19 (2d Cir. 2012) ...........................................................................................7

*Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.*,
    707 F.2d 680 (2d Cir. 1983)........................................................................................12

*Walsh v. City of New York*,
    585 F. Supp. 2d 555 (S.D.N.Y. 2008)..........................................................................2

*Warner Chappell Music v. Nealy*,
    144 S. Ct. 1135 (2024)..................................................................................................4

## STATUTES

17 U.S.C.
    § 101............................................................................................................................10
    § 507(b).........................................................................................................................4
    § 512(a).........................................................................................................................7
    § 512(c).........................................................................................................................7
    § 512(d).....................................................................................................................7, 8
    § 512(c)(2)–(3).............................................................................................................7
    § 512(d)(1)–(3).............................................................................................................7
    § 512(i)(1)(A)...........................................................................................................7, 8

## RULES

Fed. R. Civ. P.
    8(b)(1)(A).....................................................................................................................2
    8(c)(1) ......................................................................................................................4, 9
    8(d)(1)..........................................................................................................................2
    12(f)..............................................................................................................................2

## TREATISES

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
    § 1380 (3d ed. May 2025 update) ................................................................................2

4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:44 (5th ed. May 2025 update)..........................................................................10

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.09[B] (rev. ed. Apr. 2025)................................................................................................10

## OTHER AUTHORITIES

Fredrika J. Teute, *To Publish and Perish: Who Are the Dinosaurs in Scholarly Publishing*, 32 J. Scholarly Publ'g 102 (2001).......................................................10

## PRELIMINARY STATEMENT

Plaintiffs' motion seeks to strike four categories of defenses. Dkt. 135 ("Mot."). Because motions to strike affirmative defenses are disfavored, Plaintiffs shoulder a heavy burden to justify striking any of Google's defenses, let alone the ones identified in their motion. They cannot meet that burden here. Google's statement of each of the defenses that Plaintiffs challenge meets the "relaxed" standard to adequately plead an affirmative defense in this circuit. And each statement is more than sufficient, particularly in the overall context of this litigation, to put Plaintiffs on notice of the basis for each defense. Plaintiffs' argument is especially frivolous in the case of Plaintiffs' claim that they are unaware of how Google intends to assert a defense under the Digital Millennium Copyright Act ("DMCA"). That defense has been the intense focus of *Plaintiffs'* discovery for the past ten months, with Plaintiffs often justifying burdensome discovery requests with the purported scope of Google's DMCA defense. For this and other reasons, Plaintiffs' claims of prejudice ring hollow. The Court should deny Plaintiffs' meritless motion.

## BACKGROUND

Plaintiffs' First Amended Complaint asserted four claims against Google: (1) contributory copyright infringement, (2) vicarious copyright infringement, (3) trademark infringement, and (4) state-law deceptive business practices. *See generally* Dkt. 38 ("FAC"). Google moved to dismiss the latter three claims. Dkts. 43–44. The Court granted that motion in part, dismissing Plaintiffs' vicarious copyright infringement and state-law deceptive business practices claims, leaving only contributory copyright infringement and trademark infringement claims. *See Cengage Learning, Inc. v. Google LLC*, 2025 WL 1581258 (S.D.N.Y. June 4, 2025) (Dkt. 111). On July 2, 2025, Google filed its answer to the FAC. Dkt. 116 ("Answer"). The Answer asserted a number of defenses, including, as relevant here: (1) the statute of limitations; (2) the safe harbor of the DMCA; (3) several equitable defenses, including equitable estoppel, waiver, *in pari delicto*,

unclean hands, ratification, laches, and copyright misuse; and (4) copyright preemption of Plaintiffs' trademark claim. *See id.* at 22–24. On July 23, Plaintiffs moved to strike these defenses. In response to Plaintiffs' motion, Google now withdraws its copyright misuse and ratification defenses. Although Google maintains that there is a good faith basis for both of these defenses, and that these defenses are plausibly alleged consistent with Rule 8 and appropriate on the facts of this case, in the interest of streamlining this litigation and narrowing the issues for the Court, Google will withdraw these two defenses and does not plan to pursue them. Google otherwise opposes Plaintiffs' motion to strike all other defenses.

## LEGAL STANDARD

A defendant need only "state in short and plain terms its defenses." Fed. R. Civ. P. 8(b)(1)(A), 8(d)(1). "An answer must only be sufficiently clear to afford plaintiff 'fair notice' of what defenses are claimed." *Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 187 (E.D.N.Y. 2009) (citation and alteration omitted).

