# EXHIBIT 1

| | |
|---|---|
| **From:** | Victorson, Holly (DC) |
| **Sent:** | Tuesday, August 12, 2025 11:40 PM |
| **To:** | 'Jeff Kane'; Bladow, Laura (DC); Damle, Sy (DC-NY); Murphy, Brent (DC); Sampoli, Sara (DC); Stillman, Alli (NY); Tomkowiak, Sarah (DC); Wetzel, Joe (Bay Area) |
| **Cc:** | Katheryn Jarvis Enters; Uriel Lee; Kevin Lindsey; Michele Murphy; Matt Oppenheim |
| **Subject:** | RE: Cengage v. Google - Google's Request for a Stay |

Counsel,

On the contrary, it is Plaintiffs who are conflating the concepts in this case and yet again attempting to re-litigate a dispute that the Court long ago resolved.

Plaintiffs previously brought a discovery dispute regarding the scope of discovery regarding whether "Google must provide discovery into whether it terminated an infringer, as opposed to one of an infringer's multiple accounts." Dkt. 46. In connection with the parties' exchanges regarding this dispute, Plaintiffs proposed certain "searches Google can run to determine **the Google accounts operated by the infringing merchants** identified in Plaintiffs' notices." J. Kane Email (Dec. 6, 2024). That proposal then became the basis for the proposal that Plaintiffs proposed to the Court. See Dkt. 62 at 1 ("Plaintiffs provided to Google the 1,264 domains represented in the infringing ads Plaintiffs have noticed. . . . Next, Plaintiffs propose that to identify other accounts those *same merchants* operate, Google perform two straightforward searches: (1) identify the accounts that the infringer herself has *already linked* to her Merchant Center Account; (2) identify any accounts that share the same email, phone number, or payment information as the infringer."); Dkt. 62-1 (Plaintiffs' proposal).

In response to that proposal, Google responded with its own proposed compromise, which became the basis for Google's filed proposal that was ultimately adopted by the Court. See H. Victorson Email (Dec. 11, 2024); Dkt. 62-2 (Google's proposal); Dkt. 72 (order). Notably, the Court at oral argument considered the very same argument that Plaintiffs are now making. See Hr'g. Tr. (Dec. 18, 2024) at 44:10–20 ("[T]hey're only producing them if they're connected to that particular domain. That's not enough, your Honor. The domain gets you to the particular Merchant Center account that ran that ad. What they need to produce is all of the other accounts that are linked to that particular Merchant Center account regardless of whether it's an Ads account, or a multiclient account, or another Merchant Center account, or whatever it is. They can't restrict it to just that one domain."). But the Court rejected Plaintiffs' proposal and adopted Google's. See id. at 70:17–74:10 (adopting Google's proposal with limited modifications).

Even after the Court adopted Google's proposal at oral argument, Plaintiffs again attempted, unsuccessfully, to impose their rejected, overbroad interpretation of the accounts that should be categorized as "Domain-Identified Merchant Accounts" subject to the full barrage of Plaintiffs' discovery requests. See Dkt. 68 (submitting competing versions of the order); *compare* Dkt. 68-1 (Plaintiffs' version of the order attempting to define "Domain-Identified Merchant Accounts as "all Merchant Center accounts . . . exactly matching the domains in the Domain Spreadsheet, **and any Ads Accounts or other Merchant Center accounts connected to those Merchant Center accounts**"); *with* Dkt. 68-2 (Google's version of the order, defining "Domain-Identified Merchant Accounts" as "all Merchant Center accounts exactly matching the domains in the Domain Spreadsheet."). As Google pointed out at the time, Plaintiffs' proposal would have "effectuat[ed] *Plaintiffs'* proposal, which the Court considered and rejected after multiple oral arguments." Dkt. 68 at 3. The Court rightly rejected Plaintiffs' proposed order and adopted Google's proposed order. Dkt. 72.

The "domains" identified by Plaintiffs, not the "pirates," are the basis for this discovery. Consistent with the Court's order at Dkt. 72, the parties, including Plaintiffs, have consistently referred throughout discovery to

"domains," and the accounts connected to those domains, and not the amorphous term "pirates." *See, e.g.*, J. Kane Email (Dec. 24, 2024) (attaching document titled "2024.12.22 Cengage v Google – Plaintiffs' Domain Spreadsheet.xlsx"); Dkt. 74 at 2 (Plaintiffs' letter arguing for a January 31 2025 production date for identifying information for "Domain-Identified Merchant Accounts" because "Defendant identified all the Domain-Identified Merchant Accounts and Email-Connected Merchant Accounts associated with the 1,044 domains Plaintiffs identified, and filed a declaration about those accounts, within just eight days," and "[a]s a result of the Court's December 18, 2024 ruling, only 196 domains were added."); J. Kane Email (June 30, 2025) ("Information on what ads Defendant has run concerning these infringing domains since September 16, 2024 is highly relevant."). Plaintiffs only recently adopted this "pirates" terminology in the context of the parties' discovery efforts. For example, your December 24, 2024 email said nothing about "pirates." Rather, you wrote "[p]lease see the attached list of domains reflecting notices regarding works-in-suit through September 16, 2024." J. Kane Email (Dec. 24, 2024). The Court's order at Dkt. 72 likewise does not even mention the word "pirate."

