

Michele H. Murphy
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.450.5643
michele@oandzlaw.com

August 13, 2025

<u>**VIA ECF**</u>

The Honorable Jennifer L. Rochon
United States District Court for the Southern District of New York
500 Pearl Street, Room 1920
New York, NY 10007

  Re:  *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
     <u>Plaintiffs' Opposition</u> to Defendant's Omnibus Discovery Letter Motion

Dear Judge Rochon:

  In its "omnibus" discovery letter motion (Dkt. 165), Google grasps at straws to manufacture issues with Plaintiffs' discovery to deflect from its own discovery deficiencies. Plaintiffs have more than met their discovery obligations at this stage, and Google has what it needs to complete fact discovery. Plaintiffs should not be required to engage in a burdensome exercise of extracting information from documents that they produced in compliance with Rule 34, especially when Google can just as easily review those documents and analyze them in whatever way it so chooses. Nor should Plaintiffs be compelled to amend their initial disclosures to include information that they cannot now provide, let alone have their damages limited based on an extreme and unprecedented preclusion sanction. The Court should deny Google's motion.

**I.**  **Plaintiffs have met their discovery obligations concerning screenshots evidencing Google's and pirate sellers' infringement.**

  In response to Google's documents requests, Plaintiffs produced screenshots of: (1) search results showing Google's ads for infringing copies of Plaintiffs' works; and (2) the pages on Google's customers' pirate websites to which these ads directly link ("landing pages"). *See* RFP 80, Dkt. 165-2 at 95. Plaintiffs produced this ESI as it is "ordinarily maintained," i.e., by date for the ads and by date with pirate site metadata for the landing pages. *See* Fed. R. Civ. P. 34(b)(2)(E)(ii); Decl. of Michele H. Murphy ("Atty. Decl.") ¶ 13. Google does not contest this. *See* Dkt. 165 at 2. However, Google claims that it cannot "discern which documents support Plaintiffs' claim of infringement on a work-by-work basis," and, therefore, Plaintiffs should shoulder the burden of responding to Google's improper interrogatory asking Plaintiffs to extract specific information from the screenshots and compile it for Google. Because the infringing activity is massive in scope, Google's motion implicates hundreds of thousands of screenshots. *See id.* at 3; Atty Decl. ¶ 21. The case is in fact discovery – not the summary judgment or trial phase. Google simply needs to look at the screenshots that Plaintiffs properly produced and do the analyses it seeks. The screenshots clearly show the work at issue in the search bar, book images, or both. *See* Atty. Decl. Exs. 2–3 (attaching examples).

  In February 2025, Google ignored Local Civil Rule 33.3 and issued a contention interrogatory seeking "[a]ll facts supporting Your claim(s) of infringement for [each] Asserted Work" listed on Exhibit A to the Amended Complaint. Atty. Decl. ¶ 4; *see also* Local Civ. R. 33.3(b)–(c) (limiting interrogatories that can be propounded "during discovery"). This interrogatory 4 goes on to sweepingly delineate twelve separate subparts. In an effort to avoid a

Hon. Jennifer L. Rochon
August 13, 2025

dispute before the Court, Plaintiffs compromised on many of these issues. Atty. Decl. ¶ 7. However, due to the burden, Plaintiffs were unwilling to accede to Google's unreasonable demands at issue.

The relevant part of the interrogatory asks Plaintiffs to identify, "for each Asserted Work," the beginning bates number for the screenshots depicting Google's own ads and for the pirate site landing pages to which the ads link. Atty. Decl. ¶ 4. Google disingenuously suggests that complying with its request simply involves "specifying the records" that Plaintiffs produced. *See* Dkt. 165 at 2. In meet-and-confers, Plaintiffs offered to do just that by identifying the screenshots by bates number range, but Google rejected this approach. *See* May 27, 2025 email from K. Lindsey, Dkt. 165-24 at 2. What Google is actually asking Plaintiffs to do is review the voluminous screenshots, catalog which Asserted Work they reference, and present the information to Google. Compelling Plaintiffs to do this would be unwarranted on multiple grounds.

