**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CENGAGE LEARNING, INC. et al.<br><br>                 Plaintiffs,<br><br>       v.<br><br>GOOGLE LLC,<br><br>                 Defendant. | **Civil Action No. 24-cv-04274-JLR-BCM** |

## ATTORNEY DECLARATION OF MICHELE H. MURPHY

1.      I am a partner at the law firm Oppenheim + Zebrak, LLP ("O+Z"), counsel for Plaintiffs Cengage Learning, Inc. ("Cengage"), Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning ("Macmillan Learning"), Elsevier Inc., and McGraw Hill LLC (collectively, "Publishers"), and Plaintiffs Macmillan Holdings, LLC and Elsevier B.V. (collectively, "Trademark Plaintiffs," and with Publishers, "Plaintiffs") in this matter. I submit this declaration in support of Plaintiffs' Opposition to Defendant's Omnibus Discovery Letter Motion (Dkt. 163).

2.      I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently hereto.

**Defendant's Discovery Requests and Plaintiffs' Responses and Objections**

3.      Defendant served Plaintiffs with its First Set of Requests for Production on September 18, 2024. Plaintiffs served their responses and objections to Defendant's First Set of Requests for Production on October 18, 2024. *See* Dkt. 165-2, 165-3, 165-4, 165-5. Among these requests are those seeking documents concerning the valuation of each Asserted Work, i.e., the works listed on Amended Exhibit A to the Amended Complaint (RFP 23: "All Documents and

Communications Concerning Your valuation of each Asserted Work, Including any estimated

sales reports, valuation reports, or similar evaluative assessments including any Asserted Work,

whether conducted by You or any Third Party."); the revenue associated with the Asserted Works

(RFP 24: All Documents and Communications Concerning Your efforts, whether past or present,

to market, sell, license, rent, distribute, or otherwise exploit each Asserted Work and each Asserted

Copyright, Including without limitation Documents sufficient to show the revenue You receive for

each Asserted Work and each Asserted Copyright for each such exploitation); the impact of

infringement (RFP 31: For each Asserted Work, all Documents and Communications Concerning

any effect the alleged infringement had on the market or demand for the Asserted Work"); the

trademarks at issue (RFP 34: "All Documents and Communications Concerning Your advertising,

marketing, or promotion of each Asserted Trademark, Including without limitation, the type,

location/geographic reach, date, and any media plans, public relations materials, press kits and

correspondence with advertising agencies, public relations firms, media planners, graphic

designers, web site designers, or other Third Parties regarding the Asserted Trademark."); and

financial harm (RFP 42: All Documents and Communications Concerning Your contention that

You suffered financial harm from the alleged acts in the Complaint, Including all Documents

Concerning Your contention that Google's practices 'harms the Publishers, whose sales decrease,

while the pirates' sales increase' as alleged in paragraph 9 of the Complaint.").

     4.     Defendant served its First Set of Interrogatories on Publishers on February 14,

2025. Defendant's Interrogatory No. 4 is:

> For each Asserted Work for which You are listed as the "Publisher" on Exhibit A to the
> Amended Complaint, identify All facts supporting Your claim(s) of infringement for that
> Asserted Work, Including every Unauthorized Seller that You allege engaged in direct acts
> of infringement for which Plaintiffs contend Google is liable; the domain of every
> Unauthorized Seller that You allege advertised an Asserted Work on Google's platform;
> every sale or other distribution of the Asserted Work made by an Unauthorized Seller,

Including the date such sale or distribution was made, and to whom such sale or distribution was made; every copy of the Asserted Work made by an Unauthorized Seller, Including when and where such copy was made; the first date You contend You were aware of an Unauthorized Seller's infringement of the Asserted Work; the beginning bates number for the authentic copy of the Asserted Work; *the beginning bates number for each Document depicting an act of public display of an Asserted Work on an Unauthorized Seller's webpage; the beginning bates number for each advertisement of an Asserted Work by an Unauthorized Seller on Google's platform;* every date on which You attempted to advertise the Asserted Work on Google but were not permitted to do so; the first date (if any) that You contacted Google Regarding the Unauthorized Seller's advertisement on Google's platform; the beginning bates number for each Communication (if any) You had with Google Regarding the Unauthorized Seller's advertisement on Google's platform; and the beginning bates number for each Communication (if any) You had with the Unauthorized Seller Regarding their alleged infringement of the Asserted Work.

