



Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
Jkane@oandzlaw.com

October 24, 2025

<u>VIA ECF</u>

The Honorable Barbara Moses
United States District Court for the Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

      Re:    *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
             Plaintiffs' Letter Motion for Discovery Conference

Dear Judge Moses,

    Google refuses to produce basic information concerning the services it provided to more than two hundred of the pirate websites for which Google advertised works-in-suit in this case. These are the very sites that sold the infringing ebooks at issue in this case that Google promoted. This Court should compel Google to produce this information. The Court likewise should compel Google to disclose the revenue it earned from all of the pirate websites that the pirates at issue operated. Pursuant to Local Civil Rule 37.2 and Your Honor's Individual Practices § 2(b), Plaintiffs request a discovery conference.

### I. Background

    Based on data currently available to Plaintiffs, there are 1,500 pirate websites for which Google advertised infringing copies of the works-in-suit in this case (i.e., Google advertised infringing copies of Plaintiffs' works sold on these websites). Declaration of Jeff Kane ("Atty. Decl.") ¶¶ 3, 7. For 1,239 of those sites, Google agreed to produce fundamental information, including the infringement notices Google received concerning these sites, the ads that Google ran for these sites, and the revenue Google earned from these sites. But for 261 sites, Google refuses to produce this information.

    The only distinction between these 261 sites and the other 1,239 is the timing of when Google disclosed them. Plaintiffs knew of the 1,239 sites because Plaintiffs observed Shopping ads for them prior to filing the first Amended Complaint in September 2024. Plaintiffs thus were able to disclose these pirate websites to Google in December 2024. Dkt. 72 ¶ 1. Then, in discovery, Google produced documents showing that the same Google accounts that operated these 1,239 websites also operated an additional 27,177 websites. Atty. Decl. ¶ 4. Google advertised infringing copies of Plaintiffs' works for at least 261 of these sites. *Id.* ¶ 7. Plaintiffs thus amended their complaint on July 14, 2025 to add works-in-suit, Dkt. 120, and shortly thereafter requested that Google produce limited discovery concerning these 261 sites. *Id.* ¶¶ 8–10. To be clear, just as was true with the 1,239 pirate websites Plaintiffs initially identified, *all* 261 of these pirate websites advertised at least one work-in-suit. *Id.* ¶ 7. And *all* 261 of these pirate websites are registered to the same Google accounts as are the other 1,239. *Id*. Yet Google has produced information about these sites only insofar as that information happened to be included in productions concerning the other 1,239.

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
Jkane@oandzlaw.com

**O+Z | Oppenheim + Zebrak, LLP**

WASHINGTON – NEW YORK

## II. The information Google refuses to produce is essential to this case.

The information Google refuses to provide is key to this case. Among other reasons, the infringement notices Google received about these pirate websites, the ads Google ran, and the revenue Google earned are relevant to Google's knowledge that it was advertising pirated content, Google's material contribution to infringement, Plaintiffs' damages, and determinations as to whether Google should have suspended these pirates sooner. *See Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) (knowledge and material contribution are elements of contributory copyright infringement); 15 U.S.C. § 1114(b) (knowledge is a consideration for direct trademark infringement). This is why Google produced this information for 1,239 of these pirate websites. And this information is called for by multiple RFP. Atty. Decl. ¶ 15 & Exs. 1 and 2 (RFP 22, 24, 25, 27, 28, 33, 34, 37, 38).

## III. Google's refusal to provide this information has no basis in fact or law.

Google, however, refuses to produce documents concerning these 261 pirate websites, solely because Plaintiffs learned of these sites through discovery from Google, rather than through their own observation of Google Shopping ads. This position contradicts both the facts of this case and Judge Rochon's scheduling order.

