**Sarah Tomkowiak**
Direct Dial: +1.202.637.2335
sarah.tomkowiak@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

LATHAM & WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

October 29, 2025

**VIA ECF**

The Honorable Barbara C. Moses
U.S. District Court for the Southern District of New York
Dainel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, New York 10007

Re:  *Cengage Learning, Inc. v. Google LLC*, No. 1:24-cv-04274-JLR-BCM:
<u>Defendant's Response to Plaintiffs' Letter Motion for Discovery Conference (Dkt. 226)</u>

Dear Judge Moses,

Prior to filing their First Amended Complaint on September 16, 2024, Plaintiffs sent Digital Millenium Copyright Act (DMCA) notices to Google regarding 1,239 domains alleged to be engaged in piracy.  Last year, Plaintiffs agreed that the focus of discovery should be on those noticed domains.  Google identified over 20,000 Merchant Accounts connected to those domains, and produced well over a terabyte of cascading, inter-dependent data tied to those Merchant Accounts.  Plaintiffs claim that mountain of discovery has revealed an additional 261 domains[1] that advertised infringing copies of the works-in-suit, but were never subject to DMCA notices.  They now demand that Google start from square one to locate all previously unidentified Merchant Accounts ever connected to those new domains, and then produce the same voluminous data tied to that new set of accounts.  Plaintiffs' demand is foreclosed by Judge Rochon's prior order that discovery into the Merchant Accounts that operated the *domains identified in Plaintiffs' DMCA notices*—and not all possibly related "pirate websites"—is proportional.  Plaintiffs' effort to relitigate this issue should be rejected.

### I.  Plaintiffs' Demand Is Foreclosed By The Court's Prior Order

Acknowledging that this Court previously decided the scope of account discovery, Plaintiffs attempt another bite at the apple by proclaiming the "only distinction" between the 1,239 domains for which Google has already produced data (the "Noticed Domains") and the 261 domains on which Plaintiffs now move (the "New Domains") is the "timing" of when Google disclosed them.  Letter Motion ("Mot."), Dkt. 226 at 1.  Not true.  The real distinction is that Plaintiffs *sent* DMCA notices regarding the Noticed Domains and *did not send* DMCA notices regarding the New Domains.  *See id.*  This distinction matters, not least because the RFPs on which

---

[1] Plaintiffs' Letter Motion is the first time Plaintiffs narrowed their request to 261 domains.  Atty. Decl. ¶ 10.

Plaintiffs rely to justify their request focus on Merchant Accounts and domains identified in *Plaintiffs' infringement notices*. *See* Kane Decl. Ex. 1, Dkt. 228-1 at 12-15 (RFPs 24, 25, 27, 28, 33, 34, 37, and 38 refer to "Infringing Merchants" and "Infringing Domains"); *id.* at 4-5 (defining those terms as Shopping Ads Merchants and website domains identified in "Plaintiff Infringement Notice[s]").[2]

Certain of those RFPs also refer to "Related Ads Merchants." *See id*. at 12-15 (RFPs 25, 27, 33, 34, 37, and 38). Plaintiffs defined that term to include *any* merchant sharing "a common identity," or "related business or website ownership or operation," or *any other* "similarity" demonstrating a "link" to merchant center accounts associated with the Noticed Domains. *Id.* at 5–6. The Court rejected Plaintiffs' sweeping definition in its January 7 Order. Instead, the Court limited full-scale discovery to "Domain-Identified Merchant Accounts"—i.e., merchant accounts related to the Noticed Domains. That made sense because those pirate domains are ones that Google can reasonably be said to have knowledge of through a notice. The Court then stated explicitly that it "does not compel production of documents or information regarding 'Related Ads Merchants' or any other 'linked' accounts" in response to the at-issue RFPs "*beyond the documents and information specified in this Order*." *See* Dkt. 72 (emphasis added).[3] There is no dispute that Google has already produced that data, i.e., for Merchant Accounts that are related to the 1,239 Noticed Domains.

