IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; ELSEVIER INC.; ELSEVIER B.V.; and MCGRAW HILL LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>GOOGLE LLC,<br><br>*Defendant*. | Case No. 1:24-cv-04274-JLR-BCM |

## ATTORNEY DECLARATION OF SARAH TOMKOWIAK

I, Sarah Tomkowiak, declare that:

1. I am a partner at the law firm Latham & Watkins LLP, counsel for Google LLC ("Google") in this matter.

2. I submit this declaration in connection with Google's opposition and response to Plaintiffs' Letter Motion for Discovery Conference (Dkt. 226).

**Discovery Requests Regarding Merchant Center Accounts and Domains**

3. I am a recipient of a 21-page email thread between counsel for Google and counsel for Plaintiffs, with the subject line, "Re: Cengage v. Google - Google's Request for a Stay," between July 14, 2025, and October 21, 2025.

4. Contained in this thread is an email from my colleague, Holly Victorson, to Plaintiffs' counsel on July 15, 2025, in which she requested that Plaintiffs confirm they "are not identifying additional domains alleged to be engaged in the infringement of the asserted works or

1

marks" in their Amended Complaint. Jeff Kane, counsel for Plaintiffs, responded on July 18, 2025, and confirmed "at this time, Plaintiffs are not seeking to add any domains to the 1,239 domains listed in Plaintiffs' December 24, 2024 email. All of the works included in Amended Exhibit A (Dkt. 120-1) were advertised either by one of the 1,239 domains, or by a domain related to one of the 1,239 domains."

5. On August 4, 2025, Mr. Kane sent an email to Google's counsel in which he requested that Google produce the Merchant Center IDs associated with over 30,000 new domains. On August 8, 2025, Ms. Victorson responded that such additional discovery was not reasonable or proportional to the needs of the case. On August 11, 2025, Mr. Kane responded and asked Google to produce "the identifying information, offer data, ads data, revenue data, and notice data" for 546 new domains.

6. On August 12, 2025, Ms. Victorson responded to Mr. Kane's August 11 email in this same thread, and requested, inter alia, that Plaintiffs disclose how they identified the 546 new domains. This email response was over 1,500 words long, according to Microsoft Word. The parties subsequently met and conferred on this topic.

7. On September 23, 2025, Ms. Victorson sent an email to Plaintiffs' counsel, in which she:

    a. Stated Google's understanding "that Plaintiffs came to identify these 546 domains by searching Google's produced offer data to identify other domains that appear to have 'advertised a work-in-suit.'" Ms. Victorson further wrote: "We do not understand Plaintiffs to be asserting that (a) at least one Plaintiff has sent Google at least one notice that identifies each of these 546 domains; and (b) at least one

2

asserted work in this case was advertised by the domain following Plaintiffs' notice. If that is incorrect, please let us know."; and

b. Offered a compromise "in order to resolve this dispute" without Court intervention, in which Google proposed producing certain discovery relating to 281 of the 546 domains, for which "(1) there are offers associated with such domain that Google's data indicates had at least one impression (i.e., there is some basis to believe the ad was actually displayed to a user); and (2) such offers were connected to a particular Merchant Account after that Merchant Account advertised one of the asserted works for one of Plaintiffs' 1,239 identified domains," in exchange for Plaintiffs' agreement to seek a six-month extension of all discovery deadlines.

8. On September 25, 2025, Mr. Kane responded to Ms. Victorson's September 23 email, in which he:

a. Did not correct Google's understanding that Plaintiffs do not assert that each of the 546 domains themselves was noticed and at least one asserted work was advertised by these domains following that notice; and

b. Rejected Google's proposed compromise.

9. One month later, on October 20, 2025, Mr. Kane sent an email to Google's counsel in which he stated that absent Google' agreement to produce documents concerning 539 "pirate websites," Plaintiffs would "file a motion on this subject on Wednesday October 22." I replied on October 21, 2025 to decline Plaintiffs' proposal.

10. I am not aware of any pre-Motion correspondence in which Plaintiffs reduced the number of new domains for which discovery is sought from 539 to 261.

11.     On October 24, 2025, after Plaintiffs filed their Motion (Dkt. 226) with the Court, Mr. Kane provided Google's counsel with a spreadsheet containing the sites and works-in-suit referenced in Plaintiffs' Motion ("Plaintiffs' Spreadsheet").

12.     A team at FTI Consulting ("FTI"), who Google has retained in connection with this matter, conducted an analysis, which I have reviewed, of the 261 domains (the "New Domains") contained in the second tab of Plaintiffs' Spreadsheet. Using the accounts and information Google previously produced at GOOG-CENG-00000703 (the "Domain-Identified" merchants), GOOG-CENG-00392941 (the "Historical" merchants), and GOOG-CENG-00392942 (the "Domain History Table"), FTI determined Google had already produced data for 449 MCIDs connected to the New Domains.

