

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
Jkane@oandzlaw.com

October 31, 2025

<u>VIA ECF</u>

The Honorable Barbara Moses
United States District Court for the Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

   Re: *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
     **Plaintiffs' Reply ISO Letter Motion for Discovery Conference**

Dear Judge Moses,

  Google does not dispute that the 261 pirate websites at issue in Plaintiffs' motion all were operated by the very same pirates who operated the 1,239 websites named in Plaintiffs' notices. Nor does Google dispute that Google failed to disclose until after Judge Rochon's January 7 Order that the pirates at issue were operating those 261 websites. Instead, Google attempts to avoid producing documents concerning these 261 sites on two grounds: 1) that the infringement notices Plaintiffs sent were insufficient to provide Google with notice of the pirates who operated these sites, and 2) that Judge Rochon made a sweeping ruling about the legal standard contributory copyright infringement in one sentence of a discovery order that Google drafted. Neither argument has merit.

  First, Google's theory amounts to an argument that these 261 websites are not relevant to the case. But Google advertised pirated copies of the works-in-suit sold on these sites. And the pirates behind the 1,239 sites that Plaintiffs noticed are the same as the pirates behind the 261. Thus, Plaintiffs did provide the notice that Google disputes. And the standard for relevance easily is met.

  Second, the sentence in Judge Rochon's Order on which Google relies merely recounted what Plaintiffs already had provided to Google at the time of the Order; it did not decide the fallacious merits argument Google raises here.

  Finally, the Court should reject Google's attempt to produce revenue data for only a portion of the accounts operated by the pirates at issue. A juror deciding what amount is necessary to deter Google from future infringements deserves to know the *total* sum Google earned from these pirates, not a partial sum.

  **I.** **Google must produce basic information concerning the 261 pirate websites.**

    A. *Plaintiffs sent notices concerning all of the pirates who operated the 261 sites.*

Google does not contest that: 1) it advertised at least one work-in-suit for all 261 of these websites; 2) all 261 websites were registered to the same Google accounts as the 1,239 websites Plaintiffs initially identified; and 3) Plaintiffs sent infringement notices concerning each of those 1,239 websites. Instead, Google tries to say that discovery is unavailable where a plaintiff's infringement notice did not identify a *particular website* (not even a *pirate*, and not even where those websites



Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
Jkane@oandzlaw.com

are registered to *the same merchant*). Google's position is contrary to the law, and ignores the facts of this case.

Google wants the Court to make a merits ruling that if Plaintiffs sent Google an infringement notice about a merchant's first twenty-five websites, but didn't receive a notice about the merchant's twenty-sixth website, the twenty-sixth site is irrelevant to this suit, even when it was registered to the same merchant's account. That is not the law. "[C]ontributory infringement liability is imposed on persons who 'know *or have reason to know*' of the direct infringement." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (emphasis in original) (quoting *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001) (also citing *In re Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003) ("Willful blindness is knowledge, in copyright law . . . .")). Thus, Plaintiffs can show that Google had knowledge of the 261 sites at issue here through the notices Plaintiffs sent concerning other pirate websites operated by the same pirates from the very same accounts.[1] Indeed, an infringement notice would not be necessary at all where the service provider obtained knowledge in some other way. *See New York Times Co. v. Microsoft Corp.*, 777 F. Supp. 3d 283, 306 (S.D.N.Y. 2025) (because "knowledge of specific infringements is not required to support a finding of contributory infringement," courts in the Second Circuit look to other evidence besides notices "to determine whether the defendant was put on notice of third-party infringement"). *See also See Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 27–28 (2d Cir. 2012) (in interpreting the DMCA, stating that "actual knowledge of infringing material, awareness of facts or circumstances that make infringing activity apparent, *or* receipt of a takedown notice will each trigger an obligation to expeditiously remove the infringing material") (emphasis added). Thus, Google's position would impose a *higher* standard for obtaining discovery than is applied to prove liability. This, of course, is incorrect.

Google's position is particularly outlandish given the extent of the crossover between these 261 sites and the 1,239 sites named in Plaintiffs' notices. One of the 261 websites (booktvt.shop) is registered to the same merchant as eleven of the 1,239 sites. Atty. Decl. ¶ 3. Another (skyshop2.shop) is registered to the same merchant as *twenty-six* of the 1,239 sites. *Id.* ¶ 4. Likewise, many of these 261 sites have names that are nearly identical to the names of the 1,239 sites. Atty. Decl. ¶ 5. For example, "ebooksstore.us" is one of the 261 sites; "ebooksstore.info" is among the 1,239. *Id.* "digitalbook-haven.myshopify.com" is one of the 261; "digitalbookhaven.myshopify.com" (i.e., without a hyphen) is one of the 1,239. *Id.* While Plaintiffs contend these and other examples are more than sufficient to establish Google's knowledge, the Court need not decide that merits issue here. Plaintiffs simply seek discovery that is clearly relevant to such knowledge. This discovery is also narrowly tailored to the pirates identified in Plaintiffs' notices, and thus is proportional to the needs of the case.

B. *Judge Rochon did not limit discovery into these 261 sites.*

Betraying the weakness of its position on the merits, Google tries to argue that one sentence in Judge Rochon's order on a different issue somehow held that Google need only produce discovery concerning *pirate websites* that were the subject of a notice, even where the merchant

---

[1] And, of course, it is entirely possible that Google had knowledge of these 261 pirate websites through infringement notices from rightsholders other than Plaintiffs.

2

Case 1:24-cv-04274-JLR-BCM   Document 234   Filed 10/31/25   Page 3 of 4



Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
Jkane@oandzlaw.com

operating the site *was* the subject of a notice. Judge Rochon did not hide that elephant in the mousehole Google identifies.

