

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
Jkane@oandzlaw.com

November 3, 2025

<u>VIA ECF</u>

The Honorable Barbara Moses
United States District Court for the Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

   Re: *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
     Plaintiffs' Letter Motion for Discovery Conference Regarding Google's Summary Spreadsheets

**[Redacted]**

Dear Judge Moses,

  We represent all Plaintiffs in this matter. Defendant Google seeks to establish the factual basis for its DMCA defense through several summary spreadsheets, for which Google refuses to produce the underlying data. These spreadsheets purport to summarize the number of infringing ads Google claims to have delisted and the number of infringing merchants it claims to have suspended as part of its overall DMCA program (i.e., delistings and suspensions beyond the merchants who infringed the works-in-suit). But Google refuses to provide any of the documents that those spreadsheets purport to summarize, except insofar as those documents concern the pirates who advertised the works-in-suit in this case. Google has made no showing that the documents concerning those pirates represent the majority, or even a significant percentage, of the notices Google received or the suspensions Google claims to have undertaken. Indeed, it is unclear what Google claims the full universe of claimed delistings and suspensions even is.

  Offering such sweeping summary documents without producing the records they purport to summarize is improper. Google must either produce these underlying records, or be precluded from introducing these summaries. Plaintiffs request a discovery conference.

  **I.** **Google has not produced the records that Google's spreadsheets claim to summarize.**

  Plaintiffs allege that Google contributed to and induced thousands of direct copyright infringements. By invoking the DMCA defense, Google is asserting that it "adopted and reasonably implemented . . . a policy that provides for the termination in appropriate circumstances of subscribers and account holders . . . who are repeat infringers . . . ." 17 U.S.C. § 512(i)(1)(A). This defense necessarily implicates Google's overall DMCA program, not merely Google's treatment of Plaintiffs' notices, or its treatment of the pirates who infringed Plaintiffs' works. *Perfect 10 v. CCBill LLC*, 488 F.3d 1102 (4th Cir. 2007) (reversing where the district court had declined to consider notices provided by any party other than plaintiff). Naturally, Google must produce the documents that it will use to support its affirmative defense. *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 109 (S.D.N.Y. 2013) ("[A]ny party must

**O+Z Oppenheim + Zebrak, LLP**
WASHINGTON – NEW YORK

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
Jkane@oandzlaw.com

produce documents that it 'may use to support its claims or defenses . . . .'") (quoting FED. R. CIV. P. 26(a)(1)(A)(ii)).

In support of this defense, Google seeks to rely on four spreadsheets (the "Summary Spreadsheets"). But the Summary Spreadsheets are not self-substantiating. Indeed, they raise more questions than they answer.

Google's ***Delistings Spreadsheet*** (Declaration of Attorney Jeff Kane ("Atty. Decl.") Ex. 1) purports to state the *number* of infringement notices Google received each month, and *how many* ads Google removed or declined to remove as a result of those notices. *Id.* ¶ 4. The spreadsheet therefore claims to summarize [redacted] of infringement notices, responses, and actions Google undertook. But the spreadsheet does not contain or list those notices or responses. Nor does the spreadsheet contain the ads Google ran, so that the reader can verify whether Google actually delisted the ads.

The ***Suspensions Spreadsheet*** (Ex. 2) purports to summarize the number of "accounts" that Google claims to have suspended on a monthly basis from December 2020 through October 2024. But this conclusory spreadsheet does not list the merchants Google claims to have suspended, it simply lists the *number* of claimed suspensions. Without this underlying data, the reader cannot match the alleged suspensions with the notices, yet alone verify whether Google actually suspended these merchants.[1]

***The Manual Strike Tracker*** (Ex. 4, "Shopping" tab): Google claims that when Google [redacted] The Manual Strike Tracker purports to track [redacted] Ex. 8 at 0686.

But this sparse spreadsheet fails to reference or contain any of the documents that Google claims the spreadsheet summarizes. This is hugely problematic. First, Google's DMCA policy states that [redacted]

Second, one cannot tell from the Manual Strike Tracker whether all of the removals Google claimed to have initiated [redacted]

---

[1] Another Google spreadsheet (Ex. 3), which purports to state the number of Merchant Center accounts Google claims to have suspended for various reasons, suffers from the same problems.

**O+Z Oppenheim + Zebrak, LLP**
WASHINGTON – NEW YORK

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
Jkane@oandzlaw.com

Third, one cannot tell from the Manual Strike Tracker whether ▮▮▮▮▮▮▮▮▮▮▮▮.

