IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENGAGE LEARNING, INC. et al.<br><br>      Plaintiffs,<br><br>  v.<br><br>GOOGLE LLC,<br><br>      Defendant. | **Civil Action No. 24-cv-04274-JLR-BCM**<br><br>[Redacted] |

**ATTORNEY DECLARATION OF JEFF KANE
IN SUPPORT OF PLAINTIFFS' MOTION FOR DISCOVERY
CONFERENCE REGARDING GOOGLE'S SUMMARY SPREADSHEETS**

1. I am an attorney at the law firm Oppenheim + Zebrak, LLP ("O+Z"), counsel for all Plaintiffs in this matter. I submit this declaration in connection with Plaintiffs' Motion for Discovery Conference Regarding Google's Summary Spreadsheets.

2. I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently hereto.

**The Summary Spreadsheets**

3. Google produced four spreadsheets (the "Summary Spreadsheets") that purport to summarize other documents concerning Google's overall DMCA program (i.e., Google's program beyond the pirates who infringed the works-in-suit).

4. The ***Delistings Spreadsheet*** (attached as Ex. 1 (GOOG-CENG-00419902)) purports to provide the *number* of infringement notices Google received each month, and *how many* ads Google removed or declined to remove. For example, in August of 2024, Google claims to have [redacted] [redacted]

1

5. The *Suspensions Spreadsheet* (Ex. 2 (GOOG-CENG-00419905)) purports to state the number of "accounts" that Google claims to have suspended on a monthly basis from December 2020 through October 2024. For example, in April 2024, Google claims it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 2. Plaintiffs asked Google in writing to clarify whether all of these purported suspensions are for copyright infringement. 25.10.02 O+Z Email. Google refused. 25.10.24 Latham Email.

6. Google's GOOG-CENG-00439755 (Ex. 3) purports to state the number of Merchant Center accounts Google claims to have suspended for various reasons.

7. The **Manual Strike Tracker** (Ex. 4 (GOOG-CENG-00439752.C)): When Google determines that it will delist a Shopping ad in response to an infringement notice, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Exs. 4, 5.

**The Documents Google Produced Concerning the Pirates who Infringed Plaintiffs' Works**

8. From the documents Google has produced so far, it is unclear from Google's production what Google claims is the full universes of notices it received, delistings it undertook, and terminations it completed in its overall DMCA program for Shopping.

9. Google's Delistings Spreadsheet indicates that Google received infringement notices concerning ▮▮▮▮▮▮▮▮▮▮▮▮▮ GOOG-CENG-00419902 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). So far in discovery, Google produced just those notices where at least one URL concerns one of the 1,239 pirates Plaintiffs identified. But in those notices alone, I counted approximately ▮▮▮▮▮▮▮▮

2

10. The Suspension Spreadsheet shows ▮▮▮▮▮ suspended but does not specify the alleged reason. Ex. 2. Another spreadsheet shows ▮▮▮▮▮ suspended for various reasons, but only ▮▮ ▮ ▮▮ suspensions are for ▮▮▮▮▮ or ▮▮▮▮▮ Ex. 3. Plaintiffs asked Google in writing and during a meet-and-confer to clarify which of the entries in this spreadsheet are suspensions for copyright infringement. 25.10.02 O+Z Email. Google refused. 25.10.24 Latham Email.

11. During a meet-and-confer, Google has argued that the discovery Google produced concerning a portion of the pirates who advertised the works-in-suit in this case represents a "large enough sample size to reach conclusions about Google's implementation of its policy." 25.10.17 Latham Email.

**Indications That Google Did Not Follow Its DMCA Policy**

12. I reviewed two spreadsheets that Google provided containing purported suspension dates for Merchant Center accounts/websites that Google says are connected to the 1,239 pirates Plaintiffs initially identified as having advertised the works-in-suit. GOOG-CENG-00000703; GOOG-CENG-00392941. For the websites listed in those spreadsheets, I compared the date of the ▮▮▮▮▮ to either: 1) the last date that Google's ads data reflects an ad running for that website; or 2) the last date that Plaintiffs or their vendors observed an ad running for that domain. Of the ▮▮▮▮▮ that Google claims to have suspended, I counted ▮▮▮▮▮ ▮▮▮▮▮ ▮▮▮▮▮ I provided Google with a list of these instances on November 3, 2025.

3

13. One of Google's data sources[1] indicates that Google ████████ in connection with notices received regarding the pirates at issue in this case. I counted ███ ████████████████████████████████████████████ I provided to Google a list of these sites on November 3, 2025.

14. I reviewed Google's response emails to Plaintiffs' infringement notices produced in this case. I observed more than ████████████████████ ████████████████████████████████████████ ████████████████████████████████████ I provided a list of these instances to Google's counsel on November 3, 2025. This figure is quite conservative. A more precise calculation likely will result in a much higher figure.

