**Sarah A. Tomkowiak**
Direct Dial: +1.202.637.2335
sarah.tomkowiak@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

**LATHAM&WATKINS**LLP

November 14, 2025

**VIA ECF**

The Honorable Barbara C. Moses
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, New York 10007

      Re:   *Cengage Learning, Inc. v. Google LLC*, No. 1:24-cv-04274-JLR-BCM
             <u>Letter Motion for Pre-Motion Discovery Conference</u>

Dear Judge Moses:

      Plaintiffs are collectively withholding over 2,000 responsive documents on privilege or work product grounds. But Plaintiffs waived any protection that may have attached to those documents through disclosure to a third party, based on Plaintiffs' opaque privilege log. Plaintiffs invoke several arguments to cure their waiver, but none pass scrutiny. First, Plaintiffs seek to transform the narrow common interest exception into an all-encompassing discovery shield permitting competitors to exchange "privileged" communications to coordinate business efforts so long as those efforts include litigation. That is not the law. Second, Plaintiffs invoke the *Kovel* and work product doctrines to protect communications with a vendor performing routine, administrative tasks. But Plaintiffs fail to show that those doctrines apply either.

      ***Plaintiffs' Deficient Privilege Log.*** Plaintiffs, as a collective, initially served a single, categorical log that, among other deficiencies, failed to explain why any privilege or work product protection was not waived by third-party disclosure. Declaration of Sarah Tomkowiak ("Decl.") ¶¶ 3-4. After Google objected, Plaintiffs served a supplemental log ("Log") for over 2,300 documents across 72 vague categories, using nearly identical descriptions, involving approximately 22 lawyers and 84 non-lawyers. *Id.* ¶ 10. That Log invoked the common interest exception to waiver for over 2,100 documents, including documents shared with third parties like Pearson Education Inc. ("Pearson") and IP-monitoring vendors like BCGuardian. When pressed on those assertions, Plaintiffs admitted they have no written common interest agreement, and claimed a shared legal interest in IP "enforcement" and being "common victims of infringement." *Id.* ¶¶ 18, 27. Plaintiffs also conceded they have no common interest with BCGuardian but asserted that the *Kovel* exception and work product protections shield BCGuardian communications from discovery. After Google indicated it would seek relief, Plaintiffs served a "partial" log containing a few hundred document-specific entries mirroring the Log's categorical descriptions, and stated that logging the rest of the documents would take weeks. *Id.* ¶¶ 23, 25. But the entries on

Plaintiffs' incomplete "partial" log still fail to address the fundamental deficiencies in Plaintiffs' privilege claims. These issues are ripe for resolution.

**The Common Interest Exception Does Not Cure Plaintiffs' Waivers.** It is blackletter law that "voluntary disclosure to a third party of otherwise privileged information constitutes waiver of the privilege." *United States. v. Stewart*, 2016 WL 11617117, at *2 (S.D.N.Y. July 22, 2016). Each Plaintiff seeks to cure its waiver by invoking the common interest exception, which requires them to show that (1) they "share a common legal interest" and (2) "the statements for which protection is sought were designed to further that interest." *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 471 (S.D.N.Y. 2003). "Key to successfully invoking the common interest privilege is a demonstration that the common interest is not merely similar but identical," and that the "shared interest [is] legal rather than commercial." *Pereira, Tr. for Est. of Capala v. Capala*, 2019 WL 13392880, at *1 (E.D.N.Y. Apr. 16, 2019).

Plaintiffs do not carry their burden. First, they have not shown the requisite common legal interest. Plaintiffs are members of the Educational Publishers Enforcement Group ("EPEG"), an industry-wide effort formed to identify and combat "counterfeiting of books and related materials." *See* Ex. 22 ¶¶ 2-3. Plaintiff Cengage's CEO has claimed that counterfeiting has a "$70m-$100m impact on an annual basis" on Cengage alone. Ex. 23 at 2. Eliminating counterfeit goods and reclaiming lost revenue is a significant commercial, not legal, interest for Plaintiffs. *See, e.g., Johnson Matthey, Inc. v. Rsch. Corp.*, 2002 WL 1728566, at *6 (S.D.N.Y. July 24, 2002) (finding joint interest in maximizing royalties not a legal interest). And Plaintiffs cannot rely on the fact that their "anti-piracy efforts" include "filing lawsuits," Ex. 22 ¶¶ 4-6, because "a joint business strategy that happens to include a concern about litigation" does not create a shared legal interest. *Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16, 18 (E.D.N.Y. 1996); *see also Gulf Islands*, 215 F.R.D. at 471 ("[C]ommunications regarding business matters—even where litigation is pending or imminent—do not qualify for protection from discovery under the common interest rule.") (collecting cases).

