# EXHIBIT 14

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; ELSEVIER INC.; ELSEVIER B.V.; and MCGRAW HILL LLC, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Civil Action No. 24-cv-04274-JLR-BCM <br><br> **AMENDED COMPLAINT** <br><br> **Jury Trial Requested** |

Plaintiffs Cengage Learning, Inc. ("Cengage"); Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning ("Macmillan Learning"); Macmillan Holdings, LLC ("Macmillan Holdings"); Elsevier Inc. ("Elsevier"); Elsevier B.V.; and McGraw Hill LLC ("McGraw Hill") (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby file their Complaint against Google LLC ("Google"). Plaintiffs Cengage, Macmillan Learning, Elsevier, and McGraw Hill (collectively, "Publishers") assert claims against Google for contributory and vicarious copyright infringement and violations of New York General Business Law Section 349(a). Plaintiffs Cengage, Macmillan Holdings, Elsevier, Elsevier B.V., and McGraw Hill (collectively, "Trademark Plaintiffs") assert claims against Google for direct trademark infringement. Plaintiffs allege as follows on personal knowledge as to matters relating to themselves and on information and belief as to all other matters.

1

Accordingly, as Google knows, test banks and ISMs should never be sold to students, let alone promoted via Google ads.

33. The Publishers and their authors invest significant time, money, and creative energy into creating and publishing their works. Each Publisher expends significant resources in the creation, support, advertisement, and promotion of their textbooks in the United States. Further, substantial creative efforts go into developing the content of the Publishers' educational works, such as writing and editing content, deciding which content to include and how to present and arrange it, and updating books to reflect developments in the field.

32. The Publishers (and/or their predecessors) have invested decades of effort building long histories and reputations for publishing works of the very highest quality, which consumers associate with the Publishers and the trademarks under which their works are published. These trademarks, and the goodwill of the business associated with them, are of tremendous value.

33. The Publishers own or exclusively control the copyrights in their works or derivative works described in Exhibit A hereto (the "Authentic Works"), along with many others. The relevant copyrights for the Authentic Works are registered with the U.S. Copyright Office. Google has infringed the Publishers' rights in the Authentic Works as described herein. Exhibit A is a non-exhaustive, representative list that will be updated as this case proceeds.

34. The Trademark Plaintiffs are the owners and registrants under 15 U.S.C. § 1127 of their respective trademarks described in Exhibit B hereto (the "Marks"). The Marks, which are registered on the Principal Register of the U.S. Patent and Trademark Office, are distinctive indications of origin and may also be incontestable under 15 U.S.C. § 1065. Like Exhibit A, Exhibit B is a non-exhaustive, representative list that will be updated as this case proceeds.

9

even after receiving notice of them, forcing Plaintiffs to include the pirates in additional infringement notices to Google.

119. Despite Plaintiffs' efforts to address the infringement of their intellectual property rights by bringing suit against pirate sellers, with each case it became clearer that the problem needed to be addressed by Google. The pirates are scofflaws who run illegal businesses devoted to piracy and frequently operate from abroad where they can often evade judgment enforcement. Google is a preeminent U.S. company that claims to set the "industry standard" for eliminating "rogue sites" from its advertising services. Yet, it is principally or entirely through Google that those looking to purchase the Publishers' textbooks, or searching for a copy of their test banks or ISMs (which should not be advertised at all), most commonly find these "rogue sites." And instead of the Infringing Shopping Ads problem improving, it has only gotten worse.

## CLAIMS FOR RELIEF

### *Count I – Contributory Copyright Infringement (Asserted by the Publishers)*

120. Plaintiffs repeat and reallege every allegation contained outside of Count I as if fully set forth herein.

121. The Authentic Works listed in Exhibit A constitute original works and copyrightable subject matter pursuant to the Copyright Act of 1976, and they are protected by registrations duly issued by the U.S. Copyright Office to the Publishers or their predecessors or licensors. At all relevant times, the Publishers have been and still are the owners or exclusive licensees of all rights, title, and interest in and to their respective copyrights in the Authentic Works, which have never been assigned, licensed, or otherwise transferred to the Pirate Sellers or those who purchase the Pirate Sellers' Infringing Works.

122. Google is contributorily liable for at least two forms of direct infringement (collectively, the "Direct Infringements"). First, Pirate Sellers have sold infringing copies of the

38

125. Nevertheless, Google has facilitated, encouraged, and materially contributed to the Direct Infringements.

126. For instance, despite the Publishers' notices, Google has continued to create and disseminate Infringing Shopping Ads for its repeat infringer Pirate Sellers, to actively promote Pirate Sites through such ads, and to provide services to increase the efficacy of those ads. Google also has continued to display specific Infringing Shopping Ads that it knows advertise infringing products, even though users find the Pirate Sites principally or entirely through Infringing Shopping Ads. The Infringing Shopping Ads are specifically designed to entice users to visit the Pirate Sites and buy the Infringing Works, which Google promotes at a fraction of the price of the Publishers' legitimate works. Indeed, for the Direct Infringements at issue in this case, i.e., sales of the Infringing Works to Google users who clicked on an Infringing Shopping Ad for a work and purchased the work, the Google ad was essential to the infringement.

127. Further, Google materially contributed to the direct infringement described herein by refusing to allow Shopping Ads for authentic ebooks but allowing such ads for digital books from the Pirate Sellers.

128. Each infringement of the Authentic Works constitutes a separate and distinct act of infringement.

129. The foregoing acts of infringement by Google have been willful, intentional, and purposeful, in disregard of the Publishers' rights, including because Google was well aware that that the Pirate Sellers were selling Infringing Works but continued to advertise those Infringing Works and promote the Pirate Sites.

130. Google's actions described herein, which are ongoing, have caused and will continue to cause irreparable injury to the Publishers, for which the Publishers have no remedy at

Plaintiffs hereby demand a trial by jury of all issues that are so triable.

Dated: September 16, 2024

        Respectfully submitted,

        /s/ Matthew J. Oppenheim
        Matthew J. Oppenheim
        Michele H. Murphy (*pro hac vice*)
        Jeff Kane (*pro hac vice*)
        Kevin P. Lindsey
        Uriel Lee (*pro hac vice forthcoming*)

        OPPENHEIM + ZEBRAK, LLP
        4530 Wisconsin Avenue NW, 5th Floor
        Washington, DC 20016
        202-480-2999 telephone
        866-766-1678 fax
        matt@oandzlaw.com
        michele@oandzlaw.com
        jkane@oandzlaw.com
        klindsey@oandzlaw.com
        ulee@oandzlaw.com