

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
Jkane@oandzlaw.com

November 19, 2025

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

> **Re:**  ***Cengage Learning, Inc. et al. v. Google LLC***, No. 24:cv-04274-JLR-BCM
> **Plaintiffs' Letter Motion for Discovery Conference Regarding Searching Google's Buganizer System**

Dear Judge Moses,

We represent all Plaintiffs in this matter. In response to Plaintiffs' August 5, 2025 motion to compel, this Court ruled that Google should search for relevant documents in its Buganizer system. Dkt. 217 ¶ 1(d). Based on Google's claims about the burden of searching that system, the Court accepted Plaintiffs' proposal that Google could limit its search to the "components" (the topical categories into which Buganizer documents are organized) most likely to contain relevant documents. Dkt. 217 ¶ 1(d). The Court recognized, though, that Google would need to cooperate with Plaintiffs in order to identify the right components. Dkt. 218 at 137:17–138:7. The Court directed Google to "continue to meet and confer in good faith" to identify the right components, Dkt. 217 ¶ 1(d), noting that Google "knows a whole lot more about Buganizer" than Plaintiffs do. Dkt. 218 at 131:24–25.

Unfortunately, Google made little if any effort to identify additional relevant Buganizer components, or even to provide information about the components listed in the documents Google has produced to date. As a result, Plaintiffs have no confidence that the list of components that the two sides have been negotiating represents the components most appropriate for a limited search to the exclusion of other components.

Fortunately, since the October hearing, Plaintiffs have learned of a more viable alternative. The Buganizer allows Google to filter search results not just by component but also by custodian. In other words, Google can search the Buganizer for a given term and return only those tickets that are associated with particular persons and/or aliases. Given the lack of information on components, Plaintiffs believe a custodian-based search is the better way to ensure that Google's search effectively returns relevant documents. Google, however, repeatedly has refused to conduct this search. This Court should order Google to do so.

## I. Google has not provided the necessary information for the parties to compile an appropriate list of components.

Despite Plaintiffs' best efforts, Google has provided little information about potential components. Google did not produce the "index of the available 'components'" that the Court had hoped it would, Dkt. 217 ¶ 1(d). Google's counsel claimed they were "unaware of any existing, accurate, comprehensive list of every component and sub-component within [Buganizer] that can



Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
Jkane@oandzlaw.com

be pulled and produced in short order." Declaration of Attorney Jeff Kane ("Decl.") ¶ 9. Nor did Google "inform Plaintiffs what alternatives" exist to "navigat[e]" the components, as the Court also ordered, Dkt. 217 ¶ 1(d). *Id.* Instead, *Plaintiffs* identified to Google a list of the components that appeared in the custodial documents Google had produced as of October 8. Decl. ¶ 10. In the end, all but one of the components that the parties have discussed using either were components that appeared in the Buganizer tickets that happened to be referenced in Google's pre-October 8 productions, or are nearly identical to those components. Decl. ¶ 11. This is problematic for several reasons.

*First*, these tickets came from a materially incomplete set of the relevant documents in this case. They reflect only seven of the eighteen custodians that Google will be searching, and only nine of the twenty search terms that Google will be searching. Decl. ¶ 12. The custodians and search-terms *not* included so far represent key personnel and topics in this case, including "zero strike", Google's claimed efforts to detect accounts that were selling pirated ebooks, and the Google account numbers of the pirates who sold Plaintiffs' works. It is unrealistic to expect even a reasonably complete list of components to come from such an incomplete set of documents.

*Second*, Google failed to take basic steps it could have to create a usable list of components. Even for the components Plaintiffs and Google *have* identified, Google could not explain what any of these components are, or for what purpose any of them are used. Decl. ¶ 13. Google could have done so had it wanted to share information with Plaintiffs. The Buganizer system apparently provides a "hovercard" for each component and subcomponent that includes a description of the component. Ex. 1 at 4. But despite acknowledging the potential usefulness of these descriptions, more than a month after the October 8 hearing, Google has not produced hovercards for *any* components. Decl. ¶ 13. Indeed, Google itself has told Plaintiffs that the relevance of a particular component often cannot be evaluated simply from the name of the component, but that is all Google has provided. *Id.*

The Buganizer system also allows a user to search for components, i.e., to conduct a search that is limited to searching component names and the descriptions of components, as opposed to searching the contents of individual Buganizer tickets. Ex. 3. But Google has refused to perform such a search.

Google failed even to ask its own personnel how *they* determine which component to use when they wish to create a Buganizer ticket. Decl. ¶ 13.

And despite representing to the Court at the October 8 hearing that it had produced all of the tickets Plaintiffs had identified to that date, Dkt. 218 116:23–117:25, Google in fact had not done so, and did not complete that production until November 11. Decl. ¶ 14.

*Third*, Google has shared almost nothing about how it determined that the components it proposed represent the most relevant components. Google's counsel claimed that they spoke to Google employees who conduct "activities relevant to this case," but wouldn't say how many, what departments those employees represented, or what any of those employees said. Decl. ¶ 17; *contra* Dkt. 218 at 137:24–138:7 (The Court encouraging Google to share with Plaintiffs what it learned from Google personnel).

