IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENGAGE LEARNING, INC. et al. <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Civil Action No. 24-cv-04274-JLR-BCM |

**Attorney Declaration of Jeff Kane in Support of Plaintiffs' Letter motion for Discovery Conference Regarding Searching Google's Buganizer System**

1. I am an attorney at the law firm Oppenheim + Zebrak, LLP ("O+Z"), counsel for all Plaintiffs in this matter. I submit this declaration in support of Plaintiffs' Letter Motion for Discovery Conference Regarding Searching Google's Buganizer System.

2. I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently hereto.

**Google's General Resistance to Buganizer Discovery**

3. Throughout the parties' extensive discussions about ESI and custodians in late 2024 and early 2025, Google did not mention the Buganizer as a source of ESI.

4. In Google's Eleventh Production dated April 29, 2025, Plaintiffs observed that certain emails produced by Google indicated that Google employees were discussing issues related to copyright infringement and Google's DMCA program in the "bug," i.e. Google's "Buganizer" system, and that complete copies of those discussions on the "bug" did not appear to be included among the email productions. On May 19, 2025, Plaintiffs inquired if Google was also searching for responsive documents in the Buganizer. On May 29, Google responded that "Buganizer records

1

will likely be substantially duplicative of emails" and so Google would not search the Buganizer for responsive documents in the first instance. 25.05.29 Latham Email.

5. Following Google's repeated refusal to search the Buganizer, Plaintiffs filed their first letter motion on this issue on August 5, 2025. Dkt. 160.

6. Prior to the October 8 hearing before this Court, Plaintiffs continued to confer with Google in an attempt to resolve this issue. During the parties' September 25 meet-and-confer, Google represented that it was reviewing and producing the specific Buganizer ticket numbers that Plaintiffs identified, but only for purposes of resolving the dispute. Google also represented that in the course of its review of documents for production, it did not search the Buganizer, or even retrieve a Buganizer ticket that was referenced in a responsive, produced email.

**Google's Minimal Effort to Identify Relevant Components**

7. On September 16, 2025, Plaintiffs suggested that Google filter the search results from the Buganizer system by component. 25.09.16 O+Z Email. During a meet-and-confer on September 25, Google refused to do so. On October 7, Plaintiffs provided proposed search-terms that Google could run to identify appropriate components in which to search for relevant documents, and then should use other search terms to search for relevant documents within those components. 25.10.07 O+Z Email.

8. At the October 8 hearing, the Court ordered that:

Defendant's counsel must promptly confer with their client as to whether Google possesses a list or index of the available "components" for the [Buganizer]. If so, defendant must promptly produce it to plaintiffs. If not, defendant must inform plaintiffs what alternatives, if any, exist for navigating the components. Thereafter – and no later than October 22, 2025 – the parties must exchange their respective proposals for the "top 10" components to be searched and the "top 10" search terms (compatible with the search capabilities of the [Buganizer]) to be run within those components. The parties must continue to meet and confer in good faith (and, if necessary, Google must run a reasonable number of test searches) to implement a mutually agreeable search protocol for the Issue Tracker.

Dkt. 217 ¶ 1(d).

9. Google did not produce the "index of the available 'components'" that the Court had hoped it would, Dkt. 217 ¶ 1(d). Google's counsel claimed they were "unaware of any existing, accurate, comprehensive list of every component and sub-component within [Buganizer] that can be pulled and produced in short order." 25.10.14 Latham Email. Nor did Google "inform Plaintiffs what alternatives" exist to "navigat[e]" the components, as the Court also ordered, Dkt. 217 ¶ 1(d).

10. Instead, *Plaintiffs* identified to Google a list of the components that appeared in the custodial documents Google had produced as of October 8. 25.10.13 O+Z Email. Plaintiffs likewise identified four higher-level components that appeared in Google's production, and asked Google to provide the subcomponents to these. Google refused to provide the sub-components for one component, claiming the component was "too broad". Google did provide subcomponents for other components. But google also used the list of subcomponents it shared to justify *removing* components it claimed were irrelevant, not just to identify components that it claimed were *relevant*. Moreover, without an explanation as to what these components and subcomponents are, and what they are used for, Google's list is of little value.

11. Ultimately, all but one of the components Google has offered to search either were components that appeared in the Buganizer tickets that happened to be referenced in Google's pre-October 8 productions, or are nearly identical to those components.

12. The Buganizer tickets form which these components were drawn came from an incomplete set of the relevant documents in this case. They reflect only seven of the eighteen[1]

---

[1] During and since the October 8 hearing, Google has been ordered to treat as custodians four legal agents, Sajin Padiyath, Jake Erlick, Masquood Khanzada, and the listservs shopping-dmca@google.com, lrmonetized@google.com. Dkts. 217 ¶ 1(a), 221 ¶ (a). Google has also agreed to treat one additional personnel as a full custodian, and one other personnel as a custodian for certain search-terms.

custodians that Google will be searching, and only nine of the twenty search-terms[2] that Google will be searching.

13. Of the components the parties discussed, Google has not been able to explain what any of these components are, or for what any of them are used. The Buganizer system apparently provides a "hovercard" for each component and subcomponent that includes a description of the component. Ex. 1 at 4. But despite acknowledging the potential usefulness of these descriptions, more than a month after the October 8 hearing, Google has not produced hovercards for *any* components. During the October 28 meet-and-confer, Google told Plaintiffs that the relevance of a particular component often cannot be evaluated simply from the name of the component, but that is all Google has provided. During the same meet-and-confer, Google's counsel admitted that they had not even asked Google personnel how *they* determine which component to use when they wish to create a Buganizer ticket.

