# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; ELSEVIER INC.; ELSEVIER B.V.; and MCGRAW HILL LLC,<br><br>       *Plaintiffs*,<br><br>v.<br><br>GOOGLE LLC,<br><br>       *Defendant*. | Case No. 1:24-cv-04274-JLR-BCM |

**ATTORNEY DECLARATION OF SARAH TOMKOWIAK**

I, Sarah Tomkowiak, declare that:

1. I am a partner at the law firm Latham & Watkins LLP, counsel for Google LLC ("Google") in this matter.

2. I submit this declaration in connection with Google's Letter Motion for Pre-Motion Discovery Conference.

**Plaintiffs' Initial Privilege Log**

3. Plaintiffs served their initial privilege log (the "Initial Log") to Google on August 1, 2025. The Initial Log is a categorical privilege log. A true and correct copy of the Initial Log is attached as **Exhibit 1**.

4. According to the document counts on the Initial Log, Categories 1-7 and 9-16 collectively consist of 622 documents.

5. On August 7, 2015, I emailed Plaintiffs' counsel to request a meet and confer and raise several concerns about the Initial Log and its compliance with the federal and local rules:

   a. I noted that the Initial Log did not "specify which Plaintiff asserts privilege over which categories of documents," and that "[e]ach Plaintiff should provide a separate privilege log." And because it was not apparent whether the Plaintiffs were invoking the common interest exception to privilege waiver, I requested that Plaintiffs specify "[i]f documents are being withheld based on a common-interest privilege";

   b. I noted that the Initial Log did not specify whether Plaintiffs were withholding specific documents or entire families as privileged, and that it was unclear whether Plaintiffs "did an independent assessment of each document in a family for privilege";

   c. I noted that the Initial Log did not specify whether Plaintiffs claimed both attorney-client privilege and attorney work product over each document in each category;

   d. I noted that the Initial Log did not reflect "which attorney's legal advice is (ostensibly) reflected, provided, or requested with respect to each document"; and

   e. I noted that the Initial Log reflected only "boilerplate" and "almost identical" descriptions of the subject matter of the withheld documents.

6. In the same email, I requested that Plaintiffs explain why the presence of individuals from non-parties Pearson Education, Inc. ("Pearson") and BCGuardian LLC ("BCGuardian") on withheld documents and communications did not break privilege. A true and correct copy of that email is attached as **Exhibit 2**.

7. At 11:00 am ET on August 14, 2025, I attended a telephonic meet and confer, lasting approximately an hour, between counsel for Google and counsel for Plaintiffs regarding Plaintiffs' Initial Log. The attorneys on the call included myself, Caroline Clarke, Jeff Kane, Michele Murphy, and Kevin Lindsey.

8. On August 15, 2025, my colleague, Caroline Clarke, sent an email to Plaintiffs' counsel memorializing the parties' August 14 conference. A true and correct copy of that email is included in **Exhibit 2**. Ms. Clarke memorialized Plaintiffs' position that privilege over withheld communications was not waived by including Pearson or BCGuardian on those communications because Pearson shares a common legal interest with Plaintiffs and BCGuardian "provides 'expertise' to counsel to help counsel provide legal advice and BCGuardian acts as a 'translator' in a complex subject matter." And Ms. Clarke noted Plaintiffs' claim that "BCGuardian has technical expertise in complex infringement and notice data."

**Plaintiffs' Supplemental Privilege Log**

9. Plaintiffs served a Supplemental Privilege Log (the "Log") on September 10, 2025. A true and correct copy of the Log is attached as **Exhibit 3**. The Log includes 72 Categories and separately logged presentations comprising over 2,300 withheld documents, according to the document counts on the Log. The Log includes two columns not present in Plaintiffs' Initial Log, titled "Plaintiffs(s) Asserting Privilege or Protection" and "Common Interest." The "Common Interest" column includes a "Yes" or "No" for each Category or presentation listed in the Log.

10. I understand that for each person listed in the "Sender(s), Recipient(s), Copyee(s)" column, the Log lists the person's affiliation (e.g., ▇▇▇▇▇▇▇) next to the person's name the first time they appear on the Log and whether the person is an attorney or non-attorney. I calculated that, across all Categories, the Log includes approximately 22 attorneys and 84 non-attorneys. I

3

understand that, for certain Categories, the "Category Description/Memo or Presentation Title" column on the Log identifies any litigation Plaintiffs associate with the withheld communications contained in each Category.

