

Michele H. Murphy
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.450.5643
michele@oandzlaw.com

November 21, 2025

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
500 Pearl Street, Room 20A
New York, NY 10007

>   Re:   *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
>   Plaintiffs' Letter Response In Opposition to Google's Letter Motion for Pre-Motion Discovery Conference (Dkt. 273)

Dear Judge Moses,

This litigation firm ("O+Z") represents all Plaintiffs and has done so jointly for years. Ignoring this, Google's motion (Dkt. 273, "Mot.") seeks to upend well-established law on the attorney-client privilege and work product doctrines. It demands disclosure of *all* Plaintiffs' privileged documents, e.g., O+Z's presentations analyzing potential claims resulting in lawsuits, client updates revealing legal analysis and strategy, in-house counsels' internal legal advice, and communications between O+Z and its agent retained to collect and analyze infringement evidence needed to inform counsel's legal advice. Murphy Decl. ("Atty. Decl.") ¶ 16. Google's frivolous demand runs contrary to law and the very purpose of the attorney-client privilege—"to encourage full and frank communication between attorneys and their clients," furthering the administration of justice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The motion should be denied in full.

> I.   **Attorney-client communications concerning joint legal efforts to enforce IP rights are privileged.**

Plaintiffs have long been part of an IP enforcement group, and O+Z represents these publishers jointly (the "Co-Clients"). Feinberg, Hays, Telsey & Wiggins Decls. ("In-House Atty. Decls.") ¶¶ 5-8. The group does not do business; its joint activities relate entirely to fighting piracy by protecting their IP rights in different forms through legal action. *Id.* ¶ 6. The Co-Clients have verbal common interest agreements as detailed in the accompanying declarations. *Id.* ¶¶ 11-13; Atty. Decl. ¶¶ 3, 8. [1]

The Co-Clients have worked to address illegal piracy on Google for years. In-House Atty. Decls. ¶ 9. Initially, this included filing suits against pirate sites using Google ads. *Id.* As piracy continued, they began sending Google infringement notices. Google's failure to respond resulted in this suit. *Id.*; Dkt. 38 ¶ 4. Because Plaintiffs agreed to produce non-privileged documents concerning this and the pirate site cases, most documents on their privilege logs concern the same.

---

[1] One other publisher, Pearson Education, Inc., is part of the IP enforcement group and retained O+Z but is not a party in this suit. In-House Atty. Decls. ¶ 5. Because of Google's waiver claims, Plaintiffs have filed a related motion to submit an attorney declaration for *in camera* review.

Hon. Barbara Moses
November 21, 2025

Plaintiffs' logs contain detailed descriptions supporting their privilege assertions. Dkt. 276 Exs. 1, 3, 16-17; Atty. Decl. Ex. A.

Google offers two arguments to justify its sweeping request: (1) communications between co-parties, including with the same counsel, are only privileged if the co-parties own the same IP; and (2) a common legal interest ceases to be legal if it happens to affect business interests. Mot. at 2–3. Google's cases do not support its positions.

The co-client privilege "shields the communications an attorney has with two or more of her clients on a matter of common interest from disclosure to third parties." *SEC v. Rayat*, 2023 WL 4706074, at *3 (S.D.N.Y. July 24, 2023). The common interest doctrine is similar, providing an "exception" to waiver from disclosure of privileged communications to third parties. *Id.*; *see also United States v. Schwimmer*, 892 F.2d 237, 243–44 (2d Cir. 1989). As O+Z represents all Co-Clients on common legal matters, the privilege applies.

Google mischaracterizes the law. It states that *Demaree v. Castro*, 2023 WL 6465881, at *12-13 (S.D.N.Y. Oct. 4, 2023), which addresses what "common interest" is required for multiple plaintiffs to aggregate claims to qualify for federal diversity jurisdiction, establishes "the general rule" in privilege law. It does not. Nor is an "identical" common interest required. *See Han v. InterExchange, Inc.*, 2025 WL 1419527, at *2 (S.D.N.Y. May 16, 2025) (noting some courts speak of identical interests, "while other courts have questioned this, and have simply focused on whether the parties had interests in common without exploring whether they were identical.") (Rochon, J.) (cleaned up). Google is also wrong in claiming the common interest requires "shared ownership in each other's intellectual property." Mot. at 2. Its caselaw suggests no such thing and adopting that view would render co-plaintiff IP suits impossible to maintain. Such suits include *Grokster*, *Napster*, and *Aimster*—seminal cases addressing peer-to-peer infringement in the digital age. Even MDL cases against OpenAI in this district could not functionally continue. Atty. Decl. ¶ 12.

