IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENGAGE LEARNING, INC. et al.<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>GOOGLE LLC,<br><br>　　　　　Defendant. | Civil Action No. 24-cv-04274-JLR-BCM |

**ATTORNEY DECLARATION OF MICHELE H. MURPHY**

　　1.　　I am a partner at the law firm Oppenheim + Zebrak, LLP ("O+Z"), counsel for Plaintiffs Cengage Learning, Inc. ("Cengage"), Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning ("Macmillan Learning"), Macmillan Holdings, LLC ("Macmillan Holdings"), Elsevier Inc. ("Elsevier"), Elsevier B.V., and McGraw Hill LLC ("McGraw Hill") (collectively, "Plaintiffs"). I submit this declaration in support of Plaintiffs' Letter Response In Opposition to Google's Letter Motion for Pre-Motion Discovery Conference (Dkt. 273).

　　2.　　I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently hereto.

**O+Z Representation of the Parties on Plaintiffs' Privilege Logs in Their Joint Legal Efforts to Address Infringement of Their IP Rights**

　　3.　　Having retained O+Z as their sole outside counsel in connection with this action, Plaintiffs joined as co-plaintiffs to bring this action to enforce their respective copyright and trademark rights against infringement by Defendant Google. The complaint also included a New York state law claim that the Court dismissed on copyright preemption grounds. O+Z also jointly

represented Plaintiffs and another entity during the period prior to filing this case when litigation was being considered. At all relevant times, these O+Z clients had/have a verbal co-client/common interest agreement. In connection therewith, the O+Z clients jointly sought and obtained legal advice from O+Z, and discussed, developed, and maintained a coordinated legal strategy with O+Z's direction and based on the legal advice we have provided. Without limitation, this has involved matters related to evidence collection, notice response analysis, other evidentiary analysis, claims analysis, complaint drafting, and, post-filing, all of the legal matters attendant to prosecuting this suit.

4. O+Z has also represented the plaintiffs in the following cases as their sole outside counsel: *Bedford, Freeman & Worth Publishing Group, LLC et al. v. Nguyen et al.*, No. 19-cv-10524-LAK (SDNY, filed Nov. 13, 2019); *Cengage Learning, Inc. et al. v. Nguyen et al.*, No. 20-cv-769-JGK (SDNY, filed Jan. 29, 2020); *McGraw Hill, LLC et al. v. Tran Van et al.*, No. 20-cv-6368-GHW (SDNY, filed Aug. 12, 2020); *Bedford, Freeman & Worth Publishing Group, LLC et al. v. English et al.*, 21-cv-6691-ER (SDNY, filed Aug. 9, 2021); *Cengage Learning, Inc. et al. v. Smith et al.*, 23-cv-7193-VM (SDNY, filed Sept. 18, 2023); *Elsevier, Inc. et al. v. Garcia et al.*, 20-cv-8438-LLS (SDNY, filed Oct. 19, 2020); *Pearson Education, Inc. et al. v. Najji et al.*, No. 21-cv-3486-RA (SDNY, filed Apr. 20, 2021); *McGraw Hill, LLC et al. v. Nazaryan et al.*, No. 23-cv-2798-LLS (SDNY, filed Apr. 26, 2023) (the "Pirate Suits"). The plaintiffs in the Pirate Suits joined as co-plaintiffs to enforce their respective copyright and trademark rights against operators of pirate websites (many of whom used Google Shopping) who infringed those rights by reproducing and selling pirated digital copies of the plaintiffs' works.

5. In addition, O+Z represented the plaintiffs, as their sole outside counsel, in *Bedford, Freeman & Worth Publishing Group, LLC et al. v. Shopify, Inc.*, No. 21-cv-01340-CMH-JFA

(E.D. Va. filed Dec. 1, 2021), in which the plaintiffs joined as co-plaintiffs to enforce their respective copyrights based on the platform's secondary infringement with respect to the plaintiffs' pirated digital works. O+Z has also represented the plaintiffs, as their sole outside counsel, in *Pearson Education, Inc. et al. v. Hasan et al.*, No. 23-cv-07284-PAC (SDNY, filed Aug. 15, 2023), in which the plaintiffs joined as co-plaintiffs to enforce their respective copyrights and trademark rights who infringed by selling print counterfeit copies of the plaintiffs' books.

