IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|   |   |
|---|---|
| CENGAGE LEARNING, INC. et al.<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | **Civil Action No. 24-cv-04274-JLR-BCM** |

### DECLARATION OF JONATHAN WIGGINS

1. I am Associate General Counsel, Litigation & Compliance for Plaintiff Elsevier Inc. ("Elsevier"). I have served in this role since September 2022. I have responsibility for providing legal advice to Elsevier and its affiliated company Plaintiff Elsevier B.V. concerning this litigation. I also have had responsibility to advise Elsevier Inc. and, as applicable Elsevier B.V., concerning the other legal matters referenced on Plaintiffs' privilege logs submitted in this case.

2. I submit this declaration in support of Plaintiffs' Letter Response in Opposition to Defendant Google LLC's ("Google") Letter Motion for Pre-Motion Discovery Conference (Dkt. 273). I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently hereto.

3. Elsevier is one of the leading higher education publishers in the United States. Each year, Elsevier publishes thousands of valuable educational works that advance learning, including textbooks, which are available for sale throughout the United States, and test banks and solutions manuals, which are important supplemental materials that professors and instructors use to teach their courses.

1

4. Elsevier owns or exclusively controls the rights in the copyrights in its works, as set forth in the First Amended Complaint. *See* Dkts. 38, 120-1. Elsevier also owns three trademarks and Elsevier B.V. owns two trademarks at issue in this case, as set forth in the First Amended Complaint. *See* Dkts. 38, 120-2.

5. Elsevier works with a group of other educational publishers to enforce copyright and trademark rights and fight piracy. That group uses the name "Educational Publishers Enforcement Group" ("EPEG") for ease of reference. EPEG is not a juridical entity. Nor is it "industry-wide," as Google claims. Dkt. 273 at 2. There are currently five publishers who participate in the EPEG group: Elsevier; its co-plaintiffs in this case, Bedford, Freeman & Worth Publishing Group, LLC ("Macmillan Learning"), Cengage Learning, Inc. ("Cengage"), and McGraw Hill LLC ("McGraw Hill"); and Pearson Education, Inc. ("Pearson") (collectively, the "EPEG Publishers"). Elsevier has been part of the EPEG group since it formed in or around 2011. I have worked with the group since I joined Elsevier. Although some of the legal matters referenced on Plaintiffs' privilege logs commenced before I joined Elsevier, they continued after I joined Elsevier, and I have worked on all of them.

6. The EPEG Publishers work to combat infringement of their respective intellectual property, including infringement by those who reproduce and distribute counterfeit print books (which is not applicable in this case), and those who reproduce and distribute digital works through online piracy (which is applicable in this case). The EPEG Publishers do not jointly pursue business initiatives or activities. Rather, the EPEG Publishers' joint activities are entirely related to fighting piracy in different forms, and are legal in nature.

7. The EPEG Publishers regularly assert legal claims as co-plaintiffs against individuals and entities that have been identified as having engaged in copyright and/or and

trademark infringement. This may be through a filed lawsuit, where the plaintiffs are individual EPEG Publishers, or an attempt to resolve the legal claims prior to bringing suit. The EPEG Publishers have also jointly sent notices of infringement, and through and at the direction of counsel, collected evidence regarding the responses (or lack thereof), and analyzed the legal implications of such responses.

8. Oppenheim + Zebrak, LLP ("O+Z"), counsel of record for Plaintiffs in this case, has served as the primary outside counsel to the EPEG Publishers in connection with their joint legal matters for over a decade. O+Z is also counsel to Elsevier on individual intellectual property matters.

9. The EPEG Publishers have been working to address the issue of digital piracy on Google for years. Initially, the efforts included filing suits in this District against the operators of the pirate sites, beginning in August 2019. Eight such suits were filed, with O+Z serving as the plaintiffs' counsel. Each suit is identified in Plaintiffs' privilege logs.

10. Ultimately, as the piracy continued, the EPEG Publishers began sending notices to Google to address the ongoing piracy problem. Google's failure to respond appropriately to those notices led Plaintiffs to bring this suit against Google. While the suit was not filed until June 5, 2024, litigation against Google was being considered before that.

11. Plaintiffs have a verbal co-client/common interest agreement in connection with this case, including the consideration of litigation against Google leading up to the filing of the complaint. In connection therewith, Plaintiffs have jointly sought and obtained legal advice from O+Z, and discussed, developed, and maintained a coordinated legal strategy with O+Z. Without limitation, this has involved matters related to evidence collection, notice response analysis, other

3

evidentiary analysis, claims analysis, complaint drafting, and, post-filing, all of the legal matters attendant to prosecuting this suit.

12. Elsevier engaged O+Z to represent them in connection with this case with the understanding that the parties to the co-client/common interest agreement were all jointly seeking O+Z's legal advice, and that their related communications with O+Z and, as applicable, with the each other, are strictly confidential as to any third party outside the co-client/common interest agreement. Elsevier also entered into this engagement with O+Z with the understanding that any communication or document that would otherwise be protected from disclosure by the attorney-client privilege and/or the work product doctrine would remain protected, notwithstanding the presence of or shared disclosure to the other parties to the co-client/common interest agreement.

13. The EPEG Publishers have a verbal co-client/common interest agreement in connection with the applicable legal matters identified on Plaintiffs' privilege logs. Such matters concern the EPEG Publishers' joint enforcement efforts to legally protect their respective copyright and trademark rights against those identified as having infringed them. At all times in which the EPEG Publishers jointly communicated about such matters, a co-client/common interest agreement was or, if the matter is ongoing, remains in place; the publishers engaged O+Z and sought their legal advice in connection therewith; and the publishers and O+Z discussed, developed, and maintained a coordinated legal strategy for the matter. Likewise, Elsevier engaged O+Z with the other EPEG Publishers with the understanding that they were jointly seeking O+Z's legal advice, and that their communications with O+Z, or, as applicable, with each other, with respect to the joint legal matters are or were considered strictly confidential. Further, Elsevier has at all times understood that if the attorney-client privilege or work product protection otherwise applies to a communication or document in connection with the joint legal matter, such privilege

or protection would not be waived based on the presence of or shared disclosure to the other EPEG Publishers.

14. In connection with this case, including the consideration of litigation against Google leading up to the filing of the complaint, Plaintiffs authorized O+Z to engage BCGuardian, LLP ("BCGuardian"), an anti-piracy specialist firm. In addition to sending infringement notices to Google, BCGuardian, at the direction of counsel, has collected and analyzed substantial evidence in this case and provided counsel, including O+Z and me, with unique assistance necessary to understand and interpret the evidence and provide legal advice.

15. O+Z has also engaged BCGuardian, on the EPEG Publishers' behalf, in connection with the applicable legal matters identified on Plaintiffs' privilege logs. BCGuardian's activities in connection with these matters have included collecting and analyzing evidence, at the direction of counsel, for litigation and pre-litigation enforcement purposes. Further, as in this case, BCGuardian has provided counsel, including O+Z and me, with unique assistance necessary to understand and interpret the evidence and provide legal advice.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 21, 2025 in Union, NJ.

_____
Jonathan Wiggins