# Exhibit A

Sarah A. Tomkowiak
Direct Dial: +1.202.637.2335
sarah.tomkowiak@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

# LATHAM & WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

November 18, 2025

**VIA ECF**

The Honorable Barbara C. Moses
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, New York 10007

Re:  *Cengage Learning, Inc. v. Google LLC*, No. 1:24-cv-04274-JLR-BCM
     Letter Motion for Pre-Motion Discovery Conference Regarding the Addition of Targeted Custodians, Expanded Search Terms, and Production of Related ESI

Dear Judge Moses:

Plaintiffs are among the world's largest, sophisticated academic textbook publishers, collectively employing thousands of personnel. They are members of an industry group long dedicated to anti-piracy efforts. Presumably, they spend significant time and money on marketing and digital advertising. And here, they intend to seek hundreds of millions in statutory damages from Google for contributory copyright infringement, based on their allegations that Google profited from advertising pirated versions of over 7,300 works in suit, while Plaintiffs allegedly lost sales and revenue, and were disadvantaged in their ability to advertise their own digital textbooks. Google disputes these allegations, but Plaintiffs' limited custodians, narrow search parameters, and resulting scarce productions have precluded fair testing of them.

As shown below, each Plaintiff has produced *fewer than 300* custodial documents, over a 5-year period:

| Plaintiff | Existing Custodian and Title | Number of Documents Produced |
|---|---|---|
| Cengage | ▆▆▆▆ (Senior Anti-Piracy and Trademark Manager) | 199 |
| | Morgan Wolbe (EVP, Co-General Manager) | 1 |
| | Alberta Precaj (Global Anti-Piracy Coordinator) | 6 |
| | **Total (Unique Documents)** | 202[1] |

---

[1] Four documents contain both ▆▆▆▆ and Alberta Precaj as custodians.

LATHAM&WATKINS LLP

| Plaintiff | Existing Custodian and Title | Number of Documents Produced |
|---|---|---|
| Elsevier | Rebecca Miller (Vice President, Marketing Excellence) | 131 |
| | Kelly McCann (Senior Commercial Director, Channels, Go To Market and Trade) | 12 |
| | ▓▓▓ (Senior Paralegal) | 5 |
| | **Total (Unique Documents)** | **148** |
| Macmillan | Jennifer Bilello (Associate Director, Programs, Strategy, and Operations) | 258 |
| | Charles Linsmeier (Executive Vice President & General Manager) | 1 |
| | ▓▓▓ (Senior Manager Global Anti-Piracy) | 4 |
| | **Total (Unique Documents)** | **262[2]** |
| McGraw Hill | ▓▓▓ (Senior Director, Anti-Piracy & Web Security) | 213 |
| | Nick McFadden (Director of Digital Marketing) | 42 |
| | Bryan Howland (Paid Media Manager) | 22 |
| | **Total (Unique Documents)** | **269[3]** |
| Plaintiffs Combined | **Total (Unique Documents)** | **881** |

These totals are facially inconsistent with Plaintiffs' size and the stated importance of the issues in this case to their business operations. It strains credulity to suggest there is (essentially) *one person* at each Plaintiff with relevant documents. These numbers further reveal that Plaintiffs' search terms are far too narrow to capture a proportionate set of relevant documents.

***Background.*** Despite repeated requests from Google to add custodians, each Plaintiff initially agreed to collect documents from only 3 custodians. Declaration of Laura E. Bladow ("Decl.") ¶¶4-12. Plaintiffs produced their last custodial production on August 15, the document discovery deadline, which constituted ~60% of their custodial productions. *Id.* ¶16. On August 1, they produced a categorical privilege log, which was supplemented on September 10 (the "Log"), and reflects that Plaintiffs are withholding over 2,300 documents involving 84 non-lawyers (the majority of whom are not existing custodians). *Id.* ¶22. After completing its review of Plaintiffs' custodial documents, Log, and public information, Google proposed 16 additional custodians to Plaintiffs on September 25. *Id.* ¶23. On a meet and confer that same day, Plaintiffs requested Google justify the relevance of each additional custodian. *Id.* ¶24. On October 2, Google sent Plaintiffs a revised list[4] of 16 additional custodians with a detailed description of why each

---

[2] One document contains both Jennifer Bilello and Charles Linsmeier as custodians. Plaintiffs produced no unique documents for Mr. Linsmeier.

[3] Eight documents contain both Nick McFadden and Bryan Howland as custodians.

[4] Upon further review, Google swapped 5 of the 16 initially requested custodians with 5 new custodians. Decl. ¶25.

