# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; ELSEVIER INC.; ELSEVIER B.V.; and MCGRAW HILL LLC, | Case No. 1:24-cv-04274-JLR-BCM |
| *Plaintiffs*, | |
| v. | |
| GOOGLE LLC, | |
| *Defendant*. | |

**<u>ATTORNEY DECLARATION OF LAURA E. BLADOW</u>**

I, Laura E. Bladow, declare that:

1.      I am an associate at the law firm Latham & Watkins LLP, counsel for Google LLC ("Google") in this matter.

2.      I submit this declaration in support of Google's Letter Motion for Pre-Motion Discovery Conference Regarding the Addition of Targeted Custodians, Expanded Search Terms, and Production of Related ESI.

3.      On September 18, 2024, Google served 83 Requests for Production ("RFPs") on each Plaintiff. Google received responses and objections from Plaintiffs Cengage Learning, Inc. ("Cengage"); Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning ("Macmillan Learning"); Macmillan Holdings, LLC ("Macmillan Holdings"); Elsevier Inc. ("Elsevier"); Elsevier B.V.; and McGraw Hill LLC ("McGraw Hill") on October 18, 2024.

4.      On January 31, 2025, counsel for Plaintiffs sent an email to counsel for Google that

proposed searching the files of 9 custodians—2 from Cengage, 2 from Elsevier, 2 from Macmillan, and 3 from McGraw Hill—to locate responsive, non-privileged documents in response to Google's RFPs 16-20, 48, and 67.

5.    On February 7, 2025, I emailed counsel for Plaintiffs to express that this proposal was plainly insufficient to conduct a reasonable search for documents responsive to the vast majority of Google's RFPs.  I requested, *inter alia*, that Plaintiffs (1) identify custodians for RFP 31, and (2) identify custodians for RFPs 42-47 and 49-66 or otherwise clarify Plaintiffs' plan to search for responsive documents.

6.    On February 12, counsel for Plaintiffs responded that with respect to RFP 31, "Given the makeup of Plaintiffs' businesses, how they maintain their documents, and Plaintiffs' objections to the requests, Plaintiffs disagree that custodians are needed for RFP … 31.  Plaintiffs will respond as set forth in their objections and responses."  With respect to RFPs 42-47 and 49-66, Plaintiffs responded,

> As explained in Plaintiffs' responses and objections to RFP 42-47 and 49-66, Plaintiffs will produce non-privileged documents sufficient to support the contentions referenced in the RFP, to the extent such documents exist, are within Plaintiffs' possession, custody, or control, and can be found after a reasonable search. Plaintiffs will produce their documents on which they will affirmatively rely.

> Some of the documents responsive to RFP 42-47 and 49-66 will overlap with documents produced in response to the RFP discussed above (for which Plaintiffs are searching using custodians and search terms). Additional custodians for RFP 42-47 and 49-66 are not necessary. Plaintiffs maintain certain responsive documents in the ordinary course of business in identifiable locations, e.g., not in individuals' email inboxes. Plaintiffs have already made productions of some of these documents and are continuing to review and produce additional documents to support the contentions referenced in these RFP.

7.    On February 14, 2025, counsel for Plaintiffs sent an email to counsel for Google,

including myself, sharing a "revised" list of proposed custodians and proposed search terms. The list of proposed custodians was exactly the same as on January 31, 2025.

8.      On February 21, 2025, I wrote to counsel for Plaintiffs regarding their proposed custodians and search terms. I stated, "Google remains highly skeptical that Plaintiffs' sparse identification of custodians across four different large organizations, for documents spanning a period of over five years, is reasonable or proportional in the goal of collecting documents across even the 7 RFPs for which Plaintiffs have agreed to perform custodial collections." With respect to RFPs 42-47 and 49-66, I stated:

> Google disagrees that these RFPs either overlap with the other RFPs for which Plaintiffs have identified custodians and search terms or that responsive documents would not be found in individual custodian files. Google finds it implausible, based on Plaintiffs' allegations that piracy is a significant issue for them, Plaintiffs' contentions in the Amended Complaint were never the topics of internal (or external) communications. Notably, these requests seek "All Documents and Communications Concerning" Plaintiffs' contentions—not just the documents upon which Plaintiffs intend to rely. Any documents that would tend to negate or contradict Plaintiffs' contentions would be extremely relevant discovery. But Plaintiffs' response appears to indicate that Plaintiffs only intend to produce those documents "on which they will affirmatively rely." That is improper. Plaintiffs cannot only produce documents and communications that support their claims, but must also search for and produce anything that negates their claims. See Aviles v. S&P Glob., Inc., 2021 WL 2077932, at *4 (S.D.N.Y. May 24, 2021) (noting that FRCP prohibits parties from "cherry pick[ing] ESI for production" and provides safeguards to ensure that parties do not "withhold crucial documents that support" the opposing parties' claims).

