

Michele H. Murphy
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.450.5643
michele@oandzlaw.com

November 24, 2025

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

> Re:    ***Cengage Learning, Inc. et al. v. Google LLC***, No. 24-cv-04274-JLR-BCM
> **Plaintiffs' Letter Response in Opposition to Google's Letter Motion for Pre-Motion Discovery Conference (Dkt. 287)**

Dear Judge Moses,

Google's motion (Dkt. 287, "Mot.") represents its latest attempt to delay this case and pursue unfounded claims regarding Plaintiffs' discovery while withholding its own. Plaintiffs agreed to add five custodians to their existing twelve ("Added Custodians") in an effort to resolve this dispute. Google now seeks to compel Plaintiffs to add five more custodians ("Proposed Custodians"), notwithstanding that these individuals are not relevant and/or are duplicative of existing custodians. The burden of conducting a fulsome review of thousands of additional documents (under the current search terms) is neither justified nor proportional.

Google also seeks expansive new search terms ("New Terms") for *all* Plaintiffs' custodians, for which Plaintiffs would have to review/re-review millions of documents. This would substantially increase Plaintiffs' costs and cause delay where Google's infringement is ongoing. *See* Dkt. 191 at 6-7. Google's late-stage position that it should now be entitled to custodial discovery concerning *all* of Plaintiffs' anti-piracy efforts, and the *entirety* of Plaintiffs' digital marketing programs, is as transparent as it is unsupported. These subjects run far afield from the real issues in this case.

### I.    Plaintiffs' document production is substantial and encompasses relevant information.

Google's motion mischaracterizes the extensive scope of Plaintiffs' discovery efforts. Google contends Plaintiffs' custodial production is "negligible" due to the custodians and "overly narrow search terms employed by Plaintiffs." Mot. at 3. But the parties jointly negotiated the search terms last spring ("Agreed Terms") and exchanged hit reports in July. Murphy Decl. ("Decl.") ¶3. Plaintiffs reviewed tens of thousands of documents, produced responsive documents, and logged privileged documents.[1] *Id.*

---

[1] Given Plaintiffs' efforts to enforce their IP rights through legal action and the inclusion of search terms regarding these efforts and custodians who work directly with counsel on such matters, there are over 2,000 privileged documents. Dkt. 304.

Hon. Barbara Moses
November 24, 2025

Google's "volume"-based objections lack merit. The number of documents does not determine whether Plaintiffs' productions include the relevant information—they do. This is especially true in an infringement case. *See Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 619 (S.D.N.Y. 2016) ("In copyright infringement cases, the bulk of the evidence typically comes from the infringer[.]"); Dkt. 218 at 64:17-65:1 (Court stating, "I would expect, in a case of this nature . . . that discovery would not be an even playing field in terms of the number of custodians or, frankly, the burden involved); 101:3-22 (rejecting Google's argument for parallel custodians, stating, "I'm not sure that works as a logical matter . . . ; the defendant doesn't accuse the Plaintiffs of violating the law or doing things wrong or failing to adequately police copyright violations").

Google's claim that the discovery process "precluded fair testing" is also baseless. Mot. at 1. Google never specifies what it supposedly needs to test but cannot. And Google ignores Plaintiffs' non-custodial productions, which encompass over 430,000 documents. Decl. ¶4. Google tries to brush off the parties' agreement limiting Plaintiffs' responses to non-custodial RFPs regarding their IP enforcement efforts to Google Shopping and the relevant pirates. *Id.* ¶¶5-6. This limitation exists for a reason. Plaintiffs are not accused of infringement, and responding to requests for all anti-piracy documents would have been patently overbroad and burdensome.

Notwithstanding Plaintiffs' substantial discovery efforts, Plaintiffs agreed to the Added Custodians. For the Proposed Custodians, Plaintiffs explained that they had collected their PST/archive files, run the search terms (providing hit counts), reviewed the metadata, and reviewed certain individual documents. *Id.* ¶7. Based on this review, and the individuals' roles, the Proposed Custodians lack relevance and would be duplicative of existing custodians. Further review of their approximately 4,000 documents, under the Agreed Terms, would be unreasonably burdensome, especially given the high likelihood that the review would not yield new relevant information. *Id.*

## II. Google's New Terms would yield vast amounts of irrelevant information and impose extreme burden.

Google first proposed the New Terms (listed at Dkt. 290 ¶55) on November 7, *the day after* Plaintiffs agreed to the Added Custodians. *Id.* ¶8. Google never met-and-conferred with Plaintiffs and, even after Plaintiffs told Google they would implicate millions of documents, filed this motion.[2] *Id.*; Dkt. 290-3 at 3, 7-8.

