**Sarah A. Tomkowiak**
Direct Dial: +1.202.637.2335
sarah.tomkowiak@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

November 25, 2025

<u>**VIA ECF**</u>

The Honorable Barbara C. Moses
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, New York 10007

> Re: Cengage Learning, Inc. v. Google LLC, No. 1:24-cv-04274-JLR-BCM:
> <u>Defendant's Response to Plaintiffs' Letter Motion for Discovery Conference Regarding Searching Google's Buganizer System (Dkt. 295)</u>

Dear Judge Moses:

Google's "sprawling, multiuse" Buganizer system is utilized daily by tens of thousands of employees, contractors, and public users to address a variety of projects and issues, almost all of which have nothing to do with the DMCA.  Hr'g Tr. 108:24 (Oct. 8, 2025) ("Tr."), Dkt. 218. Recognizing that discovery from this system could be a "huge, huge, huge endeavor," *id.* at 108:22-24, the Court ordered the parties to negotiate a search protocol for *targeted* discovery using a "limited set" of components and a "limited set" of search terms, *id.* at 130:10-14; *see also* Dkt. 217 (the "Order") at 2 (ordering the parties to exchange their "top 10" components and "top 10" search terms).  Consistent with the Court's Order, Google spent countless hours and internal resources attempting to negotiate a set of Buganizer components over which to run negotiated search terms.  The parties exchanged lists of top 10 components and top 10 search terms.  And Google voluntarily created, for this litigation, bespoke indices of the component hierarchies (or "trees") for Plaintiffs' proposed components.

Weeks into these efforts, Plaintiffs ask the Court to abandon its prior Order and compel Google to search Buganizer using "custodians" rather than "components."  But Buganizer is not a custodial repository.  Plaintiffs' demand for a "custodial" review of a non-custodial system defies the Court's directive, and is vastly overbroad and unduly burdensome.  Plaintiffs' motion should be denied.

LATHAM&WATKINS LLP

## I. Google Has Provided Sufficient Information to Identify Relevant Components

Plaintiffs' misrepresentation that "Google has provided little information about potential components," Dkt. 295 ("Motion") at 1, is absurd and belied by the record.[1]

*First*, the Court ordered Google's counsel to promptly inquire "as to whether Google possesses a list or index of the available 'components'" within Buganizer. Order at 2. Counsel did so. Within three business days of that Order, counsel for Google informed Plaintiffs' counsel that, after speaking with numerous employees, it was not aware of a comprehensive index reflecting, by name, all components within Buganizer, Atty. Decl., Ex. A at 35-36, which total approximately ▮▮▮▮▮ Declaration of Blake Bassett ("Bassett Decl.") ¶ 11. Google explained that it was "continuing to investigate the possibility of creating an index programmatically" for this litigation, but flagged that even if possible, it would likely be a time-consuming and complex effort. Ex. A at 36.

*Second*, in the event Google did not possess a comprehensive Buganizer index, the Court ordered Google to identify "alternatives . . . for navigating the components." Order at 2. Google did that, too. Shortly after Google informed Plaintiffs that it was investigating the possibility of creating an index programmatically, Plaintiffs proposed that Google disclose all child components that fell under four high-level components *Plaintiffs* identified as potentially relevant (two of which shared a common root). Ex. A at 34. Google immediately began investigating whether it could create a bespoke index of those high-level component trees, and worked simultaneously to identify any additional ones that might be relevant. Atty. Decl. ¶ 5. Google ultimately accepted Plaintiffs' proposal with minor modifications, providing a bespoke index of component trees from six "roots" three business days later. Ex A. at 31-32.[2] That bespoke index of components and subcomponents totals 3,345 rows. Atty. Decl. ¶ 7; *see also* Ex. B.

On October 22, the parties exchanged lists of "top 10" components and search terms. Ex. A at 25-31. At the same time, however, Plaintiffs took the position that Google had "failed meaningfully to search for relevant components" because Google had identified only two component roots to include in the bespoke index beyond Plaintiffs' choices (with minor modifications). *Id.* at 28. But as Google explained, it is not surprising that the components Plaintiffs identified through review of documents in the files of core custodians overlapped with the components Google identified as potentially relevant. *Id.* at 24.

