IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; ELSEVIER INC.; ELSEVIER B.V.; and MCGRAW HILL LLC, <br><br> *Plaintiffs*, <br><br> v. <br><br> GOOGLE LLC, <br><br> *Defendant*. | Case No. 1:24-cv-04274-JLR-BCM |

## ATTORNEY DECLARATION OF SARAH TOMKOWIAK

I, Sarah Tomkowiak, declare that:

1. I am a partner at the law firm Latham & Watkins LLP, counsel for Google LLC ("Google") in this matter.

2. I submit this declaration in connection with Google's response to Plaintiffs' Letter Motion for Discovery Conference Regarding Searching Google's Buganizer System (Dkt. 295).

3. I am the recipient of a 52-page email thread between counsel for Google and counsel for Plaintiffs with the subject line, "Re: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)" between September 16, 2025 and November 19, 2025. A true and correct copy of this email thread is attached as **Exhibit A**.

4. This email chain contains an email from Jeff Kane, counsel for Plaintiffs, on October 13, 2025, in which Plaintiffs first raised the possibility of using the "Reporter," "Assignee," and "CC" fields rather than components to search the Buganizer system. *See* Ex. A at 37. This email was sent three business days after the October 8, 2025 hearing and just two

business days after the Court issued its Order at Dkt. 217.  This email represents the parties' first communication regarding Buganizer following the Court's Order.

5. The email chain attached as Exhibit A also contains an email from Yunyi Chen, counsel for Plaintiffs, on October 17, 2025 to counsel for Google requesting that Google "disclose all components that organizationally fall under" four high-level components.  *See* Ex. A at 34.  Upon receiving that email, counsel for Google immediately began to investigate whether Google could create a bespoke index of those high-level component trees.  At the same time, counsel for Google also conducted a reasonable investigation into the components commonly used by Google employees responsible for legal removals.

6. Based on these investigations, I understand that (1) two of the high-level components Plaintiffs identified shared the same component root, *see id.* at 32; (2) the high-level components Plaintiffs identified largely overlapped with the high-level components identified in Google's own investigation; and (3) it was possible for Google to create a bespoke index of component trees for a select number of component roots.

7. Following these investigations, my colleague, Sara Sampoli, provided counsel for Plaintiffs with an index of component trees for six component roots—two specifically requested by Plaintiffs, two sub-components derived from a top-level component requested by Plaintiffs, and two additional components identified by Google through its investigation.  *See id.* at 31–32.  This index contained 3,345 components and sub-components.  A true and correct copy of the index sent by Ms. Sampoli to Plaintiffs' counsel via email at 12:17 a.m. on October 22, 2025 is attached as **Exhibit B**.

8. After the parties exchanged their respective "top ten" components and search terms in accordance with the Court's Order, Dkt. 217 at 2, the parties conducted a meet and confer

regarding this dispute on October 28, 2025.  At this conferral, which I attended, my colleague Ms. Sampoli sought to discuss the parties' competing "top ten" components while Plaintiffs took the position that instead of negotiating components, Google should collect all Buganizer tickets where the "Reporter," "Assignee," or "CC" fields contain one of Google's eighteen custodians/listservs, export all those tickets into Relativity, and run search terms over those documents within Relativity.  *See* Ex. A at 34.  My colleague Ms. Sampoli explained why that approach would be technologically infeasible.  *See also id.* at 11.

9. Following this meet and confer, my colleague Ms. Sampoli provided counsel for Plaintiffs with a supplemental index of the component trees for three component roots that were included on Plaintiffs' "top ten" component list but had not been included in the original index.  *See id.* at 17–18.  A true and correct copy of the index sent by Ms. Sampoli to Plaintiffs' counsel via email at 5:30 p.m. on October 31, 2025 is attached as **Exhibit C**.

10. The email chain attached as Exhibit A also contains an email from Ms. Sampoli on November 11, 2025 in which Google agreed to provide descriptions, where available, for the components reflected in the indices attached as Exhibits B and C.  *See* Ex. A at 15–16.

11. The email chain attached as Exhibit A also contains an email from Ms. Chen on November 12, 2025 rejecting Google's offer to provide component descriptions.  *See id.* at 14–15.  In that email, Ms. Chen suggests that the parties continue negotiating their "top ten" search terms, but search within Buganizer using the names of Google's custodians, rather than specific components.  I understood Ms. Chen's suggestion, made for the first time on November 12, to be different from the "custodian" approach discussed during the parties' October 28 conferral.

12. The parties conducted a second conferral, which I attended, regarding this dispute on November 18, 2025.

13. Approximately one hour following the conclusion of that conferral, Ms. Sampoli sent counsel for Plaintiffs an email with a proposed compromise regarding Plaintiffs' proposal. *See id.* at 6–7. Plaintiffs filed their Letter Motion, Dkt. 295, the next day.

14. During the October 8, 2025 hearing, counsel for Google inadvertently represented that it had already completed its production of 42 Buganizer tickets identified by Plaintiffs on October 2, 2025. While Google had agreed to produce those tickets, *see* Ex. A at 40, it had not yet produced them. Google completed its production of those tickets, as well as an additional smaller set of tickets in response to an October 13 request from Plaintiffs, *see id.* at 37–38, on November 11, 2025.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

Executed on November 25, 2025, in McLean, Virginia.         /s/ *Sarah A. Tomkowiak*
                                                                Sarah A. Tomkowiak