# EXHIBIT A
# [Redacted Version of Document Filed Under Seal]

| | |
|---|---|
| **From:** | Jeff Kane |
| **To:** | Bladow, Laura (DC); Borgert, Roberto (DC); Clarke, Caroline (NY); Damle, Sy (DC-NY); Stillman, Alli (NY); Tomkowiak, Sarah (DC); Victorson, Holly (DC); Sampoli, Sara (DC) |
| **Cc:** | Yunyi Chen; Uriel Lee; Michele Murphy; Danae Tinelli |
| **Subject:** | Re: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185) |
| **Date:** | Wednesday, November 19, 2025 3:50:00 PM |
| **Attachments:** | image001.png |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |
| | image006.png |

Counsel,

The motion mentions that the documents on which the existing list of components are based did not include a search for the term "zero strike", but the motion does not explain what that term means. As the Court determined not to redact that term at Dkt. 221, where it likewise appears without explanation, and Google did not object, the term need not be redacted here.

Jeff Kane

Oppenheim + Zebrak, LLP

(202) 499-2940

4530 Wisconsin Avenue NW, 5th Floor

Washington, DC 20016

jkane@oandzlaw.com

---

**From:** Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>
**Sent:** Wednesday, November 19, 2025 14:36
**To:** Jeff Kane <JKane@oandzlaw.com>; Laura Bladow <Laura.Bladow@lw.com>; Roberto Borgert <Roberto.Borgert@lw.com>; Caroline.Clarke@lw.com <Caroline.Clarke@lw.com>; Sy Damle <Sy.Damle@lw.com>; Alli Stillman <Alli.Stillman@lw.com>; Sarah Tomkowiak <Sarah.Tomkowiak@lw.com>; Holly Victorson <Holly.Victorson@lw.com>
**Cc:** Yunyi Chen <YChen@oandzlaw.com>; Uriel Lee <ULee@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>; Danae Tinelli <Danae@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

==*This message contains information that Google has designated as Highly Confidential, Attorneys'-Eyes-Only Material, subject to a Protective Order*==

Counsel,

You are correct that we have agreed to produce all Buganizer tickets for which Buganizer notification emails appear in Google's productions.  The two tickets that you asked about in your email from yesterday morning and that we determined were not relevant were referenced in the body of *non*-email notification documents (GOOG-CENG-00406969 and GOOG-CENG-00409472).  As you know,

for non-email notification documents, Google has agreed to produce *relevant* associated tickets that are identified by specific ticket IDs, consistent with Section 7(d) of the parties' stipulated ESI protocol. *See* Dkt. 175 at 14; Dkt. 80 § 7(d).

For sealing, if you do not plan to file the motion or exhibits under seal, please confirm that you are not including the names of any components or proposed search terms (e.g., ==zero-strike==, ==six-month==). If you are planning to include that information or information from any other document that Google has marked confidential or HC-AEO, please let us know immediately.

Regards,
Sara

**Sara Sampoli**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.350.5328

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Wednesday, November 19, 2025 1:38 PM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Borgert, Roberto (DC) <Roberto.Borgert@lw.com>; Clarke, Caroline (NY) <Caroline.Clarke@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>
**Cc:** Yunyi Chen <YChen@oandzlaw.com>; Uriel Lee <ULee@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>; Danae Tinelli <Danae@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

Counsel,

We will review the documents you've referenced below.

We note that during the meet-and-confer yesterday, you represented that Google will be producing all Buganizer tickets for which Buganizer notification emails appear in Google's production.

Regarding sealing, we have been able to modify the motion so that it is not necessary to attach this email chain. We currently do not anticipate filing the motion or exhibits under seal.

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016

202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

---

**From:** Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>
**Date:** Tuesday, November 18, 2025 at 23:41
**To:** Jeff Kane <JKane@oandzlaw.com>, Laura Bladow <Laura.Bladow@lw.com>, Roberto Borgert <Roberto.Borgert@lw.com>, Caroline.Clarke@lw.com <Caroline.Clarke@lw.com>, Sy Damle <Sy.Damle@lw.com>, Alli Stillman <Alli.Stillman@lw.com>, Sarah Tomkowiak <Sarah.Tomkowiak@lw.com>, Holly Victorson <Holly.Victorson@lw.com>
**Cc:** Yunyi Chen <YChen@oandzlaw.com>, Uriel Lee <ULee@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>, Danae Tinelli <Danae@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

Counsel,

While we disagree with your rigid position on the "custodian"-based approach that you have proposed and on which we have sought to find a reasonable path forward, we write only to clarify that Google *has* completed its production of specific Buganizer tickets.  In response to Plaintiffs' email from 10:23 ET this morning (which was inadvertently forked from this email thread, but which is reproduced in full at the bottom of this email), we provide the following information:

- 302687698, 170725197, and 241938421:  these tickets were withheld as privileged and will be included on Google's privilege log.
- 302462800:  this ticket was produced at GOOG-CENG-00441822.
- 205293421:  this ticket was produced at GOOG-CENG-00441796.
- 235480395:  this ticket was produced at GOOG-CENG-00441793.
- 302462800:  this ticket was produced at GOOG-CENG-00441822.
- 366245985:  this ticket was produced at GOOG-CENG-00441749.
- 162286316, 332262140:  we reviewed these tickets and determined that they were not relevant.  As a reminder, Google agreed to produce all tickets associated with produced Buganizer email notifications as well as any additional *relevant* tickets associated with reasonable requests for specific ticket IDs, consistent with Section 7(d) of the parties' stipulated ESI protocol.  *See* Dkt. 175 at 14; Dkt. 80 § 7(d).

As for "any Buganizer tickets associated with Case ID 4-0664000026863," there are no ticket numbers for Google to search for and review.  Plaintiffs' request, based on the word "BUG" in cels C290 and C293 of a spreadsheet from August 2019, per its title, is neither reasonable nor proportional and does not comport with Google's agreement to produce relevant tickets associated with "reasonable requests for *specific ticket IDs*."  Dkt. 175 at 14 (emphasis added).

We will respond to the remainder of your 8:26 pm ET email in the course of responding to your forthcoming motion.

Regards,
Sara

---

Counsel,

Plaintiffs are in receipt of Google's recent productions, which appear to contain Buganizer tickets. Plaintiffs have been unable to identify some Buganizer tickets that they had previously requested. Those are Buganizer tickets corresponding to issue numbers 302687698, 302462800, 205293421, 170725197, 235480395, 241938421,162286316, 332262140, 302462800, 366245985, and any Buganizer tickets associated with Case ID 4-0664000026863. Please promptly advise Bates numbers associated with the issue numbers and Case ID referenced above if they have been produced or promptly advise when Google plans to produce those tickets.

Best regards,
Yunyi

Yunyi Chen |  Associate

**Oppenheim + Zebrak, LLP**

461 Fifth Avenue, 19th Floor
New York, NY 10017
Direct: 212.951.1923
ychen@oandzlaw.com | www.oandzlaw.com
✉ Connect with us on LinkedIn

O+Z Oppenheim + Zebrak LLP | WASHINGTON, D.C. NEW YORK, N.Y.

---

This e-mail and any attachments may contain information that is private, confidential, or protected by attorney-client or other privilege. If you are not the intended recipient, please delete it from your system without copying, reviewing or distributing any portion and notify sender by reply e-mail.

**Sara Sampoli**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.350.5328

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Tuesday, November 18, 2025 8:26 PM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Borgert, Roberto (DC)
<Roberto.Borgert@lw.com>; Clarke, Caroline (NY) <Caroline.Clarke@lw.com>; Damle, Sy (DC-NY)
<Sy.Damle@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli (NY)
<Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC)
<Holly.Victorson@lw.com>
**Cc:** Yunyi Chen <YChen@oandzlaw.com>; Uriel Lee <ULee@oandzlaw.com>; Michele Murphy
<michele@oandzlaw.com>; Danae Tinelli <Danae@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

Counsel,

As we previewed during today's meet-and-confer, we suspect the parties could reach an
agreement on search terms and custodians (nos. 2 and 4 below), if those were the only areas of
disagreement.

However, Google's suggestion to exclude documents where a custodian is in the "cc" field, as
opposed to the "Reporter" and "Assignee" fields (no. 1 below) is unreasonable. As we
explained on the call, the "cc" field in Buganizer is not like the "cc" field in an email, where
the person who is cc'd is not the person sending the message. A custodian can appear in the
"cc" field of Buganizer, and also be the person sending messages in the ticket. *See, e.g.*,
GOOG-CENG-00441745 (████████████████ is listed as a "cc", but sends a message on p.
1747); GOOG-CENG-00441750 (████████████ and ████████ are listed as "cc", but send
several messages); GOOG-CENG-00409387 (email notification of Buganizer message from
█████████████████, who is neither the "Reporter" nor the "Assignee" and would
therefore appear to be one of the "5 more" unnamed individuals also cc'd). Thus, your
assumption that those listed in the "cc" field somehow are less important to the ticket is not
consistent with how  Buganizer works, as reflected in Google's own productions.

Likewise, in order for the approach that Google loosely outlined below to work, Google would
have to agree that the custodian-based search would include all of the components to which
each custodian had access (or some close proxy for those components) (no. 3 below).

During the meet-and-confer, we understood you to take the position that Google would not
include the "cc" field in any search, and that Google could not say whether it will search all of
the components to which each custodian had access (and could not say when it will have a
position on this). If Google changes its position on the former, and can share more information
on the latter, Plaintiffs are happy to continue negotiating in the hope of avoiding the need for a
decision from the Court on this issue. Mindful, however, of the Court's instruction to "bring
disputes up earlier rather than later so they can be resolved earlier rather than later," Dkt. 218
at 71:11–12, Plaintiffs intend to file their motion tomorrow. Plaintiffs are not willing to
postpone the filing of their motion on the hope that Google will provide a substantive response
on these issues in short order. Recall that Plaintiffs requested on October 3 that Google
produce certain specific Buganizer tickets. Google did not begin its production until
November 11, and still has not completed it (this despite Google representing to the Court on
October 8 that Google had finished producing these tickets). And Plaintiffs previously
postponed filing a motion on Google's summary spreadsheets based on Google's

representation that it would be getting back to Plaintiffs about a sampling protocol during the week of October 6, only to have Google wait until October 17 to make no proposal at all. Dkt. 238 ¶ 15(f).

If, however, the parties are able to reach a resolution before the Court decides Plaintiffs' motion, the parties can so inform the Court.

While much of what you've written below is incorrect, we need not detail those inaccuracies here.


Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com


---

**From:** Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>
**Date:** Tuesday, November 18, 2025 at 14:31
**To:** Michele Murphy <michele@oandzlaw.com>, Jeff Kane <JKane@oandzlaw.com>, Laura Bladow <Laura.Bladow@lw.com>, Caroline.Clarke@lw.com <Caroline.Clarke@lw.com>, Sy Damle <Sy.Damle@lw.com>, Alli Stillman <Alli.Stillman@lw.com>, Sarah Tomkowiak <Sarah.Tomkowiak@lw.com>, Holly Victorson <Holly.Victorson@lw.com>, Roberto Borgert <Roberto.Borgert@lw.com>
**Cc:** Yunyi Chen <YChen@oandzlaw.com>, Uriel Lee <ULee@oandzlaw.com>, Danae Tinelli <Danae@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

Counsel,

Thank you for conferring today regarding Plaintiffs' new proposal to run searches within Buganizer use the names of existing custodians in the "reporter"/"assignee"/"cc" fields in lieu of components plus a negotiated set of search terms.  As we explained on our call, this approach does address one of the issues with Plaintiffs' previous "custodian"-based approach, namely, that it is not technologically feasible to export full "custodial" files from Buganizer and import those into Relativity for searching.  (Indeed, as we discussed, Buganizer is not a custodial data source at all.) However, there are still potential issues with Plaintiffs' new proposal, most notably that searching by "reporter"/"assignee"/"cc" names does not solve the problem of access controls on components. That is, running a search on Buganizer will only return tickets for components that the person running the search has access to.   One benefit of a component-based approach is that because we would be working with a known list of components, the process of identifying and manually

requesting access to controlled components, while burdensome, is doable. Switching to a "reporter"/"assignee"/"cc" makes it vastly more difficult to identify access-controlled components and increases the burden of manually requesting access to each controlled component to which each "custodian" has access.

