**Sarah A. Tomkowiak**
Direct Dial: +1.202.637.2335
sarah.tomkowiak@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

November 26, 2025

<u>VIA ECF</u>

The Honorable Barbara C. Moses
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, New York 10007

Re: *Cengage Learning, Inc. v. Google LLC*, No. 1:24-cv-04274-JLR-BCM
<u>Defendant Google LLC's Letter Reply in Support of its Letter Motion for Pre-Motion Discovery Conference (Dkt. 273)</u>

Dear Judge Moses:

Plaintiffs have not met their burden to substantiate their privilege and work product claims. Accordingly, the Court should grant Google's Letter Motion and adopt Google's attached revised proposed order.

***Plaintiffs' Fifth Privilege Log Remains Deficient.*** Plaintiffs submitted their Fifth Privilege Log ("Fifth Log") after Google filed its Letter Motion. Declaration of Sarah Tomkowiak ("Decl.") ¶ 3. Yet the Fifth Log—which for the first time identifies with specificity which privileges or protections Plaintiffs assert over all the withheld documents—is still vague, repetitive, and plainly inadequate. Decl. ¶¶ 12-14, 16. To take just one of many examples, the description for "████████████████████████████████████" asserts the "███████████" contains nondescript "███████████████████████████." The associated joint legal matter description has no less than three "█████" conjunctions and references indeterminate litigations and claims to which the "██████████████" relates. Decl. ¶ 13. These descriptions are insufficient to substantiate any privilege or protection. *See, e.g., Chevron Corp. v. Donziger*, 2013 WL 4045326, at *2 (S.D.N.Y. Aug. 9, 2013) (finding descriptions "concerning litigation status and strategy" impermissibly vague). Plaintiffs' descriptions of email attachments are similarly faulty. Decl. ¶ 14; *see Roc Nation LLC v. HCC Int'l Ins. Co., PLC*, 2020 WL 1698928, at *2 (S.D.N.Y. Apr. 8, 2020) (party must separately substantiate privilege or protection for attachments). Plaintiffs have even, inexplicably, redacted document names as "█████████" Decl. ¶ 16. Given that this is Plaintiffs' fifth variation on its privilege assertions, finding waiver is appropriate. *SEC v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 166-67 (S.D.N.Y. 2014) (rejecting new privilege claims because a party may not "make its assertions of privilege a moving target").

![Latham & Watkins LLP]

***Plaintiffs Do Not Show That The Common Interest Exception Applies.***  Plaintiffs' Response ignores that Plaintiffs bear the burden to show, for each withheld "common interest" communication, (1) the relevant shared legal interest and (2) that the withheld communication furthered that interest.  Dkt. 273 ("Mot.") at 2.  Plaintiffs allude to vague efforts "to address illegal piracy," Dkt. 304 ("Response") at 1, but business efforts to address a "common problem,"—here, the sale of counterfeit works—do not receive common interest protections.  *Fine v. ESPN, Inc.*, 2015 WL 3447690, at *12 (N.D.N.Y. May 28, 2015) (reciting standard).  Plaintiffs also have no answer to the caselaw holding that an interest in revenue derived from intellectual property is a financial, not legal interest.  *See* Mot. at 2.  And Plaintiffs' claim that their anti-counterfeit efforts are purely legal contradicts past testimony from McGraw Hill's in-house counsel and publicly-available EPEG materials.  *See* Dkt. 276-22 ¶¶ 4-7 (describing the broad range of Plaintiffs' anti-counterfeit efforts); Decl. ¶¶ 26-28.

Plaintiffs also ignore the panoply of caselaw finding no common interest privilege because the parties—like Plaintiffs—lacked a legal interest in the same intellectual property or other right.[1]  *See* Mot. at 2-3; *Microsoft Corp. v. Acacia Rsch. Corp.*, 2014 WL 6450254, at *2 (S.D.N.Y. Nov. 17, 2014) (finding no common interest privilege because parties shared no "legal interest in the patents").  Instead, Plaintiffs raise a parade of horribles about rendering "co-plaintiff IP suits impossible to maintain" should the Court agree with Google.  Response at 2.  But privilege disputes are inherently fact bound; that the Plaintiffs in this case do not share a legal interest does not mean that parties in another case will not.  Indeed, four of the cases Plaintiffs cite expressly allege overlapping ownership interests.  *See* Decl. ¶ 25.  Regardless, the "Second Circuit has warned that expansions of the attorney-client privilege under the common interest rule should be 'cautiously extended.'"  *In re FTC*, 2001 WL 396522, at *4 (S.D.N.Y. Apr. 19, 2001).  Privilege doctrines should not turn on what is expedient for clients and counsel in "co-plaintiff IP suits."

