Sarah A. Tomkowiak
Direct Dial: +1.202.637.2335
sarah.tomkowiak@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200 Fax: +1.202.637.2201
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

# LATHAM & WATKINS LLP

November 26, 2025

**VIA ECF**

The Honorable Barbara C. Moses
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, New York 10007

Re: *Cengage Learning, Inc. v. Google LLC*, No. 1:24-cv-04274-JLR-BCM
<u>Letter Reply in Support of Letter Motion for Pre-Motion Discovery Conference Regarding the Addition of Targeted Custodians, Expanded Search Terms, and Production of Related ESI (Dkt. 287)</u>

Dear Judge Moses:

Plaintiffs' Opposition is an exercise in misdirection, in the hopes that the Court will not see their custodial searches for what they are. But the paltry numbers of custodial documents produced by each Plaintiff, in a case of this size and complexity, speak for themselves. Plaintiffs do not dispute the volume of their custodial productions, but try to defend them with various excuses like pointing to the number of non-custodial documents[1] they have *collectively* produced,[2] or with the *non sequitur* that Plaintiffs are not "accused of infringement." Plaintiffs' Opposition (Dkt. 322, "Opp.") at 2.

These excuses do not change the reality that each Plaintiff's overly narrow search terms and custodians led to a document review and production disproportional to the needs of this case.[3]

---

[1] The vast majority of Plaintiffs' non-custodial documents are ones that Plaintiffs should have collected before they filed suit to support their affirmative claims of ownership (e.g., copyright registration certificates, authorship agreements, chain of title documents) and infringement (e.g., copies of the works in suit and more than 284,000 screenshots). *See* Murphy Decl. (Dkt. 321) ¶4. As Plaintiffs put more than 7,300 works in suit at issue, the size of Plaintiffs' non-custodial productions is unsurprising–it is the minimum needed to support their claims.

[2] Plaintiffs lump their productions together to inflate the number of produced documents. But each Plaintiff in this case is pursuing separate claims for their own legal rights, and each has an independent obligation to comply with Rule 26.

[3] It is unclear how many custodial documents Plaintiffs reviewed, from which they produced 881 unique documents. Plaintiffs assert the 15,500 unique document number is "different than the

LATHAM&WATKINS LLP

Plaintiffs' dramatic assertion that Google's Motion seeks discovery into "all" of Plaintiffs' anti-piracy efforts, and the "entirety of Plaintiffs' digital marketing programs," Opp. at 1, overstates the relief Google seeks. Google is simply asking the Court to compel Plaintiffs to conduct a reasonable *custodial* search. Google's Motion should be granted.

## I. The Discovery Google Seeks Is Indisputably Relevant

As detailed in Google's Motion, each Plaintiff is seeking maximum statutory damages from Google for allegedly contributing to the infringement of thousands of their works. Mot. at 1. When determining the amount of statutory damages to award for copyright infringement, courts consider, *inter alia*, "the revenue lost by the copyright holder" and "the conduct and attitude of the parties." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). This includes, for example, Plaintiffs' approach to enforcing its intellectual property rights. *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 358 (S.D.N.Y. 2017) (considering "Plaintiffs' lackadaisical approach to enforcing its copyrights with respect to some of the Images").

Moreover, Plaintiffs allege they have been harmed from Google's prohibition of Shopping advertisements for ebooks (the "ebook ban"). Compl. ¶93. ("Google's deceptive practices harm the Publishers (directly or through their authorized distributors) who advertise legitimate textbooks using Shopping Ads. Given the irreplaceability of Google's advertising platforms, Google puts the Publishers and other legitimate sellers at a significant disadvantage to Pirate Sellers by prohibiting the Publishers' and other legitimate sellers' Shopping Ads for ebooks but allowing Pirates Sellers' Shopping Ads for infringing digital copies of those books."); *id.* 92 (asserting the ebook ban "has a transformative effect on the market for all textbooks").

