

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
Jkane@oandzlaw.com

December 1, 2025

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

    Re:    *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
           Plaintiffs' Reply ISO Letter Motion for Discovery Conference
           Regarding Searching Google's Buganizer System (Dkt. 295)

[Redacted]

Dear Judge Moses,

      Plaintiffs write in further support of their letter motion for applying a custodian-based approach to searching Google's Buganizer system (Dkt. 295). In response to Plaintiffs' motion, Google uses hollow claims of burden to make the path forward sound much more complicated than it really is. When distilled down to its substance, Google's response shows that a custodian-based approach is not only viable, but is indeed more effective and efficient, than a component-based approach.

      **I.**    **A custodian-based search is not only a viable approach, but a more effective and efficient one.**

      Google concedes that a user can search the Buganizer by entering a search-term and filtering the results to only those tickets (or "issues") for which a particular email address is listed as the "Reporter," "Assignee" or "CC." Dkt. 326 at 4. Google's quarrel with this approach is that such a search supposedly would be burdensome. Dkt. 326 at 3–4. But, once again, Google offers almost nothing to substantiate that conclusory claim.

      First, Google's response is silent as to how many documents are returned by Plaintiffs' suggested custodian-based search, compared to a component-based search. Instead, Google provides only the number of *components* that are *potentially* implicated by these searches. But the number of components is not a reliable measure of burden for at least two reasons: the number of components is not the same as the number of documents, and once search-terms are applied, it may be that not all of these components are implicated.

      Google says a custodian-based approach could involve as many as 859 subcomponents, whereas Google's "top 10" list would potentially draw documents from 121 components. But the number of *components* correlates to burden only insofar as those components lead to more *documents*. (If a search of one component returns ten documents, a search of a second component won't necessarily add ten more, it might add only one more, and a search of a third component might add zero). Google says nothing about how many *documents* are returned by these searches, nor even how many of the components actually hit on the parties' search-terms. It may well be that once search-terms are applied, the number of *documents* returned by a custodian-based search

within the Buganizer is comparable to the documents returned by a typical custodian search. Neither Plaintiffs nor the Court know the answer, because Google hasn't provided it. Google easily could have applied Plaintiffs' search-terms (or, for that matter, Google's search-terms) to these components (or even to the components without access controls) and reported to Plaintiffs and the Court how many documents the searches returned. Google either chose not to do so, or chose not to share the results. This renders Google's claim of burden hollow. This is all the more troubling given that the Court specifically instructed Google to run test searches if necessary. Dkt. 221 ¶ (d).

Second, Google complains that some of the components potentially implicated by a custodian-based search contain access restrictions. But Google fails to explain why providing access to these components is burdensome. Google says nothing about whether access to each component needs to be requested individually, in certain groupings, or all at once. Google also says nothing about how long each request takes to perform or be approved. Based on how collaborative tooling customarily functions in large corporations (to say nothing about the technological sophistication of a company like Google), Google has failed to make any showing that requesting access to *any* number of components is burdensome. Indeed, Plaintiffs' data expert, Christopher Thompson, states that he expects that providing access to these 196 components would involve "minimal effort", and that such requests are "routine" in a company of Google's size. Declaration of Christopher Thompson ¶¶ 12–13.

Perhaps sensing the weakness of its argument, Google remarks that limiting the search to tickets for which a custodian is the "Reporter" or "Assignee," thus excluding tickets where the custodian is the "CC", reduces the number of components that might contain relevant documents. Dkt. 326 at 4. Google seems to assume that the "CC" field in the Buganizer system works the same way as does the "CC" field in an email, i.e. that the person in the "CC" field is not the person sending messages. But this is not so. Of the 65 Buganizer tickets Google has produced so far where the Reporter/Assignee is visible, 62 contain a message from an individual who is *not* the "Reporter" or the "Assignee", including messages from someone in the "CC" field.[1] Kane Decl. ¶ 3. In other words, if a Buganizer ticket lists a custodian as a "CC" but not as an "Assignee" or "Reporter," there is no basis for thinking that ticket is any less relevant to this case than the ones where a custodian is listed as an "Assignee" or "Reporter." This is consistent with Google's own declaration. Dkt. 329 ¶ 6.

In fact, a custodian-based approach likely will be both more effective, targeted and efficient than a component-based approach. A component-based approach would limit the search to an arbitrary number of components that the parties have to determine are "likely" to contain relevant information, which determination in turn relies on extrapolations from Buganizer notifications emailed to seven out of eighteen custodians who *may or may not* have opted out of email notifications. Dkt. 326 at 2; Dkt. 296 ¶ 18. With a custodian-based approach, the parties no longer need to speculate about whether specific components are likely to be the "most relevant" or

---

[1] In many of these tickets, the list of "CC'd" individuals is cut off, or the list of "CC'd" individuals identifies listservs, as opposed to individuals who may be responding on behalf of listservs. Thus, these tickets often do not provide enough information for confirming whether the person sending the message is "CC'd" on a given ticket. Nonetheless, it is clear that the individual sending messages through the Buganizer system is often not listed as the "Reporter" or "Assignee."

