**Sarah A. Tomkowiak**
Direct Dial: +1.202.637.2335
sarah.tomkowiak@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

**LATHAM & WATKINS LLP**

December 5, 2025

**VIA ECF**

The Honorable Barbara C. Moses
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, New York 10007

Re: *Cengage Learning, Inc. v. Google LLC*, No. 1:24-cv-04274-JLR-BCM
Letter Motion for Pre-Motion Discovery Conference Regarding Google's Requests for Production and Plaintiffs' Withheld Documents

Dear Judge Moses,

Plaintiffs allege sweeping claims of "massive" infringement, persistent non-removal, and extraordinary harm. But, they withhold the very materials that would allow Google to test those assertions. Although Plaintiffs agreed to produce (1) studies and research concerning infringement and (2) documents reflecting their own DMCA enforcement strategy and its effectiveness, only one plaintiff, Cengage, has produced documents responsive to the first issue. Instead, Plaintiffs have invoked privilege and work product doctrines to withhold what appear to be ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, which are business records that courts routinely recognize are not privileged. Plaintiffs' purported privilege redactions not only conceal the titles of Plaintiffs' own works, but also Plaintiffs' other targets of their enforcement efforts— material that is plainly neither privileged nor work product and calls into question all of Plaintiffs' heavy-handed privilege redactions. The withheld and redacted materials go to the heart of causation and damages, and they bear directly on whether Plaintiffs' enforcement efforts were effective, whether the scope of the problem matches the rhetoric, and whether Plaintiffs' own choices contributed to the outcomes they decry. As such, Google requests that the Court order Plaintiffs to produce documents responsive to RFPs 16-20 and 81-83, and produce for *in camera* review recently clawed back documents and a sampling of each category of improperly withheld documents identified below.

**I.   Plaintiffs Must Produce Documents Responsive to RFPs 16-20 and 81-83**

Plaintiffs agreed to produce (1) documents reflecting studies or research concerning infringement of Plaintiffs' Asserted Works and Plaintiffs' works generally and (2) documents or communications reflecting the strategy and/or effectiveness of Plaintiffs' DMCA enforcement efforts. Decl. ¶¶6-7. Google understood Plaintiffs' agreed to produce responsive documents as

**LATHAM&WATKINS**LLP

limited to enforcement on Google Shopping, but never waived its rights to seek further discovery. *Id.* As set forth in Google's Motion at Dkt. 287, that production of discovery was too narrow and has indicated that a broader search for responsive documents is necessary.

Only Cengage has produced any documents responsive to the first category. Decl. ¶8. This is particularly odd given Plaintiffs' allegations (i) that "those looking to purchase the Publishers' works find the Pirate Sites predominantly or exclusively through Google"; (ii) that "Infringing Shopping ads are extremely effective at diverting would-be purchasers of the Publishers' textbooks to buy Infringing Works instead of legitimate copies," and (iii) describing the piracy "problem" as "massive" and "enorm[ous]." Dkt. 38 ("Compl.") ¶¶47-48, 78, 81-83. The studies or research underlying Plaintiffs' allegations are highly relevant to test them, and Plaintiffs should be ordered to produce these documents.

No Plaintiff has produced any documents responsive to the second category. Decl. ¶8. Google is entitled to these documents because Plaintiffs put their DMCA enforcement efforts at issue by alleging persistent non-removal and delay by Google. For example, they allege that Google "continued to display thousands of Infringing Shopping Ads weeks after receiving the Publishers' notices" and even warned that repeated follow-ups could lead it to "temporarily stop reviewing [their] requests for a period of up to 180 days." Compl. ¶¶106, 108. However, Plaintiffs have not produced documents that would reflect their approach to enforcement (e.g., cadence and escalation of notices, requests for special handling, and how they measure results) and whether their own strategy (e.g., prioritizing volume) contributed to any perceived "delay." Moreover, Plaintiffs have claimed that the problem of piracy is "massive" and that "it would be difficult to overstate the harm." *Id.* ¶¶81, 101. If Plaintiffs' studies show that the issue is materially smaller than alleged, or that their own enforcement has been generally effective to reduce it, that undermines the assertion that Google's responses to Plaintiffs' notices were inadequate. And, if Plaintiffs' research or studies suggest that infringement is equally prevalent (and must be enforced at the same rate) on platforms other than Google, that would be relevant to their allegations that Google—because it cannot solve the problem of internet piracy—has acted willfully, which is relevant to Plaintiffs' alleged statutory damages.

