

Michele H. Murphy
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.450.5643
michele@oandzlaw.com

December 9, 2025

<u>VIA ECF</u>

The Honorable Barbara C. Moses
U.S. District Court for the Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

> **Re:**  ***Cengage Learning, Inc. et al. v. Google LLC***, No. 24:cv-04274-JLR-BCM
> **Plaintiffs' Letter Motion for Discovery Conference Regarding Google's Claim
> to Have "Verified" Pirates**

[Redacted]

Dear Judge Moses,

We represent all Plaintiffs in this matter. Plaintiffs seek an order requiring Google to produce crucial information concerning its process for "verifying" the identities of certain merchants whose products it advertises on the Shopping platform, and to produce the information Google collected from the pirates at issue in this case in employing that process.

At issue in this case are tens of thousands of Shopping ads for pirated copies of Plaintiffs' copyrighted works. Indeed, ███████████████████████████████████████████ ████████████████████████████████████████████████. This "verification badge" lends false legitimacy to the pirates' ads. In some instances, Google also requires merchants to complete the verification process, such as in the case of "suspicious behavior." Thus, "verification" is also relevant to Google's decision to run ads for infringing ebooks without requiring the suspicious merchants selling them to verify their identity.

Yet Google refuses to produce documents explaining what this verification process entails: what information it collects from merchants and what Google does with that information once Google receives it. And Google refuses to produce the information or documents that the pirates who infringed Plaintiffs' works provided to Google in order to be "verified," or to provide records of what Google did with this information once Google received it. This Court should compel Google to produce these documents.

> **I.    Google claims to have "verified" many of the pirates that infringed Plaintiffs'
> works.**

To make purchasers more comfortable with Google's advertisements, Google tells users that some of its advertisers are "verified." Google tells advertisers that they can "[b]uild trust, increase transparency, and get access to more features by completing advertiser verification." Attorney Declaration of Michele H. Murphy ("Decl.") Ex. 5 (GOOG-CENG-00380370, at -0371). And Google tells users: "We want to empower you to make informed decisions about the ads and advertisers you see through Google services by providing greater transparency about who our advertisers are, where they're located, and which ads they show." Ex. 4 (GOOG-

CENG-00380363, at -0364). Within Google Shopping, users can check to see if advertisers have been "verified," and are led directly to the Google's Ad Transparency Center ("ATC"). Decl. ¶ 3, Exs. 1–2. The same page allows Google users to see other ads Google recently ran for the same advertiser. Ex. 4 (GOOG-CENG-00380363, at -0364). Not surprisingly, with ebook pirates, this means more ads for infringing ebooks. Am. Compl. Dkt. 38 ¶ 56 & Fig. 4 (showing additional Shopping infringing ads connected to "My Bambinis").

Additionally, Google uses the verification process to investigate accounts Google has deemed "suspicious." Ex. 5 (GOOG-CENG-00380370) (Google may select a merchant for verification if its "advertising behavior or [] ad content was labeled as potentially suspicious."). Google will select merchants to "pause" their accounts, or even determine whether a suspended account should remain suspended or be reactivated.

Google claims to have "verified" ████████████████ ████████████ pirate websites (the "Pirates") whom Plaintiffs identified as having infringed Plaintiffs' works.[1] Plaintiffs therefore asked Google to produce documents explaining what this "verification" process entails, and what documents the Pirates provided to Google in order for Google to label them as "verified." Decl. ¶ 4, Ex. 3 (RFP 102 and RFP 101, respectively). Yet Google produced almost no documents in response to these requests.

## II.    Google must produce documents explaining its process for verifying merchants.

Google produced just three documents concerning its verification process, two of which are simply screenshots of publicly-available pages from Google's website. Decl. ¶ 5. These and other publicly-available documents provide some basic details about the sorts of documents Google asks merchants to provide, and the sorts of questions Google asks them to answer.[2],[3] But these descriptions are incomplete. For example, Google's site says that merchants will "need to answer a few questions about the type of organization and who pays for the ads,"[4] but doesn't explain what these questions are.[5]

More importantly, though, publicly-available documents say almost nothing about what Google does with these submissions in order to "verify" the merchant. Google claims to do *something*. Ex. 5 (GOOG-CENG-00380370, at -0372) ("Google Ads uses its best efforts to review and verify the provided info as part of verification . . . ."); *id.* ("Sometimes, Google Ads can't verify your business operations after reviewing your answers."); *id.* ("If there is an issue with your

---

[1] GOOG-CENG-00000703 and GOOG-CENG-00392941 (██████████████████ ████). This does not include any additional Merchant Center accounts associated with the 261 pirates about which the Court recently ordered Google to produce data.

[2] Document requirements for advertiser verification, https://support.google.com/adspolicy/answer/9872280?hl=en&co=GENIE.CountryCode%3DUS.

[3] Tasks required for Advertiser verification, https://support.google.com/adspolicy/answer/15577076?hl=en&ref_topic=15715665&sjid=1008029999660832145-NA.

[4] *See* n.3, *supra*.

[5] *See* n.2, *supra* (explaining that to become verified, "[y]ou'll just need to complete a few tasks, such as answering a few questions about your organization.").

task, it means that Google couldn't verify your info."). But Google refuses to produce documents explaining what it does to "verify" the information and answers advertisers provide. Google must produce these fundamental documents.

### III.    Google must produce the information it received from the Pirates, and records about how it verified the Pirates.

