

Michele H. Murphy
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.450.5643
michele@oandzlaw.com

December 10, 2025

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

      Re:    *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
             Plaintiffs' Letter Response in Opposition to Google's Letter Motion for Pre-Motion Discovery Conference (Dkt. 376)

[Redacted]

Dear Judge Moses,

      Google moves to compel documents that Plaintiffs agreed to produce or that otherwise have nothing to do with Google Shopping or this dispute. It also recycles flawed arguments regarding Plaintiffs' privilege assertions already pending before the Court, attempting to resuscitate its flawed first privilege motion through an unwarranted *in camera* review. As before, Google misunderstands the nature of Plaintiffs' IP enforcement work and now ignores detailed information in Plaintiffs' privilege log ("Log," Dkt. 305-1) that plainly demonstrates the bases for their assertions. The Motion should be denied in full.

    **I.**    **Plaintiffs agreed to produce documents Google seeks concerning Google Shopping.**

      Google seeks to compel two categories: "documents reflecting studies or research concerning infringement of Plaintiffs' Asserted Works and Plaintiffs' works generally," and "documents or communications reflecting the strategy and/or effectiveness of Plaintiffs' DMCA enforcement efforts." Mot. at 1–2. The parties long ago negotiated resolution of these two topics: Plaintiffs would produce such documents *concerning Google Shopping*. Murphy Decl. ¶3. Now, without properly conferring, Google moves to compel such documents *unrelated* to Shopping.[1]

      For documents *related to* Shopping, there is no dispute. Plaintiffs produced responsive documents, and the production is not limited to Cengage, as Google states. Plaintiffs also recently agreed to run additional checks to ensure all responsive documents were captured. That process is underway. Plaintiffs will produce any additional documents by the production deadline. *Id.* ¶¶3–4.

---

[1] Google's counsel informed Plaintiffs today they will be filing a revised Proposed Order to clarify that its Motion is limited to these two topics and not the full scope of RFPs 16–20, 81–83 (and not 85) referenced in its initial Proposed Order.

Hon. Barbara Moses
December 10, 2025

For documents *unrelated* to Shopping, they are simply not relevant and the demand is overbroad. Plaintiffs' claims are solely directed to Google's conduct on the Google Shopping platform, and, for direct infringements, pirates Plaintiffs identified. Plaintiffs agreed to produce documents concerning both. Google argues "Plaintiffs have not produced documents that would reflect their approach to enforcement (e.g., cadence and escalation of notices, requests for special handling, how they measure the results) . . . ." Mot. at 2. But Plaintiffs have produced all their notices to Google (which show "cadence"), communications with Google about notices (including Google's responses or lack thereof), and "how they measure the results" of Google's notice failures is privileged.

Documents concerning notices to other platforms and pirate websites are grossly overbroad and have nothing to do with the parties' claims or defenses. Plaintiffs' other anti-piracy efforts are not at issue, and Google cannot justify its misdeeds by pointing to others' misdeeds. *See, e.g., Dun & Bradstreet Software Servs., Inc., v. Grace Consulting, Inc.*, 307 F.3d 197, 211 (3d Cir. 2002) ("A defense of industry custom and practice in the face of the protective provisions of the Copyright Act could undermine the purposes and objectives of the statute and reduce it to rubble.") Google's statement that "Plaintiffs put their DMCA enforcement efforts at issue by alleging persistent non-removal and delay by Google" is absurd and suggests Plaintiffs put their "entire" DMCA enforcement efforts at issue by seeking relief for *Google's* failures. The Court should reject Google's last-ditch effort to expand this case beyond what is actually at issue.

II. **Plaintiffs' privilege Log provides ample bases for assessing Plaintiffs' privilege claims and Google fails to justify *in camera* review.**

Google rushed to Court with this motion on virtually the same issues raised in its prior privilege motion, Dkt. 273, without waiting for the Court to resolve the first one. As before, Google misunderstands the nature of Plaintiffs' enforcement work and documents in framing them as "routine" and "ordinary-course," rather than attorney-driven legal strategy and analysis that's largely protected by attorney-client privilege and/or the work product doctrine. The argument is no better a second time.[2]

On this flawed basis, Google seeks *in camera* review of some unspecified sampling of several "categories" of roughly 1,700 documents, claiming it cannot adequately assess Plaintiffs' privilege assertions from their Log. In support, it cherry-picks words and filenames from Plaintiffs' Log without providing any semblance of the Log's thorough detail. But even a cursory look at the Log demonstrates the privilege assertions are well explained and justified, and nothing here remotely warrants *in camera* review.

