IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENGAGE LEARNING, INC. et al.<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | **Civil Action No. 24-cv-04274-JLR-BCM** |

### DECLARATION OF NICK MCFADDEN

1. I am Senior Director of Growth Marketing for Plaintiff McGraw Hill LLC ("McGraw Hill"). I have held this position since July 2023. Overall, I have worked for McGraw Hill for over 19 years.

2. I submit this declaration in support of Plaintiff's Letter Response in Opposition to Defendant Google LLC's ("Google") Letter Motion for Rule 37 Relief (Dkt. 379). I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently hereto.

3. In my current role, I lead a team of McGraw Hill marketing employees and work with outside marketing vendors to drive company growth, including through digital marketing. From March 2021 to July 2023, I served as the Director of Digital Marketing at McGraw Hill, where I focused on developing and implementing digital marketing strategies for consumer marketing campaigns (i.e., sales direct to consumers). Under these umbrellas are McGraw Hill's advertisements on Google Shopping for its higher education books.

1

4. I am familiar with Angela Johns and Fred Koons and worked with both of them during their relatively short tenure with McGraw Hill. Johns' title at McGraw Hill was Director of Digital Marketing (though we did not have the same role), and she reported to Stacy Hansbury, Sr. Vice President, Global Customer Experience. Johns' role focused on the relationship with McGraw Hill's outside marketing vendor at the time. That vendor would place ads for McGraw Hill on Google Shopping and other digital platforms. Johns did not direct higher education's digital marketing strategy. Rather, that was my role. While I expect Johns received reports from the vendor, others, including myself, received them too.

5. Johns was part of a larger team working on a redesign of McGraw Hill's product detail pages on its student store website. She did not lead this team. Nicole Wheeler, then Web/eCommerce Product Manager, oversaw the larger product page update. This concerns Google insofar as McGraw Hill's ads link to these product pages (i.e., landing pages). John's role did not involve analyzing McGraw Hill's higher education sales and performance. Further, to the extent she completed any analysis of the business impact of Google Shopping's ebook ban (and I don't recall any), that would have been for me.

6. I understand that Google cites to a document that refers to "SEMrush." SEMrush is an online tool that automatically generates website-traffic reports. In the email, it appears Johns is fulfilling a request (which could have come from me) to to pull together these reports.

7. Fred Koons' title at McGraw Hill was Manager of Paid Media Programs, and he reported to Angela Johns. Koons was hired to assist with functions related to the vendor relationship mentioned above. His responsibilities included monitoring vendor implementation of previously negotiated contract terms and serving as one, but not the only, point of contact for vendor communications.

8. Koons did not have the historical business context necessary to make decisions or provide substantive input on McGraw Hill's digital advertising campaigns. Nor do I believe that Koons performed meaningful revenue analysis concerning the ebook ban, and to the extent he did (and I don't recall any), that would have been for me. In a document Google cites, Koons simply used Adobe analytics tools to run revenue reports that were generated by the tool, at my request.

9. With respect to McGraw Hill's Shopping ads, data concerning the ads, how they performed, or the proceeds from them would not reside with Johns or Koons.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 10, 2025 in Dubuque, Iowa.

                                                              Nick McFadden

4