Sarah A. Tomkowiak
Direct Dial: +1.202.637.2335
sarah.tomkowiak@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

**LATHAM & WATKINS LLP**

December 12, 2025

**VIA ECF**

The Honorable Barbara C. Moses
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, New York 10007

Re:   *Cengage Learning, Inc. v. Google LLC*, No. 1:24-cv-04274-JLR-BCM
      Reply in Support of Letter Motion for Rule 37 Relief Due to Plaintiff McGraw Hill's Spoliation

Dear Judge Moses:

Google submits this letter in support of its Motion at Dkt. 379 ("Motion") and in reply to McGraw Hill's Response to Google's Letter Motion for Rule 37 Relief (Dkt. 407) ("Response").

McGraw Hill concedes that it deleted Fred Koons's and Angela Johns's custodial files (the "Custodial Files") while McGraw Hill was anticipating litigation against Google. Dkt. 289-3 at 14. McGraw Hill then posits three arguments in a vain attempt to excuse, and thus escape the consequences of, that spoliation. *First*, McGraw Hill asserts an unreasonably strict interpretation of what is relevant in this case, an interpretation that contradicts Plaintiffs' own past positions when seeking expansive discovery from Google. *Second*, McGraw Hill claims on one hand that "marketing" employees did not have relevant information but, on the other, that a current marketing custodian, Nick McFadden, has relevant information so there is no prejudice to Google. *Third*, McGraw Hill claims to have identified suitable replacement custodians, but without disclosing that those custodians collectively have only a few hundred responsive documents based on existing search terms. Each of these arguments is equally unavailing.

### I.   The Custodial Files Plausibly Contained Information Relevant To This Case

Plaintiff argues no spoliation has occurred because Johns and Koons did not have information relevant to Plaintiff's cabined view of what is at issue in this case. That argument is misplaced. To start, the standard articulated by this Court as to whether deletion of evidence constitutes spoliation is whether the "existing evidence *plausibly 'suggests'* that the spoliated ESI *could* support the moving party's case." *Karsch v. Blink Health Ltd.*, 2019 WL 2708125, at *21 (S.D.N.Y. June 20, 2019) (Moses, J.) (emphases added) (collecting cases). Citing *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003), Plaintiff attempts to graft a "key players" requirement onto the Court's analysis. Response at 3. But *Zubulake* is clear that a "key player[]"

LATHAM&WATKINS LLP

is just anyone, like Johns and Koons, who is "likely to have relevant information" that could support the moving party's case. *Zubulake*, 220 F.R.D. at 218.

Next, Plaintiff argues that the Custodial Files could not contain relevant evidence because the only "advertising" evidence at issue relates to McGraw Hill's advertising on Google Shopping.[1] That argument is wrong for several reasons. *See* Dkt. 379 at 3 (identifying broad range of topics Plaintiffs have put at issue). For instance, Plaintiff alleges that Google's practice "harms the Publishers, whose sales decrease, while the pirates' sales increase." First Am. Compl., Dkt. 38 ("FAC") ¶ 9. This allegation squarely puts at issue evidence of McGraw Hill's revenue trends, including comparisons across channels (*e.g.*, sales performance on Google Shopping versus Amazon versus McGraw Hill's website). Johns analyzed ▅▅▅▅▅ both independently and with the aid of ▅▅▅▅▅. *See* Dkts. 379-5, 379-6. Likewise, Koons analyzed ▅▅▅▅▅, *see* Dkt. 379-10, and analyzed the effect of ▅▅▅▅▅, *see* Dkt. 379-3. And Plaintiff peppered its complaint with paragraphs directly implicating Johns's and Koons's work on Google Shopping and similar platforms. *See, e.g.*, FAC ¶ 47 (alleging that Shopping Ads diverted would-be customers, data that ▅▅▅▅▅, *see* Dkts. 379-2, 379-5, 379-6); FAC ¶¶ 81-86 (alleging harm such as downstream viral copying, diminished perceived value, and diverted sales, claims that implicate Johns's and Koons's research tracking ▅▅▅▅▅ *see* Dkt. 379-6); FAC ¶¶ 92–95 (alleging, among other things, that Google's ebook ban transformed the market and disadvantaged Plaintiffs, a claim necessitating evidence that the Custodial Files likely had, given Johns's awareness of ▅▅▅▅▅, *see* Dkt. 379-2). Based on the evidence that McGraw Hill did not delete, it is more than plausible that the Custodial Files contained other relevant—now deleted—information. *See Karsch*, 2019 WL 2708125, at *21; Dkt. 379 at 2 (collecting evidence).

