**O+Z | Oppenheim + Zebrak, LLP**
WASHINGTON – NEW YORK

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
jkane@oandzlaw.com

December 17, 2025

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

    Re:    ***Cengage Learning, Inc. et al. v. Google LLC***, No. 24:cv-04274-JLR-BCM
              **Plaintiffs' Letter Motion for Discovery Conference Regarding** [REDACTED]

[REDACTED]

Dear Judge Moses,

    We represent all Plaintiffs in this matter. Plaintiffs ask the Court to order Google to conduct targeted searches on the documents of [REDACTED]. Mr. [REDACTED] led efforts to address the very piracy problem that is the subject of this lawsuit: his team attempted to create a system whereby only merchants authorized by rightsholders to sell their copyrighted or trademark-protected products could advertise those products on Google Shopping. That effort, which Google eventually abandoned, is crucial to Google's knowledge, willfulness, and the need for deterrence.

    In an effort to reach a compromise, for their proposed search of Mr. [REDACTED] documents, Plaintiffs have eliminated fifteen of the nineteen search-terms that Google has deployed on all other custodians in the case. Instead, Plaintiffs have suggested Google deploy four of those terms, plus three other term that narrowly target relevant documents.

    Pursuant to Local Civil Rule 37.2 and Your Honor's Individual Practices § 2(b), Plaintiffs request a discovery conference.

    **I.**    **Mr. [REDACTED] played a key role in Google's abandoned attempts to repair its failed "ban" on ebook ads.**

    Mr. [REDACTED] ("[REDACTED]" in internal Google communications) was one of the leaders of Google's "[REDACTED]" group ("[REDACTED]"). Declaration of Attorney Jeff Kane ("Decl.") Ex. A. It does not appear that any existing custodians are part of the [REDACTED] team. *Id.* As part of his role in [REDACTED], Mr. [REDACTED] participated in or led three projects that involve key evidence in this case.

    **First**, in May 2021, Google attempted to ban all ads for ebooks, but the "ban" didn't work; it *allowed* ads from pirate sellers and only *disallowed* ads from legitimate sellers. Dkt. 38 ¶¶ 64–68. Mr. [REDACTED] team attempted to ensure that Google's "ban" on paid ebook ads for Shopping was in fact blocking ads from pirate sellers. It appears that to help implement the ban, Mr. [REDACTED] team attempted to fix a problem of Google "[REDACTED]" pirate sellers and generating "[REDACTED]" in responding to publisher complaints about pirate ads. Decl. Ex. A at 6036. Mr. [REDACTED] team gave this project a Priority 0 (the highest priority under Google's ranking system). *Id.*

Mr. ▮ team also tried to address a major issues in Google Shopping's responses to known pirate ebooks sellers: If a pirate ebooks seller's merchant account had been "disapproved" (i.e. suspended from running ads), but then was manually *reapproved* by Google personnel, "often" incorrectly, the tool on that Google normally relied to automatically "re-disapprov[e]" suspicious accounts could not reverse any erroneous manual approvals. Decl. Ex. A at 6038. The problem apparently was particularly acute in the context of ads for pirated ebooks. *Id.* ("▮▮▮").

Indeed, Mr. ▮ was the only lead or head contact for several pertinent initiatives involving infringing merchants and ebook sellers on the Shopping platform. See Decl. Ex. B at 6628 ("▮▮"); Decl. Ex. A at 6043 ("▮▮.") These documents show that no other existing custodian served as the Point of Contact or lead for any of these initiatives.

**Second**, after the ebook "ban" was put into place, ▮ team was involved in a project that considered re-entering the ebook ads market, i.e., re-allowing paid ads on the Shopping platform. Decl. Ex. C at 6748. For that initiative, ▮▮ *See* Decl. Ex. D at 6606. This apparently gave way to an initiative called the "Brand Portal" (related to "Project ▮"). Decl. Ex. E at 7053–7054. The Brand Portal apparently was an attempt to create a system whereby authorized sellers of copyrighted or trademarked products could register those products with Google Shopping, such that only those authorized sellers would be able to initiate Shopping Ads for those products. *Id.* The Brand Portal was contemplated as a ▮ where a ▮ *Id.* This form of ▮▮, is precisely what Plaintiffs had asked Google to do in order to reduce the piracy that is the subject of this lawsuit. Moreover, Brand Portal's relevance to the claims and defenses in this case goes beyond ebooks. The project was initiated in response to a more general copyright and trademark issues within Google Shopping. *Id.*

Unfortunately, Google eventually halted the Brand Portal project. Decl. Ex. F at 3917. It is unclear from Google's documents why Google decided to discontinue the project, though it seems clear that Mr. ▮ was part of the reason. Decl. Ex. G at 6096 ▮▮.") Google's pursuit of this project and subsequent decision to abandon it speak directly to Google's knowledge of the extent of direct copyright infringement on Google Shopping, understanding of how its own conduct contributed to that infringement, and willful decision to continue that conduct.

