Sarah A. Tomkowiak
Direct Dial: +1.202.637.2335
sarah.tomkowiak@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

**LATHAM & WATKINS LLP**

December 22, 2025

**VIA ECF**

The Honorable Barbara C. Moses
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, New York 10007

> Re:  *Cengage Learning, Inc. et al. v. Google LLC*, No. 1:24-cv-04274-JLR-BCM: Defendant's Response to Plaintiffs' Letter Motion for Discovery Conference (Dkt. 455)

Dear Judge Moses:

Google writes in opposition to Plaintiffs' Letter Motion for Discovery Conference (Dkt. 455) to compel Google to run seven search term strings across the custodian files of (current non-custodian) ▇▇▇▇▇, including two regarding the "Brand Portal" project (the "Motion").

Put simply, Plaintiffs have no excuse for filing this Motion less than two and a half weeks before the close of document discovery. Plaintiffs have known about ▇▇▇▇▇ and his role at Google for over a year. Declaration of Sarah A. Tomkowiak ("Decl.") ¶ 5(a). Despite the Parties' agreement in March that Mr. ▇▇ would not be added as a custodian, Google acted in good faith and agreed to run targeted searches over Mr. ▇▇'s custodial files to identify potentially responsive documents related to Plaintiffs' perceived "deficiencies" in Google's productions. *Id*. ¶ 6(c). Google made this offer on November 12 (with corresponding hit counts), and yet Plaintiffs waited several weeks to request that Google add more search terms. Even then, Plaintiffs' request did *not* include **three**[1] of the seven search terms that Plaintiffs now ask this Court to compel Google to run over Mr. ▇▇'s custodial files, over which the Parties have never conferred. *Id*. ¶ 6(g). Plaintiffs' position on Mr. ▇▇ has continuously shifted. Two days after the parties' last conferral on this issue, Plaintiffs abruptly stated that they would move to request that Mr. ▇▇ be added as a *full* custodian (i.e., subject to all of Google's agreed-upon or court-ordered search terms). *Id*. ¶ 6(h). Google promptly responded that this motion to compel would be both untimely and inappropriate; still, Plaintiffs filed this motion without any further conferrals with Google, and changed their position again. *Id*. ¶¶ 6(i), 7. This gamesmanship has made it impossible for the parties to find a middle ground, and suggests that Plaintiffs were never exercising "good faith

---

[1] Two of these search terms are existing Search Terms 2 and 8, which Plaintiffs did not previously ask Google to add for Mr. ▇▇.

**LATHAM&WATKINS**LLP

efforts" to resolve this dispute as required under the court-ordered ESI Protocol. Dkt. 80, §§ 4, 7.

As shown below, Plaintiffs' Motion grossly overstates the significance of Mr. ▮'s role at Google and the relevance of the projects in which he was involved. Google has already offered to run discrete search terms over Mr. ▮'s custodial documents in an effort to avoid burdening the Court with yet another needless dispute, but Plaintiffs demand more at the eleventh-hour.

The Court should deny Plaintiffs' Motion.

### I. Plaintiffs Mischaracterize the Uniqueness of Mr. ▮'s Role at Google, the Ebook Ban, and the "Brand Portal" Project.

Plaintiffs improperly and inaccurately represent to the Court that Mr. ▮ is likely to possess a significant number of unique documents related to "three projects that involve key evidence in this case." Dkt. 455. That's wrong. There is no good reason to believe that this fishing expedition into Mr. ▮'s documents will unearth "key evidence" in this case.

*First*, Plaintiffs' inflated emphasis of Mr. ▮'s role with respect to Google's ebook ban, which prohibits all paid (but not free) Shopping ads for ebooks and digital books, is misguided.[2] As Google has explained to Plaintiffs, Mr. ▮ was not substantially involved in developing Google's ebook ban or exit. The documents cited in the Motion do *not* support Plaintiffs' argument that Mr. ▮ was the "lead . . . for several pertinent initiatives involving infringing merchants and ebook sellers on the Shopping platform" but rather show that Mr. ▮ supported work done by Google engineers to address technical issues while implementing the ban. Decl. ¶ 4(b). To date, Plaintiffs have not explained the significance of any such technical issues to their claims, or how identifying documents related to this discrete issue warrants burdening Google with even more search terms for a quasi-custodian. Tellingly, one of the only *two* documents cited in the Motion to justify Plaintiffs' request confirms that Google has already included two Google custodians, ▮ and ▮, who were substantially involved in the ebook exit (notably, Google voluntarily agreed to add Mr. ▮[3] as a custodian in October 2025 to avoid burdening the Court with another dispute). Dkt. 456-2. Moreover, Google has already run several search terms targeted at identifying documents and communications related to the ebook ban across its fifteen existing custodians, and produced hundreds of documents related to the ebook ban (or will produce by the January 6, 2025 document production deadline). This is certainly sufficient for an issue that is, at most, tangentially related to Plaintiffs' remaining claims in this dispute.[4]

---

[2] Contrary to Plaintiffs' misrepresentation, the Court (and Plaintiffs) is also already well aware that this ebook policy was neither targeted at legitimate sellers nor intended to allow alleged pirate merchants to advertise on Google Shopping. *See* Dkt. 104, Hr'g Tr. at 35:5–18 (May 15, 2025).

