IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; ELSEVIER INC.; ELSEVIER B.V.; and MCGRAW HILL LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>GOOGLE LLC,<br><br>*Defendant*. | Case No. 1:24-cv-04274-JLR-BCM |

## ATTORNEY DECLARATION OF SARAH TOMKOWIAK

I, Sarah Tomkowiak, declare that:

1. I am a partner at the law firm Latham & Watkins LLP, counsel for Google LLC ("Google") in this matter.

2. I submit this declaration in connection with Google's response to Plaintiffs' Letter Motion for Discovery Conference Regarding ▮▮▮▮▮▮▮ (Dkt. 455).

3. I am the recipient of emails between counsel for Google and counsel for Plaintiffs with the subject line "Google LLC's Responses and Objections to Plaintiffs' First Set of Requests for Production - Cengage Learning, Inc. v. Google LLC, Case No. 24-cv-4274," where on October 22, 2024 counsel for Plaintiffs stated they understood that the following Google employees were involved in discussions regarding Google's ebook ban with the Association of American Publishers ("AAP"): ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

4.  I am the recipient of emails between counsel for Google and counsel for Plaintiffs with the subject line "HC/ AEO – Re: Cengage v. Google – Google's Initial Custodian Disclosure" between January 31, 2025 and May 14, 2025.

   a) On January 31, 2025, my colleague Holly Victorson emailed counsel for Plaintiffs a list of Google's proposed custodians, which did not include ▬▬▬▬ but did include ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. On February 7, 2025, counsel for Plaintiffs Jeff Kane inquired: "Plaintiffs would like to understand whether Defendant considered including the employees below as custodians." The list included ▬▬▬▬, along with eighteen other individuals or listservs.

   b) On February 14, 2025, as a response to counsel for Plaintiffs' inquiry, Ms. Victorson stated: "Our understanding to date is that these individuals' [including ▬▬▬▬] responsibilities do not include the development or implementation of Google's DMCA policy for Shopping (as Plaintiffs' speculate), they were not involved in responding to Plaintiffs' notices of infringement that are at the core of this case, and/or any responsive documents possessed by those individuals would be duplicative of documents collected by Google's other custodians."

   c) On February 21, 2025, Mr. Kane asked counsel for Google to provide counsel for Plaintiffs with a basis for why ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ would not possess relevant documents.

   d) On February 27, 2025, the Parties met and conferred on Google's and Plaintiffs' custodians and search terms.

e) On March 4, 2025, my colleague Sara Sampoli emailed counsel for Plaintiffs to memorialize the Parties' discussions from our February 27 conferral. She stated that, during the conferral, "[w]e explained our understanding, based on interviews and our initial investigation, that conducting custodial collections from ▮ ▮] would simply result in burdensome and/or duplicative collections, given Google's inclusion of ▮ as a custodian. We explained that to the extent our understanding changes upon a review of the documents, we are willing to perform targeted collections. This is an appropriate path forward given the relatively limited topics for which these individuals would have responsive documents."

f) On March 7, 2025, Mr. Kane stated: "Plaintiffs will agree to Defendant's decision to include Ms. ▮ as a custodian, with the understanding that Defendant is willing to perform targeted collections on the other three proposed APP custodians if Defendant's understanding changes, or if further developments indicate to Plaintiffs that other custodians should be added."

g) Between March 14 and May 14, 2025, the email thread contains additional correspondence between the Parties that discuss other custodians and search terms, but not Mr. ▮.

5. I am also the recipient of a 6-page email thread between counsel for Google and counsel for Plaintiffs with the subject line "Cengage v. Google - Google's Document Productions," which includes two emails between October 21, 2025 and October 31, 2025.

a. On October 21, 2025, counsel for Plaintiffs Yunyi Chen emailed counsel for Google to seek additional discovery about Google's Brand Portal initiative. Ms.

3

       Chen asked Google to run targeted searches, including in Mr. ▮'s files, and to add him as a custodian. Ms. Chen mentioned that "Plaintiffs requested that Google include Mr. ▮ as a custodian on two occasions[:]" on October 22, 2024 and February 7, 2025.

    b. On October 31, 2025, my colleague Caroline Clarke responded, stating that "Plaintiffs understanding of the scope and scale of the 'Brand Portal project' is inaccurate" because Brand Portal "was a proposed initiative not specific to copyright infringement and originally intended for Ads, not Shopping." She explained that the existing custodians and broad search terms already capture responsive materials to RFPs 9, 10, 45, and 78, and it "will not agree to add Mr. ▮ [as] a custodian" or "run any of Plaintiffs' proposed search terms" related to Brand Portal. Nevertheless, "to avoid burdening the Court," Ms. Clarke stated that Google is "willing to run its own targeted searches over Mr. ▮'s custodial documents" for those RFPs and to produce responsive, non-privileged hyperlinks identified by Plaintiffs in a separate September 22, 2025 email related to Brand Portal. Ms. Clarke proposed that the Parties meet and confer on November 6, 2025.

