

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
jkane@oandzlaw.com

December 24, 2025

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

   Re: *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
     Plaintiffs' Reply in Support of Plaintiffs' Letter Motion for Discovery
     Conference Regarding ▓▓▓▓

[Redacted]

Dear Judge Moses,

  Plaintiffs write in support of their Motion for Discovery Conference regarding ▓▓▓▓, Dkt. 455, and in response to Google's opposition letter, Dkt. 475. Mr. ▓▓ led or participated in important initiatives designed to reduce ebook piracy. These projects unquestionably are highly relevant to this case. And Google identifies no existing custodian likely to have documents concerning these projects. Plaintiffs have proposed a set of only seven search-terms that is considerably narrower than the nineteen search-terms Google is deploying on its other custodians. The Court should order Google to treat Mr. ▓▓ as a custodian, and apply these limited terms to his documents. Google's complaints about the timing of Plaintiffs' motion cast blame on the wrong party. Plaintiffs made considerable efforts to reach an agreement with Google regarding Mr. ▓▓ documents, but Google refused to agree to a reasonable compromise. It is Google's intransigence that caused the timing of Plaintiffs' motion. And Google's request for cost-sharing is unsupported by any evidence of burden. The Court should grant Plaintiffs' motion.

  **I.** **Mr. ▓▓ possesses relevant and unique documents concerning Google's failed attempts to reduce ebook piracy.**

  As Plaintiffs explained in their opening letter, Mr. ▓▓ led or participated in several projects designed to reduce ebook piracy in the wake of Google's failed attempt to ban paid ebook ads. Google does not even attempt to dispute the relevance of these projects, and identifies no existing custodian whom Google claims would possess documents about them.

  ***First,*** Mr. ▓▓▓▓▓▓▓▓▓▓ undertook two initiatives to fix problems with Google's procedures for removing paid ebook ads under Google's ebooks "ban." Mr. ▓▓ team attempted to address Google's ▓▓▓▓▓▓ of ebook ads, meaning that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Dkt. 456-1 (GOOG-CENG-00426035 at 6036). ▓▓ team's goal was to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Dkt. 456-1 (GOOG-CENG-00426035 at 6036). This goes to the very heart of the problem that necessitated this lawsuit, i.e., Google

continuing to advertise pirated ebooks. Google's argument that this issue is "tangentially related to Plaintiffs' claims", Dkt. 475 at 2, is laughable.

Google ignores entirely Mr. ▮ supervision of a second project to allow Google to *re-disapprove* merchants, i.e., to suspend merchants who previously had been suspended then reinstated. Dkt. 455 at 2. Google reported that this was a major problem affecting ebook pirates Dkt. 456-1 (GOOG-CENG-00426035 at 6036) ▮▮▮. Google identifies no documents in its existing production that provide details on this project, and identifies no existing custodian whom Google expects will have documents concerning it. Google speculates that Mr. ▮ "supported work done by Google engineers," Dkt. 475 at 2, but does not contend that any of those unnamed "engineers" are custodians.

Both of these projects necessitate including Mr. ▮ as a custodian. Plaintiffs' proposed search-terms 4–7 (Dkt. 455 at 3, ¶¶ 4–7) are drafted to capture documents concerning them.[1]

***Second***, Mr. ▮ "led" Google's "Brand Portal" project, Dkt. 456-3 (GOOG-CENG-00416746 at 6748), an attempt to create a system where owners or authorized sellers of copyrighted or trademarked products could register those products with Google Shopping, such that only authorized sellers would be able to initiate Shopping Ads for those products. Ex. 1 (GOOG-CENG-00412529 at 2530). Google's letter argues that this project was *not* "initiated to address copyright infringement for ebooks in any way." Dkt. 475 at 3. But Google's own documents say just the opposite. One Google document explicitly says that the ▮ include ▮ which the document defines as ▮ Dkt. 456-5 (GOOG-CENG-00407052 at 7053–7054). Another document explains that Google initiated the Brand Portal project to ▮ Ex. 1 (GOOG-CENG-00412529 at 2530). Further, Google initiated the Brand Portal project due to ▮ *Id.*

While Google's opposition argues that Mr. ▮ only "supported" the work of engineers to address technical issues, Google's documents say that Mr. ▮ in fact "led" the Brand Portal project, and also was involved in the decision to ▮ a similar project that involved Google re-entering the ebook ads market. Dkt. 455 at 2; Dkt. 456-3 (GOOG-CENG-00416746 at 6748) (project was ▮").

Google likewise tries to minimize the importance of the Brand Portal by claiming that Google abandoned the initiative because it "was unworkable for the same reasons that Google's idea for an 'allowlist' was technically burdensome." Dkt. 475 at 3. Google leaves out that since

---

[1] Google erroneously claims that the parties did not meet and confer concerning Plaintiffs' proposed terms 4 and 6 (both of which are terms Google is deploying on all existing custodians). Dkt. 475 at 1 and n.1. Google is mistaken. As Google admits in the very next sentence of its letter, Plaintiffs asked Google to treat Mr. ▮ as a *full* custodian, i.e., applying *all* of the existing search-terms to him. *Id.*; Dkt. 475-2 (25.10.28 O+Z Email).

then (and after the instant lawsuit was filed), Google *has* implemented an allow list for legitimate ebook publishers. Dkt. 147 at 3–4. In other words, Google has now implemented the very system that it previously claimed was so "technically burdensome" that it "was unworkable." Discovery into the Brand Portal is thus essential to see whether an allow list was indeed "unworkable," or whether Google simply chose not to stop copyright infringement.

