# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; ELSEVIER INC.; ELSEVIER B.V.; and MCGRAW HILL LLC,

*Plaintiffs*,

v.

GOOGLE LLC,

*Defendant.*

Case No. 1:24-cv-04274-JLR-BCM

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GOOGLE LLC'S OBJECTION TO DISCOVERY ORDER AT DKT. 441**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

    I.      BACKGROUND ....................................................................................2

          A.    Plaintiffs Operate Through the Educational Publishers Enforcement Group................................................................2

          B.    Plaintiffs Serve Successive Privilege Logs Identifying Thousands of Withheld Documents ........................................3

          C.    The Magistrate Judge's Denial of Google's Motion...................6

LEGAL STANDARD.....................................................................................................8

    II.     ARGUMENT.........................................................................................9

          A.    The Order Applies the Incorrect Legal Standard to Plaintiffs' Common Interest Assertions.........................................9

          B.    The Order Applies the Incorrect Legal Standards for Work Product Protection ................................................................16

          C.    The Order's Rulings as to BCGuardian Were Also Clear Error and Contrary to Law ....................................................17

CONCLUSION.............................................................................................................27

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Belendez-Desha v. JAF Commc'ns, Inc.*,
2024 WL 5155748 (S.D.N.Y. Dec. 18, 2024) ........................................................................13

*Bodega Invs., LLC ex rel. Kreisberg v. United States*,
2009 WL 1456642 (S.D.N.Y. May 14, 2009) ........................................................................25

*Campinas Found. v. Simoni*,
2004 WL 2709850 (S.D.N.Y. Nov. 23, 2004) ........................................................................10

*Carnegie Inst. of Wash. v. Pure Grown Diamonds, Inc.*,
481 F. Supp. 3d 276 (S.D.N.Y. 2020) ....................................................................................12

*Chevron Corp. v. Donziger*,
2013 WL 4045326 (S.D.N.Y. Aug. 9, 2013) ..........................................................................27

*Coleco Indus., Inc. v. Universal City Studios, Inc.*,
110 F.R.D. 688 (S.D.N.Y. 1986) ...........................................................................................26

*CytoSport, Inc. v. Nature's Best, Inc.*,
2007 WL 1040993 (E.D. Cal. Apr. 4, 2007) ..............................................................22, 23, 24

*Doe v. Syracuse Univ.*,
481 F. Supp. 3d 66 (N.D.N.Y. 2020) .....................................................................................8, 9

*Durling v. Papa John's Int'l, Inc.*,
2018 WL 557915 (S.D.N.Y. Jan. 24, 2018) ......................................................................17, 19

*EFCG, Inc. v. AEC Advisors, LLC*,
2020 WL 6378943 (S.D.N.Y. Oct. 30, 2020) .....................................................................9, 21

*Fengler v. Crouse Health Sys., Inc.*,
634 F. Supp. 2d 257 (N.D.N.Y. 2009) ....................................................................................16

*Fine v. ESPN, Inc.*,
2015 WL 3447690 (N.D.N.Y. May 28, 2015) ........................................................................14

*GMO Gamecenter USA, Inc. v. Whinstone US, Corp.*,
2025 WL 1763262 (S.D.N.Y. June 25, 2025) ....................................................................18, 20

*Granite Partners v. Bear, Stearns & Co.*,
184 F.R.D. 49 (S.D.N.Y. 1999) ..............................................................................................27

*Gucci Am. Inc. v. Guess?, Inc.*,
 271 F.R.D. 58 (S.D.N.Y. 2010) ..............................................................21

*Gulf Islands Leasing, Inc. v. Bombardier Cap., Inc.*,
 215 F.R.D. 466 (S.D.N.Y. 2003) ...............................................10, 14, 15

*Hayden v. Int'l Bus. Machs. Corp.*,
 2023 WL 4622914 (S.D.N.Y. July 14, 2023) ..........................................27

*In re Aggrenox Antitrust Litig.*,
 2017 WL 5885664 (D. Conn. Nov. 29, 2017) ..........................................27

*In re California Bail Bond Antitrust Litigation*,
 778 F. Supp. 3d 1051 (N.D. Cal. 2025) ...................................................11

*In re FTC*,
 2001 WL 396522 (S.D.N.Y. Apr. 19, 2001)..............................................16

*In re Grand Jury Subpoena Dated Mar. 20, 2013*,
 2014 WL 2998527 (S.D.N.Y. July 2, 2014) .............................................21

*In re Hypnotic Taxi LLC*,
 566 B.R. 305 (Bankr. E.D.N.Y. 2017)......................................................12

*In re OneTaste, Inc.*,
 2025 WL 1808724 (E.D.N.Y. July 1, 2025).................................15, 25, 26

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
 2020 WL 6193856 (E.D.N.Y. Sep. 1, 2020)..............................................15

*Johnson Matthey, Inc. v. Rsch. Corp.*,
 2002 WL 1728566 (S.D.N.Y. July 24, 2002) .....................................12, 14

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
 253 F.R.D. 300 (D.N.J. 2008)...................................................................21

*Merck Eprova AG v. Gnosis S.p.A.*,
 2010 WL 3835149 (S.D.N.Y. Sep. 24, 2010)............................................19

*Microsoft Corp. v. Acacia Rsch. Corp.*,
 2014 WL 6450254 (S.D.N.Y. Nov. 17, 2014)............................................12

*Montesa v. Schwartz*,
 2016 WL 3476431 (S.D.N.Y. June 20, 2016) ...........................................19

*Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp.*,
 1999 WL 378337 (S.D.N.Y. June 10, 1999) .............................................18

*Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Tr. No. 1B*,
    230 F.R.D. 398 (D. Md. 2005) ............................................................................................. 11

*Noval Williams Films LLC v. Branca*,
    2016 WL 7238960 (S.D.N.Y. Dec. 14, 2016) ...................................................................... 27

*OneBeacon Ins. Co. v. Forman Int'l, Ltd.*,
    2006 WL 3771010 (S.D.N.Y. Dec. 15, 2006) ................................................................ 24, 25

*Pereira, Tr. for Est. of Capala v. Capala*,
    2019 WL 13392880 (E.D.N.Y. Apr. 16, 2019) ................................................................ 10, 11

*Rubie's Costume Co. v. Kangaroo Mfg., Inc.*,
    2018 WL 4864833 (E.D.N.Y. Sep. 28, 2018) ...................................................................... 22

*Schaeffler v. United States*,
    806 F.3d 34 (2d Cir. 2015) ................................................................................................. 22

*SEC v. Rayat*,
    2023 WL 4706074 (S.D.N.Y. July 24, 2023) ..................................................................... 13

*SEC v. Yorkville Advisors, LLC*,
    300 F.R.D. 152 (S.D.N.Y. 2014) ....................................................................................... 16

*Somers v. QVC, Inc.*,
    2021 WL 3487315 (E.D. Pa. Aug. 9, 2021) ....................................................................... 13

*U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*,
    2021 WL 1968325 (S.D.N.Y. Mar. 31, 2021) ................................................................ 15, 16

*United States v. Ackert*,
    169 F.3d 136 (2d Cir. 1999) ........................................................................................... 19, 20

*United States v. Christie*,
    736 F.3d 191 (2d Cir. 2013) ............................................................................................... 17

*United States v. Kovel*,
    296 F.2d 918 (2d Cir. 1961) ....................................................................................... 4, 7, 18

*United States v. Mejia*,
    655 F.3d 126 (2d Cir. 2011) ............................................................................................... 9

