# EXHIBIT A
# [Redacted Version of Document Filed Under Seal]

```
                 UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF NEW YORK
------------------------------:

CENGAGE LEARNING, INC.,        : Case No.: 24-cv-4274

et al.,                        :

                    Plaintiff, :

     v.                        :

GOOGLE LLC,                    : New York, New York

                   Defendant. : December 15, 2025

------------------------------:
```

TRANSCRIPT OF STATUS CONFERENCE HEARING

BEFORE THE HONORABLE BARBARA MOSES

UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

| | |
|---|---|
| For Plaintiff: | OPPENHEIM + ZEBRAK, LLP |
| | BY:  Michele H. Murphy, Esq. |
| | Matthew J. Oppenheim, Esq. |
| | Danae Tinelli, Esq. |
| | Jeff Kane, Esq. |
| | Yunyi Chen, Esq. |
| | Uriel Lee, Esq. |
| | 5225 Wisconsin Avenue, NW |
| | Washington, DC 20015 |
| | |
| For Defendant: | LATHAM & WATKINS LLP |
| | BY:  Sarah A. Tomkowiak, Esq. |
| | Sarang Damle, Esq. |
| | Roberto J. Borgert, Esq. |
| | Sara E. Sampoli, Esq. |
| | 555 Eleventh Street, NW |
| | Washington, DC 20004 |


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

AMM TRANSCRIPTION SERVICE - 631.334.1445

1   get that information that's useful to you.

2        MR. KANE:  There's no way for us to, sort

3   of, go back in time and see, were they correct when

4   they said, we can't find this content?

5        THE COURT:  Does that --

6        MR. KANE:  So --

7        THE COURT:  Okay.  So what are you going to

8   do about that?

9        MR. KANE:  So, really, the test for that is

10  our notices.

11        So with our notices, we do know that, like,

12  the content was there.  In a lot of cases, we have

13  screenshots for them.  But at the very least, we

14  have a vendor who will testify.

15        THE COURT:  All right.  So for purposes of

16  that aspect of whether Google's program was

17  reasonable, you're content to rely on your own

18  universe.  And you're going to, presumably, either

19  argue that it's a big-enough sample set all by

20  itself, or that the Court should feel justified in

21  extrapolating from how Google treated your notices

22  to how Google treats everybody else's.

23        MR. KANE:  Yeah.  We, sort of, have to do

24  that because those are the only ones for which we

25  have the evidence.

AMM TRANSCRIPTION SERVICE - 631.334.1445

1          THE COURT:  Should we all take two minutes?

2          MR. DAMLE:  That's fine, your Honor.  Yes.

3          THE COURT:  Then we better make it five.

4          MR. DAMLE:  Yeah.  Yeah.

5          THE COURT:  Because the bathrooms are down

6    the hall.

7          Actually, Counsel, there's more bathrooms

8    through the jury room under the clock there, if

9    that's of interest to you.

10         Five minutes.

11         (A recess was taken.)

12         THE DEPUTY CLERK:  We're now back on the

13   record in the matter of Cengage Learning, Inc.

14   et al. v. Google LLC; Case Number: 24-cv-4274.

15         THE COURT:  All right.  With respect to the

16   privilege motion filed originally by defendant on

17   November the 14th, I think, at Dockets 273 and 274,

18   let me tell you where I am at on this particular

19   motion.

20         Google argues that the common interest

21   exception to waiver doesn't apply here because the

22   four plaintiffs plus ██████ shared a commercial

23   rather than a legal interest.

24         That appears to be one of the arguments.  I

25   do not think that argument is meritorious.  Every

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    legal dispute -- okay, 99 percent of all legal

2    disputes have financial consequences, sometimes very

3    significant financial consequences, and it should

4    not surprise anybody living in the real world that

5    the financial consequences are often what motivates

6    the legal dispute.  That does not render the common

7    interest exception inapplicable.

8           Google next argues that plaintiffs and/or

9    ███████  aren't eligible for the common interest

10   exception because they each own their own copyrights

11   and they each own their trademarks rather than

12   jointly owning any of the individual intellectual

13   property at issue.

14          I don't think that's a requirement, and I

15   don't think that the cases that Google cited

16   indicate that it is.  Certainly, not in a joint

17   litigation situation where a bunch of plaintiffs are

18   making essentially the same claims in parallel with

19   respect to their individually owned intellectual

20   property.

21          Google's third argument is that ████████

22   destroys the common interest exception or the

23   appearance of ██████  on the cc list means that

24   there has been a waiver of privilege because

25   █████████  not a plaintiff.

AMM TRANSCRIPTION SERVICE - 631.334.1445

1         That argument has since been updated with

2    the sealed declaration of Ms. Murphy and the

3    December 12th letter responding to that from

4    Google's counsel, which leads me to, sort of, where

5    I am now, which is -- is there any -- in its most

6    recent letter, Google argues, well, okay, but --

7    there are how many here?

8         34 withheld documents on the privilege list

9    ███████████████████████████████████████

10   ███████████████████████████████████████

11   ███████████████████████████████████████

12   least turn over those 34.

13        Other than that which I'll hear argument

14   on, I am not inclined to give Google any of the

15   documents that the plaintiffs have designated as

16   privileged.  So I think I probably want to hear

17   first on the question of those 34 documents.

18        I probably want to hear first from the

19   plaintiffs.

20        That's Ms. Murphy, right?  Okay.

21        MS. MURPHY:  Thank you, your Honor.

22        We can't turn over those 34 documents

23   because they pertain to other litigations as well.

24   The content of the documents is --

25        THE COURT:  And as to that other

1   litigation, you say the co-client or joint interest
2   exception to waiver applies because that's other
3   litigation that ███████ might actually be a
4   plaintiff in.
5          MS. MURPHY:  Correct.
6          THE COURT:  Can you redact?
7          MS. MURPHY:  I don't believe so.  I don't
8   believe so, no.
9          THE COURT:  Because you speak about this
10  litigation and that potential litigation all in the
11  same breath?
12         MS. MURPHY:  Before I respond further,
13  your Honor, could we have a similar instruction to
14  what you provided with respect to the declaration
15  under Federal Rule of Evidence § 502 --
16         THE COURT:  Looking out at the courtroom, I
17  do not see anyone here who is not counsel for either
18  the plaintiffs or the defendants.
19          So I think that's a sensible suggestion.
20  And in order to allow Ms. Murphy, and then later
21  Google, to discuss the issues outlined in
22  Ms. Murphy's sealed declaration freely, I will
23  direct the parties, in the event that the transcript
24  is ordered for today's conference, to redact any
25  discussion of Ms. Murphy's sealed declaration or, I

