**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

CENGAGE LEARNING, INC.;
BEDFORD, FREEMAN & WORTH
PUBLISHING GROUP, LLC D/B/A
MACMILLAN LEARNING;
MACMILLAN HOLDINGS, LLC;
ELSEVIER INC.; ELSEVIER B.V.; and
MCGRAW HILL LLC,

        Plaintiffs,

   v.

GOOGLE LLC,

        Defendant.

**Civil Action No. 24-cv-04274-JLR-BCM
[Redacted]**

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S OBJECTION TO DISCOVERY ORDER AT DKT. 441**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND .......................................................................................................... 1

    I.    Co-Clients Engaged the Same Counsel to Enforce Their Legal Rights Pursuant to a Joint Legal Strategy .............................................................................................. 2

    II.   O+Z Engaged BCGuardian to Conduct Evidence Collection and Analysis at O+Z's Direction ........................................................................................................... 4

    III.  Plaintiffs Timely Provided Detailed Privilege Log Descriptions ................................... 5

    IV.  Judge Moses Denied Google's First Privilege Motion While Google Filed Successive Privilege Motions Challenging Almost All Logged Documents ................................... 6

LEGAL STANDARD ..................................................................................................... 9

ARGUMENT ................................................................................................................ 9

    I.    Judge Moses Applied the Correct Legal Standard in Finding A Common Legal Interest Between Co-Clients. .............................................................................................. 9

    II.   Judge Moses Applied the Correct Legal Standard in Finding Confidential Materials Prepared by Plaintiffs or Their Agents in Anticipation of Litigation to be Protected Work Product ........................................................................................................ 15

    III.  Judge Moses Did Not Err in Finding Communications between Counsel and Its Agent for Purposes of Providing Legal Advice to be "Most Likely Privileged" ................... 19

    IV.  Judge Moses Did Not Err in Declining Google's Request for *In Camera* Review to Determine Whether BCGuardian Documents Are "Ordinary-Course" ......................... 24

CONCLUSION ............................................................................................................. 25

## TABLE OF AUTHORITIES

**CASES**

*Adam v. Bloomberg L.P.*,

    2024 WL 4457708 (S.D.N.Y. Oct. 10, 2024) ...................................................... 9, 25

*Bauman v. Jacobs Suchard, Inc.*,

    136 F.R.D. 460 (N.D. Ill. 1990) ........................................................................ 20

*Carnegie Inst. of Wash. v. Pure Grown Diamonds, Inc.*,

    481 F. Supp. 3d 276 (S.D.N.Y. 2020) ............................................................... 13

*Dorce v. City of New York*,

    No. 1:19-cv-02216, 2024 WL 4491198 (S.D.N.Y. Oct. 15, 2024) .................................... 9, 23

*Durling v. Papa John's Int'l, Inc.*,

    No. 16 Civ. 3592, 2018 WL 557915 (S.D.N.Y. Jan. 24, 2018) ........................................ 22

*EFCG, Inc. v. AEC Advisors*

    *, LLC*, 19-CV-8076, 2020 WL 6378943 (S.D.N.Y. Oct. 30, 2020) .................................... 19, 21

*GMO Gamecenter USA, Inc. v. Whinstone US, Corp.*,

    No. 22-CV-5974, 2025 WL 1763262 (S.D.N.Y. June 25, 2025) ....................................... 22

*Gucci Am., Inc. v. Guess?, Inc.*,

    271 F.R.D. 58 (S.D.N.Y. 2010) ........................................................................ 19

*Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*,

    215 F.R.D. 466 (S.D.N.Y. 2003) ...................................................................... 12

*Han v. InterExchange, Inc.*,

    No. 1:23-cv-07786, 2025 WL 1419527 (S.D.N.Y. May 16, 2025) ................................ passim

*In re Cal. Bail Bond Antitrust Litig.*,

    778 F. Supp. 3d 1051 (N.D. Cal. 2025). ................................................................. 13

*In re Copper Mkt. Antitrust Litig.*,

    200 F.R.D. 213 (S.D.N.Y. 2001). ........................................................................... 24

*In re Hypnotic Taxi LLC*,

    566 B.R. 305 (Bankr. E.D.N.Y. 2017)............................................................... 12, 13

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,

    2020 WL 6193856 (E.D.N.Y. Sept. 1, 2020). ......................................................... 12

*In re Subpoena Duces Tecum Served on New York Marine & Gen. Ins. Co*,

    No. M 8-85 MHD, 1997 WL 599399 (S.D.N.Y. Sept. 26, 1997)...................................... 11, 14

*James v. Orange County Correctional Facility*,

    No. 94-CV-5105, 2011 WL 5834855 (S.D.N.Y. Nov.18, 2011)........................................... 16

*Johnson Matthey, Inc. v. Rsch. Corp.*,

    No. 01CIV.8115MBMFM, 2002 WL 1728566 (S.D.N.Y. July 24, 2002)............................. 12

*Lebenns v. Frost Prods.*,

    No. 1:21-cv-11155, 2023 WL 8280405 (S.D.N.Y. Nov. 30, 2023). ....................................... 19

*Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,

    253 F.R.D. 300 (D.N.J. 2008)................................................................................ 20

*Merck Eprova AG v. Gnosis S.p.A.*,

    No. 07 Civ. 5898, 2010 WL 3835149 (S.D.N.Y. Sep. 24, 2010). ........................................... 22

*Microsoft Corp. v. Acacia Rsch. Corp.*,

    No. 13 cv 8275, 2014 WL 6450254 (S.D.N.Y. Nov. 17, 2014). ........................................... 13

*Montesa v. Schwartz,*

    No. 12 Civ. 6057, 2016 WL 3476431 (S.D.N.Y. June 20, 2016)...................................... 22, 23

*Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Tr*

    *. No. 1B*, 230 F.R.D. 398 (D. Md. 2005) ................................................................. 13

*OneBeacon Ins. Co. v. Forman Int'l, Ltd.,*

    No. 04 Civ. 2271, 2006 WL 3771010 (S.D.N.Y. Dec. 15, 2006).................................. 22

*Papyrus Tech. Corp. v. New York Stock Exch., Inc.,*

    325 F. Supp. 2d 270 (S.D.N.Y. 2004)....................................................................... 24

*Payless Shoesource, Inc. v. 174-176 Canal St., L.P.,*

    No. 95 Civ.4993, 1996 WL 185712 (S.D.N.Y. Apr. 17, 1996)................................... 24

*Pearlstein v. BlackBerry Ltd.,*

    No. 13-CV-07060, 2019 WL 2281280 (S.D.N.Y. May 29, 2019). ............................. 21

*Pereira, Tr. for Est. of Capala v. Capala,*

    No. 17-CV-3434, 2019 WL 13392880 (E.D.N.Y. Apr. 16, 2019). ............................ 12

*Rubie's Costume Co., Inc. v. Kangaroo Mfg., Inc.,*

    No. CV 16-6517, 2018 WL 4864833 (E.D.N.Y. Sept. 28, 2018)................................ 22

