

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
jkane@oandzlaw.com

January 19, 2026

**VIA ECF**

The Honorable Barbara Moses
U.S. District Court for the Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

> Re:   *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
>        Plaintiffs' Letter Request for Discovery Conference re Google's Treatment of
>        Shopping Notices as Search Notices

[Redacted]

Dear Judge Moses,

    We represent all Plaintiffs in this matter. Prior to filing this case, Plaintiffs sent hundreds of notices to Google reporting that Google was promoting infringing copies of Plaintiffs' works on Google's Shopping platform. But approximately ▬ of the time, Google erroneously classified these notices as pertaining to Google's *Search* platform, rather than Google's *Shopping* platform. This is a major issue because different platforms have different DMCA policies, personnel and procedures. It likely means that Google did not properly assess strikes against the pirate websites named in the misclassified notices, and therefore did not suspend those sites when it should have, or at all.

    Plaintiffs proposed that Google provide limited discovery into this important issue, but Google refused. Google's arguments in support of its refusal are contradicted by the record and ignore the limits of Google's prior discovery. The Court should order Google to provide discovery into Google's erroneous treatment of Shopping notices as Search notices.

    **I.   Google mishandled many of Plaintiffs'** ***Shopping*** **notices by classifying them as** ***Search*** **notices.**

    Google, of course, operates multiple platforms (Shopping, Search, YouTube, etc.), and many of its platforms have different DMCA polices. When a rightsholder wishes to report infringing content, Google thus asks rightsholders to identify the Google platform on which the content appears so that Google can apply the appropriate DMCA policy. Plaintiffs' notices prominently state that they pertain to the Shopping platform, both in the cover letter and in the attachment that lists the infringing Shopping ads. Declaration of Attorney Jeff Kane ("Atty. Decl.") Ex. 1.

    But for approximately ▬ of the notices that Plaintiffs submitted via email concerning infringements on Google's *Shopping* platform (representing approximately ▬ of the URLs contained in those notices), Google's employees classified the notice as pertaining to the *Search*

Hon. Barbara Moses
January 19, 2026
Page 2 of 5

platform, rather than the *Shopping* platform.[1] Atty. Decl. ¶ 4. If Google treated these notices as Search notices, this likely means that Google did not reasonably implement its repeat-infringer policy under the DMCA safe-harbor, 17 U.S.C. § 512(i)(1)(a). Suppose a rightsholder submitted two valid notices about Shopping ads from the same pirate website. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ That is not reasonable implementation of Google's Shopping DMCA policy. In other words, Google's repeat-infringer program is a strike system; if Google isn't counting strikes correctly, it isn't implementing its program correctly. This might explain why Google's treatment of Plaintiffs' notices was so out-of-line with Google's stated ▇▇▇▇▇▇▇▇. *See, e.g.*, Am. Compl., Dkt. 38 ¶¶ 102–04 (providing examples of pirate sites noticed 46, 66, and 69 times, respectively).

A factfinder tasked with deciding whether Google has done enough to earn the DMCA's exemption from damages needs to know how pervasive this problem was. Is the ▇▇ error rate that Google committed with respect to Plaintiffs emblematic of how Google treated all rightsholders? Or was Google's treatment of notices from other parties even worse? Google, after all, was well-aware of Plaintiffs and of the problem of ebook piracy generally. Opp. to Mot. to Strike, Dkt. 166 at 12 (claiming that Google "engaged in conversations with Plaintiffs to try to work together to prevent third-party infringement of Plaintiffs' intellectual property" and "find mutual solutions to combatting copyright infringement"). A factfinder needs to know whether Google committed the same error in its DMCA program generally that it committed with respect to Plaintiffs' notices.

## II. Google must produce documents showing how many other Shopping notices it treated as Search notices.

Plaintiffs, therefore, asked Google to produce documents that would allow Plaintiffs to determine how widespread this error was. To make this discovery manageable, Plaintiffs are willing to limit the discovery to notices that were submitted via email, as opposed to notices that were submitted via Google's webform. Plaintiffs expect that this accommodation alone will decrease the number of notices in question substantially.

The email address to which Shopping notices were sent is "dmca-agent@google.com". Ex. 1. Plaintiffs request that Google search incoming emails to that account for the word "Shopping" and report back to Plaintiffs on how many results the search returns. If the number of notices (less the number that are from Plaintiffs, which Plaintiffs already possess) is manageable, Google can simply produce all those notices. If the number is substantial enough that doing so is problematic, the parties can meet and confer on an appropriate process.

For those notices included in the set (either the full set or a sample), Google should indicate whether it claims to have removed each URL in the notice.[2] Plaintiffs will check Google's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[1] A few notices were classified as concerning Google's "Computer Engine" platform, rather than the Shopping platform. For simplicity, Plaintiffs will refer just to Search notices.

[2] Google has provided such data before in, e.g., GOOG-CENG-00380265.

Hon. Barbara Moses
January 19, 2026
Page 3 of 5

███████████████████████████████████████████ for the case numbers and websites from those URLs that Google claims to have removed. This will provide evidence as to whether Google processed each notice as a Shopping notice or a Search notice.

### III.  Google's objections are without merit.

So far, Google has refused to take even this first step, i.e., to search the dmca-agent@google.com address for the word "Shopping" and report how many results are returned. Thus, neither Plaintiffs nor the Court can assess any burden involved in providing discovery into this area. Google attempts to justify this refusal with three arguments: that despite *classifying* notices as Search notices, Google in fact *processed* them as Shopping notices; that other discovery Google produced should excuse Google from producing further discovery; and that Plaintiffs could have raised this issue sooner. All three arguments are without merit.

