UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; ELSEVIER INC.; ELSEVIER B.V.; and MCGRAW HILL LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>GOOGLE LLC,<br><br>*Defendant*. | Case No. 1:24-cv-04274-JLR-BCM<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF ITS
<u>OBJECTION TO DISCOVERY ORDER AT DKT. 441</u>**

**INTRODUCTION**

Plaintiffs' Opposition fails to adequately rebut Google's primary objections to the December 15 Order: the Order (1) improperly found a common legal interest based on co-party status, (2) misapplied the work product standard, (3) misapplied the *Kovel* doctrine to the extent it was applied, and (4) incorrectly held that routine enforcement activity qualifies as work product.

**A.     Plaintiffs' Articulation of the Common Interest / Co-Client Privilege is Wrong**

In support of the December 15 Order, Plaintiffs contend that the common interest and co-client privileges apply whenever co-clients, represented by the same counsel, jointly pursue litigation. Opp'n (Dkt. 507) at 10. That is wrong. Plaintiffs' own caselaw makes clear that "co-client same counsel" status is insufficient to invoke those privileges, absent a *common legal interest*. In *SEC v. Rayat*, the court required the parties invoking co-client privilege to "show not only that [they] shared a common attorney, but also that they shared a common legal interest." 2023 WL 4706074, at *3 (S.D.N.Y. July 24, 2023); *see also Han v. InterExchange, Inc.*, 2025 WL 1419527, at *2 (S.D.N.Y. May 16, 2025) (explaining common interest doctrine requires showing (1) "a common legal interest" *and* (2) "cooperat[ion] in developing a common legal strategy").[1] Plaintiffs also rely on *In re Subpoena Duces Tecum Served on N.Y. Marine & Gen. Ins. Co*, but there, though the court discussed the common interest doctrine, it did not apply it. 1997 WL 599399, at *4-5 (S.D.N.Y. Sep. 26, 1997).

Plaintiffs' efforts to distinguish Google's caselaw also fall short. First, Plaintiffs do not address Google's caselaw stating that a shared desire to prevail in litigation does not create a

---

[1] Plaintiffs suggest, absurdly, that Google should be sanctioned for not addressing *Han* in its Objection. Opp'n at 11 n.5. As Google has repeatedly informed Plaintiffs, unlike here, the parties in *Han* did not dispute the existence of a common interest. *See Han*, No. 1:23-cv-7786-JLR (S.D.N.Y.), Dkts. 140, 142, 143. And, *Han* is not "controlling precedent." Opp'n at 11 n.5.

common legal interest. *See* Mem. (Dkt. 484) at 11, 14. Second, Plaintiffs do not dispute that courts found no common legal interest exists where parties do not share an ownership interest in the intellectual or other property at issue. Mem. at 12; *cf. In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1390 (Fed. Cir. 1996) (finding common interest privilege applied because parties had shared legal interest in same patents).

Instead, Plaintiffs argue that Google's cases are inapt because they involved "adversarial interests." Opp'n at 12 n.6. But the courts in those cases specifically cited the lack of shared ownership rights as the basis for finding no common legal interest. *See Johnson Matthey, Inc. v. Rsch. Corp.*, 2002 WL 1728566, at *6 (S.D.N.Y. July 24, 2002); *In re Hypnotic Taxi LLC*, 566 B.R. 305, 317 (Bankr. E.D.N.Y. 2017). Plaintiffs argue Google's other cases are inapposite because they did not involve "co-plaintiffs" "in an intellectual property case." Opp'n at 12 n.6, 13.[2] But pointing out factual distinctions does not render the legal principle in those cases—that a common legal interest apart from co-party status is required to benefit from the common interest (or co-client) privilege—irrelevant. Plaintiffs appear to concede that more is required, contending that their "common legal interest" is, in fact, based on more than Plaintiffs' "co-party status." Opp'n at 14. But tellingly, Plaintiffs do not identify that additional basis. Nor did the Magistrate Judge. Hr'g Tr. (Dkt. 485-1) at 86:8-20. That was in error.

Plaintiffs next state that Google is wrong to point out that a ruling as to one Plaintiff's claim will not affect another Plaintiff's claim. Opp'n at 14. But Plaintiffs do not (because they cannot) explain why Google is wrong. Filing a single case for efficiency and convenience obviously does not absolve each Plaintiff from individually satisfying each element of its respective claims.

