# Exhibit A

# EXHIBIT 3
# [Filed Under Seal]

| | |
|---|---|
| **From:** | Michele Murphy <michele@oandzlaw.com> |
| **Sent:** | Tuesday, November 18, 2025 3:01 PM |
| **To:** | Tomkowiak, Sarah (DC); Bladow, Laura (DC); Clarke, Caroline (NY); Sampoli, Sara (DC); Damle, Sy (DC-NY); Stillman, Alli (NY); Victorson, Holly (DC); Borgert, Roberto (DC) |
| **Cc:** | Jeff Kane; Yunyi Chen; Uriel Lee; Danae Tinelli; Lauren Bergelson |
| **Subject:** | Re: Cengage v. Google - Additional Custodians |

Counsel,

Simply put, Google has failed to conduct this negotiation in good faith. Among other things, you had a meet-and-confer with us where we agreed to add a significant number of custodians, even though their unique documents lack relevance to the real issues in this case, in an effort to reach a compromise and avoid burdening the Court. Then, *the next day*, Google sought to expand the search terms in an incredibly broad manner and has not even provided Plaintiffs with a realistic and reasonable opportunity to respond with respect to the terms and discuss them with Google in the context of the proposed custodians. This was a blatant bait-and-switch. We also strongly disagree that Plaintiffs' custodial document productions are inadequate. They yielded documents, along with many other documents that Plaintiffs produced outsides of the custodians (not data), that bear upon this matters raised by Plaintiffs' claims and Google's defenses. Google's late-stage attempt to expand the scope of discovery to irrelevant matters is a transparent attempt to cause delay and burden Plaintiffs.

If you attach this email chain with your filing, please include this response.

Best regards, Michele

Michele H. Murphy
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, D.C. 20016
202.450.5643
michele@oandzlaw.com  |  www.oandzlaw.com



This e-mail and any attachments may contain information that is private, confidential, or protected by attorney-client or other privilege. If you are not the intended recipient, please delete it from your system without copying, reviewing or distributing any portion and notify sender by reply e-mail.

**From:** "Sarah.Tomkowiak@lw.com" <Sarah.Tomkowiak@lw.com>
**Date:** Tuesday, November 18, 2025 at 5:35 PM
**To:** Michele Murphy <michele@oandzlaw.com>, Laura Bladow <Laura.Bladow@lw.com>, "Caroline.Clarke@lw.com" <Caroline.Clarke@lw.com>, Sara Sampoli <Sara.Sampoli@lw.com>, Sy Damle <Sy.Damle@lw.com>, Alli Stillman <Alli.Stillman@lw.com>, Holly Victorson <Holly.Victorson@lw.com>, Roberto Borgert <Roberto.Borgert@lw.com>
**Cc:** Jeff Kane <JKane@oandzlaw.com>, Yunyi Chen <YChen@oandzlaw.com>, Uriel Lee

&lt;ULee@oandzlaw.com&gt;, Danae Tinelli &lt;Danae@oandzlaw.com&gt;, Lauren Bergelson &lt;LBergelson@oandzlaw.com&gt;
**Subject:** RE: Cengage v. Google - Additional Custodians

Counsel,

We write to follow up on today's meet and confer.

As for custodians and search terms, we told you during today's meet and confer exactly which custodians we intend to move on. With respect to search terms, we understand your position that the terms we have proposed are too broad, and as we said, we are willing to work in parallel to negotiate a reasonable set of additional search terms, if Plaintiffs are willing to do so. But after completing our review of the existing custodial productions and the hit counts you provided for the proposed additional custodians, it's clear that the existing search terms need to be expanded in some way, as they appear to have been ineffective to capture relevant ESI that is proportional to this case.

We do not have authority to wait until 3 pm tomorrow to file our motion. To the extent that Plaintiffs are willing to agree to some of the relief sought (e.g., to add custodians) while our motion is pending, we can let the Court know that those issues have been resolved.

As for sealing: We will plan to file the exhibits under seal, and redact any descriptions of them, and names of individuals, in our letter motion and supporting attorney declaration. Google takes no position on whether this material will be sealed, but we may do so after Plaintiffs file their materials in support of sealing.

We will respond separately with respect to McGraw Hill's failure to preserve relevant documents.

Best,

**Sarah A. Tomkowiak**

**LATHAM & WATKINS** LLP
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.2335 | M: +1.217.417.3312

---

**From:** Michele Murphy &lt;michele@oandzlaw.com&gt;
**Sent:** Monday, November 17, 2025 7:57 PM
**To:** Bladow, Laura (DC) &lt;Laura.Bladow@lw.com&gt;; Clarke, Caroline (NY) &lt;Caroline.Clarke@lw.com&gt;; Tomkowiak, Sarah (DC) &lt;Sarah.Tomkowiak@lw.com&gt;; Sampoli, Sara (DC) &lt;Sara.Sampoli@lw.com&gt;; Damle, Sy (DC-NY) &lt;Sy.Damle@lw.com&gt;; Stillman, Alli (NY) &lt;Alli.Stillman@lw.com&gt;; Victorson, Holly (DC) &lt;Holly.Victorson@lw.com&gt;; Borgert, Roberto (DC) &lt;Roberto.Borgert@lw.com&gt;
**Cc:** Jeff Kane &lt;JKane@oandzlaw.com&gt;; Yunyi Chen &lt;YChen@oandzlaw.com&gt;; Kevin Lindsey &lt;KLindsey@oandzlaw.com&gt;; Uriel Lee &lt;ULee@oandzlaw.com&gt;; Danae Tinelli &lt;Danae@oandzlaw.com&gt;
**Subject:** Re: Cengage v. Google - Additional Custodians

Counsel,

Nothing that we said during the November 6 meet-and-confer *in any way* suggested that McGraw Hill intentionally destroyed relevant ESI to deprive Google of discovery or otherwise with respect to Koons and Johns. And they did not do so. Given your accusation, please be prepared to inform us tomorrow what you believe was said during that meet-and-confer to support your position.

