

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
jkane@oandzlaw.com

January 26, 2026

<u>**VIA ECF**</u>

The Honorable Barbara Moses
U.S. District Court for the Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

   Re: *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
      Plaintiffs' Reply ISO Request (Dkt. 523) for Discovery Conference re Google's
      Treatment of Shopping Notices as Search Notices

[Redacted]

Dear Judge Moses,

  We write in support of Plaintiffs' Request for Discovery Conference re Google's Treatment of Shopping Notices as Search Notices (Dkt. 523), and in response to Google's opposition (Dkt. 546).

  Google admits that it incorrectly processed a significant portion of Plaintiffs' infringement notices by treating those notices as pertaining to the Search platform, rather than the Shopping platform. *Compare* Dkt. 523 with Dkt. 546. Indeed, Google does not contest that it misclassified approximately ▮ of Plaintiffs' *Shopping* notices as *Search* notices. Google does not contest that its errors in processing notices are a proper subject of discovery. Instead, Google argues that *other* discovery it produced should excuse it from further discovery, and pretends that the Court already ruled on this issue. Dkt. 546. Neither argument survives scrutiny. The other discovery Google is producing is drawn from notices that Google *correctly* classified as Shopping notices. If that discovery includes notices that were incorrectly processed as Search notices at all, it will do so only incidentally. Nor has the Court already decided this issue. To the contrary, the Court acknowledged at the December 15 hearing that the issue of Google's treatment of Shopping notices as Search notices should be taken up another day. Dkt. 504 at 83:3–84:16 (Hr'g Tr. Dec. 15, 2025). Google should produce discovery about its admitted errors in processing Shopping notices.

  **I.** **Google must disclose how many *Shopping* notices it mistreated as Search notices.**

  Plaintiffs now know that there are two sets of *Shopping* notices related to Google's Shopping DMCA program: those that Google correctly classified as *Shopping* notices, and those that Google *incorrectly* processed as *Search* notices. Dkt. 523 at 1–2. This error appears to have happened frequently. Google misclassified approximately ▮ of Plaintiffs' notices. Dkt. 523 at 1–2.[1] Notably, Google does not contest any of this. Dkt. 546. Yet Google wishes to limit its

---

[1] Further, of those notices that it misclassified as Search notices, Google mistakenly *processed* ▮ as Search notices. Google claims there is a distinction between how Google classified or labeled a notice and how Google actually processed that notice. That is, Google claims

Hon. Barbara Moses
January 26, 2026
Page 2 of 4

discovery only to those notices that Google *correctly* processed as Search notices.

    This would leave an enormous gap in the factual record. For Plaintiffs alone, Google misclassified ▇▇▇▇▇ as pertaining to the Search platform, rather than the Shopping platform. A factfinder needs information on how many *more* notices Google mishandled. If Google processed a notice as a Search notice instead of a Shopping notice, Google likely did not assess strikes against the websites listed in the notice, and thus may not have terminated the website when Google should have. This calls into question whether Google reasonably implemented its DMCA policy under 17 U.S.C. § 512(i).

    Moreover, to make this discovery manageable, Plaintiffs have agreed to limit the discovery only to those notices that were submitted via email. This is reasonable discovery that will shed light on an important issue to Google's principal defense in this case.

    **II.**    **The discovery Google produced or is producing on *other* issues does not address this issue.**

    Google has not produced discovery sufficient for the factfinder to understand the scope of Google's error, i.e., to what extent Google committed this error with respect to notices concerning pirate websites other than the 1,500 that infringed *Plaintiffs'* works-in-suit. Contrary to Google's suggestion, neither the discovery that Google is producing regarding its overall DMCA program, nor the discovery it is producing regarding the pirate websites who infringed the works-in-suit, addresses the issue.

    Per the Court's prior Order (and over Google's objection), Google is selecting a sample of pirate websites (outside the 1,500 pirate websites that infringed the works-in-suit), and producing various documents concerning them, including infringement notices. Dkt. 472. But Google is selecting those websites *exclusively* by looking to notices that Google *correctly* classified as Shopping notices. Dkt. 472 ¶ 2(b); Dkt. 504 at 52:8–53:20 (Hr'g Tr. Dec. 15, 2025); Dkt. 402 at 5–6. Thus, this discovery does not address the question at issue here: in how many instances did Google *incorrectly* classify and process a *Shopping* notice as a *Search* notice.

    In its opposition, Google speculates that *some* of the discovery it is producing might happen to capture *some* Shopping notices that were misclassified as Search notices. Google says that while it will select a sample of pirate websites from notices that were classified as Shopping notices, it then will produce all notices concerning those websites, regardless of the platform to which Google classified the notice. *Some* of those notices, Google speculates, *might* be Shopping notices that Google incorrectly classified as Search notices. Dkt. 546 at 4. This is hardly a response at all. First, the notices Plaintiffs are concerned about are ones that were sent via email; it may well be that few or none of the notices Google pulls for its sample were submitted via email. Thus, no one knows whether the "random" sample Google chooses will do *anything* to test whether Shopping notices were treated as Search notices. Second, even if Google's random sample does include some notices submitted via email, that would provide no insight into *how many* notices Google incorrectly processed as Search notices. That is, without knowing the total number of Shopping notices that

---

that while one of its personnel may have classified a Shopping notice incorrectly as a Search notice in Google's system, she may nonetheless have applied the Shopping DMCA policy to that notice and assessed strikes against the domains listed in the notice. Dkt. 523 at 3.

