UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CENGAGE LEARNING, INC., et al.,

        Plaintiffs,

  -against-

GOOGLE LLC,

        Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __1/16/26__

24-CV-4274 (JLR) (BCM)

**MEMORANDUM AND ORDER (REDACTED)**

**BARBARA MOSES, United States Magistrate Judge.**

In accordance with this Court's December 15, 2025 Discovery Order (Dkt. 441), the parties selected six sample documents for *in camera* review out of the 34 documents that plaintiffs withheld from production on privilege grounds, *and* that were sent to representatives of non-party Pearson Education Inc. (Pearson), *and* that are dated after May 30, 2024, which is when Pearson ███████████████████████████████████. *See* Declaration of Michele Murphy dated December 9, 2025 (Sealed Murphy Decl.) (Dkt. 390) ¶ 5. Plaintiffs chose the documents logged at rows 2115, 2127, and 2128 of their November 19, 2025 privilege log. Defendant Google LLC (Google) chose the documents logged at rows 2116, 2117, and 2118. After careful review of the sample documents, the Court concludes that they were properly withheld from production based on both the attorney-client privilege and the work product doctrine.

**Sample Documents**

Sample documents 2115, 2117, and 2127 are emails from Oppenheim + Zebrak, LLP (O+Z), the law firm representing plaintiffs in this action, addressed to employees of five educational publishers: plaintiff Cengage Learning, Inc. (Cengage); plaintiffs Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning and MacMillan Holdings LLC (collectively, Macmillan); plaintiffs Elsevier, Inc. and Elsevier B.V. (collectively, Elsevier);

plaintiff McGraw Hill LLC (McGraw Hill); and non-party Pearson.[1] For more than a decade, O+Z has jointly represented all five of these publishers in connection with various legal efforts to combat the counterfeiting of their educational books and related materials, including multiple lawsuits. Murphy Decl. ¶ 7; Sealed Murphy Decl. ¶ 4.

Although Pearson elected not to become a plaintiff in the present action, all five publishers have been plaintiffs – jointly represented by O+Z – in other anti-counterfeiting lawsuits, including eight suits, filed on various dates from 2019 through 2023, against operators of individual "pirate websites" offering counterfeit digital copies of their works (the Pirate Suits). Murphy Decl. ¶¶ 4-5. As of May 30, 2024, preliminary and/or permanent injunctions had been entered in most of these lawsuits.[2] O+Z's joint representation of these five clients also includes "pre-litigation resolutions or attempts to resolve the[ir] legal claims, and notices of infringement sent through a joint legal strategy and the analysis of responses (or lack thereof)." *Id*. ¶ 7. There is a "verbal co-client/common interest agreement" among the five clients, under which "it has been agreed and understood that O+Z's and the parties' related communications and documents are strictly confidential as to any third party outside the co-client/common interest agreement, and that to the extent such communications and documents would otherwise be protected from disclosure by the attorney-client privilege and/or the work product doctrine, they would remain protected

---

[1] The emails were also sent to an employee of BCGuardian, LLC (BCGuardian), an antipiracy firm "specializing in IP infringement investigation and enforcement and evidence collection and analysis, including in support of IP litigation." Declaration of Michele H. Murphy dated November 21, 2025 (Murphy Decl.) (Dkts. 305, 306) ¶ 9.

[2] For example, in one of the Pirate Suits, *Cengage Learning, Inc. v. Does 1-17*, *et al.*, No. 23-CV-7193 (S.D.N.Y., filed August 15, 2023), in which Pearson was a co-plaintiff, the court entered a preliminary injunction on September 13, 2023 (Dkt. 7 in No. 23-CV-7193) and an amended preliminary injunction on December 27, 2023. (Dkt. 44 in No. 23-CV-7193.) Ultimately, on August 28, 2024, the court entered a default judgment, including a permanent injunction (Dkt. 62 in No. 23-CV-7193), and the case was closed.

2

notwithstanding the presence of or shared disclosure to the other parties to the co-client/common interest agreement." *Id*. ¶ 8; *see also* Sealed Murphy Decl. ¶ 4.[3]

Documents 2116, 2118, and 2128 are the attachments to three sample O+Z emails. Each attachment is an "Infringement Report" in the form of a detailed, five-sheet Excel spreadsheet prepared by BCGuardian, which was engaged by O+Z to conduct "evidence collection and analysis" at counsel's direction. Murphy Decl. ¶ 10.[4] BCGuardian's work included "collecting observations related ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ analyzing those observations, preserving screen captures, sending infringement notices to Google, assessing compliance with the issued notices, and making test purchases. Declaration of Sarah A. Tomkowiak dated Nov. 14, 2025 (Dkts. 275, 276), Ex. 24 (BCGuardian Statement of Work). The anti-counterfeiting actions brought by Cengage, Macmillan, Elsevier, McGraw Hill, and Pearson – including this case – have all been "based on evidence collected by BCGuardian." Murphy Decl. ¶ 9.

