

Michele H. Murphy
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.450.5643
michele@oandzlaw.com

February 5, 2026

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

    Re:    *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
              Parties' Joint Status Letter

Dear Judge Moses,

Pursuant to Your Honor's Order (Dkt. 539) and in advance of the upcoming February 9, 2026 discovery conference ("Hearing"), counsel for all parties respectfully submit this Joint Status Letter.

## I. Joint Section

The discovery motions pending before the Court are identified in the below chart.

| Motion | Motion Papers Dkt. Nos. |
|---|---|
| Pls' Jan.19 Motion re: Shopping vs. Search Notices | Dkts. 523, 525, 527 (Opening), 546 (Opp.), 550 (Reply) |

For efficiency, the parties respectfully direct the Court to the Joint Status Letter filed on January 19, 2026 (Dkt. 518) for other discovery updates. In this Joint Status Letter, the parties have not repeated those updates.

## II. Plaintiffs' Section

**Depositions**

Plaintiffs already have noticed fifteen fact depositions, but Google has yet to schedule any fact depositions. Pursuant to the Court's Order in Dkt. 510 ¶ 6, Plaintiffs served a good-faith draft of Plaintiffs' Rule 30(b)(6) Notice to Google on Friday, January 30. Yet Google still has not scheduled any depositions. Google's statement below regarding Plaintiffs' 30(b)(6) Notice is baseless. Plaintiffs' notice is proportional to the extensiveness of Google's infringement and the vastness of its DMCA defense. In contrast to Plaintiffs' specific and detailed Notice, nearly every topic in Google's 30(b)(6) Notice is vague and broad.

Plaintiffs are working with Google to schedule the depositions of six plaintiff witnesses that Google seeks to depose in March and April, some or all of which will also be 30(b)(6) designees.

Hon. Barbara Moses
February 5, 2026
Page 2 of 5

**Plaintiffs' Document Productions**

Tomorrow, Plaintiffs will be producing extensive information to identify, by Bates number, screenshots Plaintiffs produced that depict works-in-suit. Dkts. 217, 539. Additionally, consistent with the parties' negotiations, Plaintiffs will produce certain authorized distributor agreements tomorrow.

Below, Google repeats its hollow claim that Plaintiffs' custodial productions are inadequate. In addition to being incorrect, this ignores the discovery issues the Court has decided in Plaintiffs' favor, the fact that the case is about *Google's* pirate advertisements, Plaintiffs' extensive non-custodial productions, and Plaintiffs' willingness to compromise by adding 12 custodians and 11 search terms (with a production deadline of March 6). Plaintiffs' actions with respect to the work-product documents Google mentions were entirely consistent with ¶ 26 of the Protective Order (Dkt. 82), a provision that Google likewise has sought to invoke in this case.

**Google's Document Productions**

Plaintiffs continue to review the productions Google made in response to the Court's several recent orders . Dkts. 217, 221, 359, 441, 472. Google's recent January 6, 2026 productions included hundreds of custodial documents that should have been produced in Google's original August 15, 2025 productions (i.e., documents that hit on the custodians and search terms the parties agreed upon before the August 15th production deadline). Google's productions continue to present glaring gaps on several important topics (including Court-Ordered search terms) and from several important custodians. Google has provided no answers or explanations regarding these significant gaps. While some of these issues likely were exacerbated by the fact that Google twice has used the wrong search-terms, these repeated issues with Google's document production call into question the reliability of its document review. Although Plaintiffs have notified Google regarding these issues weeks ago, Google has not responded.

Plaintiffs also await several additional productions that have either been ordered by the Court or agreed-upon by the parties by Friday, February 6th, which include:

- Custodial documents from Google listserv: shopping-dmca@google.com (Dkt. 221 at 1)
- Documents identified through Merchant Center IDs and Customer IDs (Dkt. 221 at 2)
- Documents concerning 261 pirate websites (Dkt. 359)
- Documents concerning the work performance of personnel who processed Plaintiffs' infringement notices
- Documents concerning the impact suspending merchants has on Google's financial interests

By January 30, Google was to disclose the 300 domains it claims to have selected randomly for testing of Google's overall DMCA program. Dkts. 472 ¶ 4; 510 ¶ 5. Instead, Google provided a list of 268 domains that it said it would use for its sample, and provided 32 other domains that it suggested Google should replace with other domains for the sample. Plaintiffs promptly replied with questions as to why these all 32 of these domains need be removed from the sample. 26.02.02 O+Z Email. Google has not responded.

