

Yunyi Chen
461 5th Avenue, 19th Floor
New York, NY 10017
Tel. 212.951.1156
ychen@oandzlaw.com

February 9, 2026

**VIA ECF**

The Honorable Barbara Moses
U.S. District Court for the Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

      Re:    *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
             Plaintiffs' Letter Motion for Discovery Conference re: Google's Privilege Assertions

[Redacted]

Dear Judge Moses,

      We represent all Plaintiffs in this matter. Defendant Google LLC has made privilege assertions that are improper in at least two ways. First, Google has claimed privilege over the implementation of its DMCA repeat infringer policy ("DMCA Policy"). To qualify for the DMCA's exemption from damages, Google must have "adopted and ***reasonably implemented*** . . . a policy that provides for the termination in appropriate circumstances of subscribers and account holders of . . . repeat infringers." 17 U.S.C. § 512(i)(1)(A) (emphasis added). Google's in-house counsel played a key role implementing that policy by (i) [REDACTED] and (ii) [REDACTED] Yet Google wishes to withhold the documents that show its in-house counsel implementing this policy. Google cannot on the one hand claim that its implementation of DMCA Policy was reasonable, and simultaneously withhold the documents showing that implementation as privileged.

      Second, for hundreds of documents on its privilege log, Google's descriptions are too vague to establish that the documents contain privileged material. Google's logs describe the purported underlying legal advice as concerning "copyright policy compliance," "digital books or ebook policy compliance," "trademark policy compliance," or perhaps most confusingly, "other policy compliance." Other log entries describe documents as concerning "intellectual property issues," "regulatory issues", or unspecified "legal dispute."[1] Such vague descriptions prevent Plaintiffs from understanding or assessing Google's privilege claims for at least 593 log entries.[2]

      Accordingly, Plaintiffs request an order compelling Google to produce all withheld

---

[1] *See* Declaration of Attorney Yunyi Chen in Support of Plaintiffs' Letter Motion for Discovery Conference re: Google's Privilege Assertions ("Chen"), Exhibits 7A; 7B. (Plaintiffs' Letter Motion for Leave to submit Exhibit 7A, in Excel format, by email, is contemporaneously filed with this letter motion.)

[2] Chen ¶¶23–31.

Hon. Barbara Moses
February 9, 2026
Page 2 of 5

documents involving Google's DMCA Policy implementation and all portions of withheld documents that describe, discuss, or reflect Google's internal policies or operations ("Requested Documents"), which based on information available to Plaintiffs, include at least the 593 documents identified in Chen ¶¶23–31. In producing Requested Documents, Google may only redact content "the predominant purpose of" which was "to render or solicit legal advice," *In re County of Erie*, 473 F.3d 413, 420 (2d. Cir. 2007), and not any portions that show Google's DMCA Policy implementation. As the Court has "broad discretion" in resolving privilege disputes involving "large quantities of disputed documents," *Chelsea Hotel Owner LLC v. City of New York*, 2025 WL 880530, at *3 (S.D.N.Y. Mar. 21, 2025), the Court may effectuate the requested relief after conducting an *in camera* review, on a sampling basis, of the eight categories of documents identified in each of Chen ¶¶23–30 and order production of any documents the Court deems Requested Documents.

### I. Google's in-house counsel performed multiple non-legal functions implementing Google's internal policies, including the DMCA Policy.

Google's DMCA Policy tasks Google's in-house counsel with several aspects of its implementation. During part of the relevant time period, Google's policy states that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Thus, in-house counsel's involvement implementing the DMCA Policy appeared to have pervaded Google's stated process. In fact, Google identified ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 15 at 9–10.

Moreover, Google's in-house counsel performed at least some non-legal tasks concerning Google's copyright- and trademark-related policies. For example, ▓▓▓▓▓▓▓▓▓▓▓ in communications with ▓▓▓▓▓▓▓ is described as, *inter alia*, to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ with enforcement decisions. Ex. 11 at -7917. Additionally, in responding to ▓▓▓▓▓▓▓▓▓▓▓▓ Google Shopping's product counsel ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 12 at -4427. These all appear to be business operations, not legal work.

