IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENGAGE LEARNING, INC. et al.<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Civil Action No. 24-cv-04274-JLR-BCM<br><br>[Redacted] |

**Declaration of Attorney Yunyi Chen in Support of
Plaintiffs' Letter Motion for Discovery Conference re: Google's Privilege Assertions**

1. I am an attorney at the law firm Oppenheim + Zebrak, LLP ("O+Z"), counsel for all Plaintiffs in this matter. I submit this declaration in support of Plaintiffs' Letter Motion for FDiscovery Conference re: Google's Privilege Assertions.

2. I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently hereto.

3. Attached as Exhibit 1 is a true and correct copy of Google's supplemental privilege log #1 dated September 9, 2025 served upon Plaintiffs with the file name "20250909 Google Privilege Log #1". ("Supp. Log 1").

4. Attached as Exhibit 2 is a true and correct copy of Google's supplemental privilege log #2 dated September 9, 2025 served upon Plaintiffs with the file name "20250909 Google Privilege Log #2". ("Supp. Log 2").

5. Attached as Exhibit 3 is a true and correct copy of Google's privilege log #3 dated September 9, 2025 served upon Plaintiffs with the file name "20250909 Google Privilege Log #3". ("Log 3").

1

6. Attached as Exhibit 4 is a true and correct copy of Google's privilege log #4 dated October 3, 2025 served upon Plaintiffs with the file name "20251006 Google Privilege Log #4". ("Log 4").

7. Attached as Exhibit 5 is a true and correct copy of Google's privilege log #5 dated January 20, 2026 served upon Plaintiffs with the file name "20260120 Google Privilege Log #5". ("Log 5").

8. I understand that Supp. Log 1, Supp. Log 2, Log 3, Log 4 and Log 5 (collectively, the "Logs") comprise Google's operative privilege logs to date except for Google's sixth privilege log served on February 5, 2026 concerning one document Google clawed back.

9. On August 1, 2025, the parties exchanged their initial privilege logs. On August 4, 2025, Plaintiffs' counsel, Jeff Kane, emailed Google's counsel concerning "[a] number of entries" that "refer to 'legal advice . . . regarding copyright policy compliance," asking Google to "[p]lease explain what 'copyright policy compliance' means."

10. I understand that on August 14, 2025, the parties met and conferred concerning the parties' questions and concerns about each other's privilege logs. Plaintiffs' counsel Michele H. Murphy, Jeff Kane, Uriel Lee, and then-Plaintiffs' counsel Kevin P. Lindsey, and Defendant's counsel Sarah Tomkowiak, Laura Bladlow, and Caroline Clarke attended the meet-and-confer. The meet-and-confer lasted approximately an hour.

11. I understand that following that meet-and-confer, the parties further conferred and corresponded concerning revisions to their respective privilege logs. On August 27, 2025, Defendant's counsel Caroline Clarke emailed Plaintiffs' counsel to memorialize the revisions that the parties respectively agreed to undertake, whereby Plaintiffs would add certain Google-requested information and Google would "add a column named 'Title' to its log," but "does not agree to revise any descriptions on its existing logs."

12. In September 2025, the parties served their revised privilege logs. Thereafter, the parties each raised further issues with the revised privilege logs. Google moved to challenge Plaintiffs' privilege assertions on November 14, 2025 (Dkt. 273), with briefing concluding on December 9, 2025, and on December 5, 2025 (Dkt. 376), with briefing concluding on December 12, 2025.

13. On December 5, 2025, I emailed Defendant's counsel concerning all deficiencies Plaintiffs observed in all of Google's then operative privilege logs, which were Supp. Log 1, Supp. Log 2, Log 3, and Log 4. This email and the ensuing correspondences through February 9, 2026 concerning these issues are attached as Exhibit 6. I noted that Plaintiffs observed numerous entries with deficient descriptions and identified several log entries that "appear to directly concern Google's DMCA repeat infringer policies, including what specific policy features entail and how they are implemented and enforced." I identified several log entries that "appear to correspond to withheld documents that concern the appeal and reinstatement process under DMCA repeat infringer policies." I also cited Google-produced documents showing that Google's in-house counsel was involved in several aspects of Google's DMCA policy implementation and performed several non-legal functions in enforcing Google's internal policies. Ex. 6 at 31–34.

14. On December 12, 2025, I reached out to Google regarding any update to Plaintiffs' December 5 inquiry. On December 17, 2025, having received no response, I again reached out to Google, explaining that "we would like to promptly understand Google's position with respect to each issue we raised" and offered availabilities for a meet-and-confer. On December 18, 2025, Google's counsel responded that it "will review the entries and redacted documents Plaintiffs have identified" and declined to meet-and-confer with Plaintiffs "[u]ntil we have completed our review," and also declined to meet-and-confer on December 19, 2025. *Id.* at 28–30.

