**Sarah A. Tomkowiak**
Direct Dial: +1.202.637.2335
sarah.tomkowiak@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200 Fax: +1.202.637.2201
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

February 17, 2026

**VIA ECF**

The Honorable Barbara C. Moses
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, New York 10007

> Re: *Cengage Learning, Inc. et al. v. Google LLC*, No. 1:24-cv-04274-JLR-BCM: Defendant's Response to Plaintiffs' Letter Motion for Discovery Conference re: Google's Privilege Assertions (Dkt. 590)

Dear Judge Moses:

Attempting to manufacture a counterweight to Google's meritorious challenges to Plaintiffs' privilege claims, Plaintiffs belatedly introduce a novel—and unsupported—waiver theory based on Google's assertion of the safe harbor defense. Plaintiffs' argument is factually inaccurate because Google does not need to rely on privileged communications to qualify for the safe harbor. Plaintiffs' challenge to Google's privilege log entries is equally meritless.

*Background*. Nearly six months ago, the parties reached an "Agreement Regarding Privilege Logs" to resolve Plaintiffs' objections to Google's privilege descriptions in Google's early August 2025 logs. Specifically, Google agreed to add a column containing "Title" information (file name or email subject line) for each withheld document to provide additional detail that would complement each document's "description." Declaration of Sarah Tomkowiak ("Decl.") Ex. B. Per that agreement, Google served two revised logs and a third log on September 9, 2025.[1]

Also in August 2025, Plaintiffs moved to add Google's in-house counsel— ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ("In-House Counsel") as custodians. At the October 8 hearing, Plaintiffs argued that In-House Counsel should be added because those ▮▮▮▮▮ ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ in connection with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 246 at 89:25-90:17, 91:1-13. The Court did not accept that theory, but advised Plaintiffs that they were "getting ahead of [themselves]" by not "even seriously address[ing] the question yet of whether the communications [involving counsel] were properly withheld as privileged." *Id.* at 90:18-25, 91:14-20, 92:6-10, 102:14-103:2. Attempting to curb the non-stop discovery disputes, the Court

---

[1] Google served single-entry logs on October 6, 2025 and February 5, 2026. Decl. ¶¶ 13-15.

**LATHAM&WATKINS**LLP

instructed the parties to "act diligently," *id.* at 71:2-13 and, at the October 14 hearing, to file any "additional motions to compel . . . so that we can deal with them [at the December 15 hearing]." Dkt. 258 at 176:19-23.

Despite that guidance, Plaintiffs waited months to challenge Google's privilege claims. It was not until December 5, just ten days before the December 15 hearing and only after Google challenged Plaintiffs' privilege claims, that Plaintiffs raised any concerns about Google's revised logs. In a nearly 1,500-word email, Plaintiffs raised "issues and questions" concerning hundreds of entries on Google's logs. Dkt. 593-6 at 31-34. In response, Google assessed those hundreds of withheld documents. Google provided a thorough response on January 9, *id.* at 14-23, and the parties met-and-conferred on January 12. On January 20, Google served a fifth log (corresponding with its January 6 productions). Plaintiffs emailed Google the next day, to complain that the fifth log contains "the same deficient descriptions" for hundreds of documents, and to indicate that they would seek Court relief. *Id.* at 8-12. But Plaintiffs then inexplicably waited weeks to file.

***Plaintiffs' Motion is Untimely***. Plaintiffs have not "act[ed] diligently" in raising this dispute. Plaintiffs have possessed the 285 log entries they now challenge (which added "Title" but still include the original August descriptions), since September 9. And their objections to the remaining 308 entries are indistinguishable from their objections to the September 9 log entries. Google can only assume that Plaintiffs' decision to challenge Google's logs was to create a makeweight to Google's meritorious challenges to Plaintiffs' privilege claims, but even that tactical choice doesn't explain the full delay. "In light of this history, and the Court's repeated warnings that discovery-related issues had to be raised in timely fashion," the Court should deny Plaintiffs' motion as untimely, *see Colon v. City of New York*, 2014 WL 4100607, at *3 (S.D.N.Y. Aug. 20, 2014) (denying motion to compel filed after document discovery deadline as untimely).

