

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
jkane@oandzlaw.com

February 18, 2026

<u>VIA ECF</u>

The Honorable Barbara Moses
U.S. District Court for the Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

      Re:    *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
              Plaintiffs' Letter Request for Discovery Conference re Communications between the Pirates and Google Sales Representatives

[Redacted]

Dear Judge Moses,

    We represent all Plaintiffs in this matter. Google deploys sales representatives to try to prevent certain Shopping Ads merchants from being suspended for copyright or other violations, and to try to get suspended merchants reinstated. Yet Google refuses to produce communications between these sales representatives and the 1,500 pirates who infringed the works-in-suit. Google's refusal is unreasonable. The Court should order Google to produce documents in response to Plaintiffs' Request for Production 115, specifically, communications between Google sales representatives (as defined below) and the 1,500 pirate websites at issue in this case ("Pirates") from January 1, 2020 through September 19, 2024 (the "Relevant Time Period").

    **I.**    <u>**Google must produce the requested documents.**</u>

    This case concerns Google's promotion of the Pirates' infringing copies of Plaintiffs' copyrighted works through Shopping ads. If Google communicated with the Pirates about these Shopping ads, or their accounts connected to these ads, that is basic and critical information that Plaintiffs need in this case.

        **a.**  **Sales Representatives' communications involve suspensions, reinstatements, and other ads issues.**

    Documents Google has produced so far reveal that Google deploys sales representatives, account managers, account strategists, and other personnel to act as liaisons between Google and Shopping Ads merchants ("Sales Representatives") to assist with important issues like account or domain suspensions, getting "reinstated" after being suspended, ads disapprovals, including for policy violations, and similar ads account issues.[1] For instance, for copyright violations, Google's stated policy is to suspend merchants who ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dkt. 238-5. However,

---

    [1] The Sales Representatives appear to work in several different teams within Google, most notably Customer Solutions, Commerce Support, and Shopping Support. *See* Declaration of Attorney Jeff Kane Exhibit ("Decl. Ex.") E; GOOG-CENG-00464103; GOOG-CENG-00435735. But Google has refused to search for communications the Pirates had with these teams. Decl. ¶ 3.

Hon. Barbara Moses
February 18, 2026
Page 2 of 4

Sales Representatives may receive advance notice about potential suspensions, try to prevent certain merchants from being suspended, or generally help merchants navigate suspension-related issues. *See, e.g.,* Decl. Ex. C, at -8701 ("███"); Decl. Ex. D, at -8158 ("███"); GOOG-CENG-00433532, at -3538 ("███"); GOOG-CENG-00433532, at -3536 ("███"); GOOG-CENG-00418109 ("███") (emphasis added).

If a merchant is suspended, Sales Representatives may also communicate with the merchant, and even advocate on their behalf, to get them reinstated. *See, e.g.,* GOOG-CENG-00418050, at -8052 (Google has special "███", which expedite these special merchants' concerns); Decl. Ex. E, at -2566 (special clients also "███", which can be escalated through unique sales escalation links like "███".); *Id.*, at -2565 (if a Sales Representative's client gets suspended, Google's Sales Representatives can call for "███").

Google's Sales Representatives also assist merchants with a variety of other relevant account issues and concerns. For example, Sales Representatives provide answers and advice to merchants' questions, including concerning copyright infringement. *See, e.g.,* Decl. Ex. F, at -3069 ("███"). This may result in merchants receiving expedited response turn-around-times or referrals or access to other Google's internal teams to resolve account issues. *See, e.g.,* Decl. Ex. G, at -7977 ("███"); Decl. Ex. E, at -2568-2569 (Sale Representative seeking action to prevent "███"). Such communications may also address ads approval, disapproval, or reinstatement. *See, e.g.,* Decl. Ex. H, at -4118 (an "███" asking if the merchant can "███" of their removed ads); GOOG-CENG-00435735, at -5740 (Sales Representative asking "███" before relaying their advice back to merchants).

Plaintiffs thus seek the Pirates' communications between Google Sales Representatives and the Pirates regarding ads for their products or their Merchant Center or Google Ads accounts.

