**Sarah Tomkowiak**
Direct Dial: 1.202.637.2335
sarah.tomkowiak@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

**LATHAM & WATKINS LLP**

February 23, 2026

**VIA ECF AND E-MAIL**

The Honorable Barbara C. Moses
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, New York 10007

Re:  *Cengage Learning, Inc. et al. v. Google LLC*, No. 1:24-cv-04274-JLR-BCM: Defendant's Response to Plaintiffs' Letter Request re: Sales Representative Communications (Dkt. 625)

Dear Judge Moses:

Google writes in opposition to Plaintiffs' untimely Letter Request regarding communications, if any, between the merchant accounts alleged to have advertised infringing copies of Plaintiffs' works and Google sales representatives (the "Motion" or "Mot."), Dkt. 625. Plaintiffs' Motion is based entirely on speculation that a trove of such communications from 2021-2024 exist. (Likely not.)  And even if any such communications exist, Plaintiffs' failure to bring this Motion until the tail-end of fact discovery is inexcusable.  Plaintiffs served a nearly identical discovery request seeking "communications between [Google] and any Infringing Merchant" over seventeen months ago, and Google completed its productions in response to this request in June. The Court should deny Plaintiffs' Motion.

**I.  Plaintiffs' Motion Rests on Pure Speculation**

As a threshold matter, Plaintiffs' Motion should be denied because it rests on nothing more than speculation that a trove of communications exist between Google "sales representatives" and the at-issue merchant accounts (allegedly operated by, in Plaintiffs' words, "pirate sellers").  "The party seeking an order to compel production of documents must make at least some showing that the documents it seeks exist." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2018 WL 11585535, at *3 (S.D.N.Y. Feb. 2, 2018) (Moses, M.J.).  Yet Plaintiffs have not identified a shred of evidence in Google's productions suggesting that there are any communications between the so-called pirates and a "Google representative."  Indeed, Plaintiffs have not even pointed to anything suggesting that any particular merchant at issue (let alone all of them) have (or ever had) assigned representatives at all.  There is no reason to believe that this late fishing expedition will unearth additional responsive documents.

LATHAM&WATKINS LLP

Plaintiffs attach six Google-produced documents to their Motion to support their contention that "Google deploys sales representatives" to assist merchant accounts with "important issues," including account suspensions and ad disapprovals. Mot. at 1. But this hodgepodge of documents (four emails, a short training document, and bullet-point notes) does not remotely suggest that the merchant accounts at issue in this case communicate with account representatives. To the extent Plaintiffs' cited documents say anything at all, they make clear that Google assigns representatives to "strategic" and "high-spending" merchant accounts, not to all merchant accounts. *See* Mot. at 2; *see also* Dkt. 626-7 (Ex. G) at -407977 ("                                                           ").

The merchant accounts at issue here are unlikely to be the kind of "key strategic" or high-spend accounts that would have sales representatives assigned (and communicate with them). *See* Dkt. 626-5 (Ex. E) at -602568. Indeed, Plaintiffs themselves have referred to these merchants as "scofflaws," Dkt. 38 ¶ 119, who "create multiple accounts to hide their infringement so that they can try to go undetected," Hr'g Tr., Dkt. 57, at 37:21–23 (Dec. 4, 2024). That is consistent with Google's understanding of these accounts, too. Moreover, the evidence Google has produced demonstrates that the at-issue merchants are decidedly not high-spenders. Google's total revenue between June 2021 and March 2025 from *all* 20,145 original at-issue merchant accounts was just $          . *See* Declaration of Sarah Tomkowiak ("Atty. Decl.") ¶ 8.[1]

Even assuming, *arguendo*, that a few of the 20k+ at-issue merchants had a sales representative nominally assigned, Plaintiffs fail to offer any basis for thinking there are relevant communications that Google failed to produce. The documents Plaintiffs cite in their Motion suggest that when merchants contact sales representatives regarding topics related to DMCA removals, the sales representatives liaise with the custodians in this case to chart a path forward. *See, e.g.*, Dkt. 626-8 (Ex. H). Yet Plaintiffs cannot point to a single document between a sales representative for an *at-issue merchant* and one of Google's custodians. In short, Plaintiffs' rank speculation that sales representatives are assigned to and communicate with the alleged pirate sellers (at all, let alone in some meaningful, routine way) cannot justify the burden they seek to impose on Google.

