**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; ELSEVIER INC.; ELSEVIER B.V.; and MCGRAW HILL LLC, | |
| | **Case No. 1:24-cv-04274-JLR-BCM** |
| *Plaintiffs*, | |
| v. | |
| GOOGLE LLC, | |
| *Defendant*. | |

## DECLARATION OF SARAH TOMKOWIAK

I, Sarah Tomkowiak, declare that:

1.      I am a partner at the law firm Latham & Watkins LLP, counsel for Google LLC ("Google") in this matter.

2.      I submit this declaration in connection with Google's response to Plaintiffs' Letter Request regarding communications between the merchant accounts alleged to have advertised infringing copies of Plaintiffs' works and Google sales representatives (Dkt. 625).

3.      On September 3, 2024, Plaintiffs served their First Set of Requests for Production ("RFPs") on Google.  RFP 29 asked for "all communications between [Google] and any Infringing Merchant or Related Ads Merchant, including communications concerning any Infringement Notice; any violation of Google policy, including any Acceptable Use Policy, Repeat Infringer Policy, or Copyright Infringement Policy; and any adverse action to be taken or not taken against the merchant or its Merchant Center, Google Ads, or other Google account."

4.      On October 3, 2024, Google served its Responses and Objections to Plaintiffs' First Set of RFPs.  In response to RFP 29, Google agreed to produce "communications between Google and the merchants identified by Plaintiffs' infringement notices concerning the works asserted in this proceeding maintained in the ordinary course of business and located after a reasonable search."

5.      On November 14 and 19, 2024, my colleagues Holly Victorson and Sara Sampoli met and conferred with Plaintiffs' counsel regarding Google's responses to Plaintiffs' First Set of RFPs. In addition to Ms. Victorson and Ms. Sampoli, I also attended the conferral on November 19. During the November 19 conferral, Ms. Victorson explained that, to locate responsive documents to RFP 29, Google would be searching a "system" rather than custodial documents.

6.      On November 25, 2024, Plaintiffs' counsel, Jeff Kane, sent Google's counsel their summary of the issues discussed on the November 14 and November 19, 2024 conferrals.  In that email. Kane stated the following: "Google represented that any communications between Google and the Infringing Merchants (RFP 29) and any red flags/warnings about the Infringing Merchants (RFP 31) should be contained within Google systems/databases, and so a custodian/search term approach is not necessary.  Google intends to search existing databases or systems, and is currently investigating and identifying the different sources that would contain this information. Google identified two such databases (which we will call the 'DMCA Database' and 'Strike Tracker') that likely will house responsive documents.  Google confirmed that within the DMCA Database, Google would collect all documents associated with the 'case number' associated with notices concerning the Infringing Merchants (recognizing that Related Ads Merchants are an open issue). For the Strike Tracker, Google confirmed that it will produce documents in respect to the Infringing Merchants."

a.    I understand Mr. Kane's reference to what he calls the "DMCA Database" to be a reference to Google's "████" database, which is an internal customer interaction database.

7.    Between March and December 2025, Google identified all cases for DMCA notices in the "████" database associated with domains tied to the at-issue 21,121 merchant center accounts (20,145 tied presently or historically to the original 1,239 domains and 976 tied presently or historically to the supplemental 261 domains, as ordered by the Court in Dkt. 359) and pulled all documents and communications associated with each case.

a.    On March 31, 2025, Google served its first production of DMCA notice data from the ████ database related to the original merchants.

b.    On May 7, 2025, Google served its second production of DMCA notice data related to the original merchants.

c.    On June 10, 2025, Google served its third production of DMCA notice data related to the original merchants.

d.    On December 29, 2025, Google served its fourth production of DMCA notice data from the ████ database, this time relating to the supplemental merchants.

8.    On July 1, 2025, Google produced a spreadsheet reflecting the cost of offers associated with any of the 20,145 original merchants (i.e., the revenue that Google earned from these merchants' Shopping ads) between June 2021 and September 2024.  *See* GOOG-CENG-00404298.  On December 24, 2025, Google produced a spreadsheet reflecting the cost of offers associated with any of the 20,145 original merchants between October 2024 and March 2025.  *See* GOOG-CENG-00479528.  I understand the revenue in these spreadsheets to reflect the revenue Google collected from all Shopping ads run by these merchants.  In total, the spreadsheets reflect

that the combined revenue from Shopping ads run by these merchants during the relevant time period is $██████.

9.      On August 15, 2025, Google produced a spreadsheet reflecting various account details associated with the ████ Ads accounts linked (presently or historically) to the 20,145 original merchants. *See* GOOG-CENG-00419904. I understand that Column P of that spreadsheet reflects the lifetime spend (in U.S. dollars) of each of the Ads accounts included in the spreadsheet. In total, the spreadsheet reflects that the combined lifetime spend of these Ads accounts is $██████.

10.     On December 5, 2025, Plaintiffs serve their Fifth Set of RFPs on Google. Between Google's first production of DMCA notice data on March 31, 2025 and Plaintiffs' service of their Fifth Set of RFPs on December 5, 2025, Plaintiffs never raised any objections to the sufficiency of Google's productions in response to RFP 29.

11.     On January 27, 2026, Plaintiffs' counsel asked Google's counsel to meet and confer regarding RFP 115, focusing on their request for communications between the at-issue merchants and "their Google representatives."

12.     On February 5, 2026, my colleagues Caroline Clarke, Wilson Boardman, and Sara Sampoli met and conferred with Plaintiffs' counsel regarding RFP 115. Mr. Kane's statement in his declaration, Dkt. 626 ¶ 9, that I attended this conferral is incorrect. I understand that during the conferral, Ms. Sampoli explained that RFP 115 is duplicative of RFP 29, that Google already completed its productions of communications associated with infringement notices in response to RFP 29, and that Plaintiffs had failed adequately to explain their basis for believing that additional responsive communications exist.

13.     On February 6, 2026, Google produced a spreadsheet reflecting the various account details associated with the ███ Ads accounts linked (presently or historically) to the 976 supplemental merchants.  *See* GOOG-CENG-00620174.  In total, the spreadsheet reflects that the combined lifetime spend of these Ads accounts is $████████.

Executed on February 23, 2026 in McLean, Virginia.

                                        */s/ Sarah A. Tomkowiak*_____
                                        Sarah A. Tomkowiak