

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
jkane@oandzlaw.com

February 25, 2026

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

   Re: *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
     Plaintiffs' Reply in Support of Plaintiffs' Letter Motion (Dkt. 625) for Discovery Conference re Communications between the Pirates and Google Sales Representatives

[Redacted]

Dear Judge Moses,

  Plaintiffs write in support of their Motion for Discovery Conference regarding Communications between the Pirates and Google Sales Representatives, Dkt. 625 ("Mot."), and in response to Google's opposition letter, Dkt. 632 ("Opp.").

  Google does not contest (because it cannot) that communications between the 1,500 pirates who infringed the works-in-suit ("Pirates") and Google are relevant and discoverable. Communications Google had with the Pirates might reveal the efficacy of Google's DMCA Policy, the extent of Google's knowledge of the Pirates and infringements, and the scope of Google's material contribution of the infringements. For example, if these Pirates in fact were considered for suspension in accordance with Google's alleged ███████████████████████, but Sales Representatives worked to create loopholes and exceptions to avoid suspension or reinstate the Pirates' accounts, such communications clearly are highly relevant.

  Instead, Google predicts that many of the Pirates might not have had Sales Representatives, and guesses that if any Pirates did, those documents would be burdensome to produce. Neither argument is supported by logic or by the record.

  While Google rambles on for pages in its Opposition, Google fails to address three critical points: (1) Google has produced documents indicating that at least some of the Pirates *were* assigned Sales Representatives; (2) Google performed no investigation into if and how many Pirates had Sales Representatives; and (3) Google's failure to do so renders its vague prediction of burden unsubstantiated. The Court thus should give no credence to these groundless claims of hypothetical burden. The Court should order Google to produce documents in response to Plaintiffs' Request for Production 115—the communications between Google Sales Representatives and the 1,500 Pirates at issue in this case.

Hon. Barbara Moses
February 25, 2026
Page 2 of 5

I. **Google's documents reveal that at least some of the Pirates had Sales Representatives.**

Google first speculates that it is "unlikely" that the 1,500 Pirates communicated with a Sales Representative (defined as "sales representatives, account managers, account strategists, and other personnel to act as liaisons between Google and Shopping Ads merchants," Mot. at 1). Opp. at 2, 3. But Google's own documents show that at least some of the Pirates were assigned to an Account Manager, and that others held the kinds of Merchant Center accounts that likely *would* be assigned a Sales Representative.

First, Google produced a series of spreadsheets created and modified from 2021 to 2024 that ███████████████████████. Declaration of Attorney Jeff Kane ("Decl."), ¶¶ 3–5, Exs. A–B (GOOG-CENG-00416832 and GOOG-CENG-00426591).[1] These spreadsheets ██████████████████████████████████████████████ *Id.* But these spreadsheets *also* list out ██████████████████████████ *Id.*

These spreadsheets reveal that at least some of the Pirates had designated Account Managers. For example, one spreadsheet has data concerning ██ Merchant Center accounts of the 1,500 Pirates. Ex. A (GOOG-CENG-00416832). Of those ██, ██ had ██ Account Managers. *Id.*; Decl. ¶ 4. Another spreadsheet has data concerning ██ accounts of the Pirates. Ex. B (GOOG-CENG-00426591); Decl. ¶ 5. This document likewise shows that ██ of these accounts had an Account Manager. Decl. ¶ 5. Further, ██████████████████████ Ex. A (GOOG-CENG-00416832) (██████). Likewise, the ██████████████████████████████████. *Id.* Google easily can pull communications between ██████████████████████████████████.

Second, as described in Plaintiffs' Letter Motion, another type of account, "██████████████", often had Sales Representatives. Google's documents show that Sales Representatives may receive advance notice about potential suspensions for particular merchants, including ██. *See, e.g.*, Dkt. 624–03, at -8701 ██████████████████████). Of the Pirate accounts in this ██████████ Decl. ¶ 6. Thus, it is likely that at least some of these special Pirate accounts had communications with Sales Representatives.

Third, Google's documents likewise show that even where an account has reached ██, Google does ██████████████████. Dkt. 593-14 (if an account "██████████████████████████████████████████ rather than suspending the account). From data that Google has provided so far,

---

[1] Plaintiffs will file a motion requesting permission to provide these spreadsheets to the Court via email.

Hon. Barbara Moses
February 25, 2026
Page 3 of 5

████████████████████████████████████, Decl. ¶ 7, and so may have had communications with Sales Representatives.

## II. Google cannot sustain a burden argument because it has done nothing to investigate the potential burden.

As it has done throughout this case, Google argues that producing the discovery Plaintiffs seek would be burdensome, but provides no facts to substantiate that claim.

First, Google has done *nothing* to check whether any of the Pirates actually did have Sales Representatives. Indeed, as explained above, Google declined even to check its own *produced* documents indicating that these Pirates had Sales Representatives. Google merely hypothesizes that it is "unlikely" that the Pirates would have had Sales Representatives. Opp. at 4.

