**Sarah A. Tomkowiak**
Direct Dial: +1.202.637.2335
sarah.tomkowiak@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

**LATHAM & WATKINS LLP**

February 27, 2026

**VIA ECF**

The Honorable Barbara C. Moses
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, New York 10007

> Re: *Cengage Learning, Inc. et al. v. Google LLC*, No. 1:24-cv-04274-JLR-BCM: Defendant's Response to Plaintiffs' Letter Motion for Discovery Conference (Dkt. 650)

Dear Judge Moses:

Plaintiffs' latest Letter Motion ("Motion"), Dkt. 650, makes untimely, duplicative, and disproportionate requests. Instead of preparing for depositions, Plaintiffs have filed another untimely motion to compel (their fourth in six weeks). This one seeks custodial discovery Plaintiffs should have requested months ago and relies on gross mischaracterizations of Google's document review efforts—efforts that have produced *terabytes* of data, including nearly 20,000 documents across 15 custodians—to demand improper discovery on discovery. The Court should deny Plaintiffs' Motion.

**I.     Plaintiffs' Request for Two Additional Custodians Is Untimely and Unjustified.**

Plaintiffs first move to add ▮▮▮▮▮▮▮▮▮▮ and another engineer as custodians. This request is untimely because it comes more than *six* months after Google produced thousands of documents addressing the topics Plaintiffs now allege have "gaps." *See* Dkt. 553, Jan. 20, 2026 Hr'g Tr. 131:11-17 (Court: I am required at this point to balance in a holistic manner not only the traditional Rule 26(b) factors … but also burden and also timing. Was the motion made when it should've been made? Were the plaintiffs as surgical as they should've been given how late in the day the motion was made and so forth?"). Plaintiffs also never conferred with Google regarding this specific requested relief.

▮▮▮▮▮▮▮▮▮▮ During a conferral in January and through several email exchanges, Plaintiffs framed the instant dispute as a *discrete* request that Google add ▮▮▮▮▮▮▮▮▮▮ as a custodian and run <u>two</u> search terms against his documents. Declaration of Sarah Tomkowiak ("Decl."), Ex. 1 at 9-11. Plaintiffs reasoned that Google should produce additional documents from Mr. ▮▮▮▮▮▮ because Plaintiffs "recently" discovered Mr. ▮▮▮▮▮▮'s role related to (1) Google's ebook ban and (2) monitoring ▮▮▮▮▮▮▮▮▮▮ accounts. *Id*. Google explained that

**LATHAM&WATKINS**LLP

Plaintiffs could not in good faith claim they were unaware of Mr. ▮▮▮▮ and his role earlier, given that the majority of the documents cited in support of their request was produced by August 15, 2025 *and* the parties had explicitly discussed Mr. ▮▮▮▮ as a document custodian in October and November 2025—after which *Plaintiffs agreed* that Google would add ▮▮▮▮ as a custodian in lieu of Mr. ▮▮▮▮ and others. *Id.* at 7-8; *see also* Decl. ¶¶ 3-11.

Plaintiffs now, for the first time, ask the Court to add Mr. ▮▮▮▮ as a full custodian and run <u>all</u> agreed-upon or court-ordered search terms across his documents. Even if Plaintiffs' request was timely (it is not), they have failed to demonstrate that Mr. ▮▮▮▮ is likely to possess unique responsive documents. Mr. ▮▮▮▮'s role overlaps with several existing Google custodians with knowledge of the ebook ban and exit, including Ms. ▮▮, Mr. ▮▮▮▮ and Mr. ▮▮; consequently, further discovery would be redundant and unlikely to yield new information. The documents Plaintiffs cite underscore that, to the extent he possesses relevant documents outside of the ebook ban context, he worked closely with other current custodians on those issues. *See* GOOG-CENG-00475826 (email copying ▮▮▮▮ and Mr. ▮▮▮▮ regarding infringement of an ebook on the Shopping platform).[1]

▮▮▮▮ ***Custodian.*** Plaintiffs' demand that Google produce a custodian from its ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ("▮▮▮▮") team is also untimely and unsupported. Plaintiffs do not argue they were previously unaware of the ▮▮▮▮ team or the role of engineers at Google. Countless documents from Google's August 2025 productions describe the role of Google engineers and the ▮▮▮▮ team, including two documents that Plaintiffs cite in their Motion.[2] These documents either (1) show that engineers work collaboratively with several existing custodians, including ▮▮▮▮ and Jake Erlick, or (2) are irrelevant because they relate to other Google platforms (i.e., Search). *See, e.g.*, GOOG-CENG-00600119 (listing Ms. ▮▮ and Mr. Erlick as contributors to a memorandum regarding ad takedowns along with ▮▮▮▮ individuals); GOOG-CENG-00477908 (relating to ▮▮▮▮'s work for the Search platform).

