IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; ELSEVIER INC.; ELSEVIER B.V.; and MCGRAW HILL LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>GOOGLE LLC,<br><br>*Defendant*. | Case No. 1:24-cv-04274-JLR-BCM |

**ATTORNEY DECLARATION OF SARAH A. TOMKOWIAK**

I, Sarah A. Tomkowiak, declare that:

1. I am a partner at the law firm Latham & Watkins LLP, counsel for Google LLC ("Google") in this matter.

2. I submit this declaration in connection with Google's response to Plaintiffs' Letter Motion for Discovery Conference regarding Google's productions (Dkt. 650).

3. I am the recipient of a 6-page email thread between counsel for Google and counsel for Plaintiffs with the subject line "Cengage v. Google – 'PDF' and 'Ebook' Filters," which includes emails between October 16, 2025 and November 3, 2025.

4. On October 16, 2025, counsel for Plaintiffs Uriel Lee emailed counsel for Google regarding the Court's October 9, 2025 Order (Dkt. 217) instructing the parties to confer about search terms and potential custodians to identify documents about "pdf" and "ebook" filters. Ms. Lee listed ▌▌▌▌▌▌▌▌▌▌ as a potential custodian, along with ▌▌▌▌▌▌ and ▌▌▌▌▌▌▌▌ for this distinct issue regarding the Court's order. In this email, Ms. Lee stated "Plaintiffs understand

Mr. ▇ to have been a software engineer since April 2020. Google's documents show that Mr. ▇ was an engineer who was heavily involved in discussions regarding the ebook 'ban,' and would like to request feedback to see if Mr. ▇ would have the appropriate documents for RFP 65 [the pdf and ebook filters request]."

5. On October 17, 2025, my colleague Caroline Clarke emailed counsel for Plaintiffs regarding their proposed search terms to identify documents related to the "pdf" and "ebook" filters and responded that Google was investigating which custodian would be most appropriate to add for the sole purpose of running the negotiated search terms on this issue. Between October 21 and October 28, the parties negotiated regarding appropriate search terms to identify documents related to the "pdf" and "ebook" filters.

6. On October 22, 2025, the Parties conferred regarding the proposed search terms and custodians to identify documents related to the "pdf" and "ebook" filters. In an email to Google's counsel on October 23, 2025 summarizing this conferral, Ms. Lee stated that Plaintiffs "believe Mr. ▇ will be the appropriate custodian for this request, especially as he was directly involved with issues specifically regarding these features and emphasized that he '▇▇▇▇' in response to these inquiries" and cited a document produced by non-party VitalSource.

7. On October 29, 2025, Ms. Clarke emailed counsel for Plaintiffs with Google's proposed edits to the search terms for documents related to "pdf" and "ebook" filters. She also confirmed that, in light of its own investigation and insistence from Plaintiffs, Google would agree to add Mr. ▇ as a custodian for only the "pdf" and "ebook" filters search term.

8. On November 3, 2025, Ms. Lee responded that Plaintiffs accepted Google's proposal on search terms and custodian, Mr. ▇, to identify documents related to "pdf" and "ebook"

2

filters. Ms. Lee also stated that Plaintiffs believed that Mr. ██████'s role was related to more topics than just this filters issue, and requested that the parties discuss this further at an upcoming conferral regarding custodians.

9. On November 6, 2025, the parties conferred regarding Plaintiffs' and Google's custodians. During that conferral, in an effort to avoid burdening the Court, Google agreed to add Mr. ██████ as a custodian for all agreed upon or Court-ordered search terms, including the "pdf" and "ebook" filters search term, in exchange for Plaintiffs dropping their request for Google to add ██████ ██████, a software engineer, as a custodian.

10. I am the recipient of an email thread between counsel for Google and counsel for Plaintiffs with the subject line "Cengage v. Google – Additional Custodians," which includes emails between October 28, 2025 and November 18, 2025.

11. Plaintiffs accepted Google's offer to add Mr. ██████ as a custodian, and memorialized this compromise in an email on the "Cengage v. Google – Additional Custodians" thread on November 6, 2025 to counsel for Google, stating: "The parties agreed that Google will include ██████ as a custodian, in exchange for which Plaintiffs will withdraw their request for Google to add ██████ as a custodian." The parties did not discuss Google adding Mr. ██████ or a custodian from the ██████ team during this conferral or any corresponding emails, and Plaintiffs never requested that Mr. ██████ be added as a full custodian.

12. I am the recipient of an email thread between counsel for Google and counsel for Plaintiffs with the subject line "Cengage v. Google - Google Production Deficiencies," which includes emails between November 4, 2025 and February 26, 2026.

3

13. On December 4, 2025, Ms. Clarke emailed counsel for Plaintiffs on the "Cengage v. Google - Google Production Deficiencies" thread regarding a question, raised by Mr. Kane during a conferral on November 24 regarding an unrelated topic, about a search term that Google had run for its August 15, 2025 productions (Search Term 7). In her email, Ms. Clarke stated that Google confirmed that it had run an older version of this search term string, rather than a modified version later agreed to by the parties. Ms. Clarke explained that Google included the original version of Search Term 7 in a hit count provided to Plaintiffs on July 16, 2025, because Google believed that was the version that had been agreed to by the parties. Ms. Clarke stated that Plaintiffs' counsel did not flag any discrepancy in Search Term 7 based on that July 2025 hit count and affirmed their understanding of Search Term 7 to be the *original* version, not modified, in an email to Google's counsel on November 4, 2025. Ms. Clarke then reiterated that, to avoid burdening the Court, Google would run modified Search Term 7 and produce responsive, non-privileged documents to Plaintiffs by January 6, 2026. Google subsequently ran modified Search Term 7 and produced these documents as agreed to.

