

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
jkane@oandzlaw.com

March 2, 2026

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

      Re:    *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
              **Status Update re Google's Selection of 300 Domains for Testing**

[Redacted]

      On February 16, 2026, Plaintiffs filed a Notice concerning Google's selection of 300 domains to test its overall DMCA program. Dkt. 609. Plaintiffs write here to provide a further update on that discovery.

      As the Court knows, Google's stated DMCA policy calls for websites ▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 238-5 (GOOG-CENG-00000683).

      In December 2025, the Court ordered that for the purpose of testing Google's overall DMCA program (i.e., Google's implementation of its ▮ strike policy outside of the 1,500 pirate websites that infringed the works-in-suit), Google would select randomly 300 websites and produce certain documents concerning those sites. Dkt. 472.

      It now appears that for 31 of the 300 sites that Google selected, Google ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ These 31 sites apparently are ones that Google considers "marketplace" domains, presumably meaning the sites (like ▮ or ▮) allow users of the site to sell the user's products. During a February 26, 2026 meet-and-confer, Google's counsel reported to Plaintiffs that counsel expects that Google ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

      Despite having almost no information to share concerning what Google did with notices from these sites, Google wishes to exclude these sites *entirely* from Google's selection of 300 websites. That is, Google wishes to replace these 31 sites with other sites to which Google expects it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This of, course, would stack the deck unfairly in Google's favor. The purpose of selecting 300 domains is to test whether Google reasonably implemented its ▮ strike program. Omitting from the selection the very sites ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ not only would render the "random" selection not random

Hon. Barbara Moses
March 2, 2026
Page 2 of 2

at all, but would deprive the factfinder of evidence of whether Google actually did implement its ▮-strike policy.

  Plaintiffs have encouraged Google to share with Plaintiffs, and with the Court, information about what Google claims to do with "marketplace" websites like these. Only with that information can the parties determine what is the most appropriate way to test Google's conduct with respect to notices about these sites. Perhaps Google can enter into a stipulation concerning what it did (or didn't do) with notices from these marketplace sites and others like them. Perhaps ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ makes a different form of discovery more appropriate. Or perhaps the original plan of producing the notices, ads, and suspension information concerning these sites remains the best option.

  Plaintiffs are hopeful that Google will engage with Plaintiffs to work out this issue. Because Google failed to meet and confer with Plaintiffs until February 26, however, Plaintiffs are concerned that Google plans not to meet the Court's March 6, 2026 production deadline.[1]

  Plaintiffs will provide another update to the Court in the March 5 joint status report (Feb. 9 Order).

/s/ <i>Jeff Kane</i><br>
Jeff Kane<br><br>
<i>Counsel for Plaintiffs</i>

---

[1] Unfortunately, Google also disclosed to Plaintiffs on February 26 (more than two months after the Court ordered this discovery) that it likewise wishes to exclude two more of the 300 sites. Plaintiffs are attempting to work with Google on this issue as well.