

Michele H. Murphy
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.450.5643
michele@oandzlaw.com

March 5, 2026

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

      Re:   *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
              Parties' Joint Status Letter

[Redacted]

Dear Judge Moses,

      Pursuant to Your Honor's Order (Dkt. 610) and in advance of the upcoming March 10, 2026 discovery conference, counsel for all parties respectfully submit this Joint Status Letter.

**I.**     **Joint Section**

      The discovery motions pending before the Court are identified in the below chart.

| Motion | Docket Nos. (Opening, Opposition, Reply) |
|---|---|
| Pls' Motion re: Google's Privilege Assertions | Dkts. 590, 615, 643 |
| Pls' Motion re: Communications Between Pirates and Google's Sales Reps | Dkts. 625, 632, 683 |
| Pls' Motion re: Gaps in Google's Productions | Dkts. 650, 692, 706 |
| Google's Motion re: Plaintiffs' Clawed-Back Documents | Dkts. 689, 718, reply forthcoming on 03/06/2026 |
| Pls' Motion re: Hyperlinked and Referenced Documents in GOOG-CENG-00437101 | Dkts. 697, 716, reply forthcoming on 03/06/2026 |

**II.**     **Plaintiffs' Section**

**Plaintiffs' Document Productions**

      Since the last joint status report, and pursuant to the parties' compromise regarding Dkt. 287, Plaintiffs have produced over 1,900 additional documents in rolling productions for 22 custodians. In total, Plaintiffs have produced over 453,000 documents, including over 5.1 million pages and voluminous native documents, constituting approximately 977 GB of data. Certain Plaintiffs' interrogatory responses provide Bates numbers of produced documents that correspond to certain subjects. Providing this information has been a labor-intensive process. Plaintiffs have

agreed to update these responses, as needed, promptly after completing their custodial productions on March 6.[1]

Google's accusations regarding Plaintiffs' document production ignore the many thousands of documents that Plaintiffs have diligently reviewed, their extensive non-custodial production, and Plaintiffs' repeated explanations that many of the additional custodians and expanded search terms Google demanded were unlikely to yield new relevant information. Google has also attempted improperly and unsuccessfully to expand the scope of discovery to irrelevant platforms to burden Plaintiffs and attempt to deflect from its own illegal conduct. Plaintiffs cannot make relevant responsive documents exist that don't exist. And Plaintiffs' conduct is not on trial; the bulk of the evidence in an infringement case comes from the infringer.

**Google's Document Productions**

Plaintiffs' four pending motions to compel detail the significant gaps in Google's productions. *See* Section I, supra. But Google continues to take unreasonable positions in other areas as well.

First, in December, the Court ordered Google to select 300 infringing websites at random and produce documents concerning them, in order to test Google's implementation of its stated ■-strike policy beyond the 1,500 pirate websites that infringed the works-in-suit. Dkt. 472. Google now seeks to exclude from that selection 31 "marketplace" domains to which Google did *not* apply its ■-strike policy. Excluding those domains is not appropriate. Plaintiffs refer the Court to Plaintiffs' recent status update on this issue, Dkt. 702, for more details. Just this morning, Google informed the Court that even for the remaining domains that are not in dispute, Google still will not be meeting the Court's March 6 deadline. Dkt. 274 at 3–4.

Second, where certain produced documents contain hyperlinks to other relevant documents, Plaintiffs have asked Google to produce the hyperlinked documents. Google has taken the position that although it "expect[s] this process to be completed by March 6," "there is no deadline for Google to produce documents in response to these discrete hyperlink requests." Plaintiffs' position is that these documents are due March 6.

Third, Google refuses to produce a document instructing vendors who worked in Google's Legal Removals group on how to handle privileged information. GOOG-CENG-60420643. Given the significant issues with Google's privilege designations (Dkts. 590, 615, 643), this document will shed light on what materials Google considers privileged.

