

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
jkane@oandzlaw.com

March 6, 2026

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

    Re:    *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
            Reply ISO Plaintiffs' Letter Motion (Dkt. 697) for Discovery Conference
            Regarding Hyperlinked and Referenced Documents in GOOG-CENG-
            00437101

[Redacted]

Dear Judge Moses,

    We represent all Plaintiffs in this matter. We write in support of Plaintiffs' Letter Motion for Discovery Conference Regarding Hyperlinked and Referenced Documents in GOOG-CENG-00437101 (Dkt. 697) ("Mot.") and in response to Google's opposition (Dkt. 716) ("Opp.").

    The ███████ described in the Erlick Email (Dkt. 698-1) was a major issue. Google received infringement notices identifying approximately ███████. Dkt. 698-1 at -7102. ███████ *Id.* ███████

    Not only was the ███████ a major issue for Google, it is an important issue for this case because Plaintiffs experienced the same problem with Google's response to their own notices. That is, Plaintiffs sent notices about Shopping ads, Google responded that the ads would be removed, but the ads (and the pirates who initiated them) continued to appear on Google Shopping. Dkt. 697 at 2. Indeed, the complaint from a rightsholder that led Google to discover the ███████ reads like it could have been pulled from Plaintiffs' complaint: ███████ Dkt. 698-1 at -7101.

    In its Opposition, Google's counsel makes a factual claim that this ███████ affected Google Ads, not Shopping Ads. And Google wants Plaintiffs to take *Google's attorney's* word for it. That is not a basis to refuse to produce the mere five documents that Plaintiffs are requesting. Those five documents likely will show whether the ███████ was indeed

Hon. Barbara Moses
March 6, 2026
Page 2 of 4

confined to Google Ads. And even if it is the case that Google concluded that the ▮▮▮ only affected Google Ads, the documents are still relevant; they likely will show whether the solution that ▮▮▮.

### I. Google should be required to substantiate its counsel's claim that the ▮▮▮ did not affect Shopping Ads.

Google's counsel claims that the ▮▮▮ "solely" affected Google Ads, not Google Shopping ads. Opp. at 1–4. That is a purely factual claim. The five documents that the Erlick Email references will test that claim. And in any case, those five documents will discuss the remedial measures Google contemplated applying to the Shopping platform.

First, the referenced documents themselves likely will corroborate or contradict Google's claim that the ▮▮▮ was confined to Google Ads. Google says the problem with the Ads platform was a ▮▮▮ Dkt. 716-1 ¶ 5(c). In other words, Google does not explain how it determined that the ▮▮▮ did not affect Shopping: did they investigate whether the problem occurred in Shopping, or did they just assume that it didn't?

Likewise, to the extent that a Google witness intends to testify at deposition or at trial that the ▮▮▮ was confined to the Ads platform, Plaintiffs are entitled to have basic documents concerning the ▮▮▮ in order to be able to ask informed questions. Indeed, Jake Erlick, author of the Erlick Email, is a deponent. Mr. Erlick himself wrote about the ▮▮▮, "More information can be found in this working document . . . ." Dkt. 698-1 at -7102 (the "Hyperlinked Document"). For a deposition of Mr. Erlick to be productive, Plaintiffs should have that document. Moreover, these documents will reveal who else was involved in discovering or fixing the ▮▮▮, which will inform who Plaintiffs depose, or which of the existing deponents Plaintiffs should question about this issue.

Second, even if Google turns out to be correct that the ▮▮▮ specifically only affected Google Ads, the Erlick Email still shows that Google contemplated ▮▮▮ The documents referenced in the Erlick Email may show whether these preventative measures were ever taken. Plaintiffs' own experience, unfortunately, is that they were not. Dkt. 697 at 2.

### II. Google's attorney's say-so does not allow Google to hide the documents that that are referenced in the Erlick Email.

What Google has provided in its Opposition is not nearly sufficient to foreclose the limited discovery Plaintiffs are seeking. Google's claims come entirely through attorney argument.

Google's attorneys profess no technical expertise or even competency, much less any familiarity with the systems and processes that the Opposition and declaration reference. Yet Google did not attach a declaration from an engineer, or from anyone at Google who claims to have such knowledge.

Google's counsel say they talked to "Google personnel familiar with the issue . . . ." Dkt. 716-1 ¶ 5. They don't say who these "personnel" are, how many of them counsel spoke to, the department in which they work, or how they know about this issue. For example, Google's counsel doesn't even say whether they spoke to Jake Erlick, a custodian in this case, a scheduled deponent, and the author of the email that describes the ▮▮▮▮▮. For that matter, they don't explain why they didn't attach a declaration from Mr. Erlick. Incredibly, Google's counsel doesn't even claim that they, or anyone at Google, reviewed the Hyperlinked Document. The factual claims that Google seeks to make about a technical issue cannot be established through an evasive attorney declaration that relies entirely on hearsay.

Nor has Google made any showing that producing these five documents would be burdensome. Google does not explain any "burden" involved in "track[ing] down" the five documents, Opp. at 4. Indeed, tracking down the documents should be easy. Jake Erlick, who sent the email that links to the documents, is a full custodian, and is scheduled to be deposed on March 31. Google has not even represented that they've asked Mr. Erlick about the email, or about the five documents. All of the discussion of burden in Google's Opposition is limited to potential problems with locating hyperlinked documents *generally*, not actual problems Google encountered in locating the five *specific* documents Plaintiffs request here.

### III. Google mischaracterizes the parties' conferrals.

Plaintiffs' briefly address Google's claim that it "repeatedly" disclosed to Plaintiffs during conferrals that Google's story was that the ▮▮▮▮▮ affected Google Ads, but not Shopping Ads. While that explanation is insufficient to foreclose this discovery anyway, Plaintiffs clarify that Google's counsel not only never took this position, but specifically declined to make this representation during conferrals. Plaintiffs' counsel asked Google specifically (and twice) during the February 25 meet-and-confer, whether Google was claiming that the ▮▮▮▮▮ affected takedowns for some other type of ads, just not Shopping ads. Declaration of Attorney Jeff Kane ("Decl.") ¶ 3. Google's counsel said they didn't know. *Id.* Plaintiffs' counsel also asked whether Google was claiming that the ▮▮▮▮▮ affected, e.g., Search ads but not Shopping ads. *Id.* Google's counsel again said they didn't know. *Id.* Plaintiffs' counsel asked the same question via email. Dkt. 698-2 at 2 ("Regarding the referenced document in GOOG-CENG-00437101, is Google's [position] that this 'bug' ▮▮▮▮▮ ▮▮▮▮▮ Dkt. 698-2 at 1. Google's emails to Plaintiffs on this issue (Dkt. 698-2) contained nothing about the ▮▮▮▮▮ Nor did Google provide this explanation during the meet-and-confer. Decl. ¶ 3.

In any case, though, Google's new explanation is not a basis to foreclose this limited discovery, for the reasons Plaintiffs explain above.

Hon. Barbara Moses
March 6, 2026
Page 4 of 4

## IV. Conclusion

The Court should order Google to produce the five documents that the Erlick Email specifically hyperlinks and references, as detailed at Dkt. 697 pp. 3–4.

/s/ *Jeff Kane*
Jeff Kane

*Counsel for Plaintiffs*