# EXHIBIT A

Monday, March 2, 2026 at 12:36:32 PM Eastern Standard Time

| | |
|---|---|
| **Subject:** | RE: Cengage v. Google - Google Production Deficiencies |
| **Date:** | Wednesday, December 3, 2025 at 11:50:22 Eastern Standard Time |
| **From:** | Caroline.Clarke@lw.com |
| **To:** | Uriel Lee, Sarah Tomkowiak, Sara Sampoli, Holly Victorson, Sy Damle, Laura Bladow, Alli Stillman, Roberto Borgert |
| **CC:** | Michele Murphy, Jeff Kane, Danae Tinelli, Lauren Bergelson, Yunyi Chen |
| **Attachments:** | image001.png, image002.png, Cengage- Zero Strike Hit Counts.pdf |

==*This message contains information that Google has designated Highly Confidential, Attorneys'-Eyes-Only, pursuant to a Protective Order*==

Counsel,

In response to our meet and confer yesterday, and to avoid briefing this issue and burdening the Court with another dispute, we are agreeing to provide the requested hit counts for the search terms related to the ▮▮▮▮▮▮▮▮▮  Please see attached for the hit counts for:  (1) the search terms we ran prior to the October 14th hearing across the then-existing custodians, which Ms. Bladow shared with the court (*see* Oct. 14 Hr'ng Tr. 85:18- 86:9); (2) the court-ordered zero strike search terms across that same group of custodians; and (3) the court-ordered zero strike search terms across all current custodians.

As we explained during our meet and confer, Google is currently collecting and reviewing all documents that hit on the search term "Zero-Strike" OR "Zero Strike", which is the term the Court ordered Google to run. We will produce responsive, non-privileged documents in rolling productions by the January 6th deadline.

Thanks,

Caroline

**Caroline Clarke**
Pronouns: She/Her/Hers

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas | New York, NY 10020
D: +1.332.240.1457
C: +1.347.446.1349

**From:** Uriel Lee <ULee@oandzlaw.com>
**Sent:** Wednesday, November 26, 2025 4:38 PM
**To:** Clarke, Caroline (NY) <Caroline.Clarke@lw.com>; Tomkowiak, Sarah (DC)
<Sarah.Tomkowiak@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Victorson, Holly (DC)
<Holly.Victorson@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Bladow, Laura (DC)
<Laura.Bladow@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Borgert, Roberto (DC)
<Roberto.Borgert@lw.com>

**Cc:** Michele Murphy <michele@oandzlaw.com>; Jeff Kane <JKane@oandzlaw.com>; Danae Tinelli <Danae@oandzlaw.com>; Lauren Bergelson <LBergelson@oandzlaw.com>; Yunyi Chen <YChen@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Google Production Deficiencies

\*<mark>This message contains information that Google has designated Highly Confidential, Attorneys'-Eyes-Only, pursuant to a Protective Order</mark>\*

Hi Caroline,

Thank you for your response. We've sent an invite to meet and confer on the remaining issues next Tuesday at 3:30-4:30PM.

Regarding ███████ and █████, we do not have the authority to wait for an undefined amount of time for Google's response. Google has had nearly four months to consider Plaintiffs' request for the information contained within ████████ and █████. You'll recall that Plaintiffs took these tools out of Plaintiffs' August motions to compel so the parties could continue conferring about them (at Google's request, made on the day Plaintiffs were to file their motion). 2025.08.19 Meet and Confer; 2025.08.20 Meet and Confer. And yet, despite more meet-and-confers, Google still has not provided any suggestions or productive responses regarding these tools, other than that "████████████████ ██████████████████████████████████████████. 2025.08.20 Latham Email.

Given the Court's directive that the parties endeavor to present disputed issues so they may be considered at the December 15th hearing, Plaintiffs will promptly raise the issue regarding ████████, █████, and ████████ with the Court next week if Google cannot provide substantive responses by December 1-2. To the extent that Google wishes to continue conferring while our motion is pending, Plaintiffs can inform the Court of any progress or resolutions made.

We hope you all have a happy Thanksgiving.

Regards,
Uriel

---

**From:** Caroline.Clarke@lw.com <Caroline.Clarke@lw.com>
**Date:** Tuesday, November 25, 2025 at 11:36 PM
**To:** Uriel Lee <ULee@oandzlaw.com>, Sarah Tomkowiak <Sarah.Tomkowiak@lw.com>, Sara Sampoli <Sara.Sampoli@lw.com>, Holly Victorson <Holly.Victorson@lw.com>, Sy Damle <Sy.Damle@lw.com>, Laura Bladow <Laura.Bladow@lw.com>, Alli Stillman <Alli.Stillman@lw.com>, Roberto Borgert <Roberto.Borgert@lw.com>
**Cc:** Michele Murphy <michele@oandzlaw.com>, Jeff Kane <JKane@oandzlaw.com>,

Danae Tinelli <Danae@oandzlaw.com>, Lauren Bergelson <LBergelson@oandzlaw.com>, Yunyi Chen <YChen@oandzlaw.com>

**Subject:** RE: Cengage v. Google - Google Production Deficiencies

Counsel,

We will respond to and correct the substance of your email as soon as possible. As we noted several times yesterday, we are working to get responses from our client to the narrowed questions and requests you raised during our meet and confer yesterday, but do not expect to receive responses this week given the holiday. Many of these questions require us to consult several teams at Google that will be short-staffed or offline for the Thanksgiving holiday. Several folks on our team are also traveling and hoping to spend time with their families.

We cannot commit to providing a response on Topic 4  (██████████████████) by December 1st, particularly because Plaintiffs have only today identified the ████████ fields they would request that Google provide. We will respond to that issue and to the balance of your email as soon as possible, noting the December 15th status conference and both parties' desire to resolve disputes as soon as possible (which Google has worked to do in good faith). We are not available to meet and confer tomorrow afternoon, but are available next week on Tuesday, December 2nd from 11am-1pm ET or 3:30-5pm ET to discuss any remaining issues.

