**O+Z | Oppenheim + Zebrak, LLP**
WASHINGTON – NEW YORK

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
jkane@oandzlaw.com

March 9, 2026

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

      Re:    *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
            **Plaintiffs' Status Update re Google's Request to Exclude 34 Websites from the Testing of Google's Overall DMCA Program**

Dear Judge Moses,

      We represent all Plaintiffs in this matter. Pursuant to the Court's February 9 Order, Plaintiffs write to update the Court on Google's March 6 production, specifically Google's selection of 300 websites to test Google's overall DMCA program. Plaintiffs previously filed a status report on this topic at Dkt. 702, and Google filed a "response" at Dkt. 724.

      Google claims that its repeat-infringer policy is to suspend pirates ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dkt. 238-5 (GOOG-CENG-00000683 at -0683). Last December, Google proposed a method of discovery to test whether Google does, in fact, enforce its ▮▮▮▮▮ policy: Google would "randomly" select 300 websites that were the subject of copyright takedowns. Google then would produce the documents that would show when/whether each site ▮▮▮▮▮, and when/whether Google suspended the site. Dkts. 402 at 3–5, 441 ¶ 1, Dkt. 472. The Court accepted Google's proposal, and accepted Google's requested deadlines: January 30 to select the 300 websites, and March 6 to produce the documents concerning those sites. Dkts. 441 ¶ 1; 472; 510 ¶ 5; 513 at 118:7–14, 119:12–15.

      Google now wishes to renege on its proposal, and to alter the Court's Orders. Google wishes to exclude from its 300-website selection some 34 sites: 31 that are "marketplace" domains, one that is a "googleadservices.com" domain, and two other sites. But for all of these sites, the evidence shows that Google ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Allowing Google to exclude these sites from Google's selection would allow Google to hide additional evidence that Google did not follow its policy. Google must provide discovery into these 34 websites.

      **I.**    **The "Marketplace" Domains**

      Google first asks to exclude 31 "marketplace" domains from its selection (Dkt. 724 at 2 ("First")). This is improper because Google ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ We know this for several reasons.

      First, Google's counsel admitted this during a meet-and-confer. Asked what repeat-infringer policy Google ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

██████ Declaration of Attorney Jeff Kane ("Decl.") ¶ 3.

Second, in the ███████ ██████ Ex. 1 (GOOG-CENG-00439752.C). ███ of these sites are among the 31 marketplace domains that Google wishes to exclude.

Third, Google's DMCA policy states that ███████

Fourth, another Google document instructs that if an account ████ strikes, but has ████

Google's argument on this point is flimsy. Google first argues that since the 1,500 sites that infringed the works-in-suit are not marketplace domains, Google shouldn't have to produce any discovery about marketplace domains. Dkt. 724 at 2. But as Google well knows, Google's DMCA defense is not limited to its treatment of *Plaintiffs'* notices. Google claims that the entirety of its DMCA program for Shopping was "reasonably implemented," 17 U.S.C. § 512(i)(1)(A). Marketplace domains *are* an important part of Google's repeat-infringer policy: ████

Google then claims it need not produce further discovery because it previously produced two documents. Dkt. 724 at 2. But these documents only underscore why "marketplace" domains must be included. ████ The second doesn't discuss marketplace domains, but instead discusses "High Confidence Sites." GOOG-CENG-00416952 at -6953. ████

Other documents confirm this. One response Google sent to a rightsholder says, ████ GOOG-CENG-00367214. ████

2

Hon. Barbara Moses
March 9, 2026
Page 3 of 5

Google wishes to exclude these marketplace websites from discovery because ▌ ▌ The Court should not allow Google to hide this evidence.

## II. Googleadservices.com

Google next seeks to exclude the domain "googleadservices.com." Dkt. 724 at 2 ("Second"). Once again, Google is trying to exclude the sites to which Google did not enforce its ▌-strike policy. Google allows Shopping Ads to link to the domain googleadservices.com, which then redirects to a third-party site that has infringing products. Dkt. 724 at 2. But Google's documents show that when Google receives an infringement notice listing a URL from the googleadservices.com domain, Google responds by ▌ ▌ and asks the ▌ Indeed, Google's production contains several instances where a notice contains a googleadservices.com URL, Google tells the complainant t▌ ▌ GOOG-CENG-00295284; GOOG-CENG-00360377; GOOG-CENG-00360991; GOOG-CENG-00394158.

