**Sy Damle**
Direct Dial: +1.202.637.3332
sy.damle@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

March 30, 2026

**VIA ECF**

The Honorable Barbara C. Moses
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, New York 10007

> Re:  *Cengage Learning, Inc. et al. v. Google LLC*, No. 1:24-cv-04274-JLR-BCM
>      <u>Letter Motion to Stay Discovery in Light of Supreme Court's Decision in *Cox*</u>

Dear Judge Moses:

We represent Google in the above-captioned matter.  On March 25, the Supreme Court issued a decision in *Cox Communications, Inc. v. Sony Music Entertainment*, 607 U.S. ___, 2026 WL 815823 (Mar. 25, 2026) (attached as Exhibit A).  In light of that decision, which clarifies and significantly narrows the standard for contributory copyright infringement liability (and unequivocally forecloses Plaintiffs' contributory infringement claim), Google intends to file, by April 17, 2026, a motion for partial judgment on the pleadings pursuant to FRCP 12(c).  Given that the vast majority of discovery has centered around Plaintiffs' contributory copyright infringement claim, we respectfully request a stay of discovery while Google's Rule 12(c) motion is pending.[1]  A pause in litigation will also allow the Parties to discuss potential resolution of the remaining trademark infringement claim, which has materially lower economic stakes than the copyright infringement claim.  Given the significant change in underlying law and the Parties' imminent discovery burdens, Google respectfully requests that the Court consider this issue at its upcoming April 7 hearing.

Courts have "considerable discretion" to stay discovery for good cause pursuant to FRCP 26(c).  *Oliver v. City of New York*, 540 F. Supp. 3d 434, 435 (S.D.N.Y. 2021).  That Rule permits courts to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1). A court considering a request to stay discovery "must look to the particular circumstances and posture of each case" and should consider "multiple factors, including the breadth of discovery sought, the burden of responding to it, the prejudice that would result to the party opposing the stay, and the strength of the pending motion forming the basis of the request for stay." *Republic of Turkey v. Christie's, Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018).  Ample reason exists for a brief discovery stay here.

---

[1] Lead counsel conferred on March 30.  Plaintiffs did not agree to a stay.

LATHAM&WATKINS LLP

**_Cox_ provides a strong basis for a stay**. In *Cox*, the Supreme Court clarified the appropriate standard for contributory copyright infringement liability. Setting aside the Fourth Circuit's determination that internet service provider Cox was contributorily liable for continuing to provide internet service to known infringers, the Supreme Court held that contributory infringement does not extend beyond the narrow categories recognized by *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005), and *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984). Under those precedents, a "provider of a service" is contributorily liable for its users' infringement "*only* if it *intended* that the provided service be used for infringement." 2026 WL 815823, at *6 (emphasis added). Moreover, that specific intent can be shown in two, and only two, circumstances: (1) the service provider "induced" the infringement, meaning that it "actively encourage[d] infringement through specific acts," and "express[ed] an affirmative intent that the product be used to infringe," such as by "promot[ing] and market[ing]" the ability of a service "to infringe copyrights"; *id.* (internal citations omitted); or (2) the service provider's service "is tailored to that infringement," meaning that it is "not capable of substantial or commercially significant noninfringing uses;" *id.* The Second Circuit's previous, more permissive, standard for contributory liability—extending to anyone who, "with knowledge of the infringing activity … materially contributes" to infringing conduct, *Gershwin Publ'g Corp. v. Columbia Artists Mgmt.*, 443 F.2d 1159, 1162 (2d Cir. 1971)—is no longer good law.

