**O+Z** | **Oppenheim + Zebrak, LLP**
WASHINGTON – NEW YORK

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
jkane@oandzlaw.com

April 2, 2026

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

> **Re:**  *Cengage Learning, Inc. et al. v. Google LLC*, **No. 24:cv-04274-JLR-BCM**
> **Plaintiffs' Opposition to Google's Motions for Protective Orders (Dkts. 773, 776)**

[Redacted]

Dear Judge Moses,

We represent all Plaintiffs in this matter. We write in opposition to Google's Motions for Protective Orders concerning the depositions of Adam Crider (Dkt. 773) and Caleb Donaldson (Dkt. 776).

Google's latest refusal to provide discovery is yet another attempt to hide from the factfinder relevant and damaging evidence. Adam Crider and Caleb Donaldson have knowledge of several important topics: Google's policy and practice of ███████████████████████ ███████████████████████████████████, Google's ludicrous claim that conversations between Crider, Donaldson, and Plaintiffs' counsel led Google to believe that advertising pirated copies of Plaintiffs' works was *legal*, and Google's unsupported claim that it took numerous actions to attempt to eliminate pirate ads for Plaintiffs' works. The Court should allow the depositions of these witnesses to proceed.

## I.    Legal Standard

Google overstates the law on deposing attorneys. The Second Circuit has cautioned that "the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2d Cir. 2003) (Sotomayor, J.)[1]. Indeed, the Second Circuit has rejected the approach of the Eighth Circuit in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir.1986), whereby in order to depose counsel, a party must show that "'no other means exist to obtain the information sought," and that "the information is crucial to the preparation of the case." *Friedman*, 350 F.2d at 1323 (quoting *Shelton*, 805 F.2d at 1327). Instead, the Second Circuit endorsed a "flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all

---

[1] The *Friedman* decision formally is dicta, as the panel ultimately dismissed the appeal as moot after the lawyer consented to the deposition.

Hon. Barbara Moses
April 2, 2026
Page 2 of 6

of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." *Friedman*, 350 F.3d at 72.

*Friedman* directed courts to consider "all of the relevant facts and circumstances" in determining whether to allow the deposition of an attorney to proceed, which "may include": "the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *Id.*

Here, each of these factors shows that deposing Crider and Donaldson is appropriate. Crider and Donaldson have key knowledge about exceptions to Google's DMCA policy for ▬▬▬ ▬▬▬▬▬▬▬▬. They are important fact witnesses for Google's equitable estoppel and waiver defenses, and to Google's claim that it ▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬. There is minimal risk of encountering privileged material because for much of these areas, the privilege was waived or never existed in the first place. And Google's discovery to date has produced little (and in some cases no) substantive information about these topics.

## II.    Crider and Donaldson's knowledge of and involvement in Google's DMCA policy renders them key witnesses.

Crider and Donaldson implemented exceptions to Google's DMCA Policy that ▬▬▬ ▬▬▬▬▬▬▬▬. This conduct is relevant to Google's intent, its willfulness, and to the need for deterrence.

Google's DMCA policy provided that accounts that reach ▬▬ "strikes" ▬▬▬▬ ▬▬▬ should be ▬▬▬▬▬. Dkt. 593-8 (GOOG-CENG-00000685) at -0685. But when an ▬▬▬▬▬▬▬▬ account reached ▬▬ strikes, Google did not automatically ▬▬▬▬ ▬▬▬ Instead, Google personnel ▬▬▬▬▬▬▬ to Crider and Donaldson. Dkt. 593-8 at -0687. Likewise, what Google claims is the DMCA policy in effect prior to the relevant period provides that Copyright Counsel (Donaldson) ▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬. Dkt. 593-14.

The ▬▬▬▬ designation is ▬▬▬▬▬▬▬ Dkt. 645-1 (GOOG-CENG-00433532 at -3534). And ▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬ Rough Transcript of the Mar. 24, 2026 Deposition of Jason Szczech ("Szczech Tr.") 47:7–49:6. Google's policy thus protected ▬▬▬▬ customers at the expense of copyright and trademark holders.

Even if Google withdraws its DMCA defense, Google's DMCA policy was still in place during the relevant period, and the reasonableness of that policy, and Google's failure to adhere to it, still is important evidence. In particular, Google's policy of ▬▬▬▬▬▬ ▬▬▬▬▬▬ is key evidence of culpability and the need for deterrence (a statutory damages factor, *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986)), Google's intent, *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 940 (instructing court below to "infer[]" the requisite intent to induce infringement "from statements and actions showing what that objective was"), and of Google's willfulness (17 U.S.C. § 504(c)(2)). Plaintiffs remain entitled to discovery concerning these important exceptions to Google's ▬▬ strike policy. If Google intends to tell the jury that Google's advertisement of pirated

ebooks should be excused, or that damages should be reduced, because Google had a formal program to take down pirated materials and suspend pirates, Plaintiffs are entitled to test that contention. Discovery into what exactly these exceptions were, how they operated, and any facts bearing on why Google mandates these ███████ but not others, remains appropriate.

