

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
jkane@oandzlaw.com

April 5, 2026

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

> Re: ***Cengage Learning, Inc. et al. v. Google LLC***, **No. 24:cv-04274-JLR-BCM**
> **Plaintiffs' Opposition to Google's Motion (Dkt. 790) to Extend the Deadline to**
> **Produce Custodial Documents**

[Redacted]

Dear Judge Moses,

    We represent all Plaintiffs in this matter. We write in response to Google's letter (Dkt 790) requesting an extension of the deadline to produce documents from ███████████.

### I.    Google has no basis for yet further delay.

    At the March 10 hearing, the Court ordered Google to produce documents from Mr. ████████ by April 10. Dkt. 763 at 172:13 (Mar. 10, 2026 Hr'g Tr.). Google requested that the Court schedule a "touch point in between now and whatever the deadline is so that we could let you know if there's any *unforeseen issues* that arises [sic]." Dkt. 763 at 172:4–7 (emphasis added). The Court ordered that "[n]o later than April 3, 2026, Google must provide the Court with an update as to the progress of its production as to Mr. L." Dkt. 751 ¶ 3(a). The Court instructed Google:

> [W]hy don't I give you a touch point of, let's say, a week prior to that, which would be April the 3rd. *If you genuinely can't do it and you can be concrete about why you genuinely can't do it*, after you meet and confer with the plaintiffs and try and work something out, write me a letter on April the 3rd and tell me what the problem is.

Dkt. 763 at 172:18–22 (emphasis added).

    On Friday, Google filed a motion seeking to extend the production deadline to April 21. Dkt. 790. But despite the Court's instructions, Google did not point to anything "concrete" demonstrating that Google "genuinely can't" meet the Court's deadline. Nor did Google cite any "unforeseen issues" that caused delay. Instead, Google reported only that the parties did not reach an agreement to narrow the applicable search-terms. This was hardly unforeseen. Plaintiffs' counsel predicted it. Dkt. 763 at 109:21–23 ("I fear that if you tell us to go back and negotiate search terms, that we'll be back before you with a dispute . . . ."). Google's counsel predicted it. Dkt. 763 at 172:24–173:1 ("We just need a little bit of time to see if, *by some miracle*, we can negotiate a smaller set of search terms.") (emphasis added). And the Court not only predicted it,

Hon. Barbara Moses
April 5, 2026
Page 2 of 3

but instructed Google what to do in the event that an agreement was not reached: apply all of the existing search-terms to Mr. ▆▆▆▆▆'s documents. Dkt. 751 ¶ 3(a) ("[I]f the parties are unable to reach an agreement, Google must run the search using the previously agreed-upon custodial search terms . . . ."). *See also* Dkt. 763 at 114:2–6 ("But because I don't want you to come back to me with arguments about this search term versus that search term versus the other search term, I'm afraid the default is going to be, *if you can't agree, that he's a full custodian*.") (emphasis added).

Despite this, the only reason Google cites for its delay is the one everyone predicted from the start: that Google would need to run all search-terms on Mr. ▆▆▆▆▆ documents. Dkt. 790. This is not a reason that Google "genuinely can't do it . . . ." Dkt. 763 at 172:18–22. First, Google has refused to tell Plaintiffs or the Court how many of the documents returned by these searches are unique, i.e., how many *were* returned by Mr. ▆▆▆▆▆'s documents, but were *not* also returned by the documents of other custodians (and therefore already reviewed). Thus, no one except Google knows how many documents Google actually has to review. That number could be the 5,867 total hits (Dkt. 790 at 1), or it could be 0.[1] Indeed, in opposing Plaintiffs' motion to compel, Google argued that Mr. ▆▆▆▆▆ documents would be "duplicative" of other custodians. Dkt. 692 at 1, 4. If Google is right, then the number of documents it actually has to review is far less than 5,867. The Court should not grant an extension based on a burden argument that Google has done nothing to substantiate.

Second, Google's has known for weeks that Plaintiffs' position is that neither side can narrow the search-terms unless Google provides a hit-count of unique documents. Yet Google does not report that it will make even a partial production by the Court's April 10 deadline. For example, Google's narrowing proposal involved only five of the twenty search-terms. 26.26.03.18 Latham Email. But Google refuses to commit to producing even *those* documents by the April 10 deadline. Google has only vaguely said that it has "started" this review. Dkt. 790 at 2. That, of course, could mean that Google has reviewed one document. Indeed, when Plaintiffs conferred with Google on April 2 (just one day before Google filed its letter), Google refused to indicate whether it had begun reviewing the documents returned by those fifteen searches. This does not give the appearance of even a good faith effort.

Third, extending the deadline to produce Mr. ▆▆▆▆▆'s documents would require postponing his April 23 deposition. Google should not be allowed to extend a discovery process that already has lasted more than eighteen months.

This Court should order Google to produce all of Mr. ▆▆▆▆▆'s documents by April 10, and to conduct Mr. ▆▆▆▆▆'s deposition April 23.

## II.    Google may not withhold documents that pertain to its overall DMCA program.

In the weeks after the Court ordered Google to produce Mr. ▆▆▆▆▆'s documents, Google withdrew its DMCA defense. E.g., Dkt. 790 at 1 n.1; Dkt. 792 at 3. Plaintiffs suspect that because of this long-overdue concession, Google may take the position that it now may withhold certain categories of Mr. ▆▆▆▆▆'s documents as irrelevant. To do so would be improper. As Plaintiff

---

[1] As Google notes in its letter, this is the reason Plaintiffs could not agree to Google's narrowing proposal. I.e., Google refused to say how many *additional* documents the searches returned.

Hon. Barbara Moses
April 5, 2026
Page 3 of 3

explained in the April 3 Joint Status Report (Dkt. 792), even with Google's long-overdue withdrawal of this defense, Google's copyright policy and DMCA program still are directly relevant to Google's liability and willfulness. The features of Google's policy (e.g., its explicit provision of ███████████████████████████ customers, and its apparent lack of any ██████ ████████████████████████████████████████), Google's haphazard systems for enforcing it (including its ████████████████████████████████), and Google's failure to comply with the policy (including its failure to delist ads and suspend merchants in accordance with the policy) all are important evidence of Google's intent, culpability, and of the need for deterrence. Google may not withhold documents from Mr. ████████ that bear on Google's DMCA policy on a theory that the policy no longer is relevant.

## III.    Conclusion

This Court should deny Google's request to extend the April 10 deadline to produce Mr. ████████'s documents, and should order Google to conduct Mr. ████████'s deposition, as scheduled, on April 23.

Respectfully submitted,

*/s/ Jeff Kane*
Jeff Kane