**O+Z** | Oppenheim
+ Zebrak, LLP

WASHINGTON – NEW YORK

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
jkane@oandzlaw.com

April 6, 2026

<u>**VIA ECF**</u>

The Honorable Jennifer L. Rochon
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1920
New York, NY 10007

> Re:    *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
> **Plaintiffs' Opposition to Google's Motion (Dkt. 771) to Stay All Discovery**

[Redacted]

Dear Judge Rochon,

We represent all Plaintiffs in this matter. We write in opposition to Google's motion (Dkt. 771) to stay all discovery.

This Court previously denied a request from Google's to stay all discovery pending the Supreme Court's decision in *Cox Commc'ns, Inc. v. Sony Music Ent.*, No. 24-171 (U.S.). Dkt. 191. This Court explained that "[e]ven if the Supreme Court adopts a more demanding standard for contributory copyright infringement . . . ongoing discovery in this case would still be relevant . . . ." *Id.* at 5. The Supreme Court has now decided *Cox*. 2026 WL 815823 at *6 (U.S. Mar. 25, 2026). But, untroubled by the Court's prior holding, Google again seeks a stay. This Court was right the first time. The discovery Plaintiffs seek remains necessary after the *Cox* decision.

Google predicts that its as-yet-unfiled motion for judgment on the pleadings will be so meritorious that not only will the Court grant it, but discovery should be halted before Google even files its motion. Google is wrong. *Cox* makes clear that a defendant is liable for contributory infringement if the defendant "actively encourage[d] infringement through specific acts." *Cox*, 2026 WL 815823 at *6. Google advertised books it knew were counterfeit, on behalf of merchants it knew were pirates, at prices it knew were too good to be true, to consumers who purchased those infringing works by clicking on Google's advertisements. These are "specific acts" that "actively encourage[d]" infringement. The Court should deny Google's motion.

**I.      This Court correctly held that discovery should continue despite *Cox*.**

Last July, Google moved for a stay after the Supreme Court granted *certiorari* in *Cox*. Dkt. 117. This Court correctly held that discovery would need to proceed, even if the Supreme Court ultimately announced a different standard for contributory infringement.

> *Even if the Supreme Court adopts a more demanding standard for contributory copyright infringement*, requiring that a service provider have "affirmatively fostered" infringement or "intended to promote it," . . . ongoing discovery in this case would still be relevant . . . The current universe of discovery, which turns upon the pirate sellers of which Google

Hon. Jennifer L. Rochon
April 6, 2026
Page 2 of 5

> received notice, is therefore fair game, *irrespective of whether a more stringent standard for contributory copyright infringement is ultimately adopted*.

Dkt. 191 at 5–6 (emphasis added). That statement is as true now as it was then. Showing that Google "actively encourage[d] infringement through specific acts," *Cox*, 2026 WL 815823 at *6, will require all the same proofs as would showing that Google knowingly and materially contributed to direct infringement (the prior standard). As this Court explained, discovery is needed into "Google's actions preparing and running ads for pirate sellers; notices Google received; takedowns Google made; revenue Google earned; [and] Google's knowledge of and communications with the pirate sellers . . . ." Dkt. 191 at 5. And, as Google concedes, Plaintiffs' claim of *direct trademark* infringement (Dkt. 38 at 43–44) is unaffected by *Cox*, which addresses only *secondary copyright* infringement. Dkt. 771 at 4.

