**Sy Damle**
Direct Dial: +1.202.637.3332
sy.damle@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

April 9, 2026

<u>**VIA ECF**</u>

The Honorable Jennifer L. Rochon
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 1920
New York, New York 10007

Re:     *Cengage Learning, Inc. et al. v. Google LLC*, No. 1:24-cv-04274-JLR-BCM
        <u>Reply in Support of Letter Motion to Stay Discovery in Light of *Cox*</u>

Dear Judge Rochon:

Plaintiffs' opposition (Dkt. 802, "Opp.") confirms that the Supreme Court's decision in *Cox* fundamentally changed the nature of this litigation, and that a stay makes sense while the parties assess the repercussions of that decision for the scope of discovery.

**This Court's prior stay ruling does not dictate the outcome now.**  Plaintiffs' reliance (at 1-2) on this Court's ruling on Google's previous stay motion is misplaced.  That motion was premised on the possibility that the Supreme Court might preserve but narrow an aiding-and-abetting theory premised on knowledge of and material contribution to direct infringement, and sought an indeterminate stay pending the opinion in *Cox*.  *See* Dkt. 117 at 2.  But the Supreme Court's decision went much further, entirely eliminating aiding-and-abetting as a basis for contributory liability.  *See Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 967 (2026). Since that ruling, the discovery process has been tremendously burdensome and expensive— involving almost 30 discovery disputes to date.  And (if Plaintiffs' opposition is any indication) the parties are on the verge of still further disputes about relevance and the effect that *Cox* has on the scope of discovery going forward.  These changed circumstances mean the Court's previous stay order sheds little light on how to resolve this motion.

**Plaintiffs' allegations do not support a claim that Google "induced" infringement through its operation of Google Shopping.**  Plaintiffs assert (at 3) that Google "misunderstands" Plaintiffs' allegations.  But Plaintiffs' opposition makes clear that their theory of contributory infringement is the same as it has always been:  that Google should be held contributorily liable because it had knowledge of advertisements for infringing textbooks, but continued to supply access to the Shopping platform to merchants associated with those advertisements.  *See* Opp. 1 (asserting "Google advertised books it knew were counterfeit, on behalf of merchants it knew were pirates").  That theory of contributory infringement is foreclosed by *Cox*.  It is no different than the theory of material contribution that the Fourth Circuit adopted:  "that 'supplying a product with

LATHAM&WATKINS LLP

knowledge that the recipient will use it to infringe copyrights is sufficient for contributory infringement.'" *Cox*, 146 S. Ct. at 968 (alteration omitted). But as the Supreme Court emphasized, "contributory infringement cannot rest only on a provider's knowledge of infringement and insufficient action to prevent it." *Id.* at 969. Indeed, Plaintiffs refuse to even acknowledge that the theory of contributory liability that was the foundation of this entire litigation has been eliminated, insisting that a defendant can still be held liable for contributory infringement if it "actively and knowingly aids and abets another's direct infringement." Opp. 3 (alterations omitted); *see also* Apr. 7, 2026 Hr'g Tr. 14:16-18 (Plaintiffs' counsel asserting that "[t]here is nothing about *Cox* that says material contribution is gone").

Plaintiffs respond (at 2-4) that their allegations are still sufficient to state a contributory infringement claim under *Cox* via an inducement theory.[1] Plaintiffs assert that inducement merely requires allegations that Google "encourage[d] infringement through specific acts." Opp. 2 (quoting *Cox*, 146 S. Ct. at 967). And they argue Google meets that standard because "Google advertised pirated copies of the works-in-suit directly to Google users," and therefore "Plaintiffs' entire complaint concerns Google's promotion of infringing products." *Id.* But this argument fails for multiple reasons.

