**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; ELSEVIER INC.; ELSEVIER B.V.; and MCGRAW HILL LLC, <br><br>                *Plaintiffs*, <br><br> v. <br><br> GOOGLE LLC, <br><br>                *Defendant*. | Case No. 1:24-cv-04274-JLR-BCM <br><br><br> **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GOOGLE LLC'S**
**MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND .......................................................................................................................3

      I.      Legal Background...................................................................................................3

            A.      Pre-*Cox* Contributory Infringement Case Law ...........................................3

            B.      The Supreme Court's Decision in *Cox* and Its Elimination of Material Contribution Liability........................................................................7

      II.      Factual Background ................................................................................................9

LEGAL STANDARD................................................................................................................10

ARGUMENT .............................................................................................................................11

      I.      Plaintiffs Fail to Plead That Google Induced Infringement...................................12

            A.      Inducement Liability Is Reserved for Defendants Who Actively Encourage Infringement Through Specific Acts .......................................12

            B.      Plaintiffs Failed to Plead an Inducement Theory, and None of the Allegations Support Such a Theory ...........................................................15

      II.      Plaintiffs Fail to Plead That the Google Shopping Platform Is a Service Tailored to Infringement .......................................................................................20

CONCLUSION...........................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abbey House Media, Inc. v. Apple Inc.*,
66 F. Supp. 3d 413 (S.D.N.Y. 2014)................................................................4, 5, 6

*Andersen v. Stability AI Ltd.*,
744 F. Supp. 3d 956 (N.D. Cal. 2024) ...................................................................21

*Arachnid, Inc. v. Merit Indus., Inc.*,
939 F.2d 1574 (Fed. Cir. 1991)................................................................................8

*Arista Recs., LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010).....................................................................................5

*Arista Recs. LLC v. Lime Grp. LLC*,
784 F. Supp. 2d 398 (S.D.N.Y. 2011)....................................................................13

*Arista Recs. LLC v. Usenet.com, Inc.*,
633 F. Supp. 2d 124 (S.D.N.Y. 2009)....................................................................13

*Cengage Learning, Inc. v. Google LLC*,
786 F. Supp. 3d 611 (S.D.N.Y. 2025).....................................................................19

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994)..................................................................................................8

*Citibank, N.A. v. Aralpa Holdings LP*,
2023 WL 5971144 (S.D.N.Y. Sep. 14, 2023).........................................................10

*Columbia Pictures Industries, Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013) ...............................................................................12

*Cox Communications, Inc. v. Sony Music Entertainment*,
146 S. Ct. 959 (2026)...................................................................................... *passim*

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt.*,
443 F.2d 1159 (2d Cir. 1971)...............................................................................1, 5

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011)................................................................................................12

*Goldberg v. Pace Univ.*,
88 F.4th 204 (2d Cir. 2023) ...................................................................................11

*Henry v. A.B. Dick Co.*,
   224 U.S. 1 (1912)......................................................................................................................4

*Ironshore Specialty Ins. Co. v. Color Techniques, Inc.*,
   2024 WL 3634860 (S.D.N.Y. Aug. 1, 2024)...........................................................................11

*Kalem Co. v. Harper Bros.*,
   222 U.S. 55 (1911)..................................................................................................................3, 4

*L-7 Designs, Inc. v. Old Navy, LLC*,
   647 F.3d 419 (2d Cir. 2011)......................................................................................................11

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
   658 F.3d 936 (9th Cir. 2011) ....................................................................................................6

*Luvdarts, LLC v. AT&T Mobility, LLC*,
   710 F.3d 1068 (9th Cir. 2013) .................................................................................................21

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005)..................................................................................................... *passim*

*Nalco Co. v. Chem-Mod, LLC*,
   883 F.3d 1337 (Fed. Cir. 2018)................................................................................................20

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ...................................................................................... *passim*

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) .....................................................................................................5

*Range v. Grand Greene LLC*,
   2025 WL 1144700 (S.D.N.Y. Apr. 17, 2025)..........................................................................11

*Ricoh Co. v. Quanta Computer Inc.*,
   550 F.3d 1325 (Fed. Cir. 2008)................................................................................................20

*Screen Gems-Columbia Music, Inc. v. Mark-Fi Recs., Inc.*,
   256 F. Supp. 399 (S.D.N.Y. 1966).............................................................................................5

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984).............................................................................................................3, 4, 21

*Sony Music Ent. v. Cox Commc'ns, Inc.*,
   93 F.4th 222 (4th Cir. 2024), *rev'd*, 146 S. Ct. 959 (2026) .....................................5, 6, 13, 14

*State St. Glob. Advisors Tr. Co. v. Visbal*,
   431 F. Supp. 3d 322 (S.D.N.Y. 2020).......................................................................................15

*VHT, Inc. v. Zillow Grp., Inc.*,
  918 F.3d 723 (9th Cir. 2019) ..................................................................................21

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
  127 F. Supp. 3d 156 (S.D.N.Y. 2015).....................................................................11

## STATUTES

17 U.S.C. § 512..........................................................................................................11

35 U.S.C. § 271 ...................................................................................................3, 8, 12

## RULES

Fed. R. Civ. P. 12....................................................................................................10, 11

## OTHER AUTHORITIES

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* (rev. ed. 2026) ......................5, 6

## PRELIMINARY STATEMENT

The Supreme Court's landmark decision in *Cox Communications, Inc. v. Sony Music Entertainment*, 146 S. Ct. 959 (2026), is dispositive of Plaintiffs' contributory copyright infringement claim as a matter of law. *Cox* fundamentally reshaped—and significantly narrowed—the standard for contributory infringement, abrogating the "knowledge plus material contribution" theory on which Plaintiffs' claim depends. Plaintiffs' contributory infringement claim should be dismissed with prejudice.

