

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.99.2940
matt@oandzlaw.com

April 20, 2026

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

> **Re:** ***Cengage Learning, Inc. et al. v. Google LLC,*** **No. 24:cv-04274-JLR-BCM**
> **Plaintiffs' Opposition to Google's Motion (Dkt. 836) to Vacate the Court's Order**

[Redacted]

Dear Judge Moses,

We represent all Plaintiffs in this matter. We write in response to Google's request (Dkt. 836) to vacate the Court's Order (Dkt. 472) concerning the 300-domain "sample" of Google's overall DMCA program. After resisting this discovery for months, Google proposed to the Court a methodology of randomly selecting 300 domains and producing information about them. Dkts. 402 at 3–5, 441 ¶ 1. After repeatedly failing to meet deadlines to produce this discovery, Dkt. 724, Google now asks the Court to excuse Google from this discovery altogether, based on Google's withdrawal of its DMCA defense, Dkt. 836. The Court should deny Google's request. Although Google no longer invokes the DMCA's safe-harbor from damages, 17 U.S.C. § 512(i), this discovery remains important both to liability and to damages. Google repeatedly and vociferously proclaimed both publicly and to Plaintiffs that it had a robust policy forbidding infringing ads. Attorney Dec. of Jeff Kane ("Decl."), Exs. 2–4. But Google knew that policy was largely observed in the breach, not just as to Plaintiffs, but as to all rightsholders. Google both failed to follow its own policy and ███████████████████████████████████████████████ Both of these speak to Google's knowledge, intent, and culpability. The 300-domain sample will speak directly to the extent to which Google violated its own policy, its statements in this case, and its public proclamations. Google cannot claim it had a program and policy against infringing ads, but refuse to produce evidence that will show whether those claims are true.

First, Plaintiffs will argue at summary judgment and trial that Google's failure to follow *its own DMCA policy* shows Google's intent, the need for deterrence, and its culpability. Google likely will cite its DMCA Policy and overall program to argue the opposite. Courts properly consider a company's failure to follow its own copyright policies as evidence of the company's intent to induce infringement or willfulness. *Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 153 n.20 (S.D.N.Y. 2009) (citing the fact that the defendants "violated their own [copyright] policies" as "evidence of their intent to foster copyright infringement by their users."); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 627 (S.D.N.Y. 2018) (defendant's failure to implement its anti-counterfeiting program properly was evidence of willfulness). The same holds outside the copyright context. *See, e.g., Rothman v. Gregor*, 220 F.3d 81, 91 (2d Cir. 2000) (in a securities fraud case, a "reckless failure to follow an announced policy of expensing royalty advances" was evidence of scienter); *Nabozny v. Podlesny*, 92 F.3d 446, 455 (7th Cir. 1996) ("It is well settled law that departures from established practices may evince discriminatory intent."); *Craik v. Minnesota State Univ. Bd.*, 731 F.2d 465, 472 (8th Cir. 1984) (similar). Google represented

Hon. Barbara Moses
April 20, 2026
Page 2 of 3

to copyright owners that it prohibited ads for infringing goods, and had a policy and program in place to stop infringement. Plaintiffs will argue that claim was a sham, and Google knew it. Dkt. 38 ¶ 71, 99–113. Data concerning the 300 domains will show whether Google actually followed its DMCA policy. This will be important evidence for the jury.

While Google has withdrawn its safe-harbor defense, 17 U.S.C. § 512(i), and removed some rhetoric from its Answer, one of the two witnesses Google has allowed to be deposed so far claimed during deposition that Google ███████████████████████████████ ███████████████████████████████████████████████████. No doubt more Google witnesses will make similar claims. Indeed, Google has made these types of claims for years. Google reported to the U.S. Patent and Trademark Office that ██████████████████████████████████████████████████████ ███████████████████████████████████ Ex. 1 (GOOG-CENG-00409388, 9395). Google's website claims "Google has adopted and implements a copyright repeat infringer policy under which we take action against users who repeatedly misuse our services by violating Google's copyright policies." https://support.google.com/legal/answer/11625144?hl=en&ref_topic= 4558877&sjid=4516291224361484956-NA. *See* Decl. ¶¶ 7–8 and Exs. 2–4 for additional examples. Yet during a meet-and-confer on April 15, 2026, Google refused to say whether it would make these arguments at trial. Since Google reserves the right to make these arguments to the jury, Google must produce the evidence that will show whether these claims are true.

Second, beyond whether Google *followed* its DMCA policy, the contours of that policy itself are important evidence of Google's intent, willfulness, and of the need for deterrence. Google's policy contains important exceptions. For example, Google claims that its policy is to ██████████████████████████████████████████ Dkt. 238-5. But Google █████████████████████████████████████████████████████████████████ █████████████████████████████████ Plaintiffs explained this in response to Google's last attempt to renege on this discovery (Dkt. 745 at 1–2), and Google did not contest it, Dkt. 760. Indeed, Google is *still* advertising infringing copies of Plaintiffs' works on behalf of Etsy, one of the marketplace sites. Exs. 5–7. Discovery into these sites is all-the-more important because Google claimed in a submission to the USPTO that █████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████ And Google admits that 31 of the 300 sites in the selection are "marketplace" websites. Dkt. 724 at 1. Google must produce discovery concerning these sites. Further, Google's DMCA policy provides ███████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████ Google must produce discovery concerning these sites.

Google's claim that this discovery is disproportionate is hollow. As usual, Google's burden claim is made only through attorney argument. And it was *Google* who proposed this methodology as a way of alleviating its supposed burden. The Court should deny Google's request.

Hon. Barbara Moses
April 20, 2026
Page 3 of 3

/s/ *Jeff Kane*
Jeff Kane

*Counsel for Plaintiffs*