# EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

Google Inc.,

        *Plaintiff,*

        *v.*

Jim Hood, Attorney General of the State of
Mississippi, in his official capacity,

        *Defendant.*

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 3:14cv981 HTW-LRA

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

SOUTHERN DISTRICT OF MISSISSIPPI
**F I L E D**

**DEC 19 2014**

ARTHUR JOHNSTON
BY_____DEPUTY

1.      This is an action for declaratory and injunctive relief brought by Google Inc. ("Google") against Mississippi Attorney General Jim Hood, in his official capacity (the "Attorney General" or "Attorney General Hood").

2.      Google is an Internet service provider that maintains and operates one of the world's most popular Internet search engines, providing free, fast, and convenient access to the trillions of individual web pages publicly-available on the Internet. Google also maintains and operates YouTube, a leading online forum for uploading, searching for, viewing, and sharing videos.

3.      The Attorney General has engaged in a sustained campaign of threats against Google, designed to compel Google to restrict the information created by others that Google makes available through its search engine, YouTube video-sharing site, and related advertising. As part of that campaign, the Attorney General has threatened to proceed against Google civilly or criminally under Mississippi's Consumer Protection Act ("MCPA"), and he has issued a retaliatory and burdensome Administrative Subpoena and Subpoena Duces Tecum ("Subpoena") to Google, demanding Google produce an enormous volume of documents on a wide range of

1

reduce or eliminate directing consumers to counterfeit product sites," and "[w]hat role search engines have played in curbing the sale of counterfeit pharmaceuticals, medical devices, and other products posing significant consumer health and safety threats." The letter did not provide a deadline for responding.

35. Google contacted the Attorney General's staff shortly after receiving the February 13, 2013 letter and explained that the company was preparing a written response. Google continued to have ongoing discussions with the Attorney General's office following receipt of the February 13th letter.

36. On April 1, 2013, the Attorney General wrote to Google's General Counsel, complaining that "no substantive response has been forthcoming," and characterizing Google as "deliberatively evasive" and "unwilling[] to make meaningful reforms." In the letter, the Attorney General asserted that Google's "failure to stop illegal sites from selling stolen intellectual property" and to curb "the prevalence of illegal drugs" was "threaten[ing] the lives and livelihoods of millions of American families and companies." He characterized Google as "promot[ing] and profit[ing] from" the "sale of illegal off shore pharmaceuticals"—even though Google has barred such advertising for years. The Attorney General closed his April 1st letter by stating that if Google did not take voluntary action, "we will take legal action to change behavior . . . ."

37. After various conversations with the Attorney General's staff, on April 19, 2013, Google provided a detailed, seven-page response to the Attorney General's February 13th letter. Google explained that it "has dedicated tens of millions of dollars in engineering and other resources to address the[] issues [raised in the February 13th letter] and leads the industry in helping to combat copyright infringement and the sale of counterfeit goods online." Google

explained that in providing search results, however, it neither "make[s] claims about the content of the pages nor . . . [has] a relationship with the owners of [those] pages," and that removing links to a website from its search results "does not remove it from the web." Noting that it had "seen many demands for removal of sites which threaten to stifle legitimate commerce and speech," Google wrote:

> Google is committed to free expression and only removes content from our search results in a narrow set of circumstances. Google cannot adjudicate the legality of content on the web and cannot determine whether a particular piece of content is authorized or not. Because content owners large and small use the Web in so many different ways, determining a particular copyright holder's preference—including determining whether a third-party uploader has permission to upload—is difficult at best.

38. On May 20, 2013, Google responded to the Attorney General's April 1st letter. Google further detailed its "specific efforts to help combat illegal pharmacies online" and explained that "[t]his is an area that Google takes quite seriously and one in which we are leading the industry in the fight against counterfeit and illegal pharmaceuticals." Specifically, Google discussed innovations and developments in its advertising, cooperation with law enforcement, cross-industry collaboration, and Autocomplete policies, all intended to combat illegal pharmacies online.

39. Essentially ignoring the information Google provided, the Attorney General escalated his threats against Google. In a letter dated May 21, 2013, addressed to Google's Chief Executive Officer, Larry Page, the Attorney General falsely accused Google of "aiding and abetting" and even "encourag[ing] . . . illegal activity." The Attorney General invited Mr. Page and Google's General Counsel to attend a NAAG meeting scheduled for June 18, 2013. The Attorney General stated his expectation that Google would explain at the meeting, among other things, why Google would not agree to censor search results by "remov[ing] websites . . . that

11