UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CENGAGE LEARNING INC., et al.,

Plaintiffs,

-against-

GOOGLE LLC,

Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  05/08/26

24-CV-4274 (JLR) (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

By letter-motion dated April 14, 2026 (Def. Mot.) (Dkt. 836) Defendant Google LLC (Google) asks this Court to vacate its order dated December 22, 2025 (Sampling Order) (Dkt. 472), which was expressly designed to permit plaintiffs to test Google's (now-withdrawn) "safe harbor" defense under the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 512. For the reasons that follow, the motion will be granted.

## Background

Plaintiffs are four of the "leading educational publishers in the United States." Am. Compl. (Dkt. 38) ¶ 2. In this action, they assert claims for contributory copyright infringement and direct trademark infringement against Google, based on its "systemic and pervasive advertising of unauthorized, infringing copies of the Publishers' textbooks and educational works." *Id*. ¶ 1. Specifically, plaintiffs accuse Google of facilitating and promoting the sale of infringing digital copies of their textbooks and other works through its lucrative Google Shopping platform, which "pirate" sellers use to advertise their low-cost products. *Id*. ¶¶ 35-46; *see also Cengage Learning, Inc. v. Google LLC*, 786 F. Supp. 3d 611, 616-19, 634 (S.D.N.Y. 2025) (describing plaintiffs' factual allegations in more detail and dismissing their claims for vicarious copyright infringement and violation of N.Y. Gen. Bus. L. § 349). Plaintiffs have identified a total of 7,359 works (the works-in-suit) infringed in this manner. *See* Ex. A to Am. Compl. (Dkt. 120-1).

Under the DMCA, a service provider like Google cannot be secondarily liable for copyright infringement if, among other things, it "acts expeditiously to remove, or disable access to" "infringing material or infringing activity" when made aware of it, 17 U.S.C. § 512(d)(1)(C), and has "adopted and reasonably implemented . . . a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers." *Id.* § 512(i)(1)(A). The DMCA safe harbor "is properly seen as an affirmative defense," which must be pleaded by the service provider. *Capitol Recs., LLC v. Vimeo, LLC*, 826 F.3d 78, 94 (2d Cir. 2016).

In its Amended Answer, filed on November 13, 2025, Google denied plaintiffs' material allegations and asserted various affirmative defenses, including its Third Defense, invoking the DMCA safe harbor. Dkt. 271 at 23. On October 29, 2025, the Court denied plaintiffs' motion to strike the Third Defense as inadequately pleaded. *See Cengage Learning, Inc. v. Google LLC*, 2025 WL 3022375, at *6-8 (S.D.N.Y. Oct. 29, 2025).

Discovery, which is proceeding under my supervision, *see* Dkt. 193, has been vigorous and – at times – contentious. As of March 5, 2026, plaintiffs reported that they had produced "over 5.1 million pages and voluminous native documents, constituting approximately 977 GB [gigabytes] of data." Dkt. 727 at 1.[1] As of March 13, 2026, Google reported that it had produced "under 1.5 terabytes" of data, Dkt. 761 at 3, including voluminous documents and data, spanning a period of more than four years, with regard to the 1,500 "pirate" domains (websites) that plaintiffs identified as advertising infringing copies of one or more of the 7,359 works-in-suit through the Google Shopping platform. *See* 1/7/25 Order (Dkt. 72); 10/9/25 Order (Dkt. 217); 12/2/25 Order (Dkt.

---

[1] Many of the parties' letters, briefs, and other filings were filed in unredacted form under seal, and in redacted form on the public docket, to protect confidential information. In such instances this Order cites the publicly-available filing.

359).[2] For each such website, Google has turned over – among other things – all of the infringement ("takedown") notices it received concerning that website (whether from plaintiffs or from other rightsholders); Google's responses to those notices (for example, whether and when it took down the infringing ads); the Merchant Center accounts and Google Ads accounts presently or previously associated with the website; the Shopping ads that Google ran concerning each such website (including "offer" data and "ads" data); and the revenue that it earned from those Shopping ads. *See* 10/9/25 Order ¶ 1(a); 12/2/25 Order ¶ 4(a)-(c).

