**Sarah A. Tomkowiak**
Direct Dial: +1.202.637.2335
sarah.tomkowiak@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

# LATHAM&WATKINS LLP

May 8, 2026

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

**VIA ECF**

The Honorable Barbara C. Moses
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, New York 10007

Re:     *Cengage Learning, Inc. et al. v. Google LLC*, No. 1:24-cv-04274-JLR-BCM
        <u>Letter Motion for Pre-Motion Conference Regarding Plaintiffs' Document
        Retention Policies</u>

Dear Judge Moses:

Google seeks to compel production of Plaintiffs' document retention policies, and writes to ask for a pre-motion letter conference regarding this request.[1]  As shown below, Google has identified specific documents that are missing from certain Plaintiffs' productions, and many of the Parties' agreed upon custodians and search terms have purportedly yielded no non-privileged, responsive documents. *See, e.g.,* Bladow Decl. ¶¶ 4-5, 9; *id.* Ex. 1.  Plaintiffs have repeatedly dismissed or failed to investigate Google's concerns regarding the comprehensiveness of their document collections and productions, which Google has been alerting them to for more than six months.  To allow Google to evaluate whether the scarcity of Plaintiffs' custodial document productions and other production gaps can be explained, at least in part, by their data or document retention policies, as well as to evaluate the appropriateness of another spoliation motion, Google requests that the Court order Plaintiffs to produce all data and document retention policies in effect from January 1, 2020 through March 31, 2025.

## Background

As described below, Google has identified discrepancies that not only raise serious questions about Plaintiffs' preservation of data, but also the adequacy and integrity of Plaintiffs' search for and production of documents responsive to Google's discovery requests.

**Gaps in McGraw Hill's and Macmillan's Custodial And Non-Custodial Productions.** In 2019, ▮▮▮▮▮▮▮▮▮▮▮ was McGraw Hill's Senior Director of Anti-Piracy and Web Security and ▮▮▮▮▮▮▮▮ was Macmillan's Manager of Global Anti-Piracy.  Both had responsibilities for their respective company's anti-piracy initiatives and were involved in ▮▮▮▮▮▮▮▮▮ along with Cengage's ▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮

---

[1] The Parties reached an impasse on this issue and subsequently met and conferred on April 22.

LATHAM&WATKINS LLP



. Bladow Decl. Ex. 7, Plaintiffs have produced email conversations between Mr. ███ Ms. ███ and Ms. ███ related to ███, but only Ms. ███ is listed in the metadata as the custodian of these conversations.[2] *See, e.g.,* Bladow Decl. Ex. 6, PL0000770062 (" ███ Email Chain"). That is, McGraw Hill has not produced a copy of this document from Mr. ███ files and Macmillan has not produced a copy of this document from Ms. ███ files.

Google first raised concerns about Plaintiffs' custodial document search–including Macmillan's search of Ms. ███ and Mr. ███ files–more than six months ago. *See* Dkt. 287 (noting Macmillan produced only 4 documents from Ms. ███ files and seeking relief from the Court for Plaintiffs' deficient custodial productions). In response, Plaintiffs agreed to add certain search terms, but those terms only yielded a paltry 8 additional documents from Mr. ███ files and 29 additional documents from Ms. ███ files. Google re-raised its concerns with Plaintiffs about the sufficiency of Plaintiffs' custodial document search on March 11–five days after Plaintiffs completed their custodial productions–and sought Plaintiffs' document retention policies.

On April 28, Google deposed Ms. ███ who was Macmillan's corporate designee for topics (1) related to Macmillan's various intellectual property enforcement efforts, and (2) regarding generally the sources of produced documents by category. When asked about the ███ Email Chain, Ms. ███ testified on behalf of Macmillan that ███ ███. Bladow Decl. Ex. 7 ███). But as noted above, Macmillan has not produced a copy of the ███ Email Chain, let alone a more inclusive email chain containing this communication.