"Motions to strike affirmative defenses are 'generally disfavored.'" *Walsh v. City of New York*, 585 F. Supp. 2d 555, 557 (S.D.N.Y. 2008) (citation omitted); *accord* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (3d ed. May 2025 update) ("Both because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory or harassing tactic, numerous judicial decisions make it clear that motions under Rule 12(f) are viewed with disfavor by the federal courts and are infrequently granted."). As a result, "[t]he standard to prevail on a motion to strike an affirmative defense is demanding." *Tardif v. City of New York*, 302 F.R.D. 31, 32 (S.D.N.Y. 2014) (citation omitted).

The "plaintiff must show that (1) 'there is no question of fact which might allow the defense to succeed' when applying the 'plausibility' standard set by *Bell Atlantic Corp v. Twombly*; (2) 'there is no question of law which might allow the defense to succeed'; and (3) the plaintiff 'would

be prejudiced by the inclusion of the defense.'" *SEC v. Leibowitz*, 2025 WL 2056026, at *3 (S.D.N.Y. July 23, 2025) (citing 550 U.S. 544 (2007)) (quoting *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 96–99 (2d Cir. 2019)).  In applying this standard, the court "draws all reasonable inferences in the [non-moving party's] favor." *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010).

## ARGUMENT

### I.    EACH OF GOOGLE'S CHALLENGED DEFENSES IS BOTH FACTUALLY PLAUSIBLE AND LEGALLY SUFFICIENT

Plaintiffs seek to strike four categories of affirmative defenses from Google's Answer.  As noted, to obtain that relief, Plaintiffs must be able to show "there is no question of *fact* which might allow the defense to succeed," *and* "there is no question of *law* which might allow the defense to succeed." *Leibowitz*, 2025 WL 2056026, at *3 (emphasis added) (citation omitted).

With respect to whether there are facts that might support Google's defenses, courts have noted when considering a motion to strike that a "'relaxed application of the plausibility standard' is warranted for affirmative defenses." *Hylton v. Hasten Beds, Inc.*, 2024 WL 1526153, at *2 (S.D.N.Y. Apr. 9, 2024) (quoting *New London Assocs., LLC v. Kinetic Soc. LLC*, 2019 WL 2918163, at *1 (S.D.N.Y. July 8, 2019)).  "[A]n affirmative defense does not need to be 'pleaded with the same degree of factual detail as a complaint' since 'unlike a complaint, an answer is not a pleading to which a response is required.'" *Id.* (quoting *New London*, 2019 WL 2918163, at *1).

And with respect to whether Google's defenses are "legally insufficient, the bar for so finding is a demanding one:  a 'court may strike only those defenses so legally insufficient that it is beyond cavil that defendants could not prevail upon them.'" *Leibowitz*, 2025 WL 2056026, at *8 (quoting *Serby v. First Alert, Inc.*, 934 F. Supp. 2d 506, 516 (E.D.N.Y. 2013)).

Plaintiffs fail to make either showing for any of the affirmative defenses at issue here.

A.    Statute of Limitations

Plaintiffs first seek to strike Google's second affirmative defense, which asserts that "Plaintiffs' claims are barred, in whole or in part, by the statute of limitations (17 U.S.C. § 507(b))." Answer at 22. Under the Copyright Act, "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). The Second Circuit applies the discovery rule, under which "an infringement claim does not 'accrue' until the copyright holder discovers, or with due diligence should have discovered, the infringement." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014).[1] Here, the statute of limitations and the discovery rule bar any infringement claim premised on an act that occurred more than three years before the filing of the complaint—i.e., June 5, 2021. *See* Dkt. 1 (filed June 5, 2024). Moreover, because the "statute of limitations" is "an[] avoidance or affirmative defense," it must be pleaded in a defendant's answer or it is waived. Fed. R. Civ. P. 8(c)(1).