We disagree with your characterization of Google's productions in this case, and the record (including our August 8 email below) speaks for itself. For clarity, **nowhere** did we "admit that there are more than ▓▓▓▓▓ *additional* Merchant Center accounts that these pirates *also* operated." For one thing, we haven't made any representations about specific accounts tied to "pirates." For another, Google has not conducted any analysis of how many Merchant Center accounts are actually associated with the approximately ▓▓▓▓ domains identified by Plaintiffs (nor *could* it have done so, given that Plaintiffs did not provide a list of those domains until yesterday). Nor has Google agreed to conduct such an analysis, given the obvious irrelevance in light of Plaintiffs' failure to point to even a single one of these additional domains that allegedly advertised one of Plaintiffs' asserted works. Our point below was that basic math suggests that Plaintiffs' ill-defined proposal *could* easily implicate a huge number of accounts for domains for which Plaintiffs have failed to identify a single infringing ad. Your obvious attempt to take a point made for illustrative purposes out of context is not productive. To be very clear: any representation to the Court that Google has "admitted" there are more than "▓▓▓▓▓ additional Merchant Center accounts" operated by some amorphous number of "pirates" would be a lie.

With respect to your proposed compromise, Google maintains that supplemental productions of additional Merchant Center IDs (and the cascading discovery associated with new domains and "Domain-Identified" merchants) are unnecessary and not proportional to the needs of the case. And as we have stated in our discovery conferrals and exchanges on numerous occasions, it is not reasonable, proportional, or consistent with any applicable law, rule, or authority for Google to collect one-off supplemental discovery at Plaintiffs' whims. However, if Plaintiffs insist on unnecessary supplemental productions, to avoid bringing an unnecessary dispute to the Court, Google is willing to consider a **single** supplemental production, attendant with a reasonable extension of all discovery deadlines, to include:

1. supplemental discovery consistent with any agreed-upon, or Court-ordered, extension to the cut-off date for existing domains/Domain-Identified merchants;
2. additional Email-Connected merchant accounts that Plaintiffs reasonably contend should be subject to the discovery associated with Domain-Identified merchant accounts; and
3. discovery on supplemental domains for which Plaintiffs allege (a) at least one Plaintiff has sent Google sent at least one notice identifying the domain in the notice; and (b) at least one asserted work in this case was advertised by the domain following the notice above.

Because the supplement articulated above depends on Plaintiffs' own allegations of the domains Plaintiffs claim reflect notices regarding the asserted works in this case, Google cannot agree to a particular scope of this supplement until Plaintiffs provide more details about the various sets of domains Plaintiffs have thrown around. Google will only agree to supplemental discovery for additional domains or accounts if they are identified in a manner consistent with the discovery for other domains and accounts in this case. Google reserves all rights to object to Plaintiffs' particularized identification of additional domains for supplemental discovery. We address your proposal, and its deficiencies, below.

- **Item 1:**

- - Before Google can consider whether it could agree to this part of the compromise, Plaintiffs must disclose how the 546 domains in Tab 1 of your August 11 spreadsheet were identified. Specifically, for each domain, Plaintiffs must at least answer:
      - Do Plaintiffs allege that at least one Plaintiff has sent Google at least one notice identifying the domain in the notice?
      - Do Plaintiffs allege that at least one asserted work in this case was advertised by the domain following the notice above?
  - With respect to the two MCIDs you identify with particularity, as you know (because on July 18, you summarized our conferral about these accounts), "those accounts were created after the search resulting for GOOG-CENG-00000703 was conducted." As we explained during our July 15 conferral, it is not reasonable or proportional for Google to conduct one-off searches to supplement its discovery for two of over 20,000 Merchant Center accounts. However, if the parties come to an agreement (or the Court orders) a single supplemental production of additional "Domain-Identified" Merchant Center accounts, Google will agree to include these two MCIDs in supplemental discovery sweeps as "Domain-Identified" merchants.

- **Item 2:**
  - This proposal is nonsensical, as our August 8 email did not reference or admit the existence of "█████ + MCIDs." Again, Google has not conducted any analysis of how many MCIDs are associated with the domains provided in Tab 2 of your spreadsheet from yesterday. As noted above, that is *your* twisting of a clear demonstrative extrapolation of the produced data in the case.

We will be raising Plaintiffs' mischaracterizations of what Google is required to produce in the context of Plaintiffs' August 5 submission to the Court and suggest the parties visit their potential compromise proposals following the parties' response filings tomorrow. We are also available to discuss this issue on Thursday August 14 at 1pm, 3pm, or 4pm. (We also note that "Wednesday August 12" is not a date this week.)

Regards,
Holly

**Holly Victorson**
Pronouns: she/her/hers

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.2336

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Monday, August 11, 2025 12:53 PM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Murphy, Brent (DC) <Brent.Murphy@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Wetzel, Joe (Bay Area) <Joe.Wetzel@lw.com>
**Cc:** Katheryn Jarvis Enters <Katheryn@oandzlaw.com>; Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>; Matt Oppenheim <Matt@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Google's Request for a Stay

Counsel,

Your email conflates two distinct concepts: "pirates" and "domains". On December 24, 2024 Plaintiffs identified to Google 1,239 *pirates* whose infringing works Google advertised. Plaintiffs identified these pirates by referring to the *domains* to which the Google's ads linked, but did so purely as a way for Google to search

3

for information about these pirates. Google was and is required to produce information concerning these 1,239 *pirates*, not simply to produce information concerning those particular *domains*.