First, as a threshold matter, this dispute is premature. The requests at issue are subparts of an improperly issued contention interrogatory. *See AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 2025 WL 252673, at *1 (S.D.N.Y. Jan. 21, 2025) (interrogatory that seeks documents that "provide evidence of an issue in dispute" is "improper" before the conclusion of discovery) (quotation marks omitted); *Phillies v. Harrison/Erickson, Inc.*, 2020 WL 6482882, at *2 (S.D.N.Y. Nov. 4, 2020) (pursuant to Local Rule 33.3, contention interrogatories should be "served only at the end of other fact discovery"); *US Bank Nat. Ass'n v. PHL Variable Life Ins.* Co., 288 F.R.D. 282, 289 (S.D.N.Y. 2012) ("[P]laintiff need not answer . . . interrogatories [] which do not conform to Local Civil Rule 33.3 . . ."). Fact discovery closes on November 17, 2025. Dkt. 110.

Second, Google conflates Plaintiffs' discovery obligations with the burden of proof at summary judgment or trial. Google cites *Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 423 (S.D.N.Y. 2011), but that case involved cross summary judgment motions, where the court found that the plaintiffs had "submitted substantial direct and circumstantial evidence showing infringement" by the direct infringers, including through expert testimony.[1] *Id*. at 424. Plaintiffs have fully met their discovery obligations to produce relevant, responsive documents at this fact discovery stage. Not only does fact discovery continue for three more months, expert discovery closes on March 16, 2026, and summary judgment briefing will likely begin in April 2026, at the earliest. Dkt. 110 at 4–5. Without any legal basis, Google's misguided motion to compel seeks to force Plaintiffs to actually *prove* direct infringement now or face sanctions. This is untenable.

Third, providing the information that Google seeks would be unduly burdensome. Because the screenshots are not maintained by Asserted Work, Plaintiffs have not extracted this information, and it would take substantial resources to do so.[2] *See* Atty. Decl. ¶¶ 20–21. If Google seeks this information now, Google needs to read the screenshots. *See Rensselaer Polytechnic Inst. v. Apple Inc.*, 2014 WL 1871866, at *5 (N.D.N.Y. May 8, 2014) (when information sought by interrogatory required description of "exceedingly extensive" source code, response that requesting party can

---

[1] Google's other cited cases are inapposite. *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992) concerns deficient pleadings, yet Google does not, nor could it, make such an argument here. Further, in *Paul Rudolph Found. v. Paul Rudolph Heritage Found.*, 2022 WL 4109723, at *7 (S.D.N.Y. Sept. 8, 2022), the defendant failed to identify the works infringed for all but two of the 152 infringements alleged in its counterclaim. Plaintiffs here have both identified the works in their complaint (Dkt. 120-1) and produced documents to support their claims.

[2] That Plaintiffs agreed to provide certain information by Asserted Work is not at all "puzzling." *See* Dkt. 165 at 3–4. The "prices at which Plaintiffs sold the Asserted Works, the Plaintiffs' valuation of the Asserted Works, [and] the revenue Plaintiffs received for the Asserted Works by year," of course, encompass information maintained by work.

Hon. Jennifer L. Rochon
August 13, 2025

investigate the source code was sufficient under Rule 33(d)). Moreover, Google's suggestion that Plaintiffs must have already done this work is misleading. *See* Dkt. 165 at 4. Plaintiffs sent Google an infringement notice regarding every ad, pirate seller, and Asserted Work reflected in the screenshots. Atty. Decl. ¶ 15. These notices include a spreadsheet identifying Google's infringing ads by URL, the pirate sellers promoted in the ad by landing page URL, *and* the corresponding Asserted Work by title, ISBN, and an online location where the work may be lawfully purchased, e.g., Plaintiffs' websites. *Id*. Although Google receives these notices, generally weekly, Plaintiffs produced them in discovery, and further produced the cumulative notice data in spreadsheet form. *Id.* It is the notices that form the basis of Plaintiffs' claims.

Fourth, as explained above, Google already has the information it needs to do the analyses if it so chooses. Google has the screenshots and can extract information from them just as Plaintiffs can. Google can also use the metadata that Plaintiffs provided with their production, which includes the filename field that often reflects the book title or ISBN. *Id.* ¶ 12. Additionally, Google has, and has long had, the data in Plaintiffs' notices discussed above. And Google has the information about its own ads that it ran for its own pirate customers, including the ad dates, the books advertised, and the landing pages to which the ads link. *See id.* ¶ 14.

Fifth, Google's motion to compel fails because Plaintiffs provided Rule 34-compliant responses to Google's RFP in the first instance. In *Rocco v. New York State Ct. Officers Ass'n,* 2024 WL 5247686, at *2 (S.D.N.Y. Dec. 30, 2024), the plaintiff asked the defendant by interrogatory which documents supported which of its affirmative defenses. Because, "under Rule 34, the producing party need only 'produce documents as they are kept in the usual course of business,'" the defendant's response directing the plaintiff to its document production was proper, even though it "did not identify which documents support which defenses."[3] *Id.* (quoting Fed. R. Civ. P. 34(b)(2)(E)).