(emphasis added).

5.      Cengage, Macmillan Learning, and McGraw Hill served their responses and objections to Defendant's First Set of Interrogatories on March 17, 2025, and Elsevier served its responses and objections on March 24, 2025, pursuant to the parties' agreement.

6.      The Publishers' response to Defendant's Interrogatory No. 4 is:

1.      Plaintiff objects to this interrogatory on the grounds that it is improper under Local Civil Rule 33.3. This interrogatory asking Plaintiff to "identify All facts supporting [its] claim(s) of infringement for [each] Asserted Work, "Including [but not limited to]" by providing a host of specific information, exceeds the scope of interrogatories permitted at this stage of the litigation under Local Civil Rule 33.3. *See, e.g., Pauwels v. Bank of N.Y. Mellon Corp.*, 2024 WL 4040357, at *1 (S.D.N.Y. Apr. 9, 2024) (holding that plaintiff need not answer portion of interrogatories that "are overbroad and improper at this stage under Local Rule 33(b)"); *US Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*, 288 F.R.D. 282, 289 (S.D.N.Y. 2012) (holding that plaintiff "need not answer the [] interrogatories" because the interrogatories "exceed the scope of questions permitted by Local Civil Rule 33.3"). On this basis alone, Plaintiff is not required to answer the interrogatory and will not do so. Without waiving this position, Plaintiff sets forth below additional objections to the interrogatory.

2.      Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, disproportionate to the needs of the case, and seeks information that is not relevant to the claims or defenses in the case, including but not limited on the following bases:

    a.      The interrogatory improperly purports to require Plaintiff to extract and catalog significant information that already is contained in documents Plaintiff has or will produce in this case, including, without limitation, documents regarding the Pirate

Sellers and Pirate Sites, as defined in the Amended Complaint, and Plaintiff's infringement notices to Defendant.

b.  The interrogatory improperly purports to require Plaintiff to prepare a log related to its document production that is not required by Fed. R. Civ. Pro. 34(b)(2)(E).

c.  Certain specific information sought, including but not limited to the first date Plaintiff became "aware of an Unauthorized Seller's infringement of the Asserted Work," has no bearing on the claims or defenses in this case, which is focused on Google's conduct. Nor is requiring Plaintiff to identify "every date on which [Plaintiff] attempted to advertise the Asserted Work on Google but [was] not permitted to do so" relevant and/or proportional, especially when Google purportedly had a policy banning all standalone ebook ads, and Google has all the information regarding ads that it allowed and disallowed.

3.      Plaintiff objects to this interrogatory on the grounds that contention interrogatories such as this, which ask for each fact that supports the party's allegations, require the application of law to fact, and/or seek a narrative account of a party's case or a significant part thereof are overbroad, unduly burdensome, and not proportional.

4.      Plaintiff objects to this interrogatory on the grounds that it is compound and calls for multiple, separate interrogatory responses.

5.      Plaintiff objects to this interrogatory on the grounds that it is unreasonably duplicative of other discovery requests.

6.      Plaintiff objects to this interrogatory to the extent it seeks information not within Plaintiff's possession, custody, or control, as well as information that is in Defendant's possession, custody, or control and more readily available to Defendant.

7.  Plaintiffs and Defendant met and conferred for months concerning Plaintiffs' response to

Defendant's Interrogatory No. 4. Plaintiffs agreed to provide, shortly after the end of document

discovery, information in response to several requests in Interrogatory No. 4, including but not

limited to the beginning bates number identifying Plaintiffs' evidence of test buys from pirate

sellers by Asserted Work and Plaintiffs' notices of infringement to pirate sellers. Plaintiffs agreed

to provide these responses in an effort to reach a compromise with Defendant and because doing

so does not present a burden such as that implicated by its current requests.

8.  Defendant's Interrogatory No. 5 is:

For each Asserted Work for which You are listed as the "Publisher" on Exhibit A to the Amended Complaint, identify All facts supporting Your theory of damages—for the period January 1, 2021 to present—Including the price(s) at which You sold the Asserted Work; Your valuation of the Asserted Work; the revenue You receive for the Asserted Work broken down by year; the total royalty distributions to the Authors of the Asserted Work broken down by year; Your profits for the Asserted Work broken down by year; the amount of lost revenue You allege in this Action broken down by each year for which You allege harm; and Your purported damages for the harm You allege in this Action, by Asserted Work, for each year for which You allege harm.