Plaintiffs explained as early as their proposed case management plan in August 2024 that Plaintiffs would not know the scope of Google's infringement until discovery. Dkt. 29-1 ¶ 6. As Plaintiffs explained at the initial conference before Judge Rochon, Plaintiffs cannot see every ad that Google runs. Declaration of Michele H. Murphy ¶ 6. First, there are too many of them (millions involved in this case alone). And second, Google targets ads to individual users; not every user sees the same ads. Am. Compl. ¶ 37. So even after identifying thousands of infringed works in the first Amended Complaint, and 1,239 pirate websites that advertised them, Dkts. 38-1, 138 at 5, Plaintiffs needed discovery from Google to determine what other of Plaintiffs' works Google infringed, and which pirate websites sold them.

Google opposed that request, saying that if Plaintiffs added works to the suit, Google would have to produce "discovery and analysis as to" the very items Plaintiffs request here: "Plaintiffs' takedown requests as to such works and Google's handling of such requests, among others." Dkt. 29-1 ¶ 6.

Judge Rochon agreed with Plaintiffs, allowing Plaintiffs an extended deadline to amend their complaint "solely to add alleged infringed copyrighted works or trademarks" to the case. Dkt. 34 ¶ 6. Further, at a hearing in March 2025, Judge Rochon specifically instructed Google to be prepared to produce additional documents after Plaintiffs added works to the complaint.

> I imagine if [Plaintiffs] add any new works in suit, there may be some additional discovery [Plaintiffs would be] seeking with respect to that . . . I would ask Google to please . . . keep your protocols in place, keep your ability to gather documents for new works in suit that may come through the amendment at the ready so that you can just pull those documents should there be additional requests made.

Hr'g Tr. 25:14–16, 27:9–13 (Mar. 17, 2025) (Dkt. 95). Indeed, Google acknowledged as much itself in a recent filing. Dkt. 138 at 8–9.

Case 1:24-cv-04274-JLR-BCM   Document 226   Filed 10/24/25   Page 3 of 4



Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
Jkane@oandzlaw.com

Read charitably, Google's argument appears to be that these 261 websites should be treated differently because, rather than sending infringement notices concerning these specific websites, Plaintiffs sent notices concerning other pirate websites *operated by the same pirates*. This confuses two distinct concepts: *pirates* and *pirate websites*. Each of these 261 websites are registered to the same Google accounts about which Plaintiffs sent infringement notices. Atty. Decl. ¶ 7. Thus, Google had knowledge of *all* of these *pirates*. There is no requirement that in order to have committed contributory copyright infringement or direct trademark infringement, Google must have received an infringement notice from a Plaintiff about the specific pirate *website* named in the ad. Google had knowledge that the party operating the site was a pirate, and so had knowledge that the site was a pirate website. And indeed, once Google produces the infringement notices concerning these 261 *pirate websites*, it may turn out that Google had knowledge of these specific websites from notices from rightsholders other than Plaintiffs. To the extent that Google wishes to argue that it lacked sufficient knowledge that these ads were infringing, that is a merits argument, not a basis to foreclose this discovery.

### IV.   Judge Rochon did not previously decide this issue.

Judge Rochon previously decided a dispute regarding the extent to which Google would have to provide information on relatedness among pirates. E.g., whether Google would provide the physical addresses or phone numbers of the pirates Plaintiffs identified so that Plaintiffs could discern whether two accounts were operated by the same pirate. Dkts. 46, 50. In resolving that dispute, the Court determined that any pirate site Plaintiffs identified must have been advertised by Google on or before September 16, 2024, the date of the first Amended Complaint. Dkt. 72 ¶ 1. *All* 261 pirate websites at issue here fit that criteria. Atty. Decl. ¶ 7.