Plaintiffs now suggest they are entitled to discovery into any other domain that appears to have advertised a work-in-suit prior to September 16, 2024, arguing that the Court's January 7 Order determined a pirate site need only "have been *advertised* by Google on or before September 16, 2024" to be within scope and arguing that the New Domains "fit that criteria." Mot. at 3 (citing Dkt. 72 ¶1 (emphasis added)). But what the January 7 Order *actually* says is that the domains must be ones that "Plaintiffs identified in *Digital Millenium Copyright Act notices that Plaintiffs or their representatives sent to Google* through September 16, 2024." Dkt. 72 ¶ 1 (emphasis added). The New Domains do *not* fit that criteria. Plaintiffs' assertion that the January 7 Order did not reflect Judge Rochon's desire to "mak[e] a ruling that the only pirate websites about which Plaintiffs could obtain discovery were sites that were named in Plaintiff infringement notices," Mot. at 3, ignores that the January 7 Order says exactly that.

## II. The Discovery Sought Is Disproportional And Not "Essential"

Plaintiffs concede that they have *already* obtained discovery regarding at least some Merchant Accounts connected to the New Domains. *See* Mot. at 1. They have obtained this discovery not because those Merchant Accounts just "happened to be included" in the productions,

---

[2] According to Plaintiffs, these RFPs request information regarding "pirates who advertised the works-in-suit, Dkt. 228, Kane Decl. ¶ 15, and the New Domains each advertised a work-in-suit. Mot. at 1. But none of the RFPs mention "works-in-suit."

[3] Beyond RFPs identified in the Court's January 7 Order, Plaintiffs also assert that RFPs 22, 24, and 28 call for information about the New Domains, but RFP 22 refers to "Plaintiffs' Infringement Notices," RFP 24 refers to "Infringing Merchant[s]," and RFP 28 refers to "Infringing Domains." *See* Ex. 1 at 11-13. Because Plaintiffs have not sent DMCA notices regarding the New Domains, the New Domains do not fit within the definitions of Infringing Domains (or Infringing Merchants).

*id.*, but because those Merchant Accounts were among the 20,145 accounts "exactly matching" the Noticed Domains, per the Court's order at Dkt. 72 (and Google's subsequent agreement to provide discovery into accounts historically connected to the Noticed Domains). Specifically, Plaintiffs have already received discovery into 449 Merchant Accounts connected to the New Domains because they were also, at some time, connected to one of the 1,239 Noticed Domains. Atty. Decl. ¶ 12. Indeed, that is how Plaintiffs were able to identify the New Domains in the first place. Plaintiffs now seek tertiary discovery into Merchant Accounts that are "related" to the domains identified in Plaintiffs' DMCA notices through at least three steps: (1) they are "related" to domains that Plaintiffs claim ran at least one advertisement for a work-in-suit (2) that are then "related" to Merchant Accounts (3) that are then "related" to the Noticed Domains that were actually the subject of DMCA notices sent by Plaintiffs. Plaintiffs' current demand implicates not just Merchant Accounts *currently* connected to the New Domains, but all accounts historically connected to them as well. *See* Pls.' Proposed Order, Dkt. 227 (referring to "all Merchant Center accounts presently *or previously associated* with the 261 websites" (emphasis added)).

Plaintiffs claim this discovery is relevant because "[e]ach of these 261 websites are registered to the same Google accounts about which Plaintiffs sent infringement notices." Mot. at 3 (citing Kane Decl. ¶ 7). This is inaccurate. Plaintiffs sent DMCA notices about specific *domains*, not *accounts*. The additional Merchant *Accounts* sought by Plaintiffs are connected to domains that have never been the subject of Plaintiffs' DMCA notices. *See* Atty. Decl. ¶¶ 7–8. Information related to Merchant Accounts solely tied to domains that were never the subject of Plaintiffs' DMCA notices is wholly untethered from the alleged infringement. The information sought says nothing about Google's alleged material contribution to infringement according to Plaintiffs' own theory of the case. *See* Hr'g Tr. at 17:8–18:1 (May 15, 2025) (Dkt. 104) (Mr. Kane: "[W]e are not saying Google had to canvas the internet and find all of the instances wherein someone was infringing Plaintiffs' works. We are saying, they just had to take down *the specific pirate websites that we identified to them . . . .*" (emphasis added)).

Plaintiffs' reliance on their July 2025 amended pleading to justify their new demand is also futile. Plaintiffs do not suggest that the new works-in-suit were uniquely advertised by the New Domains. To the contrary, the information Plaintiffs provided to Defendants confirms that only four of the 261 New Domains advertised exclusively new works-in-suit, and Google is currently unaware of *any* works-in-suit with advertisements run solely by the New Domains. Atty. Decl. ¶¶ 13–14.