13.     The third tab of Plaintiffs' Spreadsheet contains the works-in-suit Plaintiffs contend were advertised by the New Domains, according to Plaintiffs' counsel. FTI compared the works-in-suit referenced in Plaintiffs' Spreadsheet to the works asserted in Exhibit A to Plaintiffs' First Amended Complaint filed on September 16, 2024 (Dkt. 38-1) and the works asserted in the Amended Exhibit A filed on July 14, 2025 (Dkt. 120-1). Only four of the 261 New Domains advertised only works in suit that were not listed in Plaintiffs' First Amended Complaint. In other words, 257 of Plaintiffs' 261 New Domains advertised works added by Plaintiffs prior to July 14, 2025.

14.     FTI also compared the works-in-suit Plaintiffs contend were advertised by the New Domains to the "Works-In-Suit" spreadsheet Plaintiffs provided to Google on October 6, 2025. FTI identified three works that Plaintiffs' spreadsheets indicate were (1) allegedly advertised by one of the New Domains; and (2) not advertised by one of the Noticed Domains. FTI determined, however, that Google's Ads data reflects that two of the works actually were advertised by one of

4

the Noticed Domains. FTI did not find any advertisement for the final work-in-suit from either a New Domain or a Noticed Domain. In other words, FTI found no works-in-suit with advertisements offered solely by a New Domain.

15. I understand that in order to produce the data Plaintiffs now request for the New Domains, Google must coordinate among at least four different functional teams and even more information sources. In some circumstances, data from one source is dependent on data from the previous source.

16. Google has begun to prepare the supplemental data pulls associated with the existing 20,145 MCIDs through March 31, 2025, as ordered by the Court at Dkt. 217, and expects to begin rolling productions this week. I understand that Google would not easily be able to fold data pulls for the New Domains into these supplemental data pulls for the Noticed Domains at least because the two involve different timeframes, i.e., the supplemental pull is for September 17, 2024 to March 31, 2025 only.

**Plaintiffs' Demand for Additional Revenue Data**

17. As reflected in the same email thread referenced in Paragraph 3 above, on August 11, 2025, Mr. Kane, counsel for Plaintiffs, requested that Google "produce the Merchant Center Account ID, the domain with which that MCID is associated, and the revenue associated with that Merchant Center Account ID" for over 30,000 domains.

18. Plaintiffs revised the domains for which they seek additional revenue data to 27,177 domains in their Motion. These 27,177 domains are included in Plaintiffs' Spreadsheet provided to Google's counsel on October 24, 2025 after Plaintiffs filed their Motion. Plaintiffs' Spreadsheet states that Plaintiffs identified these domains from GOOG-CENG-00000703, produced on February 14, 2025, and GOOG-CENG-00392941 and GOOG-CENG-00392942, which were each

5

produced on May 30, 2025. I have reviewed these domains and identified domains unlikely to be owned or operated by the "pirates" in this case, including, for example, "google.com," "docs.google.com," "gooogle.com" (which redirects to google.com), and "test.com" among others.

19.  I am not aware of any conference or correspondence through which Plaintiffs proposed, or sought to confer regarding, Plaintiffs' articulated position in their motion that Google should only "disclose the revenue it earned from" the 27,177 domains Plaintiffs identified in their motion. See Dkt. 226 at 4.

20.  A team at FTI conducted an analysis of the 27,177 domains contained in Plaintiffs' Spreadsheet, which I have reviewed. FTI calculated that 253 of these domains were also included in Plaintiffs' list of New Domains.

21.  For the remaining 26,924 domains ("Revenue Only Domains"), FTI used the information Google previously produced at GOOG-CENG-00000703 ("Domain-Identified" merchants), GOOG-CENG-00392941 ("Historical" merchants), and GOOG-CENG-00392942 (the "Domain History Table") to determine that Google has already produced account and revenue data for 13,070 MCIDs associated with the Revenue Only Domains. The total revenue data that has already been produced incorporated (1) revenue associated with all Shopping Ads run by the produced 20,145 Merchant Accounts and was not limited by ads for the asserted works; and (2) revenue associated with all Google Ads accounts presently or previously associated with the produced Merchant Accounts. Moreover, because Google Ads accounts may have a many-to-many relationship with Merchant Center accounts, see Dkt. 59 ¶ 8, the revenue information associated with the produced Ads accounts may include revenue associated with Merchant Center accounts that never ran a single ad for an asserted work in this case.

22.     I reviewed the data produced in GOOG-CENG-00404298. This data provides the total revenue between June 2021 and September 2024 from all Shopping ads, not just those associated with the asserted works, run by the Domain-Identified and Historical merchant IDs. I have also reviewed the data produced in GOOG-CENG-00419904, which reflects the total revenue between June 2021 and September 2024 from Ads accounts connected, either presently or historically, with the Domain-Identified and Historical merchant IDs.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.


Executed October 29, 2025, in McLean, Virginia

*/s/ Sarah A. Tomkowiak*
Sarah A. Tomkowiak