The single sentence in Judge Rochon's order on which Google bases its argument reads: "Plaintiffs will provide Google with a spreadsheet (the 'Domain Spreadsheet') containing a list of the domains Plaintiffs identified in Digital Millenium Copyright Act notices that Plaintiffs . . . sent to Google through September 16, 2024 and that Plaintiffs contend infringe or infringed one or more works asserted by Plaintiffs . . . ." When the Court issued that order on January 7, Plaintiffs already had sent this list to Google. Dkt. 72 ¶ 1 ("The Court understands Plaintiffs provided such Domain Spreadsheet to Google on December 24, 2024."). Thus, this statement simply describes how Plaintiffs compiled their original list. Naturally, Plaintiffs obtained that list from infringement notices they sent to Google. They could not have obtained the list from Google's ads data by the time of the January 7 Order because Google did not produce that data until March 31, 2025.

Thus, Judge Rochon simply described what Plaintiffs already had done. The Court was not making a ruling about the merits of what ultimately would be sufficient to prove knowledge in this case or even on the overall universe of discovery that could be relevant to such knowledge.

Tellingly, Google's opposition letter does not even attempt to deal with the fact that Judge Rochon allowed Plaintiffs an extended deadline to add works-in-suit. Plaintiffs argued at the initial conference that this extension was necessary because Plaintiffs would not know the full scope of Google's infringement until discovery, and Judge Rochon accepted that argument. Dkt. 226 at 2. Nor does Google even mention Judge Rochon's direction to Google to be prepared to produce additional discovery after Plaintiffs amended their complaint. Dkt. 226 at 2.

Indeed, before Plaintiffs had even filed their amended complaint, and then again one day after Plaintiffs did so, *Google* asked *Plaintiffs* whether Plaintiffs would be requesting discovery into any additional websites. Atty. Decl. ¶ 6. Clearly, even Google expected that it would need to produce discovery into additional websites. In fact, Google at one point agreed to provide the discovery Plaintiffs request here for 281 websites, if Plaintiffs would agree to a six-month extension of discovery. Dkt. 231 n.4. Now that Google has an extension, it has reneged on its offer.

Google's interpretation of Judge Rochon's Order (an order that Google drafted, *compare* Dkt. 71 and Dkt. 72) assigns a meaning to the Order that Judge Rochon never articulated or intended. This Court should reject Google's insincere reading.

C. Plaintiffs' RFP call for this information.

Google's claim that the language of Plaintiffs' RFP do not call for documents concerning these 261 websites is incorrect. Dkt. 231 at 1–2. Plaintiffs' RFP do not restrict Plaintiffs' requests to information concerning pirate websites identified in infringement notices; they request information concerning any Google *users* who were the subject of infringement notices. The RFP request information on "Infringing Merchants." Dkt. 228-1 (RFP 27, 34, 37). And they define "Infringing Merchant" as "any Shopping Ads Merchant listed or otherwise identified in a Plaintiff Infringement Notice." Dkt. 228-1 at 5 ¶ 23 (emphasis added). "Shopping Ads Merchant," in turn, is defined as "any Google user whose products are advertised in Shopping Ads." Dkt. 228-1 at 6. Taking those two definitions together, Plaintiffs' RFP request information concerning "any Google user whose products are advertised in Shopping Ads," who is "listed *or otherwise identified* in a

3



Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
Jkane@oandzlaw.com

Plaintiff infringement Notice." (emphasis added). As explained above, all of the Google users who operated the 261 pirate sites at issue here were identified in infringement notices.

### II. Google should produce the revenue it earned from all Merchant Center accounts operated by the pirates who advertised the works-in-suit.

Google's data has revealed that the merchants who operated the 1,239 websites in question also registered to their Google accounts an additional 27,177 pirate websites. Google must disclose all of the revenue it earned from the accounts associated with these sites, not merely a portion of those accounts. A juror deciding what damages amount is necessary to deter Google from future infringements deserves to know all of the revenue Google saved itself when it failed to terminate these pirates. The factfinder should not be limited to learning the revenue Google earned from some subset of the accounts these pirates operated.

Google's attempt to sidestep this argument with invented threshold issues is unavailing. First, contrary to Google's assertion, the parties did meet and confer about this issue on August 14. Indeed, Google acknowledged as much in an email to Plaintiffs. Atty. Decl. ¶ 8. Plaintiffs ultimately moved on only 27,177 of 31,883 pirate websites Plaintiffs initially identified. But as Google's position has remained that it will produce information concerning *zero* of these websites, that difference hardly matters.

Second, Google's claim that it "produced the data containing these domains in May at the latest," Dkt. 231 at 4, is misleading at best. Even if Google disclosed the existence of these websites by May, Google did not produce the *revenue* concerning any websites (i.e., the discovery at issue here) until July. Atty. Decl. ¶ 9.

### III. The Court should reject Google's latest attempt to postpone discovery even further.

Google's claim that if the Court grants Plaintiffs' motion, discovery should be extended by "an additional 2–3 months" is characteristically devoid of meaningful support. Google has produced data like this before, and is in the process of doing so again. Google should have no trouble running the same searches that it ran previously. The more-than two months remaining in discovery is ample time for Google to perform this exercise.

### IV. Conclusion

The Court should order Google to produce information concerning the 261 pirate websites, and to disclose the revenue it earned from the 27,177 pirate websites.

Respectfully submitted,

/s/ Jeff Kane
Jeff Kane
OPPENHEIM + ZEBRAK, LLP
*Counsel for Plaintiffs*