## II. Google must produce the documents underlying these Summary Spreadsheets if it intends to offer them as evidence.

The law is clear that if a party wishes to introduce a document that summarizes other documents, the party must produce the records underlying that summary. FED. R. EVID. 1006(b) ("The proponent must make the underlying originals or duplicates available for examination or copying, or both . . . ."); *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2d Cir. 1993) ("Summary evidence is admissible as long as the underlying documents . . . are made available to the adverse party."); *In re Pretty Girl Inc.*, No. 14-11979, 2022 WL 1051098 (Bankr. S.D.N.Y. Apr. 7, 2022) (same). But Google refuses to produce the records that the Summary Spreadsheets purport to summarize. Specifically, Google refuses to produce the notices, responses, and suspension/reinstatement records that underlie those spreadsheets. And Google refuses to produce the ads data that would demonstrate whether Google actually delisted the ads, and suspended the merchants, referenced in these spreadsheets. If Google refuses to produce these documents, Google must be precluded from offering any of the Summary Spreadsheets as evidence.

## III. The documents Google produced concerning the pirates who infringed Plaintiffs' works do not allow Google to introduce the Summary Spreadsheets.

Google argues that it is sufficient for it to produce only a limited set of the data underlying the summaries. But Google has produced only documents that concern the pirates who infringed Plaintiffs' works. This limited documentation does not allow Google to offer the sweeping Summary Spreadsheets it seeks to introduce in support of its affirmative defense.

*First*, Google refuses to say even what the full universe of infringement notices or claimed suspensions is. Google's Delistings Spreadsheet appears to indicate that Google received infringement notices concerning ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Google has refused to explain this issue, *id.* ¶ 9, which casts serious doubt on whether the summary even is comprehensive.[2]

Google likewise refuses to indicate the total number of merchants Google claims to have suspended pursuant to its DMCA policy. The Suspension Spreadsheet shows ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Google refuses to say which, if any, of these numbers it claims corresponds to copyright infringement. Atty. Decl. ¶ 10. This also raises serious questions, illustrating why, without the underlying documents, neither Plaintiffs nor the factfinder can ferret out what is accurate and what is not.

---

[2] The Delistings Spreadsheet also lists ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Google has produced few, if any, documents in this case concerning notices it received for any product except Shopping.

O+Z Oppenheim + Zebrak, LLP
WASHINGTON – NEW YORK

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
Jkane@oandzlaw.com

*Second*, the documents Google has produced overwhelmingly involve notices from Plaintiffs. But there is no indication that Google's responses to Plaintiffs' notices are representative of its overall DMCA program. Indeed, Google's responses to Plaintiffs' notices may actually be *better* than they were for other rightsholders' notices. Google claims to have attempted to treat Plaintiffs' notices differently, and, for a time, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ While this certainly was not Plaintiffs' experience, this policy alone indicates that notices from Plaintiffs are not representative of Google's response to infringement notices overall.

Further, while Plaintiffs disagree, Google touts alleged special treatment it provided to Plaintiffs. *See* Opp. to Mot. to Strike, Dkt. 166 at 12 (claiming that Google "engaged in conversations with Plaintiffs to try to work together to prevent third-party infringement of Plaintiffs' intellectual property" and "find mutual solutions to combatting copyright infringement").

And while Google's DMCA defense implicates its response to *all* types of products identified in infringement notices, the notices and pirates involved in this case concern *ebook piracy*. During the relevant period in this case, Google had a policy of disallowing *all* paid ads for ebooks, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 9 at 9364–9365.

Google's discovery on the pirates who advertised the works-in-suit is not a basis to offer the Summary Spreadsheets.

### IV. Documents Google has produced indicate that Google did not follow its DMCA policy.

The documents Google has produced so far indicate that Google did not follow its own DMCA policy, meaning Google did not "reasonably implement" its policy under 17 U.S.C. § 512(i)(1)(A). The documents Plaintiffs request will determine extent of this failure.

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

### V. Meet-and-confers with Google did not resolve the dispute.

Plaintiffs issued several document requests concerning Google's overall DMCA program. Exs. 10, 11 (RFP 3, 4, 55, 96, 97). After Google produced the Summary Spreadsheets on August 15, 2025 (then the last day of document discovery), Plaintiffs requested the documents underlying



Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
Jkane@oandzlaw.com

those spreadsheets. Atty. Decl. ¶ 15. The parties met and conferred on September 30. *Id.* (providing details). Google refused to produce the underlying documents.

### VI.    Conclusion

Google should produce the documents underlying the Summary Spreadsheets. Otherwise, the Court should preclude Google from introducing these spreadsheets, or any similar testimony.

Respectfully submitted,

*/s/ Jeff Kane*
Jeff Kane
OPPENHEIM + ZEBRAK, LLP
*Counsel for Plaintiffs*