**Meet-and-Confer History**

15. Because the documents underlying Google's Summary Spreadsheets relate to Google's defense, it is Google's burden to produce them even in the absence of a specific request from Plaintiffs. *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 109 (S.D.N.Y. 2013) ("[E]ven absent a discovery request, any party must produce documents that it 'may use to support its claims or defenses . . . .'") (quoting FED. R. CIV. P. 26(a)(1)(A)(ii)). But, in any case, Plaintiffs have been requesting these documents for more than a year.

   a. Plaintiffs requested these documents in Plaintiffs' first RFP in September 2024. Ex. 10 (RFP 3, 4, 55).

---

[1] The Notice and Response Data Spreadsheets: GOOG-CENG-00380265, GOOG-CENG-00380266, GOOG-CENG-00380267, GOOG-CENG-00380268, GOOG-CENG-00392939, GOOG-CENG-00392940, GOOG-CENG-00403539, GOOG-CENG-00403540, GOOG-CENG-00403541, GOOG-CENG-00403542, GOOG-CENG-00403543, GOOG-CENG-00403544, GOOG-CENG-00403545, GOOG-CENG-00404296.

    b. When Google failed to produce these documents six months later, Plaintiffs filed a motion to compel asking Google to produce the documents by April 15, 2025. Dkt. 85-1 at 2 (RFP 3 and 4). Judge Rochon declined to order Plaintiffs' interim deadline, on the condition that Google would make productions on a rolling basis rather than waiting until the discovery deadline to do so.

> [The Court:] [W]hat I'm hearing from you and I want to confirm is that you anticipate that you will complete defendant's production on the deadlines that are set forth in this case management plan, including an interim deadline on March 31 and a completion date on July 1; is that correct?
>
> MS. TOMKOWIAK: That's correct, yes. We are working towards meeting all of the deadlines, including that March 31 deadline, which requires Google to produce a lot of information. It is going to be a massive amount of data that we are intended to and working on complying to produce on March 31.
>
> THE COURT: If documents are – let's say after you get through the March 31 deadline — because we're almost there— and you produce what you've agreed to produce by March 31, between March 31 and the July 1 completion date, will you be producing — and I assume the answer to this is yes — on a rolling basis, so when documents are ready you're going to produce them to plaintiffs, *you're not going to wait until the July 1 deadline and produce all the documents; is that correct?*
>
> MS. TOMKOWIAK: *That's correct.* I don't know where Mr. Kane got that impression, but we are not going to wait until every single document in this case is compiled –
>
> THE COURT: I'm not sure that he said that. I'm just making sure that these deadlines are the last possible date. They are not the date in which items necessarily should be produced. And I'm hearing you understand that as well.
>
> MS. TOMKOWIAK: I do, your Honor.

Hr'g Tr. 14:14–24 (Mar. 17, 2025) (emphasis added).

    c. When Google had not done so by July 2025, Plaintiffs issued an RFP specifically requesting the infringement notices and suspension records referenced in the

5

        Manual Strike Spreadsheet. Ex. 11 (RFP 96 and RFP 97). Google refused. Ex. 13 (Google's response to RFP 96 and RFP 97).

    d. Finally, on August 15 (then the last day of document discovery), Google produced the Summary Spreadsheets. Plaintiffs requested the documents underlying the Summary Spreadsheets in a September 17 email and/or in a meet-and-confer on September 30.

    e. The parties met and conferred on September 30. The conferral started at 3:00PM and lasted an hour. The following attorneys participated: Plaintiffs' Counsel: Yunyi Chen, Jeff Kane, Uriel Lee, Michele Murphy; Defendant's Counsel: Sara Sampoli, Sarah Tomkowiak, Holly Victorson.

    f. In the September 30 meet-and-confer, Google claimed that producing the documents that these spreadsheets summarize would be burdensome, and proposed that instead, Google could provide a sample of that data. 25.10.02 O+Z Email. Google represented that it would provide an update on a sampling proposal during the week of October 6. Instead, Google waited until October 17 to provide this "update", and declined to make any sampling proposal at all. 25.10.17 Latham Email. Plaintiffs proposed a sampling protocol of their own on October 20. 25.10.20 O+Z Email. On October 24, Google informed Plaintiffs that Google would not agree to Plaintiffs' proposal, and would not be making any counterproposal. 25.10.24 Latham Email.

**Other Exhibits**

16. Attached as Exhibit 6 is a true and accurate copy of a document Google produced bearing Bates number GOOG-CENG-00411022 and the name "█████████████████ █████"

17. Attached as Exhibit 7 is a true and accurate copy of a document Google produced bearing Bates number GOOG-CENG-00415327 and the title "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"

18. Attached as Exhibits 8 and 9 are copies of Google's DMCA policy documents (GOOG-CENG-00000683 and GOOG-CENG-00000685), respectively.

19. Attached as Exhibits 10 and 11 are excerpts from Plaintiffs' First and Fourth Requests for Production to Google.

20. Attached as Exhibits 12 and 13 are excerpts from Google's Responses and Objections to Plaintiffs' First and Fourth Requests for Production to Google.

Executed November 3, 2025, in Washington, D.C.

/s/ *Jeff Kane*
Jeff Kane