Plaintiffs contend they share a legal interest in their jointly-filed infringement lawsuits against the same defendants. Decl. ¶¶ 18, 27. Though co-plaintiffs may sometimes share legal interests, the general rule is that "having identical claims against the same parties is not enough to give the plaintiffs a 'common interest'" absent evidence of a "common interest arising under a single title or right." *Demaree v. Castro*, 2023 WL 6465881, at *12-13 (S.D.N.Y. Oct. 4, 2023) (finding no common interest for claim aggregation purposes). That principle clearly applies here. Plaintiffs admit they have no shared ownership in each other's intellectual property. Decl. ¶¶ 16, 20; *see* Ex. 22 ¶ 3 (explaining EPEG's "sole focus is on efforts by the publishers to protect their respective intellectual property").[1] Thus, they do not have a shared legal interest in preventing infringement of each other's intellectual property. *See Carnegie Inst. of Wash. v. Pure Grown Diamonds, Inc.*, 481 F. Supp. 3d 276, 279 (S.D.N.Y. 2020) (finding no common interest privilege because only one party had rights in patent); *In re Hypnotic Taxi LLC*, 566 B.R. 305, 317

---

[1] Plaintiffs' Log includes 28 Categories referencing litigation. *See* Decl. ¶ 15. In each referenced litigation, each Plaintiff sued only to vindicate their own "respective copyrights" and trademarks. *Id.* ¶ 16.

(Bankr. E.D.N.Y. 2017) (finding no common interest privilege because parties had no shared "legal or beneficial interest in the property of the Trusts"); *Johnson*, 2002 WL 1728566, at *6 (similar); *cf. In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1390 (Fed. Cir. 1996) (finding common interest privilege where parties had identical interest in same patents).

Plaintiffs also fail to show how each communication furthered any common interest, and so the exception cannot apply. *See In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 2020 WL 6193856, at *3 (E.D.N.Y. Sept. 1, 2020). Plaintiffs' Log (and "partial" log) includes virtually identical, vague descriptions for each entry separated only by "a slightly different grouping of parties and non-parties," that does "nothing" to show "whether the underlying documents are or are not privileged" under the exception. *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 2021 WL 1968325, at *4 (S.D.N.Y. Mar. 31, 2021) (Moses, J.). Plaintiffs retort that their status as joint plaintiffs represented by the same counsel in this and prior cases is dispositive. But that is not the law. *See, e.g.*, *Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 417 (D. Md. 2005) (rejecting argument that "having joint counsel proves a common legal interest"); *Pereira*, 2019 WL 13392880, at *1 (common interest privilege requires showing (1) shared legal interest *and* (2) evidence of genuine cooperation). And even if Plaintiffs shared an interest as to certain litigation-related documents (they do not), such an interest would not apply to *all* documents. For example, Plaintiffs share no legal interest with Pearson, a non-party, regarding this litigation. *Gulf Islands*, 215 F.R.D. at 473 (collecting cases); *see also* Decl. ¶ 12 (identifying Categories including Pearson). And Plaintiffs have no shared legal interest in EPEG's non-litigation anti-counterfeit efforts. *See id.* ¶ 13 (identifying non-litigation Categories).

***Including Third-Party BCGuardian on Communications Separately Waived Privilege.*** Plaintiffs concede they have no common interest with third-party BCGuardian. *See id.* ¶¶ 8, 27. Instead, Plaintiffs contend that the *Kovel* doctrine prevents waiver and that BCGuardian's role as Plaintiffs' counsel's agent bestowed work product protection over Plaintiffs' communications with BCGuardian. Both arguments fail.