Under these circumstances, no one can have confidence that limiting searches to the specific components the parties are considering would not significantly prejudice Plaintiffs by



Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
Jkane@oandzlaw.com

excluding a substantial volume of important information. During a meet-and-confer on October 28, Google argued that because Google's initial seven custodians were relevant to the issues in this case, the components referenced in their emails necessarily captured most of the relevant components for this case. Decl. ¶ 18. But if this is so, Google should simply filter its Buganizer searches by custodian, rather than by component, as discussed below.

## II.    Google should search for Buganizer documents by custodian, rather than component.

After the October 8 hearing, Plaintiffs discovered that the Buganizer allows Google to conduct a search that is targeted to tickets involving particular users. Ex. 2 at 1. Specifically, Google can enter a search-term into Buganizer and filter the results to only those documents for which a particular individual is listed as the "Reporter" (i.e., the person who initiated the ticket), the "Assignee" (i.e., the person tasked with being responsible for the ticket) or the "CC" (i.e., a person who is not the reporter or assignee, but who can send and receive messages concerning the ticket). *Id.* Google should do just that; it should search for Buganizer tickets where one of the custodians in this case is the "Reporter", "Assignee" or "CC". This is a more sensible method of locating relevant documents than is a component-based search for multiple reasons.

First, the custodian-based approach avoids the need to identify an appropriate list of components. The Court and the parties already have compiled a list of potentially relevant individuals, but Google has not provided the necessary information to evaluate whether limiting searches to those specific components would prejudice Plaintiffs by excluding a substantial volume of important information. As explained above, Google claims that no "comprehensive" index exists, and has provided almost no information to give anyone comfort that the components listed in the partial production Google had made by October 8 is the right set of components.

Second, nearly all of the components that have been identified so far came from custodial documents. Rather than attempting to pick a subset of the components that appear in these materially incomplete custodial documents, Google should simply search by the custodians from whom those components came.

Third, for a component-based search to be viable, Google would have to produce all of the custodial documents it has been ordered to produce, so that the parties can see what Buganizer tickets, and in turn what components, are referenced in those documents. But the complete custodial production is not due until February 6. Dkt. 221 ¶¶ (a)–(b). Far more sensible is simply searching the Buganizer by custodians in the first place.

Fourth, the Buganizer tickets are communications among Google personnel that should be searched, just like any other communications. The only distinction between Buganizer communications and the emails and chats that Google is searching as part of its "custodial" searches is the platform on which they appear. Really, Google should have included Buganizer tickets in its search for custodial documents in the first place. That Google did not even mention the Buganizer system when the parties originally negotiated custodians and search-terms, Decl.

**O+Z** Oppenheim
+ Zebrak, LLP

WASHINGTON – NEW YORK

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
Jkane@oandzlaw.com

¶ 3, is itself a reason not to take at face value Google's claim that its production included all of the relevant components.[1]

Fifth, the parties can take the same search terms they had been negotiating for the component-based search and apply them to the custodian-based search.

Google initially refused to perform any custodian-based search. Decl. ¶ 23. After Plaintiffs informed Google that Plaintiffs would be filing a motion seeking custodial searches within the Buganizer, Google claimed in a second meet-and-confer on November 18 that it *might* be willing to do a custodian-based search, but that any search would have to include only a small number of custodians and search-terms, and would only include the "Reporter" and "Assignee" fields. *Id.* Otherwise, Google said, the search would be too burdensome. Google provided no hit reports, test searches, or other evidence of any claimed burden. It offered only its attorney's speculation that any search beyond the limited one described above would be too burdensome. Plaintiffs informed Google that if Google could provide more specific information with which Plaintiffs could evaluate Google's claim of burden, Plaintiff would be willing to negotiate further. But in the absence of such information, further negotiations would lead only to delay. *Id.*

Under the circumstances, a custodial search is far more sensible.

### III. In the alternative, the Court should order Google to provide more information from which the parties can identify the appropriate components.

If the Court instead concludes that a component-based search is the most promising, the Court should order Google to take certain basic steps to allow both parties to determine the most appropriate list of components: 1) provide descriptions, such as the "hover card," for all components Plaintiffs and Google have identified; 2) describe Google personnel's own process for locating relevant components for specific topics and functions; 3) disclose the roles and departments of the "contacts" Google spoke with in connection with its "investigation" on components, share the list of components that those "contacts" provided, and for what "relevant activities" these components were used; and 4) utilize component search functionalities to locate additional relevant components.

### IV. Conclusion

Google should search for Buganizer tickets where the "Reporter," "Assignee," and "CC" fields is a custodian, apply the search-terms the parties have been negotiating, and produce all responsive documents.

---

[1] Similarly troubling is Google's failure to mention the option of a custodial search during the months of correspondence and motion practice on this issue. When Plaintiffs first suggested a custodian-based search, Google pointed out that attached to its opposition to Plaintiffs' August 5 motion was a declaration, which in turn linked a webpage, which stated that Buganizer can be searched by custodian. Decl. ¶ 22. Google tried to claim that *Plaintiffs* therefore should have raised this possibility at the October 8 hearing or sooner. This gets the parties' burdens backwards. As the Court observed, Google "knows a whole lot more about Buganizer" than Plaintiffs do. Dkt. 218 at 131:24–25. Google should have raised this possibility, rather than waiting to see if Plaintiffs would discover it.

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
Jkane@oandzlaw.com

Respectfully submitted,

*/s/ Jeff Kane*
Jeff Kane