14. At the October 8 hearing, Google represented to the Court that Google has provided the full Buganizer tickets for all Buganizer issue numbers that Plaintiffs have identified to Google. Dkt. 218 at 116:23–117:25 ("THE COURT: Wait. You've completed that already, meaning that you've already given them complete Buganizer results, so to speak, for the 42 tickets that Mr. Kane mentioned? MS. VICTORSON: Exactly."); *id.* at 117:15–17 ("[Ms. Victorson] But, to date, we've taken all of their identified tickets, we have found them in the system, and we have produced those."). In fact, Google had not done so, as Google later admitted in writing. 25.10.14 Latham

---

[2] In response to the Court's Order after the October 8 hearing, Google agreed to add six search terms concerning its ebook and pdf filters. 25.10.29 Latham Email. At the October 14 hearing, Google was ordered to add five search terms (including the Merchant Center account numbers and Ads account numbers of the pirates who infringed Plaintiffs works). Dkt. 221 ¶ (b).

4

Email. Instead, Google waited until November 11 (nearly three weeks after the parties exchanged proposed lists of components) to produce these tickets.

15. On October 22, 2025, per the Court's Order (Dkt. 217 ¶ 1(d)), Plaintiffs exchanged their proposal of "top 10" search terms and components with Google to the best of their knowledge and understanding at the time. Plaintiffs requested a prompt meet-and-confer to discuss the parties' proposals and the concerns Plaintiffs had raised on the insufficiency of information that Google had shared about components.

16. The parties met and conferred on October 28, 2025. The discussion lasted one hour. The participants were: Yunyi Chen, Jeff Kane, and Michele Murphy (Plaintiffs' counsel); Sara Sampoli, and Sarah Tomkowiak (Defendant's counsel).

17. During the October 28 meet-and-confer, Google's counsel claimed that they spoke to Google employees who conduct "activities relevant to this case," but wouldn't say how many, what departments those employees represented, or what any of those employees said. Contra Dkt. 218 at 137:24–138:7 ("[The Court]: And Google, on its end, does have resources in-house to help it help you. I mean, they're going to go talk to the people who actually run this system, presumably, and understand its architecture. And to the extent it's going to make everybody's life easier, you're going to share that information with the Plaintiffs, right? MS. VICTORSON: Yes.")

18. During the October 28 meet-and-confer, Google argued that because Google's initial seven custodians were relevant to the issues in this case, the components referenced in their emails necessarily captured most of the relevant components for this case. Plaintiffs pointed out that if this is so, Google should simply search filter its Buganizer searches by custodian, rather than by component.

**Searching the Buganizer by Custodian, Rather than Component**

19. During the parties' extensive meet-and-confers prior to the October 8 hearing, Google never mentioned that the Buganizer tickets can be searched by the "Reporter," "Assignee," and "CC" fields within the Buganizer.

20. Following the October 8 hearing, due to the continued lack of input from Google on how the components could be navigated, Plaintiffs attempted to investigate additional information about the Buganizer's capabilities on their own, without Google's input. Plaintiffs learned that the Buganizer could apparently be searched by the "Reporter," "Assignee," and "CC" fields. Ex. 2 at 1.

21. Plaintiffs promptly informed Google of their finding and suggested that Google should search the "Reporter," "Assignee," and "CC" fields by agreed-upon and court-ordered custodians, export those documents to Relativity, apply appropriate search terms, and produce the responsive documents. 25.10.13 O+Z Email.

22. Google's failure to point out this option to Plaintiffs or to the Court during the months of correspondence and motion practice on this issue is troubling. When *Plaintiffs* first suggested a custodian-based search, Google pointed out that attached to its opposition to Plaintiffs' August 5 motion was a declaration, which in turn linked to a webpage, which stated that Buganizer can be searched by custodian. Google tried to claim that *Plaintiffs* therefore should have raised this possibility at the October 8 hearing or sooner. 25.10.24 Latham Email.

23. Google initially refused to perform any custodian-based search. 25.10.14 Latham Email. After Plaintiffs informed Google that Plaintiffs would be filing a motion, Google then

claimed (in a second meet-and-confer on November 18)[3] it might be willing to do a custodian-based search, but that any search would have to include only a small number of custodians and search terms, and would only include the "Reporter" and "Assignee" fields. 25.11.18 Latham Email; 25.11.18 Meet-and-Confer. Otherwise, Google said, the search would be too burdensome. *Id.* Google provided no hit reports, test searches, or other evidence of any claimed burden. It offered only its attorney's speculation that any search beyond the limited one described above would be too burdensome. Plaintiffs informed Google that if Google could provide more specific information with which Plaintiffs could evaluate Google's claim of burden, Plaintiff would be willing to negotiate further. But in the absence of such information, further negotiations would lead only to delay. 25.11.18 O+Z Email.

I declare under penalty of perjury that the foregoing is true and correct.

Executed November 19, 2025 in Washington, D.C.

/s/ *Jeff Kane*
Jeff Kane

---

[3] This discussion lasted approximately 30 minutes. The participants were: Yunyi Chen and Jeff Kane (Plaintiffs' counsel); Sara Sampoli and Sarah Tomkowiak (Google's counsel).