11. I identified all Categories and presentations reflecting a "Yes" in the Common Interest column and determined that Plaintiffs assert a common interest over 35 Categories and presentations. The Categories meeting that criteria are Categories 1-6, 9-15, 18-19, 21-24, 26-36, 43, and 52. The presentations meeting that criteria are ███████████████████████ ███," "████████████████████████████████████████," and "████████ ████████████████████████████████████." Those Categories and presentations collectively comprise over 2,100 withheld documents, according to the document counts on the Log.

12. I identified all Categories reflecting individuals associated with non-party Pearson who were included on communications Plaintiffs identified as relating to this litigation, and for which the Log reflected a "Yes" in the Common Interest column. The Categories meeting that criteria are Categories 1, 6, 13-15, and 28-30. Those Categories consist of approximately 1,100 withheld documents, according to the document counts on the Log.

13. I identified all Categories and presentations that are not identified as being related to any specific litigation. The Categories meeting that criteria are Categories 10, 26, 31, and 43, which collectively consist of 44 withheld documents, according to the Log. The presentations meeting that criteria are "████████████████████████████," "████████████████████████████████████," and "████████████████████████████████████████████."

4

14. I identified all withheld communications involving third-party BCGuardian. The Categories meeting that criteria are Categories 8, 10-13, 17-19, 21-23, 27-28, 34-36, 42, and 63, which collectively consist of 841 withheld documents, according to the document counts on the Log. Of those 841 documents, 814 documents are in Categories for which Plaintiffs assert a common interest.

15. I identified all Categories Plaintiffs identified as relating to current or previous litigations and for which the Log reflected a "Yes" in the Common Interest column. The Categories meeting that criteria are Categories, 1-6, 9, 11-15, 18-19, 21-24, 27-30, 32-36, and 52. Those Categories consist of approximately 2,058 withheld documents, according to the document counts on the Log.

16. Multiple Categories in the Log reference (in the "Category Description" column) litigation pursued by Plaintiffs against "commercial pirate sites," including *Bedford Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning v. Nguyen*, 19-cv-10524-LAK (SDNY), Dkt. 78; *Cengage Learning, Inc. v. Nguyen*, 20-cv-769-JGK (SDNY), Dkt. 36; *McGraw Hill, LLC v. Van*, 20-cv-6368-GHW (SDNY), Dkt. 62; *Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning v. English*, 21-cv-6691-ER (SDNY), Dkt. 69; *Elsevier Inc. v. 7yec.com*, 20-cv-8438-LLS (SDNY), Dkt. 12; *Pearson Education, Inc. v. Najji*, 21-cv-3486-RA (SDNY), Dkt. 59; *Cengage Learning, Inc. v. Smith*, 23-cv-7193-VM (SDNY), Dkt. 40; *McGraw Hill LLC v. Nazaryan*, 23-cv-2798-LLS (SDNY), Dkt. 43; *Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning v. Shopify, Inc.*, 21-cv-01340-CMH-JFA (E.D. Va.), Dkt. 1; *Pearson Education, Inc. v. Hasan*, 23-cv-07284-PAC (SDNY), Dkt. 91; *Cengage Learning, Inc. v. Google LLC,* 24-cv-04274-JLR-BCM, Dkt. 38. True and correct excerpts of the complaints from those litigations are attached as **Exhibits 4 - 14**. In each complaint, Plaintiffs seek relief for

their "respective copyrights," and, where applicable, for their "respective trademarks," and allege that infringement "in each of their respective copyrighted works constitutes a separate and distinct act of infringement."

17. On September 25, 2025, my colleague, Roberto Borgert, sent an email to Plaintiffs' counsel concerning Plaintiffs' common interest claims. My colleague requested that Plaintiffs provide evidence of a "written or oral common interest agreement," a description of the "common legal interest shared by each party to the communication," whether and how "the communications were made in furtherance of any purported common interest," and the "dates during which the purported common interest existed, when the common interest ceased, and any periods during which any parties no longer shared a common legal interest or withdrew from any common interest agreement." A true and correct copy of that email, and the complete email thread spanning September 10, 2025 through November 10, 2025, is attached as **Exhibit 15**.

18. Kevin Lindsey, counsel for Plaintiffs, responded on September 29, 2025. Plaintiffs' counsel disclosed that Plaintiffs were "not currently aware of a written co-client or common interest agreement between Plaintiffs and Pearson." Plaintiffs' counsel asserted that Pearson and Plaintiffs share a common legal interest "based on their joint legal strategy related to enforcement efforts against copyright and trademark infringement" and noted that "Plaintiffs and Pearson were and are represented by the same counsel, Oppenheim + Zebrak, LLP ('O+Z')."