Google's cited case, *Pereira, Tr. for Est. of Capala v. Capala*, 2019 WL 13392880, *4 (E.D.N.Y. Apr. 16, 2019), confirms a common legal interest applies when parties "are aligned as plaintiffs or defendants in a litigation." Plaintiffs here, and the Co-Clients in other cases at issue, assert the same claims for relief based on the same infringing misconduct, and their interests are fully aligned, including in defeating Google's safe harbor defense.

Google also claims that Plaintiffs' common interest in "[e]liminating counterfeit goods and reclaiming lost revenue" is a "commercial, not legal, interest." Mot. 2. But it fails to explain how a joint *legal* strategy to enforce common *legal* rights through *litigation*, which may also have commercial impact, is any less of a legal interest. As Plaintiffs' logs and declarations demonstrate, these communications are for purposes of providing or seeking legal advice and a joint legal strategy for IP enforcement. *E.g.,* In-House Atty. Decls.[2]

**II.     Communications with BCGuardian made for the purpose of providing legal advice are privileged.**

---

[2] Many documents Google challenges on common interest grounds are also protected by work product and thus are immune from disclosure even if the Court agrees with Google's flawed common-interest theory.

BCGuardian is an antipiracy firm specializing in infringement investigations and evidence collection and analysis, including to support IP litigation. Atty. Decl. ¶ 9. BCGuardian markets its services to law firms, recognizing that "clients come to you to hold bad actors accountable," and BCGuardian "provide[s] the intelligence you need to ensure success."[3] Its services for law firms, including O+Z, range from "targeted initiatives to sweeping evidence collection across rings of interconnected 'anonymous' players … to develop litigation-ready evidence of infringement." *Id.*

Plaintiffs have filed numerous infringement cases based on services provided and evidence collected by BCGuardian. Atty. Decl. ¶ 9. Here, O+Z engaged BCGuardian on behalf of the Co-Clients to investigate violations of IP rights and pursue enforcement actions—in part because its services are precisely the kind of indispensable assistance caselaw contemplates is often required for counsel to provide legal advice. *Id.* ¶ 10; In-House Atty. Decls. ¶¶ 14-15. As Plaintiffs' logs demonstrate, communications with BCGuardian are commonly privileged.

Indeed, the attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *EFCG, Inc. v. AEC Advisors, LLC*, 2020 WL 6378943, at *2 (S.D.N.Y. Oct. 30, 2020) (Moses, J.) (quoting *Upjohn*, 449 U.S. at 390). This is because "the complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others," rendering the assistance of "agents . . . indispensable to his work," and hence "the privilege must include all the persons who act as the attorney's agents." *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961).

Particularly relevant here, "investigations conducted by an agent of the attorney . . . clearly fall within the attorney-client rubric. Thus, courts have frequently extended the attorney-client privilege to communications made to investigators who have provided necessary assistance to attorneys[.]" *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 71 (S.D.N.Y. 2010) (internal citations omitted) (citing cases).[4] *Gucci* extended the privilege to an investigator conducting a pre-suit investigation into trademark infringement claims, where the investigator "acted at the direction of [counsel] to assist in-house and outside counsel to prepare for litigation . . . ." *Id.* Like BCGuardian, the *Gucci* investigator "played an integral role in providing hands-on assistance to in-house and outside counsel in gathering evidence[.]" *Id.*

Given complexities of digital piracy and the scale of infringement on the Shopping platform, O+Z must rely on BCGuardian's knowledge and expertise to target investigations, collect and analyze vast data, and interpret its findings to inform its legal advice to the Co-Clients. Atty Decl. ¶ 10. This is precisely the type of "interpretive aide" *Kovel* and its progeny contemplate.

---

[3] https://bcguardian.com/law-firms/ (last visited November 21, 2025).