6. The cases referenced in paragraphs 4–5 above are all included on Plaintiffs' privilege logs submitted in this case. O+Z's representation in these cases covered the periods when litigation was being considered, the cases were pending, and, as applicable, with respect to judgment or settlement enforcement.

7. This case and the above-referenced cases are not the only joint legal matters that O+Z has handled for the Plaintiffs in this case. For over a decade, O+Z has been primary outside counsel to a group of publishers that uses the name "Educational Publishers Enforcement Group" ("EPEG") for ease of reference. There are currently five publishers who participate in the EPEG group: Cengage, Macmillan Learning, Elsevier, McGraw Hill, and Pearson Education, Inc. ("Pearson") (collectively, the "EPEG Publishers"). The EPEG Publishers work to combat infringement of their respective intellectual property. The EPEG Publishers do not jointly pursue business initiatives or activities. Rather, the EPEG Publishers' joint activities are entirely related to fighting piracy in different forms, and are legal in nature. To the extent that the EPEG Publishers' legal matters include infringement of trademarks owned by Macmillan Holdings and Elsevier B.V., O+Z's joint representation extends to such enforcement. O+Z's representation of the EPEG Publishers includes, without limitation, filed lawsuits or the anticipation thereof, pre-

litigation resolutions or attempts to resolve the legal claims, and notices of infringement sent through a joint legal strategy and the analysis of responses (or lack thereof).

8. In connection with the joint legal matters in which O+Z has represented co-clients, as described herein, including this case, as noted above, a verbal co-client/common interest agreement has been in place, and it has been agreed and understood that O+Z's and the parties' related communications and documents are strictly confidential as to any third party outside the co-client/common interest agreement, and that to the extent such communications and documents would otherwise be protected from disclosure by the attorney-client privilege and/or the work product doctrine, they would remain protected notwithstanding the presence of or shared disclosure to the other parties to the co-client/common interest agreement.

9. BCGuardian LLP ("BCGuardian") is an antipiracy firm specializing in IP infringement investigation and enforcement and evidence collection and analysis, including in support of IP litigation. This case, the cases referenced in paragraphs 4–5 above, and other joint legal matters for the EPEG Publishers have been based on evidence collected by BCGuardian.

10. In connection with the Pirate Suits and this case, O+Z engaged BCGuardian to assist it in protecting and enforcing the Plaintiffs' IP rights in their digital works, including collecting data related to the promotion of sellers of unauthorized digital copies of their works on, among others, Google's platform. BCGuardian conducted evidence collection and analysis at O+Z's direction during all relevant times.