LATHAM & WATKINS LLP

custodian appeared to be relevant, based on their (1) title; (2) a produced document; and/or (3) appearance on Plaintiffs' Log. *Id.* ¶25.[5] Over a month later, on November 5, Plaintiffs agreed to add five custodians (Cengage refused to add any), representing that this would add 2,939 documents to Plaintiffs' review. *Id.* ¶32. The parties met and conferred on November 6, wherein it became clear that the negligible volume of custodial data produced may also be attributed to the overly narrow search terms employed by Plaintiffs. *Id.* ¶33. As such, the next day, Google proposed to Plaintiffs 16 additional search terms to capture documents pertaining to Plaintiffs' anti-piracy initiatives and digital marketing and advertising efforts. *Id.* ¶¶34, 55. As of the date of this filing, Google has requested, but has not received, a hit report for these terms across Plaintiffs' custodians. *Id.* ¶58.

***Additional Search Terms.*** Plaintiffs' existing search term hit report suggests they have reviewed approximately 15,500 unique documents from 12 custodians, Decl. ¶15,[6] but that review only yielded 881 unique non-privileged responsive documents. In other words, Plaintiffs produced 6% of the unique documents they reviewed.[7] *Id.* ¶¶ 15-16. The number of documents produced, combined with the low responsiveness rate, suggest that Plaintiffs' search terms were ineffective. Plaintiffs have tried to excuse their minimal productions by pointing to their prior position that the scope of custodial document discovery for *certain RFPs* should be limited to Google Shopping or Ads, and ebooks. *Id.* ¶54. However, *most* of Plaintiffs' search terms are drafted to return communications only if they involve Google Shopping or Ads (thus excluding communications regarding Plaintiffs' other advertising channels), and several were further limited to return only communications involving ebooks. *Id.* Regardless, the results suggest that constraining searches to Google Shopping or ebooks has yielded artificially narrow results.

The limited custodial documents Plaintiffs produced reflect Plaintiffs' broader marketing strategy, cross-channel adjustments, anti-piracy initiatives beyond Shopping and eBooks, and pursuit of alternative advertising channels–as one would expect. *Id.* ¶21 They also demonstrate that Plaintiffs maintain responsive documents in custodial files for certain RFPs for which they previously refused custodial searches, *id.* ¶¶ 6, 21, confirming that non-custodial "documents sufficient" productions are not an adequate substitute.

Google's proposed search terms are intended to capture Plaintiffs' broader intellectual property rights enforcement strategy; use of Google's products, <u>not limited</u> to Shopping, to advertise Plaintiffs' products and associated costs; and Plaintiffs' response to Google's prohibition of paid advertising of ebooks on Shopping, including by adjusting their marketing and/or advertising efforts to leverage other Google products and other platforms, all of which would be responsive to several of Google's RFPs. *See, e.g.*, *id.* ¶56 (describing RFP Nos. 24, 31, 34, 55, 56, 64, and 67). And more generally, an expanded set of search terms also would be likely to yield a volume of documents more proportional to the size of, and what's at stake in, this case. Google is

---

[5] On October 23, Google also sent Plaintiffs a list of over 25 individuals associated with Plaintiffs' Google Merchant Center accounts (disclosed by Plaintiffs to Google on August 28) and asked whether Plaintiffs had considered adding any of these individuals as custodians. *Id.* ¶27. Plaintiffs have not yet substantively responded.

[6] Google, for its part, has now collected from five times as many custodians as any individual Plaintiff initially collected from, and Google will review twice as many documents as all five Plaintiffs have combined. *Id.* ¶14.

[7] In contrast, Google's responsiveness rate for its custodial productions completed on August 15, 2025, was 18%. *Id.*

willing to evaluate a hit report and revise its search terms as needed to reduce any undue burden. But these missing documents are relevant to test Plaintiffs' theories of liability and damages.

**Further Custodians.** Compounding the problem of employing overly narrow search terms, each Plaintiff has failed to identify, or to add at Google's request, appropriate custodians.

**Cengage.** Cengage (with approximately 4,500 employees) has produced approximately 200 documents, essentially from one person. *Supra* p. 2. To fill this glaring void, Google proposed that Cengage add four custodians,[8] each of whom was rejected by Plaintiffs for reasons unrelated to burden (including, for Messrs. Carlsten and Markson, that they left in 2019 and 2022 and their files were not retained). With respect to Mr. Hoffine, Google is not persuaded by Plaintiffs' "brief" review of email subject lines and file names that his 1,057 documents that hit on existing search terms are not responsive or would be unduly burdensome to review. Decl. ¶37. Moreover, Cengage still has not identified a single custodian with responsibilities for digital marketing and advertising. From Google's review of public information, following the parties' November 6 meet and confer, Google further proposed three other potential custodians, Christy Lesko (VP, Marketing), Greg Graham (VP, Marketing Operations), and Jenn Baker (VP, Marketing Campaign Services). *Id.* ¶38. Cengage offered to "consider" adding a digital marketing custodian. *Id.* ¶39. Cengage should add Mr. Hoffine[9] and 1-2 digital marketing custodian(s).