9.      Counsel for the parties conducted a meet and confer on February 27, 2025, in which I participated. During the meet and confer, Plaintiffs stated that they would add two more custodians–one each for Macmillan and Elsevier. With respect to RFPs 42-47 and 49-66, we explained our understanding that Plaintiffs are not amenable to using custodians and search terms to search for documents responsive to these RFPs. We understood Plaintiffs' position to be that it

is "hard to loop all of these RFPs together" and that "several or most overlap with other RFPs." The parties agreed that Plaintiffs would identify for Defendants which RFP(s) Plaintiffs believe overlap with each of RFPs 42-47 and 49-66. This conversation was memorialized in an email that my colleague Sara Sampoli sent to counsel for Plaintiffs on March 4, 2025.

10.     On March 7, counsel for Plaintiffs responded, and with respect to RFPs 42-47 and 49-66, stated:

> Plaintiffs' position is that several of these RFP are subsumed in other RFP and it is not reasonable to consider all of these RFP as a group given the different topics they cover. To the extent these RFP are not subsumed by other RFP, our position is that the custodian and search term approach is not an effective or efficient method of identifying responsive documents. As discussed during the meet and confer, Plaintiffs believe the documents responsive to the following RFP are the same documents Plaintiffs will produce in response to other RFP: 42, 44, 45, 46, 47, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61.

11.     On March 27, the parties held a meet and confer in which I participated. During that discussion, Plaintiffs confirmed that they were not going to withhold documents otherwise returned by Plaintiffs' search terms that are responsive RFPs 42-47 and 49-66. This conversation was memorialized in an email that my colleague Ms. Sampoli sent to counsel for Plaintiffs on April 1, 2025. In that same email, Google requested that Plaintiffs add three more custodians–2 from Cengage and 1 from Elsevier.

12.     On April 24, 2025, in exchange for Google adding an additional custodian, Cengage agreed to add 1 more custodian, bringing the total agreed-upon custodians for each Plaintiff to be 3, as reflected below.

   a.     For Cengage: ▮▮▮▮▮▮, Morgan Wolbe, Alberta Precaj

   b.     For Elsevier: Rebecca Miller, Kelly McCann, ▮▮▮▮▮▮

   c.     For Macmillan: Jennifer Bilello, Charles Linsmeier, ▮▮▮▮▮▮

     d.    For McGraw Hill: ███████████, Nick McFadden, Bryan Howland

13.    Google has now collected custodial documents from 15 custodians and 3 email aliases.  The current set of agreed-upon search terms yields more than 30,000 unique documents that Google will review.

14.    As of August 15, 2025, Google had reviewed 11,294 documents, and produced 2,140 documents, yielding a responsiveness rate of 18%.  Google also withheld 576 documents as privileged or protected attorney work product, and provided Plaintiffs two privilege logs reflecting Google's privilege assertions on August 1, 2025 and August 8, 2025, which Google subsequently supplemented, per agreement with Plaintiffs, on September 9, 2025, to provide more details.

15.    I am the recipient of an email from counsel for Plaintiffs sent on July 16, 2025, and attaching a hit report, which reflects that Plaintiffs' existing search terms resulted in 15,573 "Unique Hits" across their existing custodians.

16.    Plaintiffs completed their custodial productions on August 15, 2025, the document discovery deadline.  That day, Plaintiffs produced approximately 60% of their custodial documents.  I have reviewed these custodial productions and determined that Plaintiffs produced only 881 unique non-privileged responsive documents in total.

17.    Cengage produced 199 documents from ███████ (Senior Anti-Piracy and Trademark Manager), 1 document from Morgan Wolbe (EVP, Co-General Manager), and 6 documents from Alberta Precaj (Global Anti-Piracy Coordinator).  Four documents contain both ███████ and Alberta Precaj as custodians.  Thus, after deduplicating, Cengage produced 202 unique documents.

18.    Elsevier produced 131 documents from Rebecca Miller (Vice President, Marketing Excellence), 12 documents from Kelly McCann (Senior Commercial Director, Channels, Go To

Market and Trade), and 5 documents from ███████ (Senior Paralegal). Elsevier produced 148 unique documents.

19.    Macmillan produced 258 documents from Jennifer Bilello (Associate Director, Programs, Strategy, and Operations), 1 document from Charles Linsmeier (Executive Vice President & General Manager), and 4 documents from ███████ (Senior Manager Global Anti-Piracy). One document contains both Jennifer Bilello and Charles Linsmeier as custodians; therefore, Macmillan produced no unique documents for Mr. Linsmeier. After deduplicating, Macmillan produced 262 unique documents.