Running the New Terms on the original twelve custodians hits on over seven million documents. *Id.* ¶9. Adding in the Added and Proposed Custodians would increase this by hundreds of thousands documents. *Id.* ¶10. This is the definition of overly broad and unduly burdensome.

Moreover, the New Terms are not crafted to yield relevant information. Google claims entitlement to information regarding Plaintiffs' "use of Google's products, *not limited to Shopping*,

---

[2] In the face of patently overbroad search terms, Google insists that Plaintiffs must add still more custodians, and the parties can continue negotiating terms. Dkt. 290-3 at 2. This is not feasible.

Hon. Barbara Moses
November 24, 2025

to advertise Plaintiffs' products and associated costs." Mot. at 3 (emphasis added). However, this case is about Google Shopping. *See* Oct. 8, 2025 Hr'g. Tr. 183:16-18 (Google's counsel stating, "There are different types of ads on Google, and this case has been limited to Shopping ads."); Am. Compl. ¶¶37-38. Similarly, Google claims entitlement to documents concerning "Plaintiffs' response to Google's prohibition of paid advertising of ebooks on Shopping, including by adjusting their marketing and/or advertising efforts to leverage other Google products and other platforms." Mot. at 3. But Plaintiffs have raised *no* issues about their advertising outside of Google Shopping, let alone on other platforms. Even for Shopping, Plaintiffs' claim is that the piracy necessarily is made worse because Plaintiffs and their legitimate distributors are not authorized to advertise ebooks, eliminating or limiting legitimate ebook ads. Am. Compl. ¶¶64-65. This has nothing to do with other platforms, and even has a limited context for Shopping.

Google claims that during or after the November 6 meet-and-confer, "it became clear that the negligible volume of custodial data produced may also be attributed to the overly narrow search terms employed by Plaintiffs." Mot. at 3. But Google completed its review of Plaintiffs' custodial documents by September 25th (and received the hit report on July 16). Mot. at 2; Decl. ¶3. If Google believed the *September 16, 2024* complaint implicated Plaintiffs' entire digital marketing program, it presumably would have raised the issue before November 2025.

The same is true for Google's claim that it is now entitled to custodial documents concerning all of Plaintiffs' anti-piracy efforts. Mot. at 3; Decl. ¶5. This case is about Google's affirmative promotion of its pirate customers' sites and infringing products, and failure to respond to Plaintiffs' notices. There is no basis for imposing enormous burden on Plaintiffs and substantially delaying this case when Plaintiffs' unrelated anti-piracy efforts are not at issue. Yet Google proposes its first search string, which is the most problematic of the terms, and would capture nearly every document regarding enforcement, infringement, and notices. Dkt. 290 ¶¶55(a).

### III. The Proposed Custodians should not be added.

Plaintiffs evaluated the Proposed Custodians under the Agreed Terms. *Id.* ¶11. The extreme burden that would result from applying the New Terms is detailed in the Attorney Declaration. *Id.* (providing hit counts). But these individuals should not be added even under the Agreed Terms. Plaintiffs conducted the review of their files described above. They are not relevant and/or duplicative, and further review would be unwarranted and burdensome. Plaintiffs should not be required to add custodians simply for the sake of "increasing numbers."

*Cengage—Digital Marketing* (Decl. ¶13): Google's request that Cengage add "1-2 digital marketing custodians" (Mot. at 4.) is untethered to the facts. Cengage's allegations concerning Shopping ads focus on its legitimate distributors' ads for Cengage's books. Google subpoenaed one such distributor, who complained to Google about pirate ads, and received responsive documents. In an effort to reach a compromise, Cengage said it would investigate whether any digital marketing custodian might have relevant Shopping information. If Cengage identifies such a person, it will inform Google. However, any further searches must be with the Agreed Terms, not opening up all of digital marketing.