Following the parties' October 28 conferral regarding this dispute, Atty. Decl. ¶ 8, Google provided a supplemental index of the component trees for three other component roots that Plaintiffs included on their "top 10" list. Ex. A at 17-18; *see also* Ex. C. At Plaintiffs' request,

---

[1] Plaintiffs tellingly did not attach the parties' correspondence regarding Buganizer to their motion. Google attaches it. *See* Declaration of Sarah Tomkowiak ("Atty. Decl."), Ex. A.

[2] Plaintiffs' suggestion that Google failed to comply with the Order because it did not provide Plaintiffs with a *separate* "alternative" for navigating Buganizer components cannot be squared with the parties' correspondence. Plaintiffs stated on October 17 that Google should propose its own "concrete 'alternatives'" only if Google *did not* agree to provide the requested information for the high-level components identified by Plaintiffs. Ex. A at 34.

Google also agreed to provide "hovercard" descriptions, where available and subject to a privilege review, for all components included in the two bespoke indices. Ex. A at 15-16. But Plaintiffs swiftly rejected that offer, too, proclaiming that providing those descriptions would be "insufficient." *Id.* at 14-15.[3] Plaintiffs argue that they do not have sufficient information to identify a "reasonably complete list of components" because "nearly all of the components that have been identified so far came from custodial documents" and Google's custodial production is not complete. Mot. at 3; *see also id.* ("[F]or a component-based search to be viable, Google would have to produce all of the custodial documents it has been ordered to produce, so that the parties can see what Buganizer tickets, and in turn what components, are referenced in those documents."). But generating a "complete" list of components was not the sine qua non of what the Court ordered the parties to do. The parties were to work collaboratively to "identify the *most relevant . . .* components" to facilitate targeted discovery. Tr. 130:20-21 (emphasis added). It is pure speculation to think that "the most relevant" component roots will be components other than those referenced in the custodial files of Google's core custodians for which Google has already provided indices reflecting the full component trees. Indeed, "Reporters," "Assignees" and "CC"-ed individuals automatically receive email notifications with updates on Buganizer issues. Bassett Decl. ¶ 7.

## II. Plaintiffs' New Proposal Is Unreasonable and Unduly Burdensome

After Google expended significant legal and engineering resources to give Plaintiffs visibility into relevant components, Plaintiffs have unilaterally determined that component-based discovery will not suffice. Sixteen weeks after Plaintiffs filed their first Buganizer motion and seven weeks after Plaintiffs agreed in Court to move forward with a component-based approach, Plaintiffs demand that Google collect, process, and review ***all*** Buganizer tickets where at least one of Google's *18* custodians or listservs was included in the "reporter," "assignee," or "cc" lines and where they hit on to-be-negotiated search terms.[4] Plaintiffs' counter-productive proposal would vastly expand the scope of discovery far beyond the "top 10" "sub-sub-sub[components]" and "targeted searches" the Court contemplated. *See* Tr. 137:10-16, 119:22-24.

Plaintiffs insist that their "custodian"-based approach is justified because "Google should have included Buganizer tickets in its search for custodial documents in the first place" and "[t]he only distinction between Buganizer communications and the emails and chats that Google is searching as part of its 'custodial' searches is the platform on which they appear." Mot. at 3. That is wrong. Buganizer is ***not*** a custodial data source and was not designed for custodial collection. *See* Bassett Decl. ¶ 8. Buganizer is a collaborative tool used across Google (and sometimes externally) for tracking issues and feature requests. *Id.* ¶ 5. Tickets are not maintained by specific employees or other Buganizer users; they are maintained at the component level. *See id.* ¶ 8; *see also* Sedona Conf., *Commentary on Discovery of Collaboration Platforms Data*, 26 Sedona Conf. J. 627, 637 (forthcoming 2025) ("While custodians may participate in activities on collaboration

---

[3] Plaintiffs accuse Google of an unwillingness "even to provide information about the components listed." Mot. at 1. But Google *agreed* to provide component descriptions. *Plaintiffs* changed their minds.