Despite that remaining difficulty, Google explained that it was willing to explore an approach based on the names of "custodians" rather than components but asked Plaintiffs to consider the following modified parameters:

1. Limiting searches to the names of "custodians" in the "assignee" and "reporter" fields and excluding the "cc" field;
2. Limiting to a reasonable subset of custodians rather than all 18 of Google's custodians/email aliases;
3. Understanding that the resulting "hits" would not include tickets from each and every access-controlled component to which the agreed-upon "reporter" and "assignees" had access (though Google would agree to request access to clearly relevant and known access-controlled components);
4. Understanding that the parties would need to negotiate narrower search terms to accommodate the switch from components to "assignee" and "reporter" fields.

We understand from our call that Plaintiffs are unwilling to discuss points #1-3 further and intend to file another letter motion on this data source. As requested, we will provide proposed redactions to this email thread, which you have indicated you plan to attach to your filing, by tomorrow at the latest.

Regards,
Sara

**Sara Sampoli**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.350.5328

---

**From:** Michele Murphy <michele@oandzlaw.com>
**Sent:** Tuesday, November 18, 2025 11:55 AM
**To:** Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Jeff Kane <JKane@oandzlaw.com>; Bladow, Laura (DC) <Laura.Bladow@lw.com>; Clarke, Caroline (NY) <Caroline.Clarke@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Borgert, Roberto (DC) <Roberto.Borgert@lw.com>
**Cc:** Yunyi Chen <YChen@oandzlaw.com>; Uriel Lee <ULee@oandzlaw.com>; Danae Tinelli

<Danae@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

Thanks very much.

Michele H. Murphy
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, D.C. 20016
202.450.5643
michele@oandzlaw.com   |   www.oandzlaw.com



This e-mail and any attachments may contain information that is private, confidential, or protected by attorney-client or other privilege. If you are not the intended recipient, please delete it from your system without copying, reviewing or distributing any portion and notify sender by reply e-mail.

**From:** "Sara.Sampoli@lw.com" <Sara.Sampoli@lw.com>
**Date:** Tuesday, November 18, 2025 at 11:48 AM
**To:** Michele Murphy <michele@oandzlaw.com>, Jeff Kane <JKane@oandzlaw.com>, Laura Bladow <Laura.Bladow@lw.com>, "Caroline.Clarke@lw.com" <Caroline.Clarke@lw.com>, Sy Damle <Sy.Damle@lw.com>, Alli Stillman <Alli.Stillman@lw.com>, Sarah Tomkowiak <Sarah.Tomkowiak@lw.com>, Holly Victorson <Holly.Victorson@lw.com>, Roberto Borgert <Roberto.Borgert@lw.com>
**Cc:** Yunyi Chen <YChen@oandzlaw.com>, Uriel Lee <ULee@oandzlaw.com>, Danae Tinelli <Danae@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

Counsel,

That works for us.

Thanks,
Sara

**Sara Sampoli**

**LATHAM & WATKINS** LLP
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.350.5328

**From:** Michele Murphy <michele@oandzlaw.com>
**Sent:** Tuesday, November 18, 2025 11:41 AM
**To:** Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Jeff Kane <JKane@oandzlaw.com>; Bladow, Laura (DC) <Laura.Bladow@lw.com>; Clarke, Caroline (NY) <Caroline.Clarke@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>
**Cc:** Yunyi Chen <YChen@oandzlaw.com>; Uriel Lee <ULee@oandzlaw.com>; Danae Tinelli <Danae@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

Counsel,

It would be helpful on our end if we postponed the custodians meet-and-confer until 3:00 pm. Can your team do that one at 3:00 pm and the Buganizer one at 1:00 pm.

Best regards, Michele

Michele H. Murphy
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, D.C. 20016
202.450.5643
michele@oandzlaw.com  |  www.oandzlaw.com



This e-mail and any attachments may contain information that is private, confidential, or protected by attorney-client or other privilege. If you are not the intended recipient, please delete it from your system without copying, reviewing or distributing any portion and notify sender by reply e-mail.

**From:** "Sara.Sampoli@lw.com" <Sara.Sampoli@lw.com>
**Date:** Tuesday, November 18, 2025 at 11:34 AM
**To:** Jeff Kane <JKane@oandzlaw.com>, Laura Bladow <Laura.Bladow@lw.com>, "Caroline.Clarke@lw.com" <Caroline.Clarke@lw.com>, Sy Damle <Sy.Damle@lw.com>, Alli Stillman <Alli.Stillman@lw.com>, Sarah Tomkowiak <Sarah.Tomkowiak@lw.com>, Holly Victorson <Holly.Victorson@lw.com>
**Cc:** Yunyi Chen <YChen@oandzlaw.com>, Uriel Lee <ULee@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>, Danae Tinelli <Danae@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

Counsel,

Given that we now have another meet and confer scheduled for 1pm on a different topic, we can no longer meet on this topic at 1pm.  Is there a time later this afternoon that works for your team? We are available between 3 and 5:30pm.

Thanks,
Sara

**Sara Sampoli**

**LATHAM & WATKINS** LLP
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.350.5258

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Monday, November 17, 2025 11:39 PM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Clarke, Caroline (NY) <Caroline.Clarke@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>
**Cc:** Yunyi Chen <YChen@oandzlaw.com>; Uriel Lee <ULee@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>; Danae Tinelli <Danae@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

Counsel,

The parties have indeed met and conferred on this issue. As you acknowledge, during the October 28 meet-and-confer, the parties discussed Plaintiffs' suggestion for a custodian-based approach, and Google claimed such a search would be burdensome. Plaintiffs made adjustments based on Google's claim of burden, and Google still has not agreed to the search Plaintiffs have suggested. We take Google's insistence on yet another meet-and-confer as a representation that Google intends to make a counter-proposal, not merely to repeat its prior rejection of Plaintiffs' proposal. We have sent an invitation for the window you provided tomorrow.

If the parties do not reach a resolution during the meet-and-confer, Plaintiffs' likely will attach to their motion the instant email chain. We will plan to file that exhibit under seal. We expect you will be prepared to discuss the sealing of this exhibit during the meet-and-confer tomorrow.

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016

202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

---

**From:** Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>
**Date:** Monday, November 17, 2025 at 09:37
**To:** Jeff Kane <JKane@oandzlaw.com>, Holly.Victorson@lw.com <Holly.Victorson@lw.com>,
Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>,
Alli.Stillman@lw.com <Alli.Stillman@lw.com>,
Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>
**Cc:** Yunyi Chen <YChen@oandzlaw.com>,
Caroline.Clarke@lw.com <Caroline.Clarke@lw.com>, Uriel Lee <ULee@oandzlaw.com>,
Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

Counsel,

We have <u>not</u> had a meet and confer on Plaintiffs' newest proposal and are requesting one now.  At our October 28 meet and confer, the parties discussed Plaintiffs' then-current position that Google should collect all documents associated with the present list of custodians from Buganizer, import those to Relativity, and run search terms over the tickets within that document review platform.  We explained why that proposal was both technically infeasible and disproportional.  Your current proposal, at least as we understand it, is materially different in that it does not seek to require Google to collect and process every Buganizer ticket associated with the current list of custodians and *then* run search terms over them in a separate review platform.

Your suggestion that Google is requesting a meet and confer in an "attempt at delay" is not well taken.  Google is requesting a conferral on your latest proposal—which the parties have <u>not yet conferred about</u>—in the interest of resolving the parties' disagreement without involving the Court.  We are currently working with our client to investigate the feasibility of a within-Buganizer custodian-based search.  We may not have a firm proposal for you by 6pm ET today, but expect to provide you with an update by midday tomorrow at the latest.

Regards,
Sara

**Sara Sampoli**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.350.5328

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Sunday, November 16, 2025 5:55 PM
**To:** Victorson, Holly (DC) <Holly.Victorson@lw.com>; Bladow, Laura (DC) <Laura.Bladow@lw.com>;
Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli
(NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>
**Cc:** Yunyi Chen <YChen@oandzlaw.com>; Clarke, Caroline (NY) <Caroline.Clarke@lw.com>; Uriel Lee
<ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy
<michele@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

Counsel,

Your claim that the parties have not met and conferred on this issue is incorrect. During the
October 28 meet-and-confer, the parties *did* discuss Plaintiffs' suggestion for a custodian-
based, rather than component-based search. Specifically, Plaintiffs explained their skepticism
that the only relevant components just happened to be the components Plaintiffs already had
seen in Google's productions. You claimed that this was to be expected, because the then-
existing custodians were the persons most likely to have responsive Buganizer tickets. We
explained that if that is so, then Google simply should accept Plaintiffs' suggestion to search
the Buganizer system by custodian rather than component. Google refused. Several times
during the meet-and-confer, Plaintiffs explained that the inadequacy of the component list
could be cured by searching custodians instead. Each time, you stated that Google refused to
conduct such a search.

Plaintiffs first suggested that Google filter its Buganizer searches by custodian, rather than
component, on October 13. The parties exchanged emails on this topic on October 14, 17, 22,
24, 28, and 30. In the month-plus that the parties have been discussing this proposal, Google
has consistently refused to adopt it. Plaintiffs are not willing to protract this process any
further unless there is reason to believe that more discussion will lead to a resolution. If
Google makes a written proposal by 6pm on Monday November 17 that shows meaningful
progress toward a custodian-based search, Plaintiffs will conduct an additional meet-and-
confer. If Google has no such proposal to make, then it is clear that your request for another
meet-and-confer simply is Google's latest attempt at delay.

As to your question about component descriptions: if Google believes that a component-based
search is appropriate, Google should be able to explain what these components are and for
what they are used. As you were unable to provide any such descriptions during the parties'
meet-and-confer (or since then), retrieving the descriptions of these components would seem
to be a step Google should have taken long ago. If instead Google now is open to a custodian-
based approach, then we agree that Google need not retrieve the component descriptions.

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940

jkane@oandzlaw.com | www.oandzlaw.com

---

**From:** Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>
**Date:** Friday, November 14, 2025 at 16:28
**To:** Yunyi Chen <YChen@oandzlaw.com>,
Holly.Victorson@lw.com <Holly.Victorson@lw.com>,
Laura.Bladow@lw.com <Laura.Bladow@lw.com>,
Caroline.Clarke@lw.com <Caroline.Clarke@lw.com>,
Sy.Damle@lw.com <Sy.Damle@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>,
Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele
Murphy <michele@oandzlaw.com>, Jeff Kane <JKane@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

==*This message contains information that Google has designated as Highly Confidential, Attorneys'-
Eyes-Only Material, subject to a Protective Order*==

Counsel,

We strongly disagree that Google has not addressed Plaintiffs' "concerns" with the component
approach that the Court ordered the parties to negotiate. After Google informed Plaintiffs that it did
not have an index naming all components in the entire Buganizer system, Plaintiffs asked Google to
"disclose all components that organizationally fall under" four specific components (Y. Chen Oct. 17,
2025 Email). With the exception of "███████████████" which is a top-level component, Google
did disclose all components that organizationally fall under those components as well as two
additional components. To date, Google has disclosed all components falling organizationally under
the following nine components:

- ███████████████████████████████████████████
- ███████████████████████████████████████████
- ███████████████████████████████████████████
- ███████████████████████████████████████████
- ███████████████████████████████████████████
- ███████████████████████████████████████████
- ███████████████████████████████████████████
- ███████████████████████████████████████████
- ███████████████████████████████████████████

That bespoke list identifies over 3,000 components and subcomponents. Despite the fact that this
list was requested *by Plaintiffs*, Plaintiffs quickly deemed it insufficient (Y. Chen Oct. 22, 2025 Email).
Plaintiffs next asked Google to produce the "hovercards" or "descriptions" of potentially relevant

components (Y. Chen Oct. 30, 2025 Email).  Google agreed to do so and was in the process of reviewing for privilege all descriptions associated with the nine components identified above and their subcomponents.  But once again, Plaintiffs now appear to be rejecting Google's offer to do precisely what Plaintiffs demanded that Google do.  **If we do not hear from you otherwise, we will assume that Plaintiffs do <u>not</u> want us to move forward with providing component descriptions**.