Plaintiffs try to salvage their argument by contending they have engaged in "a joint *legal* strategy to enforce common *legal* rights through *litigation*."  Response at 2 (emphasis in original). But Plaintiffs have no "common *legal* rights."  Infringement of one Plaintiff's intellectual property has no "legal implications for the other [Plaintiffs]."  *SEC v. Rayat*, 2023 WL 4706074, at *5 (S.D.N.Y. July 24, 2023); *see In re Cal. Bail Bond Antitrust Litig.*, 778 F. Supp. 3d 1051, 1063-64 (N.D. Cal. 2025) (finding no common legal interest because defendants had "no shared legal interest in each other's rates").  Plaintiffs latch onto *Pereira, Trustee for Estate of Capala v. Capala*, 2019 WL 13392880 (E.D.N.Y. Apr. 16, 2019) to suggest that their status as co-plaintiffs is enough to evade waiver.  Response at 2.  Yet the *Pereira* court declined to apply the common interest privilege and emphasized that the party claiming the privilege must show that "the sharing of privileged information was intended to be in furtherance of the **identical** common legal interest that the parties shared."  2019 WL 13392880, at *1, *5 (emphasis added).  Nor is Plaintiffs' intent to make similar arguments concerning Google's DMCA defense relevant since a desire to make "similar legal arguments . . . is not enough to demonstrate a common legal interest."  *In re Cal.*

---

[1] Instead, Plaintiffs reference in passing *Han v. InterExchange, Inc.*, 2025 WL 1419527 (S.D.N.Y. May 16, 2025).  Response at 2.  But there, the existence of a common interest was not disputed. *See Han*, 1:23-cv-7786-JLR (S.D.N.Y.), Dkts. 140, 142, 143.

LATHAM&WATKINS LLP

*Bail Bond Antitrust Litig.*, 778 F. Supp. 3d at 1064.

Plaintiffs attempt to muddy the waters by invoking the "co-client" privilege in the Fifth Log. Response at 2. But that changes nothing since the "co-client" privilege still requires that Plaintiffs have a shared legal interest. *See Rayat*, 2023 WL 4706074, at *3; *Somers v. QVC, Inc.*, 2021 WL 3487315, at *4 (E.D. Pa. Aug. 9, 2021) (same); Mot. at 3 (same). And Plaintiffs' conduct in this case contradicts their claim to be fully "aligned." Each Plaintiff has demanded that Google not share any document designated confidential—including those relevant to each Plaintiff's legal claim—with the other Plaintiffs. Decl. ¶ 21. Plaintiffs should not be able to pick-and-choose the situations in which their interests align. They are either under the same cloak, or not.

In the end, Plaintiffs seek refuge under the work product assertions in their Fifth Log. Response at 2 n.2; *supra* at 1. The Court should still order production. *See In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 299-300 (S.D.N.Y. 2003) (rejecting party's attempt to "re-engineer privilege logs to align their privilege assertions with their legal arguments" particularly after opposing party filed motion to compel). **First**, the Fifth Log's entries remain impermissibly indeterminate, resulting in waiver. *See supra* at 1-2. **Second**, Plaintiffs claim work product over documents not associated with any litigation and almost all EPEG documents, including budget, strategy, press, programing, and planning documents. Decl. ¶¶ 10, 17. But EPEG's activities extend beyond litigation, which casts into doubt whether all withheld EPEG material was created for litigation.[2] *See supra* at 2. **Third**, Plaintiffs have not said when they first anticipated litigation against Google, meaning they have not shown when any related work product protection arose. **Fourth**, Plaintiffs are silent on why sharing purported work product with non-party (and competitor) Pearson Education, Inc. ("Pearson") did not waive protection. Plaintiffs' declarants concede by omission that Pearson is not part of their "verbal co-client/common interest agreement in connection with this case." Dkts. 307-310 ¶ 11. Plaintiffs' voluntary disclosures to Pearson—who shares no common legal interest here—thus constitute waiver. *See, e.g., Medinol, Ltd. v. Boston Sci. Corp.*, 214 F.R.D. 113, 115-16 (S.D.N.Y. 2002) (finding protection waived by disclosure to unaligned third-party with no common "litigation interest"). **Fifth**, Plaintiffs have waived protection by putting at issue in their Complaint Plaintiffs' own conduct, including their justifications for waiting years to file suit, and Plaintiffs' assessments of Google's cooperation in rooting out alleged piracy, including Google's prophylactic ebook ban. *See, e.g.*, Dkt. 38 ¶¶ 6, 99-115, 125, 143; *see, e.g., In re Actos Antitrust Litig.*, 628 F. Supp. 3d 524, 536 (S.D.N.Y. 2022) (finding party waived protection over documents at "the heart" of "good faith" theory).