Plaintiffs' conduct, and the alleged harm to Plaintiffs from Google's ebook ban, are "real issues" in this case. Opp. at 1. Plaintiffs may disagree, but they cannot limit their productions to only documents that support *their* claims and theories of the case. *Aviles v. S&P Glob., Inc.*, 2021 WL 2077932, at *4 (S.D.N.Y. May 24, 2021) (the Federal Rules prohibit parties from "cherry pick[ing] ESI for production" and provide safeguards to ensure that parties do not "withhold crucial documents that support" the opposing parties' claims). Google is entitled to discovery into Plaintiffs' approach to enforcing their intellectual property rights as well as Plaintiffs' digital marketing practices, to test whether Shopping advertisements are truly "irreplaceab[le]" and whether Google's ebook ban actually caused Plaintiffs harm. *E.g.*, Reply Decl. ¶¶4-5 (citing additional RFPs seeking such documents).

Plaintiffs' miniscule custodial productions indicate that they likely have more custodial documents responsive to Google's RFPs and that limiting Plaintiffs' search for documents to

---

number of documents reviewed," Murphy Decl. ¶3, but never specify how many custodial documents they reviewed. As the number of documents that Plaintiffs reviewed increases, the responsiveness rate of the search terms decreases, underscoring the ineffectiveness of Plaintiffs' current search terms.

ebooks and Google Shopping failed to surface those documents.[4] Mot. at 3. ███████████ ███████████ *See* Bladow Decl. (Dkt. 289) Exs. 1-2. But Plaintiffs have not searched for custodial documents related to ███████████████████████ which is necessary to test Plaintiffs' assertions about the value of Shopping advertising.

## II. An Expansion of Search Terms is Necessary

Google is not asking the Court to order *each Plaintiff* to review millions of documents. A review of Plaintiffs' hit report reveals that Plaintiffs' claim of undue burden is falsely premised on adding up the total documents with hits and family for *all four Plaintiffs*. Reply Decl. Ex. C. A single plaintiff–Macmillan–is driving ███████ of the ███████ total documents with hits plus family. *Id.* at 5. It is disingenuous for Cengage, Elsevier, and McGraw Hill to assert that Google seeks to require each of them to review millions of documents when the total documents with hits and family for existing custodians is ███████ ███████; and ███████, respectively. *Id.* at 3-4, 6.

The additional terms generally target the documents identified *supra* Part I. Terms in Bladow Decl. ¶55(a)-(b), (d)-(f) target documents responsive to RFPs 16-20 regarding Plaintiffs' enforcement of their intellectual property rights. *See* Murphy Decl. ¶6. Terms in 55(c) target documents responsive to RFPs 31, 56, 64, and 67 related to Plaintiffs' contention that the ebook ban has a transformative effect on the market for ebooks. Bladow Decl. ¶56. And Terms in 55(g)-(p) target documents responsive to RFPs 24, 34, 55, 56, 64, 67 related to Plaintiffs' digital advertising practices, leveraging the language used in the produced documents. *Id.*

Google remains willing to work with each Plaintiff to revise and/or prioritize the proposed terms and reduce that Plaintiff's asserted burden, but no Plaintiff has made a counterproposal.

## III. Review of the Proposed Custodians' Files Is Proportional to the Needs of the Case

Focusing just on the existing terms, Plaintiffs' claimed burden is that adding Google's proposed custodians would require the review of another 4,000 documents for the existing search terms. Murphy Decl. ¶7. Plaintiffs claim to have used a "conservative estimate of 10 minutes per document" to assert such a review would require 667 hours. *Id.* Plaintiffs have provided no basis for this time estimate, which seems far above the average review time per document (and, if that estimate bears out, Google's supplemental custodial review should take approximately 3,500 hours).[5]

**Cengage** - Plaintiffs do not dispute that they produced only about 200 documents from essentially a single custodian, ███████████ Plaintiffs still have not identified any employees

---

[4] Plaintiffs' representation that they may need to re-review documents, Opp. at 1; Murphy Decl. ¶9, is not only concerning, but also calls into question the responsiveness criteria they applied in the first instance, despite assurances that if there were documents responsive to RFPs 42-47 and 49-66 that hit on the search terms, they would be produced, Bladow Decl. ¶11.

[5] This review involves 20,812 documents. Reply Decl. ¶6.

**LATHAM&WATKINS**LLP

responsible for interfacing with Cengage's distributors on advertising and promotion of Cengage's works. And Plaintiffs offer no explanation why any of the three "marketing" custodians that Google suggested would lack responsive documents. Mot. at 4.