Hon. Barbara Moses<br>
December 1, 2025<br>
Page 3 of 4

whether one component is more appropriate to include to the exclusion of another.[2] The search will simply use appropriate search-terms to capture responsive Buganizer tickets associated with the eighteen custodians regardless of component. *See* Dkt. 295 at 4. A custodian-based approach also comes with the additional benefit of efficiency, as Google will not need to search for, review, and produce additional information *about* components, and the parties will not need to engage in protracted negotiations about the right list of components. Instead, Google will be able to undertake the custodian-based search as soon as the parties agree on appropriate search-terms without further delay.

  **II.**  **Google still has not provided sufficient information for a component-based search approach.**

  Google's opposition has no answer to the fact that both parties' proposed lists of components came from only seven of the eighteen custodians Google is searching, and from only nine of the twenty search-terms Google is deploying. Dkt. 295 at 2; Dkt. 326. Nor can Google deny that both parties compiled their proposed lists without the benefit of any kind of explanation from Google as to what these components are, and for what they are used.

  Instead, Google attempts to obfuscate the inadequacy of the information it has provided by omitting key facts in its letter response. Google omits that after telling Plaintiffs that a "truly comprehensive list" of Buganizer components did not exist, Google did not even tell Plaintiffs what, if any information, Google intended to provide to Plaintiffs for navigating the components. Google omits that Plaintiffs reached out to Google for any new information whatsoever on October 17 because Plaintiffs had heard nothing from Google mere days before the October 22 deadline for the parties to exchange proposals. In other words, Google attempts to use Plaintiffs' own diligence to elicit *any* new information from Google ahead of a court-ordered deadline to justify how little information Google had shared. Google also omits that it did not share any piece of new information about any component until midnight on October 22 (Dkt. 327 Ex. A at 32–36), which amounted to the names of subcomponents to parent components that Plaintiffs had already identified, and two additional parent components whose relevance Google could not explain. (Dkt. 296 ¶¶ 9–17.) That information is insufficient for evaluating an appropriate list of components because those components just happened to have been captured by nine out of twenty search-terms applied to the files of just seven out of eighteen custodians.[3] (Dkt. 296 ¶ 12.) Given Google's long pattern of withholding information that has already resulted in wasteful delays in this case, it is unlikely that Google will now cooperate and promptly provide the information necessary to make the component-based approach viable.

  Even in its attempt to offer a compromise for a component-based approach (Dkt. 326 at 5), Google still has failed to provide sufficient information for the parties to negotiate an appropriate

---

[2] There is also no reason to believe that this search is not "limited" in the same way that running appropriate search-terms across a limited universe of ESI is limited, or that it is somehow inconsistent with the Court's directive. Google has certainly provided no hit counts to suggest otherwise. Even using the number of implicated components as a proxy, only 859 out of the more than ███ total components will be searched, which is quite limited.

[3] Google repeats that "[a] user will remain subscribed to an issue and receive email notifications unless he or she unsubscribes" (Dkt. 329 ¶ 7; Dkt. 3), but does not say if any custodian remained subscribed to any specific component.

3

Hon. Barbara Moses
December 1, 2025
Page 4 of 4

list of components. At no point before filing its letter response did Google mention that it could identify which specific components contain at least one ticket where the "Reporter," "Assignee," or "CC" field is an existing custodian. (Dkt. 326 at 4, n.5, n.6; Dkt. 329 ¶¶ 12–14; 16–17; Kane Decl. ¶ 5.) Yet Google evidently was able to do so within days once Plaintiffs filed their motion. And Google still is refusing to provide Plaintiffs with a full list of all these 859 components.

From what Google has provided, no one can have confidence that the components Google identified as its "top ten" components, or for that matter the components Plaintiffs identified as their "top ten" components, are the components most likely to return relevant documents.

### III.   If a component-based search is to be used, Google must provide additional information.

In their opening letter, Plaintiffs suggested that if the Court determines that a component-based approach is preferable, Google should be required to provide additional information about possibly relevant components. One of the items Plaintiffs requested was the existing descriptions of components that the Buganizer already contains. In response to Plaintiffs' motion, Google still refused to provide descriptions beyond those corresponding to 431 of the 859 components at issue. Those 431 components apparently are the ones for which a custodian is the Reporter/Assignee, but not the CC. For the reasons explained above, this contradicts the way messages are sent in Buganizer. If the Court determines that a component-based search is appropriate, Google should be required to provide Plaintiffs with a list of *all* of the 859 components on which an existing custodian is the "Reporter," "Assignee," or "CC", each accompanied by a description of how the component is used.

### IV.   Conclusion

Google should search for Buganizer tickets where the "Reporter," "Assignee," and "CC" fields is a custodian, apply appropriate search-terms, and produce all responsive documents.

Respectfully submitted,

*/s/ Jeff Kane*
Jeff Kane

4