## II. The Court Should Review Samples Of Improperly Withheld And Redacted Documents *in camera*

A close review of Plaintiffs' fifth privilege log ("Fifth Log"), served on November 19, 2025, indicates that the dearth of produced enforcement documents might be attributable to Plaintiffs' attempting to shroud them as privileged communications or protected work product.

To start, Plaintiffs fully withhold approximately 1,975 documents asserting ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Decl. ¶13. Of these documents, 413 are ▮▮▮▮ with the subject line, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and 270 are ▮▮▮ with the subject line, ▮▮▮▮▮▮▮▮ *Id.* (alteration in original). Both types of ▮▮▮▮ appear to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Plaintiffs and BCGuardian have produced, and Google has reviewed, communications containing similar subject lines and observed ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



███████████████████████████████. Dkt. 338 ¶18. Google requests the Court review a sample of these two types of ████ *in camera*.

Many of these ████████████████████████ (754 in total) purporting to ████████████████████████████████████████████████████ Decl. ¶13. Plaintiffs have produced similar files in this litigation, and based on Google's review of these produced documents, █████████████████████████████████████████████████████████████. Dkt. 338 ¶18. These ████████████████████████ are ordinary course documents prepared as part of a company's brand protection efforts and are neither privileged communications nor work product. *Rubie's Costume Co. v. Kangaroo Mfg., Inc.*, 2018 WL 4864833, at *4 (E.D.N.Y. Sept. 28, 2018) (finding work product protection did not apply to investigations into infringement because they were "an ordinary and integral part" of company's brand protection). The factual information and any associated analysis contained in these documents is akin to investigatory reports and material that "are not protected by the attorney-client privilege or the work-product doctrine merely because they are provided to, or prepared by, counsel." *OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, 2006 WL 3771010, at *5-6 (S.D.N.Y. Dec. 15, 2006). Further, the mere transmittal of this information from an attorney to his or her clients does not make this information privileged. *Davis v. City of New York*, 2012 WL 612794, at *11 (S.D.N.Y. Feb. 27, 2012) ("correspondence transmitting documents, memoranda containing purely factual material" not privileged), *on reconsideration in part*, 2012 WL 2401973 (S.D.N.Y. June 26, 2012).

Of the documents Plaintiffs and third party BCGuardian have produced concerning infringement monitoring, many are heavily redacted. Decl. ¶14. These redactions include the names of entities other than Google that Plaintiffs monitor for infringement as well as the infringement data related to these entities. *Id.* Plaintiffs have even redacted the domain details of infringing sites and the titles of their own works as privileged, claiming this information "reflect[s] confidential legal strategy." Dkt. 306 ¶31. But infringement monitoring itself is not a privileged activity, and so neither the names of the entities monitored nor the results of that monitoring is privileged. Moreover, revealing the name of an entity that Plaintiffs monitor or titles of Plaintiffs' own works, could not possibly reveal any legal strategy warranting protection under either the attorney client privilege or work product doctrine. *See Ayers v. SGS Control Servs.*, 2006 WL 859362, at *2 (S.D.N.Y. Apr. 3, 2006) (finding spreadsheets "contain[ing] a compilation of non-privileged [factual] data" would not "reveal litigation strategy or mental impressions or thought processes of counsel"). This information is highly relevant to Plaintiffs' allegations of willfulness and statutory damages as described *supra* Part I, and may show that the problem is the pirates—not Google. Google requests the Court review a sample of these redacted documents *in camera*.