Google likewise refuses to produce the documentation and answers to questions that the 1,500 Pirates provided to Google in order to become "verified." Google claims to have verified ████████████████████████████. *See* n.1, *supra*. This means Google likely collected a wealth of information concerning these Pirates. The Pirates would have submitted "official documentation that shows their legal name, trademark name where applicable, address, and/or . . . supporting documents related to their business operations." Ex. 4 (GOOG-CENG-00380363, at -0364). This could include "organization registration documents . . . like any documents, notice or letter issued or stamped by the IRS, Certificate of Business Incorporation, SEC Filings, or business credit reports," and/or an authorized representative's government-issued photo ID.[6] And the Pirates would have answered a series of questions, including about their "business model," "operational practices," "key relationships with third parties," and "details on products and services."[7]

The information Google collected from the Pirates, and what Google did to "verify" that information, is critical to several issues in this case. First, that Google collected this information from the Pirates and still advertised their infringing materials is important evidence of liability and damages. Even a cursory review of the evidence shows that all of the Pirates are engaged in suspicious activity. Yet for ████████████████████, Google collected their information and still provided them with a verification badge, suggesting to users that users should have "confidence" in Google and the Pirates. For example, that Google gathered information about a pirate's "products or services" and its "key relationships with third parties," but did not notice the absence of a relationship between the pirates and the publishers, or that the ebooks obviously were infringing, is highly probative to Google's culpability.[8] Accordingly, the requested documents are relevant to Google's inducement and material contribution, willfulness, and knowledge of the pirates' direct infringements. The documents also bear upon Google's DMCA defense and Plaintiffs' argument that Google did not expeditiously remove the pirates' ads and/or reasonably implement a policy providing for repeat-infringer account termination. 17 U.S.C. §§ 512(d)(3), (i)(1)(A).

Second, Google may suspend the Google Ads account connected to the Shopping account if the merchant is engaged in "[m]aking misleading statements, obscuring, or omitting material information about [its] identity . . . ," or "[p]roviding an inaccurate business name or business name that does not clearly represent the advertised business." Decl. ¶ 6. This is exactly what the pirates do. *See, e.g.*, Dkt. 38 ¶¶ 7, 49, 62, 119. And yet, the verification process that Google touts

---

[6] *See* n.2, *supra*.

[7] Google Ads Business Operations Verification (BOV) Process: Overview, https://www. youtube. com/watch?v=I6tB4bP5OzQ

[8] *Id.*

clearly has failed. In a recent example, Google advertised a PDF copy of McGraw Hill's work-in-suit *The Art of Public Speaking* for a fraction of the legitimate price by "e-book shop." Decl. ¶ 7 & Ex. 6. The ATC then shows that the advertiser's "verified" name is **Tucson Home Depot LLC** (a Google search for which refers to "the various Home Depot retail stores located in and around Tucson, Arizona"). *Id.*

Third, where an advertiser has been suspended for infractions like "[m]isleading representation," Google requires the advertiser to complete the verification process in order to be reinstated. Decl. ¶ 8, Ex. 5 (GOOG-CENG-00380370, at -0371). If Google received verification documentation from the Pirates, and used those documents to make determinations on whether these Pirates should remain suspended or be reinstated, Google must turn over the documents concerning that decision.

Finally, Google has suggested that some of the accounts at issue in this case may have been operated by marketing agencies, as opposed to individual pirates, and that as a result Google could have been reluctant to terminate all of the agency's accounts in response to accusations that some of the products the agency advertised were infringing. Dkt. 66 at 26:20–22. The verification process specifically asks advertisers to disclose whether they are marketing agencies.[9] So this information could prove or disprove Google's speculation.

Google must produce the documents it obtained from the Pirates, and any records of what Google did to "verify" this information. If Google no longer possesses the literal documents that a particular Pirate submitted, Google should so indicate and provide any records memorializing what documents Google used to verify the Pirate (e.g., a record that shows the Pirate was verified based on a driver's license, a certificate of incorporation, etc.).

### IV.    Google's justification for refusing to produce this information is meritless.

Google has offered two reasons for its refusal to produce further documents in response to RFP 101 and RFP 102.[10] First, Google suggested that because the "verification" is completed within its Ads platform, as opposed to its Shopping platform, the process is irrelevant to this case. This has no merit. When shopping on the Google Shopping platform, users can easily check to see whether the advertiser is "verified" by clicking on a link that directs the user to the ATC. Decl. ¶ 3, Exs. 1–2. Further, in order to run a *paid* (as opposed to a free) Shopping ad, a merchant *must* set up an ads account; a Shopping account alone is not enough. Dkt. 66 at 18:4–19. That an advertiser completes the verification process through the Ads platform does not render this process irrelevant.

Second, Google raises its usual unsupported argument about burden. Google claims that the two spreadsheets it produced indicating *whether* each merchant account of the Pirates was verified is all Google should be required to produce, because anything further would be burdensome. Google could not explain what further data or documents Google possesses, but nonetheless took the position that whatever those documents are, they would be burdensome to produce. As before, Google declined to provide any explanation or evidence of the burden it claims would be associated with producing these documents.

---

[9] *See* n.3, *supra*.

[10] The parties met and conferred on these issues three times. Decl. ¶ 8 (providing details).

**V.      Conclusion**

  The Court should order Google to produce documents in response to Plaintiffs' RFP 101 and RFP 102. A proposed order is attached.


       Respectfully submitted,

       */s/  Michele H. Murphy*
       Michele H. Murphy
       OPPENHEIM + ZEBRAK, LLP
       *Counsel for Plaintiffs*