---

[2] Google's first motion challenged virtually all of Plaintiffs' privilege claims on the frivolous grounds that (1) co-clients share no co-client or common interest privilege, and (2) communications with BCGuardian are *per se* unprotected. Dkt. 273. Days after that briefing completed, Google filed this motion challenging nearly all the same privilege claims. *See* Bladow Decl. ¶¶12–13; Murphy ¶9. Google neither mentions the first motion in this redux demand nor offers any explanation for filing successive motions on the same issues. *Int'l Bus. Machines Corp. v. Johnson*, 2009 WL 2356430, at *3 (S.D.N.Y. July 30, 2009) (disallowing "piecemeal, seriatim motions requesting the same relief"). To the extent Google raises new theories beyond the first motion, the second motion is premature as Google failed to meaningfully confer before filing.

Hon. Barbara Moses
December 10, 2025

As explained in response to the first motion, Plaintiffs are part of an IP enforcement group called the Educational Publishers' Enforcement Group ("EPEG"), and O+Z represents these publishers jointly (the "Co-Clients"). Dkt. 307–310 ¶¶5–8 ("In-House Atty. Decls."). The group does not do business; its joint activities relate entirely to fighting piracy by protecting their IP rights in different forms through legal action. *Id.* ¶6. O+Z provides the Co-Clients with legal advice on their joint legal matters, which includes identifying potential litigation targets and developing legal analysis and strategy in connection with potential and actual litigation. Murphy ¶¶5–6. O+Z engaged BCGuardian—which specializes in providing IP protection and anti-piracy services to rightsholders—to collect evidence and provide information and analysis needed to inform legal advice to Plaintiffs. *See* Dkt. 304 at 3; Dkt. 305 ¶¶9–10. The Co-Clients have verbal common interest agreements. In-House Atty. Decls. ¶¶11–13; Dkt. 305 ¶¶3, 8; Dkt. 390 ¶¶ 4–6.

Against this backdrop, the bases for Plaintiffs' privilege assertions are evident from the Log. The logged documents are predominantly emails (often with attachments) between Plaintiffs and O+Z concerning EPEG's joint legal matters. Each entry identifies (1) the type of privilege claim, (2) date and time, (3) filetype, (4) email subject or document filename (called "Unified Title"), (5) email sender, (6) recipient, and (7) "cc" recipients, plus (8) a narrative "Document Description" explaining the privilege assertion and, where applicable, (9) a "Joint Legal Matter Description" specifying joint litigation or legal matters involved. Unsurprisingly, similar documents bear similar descriptions. Plaintiffs also provided reference charts identifying corporate affiliations and job titles of certain individuals. Murphy ¶¶8–9.

Plaintiffs' Log is more than sufficient to substantiate privilege claims without *in camera* review. *See*, *e.g.*, *Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 601 (S.D.N.Y. 2015) (finding log "sufficiently detailed" where it identifies "the type of document; general subject matter; author, addressees, and recipients; and the privilege asserted," plus the "particular topic" of legal advice discussed). "To require more information would be to put [Plaintiffs] in the contradictory position of having to risk [their] privilege in order to preserve it." *Id.*

Google's argument relies on an attorney declaration cherry-picking words from the Log, while ignoring detailed sender/recipient information and joint legal matter descriptions. *See* Dkt. 376-1 ("Bladow Decl.") ¶¶12–13. For example, Google complains of eight emails with the subject "Summary of Call with Google today," Mot. at 4; Bladow Decl. ¶12(a), but ignores that these are O+Z attorney emails to Co-Clients, including in-house counsel, copied to O+Z attorneys and non-attorney IP enforcement personnel. *See* Log Entries 555–62; Murphy ¶15. The Log explains that these emails contain "specific analyses of infringement notices and responses requested by O+Z to provide legal advice," including in relation to "enforcement as to Shopping ads promoting infringing copies of Plaintiffs' works and/or pirate sites selling or distributing infringing copies of Plaintiffs' works, prepared in anticipation of litigation against pirate sites, including 19-cv-10524-LAK (SDNY)." *Id.* None of Google's cited cases involve attorney-client communications requesting or providing legal analysis or the totality of information Plaintiffs provide.[3]