Plaintiff's declarant also confirms that Johns and Koons worked on matters relating to advertising on Google Shopping, which Plaintiff asserts forms part of the "heart of the case." Response at 1. McGraw Hill's Nick McFadden testifies that Johns and Koons (who reported to Johns) worked with McGraw Hill's vendor to "place ads for McGraw Hill on **Google Shopping** and other digital platforms." Dkt. 407-2 ¶¶ 4, 7 (emphasis added). That testimony alone confirms Johns's and Koons's relevance. As to McFadden's other statements, they are rife with speculation and contradicted by the record. For example, he states that he doesn't recall whether Johns or Koons performed any analysis related to Google's "ebook ban."[2] But the produced documents show that both individuals analyzed the ▅▅▅▅▅ Dkts.

---

[1] That is a surprising position for Plaintiff given that McGraw Hill and the other plaintiffs have separately asserted that, after "Google [had] produced data on revenue it earned through its Shopping platform," it should produce still more data from "Google's other platforms" including Google Search, YouTube, Google Play, Gmail, and Maps. Dkt. 185 at 12.

[2] Plaintiff references Google's "ebook ban" through its complaint as evidence of Google's alleged "egregious" behavior. *See, e.g.*, FAC ¶¶ 64-68, 92, 127, 120 (incorporating ebook ban allegations into contributory copyright infringement claim); 139 (incorporating same into trademark infringement claim).

379-2, 379-3.  McFadden, who did not supervise either Johns or Koons,³ also undercuts his testimony by speculating as to Johns's and Koons's duties—which he acknowledges were different than his duties, Dkt. 407-2 ¶¶ 4, 7—and by attempting to characterize the produced documents without any basis.  *See id.* ¶¶ 4-9 (stating "it appears Johns is fulfilling a request (which could have come from me)"; and that he did not "believe that Koons performed" certain tasks).  Such speculation has little value in the face of Plaintiff's documents that "plausibly suggest[] that the spoliated ESI could support [Google]'s case."  *See Karsch*, 2019 WL 2708125, at *21 (internal quotation marks omitted).

## II. McGraw Hill Deleted The Custodial Files While Anticipating Litigation Against Google

In addition to its strained relevance arguments, Plaintiff makes a half-hearted effort to backtrack on when it first anticipated litigation against Google.  Response at 3 n.1.  Plaintiff does not dispute that its September 10, 2025 categorical privilege log showed that Plaintiff was anticipating litigation against Google by March 2022.  Instead it points to its more recent log (the "Fifth Log") in which it removed that entry.  *See* Response at 3 n.1.  But that doesn't excuse its spoliation because even the Fifth Log shows that Plaintiff was anticipating litigation against Google as early as ███████████, approximately the same time Johns and Koons left McGraw Hill.  *See, e.g.*, Dkts. 305-1 (Row 327), 338 ¶ 15.  And Plaintiff admits that it retained the Custodial Files for a year after Johns and Koons left McGraw Hill, meaning it deleted those files well into Plaintiff's anticipation of litigation against Google.  *See* Dkt. 407-3 ¶¶ 3-4.  This Court has previously relied on a privilege log to resolve disputes under Rule 37.  *See Karsch*, 2019 WL 2708125, at *10 (Moses, J.).  It should do so again here.

Piggybacking on its meritless relevance arguments, *supra* at 1-2, Plaintiff also makes the peculiar claim that a plaintiff can retroactively excuse spoliation if a particular claim in its lawsuit is dismissed.  Response at 3 n.1.  Plaintiff cites no authority for that statement.  *See id.*  Plaintiff also tries to carve up the preservation analysis on a claim-by-claim basis, but it cites no authority for that proposition either.  And none of Plaintiffs' privilege logs have asserted anticipation of particular "claims" against Google; instead the logs refer generally to ███████████████ ███████████.  *See, e.g.*, Dkts. 275-1 at 1, 275-3 at 64.  Not that it really matters since the Custodial Files were plausibly relevant to Plaintiff's remaining claims for the reasons set forth above.