**Third**, it is Plaintiffs' understanding that as far back as 2021, Mr. ▮ along with other Google representatives, had several high-level discussions with representatives from the Association of American Publishers ("AAP"), whose members include Plaintiffs, to ▮▮. See Decl. Exs. E, H. A screenshot of a calendar invite confirms that a meeting took place between Google and AAP in

Hon. Barbara Moses
December 17, 2025
Page 3 of 4

February 2022. *See* Decl. Ex. H. Yet Google has produced no communications with AAP that preceded or followed this meeting, nor any internal discussion about this meeting.

## II. Google must run targeted searches on Mr. ▓▓▓ documents.

Given Mr. ▓▓▓ key role, Plaintiffs asked Google (not for the first time) to add Mr. ▓▓▓ as a custodian. When Google resisted, Plaintiffs proposed targeted search-terms to capture relevant documents and minimize the risk of capturing irrelevant ones. All of the topics covered by the instant motion are responsive to Plaintiffs' RFP 6–9, 13, 15, 45, 52, 78, 79, and 99. Decl. ¶ 11. Plaintiffs suggest Google run the following terms.

1. (Brand w/2 Portal) AND (ebook* OR e-book* OR "digital book*" OR (digital* w/3 book*) OR "textbook* OR "text book*" OR (solution* w/2 manual*) OR "test bank" OR testbank OR publisher* OR pirate* OR piracy OR infring* OR "DMCA" OR "digital millennium copyright act" OR takedown OR remov* OR escal* OR ▓▓▓ OR copyright* OR (infring* w/3 repeat*) OR trademark OR counterfeit* OR ▓▓▓ ▓▓▓ OR "ban" OR "shopping" OR PLA OR "paid ad" OR "paid ads" OR Cengage OR Macmillan OR McMillan OR Elsevier OR McGraw)

2. (Project w/2 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓)

3. ("Association of American Publishers" OR AAP OR "@publishers.org" OR (Lui w/5 Simpson))

4. ((pirat* OR piracy OR (repeat* w/5 infring*) OR (infring* w/5 content) OR "▓▓▓ ▓▓▓▓▓")) AND shopping

5. ((ebook* OR e-book* OR "digital book" OR "digital books" OR (digital* w/3 book*) OR "textbook* OR "text book*" OR (solution* w/2 manual*) OR "test bank" OR testbank OR (manifest* w/5 unfound*) OR (duplicat* w/5 (notic* OR "URL"))) AND ("shopping" OR pirate* OR piracy OR infring* OR "DMCA" OR takedown OR remov* OR escal* OR ▓▓▓))

6. ("digital book" OR "ebook" OR "e-book" OR ePub*) AND (polic* OR practice* OR procedure* OR draft* OR version* OR outline* OR development OR implement* OR enforce* OR ban OR disallow OR disapprove)

7. ((DMCA OR copyright OR trademark OR (infring* w/3 repeat*)) w/10 (policy OR policies OR process* OR procedur* OR strike* OR practice* OR system OR guideline* OR ▓▓▓▓▓▓▓▓▓▓▓▓ OR reactivat* OR reinstat*)) AND shopping

Plaintiffs' Terms 1 and 2 are designed to capture documents concerning the Brand Portal initiative. Plaintiffs' Term 3 is designed to capture documents concerning Google's discussions with AAP. Plaintiffs' Terms 4 through 7 are terms that parties already have negotiated, and that Google already has applied to the existing custodians. In an attempt to reach a resolution, Plaintiffs are *not* requesting that Google apply the other *fifteen* search-terms that Google is applying to all other custodians.

Google, unfortunately, has provided a hit count for only one of these terms; Plaintiffs' Term 2 returned only nine hits. Decl. ¶ 12. Google also provided a hit report for two variations on

Hon. Barbara Moses
December 17, 2025
Page 4 of 4

Plaintiffs' Term 1, which showed that Plaintiffs' Term 1 will return between 153 and 1,059 hits. *Id.* Google has refused to run hit reports for Plaintiffs' Terms 3–6. *Id.*

### III. Plaintiffs have been attempting to reach a resolution with Google regarding Mr. ▮ for months.

Plaintiffs alerted Google as to their interest in Mr. ▮ in October 2024, and formally requested him as a custodian when the parties first began negotiating custodians on February 7, 2025. Decl. ¶¶ 13–18. At the time, Plaintiffs were aware of Mr. ▮ only as a participant in the AAP discussions. *Id.* Google took the position that another custodian, ▮, would possess documents on those topics. *Id.* When Google produced nearly all of its custodial documents on August 15, 2025 (then the deadline for document discovery), Plaintiffs observed that Mr. ▮ additionally was involved in monitoring the "ban", the proposed re-entry initiative, and the Brand Portal project. Part I, *supra*. Plaintiffs also observed that Google produced no communications with AAP. Plaintiffs again requested that Google add Mr. ▮ as a custodian, and conducted three additional meet-and-confers with Google in an attempt to reach a compromise. Decl. ¶ 19. In all, Plaintiffs have conducted six meet-and-confers in an attempt to reach a compromise on Mr. ▮. *Id.*

### IV. Conclusion

The Court should order Google to conduct the targeted searches described above on Mr. ▮ documents.

Respectfully submitted,

*/s/ Jeff Kane*
Jeff Kane