[3] By agreeing to add Mr. ▮ as a custodian, Google has now agreed to two of the four "AAP custodians" requested by Plaintiffs in February and March 2025. Decl. ¶ 6(c).

[4] Plaintiffs' allegations related to Google's ebook ban primarily related to Plaintiffs' deceptive business practices claim against Google under New York General Business Law § 349. Dkt. 38,

LATHAM&WATKINS LLP

*Second*, Plaintiffs misrepresent the "Brand Portal" initiative, seemingly ignoring all discussions between counsel about its purpose and scope. Mr. ▓'s one-off suggestion to identify ways to verify sellers of ebooks did not "[give] way to an initiative called the 'Brand Portal.'" Dkt. 455. As Google explained to Plaintiffs several times, the Brand Portal project (which has since been long abandoned) was a proposed initiative that was <u>not</u> developed for Shopping specifically, nor initiated to address copyright infringement for ebooks in any way. Decl. ¶ 5(b). As indicated by the name, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Google later briefly explored whether the Brand Portal, if created, could be used in the context of ebook piracy, but determined that this was unworkable for the same reasons that Google's idea for an "allowlist" was technically burdensome. *Id*. ¶ 5(c); *see also* Dkt. 199. For this reason, Google explained to Plaintiffs that it does not expect there to be significant documents and communications related to the Brand Portal project that are relevant to this dispute. However, Google agreed in good faith to run specific Brand Portal search terms (narrowed to identify only documents and communications related to ebook piracy) over Mr. ▓'s custodial files, even though (again) Plaintiffs' own Motion proves that Google's existing custodians and search terms are more than sufficient to cover this discrete topic (and do not indicate that Mr. ▓ would possess unique information). Dkt. 456-5, GOOG-CENG-00407053 (Ms. ▓ tagged in comment to answer questions about potential use of Brand Portal); *see also* Dkt. 456-4, GOOG-CENG-00426606 (Sajin Padiyath responding to Mr. ▓'s suggestions about verification).

*Third*, Google has already run a search term string specifically designed to identify documents and communications related to discussions with the AAP, and the parties agreed to Ms. ▓ as Google's AAP custodian in March (and Google added Mr. ▓ in October, as noted above). Still, Google agreed to run this existing AAP search term string over Mr. ▓'s custodial files to address a purported gap in Google's productions to date (which Google disputes). Plaintiffs now inappropriately ask the Court to demand Google to run a revised version of this AAP search term string (number 3 in Plaintiffs' Motion). This term has been long-settled and there is no need for a special snowflake AAP term for Mr. ▓'s documents.

## II. Plaintiffs' Request to Add Seven Search Terms for Mr. ▓ is Both Untimely and Unreasonable.

With their request to add *seven* search terms for Mr. ▓ Plaintiffs are essentially asking this Court to order Google to add yet another custodian (not to run targeted, discrete searches). Had Plaintiffs believed Mr. ▓'s custodial files were so important, they should have moved to add him as a custodian in August, and been forced to decide between Mr. ▓ and the other custodians they requested at that time (including Mr. Padiyath, whose role clearly overlapped with Mr. ▓'s based on the documents cited in the Motion). At a minimum, Plaintiffs should have filed this Motion on or around December 2nd, when Google refused to run the extremely broad (and overly burdensome) search terms Plaintiffs requested for Mr. ▓ (which are notably different from what they request now). Instead, Plaintiffs waited, and ignored what Google understood to be the Court's guidance to file any motions related to existing discovery disputes by the December

---

¶¶ 92-94, 148-150; *see also* Dkt. 44 at 21-22. The Court has since dismissed that claim. *See, generally,* Dkt. 111 at 27-34.

LATHAM&WATKINS LLP

15th hearing.  *See* Dkt. 223, Hr'g Tr. at 176:17–25 (Oct. 14, 2025).  The Court should not reward this conduct and force Google to restart its document review procedure *again* when it has completed its custodial document production.

### III.    Alternatively, Plaintiffs Should Be Required To Share the Costs of This Additional Review, and Google Will Need Additional Time to Complete Document Discovery.

If the Court grants Plaintiffs' Motion, in part or in full, Google respectfully requests that the Court order Plaintiffs to share the cost of Google processing, hosting, reviewing, producing and logging privilege for any additional custodial files identified by the ordered search terms for Mr. ███ as Your Honor previously suggested.  *See* Dkt. 223, Hr'g Tr. at 51:15–52:6 (Oct. 14, 2025).  Cost-sharing is appropriate where, as here, "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316 (S.D.N.Y. 2003).  And, this is particularly appropriate where, as here, Plaintiffs have continued to file motion after motion, filing seven discovery motions since August 2025.  Google also respectfully requests that, should this discovery be ordered, the Court set Google's deadline to produce responsive, non-privileged documents to March 6, 2025.

Respectfully submitted,

*/s/ Sarah A. Tomkowiak*
Sarah A. Tomkowiak (*pro hac vice*)
of LATHAM & WATKINS LLP

cc:   All Counsel of Record (via ECF and e-mail)