6.    I am also the recipient of an 11-page email thread between counsel for Google and counsel for Plaintiffs with the subject line "Cengage v. Google – Additional Custodians" between October 28, 2025 and December 5, 2025. A true and correct copy of this email thread is attached as **Exhibit A**.

    a) On October 28, 2025, counsel for Plaintiffs Uriel Lee emailed counsel for Google requesting our position on adding Mr. ▮ and two other individuals as custodians, Mr. ▮ and ▮.

4

b) On October 30, 2025, Ms. Clarke emailed counsel for Plaintiffs stating that counsel for Google would be available to discuss these custodians at the same conferral where the parties discussed Google's requested additional custodians. Ms. Clarke also stated that, because Plaintiffs were asking to add an additional three custodians beyond what had been ordered by the Court in early October, the Parties should consider the possibility of cost-sharing, given the Court's position at the October hearings ("The Court explicitly stated she would consider imposing costs if Plaintiffs came back and asked for 'three more custodians' shortly after she ordered Google to add seven custodians." *See* Dkt. 223, Hr'g Tr. at 63:16-64:8 (Oct. 14, 2025)).

c) On November 6, 2025, the Parties again met and conferred on Google's and Plaintiffs' custodians and search terms. To avoid burdening the Court, Google agreed to add ▮▮▮▮▮▮▮▮, another AAP custodian previously requested by Plaintiffs, in exchange for Plaintiffs dropping their request for another individual custodian. Google also agreed to run targeted searches over Mr. ▮▮'s custodial documents to again avoid burdening the Court. In an email from Ms. Clarke after the conferral, she "reiterated our position that Google will not add [Mr. ▮▮] as a full custodian. However, Google agreed to propose discrete search terms to run over Mr. ▮▮'s documents for Plaintiffs' review." Ms. Clarke also provided the hit counts for Plaintiffs' initially proposed Brand Portal search terms and Google's revised search terms, while sharing that these limiters were necessary because the Brand Portal project was not confined to Shopping nor designed to address copyright infringement related to ebooks.

5

d) On November 12, 2025, Ms. Clarke emailed counsel for Plaintiffs, stating that Google agreed to add existing Search Term 5 (which was designed to target discussions with the AAP regarding the ebook ban) for Mr. ███, as based on investigation these search terms were most likely to identify documents unique to Mr. ███ regarding his work on issues related to this case, and separately to address any purported gaps in Google's production related to AAP discussions that had been separately raised. Ms. Clarke provided counsel for Plaintiffs the hit counts for Mr. ███ for Search Term 5, and identified how many of those hits had already been produced to Plaintiffs.

e) On November 18, 2025, Ms. Lee demanded that Google expand its search terms for Brand Portal and that it run additional searches over Mr. ███'s documents but without requesting any specific search terms.

f) On November 24, 2025, the Parties met and conferred to discuss several discovery issues that counsel for Plaintiffs had raised. Counsel for Plaintiffs asked Google to prioritize their list of nine discovery topics (with several sub-topics), and the search terms for Mr. ███ and Brand Portal were fifth on their list and not discussed during that conferral.

g) On December 2, 2025, the Parties met and conferred regarding the remaining items on Plaintiffs' list of discovery topics, including Mr. ███ and Brand Portal. Counsel for Plaintiffs, for the first time, requested that Google add Search Terms 3 through 7 for Mr. ███. Counsel for Google stated that this request was overly burdensome and broad, given that Mr. ███ was not a full custodian, and because these search

6

terms were among the broadest agreed to by the parties (designed to identify significantly more documents than other search terms).

 h) On December 4, 2025, Ms. Lee emailed counsel for Google, purporting to summarize the conferral with respect to Mr. ▇, Brand Portal, and AAP. Ms. Lee also stated, for the first time, that Plaintiffs intended to file a motion requesting that the Court order Google to add Mr. ▇ as a full custodian, and to run two Brand Portal search term strings.

 i) On December 5, 2025, Ms. Clarke emailed counsel for Plaintiffs, correcting Ms. Lee's summary of the conferral. Ms. Clarke reiterated Google's position that Plaintiffs' demand that Google add Mr. ▇ as a custodian was untimely and inappropriate. Ms. Clarke also explained that Google had previously provided Plaintiffs with hit counts, and had been prepared to provide Plaintiffs with additional hit counts for their newly proposed Brand Portal search terms if requested. Ms. Clarke stated that Google was willing to provide Plaintiffs with additional hit counts if counsel for Plaintiffs was willing to continue negotiation with counsel for Google related to Brand Portal and Mr. ▇ in good faith.

7. On December 9, 2025, the Parties met and conferred, and Plaintiffs offered to add one additional custodian from one publisher sought by Google in its motion to compel additional custodians (Dkt. 287) in exchange for Google adding Mr. ▇ as a full custodian. During that conferral, counsel for Google learned the details of this offer, but the Parties did not discuss any search terms for Mr. ▇ (in general or related to Brand Portal). Google ultimately rejected Plaintiffs' offer because Google's position remained that there is no justification for Plaintiffs

7

requesting Mr. ▮ as a custodian at this time, and because Plaintiffs' offer to add only one custodian from a motion seeking several across Plaintiffs was insufficient.

      I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

Executed on December 22, 2025, in St. Louis, Missouri.

                                          /s/ *Sarah A. Tomkowiak*
                                          Sarah A. Tomkowiak