Despite the importance of this issue, Google has produced only 22 documents that even mention the term "Brand Portal."[2] Google's hit report, however, shows 993 documents hitting on that term "brand portal" in Mr. ▮ documents alone. Dkt. 456 ¶ 12. And the Brand Portal initiative involved multiple teams at Google. Notes from the "kickoff" meeting for the project list at least eleven different departments at Google as involved in the project. Dkt. 455-5 (GOOG-CENG-00407052 at 7053). One employee commented that the project "is so [cross-functional], it could be good to have [program] support." *Id.* Plaintiffs' proposed Brand Portal search-terms (Dkt. 455 at 3 ¶¶ 1–2) narrowly target documents concerning the Brand Portal as it relates to this case, i.e., as it relates to ebook piracy (both copyright and trademark violations), repeat infringement, and Google's DMCA policy. Google should deploy these terms on Mr. ▮'s documents.

***Third***, Mr. ▮ held a meeting with the Association of American Publishers ("AAP") about creating an "allow list", i.e., a list of companies that would be allowed to advertise ebooks despite Google's "ban." Dkt. 455 at 2–3. Google claims that documents from ▮▮▮ should address this topic. Dkt. 475 at 3. Yet Google produced only two documents from Ms. ▮ on this topic (a calendar invite, and a stray reference to the upcoming meeting), and has not even provided a hit report indicating whether ▮ possesses *any* documents on this topic. Five Google employees met with the AAP in February of 2022 to discuss creating an allow list. Dkt. 456-8 (GOOG-CENG-00433641 at 3641). The email that Google sent setting up the meeting makes clear that the two sides had discussed this issue before. *Id.* ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮") (emphasis added). It is difficult to believe that none of these five employees took any notes or sent any messages in preparation for or following the meeting. Plaintiffs have drafted a simple search-term to capture such documents. Dkt. 455 at 3 ¶ 3. Google should run this search on Mr. ▮'s documents.

## II.     Google's complaints about timing cast blame on the wrong party.

Tellingly, Google's opposition spends more time complaining about the timing of Plaintiffs' motion than it does arguing the motion's merits. But Google itself provides a summary of Plaintiffs' lengthy and strenuous efforts to reach an agreement with Google concerning Mr. ▮ documents. It is Google's stubborn unwillingness to compromise on this issue, or to admit that the parties were at an impasse, that delayed the filing of Plaintiffs' motion.

When Google first refused to add Mr. ▮ as a custodian, Plaintiffs agreed to evaluate the documents Google produced from custodian ▮ to see whether those documents would obviate the need to add Mr. ▮ as a custodian. Dkt. 475-1 (Google's declaration) ¶ 4(e) and (f). But Ms. ▮ documents revealed that Mr. ▮ played a key and unique role in reducing ▮▮▮, correcting problems with Google's system for suspending merchants, and the Brand

---

[2] Hours before Plaintiffs made this filing, Google made an additional production. Plaintiffs were not able to review this production before filing the instant reply.

Portal initiative. Part I, *supra*. Plaintiffs thus again requested that Google treat Mr. ▉ as a custodian. Dkt. 475-1 ¶ 5(a); O+Z 25.10.21 Email. In the subsequent two months, Plaintiffs proposed modified search-terms three times (including eliminating fifteen of the nineteen search-terms Google is deploying on other custodians) (Dkt. 475-2 at 4–6; Dkt. 475-1 ¶ 6(g)), attempted a horse-trade (offering to include Plaintiff custodians Google had requested in exchange for Google including Mr. ▉) (Dkt. 475-1 ¶ 7), met and conferred with Google *four* times (*id.* at ¶¶ 6(c), (f)–(g), 7), and sent twelve emails. Unfortunately, Google would not agree to a reasonable compromise. The timing of Plaintiffs' motion thus reflects only Plaintiffs' good-faith and strenuous efforts to resolve this issue.

### III. The Court should not order cost-sharing.

Well-aware that Mr. ▉ is an appropriate custodian, Google retreats to a cost-sharing request. Dkt. 475 at 4. Google claims that cost-sharing is appropriate because the necessary discovery is too burdensome. *Id.* This is a remarkable claim because Google has not even provided the Court and Plaintiffs with a hit report showing how many documents Plaintiffs' search-terms return. Still less does Google disclose how many of Mr. ▉ documents are, as Google predicts, duplicative of existing custodians' documents. As the Court is well-aware, this is not the first (or second or third) time that Google has claimed discovery was burdensome without providing a hit report. *E.g.*, Dkt. 218 at 82:19–22, 63:19–64:3 (Hr'g Tr. Oct. 8, 2025); Hr'g Tr. 153:15–154:5 (Dec. 15, 2025). But here again, Google provided a hit report only for four of the parties' *prior* proposed search-terms. Dkt. 456 ¶ 12. And that report indicates that Plaintiffs searches likely will *not* be burdensome. The first term [brand w/2 portal] returned only 1,053 documents (including families). Whereas the term Plaintiffs request in the instant motion further *narrows* that initial proposal, seeking "brand w/2 portal" only if it appears with terms like ebook, textbook, and piracy. Dkt. 455 at 3 ¶ 1. By contrast, Google has moved to compel Plaintiffs to produce documents based on search-terms resulting in millions of hits, and has retracted an agreement on the parameters of Plaintiffs' discovery reached months ago. *See* Dkt. 322 at 103.

Moreover, both the Copyright Act and the Lanham Act provide that costs and attorneys' fees may be awarded to the prevailing party at the conclusion of a case. 17 U.S.C. § 505; 15 U.S.C. § 1117(a). There will be ample time to litigate cost-shifting at the conclusion of this case, by which point the Court will be able to see what documents Google resisted producing.

### IV. Conclusion

The Court should order Google to conduct the targeted searches described above on ▉ ▉ documents.

Respectfully submitted,

*/s/ Jeff Kane*
Jeff Kane