*United States v. Weissman*,
    195 F.3d 96 (2d Cir. 1999) ................................................................................................. 16

*von Bulow by Auersperg v. von Bulow*,
    811 F.2d 136 (2d Cir. 1987) ............................................................................................... 25

*Walsh v. Northrop Grumman Corp.*,
    165 F.R.D. 16 (E.D.N.Y. 1996) ...........................................................................14

## STATUTES

17 U.S.C. § 512(c)(1)(C) ...........................................................................................12

28 U.S.C. § 636(b)(1)(A) .............................................................................................8

## RULES

Fed. R. Civ. P.
    23(a) ........................................................................................................................13
    72(a) ....................................................................................................................1, 8

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 72(a), Google respectfully seeks to modify the Magistrate Judge's December 15, 2025 Order (Dkt. 441). That Order allowed competitors (here, co-plaintiffs) Cengage Learning, Inc. ("Cengage"), McGraw Hill LLC ("McGraw Hill"), Macmillan Learning and Macmillan Holdings , LLC("Macmillan"), and Elsevier Inc. and Elsevier B.V ("Elsevier") (collectively, "Plaintiffs") to withhold thousands of responsive documents on the basis of (1) an improper "common interest" among Plaintiffs and a non-party; and (2) claims of work product protection over routine intellectual property monitoring materials created by a third-party vendor, BCGuardian LLC ("BCGuardian").

Plaintiffs have sought expansive discovery into Google's data, customers, policies, and employees, well beyond the 7,360 works in suit and so-called "pirate" merchants. Since the Court's referral to the Magistrate Judge, Plaintiffs have filed six new motions to compel Google to add custodians, query and apply search terms to new repositories, and "sample" data beyond the DMCA notices and alleged infringing advertisements at issue. They have justified those efforts by pointing to, among other things, the complexity of their claims and Google's defenses.

At the same time, Plaintiffs have sought to limit their own discovery obligations at every turn. The bulk of Plaintiffs' productions contain public registrations of their intellectual property, infringement notices, and test purchases of allegedly infringing works—in other words, documents Plaintiffs should have collected before they filed this lawsuit. Plaintiffs' custodial productions have been anemic—collectively, Plaintiffs have produced only 881 unique custodial documents, while withholding over 2,100 responsive documents (to date)[1] as privileged or work product. By

---

[1] This number will surely increase as Plaintiffs have agreed to review documents for an additional ten custodians and have yet to submit a privilege log for those productions.

identifying those thousands of documents on their privilege log, Plaintiffs have conceded their responsiveness to Google's document requests. And those documents are relevant to Google's ability to mount its defense, including by showing that Plaintiffs unduly delayed in filing suit against Google, thus failing to mitigate damages, and Plaintiffs' contemporaneous assessments of Google's (or others') alleged contribution to the piracy at issue here, outside the litigation context.

Plaintiffs are withholding those documents based on an inadequately justified claim based on the narrow "common interest" exception to privilege waiver, and a theory that extends attorney work production to routine, content-protection efforts. These positions are contrary to law.

Google respectfully seeks the Court's intervention.

## I.    BACKGROUND

### A.    Plaintiffs Operate Through the Educational Publishers Enforcement Group

Plaintiffs and non-party Pearson Education, Inc. ("Pearson") are dominant competitors in the educational publishing industry, who choose to cooperate as members of the "Educational Publishers Enforcement Group" ("EPEG"). Dkt. 273 at 2. Plaintiffs' counsel in this litigation, Oppenheim + Zebrak LLP ("O+Z"), has served as outside counsel for EPEG's members for over a decade. Dkt. 306 ¶ 7. Through EPEG, Plaintiffs and Pearson ("EPEG Publishers") "work to combat piracy of their intellectual property." Dkt. 276-22 ¶ 3. "EPEG's sole focus is on efforts by the publishers to protect their *respective intellectual property*." *Id.* (emphasis added). EPEG maintains the website "stopcounterfeitbooks.com" to "educate the public and booksellers about piracy issues." *Id.* ¶¶ 4, 7. In addition, the "publishers' efforts to combat print counterfeiting include the development of Anti-Counterfeit Best Practices, which are voluntary guidelines for textbook distributors, designed to help textbook distributors avoid, identify and surrender print counterfeit textbooks." *Id.* ¶ 5. And "[a]s part of their anti-piracy efforts," the EPEG Publishers pursue lawsuits, which "are filed in the names of the individual publishers whose copyrighted

works have been infringed, either jointly or individually, depending on the factual circumstances." *Id.* ¶ 6.  The EPEG Publishers have previously filed suits against "pirates" for selling counterfeit electronic textbooks.  Dkts. 306 ¶ 4, 307-310 ¶ 9.

All EPEG members, except for Pearson, are plaintiffs in this lawsuit.  Each Plaintiff is seeking relief relating to the alleged infringement of their "respective" copyrights or trademarks. Dkt. 38 ¶¶ 34, 121.  The Exhibits to the Amended Complaint identify the works and trademarks associated with each individual Plaintiff's claims.  *See* Dkts. 38-1 (identifying copyrighted works), 38-2 (identifying trademarks).  It is undisputed that there is no overlap of ownership as to any copyrights or trademarks at issue.  *See* Dkts. 38-1, 38-2.

### B.    Plaintiffs Serve Successive Privilege Logs Identifying Thousands of Withheld Documents

Upon completing their paltry document production, Plaintiffs initially (and collectively) served a single, categorical log in which nearly all document categories included communications among employees from Cengage, Elsevier, McGraw Hill, Pearson, and Macmillan.  Yet the log failed to explain why any privilege or work product protection was not waived by those third-party disclosures.  Dkt. 275 ¶¶ 3-5.  After Google objected, Plaintiffs served a supplemental categorical log.  That log asserted privilege and/or work product for over 2,300 documents across 72 vague categories, using nearly identical descriptions, involving approximately 22 lawyers and 84 non-lawyers.  *Id.* ¶¶ 9-10.  That log for the first time invoked the common interest exception to waiver for over 2,100 documents, including documents shared with third parties like Pearson and IP-monitoring vendors like BCGuardian.  *Id.* ¶¶ 11-12, 14.  When Google pressed Plaintiffs to justify those assertions, Plaintiffs admitted they have no written common interest agreement, and claimed a shared legal interest in IP "enforcement" and being "common victims of infringement."  *Id.* ¶¶ 18, 27.  Plaintiffs also conceded they have no common interest with their vendor, BCGuardian,

Dkt. 275-8 at BCG-Google00002646, but asserted that the exception to waiver recognized in *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961) and work product protections shield BCGuardian communications from discovery.

After Google indicated it would challenge Plaintiffs' withholding of documents, Plaintiffs served a "partial" log containing a few hundred document-specific entries mirroring the categorical log's descriptions, and stated that logging the rest of the documents would take weeks. Dkt. 275 ¶¶ 23, 25. But the entries on that partial log still failed to address the fundamental deficiencies in Plaintiffs' privilege claims. Google filed its Letter Motion challenging Plaintiffs' privilege and work product assertions in mid-November 2025. *See* Dkt. 273.