1    guess, the defendant's response thereto.
2    Understood?
3          Google, you understand?
4          MR. DAMLE:  Yes, your Honor.
5          THE COURT:  And, Ms. Murphy, that satisfies
6    you?
7          MS. MURPHY:  Yes.  Thank you.
8          THE COURT:  Okay.  So now, please, why
9    can't you redact?
10          MS. MURPHY:  Because it's the same data
11    analysis that would apply.
12          So ████████ and the plaintiffs sued the
13    pirates in a series of cases in this district, and
14    part of those joint legal efforts continues to be
15    enforcing those judgments and certain --
16          THE COURT:  And as to which all five have a
17    joint interest in your review.
18          MS. MURPHY:  Correct.  Correct.
19          So I don't think that would solve the
20    problem here, but that is -- there is a very clear
21    reason why just those documents were logged the way
22    they were, and it is a reasonable and sensible one
23    because it actually reflects what is going on with
24    respect to litigation or anticipated litigation.
25          There also is privileged material contained

```
1    in, I believe, some of them that pertains to a
2    completely unrelated platform.  So --
3              THE COURT:  Not Google.
4              MS. MURPHY:  Correct.
5              So that would complicate turning over the
6    information as well with respect to plaintiffs and
7    with respect to ███████ .
8              THE COURT:  Okay.
9              While you're up, the issue that I hadn't
10    touched on yet because I was focused on the joint
11    privilege issue as it relates both to whether there
12    was a joint privilege to begin with and whether
13    ████████  participation in the communications
14    destroys it.
15              But if I could just turn your attention
16    to -- what's the name of your -- I don't want to
17    call them a vendor.
18              MS. MURPHY:  BCGuardian.
19              THE COURT:  He C. Guardian?
20              MS. MURPHY:  B as in boy.  Yes.
21              THE COURT:  PC as in --
22              MS. MURPHY:  B as in boy.
23              THE COURT:  Oh.
24              MS. MURPHY:  BCGuardian.
25              THE COURT:  Not PC like politically
```

1    correct.  BC like British Columbia.

2              MS. MURPHY:  Correct.

3              THE COURT:  Okay.  Which I didn't give you

4    my thoughts on earlier, but I'll give you my

5    thoughts on them now.

6              Obviously, they don't fill the role of an

7    agent necessary to communicate between attorney and

8    client in the way that the traditional examples of

9    translator, for example or, in some cases,

10   accountant do, but I generally agree with Google's

11   approach here, which is that, to the extent what

12   BCGuardian is doing is simply ferreting out or

13   presenting facts which plaintiffs need to show, or

14   may need to show in this case, that the work of

15   BCGuardian has appropriately been turned over in

16   discovery.

17             But to the extent that BCGuardian is, in

18   effect, engaged in strategic conversations with

19   counsel, could go -- in my mind now, I'm imagining

20   these communications.  Maybe counsel is saying, gee,

21   you know, we think you should look at X, Y and Z

22   because we can make the following legal arguments

23   depending on what the facts are.

24             Or maybe BCGuardian is saying, well, you

25   asked me to analyze this particular slice of data

1    with regard to this approach, that approach, the

2    other approach.  Which one do you want me to do?

3            Those all feel, to me, very much like they

4    are, in fact, work product and, therefore, within

5    the privilege, even though counsel are not

6    necessarily sitting at their desks in their law

7    firms doing that work themselves.

8            So maybe -- since I'm agreeing with you,

9    Ms. Murphy, I don't know if there's anything you

10   want to add there, but I'll certainly hear from

11   Google on the BCGuardian point as well as the 34

12   documents.

13           MS. MURPHY:  Just to clarify, the documents

14   that we did withhold reflect the type of

15   communication and analysis that your Honor just

16   summarized.

17           THE COURT:  I did it informally, but I was

18   trying to capture what you were arguing in your

19   letter brief.

20           MS. MURPHY:  Correct.  But I do think that

21   with respect to *Kovel*, that for the data analysis

22   piece, that it is essential for the attorneys to

23   understand and then provide that legal advice.  And

24   I think that the post-Kovel cases do extend to

25   investigators and others doing activities that are

                AMM TRANSCRIPTION SERVICE - 631.334.1445

1    beyond literal translation.

2            So I would take issue with that.  I think

3    that we have been very careful to draw lines with

4    respect to attorney-client and work product

5    documents that involve BCGuardian.  But, you know,

6    quite often, they -- I am personally asking them to

7    conduct an analysis and report back to me so I can

8    figure out how to advise my clients.

9            So that is part of it.  There also is the

10   strategic piece as well.  So ...

11           THE COURT:  You're sending them out to see

12   if they can help you with this theory or that

13   theory?

14           MS. MURPHY:  Essentially, yes.  Yes.

15           And then as to, like, just the pure facts,

16   it's important to ground this in the notices.

17           So BCGuardian does send the notices of

18   infringement to Google on the plaintiffs' behalf.

19   Google has all of that information.  So in terms of

20   those facts, there's really nothing else that they

21   wouldn't already have.

22           THE COURT:  How many BCGuardian

23   communications in total were withheld on privilege

24   and/or work product grounds?