*Scott v. Chipotle Mexican Grill, Inc.,*

    94 F. Supp. 3d 585 (S.D.N.Y. 2015)........................................................................ 24

*SEC v. Rayat,*

    No. 21-cv-4777, 2023 WL 4706074 (S.D.N.Y. July 24, 2023)............................... 9, 10

*In re Grand Jury Subpoena Dated Mar. 20, 2013,*

    No. 13-Mc-189, 2014 WL 2998527 (S.D.N.Y. July 2, 2014). ............................. 20, 22

*United States v. Ackert,*

169 F.3d 136 (2d Cir. 1999) ............................................................... 21, 22

*United States v. Kovel,*

296 F.2d 918, 921 (2d Cir. 1961) .................................................... 19, 20

*United States v. Nobles,*

422 U.S. 225 (1975) .............................................................................. 18

*United States v. Schwimmer,* 8

92 F.2d 237 (2d Cir. 1989) ...................................................... 9, 10, 14, 16

*Upjohn Co. v. United States,*

449 U.S. 383 (1981) ........................................................................ 10, 19

*Walsh v. Northrop Grumman Corp.,*

165 F.R.D. 16 (E.D.N.Y. 1996). ........................................................... 12

**RULES**

24 Fed. Prac. & Proc. Evid. § 5482 ........................................................ 18

Fed. R. Civ. P. 26(b)(3) ...................................................................... 15, 16

Fed. R. Civ. P. 72(a). ............................................................................ 1, 8

# INTRODUCTION

Defendant Google LLC filed a motion seeking disclosure of almost all documents Plaintiffs logged as attorney-client privileged and work product, arguing that (1) co-clients who retained the same counsel for joint legal matters share no co-client or common interest privilege if they do not own the same intellectual property, and (2) communications between Plaintiffs' counsel and the agent they hired to inform their legal advice are *per se* unprotected. Dkt. 273 ("Motion"). In opposing Google's motion (Dkt. 304, "Opposition"), Plaintiffs submitted four declarations from each Plaintiff's in-house counsel and two declarations from the undersigned counsel (the second filed under seal with leave of court). Dkts. 305–310, 381, 390. Based on this robust record, and after conducting a lengthy hearing, Magistrate Judge Moses denied the Motion, except with respect to a small fraction of the challenged documents ordered for *in camera* review. Dkt. 441 ¶ 2 ("Order").

In response, Google filed the instant Objection under Federal Rule of Civil Procedure 72(a) challenging every aspect of the Order, along with a Proposed Order that now seeks "[a]ll documents withheld" on Plaintiffs' privilege log. Dkt. 484 ("Objection"). Google's Objection is deeply misguided. Google may dislike the Court's rejection of its frivolous attempt to pierce Plaintiffs' co-client privilege and work product protection, but it has not come close to identifying any error — let alone "clear error" or anything "contrary to law" — in the Order. *See* Fed. R. Civ. P. 72(a). Just the opposite: Judge Moses conducted a thorough analysis of the issues presented and the six declarations supporting Plaintiffs' privilege and work product assertions, heard the parties' arguments at the hearing, applied the correct legal standards, and ruled correctly. Google's repetition of the failed arguments it made to Judge Moses in the instant Objection is far from sufficient to meet the stringent standard under Rule 72.

# BACKGROUND

1

**I.    Co-Clients Engaged the Same Counsel to Enforce Their Legal Rights
Pursuant to a Joint Legal Strategy**

For over a decade, Plaintiffs' counsel in this action, Oppenheim + Zebrak, LLP ("O+Z"),
has been primary outside counsel to a group of educational publishers that uses the name
"Educational Publishers Enforcement Group" ("EPEG"), for ease of reference. There are
currently five publishers who participate in the EPEG group: Plaintiffs in this action, Cengage,
Macmillan Learning, Elsevier, and McGraw Hill, and Pearson Education, Inc. ("Pearson")
(collectively, the "Co-Clients"). Dkts. 307–310 ¶¶ 5 ("In-House Atty. Decls."); Dkt. 305
("Murphy Decl.") ¶ 7; Dkt. 390 ("Sealed Murphy Decl.") ¶ 4. The Co-Clients do not jointly
pursue business initiatives or activities. Rather, they work to jointly fight piracy in different
forms through legal efforts. In-House Atty. Decls. ¶¶ 5–8; Murphy Decl. ¶ 7; Sealed Murphy
Decl. ¶ 4.

Over the years, the Co-Clients have engaged O+Z to provide legal advice on multiple
joint legal matters. In-House Atty. Decls. ¶ 8; Murphy Decl. ¶¶ 3–7; Sealed Murphy Decl. ¶ 4.
These include eleven litigations specifically identified on Plaintiffs' privilege log—this case;[1]
eight lawsuits in this District against operators of pirate websites that sell infringing digital
copies of the Co-Clients' educational works (the "Pirate Suits"); one lawsuit in this District
against sellers of print counterfeit books; and one contributory infringement lawsuit in another
district against a platform. Murphy Decl. ¶¶ 3–7.

In connection with their joint legal matters, the Co-Clients jointly sought and obtained
legal advice from O+Z. For each joint legal matter, O+Z and the Co-Clients discussed,
developed, and maintained a coordinated legal strategy based on O+Z's legal advice. In-House

[1] ██████████████████████████████████████████████████

Atty. Decls. ¶¶ 11–13; Murphy Decl. ¶ 7; Sealed Murphy Decl. ¶¶ 4–6. And for each joint legal

matter, the Co-Clients have a verbal co-client/common interest agreement. In-House Atty. Decls.

¶¶ 11–13; Murphy Decl. ¶ 3; Sealed Murphy Decl. ¶ 4. Thus, to the extent such communications

and documents would otherwise be protected from disclosure by the attorney-client privilege

and/or the work product doctrine, the Co-Clients understood and expected that they would

remain protected notwithstanding the presence of or shared disclosure to the other parties to the

co-client/common interest agreement. In-House Atty. Decls. ¶¶ 12–13; Murphy Decl. ¶ 8.

With O+Z as their outside counsel, the Co-Clients have worked to address infringement

on Google for years. In-House Atty. Decls. ¶ 9. Initially, this included filing suits against pirate

websites using Google ads, including the Pirate Suits. *Id.*; Dkt. 38 ¶¶ 114–19 ("Am. Compl.").

As the piracy continued, the Co-Clients began sending infringement notices to Google for

Shopping ads, and Google's failure to respond to those notices resulted in this suit. In-House

Atty. Decls. ¶ 10; Am. Compl. ¶ 4. Because Plaintiffs agreed to produce non-privileged

documents concerning this case and the Pirate Suits, most documents on their privilege log

concern the same. *See* Dkt. 276 Exs. 1, 3, 16–17; Dkt. 305-1, Ex. A (the "Log").