*First*, Google speculates that notices Google classified as *Search* notices nonetheless were processed as *Shopping* notices. During meet-and-confers, Google represented that when a rightsholder sends a notice via email (rather than through Google's webform), Google personnel manually classify the notice as associated with a particular platform.[3] Thus, where Google's data reflects a *Shopping* notice from Plaintiffs as being a *Search* notice, a person at Google classified it as such. Google speculates that for *all* of Plaintiffs' notices that Google personnel classified as *Search* notices, Google nonetheless *processed* the notice as a *Shopping* notice. Atty. Decl. ¶ 5. Google offered that to test this, one would check whether the Case ID assigned to a given notice appears in ███████████████████████████████████████████ Dkt. 504 at 42:2–21 (Dec. 15, 2025 Hr'g Tr.).

Taking Google's suggestion, Plaintiffs tested this theory against the documents available to Plaintiffs, and found that it did not hold up. For ███ of Plaintiffs' Shopping notices that incorrectly are labeled as Search notices, the Case ID does *not* appear ███ meaning Google did not record a strike under its Shopping DMCA policy. Atty. Decl. ¶ 6. Thus, even under Google's suggested test, it is clear that ███ of the notices that were misclassified as Search notices were, in fact, processed as Search notices, and were not recorded as strikes.

*Second*, Google argues that other discovery Google produced should excuse Google from producing the discovery Plaintiffs seek here. 26.01.09 Meet-and-Confer. But neither the discovery Google has been ordered to produce concerning its overall DMCA program, nor the discovery Google provided regarding the 1,500 pirates who infringed the works-in-suit obviates the need for the discovery requested here.

The discovery Google is producing regarding its overall DMCA program is being drawn *exclusively* from notices that were classified as *Shopping* notices. Dkt. 472 ¶ 2(b); Dkt. 402 at 5 n.6; Dkt. 504 at 52:8–53:20 (Hr'g Tr. Dec. 15, 2025); Dkt. 402 at 5–6. Thus, that discovery does nothing to address what Plaintiffs seek here: discovery into Shopping notices that Google *incorrectly* classified as *Search* notices. Similarly, the documents Google produced regarding the 1,500 pirate websites that advertised the works-in-suit indicated that ███ of Plaintiffs' Shopping notices that were classified as Search notices were indeed processed as Search notices. If Google

---

[3] Counsel for the parties conducted a meet-and-confer on this issue on January 9, 2026. Atty. Decl. at 2 n.3 (providing details).

Hon. Barbara Moses
January 19, 2026
Page 4 of 5

wishes, it may stipulate that the error rate shown in Plaintiffs' notices applied across all notices Google received via email. Otherwise, discovery is needed to determine whether the errors Google made in processing Plaintiffs' notices likewise occurred in other notices.

Allowing Google to limit discovery to only the notices that it processed correctly would hide from the fact-finder key evidence that Google did not properly implement its overall DMCA program. Google obviously would prefer to exclude from discovery the evidence that will undermine its DMCA safe-harbor defense, like an unscrupulous scientist conducting an experiment that will ignore false negatives. But doing so would be improper under any standard. Google should not be permitted to exclude inculpatory evidence on the grounds that it produced other evidence that conforms to its defense.

**Third**, during the meet-and-confer process, Google complained that Plaintiffs could have raised this issue sooner. 26.01.05 Latham Email. But the need for the discovery Plaintiffs seek here only arose in the context of discovery into Google's overall DMCA program. Although Plaintiffs requested that discovery in September 2024, the scope of that discovery was determined only last month.

The prior discovery Google produced generally was limited to the 1,500 pirates who infringed the works-in-suit. As to those pirates, Google has or will produce the evidence Plaintiff seek here: the notices themselves, Google's classification of the notice as a Shopping or Search notice, and the ▓▓▓▓▓▓▓▓▓▓▓▓. Thus, with respect to those 1,500 pirates, Plaintiffs had no need to request discovery into whether the notice was treated as a Shopping notice or a Search notice, because Plaintiffs had some evidence to that effect already.

What the factfinder needs is evidence of how widespread this problem was in Google's overall DMCA program, i.e., for pirate websites *other than* the 1,500 about which Google has produced information. That discovery into Google's overall DMCA program was delayed because of *Google*, not Plaintiffs. Plaintiffs requested documents concerning Google's overall DCMA program in September 2024. Dkt. 238-10 (RFP 3, RFP 4, RFP 55). When Google had yet to produce these documents in February 2025, Plaintiffs filed a motion to compel asking Google to produce the documents by April 15, 2025. Dkt. 85-1 at 2 (RFP 3 and RFP 4). Judge Rochon declined to order Plaintiffs' interim deadline, on the condition that Google would make productions on a rolling basis rather than waiting until the discovery deadline to do so. Hr'g Tr. 14:14–24 (Mar. 17, 2025). Google failed to make any meaningful productions on a rolling basis, and produced documents concerning its overall DMCA program only in August of 2025. Dkt. 238 ¶ 15(d). After attempting unsuccessfully to resolve the issue through meet-and-confers, Plaintiffs moved to compel in November 2025, Dkt. 237, and the Court ordered Google to produce discovery on this topic in December 2025. Dkts. 441, 472.

The instant motion is thus timely.

Hon. Barbara Moses
January 19, 2026
Page 5 of 5

### IV.   Conclusion

The Court should order Google to produce discovery concerning its erroneous treatment of Shopping notices as Search notices. A proposed order is enclosed.

Respectfully submitted,

*/s/  Jeff Kane*
Jeff Kane