---

[2] Plaintiffs dismiss *In re Cal. Bail Bond Antitrust Litig.*, 778 F. Supp. 3d 1051 (N.D. Cal. 2025) as "out-of-circuit." Opp'n at 13 n.7. But that court applied Second Circuit law to find that co-defendants had no shared legal interest as to pre-suit communications. 778 F. Supp. 3d at 1064.

2

Plaintiffs do not refute that a ruling (or voluntary dismissal) as to one Plaintiff's claims will not have "legal implications" for the others, underscoring the lack of a common legal interest. *Rayat*, 2023 WL 4706074, at *5; *Pereira, Tr. for Est. of Capala v. Capala*, 2019 WL 13392880, at *4 (E.D.N.Y. Apr. 16, 2019) (reflecting same); *In re Cal. Bail Bond*, 778 F. Supp. 3d at 1064 (same). And Plaintiffs have no rebuttal to Google's point that the DMCA safe harbor analysis also requires a work-by-work (and thus necessarily, a plaintiff-by-plaintiff) assessment. Mem. at 12-13.[3]

### B. Plaintiffs' Work Product Arguments Are Meritless

Plaintiffs' primary argument in support of the Magistrate Judge's attorney work product findings is that Google waived these objections. *See* Opp'n at 16-17. That is nonsense. The Magistrate Judge never made a waiver finding, and Plaintiffs did not argue waiver at the December 15 hearing. Nor could they, since Google made its work product arguments in response to Plaintiffs' argument that, if the Court agreed with Google that Plaintiffs have no common legal interest, work product protection would still apply. Dkt. 304 at 2 n.2.

Plaintiffs' other arguments fare no better. Plaintiffs concede that 18 documents withheld as work product are not identified as related to any litigation. Opp'n at 16-17.[4] To the extent Plaintiffs withhold those documents because they are attachments or contain redactable information "further up in a chain," that is improper, and the Court should order production.

Plaintiffs next argue that they properly withheld Educational Publishers Enforcement Group (EPEG) organizational documents as work product and that Google has merely "cherry-

---

[3] Plaintiffs also have no answer to Google's point that making the existence of a common legal interest among co-plaintiffs contingent on a potential *defense* raises a separate litany of issues. *See* Mem. at 13.

[4] Plaintiffs claim that one of the 18 documents Google identified is logged as associated with litigation. Opp'n at 16-17. But that document is not one of the 18 documents Google identified. Dkt. 338 ¶ 10.

3

pick[ed] words in the file names" of those documents. Opp'n at 17. But Plaintiffs provide no explanation for why EPEG organizational documents like press releases or budgets (documents that must be prepared in ordinary course) were prepared in anticipation of litigation and thus constitute protected work product. *See* Dkt. 338 ¶¶ 10, 13; Dkt. 376-1 ¶ 13(d) (identifying 25 such documents). At a minimum, this discrete set of organizational documents should be reviewed *in camera*.

### C. Plaintiffs Misconstrue the *Kovel* Doctrine

Although the Magistrate Judge did not clearly rule whether BCGuardian communications are privileged, *see* Mem. at 18, Plaintiffs argue that *Kovel* applies to those communications.

First, Plaintiffs argue that the *Kovel* doctrine categorically extends attorney-client privilege to an attorney's investigators. That is false. The *Kovel* doctrine protects third-party communications when "the purpose of the third party's participation is to improve the comprehension of the communications *between attorney and client*." *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999) (emphasis added). Investigators, like other third parties, are covered by *Kovel* only if they facilitate the transfer of information *between client and counsel*. *See* Mem. at 21.[5] BCGuardian's work does not qualify for privilege under *Kovel*. BCGuardian does not facilitate any communications between clients (Plaintiff publishers) and their counsel. BCGuardian monitors the internet and "collect[s] information not obtainable from [Plaintiffs], a function to which the privilege does not attach." *Montesa v. Schwartz*, 2016 WL 3476431, at *6-7 (S.D.N.Y. June 20, 2016) (applying *Kovel* to investigator collecting information from clients for

---

[5] Plaintiffs misread *In re Grand Jury Subpoena Dated Mar. 20, 2013*, 2014 WL 2998527 (S.D.N.Y. July 2, 2014). There, the court only applied *Kovel* protection to "communications between [the client] and Investigator" that were made "for the purpose of obtaining legal advice" from counsel. *Id.* at *8, 11.