Although your November 13 email is not clear, we are reading it to mean that Google plans to move the Court to compel Plaintiffs to add the following custodians notwithstanding that we have already explained why the custodians are not appropriate: Long and Hoffine (Cengage); Powell and Ramuria, unless we agree to add Powell (Elsevier); Elbe and Harter (Macmillan); and Terzian (McGraw). There is a separate issue that we agreed to add five custodians on the basis of the existing search terms, not Google's new greatly expanded terms.

Please also be prepared to explain tomorrow the basis for your argument that "Plaintiffs have put their entire digital marketing and advertising spend and strategy at issue in this case." As previously noted, this is plainly incorrect. Please also be prepared to explain why Google now apparently believes that Plaintiffs' antipiracy efforts beyond Google Shopping are relevant and proportionate. Based on Judge Moses' comments at the discovery hearings, it seems clear that she would reject any suggestion that Plaintiffs have opened up their entire antipiracy programs by bringing this case. And that is not to mention the timing of your request at this stage of the case, and given Google's prior positions.

Rereading your November 7 email, we missed more mischaracterizations in our response (and there may be others). We did not admit that Mr. Terzian is relevant to this action. Even if he works with an existing custodian, that does not mean that he has relevant information. We also did not claim that Ms. ▨▨▨ has privileged documents solely because she works in the legal department. She works directly with O+Z and in-house counsel on this case and many other legal matters.

Finally, although Google will not provide hit reports, you have again asked Plaintiffs for a hit report for the broad new terms you proposed for the first time on November 7. We are still evaluating this, but our information at this point shows that the terms, when run across only the existing custodians before November 6, result in 7 million hits with family and 2.19 million hits without family. This would not even take into any added custodians.

We are refraining from responding to your rhetoric about Google's productions, other than to say Google's responses to Plaintiffs' discovery efforts, particularly with respect to search terms and custodians, speak for themselves.

Best regards, Michele

Michele H. Murphy
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, D.C. 20016
202.450.5643
michele@oandzlaw.com  |  www.oandzlaw.com



This e-mail and any attachments may contain information that is private, confidential, or protected by attorney-client or other privilege. If you are not the intended recipient, please delete it from your system without copying, reviewing or distributing any portion and notify sender by reply e-mail.

**From:** "Laura.Bladow@lw.com" <Laura.Bladow@lw.com>
**Date:** Friday, November 14, 2025 at 7:14 PM

**To:** Michele Murphy <michele@oandzlaw.com>, "Caroline.Clarke@lw.com" <Caroline.Clarke@lw.com>, "Sarah.Tomkowiak@lw.com" <Sarah.Tomkowiak@lw.com>, "Sara.Sampoli@lw.com" <Sara.Sampoli@lw.com>, "Sy.Damle@lw.com" <Sy.Damle@lw.com>, "Alli.Stillman@lw.com" <Alli.Stillman@lw.com>, "Holly.Victorson@lw.com" <Holly.Victorson@lw.com>, "Roberto.Borgert@lw.com" <Roberto.Borgert@lw.com>
**Cc:** Jeff Kane <JKane@oandzlaw.com>, Yunyi Chen <YChen@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Uriel Lee <ULee@oandzlaw.com>, Danae Tinelli <Danae@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Additional Custodians

Counsel,

We disagree with your attempt to rewrite the facts that Plaintiffs shared on the November 6 meet and confer regarding McGraw Hill's destruction of relevant ESI. We are available to meet and confer at 1 pm on Tuesday. Please let us know who we should include on the calendar invite.

Best,

Laura

**Laura Elizabeth Bladow**
Pronouns: She/Her/Hers

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.2367

---

**From:** Michele Murphy <michele@oandzlaw.com>
**Sent:** Friday, November 14, 2025 6:22 PM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Clarke, Caroline (NY) <Caroline.Clarke@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Borgert, Roberto (DC) <Roberto.Borgert@lw.com>
**Cc:** Jeff Kane <JKane@oandzlaw.com>; Yunyi Chen <YChen@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Uriel Lee <ULee@oandzlaw.com>; Danae Tinelli <Danae@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Additional Custodians

Counsel,

McGraw Hill did not "intentionally destroy" ESI "to deprive Google of its use," let alone "relevant ESI." This is a fabricated claim. We are preparing a response to the balance of your email, which is problematic on many levels. We also just sent a claw-back notice for PL0000777840. We are not available at the requested times on Monday. Please provide some possible days and times after 1:00 pm on Tuesday.

Best regards, Michele

Michele H. Murphy
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, D.C. 20016
202.450.5643
michele@oandzlaw.com  |  www.oandzlaw.com

4

**O+Z Oppenheim + Zebrak LLP**  WASHINGTON, D.C.  NEW YORK, N.Y.

This e-mail and any attachments may contain information that is private, confidential, or protected by attorney-client or other privilege. If you are not the intended recipient, please delete it from your system without copying, reviewing or distributing any portion and notify sender by reply e-mail.

**From:** "Laura.Bladow@lw.com" <Laura.Bladow@lw.com>
**Date:** Thursday, November 13, 2025 at 2:14 PM
**To:** Michele Murphy <michele@oandzlaw.com>, "Caroline.Clarke@lw.com" <Caroline.Clarke@lw.com>, "Sarah.Tomkowiak@lw.com" <Sarah.Tomkowiak@lw.com>, "Sara.Sampoli@lw.com" <Sara.Sampoli@lw.com>, "Sy.Damle@lw.com" <Sy.Damle@lw.com>, "Alli.Stillman@lw.com" <Alli.Stillman@lw.com>, "Holly.Victorson@lw.com" <Holly.Victorson@lw.com>, "Roberto.Borgert@lw.com" <Roberto.Borgert@lw.com>
**Cc:** Jeff Kane <JKane@oandzlaw.com>, Yunyi Chen <YChen@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Uriel Lee <ULee@oandzlaw.com>, Danae Tinelli <Danae@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Additional Custodians

Counsel,

We disagree. Google informed you of its position that Plaintiffs' custodial productions were deficient well prior to November 6. That is the reason Google requested Plaintiffs add more custodians, over six weeks ago. If we did not use the word "woefully" before, we should have, because Plaintiffs' custodial productions plainly are – the numbers set forth below speak for themselves. Your observation that we are ignoring Plaintiffs' productions of non-custodial documents is ironic, given that Plaintiffs – in their never-ending requests that Google add more and more custodians – have long-ignored the terabytes of non-custodial documents produced by Google. Does the volume of non-custodial document productions count, or no? Or only for Plaintiffs? In any event, while we appreciate that Cengage is now considering adding a "digital marketing" custodian, we are not optimistic based on Cengage's prior identification of custodians that the addition of a single custodian selected by Cengage will be sufficient to fill the observed gaps in its 200-document custodial production.