Hon. Barbara Moses
January 26, 2026
Page 3 of 4

Google received via email, one cannot know how large a sample is needed to determine how many of those notices were processed incorrectly.

Nor is the discovery Google produced (and is producing) concerning Plaintiffs' notices a substitute for the discovery Plaintiffs seek here. *Contra* Dkt. 546 at 3–4. Google's actions with respect to Plaintiffs' notices likely are not representative of its actions overall. All of Plaintiffs' notices concern ebooks; during the relevant period, Google had a policy of banning all ebooks. Dkt. 237 at 4. Google itself claims that it conducted regular "sweeps" to eliminate ebook ads, Dkts. 265-4 and 265-5, and set up "a separate alias" for Plaintiffs to send communications concerning piracy, Dkt. 265-6. And Google itself touts alleged special treatment it provided to Plaintiffs. Opp. to Mot. to Strike, Dkt. 166 at 12.

Tellingly, Google complains that Plaintiffs have not provided a reason to believe Google's error-rate in its treatment of *all* Shopping notices would be any different from the ▇ error-rate Google committed with respect to Plaintiffs' notices. Dkt. 546 at 4 ("Plaintiffs hypothesize that the 'error rate' they have calculated with respect to the treatment of their own notices may not be 'emblematic of how Google treated all rightsholders.' Mot. at 2. They point to no support or reason to believe Google's 'misclassifi[cation]' of Plaintiffs' notices would be any different than notices from other rightsholders.") (alterations in original). Plaintiffs offered Google the chance to stipulate that the ▇ error-rate Google committed with respect to Plaintiffs' Shopping notices occurred across *all* Shopping notices. Dkt. 523 at 3–4.[2] Since Google apparently will not so stipulate, it must produce this discovery.

### III. The Court's December 22, 2025 Order did not decide this issue.

Google claims that the Court already has decided whether Google needs to produce discovery into this issue. Dkt. 546 at 1–3. But Google leaves out the Court's actual words on this subject. At the December 15 hearing, *after* the Court issued its order regarding the sampling for Google's overall DMCA program, Plaintiffs clarified that they would "be seeking discovery on how many Shopping ads notices Google erroneously treated as Search notices." Dkt. 504 at 83:9–11 (Hr'g Tr. Dec. 15, 2025). The Court stated that that was "not today's issue." *Id.* at 83:16. Plaintiffs further clarified that "your Honor's ruling today hasn't foreclosed that discovery." Dkt. 504 at 83:18–19. The Court responded, "Yeah." *Id.* at 83:20.

Thus, the Court already has ruled that its December 22 Order did *not* decide what discovery Google would produce on this issue. That ruling was correct. Google waited until December 10, 2025 to disclose that it had erroneously processed Shopping notices as Search notices. Prior to that, Google had said only that sometimes rightsholders select the wrong platform when they fill out Google's webform.

In their initial motion regarding discovery into Google's overall DMCA program, and in the first hearing on that motion, Plaintiffs repeatedly noted a significant discrepancy in Google's data: the data showed that across its *entire* DMCA program for Shopping, Google received

---

[2] This would mean that Google would stipulate that it received Shopping notices containing approximately ▇ URLs during the relevant period (the ▇ URLs Google classified as Shopping (Dkt. 238 ¶ 9), divided by ▇), mis-classified ▇ of those ▇ URLs as pertaining to Search notices, and mis-processed ▇ of those ▇ notices (▇ multiplied by ▇) as pertaining to Search.

Hon. Barbara Moses
January 26, 2026
Page 4 of 4

infringement notices containing only about ▓▓▓ URLs, whereas the pirates who infringed Plaintiffs' works account for about ▓▓▓ URLs. Dkt. 237 at 3; Dkt. 494 at 52:20–56:10; 59:7–60:3; 67:22–68:9. When the Court asked Google directly to explain this discrepancy, all Google offered in response was that sometimes rightsholders using Google's webform mistakenly select "Search" when they mean to select "Shopping". Dkt. 494 at 79:8–84:7.

It was only on December 10, 2025 that Google disclosed even when rightsholders correctly designated their notices as Shopping notices, *Google* actually misclassified many notices as Search notices. At the December 1, 2025 hearing, the Court ordered the parties to exchange sampling proposals and to confer about them. Dkt. 361. During a meet-and-confer on December 10, 2025 (the day that the parties were to file their respective proposals with the Court), Google finally explained that in fact *Google* had incorrectly classified *Shopping* notices as *Search* notices.

As a result of Google's eleventh-hour admission, the Court did not have the benefit of thorough briefing on this issue by the time of the December 15 hearing. Dkt. 402 at 3, 5. The Court thus correctly agreed with Plaintiffs that the issue of what discovery Google should produce concerning its erroneous treatment of Shopping notices as Search notices was "not today's issue." Dkt. 504 at 83:16. Thus, the Court has not decided this issue.

### IV. Conclusion

The Court should require Google to produce discovery concerning its erroneous treatment of Shopping notices as Search notices, consistent with the proposed order at Dkt. 527.

Respectfully submitted,

/s/ Jeff Kane
Jeff Kane