The Infringement Reports set out some of BCGuardian's evidence and analysis. The first sheet of each report ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. The second sheet ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ The third, fourth, and fifth sheets ▇▇▇▇▇▇

---

[3] All four plaintiffs corroborate counsel's characterization of the verbal co-client/common interest agreement among O+Z's five joint clients. *See* Declaration of Audry Feinberg (Feinberg Decl.) (Dkt. 307) ¶¶ 5-13 (Macmillan); Declaration of Liza Hays (Hays Decl.) (Dkt. 308) ¶¶ 5-13 (Cengage); Declaration of Suzanne L. Telsey (Telsey Decl.) (Dkt. 309) ¶¶ 5-13 (McGraw Hill); Declaration of Jonathan Wiggins (Wiggins Decl.) (Dkt. 310) ¶¶ 5-13 (Elsevier).

[4] Again, all four plaintiffs corroborate attorney Murphy's description of BCGuardian's role. *See* Feinberg Decl. ¶¶ 14-15; Hays Decl. ¶¶ 14-15; Telsey Decl. ¶¶ 14-15; Wiggins Decl. ¶¶ 14-15.

███████████████████████████████████████████████████████████

██████████████████████████████████████████████

Each of the cover emails, prepared by Maureen Garry, O+Z's Director of Program Management,[5] summarizes the "highlights" of the attached Infringement Report, including (for example) ████████████████████████████████████████████

████████████████████████████████████████████████

██████████ Neither the Infringement Reports nor O+Z's cover emails reference this action (or any specific lawsuit) by name, docket number, or otherwise. The documents therefore cannot be redacted so as to withhold (for example) only the portions concerning the Pirate Suits in which Pearson was a co-plaintiff.

## Attorney-Client Privilege

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). Assuming that these requirements are otherwise met, the presence of Pearson as a recipient of the O+Z emails does not destroy the privilege, because Pearson and the four plaintiffs in this action were joint clients of O+Z, and the emails conveyed information and analysis that was relevant not only to this action but also to other lawsuits in which Pearson was a co-plaintiff. Thus, "the proper lens through which to view the parties' competing arguments is that of 'the co-client (or joint-client) privilege, which applies when multiple clients hire the same counsel to represent them on a matter of common interest.' . . . This privilege resembles, but is not identical to, the common-interest

---

[5] According to the O+Z website, Garry is not a lawyer, but has "over 15 years of experience in publishing and education technology," https://www.oandzlaw.com/Maureen.html (last visited January 16, 2026), and is responsible for, among other things, "managing projects, tracking timelines, reporting out to clients, and liaising with third-parties." *Id*.

4

privilege[,] which applies when clients with separate attorneys and similar legal interests share information with one another." *Sec. & Exch. Comm'n v. Rayat*, 2023 WL 4706074, at *3 (S.D.N.Y. July 24, 2023) (quoting *In re Teleglobe Comm'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007)); *see also Jordan (Bermuda) Inv. Co. v. Hunter Green Invs., Ltd.*, 2005 WL 525447, at *1 (S.D.N.Y. Mar. 4, 2005) (explaining that the "common interest" doctrine, which "describes a limited exception to the rule that the attorney-client privilege is waived when a protected communication is disclosed to a third party or that party's counsel," is "not relevant where, as here, the communications at issue involve joint clients of the same counsel and are subject to the attorney-client privilege itself.").

For the co-client privilege to apply, "it suffices for the clients to have a common interest, not necessarily interests that are identical in all respects. So long as their interests are common, co-clients who consult the same lawyer would reasonably expect that their communications with the lawyer to which they are mutually privy would be protected from disclosure to third parties by the attorney-client privilege." *Supreme Forest Prods., Inc. v. Kennedy*, 2017 WL 120644, at *2 (D. Conn. Jan. 12, 2017) (applying co-client privilege to protect communications among a lawyer and two clients, where the clients were plaintiffs in two similar but separate lawsuits against the same employer); *see also Rayat*, 2023 WL 4706074, at *3 (clients invoking the co-client privilege must show that they shared both "a common attorney" and "a common legal interest"). The "common legal interest" test is easily met here. Pearson was a co-client of O+Z in multiple Pirate Suits, giving it the same legal interest as the firm's other four publisher clients in learning (for example) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. It was also a co-client of O+Z with respect to the publishers' broader legal efforts to combat pirate sales of their works, giving it the same legal interest as the other four clients in learning ▬▬▬▬▬▬▬▬

5

███████████████████████████████████████████████████████████ Thus, the fact that – after May 30, 2024 – Pearson ███████████████████████████████████ *see* Sealed Murphy Decl. ¶ 5, does not affect the privilege otherwise applicable to confidential communications from O+Z to the publishers concerning the many matters as to which all five of them remained its joint clients.