During the January 20 hearing, Google's counsel made two representations on which the Court relied: first, that Google already had produced (or would produce) the individual or business names of the 1,500 pirates who infringed the works-in-suit, Hr'g Tr. 77:5–79:3 (Jan. 20, 2026);

2

and second, that some of the verification procedures Plaintiffs described in their motion (e.g., Google requires the pirate to answer questions about its "business model," "operational practices," "key relationships with third parties," and "details on products and services" (Dkt. 389 at 3)) in fact are part of a separate verification process. As to the first issue, Google has confirmed that it in fact has *not* produced this information. The parties have scheduled a conferral to discuss a production that Google claims will remedy this misrepresentation. 26.02.03 Latham Email. As to the second issue, the parties have exchanged emails and have a conferral scheduled for February 6. Plaintiffs' position is that to the extent any of the 1,500 pirate websites attempted to complete this "separate" verification process, Google must produce the materials those sites provided to Google, even if Google claims this was a "separate" process. As a threshold matter, Plaintiffs have asked Google to disclose whether the 1,500 pirate websites in question in fact did go through this process.

*The parties continue to confer on important issues.*

The parties continue to confer on important gaps in Google's productions. These issues include:

- Information Google collected and evaluations Google conducted concerning the pirates who infringed Plaintiffs' works
- Information stored within Google databases regarding the infringing URLs and infringing ads for the pirates at issue
- Various quality issues regarding Google's existing productions
- Google's refusal to produce certain documents in response to Plaintiffs' Fourth and Fifth RFP

Despite Plaintiffs' good-faith efforts to reach a compromise, Plaintiffs anticipate seeking relief on the below issues:

- Issues with Google's withholdings and redactions of documents for privilege
- Discovery into the work of Google's engineering departments

Finally, contrary to Google's statements below, Plaintiffs' objections to Google's proposed expert are substantial given his disclosed activities, which are not discussed here, as Google marked them Confidential. However, Plaintiffs continue to work with Google to determine if this matter can be resolved.

### III.   Defendant's Section

*Document Production.*  Since the filing of the last status letter on January 19, Plaintiffs have produced one document: a short declaration by a non-party.  Their custodial production remains absurdly deficient:  They have produced about 255 documents per Plaintiff—fewer than 48 documents per custodian.  Indeed, of Plaintiffs' 22 custodians, the median document production per custodian is *just six-and-a-half* documents, since Plaintiffs have thus far produced *no* documents for seven[1] custodians.  And this, for a five-year discovery period.  Plaintiffs' continued

---

[1] The actual number of custodians with zero documents is nine.  But Plaintiffs are required to produce documents for two new custodians by tomorrow, February 6.  As of this writing, it is unclear how many documents, if any, those two custodians will have.  Note, though, that the statistics here concerning custodial production do *not* include these two new custodians.

and inexcusable delay in producing responsive custodial documents sabotages Google's preparation for the quickly approaching depositions.

Google has made two productions since the last status letter. First, Google produced information regarding the Merchant Center accounts related to the 261 additional Plaintiff-identified domains (including a domain history log) per the Court's Order at Dkt. 359. Second, Google produced voluminous data regarding the "offers" (Shopping ads) associated with those new Merchant Center accounts. Despite the coordination required across multiple non-legal Google teams to pull this data, Google has made both of those productions ahead of schedule and is on track to meet or exceed all remaining deadlines, including the February 6 deadline discussed by Plaintiffs above. To avoid burdening the Court, Google also recently agreed to produce additional data from an internal interface from all fields and evaluations requested by Plaintiffs regarding merchant accounts at issue, and will do so by March 6.