### II. Google must produce all withheld communications between Google's in-house counsel and Google employees involving implementation of Google's DMCA Policy.

Google cannot withhold documents showing Google's DMCA Policy implementation. This is because Google put at issue whether it "reasonably implemented" its DMCA Policy by asserting the DMCA safe harbor affirmative defense. *See Capitol Recs., LLC v. Escape Media Grp., Inc.*,

2015 WL 1402049, at *12–13 (S.D.N.Y. Mar. 25, 2015). Consequently, Google waived any attorney-client privilege or work product protection that might have otherwise attached to implementation documents. *See United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[T]he privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications."); *Jackson v. Deen*, 2013 WL 2027398, at *7 (S.D. Ga. Apr. 3, 2013) (where employer-defendant asserts the *Ellerth-Farragher* affirmative defense, privileges "are waived as to any evidence relevant to that attorney's investigation and monitoring of compliance with the company's *Ellerth–Farragher* procedures"); *In re: Frontier Communications Corporation, et al.*, No. 20-22476-mg, Dkts. 2430, 2430-1 (S.D. Bankr., Sept. 19, 2024) (ordering production of withheld documents involving in-house counsel's implementation of DMCA repeat infringer policy with limited redactions where necessary).

One out-of-circuit case addressing this exact fact pattern, *United States v. Dish Network, L.L.C.*, 283 F.R.D. 420, 423 (C.D. Ill. 2012), *on reconsideration in part*, 2012 WL 13012614 (C.D. Ill. July 9, 2012), is instructive. In *Dish*, the defendant asserted a statutory safe harbor affirmative defense, requiring the defendant to "monitor[] and enforce[] compliance" with a regulatory rule to benefit from the defense. *Id*. at 423. The court found that by having its attorneys "actively participate[]" in performing the functions required by the affirmative defense, defendant waived "privileges . . . with respect to evidence relevant to the attorneys' monitoring and compliance." *Id*. at 424. Critically, though some of the "[a]ttorneys' communications related to monitoring also contain legal advice regarding compliance with the [defendant's compliance] procedures," the *Dish* court found that "[legal] advice provided as part of the attorneys' participation [sic] the monitoring functions cannot be separated from the monitoring function" and ordered production. *Id*. Applying these principles, documents involving Google's in-house counsel's active participation in DMCA Policy implementation must be produced, including where "legal advice regarding compliance with [Google's DMCA] procedures . . . cannot be separated" from implementation. *Id*.

Google must produce all withheld documents involving its DMCA Policy implementation process, including, at a minimum, the 51 documents expressly appearing to concern Google's DMCA repeat infringer policies and associated suspensions and/or appeals identified in Chen ¶30.[3]

### III. Google has not established that its "policy compliance" documents are of a predominantly legal, rather than business, character.

Google's privilege logs describe the underlying legal advice as concerning "policy compliance," "legal dispute," "regulatory issues," or "intellectual property issues."[4] Setting aside Google's "conclusory label[ling]" of these communications as involving "legal advice,"[5] all that

---

[3] These include, *e.g.*, a document titled ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ described as ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ at PrivLog ID 15 in Supp. Log 1. Chen ¶¶31.

[4] Chen ¶¶23–29.