3

15. On January 5, 2026, I reached out again to Google requesting a meet-and-confer. The parties initially agreed to meet-and-confer on January 9, 2026. Upon Google's representation that it "intend[ed] to provide a thorough written response" that afternoon, Plaintiffs agreed to Google's request to move the meet-and-confer to January 12, 2026. *Id.* at 24–26. On January 9, 2026 at 5:34 PM, Google provided its "written response," wherein Google took the position that the descriptions it provided were sufficient and all documents at issue were properly withheld, except for two documents that Google "will review further." Google never provided its position with respect to those two documents. *Id.* at 14–23.

16. On January 12, 2026, at 11 AM, Plaintiffs' counsel Jeff Kane and Yunyi Chen and Defendant's counsel Sarah Tomkowiak, Roberto Borgert, and Wilson Boardman participated in a meet-and-confer regarding the deficiencies Plaintiffs raised on December 5, 2025. The meet-and-confer lasted approximately 0.6 hours. Google maintained its positions from the written response and the parties did not reach a resolution regarding these deficiencies during the meet-and-confer or in subsequent correspondences.

17. In the afternoon following the meet-and-confer, I emailed Google's counsel to share caselaw concerning the deficiency of Google's log descriptions at Google's request; to provide an additional document showing that Google's in-house counsel performed non-legal functions in enforcing Google's internal policies; and to provide clarification with respect to questions Google raised in its January 9, 2026 written response. *Id.* at 12–13.

18. Thereafter, Plaintiffs did not receive any further update from Google concerning the issues raised in Plaintiffs' December 5, 2025 email or during the January 12, 2026 meet-and-confer. On January 20, 2026, Google served its Log 5 containing the same deficient descriptions Plaintiffs

repeatedly raised. Recognizing that the parties had reached an impasse, on January 21, 2026, Plaintiffs informed Google that they intended to seek relief from the Court. *Id.* at 8–12.

19. With the assistance of O+Z paralegal staff, I had Google's five privilege logs converted from PDF format into Microsoft Excel format using Adobe Acrobat's "Export a PDF" function. Duplicate header rows that appeared throughout as a result of the PDF to Excel conversions were removed. Excel-format entries from the Logs resulting from the above-described conversion process were then copied and pasted and combined into one Excel workbook. Because all Logs share the same number of columns and column headers except for Log 5, which contains an extra "Bates Number" column, an additional column named "Bates Number (Log 5) Only" was added to the Excel workbook, which remains blank for entries copied and pasted from Excel-format entries converted from Supp. Log 1, Supp. Log 2, Log 3, and Log 4, and contains the values from the "Bates Number" column corresponding to entries copied and pasted from Excel-format entries converted from Log 5. *See* Exs. 1–5.

20. An additional column A named "PrivLog #" was then added to the Excel workbook described in ¶ 19 above identifying the privilege log to which each copied and pasted entry corresponds. A value of "1" in column A identifies entries copied and pasted from converted Supp. Log 1. A value of "2" in column A identifies entries copied and pasted from converted Supp. Log 2. A value of "3" in column A identifies entries copied and pasted from converted Log 3. A value of "4" in column A identifies entries copied and pasted from converted Log 4. A value of "5" in column A identifies entries copied and pasted from converted Log 5.

21. Additional columns M (named "Deficient Entry") and N (named "Category") were then added to the Excel workbook described in ¶ 19 above to identify deficient entries discussed in ¶¶ 23–30 below. The "filter" functionality was then added to each column in the Excel workbook

so that it can be filtered to only display those deficient log entries (through the process described in ¶ 22 below).

22. The resulting Excel workbook is attached as Exhibit 7A, and a PDF version of Exhibit 7A is attached as Exhibit 7B. Plaintiffs' Letter Motion to File Exhibit via Email is contemporaneously filed with this declaration and seeks permission to submit Exhibit 7A, an excel workbook, by email. Each column in Exhibit 7A can be filtered by key words contained in the cells falling under that column by clicking on the drop-down button in the bottom right corner of each cell in the first row and either selecting one of the options or typing characters into the resulting search bar. For example, selecting "Y" in the cell M1 filters Exhibit 7A to display all entries described in ¶¶ 23–31 below; typing "Copyright Policy Compliance" into the cell N1 search bar filters Exhibit 7A to display only the entries described in ¶ 23 below.

23. I reviewed all columns and rows in the Logs and identified 251 entries, described as concerning "copyright policy compliance" as deficient in light of the totality of information provided. These deficient log entries are each assigned a value of "Y" in the column named "Deficient Entry" in Exs. 7A, 7B (column M in Ex. 7A) as well as a value of "Copyright Policy Compliance" in the column named "Category" in Exs. 7A, 7B (column N in Ex. 7A).