***Plaintiffs Are Wrong that Asserting the Safe Harbor Defense Waives Privilege***. Plaintiffs argue that Google has waived privilege over 51 withheld documents Plaintiffs contend relate to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ based on that description. Plaintiffs submit that, because Google is asserting a DMCA safe harbor defense, which requires Google to show it has "reasonably implemented" a repeat infringer policy, "fairness" requires that any related legal advice is subject to discovery. Mot. at 2-3. That's not how "at issue" waiver works.

"Underlying any determination that a privilege should be forfeited is the notion of unfairness." *In re Cnty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (*Erie II*). Because "privileged information may be in some sense *relevant* in any lawsuit," the Second Circuit requires a showing that "a party must *rely* on privileged advice from his counsel to make his claim or defense" before finding "at-issue" waiver. *Id.* (emphasis in original) (finding no "at-issue" waiver).

To benefit from the safe harbor, Google must show that it "(i) adopt[ed] a policy that provides for the termination of service access for repeat copyright infringers; (ii) inform[ed] users of the service policy; and (iii) implement[ed] the policy in a reasonable manner." *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 744 (S.D.N.Y. 2012). An implementation is "reasonable if, under 'appropriate circumstances,' the service provider terminates users who repeatedly or blatantly infringe copyright." *McGucken v. Shutterstock, Inc.*, --F.4th--, 2026 WL

364412, at *5 (2d Cir. Feb. 10, 2026). Google does not need to rely on privileged advice or communications to meet the safe harbor's requirements. Whether Google reasonably implemented its repeat infringer policy is an objective analysis that turns on facts relating to Google's actions. Plaintiffs' claim that Google is "withhold[ing] the documents showing that implementation" is demonstrably false. Not only do Plaintiffs possess those documents, but they specifically rely on and cite several of those documents in their Motion.[2] For these reasons, there are no "fairness" concerns "requir[ing] examination of protected communications." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). If anything, Plaintiffs' proposed rule would be unfair. The safe harbor is a tool to help ISPs mitigate legal risk and large statutory damages under the Copyright Act. Compliance with those statutes naturally involves soliciting and receiving legal advice. It would be inherently inequitable if Google—or any ISP—were deemed to have automatically waived privilege over legal advice regarding the implementation of its repeat infringer policy simply by asserting a statutory defense.

Unsurprisingly, the cases Plaintiffs cite do not support Plaintiffs' waiver theory. In *United States v. Dish Network, L.L.C.*, the court found that the defendant waived privilege by directly relying on its attorneys' conduct as evidence to support its affirmative defense. 283 F.R.D. 420, 424 (C.D. Ill. 2012). Critically, the court held that cases like *Erie II* did not apply because defendant's "attorneys did more than just provide advice that is relevant to the monitoring and compliance functions [required by the applicable defense], they (along with others) performed these functions." *Id.* That same logic applied in *Jackson v. Deen*, in which the court found waiver because the defendant relied on the reasonableness of attorney conduct to support its affirmative defense. 2013 WL 2027398, at *7 (S.D. Ga. Apr. 3, 2013).[3]

That logic does not apply here. Plaintiffs cherry-pick language from an email thread to suggest that ▮▮▮▮▮▮▮▮▮▮. Mot. at 2. That is demonstrably incorrect. ▮▮▮▮▮▮▮▮▮▮. *See* Kelly Decl. ¶¶ 1, 3. ▮▮▮▮▮▮▮▮▮▮. *See id.* ¶ 4; Dkt. 593-11 at GOOG-CENG-00417915. Plaintiffs also rely on ▮▮▮▮▮▮▮▮▮▮ Dkt. 593-14. But consulting counsel for legal advice before taking an action that may have copyright, antitrust, or other legal ramifications is precisely the kind of communication that remains

---

[2] Plaintiffs make an oblique request that Google re-review the withheld documents and produce them in redacted form. Mot. at 2. Google notes that it has already produced hundreds of documents involving In-House Counsel that contain non-privileged information, including 253 documents with privileged information redacted. Decl. ¶ 25.

[3] Plaintiffs describe an order from *In re Frontier Communications Corporation, et al.*, No. 20-BK-22476-MG (Bankr. S.D.N.Y. Sept. 19, 2024) as requiring production involving in-house counsel's implementation of a repeat infringer policy. Mot. at 3. However, the cited order and accompanying exhibit contain no reasoning and do not support Plaintiffs' description. *See* Decl. Exs. C, D.