### b. The requested communications are highly relevant.

In the documents that Google has produced, Sales Representatives go above and beyond to assist merchants with, and taking proactive steps concerning, highly relevant topics such as suspensions, reinstatements, and other copyright complaint and ads removal issues. It is imperative that a factfinder has information concerning Google's direct communications with the Pirates to fully evaluate the extent of Google's material contribution to and knowledge and inducement of the infringements. For instance, if Google's Sales Representatives were assisting Pirates to avoid

Hon. Barbara Moses
February 18, 2026
Page 3 of 4

account suspension or ebook ads disapproval, prioritizing a Pirate's questions or communications about their Shopping accounts and ebook ads, or otherwise ensuring that a Pirate's reputation and relationship with Google remains robust and healthy, the factfinder would want to know that information. Google has also put its DMCA program at issue by seeking the safe harbor defense. *See* Dkt. 116 at 23. Communications that bear upon whether Google expeditiously removed infringing ads or terminated repeat-infringer merchants like the Pirates are plainly relevant and must be produced. *See* 17 U.S.C. § 512; Dkt. 116 at 23.

### II.    Google's objection is without merit.

In September 2024, Plaintiffs issued RFP 29, seeking "Documents concerning all communications between you and any Infringing Merchant or Related Ads Merchant, including communications concerning any Infringement Notice; any violation of Google policy, including any Acceptable Use Policy, Repeat Infringer Policy, or Copyright Infringement Policy; and any adverse action to be taken or not taken against the merchant or its Merchant Center, Google Ads, or other Google account." Decl. ¶ 3, Dkt 47-1 at 13.

In response, Google proposed that it would search ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[2] Decl. ¶ 5. Documents Google subsequently produced, however, indicate that in addition to the communications in the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Google also might possess communications between the 1,500 Pirates and the Sales Representatives discussed above. Decl. ¶ 6. After reviewing these documents, Plaintiffs issued RFP 115 in December 2025, specifically seeking communications between the 1,500 Pirates and Google Sales Representatives. Decl. ¶ 7. RFP 115 requests "[a]ll communications between the Infringing Merchants and any Google representatives, including any sales representatives, account managers, account strategists, or any other Google employee who would communicate directly with the Infringing Merchants." *Id*.

On January 5, 2025, Google refused to search for or produce any documents in response to RFP 115 beyond what it has produced or will produce in response to RFP 29, and two other RFP (RFP 3 and RFP 4). Decl. ¶ 8.[3] During the parties' subsequent conferrals, Google did not dispute that communications between Sales Representatives and Pirates are relevant. Decl. ¶ 9. Rather, Google's only objection was that RFP 115 is duplicative of Plaintiffs' RFP 3, RFP 4, and RFP 29. *Id*. (detailing conferrals). This is an unreasonable objection. None of the documents that Google

---

[2] Plaintiffs and Google are meeting and conferring regarding Google's production of communications with the Pirates regarding infringement notices. Decl. ¶ 4. If this dispute is not resolved, Plaintiffs anticipate filing a separate motion concerning RFP 3, RFP 4, and/or RFP 29.

[3] Plaintiffs' RFP 3 requests "Documents identifying and describing each Infringement Notice you received concerning a Shopping Ads Merchant and whether and how you processed and responded to such notice." Dkt 47-1 at 8. Plaintiffs' RFP 4 requests "Documents identifying and describing each instance in which you warned, suspended, terminated, or otherwise took adverse action against a Shopping Ads Merchant, including an Infringing Merchant, or the merchant's Merchant Center, Google Ads, or other Google account, based on alleged copyright or trademark infringement." Dkt. 47-1 at 8–9. Google's Responses and Objections can be found at Dkt. 47-2 at 15–17.

Hon. Barbara Moses
February 18, 2026
Page 4 of 4

has produced in response to Plaintiffs' RFP 3, RFP 4, and RFP 29 are communications the Pirates had with any Google Sales Representatives about the subjects at issue. Decl. ¶. 5.

Moreover, Google's counsel refused even to investigate whether any of the 1,500 Pirates in question had specific Sales Representatives assigned to them, or where Sales Representative communications with the Pirates might be found. Decl. ¶ 5. This has made it impossible for the parties to discuss how Google might gather relevant documents. Despite Plaintiffs' efforts to confer in good-faith and prevent bringing unnecessary disputes in front of the Court, Google refused to further explain or investigate anything else regarding RFP 115. *Id*. Accordingly, Plaintiffs request that the Court order Google to produce all of the communications at issue between the 1,500 Pirates and Google Sales Representatives.

### III.     Conclusion

The Court should grant Plaintiffs' motion. A proposed order is enclosed.

Respectfully submitted,

*/s/ Jeff Kane*
Jeff Kane