### II. Plaintiffs' Motion Is Untimely and the Discovery Sought Disproportional

That Plaintiffs have not acted diligently in raising this dispute independently counsels in favor of denying Plaintiffs' Motion. Plaintiffs' gamesmanship frustrates the parties' ability to bring fact discovery to a close and should not be rewarded.

Seventeen months ago, in September 2024, Plaintiffs served an RFP (RFP 29) seeking "all communications between [Google] and any Infringing Merchant or Related Ads Merchant, including communications concerning any Infringement Notice; any violation of Google policy, including any Acceptable Use Policy, Repeat Infringer Policy, or Copyright Infringement Policy; and any adverse action to be taken or not taken against the merchant." Atty. Decl. ¶ 3. In response,

---

[1] The ads accounts connected to the at-issue merchant accounts hardly qualify as "high-spending advertisers," either. *See id.* ¶¶ 9, 13 (lifetime revenue for the ads accounts connected to the 20,145 original merchants and 976 supplemental merchants totaling under $          ).

**LATHAM&WATKINS**LLP

Google agreed to produce "communications between Google and the merchants identified by Plaintiffs' infringement notices concerning the works asserted in this proceeding maintained in the ordinary course of business and located after a reasonable search." *Id*. ¶ 4. That November (fifteen months ago), the parties conferred to negotiate the scope and methodology of Google's search. *Id*. ¶ 5. Google explained that it would search its non-custodial systems and databases, rather than the files of individual custodians, to locate documents responsive to this RFP. *Id*. Plaintiffs acknowledged and accepted this approach, understanding that "Google would collect all documents associated with the 'case number' associated with notices concerning the Infringing Merchants." *See id*. ¶ 6 (quoting Nov. 24, 2024 O+Z Email).

Consistent with the parties' conferral, Google identified all cases in its customer interaction database associated with the domains tied to the at-issue 20,145 merchant center accounts and extracted all associated documents and communications for each case. *Id*. ¶¶ 6-7.[2] Google began producing this notice data, including any communications Google received tied to the relevant cases, in March 2025. With the exception of notice data for the additional 261 domains ordered by the Court at Dkt. 359, Google completed its production of this data in June. *Id*. ¶ 7(a)-(c).[3]

Instead of raising the issue regarding communications with unknown sales representatives this past summer, however, Plaintiffs waited until December, when they served a new, duplicative RFP for "all communications" between the at-issue merchants and Google (RFP 115), purportedly because Google "ha[d] not produced" the documents requested in RFP 29.[4]

Plaintiffs' delay in raising this dispute with the Court is inexcusable. Plaintiffs never objected to Google's search methodology when the parties negotiated the scope of Google's search with respect to RFP 29 in November 2024. They never raised the sufficiency of Google's productions in response to RFP 29 before serving RFP 115 in December 2025. And they waited *eight months* after Google completed its RFP 29 productions to bring this Motion.

Plaintiffs appear to suggest that their delay should be excused because documents produced by Google between July and December 2025 "show[] that Google Sales Representatives played a key role in preventing suspensions of merchants they represented." Dkt. 626 ¶ 6. But Plaintiffs have always known that certain merchant accounts have sales representatives that act as liaisons between their clients and Google—including from *Plaintiffs' own experience* as Google customers. Indeed, in August 2025, Plaintiffs moved to compel Google to add two of Plaintiffs' own Google sales representatives as custodians. *See* Dkt. 185 at 2. The Court denied that motion, in part because Plaintiffs knew who those individuals were prior to filing suit. Hr'g Tr., Dkt. 258,

---

[2] Consistent with the Court's order at Dkt. 359, Google identified an additional 976 merchant accounts connected to the supplemental list of 261 domains and performed the same search for these accounts in December 2025. *Id*. ¶ 7.