Google's documents, however, show that Google may be able to check whether a particular account has an assigned Account Manager. GOOG-CENG-00408100, at -8123 (for the Google Play platform, ████████████████████████████████████████████████████████████████████████████████████████. Another Google document reveals an FAQ page that explains that "If you have a Google Shopping account manager, you can reach out to them. If you don't know the name of your account manager or are not sure if you have one, please fill in this form and we will get back to you within 1-2 business days." GOOG-CENG-00000677, at -0682. But Google refuses to check this, or any, databases. Decl. ¶ 8.

Google then predicts that if any of the Pirates did have a Sales Representative, it would be burdensome to produce the communications between the Pirate and the Representative. Opp. at 4. As usual, this claim is unsupported by any facts, and Google provide no hit reports. Google's claim also is contradictory. While Google goes lengths to explain that it is "unlikely" that the Pirates would have Sales Representatives, Google then argues that it would be burdensome to collect these files. *Id.* If, in fact, Google is right that few Pirates would have communicated with Sales Representatives, it should not be burdensome for Google to search for and collect the relevant communications.

Then, Google takes the very convenient position that if one of the Pirates had a Sales Representative, then the Sales Representative would have communicated with one of the existing custodians in this case. *Id.* at 2. Google's speculation (about communications Google itself has) is not a basis to find that the discovery Plaintiffs request is burdensome. This Court has warned Google repeatedly that "it's your burden to show burden, Google . . . ." Dkt. 223 at 105:12–13 (Hr'g Tr. Oct. 14, 2025); Dkt. 218 at 67:11–12 (Hr'g Tr. Oct. 8, 2025) (same). But Google once again has ignored that warning.

Lastly, relying on its two-sentence description of its alleged burden, Google resorts to requesting cost-sharing. Dkt. 632 at 4. Google claims the "burden" it fails to establish necessitates cost-sharing, based on a twenty-year-old decision, *Zebulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003). Google leaves out that in that case, the court explained that "[t]he burden or expense of discovery is, in turn, 'undue' when it 'outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *Id.* at 318 (quoting Fed. R. Civ. P. 26(b)(2)(iii)). Here, the possible statutory damages for the

copyright claim alone are over $1 billion. And Plaintiffs' request for this discovery is critical, as it involves Google's direct communications with the very pirates who committed the direct infringements at issue. Moreover, both the Copyright Act and the Lanham Act provide that costs and attorneys' fees may be awarded to the prevailing party at the conclusion of a case. 17 U.S.C. § 505; 15 U.S.C. § 1117(a). There will be ample time to litigate cost-shifting at the conclusion of this case, by which point the Court will be able to see what documents Google resisted producing.

### III. Plaintiffs' motion is timely.

Contrary to Google's complaints, Plaintiffs' Request for Production 115 is timely.

Google's efforts to invoke a Request for Production (RFP 29) that was served and negotiated between the parties *months* before Google even made its first custodial productions are unproductive and misguided. As Plaintiffs explained in their Motion, Google proposed producing certain documents in response to RFP 29, months before Google produced a single document. Google asks the Court to believe that at that time, Plaintiffs agreed that no matter what Google's subsequent document productions revealed, Plaintiffs would make no further request for communications between Google and the Pirates. This is facially incorrect.[2] Plaintiffs issued RFP 115 in December of 2025, after reviewing Google's document production and observing the critical role that Sales Representatives played in preventing or reversing suspensions for copyright infringement. Decl. ¶ 9. Indeed, all of the documents Plaintiffs received regarding Sales Representatives came from Google's *custodial* productions (many of which continued to be produced as late as February 6, 2026), not the notice data that Google completed in June 2025, Opp. at 3. Decl. ¶ 10.

Further, Google conflates Plaintiffs' Sales Representatives and a Pirate's Sales Representatives. As mentioned in Plaintiffs' Motion, Google's custodial documents revealed that Sales Representatives provided help and advice when a merchant committed copyright infringement. Google's custodial productions revealed what happened behind the scenes at Google when a Sales Representative's client was suspended for copyright infringement, and the extensive work and process it takes to have that client reinstated despite the client's copyright infringement. Plaintiffs have not had, nor have they needed to have, communications requesting and receiving advice from their Sales Representatives about committing copyright infringement on Shopping, because they are the *victims* of copyright infringement, not the perpetrators of it. Only through Google's custodial productions did Plaintiffs learned of the role of a *Pirate's* Sales Representative, and the work, effort, and procedures that these Sales Representatives endeavor to help their infringing clients navigate and solve copyright infringement issues for them.

### IV. Conclusion

The Court should order Google to produce documents in response to Plaintiffs' Request for Production 115.

---

[2] Indeed, Plaintiffs continue to confer with Google concerning its failure to produce all the documents it did agree to produce in response to RFP 29.

Hon. Barbara Moses
February 25, 2026
Page 5 of 5

                                      Respectfully submitted,

                                      */s/ Jeff Kane*
                                      Jeff Kane