Google's existing custodians and search terms (coupled with its extensive non-custodial productions) are more than sufficient to capture documents related to "processing Plaintiffs' infringement notices, terminating the pirates at issue, and developing the structure of the Shopping platform." Mot. at 4. Documents discussing Google's purported technical difficulties in implementing its DMCA policy, *id.*, have been produced.

To support their unreasonable demands, Plaintiffs cherry-pick language and grossly mischaracterize Google's documents. For instance, Plaintiffs cite language that ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Decl. Ex. 3, as though it reflects Google's organizational structure, when the document plainly expresses the Trust & Safety team's concern that Engineering was misperceiving—not accurately describing—the respective teams' roles and responsibilities. Further, Plaintiffs cannot justify adding an unnamed custodian based on

---

[1] GOOG-CENG-00418700 (duplicate of GOOG-CENG-00475826) was also produced over six months ago, by the August 15, 2025 deadline. Decl. ¶ 19.

[2] GOOG-CENG-00418050 and GOOG-CENG-00434790, *see* Mot. at 4, were produced on or before August 15, 2025.

documents suggesting that the ▨▨▨ team experienced "▨▨▨▨▨▨▨▨▨▨▨▨." Mot. at 4.

Finally, Plaintiffs' Motion fails to articulate any factual or logical connection between their demand that Google add two additional custodians and the purported "errors" they claim occurred in Google's document review and production process (which were not errors at all, *see infra*). Plaintiffs' efforts to intertwine these unrelated topics underscore the lack of merit in their latest requests.

## II. Plaintiffs Fail to Justify Any "Discovery on Discovery."

Plaintiffs try to obscure the untimeliness of their Motion and support their request for retention policies, hit counts, and source lists with a litany of inaccurate claims regarding Google's productions. That effort should fail. Plaintiffs have known about several of these purported issues for months. They have even raised some of them with the Court (unsuccessfully) in connection with other disputes. None of these purported issues justifies Plaintiffs' extraordinary request for improper "discovery on discovery."

*First*, as discussed at length during the January 20, 2026 and February 9, 2026 hearings, the sole AAP email that Plaintiffs admonish Google for not producing from the files of ▨▨▨▨ and ▨▨▨▨▨▨▨ predates the commencement of this litigation by *two* years. Because neither custodian was under a preservation obligation at that time, the document's absence is the expected result of most any standard corporate retention policy. Decl. ¶ 14. The Court already heard Plaintiffs' argument regarding this document and ordered Google to run Plaintiffs' proposed "AAP" search term across an additional custodian's documents. Hr'g Tr., Dkt. 614, at 131:18-23 (Jan. 20, 2026). Plaintiffs have already obtained relief on this issue, and have identified no compelling reason for Google to produce its document retention policy in connection with this dispute. This request clearly constitutes inappropriate discovery on discovery. *Carambot v. NYC Health & Hosps. Corp.,* 2026 WL 112119, at *1 (S.D.N.Y. Jan. 14, 2026) (Moses, J.) (denying request for discovery on discovery and noting Courts must "'closely scrutinize' requests for discovery on discovery, 'in light of the danger of extending the already costly and time-consuming discovery process ad infinitum'"). But if the Court is inclined to permit such discovery, then Plaintiffs, too, should be ordered to produce their retention policies, in light of the fact that at least one Plaintiff failed to preserve relevant documents. *See* Dkt. 379.