14. On January 7, 2026, counsel for Google received an email from Jeff Kane, counsel for Plaintiffs, that stated Plaintiffs had received an email chain concerning ebook piracy on Google Shopping, and asked why this document had not been produced by Google by January 6, 2026 when it appeared to Mr. Kane that it should have been located using Court-ordered search terms and custodians. On January 14, 2026, Ms. Clarke responded that the two referenced custodians "did not have a copy of this email in their files, which was received over two years before the commencement of this litigation when there was no obligation to preserve this email." On January 19, 2026, Mr. Kane requested that Google provide the "document retention policy pursuant to which Ms. [Chelsea] Fine's and Mr. Szczech's copies of this email were deleted." On January 23,

2026, Ms. Clarke declined to provide Google's document retention policy and further explained that "[g]iven most standard corporate retention policies, the document is too old to reasonably expect it to still be in a custodian's files." The parties did not confer regarding Google producing its document retention policy following Mr. Kane's request, but Mr. Kane asked additional questions about Google's response during a February 4, 2026 conferral about a separate issue.

15. I am the recipient of an email thread between counsel for Google and counsel for Plaintiffs with the subject line "Cengage v. Google - Missing Documents," which includes emails between January 20, 2026 and February 23, 2026.

16. On January 20, 2026, counsel for Google received an email from Mr. Kane on the "Cengage v. Google - Missing Documents" thread that included a list of documents that Plaintiffs purport should have been produced by August 15, 2025 from then-existing custodians and search terms, but were later produced by Google by the January 6, 2026 deadline. On February 23, 2026, counsel for Google completed their investigation of these allegations, and Ms. Clarke responded to Mr. Kane that these documents had not been previously produced in August 2025 due to a vendor error. In her email, Ms. Clarke confirmed that Google had further investigated whether there were any other issues with Google's vendor promoting documents, from all search terms and custodians, to be reviewed and produced. Ms. Clarke informed counsel for Plaintiffs that Google had identified a small set of about 100 documents that had not been reviewed or produced due to vendor error, and that Google would produce by February 27, 2026. Google produced those 117 documents on February 25, 2026.

17. I am also the recipient of an 11-page email thread between counsel for Google and counsel for Plaintiffs with the subject line "Cengage v. Google - Deposition Notice" between January 27, 2026 and February 24, 2026. A true and correct copy of this email thread is attached as **Exhibit 1**.

18. On January 27, 2026, Ms. Lee sent counsel for Google a notice of deposition for Mr. ▮▮▮▮. In this email, Plaintiffs also requested that Google run two search terms over the custodial files of Mr. ▮▮▮▮, because Plaintiffs "discovered for the first time in Google's December 23rd production that Mr. ▮▮▮▮ led the 'design and/or implementation of several initiatives for Shopping Ads' and listed 'eBook category exit" as one of his 'accomplishments.'" Plaintiffs requested that Google run the following search terms:

    i. Proposed Term 1: (ebook* OR e-book* OR "digital book" OR "digital books" OR (digital* w/3 book*) OR textbook* OR "text book*" OR etextbook OR "e-textbook") AND (shopping OR pirate* OR piracy OR infring* OR DMCA OR takedown OR remov* OR escal* OR cluster OR overflag* OR underflag* OR ▮▮▮▮▮▮" OR ▮▮▮▮*")

    ii. Proposed Term 2: (Cengage OR Macmillan OR Elsevier OR "McGraw Hill" OR Pearson OR "O+Z" OR "Oppenheim + Zebrak" OR (Oppenheim PRE/2 Zebrak) OR "Association of American Publishers" OR AAP OR publisher*) AND ("allow list" OR allowlist* OR "white list*" OR whitelist* OR ban OR ebook OR "e-book" OR "digital book"OR exit)

19. On February 2, 2026, counsel for Google responded to Plaintiffs' request that Google add these two search terms for Mr. ▮▮▮▮. Google's counsel explained that Plaintiffs possessed several of the documents cited in their request (or duplicates/near duplicates) since at least August 15, 2025, and were aware of Mr. ▮▮▮▮ and his role since at least October 2025. Google's counsel also explained why Mr. ▮▮▮▮ was unlikely to possess unique documents beyond what has been produced from other Google custodians.

20. On February 4, 2026, the parties conferred regarding Plaintiffs' request that Google run two search terms over Mr. ▮▮▮▮'s custodial files. Plaintiffs did not further justify their request that Google run these terms, nor address the timeliness concerns. Plaintiffs also did not request that Google add Mr. ▮▮▮▮ as a custodian for all search terms (or for any additional search terms beyond what they included in their January 27 email).

21. Attached as **Exhibit 2** is a true and correct copy of GOOG-CENG-00477908.

6

22. Attached as **Exhibit 3** is a true and correct copy of GOOG-CENG-00468131.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

Executed on February 27, 2026, in McLean, Virginia.

/s/ *Sarah A. Tomkowiak*
Sarah A. Tomkowiak