Fourth, during the January 20 hearing, Google's counsel represented that Google had or would produce the individual or business names of the 1,500 pirates who infringed the works-in-suit, Hr'g Tr. 77:5–79:3 (Jan. 20, 2026). And indeed, Judge Rochon ordered Google to disclose the "legal name" and "name" of these merchants more than a year ago. Dkt. 76 ¶ 1; Dkt. 72 at 2; Dkt. 76 ¶ 1. Yet Google still has not produced these names for all 1,500 pirates.

Fifth, Plaintiffs expect move for the issuance of letters rogatory from this Court to facilitate the deposition of two former Google employees who live abroad.

---

[1] The parties disagree with respect to the number of interrogatories each side has served. Plaintiffs will attempt to resolve the dispute with Google, but anticipate seeking relief if the parties cannot reach agreement.

The parties also continue to confer on other important gaps in Google's productions. These issues include information on Google's tracking of infringing URLs and ads, and communications between Google and the 1,500 pirates.

**Google's Request for Extension**

Google's request to extend discovery deadlines is unwarranted. Google would only use any extension to delay scheduling depositions.

After claiming it needed Plaintiffs' 30(b)(6) notice before scheduling any depositions (to ensure that fact and 30(b)(6) depositions could occur at the same time), Google now has scheduled eight fact depositions without scheduling any 30(b)(6) depositions. Nor has Google served objections/responses to Plaintiffs' 30(b)(6) notice, or even disclosed its 30(b)(6) witnesses. And Google has yet to provide deposition dates for four of its witnesses. Plaintiffs, meanwhile, have made two authors available for depositions that already have occurred, and two more are forthcoming; scheduled eight depositions of their own employees; served their Objections & Responses to Google's 30(b)(6) notice; conferred with Google's counsel about those objections; and designated witnesses for most of Google's topics.

Google cites possible additional document production as a reason for extending the schedule. But Google's document production remains outstanding because Plaintiffs have been forced to move to compel discovery that Google should never have resisted. And Plaintiffs' document production provides no basis to extend discovery.

Plaintiffs thus suggest that the Court leave the current discovery schedule in place and schedule a status update or conference for early April. At that time, if Google has made meaningful progress in completing its discovery, the Court can evaluate whether an extension nonetheless is warranted. However, given Google's conduct thus far, extending the schedule now would only allow Google to continue delaying Plaintiffs' depositions of Google's witnesses.

**Deposition Platform**

Google insists that remote depositions must be conducted via Google Meet, rather than Zoom. This is problematic, as Plaintiffs' court reporting services do not provide support for technical problems that will arise with the Google Meet platform. Given the high number of depositions and exhibits, Plaintiffs think it prudent to use Zoom for depositions they are taking.

**III.    Defendant's Section**

*Document Production*. The day before the document-production deadline, Plaintiffs' custodial production remains so sparse that it raises serious questions about whether Plaintiffs made any meaningful effort to comply with their discovery obligations. The median number of documents per custodian is 32—three custodians have none.[2] Plaintiffs produced 63% of their custodial documents within the past eight days. This inexcusable delay has prejudiced Google's preparation for depositions. *See* Dkt. 654. Plaintiffs have apparently planned to jam Google with a significant number of documents at the last minute, withhold meaningful custodial discovery,

---

[2] Cengage's custodial production is the most deficient. Its four custodians have produced 258, 6, 3, and 0 documents, respectively. The deposition of the Cengage custodian with 3 documents is set for April 9. By comparison, the median number of documents per Google custodian is over 400.

3

and/or use overly narrow search terms (or an overly narrow view of responsiveness)—all while running out the clock on Google's ability to seek relief. *See id.*[3]

Certain of Plaintiffs' interrogatory responses provide Bates numbers of *non-custodial* documents. All such documents should have been produced by January 6; Google is perplexed by Plaintiffs' claim that updates to their interrogatory responses based on the completion of their *custodial* productions are forthcoming.