Thanks,

Caroline

**Caroline Clarke**
Pronouns: She/Her/Hers

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas | New York, NY 10020
D: +1.332.240.1457
C: +1.347.446.1349

---

**From:** Uriel Lee <ULee@oandzlaw.com>
**Sent:** Tuesday, November 25, 2025 5:09 PM
**To:** Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Clarke, Caroline (NY) <Caroline.Clarke@lw.com>; Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Bladow, Laura (DC) <Laura.Bladow@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Borgert, Roberto (DC) <Roberto.Borgert@lw.com>
**Cc:** Michele Murphy <michele@oandzlaw.com>; Jeff Kane <JKane@oandzlaw.com>; Danae Tinelli <Danae@oandzlaw.com>; Lauren Bergelson <LBergelson@oandzlaw.com>; Yunyi Chen <YChen@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Google Production Deficiencies

*This message contains information that Google has designated Highly Confidential,

<mark>Attorneys'-Eyes-Only, pursuant to a Protective Order</mark>*

Counsel,

Please see below regarding the November 24th meet-and-confer:

**1. Google's Production Deficiencies, _see_ 2025.11.04 O+Z Email**

**a. Topic Four:** ████████████████████████

████████

First, as we mentioned in our call, please explain what has already been produced regarding █████████████, i.e., the screenshots of █████████████ in Google's 26th production. As we explained, we have tried to match the MCID numbers and domain names of these █████████████ to the Infringing Merchants' MCIDs and domains, but they did not seem to match. It does not appear that these screenshots are part of a larger family, as you hypothesized during the call.

Second, as shown in the documents we've previously cited, Google seems to ████████ ████████████████████████████████████████ ████████████████████████████████ (e.g., GOOG-CENG-00440360.R).

All this information and analysis Google collected and performed is important evidence related to the pirates who committed the direct infringements and highly relevant to Google's knowledge about these merchants with whom it did business, including their suspect activities. These documents are responsive to at least the following RFP: 19, 24-26, 30, 31, 32, 36, 43, 106.

You explained during the call that Google will consider a compromise if Plaintiffs propose a narrowed search of certain █████████ fields. Without waiving any of Plaintiffs' positions, below we've highlighted in yellow the █████████ fields that Plaintiffs request Google provide as part of such a compromise:

- █████████████████ (GOOG-CENG-00440360.R)

- ████ (GOOG-CENG-00440287.R)

- ██████████████ (GOOG-CENG-00440360.R)

- ████████████████████████████ (GOOG-CENG-00440360.R)

- ██████████████████████████ (GOOG-CENG-00440360.R)

- ██████████████████████ (GOOG-CENG-00440360.R)

- ████████████ (GOOG-CENG-00440360.R)

- ████████████ (GOOG-CENG-00440360.R)

- ████████████ (GOOG-CENG-00440360.R)

- ██████████ (GOOG-CENG-00440360.R)

- ████████ (GOOG-CENG-00440360.R)

- ██████████ (GOOG-CENG-00440360.R)

- ████████████ (GOOG-CENG-00440360.R)

- ██████████████ (GOOG-CENG-00440360.R)

- ████████████ (GOOG-CENG-00440360.R)

- ██████████████ (GOOG-CENG-00440360.R)

- ██████████████ (GOOG-CENG-00440360.R)

- ██████████ (GOOG-CENG-00440360.R)

- ████████████ (GOOG-CENG-00440360.R)

- ██████████████████ (GOOG-CENG-00440360.R)

- ████ (GOOG-CENG-00440287.R)

- ████████ (GOOG-CENG-00440287.R)

In addition to the highlighted ████ above, the ████ as seen in GOOG-CENG-00440409.R, which contain ████████████ ████████ must be included. *See also* GOOG-CENG-00440307.R; GOOG-CENG-00440324.R. These documents clearly show that ████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████ etc. To the extent one of these ████████████ was filled out for any of the pirates at issue who infringed Plaintiffs' works (i.e., for the 1,239 domains Plaintiffs provided, or for the MCIDs associated with those domains (if the data is stored by MCID)), Google should produce the responses to these ████████.

In light of the upcoming December 15 discovery conference and the January 6 production deadline, Plaintiffs request that Google provide its position on the ███████ tool and these fields by December 1st.



Also without waiving any of Plaintiffs' positions, and in an effort to reach a potential compromise, Plaintiffs suggest that Google produces two ██████ fields. For each URL from a relevant pirate domain (*see* above) that Google claims to have removed, Google would produce the "████████████" of which it was a part, and the URL's "███████████". *See e.g.*, GOOG-CENG-00441745.

### b. Topic Two: Reactivations and Reinstatements

Our understanding is that the parties agreed to the below Search Term # 7 during our correspondences in June. *See* 2025.06.09 O+Z Email ("[W]e understand Defendant is willing to run these terms if Plaintiffs are willing to run 'Google's Search Term 4' and 'Google's Search Term for RFP 25' from Latham's May 14 email . . . Plaintiffs agree to run these searches. We thus understand the parties to be in agreement on Plaintiffs' Search Nos. One, Four, Five, Seven, and Eight below." *See also* 25.07.14 Latham Email (not suggesting any changes to Search Term 7). However, the hit count report Google sent on July 16th for Search Term #7 appears to have omitted the terms in red below.

| Date Range | Search term |
|---|---|
| January 1, 2020 through September 19, 2024 | (exception* OR "████" OR ██████ OR "██████ ███████" OR "███" OR "████") w/10 <span style="color:red">suspen* OR remov* OR escalat* OR (manifest* w/5 unfound*) OR</span> DMCA OR "Digital Millenium Copyright Act" OR (notice* AND copyright)) AND shopping |

First, please explain whether Google used Search Term #7 above, to which the parties agreed, or used the term listed in Google's July 16 hit report. If Google used a term other than the one to which the parties agreed, Google must run the agreed term above and produce all responsive documents. Please let us know by December 1 which term Google used.