Thus, even though Google knows what is the pirate website to which its googleadservices.com URL linked, Google ▌ ▌

As it did with marketplace domains, Google is attempting to hide from the factfinder the very instances in which Google did *not* apply its ▌-strike policy.

## III. ▌ and ▌

Google next seeks to exclude from its selection two more domains: ▌ and ▌ Dkt. 724 at 3 ("Third"). Once again, Google is trying to exclude from its selection those websites to which Google failed to apply its ▌-strike policy. The first site, ▌, is listed Google's ▌ GOOG-CENG-00439752.C (row 3627). ▌ Further, Google says there are ▌ notices containing more than ▌ URLs for these two websites. Dkt. 724 at 3 n.1. With that many notices, these sites likely should have been suspended long before that many notices were sent.

Moreover, Google's claim of burden almost certainly is inflated. Google's documents claim that across its Shopping platform, it received notices concerning only ▌ URLs. Dkt. 237 at 3. But Google says that for these two websites alone, it received notices concerning ▌ URLs. Dkt. 724 at 3 n.1. This means that the ▌ includes notices concerning platforms *other than Shopping*, which Plaintiffs have not requested as part of this discovery.

---

[1] The ▌ GOOG-CENG-00439752.C (row 904).

3

Hon. Barbara Moses
March 9, 2026
Page 4 of 5

## IV. EU Merchants

Google then claims that it cannot produce data concerning ▮ Merchant Center accounts because doing so "implicates various European data protection laws, including GDPR." Dkt. 724 at 3 ("Fourth"). Google does not claim that European law *prohibits* the production of this data. Still less does Google cite any actual provisions of European law, or explain why European law would apply here. The Court should not entertain such a vague and unsupported contention.

Moreover, the Google Merchant Center Terms of Service incorporate Google's privacy policy (Ex. 2 ¶ 3(b)) which explicitly says that users' "information may be used or disclosed . . . in response to legal process or enforceable government requests . . . ." Ex. 3 at 20, 21. It goes on to say, "We will share personal information outside of Google if . . . necessary to: Respond to any applicable . . . legal process . . . ." Ex. 3 at 14. Thus, Google likely has the contractual right to comply with the Court's Order and turn over this basic information.

## V. Google should be ordered to produce discovery into all 34 of these websites.

Google should not be allowed to produce only that evidence that is favorable to Google. The Court should require Google to produce the discovery Google said it would concerning all 34 of these sites.

In the alternative, Google should be required to produce discovery that will allow Plaintiffs to test Google's actions with respect to marketplace domains, googleadservices.com URLs, and the two high-volume sites. With respect to marketplace domains, for example, Google should be required to explain ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, then provide discovery showing whether it actually does so. If a short 30(b)(6) deposition is the most efficient way to understand ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the parties should conduct one.

With respect to googleadservices.com, Google should be required to disclose how many notices it received containing URLs from this domain, and how many of these notices Google ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

And as to ▮▮▮▮▮▮ and ▮▮▮▮▮▮, Google should be required to provide the notices it received concerning these domains, so that Plaintiffs can determine on what dates these domains ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Google can then stipulate that it ran ads for those domains after ▮▮▮▮▮▮▮▮▮▮.

## VI. Google's Eleventh-Hour Request for an Extension

Barely twelve hours before the Court's March 6 deadline, Google informed the Court for the first time that Google intended not to meet that deadline. What's more, Google has failed to comply with the Court's deadline not just with respect to the 34 websites Google says are "in dispute," but also with respect to the 266 websites that it says "are not in dispute." Dkt. 724 at 3. As to the latter, without even bothering to ask for the Court's permission, Google proclaims that it "expects to be able to produce" *some* of the Court-ordered data by March 16. It then "respectfully requests" the Court's permission to produce the remaining data for those 266 sites (though only for those Merchant Center accounts that Google claims are not from the EU) by March 30.

Google has had since December 15 to produce this discovery. Two-plus months is more than enough time for Google to have raised, and resolved, these issues. Google is one of the largest

4

Hon. Barbara Moses
March 9, 2026
Page 5 of 5

tech companies in the world and seeks to be exempted from more than $1 billion in damages. The Court should not indulge Google's attempt to renege on the discovery and the deadlines that Google itself proposed.

                                                   /s/ *Jeff Kane*
                                                   Jeff Kane

                                                   *Counsel for Plaintiffs*