*Cox* unequivocally forecloses Plaintiffs' contributory infringement claim here. Plaintiffs' core theory—that Google is liable because it continued to provide so-called "pirate" merchants with access to Google's Shopping platform after receiving notices of copyright infringement—is not viable under *Cox*. *See, e.g.*, Dkt. 38 (FAC) ¶ 126 ("[D]espite the Publishers' notices, Google has continued to create and disseminate Infringing Shopping Ads for its repeat infringer Pirate Sellers, to actively promote Pirate Sites through such ads, and to provide services to increase the efficacy of those ads."). Indeed, *Cox* specifically holds that "contributory liability cannot rest only on a provider's knowledge of infringement and insufficient action to prevent it." 2026 WL 815823, at *7. To maintain a viable contributory infringement claim after *Cox*, Plaintiffs must show that Google *intended* its Shopping platform to be used to find or sell infringing products, either by inducing the use of its platform for infringing purposes or by designing its Shopping platform to facilitate infringement. Plaintiffs have not pleaded that and cannot show that.

First, Plaintiffs do not allege that Google actively induced or encouraged its users to infringe in the manner contemplated by *Grokster* or *Cox*. At most, they allege that the Shopping platform offers various features that have the *effect* of directing users to "search for and select Infringing Works." *See, e.g.*, FAC ¶ 57. This is insufficient under *Cox*, which requires the defendant to "express 'an *affirmative intent* … to infringe.'" *Cox*, 2026 WL 815823, at *6 (quoting *Grokster*, 545 U.S. at 936) (emphasis added); *id.* (collecting cases where defendants "promoted and marketed" their services' or products' ability to infringe). The complaint is devoid of any allegation (and the record is devoid of any evidence) that Google ran its Shopping platform with the "object of promoting its use to infringe copyright," *Grokster*, 545 U.S. at 936—for example, by actively encouraging merchants to advertise pirated ebooks or intentionally promoting the Shopping platform as a tool for discovering infringing products. Plaintiffs' allegations make clear that Google did *not* promote Google Shopping that way. *See* Dkt. 38 ¶ 60 (alleging that Google

LATHAM&WATKINSLLP

"assures consumers that it takes robust measures to rid its platform of ads for infringing products"); *id.* ¶ 68 ("Google's policy is to ban ads for all standalone digital books").

Second, Plaintiffs do not allege that the Shopping platform is "tailored" to infringement. To the contrary, Plaintiffs concede that Google Shopping is a content-neutral platform that aims to "[s]how people the most comprehensive search results for products online." *Id.* ¶ 39. Nor could they allege otherwise: the overwhelming majority of activity on Shopping is non-infringing and this case concerns a tiny fraction of bad actors. Like the VCR in *Sony*, the Shopping platform is "widely used for legitimate, unobjectionable purposes." *Sony*, 464 U.S. at 442.

In short, *Cox* is fatal to Plaintiffs' contributory infringement claim and drastically alters the shape of this case and the scope of relevant discovery. Almost all discovery produced thus far has centered on what Google knew about merchants who advertised infringing products, its handling of copyright infringement notices, and its treatment of repeat infringers. The majority of the Parties' discovery disputes, too, have related to these topics. *See, e.g.*, Dkts. 72, 217, 221, 359, 441, 472, 597, 751. While those issues were arguably relevant to the Second Circuit's old contributory infringement test, they are irrelevant to Google's potential liability after *Cox*. Their only potential relevance now is to Google's DMCA safe harbor defense. But since Plaintiffs cannot possibly show that Google's conduct meets the *Cox* standard for contributory liability in the first place, Google will be withdrawing its reliance on the DMCA defense for this matter. *See Cox*, 2026 WL 815823, at *7 (explaining that the DMCA "merely creates new *defenses* from liability" and does not bear on whether the provider's conduct is infringing). Plaintiffs have used Google's assertion of the DMCA defense to justify significant and burdensome discovery into Google's processes for responding to infringement notices and its treatment of merchants subject to those notices. Although Google believes that it complied with the requirements of the DMCA, it will not continue to expend resources mounting a defense to a claim that cannot withstand a Rule 12(c) motion.