Crider and Donaldson claim they "advise[d]" on Google's "legal obligations" during these ███████ Dkt. 773-1 ¶ 4; Dkt. 776-1 ¶ 4. But their declarations do nothing to explain from whom they received these ███████ how frequently and when they occurred, how ███████ decisions were made following these ███████ or why Google's copyright policy required ███████████████████████████████ ███████, but not for merchants who may, for example, require additional legal guardrails due to the nature of their products. Crider and Donaldson remain key fact witnesses to these exceptions, and deposing them is appropriate.

Moreover, in deposition, Google has advanced the argument that its failure to remove ads for pirated ebooks should be excused because Google did not wish to create a situation where ███ ██████████████████. Szczech Tr. 226:4–10 ███████████ ███████████████████████████████████ ) That Google treated copyright infringement by its ███████████████████ contradicts Google's narrative.

Crider and Donaldson claim in their declarations that their "only role was to advise the ███ team on whether a particular course of action complies with Google's legal obligations." Dkt. 773-1 ¶ 4; Dkt. 776-1 ¶ 4. This claim does not render their depositions unnecessary.

First, as discussed above, Google's documents say otherwise. Dkt. 593-8 at -0687; Dkt. 593-14 (GOOG-CENG-00441738) at -1738. Notably here, Donaldson only states that "I do not take any actions against an account that is determined should be suspended" but *not* that he takes no part in determining whether it "should be suspended." Dkt. 776 ¶ 4. Plaintiffs thus are entitled to question Crider and Donaldson about this inconsistency. And neither witness assigns a time-period to their descriptions.

Second, to the extent Google intends to invoke its copyright takedown policy (i.e. its DMCA program) as a reason that Google should not be found liable, or should be subject to lower damages, these important "exceptions" to its DMCA policy for ███████████████ remain relevant and discoverable, including Crider's and Donaldson's participation that is mandated by Google's copyright policy and built into its *very process*. To the extent that in-house counsel's built-in participation in these mandatory ███████ is ███████████ any privilege that otherwise attaches is waived. Transcript of March 10 Hearing ("Tr."), 118:10–18. Plaintiffs are entitled to test Google's claims about what that "process" entails, including by deposing the very attorneys tasked with handling the ███████ that unquestionably are part of the process.

Third, Google's untested claims of privilege should be viewed with skepticism. Just this week, Google withdrew its claim of privilege over a document called the "Google Shopping Playbook." Google's privilege log described this document as a "Memorandum reflecting legal advice of Adam Crider* regarding copyright policy compliance." Dkt. 593-1 (Google's Privilege Log #1, No. 110). Google previously contended that it had conducted a "thorough re-review" of

Hon. Barbara Moses
April 2, 2026
Page 4 of 6

this document and concluded that "the confidential legal advice of the attorney noted in the privilege description *pervades the document* . . . ." Dkt. 593-6 at 7, 19 (emphasis added). After Plaintiffs selected that document for *in camera* review, however, Google changed its mind, and concluded that the *entire* document contained *no* privileged materials. 26.03.20 Email from Latham to Judge Moses's Chambers. This change in position should make the Court reluctant to trust Crider and Donaldson's untested statements about privilege.

## III.    Crider and Donaldson performed relevant non-legal functions.

Crider and Donaldson also performed relevant non-legal functions.

For example, Crider was responsible for handling certain ▮▮▮▮▮▮ that often were performed by a non-lawyer. In one document, ▮▮▮▮▮ (a member of Google's Trust and Safety group, and a non-lawyer) complains that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" Attorney Declaration of Jeff Kane, Ex. 1 (GOOG-CENG-00424423) at -4427.[2] The document goes on to explain that these ▮▮▮▮ were supposed to be handled by Crider. And that role is decidedly non-legal: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* Indeed, the document suggests that additional non-lawyers be trained to perform this function. *Id.* Plaintiffs are entitled to test Google's claims about its attorneys' roles in copyright ▮▮▮▮▮ by asking Crider whether he indeed performed these non-legal functions, and why he was expected to perform them. Moreover, a fact witness's knowledge about the copyright ▮▮▮▮▮ discussed in GOOG-CENG-00424423 is itself discoverable, not least because Google's copyright policy requires ▮▮▮▮▮▮▮▮▮▮, as explained above.

Google's documents likewise reveal that Crider's role included other non-legal functions. A presentation slide titled "Product Counsel's Role" lists two of Crider's roles as to "represent company values," and to weigh in on policy issues such as, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 2 (GOOG-CENG-00417893) at -7197. Altering the company's copyright policy and weighing in on policy determinations like this are relevant to Google's state of mind and intent.

## IV.    Crider and Donaldson are fact witnesses for the estoppel and waiver defenses Google has asserted, and for Google's claims that it tried to address ebook piracy.