## II.    Advertising infringing ebooks to consumers in response to search queries induces infringement.

Google's letter motion neglects to acknowledge that at the motion-for-judgment-on-the-pleadings stage, the Court considers only whether Plaintiffs' allegations "contain sufficient factual matter, accepted as true" that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (courts apply the motion-to-dismiss standard to a 12(c) motion). Plaintiffs' allegations unquestionably "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

### a.    Plaintiffs sufficiently allege that Google "actively encourage[d] infringement" through "specific acts."

*Cox* holds that the "intent required for contributory liability can be shown only if the party induced the infringement . . . A provider induces infringement if it actively encourages infringement through specific acts." *Cox*, 2026 WL 815823, at *6. Google unquestionably "encourage[d] infringement through specific acts." *Id.*

*First*, Google advertised pirated copies of the works-in-suit directly to Google users. Am. Compl., Dkt. 38 ("Compl.") ¶ 122. Google did so in response to search queries for the legitimate works. *Id.* ¶ 43. Google placed ads for these pirated ebooks at the top of its incredibly popular search-engine, complete with pictures of the works at too-good-to-be-true prices. *Id.* ¶¶ 47, 51. And, it *excluded* many would-be competing ads for legitimate copies of the works. *Id.* ¶ 65. Each of Google's ads provided a link directly to a pirate site selling an infringing copy of Plaintiffs' work, from which the Google user ultimately purchased the advertised pirated ebook, then downloaded (and thus reproduced) them without authorization. *Id.* ¶¶ 53, 122. Unlike *Cox*, where the Court found that the Plaintiffs "provided no 'evidence of express promotion, marketing, and intent to promote' infringement," *Cox*, 2026 WL 815823, at *7 (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 926 (2005)), Plaintiffs' entire complaint concerns Google's promotion of infringing products. There can be no serious question that these "specific acts" "encourage[d]" Google users to commit infringement.

*Second*, Google's Shopping platform is not a mere message board where pirates post their own ads at will. Compl. ¶¶ 40–44. It is *Google* that advertises these counterfeits. Pirates provide

Hon. Jennifer L. Rochon
April 6, 2026
Page 3 of 5

Google with the information that the pirates want Google to include in an ad. *Id.* ¶ 41. *Google* then decides whether to run the ad at all. *Id.* ¶ 42. This selection process often involves Google analyzing the pirate's landing page to determine the likelihood of users clicking on the ad and buying the book. *Id.* ¶ 42. If Google decides to run a particular ad, *Google* creates the ad. *Id.* ¶ 41 (Google explaining, "[Google] creates these [ads] based on information you include in your product feed so you don't need to create the ads yourself."). That creation process includes Google obtaining an image of the legitimate book, which Google uses as the centerpiece of its ad. *Id.* ¶ 88. Google also decides the search queries in response to which it will show the ad. *Id.* ¶ 42. And *Google* decides the users to which it will show the ad, using data Google collects about each user, and a proprietary algorithm to target the users most likely to click on the ad. *Id.* ¶ 42. Google also deploys functions the pirate doesn't even request, such as an "autofill" feature when users begin typing search queries, and even a "PDF" button which takes users to yet more pirated copies of the works. *Id.* ¶ 57. Google is not a list serve or modern-day bulletin board like Craigslist, passively allowing users to post listings. Google actively decides what to advertise, how to advertise it, and to whom to advertise. These are yet more "specific acts" that "encourage[d] infringement."

*Third*, Google's actual knowledge of the piracy at issue makes its intent undeniable. Plaintiffs sent thousands of notices to Google identifying specific ads for pirated copies of Plaintiffs' works that Google was serving to its users. *Id.* ¶ 99. Indeed, for each of the 7,359 works in this case, Plaintiffs notified Google that the very ad Google was running promoted a counterfeit copy of the work, that the website to which the ad linked was operated by a pirate, or both. *Id.* ¶ 122. Google has known about this issue since at least 2019, when Plaintiffs began repeatedly asking Google to address the problem of Shopping ads for pirated ebooks. *Id.* ¶¶ 114–15. Google's "specific acts" of "encourage[ment]," coupled with Google's knowledge that it was promoting counterfeit books, readily satisfies *Cox*'s standard for intent. *Cox*, 2026 WL 815823 at *6. Indeed, in explaining the law of inducement, *Cox* relies on *Grokster*, which borrows patent law's definition of inducement: "where one 'actively and knowingly aid[s] and abet[s] another's direct infringement.'" 545 U.S. at 936 (quoting *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988)).