First, Plaintiffs' argument mischaracterizes the legal standard for inducement. Plaintiffs insist that merely "advertising (and linking users to) infringing ebooks" counts as inducement. Opp. 5. But inducement liability is reserved for "purposeful, culpable expression and conduct" that has the "object of promoting" infringement. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005). Thus, in the case of advertising, liability has been found where a defendant "advertis[es] an infringing use or instruct[s] how to engage in an infringing use" of *its own* product or service. *Id.* at 936. In *Cox*, the Court highlighted the facts of *Grokster* as a paradigmatic example of inducement: the companies there "promoted and marketed their software as a tool to infringe copyrights," and "[t]he 'principal object' of their business models 'was use of their software to download copyrighted works.'" 146 S. Ct. at 967 (quoting *Grokster*, 545 U.S. at 926). Notably, plaintiffs fail to point to a single case where a party running an advertisement for a *third-party's* product was held liable for inducement.

More generally, there can be no doubt that *Cox* significantly raised the bar for contributory infringement liability. In *Cox* itself, the Court found no contributory infringement even where the trial record below, "viewed in the light most favorable to Sony, showed more than mere failure to prevent infringement." *Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 236-37 (4th Cir. 2024). That record included: (1) "evidence that Cox knew of specific instances of repeat copyright infringement occurring on its network"; (2) "that Cox traced those instances to specific users"; (3) "that Cox chose to continue providing monthly internet access to those users despite believing the online infringement would continue because it wanted to avoid losing revenue." *Id.* It included "extensive evidence about Cox's increasingly liberal policies and procedures for responding to

---

[1] To their credit, Plaintiffs appear to concede that they cannot plausibly assert that Google's Shopping platform is a "service [that] is tailored to infringement," given its overwhelming proportion of "noninfringing uses." *Cox*, 146 S. Ct. at 967 (citation omitted). That leaves their only route to a potential contributory infringement claim through an inducement theory. *Id.*

LATHAM&WATKINS LLP

reported infringement," "which Sony characterized as ensuring that infringement would recur." *Id.* And it included internal Cox emails and chats that could be interpreted as "displaying contempt for laws intended to curb online infringement." *Id.* Notwithstanding that record, the Supreme Court concluded that Cox could not be found liable for having induced infringement when the plaintiffs "provided no 'evidence of express promotion, marketing, and intent to promote' infringement" by Cox. 146 S. Ct. at 968 (citation omitted).

Indeed, earlier cases finding inducement have featured particularly egregious behavior by the defendant to entice users to commit infringement using the defendant's service. In *Columbia Pictures Industries, Inc. v. Fung*, for example, the Ninth Circuit found the defendant induced infringement where the evidence showed he created "posts [that] were explicitly 'designed to stimulate others to commit copyright violations,'" and his "active encouragement of the uploading of torrent files concerning copyrighted content." 710 F.3d 1020, 1034-36 (9th Cir. 2013) (citation and alteration omitted). Among other things, the defendant's website "prominently featured a list of 'Box Office Movies,' containing the 20 highest-grossing movies then playing in U.S. theaters," and "[w]hen a user clicked on a listed title, she would be invited to 'upload a torrent' file for that movie," which could then be "downloaded by other users" and "would lead directly to their obtaining infringing content." *Id.* He "also posted numerous messages to the [website's] forum requesting that users upload torrents for specific copyrighted films" and "provided links to torrent files to copyrighted movies, urging users to download them." *Id.* "[A] *distributor's* communication of an inducing message to *its* users," the Ninth Circuit emphasized, is "'crucial' to establishing inducement liability." *Id.* (emphasis added). Other cases from this District feature similarly flagrant facts. *See Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 426 (S.D.N.Y. 2011) (finding defendant "*intended* to encourage infringement" based on evidence of "efforts to attract infringing users" to the service and efforts to "enable and assist users to commit infringement"); *Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 132 (S.D.N.Y. 2009) (finding inducement where the record was "replete with instances of Defendants and their employees specifically engendering copyright infringement and targeting infringement-minded users to become subscribers of Defendants' service"). That goes far beyond the conduct Plaintiffs allege Google engaged in here: merely "supplying a product with knowledge that the recipient will use it to infringe copyrights." *Cox*, 146 S. Ct. at 968.