In *Cox*, the Court held that a "provider of a service" is contributorily liable for its users' infringement "*only* if it intended that the provided service be used for infringement." *Id.* at 967 (emphasis added). Crucially, the Court limited viable theories of intent to two longstanding and "specific forms of secondary copyright liability that predated the Copyright Act." *Id.* Specifically, the Court held that "[t]he intent required for contributory liability can be shown *only* if [1] the party induced the infringement or [2] the provided service is tailored to that infringement." *Id.* (emphasis added). A service provider "induces infringement if it actively encourages infringement through specific acts," like promoting its service as "a tool to infringe copyrights." *Id.* And a service is "tailored to infringement if it is 'not capable of "substantial" or "commercially significant" noninfringing uses.'" *Id.* In limiting contributory copyright liability to these two longstanding grounds, the Court abrogated a third theory of contributory infringement previously recognized by some lower courts, including the Fourth Circuit in *Cox* and the Second Circuit. That third, more permissive standard had extended liability to anyone who "with knowledge of the infringing activity . . . materially contributes" to infringing conduct. *Gershwin Publ'g Corp. v. Columbia Artists Mgmt.*, 443 F.2d 1159, 1162 (2d Cir. 1971); *see also Cox*, 146 S. Ct. at 972–74 (Sotomayor, J., concurring) (recognizing abrogation of that theory).

1

Plaintiffs' claim is foreclosed under the only viable theories that remain post-*Cox*, and the Court can and should resolve this dispute on the pleaded facts.  Google is the "provider of a service," the Shopping platform, which allows merchants selling a wide range of products to advertise those products to Google users.  Google displays Shopping ads "based on information provided by Google's merchants"; if a user then clicks on a merchant's ad, they leave Google's platform and go to the merchant's website, where the users may (or may not) complete a transaction.

Plaintiffs do not (and cannot) claim that Google provided a service "tailored to" infringement; the Shopping platform plainly has noninfringing uses.  And they do not even use the word "induce" or its variants in the complaint.  Nor do they assert that Google *intended* the Shopping platform to be used for infringement.  Instead the theory Plaintiffs set forth in their complaint is one of material contribution:  that Google can be deemed to have the requisite intent to cause infringement because Google continued to run ads from merchants knowing that those merchants were advertising infringing content.  This is precisely the theory that *Cox* rejected.  Under *Cox*, "supplying a product with knowledge that the recipient will use it to infringe copyrights" is insufficient to demonstrate contributory liability. 146 S. Ct. at 968.  Indeed, the Court emphasized, "contributory liability cannot rest only on a provider's knowledge of infringement and insufficient action to prevent it."  *Id.* at 969.

At bottom, the notion that Google is akin the operators of notorious pirate marketplaces that have been previously held liable for inducement liability—sites like Grokster, Limewire, and its variants—is utterly implausible, and nothing in the Plaintiffs' complaint provides a plausible basis for concluding otherwise. Plaintiffs' claim fails as a matter of law, and must be dismissed.

**BACKGROUND**

**I.    LEGAL BACKGROUND**

To understand the implications of the Supreme Court's decision in *Cox*, it is helpful to review the history of secondary liability under the Copyright Act.  The Supreme Court had long recognized two theories of contributory copyright liability, which it borrowed from patent law (inducement, and sale or distribution of a product lacking substantial noninfringing uses).  And a number of lower courts adopted a third theory (material contribution) that was based on common law aiding-and-abetting.  *Cox* preserved the first two longstanding theories of liability recognized in the Court's own precedent, while abrogating the third, lower-court-made material contribution theory.

**A.    Pre-*Cox* Contributory Infringement Case Law**

"The Copyright Act does not expressly render anyone liable for infringement committed by another."  *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434–35 (1984) (citation omitted).  But the Supreme Court, drawing on patent law principles, has long recognized two theories of contributory copyright infringement.

**1.** The first traditional ground of contributory liability is the knowing sale or distribution of a product or service that is "unsuited for any commercial noninfringing use"—*i.e.*, one that is not "capable of substantial noninfringing uses" or "commercially significant noninfringing uses." *Sony*, 464 U.S. at 441-42 (citation omitted).  This theory tracks patent law.  *Id.* at 440-41; *see also* 35 U.S.C. § 271(c) (defendant liable for sale of a product "knowing the same to be especially made or especially adapted for use in an infringement of such patent").  A product or service lacks substantial noninfringing uses, and subjects the defendant to contributory infringement liability, when the product or service "has been 'especially' made" for infringement. *Sony*, 464 U.S. at 436 (quoting *Kalem Co. v. Harper Bros.*, 222 U.S. 55, 63 (1911)).  "[W]here an article is 'good for

3

nothing else' but infringement, there is no legitimate public interest in its unlicensed availability, and there is no injustice in presuming or imputing an intent to infringe." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932 (2005) (citations omitted).

By contrast, the law "absolves the equivocal conduct of selling an item with substantial lawful as well as unlawful uses." *Id.* Thus, the sale or distribution of a product "does not constitute contributory infringement if the product is widely used for legitimate, unobjectionable purposes." *Sony*, 464 U.S. at 442; *see also Henry v. A.B. Dick Co.*, 224 U.S. 1, 48 (1912) ("[A] sale of an article which though adapted to an infringing use is also adapted to other and lawful uses, is not enough to make the seller a contributory infringer.").