Plaintiffs then sought production of documents evidencing Google's implementation of its anti-infringement policies *beyond* the 1500 "pirate" domains discussed above. Pointing to Google's Third Defense, plaintiffs argued that it "necessarily implicates Google's overall DMCA program, not merely Google's treatment of Plaintiffs' notices, or its treatment of the pirates who infringed Plaintiffs' works." Dkt. 239 at 1; *see also id*. at 4 ("[T]he documents Google has produced [thus far] overwhelmingly involve notices from Plaintiffs. But there is no indication that Google's responses to Plaintiffs' notices are representative of its overall DMCA program.").

After several rounds of briefing and two lengthy discovery conferences (*see* Dkts. 493-1, 566-1), the Court issued the Sampling Order on December 22, 2025, directing Google to produce extensive documents and data concerning its receipt of and response to infringement notices for "Shopping" ads on 300 additional internet domains (websites), to be randomly selected over a time period specified by plaintiffs, using criteria designed to exclude "the 1,500 domains for which discovery is already being collected." Sampling Order ¶¶ 1-4. For each of the 300 new domains, Google was required to provide most of the same documents and data required with respect to the

---

[2] Plaintiffs identified 1,239 of these websites on December 24, 2024, and another 261 on October 24, 2025, after analyzing Google's productions concerning the first 1,239 websites. *See* Kane Decl. (Dkt. 228) ¶¶ 3-7; Tomkowiak Decl. (Dkt. 232) ¶¶ 4, 10-11.

1,500 "pirate" websites. *Id.* ¶¶ 5(a)-(d). The purpose of the Sampling Order was to permit plaintiffs to test whether Google's "overall DMCA program," Dkt. 239 at 1, was "reasonably implemented for purposes of the Digital Millenium Copyright Act." Dkt. 566-1 at 21:4-11.

On March 5, 2026 (the day before it was scheduled to produce the documents required by the Sampling Order), Google reported that it had "encountered unforeseen complications," in part because 31 of the 300 randomly-chosen websites were "marketplace domains" (including Amazon.com, ebay.com, and etsy.com), such that producing the required documents and data for those domains would be "a massive undertaking involving mountains of data that dwarf the discovery Google has produced about the 1,500 domains" that allegedly infringed plaintiffs' works-in-suit. Dkt. 725 at 2. Plaintiffs opposed any modification of the Sampling Order, arguing that "[a]llowing Google to exclude these sites from Google's selection [of sample domains] would allow Google to hide additional evidence that Google did not follow" its own policy for terminating repeat infringers. Dkt. 747 at 1.

On March 30, 2026 – five days after the Supreme Court decided *Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959 (2026) – Google advised that "[i]n light of that decision, which clarifies and significantly narrows the standard for contributory copyright infringement liability," it planned to (i) file a motion for partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and (ii) "withdraw[] its reliance on the DMCA defense." Dkt. 771 at 1, 3. On April 17, 2026, Google filed its Rule 12(c) motion, *see* Dkt. 842, which is not yet fully briefed. On April 21, 2026, with the Court's leave, Google filed its Second Amended Answer, from which it has excised both the DMCA defense itself and several paragraphs of supporting factual allegations. *See* Dkt. 835-2 (redline comparing Amended Answer to proposed Second Amended Answer); Dkt. 854 (Second Amended Answer).