Only *after* Google asked to meet and confer regarding sealing of this Motion did Macmillan assert for the first time that Ms. ███ missing documents "relate[] to a limited issue regarding archived email files from the Macmillan legal department's transition from Outlook to Gmail in or about 2022." Plaintiffs claim the issue is isolated to Ms. ███ and that Macmillan will (now) retrieve and review certain archived files that were sent or received between August 2019 and some undisclosed point in 2022. Google has been prejudiced by Macmillan's delay in identifying and searching for these emails until *after* Google deposed Ms. Bogin as Macmillan's corporate representative on anti-piracy topics, *see* Bladow Decl. Ex. 2, and needs Macmillan's retention policies for both Outlook and Gmail, including to assess whether the issue might be more widespread.

For its part, McGraw Hill has not produced all responsive documents related to Mr. ███ work with its outside vendor, Corsearch. Corsearch's production of documents in

---

[2] This gap in McGraw Hill's and Macmillan's productions for Mr. ███ and Ms. ███ is likely not explained by de-duplication. The ESI Order, Attachment A (Dkt. 77-1), requires all custodians to be populated in the produced metadata field. Moreover, Google has already raised issues with mistakes in Plaintiffs' custodian metadata fields, and Plaintiffs have not provided updated custodian metadata.

**LATHAM&WATKINS**LLP

response to Google's subpoena in this case includes several documents authored by Mr. ████ that are missing from McGraw Hill's productions. This includes email correspondence between Mr. ████ and Corsearch from 2021 ██████████████  ████████. *See* Bladow Decl. Ex. 3, CORSEARCH_24-cv-04274_0000248; *id*. Ex. 5, CORSEARCH_24-cv-04274_0000293. In addition to missing emails, documents such as the ██████████████ signed by Mr. ████ that ████████████████ appears nowhere in McGraw Hill's productions. *Id*. Ex. 4, CORSEARCH_24-cv-04274_0000352. These documents would be responsive to at least Google's RFP Nos. 16, 18, 19, 29-30, 43-45 75, 81-83. *See* Bladow Decl. ¶ 10. Their absence calls into question both McGraw Hill's preservation of documents as well as the adequacy of its search for responsive documents. *See* Bladow Decl. Ex. 4.

**No DRM Documents.** Separately, Plaintiffs allege that they required their authorized distributors to apply digital rights management ("DRM") on their ebooks to prevent unauthorized copying, and that Plaintiffs were harmed in part from the unauthorized distribution of copies of their ebooks with these DRM protections removed. *See* Dkt. 38, ¶¶ 82-83. Yet, Plaintiffs have produced no custodial documents that hit on the agreed-upon search string related to DRM, despite the fact that an initial hit report on these search terms yielded over 600 hits, excluding family documents. *See* Bladow Decl. Ex. 1, at 4.

**Scarcity of Custodial Documents.** Finally, while Plaintiffs have applied 10 search terms across 22 custodians, Plaintiffs have produced no documents from three of their agreed-upon custodians, fewer than ten documents from six other custodians, and no documents for multiple search strings across all custodians. *See* Bladow Decl. Ex. 1 at 7.

## Argument

The inconsistencies identified above suggest that multiple Plaintiffs have failed to produce responsive documents that once existed and should exist today, including documents regarding Plaintiffs' anti-piracy efforts. This calls into question Plaintiffs' preservation efforts, document collection and production process, or both. Plaintiffs' document retention policies would assist Google in evaluating whether Plaintiffs production deficiencies can be explained, at least in part, by those policies, as well as to evaluate the appropriateness of another spoliation motion. Yet, Plaintiffs have refused to provide them.

In connection with Google's discovery that McGraw Hill failed to preserve plainly relevant documents in anticipation of this litigation, *see* Dkt. 379 (Google's Letter Motion for Rule 37 Relief Due to Plaintiff McGraw Hill's Spoliation), McGraw Hill's Alicia Putrino has represented that company emails ████████████████████ *see* Dkt. 407-3, ¶ 3 (Plaintiffs' Declaration of A. Putrino), but McGraw Hill refuses to provide any documentation to support this assertion. Moreover, that assertion does not give Google any insight into why documents traditionally maintained in central, non-custodial repositories (e.g., McGraw Hill's

**LATHAM&WATKINS**LLP

██████████████) may not have been preserved. And of course, it does not give Google any insight into any of the document retention policies of Macmillan, Elsevier, or Cengage.