Plaintiffs argue that because their complaint was filed within three years from when Plaintiffs *allege* they began sending infringement notices, the statute of limitations defense should be stricken. Mot. 4 (citing Dkt. 38 ¶ 99). This amounts to an improper effort to effectively obtain summary judgment based on the pleadings. Google is entitled to test Plaintiffs' allegations of when they began sending infringement notices and what works those notices related to. Similarly, Google is entitled to test when exactly Plaintiffs discovered the infringement for each of the 7,359

---

[1] The Supreme Court has repeatedly reserved the question whether the Copyright Act permits application of the discovery rule. *See Warner Chappell Music v. Nealy*, 144 S. Ct. 1135, 1139 (2024); *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 n.4 (2014). It does not. *See Warner*, 144 S. Ct. at 1140-41 (Gorsuch, J., joined by Thomas and Alito, JJ., dissenting). Google preserves this argument for further review.

works listed in Plaintiffs' amended Exhibit A to the FAC during discovery.  *See* Dkt. 120-1 ("FAC Ex. A").

Moreover, Plaintiffs have not limited their discovery requests in this case to the statute of limitations period.  To the contrary, they have repeatedly sought evidence from years before June 2021.  Plaintiffs have served requests for production seeking documents going back to August 2019.  Dkt. 47-1 at 8. They have identified communications between Plaintiffs' counsel and Google going back to 2019 as justification for seeking wide ranging discovery from Google regarding its alleged knowledge of the problem of pirated ebooks.  They have not agreed to limit the scope of damages they seek to the three-year lookback period prior to filing suit.  And they have asserted that they reserve the right to request to add additional works later in the case.  Given those facts, "[i]t is certainly plausible in this case" that Plaintiffs could attempt to assert allegations of infringement premised on acts that are time barred, for example, at trial.  *T&N plc v. Fred S. James & Co.*, 1991 WL 190581, at *3 (S.D.N.Y. Sept. 16, 1991).  If Plaintiffs were to do so, then such facts would "allow [this defense] to be successful at trial."  *Id.*

Because Google has "give[n] Plaintiff[s] fair notice of the nature of the defense" and "there are questions of fact and law that might allow the defense to succeed," Plaintiffs' motion should be denied as to Google's statute of limitations defense.  *Tardif*, 302 F.R.D. at 35; *see also Silva v. Hornell Brewing Co.*, 2020 WL 8079823, at *5 (E.D.N.Y. Dec. 1, 2020) (denying motion to strike statute of limitations defense when "issues of fact relating to whether . . . claims are barred by statutes of limitations may become relevant to this litigation" (citation and internal quotation marks omitted)); *Cardenas v. Abbott Labs.*, 2012 WL 13393036, at *2 (N.D. Ill. July 12, 2012) (denying motion to strike when "the defendants suggest multiple plausible factual scenarios to support their statute of limitations defense").

B.    **DMCA Safe Harbor**

Plaintiffs next seek to strike Google's defense under the DMCA.  Mot. 4–5; *see* Answer 23.  "The DMCA shields a service provider from liability for the infringing acts of its users if the provider satisfies certain conditions."  *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 88 (2d Cir. 2016).  Plaintiffs argue that they "cannot tell from Google's generic statement how it intends to assert this defense," and criticize Google for "not even specify[ing] on which of the four distinct safe harbors . . . it seeks to rely."  Mot. 4.  Plaintiffs' arguments are meritless.

Plaintiffs' theory of liability is that Google is a contributory copyright infringer because it failed to stop certain Shopping Merchants from running advertisements for URLs pointing to copies of textbooks that infringed Plaintiffs' copyrights, after Plaintiffs submitted notices to Google identifying ads for the same websites allegedly pointing to infringing copies of Plaintiffs' textbooks.  *See, e.g.*, FAC ¶¶ 122–130.  The infringing textbooks themselves are made and sold by third-party Merchants.  *See id.* ¶¶ 39, 47, 122.  The Shopping ads link to third-party websites where the infringing textbooks can be purchased, but are not sold by Google.  *Id.* ¶ 53.  Any information about infringing textbooks in Shopping ads is provided by Merchants, not Google.  *Id.* ¶ 41.  Google has designated an agent to receive notices of copyright infringement.  *Id.* ¶ 99–100.  Google takes down advertisements for infringing content in response to those notices.  *See id.* ¶¶ 70–71, 106–107.  And Google has designed and implemented a repeat infringement policy pursuant to which it terminates infringers who repeatedly violate Google's rules.  *See id.* ¶¶ 71–72.  Plaintiffs' own allegations make obvious why a defense under multiple of the DMCA's safe

harbors is plausible and appropriately asserted here.  In particular, these facts support a potential safe harbor defense under at least § 512(d) of the DMCA.[2]