Google initially produced only 18,767 Merchant Center account IDs associated with those 1,239 pirates, and produced no additional domains associated with those pirates. Google subsequently produced 1,300+ Merchant Center account IDs operated by these pirates, and another ▮ + *domains* operated by these pirates. In other words, *all* of the 21,000+ Merchant Center accounts and the ▮ + domains at issue here were all operated by the same 1,239 *pirates* that Plaintiffs identified on December 24, 2024.

You now admit that there are more than ▮ *additional* Merchant Center accounts that these pirates *also* operated. In other words, after nearly a year of discovery, Google has produced data concerning less than ▮ % of the accounts operated by the pirates Plaintiffs identified.

In the interest of moving discovery forward, and reserving all rights, Plaintiffs offer the following compromise.

1. For those *domains* that advertised a work-in-suit but were *not* among the 1,239 *domains* that Plaintiffs identified on December 24 (which total 546 domains, attached here at Tab 1), Google will produce (as defined in my August 4 email) the identifying information, offer data, ads data, revenue data, and notice data. To be clear, all of these domains are operated by one of the 1,239 pirates that Plaintiffs previously identified.

    a. Google will produce the same data for MCIDs ▮ and ▮ , two MCIDs that are associated with the 1,239 domains but for which Google inexcusably has refused to produce data.

2. For the ▮ + MCIDs referenced in your August 8, 2025 email (which we understand to be the MCIDs associated with the ▮ + domains listed in Tab 2 of the attached), Google will produce the Merchant Center Account ID, the domain with which that MCID is associated, and the revenue associated with that Merchant Center Account ID for the period June 1, 2020 through July 21, 2025.

As you no doubt know, we disagree with nearly everything in your August 8 email. We need not list all of those disagreements here.

We can be available to meet and confer on this issue this week. If the parties have not reached a resolution by Wednesday August 12, Plaintiffs will have to raise this issue with the Court.

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

---

**From:** Holly.Victorson@lw.com <Holly.Victorson@lw.com>
**Date:** Friday, August 8, 2025 at 20:15
**To:** Jeff Kane <JKane@oandzlaw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>, Brent.Murphy@lw.com <Brent.Murphy@lw.com>,

Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Cc:** Katheryn Jarvis Enters <Katheryn@oandzlaw.com>, Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>, Matt Oppenheim <Matt@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Google's Request for a Stay

Counsel,

We write to respond to your communication below, since the parties did not have a chance to discuss during the parties' conferrals on August 5.

Your statements below neglect to acknowledge, but are deeply implicated by, important details and context about the history of this dispute. So that we are not talking past one another, we recount those details here before providing our response to your proposal.

**Plaintiffs' Allegations and Alleged Infringed Works**

This case concerns the alleged contributory copyright and direct trademark infringement of specific works and marks asserted by Plaintiffs. Specifically, Plaintiffs contend that Google is contributorily liable for copyright infringement because "Pirate Sellers have sold infringing copies of" Plaintiffs' asserted works "to Google users who clicked on an Infringing Shopping Ad for a work and purchased the work." Dkt. 38 ¶ 122. Plaintiffs claim they have only asserted works for which "the Direct Infringements alleged by Plaintiffs occurred *after* Google learned that the Infringing Shopping Ad at issue advertised infringing content or that the Pirate Seller or Pirate Site at issue was selling infringing content." *Id*; Hr'g Tr. (May 30, 2025) at 9:17–21 (explaining that "the primary way that a work gets into the case is if someone [] sent a notice about one of these pirates and Google continued running ads for that pirate after the notice, then if they advertise one of our works after that date, we'll add the work to the case"). Plaintiffs further claim that Plaintiffs have submitted DMCA notices to Google that "identify URLs pointing to tens of thousands of Infringing Shopping Ads and the Pirate Sites to which the ads link and through which infringing copies of the Authentic Works are downloaded and sold." Dkt. 38 ¶ 123.

Before discovery ever commenced, Plaintiffs insisted on a lengthy extended deadline—7 months into an approximately 10-month proposed fact discovery period—to amend the complaint "to add alleged infringed copyrighted works or trademarks to Exhibits A or B . . . because information in Google's possession concerning the full extent of the alleged infringements will not be known to Plaintiffs until certain discovery has been completed." Dkt. 29-1 at 2. Google opposed this proposal because, *inter alia*, "[p]ermitting such an amendment three months before the close of fact discovery will essentially restart the litigation, as it would require new discovery and analysis as to many issues in this case regarding entirely new claims of infringement," and "[d]iscovery is not an exercise for trying to search for additional claims outside the Complaint." *Id*. at 3–4. The Court largely granted Plaintiffs' request, setting a deadline approximately 6 months into the 10-month fact discovery period for Plaintiffs to "amend the Complaint solely to add alleged infringed copyrighted works or trademarks to Exhibits A or B, respectively." Dkt. 34 at 2. Due in large part to Plaintiffs' insistence during discovery "that Google divert significant resources to identify additional Merchant Center accounts historically (but no longer) connected to one or more allegedly infringing domains" further discussed below, *see* Dkt. 106 at 3, the parties ultimately agreed to jointly extend Plaintiffs' deadline to amend Exhibits A or B (and other case deadlines) by approximately six weeks. Dkts. 106, 106-1, 110.