Sixth, Plaintiffs can rely on Rule 33(d). Rule 33(d) provides that "[i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records," and, as in this case, "the burden of deriving or ascertaining the answer will be substantially the same for either party," the party "may answer by . . . specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could . . . ." A party "satisfie[s] their obligation under Rule 33(d) by making available all of the records within their possession, custody, or control, *as they are currently maintained* . . . [;] [t]he rules require no more." *Iron Workers Loc. No. 60 Annuity Pension Fund v. Solvay Iron Works, Inc.*, 2017 WL 1458772, at *7 (N.D.N.Y. Apr. 24, 2017) (the plaintiffs could make their own calculations from the documents defendant produced) (emphasis added). Plaintiffs have already produced the business records as they are "currently maintained." Thus, Plaintiffs need only refer Google to these records by bates number range. *See* Atty. Decl. ¶¶ 12–13. Nothing in Rule 33(d) requires the responding party to extract specific content from the documents and compile new information. And Google can compile such information "as readily as" Plaintiffs. *See BBAM Aircraft Mgmt. LP v. Babcock & Brown LLC*, 2024 WL 1270666, at *6–

---

[3] That the screenshots include some ads and landing pages for works other than the Asserted Works, including works published by another educational publisher, is inapposite. *See* Atty. Decl. ¶ 13. By claiming a safe harbor defense, Google has put its whole alleged DMCA program at issue. Thus, its "actions towards copyright holders who are not a party to the litigation," or with respect to infringed works beyond the specific works-in-suit, are "relevant in determining whether [the defendant] reasonably implemented their repeat infringer policy." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007).

Hon. Jennifer L. Rochon
August 13, 2025

7 (D. Conn. Mar. 25, 2024) (responding party can direct requesting party to compilation of "thousands of documents" when "burden of producing a response to interrogatory . . . was substantially the same for each party").[4]

In sum, during fact discovery, Plaintiffs are required to produce ESI as it is ordinarily maintained, which Plaintiffs have done. Plaintiffs are not required to undertake a significant burden to further slice-and-dice that information for Google. The Court should deny Google's motion.

## II.    Plaintiffs' initial disclosures regarding damages are not deficient.

Google's motion concerning Plaintiffs' initial disclosures is unfounded for at least five reasons. First, it is a back-door effort seeking to force Plaintiffs to make an election between statutory or actual damages, which is not required until final judgment is rendered. Second, Plaintiffs' disclosures are more than sufficient based on the information that is reasonably available to them. Third, initial disclosures concerning statutory damages do not involve a "computation" at any stage of litigation. Fourth, if and once Google produces the necessary information that is currently outstanding, Plaintiffs will need to rely on their experts to analyze it and other damages-related information. Fifth, Google's claims of prejudice are hollow; Google knows the nature of the infringing activity and its exposure in this case. Finally, to the extent that Google is seeking a draconian preclusion measure, its request is a ploy to gain an artificial advantage in this case, based on no controlling or comparable case law, and fundamentally inconsistent with the damages regime of the Copyright Act and the Lanham Act.

### A.    Plaintiffs should not be forced into an early election of their method of recovery.

Under both the Copyright Act and the Lanham Act, Plaintiffs may elect to recover statutory damages in lieu of actual damages and the infringers' profits. *See* 17 U.S.C. § 504(b)–(c); 15 U.S.C. § 1117(a)–(c). Both statutes explicitly allow Plaintiffs to make such an election up until "final judgment is rendered." 17 U.S.C. § 504(c)(1); 15 U.S.C. § 1117(c)(1). Through its motion, Google is attempting to force Plaintiffs to make an early election.

Plaintiffs have properly made their initial disclosures with respect to both potential methods of recovery. *See* Dkt. 165-32 (Pls' Am. Rule 26(a)(1) Disclosures). If Plaintiffs ultimately elect to pursue statutory damages for all or some of the Asserted Works, they will update their disclosures at the time they make that election. However, as discussed below, a "computation" under Rule 26(a)(1)(A)(iii) is not required for statutory damages – the range of which is specified by statute. *See* 17 U.S.C. § 504(c)(1)–(2); 15 U.S.C. § 1117(c)(1)–(2).