9.      The Publishers' response to Defendant's Interrogatory 5 is:

1.      Plaintiff objects to this interrogatory on the grounds that it is improper under Local Civil Rule 33.3. This interrogatory asking Plaintiff to "identify All facts supporting Your theory of damages, "Including [but not limited to]" by providing a host of specific information, exceeds the scope of interrogatories permitted at this stage of the litigation under Local Civil Rule 33.3. *See, e.g., Pauwels v. Bank of N.Y. Mellon Corp.*, 2024 WL 4040357, at *1 (S.D.N.Y. Apr. 9, 2024) (holding that plaintiff need not answer portion of interrogatories that "are overbroad and improper at this stage under Local Rule 33(b)"); *US Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*, 288 F.R.D. 282, 289 (S.D.N.Y. 2012) (holding that plaintiff "need not answer the [] interrogatories" because the interrogatories "exceed the scope of questions permitted by Local Civil Rule 33.3"). On this basis alone, Plaintiff is not required to answer the interrogatory and will not do so. Without waiving this position, Plaintiff sets forth below additional objections to the interrogatory.

2.      Plaintiff objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, disproportionate to the needs of the case, and seeks information that is not relevant to the claims or defenses in the case, including but not limited on the following bases:

    a.   The interrogatory improperly purports to require Plaintiff to extract and catalog significant information that already is contained in documents Plaintiff has or will produce in this case, including, without limitation, documents regarding valuation, pricing, and/or revenue information concerning the Asserted Works.

    b.   The breadth and type of the specific information sought does not correlate to Plaintiff's damages suffered in this case. For example, the total royalty distributions to the Author of an Asserted Work has no bearing on the damages Plaintiff suffered as a result of Defendant's infringement.

    c.   A request to recite "all facts that support" a party's claims, contentions, or theories in a case is unreasonably burdensome and not proportional. This is particularly so here, where Plaintiff's document production, and Google's own information, provides the pertinent information to support Plaintiff's claims.

3.      Plaintiff objects to this interrogatory on the grounds that it is vague and ambiguous, particularly with respect to the undefined term "valuation."

4.     Plaintiff objects to this interrogatory to the extent its response calls for a legal conclusion regarding Plaintiff's damages "theory."

5.     Plaintiff objects to this interrogatory on the grounds that contention interrogatories such as this, which ask for each fact that supports the party's allegations, require the application of law to fact, and/or seek a narrative account of a party's case or a significant part thereof, and are overbroad, unduly burdensome, and not proportional.

6.     Plaintiff objects to this interrogatory on the grounds that it is compound and calls for multiple, separate interrogatory responses.

7.     Plaintiff objects to this interrogatory on the grounds that it is unreasonably duplicative of other discovery requests.

8.     Plaintiff objects to this interrogatory to the extent it seeks information not within Plaintiff's possession, custody, or control, as well as information in Defendant's possession, custody, or control and more readily available to Defendant.

9.     Plaintiff objects to this interrogatory on the grounds it is premature. The full scope of Defendant's infringement is not yet known and will be more fully determined as discovery progresses. Plaintiff may also elect to recover statutory damages at any time before a final judgment is entered pursuant to 17 U.S.C. § 504(c).

10.     Plaintiff objects to this interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege or attorney work product doctrine.

10.     Similar to Defendant's Interrogatory No. 4, Plaintiffs and Defendant met and conferred for months concerning Plaintiffs' response to Defendant's Interrogatory No. 5.

11.     Plaintiffs served their amended initial disclosures on Google on August 5, 2025. A copy of these disclosures is filed at Dkt. 165-32.

**The Parties' Document Production**

12.     I am familiar with Plaintiffs' and Defendant's document production in this case. Among the many documents Plaintiffs have produced are over 150,000 screenshots of Google Shopping search results showing Google's ads and the landing pages of the pirate sellers' websites to which the ads linked. Plaintiffs' vendor collected these screenshots.