Judge Rochon's order references websites that "Plaintiffs identified in Digital Millenium Copyright Act notices that Plaintiffs or their representatives sent to Google through September 16, 2024 . . . ." Dkt. 72 ¶ 1. But that language (which Google drafted) is simply a function of the fact that at the time, Google had not yet produced documents showing the ads it ran for the pirates in question. Thus, the only way for Plaintiffs to identify websites that "infringed one or more works asserted by Plaintiffs in . . . the Amended Complaint" was to refer to Plaintiffs' notices. *Id*. Judge Rochon was not making a ruling that the only pirate websites about which Plaintiffs could obtain discovery were sites that were named in Plaintiff infringement notices. Indeed, as explained in section II above, Judge Rochon's extension of the amendment deadline to allow Plaintiffs to add works-in-suit, and her comments at the March 17 hearing, indicate that Judge Rochon contemplated the very discovery Google refuses to produce.

### V.   Google's six-week delay in responding to Plaintiffs' request has delayed discovery.

On July 22, 2025, Google provided the ads data necessary for Plaintiffs to identify the 261 websites at issue here. Atty. Decl. ¶ 8. The next day, Plaintiffs informed Google that Plaintiffs would provide Google with a list of the pirate websites for which Google advertised a work-in-suit, and that were *not* among the 1,239 pirate websites Plaintiffs previously identified. *Id*. ¶ 9. On August 11, 2025, Plaintiffs provided Google with 546 such domains (which Plaintiffs later reduced to the 261 domains at issue here). The parties met and conferred on August 14. *Id*. ¶ 11 (providing details). Yet Google did not respond to Plaintiffs' August 11 request until September 23. *Id*. ¶ 12. At that time, Google offered to provide the information Plaintiffs were requesting for 281 domains



Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
Jkane@oandzlaw.com

(201 of which are among the 261 domains that Plaintiffs now request), if Plaintiffs agreed to a six-month extension of discovery. *Id.* ¶ 12. Discovery has now been extended by five months Dkts. 110 ¶ 8(c), 222 ¶ 4. Yet Google has changed its mind, and now refuses to produce additional documents concerning *any* of these sites.

The parties met and conferred again on September 25. Atty. Decl. ¶ 13 (providing details). At the October 8 hearing, the Court ordered Google to produce information concerning the 1,239 pirate websites for the period September 17, 2024 through March 31, 2025. Dkt. 217 ¶ 1(a). Plaintiffs suggested to Google that, as Google was pulling this information for the 1,239 pirate sites anyway, Google should do so for the additional pirate websites at issue. Atty. Decl. ¶ 14. Google declined. *Id.* ¶ 14. Plaintiffs thus filed the instant motion.

### VI. Google should produce the revenue it earned from all Merchant Center accounts operated by the pirates who advertised the works-in-suit.

As discussed above, Google's discovery revealed that the pirates who operated the 1,239 pirate websites Plaintiffs initially identified also operated another 27,177 websites. These sites were registered to the same Merchant Center accounts as the 1,239 sites. Thus, Google should disclose the revenue it earned from these 27,177 sites just as it did for the initial 1,239. Google's revenue attributable to the infringement is a component of actual damages. This revenue also is relevant to statutory damages, including because Google's motivation to maintain these pirate accounts speaks to Google's state of mind and the need for deterrence. *See Fitzgerald Pub. Co. v. Baylor Pub. Co.,* 807 F.2d 1110, 1117 (2d Cir. 1986); 17 U.S.C. § 504(b); 17 U.S.C. § 1117(a). Google thus far has refused to disclose these figures, claiming that doing so would be burdensome. But far from articulating any burden, during conferrals Google refused to disclose even the number of accounts that are associated with these websites, a process Google previously has described as "a relatively easy step. It's not, not burdensome." Hr'g Tr. 32:16–23 (Dec. 4, 2024) (Dkt. 57). Google should disclose the revenue it earned from these pirates, not just the subset of that revenue Google has produced to date.

### VII. Conclusion

The Court should order Google to produce this basic information for each of the 261 pirate websites in question, and to disclose the revenue it earned from each of the 27,177 pirate websites that the pirates at issue operated. A proposed order is attached.

Respectfully submitted,

/s/ Jeff Kane
Jeff Kane
OPPENHEIM + ZEBRAK, LLP
*Counsel for Plaintiffs*