Finally, Google is not responsible for Plaintiffs' delay in bringing this Motion. It is false that Google "did not respond to Plaintiffs' August 11 request until September 23." Mot. at 3. Google's counsel provided a lengthy, substantive response *the next day*. Atty. Decl. ¶ 6. In any event, Google has not "changed its mind" regarding the appropriate scope of account discovery. Mot. at 4.[4] Google's position has always been that reasonable lines need to be drawn somewhere, and that Plaintiffs' demand here is an overreach.

---

[4] In September, Google offered a compromise with respect to 281 of the original 546 domains at issue in this dispute that would have extended discovery deadlines by six months. Atty. Decl. ¶ 7. Plaintiffs rejected that offer and continued to demand all 546 domains. *Id.* ¶ 8. While fact discovery has now been extended

**LATHAM&WATKINS**LLP

### III. Revenue Data For Accounts Connected To 26,924 Additional Domains Is Irrelevant[5]

Plaintiffs additionally demand that Google "produce the revenue it earned from all Merchant Center accounts operated by the pirates who advertised the works-in-suit." Mot. at 4. The Parties have not met and conferred on this issue as presented. Atty. Decl. ¶ 19. It is thus unripe for adjudication under Paragraph 2(B) of this Court's Individual Practices. Google produced the data containing these domains in May at the latest; Plaintiffs' untimely request should be rejected outright. *Id.* ¶ 18.

The requested discovery into 26,924 *additional* domains ("Revenue Only Domains") is also irrelevant and thus disproportionate to the needs of this case. Plaintiffs have *already* received revenue associated with 13,070 Merchant Accounts (and their linked Ads accounts) that were themselves connected (presently or historically) to the 1,239 Noticed Domains. Atty. Decl. ¶ 21. Google has therefore already produced all revenue that could arguably reflect a component of Google's profits "attributable to the infringement" or a "component of actual damages." Mot. at 4. That data reflects that Google barely earned any revenue from these accounts, *see* Dkt. 199 at 15, so Plaintiffs now demand that Google produce revenue from an overbroad set of tenuously related accounts in hopes of inflating their damages calculations. But there is no connection between the discovery sought and Plaintiffs' damages theories. Plaintiffs do not claim (or even seek data showing) that any Revenue Only Domains ran infringing advertisements or were subject to DMCA notices. Plaintiffs contend instead that this revenue will show whether Google had a "motivation to maintain these pirate accounts." Mot. at 4. First, Plaintiffs have not established that any of these domains run infringing ads of any kind.[6] Nor could they; indeed, some of the Revenue Only Domains include "docs.google.com," "google.com," and other domains that are clearly not operated by "pirates." Atty. Decl. ¶ 18. Second, Plaintiffs' theory assumes that Google would have made some affirmative connection between the Noticed Domains and these tertiary accounts, and chose to continue providing services to them to secure additional revenue. This is speculation; Plaintiffs cannot point to a single produced document to back up this theory.

To the extent the Court grants any portion of Plaintiffs' Motion, Google respectfully requests that discovery deadlines be pushed out by an additional 2–3 months to accommodate the attendant burden on Google.[7]

---

by five months, that extension was granted to accommodate *separate and additional* Court-ordered discovery. *See* Dkts. 217, 221.

[5] Plaintiffs identify 27,177 domains for which they seek associated revenue data, but 253 of those domains are already captured in Plaintiffs' first request. *See* Atty. Decl. at ¶ 20.

[6] While Plaintiffs contend that each of the New Domains advertised a work-in-suit, see Mot. at 1, Plaintiffs make no similar claims regarding the roughly 27,000 Revenue Only Domains.

[7] Google cannot fold Plaintiffs' new demands into its supplemental data pulls regarding the Noticed Domains because (1) those efforts are underway ; and (2) the new request involves a different timeframe. *See* Atty. Decl. ¶¶ 15-16.

**LATHAM&WATKINS**LLP

                                                                   Respectfully,

                                                                   /s/ *Sarah A. Tomkowiak*
                                                                   Sarah A. Tomkowiak (*pro hac vice*)
                                                                   of LATHAM & WATKINS LLP

cc: All counsel of record (via ECF)