In *United States v. Kovel*, the Second Circuit held that including certain third parties, *e.g.*, an accountant or translator, in otherwise privileged communications will not break privilege if the third party performs specialized services to assist counsel in providing legal advice. 296 F.2d 918, 922 (2d Cir. 1961). To benefit from *Kovel*, Plaintiffs bear the burden to show that including BCGuardian on privileged communications "was *necessary* for the [Plaintiffs] to obtain informed legal advice." *GMO Gamecenter USA, Inc. v. Whinstone US, Corp.*, 2025 WL 1763262, at *5 (S.D.N.Y. June 25, 2025). That requirement "means more than just useful and convenient, but rather requires that the involvement of the third party be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications." *Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp.*, 1999 WL 378337, at *4 (S.D.N.Y. June 10, 1999).

The record does not support such a showing. On October 19, 2025, BCGuardian produced an ███████ Statement of Work ("SoW") ████████████████ (Plaintiffs have yet to produce any agreements with BCGuardian). The SoW states that, ████████


**LATHAM&WATKINS**LLP

Ex. 24 at BCG-Google00002646-47. Any withheld communications relating to those activities—which attorneys and clients routinely perform without specialized expertise—do not qualify for *Kovel* protection because BCGuardian acted as an information-gatherer, not as a translator, and BCGuardian's activities were certainly not "indispensable" to providing legal advice. *See, e.g., United States v. Ackert*, 169 F.3d 136, 139-40 (2d Cir. 1999) (no *Kovel* privilege where third party merely provided "information [the client] did not have"); *Durling v. Papa John's Int'l, Inc.*, 2018 WL 557915, at *5 (S.D.N.Y. Jan. 24, 2018) (no *Kovel* privilege because third-party's "role was not as a translator or interpreter of client communications").

Plaintiffs' communications with BCGuardian also are not work product. Documents "prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation," are not work product. *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015). As the SoW makes clear, The SoW distinguishes between BCGuardian's Ex. 24 at BCG-Google00002647. To the extent Plaintiffs are withholding materials BCGuardian created as part of its ongoing engagement *Id.* at BCG-Google00002646, work product protection does not apply. *See Durling*, 2018 WL 557915, at *7 (holding third-party work related to general business strategy not protected).

Even if those communications were protected, Plaintiffs waived that protection by (1) producing BCGuardian's "work product" (*e.g.*, infringement notices and test purchases) to Google in this case; (2) allowing BCGuardian to produce similar materials to Google; and (3) previously sending Google the same documents that are on the Log. Decl. ¶¶ 28-29; *see* Ex. 24 at BCG-Google00002648. That "selective waiver of [Plaintiffs'] work product privilege... constitutes an implied waiver of all work product relevant to the same issue." *Coleco Indus., Inc. v. Universal City Studios, Inc.*, 110 F.R.D. 688, 691 (S.D.N.Y. 1986). Further, Plaintiffs should not be allowed to use their work product, such as test purchase data or documents purporting to identify ads for allegedly infringing works, "to prove a point but then invok[e]... privilege to prevent [Google] from challenging that assertion." *Chevron Corp. v. Donziger*, 2013 WL 4045326, at *4 (S.D.N.Y. Aug. 9, 2013); *Granite Partners v. Bear, Stearns & Co.*, 184 F.R.D. 49, 54-56 (S.D.N.Y. 1999) (finding waiver where party used work product as sword and shield).

Finally, because Plaintiffs and BCGuardian uniquely possess contemporaneous records of how alleged infringements were identified and verified, Google has a substantial need for those documents to test Plaintiffs' claims of direct infringement. *Hayden v. Int'l Bus. Machines Corp.*, 2023 WL 4622914, at *12 (S.D.N.Y. July 14, 2023) (finding substantial need where documents were "highly probative" of liability).

For these reasons, the Court should grant Google's Motion and adopt the attached proposed

**LATHAM&WATKINS**LLP

order requiring Plaintiffs to produce all improperly withheld documents.[2]

Respectfully submitted,

*/s/ Sarah A. Tomkowiak*
Sarah A. Tomkowiak (*pro hac vice*)
of LATHAM & WATKINS LLP

cc:   All Counsel of Record (via ECF and e-mail)

---

[2] By logging these documents, Plaintiffs concede responsiveness. In any event, Plaintiffs' efforts to enforce their purported copyrights and monitor for infringement are probative of their alleged damages and of Google's unclean-hands and mitigation defenses.