19. My colleague, Roberto Borgert, replied on October 3, 2025. Mr. Borgert clarified that Google's concern was not limited to the privilege waiver resulting from including Pearson on withheld communications; the concern extended to Plaintiffs' waiver of privilege over communications between themselves. My colleague also renewed Google's request for "[e]vidence of any relevant written or oral common interest agreement (with or without Pearson)";

6

the specific "common legal interest shared by each party to the communications" on which Plaintiffs are relying as the basis for their claims of the common interest privilege; an explanation for how the withheld "communications were made in furtherance of any purported common interest"; "[t]he dates during which the purported common interest existed, when the common interest ceased, and any periods during which any parties no longer shared a common legal interest or withdrew from any common interest agreement"; and an explanation for why the "common interest exception applies to communications among themselves." My colleague also requested that Plaintiffs clarify why communications involving "third party, BC Guardian, are privileged in the first instance and, if so, how they fall under the common interest exception."

20. On October 10, 2025, Michele Murphy, counsel for Plaintiffs, sent an email to counsel for Google. In that email, Plaintiffs' counsel confirmed that there is no written common interest agreement between the co-Plaintiffs, or between Plaintiffs and Pearson. And Plaintiffs' counsel acknowledged that Plaintiffs "own different copyrights or trademarks."

21. At 11:30 am ET on October 13, 2025, my colleagues, Roberto Borgert and Caroline Clarke, met and conferred telephonically for approximately an hour with Michele Murphy, Kevin Lindsey, and Uriel Lee, counsel for Plaintiffs, to discuss the parties' dispute over Plaintiffs' privilege claims. I understand that the parties were unable to resolve the dispute on that call.

22. On October 23, 2025, my colleague, Roberto Borgert, emailed counsel for Plaintiffs disclosing that unless Plaintiffs provided evidence satisfying Google's concerns about Plaintiffs' privilege claims by November 6, Google intended to file a letter motion challenging Plaintiffs' privilege assertions.

23. On November 5, 2025, counsel for Plaintiffs sent counsel for Google a "partial supplemental privilege log," (the "Partial Log"). A true and correct copy of the Partial Log is

7

attached as **Exhibit 16**. I have reviewed the Partial Log, and understand that it logs, on an individual basis, 518 withheld documents. The Partial Log contains a new column not present in the Initial Log or the Log, titled "Joint Legal Matter Description." I have reviewed the descriptions contained in the "Joint Legal Matter Description" column and observed that this column is blank for approximately 62 entries on the Partial Log. I understand that over 400 entries contain nearly identical "Joint Legal Matter" descriptions. One example of such a description is as follows: "Joint legal matters concern enforcement of copyright and/or trademark rights against infringement, including enforcement as to Shopping ads promoting infringing copies of Plaintiffs' works and/or pirate sites selling or distributing infringing copies of Plaintiffs' works, prepared in anticipation of litigation against pirate sites, including 19-cv-10524- LAK (SDNY), 20-cv-769-JGK (SDNY), 20-cv- 6368-GHW (SDNY), 21-cv-6691-ER (SDNY), 20-cv-8438-LLS (SDNY), and/or 21-cv-3486-RA (SDNY)." *See, e.g.*, Partial Log, Row 1. Another example is "[j]oint legal matters concern enforcement of copyright and/or trademark rights against infringement, including enforcement as to Shopping ads promoting infringing copies of Plaintiffs' works and/or pirate sites selling or distributing infringing copies of Plaintiffs' works, prepared in anticipation of this litigation and litigation against pirate sites, including 19-cv-10524-LAK (SDNY), 20-cv-769-JGK (SDNY), 20-cv-6368-GHW (SDNY), 21-cv-6691-ER (SDNY), 23-cv-7193-VM (SDNY), 20-cv-8438-LLS (SDNY), 21-cv- 3486-RA (SDNY), and/or 23-cv-2798-LLS (SDNY)." *See, e.g.*, Partial Log, Row 518. The Partial Log does not identify the specific common legal interest relating to each document or explain how that document furthered such an interest.

24. At 2:30 pm ET on November 6, 2025, I, along with my colleagues Roberto Borgert and Jennifer Ferrigno, attended an approximately thirty-minute telephonic meet and confer with Michele Murphy, Kevin Lindsey, Yunyi Chen, and Danae Tinelli, counsel for Plaintiffs, during

which the parties discussed Plaintiffs' Partial Log and privilege claims. On that call, it became clear that the parties had a fundamental disagreement regarding the parameters of the "common interest" exception to privilege waiver.