[4] *See also, e.g.*, *In re Grand Jury Subpoena Dated Mar. 20, 2013*, 2014 WL 2998527, at *10 (S.D.N.Y. July 2, 2014) (*Kovel* applied to communications with investigator retained by counsel); *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 311 (D.N.J. 2008) (*Kovel* extends to "investigators, interviewers, technical experts, accountants, physicians, patent agents, and other specialists[.]"); *Bauman v. Jacobs Suchard, Inc.*, 136 F.R.D. 460, 463 (N.D. Ill. 1990) (communications with investigator privileged because "privilege . . . extends to communications by agents of attorneys"); *see also* 24 Fed. Prac. & Proc. Evid. § 5482 n.30 (1st ed.) (citing cases extending privilege to investigators hired by counsel).

Hon. Barbara Moses
November 21, 2025

Without addressing these facts and without support, Google mistakenly characterizes BCGuardian as providing routine services "without specialized expertise." Mot. at 4. That is simply incorrect.

Ultimately, Google reads *Kovel* too narrowly. *Kovel* itself confirms that the investigator's assistance must be "at least highly useful," *Kovel*, 296 F.2d at 922, not "indispensable" as Google contends. Mot. 3. The guiding light is the need for counsel to communicate with agents in confidence to inform legal advice. None of Google's cases involve an investigator hired to provide the type of support BCGuardian provides to O+Z and Plaintiffs.

### III. Confidential documents involving BCGuardian prepared in anticipation of litigation are protected by work product and no waiver has occurred.

Documents involving BCGuardian are also commonly protected by work product because much of its services are provided in anticipation of litigation. *See United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (explaining breadth of protection extends to documents "prepared or obtained because of the prospect of litigation"). "Materials need not be prepared solely for a litigation purpose in order to merit protection under the work-product privilege." *Han* 2025 WL 1419527, at *3. BCGuardian has, for years, provided services to the Co-Clients because of the prospect of litigation. Atty. Decl. ¶¶ 9-10. In-House Atty. Decls. ¶¶ 9, 14-15. Many such litigations have materialized. *Id.* Google's unsupported assertion that BCGuardian provides only routine services misapprehends the facts. *Id.*[5]

Nor have Plaintiffs selectively waived work product. Google argues Plaintiffs' production of infringement notices and test purchases waives protection over *all communications* with BCGuardian. Wrong. Work product protects only *confidential* materials; notices and test-purchase receipts are communications or transactions *with* Google and pirates, thus plainly not confidential. Plaintiffs appropriately produced them. Plaintiffs also did not waive work product by BCGuardian producing a document with a similar filename as one withheld by Plaintiffs. Many, but not all, BCGuardian documents are protected work product. Plaintiffs and BCGuardian appropriately recognize the difference and produced documents accordingly. Atty. Decl. ¶¶ 28–31, 33.

Even if a waiver occurred (and it did not), the "scope of waiver must be formulated with caution and be no broader than needed to ensure fairness[.]" *United States v. Farhane*, 2025 WL 2986201, at *3 (S.D.N.Y. Oct. 23, 2025). Google's overbroad demand is not. It seeks every document involving BCGuardian period, including communications with O+Z, regardless whether they contain fact or opinion work product. *See United States v. Mount Sinai Hosp.*, 185 F. Supp. 3d 383, 390 (S.D.N.Y. 2016) (Moses, J.) (noting "opinion work product" is "entitled to virtually absolute protection") (cleaned up); *see also* Fed. R. Civ. P. 26(b)(3)(B). Nor has Google justified its hollow claim of substantial need for protected work product "to test Plaintiffs' claims of direct infringement," Mot. 4, including why the extensive discovery produced is insufficient.

---

[5] Google misdescribes BCGuardian's Statement of Work as limited to routine services until 2024. Mot. 4. While the 2024 contract memorializes BCGuardian's hourly rates for time spent supporting active litigation (i.e., deposition/trial testimony, discovery requests), the antipiracy services themselves are provided because of the prospect of litigation (i.e., monitoring, analyzing data, preserving screen captures of infringing pages, test purchases, compliance assessments). *See* Dkt. 276-24.

Hon. Barbara Moses
November 21, 2025

    Google's motion should be denied in its entirety.

Respectfully submitted,

*/s/ Michele H. Murphy*
Michele H. Murphy
OPPENHEIM + ZEBRAK, LLP
*Counsel for Plaintiffs*