11. O+Z also represents BCGuardian in this litigation as a non-party in responding to a subpoena Google served upon it.

**Numerous Other Co-Plaintiff IP Infringement Actions Have Been Brought**

4

12. In addition to the above-referenced cases, book publishers, as well as authors, have jointly brought many IP enforcement actions as co-plaintiffs. Illustrative examples include: *Authors Guild v. Google, Inc.*, No. 13-cv-4829 (2d Cir.) (putative class action brought by book authors and their professional association against Google for infringement of their respective copyrighted works); *Hachette Book Grp., Inc. v. Internet Archive*, No. 20-cv-04160 (S.D.N.Y.), No. 23-1260 (2d Cir.) (brought by publishers for infringement of their respective copyrighted works); *In re OpenAI, Inc. Copyright Infringement Litigation MDL*, No. 25-md-03143-SHS-OTW (S.D.N.Y) (consolidated putative class actions brought by newspapers and authors against AI companies for infringement of their respective copyrighted works and, in some instances, trademarks); *Andrea Bartz v. Anthropic PBC*, No. 24-cv-3811-WHA (N.D. Cal.) (certified class action of legal and beneficial owners of their respective copyrighted works in books for infringement against AI company). In addition, other rights holders, like movie studios, record companies, and music publishers, often join as co-plaintiffs in copyright actions against a defendant who infringes their rights through common conduct. Illustrative examples include: *MGM Studios, Inc. v. Grokster, Ltd.,* No. 01-cv-08541 (C.D. Cal.), No. 03-55894 (9th Cir.), No. 04-480 (U.S.) (brought by movie studios for infringement of their respective copyrighted works); *A&M Records v. Napster, Inc.*, Nos. 01–15998, 01–16308, 01–16003, 01–16011 (9th Cir.) (brought by record companies for infringement of their respective copyrighted works); *In re Aimster Copyright Litigation*, No. 02-4125 (7th Cir.) (same); *UMG Recordings Inc. v. Internet Archive,* No. 23-cv-06522 (N.D. Cal.) (same); *UMG Recordings, Inc. v. Frontier Communications Corp.*, No. 21-cv-05050 (S.D.N.Y) (same); *Warner Records, Inc. v. Charter Communications, Inc.*, No. 19-cv-00874 (D. Colo.) (brought by record companies and music publishers for infringement of their respective copyrighted works); *UMG Recordings, Inc. v. Bright House*

*Networks, LLC*, No. 19-cv-00710 (M.D. Fla.) (same). These and other similar cases would not be sustainable if the co-client privilege or common interest doctrine did not protect the plaintiffs' and their counsels' privileged communications and work product documents.

**The Parties' Correspondences and Conferrals Prior to Google's Dkt. 273 Motion and Plaintiffs' Privilege Logs**

13. Certain of Plaintiffs' custodians are involved in Plaintiffs' efforts to address online infringement of their digital works, including in coordinating with in-house and outside counsel to further these efforts. As O+Z was engaged to provide legal advice as part of a coordinated legal strategy on this precise issue, a substantial volume of Plaintiffs' custodial documents on online infringement of their digital works are privileged attorney-client communications and/or protected work product prepared in anticipation of litigation. These communications and work products concern not only this case, but also unrelated legal matters.

14. As part of the joint legal matters being pursued, Plaintiffs' custodians were also frequently part of the same email chain including other O+Z co-clients. As a result, the same email chain was often collected from multiple custodians, such that Plaintiffs had to collect multiple copies of the same chain multiple times as technically distinct documents. While the documents on the logs cannot be deduplicated for this reason, a review of the metadata shows this overlap. As a result, the number of documents that Google states Plaintiffs withheld on privilege grounds is overstated.

15. The parties' ESI Protocol requires the automatic production of "child" documents to a responsive "parent" document regardless of the "child" document's responsiveness. Dkt. 80 ¶ 8. Therefore, if Plaintiffs identified a "parent" document as responsive but privileged or protected as work product, in addition to logging the responsive "parent document," Plaintiffs also included

all its "child" documents, e.g. email attachments, on their privilege logs, regardless of the responsiveness of any specific "child" document.

16.     As reflected on Plaintiffs' privilege logs, the documents withheld as privileged represent highly sensitive materials. These include, without limitation, O+Z's client updates analyzing joint legal matters they have been retained to handle, O+Z's presentations analyzing potential claims in connection with this and other cases, in-house counsel's communications with their companies providing legal advice about the joint legal matters, and communications between O+Z and BCGuardian analyzing infringement evidence so that O+Z can give informed legal advice.