**Elsevier.** Elsevier (with approximately 9,000 employees) has produced approximately 140 documents, essentially from one person. *Supra* p. 2. Google proposed that Elsevier add four custodians.[10] Although Elsevier agreed to add Ms. Abrams and Ms. Bradley, Elsevier refused to add its Chief Marketing Officer Alison Powell, whose documents are likely to contain relevant information regarding Elsevier's digital marketing and advertising strategy, including any impact on Elsevier from Google's ban of ebook advertising on Shopping. Decl. ¶¶40-41. Elsevier should add Ms. Powell (and in exchange, Google will drop its request to add Ms. Rampuria). *Id.* ¶42.

**Macmillan.** Macmillan (with more than 800 employees) has produced approximately 260 documents, essentially from one person. *Supra* p. 2. During the November 6 meet and confer, Plaintiffs claimed that the low volume of documents produced from existing custodian ▮▮▮▮ is explained by her work with counsel. *Id.* ¶46. Merely working with counsel does not automatically shield responsive documents from production. If anything, this "explanation" brings to light another troubling trend in Plaintiffs' production, namely that Plaintiffs have withheld three times as many documents as they have produced (~2,300 withheld v. 881 produced), including an unknown number from ▮▮▮▮. *Id.* Setting that aside, Google proposed an additional four custodians.[11] Although Macmillan agreed to add Mr. Horrer and Ms. Chiu, Macmillan refused to add Susan Elbe (previously SVP of Global Marketing) or Alanya Harter (Director, Digital Marketing), who are included on discussions shaping Google Shopping/Search strategy and

---

[8] Victoria Long, Dalton Hoffine, Kevin Carlsten, and Todd Markson. Decl. ¶23.

[9] Cengage claims that Ms. Long has only 22 documents that hit on existing search terms, which "do not appear responsive." *Id.* ¶36. Google is willing to drop its request for Ms. Long.

[10] Aly Abrams, Salima Bradley, Alison Powell, Abhinav Rampuria. *Id.* ¶23.

[11] Simon Horrer, Jenny Chiu, Susan Elbe, Alanya Harter. *Id.*

**LATHAM&WATKINS**LLP

directing the company's response to Google's eBook ad policies, including monitoring disapproved eBook ads, and coordinating anti-piracy messaging (even though the existing search terms only hit on 1,072 of their documents combined). *Id.* ¶¶44-45. Macmillan should add Ms. Elbe and Ms. Harter.

*McGraw Hill.* McGraw Hill (with more than 4,200 employees) has produced approximately 280 documents, the vast majority of which are from one person. *Supra* p. 2. Yet, McGraw Hill agreed to add only one custodian, Michael Dreher, in response to Google's request for an additional four custodians.[12] Nick Terzian (Product Manager) appears in discussions assessing Google's treatment of ebook ads and shaping Shopping/Dynamic strategy against competitors. Decl. ¶ 50. McGraw Hill asserts that Mr. Terzian's documents would be duplicative of Mr. Howland's (an existing custodian). *Id.* ¶49. But Mr. Terzian has been an employee since 2019; Mr. Howland joined the company in January 2023. McGraw Hill should add Mr. Terzian. *Id.*

Google also proposed Angela Johns (Director, Digital Marketing) and Fred Koons (Manager, Paid Programs), who were involved in McGraw Hill's digital marketing strategy, and with analyzing the impact of Google's ban on paid ebook advertising. *Id.* ¶51. However, Plaintiffs informed Google that when Ms. Johns and Mr. Koons left the company in September 2022 and August 2022, respectively, McGraw Hill did not retain their PST files, despite their involvement in these critical and relevant issues. *Id.* ¶31. This is concerning because entries on the Log reflect that McGraw Hill withheld documents from 2022 in anticipation of *this* litigation. *Id.* ¶22. Google reserves all rights to seek remedies pursuant to Federal Rule of Civil Procedure 37(e) for this destruction of data.

Google respectfully requests that the Court order Plaintiffs to: (1) add the custodians identified above (or alternative custodians with responsibility for anti-piracy, marketing, and digital advertising), (2) run the existing, and negotiated expanded, search terms across all current and additional custodians, and (3) produce non-privileged responsive documents by January 6, 2026. *See* Dkt. 222.

                 Respectfully submitted,

                 */s/ Sarah A. Tomkowiak*
                 Sarah A. Tomkowiak (*pro hac vice*)
                 of LATHAM & WATKINS LLP

cc:  All Counsel of Record (via ECF)

---

[12] Michael Dreher, Nick Terzian, Angela Johns, Fred Koons. *Id.*