20.    McGraw Hill produced 213 documents from ███████ (Senior Director, Anti-Piracy & Web Security), 42 documents from Nick McFadden (Director of Digital Marketing), and 22 documents from Bryan Howland (Paid Media Manager). Eight documents contain both Nick McFadden and Bryan Howland as custodians. After deduplicating, McGraw Hill produced 269 unique documents.

21.    Plaintiffs have produced a limited number of documents reflecting Plaintiffs' broader marketing strategy, auction insights, cross-channel adjustments, anti-piracy initiatives beyond Shopping and eBooks, and pursuit of alternative advertising channels. True and correct copies of two examples of those documents are attached as Exs. 1 and 2.[1]

22.    Plaintiffs produced a categorical privilege log on August 1, which they

---

[1] Exhibit 1 ███████

███████ PL0000545833. Exhibit 2

███████. PL0000794940.

supplemented on September 10, 2025 (the "Log"). All Plaintiffs assert privilege over documents in Categories 13 and 15 of the Log. Category 13 includes documents for the date range September 2022 to September 2024 and Category 15 includes documents for March 2022 to August 2022. Both Categories describe the withheld documents as being "prepared in anticipation of this litigation." Additionally, Category 63 consists of a single email dated September 2022 over which McGraw Hill asserts privilege, describing the withheld email as being "prepared in anticipation of this litigation." The Log reflects that Plaintiffs are withholding over 2,300 responsive documents involving 84 non-lawyers, the majority of which are not custodians.

23.     After completing its review of Plaintiffs' custodial documents, Log, and public information, on September 25, my colleague Holly Victorson emailed counsel for Plaintiffs to request they add 16 individuals as custodians:

    a.    For Cengage: Kevin Carlsten, Dalton Hoffine, Victoria Long, and Todd Markson

    b.    For Elsevier: Aly Abrams, Salima Bradley, ███████, Alison Powell

    c.    For Macmillan: Jenny Chiu, Susan Elbe, William Gadoury, Jimmy Raines

    d.    For McGraw Hill: Michael Dreher, Nick McFadden, ███████, Nick Terzian

24.     That same day, counsel for Google met and conferred with counsel for Plaintiffs. Sarah Tomkowiak, Holly Victorson, Caroline Clarke, and Rose Jung participated on the call for Google; Jeff Kane, Michele Murphy, Kevin Lindsey, and Yunyi Chen participated in the call for Plaintiffs. During that call, counsel for Plaintiffs requested that Google justify the relevance of each additional custodian.

25.     On October 2, my colleague Rose Jung sent Plaintiffs a revised list of 16 custodians, replacing 5 custodians requested in Ms. Victorson's September 25 email with 5 new custodians. In this email, Ms. Jung provided a detailed description of why each custodian appeared to be

relevant, based on their (1) title; (2) a produced document; and/or (3) appearance on Plaintiffs'

Log. A true and correct copy of this email chain is attached as Exhibit 3.

    a.    For Elsevier, Google replaced ███████████ with Abhinav Rampuria.

    b.    For Macmillan, Google replaced William Gadoury and Jimmy Raines for Simon Horrer (who Plaintiffs have since identified as Macmillan's likely Rule 30(b)(6) designee) and Alanya Harter.

    c.    For McGraw Hill, Google replaced Nick McFadden and ███████████, who were existing custodians and mistakenly included, for Angela Johns and Fred Koons.

26.    On August 28, 2025, in response to Google's Interrogatory No. 8, each Plaintiff provided Google with a list of Google Merchant Center accounts and the individuals associated with that account, most of whom are not existing custodians.

27.    On October 23, after the Court entered an Order extending the custodial document deadline to January 6, 2026, Ms. Jung sent counsel for Plaintiffs an email listing over 25 individuals associated with Plaintiffs' Google Merchant Center accounts and asked whether Plaintiffs had considered adding any of these individuals as custodians.

28.    On November 11, counsel for Plaintiffs responded that Plaintiffs are still investigating these newly proposed custodians. Google has not yet received a substantive response.

29.    On November 5, in response to Google's October 2 correspondence referenced in Paragraph 25 above, counsel for Plaintiffs sent counsel for Google an email providing their position on Google's 16 proposed custodians. In that correspondence, counsel for Plaintiffs identified the number of "non-duplicative documents"[2] in each custodian's file that purportedly hit upon Plaintiffs' existing search terms, for all custodians except for Simon Horrer. Plaintiffs provided the unique hit count for Mr. Horrer during the Parties' November 6 meet and confer

---

[2] Plaintiffs defined "duplicative" as "the document is also available from one of Plaintiffs' existing custodians' PST files, so it has been reviewed and, if responsive and not privileged, produced."

described in Paragraph 32 below.