*Cengage—Dalton Hoffine* (Decl. ¶13): Hoffine's position is Senior Manager, Strategy & Operations (also Channel Strategy & Operations Manager during the relevant time period). His

Hon. Barbara Moses
November 24, 2025

roles involve business-to-business strategic operations, liaising between Cengage and distributors. This does not concern marketing through Google ads. His limited role with Google related to Google as a distributor, i.e., the sale of Cengage's books on Google Books, a different platform. From the review of his PST file, Hoffine is highly unlikely to have unique, relevant documents. In support of its request to add Hoffine, Google cited an email chain that does not relate to Google.

***Elsevier—Alison Powell*** (Decl. ¶14): Google seeks to add Powell, Chief Marketing Officer. However, in her senior-executive-level role, she lacks direct/day-to-day knowledge of the relevant issues. Her role is much broader. Existing custodian Rebecca Miller (VP, Marketing and Excellence) is the key representative involved in Elsevier's Shopping ads for books. Elsevier has also agreed to add Salima Bradley and Aly Abrams, who work in marketing/business operations. From the review of Powell's PST file, she is highly unlikely to have unique, relevant documents. Google's only two referenced documents in support of its request were clawed back for privilege issues before Google filed this motion. Adding Powell would be unnecessary, duplicative, and burdensome, including because it could result in distracting her from her important duties when she is removed from the issues in this case.

***McGraw Hill—Nick Terzian*** (Decl. ¶15): During the relevant time period, Terzian's position was Senior Growth Marketing Manager for higher education. He reported to existing custodian Nick McFadden, Senior Director, Growth Marketing, and functioned as McFadden's support. If Terzian had any communications with Google about Shopping ads, McFadden would have been involved. The two documents that Google references to support its request include McFadden. Dkt. 290 ¶50. From the review of Terzian's PST file, he is highly unlikely to have unique, relevant documents, especially because McFadden and another custodian with whom Terzian worked (Bryan Howland) are custodians. Adding Terzian would be unnecessary, duplicative, and burdensome.[3]

***Macmillan Learning—Susan Elbe*** (Decl. ¶16): Jennifer Bilello, Director, Performance Marketing & Operations, is the chief custodian of Macmillan's Shopping ads account. Macmillan also agreed to add Jenny Chiu, Website Strategy and Operations Manager, who serves as a backup to Bilello for the Shopping account. Elbe is the Chief Connector, Science, Education, and AI, and previously was the Senior Vice President Global Marketing. Bilello is the appropriate custodian with day-to-day knowledge. Elbe's senior executive-level role is much broader. From the review of Elbe's archive file, she is highly unlikely to have unique, relevant documents, especially because Bilello (and Chiu) are custodians. Adding Elbe would be duplicative, highly unlikely to yield new relevant information, and create undue burden.[4]

---

[3] Should Google file a further motion concerning Angela Johns and Fred Koons, who left McGraw Hill in 2022, McGraw Hill will address it at that time. *See* Mot. at 5. McGraw Hill has explained that these individuals were not uniquely involved in "critical and relevant issues"; and their roles in the broader digital marketing group would not have necessitated document preservation. *Id.*; Dkt. 290-3 at 7.

[4] Simon Horrer, an Added Custodian, is also a senior executive (EVP Finance & Operations). Macmillan Learning expects to affirmatively offer his testimony, including on high-level issues related to financial information and the impact of piracy.

Hon. Barbara Moses
November 24, 2025

***Macmillan Learning—Alanya Harter***  (Decl. ¶16): Harter was Director, Digital Marketing and is no longer with Macmillan. While Bilello and Chiu reported to Harter, Bilello is the point person, as discussed above. From the review of Harter's archive file, she is highly unlikely to have unique, relevant documents. Indeed, counsel's review revealed *one* responsive document between Elbe and Harter, who are both on an email chain, in which Chiu is the sender. Adding Harter would be duplicative, highly unlikely to yield new relevant information, and create undue burden.

## IV.    Conclusion

Google's motion should be denied in its entirety.

Respectfully submitted,

*/s/ Michele H. Murphy*
Michele H. Murphy
OPPENHEIM + ZEBRAK, LLP
*Counsel for Plaintiffs*