[4] While the parties' search term negotiations are ongoing, the search terms that Plaintiffs have proposed thus far are vastly overbroad, particularly if run across *all* components associated with Google's custodians, rather than a targeted subset.

**LATHAM&WATKINS**LLP

platforms . . . these platforms are—much like a database that a custodian may access—traditionally considered a noncustodial source of information.").

Buganizer lacks many functionalities typical custodial repositories have. Significantly, Buganizer lacks a bulk-export function for converting the full contents of Buganizer issues into PDFs. Bassett Decl. ¶ 9. This means that collecting Buganizer tickets even within targeted components will necessarily be a time-intensive, manual process. First, if any components are access-controlled, the person running the search must first obtain permission from each component administrator to ensure that all issues from access-controlled components are included in the search. See id. ¶ 11. Next, someone must identify the URLs for each ticket that needs to be collected. Declaration of Duy Ho ("Ho Decl.") ¶¶ 5-6. Then, those URLs must be fed through "███████," an internal tool for scraping web-based user interfaces such as Buganizer for legal matters. Id. ¶ 4. ███████ renders the web interface and generates a PDF snapshot of the page as it existed at the time. Id.. Those PDFs, in turn, are uploaded to Google's discovery platform for review and production. Id. ¶ 7.

Requiring Google to run search terms based on "Reporter"/"Assignee"/"CC", rather than a set of targeted components, will magnify the burden of that manual effort significantly. The 15 individuals and 3 listservs Google is treating as "custodians" are included as a "Reporter"/"Assignee"/"CC" on tickets within 859 components and subcomponents. Bassett Decl. ¶ 13.[5] By comparison, the "top 10" component list that Google proposed included 121 components and sub-components. Id. ¶ 20. The increase in the number of components will likely balloon the number of records that Google will need to snapshot from Buganizer and review. In addition, no fewer than 196 of the 859 components associated with Google's 15 custodians and 3 listservs are access-controlled. Id. ¶ 14. Google will need to manually request access from the relevant component administrators for these 196 access-controlled components to collect any tickets within. Id. ¶ 11.[6] By comparison, only 18 of the 121 components in Google's "top 10" component list are access controlled. Id. ¶ 20.

The constraints of the Buganizer system impose heavy burdens that the Court has already recognized counsel in favor of targeted discovery into a narrow set of components. By any measure, Plaintiffs' new tack departs dramatically from the Court's directive to keep "both the number of [components] and the number of search terms" "reasonable" and "limited," Tr. 130:14-17, and to proceed with "a limited number of searches per domain" via iterative tests, id. at 124:10-11. Plaintiffs' new proposal reflects precisely the type of sprawling, high-volume fishing expedition the Court already rejected. See id. at 137:5-16.

---

[5] By removing the CC field from the search (a field less associated with substantive involvement in an issue), the total number of components implicated by Plaintiffs' request drops to 431. Bassett Decl. ¶¶ 6, 16.

[6] Removing the CC field from the search reduces the number of access-controlled components to 116. Bassett Decl. ¶ 17.

LATHAM&WATKINS LLP

### III. Google Is Willing to Continue to Negotiate a Set of Components and Search Terms

Google maintains that it has provided sufficient information to negotiate an appropriate list of the most relevant components. To provide Plaintiffs with even more information, Google is willing to create and then provide an index of the 431 components containing one or more tickets in which a Google custodian/listserv is named in the Reporter or Assignee. *See supra* n.5. Google is also willing to provide the descriptions of those components, where available. The parties could then use this index and descriptions to modify (if they wish) their "top 10" lists of components and negotiate a reasonable set of the "most relevant" components on which to run a targeted set of search terms. This compromise would allow the parties to comply with the component-based search the Court ordered, while ensuring that the components have some connection to one or more of Google's 18 custodians/listservs.

Respectfully submitted,

*/s/ Sarah A. Tomkowiak*
Sarah A. Tomkowiak (*pro hac vice*)
of LATHAM & WATKINS LLP

cc:   All Counsel of Record (via ECF and e-mail)