As for Plaintiffs' newest proposal that Google search within Buganizer using (1) custodian names rather than components and (2) search terms that the parties negotiate, we have not yet met and conferred on this approach.  We propose conferring at 1pm ET on Tuesday so that we can discuss the parameters of this proposal in the hopes of reaching a resolution.  If that time does not work for you, please propose alternative times for next week.


Regards,
Sara


**Sara Sampoli**

**LATHAM & WATKINS** LLP
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.350.5328

---

**From:** Yunyi Chen <YChen@oandzlaw.com>
**Sent:** Wednesday, November 12, 2025 3:01 PM
**To:** Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Bladow, Laura (DC) <Laura.Bladow@lw.com>; Clarke, Caroline (NY) <Caroline.Clarke@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>; Jeff Kane <JKane@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

<mark>*This message contains information that Google has designated as Highly Confidential, Attorneys'-Eyes-Only Material, subject to a Protective Order*</mark>

Counsel,

It has now been more than two weeks since the parties' October 28 meet-and-confer, and more than a month since the Court's October 8 Order. Plaintiffs repeatedly have explained why they do not believe Google has shared information sufficient for the parties to determine an appropriate list of components to search. Google has not addressed these concerns, and indeed has refused to take the basic steps Plaintiffs have suggested that might have led to a usable list of components.

Google's most recent offer to share "descriptions, where available, for the components we've shared indices for" (LW 11/11/2025 Email) is insufficient. It is unclear whether "components

we've shared indices for" in your email refers to the 9 parent components for which you provided a list of subcomponents, 7 of which had already been identified by Plaintiffs, or to those parent components and subcomponents collectively. Either way, these descriptions will not allow Plaintiffs to evaluate the propriety of including or excluding specific parent components, because they have no visibility into any parent component that Google has unilaterally decided not to disclose. Because Google has refused to remedy this fundamental information gap, including by refusing to take the basic steps Plaintiffs suggested, the "descriptions" alone will not lead to an appropriate list of components.

Plaintiffs believe that the most viable path forward is for Google to search the Buganizer using the search terms the parties have been negotiating, but to limit those searches by custodian, rather than by component. As Google repeatedly has rejected this suggestion, Plaintiffs intend to file a motion to compel Google to search for documents where the "Reporter", "Assignee", or "CC" is an existing custodian.

Best regards,
Yunyi

Yunyi Chen | Associate
**Oppenheim + Zebrak, LLP**
461 Fifth Avenue, 19th Floor
New York, NY 10017
Direct: 212.951.1923
ychen@oandzlaw.com | www.oandzlaw.com
 Connect with us on LinkedIn
O+Z  Oppenheim    WASHINGTON, D.C.
 + Zebrak LLP   NEW YORK, N.Y.

---

This e-mail and any attachments may contain information that is private, confidential, or protected by attorney-client or other privilege. If you are not the intended recipient, please delete it from your system without copying, reviewing or distributing any portion and notify sender by reply e-mail.

---

**From:** Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>
**Date:** Tuesday, November 11, 2025 at 12:26 PM
**To:** Yunyi Chen <YChen@oandzlaw.com>,
Holly.Victorson@lw.com <Holly.Victorson@lw.com>,
Laura.Bladow@lw.com <Laura.Bladow@lw.com>,
Caroline.Clarke@lw.com <Caroline.Clarke@lw.com>,
Sy.Damle@lw.com <Sy.Damle@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>,
Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>, Jeff Kane <JKane@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

Counsel,

We appreciate Plaintiffs' willingness to confer with the goal of resolving this dispute. To follow up on something Plaintiffs requested at the last conferral, we have confirmed that we can provide descriptions, where available, for the components we've shared indices for. Because some descriptions may contain privileged information, however, we need to review and potentially perform redactions before we can share them. We have started this review but have not completed it. We expect to be able to share descriptions with your team in the next week. We recommend that the parties schedule a conferral at that time.

Regards,
Sara

**Sara Sampoli**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.350.5328

---

**From:** Yunyi Chen <YChen@oandzlaw.com>
**Sent:** Monday, November 10, 2025 12:59 PM
**To:** Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Bladow, Laura (DC) <Laura.Bladow@lw.com>; Clarke, Caroline (NY) <Caroline.Clarke@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>; Jeff Kane <JKane@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

Counsel,

Please respond.

Best,
Yunyi

---

**From:** Yunyi Chen <YChen@oandzlaw.com>
**Date:** Wednesday, November 5, 2025 at 4:07 PM
**To:** Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>,
Holly.Victorson@lw.com <Holly.Victorson@lw.com>,
Laura.Bladow@lw.com <Laura.Bladow@lw.com>,

Caroline.Clarke@lw.com <Caroline.Clarke@lw.com>,
Sy.Damle@lw.com <Sy.Damle@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>,
Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele
Murphy <michele@oandzlaw.com>, Jeff Kane <JKane@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

==*This message contains information that Google has designated as Highly Confidential,==
==Attorneys'-Eyes-Only Material, subject to a Protective Order*==

Counsel,

Given that the Court's Order (Dkt. 217) directing the parties to collaborate on the Buganizer
issue was four weeks ago, Plaintiffs believe it would be productive for the parties to meet and
confer early next week to attempt to resolve this issue. Based on your representation (LW
10.31.2025 Email), Plaintiffs trust that Google will have produced all Plaintiff-requested
Buganizer tickets by then. Plaintiffs are available on Tuesday (11/11) between 11 AM to 4 PM.
Please send an invitation if Google is available during that window or otherwise advise your
availability.

Regards,
Yunyi

Yunyi Chen | Associate
**Oppenheim + Zebrak, LLP**
461 Fifth Avenue, 19th Floor
New York, NY 10017
Direct: 212.951.1923
ychen@oandzlaw.com | www.oandzlaw.com
 Connect with us on LinkedIn
**O+Z** Oppenheim  | WASHINGTON, D.C.
     + Zebrak LLP | NEW YORK, N.Y.

---

This e-mail and any attachments may contain information that is private, confidential, or
protected by attorney-client or other privilege. If you are not the intended recipient, please
delete it from your system without copying, reviewing or distributing any portion and notify
sender by reply e-mail.

---

**From:** Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>
**Date:** Friday, October 31, 2025 at 5:30 PM
**To:** Yunyi Chen <YChen@oandzlaw.com>,
Holly.Victorson@lw.com <Holly.Victorson@lw.com>,
Laura.Bladow@lw.com <Laura.Bladow@lw.com>,

Caroline.Clarke@lw.com <Caroline.Clarke@lw.com>,
Sy.Damle@lw.com <Sy.Damle@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>,
Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele
Murphy <michele@oandzlaw.com>, Jeff Kane <JKane@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

<mark>*This message contains information that Google has designated as Highly Confidential, Attorneys'-
Eyes-Only Material, subject to a Protective Order*</mark>

Counsel,

As promised, we are attaching a spreadsheet with supplemental indices for three additional
components: (1) ███████████████████████████; (2) ███████████ and (3)
█████████████████████████████████.

We have also looked into the issue regarding the component named "████████████
████████████████████████████████████████████████" While
GOOG-CENG-00413875 does refer to this component name, we have confirmed that the ticket itself
(219576824) refers to "████████████████████
████████████" a component name that does appear on the component index
Google provided last week.  Google will be producing this ticket, along with the others we have
agreed to produce, next week.

We will respond to the contents of your below email in due course.  Google reserves all rights.

Regards,
Sara

**Sara Sampoli**

**LATHAM & WATKINS** LLP
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.350.5328

---

**From:** Yunyi Chen <YChen@oandzlaw.com>
**Sent:** Thursday, October 30, 2025 3:47 PM
**To:** Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>;
Bladow, Laura (DC) <Laura.Bladow@lw.com>; Clarke, Caroline (NY) <Caroline.Clarke@lw.com>;
Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak,
Sarah (DC) <Sarah.Tomkowiak@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy
<michele@oandzlaw.com>; Jeff Kane <JKane@oandzlaw.com>

**Subject:** Re: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

<mark>*This message contains information that Google has designated as Highly Confidential, Attorneys'-Eyes-Only Material, subject to a Protective Order*</mark>

Counsel,

On October 8, more than three weeks ago, the Court ordered Google to either "immediately" "make available to counsel for both sides" a "key, index, table of contents, tree showing all the branches and all the twigs," or "if it doesn't exist, tell Plaintiffs . . . what, if anything, is out there that a person can use" to "navigat[e]" the components. (Hr'g Tr. 135:3–16 (Oct. 8, 2025); Dkt. 217.) In other words, the Court ordered Google to "make available" the information necessary for understanding the full universe of potentially responsive components for both parties, so that Plaintiffs, too, can meaningfully assess the most appropriate components. Google has not done so, or even told Plaintiffs what, if anything, it has done or plans to do, in order to provide this information to Plaintiffs.

During the parties' October 28 meet-and-confer, Google told Plaintiffs for the first time that Google's counsel has been learning about potentially relevant components by speaking to their contacts at Google, who provided certain lists of components they use for "activities relevant to this case" to counsel. Google represented that this was the only method of investigation it was undertaking besides reviewing custodial documents and finding "subcomponents" under the "parent components" that Plaintiffs already identified. Google has not shared the departments/teams/functions of these "contacts" or what "activities" it considered "relevant" for purposes of creating the lists they provided, and it has not made available the lists of components that counsel received from the "contacts." Google also stated that it was "not obligated" to tell Plaintiffs the "precise parameters" of its investigation. As you noted during the meet-and-confer, the relevance of many components will not be apparent on their face, and you learned of the relevance of one such component, "████████████████████████████ ███████████████████████████", through your Google "contacts." The relevance of that component, and that of other components that Plaintiffs do not even know exist, is information solely in Google's possession.

Google has also repeatedly rejected Plaintiffs' suggested methods of investigation:

Google has refused to search for documents where the "Reporter", "Assignee", or "CC" is an existing custodian as a method not only for identifying components, but for identifying responsive documents themselves (O+Z 10/13 Email).

During the meet-and-confer, you stated that the Buganizer's lack of a "native export function," along with its feature of ████████████████████████████, made searching for documents where the "Reporter", "Assignee", or "CC" is an existing custodian technologically infeasible, but stated that ████████████████████████████ ████████████████████████████████████████████████████

You indicated that you had not asked Google employees how they would locate a relevant component for a specific issue, or asked whether descriptions of each component existed.

You have been unable to explain what any of the components in question are used for.

You did not mention that components can have "hovercards" that contain what Google describes as a "description" of each component or offer to produce them, Link. Google should promptly share what the referenced "descriptions" in "hovercards" entail. Examples are welcome. If the "hovercards" or any other descriptive information can aid the parties in understanding the full universe of potentially responsive components and/or the relevance of specific components, Google should promptly produce them.

Similarly, Google has refused to run a search for components (as opposed to searching the tickets within those components). O+Z 10/07 Email. You claimed ignorance as to whether such a search is possible in Buganizer. It is. Link. Indeed, the search will apparently include "descriptions" of the component. *Id.*

And you have not even produced all of the specific Buganizer tickets that Plaintiffs identified to Google, so that the parties can see what components are contained in those tickets. This is particularly problematic given that Google represented to the Court on October 8 that it had already produced the tickets Plaintiffs had identified as of that date, Hr'g Tr. 116:23–117:25 (Oct. 8, 2025), when Google had not done so then, O+Z 10/23 Email, and still has not.