**Plaintiffs Fail to Justify Withholding BCGuardian Documents.** First, Plaintiffs misapply *Kovel*. The *Kovel* doctrine prevents privilege waiver for communications that include third parties *facilitating* attorney-client communication. *See* Mot. at 3. It is no surprise that, in the *Kovel* cases Plaintiffs cite involving investigators, the investigator obtained information from the client on

---

[2] Last month, Plaintiffs disclosed the existence of an "EPEG Management Portal" containing documents relating to "enforcement matters," "internal reporting," and "strategic thinking more generally." Decl. ¶¶ 22-23. Google has repeatedly asked Plaintiffs to confirm that they have searched that repository for responsive documents, but Plaintiffs have not responded. *Id.* ¶¶ 23-24.

**LATHAM&WATKINS**LLP

counsel's behalf. *See Gucci Am. Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 71 (S.D.N.Y. 2010) (in-house counsel "gather[ed] information from Gucci employees"); *EFCG, Inc. v. AEC Advisors, LLC*, 2020 WL 6378943, at *1 (S.D.N.Y. Oct. 30 2020) (vendor conducted investigation of client's IT systems); *In re Grand Jury Subpoena Dated Mar. 20, 2013*, 2014 WL 2998527, at *8 (S.D.N.Y. July 2, 2014) (investigator obtained information from client); *cf. La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 314 (D.N.J. 2008) (no *Kovel* privilege because third party did not "facilitate[] attorney-client communications"). That is a far cry from BCGuardian's activities "collecting data" from the web—not Plaintiffs (i.e., the "clients"). Dkt. 306 ¶¶ 9-10; *see also* Mot. at 3-4. And though Plaintiffs dispute Google's characterization of BCGuardian's Statement of Work ("SoW"), *see* Response at 4, they do not explain why running internet searches for textbooks requires any specialized expertise. *See* Mot. at 3-4.

Second, Plaintiffs do not point to any evidence that the withheld BCGuardian documents are anything but ordinary course of business documents under the SoW, rather than documents specifically prepared in anticipation of litigation. Counsel's declaration, for example, merely says that Plaintiffs' litigations have been "based on evidence collected by BCGuardian." Dkt. 306 ¶ 9. And Plaintiffs' attempt to rewrite the SoW as litigation-centered runs straight into the text of that agreement. *See* Response at 4 n.5. The SoW states BCGuardian's work is in "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" it does not mention litigation other than in the "▇▇▇▇▇▇▇▇▇▇" section. Dkt. 275-8. General "▇▇▇▇▇▇▇▇▇▇▇▇▇" involving monitoring online marketplaces do not qualify for work product protection. *Rubie's Costume Co., Inc. v. Kangaroo Mfg., Inc.*, 2018 WL 4864833, at *3-5 (E.D.N.Y. Sept. 28, 2018) (finding no work product protection in similar circumstances); *CytoSport, Inc. v. Nature's Best, Inc.*, 2007 WL 1040993, at *6 (E.D. Cal. Apr. 4, 2007) (rejecting work product claims over trademark monitoring reports).

Plaintiffs next try to excuse their work product waiver, but that fails too. Waiver doctrine rests on the idea that "fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." *Noval Williams Films LLC v. Branca*, 2016 WL 7238960, at *4 (S.D.N.Y. Dec. 14, 2016). Plaintiffs put BCGuardian's work product at issue in this case—including in the Complaint, *see, e.g.*, Dkt. 38 ¶ 99. They should not be able to shield relevant information about the provenance of those materials. Mot. at 4. Plaintiffs also are silent on (i) their prior disclosure to Google of documents strikingly similar to the withheld documents; and (ii) why they allowed BCGuardian to produce Google-monitoring documents. *Id.*; *see* Decl. ¶¶ 18-20. Plaintiffs object that such material may contain opinion work product, Response at 4, but the Fifth Log does not distinguish between fact or opinion work product.

Finally, Google has a substantial need for BCGuardian documents, which form the core of Plaintiffs' infringement claims. *See* Mot. at 4. Plaintiffs cannot simultaneously rely on those materials while withholding unique contemporaneous documents supporting Plaintiffs' direct infringement assertions. *Id.*; *see In re Aggrenox Antitrust Litig.*, 2017 WL 5885664, at *14 (D. Conn. Nov. 29, 2017) (ordering production of work product where case "turn[ed] on" specific evidence, and documents offered "contemporaneous" and "unique" probative value).

LATHAM&WATKINS LLP

                                      Respectfully submitted,

                                      */s/ Sarah A. Tomkowiak*
                                      Sarah A. Tomkowiak (*pro hac vice*)
                                      of LATHAM & WATKINS LLP

cc:      All Counsel of Record (via ECF and e-mail)