Cengage's resistance to adding Dalton Hoffine fails too. Plaintiffs dismiss a cited email chain as "not about Google," yet they do not engage with its substance— ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Reply Decl. Ex. D. Other documents including Mr. Hoffine in Cengage's production ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. E.g., id. Ex. E. At least ▓▓ of Mr. Hoffine's documents hit on existing terms. Bladow Decl. ¶37. Plaintiffs' self-described subject-line/file-name skim of these documents, Murphy Decl. ¶7, is no substitute for a responsiveness review and does not establish that the burden of such a review would be disproportionate.

**Elsevier** - Elsevier's excuse for producing approximately 140 documents from essentially one custodian is that Rebecca Miller is the "key representative" for Shopping ads. Opp. at 4. Custodial discovery is not confined to a party's self-selected "key representative," and neither Plaintiffs nor the Court has applied such a rule to Google. E.g., Oct. 15 Hr'g Tr. 61:7-22 (applying Rule 26's proportionality framework). The breadth of Elsevier's Chief Marketing Officer Alison Powell's responsibilities favors adding her as a custodian because her documents likely cover a broader range of Elsevier's digital advertising practices than the lone custodian focused on Shopping ads. Plaintiffs' claim that adding Powell "could distract[] her from her important duties" is nonsensical, Opp. at 4; presumably Powell will not review the documents herself. Given the obvious relevance of Ms. Powell's role, reviewing ▓▓ documents from her files, Bladow Decl. ¶40, is proportional.

**McGraw Hill** - McGraw Hill offers no legitimate explanation for producing approximately 280 documents predominantly from a single custodian. Plaintiffs' suggestion that Google's requests are limited to "communications with Google about Shopping ads" is incorrect. Opp. at 4. Google seeks documents on McGraw Hill's advertising and marketing strategies and the impact of Google's policies on the execution and outcomes of those strategies, including related analytics. Bladow Decl. ¶56. It is unsurprising that the documents Google cites to support adding Nick Terzian as a custodian overlap with an existing custodian—that is how Google identified Mr. Terzian. Plaintiffs' claim that Mr. Terizan's documents are duplicative of Mr. Howland's also does not counsel against adding him, as Plaintiffs do not engage with the fact that Mr. Howland did not serve in his role for the entire relevant period, making Mr. Terzian's files uniquely probative. Mot. at 5; Opp. at 4. Given Mr. Terzian's clear relevance to this case as a Senior Growth Marketing Manager, Murphy Decl. ¶15, reviewing ▓▓ documents from his files, Bladow Decl. ¶48, is proportional.[6]

**Macmillan Learning** - Macmillan brushes aside producing roughly 260 documents essentially from one person by asserting that Jennifer Bilello is the "chief custodian" of its

---

[6] Plaintiffs do not contest that McGraw Hill knowingly did not retain the files for Angela Johns and Fred Koons when they left in 2022. Mot. at 5; Opp. at 4 n.3. Google reserves the right to file a Rule 37(e) motion.

**LATHAM&WATKINS**LLP

Shopping ads account. Opp. at 4. But custodial discovery is not limited to the "primary" person who handles a particular issue. Nor do Plaintiffs explain their minimal production from ▮▮▮▮▮▮ beyond a passing reference to their privilege log. Opp. at 1 n.1. Produced documents show that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *E.g.*, Reply Decl. Ex. F.

Macmillan should add Susan Elbe, whose role as Senior Vice President of Global Marketing encompassed broader responsibilities directly relevant to marketing and advertising of the works at issue and Macmillan's responses to Google's policies. Plaintiffs have not supported their claim of undue burden with specific facts. The same is true for Alanya Harter, who served as Director of Digital Marketing and appears on discussions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *E.g., id.* Ex. G; Ex. H. Plaintiffs' representation that Ms. Harter is no longer at Macmillan further supports reviewing her documents, as locating and deposing her may be challenging—a concern the Court has previously considered in favor of adding a custodian. *E.g.*, Oct. 8, 2025 Hr'g Tr. at 84 (Court inclined to add a "former employee" who Plaintiffs were "not optimistic" they could depose).

Respectfully submitted,

*/s/ Sarah A. Tomkowiak*
Sarah A. Tomkowiak (*pro hac vice*)
of LATHAM & WATKINS LLP

cc:    All Counsel of Record (via ECF and e-mail)