Plaintiffs' sweeping assertions of privilege over what appear to be ████████████ ██████████ strongly suggest that they have over-withheld responsive materials. That concern is compounded by the deficiencies in Plaintiffs' fifth privilege log (Dkt. 305-1), which for nearly every document on the log "state[s] only, generically, that the documents are confidential internal documents between [Plaintiffs and counsel] seeking or conveying legal advice." *In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 326 (S.D.N.Y. 2020) (explaining "vague and repetitive" descriptions supported concern that party's "overinclusive [privilege] standard … pervades the rest of its privilege claims"). This makes it impossible for Google to ascertain the nature of the remaining

**LATHAM&WATKINS**LLP

documents included on Plaintiffs' privilege log, or to meaningfully assess the basis for Plaintiffs' remaining privilege claims.

Left with nothing to aid its assessment but the document titles and vague and repetitive document descriptions, Google has identified four additional categories of documents that, on their face, do not appear to contain any privileged material.

*First*, Plaintiffs withhold 164 documents asserting only ▓▓▓▓▓. Decl. ¶¶11-12. But based on their titles and descriptions, many of these communications appear to contain factual information providing ▓▓▓ or ▓▓▓ and scheduling calls, which are not the types of communications protected under the attorney-client privilege. *Kleeberg v. Eber*, 2019 WL 2085412, at *16 (S.D.N.Y. May 13, 2019) (finding emails scheduling calls with counsel and relaying "factual information to attorneys/consultants" were not privileged); *SEC v. Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. 134, 145 (S.D.N.Y. 2004) (explaining "correspondence advising of the date and time of meetings" and "correspondence transmitting documents" are not privileged); *99 Wall Dev. Inc. v. Allied World Specialty Ins. Co.*, 2019 WL 2482356 (S.D.N.Y. June 14, 2019) (finding draft documents not privileged because "[n]o legal advice or confidential information appears"). Others appear to simply relay ▓▓▓ of infringement on Google's Shopping platform or the results of a ▓▓▓ of the platform. Decl. ¶12.

*Second*, Plaintiffs withhold 25 documents described on Plaintiffs' privilege log as Educational Publishers' Enforcement Group ("EPEG") ▓▓▓, ▓▓▓ and ▓▓▓ and an additional six documents discussing ▓▓▓ Decl. ¶13. Plaintiffs withhold these documents in full, but ▓▓▓ typically contain nonprivileged information. To the extent that privileged and non-privileged information is "mixed" in these materials, Plaintiffs must produce the documents in redacted form. *TIG Ins. Co. v. Swiss Reinsurance Am. Corp.*, 2023 WL 6058649, at *5 (S.D.N.Y. Sept. 18, 2023). They may not shield the entire document from disclosure by asserting that some portion includes legal analysis. *Id.* (requiring party to produce redacted communications and presentations).

*Third*, Plaintiffs withhold approximately 153 additional ▓▓▓ including communications discussing ▓▓▓ and ▓▓▓ Decl. ¶13. These materials, based on these descriptions, presumably consist of factual and operational information about ▓▓▓ —not legal advice or attorney mental impressions—and therefore, fall outside both the attorney-client privilege and the work product doctrine. *United States v. Anthem, Inc.*, 2025 WL 2426482, at *8 (S.D.N.Y. Aug. 22, 2025) (ordering production of documents created by third party consultant reflecting business and operational information).

*Fourth*, Plaintiffs recently clawed back 6 documents. Decl. ¶¶16-30. Plaintiffs provided redacted copies of 2 of those documents, Dkts. 346-2, 346-3, and the basis of the privilege asserted is not ascertainable from the redacted copies. (Plaintiffs have yet to provide log entries or redacted

**LATHAM&WATKINS**LLP

copies of the other 4 clawed-back documents, and Google has complied with its obligations to destroy and cease further use of them. Decl. ¶24.) When Google asked Plaintiffs to provide the basis for asserting privilege with respect to all 6 documents, Plaintiffs stated the documents contained information protected by the attorney-client privilege. *Id.* ¶¶25-26, 29-30. Google requests the Court conduct an *in camera* review of all 6 documents.

                                            Respectfully submitted,

                                            */s/ Sarah A. Tomkowiak*
                                            Sarah A. Tomkowiak (*pro hac vice*)
                                            of LATHAM & WATKINS LLP

cc:    All Counsel of Record (via ECF)