---

[3] *See*, *e.g.*, *Rubie's Costume Co., Inc. v. Kangaroo Mfg., Inc.*, 2018 WL 4864833, at *1 (E.D.N.Y. Sept. 28, 2018) (non-attorney investigation "prior to retention of outside counsel" and not in anticipation of litigation not protected work product); *OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, 2006 WL 3771010, at *4–5 (S.D.N.Y. Dec. 15, 2006) (no indication attorney performed legal work

Hon. Barbara Moses
December 10, 2025

Where, as here, "[t]he privilege log sets forth an adequate basis for the claim that these documents were communications between attorney and client made for the purpose of giving or receiving legal advice" and the challenging party has "set forth no reason to doubt that[,]" courts decline *in camera* review. *Payless Shoesource, Inc. v. 174-176 Canal St., L.P.*, 1996 WL 185712, at *1 (S.D.N.Y. Apr. 17, 1996); *see also In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 224 (S.D.N.Y. 2001) ("[N]o in camera review of the documents listed in the Privilege Log is necessary" given information in log and factual submissions).

Plaintiffs' Log provides ample information to assess the privilege claims for each challenged "category."

- 413 documents with subject line ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Bladow Decl. ¶13(a), redact the identity of a potential litigation target. *See, e.g.*, *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 2025 WL 2829203, at *6 (D.D.C. Oct. 6, 2025) (privilege redactions "conceal[ing]" pending investigations and "potential investigation targets" are "valid"). Murphy ¶12.

- 270 emails with subject line "Weekly Update," Bladow Decl. ¶13(b), are O+Z emails to Co-Clients containing legal analysis, advice, and strategy updates on joint enforcement matters, and follow-on attorney-client communications that address anticipated and ongoing litigations, including based on data and analysis from BCGuardian created at O+Z's direction. *Id.* ¶13.

- 754 documents described in Bladow Decl. ¶13(c) are attachments to emails containing BCGuardian's analysis of infringement data performed at O+Z's direction and sent to Co-Clients in connection with legal analysis. *Id.* ¶14.

- 74 documents with various subject lines, including "planning," "budget," "notes," "example," and "update," Bladow Decl. ¶¶12 and 13(d), are emails (sometimes with attachments) between O+Z and Co-Clients containing requests for, or provision of, legal advice; or internal plaintiff emails seeking information needed to provide legal advice or containing O+Z legal advice. These emails commonly discuss substance of litigations, associated fees, or call notes reflecting O+Z communications. *Id.* ¶¶15–16.

- Six documents described in Bladow Decl. ¶13(e) are internal plaintiff emails where in-house counsel sought information regarding legal matters addressed by O+Z to provide legal advice concerning enforcement of pirate sites. *Id.* ¶17.

- 153 documents described in Bladow Decl. ¶13(f) are emails between O+Z, Co-Clients, and/or BCGuardian containing requests for or provision of legal advice, or internal plaintiff emails

---

when creating insurance claims reports); *Ayers v. SGS Control Servs.*, 2006 WL 859362, at *2 (S.D.N.Y. Apr. 3, 2006) ("compilation of non-privileged payroll and timekeeping data" not created at direction of counsel does not reveal attorney "mental processes"); *S.E.C. v. Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. 134, 145 (S.D.N.Y. 2004) ("[D]escription consisting of 'communications' or 'communications with counsel' is insufficient."). The rest are equally distinguishable.

Hon. Barbara Moses
December 10, 2025

where in-house counsel sought information needed to provide legal advice concerning analyses of infringement notices and recommendations for evidence collection. *Id.* ¶18.

- Plaintiffs reproduced six clawed-back documents with appropriate redactions. *Id.* ¶19. The bases for these privilege claims is evident. For four, the limited redactions clearly show, and Plaintiffs' counsel represented to Google, that the communications involve legal advice and mental impressions of Elsevier's General Counsel. For two, Plaintiffs told Google the redacted portions contain legal advice from Cengage's litigation counsel and this firm. *Id.*

Google fails to show that *in camera* review is warranted, and its second privilege motion, like the first, should be denied.

Respectfully submitted,

*/s/ Michele H. Murphy*
Michele H. Murphy
OPPENHEIM + ZEBRAK, LLP
*Counsel for Plaintiffs*