## III. Google's Requested Remedies Are Appropriate To Cure The Prejudice

Plaintiff agrees that replacement custodians are an appropriate remedy for spoliation.  *See* Response at 4.  At the outset, to the extent that Plaintiff asserts that the prejudice to Google from Plaintiff's spoliation is remedied by the fact that Nick McFadden is a custodian, that assertion is foreclosed by McFadden's own declaration.  McFadden confirms that though he and Johns had the same title, they "did not have the same role," Dkt. 407-2 ¶ 4, and he also did not share roles or

---

³ McFadden downplays the fact that Koons "r[a]n revenue reports" and that Johns may have "analy[zed] the business impact of Google Shopping's ebook ban" by saying those actions might have been at his direction or request.  *See* Dkt. 407-2 ¶¶ 5, 8.  But in the same testimony, he affirms that he and Johns had the same title, and that Johns, not McFadden, supervised Koons.  *Id.* ¶¶ 5-6, 8.

responsibilities with Koons, *id.* ¶ 7, undermining any suggestion that McFadden's files are replacements for the Custodial Files.

Plaintiff also suggests that it offered adequate replacement custodians in an attempt to resolve this motion.[4] But Plaintiff does not disclose that its proposal came nearly a month after Google indicated it would seek Rule 37 relief, *see* Dkt. 289-3 at 12, or that, using existing search terms, its "proposal" comprised of reviewing a mere 322 documents across two custodians—Stacy Hansbury (280 document hits) and Nicole Wheeler (42 document hits)—for responsive material. Decl. ¶¶ 4, 6. And Plaintiff's offer to add Nick Terzian as a custodian was not related to this dispute; Plaintiff offered Terzian in exchange for Google adding a former employee whom McGraw Hill and the other plaintiffs have known about for nearly a year and who is now the subject of a threatened (belated) discovery motion. *Id.* ¶ 5. Not to mention, any attempt by Plaintiff to extract a concession from Google in exchange for Plaintiff's remediation of its spoliation would be improper.

That said, when it comes to replacement custodians, the most appropriate custodian to add to remediate Google's prejudice is Nick Terzian. Terzian worked with Johns on issues relating to ███████████, *see* Dkt. 379-5, and like Koons, was involved in discussions regarding ███████████, *see* Dkt. 289 ¶ 50. And, in contrast to Hansbury and Wheeler, Terzian has ███████ unique, unproduced documents. *Id.* ¶ 48. And because even adding Terzian would not fully replace the Custodial Files, the Court should also order the addition of Hansbury and Wheeler.

Plaintiff makes a passing attempt to cast Google's other requested remedies as "draconian." But they are sensible and tailored. Google is requesting an order (1) permitting Google to present evidence at trial that the Custodial Files once existed but were not preserved (far shy of an adverse-inference instruction); (2) precluding Plaintiff from exploiting evidentiary gaps caused by its spoliation (*e.g.*, arguing Google lacks contemporaneous internal evidence on Shopping performance, competition, or ebook-ban effects); (3) compelling targeted disclosures of other former employees with relevant information that Plaintiff did not preserve; and (4) awarding attorneys' fees associated with litigating this motion. These requested remedies track the Advisory Committee's guidance and analogous cases granting (e)(1) relief where, as here, the duty to preserve attached, reasonable steps to preserve were not taken, and the loss of evidence plausibly deprived the movant of evidence relevant to disputed issues. *See* Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment (stating that the range of measures available under Fed. R. Civ. P. 37(e)(1) are "quite broad" and that, in ordering remedies, "[m]uch is entrusted to the court's discretion"); *see also*, *e.g.*, *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 292 (S.D.N.Y. 2009) (compelling further discovery and awarding attorneys' fees and costs).

---

[4] Google disputes Plaintiff's characterization of the meet-and-confer process, including when Plaintiff indicated it would have its "proposal" ready. *See* Suppl. Tomkowiak Decl. ("Decl.") ¶¶ 3-4.

**LATHAM & WATKINS** LLP

                                        Respectfully submitted,

                                        */s/ Sarah A. Tomkowiak*
                                        Sarah A. Tomkowiak (*pro hac vice*)
                                        of LATHAM & WATKINS LLP

cc:    All Counsel of Record (via ECF and e-mail)