In that Letter Motion and related briefing, *see* Dkts. 273, 337, Google objected to Plaintiffs' log on the following grounds: (1) the EPEG Publishers do not have the requisite shared legal interest required to invoke the common interest or co-client privilege because they have no shared interest in any of the alleged infringed intellectual property; (2) the EPEG Publishers' general interest in anti-piracy and reclaiming market share from counterfeit goods is, at most, a shared commercial, not legal, interest; (3) Plaintiffs failed to show how each communication on the log furthered any shared legal interest; (4) Plaintiffs had not shown why documents unrelated to any litigation qualified as attorney work product; (5) BCGuardian does not provide the kind of translation or facilitation services that are protected by attorney-client privilege under *Kovel*; (6) Plaintiffs had not shown that BCGuardian's work product was created *because of* litigation, i.e., BCGuardian's work product was created in the ordinary course of business and essentially similar form irrespective of any litigation; and (7) Plaintiffs waived privilege and work product protection over the withheld materials by putting similar materials at issue in this case.

While the parties were engaged in briefing, Plaintiffs served their Fifth Privilege Log ("Fifth Log"). Yet that non-categorical log—which for the first time identified with specificity which privileges or protections Plaintiffs assert over each of the withheld documents—is still vague, repetitive, and plainly inadequate. To take just one of many examples, the description for "████████████████████████████████" asserts the "████████████" contains nondescript "██████████████████████████████████████████ ██████." The associated joint legal matter description has no less than three "and/or" conjunctions and references ████████████████████████████████████ ██████████████.

The Fifth Log identifies over 2,000 documents that Plaintiffs are withholding under the common interest exception to privilege waiver. The Fifth Log identifies many of those documents as related to either this litigation or prior litigations the EPEG Publishers brought against "pirate" infringers. Of the withheld documents, 840 involve communications with non-party Pearson. Dkt. 338 ¶ 9.[2] Plaintiffs are also withholding approximately 366 EPEG-related documents, including strategy, press, programming, and organizational planning documents—nearly all of which Plaintiffs are withholding as attorney-client privileged and as work product. Dkt. 338 ¶ 17. And Plaintiffs are withholding approximately 1,240 documents involving BCGuardian. Attorney Declaration of Sarah Tomkowiak ("Decl.") ¶ 5. After briefing on Google's Letter Motion closed, the Magistrate Judge allowed Plaintiffs to submit an additional attorney declaration under seal. Dkt. 381 at 5. In that declaration, Plaintiffs' counsel explained that, ████████████████████████

---

[2] Docket Entry 338, the Declaration of Sarah A. Tomkowiak in Support of Google's Letter Reply, generally describes the Fifth Log and the kinds of documents Plaintiffs identify on that privilege log. *See* Dkt. 338 ¶¶ 3-20.

███████████████████████████████████████████████████████████

███████████████████████████████████████.” Dkt. 390 ¶ 5.

### C.     The Magistrate Judge's Denial of Google's Motion

The Magistrate Judge heard argument on Google's Letter Motion on December 15 (the "December 15 Hearing"), and largely rejected Google's legal positions.  With respect to Google's position that the EPEG Publishers "shared a commercial rather than a legal interest," the Magistrate Judge concluded that "99 percent of all legal disputes have financial consequences, sometimes very significant financial consequences, and it should not surprise anybody living in the real world that the financial consequences are often what motivates the legal dispute.  That does not render the common interest exception inapplicable." Decl., Ex. A ("Hr'g Tr.") at 85:20-23, 86:1-7.

The Magistrate Judge next rejected Google's position that the EPEG Publishers "aren't eligible for the common interest exception because they each own their own copyrights and they each own their trademarks rather than jointly owning any of the individual intellectual property at issue."  The Magistrate Judge ruled that joint ownership is not "a requirement" and "[c]ertainly, not in a joint litigation situation where a bunch of plaintiffs are making essentially the same claims in parallel with respect to their individually owned intellectual property."  Hr'g Tr. at 86:8-20.

Next, the Magistrate Judge turned to whether Plaintiffs had waived privilege by ███████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████.  Hr'g Tr. at 139:5-10.  After hearing from counsel, the Magistrate Judge ordered the parties to ████████████████████████████████████████ for *in camera*

review so she could determine whether "███████████████████████████."

*Id.*

Finally, the Magistrate Judge addressed whether Plaintiffs' communications with BCGuardian were shielded from discovery as privileged material under the doctrine set forth in *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961), or protected as work product. The Magistrate Judge stated: "Obviously, [BCGuardian] do[es]n't fill the role of an agent necessary to communicate between attorney and client in the way that the traditional examples of translator, for example or, in some cases, accountant do, but I generally agree with Google's approach here, which is that, to the extent that what BCGuardian is doing is simply ferreting out or presenting facts which plaintiffs need to show, or may need to show in this case, that the work of BCGuardian has appropriately been turned over in discovery. But to the extent that BCGuardian is, in effect, engaged in strategic conversations with counsel, could go – in my mind now, I'm imagining these communications. Maybe counsel is saying, gee, you know, we think you should look at X, Y and Z because we can make the following legal arguments depending on what the facts are. Or maybe BCGuardian is saying, well, you asked me to analyze this particular slice of data with regard to this approach, that approach, the other approach. Which one do you want me to do? Those all feel, to me, very much like they are, in fact, work product and, therefore, within the privilege, even though counsel are not necessarily sitting at their desks in their law firms doing that work themselves." Hr'g Tr. at 91:6-92:7.

Ultimately, the Magistrate Judge found that "plaintiffs have adequately supported their privilege and their work-product designations. I recognize that the two areas where potentially reasonable minds could differ are with respect to some of the BCGuardian documents, not the communications between BCGuardian and plaintiffs' law firm, which are going to qualify for

attorney-client privilege, most likely, in addition to work product.  But where the rubber hits the road is going to be research that BCGuardian has done, work that they've done pursuant to their Statement of Work, where the question is going to boil down to was this done in anticipation of litigation?"  Hr'g Tr. at 138:3-16.  The Magistrate Judge further rejected Google's request that she conduct an *in camera* review of a sample of BCGuardian-related documents on the log, explaining that: "I don't think that in camera review of documents in that universe is going to help because it may not be apparent from the face of the document itself.  So if I were to do the work with regard to those documents, I would not just have to review a particular documents or a particular sample set of documents.  I would undoubtedly have to review six or eight or twenty documents around it to figure out whether plaintiffs appropriately designated this particular document work product that was prepared in anticipation either of this litigation or of one of the pirate lawsuits.  So I don't think it's helpful for me to do that."  Hr'g Tr. at 138:17-139:4.

After the December 15 Hearing, the Magistrate Judge issued an order denying Google's Letter Motion "except with respect to the 34 documents that were withheld for privilege, that include Pearson personnel, and that are dated after May 30, 2024," and included the procedure for *in camera* review of six of those documents.  Dkt. 441 ¶ 2.

## LEGAL STANDARD

Federal Rule of Civil Procedure 72(a) requires a district judge to "modify or set aside" a magistrate judge's order, or part of an order, that "is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  "A finding is clearly erroneous if the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Doe v. Syracuse Univ.*, 481 F. Supp. 3d 66, 73 (N.D.N.Y. 2020).  An order is "contrary to law" where it "fails to apply or misapplies relevant statutes, case law or rules of

procedure." *Id.* "As such, a Magistrate Judge's order is clearly erroneous and contrary to law where the Magistrate applies an incorrect legal standard." *Id.*

In privilege and work product protection disputes, "the party asserting the privilege … bears the burden of establishing its essential elements." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). "If an assertion of privilege is challenged, and court intervention is requested, the resisting party must submit evidence, by way of affidavit, deposition testimony or otherwise … with the ultimate burden of proof resting with the party asserting the privilege or protection." *EFCG, Inc. v. AEC Advisors, LLC*, 2020 WL 6378943, at *3 (S.D.N.Y. Oct. 30, 2020) (quotation marks and citation omitted). That "burden can be met only by an evidentiary showing based on competent evidence … and cannot be discharged by mere conclusory or ipse dixit assertions." *Id.* (quotation marks and citation omitted).