25           I guess you labeled everything that was

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
1    withheld, both privilege and work product, right?
2            MS. MURPHY:  Not everything.
3            THE COURT:  Not quite everything?
4            MS. MURPHY:  Not quite everything.
5            I would have to ask a colleague to give me
6    that number.  We do have the spreadsheet up, but I
7    don't know off the top of my head.
8            THE COURT:  I can't read the spreadsheet on
9    paper because it's too tiny.  I have to pull it up
10   on my computer.
11           MS. MURPHY:  It's too tiny for me, too.  I
12   have a printout that is useless, but would you like
13   us to check that?
14           THE COURT:  Maybe you can check on that
15   while I'm hearing from Google.
16           All right.  Anything else you want to tell
17   me?
18           MS. MURPHY:  Not right now, but I would
19   obviously like the opportunity to respond.
20           THE COURT:  Okay.
21           MS. MURPHY:  Okay.  Thank you.
22           THE COURT:  All right.  Mr. Borgert?
23           MR. BORGERT:  Thank you, your Honor.
24           Understanding your Honor's inclination on
25   the common interest issue, just two quick points on
```

1    that.

2          One, we do believe that, given the

3    circuit's rulings that privileges are to be narrowly

4    construed, and that rule applies also to the common

5    interest privilege, that plaintiffs' decision to

6    organize themselves -- that the way they have would

7    essentially be an extension and breaking new ground

8    on the common interest doctrine.  And understanding

9    the Court's inclinations, I would just like to point

10   for the record -- the case is *Carnegie* --

11         THE COURT:  Are you referring now

12   specifically to including someone who turns out not

13   to be a current plaintiff in the group?  In other

14   words -- or would you be making this exact same

15   argument to me if we were only talking about the

16   four named plaintiffs in all these communications?

17         MR. BORGERT:  So I guess those are slightly

18   different.  The core argument here is, we cited at

19   least four District Court cases in which the courts

20   held that there was no common interest simply

21   because there was no shared ownership rights.

22         Those were *Carnegie* --

23         THE COURT:  And in those cases, starting

24   with *Carnegie* --

25         MR. BORGERT:  Yep.

AMM TRANSCRIPTION SERVICE - 631.334.1445

1            THE COURT:  Were the four entities that

2    claimed a common privilege, co-plaintiffs or

3    co-defendants?  And were the communications among

4    them and their litigation, Counsel?

5            MR. BORGERT:  No, your Honor.  But in

6    the --

7            THE COURT:  I think that makes a

8    difference, don't you?

9            MR. BORGERT:  I think, because this is such

10   a novel situation, it was not surprising to us that

11   there wasn't something exactly on point.  I would,

12   however, point you to the case *In re California Bail*

13   *Bond*, which is a -- I don't recall if it was

14   Northern District or Central District of California.

15   But that case did apply the *U.S. v. Schwimmer* case,

16   which is the Second Circuit authority on the common

17   interest doctrine.

18            And there, what that court held was, even

19   though plaintiffs had same counsel -- these were all

20   defendants.  Even though they all had the same

21   counsel, with respect to the communications at

22   issue, they were making the same arguments -- and it

23   was essentially the same case just split up among

24   the different insurance, the bail bond insurers --

25   that that wasn't enough because they had no

          AMM TRANSCRIPTION SERVICE - 631.334.1445

1    overlapping interest.

2          And the reasoning there, which you also see

3    in cases like *Pereira*, which is from this circuit,

4    is that a ruling as to one plaintiff's infringement

5    actually does not have any implication as to the

6    other plaintiffs.

7          Now, this is maybe a little academic, but

8    the common interest doctrine, even the co-client

9    doctrine, arose in the context of criminal defense,

10   where you would have maybe conspiracy case or an

11   aiding and abetting case, where it really did matter

12   whether or not liability or a particular factual

13   finding was found as to one defendant.

14         THE COURT:  But the existence of a

15   conspiracy count was not necessary to the

16   application of the privilege in the criminal

17   context, was it?

18         You could have two defendants who were

19   charged with -- I don't know -- let's say robbing a

20   bank, and let's say the conspiracy count dropped out

21   for some reason or another at the indictment stage.

22   These things sometimes happen.

23         MR. BORGERT:  Yeah.

24         THE COURT:  But the two alleged bank

25   robbers were represented by the same criminal

          AMM TRANSCRIPTION SERVICE - 631.334.1445

1   defense counsel.

2          Would you argue in that case that there was

3   no joint privilege?  I don't think so.

4          MR. BORGERT:  No.  Exactly.  Because, right

5   there, you're still involved in the same underlying

6   act.

7          THE COURT:  Even though one could be guilty

8   and the other could be innocent.

9          MR. BORGERT:  Right.  Because they were

10  both involved in the same underlying act, and the

11  liability stemmed from that, the same robbery, so

12  it's --

13         THE COURT:  Okay.  Let me give you a

14  hypothetical example.

15         MR. BORGERT:  Yeah.

16         THE COURT:  Let's take some of the great,

17  groundbreaking civil rights litigation over the past

18  several decades.  Let's say there's a class action

19  brought by all of the women employed by XYZ

20  Corporation who claim that they're only paid

21  87 cents to the dollar the comparable male employees

22  are paid.  And there are three or four named

23  plaintiffs, and one of them works in the Milwaukee

24  office and one of them works in the Chicago office,

25  and one of them is a junior vice president and one

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    is a senior vice president.

2          Would you say -- even though they're all

3    represented by the same litigation counsel and were

4    prior to litigation as they were developing their

5    litigation strategy, would you say that they have no

6    joint privilege because each woman really only wants

7    her own paycheck to be comparable to the men's?

8          MR. BORGERT:  No.  I don't think so.  And

9    the reason is because it sounds here like there

10    would still be a particular action from which all of

11    this liability --

12          THE COURT:  And isn't that true here as

13    well?  Aren't each of the plaintiffs claiming to

14    have been injured by the same alleged deficiencies

15    in, among other things, Google's implementation of

16    its five-strikes policy, for one thing, and in the

17    way that Google responds to takedown notices?

18          MR. BORGERT:  No.  I don't think so, your

19    Honor, and for similar reasons that my colleague,

20    Mr. --

21          THE COURT:  I haven't heard any argument

22    from the plaintiffs, and I certainly don't expect to

23    hear any argument from the plaintiffs that, well,

24    Google injured Cengage by doing X, Y and Z and

25    injured -- what's the second named plaintiff here --

1    by doing A, B and C.

2          That's not the plaintiffs' case.  The

3    plaintiffs' case is very much like the case of the

4    women who are suing my fictional corporation here,

5    that they were sure they each owned different

6    copyrights, different trademarks, but they claim

7    they were all injured in the same ways pursuant to a

8    common course of conduct by Google.

9          MR. BORGERT:  No.  I think in the

10   hypothetical with respect to the class -- that class

11   action, if the class action -- right, the law builds

12   in requirements for the class action: numerosity,

13   commonality, et cetera.  So assuming that something

14   got to the class stage, I think you would already

15   have had a finding that there were common issues at

16   that case.  Whereas --

17         THE COURT:  Do you need a quote finding

18   that there are common issues?  Isn't it enough for

19   me to say, obviously, there are common issues here?

20         I mean, do you see a world in which

21   Plaintiff Number 1 gets a ruling that Google

22   contributorily infringed its copyrights and

23   Plaintiff Number 2 doesn't?

24         MR. BORGERT:  Yes.

25         THE COURT:  I can see a world -- hold on.

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1              I can see a world in which the percentages
 2     are different or the gravity of the harm is
 3     different or the damages are computed differently,
 4     but can you really see a world in which you did just
 5     fine by Plaintiff Number 1, but you're liable to
 6     Plaintiff Number 2 here?
 7              MR. BORGERT:  Yes, your Honor.  And that's
 8     because each plaintiff has to separately prove
 9     infringement of a specific work, which they've done.
10     You know, they provided the Exhibit A, I think, that
11     lists out who owns what.
12              The damages point, your Honor, is exactly
13     right.  They may have different damages.  The
14     defenses that Google may bring against one plaintiff
15     may succeed.  There may be other issues as to
16     another plaintiff.
17              THE COURT:  Excellent point.
18              I don't recall off the top of my head that
19     Google articulated any defenses that apply to less
20     than all plaintiffs.  Did you?
21              MR. BORGERT:  Not off the top of my head,
22     your Honor.
23              THE COURT:  Not --
24              MR. BORGERT:  But --
25              THE COURT:  -- right?
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1              MR. BORGERT:  The material -- so going to
 2     the expeditious removal, it could be, just for the
 3     sake of a hypothetical, that Google expeditiously
 4     removed all of McGraw Hill's.  It is infringing
 5     material.
 6              THE COURT:  Theoretically possible that the
 7     data would shake out that way, but I think that's a
 8     rather remote theoretical possibility.  It's not the
 9     way the case has been pleaded by the plaintiffs.
10     It's not the way the case has been defended by
11     Google.
12              Do you have anything else?
13              MR. BORGERT:  Yes.  Just, I guess, to close
14     out this, I would say that this would be an
15     expansion of the common interest doctrine because
16     plaintiffs are using it offensively in how they've
17     organized themselves to conduct their cases.  I
18     understand we're probably not going to see eye to
19     eye on that, so I will move on to ███████.
20     ███████████████████████████████████████████
21     ████████████████████████████████████████
22     ███████████████████████████████████
23     ████████████████  ████████████████
24     ████████████████  ████████████
25              But the way the common interest works is
```

1    the common interest is the exception to waiver, and
2    that exception only applies if the parties are fully
3    aligned, right?  That's what the co-client cases
4    say.  That's what the common interest cases say.
5            So including ████, who is outside of the
6    common interest of this case, essentially waives
7    privilege as --
8            THE COURT:  I don't understand that
9    argument at all.  It's very common in the real
10   world, when a case is being prepared, when plans are
11   being made to litigate -- and, obviously, a case
12   like this, this is not something that happens in a
13   week or two weeks.  There's a long runway before you
14   follow the -- excuse me -- file the complaint.
15           It's pretty common for part of that process
16   to be, okay, who are going to be our plaintiffs in
17   this case?  It happens in securities fraud
18   litigation all the time.  It happens in IP
19   litigation, as here.
20           Heck, it happens in FLSA litigation,
21   minimum wage cases:  Am I going to use the busboy,
22   the waitress or the bar back as my named plaintiff
23   here?  Or maybe all three.  Or maybe two.  And all
24   three of them -- the busboy, the waitress and the
25   barback -- may well be meeting and conferring with

1    counsel in the lead-up to the litigation while

2    counsel determines, among other things, who are my

3    best plaintiffs?