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████

## II.    O+Z Engaged BCGuardian to Conduct Evidence Collection and Analysis at O+Z's Direction

In connection with the Pirate Suits and this case, O+Z engaged BCGuardian LLP ("BCGuardian"), an antipiracy specialist firm, to assist O+Z in protecting and enforcing the Plaintiffs' intellectual property ("IP") rights in their digital works, specifically in connection with litigation. In-House Atty. Decls. ¶¶ 14–15; Murphy Decl. ¶¶ 9–10.  BCGuardian specializes in IP infringement investigation and enforcement and evidence collection and analysis, including in support of IP litigation. Murphy Decl. ¶ 9. BCGuardian markets its services to law firms, recognizing that "clients come to you to hold bad actors accountable," and BCGuardian "provide[s] the intelligence you need to ensure success."[2] Its services for law firms, including O+Z, range from "targeted initiatives to sweeping evidence collection across rings of interconnected 'anonymous' players … to develop litigation-ready evidence of infringement." *Id.*

Plaintiffs have filed numerous infringement cases based on services provided and evidence collected by BCGuardian. Murphy. Decl. ¶ 9. Here, O+Z engaged BCGuardian on behalf of the Co-Clients to investigate violations of IP rights and pursue enforcement actions—in part because its services are precisely the kind of indispensable assistance caselaw contemplates is often required for counsel to provide legal advice. *Id.* ¶ 10; In-House Atty. Decls. ¶¶ 14–15. During all relevant times, BCGuardian conducted evidence collection and analysis at O+Z's direction, including data related to the promotion of sellers of unauthorized digital copies of their

---

[2] https://bcguardian.com/law-firms/ (last visited January 12, 2026) (cited in Opposition at 3).

works on Google's platform. *Id.* ¶ 10; *see also* Dkt. 276-24 (BCGuardian Statement of Work, the

"SOW").  BCGuardian also sent notices to Google, received responses from Google, and

conducted test purchases from pirate sites promoted by Google. In-House Atty. Decls. ¶ 14;

SOW at -2646–2647.  Plaintiffs and/or BCGuardian produced these non-privileged/non-work

product documents. Dkt. 485-1 ("Tr.") 93:14–21.

**III.      Plaintiffs' Log Includes Detailed Descriptions to Substantiate Plaintiffs'
        Privilege and Work Product Assertions**

The logged documents are predominantly emails, often with attachments, between O+Z

and the clients who hired them to provide legal advice, i.e., Plaintiffs and sometimes ███████.

Dkt. 305-1; *see also* Dkt. 414 ("Second Murphy Decl.")[3] ¶¶ 5–6, 9. These represent highly

sensitive and confidential materials, including, without limitation, O+Z's client updates

analyzing joint legal matters they have been retained to handle, O+Z's presentations analyzing

potential claims in connection with this and other cases, in-house counsel's communications with

their companies providing legal advice about the joint legal matters, and communications

between O+Z and BCGuardian analyzing infringement evidence so that O+Z can give informed

legal advice. Murphy Decl. ¶ 16.

Each entry on the Log identifies (1) the type of privilege claim, (2) date and time, (3)

filetype, (4) email subject or document filename (called "Unified Title"), (5) email sender, (6)

recipient, and (7) "cc" recipients, plus (8) a narrative "Document Description" explaining the

privilege assertion and, where applicable, (9) a "Joint Legal Matter Description" specifying joint

litigation or legal matters involved. Similar documents bear similar descriptions. Plaintiffs also

---

[3] Plaintiffs filed the Second Murphy Decl. in opposition to Google's second privilege motion (Dkt. 376), filed a few days after briefing concluded for the Motion, again challenging almost all of Plaintiffs' logged documents.

provided reference charts identifying corporate affiliations and job titles of certain individuals. Second Murphy Decl. ¶¶ 8–9. Attachments to emails are placed in Log Entries numbered immediately following the parent emails and share the same "date and time" metadata with the parent emails. *See*, *e.g.*, log entries at row numbers ("Log Entries") 755–59 (Log at 120).

      Together, the information Plaintiffs have provided identifies the parties to a communication and the associated attachments, the timing of the communication, the nature of the withheld document and the legal matters concerned, including any specifically identified litigations.[4] For example, Log Entry 756 is identified as an "█████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████,"

consistent with the parent email metadata in Log Entry 755, and the "joint legal matters" are specifically identified as "██████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

█████████████" *Id.*

## IV.    Judge Moses Denied Google's Privilege Motion After Conducting a Lengthy

---

[4] Judge Moses had Plaintiffs' November 19, 2025 Log (a metadata-based document-by-document log) before her during the Hearing, and Google had the full Log by the time it filed its reply in support of the Motion (Dkt. 337). Google also had a partial version of the Log, which provides the same categories of information, when it filed its Motion. While Plaintiffs asked Google for two weeks to complete this log, in an effort to resolve the dispute, Google declined to wait to review the Log before filing the Motion, claiming that the Co-Clients "had no shared legal interest in the enforcement of each other's intellectual property." Murphy Decl. ¶¶ 22–25.

**<u>Hearing with a Robust Record</u>**

During the December 15, 2025 hearing ("Hearing"), and based on Plaintiffs' privilege logs and factual submissions, Judge Moses "generally f[ound] that plaintiffs have adequately supported their privilege and their work-product designations," and that communications among Co-Clients and their counsel were privileged. Tr. 85:15–104:5; 138:3–5. Following the Hearing, Judge Moses denied the Motion except with respect to 34 documents involving ███████ after ███████, from which Judge Moses required each party to select three documents for *in camera* review. Dkt. 441 ("Order"). These documents are unique because they are logged as attorney-client privileged and work product, ████████████████████████████████ ████████████████ As Plaintiffs explained at the hearing, the content simultaneously pertains to this litigation and other litigations in which ██████ is a plaintiff. Tr. 87:22–88:5. Judge Moses has not ruled on those six documents, which were submitted *in camera* on December 19, 2025 and consist of email communications from Plaintiffs' counsel to the Co-Clients and attachments prepared by BCGuardian reflecting data analysis requested and required by O+Z to provide legal advice. Tr. 124:20–125:9; 126:6–18.

Judge Moses addressed and rejected each of Google's arguments on the Plaintiffs' joint privilege. First, Judge Moses found Google's argument "that the common interest exception to waiver doesn't apply here because the four plaintiffs plus ██████ shared a commercial rather than a legal interest" to be not "meritorious" because "financial consequences" alone do not "render the common interest exception inapplicable." Tr. 85:20–86:7. Second, Judge Moses rejected Google's argument "that plaintiffs and/or ██████ aren't eligible for the common interest exception because" they do not "jointly own[] any of the individual intellectual property at issue." *Id.* 86:8–20. Third, Judge Moses resolved Google's argument that "██████ destroys

the common interest exception . . . because ████████ not a plaintiff" based on the facts provided

in the sealed attorney declaration except with respect to 34 documents involving ███████ after

███████. *Id.* 86:21–87:12.

Judge Moses also addressed Google's numerous arguments concerning BCGuardian,

which ultimately aimed to allow Google to "see everything BCGuardian did." Tr. 136:7–137:7.