4

interrogatory responses but not to investigators collecting information about defendant because plaintiffs had not "demonstrate[ed] that these third parties were investigating matters by seeking information from clients, or providing consultative advice based on information provided by clients").

Second, Plaintiffs claim that Google reads *Ackert* "far too broadly." Opp'n at 21. But *Ackert* squarely holds that *Kovel* does not apply to communications with a third party if the third party's role, like BCGuardian's, "was not as a translator or interpreter of client communications." 169 F.3d at 139-40. The case Plaintiffs cite in opposition does not contradict that reading. *See Pearlstein v. BlackBerry Ltd.*, 2019 WL 2281280, at *2 (S.D.N.Y. May 29, 2019) (applying *Kovel* where financial advisor included on communications to provide counsel information about client's "strategic and transactional matters").

Third, Plaintiffs ultimately press a novel theory that all communications between counsel and her agent are privileged (as opposed to solely protected as work product). Opp'n at 21-22. That position goes far beyond *Kovel* and *Ackert*.[6]

### D.   Plaintiffs Do Not Show That BCGuardian's Materials Are Work Product

Google demonstrated that IP monitoring and enforcement activity, the type of service BCGuardian performs, is routine business activity and not protected work product, and the Magistrate Judge erred in concluding otherwise. *See* Mem. at 22-24. Plaintiffs have no response. Opp'n 18-19. Instead, Plaintiffs argue their declarations are sufficient to support the Magistrate Judge's ruling that BCGuardian's materials are protected work product. *Id.* But the declarations

---

[6] Plaintiffs cite *Montesa*, 2016 WL 3476431, in support of that unorthodox position. Opp'n at 23. But there, the court held the role of the "volunteer consultant/investigator" whose communications with counsel were privileged under *Kovel* was to "obtain[] information from various Plaintiffs in order to respond to interrogatories," thus facilitating attorney-client communications. *Montesa*, 2016 WL 3476431, at *3.

do not say that BCGuardian's work was prepared *because of* litigation and the Magistrate Judge found that Plaintiffs' declarations were insufficient. Hr'g Tr. at 127:14-18. Only at the hearing did Plaintiffs' counsel assert that BCGuardian's materials "were prepared for litigation." Hr'g Tr. at 126:6-10. And Plaintiffs do not grapple with the fact that the Magistrate Judge's acceptance of those unsworn representations was error. Mem. at 24-25.

For these reasons, the Court should modify the Magistrate Judge's Order at Dkt. 441 consistent with Google's request at Dkt. 484 at 27-28.

Dated: January 20, 2026
McLean, Virginia

Respectfully submitted,

**LATHAM & WATKINS LLP**

/s/ *Sarah A. Tomkowiak*
Sarah A. Tomkowiak (*pro hac vice*)
Sarang Vijay Damle
Holly K. Victorson (*pro hac vice*)
Laura E. Bladow (*pro hac vice*)
Roberto J. Borgert (*pro hac vice*)
Brent T. Murphy (*pro hac vice*)
Sara E. Sampoli (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: sy.damle@lw.com
  sarah.tomkowiak@lw.com
  holly.victorson@lw.com
  laura.bladow@lw.com
  roberto.borgert@lw.com
  brent.murphy@lw.com
  sara.sampoli@lw.com

Allison L. Stillman
Caroline F. Clarke *(pro hac vice)*
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200

Facsimile: (212) 751-4864
Email: alli.stillman@lw.com
caroline.clarke@lw.com

Joseph R. Wetzel
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: joe.wetzel@lw.com

*Attorneys for Defendant Google LLC*

**CERTIFICATION OF WORD COUNT**

I certify that the foregoing memorandum of law complies with the formatting and word limit requirements set forth in Local Civil Rules 72.1(b)(2) and 6.3 because it contains 1,707 words, excluding the cover page, table of contents, table of authorities, signature block, and certification of word count. This memorandum of law also complies with the applicable formatting rules because it has been prepared in 12-point font and all text is double-spaced.

In preparing this certification, I relied on the word count of the Microsoft Word computer program used to prepare this memorandum of law.


Dated: January 20, 2026                     */s/ Sarah A. Tomkowiak*
                                                             Sarah A. Tomkowiak