As for search terms, please provide us with a hit report for the new terms and clarify which custodial files the terms were run against. We assumed based on our meet and confer that you were unwilling to expand your existing search parameters, in particular because Plaintiffs do not believe that their non-Google Shopping marketing and advertising efforts are within the appropriate scope of discovery. If that is not the case, let us know. We would be happy to continue to negotiate search terms based on a hit report. While the parties might have agreed in certain instances to limit the scope of Plaintiffs' responses to certain of Google's RFPs, on their face, almost every single one of your search terms has some qualifier relating to Shopping or ebooks. We never agreed that Plaintiffs' entire custodial production would be so limited and always reserved the right to request additional search terms, as Plaintiffs did (and have so requested).

With respect to McGraw Hill's failure to preserve PST files, is it your position that McGraw Hill was not anticipating litigation against Google by August 2022? That would be at odds with the positions you have taken in your privilege log.

We intend to ask the Court to order Plaintiffs to add custodians beyond the five they have agreed to add and run expanded search terms across their existing and any additional custodians' files. We also intend to ask for relief in connection with McGraw Hill's failure to take reasonable steps to preserve relevant ESI, and instead intentionally

5

destroy it.  As it is clear McGraw Hill intentionally destroyed this ESI to deprive Google of its use in anticipated litigation, Google intends to seek relief pursuant to Rule 37(e).  Please let us know your availability to meet and confer tomorrow, Friday, November 14, between 11-12 ET, or Monday, November 17, between 10-2 ET.

In addition to identifying current and requested custodians by name, Google plans to summarize at a high-level documents from Plaintiffs' productions and specifically discuss the following documents that Plaintiffs have designated as HCAEO or Confidential under the Protective Order.  We can meet and confer with Plaintiffs at the same time on whether any sealing of Plaintiffs' confidential information is needed.

| Bates | Confidentiality |
|---|---|
| PL0000545815 | HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY |
| PL0000545822 | HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY |
| PL0000545833 | HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY |
| PL0000545850 | HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY |
| PL0000545974 | HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY |
| PL0000546090 | HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY |
| PL0000770032 | Confidential |
| PL0000770179 | HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY |
| PL0000777840 | HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY |
| PL0000794796 | HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY |
| PL0000795127 | HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY |
| PL0000544954 | Confidential |

Regards,

Laura

**Laura Elizabeth Bladow**
Pronouns: She/Her/Hers

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.2367

**From:** Michele Murphy <michele@oandzlaw.com>
**Sent:** Tuesday, November 11, 2025 9:09 PM
**To:** Bladow, Laura (DC) <Laura.Bladow@lw.com>; Clarke, Caroline (NY) <Caroline.Clarke@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Borgert, Roberto (DC) <Roberto.Borgert@lw.com>
**Cc:** Jeff Kane <JKane@oandzlaw.com>; Yunyi Chen <YChen@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>;

Uriel Lee <ULee@oandzlaw.com>; Danae Tinelli <Danae@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Additional Custodians

Counsel,

Your email "memorializing" the November 6 meet-and-confer is rife with inaccuracies and problems, including, without limitation, the following:

First, Google never claimed Plaintiffs' custodial productions (produced before and up to August 15) were "woefully deficient" until the November 6 meet-and-confer. And they are not. Google's positions in your email are obvious delay tactics.

Second, you suggested for the first time in the meet-and-confer that Plaintiffs should run additional search terms across new and existing custodians, although you proposed no such terms during or prior to the meet-and-confer. Your email last Friday night includes for the first time such proposed terms. It also states that the parties are at "impasse" on such terms, in the *same email*.

Third, before or during the meet-and-confer, we never "conceded that at the time Ms. Johns and Mr. Koons left McGraw Hill, McGraw Hill was anticipating bringing this litigation against Google." Nor would McGraw Hill have had an obligation to preserve their PST files, including because Plaintiffs have by no means "put their entire digital marketing and advertising spend and strategy at issue" in this case.

Fourth, Plaintiffs have not "put their entire digital marketing and advertising spend and strategy at issue in this case with allegations that there is no adequate substitute for Google Shopping ads." Plaintiffs have made no such allegations. Plaintiffs included allegations in the complaint about how Google plucks the *pirate sites* out of obscurity with its ads. And Plaintiffs have raised the issue of how showing only pirate ads to consumers compounds the piracy problem and how Google declined to create an allow list that could have mitigated the piracy. But these are entirely distinct contentions. Further, Plaintiffs have made no allegations related to their conduct on other ads platforms, e.g., Bing. Rather, Plaintiffs' infringement allegations are focused on Google and its pirate customers.

Fifth, your suggestion that Plaintiffs unduly delayed responding to your proposal to add 16 new custodians is not well taken. You will recall that initially your request was accompanied by no factual information at all. And instead of simply refusing to add the custodians, as Google has done, Plaintiffs carefully evaluated these requests, including by collecting PST files, running the search terms, reviewing the hits and file names, further reviewing certain documents, and providing a complete response with substantive feedback.

Sixth, your email ignores Plaintiffs' productions of non-custodial documents. Further, your email disingenuously states that Plaintiffs "claim" the Parties previously agreed to limit the scope of Plaintiffs' discovery to Google Shopping and ebooks. Plaintiffs don't "claim" this. That is the parties' agreement for Plaintiffs' responses to certain RFP. The parties had separate discussions about Google's responses to Plaintiffs' RFP. To the extent your point about this relates to Google's decision to put its whole DMCA program at issue in affirmatively seeking the safe harbor, that is a non sequitur.