Even if Pearson ███████████████████████████████████ with respect to communications after May 30, 2024, disclosure of the challenged communications to Pearson did not constitute a privilege waiver because, under the common interest doctrine, "the privilege is not waived by disclosure of communications to a party that is engaged in a 'common legal enterprise' with the holder of the privilege." *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015); *see also Rayat*, 2023 WL 4706074, at *3 ("To be eligible for protection as a common interest communication, the communication must be shared with an attorney of the member of a community of interest and the community must share a common interest."). "In other words, 'the common interest doctrine allows for the communication of privileged information to a third party without it constituting a waiver of privilege, so long as the third party and the client share a common legal interest and the parties cooperate in developing a common legal strategy.'" *Han v. InterExchange, Inc.*, 2025 WL 1419527, at *2 (S.D.N.Y. May 16, 2025) (Rochon, J.) (quoting *Brunckhorst v. Bischoff*, 2022 WL 2764020, at *1 (S.D.N.Y. July 15, 2022)). Given that Pearson is one of the five publishers who retained O+Z (and, through O+Z, BCGuardian) to protect their common legal interest through a common legal strategy, those conditions are clearly met here.

### Work Product Doctrine

"Communications related to the collection of information and documents for attorneys implicate the work-product doctrine as well as the attorney-client privilege." *Han*, 2025 WL 1419527, at *3. As to the work product doctrine, the key question is whether the challenged emails

and Infringement Reports were "prepared in anticipation of litigation or for trial by or for [a] party or its representative." Fed. R. Civ. P. 26(b)(3)(A); *see also Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 394 (S.D.N.Y. 2015) ("Notwithstanding the common description of the doctrine as the 'attorney' work product doctrine . . . it is not in fact necessary that the material be prepared by or at the direction of an attorney.").

In order to determine whether a document was prepared "in anticipation of litigation," courts in this Circuit consider whether, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation." *United States v. Adlman,* 134 F.3d 1194, 1202 (2d Cir. 1998). Thus, documents prepared for both litigation and business purposes generally enjoy work product protection. *Id.*; *see also Strougo v. BEA Assocs.*, 199 F.R.D. 515, 521 (S.D.N.Y. 2001) ("Materials need not be prepared solely for a litigation purpose in order to merit protection under the work-product privilege."). However, "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation" are not protected, even if such documents might be useful when preparing for litigation. *Adlman*, 134 F.3d at 1202.

In this case, plaintiffs have shown, at a minimum, that the Infringement Reports and O+Z's cover emails were prepared, under counsel's direction, "with an eye toward litigation." *Adlman*, 134 F.3d at 1196 (quoting *Hickman v. Taylor,* 329 U.S. 495, 510-11 (1947)). It is clear from the face of the documents themselves that they would not have been prepared – at least not in the same form – had the clients not been engaged in combatting counterfeiting through a coordinated campaign involving both ongoing litigation ▮▮▮▮▮▮▮▮▮▮) and potential future litigation (that ▮▮▮▮▮▮▮▮▮▮).

7

Moreover, the work product doctrine is less easily waived than the attorney-client privilege, and generally requires "disclosure to adversaries . . . or to third parties where 'the disclosure substantially increases the opportunity for potential adversaries to obtain the information.'" *Strougo*, 199 F.R.D. at 522 (quoting *Falise v. American Tobacco Co.,* 193 F.R.D. 73, 80 (E.D.N.Y. 2000)). Conversely, "disclosure of work product to a party sharing common litigation interests is not inconsistent with the policies of encouraging zealous advocacy and protecting privacy that underlie the work product doctrine," and thus does not constitute a waiver. *Montesa v. Schwartz*, 2016 WL 3476431, at *8 (S.D.N.Y. June 20, 2016) (quoting *Medinol, Ltd. v. Boston Scientific Corp.*, 214 F.R.D. 113, 115 (S.D.N.Y. 2002)). Here, defendant has not suggested – and certainly has not shown – that disclosure of the challenged Infringement Reports and cover emails to Pearson "substantially increase[d] the opportunity for potential adversaries to obtain the information." *Strougo*, 199 F.R.D. at 522. Thus, even if disclosure to Pearson constituted a waiver of the attorney-client privilege, it would not constitute a waiver of the work product doctrine.

## **Conclusion**

For these reasons, the Court is satisfied that plaintiffs properly withheld the 34 challenged documents, of which the six documents discussed above are exemplars. This ruling is without prejudice to reconsideration if and when plaintiffs present expert testimony by BCGuardian or based upon BCGuardian's work, at which point defendant will be entitled to all of the "facts or data considered by" the expert in forming his or her opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii).

      The Clerk of Court is respectfully directed to post this Memorandum and Order under seal pending the parties' proposed redactions.

Dated: New York, New York      SO ORDERED.
       January 16, 2026

_____
**BARBARA MOSES**
**United States Magistrate Judge**