*Depositions*. On January 30, the parties exchanged 30(b)(6) notices per the Court's Order. Plaintiffs' notice (which they reserve the right to supplement) contains an extraordinary 73 topics (many with multiple subtopics, some entirely irrelevant[2]), more than double Google's 34 topics for Plaintiffs' 30(b)(6) witnesses. It is unreasonable to expect any witness or even multiple witnesses to be prepared to testify to the breadth of subject matter set forth in Plaintiffs' notice, and even if they could, a deposition actually covering all of those topics could easily take weeks to complete. If the parties cannot reach an agreement on a more reasonable scope of 30(b)(6) deposition topics for Google, Google reserves the right to seek relief from the Court. And because many of Google's fact witnesses will also be 30(b)(6) deponents, Google's position is that any 30(b)(6) objections should be resolved before those depositions occur (the same position Plaintiffs have taken).

Google has noticed 10 depositions. It has taken three third-party depositions and a fourth is scheduled for February 9. Google is continuing to work with Plaintiffs to schedule party depositions.

*Sampling*. As ordered by the Court, Google provided Plaintiffs with a list of 300 randomly selected domains, organized by month, on January 30. Dkt. 472 ¶ 4. Thirty-one of those 300 randomly selected domains are "marketplace" domains (like eBay.com and Amazon.com) that are tied to *millions* of separate Merchant Center accounts because of the unique structure of accounts connected to "marketplace" domains. Pulling and producing the account, offer, and ads data associated with accounts connected to these 31 "marketplace" domains would be unmanageable, infeasible, and wildly disproportionate. Google therefore proposes replacing these 31 domains with non-marketplace domains, but is amenable to conferring with Plaintiffs regarding a mutually agreeable solution. Google also proposes replacing the "googleadservices.com" domain, which was also randomly selected, because it is not an external domain to which Shopping ads can point.

*Verification*. With respect to identity verification, Google has agreed to supplement its productions to provide the exact fields used to populate "verification badges" in the Ads Transparency Center for all Ads accounts connected to the Merchant Center accounts connected to the 1,500 Plaintiff-identified domains. Google will produce this supplemental production by tomorrow. Unsatisfied with the Court's Order regarding identity verification, Dkt. 539 ¶ 2,

---

[2] For example, Topic 17, which asks for knowledge of "[t]he Repeat Infringer Policies for Google platforms *other than* Google Shopping" (emphasis added).

Plaintiffs now demand additional discovery regarding Business Operations Verification, a separate verification process. Google's position is that this discovery is outside the scope of Plaintiffs' identity-verification-focused RFPs and is disproportionate to the needs of the case.

*Google's Expert.* On December 12, 2025, pursuant to the Protective Order (Dkt. 82 ¶ 15), Google disclosed an expert to Plaintiffs and provided information regarding his background and past engagements, and disclosed the categories of Highly Confidential/Attorneys' Eyes Only materials it intended to share with this expert. Plaintiffs objected to this disclosure largely because of unsubstantiated concerns regarding this expert's past engagements. Google has provided additional information to Plaintiffs, including through an amended disclosure, but Plaintiffs have continued to object to this expert's review of Highly Confidential/Attorneys' Eyes Only information. Google continues to confer with Plaintiffs regarding this issue, but because the expert discovery deadline is quickly approaching, Google may seek relief or guidance from the Court.

*Plaintiffs' Clawback of Filed Documents.* The parties met and conferred on January 27, 2026 regarding Plaintiffs' clawback of two documents used in this case. *See* Dkt. 518 at 4 (describing Plaintiffs' efforts to claw back filed documents referenced in multiple briefs and the December 15, 2025 hearing). Plaintiffs maintain that their clawback was proper. Because Plaintiffs refuse to withdraw their improper clawback of documents, Google intends to seek relief.

Respectfully submitted,

*/s/ Sarah A. Tomkowiak*
Sarah A. Tomkowiak
Latham & Watkins LLP
*Counsel for Google*

*/s/ Michele H. Murphy*
Michele H. Murphy
OPPENHEIM + ZEBRAK, LLP
*Counsel for Plaintiffs*