[5] *See, e.g., Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 289 F.R.D. 41, 47–48 (E.D.N.Y. 2011), *on reconsideration in part*, 2013 WL 12362006 (E.D.N.Y. Feb. 12, 2013) ("Focusing on the

3

Hon. Barbara Moses
February 9, 2026
Page 4 of 5

these descriptions convey is that communications occurred between Google employees and in-house counsel concerning a subject matter that Google describes as "policy compliance." Courts have generally found that attorney-client communications about company policies are not privileged.[6] Accordingly, courts often find similar log descriptions insufficient.[7]

These descriptions do not allow Plaintiffs to assess whether the withheld communications concern a request for counsel to advise on whether a policy enforcement decision complies with Google's internal policies, or otherwise involve some legal work. On its face, "policy compliance" denotes compliance with "copyright policy," "ebook policy," etc., which presumably refer to Google's internal policies, not an external legal obligation. Google's counsel urged[8] that these descriptions were sufficient because "[w]hen a lawyer has been asked to assess compliance with a legal obligation, the lawyer's recommendation of a policy that complies (or better complies) with the legal obligation . . . is legal advice," citing *In re County of Erie*, 473 F.3d 413, 422 (2d. Cir. 2007); Ex. 6 at 7. Yet the descriptions here do not mention compliance with any **legal obligations**, but rather compliance with unspecified Google **policies**, which would not be privileged. *See infra* n.6.

These defective entries are further problematic because they frequently involve in-house counsel, who "may operate in a purely or primarily business capacity in connection with many corporate endeavors." *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002) (finding that "the presumption [of privilege] . . . does not extend to communications with in-house counsel."). As discussed in Section I, *supra*, part of Google's counsel's role with ▓▓▓▓▓▓▓ was to ▓▓▓▓▓▓▓▓▓▓▓ Ex. 11 at -7917. Indeed, the *Erie* court found it necessary to conduct *in camera* review of the contested documents precisely because "[w]hen an attorney is consulted in a capacity other than as a lawyer, as (for example) a policy advisor . . . , that consultation is not privileged." *Erie*, 473 F.3d at 421 (internal citations omitted); *see also NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 126 (N.D.N.Y. 2007) ("[I]f a business decision can be viewed as both business and legal evaluations, the business aspects of the decision are not protected simply because legal considerations are also involved.") (cleaned up). Accordingly, the *Erie* court treats "whether ***the predominant purpose*** of the communication is to render or solicit legal advice"

---

descriptive portion on the log and ignoring the conclusory labels," the "facts" provided on the log "do not establish the elements of a claim of attorney-client privilege.")

[6] *See United States v. Int'l Bus. Machines Corp.*, 66 F.R.D. 206, 210 (S.D.N.Y. 1974) ("As a general rule, communications relating to company policy do not meet the requirements of the attorney-client privilege and so are not privileged.").

[7] *See Est. of Thomas v. Cnty. of Sacramento,* 2022 WL 159035, at *2 (E.D. Cal. Jan. 18, 2022) ("Simply asserting that the [document or communication] was . . . 'to discuss legal and policy compliance ... in preparation for litigation' is insufficient."); *In re Loc. TV Advert. Antitrust Litig.*, 2024 WL 1956255, at *7 (N.D. Ill. Apr. 16, 2024) (ordering *in camera* review and subsequent production of documents described as "legal advice regarding compliance with corporate policies and procedures"); *cf. Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2018 WL 10038859, at *1 (S.D.N.Y. Sept. 28, 2018) (Moses, J.) (metadata log entries "described simply as 'Global Policies'" are insufficient).

[8] Counsel for both sides conferred on January 12, 2026. Chen ¶17 (providing details).

Hon. Barbara Moses
February 9, 2026
Page 5 of 5

as dispositive for determining entitlement to protection if the privilege was not waived. 473 F.3d at 420–23 (emphasis added.) Google's deficient descriptions fail to establish that the withheld documents meet this standard.

Google must produce withheld documents that describe, reflect, or discuss Google's internal policies or operations, including, at a minimum, the 592 documents identified in Chen ¶¶23–29.

### IV.   Conclusion

Plaintiffs respectfully seek an order compelling Google to produce all Requested Documents. A proposed order is enclosed.

Respectfully submitted,

*/s/  Yunyi Chen*
Yunyi Chen