24. I reviewed all columns and rows in the Logs and identified 212 entries, described as concerning "trademark policy compliance" as deficient in light of the totality of information provided. These deficient log entries are each assigned a value of "Y" in the column named "Deficient Entry" in Exs. 7A, 7B (also column M in Ex. 7A) as well as a value of "Trademark Policy Compliance" in the column named "Category" in Exs. 7A, 7B (also column N in Ex. 7A).

25. I reviewed all columns and rows in the Logs and identified 10 entries, described as concerning "digital books or ebook policy compliance" as deficient in light of the totality of

information provided. These deficient log entries are each assigned a value of "Y" in the column named "Deficient Entry" in Exs. 7A, 7B (also column M in Ex. 7A) as well as a value of "Digital Books or Ebook Policy Compliance" in the column named "Category" in Exs. 7A, 7B (also column N in Ex. 7A).

26. I reviewed all columns and rows in the Logs and identified 24 entries described as concerning "other policy compliance" as deficient in light of the totality of information provided. These deficient log entries are each assigned a value of "Y" in the column named "Deficient Entry" in Exs. 7A, 7B (also column M in Ex. 7A) as well as a value of "Other Policy Compliance" in the column named "Category" in Exs. 7A, 7B (also column N in Ex. 7A).

27. I reviewed all columns and rows in the Logs and identified 43 entries described as concerning "intellectual property issues" as deficient in light of the totality of information provided. These deficient log entries are each assigned a value of "Y" in the column named "Deficient Entry" in Exs. 7A, 7B (also column M in Ex. 7A) as well as a value of "Intellectual Property Issues" in the column named "Category" in Exs. 7A, 7B (also column N in Ex. 7A).

28. I reviewed all columns and rows in the Logs and identified 26 entries described as concerning "regulatory issues" as deficient in light of the totality of information provided. These deficient log entries are each assigned a value of "Y" in the column named "Deficient Entry" in Exs. 7A, 7B (also column M in Ex. 7A) as well as a value of "Regulatory Issues" in the column named "Category" in Exs. 7A, 7B (also column N in Ex. 7A).

29. I reviewed all columns and rows in the Logs and identified the 26 entries described as concerning "legal dispute" as deficient in light of the totality of information provided. These deficient log entries are each assigned a value of "Y" in the column named "Deficient Entry" in

Exs. 7A, 7B (also column M in Ex. 7A) as well as a value of "Legal Dispute" in the column named "Category" in Exs. 7A, 7B (also column N in Ex. 7A).

30. I reviewed all columns and rows in the Logs and identified 51 entries as appearing to show Google's implementation of its repeat infringer policy adopted pursuant to the "safe harbor" provision under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, for its Shopping platform ("DMCA Policy"). These deficient log entries are each assigned a value of "Y" in the column named "Deficient Entry" in Exs. 7A, 7B (also column M in Ex. 7A) as well as a value of "DMCA Policy Implementation" in the column named "Category" in Exs. 7A, 7B (also column N in Ex. 7A).

31. In total, Plaintiffs identified 593 deficient log entries, as described in ¶¶ 23–30 above, accounting for documents challenged on multiple grounds. For example, the document titled ▮▮▮ ▮▮▮ described as ▮▮▮ ▮▮▮ in PrivLog ID 15 Supp. Log 1 is challenged both as deficient for the "copyright policy compliance" description (¶ 23 above) and for appearing to show Google's implementation of its DMCA Policy (¶ 30 above).

32. Attached as Exhibit 8 is a true and correct copy of the document produced by Google at the beginning Bates number GOOG-CENG-00000685.

33. Attached as Exhibit 9 is a true and correct copy of the document produced by Google at the beginning Bates number GOOG-CENG-00408607.

34. Attached as Exhibit 10 is a true and correct copy of the document produced by Google at the beginning Bates number GOOG-CENG-00408640.

35. Attached as Exhibit 11 is a true and correct copy of the document produced by Google at the beginning Bates number GOOG-CENG-00417893.

36. Attached as Exhibit 12 is a true and correct copy of the document produced by Google at the beginning Bates number GOOG-CENG-00424423.

37. Attached as Exhibit 13 is a true and correct copy of the document produced by Google at the beginning Bates number GOOG-CENG-00424575.

38. Attached as Exhibit 14 is a true and correct copy of the document produced by Google at the beginning Bates number GOOG-CENG-00441738.

39. Attached as Exhibit 15 is a true and correct copy of Google LLC's Responses and Objections to Plaintiffs' Amended First Set of Interrogatories to Defendant Google LLC, dated May 19, 2025.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

　　　　Executed February 9, 2026, in New York, New York.


　　　　　　　　　　　　　　　　　　　　　　　　/s/ *Yunyi Chen*
　　　　　　　　　　　　　　　　　　　　　　　　　Yunyi Chen