**LATHAM&WATKINS**LLP

privileged, even if the legal advice is "in some sense relevant" to activities underlying an affirmative defense. *Erie II*, 546 F.3d at 229; *see Dish*, 283 F.R.D. at 424.

***Google's Privilege Logs Reflect the Provision of Legal Advice and Work Product***. When analyzing privilege challenges over "large quantities of disputed documents, the court has broad discretion" to rely on "sufficiently detailed privilege logs." *Golden Trade, S.r.L. v. Lee Apparel Co.*, 1992 WL 367070, at *5 (S.D.N.Y. Nov. 20, 1992). Google's logs adequately substantiate Google's assertion of privilege and work product protection over the nearly-600 withheld documents in dispute. Those logs describe the withheld documents by providing the "Document Date"; "Create Date"; "Title"; "Author"; "E-mail From/Custodian"; "Recipient(s)"; "Privilege Description" (which describes the document type); "Privileged/Protection Asserted"; and "Redacted (Yes/No)". *See* L. Civ. R. 26.2(a)(2)(A) (listing satisfied requirements). The logs also identify attorneys' names with an asterisk.

Nevertheless, Plaintiffs reraise their August 2025 objection that Google's "Privilege Descriptions" are insufficient. But in challenging over half of the entries on Google's logs, Plaintiffs ignore the significant descriptive information in the "Title" column, which Google added five months ago. Taken together, the details in Google's logs provide "sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure." *United States v. Constr. Prods. Rsch., Inc.*, 73 F.3d 464, 473 (2d Cir. 1996); *see supra* at 1. For example:

| Priv Log | PrivLog ID | Title | Privilege Description | Privilege/Protection Asserted |
|---|---|---|---|---|
| 1 | 120 | ■ | ■ | Attorney-Client Privilege |
| 2 | 36 | ■ | ■ | Attorney-Client Privilege; Work Product |
| 3 | 262 | ■ | ■ | Attorney-Client Privilege |
| 5 | 550 | ■ | ■ | Attorney-Client Privilege |

Plaintiffs' broader argument that communications relating to compliance with internal policies cannot be privileged is also incorrect. In the case *In re County of Erie* (*Erie I*), the Second Circuit held that "[w]hen a lawyer has been asked to assess compliance with a legal obligation, the lawyer's recommendation of a policy that complies (or better complies) with the legal obligation—or that advocates and promotes compliance, or oversees implementation of compliance measures—is legal advice." 473 F.3d 413, 422 (2d Cir. 2007). Plaintiffs strain to argue that compliance with Google's "copyright policy" and "trademark policy" is not "legal" in nature. Mot. at 4; *see* Kelly Decl. ¶¶ 1, 3-4. That's just wrong. And Plaintiffs well know that Google

**LATHAM&WATKINS**LLP

created and implemented its "ebook policy," which is incorporated into Google's contractual terms of use,[4] to curb copyright infringement on Google Shopping, which raises inherently legal issues.[5]

      For these reasons, the Court should deny Plaintiffs' Letter Motion. If the Court finds that any of Google's log entries are deficient, Google requests the opportunity to revise those entries.

Respectfully submitted,

*/s/ Sarah A. Tomkowiak*
Sarah A. Tomkowiak (*pro hac vice*)
of LATHAM & WATKINS LLP

cc:    All Counsel of Record (via ECF and e-mail)

---

[4] *Google Merchant Center Terms of Service* § 3(a), https://merchants.google.com/files/tos/extend/US/5_00_tos.html; *Unsupported Shopping content*, https://support.google.com/merchants/answer/6150006.

[5] The caselaw Plaintiffs reference is inapposite: one case pre-dates *Erie* by 30+ years and concerned policies about "sales manuals," "administrative forms" and other "general goals and considerations which guide an enterprise in the conduct of its affairs." *United States v. Int'l Bus. Machines Corp.*, 66 F.R.D. 206, 210 (S.D.N.Y. 1974). And the other cases did not turn on the fact that withheld documents related to internal policies. *See* Mot. at 4 nn.6-7 (citing cases).