[3] Google produced the notice data for the supplemental merchants on December 29, 2025. *Id*. ¶ 7(d).

[4] In a footnote to RFP 115, Plaintiffs acknowledge that "[t]he documents called for by RFP 115 were requested already, including at least in RFP 29." Dkt. 626-1 (Ex. A) at 3 n.2.

LATHAM&WATKINS LLP

at 6:8–12 (Oct. 14, 2025) ("[The sales representatives] . . . obviously were known to the plaintiffs since before the case was brought. So as we go along, I will be pushing back from time to time on the why so late in the day question."); *see also id.* at 61:23-62:10. That Google produced certain documents referencing sales representatives (but again, untied to any merchant actually at-issue in this suit) this summer and fall cannot justify Plaintiffs' delay.

Especially in light of Plaintiffs' significant delay in bringing this Motion, the discovery they now seek is not proportional to the needs of the case. Under Federal Rule of Civil Procedure 26(b)(2)(C)(ii), the Court "must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." As this Court has acknowledged, "[t]he later in the discovery schedule that someone comes up with a new set of search terms or a new set of custodians," the more the "proportionality analysis" weighs against the movant. Hr'g Tr., Dkt. 258, at 15:8-14 (Oct. 14, 2025); *see also* Hr'g Tr., Dkt. 246, at 71:2–13 (Oct. 8, 2025) (instructing parties to "act diligently").

At this point, with little more than two months remaining in fact discovery (during which the parties may take and defend over 40 depositions, inclusive of Rule 30(b)(6) depositions), the proportionality analysis weighs strongly against Plaintiffs. Courts have consistently denied motions to compel in similar circumstances where the requesting party failed to act with diligence, and where fact discovery is ending or has ended. *See Capozzi v. Gale Group, Inc.*, 2002 WL 1627626, at *2 (D. Conn. June 4, 2002) (denying motion to compel when "plaintiff had ten months and three discovery deadlines to file the motion to compel"); *Farb v. Baldwin Union Free Sch. Dist.*, 2007 WL 1300978, at *1 (E.D.N.Y. May 4, 2007) (denying motion to compel where "plaintiffs had five months to raise this issue in a timely fashion and failed to do so"); *Colon v. City of New York*, 2014 WL 4100607, at *3 (S.D.N.Y. Aug. 20, 2014) (denying motion to compel filed after document discovery deadline as untimely). Plaintiffs had ample opportunity to raise this dispute well before today, and their failure to act diligently should not now impose substantial burdens on Google or require this Court to reopen custodial discovery.

Finally, the burden of complying with Plaintiffs' request underscores its disproportionality. To respond to RFP 115, Google would need to first identify whether any of the 20,000+ at-issue merchant center accounts had assigned sales representatives, account managers, or account strategists at any point during the relevant time period. In the (unlikely) event that the accounts did have assigned sales representatives, Google would then need to (1) identify and collect custodial documents from each representative; (2) negotiate and run search terms across those custodial files; (3) review the resulting documents for responsiveness and privilege; and (4) produce and log any responsive documents. This burden is substantial at any stage of litigation, but it is particularly unreasonable at this late stage, given that Google will otherwise complete its custodial document productions by March 6.

For these reasons, the Court should deny Plaintiffs' Motion. But if the Court grants Plaintiffs' Motion, Google respectfully requests that the Court order Plaintiffs to share the cost of Google processing, hosting, reviewing, producing and logging privilege for any additional custodial files, as Your Honor previously suggested. *See* Hr'g Tr., Dkt. 258, at 51:15–52:6 (Oct. 14, 2025). Cost-sharing is appropriate where, as here, "the burden or expense of the proposed

**LATHAM&WATKINS**LLP

discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316 (S.D.N.Y. 2003). This is particularly appropriate where, as here, Plaintiffs have continued to file motion after motion, filing ten discovery motions since August 2025 (including two omnibus motions).

        Respectfully submitted,

        */s/ Sarah A. Tomkowiak*
        Sarah A. Tomkowiak (*pro hac vice*)
        of LATHAM & WATKINS LLP

cc: All Counsel of Record (via ECF and e-mail)