*Second*, Plaintiffs' complaint regarding Google's retention of records related to ads data is eight months too late, as the parties discussed this issue in July 2025 (and have not meaningfully discussed it since). This complaint relates to a dynamic Google database that, due to the immense size of the data, is designed to regularly free up space by releasing stale ads data for deleted accounts in the ordinary course of business. The Parties' stipulated ESI Protocol makes this data presumptively inaccessible and relieves Google's obligation to preserve it. Dkt. 80 ¶ 2(f)(ix) (defining "Presumptively Inaccessible Data" to include "dynamic fields of databases or log files that are not retained in the usual course of business"); id. ¶ 6 ("[T]he Parties agree that there is no need to preserve Presumptively Inaccessible Data as a result of this litigation[.]"). Plaintiffs' speculation that they might have incomplete records of ads data for the works-in-suit is belied by the terabytes of ads data Google has produced, and, at any rate, provides no basis for any

"discovery on discovery."

*Third*, as Google explained to Plaintiffs, a vendor error only recently identified to Google caused a small set of documents (around 500) to be produced after the original August 15, 2025 deadline, but before the later-ordered January 6, 2026 custodial production deadline. Decl. ¶ 16. When Google investigated this issue, it identified another small set of 117 documents that had not been reviewed (and therefore were not produced) due to a vendor error. *Id.* Google has already remedied this issue, confirmed it did not impact any other aspect of its review, and produced those additional documents. Plaintiffs have not been prejudiced.

*Fourth*, Google did not run two "wrong" search terms. Mot. at 2-3. Regarding Plaintiffs' first allegation, both parties have long understood that Google accidentally applied an older version of Search Term 7, rather than a subsequent modification agreed to by the parties. This discrepancy was not hidden—Google's hit count provided to Plaintiffs in July 2025 included the older, non-modified version of Search Term 7. Decl. ¶ 13. Plaintiffs agreed that this older, non-modified version of Search Term 7 was the correct search term in emails through November 2025. *Id*. The parties later discovered the discrepancy and, to avoid burdening the Court, Google agreed to run modified Search Term 7 and produce responsive documents by the January 6, 2026 deadline (and did). *Id*. There was no prejudice to Plaintiffs. Regarding the '███████' search term, Google inadvertently included the word "policy" in the search term string in *email* correspondence sent to Plaintiffs prior to the production deadline. As Plaintiffs know, Google ran the *correct* version of the '██████' search term across its documents, and produced those documents in advance of the January 6, 2026 deadline. Plaintiffs' attempt to use a small *email* drafting mistake that had no practical impact on Google's search or production to demand yet more discovery is disappointing.

### III. Plaintiffs' Inexcusably Belated Demands Are Disproportionate and Duplicative.

Setting aside their untimeliness, Plaintiffs' demands for two additional custodians, retention policies, hit counts, and source lists are grossly disproportionate to the needs of this case. Rule 26(b)(1) requires the Court to consider, among other factors, "the importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Plaintiffs' requests fail on both. Google has produced almost 20,000 custodial documents to date spanning 15 custodians, three aliases, and 15 complex search strings—and this on top of terabytes of non-custodial data.[3] Plaintiffs do not (and cannot) demonstrate that discovery from these newly proposed custodians is important and unique enough to justify the substantial burden of adding them at this late stage. Nor have Plaintiffs shown that any marginal

---

[3] Plaintiffs' complaint that Google failed to produce documents concerning what they deem "important areas of the case," Mot. at 1, is hypocritical, given that each Plaintiff had produced fewer than 300 documents as of the date of their Motion. *See also* Dkt. 654. Aside from the fact that Plaintiffs' numbers underrepresent the actual volume of documents Google produced, Plaintiffs' grievance that Google produced too few documents for certain search terms and from one custodian is logically flawed: it is a completely normal aspect of discovery that different search terms will yield different results across different custodians. And Plaintiffs' complaint rings hollow given that they have failed to produce a single document for *seven* of their own custodians. *See* Dkt. 582 at 3.

**LATHAM&WATKINS**LLP

benefit of hit reports, source lists, or retention policies outweighs the burden of compiling such materials.

\* \* \*

Plaintiffs cannot justify their laundry list of demands, almost none of which were previewed to Google in a pre-motion conferral consistent with Paragraph 2(b) of the Court's Individual Practices. The Court should not permit Plaintiffs' blatant gamesmanship and should deny their Motion.

Respectfully submitted,

*/s/ Sarah A. Tomkowiak*
Sarah A. Tomkowiak (*pro hac vice*)
of LATHAM & WATKINS LLP

cc: All Counsel of Record (via ECF and e-mail)