*Depositions*. Google is concerned that it will not have time to adequately review Plaintiffs' latest custodial documents, including to raise disputes over deficiencies, prior to Plaintiffs' depositions commencing on March 17. Google is also concerned that the breadth of Plaintiffs' 30(b)(6) notice will make it challenging to move forward with depositions of Google employees. Plaintiffs' 30(b)(6) notice includes 73 topics (not including subparts). Many Google deponents will also be corporate designees. Google's (and Plaintiffs') position is that employees deposed in individual and corporate capacities should be deposed once. Google has nonetheless begun scheduling its employees' depositions, and intends to serve its objections shortly. If the parties cannot reach agreement on a reasonable scope of 30(b)(6) topics, Google will seek relief from the Court, which may include a request to postpone certain depositions of dual capacity witnesses.

*Remote Deposition Platform.* On the eve of party depositions, Plaintiffs raise an issue conclusively resolved by the Protective Order. That Order is clear: "If Confidential Discovery Material is to be used during a deposition, the *Producing Party* shall be permitted to specify the technology and instance to be used to conduct the deposition ...." Dkt. 82 ¶ 35 (emphasis added). Google has offered to make its witnesses available for in-person depositions; Plaintiffs' choice to take (so far, just one) deposition remotely and their belief that using Zoom instead of Google Meet is "prudent" does not negate the Protective Order. Moreover, Google used Google Meet for four third-party depositions and countless depositions in other lawsuits without issues. Plaintiffs once again attempt to manufacture a dispute as a litigation tactic.

*Sampling*. Google refers the Court to its response to Plaintiffs' latest "status update" about the sample (Dkt. 724). As previewed at the February 9 hearing, Google has encountered unforeseen complications related to the sampling exercise ordered by the Court at Dkt. 472. As detailed in Google's response, Dkt. 724, Google requests until March 30 to comply with the Court's sampling order with respect to the 266 domains not in dispute (with the Court's permission, omitting the data for which European users have submitted objections). For the remainder of the sample, Google respectfully requests a conference with the Court.

*Case Schedule*. Since August 5 (10 days before the original close of document discovery), Plaintiffs have filed 13 discovery motions, raising 23 discrete issues that sought additional custodians, search terms, and non-custodial data. Rather than document discovery winding down since the extended January 6 close of document discovery, it has significantly ramped up, with massive data pulls and weekly (or twice-weekly) motion practice—and no party depositions have occurred. Indeed, Plaintiffs anticipate filing *even more* motions regarding document discovery.[4]

---

[3] Google notes that Plaintiffs' document and page counts appear to be materially inaccurate and inflated.

[4] One of these "anticipated motions" focuses on "the names" of the "1,500 pirates" that Plaintiffs claim "Google still has not produced." This is untrue. On February 6, Google produced the

4

Hon. Barbara Moses<br>
March 5, 2026<br>
Page 5 of 5

The parties have approximately 40 business days remaining to complete document discovery (including any additional discovery ordered by the Court in response to existing or yet-to-be-filed motions) *and* take and defend about 40 depositions. The parties have scheduled approximately 16 party-related depositions to take place in March and April (and subpoenaed at least 16 third parties for depositions), but have many more party depositions to schedule (including some outside the U.S.) (including others that Plaintiffs plan to request via the issuance of letters rogatory, a notoriously slow process).

Given the ongoing nature of document discovery, the difficulty the parties have had in scheduling depositions, the number of depositions yet to be discussed or scheduled, the anticipated dispute over the scope of Plaintiffs' 30(b)(6) notice to Google, and the depositions to take place abroad, Google does not think it is realistic that the parties will be able to complete all noticed and subpoenaed depositions by May 6, 2026, and feels it is sensible to raise that concern now (rather than at a status conference in April, as Plaintiffs propose).

Google thus respectfully requests a conference with the Court to discuss the case schedule.

Respectfully submitted,

| | |
|---|---|
| /s/ *Sarah A. Tomkowiak* | /s/ *Michele H. Murphy* |
| Sarah A. Tomkowiak | Michele H. Murphy |
| Latham & Watkins LLP | OPPENHEIM + ZEBRAK, LLP |
| *Counsel for Google* | *Counsel for Plaintiffs* |

---

business names of all Ads accounts connected (via Merchant accounts) to the 1,500 at-issue domains as they appear in the Ads Transparency Center. And Google confirmed to Plaintiffs on February 17 that there is no other merchant or business name field for Merchant accounts beyond the "customer name" field already produced.