Second, as discussed, Google must provide any policies and procedures regarding reinstatements and reactivations of terminated/suspended merchants on Shopping. Please provide Google's position by December 2.

### c. Topic Five: ████████████████████

To the extent that Google has not yet conducted searches or produced documents from the

"███████████" or databases, please confirm whether Google will conduct searches, and what documents it will be provide. During the meet-and-confer, Plaintiffs provided suggestions that might best target the requested data (e.g., search for the 1,239 domains in the "████████" database, or simply provide the ██████████ to Plaintiffs), but Google is in the best position to explain what this list is and how best it can be searched.

For the "████████" repository, please provide Google's position by December 2. If Google's position is that it will not provide any data or documents regarding the "███████████" and "███████" databases, Plaintiffs will seek relief from the Court.

### d. Topic Nine: Defendant's Implementation of Its DMCA/Copyright Policies Through ███████████

It has been 20 days since Plaintiffs' November 4th email on Topic Nine, and Google did not have a response prepared during the November 24th meet-and-confer. Please promptly provide Google's position.

As mentioned in the meet-and-confer, Google's documents reveal that ███████████ and ████████████████ seemed to be involved with the ████████████ and discussions regarding ████████████████████████████. To the extent any targeted searches may be needed, the two employees above may have relevant documents.

### e. Topic One: Missing Communications with AAP:

During the meet-and-confer, Google was unable to articulate why the current Search Term #5 did not capture AAP-related documents from ████████████. While Google predicted that running Search Term #5 on ████████ may return AAP-related documents, ██████████ and ████████████ appear to have been involved in the same correspondences and meetings with the AAP. *See* GOOG-CENG-00433641 (showing calendar invite with ████████████ of AAP, ███████████, ██████████, ████████, and ████████████). Thus, we do not see how running the exact terms on Mr. ████ will yield the requested documents. Google also took the position in the custodian negotiations that Ms. ████ is the person who would have relevant documents related to these AAP discussions but did not produce these documents from her custodial file.

To better understand the appropriate search terms for this request and for Mr. ████'s targeted searches, Plaintiffs suggest that Google provide a hit report on Mr. ████'s and Ms. ████'s documents for the below terms:

("Association of American Publishers" OR AAP OR "@publishers.org" OR (██ w/5 ████████))

### f. Topic Six: Google Ads and Shopping Office Hours/Question Logs

Google explained that it will not collect all versions of the Office Hours/Questions Logs spreadsheet. As a potential compromise, Plaintiffs suggest that Google pull the

spreadsheet for every January and July of the relevant time period (i.e., January 2020, July 2020, January 2021, July 2021, January 2022, July 2022, January 2023, July 2023, January 2024, July 2024). Please promptly provide Google's position on this potential compromise. If Google claims this approach is not feasible, please promptly provide any alternatives that Google may consider in lieu of this approach.

### g. Topic Three: Missing Financial Data re Google

Google confirmed that for RFP 33, 34, and 54, Google produced financial data and data on the Shopping platform in response to the expanded time frames. You stated that Google anticipates making a further production of financial data concerning the pirates who infringed who infringed the works-in-suitat issue, and regarding the financial performance of the Shopping platform.

You indicated that you would investigate whether Google can provide the requested financial information for Google LLC on an annual basis. Please promptly let us know Google's response.

### 2. Google's DMCA Policy Versions, and the related issue of time-periods for searches, *see* 2025.11.07 O+Z Email, 2025.11.14 Latham Email

As we explained during the call, your November 14 email says "Plaintiffs' zero-strike search term returned only 9 hits . . . ." *See also* Dkt. 218 at 86:6–9 (same). That same email says "Google has searched and is currently reviewing documents from January 1, 2020 through September 16, 2024 for the following two search terms ordered by the Court on October 15th . . . 'Zero-Strike Policy' OR 'Zero Strike Policy.'" You likewise stated during the call that you believed the term the Court ordered was "zero strike policy".

The search term that the Court ordered Google to use is not "Zero Strike Policy" but rather ["zero strike" or "zero-strike"]. Dkt. 221¶ (b) (ii)

Moreover, applying the terms "zero strike" and "zero strike policy" to the documents Google produced through August 15 returns 23 hits and ten hits, respectively.

First, please clarify what term Google is using to search for documents concerning the ███████████  To the extent Google has been using the term "zero strike policy" or "zero-strike policy", Google must redo these searches to ensure that Google is using the terms the Court ordered.

Second, please provide all the hit reports that Google referenced during the October 14th hearing. *See* 2025.10.14 O+Z Email. As we are now seeing clear discrepancies between what Google represented to the Court and what the results should be, Plaintiffs once again request that Google provide all hit report results that were referenced in the October 14th hearing. If Google continues to refuse to provide these results, Plaintiffs will seek relief from the Court.

Third, Google confirmed that it was unable to find the version of the spreadsheet from the screenshot, GOOG-CENG-00441613. Nor has Google been able to locate any ▮▮▮▮▮ tab on any spreadsheet that contains domains or URLs populated. Google was also unable to find any ▮▮▮▮▮▮. Google confirmed that Google's employees had either never heard of the ▮▮▮▮▮▮, or have attempted to search for this version and were unable to find it.

Separately, you confirmed that Google is using a start-date of January 1, 2020 for search-terms 6 (the 1,239 domains), 13 (the MCIDs/Ads account IDs), and 14 (the ebook link/pdf link),

### 3. Plaintiffs' Fourth RFP, *see* 2025.11.07 O+Z Email

### RFP 98 (All documents concerning the work performance of personnel who processed Plaintiffs' Infringement Notices in the Relevant Areas)

It is Plaintiffs' understanding that in response to RFP 98, Google would be willing to provide a supplemental production of high-level reviews of performance for both Google's vendor agents and FTEs. While Google refused to provide any individual HR files for FTEs, Google would consider high-level performance reviews or assessments like the documents mentioned in my November 7th email. You agreed to make a written proposal explaining what documents Google proposes to search for, and how Google proposes to search for them. Please provide Google's proposal next week.