**Proceeding with discovery will impose significant and needless burdens on the Parties and the Court**. Proceeding with further document discovery and depositions before the Court has had the opportunity to assess what, if anything, about Plaintiffs' contributory copyright infringement claim survives *Cox* would impose substantial burden and expense on the Parties (and individual deponents). *See Choudhury v. NYC Health & Hosps. Corp.*, 2025 WL 2977837, at *5 (S.D.N.Y. Oct. 22, 2025) (staying depositions and expert discovery since "those aspects of discovery tend to generate substantial work and expense"); *Maadanian v. Mercedes-Benz USA, LLC*, 2022 WL 17415466, at *1 (W.D. Wash. Dec. 5, 2022) (staying discovery where "[r]esponding to discovery regarding claims or entities that are likely to be dismissed would undoubtedly cause defendants unnecessary burden and expense"). The Parties are just beginning what will no doubt be an intensive two-to-three month period of depositions. The Parties have collectively noticed 32 depositions, of which 27 have yet to be taken. This does not include the number of deponents who will testify on behalf of a Party only as a 30(b)(6) designee. Moreover, Plaintiffs have noticed two depositions of Google employees that will need to take place abroad and one of Plaintiffs' 30(b)(6) designees is located abroad. Without a stay, the Parties will need to expend significant time and resources continuing to negotiate the scope of testimony, if any, to be provided on the 73 topics in Plaintiffs' 30(b)(6) Notice to Google and preparing for, taking, and

LATHAM&WATKINS LLP

defending more than 27 depositions.  But the ***vast majority*** of these depositions will concern testimony that relates primarily or exclusively to Plaintiffs' now-foreclosed copyright claim. Indeed, only *one* Google employee scheduled to sit for a deposition in the next month would offer testimony on trademark rather than copyright-related topics.

Setting that issue aside, at a minimum the Parties will need to negotiate which depositions should move forward and which 30(b)(6) topics remain relevant now that Google is dropping its DMCA defense.  Google anticipates that the Court's own resources will be consumed resolving disputes regarding the new scope of discovery in light of that development, even though the contested discovery will almost certainly prove to be *entirely irrelevant* to any viable claim after Google's Rule 12(c) motion is resolved.  And Plaintiffs continue to raise document discovery disputes that, from Google's perspective, appear to relate only Plaintiffs' copyright claim and Google's dropped DMCA defense.  Litigating all of these disputes, too, would be a waste of the Parties' and the Court's resources if the contributory infringement claim does not survive (which it should not).

**Plaintiffs will not be prejudiced**. Google does not assert that *Cox* requires dismissal of Plaintiffs' trademark claim on the pleadings, nor does Google seek to stay discovery as to that claim permanently.  However, a short stay will not prejudice Plaintiffs' ability to pursue that claim in any meaningful way.  To the contrary, because the contributory copyright infringement claim has driven a significant share of the discovery conducted and disputes raised to date, a short pause will give the parties an opportunity to confer and narrow the scope of remaining discovery to eliminate unnecessary depositions, document requests, and other discovery directed solely at Plaintiffs' copyright claim.  To be sure, there may be some overlapping discovery that remains relevant to Plaintiffs' trademark claim.  But the proportionality calculus has shifted dramatically in light of *Cox*.  Plaintiffs were seeking over $1 billion in damages on their copyright claim.  *See, e.g.*, Dkt. 745 at 5; Hr'g Tr. at 102:8 (Mar. 10, 2026).  By contrast, the maximum damages Plaintiffs can seek on their trademark claim is just $24 million ($2 million per mark).  *See* 15 U.S.C. § 1117(c)(2).

A brief stay will also allow the parties to have a meaningful opportunity to explore whether, in light of the substantially changed legal landscape, a private resolution of this case is possible. This result would serve the interests of judicial economy, conserving the resources of the Court and the Parties alike.  *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012) (granting stay where a Supreme Court decision "may not settle every question of fact and law … but in all likelihood it will settle many and simplify them all") (internal citation omitted)).  Subject to the Court's availability, Google requests a status conference in June during which the Parties can update the Court on any settlement discussions.

Respectfully submitted,

/s/ *Sarang Vijay Damle*
Sarang Vijay Damle
of LATHAM & WATKINS LLP

cc: All Counsel of Record (via ECF)