Google has asserted the defenses of equitable estoppel and waiver. Am. Answer, Dkt. 271 at 23 (Fourth Defense). Years before the instant suit began, Plaintiffs engaged in conversations with Crider and Donaldson in an effort to stop the piracy. According to Google, in all of that correspondence, Plaintiffs never "suggested . . . that Google's conduct infringed Plaintiffs' copyrights or trademarks. To the contrary, [Plaintiffs] explicitly concede that Google engaged in conversations with Plaintiffs to try to work together to prevent third-party infringement of Plaintiffs' intellectual property." Dkt. 166 at 12. Incredibly, Google goes a step further and claims

---

[2] The document does not make clear whether these are the ▮▮▮▮▮▮▮▮▮▮ referenced above, or another form of ▮▮▮▮▮.

Hon. Barbara Moses
April 2, 2026
Page 5 of 6

that based on its conversations with Plaintiffs, Google "believe[d] that its conduct was not infringing . . . ." Opp. to Mot. to Strike, Dkt. 166 at 12.

Setting aside that these facts do not make out Google's estoppel or waiver defenses, this renders Crider and Donaldson relevant witnesses. First, as a factual matter, Crider and Donaldson participated in the "conversations" with Plaintiffs' counsel that Google has invoked to support its affirmative defenses. Therefore, they will need to testify about what Google claims Plaintiffs said that left Google with the impression that Google was not infringing Plaintiffs' copyrights and trademarks. For example, Judge Rochon held that to prove its estoppel defense, Google will need to show that Plaintiffs committed "an act constituting a concealment of facts or a false []representation." Dkt. 230 at 16. Having interacted with Plaintiffs' counsel through email correspondence and/or meetings, Crider and Donaldson are critical fact witness through whom Google's claim of concealment can be tested.

Second, by claiming that Google "believe[d] that its conduct was not infringing . . . ." Dkt. 166 at 12, Google essentially is invoking a good-faith defense. Google cannot then hide the factual issue of (1) what Google claims to have learned from Crider and Donaldson from these discussions that formed the basis for its supposed "belie[f]"; and (2) whether Crider and Donaldson ever advised Google that advertising pirated ebooks could lead to liability for Google. *PRCM Advisers LLC v. Two Harbors Inv. Corp.*, 2022 WL 18027566, at *6 (S.D.N.Y. Dec. 30, 2022) (Moses, J.) ("[A] party need not explicitly rely upon advice of counsel to implicate privileged communications. Instead, advice of counsel may be placed in issue where, for example, a party's state of mind, such as his good faith belief in the lawfulness of his conduct, is relied upon in support of a claim[.]") (citations omitted).

Third, Crider and Donaldson's discussions with Plaintiffs' counsel concerned the problem of Google's Shopping Ads for pirated copies of Plaintiffs' works. Among other things, Donaldson reported to Plaintiffs that Crider was "looking into policy fixes," (PL0000525357), and that Google was considering requiring merchants to provide proof of authorization to advertise copyrighted works (PL0000525313). Donaldson corresponded with Plaintiffs' counsel in August/September 2019 regarding infringement notices Plaintiffs had sent to Google, so that Donaldson could, in his words, "make sure [the notices are] getting the appropriate attention." PL0000524360. Both Crider and Donaldson participated in an hour-long call in December 2020 with Plaintiffs' counsel and other Google personnel concerning the problem of Shopping Ads for pirated textbooks. Dkt. 161 ¶ 13. And Crider and Donaldson likely participated in many other calls and meetings on these issues inside Google.

Crider and Donaldson, therefore, are witnesses to at least two important issues: Google's full and long-term knowledge that it ran voluminous Shopping ads for pirated copies of Plaintiffs' works, and Google's persistence in running those ads with that knowledge. Crider and Donaldson's testimony on these subjects is important and discoverable. Their conversations with Plaintiffs' counsel, naturally, are not privileged. And their knowledge bearing on Google's persistence in running infringing ads even after these conversations is likewise not privileged. Because Google claims that it "believe[d]" its advertising of pirated copies of Plaintiffs works was legal (Dkt. 166 at 18), discovery into Crider and Donaldson's inquiries and activities following these conversations is necessary to test Google's claim of "reasonable . . . belie[f]" on which its estoppel and waiver defenses rest.

Hon. Barbara Moses
April 2, 2026
Page 6 of 6

## V.    Conclusion

The court should deny Google's motions for protective orders.[3]

/s/ *Jeff Kane*
Jeff Kane

*Counsel for Plaintiffs*

---

[3] Google filed two separate motions for protective orders (Dkts. 773 and 776). Rather than file two separate oppositions, Plaintiffs have file this single consolidated opposition. The opposition is 2,605 words. To the extent that this might be viewed as surpassing the Court's 2,000-word limit for letter briefs (Judge Moses Individual Practices § 1(d)), Plaintiffs respectfully request leave to file the attached letter.