### b. Google's argument misunderstands both the Cox standard and Plaintiffs' allegations.

Google reads *Cox* and *Grokster* as requiring that Google intended that its *entire Shopping platform* be used for infringement. Dkt. 771 at 2 ("To maintain a viable contributory infringement claim after *Cox*, Plaintiffs must show that Google intended its Shopping platform to be used to find or sell infringing products . . ."). This reads into *Grokster* and *Cox* a limitation that neither decision creates. *Grokster* held that advertising *one's own service* as useful for infringement can establish an intent to induce infringement. *Grokster*, 545 U.S. at 936 ("Evidence of . . . advertising an infringing use . . . show an affirmative intent that the product be used to infringe . . . ."). But nothing in *Grokster* suggests that a defendant who advertises *the infringing products themselves* is not inducing infringement. Indeed, *Grokster* says just the opposite: "*It is not only that encouraging a particular consumer to infringe a copyright can give rise to secondary liability for the infringement that results.* Inducement liability goes beyond that . . ." *Id.* at 940 n.13 (emphasis added).

Hon. Jennifer L. Rochon
April 6, 2026
Page 4 of 5

Under Google's theory, a defendant would be liable for advertising its product as helpful in finding and downloading pirated ebooks. But directly advertising (and linking users to) infringing ebooks somehow would *not* give rise to liability. This is an absurd interpretation of *Cox* and *Grokster*.

Google likewise misdescribes Plaintiffs' allegations. Plaintiffs are not suing Google over Google's operation of its Shopping platform as a whole. *Contra* Dkt. 771 at 2. Plaintiffs are suing Google for creating and serving specific advertisements that link to infringing products, thereby inducing infringement.

Indeed, the *Cox* decision limiting contributory infringement does not even apply in this case. *Cox* examined whether a provider of generalized internet service can be held liable when a customer uses that service for infringement. *Cox*, 2026 WL 815823 at *3–4. Plaintiffs' claim has nothing to do with providing internet service; it concerns Google's promoting pirated ebooks. But to the extent *Cox*'s standard for contributory liability applies, Google's conduct easily meets it.

### III.    Further discovery will assist the fact-finder in evaluating Google's intent.

Intent, of course, fundamentally is a fact-based inquiry. Google wants to short-circuit that fact-based analysis. But the facts being developed in discovery will assist the Court tremendously in evaluating Google's intent.

For example, discovery has revealed that



Dkt. 238 ¶ 14. Discovery likewise has shown that years before this lawsuit was filed, Google heard complaints about pirated ebooks from Plaintiffs, other publishers, and a major ebook distributor. VS-GOOG0000000035. Indeed, an internal Google memo from October 2022 shows that Google ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ Attorney Declaration of Jeff Kane ("Decl.") Ex. 1 (GOOG-CENG-00469041) at -9043.

The Court should make its determination about intent with the benefit of evidence like this, rather than stopping discovery prematurely. Recall that the *Cox* court made its determination about intent after discovery and a full trial. Additional discovery will only assist this Court, and the ultimate fact-finder, in evaluating Google's intent.

### IV.    A stay would prejudice Plaintiffs.

In denying Google's previous request for a stay, this Court recognized that Google continues to advertise infringing copies of Plaintiffs' works, and continues to exclude Plaintiffs from a pilot program in which it allows ads for ebooks from certain legitimate publishers. Dkt. 191 at 6–7. Both of those facts remain true today. Decl. ¶ 3. Any stay would unfairly prejudice Plaintiffs.

### V.    Conclusion

The Court should reject Google's latest attempt to delay this case. The Court should deny Google's motion to stay all discovery.

Hon. Jennifer L. Rochon
April 6, 2026
Page 5 of 5

/s/ *Jeff Kane*
Jeff Kane

*Counsel for Plaintiffs*