Second, Plaintiffs mischaracterize the facts. They insist that "[i]t is *Google* that advertises these counterfeits." Opp. 2 (emphasis in original); *see also id.* at 2-3 ("*Google* then decides whether to run the ad at all"; "*Google* creates the ad"; "*Google* decides the users to which it will show the ad"). But *Google* does not select which works to advertise, or display ads to users on its *own* behalf.[2] To the contrary, Plaintiffs' own allegations (and common sense) demonstrate that Google offers a general-purpose advertising service that *customers* can use to create advertisements for *their* products. *Cf.* Dkt. 38 (Am. Compl.) ¶¶ 41-45. Google only "creates" an ad in the sense that it provides a service by which merchants supply information about their

---

[2] Plaintiffs have never disputed that Google qualifies as a "service provider" under the DMCA with respect to its Shopping platform. *See* 17 U.S.C. § 512(k)(1)(B). Specifically, Google Shopping is an "information location tool" that links users to other online locations run by third parties based on information provided by those third parties. *See id.* § 512(d).

**LATHAM&WATKINS** LLP

products (the overwhelming majority of which are legitimate) and Google's automated systems generate advertisements based on users' Google searches, the criteria that merchants select, and the amount that merchants say they are willing to pay for ads. *Id.* This general-use system works the same regardless of what is being advertised (*i.e.*, it is not adapted to promote infringing content). Plaintiffs appear to concede (at 3) that a neutral platform that offers *others* the tools to advertise *their own* products or services, "like Craigslist," is not liable for inducement. Properly understood, Google's Shopping platform is no different than Plaintiffs' Craigslist example—it is functionally a bulletin board, albeit one that offers all sellers more features.

Google does not dispute that the *merchants* who advertise their infringing ebooks could be held liable for inducing infringement by the third parties who purchase those infringing ebooks via the advertisements placed on Google Shopping, or that those merchants could be *directly* liable for creating the infringing copies in the first place. But *Google*—as the company that merely provided a platform on which others can run their own ads—cannot be held liable for inducement on these facts.

Finally, Plaintiffs fall back (at 4) on the argument that *Cox* "does not even apply in this case," because "*Cox* examined whether a provider of generalized internet service can be held liable when a customer uses that service for infringement." But there is no such limitation in *Cox* itself. To the contrary, the Court wrote broadly about legal principles that apply to *any* "company" or "provider of a service." *See* 146 S. Ct. at 964, 967; *see also id.* at 972-76 (Sotomayor, J., concurring in the judgment) (discussing broad legal principles beyond ISP context, including reference to the "social media platforms" in *Twitter* and "gun manufacturers" in *Smith & Wesson*). And in any event, for the reasons already explained, Plaintiffs' attempt to avoid *Cox* by characterizing Google Shopping as something other than a "generalized" service fails. *Cox* applies with full force.

**There is no prejudice in delaying the ongoing and burdensome discovery to dispose of the primary theory of liability.** Plaintiffs' assertions of prejudice ring hollow. Plaintiffs argue (at 4) that "the facts being developed in discovery will assist the Court tremendously in evaluating Google's intent." But Plaintiffs have not pleaded (and could not plead) that Google had the requisite intent necessary to satisfy the standard in *Cox*, and thus Google should not be subject to continuing costly and burdensome discovery to evaluate "intent." The Court's ruling on Google's Rule 12(c) motion may render *any* additional discovery on Plaintiffs' copyright claims moot. And even if the Court denies Google's forthcoming 12(c) motion, that decision may still provide the parties with guidance on how *Cox* applies that would inform appropriate discovery going forward.

Respectfully submitted,

*/s/ Sarang Vijay Damle*
Sarang Vijay Damle
of LATHAM & WATKINS LLP

cc: All Counsel of Record (via ECF)