**2.** The second longstanding basis for contributory liability is inducement of copyright infringement. *See, e.g.*, *Kalem*, 222 U.S. at 62-63. Under this theory, a person who intentionally distributes a device or provides a service "with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement," is liable for inducement. *Grokster*, 545 U.S. at 937; *Kalem*, 222 U.S. at 62-63 (defendant "not only expected but invoked by advertisement the use of its films" for infringement of copyright); *see also Abbey House Media, Inc. v. Apple Inc.,* 66 F. Supp. 3d 413, 421 (S.D.N.Y. 2014) ("Inducement of copyright infringement requires 'purposeful, culpable expression and conduct' that encourages copyright infringement." (citation omitted)).

*Grokster* is a paradigmatic example of inducement. There, the defendant companies engaged in "express promotion [and] marketing" of their software for sharing and downloading infringing content, and the "principal object" of the business "was use of their software to download copyrighted works." *Grokster*, 545 U.S. at 926. Grokster explicitly marketed its service

4

as "the next Napster," encouraged users to share copyrighted material for free, and even prompted users to download specific copyrighted songs.  *Id.* at 922, 924, 926.

**3.**   In addition to these two theories of contributory infringement recognized by the Supreme Court, some courts, including the Second Circuit, also imposed contributory liability based on a third theory: "material contribution."[1]  As discussed in detail below, that theory is no longer valid after *Cox.*

This now-vitiated theory imposed contributory liability on "one who, with knowledge of the infringing activity, . . . materially contributes to the infringing conduct of another."  *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (emphasis modified) (quoting *Gershwin*, 443 F.2d at 1162); *see also Abbey House Media*, 66 F. Supp. 3d at 419 (discussing material contribution); *Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 233-37 (4th Cir. 2024) (same), *rev'd*, 146 S. Ct. 959 (2026).  Material contribution was ostensibly rooted in "the common law doctrine that one who knowingly participates or furthers a tortious act is jointly and severally liable with the prime tortfeasor."  *Gershwin*, 443 F.2d at 1162 (quoting *Screen Gems-Columbia Music, Inc. v. Mark-Fi Recs., Inc.*, 256 F. Supp. 399, 403 (S.D.N.Y. 1966)); *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1170-71 (9th Cir. 2007) (relying on "common law principles" to hold a service provider liable on material contribution theory).

---

[1] Courts understood these theories to be distinct.  *See, e.g.*, *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007) ("[O]ne contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) *materially contributes to* or (b) *induces* that infringement." (emphasis added)); *id.* at 795 n.3 (recognizing distribution of a product that is specially designed for infringement is yet "another strand of contributory liability in the Supreme Court's jurisprudence"); *see also* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13E.05 (rev. ed. 2026) ("For the sake of conceptual clarity, the better approach is to treat inducement liability as a distinct form of secondary liability.").

The material contribution standard swept broadly, exposing a wide range of defendants to liability on the theory that they "provid[ed] substantial assistance to the direct infringer." *Abbey House Media*, 66 F. Supp. 3d at 419. For instance, one court found a web hosting company liable for knowingly hosting websites that had infringing material on them, concluding that "[t]here is no question that providing direct infringers with server space" counts as "material contribution." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 943 (9th Cir. 2011). And in *Cox* itself, the Fourth Circuit held an internet service provider liable on a material contribution theory for "supplying a product with knowledge that the recipient will use it to infringe copyrights." *Sony Music Ent.*, 93 F.4th at 236-37. In general, courts found defendants liable under a material contribution theory for knowingly participating in or providing the tools that were used for infringement. *See* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13E.03[B] (rev. ed. 2026) (providing examples of "material contribution by 'participation'" in infringement, including "advertising an infringing product or activity" and "arranging the advertising for the infringing product or activity").

Courts also recognized that inducement was more difficult to demonstrate than material contribution. *See Abbey House Media*, 66 F. Supp. 3d at 421 ("A claim of inducement—more so than contributory infringement—emphasizes the intent of the secondary infringer.").[2] For instance, in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), the Ninth Circuit considered a contributory infringement claim brought against Google in relation to its "Google Image Search" product. Google was alleged to have indexed and linked to third-party websites that hosted infringing images, and that it continued to do so after receiving notices of infringement.

---

[2] Some courts distinguished between inducement and material contribution theories by referring to the former as "inducement" and the latter as "contributory infringement." *See, e.g.*, *Abbey House Media*, 66 F. Supp. 3d at 419.

6

The court held that "Google's activities do not meet the 'inducement' test explained in *Grokster* because Google has not promoted the use of its search engine specifically to infringe copyrights." *Id.* at 1170 n.11.  The court, however, concluded that it was not constrained to an inducement theory, reasoning that "the Supreme Court in *Grokster* did not suggest that a court must find inducement in order to impose contributory liability under common law principles."  *Id.*  To the extent Google could be liable at all on those facts, the court held it was only based on those common law principles under a "material contribution" theory: that Google "substantially assist[ed] websites to distribute their infringing copies to a worldwide market and assist[ed] a worldwide audience of users to access infringing materials."  *Id.* at 1172.  As next discussed, however, the theory on which Google had been held liable is no longer valid.

      **B.**       **The Supreme Court's Decision in *Cox* and Its Elimination of Material Contribution Liability**

In *Cox*, the Supreme Court reaffirmed that "[t]he provider of a service is contributorily liable for the user's infringement only if it intended that the provided service be used for infringement."  146 S. Ct. at 967.  But critically, it clarified that "[t]he intent required for contributory liability can be shown *only*" under the first two theories—*i.e.*, "if the [defendant] induced the infringement or the provided service is tailored to that infringement."  *Id.* (emphasis added). And because *Cox* holds that the "*only*" viable theories of liability are inducement and tailoring, the Supreme Court's decision necessarily forecloses contributory copyright liability based on the common-law-based knowledge-and-material-contribution theory previously recognized by lower courts.  *Id.* (emphasis added); *see also id.* at 969-70, 972 (Sotomayor, J., concurring in the judgment) (acknowledging that "materially contribut[ing] to infringement . . . is rooted in the common-law doctrine of aiding and abetting" and observing that the majority opinion eliminates "the possibility that other common-law theories of such liability, like aiding and

7

abetting, could apply"). Thus, the *Cox* majority rejected the Fourth Circuit's ruling not because (as the concurrence believed) the lower court had adopted a too-lenient standard for material contribution. *Cf. id.* at 974 (Sotomayor, J., concurring in the judgment) (concluding that the record "cannot support finding the necessary intent for aiding-and-abetting liability to attach"). Instead, it concluded that the Fourth Circuit's decision was wrong because material contribution *is not a valid theory of secondary liability at all*.