**The Parties' Positions**

In Google's view, "now that [it] has withdrawn its DMCA defense, . . . the entire sampling exercise is no longer relevant (and thus certainly not proportional)." Def. Mot. at 1. Defendant states that the Sampling Order would require production of "at least 27 terabytes of data, which is over *18 times* the total amount of data Google has produced related to the actual works in suit, for a defense that Google has withdrawn." *Id*. at 2. Plaintiffs oppose the motion to vacate, arguing that the discovery mandated by the Sampling Order "remains important to both liability and damages." Pl. Opp. (Dkt. 848) at 1. They add that Google's proportionality argument is weak because its "burden claim is made only through attorney argument." *Id*. at 2. In reply, Google argues that plaintiffs' "brand new rationales for needing this data" are not "compelling," Def. Reply (Dkt. 861) at 1, and points out that in prior filings it "explained in great detail" the "specific burdens" imposed by the Sampling Order. *Id*. at 2 (citing Dkts. 724 and 760).

**Discussion**

Google is correct that plaintiffs' demand for discovery concerning its treatment of takedown notices unrelated to plaintiffs' works-in-suit, and its termination of repeat infringers unrelated to the 1,500 "pirate" domains that allegedly infringed those works-in-suit, was predicated entirely on Google's DMCA defense. *See, e.g.*, Dkt. 239 at 1, 3 (arguing that the DMCA defense "necessarily implicates Google's overall DMCA program, not merely Google's treatment of Plaintiffs' notices, or its treatment of the pirates who infringed Plaintiffs' works," and therefore that it was insufficient for Google to produce "only documents that concern the pirates who infringed Plaintiffs' works"); Dkt. 493-1 at 64:11-12 (Plaintiffs' counsel: "[R]emember, it is their whole DMCA program that's at issue here. It's not confined to our pirates."); Dkt. 403 at 3 ("Plaintiffs' [sampling] proposal is a straight-forward, common-sense approach to testing the key features of

5

Google's DMCA program."). Likewise, when Google complained of burden, plaintiffs resisted any modification of the Sampling Order on the ground that discovery as to all 300 domains was necessary "to test Google's overall DMCA program." Dkt. 609 at 1; *see also* Dkt. 701 at 1 (noting that the Sampling Order was issued "for the purpose of testing Google's overall DMCA program . . . outside of the 1,500 websites that infringed the works-in-suit"); Dkt. 747 at 2 (arguing that plaintiffs are entitled to discovery as to all 300 sample domains, including "marketplace" domains, because "Google's DMCA defense is not limited to the treatment of *Plaintiffs'* notices").

Although plaintiffs concede that they relied exclusively on Google's invocation of the DMCA safe harbor to obtain the Sampling Order, *see* Dkt. 898-1 at 21:3-4 (Plaintiffs' counsel: "[T]hat is what we argued at the time."), they now insist that they are entitled to the same broad discovery even in the absence of that defense. In support of their position, plaintiffs offer two arguments, neither of them persuasive.

First, plaintiffs assert that they intend to argue at summary judgment and trial "that Google's failure to follow *its own DMCA policy* shows Google's intent, the need for deterrence, and its culpability." Pl. Opp. at 1. Therefore, they reason, they still need "[d]ata concerning the 300 domains," which "will show whether Google actually followed its DMCA policy." *Id*. at 2. But the statute itself prohibits plaintiffs from using this evidence to show Google's "culpability." As the Supreme Court noted in *Cox Communications*, "the DMCA made clear that failure to comply with the safe-harbor rules 'shall not bear adversely upon . . . a defense by the service provider that the service provider's conduct is not infringing.'" 146 S. Ct. at 969 (quoting 17 U.S.C. § 512(*l*)); *see also Bus. Casual Holdings, LLC v. YouTube, LLC*, 2022 WL 837596, at \*5 (S.D.N.Y. Mar. 21, 2022) ("[A]lleged failures to satisfy the conditions of a DMCA safe harbor provision cannot constitute a cause of action without a viable underlying claim for copyright infringement.");

*In re Frontier Commc'ns Corp.*, 658 B.R. 277, 296 (Bankr. S.D.N.Y. 2024) ("[P]ut simply, the DMCA is 'irrelevant to determining what *constitutes* a prima facie case of copyright infringement.'") (quoting *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 555 (4th Cir. 2004)). Likewise, the Supreme Court has consistently held that contributory infringement liability cannot be "merely based on a failure to take affirmative steps to prevent infringement." *Cox Communications*, 146 S. Ct. at 968 (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 939 n.12 (2005)). Consequently, now that Google has withdrawn the safe harbor defense, discovery designed to show whether Google "follow[ed] its own DMCA policy," Pl. Opp. at 1, is no longer relevant to the parties' claims and defenses, as required by Fed. R. Civ. P. 26(b)(2).[3]