By November 2019, Plaintiffs had sued several alleged pirates and asserted that the pirates "rely on a Google advertising program called Google Shopping." *See* Complaint ¶ 2, *Bedford, Freeman & Worth Publ'g Group, LLC v. Nguyen*, No. 19-cv-10524 (S.D.N.Y. Nov. 13 2019), Dkt. 1. That reality is reflected in their privilege log, which asserts privilege and work product based on ongoing enforcement lawsuits. *See, e.g.*, Dkt. 305-1 at 72-73 (███████████████████ ████████████████████████████████████████████████████████████).

Yet, despite agreeing to locate and produce responsive documents going back to August 2019, the earliest in time sent email for ten of Plaintiffs' custodians is July 7, 2020 (and for some, the earliest in time sent email is as late as 2021 or 2022):

| Plaintiff | Custodian | Earliest Date Sent |
|---|---|---|
| McGraw Hill | Nick McFadden | May 21, 2021 |
| Macmillan | Charles Linsmeier | May 6, 2021 |
| Macmillan | Simon Horrer | July 15, 2021 |
| Macmillan | Alana Harter | November 12, 2021 |
| Macmillan | Susan Elbe | February 9, 2022 |
| Macmillan | Jenny Chiu | November 12, 2021 |
| Elsevier | Kelly McCann | April 21, 2021 |
| Elsevier | Salima Bradley | June 3, 2021 |
| Cengage | Alberta Precaj | July 7, 2020 |
| Cengage | Morgan Wolbe | September 21, 2020 |

The explanation for that might be that earlier-in-time emails were not retained pursuant to Plaintiffs' retention policies. But Plaintiffs' enforcement lawsuits against the pirates should have triggered a mandatory duty to preserve that would supersede any standard document, email, or other relevant data retention policies. Plaintiffs cannot selectively invoke the existence of litigation to shield documents from production based on claims of privilege and work product (which they have done for ████ documents in this lawsuit) while simultaneously relying upon a retention policy to excuse the loss of other relevant evidence. *Anderson v. Sotheby's Inc. Severance Plan*, 2005 WL 2583715, at *4 (S.D.N.Y. Oct. 11, 2005) (holding that duty to preserve documents arose as of the date that documents withheld as work product were created); *Crown Castle USA Inc. v. Fred A. Nudd Corp.*, 2010 WL 1286366, at *10 (W.D.N.Y. Mar. 31, 2010) (holding that producing party's obligation to preserve evidence attached when party "instituted a practice of labeling [certain] communications as privileged under the work product doctrine" and awarding sanctions for spoliation); *Metrokane, Inc. v. Built NY, Inc.*, 2008 WL 4185865, at *4 (S.D.N.Y. Sep. 3, 2008) (If the producing party "destroyed the emails in question at some time [ after it discussed a potential for litigation], it was in evidence violation of its obligation of preservation, and may thus be charged with the consequences of its spoliation.").

**LATHAM&WATKINS** LLP

For these reasons, Google has legitimate questions about the sufficiency of Plaintiffs' preservation efforts and discovery process. Under the circumstances, ordering the production of Plaintiffs' document retention policies is more than appropriate. *See Marcelletti v. GEICO Gen. Ins. Co.*, 2025 WL2828261, at *2 (W.D.N.Y. Oct. 6, 2025) (ordering the production of a party's retention schedule even where "there is no evidence of discovery misconduct" but the producing party's productions "raise[] fair questions about the thoroughness, reliability, and transparency of [the party]'s discovery process"); *see also Smalls v. New York Hosp. Med. Ctr. of Queens*, 2013 WL 12333083, at *6 (E.D.N.Y. Oct. 13, 2013) (ordering production of a party's "general policies and procedures for the production and retention of documents" where the other party represented that there were emails that had not been produced during discovery).

For the reasons set forth above, Google respectfully requests that the Court order Plaintiffs to produce copies of all data or document retention policies in effect from January 1, 2020 through March 31, 2025.

Respectfully submitted,

*/s/ Sarah A. Tomkowiak*
Sarah A. Tomkowiak (*pro hac vice*)
of LATHAM & WATKINS LLP

cc:    All Counsel of Record (via ECF and email)