Section 512(d) provides a defense to a service provider like Google against claims "for infringement of copyright by reason of the provider referring or linking users to an online location containing infringing material or infringing activity."  17 U.S.C. § 512(d).  Google qualifies for that safe harbor so long as it meets certain statutory conditions.  Google must have established a notice-and-takedown procedure for claimed infringement.  *Id.* § 512(c)(2)–(3).  It must have "adopt[ed] and reasonabl[y] implement[ed] . . . a 'repeat infringer' policy that 'provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network.'" *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 27 (2d Cir. 2012) (quoting 17 U.S.C. § 512(i)(1)(A)).  And it must either (1) not have had "actual" or "red flag" knowledge of infringement, or (2) "upon obtaining such knowledge or awareness" or "upon notification of claimed infringement," it must have "respond[ed] expeditiously to remove, or disable access to, the [infringing] material." *Id.*; *see* 17 U.S.C. § 512(d)(1)–(3).

Plaintiffs' theory is directly premised on (1) Google's Shopping ads "referring or linking" to websites selling allegedly infringing textbooks, (2) Google's operation of a notice-and-takedown procedure, (3) Google's knowledge of specific notices of infringement, (4) Google's termination (or failure to terminate) infringers, and (5) Google's application of its repeat infringer policy.  *See, e.g.*, FAC ¶¶ 99–101 (referencing "infringement notices" that "Google has received from or on behalf of the Publishers . . . directed to the agent Google has designated to receive

_____

[2] Depending on the precise claims Plaintiffs ultimately make in the course of this case, DMCA § 512(a) and § 512(c) may be relevant as well.

infringement notices").  Those allegations fit the elements of a § 512(d) defense to a tee.  *See also* Answer at 1–2.

Given all this, Plaintiffs cannot seriously contend that they do not have fair notice of the basis of Google's DMCA defense.  Indeed, Plaintiffs themselves have relied on myriad elements of Google's systems implemented to comply with the DMCA as the basis for their own claims and pushed for early production of Google's DMCA policy (which Google produced on February 7, 2025) many months before Google ultimately pleaded this defense.  The scope and applicability of Google's DMCA defense has already been the centerpiece of numerous disputes in this case, including disputes considered and resolved by the Court.  *See, e.g.*, Dkt. 46 (seeking to compel discovery regarding "whether Google did, in fact, terminate 'repeat infringers'" for the purposes of 17 U.S.C. § 512(i)(1)(A)); Dkt. 85 at 2 (complaining Google "produced only five documents concerning its DMCA policy (Defendant's primary defense in the case)"); Dkt. 106 at 2 (Plaintiffs arguing certain discovery "allows Plaintiffs to test whether Defendant terminated pirates in accordance with the DMCA."); Hr'g. Tr. (Dec. 4, 2024) at 24:12–17 (arguing for discovery on related accounts because "Google is the one saying that it should get the protection of the DMCA Safe Harbor" and the "DMCA requires Google to terminate the subscriber or account holder who is the repeat offender."); Hr'g. Tr. (Dec. 18, 2024) at 15:8–12 (arguing for discovery about related accounts because "when [Google] assert[s] this DMCA defense, they're putting their entire DMCA program at issue.").  And Plaintiffs have repeatedly sought discovery about Google's DMCA policy and procedures and troves of data about how Google implements that policy against Merchants in response to notices of infringement.  *See, e.g.*, Dkt. 47-1 (Pls.' RFPs 3–6, 11, 13–18, 21–23, 27–29, 50–51, 55).

This case, therefore, looks nothing like the case Plaintiffs cite. In *Pickersgill v. Neely*, the district court struck the defendants' DMCA defense, in a case about the defendants' alleged direct and secondary infringement of photographs by directly posting and linking to them on webpages and social media accounts, *before* a scheduling order had even been issued, because "[t]he defendants' facts do not clearly implicate a DMCA safe harbor such that [the plaintiff] has fair notice." 2021 WL 5163197, at *3 (N.D. Tex. Nov. 5, 2021); Dkt. 28, *Pickersgill v. Neely*, No. 3:21-cv-773 (N.D. Tex. Nov. 12, 2021) (scheduling order). Far from being "a situation just like this," Mot. 4, it is simply not credible for Plaintiffs to contend that this case—in which Plaintiffs' complaint is replete with allegations about their own notices of infringement filed pursuant to Google's DMCA protocol and the discovery negotiations and disputes to date have focused extensively on collecting data from Google's DMCA system—is one in which the facts "do not clearly implicate a DMCA safe harbor" or that Plaintiffs lack "fair notice" of Google's DMCA defense, *Pickersgill*, 2021 WL 5163197, at *3. Plaintiffs' motion to strike this defense should be denied.