On July 14, 2025, one month before the deadline by which the "parties shall complete their document productions," Dkt. 110 at 3, Plaintiffs amended Exhibits A and B. Dkt. 120. Exhibit A, which previously listed 4,313 copyright registration numbers, now lists 7,359 copyright registration numbers, *as amended*. *Compare* Dkt. 38-1 *with* Dkt. 120-1.

5

**The Parties' Previous Dispute Regarding the Scope of Merchant Discovery**

Because, from the outset of this case, Plaintiffs sought exceedingly broad discovery from Google regarding so-called "Infringing Merchants," which Plaintiffs defined as "any Shopping Ads Merchant listed or otherwise identified in a Plaintiffs Infringement Notice," and "any Shopping Ads Merchant that shares with an Infringing Merchant a common identity, common or related business or website ownership or operation, or other similarity that demonstrates a business connection or link between Google account holders," Dkt. 47-1 at 5–6, the parties reached an impasse on the appropriate scope of this discovery and in November 2024 Plaintiffs brought the dispute to the Court, which was decided by the Court in January of this year.  *See* Dkts. 46, 72, 76.

The Court's order was clear.  Plaintiffs were to "provide Google with a spreadsheet (the 'Domain Spreadsheet') containing a list of the domains Plaintiffs identified in Digital Millenium Copyright Act notices that Plaintiffs or their representatives sent to Google through September 16, 2024 and that Plaintiffs contend infringe or infringed one or more works asserted by Plaintiffs in Appendix A of the Amended Complaint."  Dkt. 72 ¶ 1.  Google was then to "identify all Merchant Center accounts exactly matching the domains in the Domain Spreadsheet."  *Id*. ¶ 2.  Those Merchant Center accounts, the "Domain-Identified Merchant Accounts," were then to be used as the basis for Google's production of information "related to what Plaintiffs defined as 'Infringing Merchants'" in their requests.  *Id*. ¶ 4.  Notably, because Plaintiffs defined "Infringing Merchant" as "any [Google user whose products are advertised in Shopping Ads] listed or otherwise identified in a Plaintiff Infringement Notice," Dkt. 47-1 at 5–6, and because Plaintiffs' notices to Google do not identify any Google *users*—they only identify allegedly infringing *URLs*, *see, e.g.,* PL0000543994 and PL0000535577—the "Domain-Identified Merchant List" encapsulates the *entire* scope of Merchant Accounts subject to discovery for "Infringing Merchants."

Plaintiffs acknowledged this reality—that the relevant "infringing" merchants are limited to those accounts associated with the URLs that Plaintiffs identified to Google—early in the case.  In the same hearing that you quoted below, Plaintiffs agreed to "identify the infringing domains for [Google], the 1300 or so domains that are implicated here. That's not a problem. . . . If that will be helpful, that's certainly something we can provide."  Hr'g Tr. (Dec. 4, 2024) at 41:14–22.  Plaintiffs provided that Domain Spreadsheet, containing 1,239 domains, to Google (as was ultimately ordered by the court in Dkt. 72 ¶ 1) on December 24, 2024.

**Google's Productions**

Google produced the list of 18,767 MCIDs associated with those exact domains (the "Domain-Identified Merchants")—along with a trove of account information about each of those accounts—on February 14, 2025.  GOOG-CENG-00000703.  That list of MCIDs then formed the basis for a wide range of discovery that Google produced over the following months, including over a terabyte of detailed information about offers associated with those MCIDs, metrics associated with the Shopping ads and listings run by those MCIDs, and daily and monthly financial and cost data associated with each of those MCIDs.  *See* Dkt. 138 at 10.  Moreover, pursuant to the Court's order following a fully briefed and argued discovery dispute, and at Plaintiffs' insistence that Plaintiffs receive additional discovery regarding "related" merchants **not** associated with the "infringing" websites that Plaintiffs allege to have engaged in infringement of their works, Google further produced, on February 14, 2025, a list of 15,516 additional MCIDs that had "the same email account identifiers" as the Domain-Identified Merchants (the "Email-Connected Merchant Accounts"), and account information for the same. Dkt. 72 ¶ 5; GOOG-CENG-00000704.  Google also produced DMCA notice information for the websites associated with both the Domain-Identified Merchants and Email-Connected Merchants.