---

[4] Google cites *Brunero v. Vukasinovic*, 2024 WL 4345731 (S.D.N.Y. Sept. 30, 2024) in its motion, which supports Plaintiffs' argument. The defendant's document production suffered from multiple deficiencies, and the court simply found that "it is not enough that [he] respond generally that the answer to the interrogatories can be discerned by [sic] reviewing the documents that he previously produced." *Id.* at *5–6. Plaintiffs have not sought to take this approach. In *In re Weatherford Int'l Securities Litigation*, the court allowed an interrogatory seeking the names of witnesses (which is expressly permitted by Local Civil Rule 33.3(a)) and limited information regarding a "discrete set of transactions" that the defendant could not find in the plaintiffs' production. 2013 WL 5788680, at *3 (S.D.N.Y. Oct. 28, 2013). It was only in that context that the court gave the defendant the opportunity to identify the responsive documents instead of answering the interrogatory. *Id.*

Hon. Jennifer L. Rochon
August 13, 2025

### B. Rule 26(a)(1) does not require a party to provide information that it does not have.

A party's obligation under Rule 26(a)(1) "applies only with respect to documents then reasonably available to it." Fed. R. Civ. P. 26 Advisory Committee's Notes, 1993 Amendments. Further, "a party would not be expected to provide a calculation of damages which . . . depends on information in the possession of another party or person." *Id.* Rule 26(a)(1) accordingly "anticipates supplemental disclosures with ever-greater level of detail as discovery progresses." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) (internal citations omitted). Rule 26(a)(1) also "does not elaborate on the level of specificity required in the initial damages disclosure." *City & Cnty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 220 (N.D. Cal. 2003). Therefore, at this stage of litigation, courts do not "yet mandate disclosure of precise calculations," where "many of the documents which are likely to inform the calculation remain in Defendants' hands and some level of expert analysis may be required." *Tutor-Saliba*, 218 F.R.D. at 222. Moreover, "[s]upplementations need not be made as each new item of information is learned," and a party is "entitled to verify the thoroughness of the information received before supplementing its disclosures," such as through meet-and-confers and depositions. *Undiscovered Corp. v. Heist Studios*, 2019 WL 8219489, at *2–3 (C.D. Cal. Oct. 1, 2019) (cleaned up).

Based on information currently available to them, Plaintiffs have disclosed their potential damages theories in their initial disclosures.[5] Dkt. 165-32. However, it is impossible for Plaintiffs to perform "computations" as to actual damages and profits with any reasonable degree of precision at this time. The scope of infringement is still in question. Google waited until July 22 to disclose the dates on which it ran ads for the pirates at issue, which is necessary for Plaintiffs to understand how extensively Google advertised these pirates. Atty. Decl. ¶ 19. Google likewise waited until July 22 to produce data on how many clicks on ads resulted in a purchase of the pirated work, and data on the price Google charged for each click on a pirate ad, which is key evidence of Google's infringing profits. *Id.* Plaintiffs are still analyzing this data. *Id.* But so far, it appears that this data still is incomplete and that Google has not even identified all the Merchant Center accounts associated with the pirates at issue. *Id.* In addition, Google has refused to disclose the revenue it earned from the pirates on other Google platforms besides Shopping. *Id.*

Even when Google produces the outstanding information, Plaintiffs anticipate relying on their experts' calculations and analyses concerning damages. *See Hewlett Packard Co. v. Factory Mut. Ins. Co.*, 2006 WL 1788946, at *18 (S.D.N.Y. June 28, 2006) (following production of expert report, holding that plaintiff's disclosure "now satisfies the requirement that [plaintiff] make [defendant] aware of the damages it is seeking"). Indeed, this is not a case where damages calculations can readily be performed by non-experts. Accordingly, while Plaintiffs will

---

[5] As specified in Plaintiffs' initial disclosures, the amount of statutory damages may be based upon a variety of factors, including, but not limited to, the expenses saved and the profits reaped by the infringer; the revenues lost by the plaintiff; the value of the copyrights infringed; the deterrent effect on others besides the defendant; whether the defendant's conduct was willful; whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; the defendant's culpability and punishment for such culpability; and the potential for discouraging the defendant. Dkt. 165-32 at 2-3 (citing *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986) and *Union of Orthodox Jewish Congregation of Am. v. Royal Food Distributors Liab. Co.*, 665 F. Supp. 2d 434, 436 (S.D.N.Y. 2009). The disclosures further discuss components of actual damages and profits and what information is lacking concerning the same. *Id.* at 3-5.

Hon. Jennifer L. Rochon
August 13, 2025

supplement their initial disclosures, their current disclosures are consistent with the information reasonably available at the current stage of discovery in this case.