13.     A review of the screenshots show that they are organized by date and saved with a filename of the URL of the webpage appearing in the screenshot. The landing page screenshots

can also be organized by the pirate seller website domain. Many, but not all, of the filenames contain the title and/or ISBN of the title that appears in screenshot, such as the filename for Exhibit 1 described below. The filenames were produced to Google in metadata associated with each screenshot.

14.     The screenshots that Plaintiffs produced include ads and landing pages for the Asserted Works and ads and landing pages for works other than the Asserted Works, including works published by another educational publisher who sent notices of infringement to Defendant concerning Shopping ads. Not every work identified in Plaintiffs' notices of infringement to Google necessarily corresponds to an Asserted Work. For instance, a notice can still be sent by a copyright holder even if the work is unregistered.

15.     Plaintiffs' document production includes infringement notices that Plaintiffs sent Google regarding every ad, pirate seller, and Asserted Work reflected in the screenshots. Plaintiffs' production also includes three spreadsheets identifying Google's Shopping ads at issue by the URL of the Google ad, when the ad was made available by Google, the pirate seller promoted in the ad by landing page URL, and the corresponding Asserted Work by title and ISBN of the work (and a URL to an online location where the work may be lawfully purchased, such as Plaintiffs' websites). The bates numbers for these spreadsheets are PL0000535577, PL0000543994, and PL0000792665. Plaintiffs regularly send these notices to Google, generally weekly. Plaintiffs produced all of these notices in discovery in addition to the spreadsheets, which represent cumulative notice data.

16.     A true and correct copy of Plaintiffs' produced document bearing the beginning bates number PL0000082410 is attached hereto as Exhibit 1. This is an example of a screenshot of Google Shopping search results that Plaintiffs produced to Defendant. This screenshot shows

Google Shopping search results for the Asserted Work *Financial Managerial Accounting*, 15th edition, published by Cengage. Several of the Shopping ads direct users to pirate sellers, including the ads showing domains brandflymedia, Classico Wine, Grabthebookz, and Inspire Uplift. The filename of this screenshot is:

https-__www.google.com_search_tbm=shop&q=Financial+Managerial+Accounting+15th.pdf.

17.    A true and correct copy of Plaintiffs' produced document bearing the beginning bates number PL0000080502 is attached hereto as Exhibit 2. This is an example of a screenshot of a pirate seller landing page selling the Asserted Work *Financial Managerial Accounting*, 15th edition. The filename of this document is:

https_brandflymedia_com_product_financial-managerial-accounting-15th-edition-by-carl-warren__fullpage.pdf.

18.    Plaintiffs have produced substantial economic data related to the Asserted Works, including, for each Asserted Work, revenue and profitability data since 2019, total sales for the life of the work, and the royalties paid to the authors of each Asserted Work.

19.    On July 22, 2025, Google produced data purporting to show the dates on which Google showed to its users ads for the pirates at issue. This appears to include data on how many clicks each ad received. For some ads, this includes data on "conversions," i.e., how many Google users clicked on the ad and subsequently purchased the work. Plaintiffs and their experts are still analyzing this data. But so far, it appears that this data is materially incomplete. Many Merchant Center accounts associated with the pirates appear to be missing (including many accounts that Google refuses to produce). Further, I understand that the offer and ads data that Google produced is missing many ads.

**The Burden of Extracting the Requested Information from Plaintiffs' Screenshot Evidence**

20.     Based on a review of a sample of the screenshot evidence Plaintiffs have produced, it would take substantial time and effort to extract the information requested by Google and which Google would like to analyze. As explained above, this is principally because the screenshots are not maintained or organized by Asserted Work. In contrast, Plaintiffs' vendor catalogued evidence of test buys by the work purchased in connection with each test buy. Likewise, Plaintiffs' vendor catalogued notices of infringement sent to pirate sellers by pirate-seller website or domain

21.     Google refers to over 150,000 screenshots in its motion, but this number is higher and closer to 250,000 based on Plaintiffs' current production. While the metadata will assist, to accomplish what Google appears to be asking, substantial manual review will also be needed to confirm the results and catalog them as needed. While it is difficult to determine how much time would be needed, based on tests conducted by my team, this could take up to 20,000 hours, or more.

I declare under penalty of perjury that the foregoing is true and correct.

Executed August 13, 2025 in Washington, D.C.


/s/ *Michele H. Murphy*
Michele H. Murphy