25. Later that day, counsel for Plaintiffs sent an email to counsel for Google requesting an additional two weeks to finish "revising" their privilege log.

26. On November 7, 2025, counsel for Plaintiffs sent counsel for Google a revised partial supplemental privilege log that corrected formatting errors that counsel for Google had identified to counsel for Plaintiffs. A true and correct copy of the November 7, 2025 revised partial supplemental privilege log is attached as **Exhibit 17**.

27. On November 10, 2025, my colleague Roberto Borgert responded to counsel for Plaintiffs' request for an additional two weeks to prepare another iteration of their privilege log and stated Google's position that Plaintiffs do not share a legal interest in their status as co-plaintiffs or as "common victims of infringement," as Plaintiffs had stated during the parties' November 6 conferral. He explained that Plaintiffs' Partial Log confirms that Plaintiffs have not substantiated their invocation of the common interest exception to waiver or shown that the *Kovel* doctrine or work product protections apply to documents and communications involving BCGuardian.

**Plaintiffs' and BCGuardian's Productions**

28. I have reviewed documents produced by Plaintiffs and BCGuardian in this matter and understand that:

   a. Plaintiffs have produced over 300,000 documents containing BCGuardian's custodial files, which include infringement notices, communications with Google

9

and pirate sellers about the infringement notices, and test purchases of allegedly infringing works sold by pirate sellers;

b. BCGuardian has produced to Google documents with names similar to those listed on Plaintiffs' Partial Log.  For example, BCGuardian produced a document titled "█████████████████████████████████████████████████" (BCG-Google00002605).  Row 10 of Plaintiffs' Partial Log indicates that Plaintiffs withheld documents bearing a nearly identical name—"████████████████████████████████████████████."

c. BCGuardian has also produced to Google documents describing the services they perform for Plaintiffs. For example, BCGuardian has produced internal email chains discussing ██████████████████████████████████████████████████████████. True and correct copies of these documents, produced at Bates numbers BCG-Google00000001, BCG-Google00000016, and BCG-Google00000039, are attached as **Exhibits 18-20**.

d. Plaintiffs' Partial Log includes certain withheld documents that, based on the file names, appear to have been previously sent to Google and subsequently produced in this litigation.  For example, Plaintiffs are withholding several spreadsheets bearing the same file names as documents Plaintiffs' counsel sent to Google on May 31, 2022, and which Plaintiffs produced in this litigation on March 28, 2025. A true and correct copy of that correspondence, produced at Bates No. PL0000521932, and true and correct excerpts of the spreadsheet attachments are attached as **Exhibit 21**.  The below table lists the title of the relevant documents,

the corresponding Bates Number from Plaintiffs' production for each document, and the rows on which those documents appear in Plaintiffs' Partial Log.

| Document Title | Bates Number | Partial Log Row |
|---|---|---|
| ██████████ | PL0000521939 | 189, 201, 213, 225 |
| ██████████ | PL0000521940 | 187, 199, 211, 223 |
| ██████████ | PL0000521941 | 192, 204, 216, 228 |
| ██████████ | PL0000521942 | 194, 206, 218, 230 |

29.  Third party BCGuardian is represented by the same law firm representing Plaintiffs.

30.  Attached as **Exhibit 22** is a true and correct copy of the Declaration of Suzanne L. Telsey in Support of Defendants' Motion to Dismiss Retailer Plaintiffs' Claims against Educational Publishers Enforcement Group in *In re Inclusive Access Court Materials Antitrust Litigation*, 1:20-md-02946-DLC (SDNY), Dkt. 60.

31.  Attached as **Exhibit 23** is a true and correct copy of an article published on thebookseller.com titled "Pirating levels worse than 'in our worst dreams', says Hansen." In that article, Cengage's CEO, Michael Hansen, is quoted as stating that Cengage, McGraw-Hill Education, Elsevier, and Pearson "formed EPEG to figure out how big the problem [counterfeiting] was…[and it] is a much bigger level of counterfeiting than we had imagined in our worst dreams – much higher. For Cengage it was a $70m-$100m impact on an annual basis. Given the size of our business, that is a significant impact."

32.  Attached as **Exhibit 24** is a true and correct copy of a document BCGuardian produced bearing Bates number BCG-Google00002646 and titled "Statement of Work."

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

11

Executed November 14, 2025, in McLean, Virginia

                                                */s/ Sarah A. Tomkowiak*
                                                Sarah A. Tomkowiak