17.     Following review, Plaintiffs identified more than 2000 privileged and/or protected documents to be logged. Under Local Civ. R. 26.2(c), "when a party is asserting privilege on the same basis with respect to multiple documents, it is presumptively proper to provide the information . . . by group or category." Because many of these documents relate to the same legal matters, involve the same parties, or essentially are identical to each other besides the individual custodian from whom the document was collected, Plaintiffs believed a categorical privilege log was an appropriate way to proceed. Plaintiffs initially produced a categorical privilege log on August 1, 2025 ("08/01 Log"). *See* Dkt. 276-1. Google served its initial privilege log on the same day.

18.     After reviewing the parties' respective privilege logs, both parties had issues they wanted to address. Following a meet-and-confer on August 14, 2025, both parties agreed to make changes to their respective privilege logs. Google did not ask Plaintiffs to break down any particular category by specific documents.

19. After receiving Plaintiffs' Supplemental Privilege Log dated September 10, 2025 ("09/10 Log," Dkt. 276-3), Google began claiming that the presence of "third parties" identified on the privilege log reflected a "waiver" as to the privilege and protection Plaintiffs assert over these documents. (Dkt. 276-15 at 21–22). Plaintiffs promptly explained to Google that the parties to the communications or documents on the logs were and are jointly represented by O+Z, and jointly sought O+Z's legal advice on matters of common legal interest in enforcing their IP giving rise to a "joint legal strategy related to enforcement efforts against copyright and trademark infringement." *Id.* at 20–21. They shared that those joint legal efforts included "pre-litigation enforcement, anticipated litigation analysis, and litigation against infringers." *Id.* at 20–21. Plaintiffs also pointed out to Google that their 09/10 Log identified specific litigations relevant to each category of withheld documents, and many of those litigations were brought by O+Z's clients as co-plaintiffs. *Id.* at 20–21.

20. Google responded that it believed the common legal interest Plaintiffs described was really "commercial," and not legal, in nature, because "counterfeit books harm[] Plaintiffs' bottom lines." *Id.* at 18–19. According to Google, the specific litigations jointly brought by the O+Z's co-clients under federal law pursuant to the common legal interest Plaintiffs described were also of no moment, because the co-clients' "decision" to "jointly file lawsuits" was just "part of their broader commercial efforts to identify and eliminate counterfeit textbooks," which "decision may have led to cost savings (e.g. by sharing legal fees), but the plaintiffs could have easily filed those suits separately." *Id.* at 19.

21. In ensuing conferrals, Google refused to provide concrete information about what additional detail it believed Plaintiffs should include in the categories on their privilege log.

22. Notwithstanding a fundamental disagreement about the law, Plaintiffs shared a partial metadata/document-by-document log covering over 500 documents on November 5, 2025 in the hope of resolving or at least narrowing the dispute, and requested two weeks to complete the revision.

23. Plaintiffs also shared caselaw with Google showing that their co-clients' joint interest in enforcing their IP rights is both "legal" and the kind of common legal interest that courts in this district have recognized. *Id.* at 13–14.

24. Intent on bringing this dispute to the Court, Google informed Plaintiffs that it would file this motion without seeing Plaintiffs' completed document-by-document log, because, according to Google, O+Z's clients, including Plaintiffs, had "no shared legal interest in the enforcement of each other's intellectual property." *Id.* at 1. Google had previously raised this argument, but when pressed, stated that it had not committed to this theory. Google apparently decided to pursue it and filed its motion.

25. Plaintiffs completed their document-by-document log and served it upon Google on November 19, 2025. A true and correct copy of this log is attached as Exhibit A.

26. In the course of completing their document-by-document log, Plaintiffs identified fewer than 130 documents that are appropriate for production, including documents that will be partially produced with redactions for privilege, as well as 57 documents that consist primarily of non-privileged attachments to otherwise privileged emails. Plaintiffs are in the process of preparing these documents for production.

**Documents Attached to or Referenced in Declaration of Sarah A. Tomkowiak in Support of Google's Dkt. 273 Motion (Dkt. 276)**

27. The BCGuardian-produced document attached at Dkt. 276-18 with the Bates number beginning BCG-Google00000001 is an April 2022 email from one BCGuardian employee

9

to other BCGuardian employees containing instructions on technical steps to follow for sending copyright infringement notices. The same email also contains privileged information reflecting confidential legal strategy, which was redacted for purposes of producing the non-privileged and non-protected portions of that email to Defendant.