30.    For custodians who had non-duplicative documents, Plaintiffs claimed to have conducted a "brief review."

31.    Plaintiffs were not able to provide hit counts for Kevin Carlsten and Todd Markson because they left Cengage in 2022 and 2019, respectively and their electronically stored information was not preserved.  Plaintiffs were also unable to provide hit counts for Fred Koons and Angela Johns because they were no longer employed by McGraw Hill as of August and September 2022, respectively and their electronically stored information was not preserved.

32.    In their November 5 correspondence, Plaintiffs agreed to add 5 custodians as follows:

      a.    Cengage: None.

      b.    Elsevier: Aly Abrams (Commercial Coordinator, Trade), who has 35 non-duplicative documents and Salima Bradley (Senior Manager of Commercial Go-To-Market), who has 299 non-duplicative documents.

      c.    Macmillan: Simon Horrer (EVP, Finance & Operations), who has 1,115 non-duplicative documents and Jenny Chiu (Digital Product Manager), who has 449 non-duplicative documents.

      d.    McGraw Hill: Michael Dreher (VP, Risk and Compliance), who has 1,041 non-duplicative documents.

33.    On November 6, counsel for Plaintiffs and counsel for Google met and conferred regarding Google's 16 requested custodians and Plaintiffs' response.  Sarah Tomkowiak, Caroline Clarke, Leticia Salazar, and I participated on the call for Google; Jeff Kane, Michele Murphy, Kevin Lindsey, Danae Tinelli, Uriel Lee, and Yunyi Chen participated in the call for Plaintiffs. During this conferral, counsel for Plaintiffs explained that they determined whether to add a requested custodian based on a review of the document file names and email subject lines returned for each custodian using existing search terms.  I understand that Plaintiffs only reviewed the

actual, underlying documents for each custodian if the file name or subject line appeared to be about a topic that might be responsive. While discussing hit counts during this conferral, it became clear to me that, given the low hit counts for the 16 proposed custodians, the negligible volume of custodial data produced by Plaintiffs on or before August 15, 2025 may also be attributed to the overly narrow search terms employed by Plaintiffs.

34.     The next day, on November 7, I sent a follow up email to counsel for Plaintiffs summarizing the November 6 conferral and Google's positions regarding custodians. Plaintiffs' and Google's relevant positions regarding the 16 requested custodians for each Plaintiff are summarized below.

### Cengage

35.     In their correspondence dated November 5, counsel for Plaintiffs stated that Cengage would not add any of Google's requested custodians:

    a.     Victoria Long (Lead Researcher)

    b.     Dalton Hoffine (Senior Manager, Strategy and Operations)

    c.     Kevin Carlsten (VP, Channel Strategy and Operations)

    d.     Todd Markson (EVP, Chief Strategy Officer & Chief Operating Officer)

36.     Counsel for Plaintiffs asserted that Ms. Long's 22 non-duplicative documents did not appear responsive and as such Cengage refused to add Ms. Long as a custodian.  Google is willing to drop its request to add Ms. Long as a custodian.

37.     Further, Cengage refused to add Mr. Hoffine as a custodian, asserting that it "would be unreasonably burdensome and unlikely to yield relevant information" to review his 1,057 non-duplicative documents.

38.     In the correspondence dated November 7, 2025, I proposed three other potential custodians based on a review of public information: Christy Lesko (VP, Marketing), Greg Graham

(VP, Marketing Operations), and Jenn Baker (VP, Marketing Campaign Services).

39.     On November 11, counsel for Plaintiffs indicated that Cengage was considering Google's request for a digital marketing custodian.

### Elsevier

40.     In their correspondence dated November 5, counsel for Plaintiffs stated that Elsevier refused to add as custodians Alison Powell (Chief Marketing Officer), who has 901 non-duplicative documents or Abhinav Rampuria (SVP, Global Strategy and Pricing), who has 291 non-duplicative documents.  Counsel for Plaintiffs stated that, based on their "understanding that Ms. Powell's job responsibilities do not focus on the issues in this case," Elsevier refused to add Ms. Powell as a custodian because it "would be unreasonably burdensome and unlikely to yield relevant information."

41.     Based on her role at Elsevier, Ms. Powell's documents are likely to contain relevant information regarding Elsevier's digital marketing and advertising strategy, including any impact on Elsevier from Google's ban of ebook advertising on Shopping.[3]

42.     On November 7, counsel for Google offered to drop Google's request to add Ms. Rampuria if Elsevier added Ms. Powell.

43.     On November 11, counsel for Plaintiffs stated via email that Elsevier was reviewing my November 7 email but had "previously explained why the custodians [Elsevier] did not agree to were not appropriate."

---

[3] On November 14, I received an email from Michele Murphy, counsel for Plaintiffs, clawing back one of two produced documents on which Ms. Powell appeared, PL0000777840.  On November 17, I received a second email from Ms. Murphy, clawing back the only other produced email on which Ms. Powell appeared, PL0000777829. Google has complied with its obligations under the parties' protective order, which are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B) to promptly destroy any copies of these documents and refrain from using or disclosing the information.  Google has not received a privilege log for these documents, but reserves the right to challenge Plaintiffs' assertions of privilege.