Under these circumstances, Plaintiffs have been frank about their lack of confidence in the available information leading to an appropriate list of components. You stated that in disclosing "subcomponents" to the "parent components" that Plaintiffs already identified, you were providing a "bespoke" index to Plaintiffs. Of the six "parent components" whose "subcomponents" were included in Google's October 22 spreadsheet, only two were not already identified by Plaintiffs, and during the meet-and-confer, Google was unable to tell Plaintiffs what those two "parent components" were used for. Google stated it would share additional "subcomponents" falling under three additional "parent components" Plaintiffs had identified. Plaintiffs welcome any additional information that might help the parties identify appropriate components, but want to be clear that lists of "subcomponents" falling under known "parent components" likely will be insufficient for at least two reasons. First, the relevance of subcomponents, based on Google's own representation, will not be necessarily apparent on their face. A list of component paths is therefore insufficient for evaluating why some of these components are likely to contain relevant information while others are not. Second, such a list will tell Plaintiffs nothing about the overall universe of components that are used by Google teams handling relevant issues in this case (such as issues related copyright, trademark, counterfeit, DMCA, piracy, and eBooks). Google has not closed (or even attempted to close) the information gap that the Court's Order has sought to correct such that Plaintiffs can meaningfully evaluate specific components. Based on the information currently available to Plaintiffs, searching for Buganizer tickets where the "Reporter", "Assignee", or "CC" is an existing custodian remains a more effective method, not only for identifying components, but for identifying responsive documents themselves.

While Google attempts to gather the necessary information to determine an appropriate list of components, it would be productive to continue discussing appropriate search terms. Plaintiffs' positions on search terms, following the meet-and-confer, are as follows:

The ("test bank" OR "testbank") portion in Defendant's 10/22 proposed search term No. 1 ("Def's 1" and same abbreviating convention for other 10/22 proposed terms) can be incorporated into Plaintiffs' 10/22 proposed search term No. 1 ("Pls' 1" and same abbreviating convention for other 10/22 proposed terms). (See row 1 below.)

Pls' 2 and Pls' 10 can be combined. Those terms are appropriate without "AND" connectors because these terms are specific to relevant issues in this litigation and unlikely to pick up any meaningful volume of non-relevant documents. The ███████████████████████ portion in Def's 2 can be incorporated, but the latter portion requires a narrowing "AND" connector. (See row 2 below.)

Regarding Pls' 3, Plaintiffs are willing to consider adding an "AND" connector, but "AND shopping" is likely to be underinclusive, as not all documents discussing Shopping issues will specifically mention "Shopping." Plaintiffs would add other terms they have observed arising more frequently/uniquely within the Shopping context after the "AND" connector. (See row 3 below.)

Regarding Pls' 7, Plaintiffs are willing to consider adding an "AND" connector, but Plaintiffs would add other terms they have observed arising more frequently/uniquely within the Shopping context after the "AND" connector. We would also limit the phrase before "AND" to counterfeit and trademark terms with additional permutations. (See row 4 below.)

Def's 4 includes a wildcard term, which is not supported by the Buganizer user interface according to Google's representation (Dkt. 177 ¶ 13). If Google's understanding with respect to wildcard searches has changed, it should inform Plaintiffs immediately. Plaintiffs would also add other terms they have observed arising more frequently/uniquely within the Shopping context after the "AND" connector. (See row 5 below.)

Pls' 4 is appropriate as written. As Plaintiffs explained during the meet-and-confer, (suspicious OR shady OR HS OR "bad actor" OR "bad actors" OR "bad URL" or "bad URLs" OR sweep) are terms they observed frequently used among Google personnel discussing merchants who are the subject of piracy or counterfeiting complaints. (See row 6 below.)

Pls' 5 is appropriate as written without an "AND" connector. "High confidence" is not a phrase used frequently enough to generate a meaningful number of false positives. Plaintiffs understand that the remaining terms are used more-or-less uniquely in the Shopping DMCA/copyright policies context. (See row 7 below.)

Pls' 6 is appropriate as written because Plaintiffs understand the term "cluster" to be frequently used among Google personnel discussing "clusters" of merchants who are the subject of piracy or counterfeiting complaints. The term "cluster enforcement" in Def's 10 is rarely used. (See row 8 below.)

Portions of Def's 8 can be incorporated into Pls' 8 with additional permutations of the term "OKR". Plaintiffs would also add other terms they have observed arising more frequently/uniquely within the Shopping context after the AND connector. (See row 9 below.)

Pls' 9 and Def's 3 can be combined incorporating Shopping-specific terms Plaintiffs shared above, adding permutations of "reactivation." (See row 10 below.)

| Row No. | Plaintiffs' 10/30 Updated Proposed Terms |
|---|---|
| 1 | (Ebook OR E-book OR Ebooks OR E-books OR "digital book" OR "digital books" OR epub OR epubs OR "test bank" OR "testbank") |
| 2 | ("O+Z" OR "Michele Murphy" OR Zebrak OR "Katheryn Enters" OR "Matt |

| | |
|---|---|
| | Oppenheim" or "Matthew Oppenheim" OR "Association of American Publishers" OR AAP OR "@publishers.org" OR Cengage OR Macmillan OR McMillan OR Elsevier OR McGraw) OR ("Joint-legal-process@google.com" AND ( "O+Z" OR "Michele Murphy" OR Zebrak OR "Katheryn Enters" OR "Matt Oppenheim" or "Matthew Oppenheim" OR "Association of American Publishers" OR AAP OR "@publishers.org" OR Cengage OR Macmillan OR McMillan OR Elsevier OR McGraw)) |
| 3 | (DMCA OR "Digital Millenium Copyright Act" OR "repeat infringer" OR "repeat infringers") AND (Shopping OR Merchant OR Offer OR Offers OR PLA OR "product listing ad" OR "product listing ads" OR "Paid Ad" OR "Paid Ads" OR "Free Listing" OR "Free Listings") |
| 4 | (Trademark OR Counterfeit OR TM or CF) AND (Shopping OR Merchant OR Offer OR Offers OR PLA OR "product listing ad" OR "product listing ads" OR "Paid Ad" OR "Paid Ads" OR "Free Listing" OR "Free Listings") |
| 5 | ██████████████████ AND (DMCA OR "Digital Millenium Copyright Act" OR (notice* AND copyright)) AND (Shopping OR Merchant OR Offer OR Offers OR PLA OR "product listing ad" OR "product listing ads" OR "Paid Ad" OR "Paid Ads" OR "Free Listing" OR "Free Listings") |
| 6 | (copyright) AND (suspicious OR shady OR HS OR "bad actor" OR "bad actors" OR "bad URL" or "bad URLs" OR sweep) |
| 7 | ("zero strike" OR "zero-strike" OR "zerostrike" OR "██████████ OR "high confidence") |
| 8 | copyright AND cluster |
| 9 | ("duplicate URL" OR "duplicate URLs" OR "duplicate notice" OR "duplicate notices" OR "duplicate complaint" OR "duplicate complaints" OR OKR OR "Objectives & Key Results" OR "Objectives and Key Results") AND (Shopping OR Merchant OR Offer OR Offers OR PLA OR "product listing ad" OR "product listing ads" OR "Paid Ad" OR "Paid Ads" OR "Free Listing" OR "Free Listings") |
| 10 | ("██████████████████████████████████████████) AND ("DMCA" OR "████" OR Shopping OR "pirate" OR Merchant OR Offer OR Offers OR PLA OR "product listing ad" OR "product listing ads" OR "Paid Ad" OR "Paid Ads" OR "Free Listing" OR "Free Listings") |

Regards,

Yunyi

Yunyi Chen | Associate
**Oppenheim + Zebrak, LLP**
461 Fifth Avenue, 19th Floor
New York, NY 10017
Direct: 212.951.1923
ychen@oandzlaw.com | www.oandzlaw.com
Connect with us on LinkedIn

**O+Z Oppenheim + Zebrak LLP** | WASHINGTON, D.C.
NEW YORK, N.Y.

---

This e-mail and any attachments may contain information that is private, confidential, or protected by attorney-client or other privilege. If you are not the intended recipient, please delete it from your system without copying, reviewing or distributing any portion and notify sender by reply e-mail.

---

**From:** Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>
**Date:** Friday, October 24, 2025 at 4:02 PM
**To:** Yunyi Chen <YChen@oandzlaw.com>,
Holly.Victorson@lw.com <Holly.Victorson@lw.com>,
Laura.Bladow@lw.com <Laura.Bladow@lw.com>,
Caroline.Clarke@lw.com <Caroline.Clarke@lw.com>,
Sy.Damle@lw.com <Sy.Damle@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>,
Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>, Jeff Kane <JKane@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

==*This message contains information that Google has designated as Highly Confidential, Attorneys'-Eyes-Only Material, subject to a Protective Order*==

Counsel,

The Court ordered Google to investigate whether Google "possesses a list or index of the available 'components' for the Google Issue Tracker." Dkt. 217 at 2. We undertook that investigation and explained to you on October 14 that we were unaware of any existing, accurate, comprehensive list of every component and sub-component within Issue Tracker. H. Victorson Email (Oct. 14, 2025). We further explained, however, that we were continuing to investigate the possibility of creating an index programmatically. We flagged that the sheer scope of a full index of every Issue Tracker component and the fact that many components are access controlled would likely complicate that effort. *Id.*

You wrote back three days later stating that "**in the spirit of collaboration**," you were suggesting that Google provide an index of four high-level components (including one top-level component). Y. Chen Email (Oct. 17, 2025). You stated that "***if*** Google does not plan to [provide an index of those components]," it should "propose concrete 'alternatives.'" *Id.*

After receipt of your email, we began to investigate Plaintiffs' proposal of programmatically creating a bespoke index of a select number of potentially relevant high-level components. In tandem, we also worked to identify a list of additional components that could be relevant to the subject matter

of this dispute.  As you know, we identified ████████████████████████████████████████ █████████████████████████████and ███████████████████████as additional, potentially relevant components.

We received the bespoke index <u>that you requested</u> from Google on October 21 (two business days after you first proposed the approach) and provided it to you the same day (albeit just after midnight on October 22).  As we explained, we did not include the entire █████████████████████component because doing so would have been far too broad and would likely have ballooned the already 3,000+ row index.

Plaintiffs' latest position that Google has "failed meaningfully to search for relevant components" and is "unwilling[] to execute" the index approach beggars belief.  Indeed, the provision of an index of a select number of potentially relevant components was *Plaintiffs' own proposal*.  We were thus extremely surprised and disappointed to receive your email on October 22 faulting Google for taking Plaintiffs up on that exact proposal and proclaiming the entire approach "not feasible."  Contrary to Plaintiffs' suggestion, there is nothing surprising about the fact that the components Plaintiffs identified through review of custodial documents overlapped with the ones Google identified as potentially relevant through its own investigation.  And there is no reason to think that Plaintiffs' *new* proposal of collecting and importing every Google Issue Tracker ticket associated with one of Google's custodians and running the agreed-upon and court-ordered search terms over those documents would "uncover additional components likely containing relevant information."  The components Plaintiffs identified on October 17 were the result of those same search terms run over that same list of custodians.  Moreover, as we explained in a previous email, Plaintiffs' new proposal for "locating relevant documents" would be highly disproportional to the needs of this case and out of step with what the Court ordered at the hearing.  *See* S. Sampoli Email (Oct. 22, 2025 12:17 am).  It would require Google to (1) collect and import every Buganizer ticket where an existing custodian is included as a "Reporter," "Assignee," or "CC" into Relativity, and then to (2) run the agreed-upon and court-ordered search terms over those documents, (3) review those documents, and (4) produce "any responsive, non-privileged documents that result"---*i.e.*, essentially requiring Google to conduct a full custodial review from a non-custodial data source that the Court acknowledged is a "sprawling, multi-use system." (Hr'g Tr. at 108:24 (Oct. 8, 2025)).  There is no reasonable basis for abandoning the index approach in favor of this highly burdensome one.