## II.    ARGUMENT

### A.    The Order Applies the Incorrect Legal Standard to Plaintiffs' Common Interest Assertions

The Magistrate Judge erred by applying an incorrect legal standard to Plaintiffs' assertion of the common interest privilege.[3] By accepting that the Plaintiffs shared a common legal interest for years arising solely from the fact that they ultimately chose to pursue their infringement claims against a variety of defendants in joint lawsuits instead of multiple lawsuits, the Magistrate Judge expansively construed the bounds of the narrow common interest rule. That was contrary to law. Multiple courts in the Circuit and beyond have explicitly rejected the position that co-party status is sufficient to benefit from common interest protections. This Court should do the same.

---

[3] Plaintiffs assert a common interest privilege waiver exception over 2,000 documents. Dkt. 338 ¶ 5. Of these, 122 documents are withheld solely based on the attorney-client privilege and 840 involve third party Pearson. Dkt. 338 ¶¶ 7, 9.

To benefit from the common interest rule, Plaintiffs must show for each withheld document that they (1) "share a common legal interest," and (2) that "the statements for which protection is sought were designed to further that interest." *Gulf Islands Leasing, Inc. v. Bombardier Cap., Inc.*, 215 F.R.D. 466, 471 (S.D.N.Y. 2003). Put another way, the rule requires Plaintiffs to make (1) a showing that they share a common interest that is "legal rather than commercial;" and (2) a "practical" showing that they have a "genuine, demonstrated cooperation towards the formulation of a common legal strategy." *Pereira, Tr. for Est. of Capala v. Capala*, 2019 WL 13392880, at *1 (E.D.N.Y. Apr. 16, 2019). Plaintiffs must show that the "common interest is not merely similar but identical," and "[s]imply sharing an interest in prevailing in a litigation is not sufficient to constitute a protected common interest." *Id.* (citing *Campinas Found. v. Simoni*, 2004 WL 2709850, at *2-3 (S.D.N.Y. Nov. 23, 2004)).

The Magistrate Judge incorrectly denied Google's Letter Motion as to Plaintiffs' common interest assertions based on either a clear error of law or non-engagement with the applicable standard.

***First***, the Magistrate Judge rejected Google's argument that Plaintiffs and Pearson are not "eligible for the common interest exception because they each own their own copyrights and they each own their trademarks rather than jointly owning any of the individual intellectual property at issue." Hr'g Tr. at 86:9-13. Holding that such a shared interest is not a "requirement," the Magistrate Judge ruled that such a requirement would "certainly" not apply here "in a joint litigation situation where a bunch of plaintiffs are making essentially the same claims in parallel with respect to their individually owned intellectual property." *Id.* at 86:14-20.

That ruling was contrary to law. Multiple courts have rejected the notion that co-party status alone is sufficient to create a common legal interest—including when the co-parties are

represented by the same counsel and adverse to a single party. *See, e.g.*, *In re California Bail Bond Antitrust Litig.*, 778 F. Supp. 3d 1051, 1064-65 (N.D. Cal. 2025) (finding co-defendants did not have common legal interest arising from prior joint representation because there was "no indication" that any co-defendant had a "legal interest in the outcome of a [proceeding] involving another [co-defendant]" and simply having "similar factual situations" and "similar legal arguments" was "not enough to demonstrate a common legal interest"); *Pereira*, 2019 WL 13392880, at *4 (finding no common legal interest among co-defendants arising from a shared "desire to prevail in litigation" since each defendant's "individual legal interests" were "completely different" and one defendant's "interests in the [disputed] assets w[ould] be unaffected" by any ruling affecting the other defendant); *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 416-17 (D. Md. 2005) (finding no common legal interest because the parties had not shown "common ownership or control" of the relevant property and "[e]mploying joint counsel does not create a common legal interest").

The same reasoning applies here. Plaintiffs admit that they have no shared ownership of any copyrights or trademarks at issue in this or any other prior case, meaning they have no shared **legal** interest as to their respective infringement claims.[4] Dkts. 307-310 ¶¶ 4, 6.

Thus, a past or future ruling as to one Plaintiff's infringement claim has no effect on another Plaintiff's claim. Each Plaintiff must individually bear the burden of demonstrating the elements of their own copyright and trademark infringement claims, including their individual ownership of their respective intellectual property, and Google's engagement as to specific unlawful acts with respect to each specific piece of intellectual property. And each Plaintiff must assert individuated

---

[4] Pearson did not provide any declaration or other evidence in support of Plaintiffs' privilege or work product assertions.

damages theories presumably based on, *inter alia*, the revenue each Plaintiff supposedly lost due to the alleged infringement. As a result, for example, a ruling that Google is entitled to summary judgment on claims brought by McGraw Hill because McGraw Hill did not produce sufficient evidence of copyright ownership would have no bearing on Cengage's, Macmillan's, or Elsevier's ability to prove ownership. Similarly, Elsevier's failure to demonstrate a predicate act of direct copyright infringement as to some or all of its works in suit will have no bearing on whether Cengage or Macmillan or McGraw Hill can carry their burden as to their respective works. Put simply: although they are pursuing their claims in the same lawsuit, as a matter of law, each Plaintiff can obtain a different outcome. Thus, unlike some of the hypotheticals the Magistrate Judge adverted to relating to claims under labor or discrimination laws, Hr'g Tr. at 98:16-99:7, this is not a suit that is being tried (or can be tried) *in gross* across all Plaintiffs because there are no overlapping interests as to any of the asserted infringed works or marks. *See Carnegie Inst. of Wash. v. Pure Grown Diamonds, Inc.*, 481 F. Supp. 3d 276, 279 (S.D.N.Y. 2020) (finding no common interest privilege because only one party had rights in patent); *Microsoft Corp. v. Acacia Rsch. Corp.*, 2014 WL 6450254, at *2 (S.D.N.Y. Nov. 17, 2014) (finding no common interest privilege because parties shared no "legal interest in the patents"); *Johnson Matthey, Inc. v. Rsch. Corp.*, 2002 WL 1728566, at *6 (S.D.N.Y. July 24, 2002) (similar); *In re Hypnotic Taxi LLC*, 566 B.R. 305, 317 (Bankr. E.D.N.Y. 2017) (finding no common interest privilege because party invoking privilege had no shared "legal or beneficial interest in the property of the Trusts").

Plaintiffs have identified only a single potential shared legal interest relevant to this litigation—the interest in overcoming Google's safe harbor defense under the Digital Millennium Copyright Act. Dkt. 304 at 2. But even the safe harbor analysis, like the liability and damages analysis, requires a work-by-work inquiry as to each alleged infringement. *See*, *e.g.*, 17 U.S.C.

§ 512(c)(1)(C) (safe harbor element requiring service provider to remove "the material that is claimed to be infringing"). Tying the applicability of the common interest rule to Google's defenses also makes no sense. Under that proposed rule, if Google had not asserted the safe harbor, would that extinguish Plaintiffs' claimed common interest? Plaintiffs' preferred rule also creates unnecessary ambiguity about when the claimed common interest would have arisen. Before the lawsuit? When Google filed its Answer (months into the lawsuit)? Plaintiffs provide no answer.