4            MR. BORGERT:  Yeah.

5            THE COURT:  I don't see a problem here.

6    ███████████   ███████████████

7    █████████████████████████

8    ████████████████████████

9    ███████████

10           THE COURT:  Sure.  Now, we're down to the

11    34 documents.

12           MR. BORGERT:  Yes.  Sorry.  And that's

13    where I was -- that's where I'm headed.

14          So as to those 34 documents, the common

15    interest privilege cannot apply because plaintiffs

16    concede and admit that ██████ is not aligned and is

17    not within that circle of common interest.

18           THE COURT:  With respect to this case.  But

19    what we just heard from Counsel is all five of them

20    remained aligned with respect to other potential

21    litigations; therefore, the anticipation of

22    litigation prong kicks in and that the discussions

23    of those other potential litigations are too

24    interspersed with whatever the discussion was

25    regarding this litigation to allow for redaction, as

1    a practical example.

2    ███████████████████████████████████

3    ███████████████████████████████████

4    ███████████████████████████████████

5    ███████████████████████████████████

6    ████████████████████████

7    ████████████   ████████████

8    ████████████████████████████████████

9    ████████   ████████████████████

10          THE COURT:  What they're saying about

11   this --

12          MR. BORGERT:  About this lawsuit that

13   includes a party who is not aligned, who is not

14   within the common interest, who is not a co-client

15   as to this litigation.

16          So, yes, we think redaction would be

17   acceptable if --

18          THE COURT:  If it can be done.  Some --

19          MR. BORGERT:  If it can be done, right.

20          And if it's not, then I think a sampling of

21   5 to 10 of those 34 for in camera review would be

22   another option.

23          THE COURT:  I wasn't going to bring that

24   up.  I was wondering how long it was going to be

25   before somebody here brought that up.

```
 1              MR. BORGERT:  Oh.  Well, your Honor, if
 2     they're saying they can't redact, I mean, clearly
 3     there is at least some component of these materials
 4     that are not privileged.  And just saying, oh, it's
 5     too interspersed -- I mean, obviously, I understand
 6     that's going to be plaintiffs' position, but doing
 7     five to ten, I think -- my understanding of what
 8     ████████████████████████████████████████████████
 9     ████████████████████████████   ██████████████████
10     me if I'm wrong.  So --
11              THE COURT:  Your what weekly update?
12              MR. BORGERT:  EPEG.  So this --
13              THE COURT:  Oh, the name of the group.
14              MR. BORGERT:  Yeah, it's not like a trade
15     associate -- this -- I think they called it a
16     non-juridical entity.
17              THE COURT:  Club.
18              MR. BORGERT:  Yeah, the club, the publisher
19     club.
20              So whatever updates there are -- I mean,
21     it's very possible that it could be Cengage
22     litigation:  Bullet, bullet, bullet.  Next future
23     litigation:  Bullet, bullet, bullet.  In which case,
24     then --
25              THE COURT:  In that case, I would expect
```

```
 1   Ms. Murphy to have said, yeah, we can redact.
 2             MR. BORGERT:  Yeah.  And, you know, it's 34
 3   documents.  I don't -- we'll see if -- I don't know
 4   if she has them all at the top of her head, but if
 5   it is impossible to redact, I think just looking at
 6   a couple of them for in camera review would be
 7   appropriate.
 8             THE COURT:  Okay.
 9             And now tell me, if you would, your
10   thoughts on BCGuardian.
11             MR. BORGERT:  Yeah.  So, your Honor, we
12   agree, obviously, with your Honor's assessment of
13   BCGuardian not qualifying for Kovel because they
14   are --
15             THE COURT:  Did I say that?  I don't recall
16   having said that.
17             MR. BORGERT:  Oh.  Well, maybe I'm -- I
18   don't mean to over overstep, your Honor.
19             We don't believe that BCGuardian qualifies
20   as Kovel precisely for the questions that you posed
21   to opposing counsel, which is they are not
22   facilitators.  They are not translators.  What they
23   are doing is they are going outside of the clients
24   to get information from -- I don't know -- the web,
25   the external world, and bring them back.
```

1           There are cases that we cited, like
2    *Durling*, which involved Papa John's and a similar
3    type of investigative effort outside of the company
4    that held that that was not covered under *Kovel*
5    because going out and gathering information is not
6    what *Kovel* is really all about.
7           Opposing counsel mentioned that there are
8    some cases applying *Kovel* to investigators.  As you
9    pointed out in our brief, those investigators were
10   investigating things within the company.
11          So the *Gucci* case, for example, the
12   investigator at issue was an in-house counsel of --
13   I think it was an affiliate.  But what that person
14   did was interviewed Gucci employees and provided
15   that information to counsel.
16          So as to BCGuardian falling under -- you
17   know, what side of the line is it?  It's clearly --
18          THE COURT:  Why does it matter whether the
19   investigator is investigating the plaintiffs'
20   personnel or investigating facts outside of the
21   plaintiff?
22          MR. BORGERT:  Well, I think it matters for
23   *Kovel*.  It may not matter as much for the attorney
24   work product.
25          THE COURT:  Right.

          AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1              MR. BORGERT:  Right.  So --
 2              THE COURT:  Which is the defendant's -- the
 3     plaintiffs' strongest point here, right?
 4              If this stuff qualifies as work product,
 5     which, as we know, does not have to be written by an
 6     attorney --
 7              MR. BORGERT:  Yep.
 8              THE COURT:  -- and which can only be
 9     waived, it's hard to waive -- it's not hard to waive
10     work -- it's harder to waive work product than to
11     waive attorney-client privilege.
12              In order to waive work product, in order
13     for you to establish that plaintiff has waived work
14     product, you would have to establish that they have
15     allowed that work product to fall into the hands of
16     someone who's not aligned with them, and surely
17     BCGuardian is about as aligned with them as they
18     could possibly be.
19              MR. BORGERT:  Yeah, BCGuardian is 100
20     percent.
21              The issue -- one of the issues we have with
22     claiming that BCGuardian's work is attorney work
23     product is that, from the best we can tell, is what
24     BCGuardian really is doing is putting together these
25     infringement reports, is going out, it's scanning,
```

1    and it's providing that data to plaintiffs.

2    ████████████████████████████████

3    ███████████████████    ████████████

4    ██████████████████████████

5    ██████████████████████████

6    ████████

7       ████████  ██████  ███████████

8    ████████████████████████████

9    ████████

10       MR. BORGERT:  Yeah, so it has to do with

11    whether or not litigation is concretely anticipated.

12       So we cited the case *Rubies*, which

13    involved, like, a similar function for a -- I think

14    it was a costume company who was investigating

15    Amazon.  And there what the Southern District in

16    New York held was, this is just your routine

17    brand-protection work.  And that's not something

18    that gets the benefit of attorney-work-product

19    protection, precisely for the reason that privileges

20    and protections are to be narrowly construed.  And

21    this is something that, like, is just an ordinary

22    company function.

23       THE COURT:  Well, look, everybody in your

24    position quotes the many cases that stress that

25    attorney work product and privilege are to be

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    narrowly construed because they're an exception to

2    the general rule that you get discovery of

3    everything.

4            MR. BORGERT:  Yeah.

5            THE COURT:  Everybody in the plaintiffs'

6    position on this particular motion quotes the other,

7    many cases that talk about how sacred the

8    attorney-client privilege is and how the work

9    product protection, especially core work product,

10   having to do with attorney work product, is

11   absolutely essential to the American legal system as

12   we know it.  So ...

13           MR. BORGERT:  Let me point it in a

14   different direction, then.  And I think it's just

15   going back to the point that routine IP protection

16   efforts are not related to litigation.

17           THE COURT:  Why do you think that they are

18   withholding routine product policing?

19           MR. BORGERT:  Sure.  So one example -- we

20   cited this in Docket 338, paragraph 18, the withheld

21   document.  Just some more background on this.  In

22   our opening brief, we pointed out that plaintiffs

23   had apparently either provided or produced materials

24   that appear on their log to us already, either

25   before the litigation or as part of their discovery

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
1   productions.  Plaintiffs had no response to that.
2           So in the reply, we found another example
3   at Docket 338, paragraph 18, in which we pointed out
4   that plaintiffs had withheld a document called
5   ████████████████████████████████████████████████
6   on row 1059.
7           THE COURT:  Hold on.  I now have to find
8   Docket 338.  It's in here somewhere.
9           MR. BORGERT:  It's the Supplemental
10  Declaration of Sarah Tomkowiak.
11          THE COURT:  Tomkowiak's Declaration.  Just
12  a sec.
13          All right.  Now, you say paragraph 18?
14          MR. BORGERT:  Yes.
15          THE COURT:  Hold on.  I'm with you.
16          MR. BORGERT:  Okay.
17      ██████████████████████████████████████
18  █████████████████████████████████████████
19  ██████████████████████████████████
20      ██████████████████████████████████████████
21  ███████████████████████████████████████
22  █████████████████████████████████████████
23      ██████████████  ██████████████████
24      ██████████████  ████████  ████████████████
25  █████████████████████████████████████████
```

                AMM TRANSCRIPTION SERVICE - 631.334.1445

1      ███████████   ███████████████████

2      ███████████

3      MR. BORGERT:  Yeah.

4      THE COURT:  Yeah.

5      MR. BORGERT:  That one.  And --

6      THE COURT:  That's a personal opinion and

7 is not a legal conclusion.

8      MR. BORGERT:  And so we looked at that

9 document, and it just looks like the other

10 spreadsheets that plaintiffs have provided as to

11 Google.  And so it just didn't -- I mean, it didn't

12 strike us as anything that was privileged.  We sent

13 it to opposing counsel because we have to do this

14 meet and confer for sealing.  Opposing counsel

15 didn't claim that was privileged.  And so to the

16 extent these are the same documents, we think

17 privilege has clearly been waived.  And even --

18      THE COURT:  If it's the exact same

19 document, yes, privileged.

20      MR. BORGERT:  Well, right.  We don't know.

21 But I guess the --

22      THE COURT:  And if you want me to issue an

23 order saying, plaintiffs, look over your log

24 carefully, and if you've inadvertently logged as

25 privileged something that you've actually already

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    produced, take it off your log, please.  That's

2    fine.  But --

3              MR. BORGERT:  Yeah.  And just the last

4    point here that ties it all together is this is the

5    type of document that BCGuardian created for Google.

6    ███████████████████████████████████████████

7    ██████████

8          █████████████████████████████████████

9    ██████████████████████████████████████████

10   ████████████████████████████████████████████

11   ████████████████████████      ████████████████

12   ████████████████████████████████████████████

13   ████████████████████████████████████████████

14        ███████████████████████████████████████

15   ████████████████████████████████████████████

16   ██████████████████████████████████

17             THE COURT:  I think you're asking too much

18   of all these folks who are involved in these

19   communications.  The work product doctrine does

20   require that the work have been done in anticipation

21   of litigation.  It doesn't require that every

22   product manager, vice president and other non-lawyer

23   personnel involved in the project use the phrase

24   "anticipation of litigation" on every relevant

25   e-mail that they send.

1          I mean, I am entitled, I think, to take a
2     somewhat broader view than that, and, if otherwise
3     appropriate, to credit the declaration of the
4     attorneys who are directing the effort as to whether
5     they were directing it towards routine surveillance
6     efforts or whether they were directing it towards
7     filing, well, this lawsuit or some other lawsuit.
8          MR. BORGERT:  Yeah.  And I think, even on
9     that point, your Honor -- and opposing counsel may
10     correct me.  But I recall looking through the
11     declarations filed by the in-house attorneys at
12     plaintiffs and litigation counsel, and I don't think
13     I saw anything that said BCGuardian created these
14     materials in anticipation of litigation.  The
15     closest they get to saying was, we have filed
16     litigation based on the evidence that BCGuardian has
17     collected.
18          THE COURT:  And you're suggesting that that
19     phrasing may have been due to the fact that, when
20     they did it, they didn't know yet whether it was
21     going to result in litigation.
22          MR. BORGERT:  Exactly, your Honor.
23          And just because it potentially might
24     result in litigation, if they're doing it and if
25     it's created in the same -- like, let's say we're

```
1    not in litigation world.  BCGuardian puts together a

2    report that looks like ABC, and then we're in

3    litigation world and BCGuardian puts together the

4    same report that looks like ABC.  Because it was

5    prepared in the same way, regardless of whether or

6    not litigation applied, work-product protection does

7    not attach to it.

8            THE COURT:  Because work-product protection

9    does not apply to routine business documents that

10   would have been prepared in the same way and in the

11   same manner with or without litigation.

12           MR. BORGERT:  That's exactly right.

13           THE COURT:  That's Second Circuit law,

14   sure.  But I'm not sure you've established that any

15   of the withheld documents here fall into that

16   category.

17           MR. BORGERT:  I think we have, simply

18   because we know that these reports were being

19   created before litigation, like two -- you know,

20   years before litigation.

21           We've seen the reports.  They don't strike

22   us as --

23           THE COURT:  The ones that aren't being

24   withheld.

25           MR. BORGERT:  The ones -- well, we've -- so
```

1    what they've produced --

2            THE COURT:  The problem is you've gotten a

3    lot of routine business or research documents that

4    would have been prepared the same way with or

5    without litigation.

6            MR. BORGERT:  Right.  Right.

7            And we've seen that -- there's a screenshot

8    that we put in, I think, the same docket, 338, that

9    shows this Excel sheet, and it shows the entries to

10   Google.  And then, at some point, it stops, and it

11   switches --

12           THE COURT:  What exhibit is that?

13           What exhibit is the screenshot?

14           MR. BORGERT:  Sorry?

15           THE COURT:  Is it -- you want me to look at

16   the -- oh, the one that you put in after

17   paragraph -- no.