First, Judge Moses questioned Google's position that the *Kovel* doctrine did not apply to

communications involving BCGuardian because BCGuardian was investigating matters outside

Plaintiffs' companies. Tr. 108:1–21. Although not explicitly reaching a conclusion on the

relevance of that issue, Judge Moses found that "the communications between BCGuardian and

plaintiffs' law firm" "most likely" "qualify for attorney-client privilege." Tr. 138:5–11. Second,

after a careful examination of the record and questioning of counsel, Judge Moses rejected

Google's contention that Plaintiffs did not establish that documents prepared by BCGuardian

withheld as work product were "because of litigation." *Id.* 119:12–138:25. After clarifying the

relative timing of documents created in anticipation of identified litigations and the filing of such

litigations, and examining Plaintiffs' logs and factual submissions, Judge Moses "generally"

found that "plaintiffs have adequately supported their…work-product designations." *Id.* 137:22–

138:25. Third, Judge Moses noted that Google's sweeping closing argument that all documents

involving BCGuardian are *per se* unprotected because Plaintiffs' "evidence of direct

infringement is BCGuardian's work" was not properly before the Court. *Id.* 135:24–137:9.

Google filed its instant Objection challenging the entire Order, along with a Proposed

Order that now seeks "[a]ll documents withheld" on the Log. Dkts. 483–488.

## LEGAL STANDARD

For nondispositive pretrial matters, district courts only "modify or set aside any part of the [magistrate judge's] order" if it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "A finding is deemed clearly erroneous only if the reviewing court is left with the definite and firm conviction that a mistake has been committed," and "[a]n order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Dorce v. City of New York*, No. *York*, No. 1:19-cv-02216, 2024 WL 4491198, at *2 (S.D.N.Y. Oct. 15, 2024) (Rochon, J.) (overruling Rule 72(a) objections) (internal citations and quotation marks omitted). Therefore, "[p]ursuant to this highly deferential standard of review, magistrates are afforded broad discretion in resolving discovery disputes," *id.* (citations omitted), and "the objector carries a heavy burden." *Adam v. Bloomberg L.P.*, 2024 WL 4457708, at *2 (S.D.N.Y. Oct. 10, 2024) (Rochon, J.) (overruling Rule 72(a) objections) (internal citations and quotation marks omitted). Furthermore, "[a] district court generally should not entertain new grounds for relief or additional legal arguments not presented to the magistrate." *Id.* at *5 (internal citations omitted).

## ARGUMENT

### I.    Judge Moses Applied the Correct Legal Standard in Finding a Common Legal Interest Between the Plaintiffs/Co-Clients.

Judge Moses correctly found that Plaintiffs and, as applicable, the Co-Clients, share a common legal interest. The co-client privilege "shields the communications an attorney has with two or more of her clients on a matter of common interest from disclosure to third parties." *SEC v. Rayat*, No. 21-cv-4777, 2023 WL 4706074, at *3 (S.D.N.Y. July 24, 2023). The common interest doctrine is similar, providing an "exception" to waiver from disclosure of privileged communications to third parties. *Id.*; *see also United States v. Schwimmer*, 892 F.2d 237, 243–44 (2d Cir. 1989). *Compare Han v. InterExchange, Inc.*, No. 1:23-cv-07786, 2025 WL 1419527

(S.D.N.Y. May 16, 2025) (Rochon, J.) (applying the common interest doctrine and finding that "Plaintiffs as co-litigants represented by the same counsel, share a common interest in the litigation of this case") with *Rayat*, 2023 WL 4706074 at *3 (finding that "the proper lens through which to view the parties' competing arguments is that of 'the co-client (or joint-client) privilege").

Through either lens, confidential communications between co-clients with their counsel, concerning the legal matters for which they jointly retained said counsel, pursuant to a joint legal strategy, are privileged. *See Han*, 2025 WL 1419527 at *4. Moreover, "the common interest doctrine allows for the communication of privileged information . . . without it constituting a waiver of privilege, so long as [the parties] share a common legal interest and the parties cooperate in developing a common legal strategy." *Id.* at *2. A contrary rule would vitiate the very purpose of attorney-client privilege — "to encourage full and frank communication between attorneys and their clients," furthering the administration of justice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *see also Schwimmer*, 892 F.2d at 234–44 (explaining that, due to "[t]he need to protect the free flow of information from client to attorney," which logically exists whenever multiple clients share a common interest about a legal matter," "it is therefore unnecessary that there be actual litigation in progress for the common interest rule of the attorney-client privilege to apply." (internal citations and quotation marks omitted)).

Yet Google doubles down on its position that the law does not currently "allow . . . co-plaintiffs to invoke the common interest rule against a defendant," and that the law does not currently "shield . . . pre-lawsuit communications" between co-plaintiffs "from discovery" in that

very lawsuit. Obj. at 16. Google's position runs directly contrary to the principles outlined in *Han*, an opinion from *this* Court.[5]

Rather, courts have repeatedly found that co-parties in lawsuits that "formulate a common legal strategy" share a common legal interest, and attorney-client communications requesting or providing legal advice concerning those joint litigations are privileged. *See Han*, 2025 WL 1419527 at \*4; *In re Subpoena Duces Tecum Served on New York Marine & Gen. Ins. Co*, No. M 8-85 MHD, 1997 WL 599399, at \*4 (S.D.N.Y. Sept. 26, 1997) ("[A] common legal interest has been defined as one in which the parties have been, or may potentially become, co-parties to a litigation, or have formed a coordinated legal strategy.") (internal citations omitted).

Plaintiffs' in-house counsels' declarations attest that Plaintiffs (and, as applicable, ████), "have jointly sought and obtained legal advice from O+Z, and discussed, developed, and maintained a coordinated legal strategy with O+Z," including, without limitation, as to evidence collection and analysis, notice and response analysis, claims analysis, and legal document preparation. In-House Atty. Decls. ¶¶ 11, 13; Murphy Decl. ¶ 3; Sealed Murphy Decl. ¶¶ 4–6. Judge Moses pointed to Plaintiffs' and ████ co-plaintiff relationship, not in finding that their co-party status automatically defeats Google's motion, but in finding that Plaintiffs have shown the requisite shared legal interest. *See* Tr. 98:16–102:11.