\*\*\*

With regard to the particular custodians raised in your email, Cengage is considering your position that a digital marketing custodian should be added and will revert (without agreeing with your rationale). The other Plaintiffs are also reviewing your email and will revert, although they previously explained why the custodians they did not agree to add were not appropriate. And your email now introduces incredibly broad new search terms that are not designed to yield targeted or relevant information and would create extreme burden. For instance, a preliminary

analysis of these terms suggests that the hits with family would be over 5 million documents (over and above the 100,000+ we have already reviewed) just for the existing custodians.

In sum, please indicate what relief Google plans to seek from the Court and what would be the topics for a continued conferral. Given all of the above, Plaintiffs are very understandably concerned about Google's professed "good faith."

Best regards, Michele

Michele H. Murphy
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, D.C. 20016
202.450.5643
michele@oandzlaw.com  |  www.oandzlaw.com


WASHINGTON, D.C.
NEW YORK, N.Y.

This e-mail and any attachments may contain information that is private, confidential, or protected by attorney-client or other privilege. If you are not the intended recipient, please delete it from your system without copying, reviewing or distributing any portion and notify sender by reply e-mail.

---

**From:** "Laura.Bladow@lw.com" <Laura.Bladow@lw.com>
**Date:** Friday, November 7, 2025 at 8:14 PM
**To:** Kevin Lindsey <KLindsey@oandzlaw.com>, "Caroline.Clarke@lw.com" <Caroline.Clarke@lw.com>, Uriel Lee <ULee@oandzlaw.com>, "Sarah.Tomkowiak@lw.com" <Sarah.Tomkowiak@lw.com>, "Sara.Sampoli@lw.com" <Sara.Sampoli@lw.com>, "Sy.Damle@lw.com" <Sy.Damle@lw.com>, "Alli.Stillman@lw.com" <Alli.Stillman@lw.com>, "Holly.Victorson@lw.com" <Holly.Victorson@lw.com>
**Cc:** Michele Murphy <michele@oandzlaw.com>, Jeff Kane <JKane@oandzlaw.com>, Yunyi Chen <YChen@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Additional Custodians

Counsel,

We write to memorialize our November 6 meet and confer, provide Google's position on further search terms that Plaintiffs should run, and provide Google's position on the custodians that Plaintiffs declined to add. We are appreciative of Plaintiffs' agreement to add five custodians, however, the volume and substance of custodial documents produced to date indicates that Plaintiffs' existing custodians and search terms have been woefully deficient to identify documents responsive to Google's requests, and the number of documents pulled in by the existing search terms to review for the five additional custodians cannot possibly fill the huge gap.

We understand Plaintiffs' position is that as it relates to the custodians discussed on November 6, no further custodial discovery beyond the five new custodians is warranted and we are at an impasse on the custodians we discussed as well as any additional search terms. Given the length of time that Plaintiffs have had to evaluate Google's requests, and to ensure all outstanding discovery disputes are heard at the December 15 Status Conference, we plan to seek relief from the Court. Nevertheless we are willing to continue to meet and confer in good faith.

## Further Search Terms

As discussed, it has become apparent from—both the small number custodians that Plaintiffs have agreed to in this case as well as the shockingly small number of produced documents from those custodians (who Plaintiffs claimed were the closest to the issues in this case)—that the Parties' agreed-upon search terms were overly narrow and failed to capture all documents responsive to Google's requests for production.

To the extent you attempted to excuse the volume of your custodial production by claiming that the Parties previously agreed to limit the scope of discovery to Google Shopping and ebooks, Plaintiffs have not remained faithful to that agreement with respect to their never-ending demands that Google produce additional documents and data far outside the scope of Shopping and ebooks. Moreover, Plaintiffs' custodial document productions—as well as production of physical textbooks for inspection—have brought to light facts that make clear that the issues in this case are not, and should not be, so limited.

Plaintiffs' own materials reflect that marketing strategy, auction insights, cross-channel adjustments, and anti-piracy initiatives encompass a much broader set of relevant issues than just ebooks and Google Shopping. For example, Plaintiffs pursued alternatives such as advertisements via Google Search and Bing. Adequate discovery into Plaintiffs' broader digital marketing and channel management is warranted, and would be responsive to, at a minimum, RFP Nos. 46, 56, 64, 67. By way of another example, internal reports demonstrate that the largest source of piracy is not from Google Shopping ads but from websites where students can download Plaintiffs' books for free. Accordingly, Plaintiffs' current search parameters are too narrow, particularly where they constrain results to Google Shopping.

Google thus proposes expanding the previously agreed-upon terms to add 16 new terms that will capture documents pertaining to Plaintiffs' anti-piracy initiatives and digital marketing and advertising efforts:

- (enforc* OR infring* OR notice OR takedown* OR DMCA OR copyright OR trademark OR illegal* OR pirat* OR unauthorized OR authoriz* OR removal* OR block* OR polic* OR procedur* OR strateg* OR method OR BCGuardian OR VitalSource OR Corsearch OR guideline* OR protocol* OR standard* OR ban OR allow* OR disallow*)
- (piracy NOT w/5 (senior OR director OR manager))
- ((practice* OR policies OR policy) w/25 (market* OR industr* OR business* OR profit* OR sale* OR revenue*))
- "DRM"
- (digital /3 rights)
- (rights /3 management)
- "Merchant Center"
- (feed w/3 manag*)
- (auction* w/3 insight*)
- (keyword* w/15 auction*)
- (impression /3 share)
- "ROAS"
- "paid search"
- (return w/5 "ad spend")
- Bing w/25 (ad* OR campaign* OR spend*)
- (budget* OR bid* OR tactic* OR spend*) AND (Shopping OR Ads)

## Further Custodians

Compounding the problem of Plaintiffs' overly narrow search terms is each Plaintiff's failure to identify (or add, at Google's request) the custodians likely to possess responsive, non-privileged information relevant to Plaintiffs'

9

claims and Google's defenses. While you have tried to obfuscate each Plaintiff's individual deficiencies by lumping your clients' productions together, we address each Plaintiff's custodial production below.