We remain confused as to Google's position on performance evaluations concerning Google FTEs. As we explained during the call, to the extent these evaluations reflect feedback concerning an employee's work on Google's DMCA process, those evaluations are relevant. And they are responsive at least to RFP 6, 14, 15, 16, 98.

### RFP 101 (information provided to Google to "verify" merchant identities) and RFP 102 (process for obtaining verifying information)

For RFP 101, Google stated that it has finished producing what is stored in the merchant database and ads database in the course of ordinary business. This data would be reflected in the spreadsheets ending in -2941 and -0703.

For RFP 102, we again reiterated that Google must produce internal documents concerning Google's verification process, including what information Google collects and what steps Google takes to "verify" the merchants once Google receives verification information from the merchants. We explained our position that providing one publicly available general statement referencing the verification process, is not sufficient to respond to the RFP, including because it does not explain what Google actually does to verify the merchants.

The parties are at impasse and Plaintiffs anticipate filing a motion on this topic.

---

Your team had to leave the meet-and-confer, which had taken the allotted time, so we could not discuss the remainder of my November 20th email. Regarding several of those topics, the parties have already met and conferred, and we understand i) the parties are at impasse (i.e, Topic #3(c) through (f)); or ii) Plaintiffs are waiting for Google's response (i.e., Topic #5-9). To the extent that Google would like to meet and confer on the remaining issues, we are available from 2:00pm–4:00pm tomorrow (November 26). If not, please promptly provide any responses.

Regards,

Uriel

---

**From:** Uriel Lee <ULee@oandzlaw.com>
**Date:** Thursday, November 20, 2025 at 4:34 PM
**To:** Sarah Tomkowiak <Sarah.Tomkowiak@lw.com>,
Caroline.Clarke@lw.com <caroline.clarke@lw.com>, Holly Victorson
<Holly.Victorson@lw.com>, Sara Sampoli <Sara.Sampoli@lw.com>, Sy Damle
<Sy.Damle@lw.com>, Laura Bladow <Laura.Bladow@lw.com>, Alli Stillman
<Alli.Stillman@lw.com>, Roberto Borgert <Roberto.Borgert@lw.com>
**Cc:** Michele Murphy <michele@oandzlaw.com>, Jeff Kane <JKane@oandzlaw.com>,
Danae Tinelli <Danae@oandzlaw.com>, Lauren Bergelson <LBergelson@oandzlaw.com>,
Yunyi Chen <YChen@oandzlaw.com>
**Subject:** Re: Cengage v. Google - Google Production Deficiencies
*This message contains information that Google has designated Highly Confidential, Attorneys'-Eyes-Only, pursuant to a Protective Order*

Hi Sarah,

Please see below for a list of the issues we'd like to discuss during the meet-and-confer, listed in order of priority:

1. **Google's Production Deficiencies, *see* 2025.11.04 O+Z Email**
   1. **Topic Four:** ██████████████████: As we've stated in our 11/4 email, although Plaintiffs understand that Google's tools (████████, ██████, and ██████) have a wealth of important information regarding the merchants in this case, we also understand that it is Google's position that these tools are "██ ████████████████████" and "cannot ingest search terms." If this is still Google's position, we would like to discuss about other possibilities or ways of retrieving the pertinent information. For example, for ██████████, the parties might discuss the possibility of taking screenshots of the merchants' ████████ ████████ or pulling data for specific ████████ fields. To facilitate discussions, we have listed at the bottom of this email the ████████ fields Plaintiffs have

found throughout Google's documents.

1. **Topic Two: Reactivations and Reinstatements**: Please be prepared to discuss the issues raised in my 11/4 email. To the extent that Google has completed its production on Topic Two, we would like to discuss the possibility of adding new search terms that would more sufficiently capture and target these documents, or discuss if these policies may be saved in other non-custodial databases.

1. **Topic Five:** ████████████████: Please be prepared to discuss the issues raised in my 11/4 email.

1. **Topic Nine: Defendant's Implementation of** ████████████ ███████████████: Please be prepared to discuss the issues raised in my 11/4 email.

1. **Topic One: Missing Communications with AAP**: Plaintiffs have received Google's offer to add Search Term #5 to ████████'s documents to resolve this issue. *See* 2025.11.12 Latham Email. However, we would still like to discuss why these documents were not collected through ████████'s custodial collections. Plaintiffs are concerned that the current Search Term #5 was unable to capture the relevant documents that involved the AAP's discussions with Google, which would also affect Mr. ███'s searches. Please be prepared to discuss.

1. **Topic Six: Google Ads and Shopping Office Hours/Question Logs**: Please be prepared to discuss the issues raised in my 11/4 email.

1. **Topic Three: Missing Financial Data re Google**: Please be prepared to discuss the issues raised in my 11/4 email.

2. **Google's DMCA Policy Versions, and the related issue of time-periods for searches**, *see* **2025.11.07 O+Z Email, 2025.11.14 Latham Email**

3. **Plaintiffs' Fourth RFP,** *see* **2025.11.07 O+Z Email**

   1. Please be prepared to discuss the issues and questions raised in my 11/7 email on the below RFP. Plaintiffs understand that the parties are at an impasse on RFP 110. Please be prepared to discuss if Google's positions have changed in any way for RFP 110.