Moreover, the Court's reasoning was not limited to the particular facts presented in Cox; instead, the Court vitiated the material contribution theory for *all* providers of services. *Id.* at 967. That decision was rooted in its general view that secondary liability should not be imposed absent express congressional authorization, which the Copyright Act lacks. *Id.* at 967. (citing *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176-77 (1994)); *see also Cent. Bank of Denver*, 511 U.S. at 182 (recognizing no presumption of secondary liability when statute is silent). But rather than eliminating contributory infringement liability, the Court constrained that doctrine to its narrow, previously recognized theories of inducement and tailoring, while rejecting the lower-court-created theory of material contribution. Moreover, cabining contributory copyright liability to inducement and tailoring ensured that secondary copyright liability "track[s] patent law," *Cox*, 146 S. Ct. at 968, because the Patent Act does not recognize "material contribution" as a theory of secondary liability. *See* 35 U.S.C. § 271(b), (c); *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1578 (Fed. Cir. 1991) ("A patent is a creature of statute, as is the right of a patentee to have a remedy for infringement of his patent.").

As a result, precedent premising contributory copyright infringement liability on other grounds, like the Second Circuit's cases imposing liability premised on knowledge of and material contribution to direct infringement, has been categorically abrogated. *See Cox*, 146 S. Ct. at 971

8

(Sotomayor, J., concurring) (recognizing elimination of "other forms of secondary liability derived from the common law").

## II.    FACTUAL BACKGROUND

Google Search indexes hundreds of billions of webpages and other information.  First Am. Compl. ("FAC") (Dkt. 38) ¶ 36.  In response to a user's search, Google automatically sorts through that Search index to find the most relevant material.  *See id.*  Depending on the user's search, results may also include Google Shopping ads.  *Id.* ¶ 37.

Through the Shopping platform, sellers can choose to advertise their products for sale.  To advertise using Google Shopping ads, merchants must create a "Merchant Center" account and an "Ads" account.  *Id.* ¶ 73.  Merchants must accept Google's related terms of service, which require merchants to abide by its policies.  *Id.* ¶ 70.  And Google's policies specifically prohibit Shopping Ads that link to sites selling unauthorized copyrighted content.  *Id.*  All Shopping product data comes exclusively from merchants.  *Id.* ¶ 41.  In other words, any product information used to populate Google Shopping ads is provided only by merchants themselves—not Google.  *See id.*; *see also id.* ¶ 88 ("Merchants either provide Google with a link to a product image for Google to include in an ad, or provide Google with the image itself.").  And when a user clicks on a merchant's ad, "[Google] send[s] [the user] to the merchant's website to buy [the advertised product]."  *Id.* ¶ 39.  Thus, any eventual product sale occurs on the merchant's website—not Google's.  *Id.* ¶ 53.

"Google requires that retailers comply with all applicable laws and regulations in addition to [its] policies," blocks content that violates its policies, and "[i]n cases of repeated or egregious violations" Google bans merchants from advertising content."  *Id.* ¶ 61 (quoting *Unsupported Shopping content*, https://support.google.com/merchants/answer/6150006).    Google requires retailers to comply with copyright laws and "do[es]n't allow ads that are unauthorized to use

9

copyrighted content" or link to "unauthorized sites . . . that capture, copy, or provide access to copyrighted content."  *Id.* ¶ 60 (quoting *Advertising Policies Help: Copyrights*, https://support.google.com/adspolicy/answer/6018015).  Google's policy specifically "ban[s] ads for all standalone digital books (i.e., ads that advertise an ebook price or lead to a landing page selling only a digital book, other than audiobooks)."  *Id.* ¶ 68.  Google not only reserves the right to "take action on content that violates [its] policies," including "suspending accounts for repeat or egregious violations," but it also removes paid Shopping ads that violate its policies and terminates merchants who use the platform to advertise infringing content.  *See id.* ¶¶ 70–72, 76.

Plaintiffs, a group of academic publishers, allege that Google has created and disseminated advertisements on its Shopping platform that promote infringing copies of Plaintiffs' textbooks, solutions manuals, and test banks sold by merchants on third-party websites ("Pirate Sites").  *Id.* ¶¶ 1, 39, 47, 122.  According to Plaintiffs, this renders Google contributorily liable for two forms of direct infringement: (1) allegedly infringing sales by so-called Pirate Sellers to users who navigated to their Pirate Sites through Shopping ads for infringing copies of Plaintiffs' works, and (2) corresponding purchases of the allegedly infringing works by consumers on these so-called Pirate Sites.  *Id.* ¶ 122.

Plaintiffs allege that Google is contributorily liable for this infringement occurring outside Google's platform.  They based that claim on allegations that Google knowingly providing access to its advertising platform to merchants selling infringing works, and for banning e-book sales generally, while taking insufficient measures to stop merchants from evading that ban.  *Id.* ¶¶ 123–126.