Second, plaintiffs argue that, "beyond whether Google *followed* its DMCA policy, the *contours* of that policy itself are important evidence of Google's intent, willfulness, and of the need for deterrence." Pl. Opp. at 2 (second emphasis added).[4] In plaintiffs' view, Google's policy "contains important exceptions" that render it ineffective against the infringement about which plaintiffs complain. *Id*. As explained above, however, the ineffectiveness of a service provider's

---

[3] Plaintiffs cite *Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009), for the proposition that a defendant's "failure to follow its own copyright policies" can be used to show the intent required for contributory copyright infringement. Pl. Opp. at 1. In *Arista*, however, the defendants operated a Usenet service that was "used overwhelmingly for copyright infringement." *Arista*, 633 F. Supp. 2d at 131. Moreover, the *Arista* defendants did not merely "fail to follow" their own policies, which is what plaintiffs charge here. *See* Pl. Opp. at 1 (asserting that Google's anti-infringement policies were "largely observed in the breach, not just as to Plaintiffs, but as to all rightsholders"). Rather, they "*violated* their own policies by *engaging in the very conduct those policies prohibited*," *id*. at 153 n.20 (emphasis added), such as by "us[ing] the service themselves to download Plaintiffs' copyrighted works." *Id*. at 152-53. Plaintiffs here do not contend – and nothing in the record suggests – that the discovery required by the Sampling Order would reveal comparable evidence.

[4] Plaintiffs seek a finding that Google "willfully" infringed the works-in-suit, *see* Am. Compl. at 46, which could entitle them to enhanced statutory damages pursuant to 17 U.S.C. § 504(c)(2).

DMCA policy – whether due to poor execution or to poor design – is relevant only to the DMCA safe harbor. *See Cox Communications*, 146 S. Ct. at 968-69; *Frontier Commc'ns Corp.*, 658 B.R. at 296. I therefore conclude that, in the absence of the safe harbor defense, neither of plaintiffs' newly-articulated rationales demonstrates that the discovery required by the Sampling Order meets the relevancy test of Rule 26(b)(2).

In any event, plaintiffs have already had ample discovery concerning the "contours" of Google's DMCA policy. *See*, *e.g.*, 10/9/25 Order ¶ 1(e) ("Defendant must promptly produce each version or iteration of its DMCA policy *in effect* from January 1, 2020 through today."). They have also had substantial discovery showing how Google "implemented" that policy across the 1,500 domains that allegedly infringed plaintiffs' works-in-suit. As Google points out, plaintiffs "are free to (and no doubt will) mine the extensive data Google has already produced on the 1,500 domains that actually have some connection to the asserted works[-in-suit]." Def. Reply at 2. Additionally, Google has adequately particularized its burden claims. *See*, *e.g.*, Dkt. 761 at 2 (explaining how many "unique offers" (ads) were associated with the 300 sample websites and how many rows of data they would produce); Def. Reply at 2 (reiterating that "the offer data for just 266 of the 300 sample domains would be over 27 terabytes large"). Even if marginally relevant, therefore, the discovery required by the Sampling Order – which at best would show how Google "implemented" its DMCA policy across 300 additional, randomly-chosen domains not otherwise relevant to plaintiffs' claims – would not be proportional to the needs of the case, and (for this reason as well) is now outside of the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1).

## Conclusion

For the reasons set forth above, Google's motion to vacate the Sampling Order (Dkt. 472)

is GRANTED.

Dated: New York, New York
      May 8, 2026                          SO ORDERED.


_____
**BARBARA MOSES**
**United States Magistrate Judge**

9