### C.    Equitable Defenses

Plaintiffs next seek to strike a number of Google's equitable defenses. Mot. 5. These include the equitable doctrines of "equitable estoppel, waiver, *in pari delicto*, unclean hands, [and] laches." Answer 23. Like the statute of limitations, most equitable defenses must be asserted in the defendant's answer or they are waived. *See* Fed. R. Civ. P. 8(c)(1) (including "estoppel," "laches," and "waiver"). Plaintiffs' motion to strike fares no better against any of these defenses, all of which are appropriately pleaded here. In substance, each of these defenses targets Plaintiffs' inequitable conduct, either in administering their intellectual property rights or in their interactions with Google.

**Unclean Hands and *In Pari Delicto.***  Plaintiffs' misconduct supports Google's assertion of the unclean hands defense (also known as *in pari delicto*[3]).  The unclean hands defense bars a claim when the plaintiff has committed a "transgression [that] is of serious proportions and relates directly to the subject matter of the infringement action."  4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13.09[B] (rev. ed. Apr. 2025); *see also Jackpocket, Inc. v. Lottomatrix NY LLC*, 645 F. Supp. 3d 185, 276 (S.D.N.Y. 2022) (similar for trademark).  Among other things, an unclean hands defense is available when the plaintiff has "procured or maintained" its copyright or trademark registration "by false or fraudulent misrepresentations."  *Jackpocket*, 645 F Supp. 3d at 276; *see also Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 990–91 (9th Cir. 2009).

Here, Plaintiffs have long asserted ownership of copyrights in textbooks that they do not own.  Plaintiffs obtain their rights to textbooks through licenses and agreements with the individual academics who wrote those textbooks.  *Cf.* FAC Ex. A.  But in many cases, those academics are not the "authors" of those textbooks within the meaning of the Copyright Act.  The Act provides that when a "work [is] prepared by an employee within the scope of his or her employment," that is a "work made for hire," and authorship vests in the *employer*, not the employee.  17 U.S.C. § 101; *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemp. Dance*, 380 F.3d 624, 635–36 (2d Cir. 2004).  Most tenure-track academics are required to publish textbooks and other works as part of their university employment, and do so using their university employer's resources (from space, to research assistance, and more).  *See, e.g.*, Fredrika J. Teute, *To Publish and Perish: Who Are the Dinosaurs in Scholarly Publishing*, 32 J. Scholarly Publ'g

---

[3] Unclean hands and *in pari delicto* are "equivalent defenses"—the former "is historically rooted in the rules of equity," while the latter is available "in actions at law."  4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31:44 (5th ed. May 2025 update).  Courts often "use the terms as synonyms.  *Id.*; *accord Schlueter v. Latek*, 683 F.3d 350, 355 (7th Cir. 2012) ("[T]he label doesn't matter.").

102 (2001) (observing the widespread need to publish to make tenure). For that reason, Google has sought the licensing agreements from the authors of Plaintiffs' works listed in Exhibit A, as well as the employment agreements of those authors with their universities. *See, e.g.*, Dkt. 165-25 at 8–9 (Google's RFPs 12–14). While Plaintiffs have maintained that they do not possess a majority of these requested documents, the documents produced by third-party authors of the asserted works suggest that Plaintiffs cannot establish that they—rather than the universities for whom the authors worked—in fact have the right to enforce the asserted copyrights. And to the extent they *do not*, their widespread attempts to enforce copyrights they do not own against Google and others goes well beyond the scope of any "copyright monopoly" held by Plaintiffs. *Coach*, 756 F. Supp. 2d at 428. That is a textbook fact pattern for unclean hands. *See, e.g.*, *QAD, Inc. v. ALN Assocs., Inc.*, 770 F. Supp. 1261, 1266 (N.D. Ill. 1991).