Further, as Plaintiffs well know, when Plaintiffs complained that certain merchant data associated with a small portion of Plaintiffs' domains appeared to be "missing," Google voluntarily cooperated with Plaintiffs and went far above and beyond its discovery obligations in this case to collect presumptively inaccessible historical logs associated with those 18,767 Domain-Identified MCIDs and, from there, identified an additional 1,378 Historical Domain-Identified MCIDs that were at one time in the past associated with one or more of the websites on Plaintiffs' Domain Spreadsheet.  *See* Dkt. 106 at 3; Hr'g. Tr. (May 30, 2025) at 17:3–10; Dkt. 138 at 10.  Those

MCIDs (along with the same trove of account information about those accounts as were produced with the original set of Domain-Identified Merchants) were produced on May 30, 2025. GOOG-CENG-00392941. Google then voluntarily supplemented its production with **all of the same information** for those 1,378 MCIDs that it provided for the 18,767 Domain-Identified MCIDs, including identifying an additional 367 Historical Email-Connected MCIDs (GOOG-CENG-00403547) and producing the DMCA data associated with the websites associated with the same. In full transparency, Google also produced on May 30 the full historical log of websites associated with the full set of 20,145 Domain-Identified MCIDs and Historical Domain-Identified MCIDs ("Historical Log"). GOOG-CENG-00392942.

**Plaintiffs Hid the Ball on the Scope of Discovery They Now Seek**

On May 20, 2025, before Plaintiffs amended their complaint to add additional works on July 14, Google asked Plaintiffs for an estimate regarding the number of works that Plaintiffs intended to add and whether Plaintiffs' amendment would implicate any additional domains beyond those in the December 24 Domain Spreadsheet. At that time—likely cognizant that the addition of additional domains would require another bump in the discovery schedule—Plaintiffs stated that they didn't "intend to add new domains," and that they did not believe adding new works would affect the scope of discovery.

The day after Plaintiffs' amendment, as shown in this thread, Google asked Plaintiffs to confirm that their amendment did not implicate any additional domains. H. Victorson Email (July 15, 2025). Plaintiffs responded three days later, stating that "at this time, Plaintiffs are not seeking to add any domains to the 1,239 domains listed in Plaintiffs' December 24, 2024 email. All of the works included in Amended Exhibit A (Dkt. 120-1) were advertised either by one of the 1,239 domains, or *by a domain related to one of the 1,239 domains*" and "reserve[d] the right to request further domains later." J. Kane Email (July 18, 2025) (emphasis added). Google responded the same day seeking clarification of what Plaintiffs referred to by "a domain related to one of the 1,239 domains" and stating "[i]f Plaintiffs contend that one or more domains not on Plaintiffs' December 24, 2024 list of domains should be subject to discovery, Plaintiffs must immediately disclose what those domains are." S. Tomkowiak Email (July 18, 2025). On July 23, Plaintiffs responded, stating they "will provide Google with a list of the 'Identical Account Domains', i.e., the domains for which Google advertised a work included in Dkt. 120-1, and that are or were part of the same Merchant Center account as one of the December 24th Domains," and that "Google should be producing the same discovery with respect to the Identical Account Domains as it is with respect to the December 24th Domains." J. Kane Email (July 23, 2025). To date, Google still has not received any list form Plaintiffs of the "Identical Account Domains."

On August 4—less than two weeks prior to the production completion deadline—Plaintiffs stated their position that Google must produce all MCIDs, and a host of other discovery associated with the "Domain Identified Merchant Accounts" for the "approximately ▆▆▆▆ other domains" that "the pirates who operated the 1,239 domains that Plaintiffs identified on December 24, 2024 likewise operated." J. Kane Email (Aug. 4, 2025). To date, Plaintiffs have not identified precisely what they contend these "approximately ▆▆▆▆ other domains" are.

**Google's Response**

Based on Plaintiffs' citation of the Historical Log (GOOG-CENG-00392942), we understand these "approximately ▆▆▆▆ other domains" likely reflect *any domain in the Historical Log* that was not already on Plaintiffs' December 24 Domain Spreadsheet ("Additional Domains"), though we calculate a slightly different number of unique domains meeting that criteria. Please promptly provide a list of the ▆▆▆▆ domains Plaintiffs are referring to, as you previously committed to do.

In any case, critically, Plaintiffs have not even alleged, much less identified evidence supporting, that Plaintiffs have noticed an advertisement for a single domain out of these "approximately ▆▆▆▆ other domains," much less that any of these domains has ever advertised a single work asserted by Plaintiffs in this case. *See* Hr'g Tr. (May 30, 2025) at 9:17–21 ("[T]he primary way that a work gets into the case is if someone [] sent a notice about one of

these pirates and Google continued running ads for that pirate after the notice, then if they advertise one of our works after that date, we'll add the work to the case"); Dkt. 38 ¶ 122 ("For each of the Authentic Works listed in Exhibit A, the Direct Infringements alleged by Plaintiffs occurred *after* Google learned that the Infringing Shopping Ad at issue advertised infringing content or that the Pirate Seller or Pirate Site at issue was selling infringing content.") (emphasis in original). Accordingly, on its face, full freight discovery on each of the over ▬▬ Additional Domains is not reasonable or proportional to the needs of this case under any measure. *C.f.* Hr'g. Tr. (Dec. 18, 2024) at 72:25–73:10 ("This is a copyright infringement case related to infringements that have been identified by the plaintiff . . . . However, discovery is not meant to be a fishing expedition of any potential infringement out there at Google, and proportionality considerations come into play").