### C.  Numerical computation of statutory damages is not required.

Section 504(c)(1) of the Copyright Act enables courts to "impose a liability within statutory limits to sanction and vindicate the statutory policy," "[e]ven for uninjurious and unprofitable invasions of copyright." *F. W. Woolworth Co. v. Contemp. Arts*, 344 U.S. 228, 233 (1952). Consequently, the Second Circuit has explicitly declined to hold that "there must be a direct correlation between statutory damages and actual damages," because "[t]o suggest otherwise is to ignore the various other factors a court may consider and the purposes of statutory damages in the willful infringement context." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 126–27 (2d Cir. 2014) (upholding statutory damages award notwithstanding defendant's complaint that the award "bears no rational relationship to the plaintiff's actual loss"); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 113–14 (2d Cir. 2001) (upholding statutory damages award despite defendant's complaint that "it bears little relationship to the $19,000 in profits PAJ claimed to have earned"); *see also Capitol Recs., Inc. v. Thomas-Rasset*, 692 F.3d 899, 909–10 (8th Cir. 2012) (rejecting argument that the legal standard "calls for a comparison of an award of statutory damages to actual damages" because statutory damages are "by definition a substitute for unprovable or unprovable actual damages") (cleaned up); *Sony BMG Music Ent. v. Tenenbaum*, 660 F.3d 487, 502 (1st Cir. 2011) (rejecting argument that statutory damages depend on proving "harm caused by a particular defendant" where the text of Section 504 reflects Congressional intent "to give the owner of a copyright some recompense for injury done him, in a case where the rules of law render difficult or impossible proof of damages or discovery of profits") (cleaned up).

It would therefore go against the fundamental principles underlying statutory damages and binding Second Circuit precedents consistent with those principles to require that Plaintiffs provide "a computation" of their statutory damages or peg them to actual damages. Other courts squarely considering the issue have reached this conclusion. *See, e.g.*, *Undiscovered Corp.*, 2019 WL 8219489 at *5 (finding that "there is no 'computation' to be made by a plaintiff" with respect to trademark statutory damages, including, as with copyright statutory damages, because "whether the court awards statutory damages is entirely within the court's discretion, not on a particular damages computation otherwise required by Rule 26"); *Int'l Med. Devices, Inc. v. Cornell*, 2022 WL 17082090, at *9 (C.D. Cal. Sept. 26, 2022) (amended initial disclosures on statutory trademark damages and actual copyright damages stating "the nature and basis for the damages Plaintiffs seek" provided "sufficient notice" to defendants) (citing *Undiscovered Corp.*, 2019 WL 8219489 at *3–5); *GeoMetWatch Corp. v. Hall*, 2018 WL 6240991, at *16 (D. Utah Nov. 27, 2018) (denying defendants' motion to preclude plaintiff from recovering statutory damages where "Defendants do not cite, and the court has been unable to find, any authority suggesting that a party is precluded from seeking . . . statutory damages for failing to include a 'computation' of such damages in its initial disclosures").

Courts in the Second Circuit have long subjected statutory damages under the Lanham Act (15 U.S.C. § 1117(c)(1)) to the same analysis as the one applied to the Copyright Act, because "[t]he Copyright Act is not only similar in principle to the Trademark Act but identical in much of its statutory damages language." *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999); *see also*, *e.g.*, *Kaws, Inc. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A Hereto*, 2023 WL 5717517, at *4 (S.D.N.Y. Sept. 5, 2023) (applying the same analysis for copyright statutory

Hon. Jennifer L. Rochon
August 13, 2025

damages to trademark statutory damages because the court "need not repeat the analysis"). Hence, the analysis applicable to a party's obligations under Rule 26(a)(1)(A)(iii) with respect to copyright statutory damages is applicable to the same with respect to trademark statutory damages, and vice versa.[6] In both contexts, "there is no necessary mathematical relationship between the size of" a statutory damages award and relevant statutory damages factors. *Sara Lee*, 36 F. Supp. 2d at 165.

The *Atari* case Google cites stands for the unremarkable proposition that at trial, a party may not "present any evidence that it did not identify or disclose prior to the close of fact discovery." *Atari*, 546 F. Supp. 3d at 889. Although the plaintiff there failed to disclose any "evidence" on damages and hence was precluded from presenting previously undisclosed evidence at trial, it was still permitted to seek minimum statutory damages and rely on revenue-related documents produced by defendants during discovery to seek a higher amount. *Id.* It does not support the extraordinary position that a party must somehow "comput[e]" statutory damages even though they are inherently not "mathematical" (*Sara Lee*, 36 F. Supp. 2d at 165), or risk preclusion of evidence properly in the record. By contrast, *Undiscovered Corp.*'s finding that Rule 26(a)(1) does not require any "computation" for statutory damages much better comports with the principles underlying statutory damages that have been consistently upheld by the Second Circuit.