28. The BCGuardian-produced document attached at Dkt. 276-19 with the Bates number beginning BCG-Google00000016 is a February 2023 email chain between BCGuardian employees discussing the status of certain technical processes in connection with data collection. The email chain begins with a privileged communication from BCGuardian to O+Z prepared at the direction of counsel to assist O+Z with the provision of legal advice, which was redacted for purposes of producing the non-privileged and non-protected portions of that email to Defendant.

29. The BCGuardian-produced document attached at Dkt. 276-20 with the Bates number beginning BCG-Google00000039 is an April 2022 email from one BCGuardian employee to other BCGuardian employees containing instructions on technical steps to follow for sending copyright infringement notices and data collection in connection with infringing advertisements. The same email also contains privileged information reflecting confidential legal strategy, which was redacted for purposes of producing the non-privileged and non-protected portions of that email to Defendant.

30. The BCGuardian-produced document referenced at Dkt. 276 ¶ 28(b) with the Bates number beginning BCG-Google00002605 is an attachment to another BCGuardian-produced document with the Bates number beginning BCG-Google00002604. BCG-Google00002604 is a November 2021 email from one BCGuardian employee to other BCGuardian employees discussing data collection processes and status. The same email also contains privileged

information reflecting confidential legal strategy, which was redacted for purposes of producing the non-privileged and non-protected portions of that email to Defendant.

31. BCG-Google00002605 is an excel spreadsheet attached to BCG-Google00002604 produced as a native ".XLSX" file dated October 20, 2021. BCGuardian employees prepared and exchanged this spreadsheet in connection with their data collection efforts. Certain entries in BCG-Google00002605 contain data without analysis. Other entries reflect confidential legal strategy and were redacted for purposes of producing the remaining entries that do not reflect this strategy.

32. The document withheld by Plaintiffs that Dkt. 276 ¶ 28(b) references is an excel spreadsheet dated March 2022. It is an attachment to another withheld document described at Category ID 15 in Plaintiffs' September 10 privilege log, and row 10 in Plaintiffs' November 5 and November 19 privilege logs, which is a March 2022 email from O+Z to its co-clients. The email itself, as well as its attachment, contain analysis of infringement data performed by BCGuardian at the direction of counsel to enable these co-clients' outside and in-house counsel to provide informed legal advice.

33. The Plaintiff-produced documents excerpted at Dkt. 276-21 include documents with Bates numbers beginning PL0000521932, PL0000521939, PL0000521940, PL0000521941, PL0000521942. PL0000521932 is a December 2021 to May 2022 email chain between O+Z and Google's in-house counsel concerning Google's inadequate response to court orders from the Pirate Suits. To alert Google to the enjoined sites that it had failed to delist despite court orders, Plaintiffs shared with Google certain spreadsheets (PL0000521939, PL0000521940, PL0000521941, PL0000521942) identifying those specific sites.

34. The documents withheld by Plaintiffs as referenced in Dkt. 276 ¶¶ 28(d) are attachments to a May 2022 email from O+Z to its co-clients providing analysis in connection with

their joint IP enforcement efforts, including regarding Google's response to the enjoined sites in the Pirate Suits. Copies of that parent email collected from each custodian are described at Category ID 15 in Plaintiffs' September 10 privilege log, and rows 184, 211, 232, and 235 in Plaintiffs' November 5 and November 19 privilege logs. O+Z transmitted the documents referenced in Dkt. 276 ¶¶ 28(d) to their clients as information necessary for facilitating their communications about the underlying legal matters.

I declare under penalty of perjury that the foregoing is true and correct.

Executed November 21, 2025 in Washington, D.C.

/s/ *Michele H. Murphy*
Michele H. Murphy