*Macmillan*

44.    In their correspondence dated November 5, counsel for Plaintiffs stated that Macmillan refused to add as custodians Susan Elbe (Chief Connector – Science, Education, AI ("SEA") previously SVP of Global Marketing), who has 520 non-duplicative documents and Alanya Harter (Director, Digital Marketing), who has 552 non-duplicative documents.  Plaintiffs explained that "[a]fter a brief review" Ms. Elbe and Ms. Harter did not appear to have responsive documents, but "the few communications . . . that may be responsive" are duplicative of Macmillan's two newly added custodians.  Plaintiffs further noted their understanding that neither Ms. Elbe nor Ms. Harter had job responsibilities that "focus on the issues in this case."  Plaintiffs thus asserted that further review "would be unreasonably burdensome and unlikely to yield relevant information."

45.    Based on my review of documents, Ms. Elbe and Ms. Harter were both included in emails discussing how to shape Macmillan's Google Shopping/Search strategy, directing the company's response to Google's eBook ad policies, including navigating Merchant Center disapprovals, monitoring disapproved eBook ads, and coordinating anti-piracy messaging.  For example, Ms. Elbe was involved in efforts to navigate Google's eBook ad restrictions.  *See, e.g.,* PL0000794796 (discussion on resolving Merchant Center disapprovals and refining Shopping/Search tactics).  Ms. Harter was involved in directing Macmillan's response to Google's ebook ad policies and coordinating digital marketing strategy across Search and Shopping.  *See, e.g.*, PL0000545815 (discussion on ebook marketing strategy following Google's ban of Shopping advertisements for ebooks); PL0000545822 (discussion about Google's ban on digital book ads in Shopping campaigns and Macmillan's response).

46.    Further, during the November 6 meet and confer, counsel for Plaintiffs stated that

the low volume of documents produced from existing custodian ███████–4 documents–is explained by her work with outside and in-house counsel.  Google is unable to tell the number of documents from ████████'s files on Plaintiffs' Log because Plaintiffs have not yet provided a complete privilege log on a document-by-document basis.  ████████ appears on Plaintiffs' categorical log in 37 categories representing over 2,100 documents, but she may not appear on all of those documents.

47.    On November 11, counsel for Plaintiffs stated that Macmillan was reviewing my November 7 email but had "previously explained why the custodians [Macmillan] did not agree to were not appropriate."

### McGraw Hill

48.    In their correspondence dated November 5, counsel for Plaintiffs stated that McGraw Hill refused to add Nick Terzian (Product Manager), who has 1,012 non-duplicative documents, Angela Johns (Director, Digital Marketing), and Fred Koons (Manager, Paid Programs) as custodians.

49.    McGraw Hill asserts that Mr. Terzian's documents would be duplicative of Mr. Howland's (an existing custodian). I understand from a review of their LinkedIn profiles that Mr. Terzian has been an employee since 2019, while Mr. Howland joined the company in January 2023.

50.    Based on my review of documents on which Mr. Terzian appears, he is involved in



. *See, e.g.*, PL0000545833.  Mr. Terzian was also involved in discussions regarding scope of Google's ban on ebook advertising being limited to paid listings.  *See, e.g.*, PL0000544954.

51.     Based on my review of public information as well as those documents on which Ms. Johns and Mr. Koons appear, I understand both to have been involved in McGraw Hill's digital marketing strategy, which involved analyzing the impact of Google's ban of paid ebook advertisements on Shopping. *See, e.g.,* PL0000795127 (Mr. Koons sends analysis copying Ms. Johns); PL0000544956 (Mr. Koons and Ms. Johns discussing McGraw Hill's advertising strategy in response to Google's ban of paid ebook advertisements); PL0000544918 (Mr. Koons attributing a 50% drop in McGraw Hill's revenue to Google's ban of paid ebook advertisements).

52.     During the November 6 meet and confer, counsel for Plaintiffs stated that Ms. Johns left McGraw Hill in September 2022 and Mr. Koons left in August 2022.  Counsel for Plaintiffs stated further that McGraw Hill did not retain custodial data for either Ms. Johns or Mr. Koons.

53.     On November 11, counsel for Plaintiffs stated that McGraw Hill was reviewing my November 7 email but had "previously explained why the custodians [McGraw Hill] did not agree to were not appropriate."

### *Additional Search Terms*

54.     During the November 6 meet and confer, counsel for Plaintiffs stated that the parties' prior agreement to limit the scope of custodial document discovery for certain RFPs to Google Shopping or Ads, and ebooks may explain Plaintiffs' total volume of custodial documents produced on or before August 15, 2025 and low hit counts for the 16 proposed custodians. Plaintiffs' existing search terms include keywords that limited search results to documents related to Google Shopping or Ads and ebooks.