We remind you that the Court expected this line of discovery to be targeted.  *See* Hr'g Tr. at 130:10-17 (The Court: "[P]laintiffs are entitled, in collaboration with defendant, to identify a *limited* set of [components] and ask Google to run a *limited* set of simplified search terms consistent with the capabilities of the system across those [components]. I want both the number of [components] and the number of search terms requested in each [domain] to be *reasonable*, to be *limited*.") (emphasis added); *id.* at 119:22-24 (Oct. 8, 2025) (contemplating "running some *targeted* searches across some *targeted* component domains") (emphasis added).  Indeed, the Court *rejected* Plaintiffs' more expansive suggestion that Google should first run search terms over the entire Google Issue Tracker system to identify "relevant" components.  *See, e.g., id.* at 131:6-23.  In accordance with the Court's directive, we remain hopeful that the parties can work collaboratively, using both sides' "top 10" proposals, to identify a targeted list of components and a targeted list of search terms to complete this discovery.

A few additional points in response to your email below:

- The component and parent component IDs correspond with the names of the component and parent component represented in column C.  For example, the "component ID" for ███████ ██████████████████████ is 65586.  The "parent component ID" of ████████████████████ ████████████████████ which is one level below in organizational structure, is 65586 (i.e., the ID corresponding with the "█████████████" component, which is the parent of the "████████" component).  As another example, the "component ID" for the "████████" component is 101796.  This is also the "parent component ID" for all sub-components falling one level below the "lrteam" component.

- ████████████████████████████████████████████████████████████████████ ██████████████████████ and its subcomponents are reflected at rows 2,534 – 2,563 of the October 21, 2025 spreadsheet.

- Plaintiffs' "reminder" that "Google did not disclose to Plaintiffs or the Court that 'Reporter,' 'Assignee,' and 'CC' can be searched by [a] user" is not well taken and is inaccurate.  The very hyperlink that you cited on October 13 (*see* J. Kane Email (Oct. 13, 2025)) for your understanding regarding the ability to search using these fields was included in the declaration of André Golueke.  *See* Dkt. 177 ¶ 13.  Plaintiffs could have, but did not, raise this new approach at the October 8 hearing.

We are available to meet and confer regarding the parties' component and search term proposals on Tuesday, October 28 between 3 and 5 pm ET.

Regards,
Sara

**Sara Sampoli**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.350.5328

---

**From:** Sampoli, Sara (DC)
**Sent:** Wednesday, October 22, 2025 10:02 PM
**To:** 'Yunyi Chen' <YChen@oandzlaw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Bladow, Laura (DC) <Laura.Bladow@lw.com>; Clarke, Caroline (NY) <Caroline.Clarke@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>; Jeff Kane <JKane@oandzlaw.com>

**Subject:** RE: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

==*This message contains Highly Confidential, Attorneys'-Eyes-Only Material that is subject to a Protective Order*==

Counsel,

Pursuant to the Court's order at Dkt. 217, we write to provide Google's proposed components and search terms to run within those components.  Please note that with respect to all components except for Proposed Component #3 (███████████████████████), we propose including the top-level component identified and all sub-components that fall organizationally underneath the identified component.  With respect to Proposed Component #3, we propose including the top-level component as well as 9 sub-components (some of which have their own sub-components that we would also include).  Including all 125 components that fall organizationally under the "██████" top-level component would be unduly burdensome and disproportional to the needs of the case, given that many of the component's numerous sub-components are not likely to contain relevant information.

**Components**



**Search Terms**

1. ebook OR e-book OR ebooks OR e-books OR "digital book" OR "digital books" OR "test bank" OR "testbank"

2. (Macmillan OR Elsevier OR "McGraw Hill" OR "O+Z" OR "Oppenheim + Zebrak" OR Joint-legal-process@google.com OR "Association of American Publishers" OR AAP OR "@publishers.org") AND ("allow list" OR "allowlist" OR "white list" OR "ban" OR "ebook" OR "e-book" OR "digital book")

3. ████████████████████████████ ████████████████ AND ("DMCA" OR "████" OR "shopping" OR "pirate")

4. (exception OR urgent) AND (strategic OR "multi-client account" OR "MCA" OR "MCAs") AND (DMCA OR "Digital Millenium Copyright Act" OR (notice* AND copyright)) AND shopping

5. (pirate OR pirates OR piracy) AND ("repeat infringer" OR "repeat infringers") AND shopping

6. "DMCA policy" OR "copyright policy") AND (suspend OR suspension) AND shopping

7. ████████████████████████ AND shopping

8. OKR AND (copyright OR DMCA OR ████ OR ████ OR takedown OR takedowns) AND shopping

9. ("Chinh Tran Van" OR "Quttainah" OR "Najji" OR "Nazaryan" OR "12291833" OR "3465734" OR "4100869" OR "6408119" OR "40947753" OR "4065204" OR 3936191 OR "5790284" OR "20-cv-00769" OR "20-cv-769" OR "20-cv-08438" OR "20-cv-8438" OR "20-cv-06368" OR "20-cv-6368" OR "21-cv-03486" OR "21-cv-3486" OR "19-cv-10524" OR "21-cv-06691" OR "21-cv-6691" OR "23-cv-02798" OR "23-cv-2798" OR "23-cv-07193" OR "23-cv-7193") AND (litigation OR action OR suit OR lawsuit OR "TRO" OR "temporary restraining order" OR pirate OR pirates OR piracy)

10. "cluster enforcement" AND shopping

To be clear, Google provides these proposed components and search terms to aid the parties in working towards a "mutually agreeable search protocol." Dkt. 217 at 2. Google reserves the right to change or modify the above components and search terms in the event the combination is too burdensome, and as the parties progress in their discussions.

Googler will respond to Plaintiffs' 8:36 PM ET email in short order.

Regards,
Sara

**Sara Sampoli**

**LATHAM & WATKINS** LLP
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.350.5328

---

**From:** Yunyi Chen <YChen@oandzlaw.com>
**Sent:** Wednesday, October 22, 2025 8:36 PM
**To:** Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Bladow, Laura (DC) <Laura.Bladow@lw.com>; Clarke, Caroline (NY) <Caroline.Clarke@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>; Jeff Kane <JKane@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

==*This message contains information that Google has designated as Highly Confidential, Attorneys'-Eyes-Only Material, subject to a Protective Order*==

Counsel,

As Plaintiffs noted last Friday, October 17, neither side can meaningfully identify "top" components without understanding the broader set of components that likely contain information relevant to the issues in this case. On October 14 you represented that you are "unaware of any existing, accurate, comprehensive list of every component and sub-component within Issue Tracker that can be pulled and produced in short order." Plaintiffs proposed alternative methods for identifying relevant components last Friday, including by investigating the components that fall under certain higher-level components. O+Z 25.10.13 Email. Google provided the sub-components for the higher-level components that Plaintiffs specifically identified, but added only two higher-level components of its own for which it would provide sub-components. Google effectively has taken the position that the components Plaintiffs identified just happen to represent nearly the full universe of relevant components.

Google, in other words, has failed meaningfully to search for relevant components. Given Google's professed inability to provide the index that the Court envisioned, Plaintiffs request, as they have before, that Google search for relevant components by utilizing the Buganizer's built-in feature to search for components, using the four terms provided in O+Z's October 7 email. The "index" approach that the Court suggested was premised on the feasibility of that approach. It is clear that the "index" approach is not feasible, either due to Google's inability

or unwillingness to execute it.

Google waited until 12:17 AM on October 22, the day the parties are supposed to exchange their component proposals, to share any new information about additional relevant components. This practice is consistent with Google's pattern of dumping large quantities of relevant information on Plaintiffs at the last minute. Plaintiffs share their proposed "top 10" components below, but note that they have had limited time for review because of Google's delay, and reserve their right to revise their proposal.

Google's spreadsheet also includes a "component ID" and "parent component ID" for all entries. To enable the parties to properly assess how the Buganizer can be investigated, please promptly explain what those IDs represent and how they can help navigate relevant components.

Please also promptly advise whether any other subcomponents are used for issues related to Shopping, copyright takedowns, DMCA repeat infringer policies and enforcement (including in relation to termination, suspension or reinstatement), Trademark or Counterfeit policies, eBooks, or Highly Suspicious merchants and organizationally fall under the "███████████ █████" parent component. If so, please promptly identify those components.

Please also advise why Google's Oct. 22 spreadsheet does not contain the component (or any subcomponents falling under) ███████████████████████ ███████████████████████████████████" that Plaintiffs identified in their Oct. 13 spreadsheet, which also falls under the "███████████████████████" parent component.

Plaintiffs also remind Google that Google did not disclose to Plaintiffs or the Court that "Reporter," "Assignee," and "CC" can be searched by user. As a result, this method of searching the Buganizer has never been properly before the Court. Plaintiffs continue to believe that such a search is narrowly tailored to efficiently identify responsive documents and proportional to the needs of the case. To be clear, this custodian-based search is not merely a way of identifying relevant components; it is a way of locating relevant documents. At a minimum, Google should search the Buganizer for tickets involving the existing custodians, so that the parties have some sense of the volume of documents prior to applying search terms.

**Plaintiffs' proposal of "top 10" components (unranked):**

Please promptly advise if any proposed component below is a sub-component of another proposed component, so Plaintiffs can promptly revise their proposal as appropriate.





**Plaintiffs' proposal of "top 10" search terms (unranked):**

Relying on Google's October 14 representation that "intra-component searches can be performed with simple logic connectors (i.e., "AND" or "OR") and that such searches can result in reasonable numbers of results," Plaintiffs share their proposal of "top 10" search terms. Per Google's prior representation that the Buganizer does not support wildcard or proximity searches (Dkt. 177 ¶ 13), these search terms are necessarily longer than they would have been had wildcard or proximity searches been supported. If it is Google's understanding that any of the proposed search terms below is not supported by the Buganizer's search capabilities, please explain exactly what searches the Buganizer system can support.

1. (Ebook OR E-book OR Ebooks OR E-books OR "digital book" OR "digital books" OR epub OR epubs)

2. (Cengage OR Macmillan OR McMillan OR Elsevier OR McGraw)

3. (DMCA OR "Digital Millenium Copyright Act" OR "repeat infringer" OR "repeat infringers")

4. (copyright) AND (suspicious OR shady OR HS OR "bad actor" OR "bad actors" OR "bad URL" or "bad URLs" OR sweep)

5. ("zero strike" OR "zero-strike" OR "zerostrike" OR "████████████████" OR "high confidence")

6. copyright AND cluster

7. (DMCA OR "Digital Millenium Copyright Act" OR copyright OR trademark OR counterfeit OR "repeat infringer" OR "repeat infringers")

8. ("duplicate URL" OR "duplicate URLs" OR "duplicate notice" OR "duplicate notices" OR "duplicate complaint" OR "duplicate complaints") AND Shopping

9. ("████████████████████████████████

') AND Shopping

10. ("O+Z" OR "Michele Murphy" OR Zebrak OR "Katheryn Enters" OR "Matt Oppenheim" or "Matthew Oppenheim" OR "Association of American Publishers" OR AAP OR "@publishers.org")

Plaintiffs request a prompt meet-and-confer to move this issue forward.

Regards,
Yunyi

Yunyi Chen | Associate
**Oppenheim + Zebrak, LLP**
461 Fifth Avenue, 19th Floor
New York, NY 10017
Direct: 212.951.1923
ychen@oandzlaw.com | www.oandzlaw.com
Connect with us on LinkedIn
O+Z Oppenheim + Zebrak LLP | WASHINGTON, D.C. NEW YORK, N.Y.

---

This e-mail and any attachments may contain information that is private, confidential, or protected by attorney-client or other privilege. If you are not the intended recipient, please delete it from your system without copying, reviewing or distributing any portion and notify sender by reply e-mail.