Rather than squarely address the primary prong of the common interest doctrine test—whether a shared legal interest exists in the first instance (it does not)—the Magistrate Judge focused almost entirely on the fact that the Plaintiffs are in a "joint litigation situation." Hr'g Tr. at 86:16-17. But, again, co-party status does not create a common legal interest. *See supra*, at 10-11. Nor does co-client status. *Supra*, at 11; *see also SEC v. Rayat*, 2023 WL 4706074, at *3 (S.D.N.Y. July 24, 2023) (requiring co-clients to demonstrate they shared a common legal interest); *Somers v. QVC, Inc.*, 2021 WL 3487315, at *4 (E.D. Pa. Aug. 9, 2021) (finding co-client communications not privileged because co-clients did not share a legal interest).[5] The Magistrate Judge's reliance on that factor as dispositive was contrary to law.

**Second**, the Magistrate Judge rejected Google's position that even if the Plaintiffs have a shared anti-piracy interest, such an interest would be a commercial, not legal, interest. The reasoning underpinning the Magistrate Judge's ruling was that "99 percent of all legal disputes have financial consequences … [and] financial consequences are often what motivates the legal

---

[5] Plaintiffs' reliance on class action suits to enforce their case is misplaced. Dkt. 304 at 2. Plaintiffs in class actions must still demonstrate commonality. Fed. R. Civ. P. 23(a). Moreover, class actions are unique in that they are designed to allow claimants whose stake is too small, relative to the costs of litigation, to otherwise proceed with one class representative pursuing common claims on behalf of all claimants. *Belendez-Desha v. JAF Commc'ns, Inc.*, 2024 WL 5155748, at *7 (S.D.N.Y. Dec. 18, 2024). That is not the case here, where each Plaintiff has asserted copyright claims for more than 575 works on behalf of themselves.

dispute. That does not render the common interest exception inapplicable." Hr'g Tr. 86:1-7. Google does not dispute that a shared legal interest may also implicate commercial interests. But parties attempting to invoke the common interest rule must show the "need for a common defense [as opposed to the mere existence of a] *common problem*." *Fine v. ESPN, Inc.*, 2015 WL 3447690, at *12 (N.D.N.Y. May 28, 2015) (emphasis added). Plaintiffs have a shared problem, no doubt— how to generally deal with the theft of their intellectual property. But that is a commercial interest. *See*, *e.g.*, *Johnson*, 2002 WL 1728566, at *6 (holding that a shared interest in maximizing royalty income is not a common legal interest). The fact that they have chosen to coordinate on their legal strategy makes no difference, because the "existence … of [a] coordinated legal strategy is insufficient where there is only a common commercial interest and no identity of legal interests." *Gulf Islands*, 215 F.R.D. at 473.[6]

Nor can Plaintiffs ground their claimed common interest in their EPEG activities. A "joint business strategy that happens to include a concern about litigation" does not create a shared legal interest. *Walsh v. Northrop Grumman Corp.*¸ 165 F.R.D. 16, 18 (E.D.N.Y. 1996).[7] McGraw Hill's Associate General Counsel has previously testified that EPEG engages in several activities to "combat piracy," including (1) maintaining a website; (2) developing "Anti-Counterfeit Best Practices"; (3) "publishing stories"; and (4) "filing lawsuits" in the "names of the individual publishers whose copyrighted works have been infringed, either jointly or individually, depending on the factual circumstances." Dkt. 276-22 ¶¶ 3-7. Clearly, not all of EPEG's commercial anti-

---

[6] Unsurprisingly, given their status as competitors, even Plaintiffs' legal strategy is not entirely aligned. Plaintiffs have forbidden Google from sharing one party's confidential information with another party, including documents relevant to each Plaintiff's legal claims that Plaintiffs contend form the basis of their "common interest." Dkts. 337 at 3, 338 ¶ 21.

[7] For these same reasons, Plaintiffs' withholding of 18 documents ██████████████ is improper. Dkt. 338 ¶ 10.

piracy activities involve litigation.  At minimum, Plaintiffs' withholding of EPEG budget, strategy, press, programming, and organizational planning documents for common interest reasons, *see* Dkt. 338 ¶ 17, is improper because "communications regarding business matters—even where litigation is pending or imminent—do not qualify for protection from discovery under the common interest rule."  *Gulf Islands*¸ 215 F.R.D. at 471 (collecting cases).  The Magistrate Judge erred in not specifically applying the relevant standard to the withheld EPEG documents, for which Plaintiffs utterly failed to support their privilege claims.  *See In re OneTaste, Inc.*, 2025 WL 1808724, at *5 (E.D.N.Y. July 1, 2025) (reversing magistrate judge's ruling that privilege applied where the "record evidence" did "not support the determination that Petitioner has met its burden as to any of the documents at issue").

**Third**, the Magistrate Judge did not analyze whether Plaintiffs had met their burden to show how each withheld communication or document on Plaintiffs' log furthered any claimed common interest.  *See In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 2020 WL 6193856, at *3 (E.D.N.Y. Sep. 1, 2020).  Plaintiffs' privilege log includes virtually identical, vague descriptions for each entry that do "nothing" to show "whether the underlying documents are or are not privileged" since they do not specify the common interest at issue.  *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 2021 WL 1968325, at *4 (S.D.N.Y. Mar. 31, 2021).  Indeed, even accepting Plaintiffs' assertion that their common interest arises from their status as co-plaintiffs, the Fifth Log says nothing about how non-litigation or EPEG documents are relevant to any "co-plaintiff" interest.  *See, e.g.*, Dkt. 307 ¶ 13 (asserting common interest as to the litigation "matters identified on Plaintiffs' privilege logs," not EPEG matters generally). The Magistrate Judge's ruling that the common interest privilege applies to thousands of withheld responsive

documents did not require Plaintiffs to satisfy their burden as to each document and was contrary to law.

The Second Circuit is clear that "[p]rivileges should be narrowly construed and expansions cautiously extended." *United States v. Weissman*, 195 F.3d 96, 100 (2d Cir. 1999); *see also In re FTC*, 2001 WL 396522, at *4 (S.D.N.Y. Apr. 19, 2001) (noting the "Second Circuit has warned that expansions of the attorney-client privilege under the common interest rule should be 'cautiously extended'"). The Magistrate Judge's order, if allowed to stand, would allow any set of co-plaintiffs to invoke the common interest rule against a defendant—and shield critical pre-lawsuit communications from discovery—based solely on their affiliation as co-plaintiffs. That is not currently the law, and it should not be the law. *See, e.g.*, *Fengler v. Crouse Health Sys., Inc.*, 634 F. Supp. 2d 257, 261-62 (N.D.N.Y. 2009) (reversing magistrate where order resulted in broad application of narrow doctrine).