18           If you want me to look at the screenshot,

19   tell me where it is.

20           MR. BORGERT:  I just know it's in Docket

21   338.  I don't have a different one.

22           THE COURT:  Okay.

23   ███████████████    ████████████████████████████

24   ████████████████████████████████████████████████

25   ████████████████████████████████████████████████

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1   ██████████████████████████████████████████
 2   ████████████████████████████████████████
 3          And so those just simply don't appear to be
 4   attorney work product or anything really relating to
 5   litigation at all.
 6          THE COURT:  Well, I would -- I can't really
 7   follow your argument unless I know what you're
 8   telling me about.
 9          I'm paging through the exhibits to that
10   declaration, but that's probably not a good use of
11   my time.
12          MR. BORGERT:  Oh, sorry.  It's not -- it's
13   not the exhibits.  It's within the declaration
14   itself.
15          THE COURT:  Okay.  Well, the only thing
16   that I see interlineated is at the end of paragraph
17   █████████████████████████████████████████████
18         ████████████████████████████████████
19          MR. BORGERT:  Yes, your Honor, Exhibit
20   paragraph 20 is the one.
21          THE COURT:  That's the image?
22          MR. BORGERT:  Yes.
23          THE COURT:  It's very small print.  Give me
24   a moment.
25          All right.  And your point here is that the
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
1    first three lines, you have full information on.

2    And then the lines towards the bottom of the chart

3    are labeled "Redacted as Privileged."

4              MR. BORGERT:  That's correct.

5              THE COURT:  Okay.  And you want to know

6    what changed.

7              MR. BORGERT:  Yeah.  To us, there seems to

8    be no discernible explanation for why that is

9    withheld as BCGuardian work product while the stuff

10   above the line is not.

11             THE COURT:  Okay.

12             MR. BORGERT:  So I guess on the BCGuardian

13   stuff, your Honor, the points that we would stand on

14   are that it does not appear to be made in

15   ████████████████████████  █████████████████████

16   ████████████████████  ██████████████████████████

17   ████████████████████████████

18             And even if it is somewhat related to

19   litigation, without conceding that point, I think it

20   still stands that there's no evidence at all on the

21   record that BCGuardian created this because of

22   litigation or that BCGuardian's work product changed

23   because of litigation.  That is to say, its output,

24   even after a case commenced, remained the same.

25             THE COURT:  Thank you.
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1              MR. BORGERT:  Thank you.
 2              THE COURT:  Ms. Murphy?
 3              MS. MURPHY:  Thank you, your Honor.  Where
 4      should I start?
 5              THE COURT:  Why don't you start at the end.
 6              MS. MURPHY:  Okay.
 7              THE COURT:  With regard to BCGuardian, what
 8      I understand Google to be arguing is that while they
 9      appreciate that you have produced some BCGuardian
10      work product, they believe you've drawn the line too
11      aggressively and that there is other BCGuardian work
12      product which is of the same general tenor as that
13      which was produced, which should be characterized as
14      routine surveillance or research work, and that you
15      haven't adequately established that everything that
16      you've withheld from BCGuardian, in fact, was
17      prepared or created in anticipation of litigation
18      and wouldn't have been prepared or created the same
19      way anyway.
20              Is that fair, Counsel?
21              MR. BORGERT:  Yes, your Honor.
22              THE COURT:  Great.  So that's --
23              MS. MURPHY:  Sure.
24              THE COURT:  Next point.
25              MS. MURPHY:  I'm happy to address that.
```

 1              I will just say that, again, we went
 2    through this methodically.  We have withheld
 3    documents that were prepared in anticipation of
 4    specific litigations if we said "work product" on
 5    the log.  So it may not be this --
 6              THE COURT:  If it says "work product" on
 7    the log, you're representing to me that either on
 8    the document or through some external identification
 9    mechanism, you would be able to say, yeah, they did
10    that because of this lawsuit or because of some
11    other lawsuit we were thinking about bringing.
12              MS. MURPHY:  Correct.  Correct.
13              Unless there's human error because it is a
14    343-page log, I can represent to you that that was
15    our process and that there are documents that touch
16    multiple litigations -- that's why we listed
17    multiple case numbers -- and that these so-called
18    reports were prepared for litigation.
19              I appreciate that Google's counsel does not
20    have the same insight into what's actually in these
21    documents --
22              THE COURT:  Great.  I'm just wondering why
23    should I take Ms. Murphy's word for it, I guess?
24              MS. MURPHY:  Yeah, I understand that.
25              So a few things.  First of all, I think

              AMM TRANSCRIPTION SERVICE - 631.334.1445

1    there was a suggestion that some of the wording in

2    the in-house counsel's declaration was an aha

3    moment.  That certainly is not the case.  That was

4    not intended at all.  That document and all of our

5    pleadings -- or our filings in this matter talk

6    about how BCG has been retained by Oppenheim &

7    Zebrak, how they are an antipiracy specialist firm

8    that specifically prepares litigation-ready

9    evidence.  They are not just a routine vendor that

10   sends notices and that's all they do.

11        The plaintiffs do have a few of those, and

12   those notices have been produced.  So I think that

13   my own declaration talks about BCGuardian.  There

14   are other places within the in-house counsel's

15   declarations that speak to BCGuardian and what it

16   does and how it provides this litigation-based

17   evidence and helps all of us, the lawyers, interpret

18   the claims.

19        THE COURT:  All right.  Do you have any

20   numbers for me?

21        MS. MURPHY:  Yes.

22        So there are approximately 900 total

23   documents involving BCGuardian.

24        THE COURT:  Withheld on privilege and/or

25   work-product grounds.

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
1              MS. MURPHY:  Correct.
2   ██████████████   █████████████████████████
3   ███████████████████████████████████████████
4   ████████████████████████████████████████████
5              MS. MURPHY:  Correct.  I can provide a
6   little bit more insight into that number, if that
7   would be helpful, going back to the larger group.
8            ████████████████████████████████████████
9   ██████████████████████████████████████████
10  and so that is why there is a large number.
11             Google's --
12             THE COURT:  Talking about the BCGuardian
13  data now.
14             MS. MURPHY:  Correct.  Correct.
15           ████████████████████████████████████
16  ████████████████████████████████████████████
17  ████  ██████████████████████████████████████
18  ████████████████████████████████████████████
19  That by no means makes them routine.  They are for
20  these purposes that I am describing now.  But there
21  is a large number.
22             There are approximately, I think, 400 of
23  those and then there's another 283 where the same
24  type of information is attached to an e-mail that
25  somebody at Oppenheim & Zebrak, either an
```

1  attorney -- I think some are myself -- or one of my

2  colleagues sent to our clients where this BCGuardian

3  information was included and then other legal advice

4  concerning other litigations.

5  THE COURT: So as to those, you would argue

6  that the cover e-mail is attorney-client privileged

7  even if the attachment could not independently be

8  with it.

9  MS. MURPHY: Correct. Correct.

10  And those -- the cover e-mail touches a

11  number of different legal matters, none of which

12  are -- most of which are not relevant to this case.