Nor is an "identical" common interest required, as Google contends (Obj. at 10). *See Han*, 2025 WL 1419527, at \*2 (noting an in-circuit split on whether an "identical" interest is required

---

[5] Although Plaintiffs have repeatedly brought *Han* to Google's attention, *see* Dkt. 304 at 2, 4; Dkt. 276-15 at 10, Google does not address, let alone acknowledge *Han*, in this Objection. Consequently, if Google's "arguments were frivolous in the first instance, they are far worse now, given the standards for making a 'proper' objection and the Rule 72 standard of review." *Pacheco v. Chickpea at 14th St. Inc.*, No. 18-CV-251, 2019 WL 3554460, at \*1–2 (S.D.N.Y. Aug. 5, 2019) (overruling Rule 72(a) objections and ordering objectors to show cause "why sanctions should not be imposed" for repeating "frivolous" arguments and "ignoring controlling precedent").

and that some courts "simply focused on whether the parties had interests in common without exploring whether they were identical.") (cleaned up). Therefore, in *Han*, the Court did not discuss whether the co-plaintiffs shared an "identical" interest before finding that their joint communications "with counsel about the litigation process that reflects legal advice" is "privileged." *Id.* at *5. Google relies on *Pereira, Tr. for Est. of Capala v. Capala*, No. 17-CV-3434, 2019 WL 13392880, *4 (E.D.N.Y. Apr. 16, 2019), but even aside from being an out-of-district case decided under New York law, *Pereira* does not support Google's claim, much less require setting aside Judge Moses's Order. *Pereira* makes clear that whether parties asserting a common interest have "identical or *nearly identical*" (Google leaves out the "nearly" qualifier) means whether their legal interests are "sufficiently aligned." *Id.* at *3–4 (defendant ex-spouses in a bankruptcy case were "adversaries" in the relevant underlying divorce proceeding, had "completely different" legal interests, and argued their initial joint representation created a "conflict of interest").[6]

---

[6] Google also relies on other cases that involve adversarial interests between the parties alleging a common interest (Obj. at 12). *See Johnson Matthey, Inc. v. Rsch. Corp.*, 2002 WL 1728566, at *6 (S.D.N.Y. July 24, 2002) (plaintiff claimed that it shared common legal interest with defendants, its adversaries in the case at issue, which defendants, represented by separate counsel at all relevant times, actively disputed); *In re Hypnotic Taxi LLC*, 566 B.R. 305, 317 (Bankr. E.D.N.Y. 2017) (defendant removed as trusts' discretionary beneficiary and non-party trusts did not share common legal interest as to trusts' and trust assets subject to attachment or execution); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 2020 WL 6193856, at *2 (E.D.N.Y. Sept. 1, 2020) (patent assignor and assignee have a common legal interest in protecting the patents' validity, but withheld communications reflected "adverse positions" between patent assignor and patent assignee as to assignment agreement itself). Nor are Google's other cases on this point apposite. *See Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 471 (S.D.N.Y. 2003) (finding no common legal interest with respect to the case at hand between defendant and non-party corporate affiliates, represented by separate counsel, with separate agreements with plaintiff, where the non-party's agreement with plaintiff was not in dispute in the case); *Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16, 19–20 (E.D.N.Y. 1996) (non-party financial advisor's disclosure of his *own* attorney's legal advice intended only for him to his advisee, defendant's predecessor, was not privileged).

Nor does a common legal interest, in an intellectual property case, require co-plaintiffs to have "shared ownership" in each other's intellectual property. Obj. at 11. Judge Moses correctly found that jointly owning copyrights or trademarks is not "a requirement" for a common legal interest to exist, and "the cases that Google cited" do not "indicate that it is." Tr. 86:8–20. While Google now argues this ruling was "contrary to law" (Obj. at 11), at the Hearing, Google's counsel argued that "this is such a novel situation, it was not surprising to us that there wasn't something exactly on point." Tr. 96:9–11. And Judge Moses was exactly right—Google's cited cases create no such requirement. *See Carnegie Inst. of Wash. v. Pure Grown Diamonds, Inc.*, 481 F. Supp. 3d 276, 279 (S.D.N.Y. 2020) (no common legal interest between plaintiff and non-party as to attorney's legal conclusions about patent when the non-party was a potential counterparty contemplating purchasing an interest in said patent); *Microsoft Corp. v. Acacia Rsch. Corp.*, No. 13 cv 8275, 2014 WL 6450254, at *2 (S.D.N.Y. Nov. 17, 2014) (counterparties actively negotiating a licensing agreement over patent did not share common interest in patent); *see also Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 417 (D. Md. 2005) (looking to "common ownership or control" of affiliate corporations, not "common ownership or control" of those affiliates' property interest, to determine whether "courts" need to "engage in a painstaking analysis" to determine whether there is a shared "legal interest . . . with respect to the subject matter of" the attorney-client "communication"); *In re Hypnotic Taxi LLC*, 566 B.R. 305, 317 (Bankr. E.D.N.Y. 2017) (no common legal interest between removed former discretionary beneficiary of trusts and non-party trusts as to the trusts' attachment or execution in the absence of any facts on the nature of the asserted common interest).[7]

---

[7] Nor is the out-of-circuit case, *In re Cal. Bail Bond Antitrust Litig.*, 778 F. Supp. 3d 1051, 1063-64 (N.D. Cal. 2025) apposite, where the communications at issue were with a regulatory lawyer jointly retained to provide lobbying services, not legal advice.

Google attempts to muddy the waters by morphing Judge Moses's ruling into a finding that Plaintiffs have a common legal interest based on their "co-party status alone." Obj. at 10. Judge Moses made no such ruling. Judge Moses appropriately considered that Plaintiffs (and, as applicable, ███████) are co-parties represented by the same counsel. *See* Tr. 96:1–8 (asking Google's counsel whether Google's cases involved "co-plaintiffs or co-defendants" or "communications among them and their litigation counsel," which Google's counsel admitted they did not, and stating, "I think that makes a difference, don't you"?) (cleaned up). Of course this makes a difference—a critical question is whether the parties asserting a common legal interest are pursuing a common and coordinated legal strategy. *Schwimmer*, 892 F.2d at 243 (in case involving co-defendants with separate counsel, stating that the common interest rule protects communications "where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel"); *Han,* 2025 WL 1419527, at \*3; *In re Subpoena Duces Tecum*, 1997 WL 599399 at \*4 (S.D.N.Y. Sept. 26, 1997) ("[A] common legal interest has been defined as one in which the parties have been, or may potentially become, co-parties to a litigation, or have formed a coordinated legal strategy.").

Further, Google erroneously contends that a "ruling as to one Plaintiff's infringement claim has no effect on another Plaintiff's claim" (but then admitted that its primary defense, under the DMCA, would have such an effect). Obj. 11–13. Consistent with Judge Moses's statements at the Hearing, this contention ignores the nature of the allegations and defenses in this case. *See* Tr. 100:17–102:11. Indeed, in response to her hypothetical, Google's counsel acknowledged that if multiple female employees were discriminated against by the same employer in the same manner, even if the employees had different individual circumstances such as office and rank, their common communications with counsel concerning a joint litigation

14

strategy would be privileged. Tr. 98:16–99:11. And as Judge Moses pointed out, "very much like" the co-plaintiffs in the hypothetical, Plaintiffs have pled that "they were all injured in the same ways pursuant to a common course of conduct by Google," the same actor. Tr. 99: 21–100:8; *see also, e.g.,* Am. Compl. ¶¶ 4, 8, 9, 47.