**Cengage**
Despite bringing this lawsuit, Cengage has made no effort to meaningfully engage in custodial discovery. To date, Cengage has produced at most 206 custodial documents, the vast majority (199 documents) are from one custodian, ☒☒☒☒☒, whose responsibilities pertain to antipiracy efforts. Cengage's other two custodians, Mr. Wolbe and Ms. Precaj, produced 1 and 6 document(s) respectively. Contrary to Plaintiffs' broad, dramatic statements about the impact of piracy on Plaintiffs and the alleged significant harm related to "pirate" advertisements on Google shopping, it appears to be Cengage's position that the issues raised in this lawsuit are of no concern to anyone at Cengage but Ms. ☒☒. Ultimately, it strains credulity for Cengage—a organization of approximately 4,500 employees—to contend that it has conducted an adequate search of custodial sources for documents responsive to Google's Requests for Production, when it has produced a mere ~200 custodial documents.

In addition to overly narrow search terms and a myopic focus on Google Shopping and ebooks, it appears that Cengage has identified the wrong individuals to serve as custodians. Google requests Cengage apply the above search terms across its existing custodians as well as the additional requested custodians for whom Cengage has already collected PST files and conduct a search for documents responsive to Google's RFPs.

One example of the deficiencies in Cengage's custodial productions is the lack of any custodian whose responsibilities involve the central issues of digital marketing and advertising. Contrary to Plaintiffs' myopic view of this litigation as involving only the issue of piracy, Plaintiffs' allegations implicate their marketing strategy and execution across channels, including Shopping. It is not plausible that there is no such marketing professional at Cengage with such responsibilities or that such a custodian would lack responsive material. Google requests that Cengage add appropriate marketing custodians at Cengage who are positioned to have the relevant documents on Google Shopping, paid search, channel mix, and return on advertising spend. As Cengage disclaims having any organization charts and refuses to meaningfully engage in custodial negotiations—having taken more than a month to respond to Google's request for custodians, only to refuse to add a single custodian—Google suggests Cengage add as custodians: Chirsty Lesko, VP of Marketing; Greg Graham, VP of Marketing Operations; and Jenn Baker, VP of Marketing Campaign Services, all of whom appear facially appropriate. Cengage's delay and refusal to add additional custodians prejudices Google and we will ask the Court to order Cengage to add, at a minimum, appropriate marketing personnel as custodians.

**Elsevier**
Google appreciates Elsevier's agreement to add Ms. Bradley and Ms. Abrams as custodians. Google notes that to-date Elsevier has produced at most 138 custodial documents, the majority of which are from Ms. Miller's files (131 documents). Elsevier's other two custodians, Ms. McCann and Ms. Piel have produced 12 and 5 documents, respectively. The size of this production likewise reflects the application of overly narrow search terms and/or deficiencies in Elsevier's selection of custodians. Google requests Elsevier apply the above search terms across all five of its custodians and conduct a search for documents responsive to Google's RFPs.

We understand that Elsevier has identified existing custodian Ms. Miller as the lead for Shopping ads. We disagree that Elsevier's custodians should be so limited as the issues in this case involve allegations of piracy and Elsevier's digital marketing and advertising beyond Google Shopping. Based on Plaintiffs' productions to date, marketing leadership, such as Elsevier's Chief Marketing Officer Alison Powell, are actively involved in discussions about eBook sales, anti-piracy initiatives, and Google Shopping policy impacts. Additionally, given her position at Elsevier, her materials are likely to bear on issue such as channel allocation, the role of Shopping versus other channels, and how Elsevier approached ad restrictions. In light of the importance of the relevant issues for which she is likely to have responsive documents, Elsevier's production of at most 138 custodial documents to date, and the hundreds of millions of dollars Elsevier is seeking from Google, a review of the existing 901 hits is proportional to the needs of this case. Plaintiffs have not articulated with any specificity the actual burden of reviewing this set

of 901 documents, because there is none.  Google is willing to agree to drop its request for Ms. Rampuria if Elsevier adds Ms. Powell as a custodian.

**Macmillan**
Google appreciates Macmillan's agreement to add Mr. Horrer and Ms. Chiu as custodians.  Google notes that to-date Macmillan has produced at most 263 documents, the vast majority of which came from Ms. Bilello's files (258 documents).  The search of Mr. Linsmeier's files yielded 1 document that was also present in Ms. Bilello's files.  And the search of Ms. ███'s files yielded 4 documents.  During the meet and confer, Plaintiffs claimed that the reason for a low number of produced documents for Ms. ███ is her work with the legal department.  But merely working with the legal department does not automatically shield the majority of Ms. ███'s responsive documents from production – and in fact, that statement only underscores the separate concerns we have regarding the thousands of documents Plaintiffs have withheld as privileged.   The size of Macmillan's production reflects the application of overly narrow search terms, the deficiency of Macmillan's selection of custodians, and/or the over withholding of documents under the guise of privilege.  Google requests Macmillan apply the above search terms across all five of its custodians and conduct a search for documents responsive to Google's RFPs, and will seek that same relief from the Court.

We understand that Macmillan's position is that based on Counsel's review of metadata and review of documents appearing to be potentially responsive, Macmillan believes that any responsive documents in Ms. Elbe's (previously, SVP of Global Marketing) or Ms. Harter's (Director, Digital Marketing) files would be duplicative of other custodians and, as such, undertaking a full review of their documents would not be proportional to the needs of the case.  During the meet and confer we asked how many of Ms. Harter's 552 non-duplicative documents and how many of Ms. Elbe's 520 non-duplicative documents overlapped with other custodians.  You did not know.  Given the untold overlap, Google is not convinced that the additional burden of reviewing less than an additional 1,072 documents—in a case where Macmillan concedes that these custodians may have some relevant information (even it if overlaps with other custodians) and is seeking maximum statutory damages from Google for thousands of works—would be disproportionate to the needs of the case.  Plaintiffs have not articulated with any specificity the actual number of documents they would have to review or the burden of undertaking such review.