   2. **RFP 98** (All documents concerning the work performance of personnel who processed Plaintiffs' Infringement Notices in the Relevant Areas)

   3. **RFP 101** (information provided to Google to "verify" merchant identities) and **RFP 102** (process for obtaining verifying information)

   4. **RFP 104** (All documents concerning any contracts or agreements between Google and Infringing Merchants or Related Ads Merchants, including documents sufficient to show the type of ad campaigns (e.g., Performance Max and Standard Shopping campaigns) they utilized and when)

   5. **RFP 112** (document retention policies)

   6. **RFP 110** (All documents concerning the potential impact on Your financial interests, including but not limited to lost fees or revenues, in the event You terminated a Shopping Ads Merchant, or adopted or made changes to any Repeat Infringer Policy or any policy concerning Infringement Notice

processing. This request includes but is not limited to documents such as marketing reports, plans, studies, analyses, and consumer research.)

4. **Plaintiffs' Notice of Depositions,** *see* **2025.11.13 Latham Email**
5. ██████████ **and Search Terms,** *see* **2025.11.18 O+Z Email**
   1. As the parties are still in discussion regarding ████████ and his appropriate search terms, to the extent Google has any updates, we are happy to discuss during the meet-and-confer.
   2.

For the below topics, to the extent you may have any updates regarding the hyperlinks and/or technical issues, we would like to discuss them during the meet-and-confer. Please also be prepared to discuss a timeline of when Google can provide more substantive updates or reproductions for these issues.

6. **Google's Buganizer Document Quality,** *see* **2025.11.20 O+Z Email**
7. **Google's Hyperlinks,** *see* **2025.11.07 Latham Email; 2025.11.04 O+Z Email (Topic Eight: Hyperlinked Documents)**
8. **Google's Production Deficiencies,** *see* **2025.11.04 O+Z Email**
   1. Topic Seven: Inconsistent "Date Created"
9. **Documents containing "comment" bubbles,** *see* **2025.11.17 O+Z Email**

_____

**List of ████████ Fields (last updated November 20, 2025):**
- ████████ (GOOG-CENG-00440360.R)
- ████ (GOOG-CENG-00440287.R)
- ████████ (GOOG-CENG-00440360.R)
- ██████████████ (GOOG-CENG-00440360.R)
- ████████████ (GOOG-CENG-00440360.R)
- ██████████ (GOOG-CENG-00440360.R)
- ██████ (GOOG-CENG-00440360.R)
- ██████ (GOOG-CENG-00440360.R)
- █████ (GOOG-CENG-00440360.R)
- ████ (GOOG-CENG-00440360.R)
- ██████ (GOOG-CENG-00440360.R)
- ██████ Not Linked (GOOG-CENG-00440360.R)
- █████████ (GOOG-CENG-00440360.R)
- █████ (GOOG-CENG-00440360.R)
- ███████ (GOOG-CENG-00440360.R)
- ██████ (GOOG-CENG-00440360.R)
- ████ (GOOG-CENG-00440360.R)
- █████ (GOOG-CENG-00440360.R)
- ████████ (GOOG-CENG-00440360.R)
- ██ (GOOG-CENG-00440287.R)
- ███ (GOOG-CENG-00440287.R)

Regards,
Uriel

---

**From:** Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>
**Date:** Wednesday, November 19, 2025 at 11:33 AM
**To:** Uriel Lee <ULee@oandzlaw.com>,
Caroline.Clarke@lw.com <Caroline.Clarke@lw.com>, Holly Victorson
<Holly.Victorson@lw.com>, Sara Sampoli <Sara.Sampoli@lw.com>, Sy Damle
<Sy.Damle@lw.com>, Laura Bladow <Laura.Bladow@lw.com>, Alli Stillman
<Alli.Stillman@lw.com>, Roberto Borgert <Roberto.Borgert@lw.com>
**Cc:** Michele Murphy <michele@oandzlaw.com>, Jeff Kane <JKane@oandzlaw.com>,
Danae Tinelli <Danae@oandzlaw.com>, Lauren Bergelson <LBergelson@oandzlaw.com>,
Yunyi Chen <YChen@oandzlaw.com>
**Subject:** RE: Cengage v. Google - Google Production Deficiencies

Uriel,

We are available on Monday, November 24th from 1:30-3:00 (which is a hard stop).  Please send an invite to Sara Sampoli, Caroline Clarke, and me.

Given the number of issues to discuss, we suggest that you send us in advance (today or tomorrow, if possible), the top issues that you would like to prioritize for the discussion.  We also note that to the extent you have raised technical issues regarding Google's productions, we are working through those with Google's e-discovery vendor.

Best,

**Sarah A. Tomkowiak**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.2335 | M: +1.217.417.3312

---

**From:** Uriel Lee <ULee@oandzlaw.com>
**Sent:** Tuesday, November 18, 2025 9:23 PM
**To:** Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Clarke, Caroline (NY)
<Caroline.Clarke@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Sampoli, Sara (DC)
<Sara.Sampoli@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Bladow, Laura (DC)
<Laura.Bladow@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>; Borgert, Roberto (DC)
<Roberto.Borgert@lw.com>
**Cc:** Michele Murphy <michele@oandzlaw.com>; Jeff Kane <JKane@oandzlaw.com>; Danae Tinelli
<Danae@oandzlaw.com>; Lauren Bergelson <LBergelson@oandzlaw.com>; Yunyi Chen
<YChen@oandzlaw.com>

**Subject:** Re: Cengage v. Google - Google Production Deficiencies

Counsel,

In light of the incoming holiday and December 8th status report, Plaintiffs suggest one consolidated meeting where the parties can meet and confer on the outstanding issues listed below:

1. Google's Production Deficiencies, *see* 2025.11.04 O+Z Email
2. Google's DMCA Policy Versions, and the related issue of time-periods for searches, *see* 2025.11.07 O+Z Email
3. Plaintiffs' Fourth RFP, *see* 2025.11.07 O+Z Email
4. Plaintiffs' Notice of Depositions, *see* 2025.11.13 Latham Email
5. Google's Hyperlinks, *see* 2025.11.07 Latham Email
6. Documents containing "comment" bubbles. 2025.11.17 O+Z Email

Below are the dates that Plaintiffs are available. Given the number of issues to discuss, we suggest setting aside 90 minutes. Please let us know if a day or time works for you, and we will send an invite.