## LEGAL STANDARD

"Under Rule 12(c), after the pleadings have closed, 'but early enough not to delay trial,' a party may move for judgment on the pleadings."  *Citibank, N.A. v. Aralpa Holdings LP*, 2023 WL

10

5971144, at *5 (S.D.N.Y. Sep. 14, 2023) (quoting *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015)). "A Rule 12(c) motion for judgment on the pleadings is subject to the same legal standards as a Rule 12(b)(6) motion to dismiss." *Ironshore Specialty Ins. Co. v. Color Techniques, Inc.*, 2024 WL 3634860, at *3 (S.D.N.Y. Aug. 1, 2024). "To survive a motion for judgment on the pleadings, a pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (alteration omitted) (quoting *Goldberg v. Pace Univ.*, 88 F.4th 204, 210 (2d Cir. 2023)). "On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *Range v. Grand Greene LLC*, 2025 WL 1144700, at *2 (S.D.N.Y. Apr. 17, 2025) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).

## ARGUMENT

Plaintiffs have not pleaded (and cannot plead) either active inducement by Google, or that Google's Shopping Ads are a service tailored to infringement. Their contributory infringement claim must therefore be dismissed.[3]

---

[3] Google intends to move for leave to amend its answer to formalize its withdrawal of its Digital Millennium Copyright Act safe harbor defense (17 U.S.C. § 512). *See* Dkt. 835. As the *Cox* Court held, "[t]he DMCA merely creates new defenses from liability" for service providers, but "failure to comply with the safe-harbor rules 'shall not bear adversely upon . . . a defense by the service provider that the service provider's conduct is not infringing.'" *Cox*, 146 S. Ct. at 969 (quoting 17 U.S.C. § 512(*l*)). That proposed amended pleading does not affect the analysis for this motion, because Google's amended pleading does not alter any allegations, admissions, or denials that are material to analyzing the plausibility of Plaintiffs' contributory infringement claim. *See* Dkt. 835-1 (proposed second amended answer).

## I.      PLAINTIFFS FAIL TO PLEAD THAT GOOGLE INDUCED INFRINGEMENT

### A.      Inducement Liability Is Reserved for Defendants Who Actively Encourage Infringement Through Specific Acts

Plaintiffs fail to plead a claim of contributory infringement based on inducement.  "A provider induces infringement if it actively encourages infringement through specific acts."  *Cox,* 146 S. Ct. at 967.  The test "requires that the party express an affirmative intent that the product be used to infringe."  *Id.* at 968 (cleaned up); *see also* 35 U.S.C. § 271(b); *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011) ("The term 'induce' means '[t]o lead on; to influence; to prevail on; to move by persuasion or influence.'. . .  [I]nducement must involve the taking of affirmative steps to bring about the desired result.").  Even if the seller of a service knows of the use of the service for infringement, and is indifferent to that fact, that is insufficient to show inducement.  *Cox*, 146 S. Ct. at 967 ("[M]ere indifferent supposition or knowledge on the part of the seller that the buyer will use the product unlawfully is not enough to make the seller liable for the buyer's conduct." (cleaned up)).

As these statements suggest, the inducement standard sets a high bar.  Cases finding inducement liability involve egregious behavior by defendants who actively and expressly broadcast the message that their products or services should be used to infringe.  In *Columbia Pictures Industries, Inc. v. Fung*, for example, the Ninth Circuit concluded that the defendant and his websites were liable for inducement because of his "active encouragement of the uploading of torrent files concerning copyrighted content."  710 F.3d 1020, 1036 (9th Cir. 2013).  Among other things, the defendant's website "prominently featured a list of 'Box Office Movies,' containing the 20 highest-grossing movies then playing in U.S. theaters," and "[w]hen a user clicked on a listed title, she would be invited to 'upload [a] torrent' file for that movie," which could then be "downloaded by other users" and "would lead directly to their obtaining infringing content."  *Id.*

12

He "also posted numerous messages to the [website's] forum requesting that users upload torrents for specific copyrighted films" and "provided links to torrent files to copyrighted movies, urging users to download them." *Id.*

Cases in this District finding defendants contributorily liable based on inducement involve similarly overt expressions by the defendants that their product or service should be used for infringement. For example, in an infringement suit against file-sharing site LimeWire, the court concluded there was significant evidence to support inducement when LimeWire "purposefully marketed LimeWire to individuals who were known to use file-sharing programs to share copyrighted recordings, or who expressed an interest in doing so." *Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 427 (S.D.N.Y. 2011). Among other things, LimeWire "initiat[ed] press campaigns . . . relating to 'file-sharing and getting free MP3's'"; ran advertisements that "promoted LimeWire with direct references to other infringement-fostering programs" like Napster and Kazaa; "tested and sought to improve LimeWire's ability to search for and download unauthorized copies of digital recordings"; and when "LimeWire users requested assistance in sharing and downloading digital music files," "employees offered technical information about the system's functionality, thereby helping users obtain unauthorized copies of recordings." *Id.* at 427-28. The allegations were similar in an infringement suit against Usenet, where the court concluded the record was "replete with instances of Defendants and their employees specifically engendering copyright infringement and targeting infringement-minded users to become subscribers of Defendants' service." *Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 132 (S.D.N.Y. 2009); *see id.* at 152–53.