**Equitable Estoppel.** Next, Plaintiffs fail to show that Google's equitable estoppel defense is implausible. "Estoppel requires proof that (1) plaintiffs had knowledge of defendants' infringing conduct; (2) plaintiffs intended that defendants rely on plaintiffs' conduct, or plaintiffs acted in such a manner that defendants had a right to believe they were intended to rely on the conduct; (3) defendants were ignorant of the true facts; and (4) defendants did, in fact, rely to their detriment." *Price v. Fox Ent. Grp., Inc.*, 2007 WL 241387, at *3 (S.D.N.Y. Jan. 26, 2007) (citation and alterations omitted); *N. Star IP Holdings, LLC v. Icon Trade Servs., LLC*, 710 F. Supp. 3d 183, 208 (S.D.N.Y. 2024) (similar for trademark). Each of these elements is supported by the allegations here, or it is at least plausible that there is a set of facts that could establish this defense. It is undisputed that Plaintiffs have known about Google's actions related to advertisements by pirate sellers for years. *E.g.*, FAC ¶ 99. It is also undisputed that for years Plaintiffs went after the real culprits here—counterfeiters and pirate sellers—and not Google. *See, e.g.*, *id.* ¶¶ 114, 116.

Nor do they allege that they ever suggested, before this litigation, that *Google*'s conduct infringed Plaintiffs' copyrights or trademarks. To the contrary, they explicitly concede that Google engaged in conversations with Plaintiffs to try to work together to prevent third-party infringement of Plaintiffs' intellectual property. *See id.* ¶ 115. Under those circumstances, it is certainly reasonable for Google to believe that *its* conduct was not infringing, and therefore that Plaintiffs should be estopped from pursuing their copyright or trademark claims against Google.

**Waiver.** Similarly, Plaintiffs fail to demonstrate that Google's waiver defense should be struck. "To establish waiver, defendants must show that plaintiffs 'relinquished a right with both knowledge of the existence of the right and an intent to relinquish it.'" *Otto v. Hearst Commc'ns, Inc.*, 345 F. Supp. 3d 412, 434 (S.D.N.Y. 2018) (quoting *Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.*, 707 F.2d 680, 685 (2d Cir. 1983)). For many of the same reasons that equitable estoppel is a plausible defense here, Plaintiffs' late-in-time shift from suing pirate sellers directly and working with Google to find mutual solutions to combatting copyright infringement, to instead suing Google for its alleged aiding and abetting of that infringement could easily support a defense of waiver here too. *See, e.g.*, *SEC v. PacketPort.com*, 2006 WL 2798804, at *4 (D. Conn. Sept. 27, 2006) (denying motion to strike waiver defense).

**Laches.** Likewise a laches defense is properly asserted here. That defense bars a claim when the defendant "has been prejudiced by the plaintiff's unreasonable delay in bringing the action." *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996) (trademark); *see also Petrella*, 572 U.S. at 667–68 (noting laches can bar equitable relief and is relevant to scope of injunctive relief and other equitable remedies under Copyright Act). Plaintiffs' decision to, by their own admission, wait years to assert the claims that have asserted here surely is a plausible basis for asserting laches to bar that claim. Indeed, Plaintiffs have repeatedly sought to use the

fact that certain information is no longer available due to the passage of time and the normal operation of ordinary business processes and systems to argue that merchants and other data are "missing."  *See* Dkt. 138 at 3–5.  Because Plaintiffs unreasonably waited to bring these claims (which Plaintiffs had been developing for at least five years before filing, *see supra* Section I.A, and did not send a single trademark infringement notice during that time), Google is prejudiced both in its ability to defend the case and by being subject to discovery demands from Plaintiffs for information that does not exist.  *See In re Becker*, 407 F.3d 89, 97 (2d Cir. 2005) (noting that laches "are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared" (citation omitted)); *Hill v. W. Bruns & Co.*, 498 F.2d 565, 568 (2d Cir. 1974) (same).

### D.    Copyright Act Preemption

Finally, Plaintiffs move to strike Google's defense that Plaintiffs' trademark claim is preempted by the Copyright Act.  This argument fails too.  The Supreme Court has made clear that a Lanham Act claim cannot be used to assert rights that are properly protected by copyright.  *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33–38 (2003).  Thus, when a "trademark infringement claim is more accurately conceived of as attacking unauthorized copying," the trademark claim "is not a cognizable Lanham Act claim."  *Evox Prods., LLC v. Verizon Media Inc.*, 2020 WL 5894564, at *2 (C.D. Cal. Aug. 19, 2020).