Additionally, to say Plaintiffs' proposal would explode the scope of discovery in this case is an understatement. We understand Plaintiffs' position is that Google must effectively produce the same wide-ranging scope of discovery related to over ▬▬ brand-new domains that Google produced related to the 1,239 domains in Plaintiffs' December 2024 Domain Spreadsheet. Indeed, on the eve of the close of document production in this matter, Plaintiffs now seek an over ▬▬ **% increase** in the domains for which Google must, at a minimum:

1. identify MCIDs currently associated with each of the Additional Domains;
2. pull *presumptively inaccessible* historical logs for each of the MCIDs from (1);
3. review and associate the historical logs from (2) to identify *additional* MCIDs historically associated with the Additional Domains;
4. run searches over Google's DMCA database to pull all notice information and notice documents associated with the over ▬▬ Additional Domains; and
5. search, identify, review, and produce the full trove of detailed information associated with each of the MCIDs identified in (1) and (2) that Google produced between January and July of this year (i.e., the data that the Court ordered produced for the "Domain-Identified Merchant Accounts" in Dkt. 72), including:
    a. detailed account data and information for each MCID
    b. the details for every single offer associated with each MCID (where the analogous data associated with Plaintiffs' 1,239 is well over 1TB in size);
    c. data reflecting the interaction metrics for each offer pulled in the item above on a *daily* basis;
    d. data reflecting the cost of each offer pulled above;
    e. the total amount of Shopping Ads revenue associated with each MCID

The data above requires the coordination and effort from no fewer than five different functional teams and many more data sources within Google. Even if Google were to produce this astronomical increase in the scope of discovery, the parties would need to extend all discovery deadlines in this case by more than the three months Google has already sought to allow Google sufficient time to collect and produce any supplemental data. Again, Plaintiffs are seeking to increase the set of domains at issue in this case (which forms the basis for the waterfall of associated discovery) by **over ▬▬ %**. That is a staggering increase. To put that in context, the 1,239 domains identified by Plaintiffs in December 2024 yielded 20,145 MCIDs. Extrapolating that account-per-domain ratio to the ▬▬ Additional Domains, Plaintiffs' Additional Domains could be associated with over ▬▬ **MCIDs**, and Plaintiffs have not connected a single one to a domain accused of selling one of Plaintiffs' asserted works in this case.

Moreover, even if Google were to produce all of the above, there is no indication that even *that* would satisfy Plaintiffs. The MCIDs historically identified with one or more of the over ▬▬ Additional Domains will be associated with yet more domains. Will Plaintiffs then insist on yet another round of the same trove of discovery for the MCIDs that have ever been associated with those domains? Plaintiffs' demand never-ending discovery on a spiraling connection of domain to MCID to domain to MCID, *ad infinitum*. That is not tenable. This is a lawsuit about the alleged infringement of specific asserted works by Plaintiffs, not an investigation into every potential act of infringement by third parties. *See* Hr'g. Tr. (Dec. 18, 2024) at 72:25–73:10. Nor does Google's assertion of the DMCA safe harbor defense justify such extraordinary, disproportionate discovery. As we have stated on many occasions, the DMCA does not require (and in fact specifically disclaims) that Google proactively investigate for

8

additional infringement by its advertisers and enforce against that infringement. *See* 17 U.S.C. § 512(i)(A) (requiring that a service provider "has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers"); *see also* Dkt. 50 at 1–2.  It would be absurd and contrary to this statutory regime to impose an obligation on Google to produce discovery into what such a proactive investigation and enforcement system might uncover.

In this context, Plaintiffs' statement that "Google represented to the Court that retrieving the MCIDs associated with a list of domains is not burdensome" is beside the point.  The below email is clear that Plaintiffs are not asking merely for Google to "retriev[e] the MCIDs associated with a list of domains."  They are asking Google to locate, collect, review and produce what will almost certainly amount to terabytes of data associated with those MCIDs.

Google will not agree to conduct this wildly disproportionate discovery for domains that Plaintiffs have never alleged to have engaged in a single infringement of a single asserted work at issue in this case.  Google is only willing to consider whether supplemental discovery *may* be appropriate for some subset of these domains if Plaintiffs identify the specific subset of domains that meet the following criteria within the limitations period (following *Plaintiffs'* approach for identifying infringements in this case, Hr'g Tr. (May 30, 2025) at 9:17–21), consistent with how the list of 1,239 domains in the Domain Spreadsheet was presumably compiled:
1. The domain was the landing page for at least one Shopping Ad for an allegedly infringing copy of at least one asserted work in Amended Exhibit A (Dkt. 120-1);
2. Plaintiffs submitted a DMCA notice to Google identifying the domain as the landing page for at least one Shopping Ad for an allegedly infringing copy of the work referenced in (1); and
3. Following Plaintiffs' notification to Google, such domain was the landing target for at least one Shopping Ad for an allegedly infringing copy of the work referenced in (1) and (2).

Please let us know if Plaintiffs will be identifying a list of such domains.  Obviously, at this juncture, if Google were to conduct any such supplemental discovery, a discovery extension of at least 90 days or longer would be required, depending on precisely how many domains are identified and precisely what supplemental discovery would be need to be collected and produced associated with those domains.  *See* Dkt. 138 at 8–10.