Google also cannot seriously claim that it does not know what range of statutory damages Plaintiffs will seek if Plaintiffs elect such damages. The range of available damages is spelled out in the Copyright Act and the Lanham Act. Plaintiffs have specifically alleged, beginning with the complaint, that Google's infringing conduct is "willful," thus implicating enhanced statutory damages under both statutes. *See, e.g.,* Dkt. 38 ¶¶ 10, 129, 143, Prayer for Relief (b) & (d). Even in Google's motion, Google states that "Plaintiffs presumably will be seeking a separate award of [copyright] statutory damages of up to $150,000." Dkt. 165 at 1.

### D. Plaintiffs will need to rely on expert analysis in reviewing key information once Google produces it and in further analyzing damages.

As explained above, much of the information bearing upon actual damages is still in Google's sole possession. If and once Google produces it, to the extent that Plaintiffs eventually pursue actual damages, Plaintiffs will also need to rely on experts to perform precise computations. *See Hewlett Packard*, 2006 WL 1788946 at *11 (allowing plaintiff to "present its damages analysis only through the vehicle of an expert report" where the court recognized that plaintiff "was planning to rely on expert testimony to establish the amount of its claimed damages," and understood plaintiffs' "reluctance to offer Rule 26(a) disclosures on damages when its computation would necessarily be the subject of expert disclosures"); *cf. Eisen v. Day*, 2024 WL 1244482, at *3 (N.D. Cal. Mar. 21, 2024) (delay in providing "damages amounts" would be "substantially justified" if they were "disclosed as part of expert discovery or otherwise").

"[G]iven that many of the documents which are likely to inform the calculation remain in [Defendant's] hands and some level of expert analysis may be required," it is premature, at this stage, to "mandate disclosure of precise calculations." *Tutor-Saliba*, 218 F.R.D. at 222; *see generally Gentner v. Navient Sols., Inc.*, 2022 WL 3334269, at *3–4 (W.D.N.Y. Aug. 12, 2022) (plaintiff was "substantially justified" in not providing precise computations where "[a]t the time

---

[6] Contrary to Google's mischaracterization (Dkt. 165 at 8), the *Atari* court does not distinguish *Undiscovered Corp.* on the ground that it is a trademark case—in fact, the *Atari* court itself relied on other trademark cases. *See Atari Interactive, Inc. v. Redbubble, Inc.*, 546 F. Supp. 3d 883, 888 (N.D. Cal. 2021), *aff'd in part, appeal dismissed in part*, 2023 WL 4704891 (9th Cir. July 24, 2023) (discussing other trademark cases).

Hon. Jennifer L. Rochon
August 13, 2025

[plaintiff] made her initial disclosures, it was premature to provide a final computation of her damages, as she planned to seek discovery" and not limiting "the evidence she is permitted to present at trial . . . by that initial disclosure"). Given the complexities of this case, awaiting expert testimony for computations is appropriate. Otherwise, it is highly likely that Plaintiffs will be in the position of providing disclosures that need to be redone.

### E.  Google has not been prejudiced by Plaintiffs' initial disclosures.

Google claims it has been "prejudiced" because of the August 15 document discovery deadline. Dkt. 165 at 8. However, Google has already served requests for production on Plaintiffs regarding facts relevant to the damages theories that Plaintiffs identified, and Plaintiffs have produced documents in response.[7] Atty. Decl. ¶ 3. For instance, Plaintiffs have produced substantial economic data related to the Asserted Works, including, for each Asserted Work, revenue and profitability data since 2019, total sales for the life of the work, and the royalties paid to the authors of each Asserted Work. *Id.* ¶ 17. Google's purported concern about the August 15 deadline also is belied by its own failure or outright refusal to produce documents bearing on the profits it gained from infringing activities.

Further, fact discovery is far from over. Despite Google's incorrect statement that there are only "ten days left of fact discovery" (Dkt. 165 at 8), significant aspects of fact discovery are ongoing (interrogatories) or have yet to commence (requests for admission and fact-witness depositions), and overall fact discovery is not set to be completed until November 17, 2025. Dkt. 110 at 3. The parties have also yet to engage in expert discovery, which concludes on March 16, 2026. *Id.* Even without Google's requested 90-day extension of the case schedule,[8] discovery remains open for another eight months, allowing Google plenty of opportunities to fully develop the facts it claims support its defenses.