55.     In the November 7 correspondence referenced above, counsel for Google proposed an additional 16 search terms to capture additional documents pertaining to Plaintiffs' anti-piracy initiatives and digital marketing and advertising efforts. Those terms are:

    a.    (enforc* OR infring* OR notice OR takedown* OR DMCA OR copyright OR trademark OR illegal* OR pirat* OR unauthorized OR authoriz* OR removal* OR block* OR polic* OR procedur* OR strateg* OR method OR BCGuardian OR VitalSource OR Corsearch OR guideline* OR protocol* OR standard* OR ban OR allow* OR disallow*)

    b.    (piracy NOT w/5 (senior OR director OR manager))

    c.    ((practice* OR policies OR policy) w/25 (market* OR industr* OR business* OR profit* OR sale* OR revenue*))

    d.    "DRM"

    e.    (digital /3 rights)

    f.    (rights /3 management)

    g.    "Merchant Center"

    h.    (feed w/3 manag*)

    i.    (auction* w/3 insight*)

    j.    (keyword* w/15 auction*)

    k.    (impression /3 share)

    l.    "ROAS"

    m.    "paid search"

    n.    (return w/5 "ad spend")

    o.    Bing w/25 (ad* OR campaign* OR spend*)

    p.    (budget* OR bid* OR tactic* OR spend*) AND (Shopping OR Ads)

56.    These terms are intended to capture documents responsive to the following RFPs:

    a.    RFP 24: All Documents and Communications Concerning Your efforts, whether past or present, to market, sell, license, rent, distribute, or otherwise exploit each Asserted Work and each Asserted Copyright, Including without limitation Documents sufficient to show the revenue You receive for each Asserted Work and each Asserted Copyright for each such exploitation.

    b.    RFP 31: For each Asserted Work, all Documents and Communications Concerning any effect the alleged infringement had on the market or demand for the Asserted Work.

c.  RFP 34: All Documents and Communications Concerning Your advertising, marketing, or promotion of each Asserted Trademark, Including without limitation, the type, location/geographic reach, date, and any media plans, public relations materials, press kits and correspondence with advertising agencies, public relations firms, media planners, graphic designers, web site designers, or other Third Parties regarding the Asserted Trademark.

d.  RFP 55: All Documents and Communications Concerning Your contention that "Google's Shopping Ads allow merchants to target consumers who are looking for a specific product, such as a textbook, at the exact time the consumer is looking for it" and that "Google takes an active role in creating ads and targeting the advertising of its merchants' products to the very users who are looking for those products," as alleged in paragraphs 40–43 of the Complaint.

e.  RFP 56: All Documents and Communications Concerning Your contention that "Google's Infringing Shopping Ads are extremely effective at diverting would-be purchasers of the Publishers' textbooks to buy Infringing Works instead of legitimate copies," as alleged in paragraph 47 of the Complaint.

f.  RFP 64: All Documents and Communications that support Your contention that "[b]ecause of the size of Google's platform, the scale of these diverted sales is enormous," as alleged in Paragraph 81 of the Complaint.

g.  RFP 67: All Documents and Communications that support Your contention that Google's "practice of allowing standalone Shopping Ads for digital books from Pirate Sellers but not from legitimate publishers has a transformative effect on the market for all textbooks," as alleged in Paragraph 92 of the Complaint.

57.  Each Plaintiff provided substantially the same responses and objections to Google's

RFPs.  Below, as an example, are Cengage's responses and objections to the above RFPs:

a.  RFP 24

i.  Objections: Plaintiff objects to this request for "[a]ll Documents and Communications . . ." on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs and scope of the case, and it seeks information that is not relevant to the claims or defenses in the litigation. The scale of this request appears intended to harass Plaintiff, cause unnecessary delay, and needlessly increase the cost of litigation. Plaintiff, cause unnecessary delay, and needlessly increase the cost of litigation. The request can be interpreted to seek nearly every document ever created and/or received by Plaintiff in conducting its business with respect to the Asserted Works, and there is no limitation in time or scope. Plaintiff is a large publishing company that publishes

many copyrighted works per year, and Google has infringed many such works. Thus, no reasonable search for the requested information could be conducted, and even attempting to do so would take an enormous amount of time and resources and yield a plethora of irrelevant information. This case is about piracy, not the lawful licensing or other exploitation of Plaintiff's Asserted Works. Additionally, as stated in the Amended Complaint, Plaintiff has not entered into any licenses or agreements with the Infringing Merchants. Thus, any license or other agreement entered into between Plaintiff and a nonparty that does not relate to Plaintiff's ownership of Asserted Works has no relevance to, nor bearing on, the claims and defenses asserted in this case. Plaintiff further objects to this request to the extent that it seeks documents or information concerning any licenses and/or agreements internal to Plaintiff and/or its parents, subsidiaries, divisions, successors in interest, and/or affiliates, which have no relevance to the claims and defenses asserted in this case. Plaintiff further objects to the request on the grounds that it is vague and ambiguous regarding the terms "market," "sell," "license," "rent," "distribute," "exploit," and "exploitation." Plaintiff further objects that this request seeks documents containing highly confidential and proprietary information concerning Plaintiff's marketing and business decisions, customers, potential customers, products, and/or services, the production of which would not be justified even under a protective order.