**From:** Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>
**Date:** Wednesday, October 22, 2025 at 12:17 AM
**To:** Yunyi Chen <YChen@oandzlaw.com>,
Holly.Victorson@lw.com <Holly.Victorson@lw.com>, Jeff Kane <JKane@oandzlaw.com>,
Laura.Bladow@lw.com <Laura.Bladow@lw.com>,
Caroline.Clarke@lw.com <Caroline.Clarke@lw.com>,
Sy.Damle@lw.com <Sy.Damle@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>,

Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

<mark>*This message contains Highly Confidential, Attorneys'-Eyes-Only Material that is subject to a Protective Order*</mark>

Counsel,

First, as part of its investigation into alternatives for navigating Google Issue Tracker components, Google has explored generating a custom list of the sub-components that fall organizationally under the "parent" components that Plaintiffs identified, as well as a few additional "parent" components that may be relevant to this case. Plaintiffs' proposal to include "███████████" is too broad, but we have identified two potentially relevant ███████████ sub-components. We have been able to generate a list of all sub-components that fall organizationally under the following "parents," and have attached that list to this email for your review.


**Parent**




     *note: "33956 > 100600 > 65586 > █████," (one of the "parent" components identified by Plaintiffs) is a sub-component of "█████████████████████████"

Second, we are working diligently to produce all Buganizer tickets that you requested on October 3, as we previously agreed. We will additionally produce all relevant Buganizer tickets that you requested on October 13. We expect to be able to produce these tickets by next week.

Third, your proposal to (1) collect and import every Buganizer ticket where an existing custodian is included as a "Reporter," "Assignee," or "CC" into Relativity, and then to (2) run the agreed-upon

and court-ordered documents over those documents, (3) review those documents, and (4) produce "any responsive, non-privileged documents that result," under the guise of purportedly "uncover[ing] additional components likely containing relevant information" remains highly disproportional to the needs of this case and out of step with what the Court ordered at the hearing. *See* Hr'g Tr. at 130:15-17  (Oct. 8, 2025) (The Court: "I want both the number of [components] and the number of search terms requested in each domain to be reasonable, to be limited.").  The parties should focus on negotiating in good faith a mutually agreeable set of components and search terms, consistent with the Court's clear directive.   We look forward to exchanging component and search term proposals tomorrow.


Regards,
Sara


**Sara Sampoli**

**LATHAM & WATKINS** LLP
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.350.5328

---

**From:** Yunyi Chen <YChen@oandzlaw.com>
**Sent:** Friday, October 17, 2025 3:07 PM
**To:** Victorson, Holly (DC) <Holly.Victorson@lw.com>; Jeff Kane <JKane@oandzlaw.com>; Bladow, Laura (DC) <Laura.Bladow@lw.com>; Clarke, Caroline (NY) <Caroline.Clarke@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>
**Cc:** Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)


<mark>*This message contains Highly Confidential, Attorneys'-Eyes-Only Material that is subject to a Protective Order*</mark>


Counsel,

**First**, as you correctly noted below, the Court ordered the parties to "meet and confer in good faith (and, if necessary, Google must run a reasonable number of test searches) to implement a mutually agreeable search protocol for the Issue Tracker." (Dkt. 217, "Order".) The Court also ordered Google to either "promptly produce" "a list or index of the available 'components' for the Google Issue Tracker," or, if such a list is not in Google's possession, to "inform plaintiffs what alternatives, if any, exist for navigating the components." Google has neither produced such an index, nor identified any components that likely contain relevant documents.

The Court also ordered the parties to "exchange their respective proposals for the 'top 10' components to be searched" by October 22 by the latest. Neither side can meaningfully identify "top" components without understanding the broader set of components that likely

contain information relevant to the issues in this case. Each day Google withholds this critical information from Plaintiffs adds to the prejudice that Plaintiffs will suffer, and indeed have already suffered, from Google's delay.

Although it is Google's obligation to inform Plaintiffs of "alternatives . . . for navigating the components" (Order), which it has still not done at this late time, in the spirit of collaboration, we suggest that Google provide the "index" of components that appear under the below higher-level components E.g., for the first entry, Google would identify the components "████████", and any other components under the "████████████" subtopic. Each of these subtopics comes from the "25.10.13 Components" tab of the "2025.10.13 Buganizer Components and Issue Numbers" spreadsheet Plaintiffs provided on October 13.

Plaintiffs propose that Google promptly investigate components that organizationally fall under the relevant terms contained in the component "trees" that Plaintiffs identified, as such an investigation will uncover a list, albeit incomplete. These relevant terms include, for example:

- ████████████████████
- ████████████████████
- ████████████████████
- ████████████████████

Google should, at a minimum, disclose all components that organizationally fall under the above relevant terms without further delay. Please immediately inform Plaintiffs if Google does not plan to do so, and propose concrete "alternatives" as Google was ordered by the Court to do.

**Second**, we note that despite admitting that you misstated to the Court what Google has produced during the October 8 hearing, and despite representing to Plaintiffs that you would correct the record during the 10/14 hearing, you did not, in fact, correct the record. Plaintiffs request that you produce all requested Buganizer tickets without further delay.

**Third**, we clarify Plaintiffs' proposal that Google search the Buganizer database for tickets where the "Reporter", "Assignee", or "CC" is an existing custodian and produce "any responsive, non-privileged documents that result from the search." Google should search for all Buganizer tickets where the "Reporter", "Assignee", or "CC" is an existing custodian, import those tickets into Relativity, run the parties' existing search terms (both agreed-upon and court-ordered) on those documents, and review the documents that result.  Google does not deny that Buganizer tickets filed by, assigned to or cc'ing existing custodians likely contain relevant, discoverable information. Plaintiffs' proposed method of investigation is reasonably calculated and narrowly tailored to uncover additional components likely containing relevant information concerning Google's implementation of its DMCA program, response to Plaintiffs' infringement notices, and treatment of the Pirate Sellers and Infringing Works that Plaintiffs noticed. Hr'g Tr. 132:5–133:1 (Oct. 8, 2025).

Regards,
Yunyi

Yunyi Chen | Associate

**Oppenheim + Zebrak, LLP**

461 Fifth Avenue, 19th Floor

New York, NY 10017

Direct: 212.951.1923

ychen@oandzlaw.com | www.oandzlaw.com

in Connect with us on LinkedIn

**O+Z** Oppenheim
+ Zebrak LLP | WASHINGTON, D.C.
NEW YORK, N.Y.

---

This e-mail and any attachments may contain information that is private, confidential, or protected by attorney-client or other privilege. If you are not the intended recipient, please delete it from your system without copying, reviewing or distributing any portion and notify sender by reply e-mail.

**From:** Holly.Victorson@lw.com <Holly.Victorson@lw.com>
**Date:** Tuesday, October 14, 2025 at 9:21 AM
**To:** Jeff Kane <JKane@oandzlaw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Caroline.Clarke@lw.com <Caroline.Clarke@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>, Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>
**Cc:** Yunyi Chen <YChen@oandzlaw.com>, Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

Counsel,

We write to respond to your email from yesterday regarding certain Issue Tracker items in advance of today's hearing.

First, we have spoken to numerous Google contacts regarding the availability of an "index of components," and we are unaware of any existing, accurate, comprehensive list of every component and sub-component within Issue Tracker that can be pulled and produced in short order. Our understanding is that any truly comprehensive list of Issue Tracker components would be an unwieldy document comprised of mostly facially irrelevant component names (to the extent such

component names are even viewable by the compiling employee, given that components can be subject to different permissions). Our contacts are unaware of any such document being created in any previous matter or context. We are continuing to investigate the possibility of creating an index programmatically, but our current understanding is that if generation of such a list were possible, it would likely require a bespoke effort that would require time to create the script and test it to confirm accuracy, particularly given the scope of components and various levels of permissions.

Second, at the October 8 hearing, I misunderstood the "42 issue numbers" identified by Plaintiffs to Google on October 2 and 3 to be referring to the Issue Tracker numbers that Google previously produced that were associated with the Trust and Safety listserv. We can correct the record at today's hearing, but in any case, Google has already agreed to search for and produce all responsive Issue Tracker tickets identified by Plaintiffs on October 2/3. That process is underway and they will be produced as soon as they are ready. Google is reviewing the additional Issue Tracker identifiers you provided yesterday and has agreed to investigate—we will update you regarding Google's position regarding those requests next week.

Finally, Google will not "search the [Issue Tracker] database for tickets where the 'Reporter', 'Assignee', or 'CC' is a" custodian or listserv. Dealing with issues relevant to this case is not the full-time job of any custodian or listserv—and no principle of proportionality supports an approach of simply reviewing every employee's documents without also applying search terms. Nor does your email demonstrate any indication that such searches could be performed in a targeted way. We are disappointed Plaintiffs have taken the Court's order to work cooperatively and in good faith "to implement a mutually agreeable search protocol for the Issue Tracker" as an opportunity to propose brand new overbroad, sweeping searches that go well beyond what was in the order.

Google, on the other hand, has conducted initial investigations and test searches of basic terms searching within certain "components" and has confirmed that intra-component searches can be performed with simple logic connectors (i.e., "AND" or "OR") and that such searches can result in reasonable numbers of results. Accordingly, Google believes that Judge Moses's order as currently drafted remains appropriate and will serve the purpose of "identify[ing] a limited set of domains and ask[ing] Google to run a limited set of simplified search terms consistent with the capabilities of the system across those domains" as intended. Hr'g. Tr. (Oct. 8, 2025) at 130:8–14.

We look forward to discussing further today.

Regards,
Holly

**Holly Victorson**
Pronouns: she/her/hers

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304

D: +1.202.637.2336

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Monday, October 13, 2025 8:50 AM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Clarke, Caroline (NY) <Caroline.Clarke@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>
**Cc:** Yunyi Chen <YChen@oandzlaw.com>; Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

Counsel,

We write concerning the Court's Order regarding Buganizer tickets, Dkt. 217 ¶ 1(d).

First, as discussed during the October 8 hearing, and to assist both sides in identifying the most relevant components of the Buganizer system in order to devise appropriate search terms, attached are the components that Plaintiffs have observed in the production thus far. Please let us know as soon as possible about the availability of an index of components, per Dkt. 217 ¶ 1(d). We note that based on GOOG-CENG-00435011, a list of components may be contained at https://buganizer.corp.google.com/components. We further note that in GOOG-CENG-00431716, the " ███████████████████████████████████████████████████ " The " ███████████ " might be a relevant component.

Second, Plaintiffs were surprised to hear you represent to the Court that Google has provided the full Buganizer tickets for all Buganizer issue numbers that Plaintiffs have identified to Google. Hr'g Tr. 116:23–117:25 (Oct. 8, 2025) ("THE COURT: Wait. You've completed that already, meaning that you've already given them complete Buganizer results, so to speak, for the 42 tickets that Mr. Kane mentioned? MS. VICTORSON: Exactly."); *id.* at 117:15–17 ("[Ms. Victorson] But, to date, we've taken all of their identified tickets, we have found them in the system, and we have produced those."). Plaintiffs have not observed in Google's production tickets for the 42 issue numbers Plaintiffs identified to Google on October 2 and October 3. Given that you represented to the Court that Google already produced these, please either direct us to them, or produce them immediately.

Third, we understand that Google can search the Buganizer database for tickets where the "Reporter", "Assignee", or "CC" is a particular individual or listserv. Link. As part of its search for custodial documents, and as part of its search of the Buganizer database, Google should conduct such a search for any Buganizer tickets where one of the agreed-upon or Court-ordered custodians or listservs is associated with the ticket (as the Reporter, Assignee, CC, or other related individual) and should produce any responsive, non-privileged documents that result from the search. Please confirm that Google will do so. If Google is correct that the Buganizer notification emails are a representative sample of the relevant Buganizer tickets, then searching for these tickets should not substantially increase the number of documents Google is producing.