### B.  The Order Applies the Incorrect Legal Standards for Work Product Protection

The Magistrate Judge also did not engage with any of Google's arguments regarding Plaintiffs' work product claims. For example, the Magistrate Judge did not analyze whether Plaintiffs waived work product protection based on their impermissibly indeterminate Fifth Log or their failure to provide an adequate log despite having months to do so. *See Triaxx*, 2021 WL 19683285, at *4; *SEC v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 166-67 (S.D.N.Y. 2014) (rejecting new privilege claims because a party may not "make its assertions of privilege a moving target"). The Magistrate Judge also did not apply the law when concluding that Plaintiffs substantiated their claims of work product protection over documents not purportedly associated with any litigation and EPEG organizational documents like budget, press, and other planning

16

materials.[8]  Plaintiffs had the burden to show that they prepared those documents *because of* anticipation of litigation.  "Generalized steps to avoid non-specific litigation are not accorded work product protection."  *Durling v. Papa John's Int'l, Inc.*, 2018 WL 557915, at *4 (S.D.N.Y. Jan. 24, 2018) (citation omitted).  But Plaintiffs failed to make that showing, and the Magistrate Judge did not apply the work product standard when she found that work product protection generally applied to EPEG documents and documents not associated with any litigation.  The Magistrate Judge's denial of Google's Letter Motion without applying the appropriate work product and waiver legal standards was contrary to law.  *See United States v. Christie*, 736 F.3d 191, 195, 197-98 (2d Cir. 2013) (vacating sentencing decision because "the lack of reasoning in the court's order" prevented the reviewing court "from exercising 'meaningful appellate review'").

## C.  The Order's Rulings as to BCGuardian Were Also Clear Error and Contrary to Law

The Magistrate Judge's rulings as to the improperly withheld BCGuardian materials were also clear error and contrary to law.[9]  The Magistrate Judge erred by (1) recognizing the appropriate *Kovel* standard, but then misapplying it; (2) applying the wrong evidentiary standard in accepting Plaintiffs' conclusory assertions that BCGuardian materials are work product; and (3) misapplying the waiver of work product standard to BCGuardian's materials.

**First,** the Magistrate Judge correctly stated the legal rule as to when communications with third parties do not waive attorney-client privilege, but she misapplied it by holding that Plaintiffs' communications with BCGuardian were likely privileged.  In *United States v. Kovel*, the Second Circuit held that including third parties on attorney-client communications would not result in

---

[8] Plaintiffs withhold approximately 18 documents ███████████████████ as work product.  Dkt. 338 ¶ 10.

[9] Plaintiffs withhold 1,240 documents involving or prepared by BCGuardian as privileged or protected.  Decl. ¶ 5.

privilege waiver if those third parties performed specialized services that provided for the interpretation or translation of communications between attorney and client.  296 F.2d at 922.  To benefit from *Kovel*, the third party services must be "necessary for the [Plaintiffs] to obtain informed legal advice." *GMO Gamecenter USA, Inc. v. Whinstone US, Corp.*, 2025 WL 1763262, at *5 (S.D.N.Y. June 25, 2025).  That means Plaintiffs must have shown "that the involvement of the third party [is] nearly indispensable or serve[s] some specialized purpose in facilitating the attorney-client communications." *Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp.,* 1999 WL 378337, at *4 (S.D.N.Y. June 10, 1999).

At the December 15 Hearing, the Magistrate Judge recognized that BCGuardian "[o]bviously, … do[es]n't fill the role of an agent necessary to communicate between attorney and client in the way that the traditional examples of translator, for example or, in some cases, accountant do[.]"  Hr'g Tr. at 91:6-10.  The Magistrate Judge also stated that she "agree[d] with Google's approach," confirming that *Kovel* would not apply to communications with BCGuardian "to the extent what BCGuardian is doing is simply ferreting out or presenting facts which plaintiffs need to show, or may need to show in this case."  Hr'g Tr. at 91:6-16.  Yet the Magistrate Judge ultimately ruled that "the communications between BCGuardian and plaintiffs' law firm" would "qualify for attorney-client privilege, most likely,"  Hr'g Tr. at 138:8-11.  But that ruling is inconsistent with the Magistrate Judge's previous analysis of *Kovel*'s applicability, and the Magistrate Judge provided no other basis to find that attorney-client privilege attached to the BCGuardian communications.[10]  Thus, the ruling is contrary to law, and clear error.

Plaintiffs did not carry their burden to show that the *Kovel* privilege applies to their communications with BCGuardian.  As the Magistrate Judge correctly observed, BCGuardian does

---

[10] For six of BCGuardian's documents Plaintiffs only assert attorney-client privilege.  Decl. ¶ 6.

not "fill the role of an agent necessary to communicate between attorney and client" like a translator or accountant. Hr'g Tr. at 91:6-8. Indeed, BCGuardian's Statement of Work is clear that the vendor's engagement is "███████████████████████████████," which includes "███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████." Dkt. 275-8 at BCG-Google00002646-47. Plaintiffs' counsel's sworn declaration further states that BCGuardian's work involves "collecting data related to the promotion of sellers of unauthorized digital copies of their works on, among others, Google's platform." Dkt. 306 ¶ 10; *see also* Dkts. 307-310 ¶¶ 14-15 ("BCGuardian's activities … have included collecting and analyzing evidence.").

Those activities do not fall under *Kovel*'s protection. The Second Circuit is clear that the *Kovel* doctrine does not apply to communications with third parties who merely collect "information [the client] [does] not have." *United States v. Ackert*, 169 F.3d 136, 139-40 (2d Cir. 1999). In *Durling v. Papa John's Int'l, Inc.*, for example, the defendant sought to withhold as work product communications with a third party hired to perform "an analysis of alternative approaches to reimbursement" policies. 2018 WL 557915, at *2. The court rejected the application of *Kovel*, "because [the third party's] role was not as a translator or interpreter of client communications," instead, the third party was used to "obtain information that [defendant] did not already have." *Id.* at *5; *see also Montesa v. Schwartz*, 2016 WL 3476431, at *5-6 (S.D.N.Y. June 20, 2016) (rejecting application of *Kovel* where third parties were used "to obtain and provide information … that [the plaintiff] did not already have"); *Merck Eprova AG v. Gnosis S.p.A.*, 2010

19

WL 3835149, at *2 (S.D.N.Y. Sep. 24, 2010) (finding *Kovel* did not apply because third party was "providing expert information" not "act[ing] as a translator for client communications"); *GMO Gamecenter*, 2025 WL 1763262, at *9-14 (similar).

The same is true here.  BCGuardian's role is not one of translator or interpreter, but rather, as Plaintiffs admit, of data collector: "O+Z engaged BCGuardian to … collect[] data related to the promotion of sellers of unauthorized digital copies of [Plaintiffs'] works."  Dkt. 306 ¶ 10.  The fact that O+Z may have used this data to inform its legal advice to Plaintiffs does not alter the analysis under *Kovel*, *Ackert*, or *Durling*.  Because BCGuardian's role is to collect information Plaintiffs do not have, not to translate or interpret Plaintiffs' information, these communications are not protected by the *Kovel* doctrine.

BCGuardian also does not qualify for the *Kovel* privilege because its services are not indispensable.  *United States v. Ackert*, 169 F.3d 136 (2d Cir. 1999) is instructive.  In *Ackert*, the Second Circuit reversed a magistrate judge's ruling that an attorney's communications with a third party investment banker were privileged.  *Id.*  The defendant had argued that the communications between counsel and the third party were privileged because counsel requested the information "for the sole purpose of providing legal advice."  *Id.* at 139.  In reversing the magistrate judge, the Second Circuit explained that the purpose of the attorney-client privilege is to "protect[] communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client."  *Id.*  Therefore, "a communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client."  *Id.*  Because the counsel in the case did not "rely[] on [the defendant] to translate or interpret information," the *Kovel* doctrine did not apply.  *Id.* at 139-40.