13  ████████████████████████████████████

14  ████████████████  █████████████████

15  ████████  █████████████████████████

16  █████████  █████

17  ████████████  ████████████████████ █

18  ████████

19  █████████  ██████████  ████████

20  █████████  ██████████  █████████

21  █████████████████████████████████████

22  ████████████████████████████

23  redact it, and I do not think Google's counsel has

24  shown at all that there is a reason for an in camera

25  review. Their general statements about what BCG

1    does are not based in fact at all, and they're not

2    acknowledging the extensive evidence that we have

3    put in about this.

4           And they're not really paying attention to

5    the fact that we have gone through and we have

6    redacted.  So for BCG communications, we're not

7    necessarily withholding the whole thing.  We're

8    taking out the part that reflects the attorney

9    analysis.

10          THE COURT:  Are you telling me -- well, let

11   me back up.

12          The way Google's Counsel and I were

13   discussing it -- and this may have been my choice of

14   words -- at the outset was in terms of when did

15   BCGuardian's routine efforts turn into anticipation

16   of litigation?

17   ███████████████████████████████████████

18   █████████████████████████████████████████

19   ████████████████████████  ████████████████

20   ███████████████████████████████████████████████

21   █████████████████████████████████

22   ██████████████████████████████████████

23   ███████████████████████████████████████████████

24   ████████████████████████████████████

25   ████████████████████████████████████

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████

3 ████████

4          Am I overstating your position?

5          MS. MURPHY:  No.  I don't think so.

6          So with respect to these reports, which I

7 think -- what this line of discussion focuses on,

8 from the first report on the log, they were prepared

9 for litigation, including some of these cases

10 against the pirates.  So there's no --

11          THE COURT:  Not necessarily for this

12 litigation, but --

13          MS. MURPHY:  Yeah.  There might be some

14 outlier where we only marked it attorney-client

15 privilege.  But just with respect to the bulk of

16 these documents that we're discussing, they are work

17 product with respect to, you know, different

18 litigations.

19          THE COURT:  All right.  And can you point

20 me -- what's the docket number of your declaration

21 on this point, or the date?  One or the other.

22          MS. MURPHY:  For which point, your Honor?

23 The ██████ issue or --

24          THE COURT:  The ██████ issue, yeah.

25          I'm sorry.  No.  My mistake.

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1                 The general setup with BCGuardian and the

 2     anticipation-of-litigation point.

 3                 MS. MURPHY:  One moment.  Let me see if I

 4     can also find a paragraph.

 5                 THE COURT:  Possibly 305.  You have an

 6     attorney declaration at Docket 305, which you filed

 7     on November the 21st.

 8                 MS. MURPHY:  It should be in -- it should

 9     be in there.

10                 THE COURT:  Okay.

11                 And you start talking about BCGuardian at

12     paragraph 9.

13                 MS. MURPHY:  Yes.

14     ██████████████      ██████████████████████████████████

15     ███████████████████████████████████████████████████

16     ████████████████████████████████████████████████████████

17     ████████████████████████████████████████████████████████

18     █████████████

19                 MS. MURPHY:  Let me check one other thing,

20     your Honor.

21                 THE COURT:  Sure.

22                 You do say that this case and some other

23     cases "have been based on evidence collected by

24     BCGuardian."

25                 But Google's point is, I think, that's not
```

1  enough to establish the anticipation-of-litigation

2  point because you have to have anticipated

3  litigation when BCGuardian did the work, not just

4  look back later and said, oh, we can use this in

5  this litigation that we've decided to file.

6          MS. MURPHY:  But as it so happens, with

7  respect to the timing of this case, we had already

8  filed the pirate suits.

9          THE COURT:  You had already fired ...

10         MS. MURPHY:  Filed the pirate -- the suits

11  against --

12         THE COURT:  The other -- the preliminary.

13         MS. MURPHY:  -- the pirate in this

14  district.  So it wasn't meant to be an intentional

15  omission.  Perhaps, you know, it was self-evident to

16  us because we did explain those suits.

17         THE COURT:  When did you first file the

18  suits against the individual pirates?

19         MS. MURPHY:  August of 2019.

20         THE COURT:  And the BCGuardian documents

21  that you've withheld, those 900 total, how far back

22  do they date?

23         MS. MURPHY:  That, I don't know, but we can

24  check the Excel because I cannot read the printout.

25         August of 2019.

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1              THE COURT:  Okay.  Anything else you want
 2    to tell me?
 3              MS. MURPHY:  I just want to be sure that,
 4    with respect to BCGuardian, the outcome both
 5    considers the attorney-client privilege with respect
 6    to what we directed them to do concerning the
 7    analysis and work product for the reasons that --
 8              THE COURT:  No.
 9              MS. MURPHY:  -- I've explained today,
10    they're certainly, you know, saying that we used
11    evidence in this litigation.  Doesn't mean that what
12    they were collecting in terms of that same evidence
13    was for another litigation.  And I think we even
14    said in the client's declarations that we had
15    originally sued the pirates.  And because of
16    Google's failure to respond to the notices, repeated
17    failure, that is what resulted in this case.
18              THE COURT:  All right.
19              MS. MURPHY:  So both can be true.
20              THE COURT:  Very quickly, and then we'll
21    wrap this up.
22              MR. BORGERT:  Okay.
23              I guess I did not hear anything from
24    ███████████████████████████████████████████████
25    ██████████████████████████████████     █████████
```



```
1
2
3
4
5
6
7
8
9
10
11
12
13          THE COURT:  What docket number is this?
14   I'm sorry.  I'm trying to follow along here at home.
15          MR. BORGERT:  I have it at 275-8.
16          THE COURT:  That would be Exhibit 8?
17          MR. BORGERT:  Exhibit 24.
18          THE COURT:  Nah.
19          MR. BORGERT:  This goes back to that
20   declaration.
21          THE COURT:  Oh, wait.  I'm looking at the
22   wrong place.
23          MR. BORGERT:  It's probably because Exhibit
24   24 was filed under seal, so it got the hyphen-8
25   number.
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1              THE COURT:  I may not be able to find it
 2     because of that.
 3              MR. BORGERT:  Okay.
 4              In any case, the project history
 5     paragraph --
 6              THE COURT:  Hold on.  Hold on.
 7              My staff has actually found me a path here.
 8              All right.  Exhibit 24, Statement of Work
 9     filed under seal.  I am with you.
10     ████████████████      ████████   ███████████████████████
11     ██████████████████████████████████████████████
12     ████████████████    ████████
13     ████████████████    ██████████████████████████
14     ████████████████████████████████████████████████
15     ██████████████████████████████████████████████████
16     ███████████████████████████████████████████████████
17     ██████████████████████████████████████████████████
18     ████████████████
19     ████████████████      ██████████████████████
20     ████████████████    ████████
21     ████████████████████████████████████████████
22     █████████████████████████████████████████████████████████
23     ██████████████████████████████████████████████
24     █████████████████████████████████████████████████████████
25     ██████████████████████████████████████████████████
```

1   ███████████████

2          ██████████████████████████████

3   ████████████████     ████████████████

4   ███████████████████████████████████████

5   ████████████████████████████████████

6   ████████████

7       █████████████████████████████████

8   ███████████████████████████████████████

9   ███████████████████

10        █████████   █████████████████████

11  ██████████████████████████████████

12  ████████████████████████████████

13  ███████████████

14        █████████████   ██████████████

15  █████████   █████████████████████████

16  ███████████████████████████████████████

17  ███████████████████████████████

18  ████████████

19          THE COURT:  And let me just interject here

20  before I forget, that since we're discussing a

21  sealed document, if and when you order a copy of the

22  transcript of today's proceeding, this portion of

23  the discussion should also be redacted.