Google also repeats its contention that Plaintiffs' efforts to combat the infringement of their legal rights under copyright and trademark laws are based on a "commercial, not legal, interest," and concern only "business" matters. Obj. 13–14. This argument represents *Google's* hollow attempt to reframe *Plaintiffs'* IP-related legal activities by ignoring Plaintiffs' voluminous factual submissions, not to mention the nature of this proceeding and the other cases the Co-Clients have brought against digital pirates.[8] *See generally* In-House Atty. Decl.; Murphy Decl.; Sealed Murphy Decl. Moreover, Judge Moses already squarely addressed this argument and found that Plaintiffs and the Co-Clients do share a *legal* interest (Tr. 99:21–100:8), and the fact that the "legal disputes" arising from that shared interest "have financial consequences" is irrelevant to the privilege questions at hand. Tr. 85:24–86:7.

In short, requiring shared IP ownership for co-plaintiffs in joint lawsuits against common infringers has no basis in caselaw. Further, adopting that drastic requirement would render co-plaintiff IP suits impossible to maintain. Such suits include *Grokster*, *Napster*, and *Aimster*— seminal cases addressing peer-to-peer infringement in the digital age. Murphy Decl. ¶ 12 (citing numerous other co-plaintiff IP suits in which the plaintiffs own different IP rights).

II.    **Judge Moses Applied the Correct Legal Standard in Finding Confidential Materials Prepared in Anticipation of Litigation to be Protected Work**

---

[8] Google also references EPEG's activities in fighting print counterfeiting, Obj. 14–15. These references do nothing to undermine the Plaintiffs'/Co-Clients' common legal interest, as Google once again ignores that print counterfeiting is a violation of Plaintiffs' legal rights. Print counterfeiting is also not at issue in this case about Google's infringement of Plaintiffs' digital works. *See generally* Am. Compl.

**Product.**

Google claims that Judge Moses "did not engage with any of Google's arguments regarding Plaintiffs' work product claims." Obj. 16. But the record shows just the opposite; Judge Moses engaged with Google's work product arguments at length. *See supra* Background § IV; Tr. 108:1–138:5. From that incorrect premise, Google claims that Judge Moses erred in her application of the work product doctrine in at least four different ways.[9]

First, Google complains that Judge Moses erred in finding work product protection for 18 documents that Google contends are "not identified as being related to any litigation as work product" in the Log. Obj. 16–17. But Google never raised these documents in the Motion. Google mentioned these 18 Log Entries for the first time in its reply, Dkt. 337 at 3, when those same Log Entries were present in the partial document-by-document log that Google had before the Motion. Courts generally do not consider arguments raised for the first time in a reply brief. *See, e.g.*, *James v. Orange County Correctional Facility*, No. 94-CV-5105, 2011 WL 5834855, at *3 (S.D.N.Y. Nov.18, 2011) (citations omitted). Nor did Google raise these documents at the Hearing. And nothing about this handful of documents shows Judge Moses committed "clear error." Judge Moses was not required to individually discuss all 2,000-some documents on the Log, and Plaintiffs were not required to identify a filed litigation by name or case number to support their co-client privilege or work product designations. *See Schwimmer,* 892 F.2d at 244 (actual litigation is unnecessary to support common interest rule in privilege context); Fed. R. Civ. P. 26(b)(3)(A) (work product applies to anticipated litigation). Moreover, many of the

---

[9] Google also repeats its hollow argument that it has "a substantial need for BCGuardian documents" without making the slightest showing for such need, or explaining why the extensive discovery produced is insufficient. Obj. 27. Its conclusory demand cannot justify disclosure of protected work product. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii).

16

documents are identified as attachments and logged immediately following their parent emails, which contain Joint Legal Matter descriptions.[10] The ESI protocol requires the production of "child" documents regardless of relevance. Dkt. 80 ¶ 8. Further, one of the emails is specifically identified as being related to this litigation.[11] And other documents are privileged emails further up in a chain that contains an email from O+Z to the Co-Clients concerning a variety of legal matters, including identified litigations.[12]

Second, Google contends that Judge Moses "did not apply the law" in finding what it characterizes as "EPEG organizational documents" to be protected work product. Obj. 16–17. Google speculates that these documents may not be protected work product by relying on an attorney declaration cherry-picking words in the file names. Obj. 16–17; Dkt. 338 ¶ 17. These documents were also raised for the first time in Google's reply. Dkt. 337 at 3. Moreover, there was no error in finding that Plaintiffs sufficiently supported their work product designations when the Log amply describes the legal nature of these documents and the specific litigations concerned.

Third, Google argues that Judge Moses should have "analyze[d] whether Plaintiffs waived work product protection based on their impermissibly indeterminate Fifth Log or their failure to provide an adequate log despite having months to do so." Obj. 16. Google did not raise this argument in the Motion, only raised it for the first time in the reply, Dkt. 337 at 1, and did not raise this argument during the Hearing. At any rate, Judge Moses already found that "plaintiffs have adequately supported their privilege and their work-product designations," Tr.

---

[10] *See* Log Entries 487, 495–96, 501, 507, 508, 516–517 (Log at 65, 67–71).

[11] *See* Log Entry 515.

[12] *See* Log Entries 491, 492, 497–99, 509–11, 513, 514.

138:3–5, based on the record before her, including Plaintiffs' privilege logs and six fact declarations.

Finally, Google claims that Judge Moses based her finding that Plaintiffs have sufficiently supported their work product designations for BCGuardian-created documents on counsel's unsworn representations in court. Obj. 22. That is also incorrect. The work product doctrine nowhere requires that only materials prepared by someone "specifically engaged for any litigation" qualify as work product. *Id.* 24. Rather, work products are materials "prepared in anticipation of litigation . . . by or for another party or its representative." Fed. R. Civ. P. 26(b)(3). Because "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial," the doctrine protects material prepared by "agents for the attorney," in this case, BCGuardian. *United States v. Nobles*, 422 U.S. 225, 238 (1975). Further, "[m]aterials need not be prepared solely for a litigation purpose in order to merit protection under the work-product privilege." *Han*, 2025 WL 1419527, at *3. Whether BCGuardian was specifically engaged for litigation is not, and Judge Moses did not hold that it was, the dispositive question.

Rather, Judge Moses reached her conclusions following a careful examination of the record with some clarifications elicited from counsel. Tr. 127:14–128:25. Importantly, although Judge Moses sought counsel's clarification on when certain materials were created in anticipation of identified litigations relative to when those litigations were filed, Plaintiffs already submitted that information through sworn declaration and the Log. Murphy Decl. ¶¶ 4–5, 10 (attesting that "[i]n connection with the Pirate Suits and this case, O+Z engaged BCGuardian to assist it in protecting and enforcing the Plaintiffs' IP rights," and "BCGuardian conducted evidence collection and analysis at O+Z's direction during all relevant times"); In-House

Counsel's Decls. ¶ 14 (attesting that, "[*i*]*n connection with this case, including the consideration of litigation against Google leading up to the filing of the complaint*, Plaintiffs authorized O+Z *to engage* BCGuardian"); *id.* ¶ 15 (same for other cases). On the strength of the Log and the factual submissions, there was no error in finding that Plaintiffs' designations were well supported, and Judge Moses did not "clearly err" in not "justify[ing] her ruling beyond the explanation that she already provided." *Lebenns v. Frost Prods.*, No. 1:21-cv-11155, 2023 WL 8280405, at *4 (S.D.N.Y. Nov. 30, 2023) (Rochon, J.) (overruling Rule 72(a) objections).