**McGraw Hill**
We appreciate McGraw Hill's agreement to add Mr. Dreher as a custodian.  Macmillan has only produced at most 277 custodial documents, the vast majority of which were produced from Mr. █████'s files (213 documents), with 42 documents produced from Mr. McFadden's files and 22 documents produced from Mr. Howland's files.  The size of McGraw Hill's production reflects the application of overly narrow search terms, deficiencies in selection of custodians, and/or the intentional destruction of custodial ESI.  Google requests McGraw Hill apply the above search terms across all four of its custodians and conduct a search for documents responsive to Google's RFPs, and will seek that same relief from the Court.

We understand that McGraw Hill does not dispute Mr. Terzian's relevance to this action.  We understand that McGraw Hill's position with respect to Mr. Terzian is that his documents would be duplicative of Mr. Howland, and thus, any further review beyond the skim of metadata and review of documents based on file names and subject lines lead Plaintiffs to believe that doing a page-turn review of his documents would not be proportional to the needs of the case.  Yet, McGraw Hill concedes that the substantial hit count on the existing agreed-upon search terms provided for Mr. Terzian does not overlap with the paltry 22 documents produced for Mr. Howland.  Nor could it.  Mr. Howland has only been employed by McGraw Hill since January 2023, whereas Mr. Terzian has been employed by McGraw Hill since 2019—the entire relevant period.  Moreover, the additional burden of reviewing an additional 1,012 documents in a case where McGraw Hill is seeking maximum statutory damages from Google, of hundreds of millions of dollars for thousands of works is plainly proportionate to the needs of the case.  Plaintiffs have not carried their burden to prove otherwise.

Further, McGraw Hill conceded that Ms. Johns and Mr. Koons, who left in September 2022 and August 2022 respectively, were both involved McGraw Hill's digital marketing, with Ms. Johns in a supervisory role and Mr. Koons implementing strategy. Plaintiffs' contention that the "job responsibilities" of Ms. Johns and Mr. Koons "did not focus on the issues in this case" is not reassuring. Plaintiffs seem to have an overly narrow view of what they have put at issue in this case. Plaintiffs have put their entire digital marketing and advertising spend and strategy at issue in this case with allegations that there is no adequate substitute for Google Shopping ads. Their job titles and the produced documents to-date confirm that both Ms. Johns and Mr. Koons were actively involved Plaintiffs' digital marketing and advertising spend. Moreover, to the extent that either Ms. Johns or Mr. Koons was Mr. Howland's predecessor, that further supports the conclusion that they had relevant documents.

Plaintiffs have also conceded that at the time Ms. Johns and Mr. Koons left, McGraw Hill was anticipating bringing this litigation against Google. It is thus perplexing that, even after consulting with counsel, McGraw Hill chose not to take reasonable steps to preserve their data for this litigation, and instead intentionally destroyed this ESI depriving Google of discovery from their files. It's also disappointing that Plaintiffs chose to conceal this issue and delayed responding to Google's requests for these custodians for over a month on the premise of collecting PST files for all of Google's requested custodians when not only McGraw Hill, but Counsel, knew this ESI had been intentionally destroyed in 2022. Google will file a Rule 37(e) motion, but is nevertheless willing to meet and confer to discuss Plaintiffs' position on how this discovery could be restored or replaced through additional discovery.

Regards,

Laura

**Laura Elizabeth Bladow**
Pronouns: She/Her/Hers

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.2367

**From:** Kevin Lindsey <KLindsey@oandzlaw.com>
**Sent:** Wednesday, November 5, 2025 4:12 PM
**To:** Clarke, Caroline (NY) <Caroline.Clarke@lw.com>; Uriel Lee <ULee@oandzlaw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Bladow, Laura (DC) <Laura.Bladow@lw.com>
**Cc:** Michele Murphy <michele@oandzlaw.com>; Jeff Kane <JKane@oandzlaw.com>; Yunyi Chen <YChen@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Additional Custodians

Counsel,

We write in response to your request that Plaintiffs add the 16 new custodians discussed below. As we have stated in previous correspondence, Plaintiffs have undertaken the significant effort to collect the PST files for the proposed custodians, run the agreed upon search terms, and conduct an initial review to determine if these proposed custodians are likely to have responsive documents. Plaintiffs' responses for each custodian are below. Please note that this obviously does not obligate Plaintiffs to follow this same process for your October 23 email listing 25 *additional* potential custodians (or thereafter). Indeed, to our knowledge, Google has not engaged a comparable process with respect to Plaintiffs' proposed Google custodians.

Cengage:

- Victoria Long: Ms. Long's documents include 22 non-duplicative documents (for our purposes, duplicative means the document is also available from one of Plaintiffs' existing custodians' PST files, so it has been reviewed and, if responsive and not privileged, produced) that hit on the parties' agreed search terms. After a brief review, these documents do not appear responsive. Accordingly, Ms. Long will not be added.
- Dalton Hoffine: Mr. Hoffine's documents include 1,057 non-duplicative documents that hit on the search terms. After a brief review, the documents do not appear responsive. It is our understanding that Mr. Hoffine's job responsibilities are not focused on the topics at issue in this case. Accordingly, it appears highly likely that any responsive communications involving Mr. Hoffine have been reviewed and produced from other custodial documents. Further review of Mr. Hoffine's documents would be unreasonably burdensome and unlikely to yield relevant information. Accordingly, Mr. Hoffine will not be added.
- Kevin Carlsten: Mr. Carlsten left Cengage in 2022 and his PST file was not preserved in the ordinary course of business. While at Cengage, Mr. Carlsten's position was focused on partnerships directly with higher education institutions, not the direct-to-consumer sales at issue in this case. Therefore, it is our understanding that Mr. Carlsten would not have had non-duplicative responsive documents relevant to this case. Accordingly, Mr. Carlsten will not be added.
- Todd Markson: Mr. Markson left Cengage in 2019 and his PST file was not preserved in the ordinary course of business. It our understanding that Mr. Markson's job responsibilities did not focus on the issues in this case and that it would have been very unlikely that he would have had non-duplicative, responsive documents relevant to this case. Accordingly, Mr. Markson will not be added.