- Wednesday November 19, 10:00-2:00
- Thursday November 20, 10:00-1:30
- Friday November 21, 11:30-1:30
- Monday November 24, 10:30-4:00

Regards,
Uriel

---

**From:** Sarah.Tomkowiak@lw.com <Sarah.Tomkowiak@lw.com>
**Date:** Monday, November 10, 2025 at 1:43 PM
**To:** Uriel Lee <ULee@oandzlaw.com>, Sara.Sampoli@lw.com <Sara.Sampoli@lw.com>, Caroline.Clarke@lw.com <Caroline.Clarke@lw.com>, Holly.Victorson@lw.com <Holly.Victorson@lw.com>, Sy.Damle@lw.com <Sy.Damle@lw.com>, Laura.Bladow@lw.com <Laura.Bladow@lw.com>, Alli.Stillman@lw.com <Alli.Stillman@lw.com>
**Cc:** Michele Murphy <michele@oandzlaw.com>, Jeff Kane <JKane@oandzlaw.com>, Kevin Lindsey <KLindsey@oandzlaw.com>, Yunyi Chen <YChen@oandzlaw.com>, Roberto.Borgert@lw.com <Roberto.Borgert@lw.com>
**Subject:** RE: Cengage v. Google - Google Production Deficiencies

Counsel,

We have received and are reviewing your November 4 email containing lengthy demands for on a number of purported discovery issues, many of which do not seek to remedy "deficiencies" at all, but are simply requests for even more documents on top of those that Plaintiffs have already received regarding these topics.  We reiterate at the outset that

Plaintiff's unceasing demands exceed the proportionality standards of Rule 26, and continue to impede Google's ability to progress existing discovery disputes and requests.

While we will respond to each issue in due course, we are unable to provide a response on the nine separate discovery issues raised (including your request for another 18 hyperlinked documents) to meet your arbitrarily imposed deadline of today. We will respond as soon as feasible.

**Sarah A. Tomkowiak**

**LATHAM & WATKINS LLP**
555 Eleventh Street, NW | Suite 1000 | Washington, D.C. 20004-1304
D: +1.202.637.2335 | M: +1.217.417.3312

---

**From:** Uriel Lee <ULee@oandzlaw.com>
**Sent:** Tuesday, November 4, 2025 9:45 PM
**To:** Sampoli, Sara (DC) <Sara.Sampoli@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; Clarke, Caroline (NY) <Caroline.Clarke@lw.com>; Victorson, Holly (DC) <Holly.Victorson@lw.com>; Damle, Sy (DC-NY) <Sy.Damle@lw.com>; Bladow, Laura (DC) <Laura.Bladow@lw.com>; Stillman, Alli (NY) <Alli.Stillman@lw.com>
**Cc:** Michele Murphy <michele@oandzlaw.com>; Jeff Kane <JKane@oandzlaw.com>; Kevin Lindsey <KLindsey@oandzlaw.com>; Yunyi Chen <YChen@oandzlaw.com>
**Subject:** Cengage v. Google - Google Production Deficiencies

*==This message contains information that Google has designated Highly Confidential, Attorneys'-Eyes-Only, pursuant to a Protective Order==*

Counsel,

We write regarding significant deficiencies and gaps within Google's document productions made on or near the August 15th deadline. These include, but are not limited to, the issues identified below. Please let us know your responses by November 10th. If any of these issues require another meet-and-confer, please promptly let us know your availability and the issues you would like to discuss.

## One: Missing Communications with AAP (RFP 52)

Google agreed to produce documents in response to RFP 52. *See* 2024.12.03 Latham Email (Google agreed to "produce non-privileged documents and communications in its possession, custody and control located after a reasonable search concerning Google's communications with the AAP regarding the Digital Books Shopping Ads Policy or the issue of infringing Shopping Ads for ebooks"). However, Google has not done so.

GOOG-CENG-00433641 reveals a screenshot that ▮▮▮▮▮▮ took of a calendar invite of a meeting on February 24, 2022. The attendees were ▮▮▮▮▮▮ of AAP and ▮▮▮▮▮▮, ▮▮▮▮▮▮, ▮▮▮▮▮▮, and ▮▮▮▮▮▮. In this invite, Mr. ▮▮▮▮▮▮ wrote that "▮▮▮▮▮



███████████████████████████████████.” Google has not produced any further documents regarding this meeting or the related these discussions, including any email communications with Ms. ██████ or other AAP representatives. Plaintiffs proactively provided Google with information about these documents last year and have reason to believe more documents exist. 2024.11.4 O+Z Email.

Please produce all responsive documents immediately. If Google has withheld any such documents on the basis of any privilege or other protection, please identify the privilege log entries corresponding to such withheld documents.

### Two: Reactivations and Reinstatements (RFP 19)

It appears that Google has not completed its production in response to RFP 19 ("All documents concerning the reactivation of service or reinstatement of any Shopping Ads Merchant . . . ."). For instance, it appears that Google has not produced any policies or guidelines concerning reactivating or reinstating suspended merchants, but Google's documents indicate they exist. *See* GOOG-CENG-00433421, at -3425 ████████████████████████████████████████████████"; GOOG-CENG-00433421, at -3437 "████████████████████████████████████████████"; GOOG-CENG-00405294 ████████████".

Please produce all responsive documents immediately or, if they have been produced, provide the Bates numbers. If Google has withheld any such documents on the basis of any privilege or other protection, please identify the privilege log entries corresponding to such withheld documents.

### Three: Missing Financial Data re Google (RFP 53 and RFP 107)

During the parties' September 30, 2025 meet-and-confer, you explained that Google had completed its production of revenue requests. However, Plaintiffs have been unable to find documents responsive to RFP 53 and RFP 107 in Google's productions. Please produce all responsive documents immediately or, if they have been produced, please provide the Bates numbers.