By contrast, the Supreme Court held that Cox was not contributorily liable as a matter of law, even though the trial record below "viewed in the light most favorable to Sony, showed more

than mere failure to prevent infringement." *Sony Music Ent.*, 93 F.4th at 236–37. There, the record included: (1) "evidence that Cox knew of specific instances of repeat copyright infringement occurring on its network"; (2) "that Cox traced those instances to specific users"; and (3) "that Cox chose to continue providing monthly internet access to those users despite believing the online infringement would continue because it wanted to avoid losing revenue." *Id.* It also included "extensive evidence about Cox's increasingly liberal policies and procedures for responding to reported infringement, which Sony characterized as ensuring that infringement would recur." *Id.* And it included internal Cox emails and chats that could be interpreted as "displaying contempt for laws intended to curb online infringement." *Id.*

But that factual record was ultimately irrelevant to the question of Cox's contributory liability. Despite that record, the Supreme Court concluded that Cox could *not* be found liable for having induced infringement because the plaintiffs still "provided no 'evidence of express *promotion*, *marketing*, and *intent to promote*' infringement" by Cox. 146 S. Ct. at 968 (emphasis added) (quoting *Grokster*, 545 U.S. at 926). At most, the plaintiffs had demonstrated that Cox was "supplying a product with knowledge that the recipient will use it to infringe copyrights," but the Court rejected that theory as insufficient to find inducement for any service provider. *Id.* (citation omitted). As the Court explained, such a theory would "conflict[] with th[e] Court's repeated admonition that contributory liability cannot rest only on a provider's knowledge of infringement and insufficient action to prevent it." *Id.* at 969. The Court emphasized that when a plaintiff seeks to hold the provider of a service contributorily liable, "mere knowledge that a service will be used to infringe is insufficient to establish the required intent to infringe." *Id.* at 968.

Similarly, in *Perfect 10, Inc. v. Amazon.com, Inc.*, the Ninth Circuit rejected an inducement claim against Google under circumstances similar to those here. There, Google was accused of

14

linking users to infringing images on a third-party site through its Google Image Search product. 508 F.3d at 1168–69. The court held that "Google's activities do not meet the 'inducement' test explained in *Grokster* because Google has not promoted the use of its search engine specifically to infringe copyrights." *Id.* at 1170 n.11. But, as noted, it did hold that Google could be liable under a material contribution theory—the very theory that *Cox* rejected and that Plaintiffs relied on here until *Cox* cut off that avenue.

### B. Plaintiffs Failed to Plead an Inducement Theory, and None of the Allegations Support Such a Theory

Plaintiffs fail to plead inducement under *Cox*. Neither the word "induce" nor any of its variants even appears in Plaintiffs' complaint. And Plaintiffs offer only a single, conclusory assertion that the alleged "acts of infringement by Google have been willful, intentional, and purposeful." FAC ¶ 129; *see State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 335 (S.D.N.Y. 2020) ("[T]he court need not accept conclusory allegations [as true]."). Plaintiffs fail to provide any allegations supporting a conclusion that Google *intended* infringement to occur by way of inducement. Because the complaint does not even attempt to state an inducement claim, the motion to dismiss should be granted for that reason alone.

Nor could Plaintiffs plausibly have asserted an inducement claim based on the factual allegations in the complaint. Plaintiffs allege that Google is a provider of a neutral service to third parties: Google Shopping is an "advertising platform" (FAC ¶¶ 40, 46, 93, 135), where merchants provide information about products for sale on their own websites (FAC ¶ 41), which Google then uses to algorithmically display advertisements based on "users, search terms, and other factors" (FAC ¶¶ 37–38). Google does not display Shopping advertisements to users on its own behalf but on behalf of merchants. There are no allegations—even conclusory ones—that Google provided the Shopping service "with the object of promoting its use to infringe copyright, as shown by clear

15

expression or other affirmative steps taken to foster infringement." *Grokster*, 545 U.S. at 936–37. As in *Cox*, Plaintiffs have not alleged a single example of Google "express[ly] promoti[ng]" or "marketing" the Shopping platform for infringing uses. *Id.* at 926; *see Perfect 10,* 508 F.3d at 1170 n.11 (holding that "Google's activities do not meet the 'inducement' test explained in *Grokster* because Google has not promoted the use of its search engine specifically to infringe copyrights"). Nor are there any plausible allegations of Google "actively encouraging . . . infringement through specific acts." *Perfect 10,* 508 F.3d at 1170 (citing *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)).

Instead, Plaintiffs' allegations fundamentally sound in a now-rejected theory of liability. In their contributory infringement count (Count I), Plaintiffs allege that "Google has knowledge of its specific Infringing Shopping Ads and its Pirate Sellers who have been engaged in repeated and flagrant infringement." FAC ¶ 123. According to Plaintiffs, Google obtained that knowledge from notices sent by Plaintiffs that identify "Infringing Shopping Ads and the Pirate Sites to which the ads link and through which infringing copies of the Authentic Works are downloaded and sold." *Id.* It also obtained "knowledge of the massive problem of its Infringing Shopping Ads from Plaintiffs' other interactions with Google, including with regard to Google's practice of allowing certain ads for pirated digital books but not authentic ones, and the lawsuits Plaintiffs brought against pirates who relied on Google's ads to sell their Infringing Works." FAC ¶ 124. And "Google also has knowledge through its own procedures and monitoring of its advertising services." *Id.* Plaintiffs allege that, despite this knowledge, Google "continued to create and disseminate Infringing Shopping Ads for its repeat infringer Pirate Sellers." FAC ¶ 126. But *Cox* holds "'mere indifferent supposition or knowledge on the part of the seller' that the buyer will use

16

the product unlawfully is 'not enough' to make the seller liable for the buyer's conduct." *Cox*, 146 S. Ct. at 968 (citation omitted).