Here, Plaintiffs' trademark claim, at bottom, targets conduct that is protected by *copyright*, not trademark:  the sales of allegedly infringing copies of the Plaintiffs' copyrighted textbooks.  Courts have routinely rejected attempts by plaintiffs to bootstrap a trademark claim from what is at bottom a copyright claim.  *See, e.g.*, *Slep-Tone Ent. Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1250 (9th Cir. 2017) (rejecting trademark claim when gravamen of claim was that "Defendants make allegedly unauthorized use of the *content* of Plaintiff's karaoke

tracks, which *Dastar* precludes as a trademark claim"); *Phoenix Ent. Partners v. Rumsey*, 829 F.3d 817, 831 (7th Cir. 2016) ("[The defendants] are not alleged to have held out a tangible good sold in the marketplace as a Slep–Tone product. Consequently, the defendants' alleged conduct is not actionable as trademark infringement."); *Evox*, 2020 WL 5894564, at *2 (rejecting trademark claim when it was "based on Defendants' alleged unauthorized display on its Tumblr website of copies of Plaintiff's photographs which included Plaintiff's trademarks on the images").  It is certainly at least plausible that this defense applies here too.

## II.    PLAINTIFFS CANNOT DEMONSTRATE PREJUDICE

Plaintiffs also assert that they would be prejudiced if the Court permits Google to assert any of these four defenses.  Their only bases for their claim of prejudice are: (1) that, as pleaded, these "defenses do not fairly put Plaintiffs on notice as to what Google is arguing or how it plans to attempt to establish such defenses," and (2) that including these defenses "will inherently and needlessly confuse the issues and complicate the case."  Mot. 6–7.  Neither assertion holds water.

First, as explained above, within the context of this case each of these statements is easily sufficient to put Plaintiffs on notice of the basis for each of Google's defenses.  It simply is not believable that Plaintiffs do not understand, for example, the basis of Google's DMCA defense, when their own pleading so extensively relies on the predicates for the DMCA safe harbor.  *See, e.g.*, *New London*, 2019 WL 2918163, at *2 ("Viewed within the context of this litigation, each of the affirmative defenses that Spectrum seeks to assert are plausibly pleaded. NLA cannot reasonably argue that it lacks a sufficient factual basis to understand the nature of Spectrum's proposed affirmative defenses.").

Second, Plaintiffs' assertion that including these defenses will "needlessly confuse the issues and complicate the case" imbeds as its premise that Google's defenses "lack a plausible basis."  But, as explained above, that premise is wrong.  And "the Second Circuit [has] held that

'a factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation.'"  *Leibowitz*, 2025 WL 2056026, at *8 (S.D.N.Y. July 23, 2025) (alterations modified) (quoting *GEOMC*, 918 F.3d at 98). Indeed, Plaintiffs do not even argue that these defenses will affect the scope of discovery at all. Because each of Google's defenses is factually sufficient, legally valid, and timely asserted, any asserted prejudice to Plaintiffs from (hypothetically) "complicating" the case is beside the point.

## CONCLUSION

Plaintiffs' motion to strike Google's affirmative defenses should be denied.  To the extent the Court grants Plaintiffs' motion, it should grant Google leave to amend its answer to cure any deficiencies in Google's pleading of these defenses.

15

Dated: August 6, 2025

Respectfully submitted,

**LATHAM & WATKINS LLP**

/s/ Sarang Vijay Damle
Sarang Vijay Damle
Sarah A. Tomkowiak (*pro hac vice*)
Holly K. Victorson (*pro hac vice*)
Laura E. Bladow (*pro hac vice*)
Brent T.F. Murphy (*pro hac vice*)
Sara E. Sampoli (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: sy.damle@lw.com
        sarah.tomkowiak@lw.com
        holly.victorson@lw.com
        laura.bladow@lw.com
        brent.murphy@lw.com
        sara.sampoli@lw.com

Allison L. Stillman
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: alli.stillman@lw.com

Joseph R. Wetzel
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: joe.wetzel@lw.com

*Attorneys for Defendant Google LLC*

## CERTIFICATION OF WORD COUNT

I certify that the foregoing memorandum of law complies with the formatting and word limit requirements set forth in Local Rule 7.1(c) and Rule 3.C of the Court's Individual Rules of Practice in Civil Cases because it contains 4,754 words, excluding the cover page, table of contents, table of authorities, signature block, and certification of word count. This memorandum of law also complies with the applicable formatting rules regarding 12-point font and double-spaced text.

In preparing this certification, I relied on the word count of the Microsoft Word computer program used to prepare this memorandum of law.

Dated:  August 6, 2025                    _/s/ Sarang Vijay Damle_____
                                          Sarang Vijay Damle