Regards,
Holly

**Holly Victorson**
Pronouns: she/her/hers

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.2336

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Monday, August 4, 2025 2:07 PM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Murphy, Brent (DC) <Brent.Murphy@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Wetzel, Joe (Bay Area) <Joe.Wetzel@lw.com>
**Cc:** Katheryn Jarvis Enters <Katheryn@oandzlaw.com>; Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>; Matt Oppenheim <Matt@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Google's Request for a Stay

Counsel,

9

We write to follow up on the second issue below.

The records Google has produced so far demonstrate that the pirates who operated the 1,239 domains that Plaintiffs identified on December 24, 2024 likewise operated approximately ▮▮▮ other domains. GOOG-CENG-00000703, GOOG-CENG-00392941, GOOG-CENG-00392942. Google claims to have produced the Merchant Center account IDs associated with those 1,239 domains, but did not produce all of the MCIDs associated with the other ▮▮▮ domains that these pirates operated. These MCIDs must be produced.

Google represented to the Court that retrieving the MCIDs associated with a list of domains is not burdensome.

> [W]e can take the domain that's identified in their notice, tie it to a merchant's account. That's a relatively easy step. It's not, not burdensome. We understand that it's relevant. So then we can go out to the various systems that Google has and pull in information about that merchant, because we now have gotten to a merchant.

Hr'g Tr. 32:16–23 (Dec. 5, 2024). Accordingly, Google must produce:
1. The identifying information (i.e., the fields contained in the 0703 and 2941 spreadsheets) for each Merchant Center account that is or was registered to one of the Identical Account Domains.
2. The offer data (i.e., the fields contained in Google's sixth and fourteenth productions) associated with each MCID from no. 1.
3. The ads data (i.e., the data contained in the July 22 production) associated with each offer from no. 2 above.
4. The revenue (i.e., the fields contained in Google's eighteenth production) for each MCID in no. 1 above.
5. The notices Google received from any rightsholder concerning the Identical Account Domains.

We can discuss this with you during the parties' meet-and-confer on Tuesday August 5, or later this week.


Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Date:** Wednesday, July 23, 2025 at 22:59
**To:** Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>, Brent.Murphy@lw.com <Brent.Murphy@lw.com>, Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Holly.Victorson@lw.com <Holly.Victorson@lw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Cc:** Katheryn Jarvis Enters <Katheryn@oandzlaw.com>, Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>, Matt Oppenheim <Matt@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Google's Request for a Stay

Counsel,

10

Plaintiffs' attorney declaration (Dkt. 123) accurately captured counsel's understanding from the July 16 meet-and-confer, namely that Google was conditioning its preservation of data on Plaintiffs agreeing to a stay. You appear now to claim that during the meet-and-confer, you in fact meant to convey that Google would also preserve this data in the event that the Court entered a stay over Plaintiffs' objection. This flimsy distinction appears nowhere in your July 15 email introducing this proposal, certainly was not made clear during the July 16 meet-and-confer, and is barely clear from your email below. And in any case, the distinction makes no difference. Google is conditioning preserving this data on a stay being entered; if a stay is not entered, Google refuses to preserve. The facts Plaintiffs conveyed to the Cout remain accurate: "[I]ssues concerning Google's preservation of evidence have come to light only by dint of the progress of discovery," and a "stay thus risks the loss of important evidence." Dkt. 121 at 2.

Regarding your other question, each of the works contained in Dkt. 120-1 was advertised either by one of the 1,239 domains identified on December 24, 2024 (the "December 24th Domains"), or by a domain that is or was registered to the same Merchant Center account as one or more of the December 24th Domains. Plaintiffs will provide Google with a list of the "Identical Account Domains", i.e., the domains for which Google advertised a work included in Dkt. 120-1, and that are or were part of the same Merchant Center account as one of the December 24th Domains.

Google should be producing the same discovery with respect to the Identical Account Domains as it is with respect to the December 24th Domains. In addition, Google should retrieve all the Merchant Center accounts associated with the Identical Account Domains, and conduct the same discovery with respect to those Merchant Center accounts that is conducting with respect to the Merchant Center accounts Google already has identified.

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

---

**From:** Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>
**Date:** Friday, July 18, 2025 at 14:34
**To:** Jeff Kane <JKane@oandzlaw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>, Brent.Murphy@lw.com <Brent.Murphy@lw.com>, Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>, Holly.Victorson@lw.com <Holly.Victorson@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Google's Request for a Stay

Counsel,

We will respond separately to your speculative arguments of the purported prejudice that Plaintiffs will suffer throughout the duration of a potential stay.

11

We write to identify your blatant misrepresentation, made below and to the Court last night, regarding Google's offer to conduct monthly collections of Merchant Center offer data on a going forward basis. As you know, we did **not** confirm Plaintiffs' understanding that Google's offer was "contingent on Plaintiffs agreeing to a stay." The exact opposite is true: We expressly confirmed that Google's offer was **not** contingent on Plaintiffs' agreement; but rather, in light of Plaintiffs' representations regarding the purported prejudice of the loss of this marginally relevant data during the duration of a stay (and while maintaining its objections on grounds of proportionality), Google intends to conduct these monthly collections going forward during a stay **regardless** of Plaintiffs' position regarding our proposed stipulation, and will inform the Court as much. Misrepresenting our position to the Court on June 17, and then sending an email on June 18 to purportedly memorialize our conversation on July 16, is not becoming of an officer of the Court.