### F.  A preclusion order under Rule 37(c)(1) would be extreme and unprecedented.

Google's principal request appears to be that the Court order Plaintiffs to further amend their initial disclosures. Plaintiffs have already amended their initial disclosures consistent with Google's demands, to the extent they were able to do so, as described above. Google contemplates in its motion that the next step is to require Plaintiffs to further amend their disclosures. Dkt. 165 at 9. Plaintiffs will of course follow the Court's direction but submit that they lack clarity on what else can be done at this point given the state of fact and expert discovery.

Google proposes as an "alternative" the most draconian of remedies – that Plaintiffs be precluded from seeking actual damages in an amount "greater than Google's revenue received from" an incomplete set of pirate sellers and statutory damages that exceed the statutory minimum.

---

[7] For example, Google's First Set of Requests for Production of Documents seeks documents related to the valuation of and revenue generated from the Asserted Works, the impact of infringement on the Asserted Works, the value of the trademarks at issue, and the financial harm suffered by Plaintiffs. *See* Dkt. 165-2, 165-3, 165-4, 165-5 (Plaintiffs' responses); Atty Decl. ¶ 3.

[8] Google sought a 90-day discovery extension in the Joint Status Report, which Plaintiffs' opposed. Dkt. 138 at 6, 8-10. In this motion, Google seeks another unspecified discovery extension "to ensure that adequate fact discovery can be conducted regarding [Plaintiffs'] damages theories." Dkt. 165 at 9. As discussed above, the only discovery deadline that is imminent, absent an extension, is document discovery, and Google has already asked Plaintiffs to produce documents bearing on their actual damages.

Hon. Jennifer L. Rochon
August 13, 2025

Dkt. 165 at 9. Google's proposed preclusion sanction is untethered to the facts of this case or the law.

As discussed above, Plaintiffs' initial disclosures are appropriate for this stage of the case. However, even if the Court were to find that Plaintiffs must supplement these disclosures now, there is no basis to limit Plaintiffs' ultimate remedy. Neither Rule 37(c)(1), which does not provide for the preclusion of evidence if the "failure was substantially justified or is harmless," nor the weight of authority in this Circuit, supports this outcome. Indeed, courts in this Circuit have long recognized that preclusion of evidence under Rule 37(c)(1) is a "harsh remed[y] and should be imposed only in rare situations." *Clones Inv., LLC v. People's Ins. Co. of China Prop. & Cas. Co. Ltd.*, 792 F. App'x 126, 128 (2d Cir. 2020) (summary order); *see also Hewlett Packard*, 2006 WL 1788946 at *15, *18 ("[C]ourts in this Circuit have recognized that preclusion of evidence is a disfavored remedy that should be exercised with discretion and caution.").

Rather, courts have found a lack of precise damages computations to be either "substantially justified" or "harmless," and either finding precludes the application of Rule 37(c)(1) sanctions. Fed. R. Civ. P. 37(c)(1). For instance, in *Undiscovered Corp.*, the court found that any delay in the plaintiff's revising its Rule 26(a) damages disclosure was "substantially justified," where it could not provide computations "until [it] was able to examine Defendant on its revenue, profits and accounting of the alleged infringing products." 2019 WL 8219489 at *3; *see also Gentner*, 2022 WL 3334269 at *4 ("failure to disclose the full computation of her damages was substantially justified" where plaintiff planned to conduct relevant discovery); *New York v. United Parcel Serv., Inc.*, 942 F.3d 554, 592 (2d Cir. 2019) (affirming denial of preclusion sanctions because any Rule 26(a)(1)(A)(iii) deficiencies were "harmless" where, among others, "the plaintiffs disclosed their damages theory from the beginning"); *Athena Cosms., Inc. v. AMN Distribution Inc.*, 2022 WL 4596549, at *9 (C.D. Cal. Aug. 16, 2022), *aff'd*, 2024 WL 3423712 (9th Cir. July 16, 2024) ("[A]ny failure to provide a formal 'computation' of damages is both substantially justified and harmless" where "Defendants themselves have failed to produce any books or records . . . that show their profits.").

In determining whether preclusion of evidence under Rule 37(c)(1) is appropriate, courts in this Circuit also consider "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the [evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new [evidence]; and (4) the possibility of a continuance." *Design Strategy*, 469 F.3d at 296 (cleaned up). All four factors militate against imposing Google's proposed draconian sanctions here.