    ii.    Response: Subject to and without waiving the foregoing objections, Plaintiff will produce (i) documents sufficient to show the prices at which the Asserted Works were sold in the United States since August 1, 2019, to the extent such information is available and can be found after a reasonable search; (ii) if information showing the prices at which the Asserted Works were sold in the United States since August 1, 2019 cannot be found after a reasonable search, documents sufficient to show the prices at which the Asserted Works were sold in the United States prior to August 1, 2019, to the extent such information is available and can be found after a reasonable search; and (iii) non-privileged documents sufficient to show the valuation for an Asserted Work, to the extent such documents exist, are within Plaintiff's possession, custody, or control and can be found after a reasonable search. Pursuant to the foregoing objections, Plaintiff will not otherwise search for or produce documents in response to only this request at this time.

b.    RFP 31

    i.    Objections: Plaintiff objects to this request for "all Documents and Communications . . ." on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs and scope of the case, and it seeks information that is not relevant to the claims or defenses in the litigation. Plaintiff is a large publishing company that publishes

many copyrighted works per year, and Google has infringed many such works. The damages caused by copyright infringement are known to be difficult to quantify, which is a reason that statutory damages are available under the Copyright Act. Plaintiff further objects because the request is premature given the current stage of the litigation, at which the full extent of Defendant's infringement is unknown. Plaintiff further objects to the request on the grounds that it is vague and ambiguous regarding the terms "the alleged infringement" and "market or demand." Plaintiff further objects to this request to the extent that it seeks documents or communications protected by the attorney-client privilege, attorney work product doctrine, and/or other privileges and protections.

    ii.    Response: Subject to and without waiving the foregoing objections, Plaintiff will produce non- privileged documents that can be found after a reasonable search.

  c.    RFP 34

    i.    Objections: Plaintiff objects to this request for "[a]ll Documents and Communications . . ." on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs and scope of the case, and it seeks information that is not relevant to the claims or defenses in the litigation. The request can be interpreted to seek nearly every document or communication ever created and/or received by Plaintiff regarding the promotion of its goods and services using the Asserted Trademarks, and there is no limitation in time or scope. Thus, no reasonable search for the requested information could be conducted, and even attempting to do so would take an enormous amount of time and resources and yield a plethora of irrelevant information. Further, the Asserted Trademarks are registered with the USPTO creating legal presumptions pursuant to 15 U.S.C. § 1115. The validity and lawful use of the Asserted Marks is not at issue in this case, which involves Google's unauthorized application of the Asserted Marks to advertisements for infringing goods. Therefore, the proposed discovery lacks relevance, and the burden and expense of it outweighs any possible benefit. Plaintiff further objects to the request on the grounds that it is vague and ambiguous regarding the terms "advertising," "marketing," and "promotion," and the application of those terms (and the examples provided) to "the Asserted Marks." Plaintiff further objects to this request as unreasonably duplicative of other requests. Plaintiff further objects that this request seeks documents containing highly confidential and proprietary information concerning Plaintiff's marketing and business decisions, customers, potential customers, products, and/or services, the production of which would not be justified even under a protective order. Plaintiff further objects to this request to the extent that it seeks documents or communications protected by the

attorney-client privilege, attorney work product doctrine, and/or other privileges and protections.

ii.   Response: Subject to and without waiving the foregoing objections, Plaintiff will produce (i) non-privileged brand strategy plans and brand guidelines with regard to each Asserted Trademark that can be found after a reasonable search, and (ii) examples of Plaintiff's advertising, marketing, or promoting legitimate goods and/or services bearing each Asserted Trademark. Pursuant to the foregoing objections, Plaintiff will not otherwise search for or produce documents in response to only this request at this time.

d.   RFP 55

i.   Objections: Plaintiff objects to this request for "[a]ll Documents and Communications . . ." on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs and scope of the case, and it seeks information that is not relevant to the claims or defenses in the litigation. Plaintiff further objects to this request to the extent that information it seeks is not within Plaintiff's possession, custody, or control. Plaintiff further objects because the request is premature given the current stage of the litigation. A more complete picture of Defendant's infringement will be determined as discovery progresses. Plaintiff further objects to this request because it seeks information already in the possession of, or equally available to, Google. Plaintiff further objects to this request to the extent that it seeks documents or communications protected by the attorney-client privilege, attorney work product doctrine, and/or other privileges and protections.