Fourth, attached is a list of additional Buganizer tickets referenced in the production that Plaintiffs request that Google produce. Hr'g Tr. 124:1–7 (Oct. 8, 2025).


Jeff Kane

**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Date:** Tuesday, October 7, 2025 at 19:55
**To:** Laura.Bladow@lw.com <Laura.Bladow@lw.com>,
Caroline.Clarke@lw.com <Caroline.Clarke@lw.com>,
Sy.Damle@lw.com <Sy.Damle@lw.com>, Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>,
Alli.Stillman@lw.com <Alli.Stillman@lw.com>,
Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>,
Holly.Victorson@lw.com <Holly.Victorson@lw.com>
**Cc:** Yunyi Chen <YChen@oandzlaw.com>, Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

Counsel,

Plaintiffs cannot agree to Google's limiting its search of the Buganizer database to the issue numbers that already appear in Google's production. Plaintiffs would be willing to consider the following compromise, in addition to Google producing the tickets referenced in no. 1 of my October 2 email.

First, Google would conduct an inquiry to determine what are the components within Buganizer that are likely to have relevant documents. Google would also search for relevant components (which Google's Buganizer system allows, link) using the following search terms:

1. DMCA
2. Ebook
3. E-book
4. Repeat infringer

Plaintiffs would have the option of renewing their motion if the list of components Google

compiles is not acceptable to Plaintiffs.

Second, since Google has now acknowledged that it can search individual components of the Buganizer database, Google would then search within the components referenced above using the following terms, and would produce the full ticket for any responsive document:

1. DMCA
2. ebook
3. e-book
4. digital book
5. text book
6. textbook
7. test bank
8. testbank
9. cluster
10. escalate
11. Cengage
12. Macmillan
13. McMillan
14. Elsevier
15. Mcgraw
16. "O+Z"
17. "Oppenheim + Zebrak"
18. "Oppenheim & Zebrak"
19. "Highly suspicious"
20. "zero strike"

Naturally, this would be without prejudice to Plaintiffs requesting additional searches or documents should the above reveal additional relevant, unproduced documents.

Please let us know Google's position.


Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

39

**From:** Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>
**Date:** Tuesday, October 7, 2025 at 17:19
**To:** Jeff Kane <JKane@oandzlaw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>,
Caroline.Clarke@lw.com <Caroline.Clarke@lw.com>,
Sy.Damle@lw.com <Sy.Damle@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>,
Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>,
Holly.Victorson@lw.com <Holly.Victorson@lw.com>
**Cc:** Yunyi Chen <YChen@oandzlaw.com>, Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey
<KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

Counsel,
We can agree to the first portion of your proposed compromise, with the caveat that for Google
Issue Tracker tickets referenced in emails other than Google Issue Tracker email notifications,
Google will not produce clearly irrelevant Google Issue Tracker tickets, consistent with Paragraph
7(d) of the parties' ESI Protocol (Dkt. 80).  With respect to the 42 tickets you identified last week,
Google will agree to search for and produce them**.**  Google will endeavor to identify and produce any
additional tickets associated with Google Issue Tracker email notifications, and it will agree to
consider additional Google Issue Tracker IDs referenced in non-Google Issue Tracker email
notification documents if Plaintiffs identify them to Google, subject to the caveat regarding
relevance mentioned above.
As for the second portion of your proposed compromise, Google cannot agree to it.  First, as a
matter of clarification, we did not represent on our September 25 meet and confer that it is not
possible to search the Issue Tracker by component.  *See* https://developers.google.com/issue-
tracker/concepts/searches.  But the specific search terms you have proposed are significantly
overbroad.  A search for "DMCA" or "repeat infringer" across the entire Google Issue Tracker system
(or even across individual components) would almost certainly return thousands of irrelevant tickets
regarding non-Shopping products.  The same is true of a search for "ebook" or "e-book" or "digital
book"—even these searches would likely return many irrelevant documents regarding Google's
Books product (or other products).   And more fundamentally, Google cannot agree to run searches
over the Google Issue Tracker system for the reasons we explained in our opposition to Plaintiffs'
first omnibus letter motion and the Declaration of André Golueke submitted therewith.  *See* Dkts.
175, 177.
Let us know if you are amenable to our counterproposal.  Google reserves all rights.
Regards,
Sara

**Sara Sampoli**

**LATHAM & WATKINS** LLP
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.350.5328

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Friday, October 3, 2025 3:16 PM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Clarke, Caroline (NY) <Caroline.Clarke@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>
**Cc:** Yunyi Chen <YChen@oandzlaw.com>; Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

Counsel,

Updated spreadsheet attached.

Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

---

**From:** Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>
**Date:** Friday, October 3, 2025 at 13:04
**To:** Jeff Kane <JKane@oandzlaw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Caroline.Clarke@lw.com <Caroline.Clarke@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Holly.Victorson@lw.com <Holly.Victorson@lw.com>
**Cc:** Yunyi Chen <YChen@oandzlaw.com>, Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

Counsel,

We are discussing your proposal with our client.  However, your spreadsheet references the same Bates number (GOOG-CENG-00404773) for all 41 rows.  We are unable to locate the Google Issue Tracker IDs in the referenced document.  Please provide a spreadsheet that corrects this error so we may consider your request.

Regards,
Sara

**Sara Sampoli**

**LATHAM & WATKINS** LLP
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.350.5328

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Thursday, October 2, 2025 10:57 PM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Clarke, Caroline (NY) <Caroline.Clarke@lw.com>;
Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli
(NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly
(DC) <Holly.Victorson@lw.com>
**Cc:** Yunyi Chen <YChen@oandzlaw.com>; Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey
<KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

**\* This message contains Highly-Confidential, Attorneys'-Eyes-Only Material that is subject to a Protective Order\***

Counsel,

Regarding the Buganizer issue referenced below (Dkt. 160 § 1), Plaintiffs propose the following compromise: 1) Google will provide the full Buganizer tickets for all issue numbers referenced in Buganizer notification emails or other emails that Google produces. A list of the issue numbers that Plaintiffs have located to date is attached. 2) Google will search its Buganizer database for the below four terms, and will produce the full Buganizer tickets for all responsive results.

- DMCA
- Ebook / e-book
- "digital book"
- "repeat infringer"

This compromise would be without prejudice to Plaintiffs seeking more Buganizer documents or searches to the extent that Plaintiffs identify additional issue numbers referenced in the production, additional relevant issue numbers become evident from future Google productions, Buganizer's search functionality is different than it has been explained to Plaintiffs to date, or a specific issue arises regarding a Buganizer ticket for a pirate at issue in this case

Please let us know Google's position.

Jeff Kane

**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Date:** Monday, September 29, 2025 at 22:05
**To:** Laura.Bladow@lw.com <Laura.Bladow@lw.com>,
Caroline.Clarke@lw.com <Caroline.Clarke@lw.com>,
Sy.Damle@lw.com <Sy.Damle@lw.com>, Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>,
Alli.Stillman@lw.com <Alli.Stillman@lw.com>,
Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>,
Holly.Victorson@lw.com <Holly.Victorson@lw.com>
**Cc:** Yunyi Chen <YChen@oandzlaw.com>, Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey
<KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

Counsel,

We write concerning several issues from the parties' September 25 meet-and-confer.

**Custodians**

You agreed to provide an explanation as to why Google believes each of the individuals
identified in Latham's September 25 email are appropriate custodians. We note that Nick
McFadden and Steve Rosenthal are already custodians. We asked whether it would be worth
exploring a compromise in which Plaintiffs would agree to add as custodians these individuals
Google identified, and Google would agree to add the individuals identified in Plaintiffs'
motions. You stated that such a compromise was not worth exploring. Plaintiffs will,
nonetheless, investigate the individuals Google identified in hopes of reaching at least a partial
resolution.

**Buganizer**

You conceded that Google's Buganizer database does have search functionality, i.e., a user
can enter a term into a Buganizer search box, and Buganizer will search for that term. You
nonetheless refused to conduct either of the compromise searches that Plaintiffs suggested in
O+Z's September 16 email: 1) searching the Buganizer database for all Buganizer tickets
referenced in emails in Google's productions; and 2) searching specific "components" that are
likely to have responsive documents.

You conceded that Buganizer can be searched by Buganizer issue/ticket number. Yet you likewise conceded that in conducting its collection and review, Google did not search the Buganizer database for each Buganizer ticket that is referenced in a responsive document. I.e., the extent of Google's search of the Buganizer database was to review the emails Google collected that mention Buganizer tickets, and to search the Buganizer database for those tickets that are referenced in emails on which the ████████████████ @google.com is copied.

You represented that it is not possible to conduct a search in the Buganizer system that limits the results to tickets found within individual "components" of the Buganizer system.

In the interest of reducing the number of disputes the Court has to decide, Plaintiffs are considering an additional proposed compromise to this issue and will follow up.

**Dates of takedowns**

We understand Google to be representing that none of the dates included in the Notice and Response Data Spreadsheets (GOOG-CENG-00380265, GOOG-CENG-00380266, GOOG-CENG-00380267, GOOG-CENG-00380268, GOOG-CENG-00392939, GOOG-CENG-00392940, GOOG-CENG-00403539, GOOG-CENG-00403540, GOOG-CENG-00403541, GOOG-CENG-00403542, GOOG-CENG-00403543, GOOG-CENG-00403544, GOOG-CENG-00403545, GOOG-CENG-00404296) ("████████", "████████", "████████", "████████████████") provide the date on which Google claims to have taken down the ads referenced in the notice (i.e., to have delisted the landing page to which the Shopping ad listed in a notice linked). We further understand Google to be representing that to date, Google has not produced any document that indicates the date on which Google claims to have "remove[d], or disable[d] access to, the material", 17 U.S.C. § 512(d)(1)(C), listed in any of Plaintiffs' infringement notices, other rightsholders' notices concerning the pirates at issue in this case, or in notices applicable to Google's Shopping DMCA program generally.

In Google's opposition to Plaintiffs' motion to compel, Google claimed that the data it already produced "is the data that Google maintains in connection with takedowns in the ordinary course. There is nothing further for Google to produce with respect to the specific handling of each noticed URL." Dkt. 199 at 11. However, Google now claims that it is "investigating alternate sources of de-listing or blocking timestamps for URLs subject to enforcement." 25.09.25 Latham Email. Plaintiffs requested this data in September 2024. RFP 3, RFP 4, RFP 15, RFP 16, RFP 55. The full year that Google already has had to produce it is excessive. Plaintiffs' position is that if Google does not produce such documents within 14 days, Google should not be allowed to offer any such documents into evidence.

**Cutoff date for certain data**

Contrary to your September 25 email, Google did not "propose[] the end of Q1 2025 as a compromise . . . ." The opposition brief you cited, Dkt. 175 at 5, does not make any proposal; it makes an argument in the alternative in the event that the Court agrees with Plaintiffs. And it refers to "early in 2025," not to March 31, 2025. *Id.*

In any case, as we explained during the September 25 call, Plaintiffs would be willing to agree to the following:

1. Google would produce the following data/documents through March 31, 2025:
    1. Merchant identifying information (i.e., what Google produced at GOOG-CENG-00000703, GOOG-CENG-00000704, and GOOG-CENG-00392941)

    1. Offer data (i.e., what Google produced in its sixth and fourteenth productions), and ads data (i.e., what Google produced in its twentieth production) for the MCIDs reflected in the 0703, 2941, and 2942 spreadsheets.

    1. All infringement notices (e.g., what Google provided in it seventh production) Google received concerning the 1,239 domains Plaintiffs identified on December 24, as well as the summary spreadsheets (i.e., the Notice and Response Data Spreadsheets referenced above).

    1. Documents showing the revenue Google earned from the MCIDs in the 0703, 2941, and 2942 spreadsheets (similar to what Google produced at GOOG-CENG-00404298), plus the revenue from associated ads accounts (similar to what Google produced at GOOG-CENG-00419904).