The same reasoning applies here. Plaintiffs contend that "O+Z must rely on BCGuardian's knowledge and expertise" due to the "complexities of digital piracy and the scale of infringement." Dkt. 304 at 3. They point to O+Z's reliance on BCGuardian to "collect" data and "target investigations" in order "to inform its legal advice." *Id.* But even if BCGuardian's services are "essential for the attorneys to understand and then provide that legal advice," as Plaintiffs' counsel suggests, that is not enough to sustain Plaintiffs' *Kovel* claim because BCGuardian is not translating information from Plaintiffs to Plaintiffs' counsel. Hr'g Tr. at 92:22-23. Plaintiffs argued at the December 15 Hearing that "post-Kovel cases do extend to investigators and others doing activities that are beyond literal translation." *Id.* at 92:24-93:1. But as Google explained in its Letter Reply, in the *Kovel* cases Plaintiffs referenced, the third party was interpreting the client's information, not collecting information the clients did not have. *See* Dkt. 337 at 3-4; *see also Gucci Am. Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 71 (S.D.N.Y. 2010) (in-house counsel "gather[ed] information from Gucci employees"); *EFCG*, 2020 WL 6378943, at *1 (vendor conducted investigation of client's IT systems); *In re Grand Jury Subpoena Dated Mar. 20, 2013*, 2014 WL 2998527, at *8 (S.D.N.Y. July 2, 2014) (investigator obtained information from client); *cf. La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 314 (D.N.J. 2008) (no *Kovel* privilege because third party did not "facilitate[] attorney-client communications"). Plaintiffs' declarants recited the relevant standard, stating that BCGuardian provides "unique assistance" in "understand[ing] and interpret[ing] the evidence" it gathers for Plaintiffs, Dkts. 307-310 ¶ 14, but they do not explain why running internet searches for textbooks, engaging in "test purchases," or reviewing basic Excel sheets requires any specialized expertise. Dkt. 273 at 3-4. Indeed, Plaintiffs' whole theory of harm rests on the notion that a college student can find, document, and purchase "pirated" textbooks themselves, and certainly without BCGuardian's assistance.

**Second**, the Magistrate Judge erred in finding that Plaintiffs "adequately supported … their work-product designations," Hr'g Tr. at 138:3-5. Plaintiffs have the burden of proving that BCGuardian's materials were produced *because of* litigation. *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015). Documents "prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation," are not work product. *Id.*

The Magistrate Judge relied on Plaintiffs' conclusory unsworn assertions that BCGuardian's materials were created in anticipation of litigation to find that work product protection applied to documents that are routine, brand protection materials. That was contrary to law and error. BCGuardian's Statement of Work is clear that its services are in "████████████ ████████████████████." Dkt. 275-8 at BCG-Google00002646. That kind of activity does not qualify for work product protection because it is the type of work that courts have held constitutes regular business operations. For example, in *Rubie's Costume Co. v. Kangaroo Mfg., Inc.*, the Eastern District of New York rejected the plaintiff's work product claims over documents concerning its investigations into "suspicions of counterfeiting" and test purchases. 2018 WL 4864833, at *2 (E.D.N.Y. Sep. 28, 2018). The court held that counterfeit investigations and test purchases are part of brand protection and brand integrity efforts, which are "an ordinary and integral part" of a company's business. *Id.* at *4. Likewise, in *CytoSport, Inc. v. Nature's Best, Inc.*, the Eastern District of California rejected the plaintiffs' work product claims over trademark monitoring reports. 2007 WL 1040993, at *6-7 (E.D. Cal. Apr. 4, 2007). There, the court "acknowledge[d] that trademark watch services are used to police an owner's trademark, and as a result, may lead to litigation." *Id.* But the court explained that because "the specter of litigation at the time a search report is generated is abstract at best" and the reports themselves "contain

factual information and not an attorney's mental impressions," the reports are not protected work product. *Id.*

The same is true here. BCGuardian's investigations involve "███████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████████████." Dkt. 275-8 at BCG-Google00002646-47; *see also, e.g.*, Dkt. 275-7 at BCG-Google0000039 (internal BCGuardian email describing "████████████████████████████████").[11] Those are the same activities that the *Rubie's* and *CytoSport* courts held do not qualify as work product because they are services performed in the ordinary course of brand protection. And Plaintiffs' communications confirm BCGuardian's materials are used for content protection. For example, ███████████████████████████████████████████████ ████████████████████████████████████████." Dkt. 338-1. Consistent with that description, those ███████████████████████████ (which also appear to be on Plaintiffs' Fifth Log, *see* Dkt. 338 ¶ 18) ████████████████████████ ███████████████████████████████████████████████ ████████████████████████. Dkt. 338-1; *see also* Dkts. 276-21, 338-5. None of these spreadsheets

_____

[11] To the extent Plaintiffs are withholding or redacting documents to hide the fact that ██████████████ ███████████████████████. *See* Dkt. 338 ¶¶ 18, 20 (describing produced document indicating Plaintiffs are redacting ██████████████████████████████████████████████ ███████████████████████).

contain attorney analysis, legal strategy, or mental impressions. *CytoSport*, 2007 WL 1040993, at *6-7 (finding factual information without attorney mental impressions was not work product).

The Magistrate Judge also erred by finding work product applied even though Plaintiffs failed to provide any sworn declarations or other evidence showing that BCGuardian's materials were created *because of* litigation. *See* Dkts. 306, 307-310. Plaintiffs' declarants stated only that past cases have "been based on evidence collected by BCGuardian." Dkt. 306 ¶ 9. The Magistrate Judge correctly observed that such a statement was "not enough to establish the anticipation-of-litigation point because you have to have anticipated litigation when BCGuardian did the work," Hr'g Tr. at 127:25-128:3, and that counsel's declaration and letter brief did not provide "██████ ██████" asserting "████████████████████████████████████████ █████." Hr'g Tr. at 127:15-18. Because Plaintiffs bear the burden to show the applicability of work product protection, Plaintiffs' failure to do so should have been the end of the inquiry.

But it wasn't. Plaintiffs' counsel argued at the December 15 Hearing that, because Plaintiffs had filed suits against "pirates" by the time it engaged BCGuardian, that was evidence that BCGuardian's entire engagement was in anticipation of litigation. Hr'g Tr. at 128:6-25. Based on that unsworn representation by counsel, the Magistrate Judge looked past the text of BCGuardian's Statement of Work—████████████████████████████████████ ████████████████████—and the other evidence showing BCGuardian's work constitutes ordinary content protection efforts that Google submitted with its briefing, *see*, *e.g.*, Dkts. 275 ¶ 28, 275-5, 275-6, 275-7, 275-8, 338 ¶¶ 19-20, 338-1, 338-2, 338-3, 338-4, 338-5, to find that Plaintiffs' oral representation was "████████████" with the language of BCGuardian's Statement of Work. Hr'g Tr. at 133:16-19. But "████████████" is not the standard, Plaintiffs needed to "establish the essential elements of the privilege." *OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, 2006

WL 3771010, at *4 (S.D.N.Y. Dec. 15, 2006) (quotation marks and citation omitted).  And courts may not find that work product protection applies from "conclusory or ipse dixit assertions" made by counsel that are "unsworn."  *Id.*; *see also Bodega Invs., LLC ex rel. Kreisberg v. United States*, 2009 WL 1456642, at *10 (S.D.N.Y. May 14, 2009) (quoting *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987)).  The "formulaic assertion" from Plaintiffs' counsel—which the Magistrate Judge improperly credited—"that certain documents were created in anticipation of litigation does not satisfy [Plaintiffs'] burden."  *Id.* (finding plaintiff's conclusory assertions and "general description of the nature of the documents" insufficient to substantiate work product claims).  That is especially true here, where Plaintiffs' representations from counsel at the December 15 Hearing went beyond what was in the filed sworn declarations of counsel and Plaintiffs' in-house counsel.  *Cf.* Dkts. 306 ¶¶ 9-10, 307-310 ¶¶ 14-15.  Accordingly, the Magistrate Judge's ruling was contrary to law.  *See In re OneTaste*, 2025 WL 1808724, at *6 (reversing magistrate judge's privilege ruling where attorney declaration filed in support of finding the privilege "lack[ed] important specifics").