24          MR. BORGERT:  Understood, your Honor.

25        █████████████████████████████



```
 1    point.
 2              THE COURT:  Yeah.
 3              MR. BORGERT:  So I'll just make two last
 4    points then wrap up.
 5              The first is that counsel has admitted that
 6    they've produced some of this material to us
 7    already.
 8              THE COURT:  I don't think that's an
 9    admission.  I think that's --
10              MR. BORGERT:  They've just -- I don't know.
11    They agree with us.
12              THE COURT:  You both agree on that.
13              MR. BORGERT:  Yeah, so we agree on that.
14              You know, the scope of what has been
15    produced that's on the log and what's been produced
16    that's not on the log, I think we will have to have
17    some follow-up conversations with them about.
18              But it does strike me that, especially
19    Mr. Kane, today, said that plaintiffs' vendor is
20    going to testify in this case, which would, of
21    ██████████████████████████████████████████████
22    █████████████████████
23           ████████████    ██████████████████████
24    █████████████████████
25           ████████████    ███████████████████████
```

AMM TRANSCRIPTION SERVICE - 631.334.1445

1    great.  What a country.

2           But to the extent they are going to be

3    testifying, and they are going to be in the position

4    where we're going to have to probe their case,

5    whether or not they did find evidence of direct --

6           THE COURT:  They're going to be testifying

7    as an expert.  You'll get expert disclosures at the

8    appropriate time.

9           MR. BORGERT:  Yes, your Honor.  And so to

10   the extent they are withholding materials from their

11   investigations that are related to the subject

12   matter for which they're being put forth as -- which

13   I think is going to be direct infringement, the test

14   purchases, all that.  We do think plaintiffs aren't

15   able to use work product as the sword and shield

16   that they would be trying to do.

17          THE COURT:  But this is premature.  If you

18   are entitled to withhold something as privileged and

19   you later come to a point in your litigation where

20   you have to fish or cut bait, whether it's, you

21   know, defense of counsel -- advice-of-counsel

22   defense or what have you, you make that decision

23   then, you don't make it now.

24          MR. BORGERT:  Well, I guess we would say

25   they have already put it at issue.  They've done

1   it -- like, their evidence of direct infringement is

2   BCGuardian's work.  And so I think we're entitled to

3   probe its processes, the work product it did that

4   maybe didn't make it into the complaint.  Why not?

5   Did they find issues with their methodologies,

6   et cetera?

7        THE COURT:  You believe that you're

8   entitled to see everything BCGuardian did.  This is

9   sort of a -- coming at the tail end of your

10  argument, but a very aggressive one.

11       You're saying, well, gee, even if this

12  stuff would ordinarily qualify as privileged or work

13  product, we actually get to see all of it because

14  they've used some of it, and we get to see the -- we

15  need to see the part they don't want us to see.

16       MR. BORGERT:  Yeah.  It's not that they

17  used some of it.  It's, you know, they've made

18  allegations in their complaint.  Paragraph 99 of

19  Docket 38 references the notices that BCGuardian

20  provided.  They've produced hundreds of --

21       THE COURT:  Obviously, you've seen all of

22  the notices because they were sent to you.

23       MR. BORGERT:  Right.

24       And they've produced hundreds and thousands

25  of, like, the screen captures and the test purchase

AMM TRANSCRIPTION SERVICE - 631.334.1445

```
 1    information and all of that.  And I think we are
 2    entitled to probe, well, what is this that we were
 3    seeing and what are we not seeing and what went into
 4    producing this set?  Because that goes to -- they
 5    have to show direct infringement.  If BCGuardian is
 6    their only evidence of direct infringement, that is
 7    something that we are entitled to attack.
 8              THE COURT:  I don't think that's today's
 9    argument.
10              MR. BORGERT:  Okay, your Honor.  It is in
11    the briefing if you would like to consider it at a
12    later time.
13              THE COURT:  So --
14              MR. BORGERT:  Just a request, your Honor.
15    We would ask for the in camera review of five to ten
16    of the ███████ documents.  We also think it would be
17    appropriate to review perhaps five of the withheld
18    BCGuardian documents to determine whether or not
19    these are ordinary-course documents or prepared in
20    anticipation of litigation.
21              THE COURT:  Here's what I'm willing to do.
22              Thank you, both, very much for your
23    argument.  I appreciate privilege issues are
24    difficult.  They are often subtle.  And here,
25    there's a very big universe of subtle arguments and
```

1    individualized decisions that have been made.

2           I am generally going to deny Google's

3    motion.  I generally find that plaintiffs have

4    adequately supported their privilege and their

5    work-product designations.  I recognize that the two

6    areas where potentially reasonable minds could

7    differ are with respect to some of the BCGuardian

8    documents, not the communications between BCGuardian

9    and plaintiffs' law firm, which are going to qualify

10   for attorney-client privilege, most likely, in

11   addition to work product.

12          But where the rubber hits the road is going

13   to be research that BCGuardian has done, work that

14   they've done pursuant to their Statement of Work,

15   where the question is going to boil down to was this

16   done in anticipation of litigation?

17          However, I don't think that in camera

18   review of documents in that universe is going to

19   help because it may not be apparent from the face of

20   the document itself.  So if I were to do the work

21   with regard to those documents, I would not just

22   have to review a particular document or a particular

23   sample set of documents.  I would undoubtedly have

24   to review six or eight or twenty documents around it

25   to figure out whether plaintiffs appropriately

1      designated this particular document work product

2      that was prepared in anticipation either of this

3      litigation or of one of the pirate lawsuits.  So I

4      don't think it's helpful for me to do that.

5              The question of the 34 remaining disputed

6      █████████████████████████████████████████████

7      ███████████████████████████████████████████████

8      whether those documents can appropriately be

9      redacted or not is something that I should be able

10     to tell from the face of the document.

11             So there are 34 of them.  20 percent would

12     be 6.8 documents.  We'll round down to 6.

13             Plaintiffs, pick three and send them to me

14     for in camera review by e-mail.

15             Defendants, pick another three.  Obviously,

16     you'll have to do that based on the information on

17     the logs.  You don't get to see them in order to

18     pick them, but pick the ones you think look

19     suspicious.  I will review six, and I'll let you

20     know.  Other than that, the defendant's motion is

21     denied.

22             Now, I told you I had to break at 12:30.

23     It's now 1 o'clock.  I still have to do the thing

24     that I was supposed to do at 12:30, so I would

25     propose that we take a half-an-hour recess at this

```
 1
 2
 3                    C E R T I F I C A T E
 4
 5       I, Adrienne M. Mignano, certify that the
 6  foregoing transcript of proceedings in the case of
 7  Cengage Learning, Inc. v. Google LLC;
 8  Docket #24CV4274 was prepared using digital
 9  transcription software and is a true and accurate
10  record of the proceedings.
11
12
13  Signature  _____
14            ADRIENNE M. MIGNANO, RPR
15
16  Date:      December 19, 2025
17
18
19
20
21
22
23
24
25
```

AMM TRANSCRIPTION SERVICE - 631.334.1445