**III.    Judge Moses Did Not Err in Finding Communications between Counsel and Its Agent for Purposes of Providing Legal Advice to be "Most Likely Privileged."**

Judge Moses also did not err in finding that "the communications between BCGuardian and Plaintiffs' law firm" "most likely" "qualify for attorney-client privilege." Tr. 138:5–11. Indeed, the attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *EFCG, Inc. v. AEC Advisors, LLC*, 19-CV-8076, 2020 WL 6378943, at *2 (S.D.N.Y. Oct. 30, 2020) (Moses, J.) (quoting *Upjohn*, 449 U.S. at 390). This is because "the complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others," rendering the assistance of "agents . . . indispensable to his work," and hence "the privilege must include all the persons who act as the attorney's agents." *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961).

Particularly relevant here, "investigations conducted by an agent of the attorney . . . clearly fall within the attorney-client rubric. Thus, courts have frequently extended the attorney-client privilege to communications made to investigators who have provided necessary assistance to attorneys." *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 71 (S.D.N.Y. 2010) (internal citations omitted) (citing cases). *Gucci* applied the privilege to an investigator

conducting a pre-suit investigation into trademark infringement claims, where the investigator "acted at the direction of [counsel] to assist in-house and outside counsel to prepare for litigation . . . ." *Id.* Like BCGuardian, the Gucci investigator "played an integral role in providing hands-on assistance to in-house and outside counsel in gathering evidence[.]" *Id. See also, e.g.*, *In re Grand Jury Subpoena Dated Mar. 20, 2013*, No. 13-Mc-189, 2014 WL 2998527, at *10 (S.D.N.Y. July 2, 2014) (*Kovel* applied to communications with investigator retained by counsel to interview third-party witnesses); *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 311 (D.N.J. 2008) (*Kovel* extends to "investigators, interviewers, technical experts, accountants, physicians, patent agents, and other specialists[.]"); *Bauman v. Jacobs Suchard, Inc.*, 136 F.R.D. 460, 463 (N.D. Ill. 1990) (communications with investigator privileged because "privilege . . . extends to communications by agents of attorneys"); *see also* 24 Fed. Prac. & Proc. Evid. § 5482 n.30 (1st ed.) (citing cases extending privilege to investigators hired by counsel). And *Kovel* itself confirms that the investigator's assistance must be "at least highly useful," *Kovel*, 296 F.2d at 922, not "indispensable" as Google contends. Obj. 20.

Against this weight of authorities, Google argues that *Kovel* nevertheless does not apply to investigators unless the investigator is "interpreting the client's information, not collecting information the clients did not have." Obj. 21. Google claims that Plaintiffs' cases support its position because in those cases, "the third party was interpreting the client's information" as opposed to "collecting information the clients did not have." *Id.* First, Google's blanket characterization of Plaintiffs' cases is incorrect. *See In re Grand Jury Subpoena*, 2014 WL 2998527 at *2 (*Kovel* applied to investigator retained by attorney to interview third-party witnesses). More importantly, none of Plaintiffs' cases suggests that whether the third party was

"interpreting the client's information," not "collecting [external] information," bears on whether attorney-client privilege attaches to attorney-agent communications. Google also cites to *Ackert* for the proposition that an attorney's or client's communications with a third-party investigator is *per se* non-privileged if the third party was retained to "collect information the client does not have," Obj. 19 (cleaned up), which reads *Ackert*'s holding far too broadly. In that case, the Second Circuit found that communications between an attorney and an investment banker who was not retained by the attorney were not to be presumed privileged, although the Court would not "preclude the possibility that" some aspects of those communications may be privileged. *United States v. Ackert*, 169 F.3d 136, 139–40 (2d Cir. 1999). *Ackert* nowhere stands for the proposition that a third party retained by an attorney to assist with the provision of legal advice must only "interpret[] the client's information," or else privilege would not apply. *See Pearlstein v. BlackBerry Ltd.*, No. 13-CV-07060, 2019 WL 2281280, at *2 (S.D.N.Y. May 29, 2019) (distinguishing *Ackert* because it "did not involve communications between and among a company, its outside counsel and financial advisor regarding legal advice" and finding such communications privileged).

In short, neither *Kovel*, nor *Ackert*, requires the disclosure of communications between counsel and his agent "to enable him to give sound and informed advice" to his client's adversary. *EFCG*, 2020 WL 6378943 at *2. The guiding light is the need for counsel to communicate with agents in confidence to inform legal advice. "A contrary conclusion would force attorneys to forego the services of private investigators, lest their communications with the investigators ultimately be revealed at the business end of a subpoena." *In re Grand Jury*

*Subpoena*, 2014 WL 2998527 at *8. Finally, none of Google's cases involve an investigator hired to provide the type of support BCGuardian provides to O+Z and Plaintiffs.[13]

Given complexities of digital piracy and the scale of infringement on the Shopping platform, O+Z must rely on BCGuardian's knowledge and expertise to target investigations, collect and analyze vast data, and interpret its findings to inform its legal advice to the Co-Clients. Murphy Decl. ¶ 10. This is precisely the type of "interpretive aide" *Kovel* and its progeny contemplate. Without addressing these facts and without support, Google mistakenly characterizes BCGuardian as providing routine services without "specialized expertise." Obj. 21. That is simply incorrect, and Plaintiffs' submissions contain more than ample evidence to show it is incorrect. In-House Counsel Decls. ¶¶ 14–15; Murphy Decl. ¶¶ 9–10, 16.