Elsevier:

- Aly Abrams: Elsevier disputes that Mr. Abrams should have been identified as a custodian. However, Elsevier will add her in the interest of resolving this dispute. Ms. Abrams' documents include 35 non-duplicative documents that hit on the search terms, some of which may be responsive.
- Salima Bradley: Elsevier disputes that Ms. Bradley should have been identified as a custodian. However, Elsevier will add her in the interest of resolving this dispute. Ms. Bradley's documents include 299 non-duplicative documents that hit on the search terms, some of which may be responsive.
- Alison Powell: Ms. Powell's documents include 901 non-duplicative documents that hit on the search terms. After a brief review, the documents do not appear responsive. It is also our understanding that Ms. Powell's job responsibilities do not focus on the issues in this case. Further review of Mr. Hoffine's documents would be unreasonably burdensome and unlikely to yield relevant information. Accordingly, Ms. Powell will not be added.
- Abhinav Rampuria: Ms. Rampuria's documents include 291 non-duplicative documents that hit on the search terms. After a brief review, the documents do not appear responsive. It is also our understanding that Ms. Rampuria's job responsibilities do not focus on the issues in this case. Further review of Ms. Rampuria's documents would be unreasonably burdensome and unlikely to yield relevant information. Accordingly, Ms. Rampuria will not be added.

Macmillan:

- Simon Horrer: Mr. Linsmeier is leaving Macmillan, and Macmillan anticipates designating Mr. Horrer as a 30(b)(6) witness instead. Accordingly, Macmillan agrees to add Mr. Horrer as a custodian.
- Jenny Chiu: Elsevier disputes that Ms. Chiu should have been identified as a custodian. However, Macmillan will add her in the interest of resolving this dispute. Ms. Chiu's documents include 449 non-duplicative documents that hit on the search terms, some of which may be responsive.
- Susan Elbe: Ms. Elbe's documents include 520 non-duplicative documents that hit on the search terms. After a brief review, the documents do not appear responsive. It is also our understanding that Ms. Elbe's job responsibilities do not focus on the issues in this case, and it appears that the few communications of Ms. Elbe's that may be responsive are duplicative of Ms. Chiu's or Mr. Horrer's documents. Further review

- of Ms. Elbe's documents would be unreasonably burdensome and unlikely to yield relevant information. Accordingly, Ms. Elbe will not be added.
- Alanya Harter: Ms. Harter's documents include 552 non-duplicative documents that hit on the search terms. After a brief review, the documents do not appear responsive. It is our understanding that Ms. Harter's job responsibilities do not focus on the issues in this case, and it appears that the few communications of Ms. Harter's that may be responsive are duplicative of Ms. Chiu's documents. Further review of Ms. Harter's documents would be unreasonably burdensome and unlikely to yield relevant information. Accordingly, Ms. Harter will not be added.

McGraw Hill:

- Michael Dreher: Elsevier disputes that Mr. Dreher should have been identified as a custodian. However, McGraw Hill will add him in the interest of resolving this dispute. Mr. Dreher's documents include 1,041 non-duplicative documents that hit on the search terms, some of which may be responsive.
- Nick Terzian: Mr. Terzian's documents include 1,012 non-duplicative documents that hit on the search terms. After a brief review, the documents do not appear responsive. Moreover, we understand that Mr. Terzian works closely with Bryan Howland, an existing custodian. Thus, any responsive documents that may exist would be highly likely to include Mr. Howland. Further review of Mr. Terzian's documents would be unreasonably burdensome and unlikely to yield any new relevant information. Accordingly, Mr. Terzian will not be added.
- Angela Johns: Ms. Johns left McGraw Hill before this action commenced and her PST file was not preserved in the ordinary course of business. It our understanding that Ms. Johns' job responsibilities did not focus on the issues in this case and that it would have been very unlikely that she would have had non-duplicative, responsive documents relevant to this case. Accordingly, Ms. Johns will not be added.
- Fred Koons: Mr. Koons left McGraw Hill before this action commenced and his PST file was not preserved in the ordinary course of business. It our understanding that Mr. Markson's job responsibilities did not focus on the issues in this case and that it would have been very unlikely that he would have had non-duplicative, responsive documents relevant to this case. Accordingly, Mr. Koons will not be added.

With respect to the numerous additional custodians that you raised on October 23, we are still collecting information concerning them from our clients. We will provide what information we have during the meet-and-confer tomorrow.

Kevin Lindsey  |  Associate
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, D.C. 20016
Direct: 202.450.5593
KLindsey@oandzlaw.com  |  www.oandzlaw.com
Connect with us on LinkedIn



This e-mail and any attachments may contain information that is private, confidential, or protected by attorney-client or other privilege. If you are not the intended recipient, please delete it from your system without copying, reviewing or distributing any portion and notify sender by reply e-mail.

**From:** Caroline.Clarke@lw.com <Caroline.Clarke@lw.com>
**Date:** Thursday, October 30, 2025 at 8:31 PM

**To:** Uriel Lee <ULee@oandzlaw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Holly.Victorson@lw.com <Holly.Victorson@lw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>
**Cc:** Michele Murphy <michele@oandzlaw.com>, Jeff Kane <JKane@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Yunyi Chen <YChen@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Additional Custodians

Counsel,

We have never suggested that Google and Plaintiffs' custodians must be "equal." If that were the case, Google would be seeking 56 total custodians—14 custodians for each Plaintiff Publisher—which is the only way this could be "equal" to the burden of Google collecting and producing from 14 existing custodians. We have not done so, and in fact stated at the hearing that while we do not expect custodians to be equal, we asked the Court to consider burden and proportionality. *See* Hr'g Tr. 51:3-18 (Oct. 14, 2025). The Court agreed this was an important consideration, and offered the possibility of cost-sharing to make sure requests for custodians and searches are not "overbroad" and based on a "hope and a prayer." *Id.* at 51:15-52:6. The Court explicitly stated she would consider imposing costs if Plaintiffs came back and asked for "three more custodians" shortly after she ordered Google to add seven custodians. *Id.* at 63:16-64:8.