### Four: ███████████████████

You explained that it is your understanding that the ██████████ and ██████████ are "██████████████████████████████████████████████ and are used "███████████████████████████████ ". 2025.08.20 Latham Email. We further understand that these tools are connected to "back end" databases, which Google claims contain "the same information reflected in the information that Google previously produced associated with the Merchant Center account data (e.g., GOOG-CENG-00000703 and similar) and DMCA case data (e.g., GOOG-CENG-00380268 and similar)." 2025.08.20 Latham Email. However, Google's productions do not bear this out.

In contrast, an account's ██████████ page has ████████████████████████ ██████████████████████ *See* GOOG-CENG-00440360.R, GOOG-CENG-00440287.R (██████████████████████████████

account page showing account's █████████████████, █████████████████,
████████████████████████████████████████; GOOG-CENG-00440352.R (chart evaluating
a merchant's ███████████████████████████████████████████████████████████
████████████████████████.

Google must provide the ██████████ accounts of the 1,239 domains (and the additional 261
domains if the Court grants Plaintiffs' motion). If ██████████ is "██████████████████
███████████████████████████████████", the parties can negotiate and determine
better ways to search and view the pirate merchant's account information.

**Five:** ██████████████████████

Google's documents reference a landing page of an infringing URL getting "████████████"
and ████████████████████████████████████ for copyright infringement. GOOG-
CENG-00438810. This URL is then ████████████████████████████████████████
██████████████ GOOG-CENG-00438810. These ██████████████ appear to be used to consider
reinstatements and determine ██████████████ GOOG-CENG-00424131. Please confirm if Google
has conducted searches and produced documents from this "██████████████████" or any
databases or systems that house infringing URLs that get "██████████████".

Relatedly, Google appears to have had a system for "██████████", which appears to be an
████████████████████████████████████". See GOOG-CENG-00416595. Google's
documents show that sales representatives for Pearson and VitalSource submitted
complaints and escalated concerns regarding "██████████████". See GOOG-CENG-00419029
(████████████████ for Vitalsource submits "████████████████████████████
████████████████████"; GOOG-CENG-00419045 (███████████████████████████████
███████████████████████████████████████████████████████████
█████████████████ GOOG-CENG-00413200 (██████████████████████████████████
██████████████████████████████████████████████████████████████
████████████████.

Other than the above, Google's production is devoid of documents about these "██████████"
and "██████████" documents, which are clearly relevant to Google's DMCA defense and
potentially the pirates at issue in this case. Please produce documents about these
repositories so that the parties can better understand what additional searches might be
needed. Please also confirm if Google has already searched these repositories or any
databases or systems that house such information for the 1,239 pirate domains (and the
additional 261 domains if the Court grants Plaintiffs' motion) Plaintiffs identified.

**Six: Google Ads and Shopping Office Hours/Question Logs**

Google's productions reveal that there were documents called "Google Ads and Shopping

Office Hours" (GOOG-CENG-00416901; GOOG-CENG-00408671; GOOG-CENG-00417497, GOOG-CENG-00416841) that provided " ███████████████████████

██████ " GOOG-CENG-00405237 (PG 38). Google must produce all documents (spreadsheets, notes, summaries, ████████) regarding the "Google Ads and Shopping Office Hours" during the relevant time periods, which are at least responsive to RFP 76, 77, 88, 89. Documents like GOOG-CENG-00416901 must be produced in their entirety, along with any notes, summaries, ██████████ that may have been taken during these "Office Hours".

These Office Hours were held and led by FTEs " ████████████████████████ (GOOG-CENG-00414681). Google's documents reveal that when FTEs ██████████

██████████████████████████████████ GOOG-CENG-00438512. During these Office Hours, vendors and FTEs discussed " ████████████████ " (GOOG-CENG-00438512) or addressed crucial questions like:

- ████████████████████████████████████████
  ██████████████████████████████████ " (GOOG-CENG-00416903);
- ████████████████████████ ██ ████████████████
  ████████████████████████████████
  ████████████████ (GOOG-CENG-00416903);
- ████████████████████████████████████████
  ████████████████████ (GOOG-CENG-00416903)

Google's documents also reveal cases that were already ██████████████████████████████
██████████████████████████ (GOOG-CENG-00416841).

Relatedly, it appears that Google also had " ████████████████ ", that appears to have contained questions vendors asked. *See* GOOG-CENG-00433421 " ████████████████████████████████████████████████████████ ".
Google has provided screenshots, but not the actual documents, of spreadsheets titled ████████████████ ", which lists tabs titled ████████████████ and ████████ ████████ Please produce these spreadsheets in their entirety.

## Seven: Inconsistent "Date Created"

Several of Google's documents have a "Date Created" date that is clearly inconsistent with what appears on the document. While there are a number more documents that have this problem, Plaintiffs have currently narrowed and identified the following nonexclusive list:

- GOOG-CENG-00416885: Presentations says "May 2020" on the title page, yet the "Data Created" metadata is March 13, 2025.
- GOOG-CENG-00416884: Document says the last edit was November 2020. The "Date Created" metadata is March 13, 2025.

- GOOG-CENG-00418873: Document says the date of "[l]ast major rivision" was November 14, 2023, yet the "Date Created" is also November 14, 2023.
- GOOG-CENG-00416837: On its face, this document does not show when it was last edited or created. Please confirm if the correct "Date Created" for this document is March 13, 2025.
- GOOG-CENG-00416978: On its fact, this document does not show when it was last edited or created. Please confirm if the correct "Date Created" for this document is March 13, 2025.

Please promptly provide Plaintiffs with the correct dates for the above documents. To the extent that there is an overall problem with the metadata that needs to be addressed, please do so immediately. And if Google is aware of any other documents in its productions that have this problem, please promptly correct them.