The other allegations that make up Count I of the complaint similarly fall short. Plaintiffs allege that the "Infringing Shopping Ads are specifically designed to entice users to visit the Pirate Sites and buy the Infringing Works." FAC ¶ 126. But Plaintiffs do not allege that the allegedly infringing Shopping Ads are different in kind from any other Shopping Ads on Google's platform, or from any other advertisement elsewhere on the internet. All advertisements, whether for allegedly infringing products or not, are designed to entice users to visit the website where the advertised goods are being sold. This allegation cannot support the inference that Google ran ads "with the object of promoting" copyright infringement. *Grokster*, 545 U.S. at 936–37. Plaintiffs also allege that, with respect to sales to Google users who clicked on a Shopping ad, "the Google ad was essential to the infringement." FAC ¶ 126. But even if it were true that users located the merchant website via a Shopping ad, that is not a plausible basis for concluding that Google was encouraging or inducing merchants or users to infringe. *See Perfect 10*, 508 F.3d at 1170 n.11. Such a claim is particularly implausible given Plaintiffs' concession that Shopping Ads are shown to users as part of a wholly automated system that matches the advertiser's ad with potentially relevant users. FAC ¶¶ 37–38, 42.

The remainder of the Plaintiffs' allegations do not support an inducement claim, either. At various points, Plaintiffs' complaint attempts to paint certain services that Google provides to all merchants as nefarious. But none of those allegations plausibly alleges that Google was "actively encourag[ing] infringement through specific acts," akin to Grokster, LimeWire or Usenet. 146 S. Ct. at 967. For instance, Plaintiffs allege that it is Google that "creates each Shopping Ad based on information provided by Google's merchants," in some cases using "machine learning

17

technology to help Google create better ads for its Merchants." FAC ¶ 41. Plaintiffs also allege that Google "decides when and where to display" advertisements, and "targets the ad to users Google determines are most likely to buy the product, then arranges the ad, along with other competing ads, on the user's page." *Id.* ¶ 42

To begin with, Google only "creates" the ad in the sense that it provides a standard template that advertisers customize with their own information about the goods or services they wish to advertise. *See id.* ¶¶ 49–50 (examples of Shopping ads). And Google decides "when and where to display it" based on an algorithm that applies to all Shopping listings. *Id.* ¶¶ 37–38, 42. But in any event, these are basic features of the Google Shopping platform generally, and one cannot draw from these allegations a plausible conclusion that Google was promoting its platform as one it wished to be used for infringement.

The same is true of Plaintiffs' allegation that "Google sometimes provides suggested additional terms to refine [a user's] search," which has the effect of "direct[ing] them to Infringing Shopping Ads," and their allegation that Google's "Compare Prices" feature "mak[es] users all the more likely to purchase their textbook from a Pirate Site." FAC ¶¶ 57–59. These search and filtering capabilities, too, are generally applicable features of the Google Shopping platform that cannot plausibly support the conclusion that Google intended them to be used for infringement.

Instead, as in *Cox*, Plaintiffs' own allegations make clear that Google did not intend its Shopping platform to be used for infringement. Indeed, Plaintiffs allege that Google's policies prohibit misuse of Shopping Ads for infringement. *See Cox*, 146 S. Ct. at 968 (rejecting inducement liability where Cox discouraged copyright infringement). For example, Plaintiffs allege that "Google requires that retailers comply with all applicable laws and regulations in addition to our policies," blocks content that violates its policies, and "[i]n cases of repeated or

18

egregious violations" Google bans merchants from advertising content." FAC ¶ 61 (quoting *Unsupported Shopping content*, https://support.google.com/merchants/answer/6150006). Plaintiffs further allege that Google requires retailers comply with copyright laws and "do[es]n't allow ads that are unauthorized to use copyrighted content" or link to "unauthorized sites . . . that capture, copy, or provide access to copyrighted content." *Id.* ¶ 60 (quoting *Advertising Policies Help: Copyrights*, https://support.google.com/adspolicy/answer/6018015). And Plaintiffs' allegations highlight Google's policy specifically "ban[ning] ads for all standalone digital books (i.e., ads that advertise an ebook price or lead to a landing page selling only a digital book, other than audiobooks)." *Id.* ¶ 68. Plaintiffs' allegations further acknowledge that Google not only reserves the right to "take action on content that violates [its] policies," including "suspending accounts for repeat or egregious violations," but it also removes Shopping ads that violate its policies and terminates merchants who use the platform to advertise infringing content. *See id.* ¶¶ 70–72, 76.

At most, Plaintiffs allege that Google fails to consistently enforce these policies. For example, while Plaintiffs allege that "Pirate Sites are able to advertise standalone digital books on Google while legitimate publishers are not," this is only because, according to Plaintiffs, Google is not effectively enforcing its "neutral policy applicable to all ebook sellers" banning all ads for ebooks. *Cengage Learning, Inc. v. Google LLC*, 786 F. Supp. 3d 611, 633 (S.D.N.Y. 2025) (explaining that the parties "agree that Google's stated policy is a neutral policy applicable to all ebook sellers"); *id.* at 619 (interpreting Plaintiffs' allegation to mean that Pirate Sellers "are skirting" Google's neutral policy). Elsewhere in the complaint, Plaintiffs allege that despite Google's claim that "it wants to protect intellectual property," it has failed to "'root out and eject'

19

repeat infringer pirates" and has "disregarded the infringement notices" that Plaintiffs sent identifying these pirate websites.  FAC ¶ 6; *see also id.* ¶¶ 99–113.

But these allegations amount to the same theory rejected in *Cox*—that Google should be liable merely for supplying a neutral service that can be misused for infringement and for failing to effectively prevent that misuse.  *Cox* makes clear that such a theory goes "beyond the two forms of liability recognized in *Grokster* and *Sony*" and is insufficient for inducement liability.  *Cox*, 146 S. Ct. at 968–69; *see also Grokster*, 545 U.S. at 939 n.12 ("[A] court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement.").