We do not understand what you refer to by your statement that "All of the works included in Amended Exhibit A (Dkt. 120-1) were advertised either by one of the 1,239 domains, **or by a domain related to one of the 1,239 domains.**" If Plaintiffs contend that one or more domains not on Plaintiffs' December 24, 2024 list of domains should be subject to discovery, Plaintiffs must immediately disclose what those domains are.

**Sarah A. Tomkowiak**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.2335 | M: +1.217.417.3312

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Friday, July 18, 2025 12:44 PM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Murphy, Brent (DC) <Brent.Murphy@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Wetzel, Joe (Bay Area) <Joe.Wetzel@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Google's Request for a Stay

Counsel,

We write concerning the parties' meet and confer on July 16.

During the meet-and-confer, Plaintiffs declined Google's proposal to stipulate to a stay if Google would agree to: (1) conduct monthly collections of the Merchant Center offer data for the duration of the stay; and (2) not oppose any petition for any interlocutory appeals of the Court's order dismissing our vicarious infringement claims during the period of the stay. Google confirmed Plaintiffs' understanding that Google' offer to conduct these monthly collections is contingent on Plaintiffs agreeing to a stay. As we explained, Google's offer does not sufficiently address the immense prejudice that Plaintiffs would suffer throughout the duration of a potential stay. The only reason this preservation issue first came into light was through Plaintiffs' questioning and follow-ups. Though discovery began in September 2024, and despite numerous meet-and-confers, countless correspondence, and several hearings before the Court, Google did not mention this deletion policy until May 20, 2025, and *still* has not taken steps to preserve this data. Discovery must continue in order to determine several preservation-related issues, including 1) whether there are alternate sources of the data that Google claims has been "purged", 2), whether there are additional Merchant Center accounts for which data should be

preserved, and 3) what is the possible scope of data that has been lost. Your vague suggestion that this issue is the only preservation issue you are *currently* aware of is no comfort to Plaintiffs. This is particularly true given Google's history of failing to preserve data in other cases. *See In re Google Play Store Antitrust Litig.*, 664 F. Supp. 3d 981, 992-994 (N.D. Cal. Mar. 28, 2023) ("Google falsely assured to the Court in a case management statement in October 2020 that it had 'taken appropriate steps to preserve all evidence relevant to the issues reasonably evident in this action'"); *see also United States v. Google LLC*, No. 20-cv-3010, 2024 WL 3647498, at *133 (D.D.C. Aug. 5, 2024) ("The Court's decision not to sanction Google should not be understood as condoning Google's failure to preserve chat evidence").

Lastly, at this time, Plaintiffs are not seeking to add any domains to the 1,239 domains listed in Plaintiffs' December 24, 2024 email. All of the works included in Amended Exhibit A (Dkt. 120-1) were advertised either by one of the 1,239 domains, or by a domain related to one of the 1,239 domains. Naturally, Plaintiffs reserve the right to request further domains later, should discovery reveal that doing so is necessary.

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

---

**From:** Holly.Victorson@lw.com <Holly.Victorson@lw.com>
**Date:** Tuesday, July 15, 2025 at 18:36
**To:** Jeff Kane <JKane@oandzlaw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>, Brent.Murphy@lw.com <Brent.Murphy@lw.com>, Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Joe.Wetzel@lw.com <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Google's Request for a Stay

Counsel,

We are not available tomorrow at 11:00 AM ET, but we are available at any time between 1:00 PM and 5:00 PM ET tomorrow to discuss the confidentiality of the marked material. At the same time, we would like to discuss whether Plaintiffs would be willing to stipulate to a stay if (1) Google agrees to conduct monthly collections of Merchant Center offer data during the period of the stay; and (2) Google agrees not to oppose any petition filed by Plaintiffs during the period of the stay for interlocutory appeal of the Court's order dismissing Plaintiffs' vicarious infringement claims. To be clear, Google will oppose any such appeal on the merits.

We have not received any supplemental list of allegedly infringing domains beyond those identified by Plaintiffs on December 24, 2024. Please confirm Plaintiffs are not identifying additional domains alleged to be engaged in the infringement of the asserted works or marks in Appendix A or B as amended.

Regards,
Holly

**Holly Victorson**

Pronouns: she/her/hers

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.2336

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Monday, July 14, 2025 8:03 PM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Murphy, Brent (DC) <Brent.Murphy@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Wetzel, Joe (Bay Area) <Joe.Wetzel@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>
**Subject:** Cengage v. Google - Google's Request for a Stay

Counsel,

Plaintiffs' response to Google's request for a stay (Dkt. 117) will discuss portions of the attached email, including the portions marked "Confidential" (i.e., the portions highlighted in blue). In the event of a stay, the features of Google's system that cause Google not to retain relevant ads data will cause important evidence of infringement to be lost. This is one way in which, for example, a stay would prejudice Plaintiffs.

If Google maintains that this information should not be filed publicly, please let us know a time when you are available to meet and confer per Rule 4(b) of Judge Rochon's Individual Rules and paragraph 21 of the Protective Order. Plaintiffs are available at the below times.
- Tuesday, July 15: 12:00–3:00 PM ET
- Wednesday, July 16: 11:00AM–12:00PM ET


Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com


_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.