Regarding factor (1), Plaintiffs have explained that they are not yet able to conduct a computation of actual damages plus profits, including because Google has yet to produce substantial relevant information, and they plan to rely on their experts' analysis in this complicated case. Further, there is no computation to be performed with respect to statutory damages.

Where the evidence the movant seeks to preclude is important, factor (2) "weighs heavily against preclusion." *Clones Inv., LLC v. People's Ins. Co. of China & Cas. Co. Ltd.*, 2019 WL 10817175, at *3 (S.D.N.Y. Jan. 31, 2019), *aff'd*, 792 F. App'x 126 (2d Cir. 2020). Here, the evidence is not just important, it would drastically impact Plaintiffs' ultimate remedy, especially given Google's widespread infringement of their works and trademarks.

Factor (3) also favors Plaintiffs because Google is not prejudiced. As discussed above, Google has already been able to conduct document discovery on the facts relevant to Plaintiffs'

Hon. Jennifer L. Rochon
August 13, 2025

damages theories; it has yet to serve many of its interrogatories or serve any requests for admission or conduct depositions; and expert discovery has yet to commence. *See id.* (denying evidence preclusion where movant is "not unduly prejudiced"). And while Google has interrogatories remaining, it has already served an interrogatory on Plaintiffs seeking "all facts supporting Your theory of damages," with a litany of subparts. Atty. Decl. ¶ 8. Much like Google's interrogatory 4 discussed above, Google served this premature contention interrogatory 5, over which Plaintiffs still spent months conferring with Google in an effort to reach a compromise. *Id.* ¶ 10. While the parties' focus had been entirely on this interrogatory, going back to March 2025 (and Plaintiffs believed they had reached agreement), Google pulled a bait-and-switch and filed the instant motion. *See* June 26, 2025 email from K. Lindsey, Dkt. 165-9 at 6–8.

Finally, given the case schedule, factor (4) likewise favors Plaintiffs. *See Anthem, Inc. v. Express Scripts, Inc.*, 660 F. Supp. 3d 169, 186 (S.D.N.Y. 2023) (fourth factor weighs against the "drastic remedy" of preclusion where "a limited continuance is possible"). Discovery does not close for another eight months, even without Google's 90-day extension request.

In support of their argument (besides *Atari*, distinguished above), Google only cites two copyright cases, both of which involved procedural postures that bear no relation to the facts here. In *Automated Mgmt. Sys., Inc. v. Rappaport Hertz Cherson Rosenthal, P.C.*, 2024 WL 4987018, at *1, *5 (S.D.N.Y. Dec. 4, 2024), and *Agence France Presse v. Morel*, 293 F.R.D. 682, 683–84 (S.D.N.Y. 2013), the courts precluded previously undisclosed evidence (*Automated Mgmt. Sys.*) or a damages theory (*Agence France Presse*) upon motions-in-limine long after the close of discovery and shortly before trial. And in none of Google's cases does the court issue a preclusion order in a scenario remotely similar to this – where months of fact discovery remain, expert discovery has not commenced, the plaintiffs' damages theories have been disclosed, relevant documents have been produced, and the time for a statutory damages election has not yet occurred. [9]

### III.  Plaintiffs agreed to an extension of the deadline for the parties to serve requests for admission and no further extension is necessary.

In an effort to reach a compromise, Plaintiffs agreed to a four-week extension of the deadline for serving requests for admission (from August 29 to September 26). *See* Dkt. 110 at 3. Plaintiffs do not agree that moving the deadline until October 17 is necessary. *See* Dkt. 165 at 9. Given Google's ongoing harmful conduct, Plaintiffs' overarching goal remains to keep the case moving forward.

### IV.  Conclusion

For the reasons stated above, the Court should deny Google's motion in its entirety.

---

[9]

*Design Strategy* is an employment case where the court decided a post-summary-judgment motion to preclude evidence at trial. *Tang Cap. Partners, LP v. BRC Inc.*, 2025 WL 1785245(S.D.N.Y. June 27, 2025), is a breach of contract case where the court decided a pre-trial motion-in-limine. And *Roberts v. Ground Handling, Inc.*, 2007 WL 2753862 (S.D.N.Y. Sept. 20, 2007), is also an employment case where the court decided a post-summary-judgment motion to preclude evidence at trial.

Hon. Jennifer L. Rochon
August 13, 2025

Respectfully submitted,

*/s/ Michele H. Murphy*

Michele H. Murphy
OPPENHEIM + ZEBRAK, LLP

*Counsel for Plaintiffs*