ii.   Response: Subject to and without waiving the foregoing objections, at the appropriate time and in accordance with the Federal Rules of Civil Procedure, the Local Rules of this District, and orders of the Court, Plaintiff will produce non-privileged documents sufficient to support its contention referenced in this request that are within its possession, custody, or control and can be found after a reasonable search.

e.   RFP 56

i.   Objections: Plaintiff objects to this request for "[a]ll Documents and Communications . . ." on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs and scope of the case, and it seeks information that is not relevant to the claims or defenses in the litigation. Plaintiff further objects to this request to the extent that information it seeks is not within Plaintiff's possession, custody, or control. Plaintiff further objects because the request is premature given the current stage of the litigation. A more complete picture of the impact of infringing Shopping Ads will be determined as discovery progresses.

Plaintiff further objects to this request because it seeks information already in the possession of, or equally available to, Google. Plaintiff further objects to this request to the extent that it seeks documents or communications protected by the attorney-client privilege, attorney work product doctrine, and/or other privileges and protections.

ii.    Response: Subject to and without waiving the foregoing objections, at the appropriate time and in accordance with the Federal Rules of Civil Procedure, the Local Rules of this District, and orders of the Court, Plaintiff will produce non-privileged documents sufficient to support its contention referenced in this request that are within its possession, custody, or control and can be found after a reasonable search.

f.    RFP 64

i.    Objections: Plaintiff objects to this request for "[a]ll Documents and Communications . . ." on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs and scope of the case, and it seeks information that is not relevant to the claims or defenses in the litigation. Plaintiff further objects to this request to the extent that information it seeks is not within Plaintiff's possession, custody, or control. Plaintiff further objects because the request is premature given the current stage of the litigation. A more complete picture of Defendant's operations and the impact of infringing Shopping Ads will be determined as discovery progresses. Plaintiff further objects to this request because it seeks information already in the possession of, or equally available to, Google. Plaintiff further objects to this request to the extent that it seeks documents or communications protected by the attorney-client privilege, attorney work product doctrine, and/or other privileges and protections.

ii.    Response: Subject to and without waiving the foregoing objections, at the appropriate time and in accordance with the Federal Rules of Civil Procedure, the Local Rules of this District, and orders of the Court, Plaintiff will produce non-privileged documents sufficient to support its contention referenced in this request that are within its possession, custody, or control and can be found after a reasonable search.

g.    RFP 67

i.    Objections: Plaintiff objects to this request for "[a]ll Documents and Communications . . ." on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs and scope of the case, and it seeks information that is not relevant to the claims or defenses in the litigation. Plaintiff further objects to this request to the extent that information it seeks is not within Plaintiff's possession, custody, or control. Plaintiff further objects because the request is premature given

the current stage of the litigation. A more complete picture of Defendant's policies and practices related to Shopping Ads for digital books will be determined as discovery progresses. Plaintiff further objects to this request because it seeks information already in the possession of, or equally available to, Google. Plaintiff further objects to this request to the extent that it seeks documents or communications protected by the attorney-client privilege, attorney work product doctrine, and/or other privileges and protections.

ii.  Response: Subject to and without waiving the foregoing objections, at the appropriate time and in accordance with the Federal Rules of Civil Procedure, the Local Rules of this District, and orders of the Court, Plaintiff will produce non-privileged documents sufficient to support its contention referenced in this request that are within its possession, custody, or control and can be found after a reasonable search.

58.    On November 11, counsel for Plaintiffs responded that their preliminary analysis revealed that these terms hit on over "5 million" documents from their existing custodians (though they did not attach a hit report) and would "create extreme burden." On November 13, I responded to this email requesting that Plaintiffs provide Google with hit counts for these search terms.

59.    On November 17, counsel for Plaintiffs responded that their "information at this point shows that the terms, when run across only the existing custodians before November 6, result in 7 million hits with family and 2.19 million hits without family."

60.    On November 18, counsel for Google, including Sarah Tomkowiak, Caroline Clarke, Leticia Salazar, and I met and conferred with counsel for Plaintiffs, including Michele Murphy and Lauren Bergelson. Ms. Tomkowiak stated that Google remains willing to negotiate with Plaintiffs to resolve these custodian and search term disputes, but that Google intended to file this Motion promptly in light of the Court's plan to hear remaining document discovery disputes at the status conference on December 15 and the Court's deadline of January 6 for the substantial completion of document discovery.

I declare under penalty of perjury that the foregoing statements are true and correct.


Executed November 18, 2025, in Arlington, Virginia.


_____
Laura E. Bladow