2. For the notices referenced in 1(c) above, Google would produce the associated responses, regardless of the date of the response.

3. For the following domains, Google would produce infringement notices, offer/ads data, and revenue data through July 21, 2025, and produce any associated responses to those infringement notices. These are all domains for which Plaintiffs observed Shopping ads after September 16, 2024.
    1. nursingrade.com
    2. nursetestsbank.com
    3. testbanknurse.com
    4. test-helpers.com
    5. roadnrose.com
    6. testbanks.ac
    7. freeaudioandebook.com
    8. pdfuni.com

As discussed during the call, this compromise would not resolve the parties' dispute about the additional 546 domains these pirates operated (O+Z 25.09.25 Email) or other RFP, or about

the discovery schedule. It would, however, resolve section I of Plaintiffs' first consolidated motion to compel (Dkt. 160).

**Google's practice of refusing to process notices from rightsholders who send follow-up notices**

You represented that Google does not possess documents showing the instances in which Google stopped processing notices from any rightsholder because the rightsholder sent two or more infringement notices concerning the same URL. You likewise represented that the spreadsheet (GOOG-CENG-00429457) that Google relied on in its opposition, Dkt. 175 at 5–6, does not necessarily indicate that Google stopped processing notices from any of the rightsholders listed in the spreadsheet.

During the September 25 meet-and-confer, Google agreed to provide the documents referenced in no. 2(b) of Plaintiffs' September 16 email. please provide these documents by October 6.

You confirmed that GOOG-CENG-00419903 is the spreadsheet that Google claims shows "the number of instances in which Google responded to an infringement notice with a message requesting the sender not send repeated requests concerning the same URLs (i.e., a message with language matching or similar to the block quote on page 4 of Plaintiffs' motion)." You likewise confirmed that in the 9903 spreadsheet, the column labeled "██████████████████████" refers to URLs for which Google sent the language contained at GOOG-CENG-00420452 ("[I]f we continue to receive the same duplicative request from you three or more times, we will consider that particular request to be manifestly unfounded . . . .").

We presume that the column titled "███████████████████████" refers to the draft response contained at GOOG-CENG-00429451 ("We kindly ask you to refrain from sending previously submitted URLs in future notices, as it delays our process.").

Please confirm that the above is accurate. Assuming it is, Plaintiffs agree that the parties can inform Judge Moses that section II of Plaintiffs' first consolidated motion to compel (Dkt. 160) has been resolved.


Jeff Kane
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com

**From:** Holly.Victorson@lw.com <Holly.Victorson@lw.com>
**Date:** Thursday, September 25, 2025 at 00:55
**To:** Jeff Kane <JKane@oandzlaw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Caroline.Clarke@lw.com <Caroline.Clarke@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>, Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>
**Cc:** Yunyi Chen <YChen@oandzlaw.com>, Uriel Lee <ULee@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Michele Murphy <michele@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

\* This message contains Highly Confidential, Attorneys'-Eyes-Only Material that is subject to a Protective Order\*

Counsel,

In advance of our forthcoming meet and confer, in addition to the following areas raised in Mr. Kane's 9/16 email below, we would like to confer on the following issues:

1. **Deadline for Interrogatories and RFAs** (*see* 9/19 email from M. Murphy)

2. **Deposition schedule** (*see* 9/19 email from M. Murphy)

3. **Plaintiffs' late responses to Google's interrogatories** (*see* 9/24 email from K. Lindsey)

4. **Custodians**

    1. We are in receipt of Mr. Kane's 9/23 email proposing that Plaintiffs add two custodians in exchange for Google adding two custodians, but with the caveat that Plaintiffs' motions would remain as to the other custodians referenced in Dkts. 160 and 185.  We decline to agree to that proposal.  However, we would be willing to agree to the following exchange to resolve all pending custodian disputes:

The parties agree to a six-month extension to all case deadlines (in parallel with the six-month extension proposed in the 9/22 H. Victorson email).

Google will add Sajin Padiyath, Jake Erlick, ███████████ and the legal-removal@ alias as custodians/list servs and will run all agreed-upon terms and produce all responsive, non-duplicative, non-privileged documents resulting from such searches.

Plaintiffs will add the following individuals as custodians and will run all agreed-upon terms and produce all non-duplicative, non-privileged documents resulting from such searches:

1. Cengage: Kevin Carlsten, Dalton Hoffine, Victoria Long, Todd Markson

2. Elsevier: Aly Abrams, Salima Bradley, Amanda Karlitz, Alison Powell

3. Macmillan: Jenny Chiu, Susan Elbe, William Gadoury, Jimmy Raines

4. McGraw Hill: Michael Dreher, Nick McFadden, Steven Rosenthal, Nick Terzian

5. **Supplemental Document Productions**

    1. Discovery concerning supplemental domains (*see* 9/23 email from H. Victorson)

    2. Vendor-Related Docs (RFPs 87/89) – Google maintains that additional productions regarding "the circumstances concerning or reasons for any cessation of any significant services any Vendor provided concerning the Relevant Areas" (RFP 87) and "[d]ocuments and communications evaluating the performance of Vendors' personnel" (RFP 89) are not proportional or targeted at relevant information. *See* S. Sampoli email (Sept. 18, 2025). We would like to discuss your position in response to our 9/18 email.

    3. Copyright Certification Procedures (RFP 84) – Google maintains that additional information regarding the Ads "certification" process is not proportional to the needs of this case. *See* S. Sampoli email (Sept. 18, 2025). We would like to discuss your position in response to our 9/18 email.

    4. Dates on which Google claims to have taken down infringing ads – As we have previously explained, there exists no further information associated with the DMCA data regarding the take-downs of specific ads or infringing URLs. Google is investigating alternate sources of de-listing or blocking timestamps for URLs subject to enforcement. If Google identifies such alternate sources, Google will promptly produce that data.

6. **Overall Case Schedule Adjustments** (*see* 9/23 email from H. Victorson)

7. **Cutoff Date for Discovery:** Google proposed the end of Q1 2025 as a compromise (Dkt. 175 at 5). To date, Plaintiffs have not responded to that proposal. We would like to discuss Plaintiffs' position in response to that proposed compromise.

8. **Plaintiffs' Initial Disclosures:** Google proposes the following compromise regarding the dispute raised at Dkt. 159 at 4–9: By October 15, Plaintiffs will supplement their initial disclosures to identify all damages methodologies, computations, and supporting evidence currently available to Plaintiffs.  Within seven days following the close of fact discovery, Plaintiffs will further supplement their initial disclosures to reflect all additional supporting information, including methodologies, additional evidence, and computations, supporting Plaintiffs' damages disclosures.  Google reserves all rights to challenge the sufficiency of Plaintiffs' supplementations under this compromise.

Regards,
Holly

**Holly Victorson**
Pronouns: she/her/hers

**LATHAM & WATKINS** LLP
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.2336

---

**From:** Jeff Kane <JKane@oandzlaw.com>
**Sent:** Tuesday, September 16, 2025 9:53 AM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Clarke, Caroline (NY) <Caroline.Clarke@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>
**Cc:** Yunyi Chen <YChen@oandzlaw.com>; Uriel Lee <ULee@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Michele Murphy <michele@oandzlaw.com>
**Subject:** Cengage v. Google - Motions to Compel (Dkts. 159, 160, 185)

Counsel,

As you know, Judge Moses directed the parties to continue to meet-and-confer to narrow the discovery disputes pending before the Court. Dkt. 210.

Plaintiffs are available at the following times:
- Tuesday September 16, 12:30–3:30
- Wednesday September 17, 10:00–1:45
- Thursday September 18, 10:00–4:30
- Friday September 19, 1:15–4:30

Below are a few areas where we think the parties may be able to make progress with respect to Google's production. If there are additional areas where you think further conferral would be productive, we are happy to discuss them. Please let us know in advance what, if any, those topics are.

1. Discovery Schedule: We think that for the parties to discuss meaningfully the discovery schedule, the parties will need to agree on two issues:

    1. The discovery Plaintiffs requested into the other domains operated by the same pirates associated with the 1,239 domains Plaintiffs initially identified. Plaintiffs proposed a compromise on August 11 via email: 1) Google would produce identifying information, offer data, ads data, revenue data, and notice data for 546 such domains that advertised the works-in-suit; 2) and for any MCIDs associated with the domains listed in tab 2 of the spreadsheet attached to Plaintiffs' August 11 email, Google would produce only the revenue associated with those MCIDs. During our meet-and-confer on August 14, you agreed to get back to us regarding this proposal. We have yet to hear back from you.

    1. The 40,000+ landing pages that are missing from Google's ads data, and the 8,000+ landing pages that are missing from Google's offer data. O+Z 25.08.14 Email. During our August 26 meet-and-confer, you agreed to provide Google's position on whether these landing pages are in fact missing from the offer data. You have yet to provide any response.

2. Google's policy of punishing rightsholders who send follow-up notices when infringing ads are not removed (Dkt. 160 § II)

    1. We've reviewed the spreadsheet that Google says it produced in response to RFP 74, GOOG-CENG-00429457. Are you representing that if Google stopped processing infringement notices from a particular rightsholder because the rightsholder sent a "duplicative request . . . three or more times", GOOG-CENG-00420452, Google would have recorded the merchant on this spreadsheet?

    1. For many of the entries on the spreadsheet, it is unclear whether the merchant was added to the list because of "duplicate" notices or for some other reason. We've identified below five Buganizer ticket numbers or links that collectively account for 35,000 such instances. Please produce these Buganizer tickets and screenshots.
        - https://screenshot.googleplex.com/3jz7Qwh9un2jxWL
        - https://screenshot.googleplex.com/84Lr8dvnoDNJszr
        - b/304477228
        - b/329560209
        - b/346498497

- ■ https://b.corp.google.com/issues/375969613
- ■ b/432200766

1. With respect to RFP 74, you've stated that "Google has agreed to produce documents sufficient to show the number of instances in which Google responded to an infringement notice with a message requesting the sender not send repeated requests concerning the same URLs (i.e., a message with language matching or similar to the block quote on page 4 of Plaintiffs' motion)." It appears that this is GOOG-CENG-00419903, but please correct us if that is not so. We understand column C of the spreadsheet ("███████████████████") to refer to URLs for which Google sent the language contained at GOOG-CENG-00420452 ("[I]f we continue to receive the same duplicative request from you three or more times, we will consider that particular request to be manifestly unfounded . . . ."). Please confirm that this is so. Please also provide a document explaining what "█████" in column B means.

1. If Google completes the above promptly, we expect that the parties could report to Judge Moses that this issue has been resolved.

3. Buganizer documents (Dkt. 160 § 5)

1. Google claims to have produced Buganizer tickets that were referenced in emails Google produced where the trustsafety-shopping-urgent@google.com is copied. Google should be producing the full Buganizer ticket for any Buganizer notification email that has appeared in Google's production. E.g.:

GOOG-CENG-00404715 – (ticket no. 287989206, "████████████████████████████")

GOOG-CENG-00404758 – (ticket no. 290741772, "██████████████████████████")

GOOG-CENG-00406691 – (ticket no. 317840460, "████████████████████████")

GOOG-CENG-00408702 – (ticket no. 352212300, "██████████████████████████████████████")

1. The notification emails Google has produced so far have included a "component," which appears to be a hierarchy of topics and subtopics into which each Buganizer ticket is organized. For example, the below Buganizer emails reflect the below components.

████████████████████████████████ (GOOG-CENG-00409387)

████████████████████ (GOOG-CENG-00418686)

████████████████████████████ (GOOG-CENG-00419045)

One potential compromise might be for the parties to discuss a list of the components that are most likely to contain relevant tickets, and Google could then use Plaintiffs' search terms (or a version of those terms) to search those components.

If you think the above is a possible path to resolve or narrow this issue, Plaintiffs are willing discuss it.


Jeff Kane

**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202.499.2940
jkane@oandzlaw.com | www.oandzlaw.com


_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.