Finally, the Magistrate Judge's decision to not conduct *in camera* review compounded the error in her ruling.  Based on the record before her, the Magistrate Judge acknowledged that "reasonable minds could differ … with respect to some of the BCGuardian documents" and that the work product inquiry "boil[s] down to was this done in anticipation of litigation?"  Hr'g Tr. at 138:6-8, 138:15-16.  But when Google asked the Magistrate Judge to review just five of the BCGuardian materials *in camera* to help resolve the dispute, the Magistrate Judge declined because it might mean having "to review six or eight or twenty documents around [each reviewed document] to figure out whether plaintiffs appropriately designated this particular document work product that was prepared in anticipation either of this litigation or of one of the pirate lawsuits."

Hr'g Tr. at 138:23-139:3.  Having recognized that "reasonable minds could differ" as to whether Plaintiffs had met their evidentiary burden, the Magistrate Judge's ruling in Plaintiffs' favor, absent review of at least a sample of the withheld BCGuardian documents, was clear error and contrary to law.  *See In re OneTaste*, 2025 WL 1808724, at *5 (reversing magistrate judge's finding of privilege as unsupported by the record and based on incorrect view that challenger bore evidentiary burden).

      ***Third***, the Magistrate Judge also erred and ruled contrary to law by misapplying the legal standard when analyzing whether Plaintiffs have waived any protections as to BCGuardian's work product by putting BCGuardian's efforts at issue in the litigation.  Plaintiffs' claims rest heavily on BCGuardian's work product.  Plaintiffs cite BCGuardian's efforts to support the allegations in their Complaint, *see* Dkt. 38 ¶ 99.  And Plaintiffs have produced over 300,000 documents containing infringement notices and test purchases prepared by BCGuardian in support of Plaintiffs' infringement claims.  Dkt. 275 ¶ 28(a).  Plaintiffs also admit that their "vendor," i.e., BCGuardian, will testify as a fact witness in this case.  Hr'g Tr. at 24:13-14; Decl. ¶ 3.[12]  To the extent the BCGuardian materials are protected at all, the "selective waiver of [Plaintiffs'] work product privilege … constitutes an implied waiver of all work product relevant to the same issue." *Coleco Indus., Inc. v. Universal City Studios, Inc.*, 110 F.R.D. 688, 691 (S.D.N.Y. 1986).  That is because waiver doctrine rests on the principle that "fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to

---

[12] The Magistrate Judge held that Google's waiver challenge was "premature" based on the assumption that BCGuardian would "be testifying as an expert."  Hr'g Tr. at 135:6-8, 135:17.  But in addition to including BCGuardian's efforts and references to BCGuardian's work product in their Complaint, Plaintiffs have identified BCGuardian as an entity that is likely to have discoverable factual information.  Decl. ¶ 3.  Plaintiffs have not identified BCGuardian as an expert witness.  Google's waiver challenge is ripe.

the disadvantage of the adversary." *Noval Williams Films LLC v. Branca*, 2016 WL 7238960, at *4 (S.D.N.Y. Dec. 14, 2016). Plaintiffs should not be allowed to use their work product, such as test purchase data or documents purporting to identify or verify ads for allegedly infringing works, "to prove a point but then invok[e] … privilege to prevent [Google] from challenging that assertion." *Chevron Corp. v. Donziger*, 2013 WL 4045326, at *4 (S.D.N.Y. Aug. 9, 2013); *Granite Partners v. Bear, Stearns & Co.*, 184 F.R.D. 49, 54-56 (S.D.N.Y. 1999) (finding waiver where party used work product as sword and shield).

Moreover, Google has a substantial need for BCGuardian documents, which form the core of Plaintiffs' direct infringement allegations. Google is entitled to discovery enabling it to challenge Plaintiffs' conclusory assertions of direct infringement, for which they seek to hold Google liable. Plaintiffs cannot rely on these materials while withholding unique, contemporaneous documents supporting Plaintiffs' direct infringement assertions. *See Hayden v. Int'l Bus. Machs. Corp.*, 2023 WL 4622914, at *12 (S.D.N.Y. July 14, 2023) (finding substantial need where documents were "highly probative" of liability); *In re Aggrenox Antitrust Litig.*, 2017 WL 5885664, at *14 (D. Conn. Nov. 29, 2017) (ordering production of work product where case "turn[ed] on" specific evidence, and documents offered "contemporaneous" and "unique" probative value).

## CONCLUSION

For these reasons, the Court should modify the Magistrate Judge's Order at Dkt. 441 ¶ 2. Google respectfully requests that the District Court find that (1) the common interest/co-client privilege does not apply to the withheld documents; (2) the *Kovel* privilege does not apply to documents involving BCGuardian; (3) Plaintiffs have waived attorney work product over the withheld "common interest" documents; (4) the BCGuardian documents are not attorney work product; and (5) even if the BCGuardian documents are work product, Plaintiffs have waived any

protection as to those documents, and Google has a substantial need for those documents that justifies production. In the alternative, Google requests that the District Court conduct an *in camera* review of a subset of the documents withheld as privileged or work product.

A Proposed Order is submitted concurrently herewith.

Dated: December 29, 2025
       McLean, Virginia

Respectfully submitted,

**LATHAM & WATKINS LLP**

*/s/ Sarah A. Tomkowiak*
Sarah A. Tomkowiak (*pro hac vice*)
Sarang Vijay Damle
Holly K. Victorson (*pro hac vice*)
Laura E. Bladow (*pro hac vice*)
Roberto J. Borgert (*pro hac vice*)
Brent T. Murphy (*pro hac vice*)
Sara E. Sampoli (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: sy.damle@lw.com
       sarah.tomkowiak@lw.com
       holly.victorson@lw.com
       laura.bladow@lw.com
       roberto.borgert@lw.com
       brent.murphy@lw.com
       sara.sampoli@lw.com

Allison L. Stillman
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: alli.stillman@lw.com

Joseph R. Wetzel
505 Montgomery Street, Suite 2000

28

San Francisco, California 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: joe.wetzel@lw.com

*Attorneys for Defendant Google LLC*

**CERTIFICATION OF WORD COUNT**

I certify that the foregoing memorandum of law complies with the formatting and word limit requirements set forth in Rule 3.C of the Court's Individual Rules of Practice in Civil Cases because it contains 8,603 words, excluding the cover page, table of contents, table of authorities, signature block, and certification of word count.  This memorandum of law also complies with the applicable formatting rules because it has been prepared in 12-point font and all text is double-spaced.

In preparing this certification, I relied on the word count of the Microsoft Word computer program used to prepare this memorandum of law.


Dated: December 29, 2025                             */s/ Sarah A. Tomkowiak*
                                                      Sarah A. Tomkowiak