---

[13] *See, e.g.*, *United States v. Ackert*, 169 F.3d 136, 139–40 (2d Cir. 1999) (communications between in-house lawyer and an investment banker not engaged by the lawyer and was not lawyer's agent are not presumed privileged); *Rubie's Costume Co., Inc. v. Kangaroo Mfg., Inc.*, No. CV 16-6517, 2018 WL 4864833, at *1 (E.D.N.Y. Sept. 28, 2018) (non-attorney investigation "prior to retention of outside counsel" and not in anticipation of litigation not protected work product); *OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, No. 04 Civ. 2271, 2006 WL 3771010, at *4–5 (S.D.N.Y. Dec. 15, 2006) (no indication attorney performed legal work when creating insurance claims reports); *GMO Gamecenter USA, Inc. v. Whinstone US, Corp.*, No. 22-CV-5974, 2025 WL 1763262, at *9 (S.D.N.Y. June 25, 2025) (client's communications with financial advisors for effectuating a corporate purchase are not privileged because they were not prepared for the "primary purpose of requesting for conveying legal advice"); *Durling v. Papa John's Int'l, Inc.*, No. 16 Civ. 3592, 2018 WL 557915, at *1–2 (S.D.N.Y. Jan. 24, 2018) (client, without involving counsel and not in connection with any legal matter, engaged prior litigation expert to "assist it in connection with an analysis of alternative approaches to reimbursement of delivery driver vehicle expenses"); *Montesa v. Schwartz*, No. 12 Civ. 6057, 2016 WL 3476431, at *5–7 (S.D.N.Y. June 20, 2016) (communications with consultants not privileged when "Plaintiffs' counsel does not even assert that they had any sort of formal agreement with these third parties," but communications with consultant "retained as an agent of counsel" were privileged); *Merck Eprova AG v. Gnosis S.p.A.*, No. 07 Civ. 5898, 2010 WL 3835149, *1–2 (S.D.N.Y. Sep. 24, 2010) (communications among panel of independent experts in preparing drug safety report for submission to federal agency, retained by regulatory counsel to prepare that report, are not privileged).

Google also misdescribes BCGuardian's SOW as limited to routine services, emphasizing the phrase "███████████,"[14] and listing services addressed in the SOW while omitting the analysis step, i.e., "█████████████████████████ █████████" Obj. at 19; SOW, BCG-Google00002646. While the SOW █████████ ██████████████████████████████████████████████ ███████████████████████████████████████████████████ █████████. *See* Dkt. 276-24. As the SOW also demonstrates, ████████████ ████████████████████████████████ SOW at -2646. The SOW also expressly provides that "█████████████████████████████ ████████████████████████████████████████████████ █████████████████████████████████████" SOW at 3; *see also* *Montesa*, 2016 WL 3476431 at *7 (communications between consultant-investigator and client are privileged where engagement agreement and confidentiality agreement establish that the consultant-investigator was retained as "an agent of counsel").

Again, based on a thorough examination of an extensive record, Judge Moses found that "the communications between BCGuardian and plaintiffs' law firm" "most likely" "qualify for attorney-client privilege." Tr. 138:5–11. There was no failure or misapplication of any "relevant statutes, case law, or rules of procedure." *Dorce*, 2024 WL 4491198 at *2.

---

[14] Judge Moses appropriate questioned Google's cherry-picking of words and phrases in BCGuardian's or Plaintiffs' documents to draw broad conclusions. *See* Tr. 114:17-25 ("I think you're asking too much of all these folks who are involved in these communications. The work product doctrine does require that the work have been done in anticipation of litigation. It doesn't require that every product manager, vice president and other non-lawyer personnel involved in the project use the phrase 'anticipation of litigation' on every relevant e-mail that they send.").

**IV.    Judge Moses Did Not Err in Declining Google's Request for *In Camera* Review to Determine Whether BCGuardian Documents Are "Ordinary-Course."**

Judge Moses did not err in declining to review "perhaps five of the withheld BCGuardian documents to determine whether or not these are ordinary-course documents or prepared in anticipation of litigation" at Google's request. Tr. 137:14–20. As Judge Moses correctly noted, determining whether documents are "ordinary-course or prepared in anticipation of litigation" is not a task that can simply be accomplished by reviewing five or so documents on their face. Tr. 138:12–139:4. Such an exercise would require reviewing numerous additional documents around a document to determine the context, which Judge Moses, in her broad discretion, determined was not helpful or necessary. *Id. Papyrus Tech. Corp. v. New York Stock Exch., Inc.*, 325 F. Supp. 2d 270 n.5, 274 (S.D.N.Y. 2004) ("[W]hether to accept [party's] invitation [to conduct in camera review] is a decision that lies within the discretion of the Court.").

Moreover, Plaintiffs' Log is more than sufficient to substantiate privilege claims without *in camera* review. *See, e.g., Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 601 (S.D.N.Y. 2015) (finding log "sufficiently detailed" where it identifies "the type of document; general subject matter; author, addressees, and recipients; and the privilege asserted," plus the "particular topic" of legal advice discussed). "To require more information would be to put [Plaintiffs] in the contradictory position of having to risk [their] privilege in order to preserve it." *Id.* Where, as here, "[t]he privilege log sets forth an adequate basis for the claim that these documents were communications between attorney and client made for the purpose of giving or receiving legal advice" and the challenging party has "set forth no reason to doubt that[,]" courts decline in camera review. *Payless Shoesource, Inc. v. 174-176 Canal St., L.P.*, No. 95 Civ.4993, 1996 WL 185712, at *1 (S.D.N.Y. Apr. 17, 1996); *see also In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 224 (S.D.N.Y. 2001) ("[N]o in camera review of the documents listed in the

24

Privilege Log is necessary" given information in log and factual submissions). Plaintiffs also submitted sworn testimony to substantiate their claims, which Judge Moses had the discretion to credit. *See generally* In-House Atty. Decl.; Murphy Decl.; Sealed Murphy Decl.

Here, Google simply failed to show that the *in camera* review it requested was warranted, and Judge Moses did not err in exercising her discretion in declining Google's ill-defined invitation. Once again, Judge Moses "generally f[ound] that plaintiffs have adequately supported their privilege and their work-product designations" following careful review of an extensive factual record and a thorough hearing. Tr. 138:2–5. That "privilege issues are . . . often subtle" and that "potentially reasonable minds could differ" as to some individual documents does not render any part of the Order clearly erroneous or contrary to law. *Id.* 137:22–138:11. Google has not carried its "heavy burden" to modify or set aside the Order that is well within magistrate judges' "broad discretion in resolving discovery disputes." *Adam*, 2024 WL 4457708 at *2.

## CONCLUSION

For the reasons stated above, Google's Objection should be denied in its entirety.

Dated:  January 12, 2026

Respectfully submitted,

 */s/ Michele H. Murphy*
Matthew J. Oppenheim
Michele H. Murphy (*pro hac vice*)
Jeff Kane (*pro hac vice*)
Danae Tinelli
Uriel Lee

OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202-480-2999 telephone
866-766-1678 fax
matt@oandzlaw.com
michele@oandzlaw.com
jkane@oandzlaw.com

danae@oandzlaw.com
ulee@oandzlaw.com

Lauren Bergelson
Yunyi Chen
Oppenheim + Zebrak, LLP
461 Fifth Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
lbergelson@oandzlaw.com
ychen@oandzlaw.com

**CERTIFICATION OF WORD COUNT**

I certify that the foregoing memorandum of law complies with the formatting and word limit requirements set forth in Rule 3.C of the Court's Individual Rules of Practice in Civil Cases because it contains 7,900 words, excluding the cover page, table of contents, table of authorities, signature block, and certification of word count. This memorandum of law also complies with the applicable formatting rules because it has been prepared in 12-point font and all text is double spaced. In preparing this certification, I relied on the word count of the Microsoft Word computer program used to prepare this memorandum of law.

Dated:  January 12, 2026                    */s/ Michele H. Murphy*