We are available to meet and confer on Thursday, November 6 at 11am ET. Please send an invite. We expect you to send us Plaintiffs' substantive response to the sixteen custodians that Google requested over a month ago at least one day before the meet and confer so we can assess if Plaintiffs refuse to add all sixteen. Regarding proportionality, we note that Google has only asked each Plaintiff to add a comparatively small number of additional custodians that Google reasonably believes may possess unique documents and communications relevant to this case. We look forward to Plaintiffs' response on each, including those listed in our email from October 23rd, which we note was sent directly in response to information learned from Plaintiffs' Rog responses.

Thanks,

Caroline

**Caroline Clarke**
Pronouns: She/Her/Hers

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas | New York, NY 10020
D: +1.332.240.1457
C: +1.347.446.1349

---

**From:** Uriel Lee <ULee@oandzlaw.com>
**Sent:** Thursday, October 30, 2025 11:39 AM
**To:** Clarke, Caroline (NY) <Caroline.Clarke@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Bladow, Laura (DC) <Laura.Bladow@lw.com>
**Cc:** Michele Murphy <michele@oandzlaw.com>; Jeff Kane <JKane@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Yunyi Chen <YChen@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Additional Custodians

Counsel,

We would like to meet and confer on the three custodians mentioned in my October 28th email, and can be prepared to discuss the 16 custodians Google has requested prior to the October 8th and October 14th discovery hearings if necessary. We've suggested new dates and times below. Please send a calendar invite for a time that works for your team:

- Tuesday, November 4 – 12:30-2:00; 3:00-4:00
- Wednesday, November 5 – 10:30-2:00
- Thursday, November 6 – 10:30-2:30
- 

With respect to the 16 proposed custodians, Plaintiffs will provide a substantive response prior to the meet-and-confer. As we discuss custodians, we emphasize that Google's previous complaints that the number of custodians must be "equal" for both parties have been swiftly dismissed by the Court. *See* Hr'g Tr. 50:17-25; 51:1 (Oct. 14, 2025). Moreover, Plaintiffs will not yet be prepared to discuss the new laundry list of individuals raised in Rose-Marie Jung's October 23, 2025 email. We will respond separately to that email.

Regards,
Uriel
Uriel Lee
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, D.C. 20016
ULee@oandzlaw.com | www.oandzlaw.com
Connect with us on LinkedIn



This e-mail and any attachments may contain information that is private, confidential, or protected by attorney-client or other privilege. If you are not the intended recipient, please delete it from your system without copying, reviewing or distributing any portion and notify sender by reply e-mail.

---

**From:** Caroline.Clarke@lw.com <Caroline.Clarke@lw.com>
**Date:** Wednesday, October 29, 2025 at 2:29 PM
**To:** Uriel Lee <ULee@oandzlaw.com>, Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>, Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>, Holly.Victorson@lw.com <Holly.Victorson@lw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>
**Cc:** Michele Murphy <michele@oandzlaw.com>, Jeff Kane <JKane@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Yunyi Chen <YChen@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Additional Custodians

Counsel:

These custodians are the subject of three separate emails to us, all of which we will respond to in due course. However, if Plaintiffs would like to meet and confer on these three custodians separately from other issues, we would be happy to do so at the same time as a meet and confer on Google's requested custodians. Many of these custodians were requested by Google more than a month ago and Plaintiffs have yet to provide any substantive response.

Thanks,

Caroline

**Caroline Clarke**
Pronouns: She/Her/Hers

**LATHAM & WATKINS** LLP
1271 Avenue of the Americas | New York, NY 10020
D: +1.332.240.1457
C: +1.347.446.1349

---

**From:** Uriel Lee <ULee@oandzlaw.com>
**Sent:** Tuesday, October 28, 2025 5:18 PM
**To:** Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Bladow, Laura (DC) <Laura.Bladow@lw.com>
**Cc:** Michele Murphy <michele@oandzlaw.com>; Jeff Kane <JKane@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Yunyi Chen <YChen@oandzlaw.com>
**Subject:** Cengage v. Google - Additional Custodians

Counsel,

Plaintiffs request a meet-and-confer on the following dates regarding Jason Szczech, Vishal Jain, and Jason Morrison, all of whom Google should treat as custodians. We are available at the below times.

- Wednesday, October 29th, 10:30AM-2:00PM
- Thursday, October 30th, 10:30AM-4:30PM
- Friday, October 31st, 10:00AM-3:00PM

As we have provided *in detail* in prior emails, Google's documents have revealed that these individuals had highly relevant roles and would have unique, responsive documents that are not captured by the existing custodians. *See* 2025.09.22 O+Z Email; 2025.10.16 O+Z Email; 2025.10.21 O+Z Email; 2025.10.27 O+Z Email.

As we have already mentioned, Plaintiffs first raised Mr. Szczech and Mr. Jain as far back as October 2024, and had formally suggested both in the parties' first custodial discussions in February 2025. Google unilaterally chose Chelsea Fine as a custodian, and never provided any explanation as to why she was chosen over Mr. Szczech or Mr. Jain. 2025.03.04 Latham Email. In light of Google's productions, Plaintiffs would like to discuss Google's position on both custodians.

With respect to Mr. Morrison, Plaintiffs learned of his existence solely from Google's custodial production, the majority of which was produced on August 15th. Instead of responding to anything substantive regarding his relevance or unique role as an engineer, Google replied that it would "not agree to unilaterally re-open custodial discovery or agree to add custodians piecemeal each time plaintiffs see a new name in Google's documents." 2025.10.06 Latham Email. This reply is absurd as Google *itself* has brought up a slew of *twenty-five* employees for the first time in discovery just last week. 2025.10.23 Latham Email.

Please provide your availability for a meet-and-confer.

Regards,

Uriel

Uriel Lee  |  Associate
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, D.C. 20016
Direct: 202.480.2999
ULee@oandzlaw.com  |  www.oandzlaw.com
Connect with us on LinkedIn



This e-mail and any attachments may contain information that is private, confidential, or protected by attorney-client or other privilege. If you are not the intended recipient, please delete it from your system without copying, reviewing or distributing any portion and notify sender by reply e-mail.

_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.