**Eight: Hyperlinked Documents**

Based on the text of each below-identified hyperlink and the surrounding context of the documents, the below documents appear to be relevant to a number of key issues in this case. For each hyperlinked document, please either produce the document or provide the Bates number if the document already has been produced.

As requested in O+Z's September 4th email, to the extent Google is producing documents to which another produced document links, it would be helpful to reflect both documents as being part of the same family (or to otherwise indicate the document from which a newly produced document was linked). This way, when Google already has produced a hyperlinked document, Plaintiffs will know that they need not request it.

The hyperlinked document described below appears to be relevant to the ███████ that Google claims to have conducted to remove ebook ads following the ebook "ban" in 2021.

- GOOG-CENG-00425937 – Pg. 1: Sajin introduces a bug link "█████████ ████████████████████████████" with a trix link. Please produce both the Buganizer ticket and the trix.

The hyperlinked document described below appears to be relevant to Google's policy and practice of ████████████████████████████ in relation to its copyright enforcement. This is important because Google ███████████████████████████ ████████████████████████████████████████ ███████

- GOOG-CENG-00413547, at -413547: "… that's why we put together the trix list" – please produce the trix list.

The hyperlinked documents described below appear to discuss implementation of Google's DMCA repeat infringer policy, including reinstatements and detection methods. They therefore appear to bear directly on the reasonableness of Google's implementation of its repeat infringer policies, and Google's state of mind in taking or declining to take certain steps in furtherance of such implementation. The requested documents are, at a minimum, responsive to RFP 6, RFP 19, RFP 45, RFP 76, RFP 86, RFP 89, RFP 98.

- GOOG-CENG-00416837, at -416837: "█████████████████████████████████"



- GOOG-CENG-00433633: trix titled "███████████████████████████████"
- GOOG-CENG-00433421
  - At -3423, "████████████████████████████"
  - At -3425 ██████████████████████████████████████
    ███████
  - At -3426 "███████████████████████████"
  - At -3430 "██████████████████████████████████"
  - At -3437 ███████████████████████████████████████
  - "████████████████████████████████████████"
- GOOG-CENG-00418078 – "█████████████████████████████"
- GOOG-CENG-00416837, at -416838: "███████████████████████████████"

The hyperlinked documents described below appear to describe the Monetized/Shopping Platform. As Google had previously claimed it did not keep any organizational charts in the ordinary course of business in response to RFP 2, these documents are crucial in understanding the identity, roles and responsibilities of Google's custodians and departments in charge of Google Shopping/Monetized.

- GOOG-CENG-00424131, at -4136: "██████████████████████████████
  ███████████"
- GOOG-CENG-00424489, at -4500: "██████████████████████████"
- GOOG-CENG-00424489, at 4502:
  - ██████████████████████████████████████████
  - ██████████████████████████████████████████
  - ██████████████████████████████████████████
    ████████████████████████…"
- GOOG-CENG-00425909, at -5910: the link after "… and copyright is not one of them at the moment"

### Nine: Defendant's Implementation of Its DMCA/Copyright Policies ███████ ██████████ (RFP 6, RFP 11, RFP 13, RFP 17, RFP 18)

GOOG-CENG-00418873 is a document titled "████████████████████████████████████
████████████." *Id.* at -8873. The document lists "2023-11-14" as the date of the "[l]ast major revision." *Id.* The objective for this "ideas sketch" was to ██████████████████████████████████████████████████████
███████████████████████ *id.*, defined by the same document as "a given URL" that has "another URL" with ███████████████████████████████
████████████████." *Id.* at -8875. The document states that ████████████████████████████████████████████████
████████████████████████████████████████████." Plaintiffs also understand that at least as of April 2023, Google did not disclose to copyright infringement notice-senders if it used ████████████████████████████████." GOOG-CENG-00413905, at -3906. Therefore, Plaintiffs do not expect that they would have received notifications disclosing ████████████████████████████████.

All documents relating to the "ideas sketch" as described in GOOG-CENG-00418873 go

directly to the methods, ███████████████, that Google considered or adopted for implementing its DMCA policies, and responsive to at least Plaintiffs' RFP 6, 11, 13, 17, and 18. Plaintiffs have not been able to identify any documents showing subsequent discussions about the ████████████████████████████████ project, or Google's decision to either abandon or move forward with the project. If there are additional responsive and non-privileged documents reflecting Google's discussions or decisions made concerning ██████████████████████████████, including documents containing discussions about the project described in GOOG-CENG-00418873, Google must produce them.

**Comments on Google Docs**

The below document contains comment bubbles, but does not list the authors of the comments. Please re-produce the document with the appropriate comment authors.

- GOOG-CENG-00415327

**Cut-Off Documents**

Below is a list of documents that were cut off, meaning that we cannot see the entirety of the document. Please promptly re-produce these documents in their entirety.

- GOOG-CENG-0018053
- GOOG-CENG-00430281, at -0284
- GOOG-CENG-00425139, at -5141 – Several of the comments are cut off

**Poor Quality**

The poor quality of Google's production has made it very difficult to review the below documents. Please promptly re-produce these documents in a readable format.

- GOOG-CENG-00430804
- GOOG-CENG-00432450
- GOOG-CENG-00414681

Regards,
Uriel

Uriel Lee  |  Associate
**Oppenheim + Zebrak, LLP**
4530 Wisconsin Avenue NW, 5th Floor
Washington, D.C. 20016
Direct: 202.480.2999
ULee@oandzlaw.com  |  www.oandzlaw.com
Connect with us on LinkedIn
O+Z  Oppenheim  |  WASHINGTON, D.C.
    + Zebrak LLP  |  NEW YORK, N.Y.

This e-mail and any attachments may contain information that is private, confidential, or protected by attorney-client or other privilege. If you are not the intended recipient, please delete it from your system without copying, reviewing or distributing any portion and notify sender by reply e-mail.

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient.  Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited.  If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.