Because Plaintiffs fail to plead any facts plausibly supporting the conclusion that Google expressed an affirmative intent that its service be used for infringement, they have failed to plead a claim of contributory copyright infringement.

## II.    PLAINTIFFS FAIL TO PLEAD THAT THE GOOGLE SHOPPING PLATFORM IS A SERVICE TAILORED TO INFRINGEMENT

Plaintiffs also fail to plead a claim of contributory copyright infringement based on the theory that Google's Shopping Ads are a service "tailored to infringement."  "A service is tailored to infringement if it is 'not capable of "substantial" or "commercially significant" noninfringing uses.'"  *Cox*, 146 S. Ct. at 967 (quoting *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)).  This exacting standard is rarely satisfied.  For example, in the patent context, it is met only when a plaintiff can establish that the defendant created a "component . . . that had no use other than practicing the methods of the [plaintiff's] patents."  *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337 (Fed. Cir. 2008).  "Such a component, specially adapted for use in the patented process and with no substantial noninfringing use, would plainly be 'good for nothing else' but infringement of the patented process."  *Id.* (quoting *Grokster*, 545 U.S. at 932); *see also Nalco Co.*

20

*v. Chem-Mod, LLC*, 883 F.3d 1337, 1357 (Fed. Cir. 2018) (plaintiff plausibly alleged defendant's product had no substantial noninfringing uses besides infringing the plaintiff's patent).

By contrast, the Supreme Court rejected contributory infringement liability premised on the mere sale of the Betamax product in *Sony*, because the Betamax was "capable of substantial noninfringing uses." As the Court found, the Betamax "[wa]s widely used for legitimate, unobjectionable purposes," including "'time-shifting'—the practice of recording a program to view it once at a later time, and thereafter erasing it," which the Court concluded constituted fair use. 464 U.S. at 423, 440-42. The same was true in *Cox*. The Supreme Court held that Cox did not "provid[e] a service tailored to infringement" because "Internet service [i]s clearly 'capable of substantial or commercially significant noninfringing uses,'" since "Internet access . . . is used for many purposes other than copyright infringement." 146 S. Ct. at 968; *see also VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019) (acknowledging real estate websites capable of substantial noninfringing uses); *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (same for cell service); *Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956, 968 (N.D. Cal. 2024) (same for AI program).

So too here. Google's Shopping Ads indisputably have overwhelming valid, lawful, and noninfringing uses. Tellingly, Plaintiffs do not allege otherwise—because they could not plausibly do so. Even casual use of Google Shopping reveals that the vast majority of Shopping Ads are from legitimate sellers advertising legitimate products. Indeed, all of the features about which Plaintiffs complain—like automated processes for creating and optimizing advertisements, promotion for paid advertising, suggesting additional filters based on a user's search, and providing price comparisons for search results—are capable of, and actually put to, obvious noninfringing uses in the vast majority of cases. *Cf.* FAC ¶¶ 37–38, 41–42, 57–59. Nor is there

21

any evidence to suggest that Google designed the Shopping platform to promote infringement. To the contrary, as noted above, Google has created numerous features designed to *combat* infringement. *Cf. Cox*, 146 S. Ct. at 968 (referencing Cox's anti-infringement efforts as evidence undermining intent). These are certainly substantial noninfringing uses.

Because there are no allegations that would plausibly suggest that Google's Shopping Ads are a service "'good for nothing else' but infringement," Plaintiffs have failed to state a claim for contributory liability under a tailored-to-infringement theory. *Grokster*, 545 U.S. at 932 (citation omitted).

*     *     *

Ultimately, it is illogical and implausible to assert that Google Shopping—a quintessential legitimate marketplace—was "intended" for infringement or lacks "substantial noninfringing use" simply because it is not immune to the same bad actors that plague the entire internet. Plaintiffs' attempt to hold Google responsible for piracy rather than the infringing sites is nothing more than a transparent effort to shift the financial burden of third-party piracy onto the deepest available pocket.

**CONCLUSION**

For the foregoing reasons, Google's motion should be granted and Plaintiffs' contributory copyright infringement claim should be dismissed with prejudice.

22

Dated: April 17, 2026

Respectfully submitted,

**LATHAM & WATKINS LLP**

*/s/ Sarang Vijay Damle*
Sarang Vijay Damle
Sarah A. Tomkowiak (*pro hac vice*)
Holly K. Victorson (*pro hac vice*)
Laura E. Bladow (*pro hac vice*)
Roberto J. Borgert (*pro hac vice*)
Brent T.F. Murphy (*pro hac vice*)
Sara E. Sampoli (*pro hac vice*)
Jennifer Ferrigno (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: sy.damle@lw.com
        sarah.tomkowiak@lw.com
        holly.victorson@lw.com
        laura.bladow@lw.com
        roberto.borgert@lw.com
        brent.murphy@lw.com
        sara.sampoli@lw.com
        jennifer.ferrigno@lw.com

Allison L. Stillman
Caroline F. Clarke (*pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: alli.stillman@lw.com
        caroline.clarke@lw.com

Joseph R. Wetzel
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: joe.wetzel@lw.com

*Attorneys for Defendant Google LLC*

23

**CERTIFICATION OF WORD COUNT**

I certify that the foregoing memorandum of law complies with the formatting and word limit requirements set forth in Rule 3.C of the Court's Individual Rules and Procedures for Civil Cases because it contains 6,866 words, excluding the cover page, table of contents, table of authorities, signature block, and certification of word count.  This memorandum of law also complies with the applicable formatting rules because it has been prepared in 12-point font and all text is double-spaced.

In preparing this certification, I relied on the word count of the Microsoft Word computer program used to prepare this memorandum of law.


Dated:  April 17, 2026                    */s/ Sarang Vijay Damle*
                                          Sarang Vijay Damle