**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; ELSEVIER INC.; ELSEVIER B.V.; and MCGRAW HILL LLC,<br><br>              Plaintiffs,<br><br>       v.<br><br>GOOGLE LLC,<br><br>              Defendant. | **Civil Action No. 24-cv-04274-JLR-BCM**<br><br>**[Redacted]** |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

BACKGROUND ............................................................................................................................3

LEGAL STANDARD ....................................................................................................................5

ARGUMENT .................................................................................................................................6

    I.       The Amended Complaint states a claim for inducement. ................................................6

        A.    Advertising infringing ebooks to consumers induces infringement. ..............................6

            1.   Google's ads are "specific acts" that "encourage[d] infringement." ...........................6

            2.   Google committed these specific acts with full knowledge that it was encouraging infringement. ................................................................................................................8

            3.   These specific acts combined with Google's knowledge plausibly allege intent........10

        B.    Google is wrong that inducement requires that Google promoted its *entire Shopping platform* as useful for infringement. .............................................................................12

        C.    Google is not a passive service provider. .....................................................................16

        D.    Google's other arguments are unavailing. ....................................................................18

        E.    Nothing turns on the Complaint's use of the term "induce". .......................................22

    II.      Google's ads for infringing ebooks were "tailored to infringement." ...........................24

    III.    The Court should decide Google's intent on a full record. ...........................................25

CONCLUSION .............................................................................................................................26

# TABLE OF AUTHORITIES

**CASES**

*A & M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001)................................................................................................8

*Alibaba.com Hong Kong LTD v. P.S. Prods., Inc.*,
2012 WL 1668896 (N.D. Cal. May 11, 2012). ...............................................................15, 22

*Am. Broad. Companies, Inc. v. Aereo, Inc.*,
573 U.S. 431, 444 (2014) .......................................................................................................21

*Arista Recs. LLC v. Lime Grp. LLC*,
784 F. Supp. 2d 398 (S.D.N.Y. 2011)................................................................................18, 22

*Arista Recs. LLC v. Usenet.com, Inc.*,
633 F. Supp. 2d 124 (S.D.N.Y. 2009)................................................................................18, 22

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) .........................................................................................................5

*Bouck v. Meta Platforms, Inc.*,
2026 WL 810036 (N.D. Cal. Mar. 24, 2026) ........................................................................21

*Calcano v. Swarovski N. Am. Ltd.*,
36 F.4th 68 (2d Cir. 2022).......................................................................................................23

*Carson Optical Inc. v. eBay Inc.*,
202 F. Supp. 3d 247 (E.D.N.Y. 2016)...............................................................11, 12, 15, 22

*Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*,
749 F.2d 154 (3d Cir. 1984)...................................................................................................12

*Columbia Pictures Industries, Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013)...........................................................................................18, 19

*Conair Corp. v. Jarden Corp*,
2014 WL 3955172 (S.D.N.Y. Aug. 12, 2014) .......................................................................11

*Cox Communications, Inc. v. Sony Music Entertainment*,
146 S. Ct. 959 (2026). ....................................................................................................passim

*Crypto Rsch., LLC v. Assa Abloy, Inc.*,
236 F. Supp. 3d 671 (E.D.N.Y. 2017)....................................................................................11

*Dynamic Microprocessor Assocs., Inc. v. EKD Computer Sales*,
1997 WL 231496 (E.D.N.Y. Apr. 14, 1997)..........................................................................14

*Fahmy v. Live Nation Ent., Inc.*,
   No. 2:15-cv-01158, 2015 WL 3617040 (C.D. Cal. June 8, 2015) ........................................................12

*Faulkner v. Nat'l Geographic Soc'y*,
   211 F. Supp. 2d 450 (S.D.N.Y. 2002) ........................................................................................12

*Fuji Photo Film Co. v. Jazz Photo Corp.*,
   394 F.3d 1368 (Fed. Cir. 2005) ................................................................................................25

*Hayden v. Paterson*,
   594 F.3d 150, 160 (2d Cir. 2010) ..............................................................................................5

*Hi Bar Cap. LLC v. Getter*,
   2025 WL 2989120 , at *8 (E.D.N.Y. Oct. 12, 2025) ..............................................................24

*Horn v. Med. Marijuana, Inc.*,
   383 F. Supp. 3d 114, 125 n.7 (W.D.N.Y. 2019) .............................................................5, 25

*Ideal Steel Supply Corp. v. Anza*,
   652 F.3d 310 (2d Cir. 2011) ..........................................................................................5, 24, 26

*Katz v. ABP Corp.*,
   2013 WL 2444605 (E.D.N.Y. June 4, 2013) ..........................................................................23

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
   6 F.4th 293, 301 (2d Cir. 2021) ........................................................................................5, 18

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
   420 F.3d 1369 (Fed. Cir. 2005) ................................................................................................10

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913, 937 (2005) ........................................................................................................passim

*Mophie, Inc. v. Shah*,
   2014 WL 12603184 (C.D. Cal. Aug. 25, 2014) ................................................................11, 12

*Nazemian v. Nvidia Corp*,
   No. 24-cv-01454, 2026 WL 1229583 (N.D. Cal. May 5, 2026) ................................13, 14, 24

*Pado, Inc. v. SG Trademark Holding Co. LLC*,
   537 F. Supp. 3d 414 (E.D.N.Y. 2021) ......................................................................................11

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ..........................................................................................19, 20, 21

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000) ........................................................................................................22

*Screen Gems-Columbia Music, Inc. v. Mark-Fi Recs., Inc.*,
   256 F. Supp. 399 (S.D.N.Y. 1966) ....................................................................................10, 14

iii

*Skinner v. Switzer*,

    562 U.S. 521 (2011) ........................................................................................................23

*Sony Corp. of America v. Universal City Studios, Inc.*,

    464 U.S. 417 (1984). ................................................................................................11, 25

*Sony Elecs., Inc. v. Soundview Techs., Inc.*,

    157 F. Supp. 2d 190 (D. Conn. 2001) ..................................................................... 8, 15

*Sony Music Ent. v. Cox Commc'ns, Inc.*,

    93 F.4th 222, 236-37 (4th Cir. 2024), *rev'd*, 146 S. Ct. 959 (2026) ........................19

*Symbology Innovations, LLC v. Nat. Nectar Inc.*,

    2020 WL 9814098  (E.D.N.Y. Aug. 21, 2020) ........................................................11

*Takeda Pharms. U.S.A., Inc. v. W.-Ward Pharm. Corp.*,

    785 F.3d 625 (Fed. Cir. 2015) ..................................................................................12

*Tegal Corp. v. Tokyo Electron Co.*,

    248 F.3d 1376 (Fed. Cir. 2001) ................................................................................15

*Uniloc United States of Am., Inc. v. Apple Inc.*,

    2018 WL 2392561 (N.D. Cal. May 25, 2018) .........................................................24

*Water Techs. Corp. v. Calco, Ltd.*,

    850 F.2d 660, 669 (Fed. Cir. 1988)...................................................................10, 12

## OTHER AUTHORITIES

Restatement (Second) of Torts § 8A (1965)...............................................................19

## RULES

FED. R. CIV. P. 9(b) ...............................................................................................8, 10

**INTRODUCTION**

This suit presents "[t]he classic instance of inducement": an "advertisement" that "broadcasts a message designed to stimulate others to commit violations." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005). Google argues that the Supreme Court's decision in *Cox Communications, Inc. v. Sony Music Entertainment*, 146 S. Ct. 959 (2026) mandates a judgment for Google *at the pleading stage*. But *Cox* reaffirms *Grokster's* holding that one is liable for inducing copyright infringement if they have taken "specific acts" that "actively encourage[d]" infringement. *Cox*, 146 S. Ct. at 967. Such inducement shows "[t]he intent required for contributory infringement." *Id.* The Complaint's 152 paragraphs alleging Google's knowing advertisement of infringing works unquestionably allege "specific acts" that "actively encourage[d] infringement." The Complaint alleges that on tens of thousands of occasions, Google advertised ebooks it knew were counterfeit, on behalf of merchants it knew were pirates, at prices it knew were too good to be true, to consumers who purchased those infringing works using links Google provided in its advertisements. This is textbook inducement.

Google's arguments to the contrary misunderstand the law and ignore the relevant allegations of the Complaint. Google was not, as its motion wishes, a passive provider of a neutral service. Google decided which of the many products submitted to Google it would actually advertise (Dkt. 38 ("Compl.") ¶¶ 9, 75); "create[d] each Shopping Ad," honing it to maximize its effect (*Id.* ¶¶ 40–41); "decided when and where to display" the ad, based in part on Google's own "evaluation of the website the ad points to" (*Id.* ¶ 42); and "target[ed] the ad to users Google determine[d] are most likely to buy the product" (*Id.*). Google likewise knowingly operated its platform to ban paid ads from *legitimate* ebook sellers, but allow ads from *pirate* sellers. *Id.* ¶¶ 64–65. These facts are more than sufficient to allege the "specific acts" required under *Cox*. *Cox* reaffirmed the theories of contributory liability articulated in *Grokster*. *Cox,* 146 S. Ct. at 964. *Cox*

1

therefore reiterated the inducement theory that best fits this case: Google's advertisements, which are "designed to stimulate others to commit violations," induced Google's users to commit infringement. *Grokster*, 545 U.S. at 937.

Google interprets *Cox* and *Grokster* to mean that Google's advertisements of infringing works do not give rise to liability for inducement because Google did not advertise its *entire Shopping platform* as useful for infringement. This misconstrues *Cox*, *Grokster*, and the Complaint. Neither *Cox* nor *Grokster* supports the notion that the only advertisements that induce infringement are ones that promote an *entire service* as useful for infringement, rather than promoting a particular infringing product. Plaintiffs are suing Google for knowingly creating and serving specific advertisements for known pirate sellers that include links to known infringing products, thereby inducing infringement. That Google also advertises non-infringing fishing-poles and garden-hoses does not exempt Google from liability for advertising infringing ebooks.

Google further seeks to skirt liability by claiming that everything it does is automated, so there cannot be affirmative acts, as required by *Grokster*. But the facts and the law belie this simplistic argument. Humans developed the Shopping platform and the policies around its use; humans operate the platform; and humans modify the platform. Indeed, humans at Google met with Plaintiffs concerning the problem of ads for pirated ebooks, and chose to operate a "ban" that only restricted ads for legitimate works. And nothing in the Amended Complaint supports Google's automation argument, so it is not properly before the Court. If Google's argument has any merit, which Plaintiffs dispute, the extent to which humans were involved in Google's decision to advertise products it knew infringed Plaintiffs' copyrights at best raises a factual issue concerning Google's intent. It is not a basis for dismissal on the pleadings, and will not ultimately be a basis on summary judgement.

Google is also liable under the second prong of *Cox*, for offering a service "tailored to infringement." *Cox*, 156 S. Ct. 967. Google did not create one generic product that it reproduced identically to all its customers, as Sony did with its VCRs or as Cox did with its internet access. Google specifically tailored each of the ads at issue to appeal to the user Google hoped would click on it and purchase the infringing ebook. Those ads served no purpose other than to induce infringement. Each of those ads was "tailored to infringement."

Finally, Google's motion for judgment on the pleadings ignores the fruits of nearly two years of discovery establishing Google's liability. The Court should decide Google's intent on a full record did (as the *Cox* and *Grokster* courts did), not at the pleadings stage.

But even on the pleadings, Plaintiffs' allegations unquestionably "state a claim to relief that is plausible on its face." Google's motion cherry-picks allegations from the Complaint and attempts to introduce new ones, all while ignoring the portions of the Complaint that indisputably allege Google's specific acts promoting infringement. At the pleading stage, the Court must construe the allegations in the light most favorable to Plaintiffs, not Google. The Court should deny Google's motion.

## BACKGROUND

A reader of the "Factual Background" section in Google's motion would hardly know that Plaintiffs alleged Google advertised infringing copies of the works-in-suit at all, or that those ads caused Google users to buy those infringing copies. Instead of dealing with these dispositive allegations, Google encourages the Court to construe the Complaint in the light most favorable to *Google* and ignore the facts that indisputably make out Plaintiffs' inducement claim.

For example, the Complaint alleges: (1) Google has purposefully chosen "to create and disseminate Infringing Shopping Ads for its repeat infringer Pirate Sellers, to actively promote Pirate Sites through such ads, and to provide services to increase the efficacy of those ads"

(Compl. ¶ 126); (2) for each of the 7,359 works-in-suit, Google advertised an infringing copy of a work to Google users, in ads "specifically designed to entice users to visit the Pirate Sites and buy the Infringing Works" (*Id.* ¶ 126); (3) Google displayed these ads prominently at the top of search results, with pictures of Plaintiffs' legitimate textbook covers, at too-good-to-be-true prices, hoping these users would click on the Shopping ad for an infringing copy, rather than on an organic search-result for a legitimate copy (for which Google is not paid) (*Id.* ¶¶ 47, 51); (4) Google ran the infringing ads in response to specific search-queries that Google determined indicated the user might want to purchase one of Plaintiffs' works (*Id.* ¶ 42); (5) Google provided a link directly to a Pirate Site selling an infringing copy of Plaintiffs' work so that the user would purchase the ebook (*Id.* ¶¶ 53, 122); and (6) for each of the works-in-suit, a Google user ultimately did purchase the pirated ebook, then downloaded (and thus reproduced) it without authorization (*Id.*). In other words, Google successfully encouraged its users to purchase infringing copies of Plaintiffs' works.

The Complaint further alleges that Google did so with full knowledge that the products it was actively advertising were infringing, including because: (1) Google ran specific ads it had been told promoted pirated ebooks, and ran ads for merchants it had been informed were pirates (*id*. ¶¶ 99–113); (2) Google had numerous discussions with Plaintiffs about this very problem, yet advertised thousands of infringing ebooks anyway (*Id.* ¶¶ 110, 114–119); and (3) Google was sufficiently aware of the problem such that it claimed to ban ebook ads altogether but operated the "ban" only to block *legitimate* ads, not pirate ads (*Id*. ¶¶ 110, 64–68).[1]

---

[1] Google devotes six pages of its "Background" section to a revisionist history of contributory infringement (versus 2 pages to the Complaint's extensive allegations about Google's liability). *Compare* Mot. at 3–9 *with id.* at 9–10. This summary is largely wrong, but it is also irrelevant. As discussed below, Plaintiffs' Complaint alleges that Google "actively encourage[d] infringement through specific acts," and that Google intended for its users to infringe Plaintiffs' works. *See Cox*, 146 S. Ct. at 967. That is all the Court need decide at this stage.

**LEGAL STANDARD**

At the motion-for-judgment-on-the-pleadings stage, the Court considers only whether Plaintiffs' allegations "contain sufficient factual matter, accepted as true" that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (courts apply the motion-to-dismiss standard to a 12(c) motion). "To survive a Rule 12(c) motion," the complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 302 (2d Cir. 2021) (quotation omitted). A claim is plausible where it provides "enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal conduct." *Id.* (quotation omitted). "[J]udgment on the pleadings is not appropriate if there are issues of fact which if proved would defeat recovery, even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial." *Id.* (quotation omitted). A court "may not use a motion for judgment on the pleadings to weigh disputed factual allegations." *Id.* Rather, in making this assessment, the Court must "draw all reasonable inferences in [the plaintiff's] favor." *Id.* (quotation omitted).

Further, "once the parties have invested substantial resources in discovery, a district court should hesitate to entertain a Rule 12(c) motion that asserts a complaint's failure to satisfy the plausibility requirement." *Horn v. Med. Marijuana, Inc.*, 383 F. Supp. 3d 114, 125 n.7 (W.D.N.Y. 2019) (internal citations omitted). Moreover, "if evidence that had already been produced during discovery would fill the perceived gaps in the Complaint," a Rule 12(c) motion should be denied. *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 325 (2d Cir. 2011). "To the extent that [a] district court view[s] as conclusory the Complaint's allegations" on a motion for judgment on the pleadings, "the court should [] take[] into account the [evidence] in the record." *Id.*

5

**ARGUMENT**

**I.     The Amended Complaint states a claim for inducement.**

Google argues that the Supreme Court's decision in *Cox* mandates a judgment for Google *at the pleading stage*. But, as the Complaint makes clear, Google's knowing advertisement of infringing works induced infringement.

**A.     Advertising infringing ebooks to consumers induces infringement.**

In *Grokster*, the Supreme Court recognized that inducing or encouraging infringement gives rise to liability for contributory infringement. *Grokster*, 545 U.S. at 930 ("One infringes contributorily by intentionally inducing or encouraging direct infringement."). *Cox* re-affirmed *Grokster*'s long-held standard for inducement. *Cox*, 146 S. Ct. at 967. To state a claim for inducement under *Cox* and *Grokster*, the plaintiff must plausibly allege that the defendant took "active steps" to "encourage direct infringement, such as advertising." *Grokster*, 545 U.S. at 936 (cleaned up). As *Cox* explained, "[a] provider induces infringement if it actively encourages infringement through specific acts." 146 S. Ct. at 967. Here, Plaintiffs indisputably allege that Google "actively encourage[d] infringement" by pirate sellers and Google users "through specific acts." *See id*. Google created and broadcast thousands of advertisements "designed to stimulate others to commit violations" by downloading unauthorized reproductions of Plaintiffs' works. *See Grokster*, 545 U.S. at 937.

*1.     Google's ads are "specific acts" that "encourage[d] infringement."*

As the Supreme Court expressly recognized, "[t]he classic instance of inducement is by advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations." *Grokster*, 545 U.S. at 937. The Complaint is replete with allegations that Google encouraged its users to infringe by creating and distributing advertisements promoting infringing ebooks.

The entire purpose of an advertisement, of course, is to persuade the viewer of the ad to purchase the advertised product. Google's Shopping ads are no exception. As the Complaint alleges, "[t]he purpose of Google's Shopping Ads is clear: '[S]how people the most comprehensive search results for products online,' such that '[o]nce someone finds a product they like, we send them to the merchant's website to buy it.'" Compl. ¶ 39 (quoting Google).

For the 7,359 works-in-suit, Google succeeded in that goal, often many times. It induced its users to purchase an infringing copy of Plaintiffs' works by advertising the pirated copies to users of its incredibly popular search-engine. Compl. ¶¶ 36, 122. Google broadcast these ads to specific Google users who searched for the legitimate work, with the hope and expectation that they would click the ad to buy the promoted infringing product. *Id* ¶¶ 43, 122. Google placed these ads at the top of its search-results page, complete with pictures of the works at too-good-to-be-true prices to attract its users to the ads, and direct links to the promoted pirate sites. *Id.* ¶¶ 47, 51, 53. Google also affirmatively *excluded* would-be competing ads for *legitimate* ebooks, offering users only ads for infringing copies, further driving them to the pirated copies. *Id.* ¶¶ 9, 65–68.  Google even kept track of how often users click on these ads, and how often those who clicked on the ads subsequently purchased the product, so that Google could better target ads to users who would buy the advertised product. *Id.* ¶¶ 44–45. Plaintiffs then allege direct infringement for each of the works-in-suit, i.e., a Google user ultimately did purchase the pirated ebook, then downloaded (and thus reproduced) it without authorization. *Id.* ¶¶ 53, 122. There can be no serious question that Google's advertising of infringing copies of Plaintiffs' works to the customers who bought them are "specific acts" that "encourage[d] infringement." *Cox*, 146 S. Ct. at 967.[2]

---

[2] Google does not contest that the Complaint adequately alleges direct infringement (which is necessary for contributory infringement (*A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004,

2. *Google committed these specific acts with full knowledge that it was encouraging infringement.*

The specific acts described above are more than enough by themselves to allege Google's intent to encourage infringement. Indeed, at the pleading stage, "intent . . . and other conditions of a person's mind may be alleged *generally*." FED. R. CIV. P. 9(b) (emphasis added); *see also Sony Elecs., Inc. v. Soundview Techs., Inc.*, 157 F. Supp. 2d 190, 198 (D. Conn. 2001) (denying motion to dismiss inducement claim as "intent and knowledge need only be averred generally"). But the Complaint does much more than aver intent generally. It alleges that Google promoted advertisements for infringing ebooks with full knowledge that those products were infringing. Google's actual knowledge of the infringing nature of the products that it was advertising and inducing consumers to purchase makes its intent to encourage infringement undeniable.

First, the Complaint alleges that for years, Plaintiffs sent Google notice-after-notice identifying specific Shopping ads that were promoting pirated products, and specific merchants who were pirate sellers. Compl. ¶¶ 99–113. Plaintiffs sent Google "hundreds of notices" identifying "thousands of specific Infringing Works promoted in Infringing Shopping Ads." *Id.* ¶ 99. But despite Plaintiffs' notices, Google chose to run the specific ads Plaintiffs told Google were infringing, and to promote the very pirate sellers Plaintiffs identified in their notices. *Id.* ¶ 101. In "thousands" of instances, Plaintiffs identified to Google a specific Shopping Ad that promoted an infringing copy of a Plaintiff's work, but Google promoted the same ad again, after receiving Plaintiffs' notices. *Id.* ¶¶ 101, 106–07 (listing several examples of Plaintiffs identifying ads for specific infringing products from specific pirates in notices, but Google kept advertising those infringing products anyway on multiple occasions). Indeed, Google itself knew that it had

_____

1013 n.2 (9th Cir. 2001)) by the Google users who purchased the infringing works, and by the merchants who sold them (Compl. ¶ 122). Indeed, Google appears to concede this. Dkt. 826 at 4.

8

run many infringing ads multiple times. When Plaintiffs identified an infringing ad to Google, but Google ran the ad again anyway, Plaintiffs sent additional notices asking Google to remove the ad. *Id.* ¶ 108. In response to what Google called "duplicative request[s]," Google threatened to stop reviewing *all* of Plaintiffs' infringement notices for up to six months. *Id*. Likewise, Google promoted merchants that Plaintiffs repeatedly had identified to Google as selling pirated products. *Id*. ¶¶ 102–104 (listing examples of Plaintiffs sending 46, 66, and 69 separate notices, identifying 232, 451, and 6,829 "unique Infringing Shopping Ads," for three pirate sites, respectively). But despite Plaintiffs' notices (and Google's own "quality" checks of its merchants' websites (*Id*. ¶ 42)), Google chose to run more ads promoting these known pirate merchants. Google thus knew full well that it was advertising infringing products.

Second, the Complaint alleges that Google was aware of the enormous problem of ads for pirated ebooks because Plaintiffs discussed the problem with Google directly. *Id*. ¶¶ 110, 114–119. Starting in 2019, "Plaintiffs and Google . . . had multiple discussions about these issues, in which Plaintiffs explained repeatedly why the ads violated Google's own policies and enabled direct infringing activity, and pled with Google to stop the advertising practices that were harming legitimate publishers." *Id*. ¶ 115. Further demonstrating Google's knowledge, "Google responded that they were 'working on it,' but still has failed to correct its conduct." *Id.* Some of these discussions were in connection with lawsuits Plaintiffs brought against the pirates themselves, which involved injunctive relief requiring Google to *stop* advertising particular pirate sites. *Id*. ¶¶ 114–119. These discussions show that Google was not just aware of the specific infringing ads and pirates from Plaintiffs' notices, but was aware that it had a pervasive practice of advertising pirated ebooks.

Third, the Complaint alleges that Google was sufficiently aware of its advertisement of

9

pirated ebooks that it decided to ban all ads for ebooks, in connection with Google's so-called ebook ads policy. *Id.* ¶¶ 68, 110. Google was well-aware (including because Plaintiffs told Google) that its "ban" was not really a ban, since Google was blocking ads for *legitimate* ebooks, but running ads for *pirated* ebooks, thus showing consumers *only* pirated ebook products. *Id.* ¶¶ 64–68, 110. Yet Google made (and still makes) the affirmative choice to continue this practice. *Id.*

Google's actual knowledge that it is encouraging piracy makes its intent undeniable.

        3.      <u>*These specific acts combined with Google's knowledge plausibly allege intent.*</u>

Alleging "specific acts" that "encourage[d]" infringement, *Cox*, 146 S. Ct. at 967, and alleging Google's knowledge, is more than sufficient to allege intent. Because intent "may be alleged generally," FED. R. CIV. P. 9(b), direct evidence of intent is not required, and "intent to induce infringement may be inferred from all of the circumstances." *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 669 (Fed. Cir. 1988); *see also MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005) ("[D]irect evidence [of intent to induce] is not required; rather, circumstantial evidence may suffice.").

The Complaint's allegations about Google's knowledge of infringement are far more extensive than those held sufficient in other cases. For example, in *Screen Gems-Columbia Music, Inc. v. Mark-Fi Recs., Inc.*, the Court ruled against defendants as to summary judgment on contributory liability where plaintiffs made a sufficient factual showing that an advertising agency was aware of the illegal nature of the bootleg records it was advertising based on the records' "suspiciously" low price and the distributor's small size and lack of a permanent location. 256 F. Supp. 399, 401, 404–05 (S.D.N.Y. 1966). Google's knowledge likewise is akin to, and exceeds, that found to plausibly allege knowledge to support inducement in the patent context. *See, e.g.,*

10

*Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 254 (E.D.N.Y. 2016) (knowledge of patent sufficient for inducement alleged based on plaintiff's submission of notices of claimed infringement); *Mophie, Inc. v. Shah*, 2014 WL 12603184, at *3 (C.D. Cal. Aug. 25, 2014) (knowledge of infringement plausibly alleged based on pre-suit conversations between patent owner and defendant); *see also Pado, Inc. v. SG Trademark Holding Co. LLC*, 537 F. Supp. 3d 414, 426 (E.D.N.Y. 2021) (allegations of knowledge of patent and of infringing nature of product could be based on service of "the summons and original complaint" on defendant).

Indeed, patent caselaw, "with which copyright law has a 'historic kinship,'" *Cox*, 146 S. Ct. at 964 (quoting *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417 (1984)), confirms that marketing an infringing product with knowledge it is infringing is sufficient to state a claim for inducement. For example, in *Conair Corp. v. Jarden Corp.*, the defendant "did not stop manufacturing, importing, offering to sell, or selling its machines after [plaintiff] put [defendant] on notice of its infringement." 2014 WL 3955172, at *3 (S.D.N.Y. Aug. 12, 2014) (cleaned up). These allegations were sufficient to plead inducement. *Id.*; *see also Symbology Innovations, LLC v. Nat. Nectar Inc.*, 2020 WL 9814098, at *4 (E.D.N.Y. Aug. 21, 2020) ("Plaintiff's allegation that Defendant continued to sell its products containing the infringing patent is sufficient to establish that Defendant 'specifically intended' to encourage others to infringe."); *Crypto Rsch., LLC v. Assa Abloy, Inc.,* 236 F. Supp. 3d 671, 687 (E.D.N.Y. 2017) ("[T]he mere sale of the allegedly infringing product is enough to plead the defendants' intent to induce their end-users' infringement.") (citing *Conair*, 2014 WL 3955172 at *3).

Google's motion tries to make much of the *Cox* Court's rejection of the material contribution/knowledge standard. Dkt. 843 ("Mot.") at 1–9. To be sure, a defendant's knowing advertisement of infringing products satisfied the knowledge/material contribution standard that

11

many courts have applied. *See, e.g.*, *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154 (3d Cir. 1984) (advertiser liable for contributory infringement under a knowledge/material-contribution theory); *Fahmy v. Live Nation Ent., Inc.*, 2015 WL 3617040 (C.D. Cal. June 8, 2015) (same); *Faulkner v. Nat'l Geographic Soc'y*, 211 F. Supp. 2d 450 (S.D.N.Y. 2002) (same). But knowingly advertising an infringing product just as easily makes out an *inducement* claim. Advertising an infringing product was a material contribution to infringement precisely *because* it induced the viewer of the advertisement to infringe. Such an advertisement is, therefore, a "specific act[]" that "actively encourage[d] infringement." *Cox*, 146 S. Ct. at 967. As patent cases like *Carson* and *Mophie* above recognize, the defendant's knowledge that its acts encourage infringement is evidence of the defendant's intent. Because the knowledge/material-contribution framework was a comfortable fit for advertising cases (and was good law for decades), litigants and courts often relied on it. But that shouldn't be interpreted as an indication, much less a holding, that the same conduct does not constitute inducement.[3]

### B. Google is wrong that inducement requires that Google promoted its *entire Shopping platform* as useful for infringement.

Google largely ignores Plaintiffs' argument that Google's ads for infringing copies of

---

[3] Google may also be liable for inducement because it aided and abetted infringement. The Supreme Court in *Grokster* recognized "liability for inducement [can arise] where one 'actively and knowingly aid[s] and abet[s] another's direct infringement.'" 545 U.S. at 936 (quoting *Water Techs.*, 850 F.2d at 668). This theory of inducement is well established in patent law, which *Cox* pointed to in elucidating the standard for contributory copyright infringement. *See Takeda Pharms. U.S.A., Inc. v. W.-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015) ("Well before *Grokster*," the Federal Circuit adopted the rule that "inducement requires 'actively . . . aiding and abetting another's direct infringement.'") (quoting *Water Techs.*, 850 F.2d at 668)**.** Aiding-and-abetting liability "attaches where the defendant aided a specific instance of unlawful conduct," and "requires the plaintiff to show that the defendant, at a minimum, knew who the 'principals' in the alleged unlawful acts were. *Cox*, 146 S. Ct. at 975 (J. Sotomayor, concurring) (citation omitted). Neither of these elements is in dispute here. The majority in *Cox* had no reason to address this theory of inducement, must less foreclose it, as the ISP there could not "determine which individual" specifically infringed. *Id.* at 965 (majority opinion).

Plaintiffs' works are specific acts that encouraged infringement. Instead, Google tries to move the goalposts. It argues that to be liable for infringement, Google must have promoted its *entire platform* as useful for infringement. *See* Mot. at 15 ("There are no allegations—even conclusory ones—that Google provided the Shopping service 'with the object of promoting its use to infringe copyright . . . .'"); *Id.* at 22 ("Ultimately, it is illogical and implausible to assert that Google Shopping—a quintessential legitimate marketplace—was "intended" for infringement . . . .").

In the first place, Google confuses the two forms of contributory liability under *Cox* (inducing infringement and providing a service tailored to infringement, 146 S. Ct. at 967). And Google's self-serving contention that "the vast majority of Shopping ads are from legitimate sellers advertising legitimate products," Mot. at 21, is beyond the allegations in the Complaint. More importantly, while promoting an *entire service* as useful for infringement is *one* way to induce copyright infringement, the law is clear that advertising the infringing product itself likewise induces copyright infringement. *Grokster* was an instance where the defendant advertised its entire platform as useful for infringement, but the Supreme Court was careful to point out that directly encouraging a consumer to infringe also constitutes inducement.

> It is not only that *encouraging a particular consumer to infringe a copyright can give rise to secondary liability for the infringement that results.* Inducement liability goes beyond that, and the distribution of a product can itself give rise to liability where evidence shows that the distributor intended and encouraged the product to be used to infringe. In such a case, the culpable act is not merely *the encouragement of infringement* but also the distribution of the tool intended for infringing use.

545 U.S. at 940 n.13 (emphases added).

A recent post-*Cox* decision further demonstrates the fault of Google's position. In *Nazemian v. Nvidia Corp.*, the plaintiffs alleged that NVIDIA induced its users to infringe by providing them with tools to download infringing copies of copyrighted works for use in AI models. 2026 WL 1229583, at *1 (N.D. Cal. May 5, 2026). NVIDIA moved to dismiss the

13

inducement claim, arguing that only portions of its platform were used to infringe, not its entire platform. *Id.* at \*6 (defendant arguing the "complaint lacks allegations [of] NVIDIA promoting the NeMo Framework *in its entirety* as a tool for copyright infringement . . . .") (emphasis added). After requesting supplemental briefing on *Cox*, the district court rejected NVIDIA's argument, holding that the particular instances where NVIDIA provided tools for its users to infringe were enough, even if NVIDIA'S platform included other non-infringing uses. *Id.* "That the NeMo Megatron Framework *as a whole* may have other, non-infringing uses does not alter this conclusion." *Id.* (emphasis added)*; see also Dynamic Microprocessor Assocs., Inc. v. EKD Computer Sales*, 1997 WL 231496, at \*15 (E.D.N.Y. Apr. 14, 1997) (defendant liable for contributory infringement even where only a portion of sales were infringing).

Other cases recognize the self-evident proposition that advertising an infringing product induces infringement, even where the defendant did not promote its own service as useful for infringement. In *Screen Gems*, an advertising agency and several radio stations were involved in creating and disseminating advertisements for bootleg records distributed by a third party. 256 F.Supp. at 401. The Court found they could be held secondarily liable for their roles in promoting illegal goods. *Id.* Neither defendant advertised their own advertising services as friendly to infringement. Rather, they induced infringement by advertising an infringing product, as Google did here. *Id.* And, unlike in *Screen Gems*, Google was put on notice thousands of times. *Id.* at 404. Allegations of this conduct are plainly sufficient to make out an inducement claim. *See Nexon Am., Inc. v. S.H*, 2011 WL 13217951, at \*5–6 (C.D. Cal. Dec. 13, 2011) (granting plaintiff summary judgment on inducement claim where defendant "advertised [infringing software] on the Internet, instructed potential users how to download, install and use the [infringing software], and offered extensive technical support to his customers."); *see also Tegal Corp. v. Tokyo Electron Co.*, 248

14

F.3d 1376, 1378–79 (Fed. Cir. 2001) ("[I]nducement . . . . is as broad as the range of actions by which one in fact causes, or urges, or encourages, or aids another to infringe." (citation omitted)); *Sony Elecs., Inc. v. Soundview Techs., Inc.*, 157 F. Supp. 2d 190, 201 (D. Conn. 2001) ("[T]he scope of inducement claims is *not limited to*" instances "where an infringer promotes a product for an infringing use." (emphasis added)).

Indeed, patent caselaw (to which *Cox* explicitly cited in explaining the test for inducement, 146 S. Ct. 964) is replete with examples of cases holding defendants liable for inducing infringement of third-party products. For example, in *Carson*, defendant eBay did not sell any products itself. Instead, it was alleged to have "induced infringement by permitting items that allegedly infringe" to be sold by others through eBay's website. 202 F. Supp. 3d at 250–51. The plaintiff alleged that eBay merely "provides a medium to connect individual buyers and sellers, and defendant provides a wide range of service that facilitate the sale and purchase of items on its website." *Id.* at 251. The court held the allegations that eBay "receiv[ed] notice of the alleged infringement" and subsequently advertised the infringing products on its website were "sufficient to sustain plaintiff's claims" for inducement at the motion-to-dismiss stage. *Id.* at 262. Similarly, in *Alibaba.com Hong Kong LTD v. P.S. Prods., Inc.*, third-party "[s]ellers posted images and information about the products that they wished to sell" on defendant Alibaba's website and "paid Alibaba for listing their products." 2012 WL 1668896, at *1 (N.D. Cal. May 11, 2012). "These third-party sellers were not owned, controlled, or affiliated with Alibaba, and manufactured and stored their own products." *Id.* The court denied Alibaba's motion for summary judgment of non-infringement, holding "a reasonable jury could find that Alibaba induced infringement by deliberately maintaining the allegedly infringing item on its website for an unduly long period." *Id.* at *3. Here, it is similarly immaterial that the infringing products Google advertised were sold

15

by third-parties. Google's advertisements promoting the sale of infringing products constitute active steps taken to encourage infringement.

Google quotes repeatedly, "The provider of a service is contributorily liable for the user's infringement only if it intended that the provided service be used for infringement." *E.g.*, Mot. at 7 (quoting *Cox*, 146 S. Ct. at 967). Under Google's reading, the "provided service" must be the *entire Shopping platform*, i.e., every Shopping ad that Google promotes for every merchant. But nothing in *Cox* forecloses a defendant from being held liable for *individual acts* that encourage infringement, even if not all of the defendant's platform does so. Under Google's interpretation, if a Google employee said openly, "I'm creating an ad for an infringing copy of Plaintiff's work and I intend that a Google user will use the ad to infringe," Google would not be liable. That is an implausible interpretation of the Supreme Court's decision.. The only way the *Cox* Court's statement makes sense is if the "provided service" is the specific Shopping ad that promotes the infringing work. Individual acts of infringement, as contemplated in *Grokster*, 545 U.S. at 940 n.13, can form the basis of liability.

### C.  Google is not a passive service provider.

Given the overwhelming caselaw against its position, Google resorts to claiming that Google is merely a passive service provider, on whose platform pirates post infringing ads. Mot. at 15 (claiming "Google is a provider of a neutral service to third parties," and that "merchants provide information about products for sale on their own websites" which "Google then uses to algorithmically display advertisements . . . ."). This argument is factually wrong, ignores the allegations in the Complaint, and ignores the requirement that the Court construe the facts in the light most favorable to the non-moving party.

First, the allegations of the Complaint (and reality) entirely foreclose Google's argument. Google's Shopping platform is not a mere message-board where pirates post their own ads at will.

16

Compl. ¶¶ 40–44. Google's own public-facing webpages establish that it is *Google* that advertised counterfeit versions of Plaintiffs' works. *See, e.g., id.* ¶ 41, 42, 75, 88. Pirates may provide Google with certain information they want Google to include in an ad. But *Google* then decides *whether to run the ad at all*. *Id.* ¶¶ 9, 42, 75. This selection process often involves Google analyzing the pirate's landing page to determine the likelihood of users clicking on the ad and buying the book. *Id.* ¶ 42. Indeed, Google "reviews each merchant's website landing pages and products to determine whether the merchant should be permitted to use Google's ads services. Before Google launches ads for merchants, it 'confirm[s] as eligible' the products being advertised." *Id.* ¶ 75 (quoting Google's website). If Google decides to run a particular ad at all, Google creates the ad itself. *Id.* ¶ 41 (Google explaining, "[Google] creates these [ads] based on information you include in your product feed so you don't need to create the ads yourself."). Google also decides the search queries in response to which it will show the ad. *Id.* ¶ 42. And, Google decides the users to whom it will display the ad, using data Google collects about each user, and a proprietary algorithm to target the users most likely to click on the ad. *Id.* Google also deploys functions the pirate doesn't even request, such as an "autofill" feature when users begin typing search queries, including a "PDF" button that takes users to yet more pirated copies of the works. *Id.* ¶ 57. Google is not a list-serve or modern-day bulletin board like Craigslist, passively allowing users to post listings.[4] Google is a sophisticated ad agency at scale, actively deciding what to advertise, how to advertise it, and to whom to target the advertisement.

Thus, *Cox*'s admonition that "contributory liability cannot rest only on a provider's

---

[4] Compl. ¶ 40 ("Google's advertising platform is not limited in the same way as the old Yellow Pages, which simply printed the ads that businesses supplied and disseminated those ads indiscriminately to the general public. Google takes an active role in creating ads and targeting the advertising of its merchants' products to the very users who are looking for those products.").

knowledge of infringement and insufficient action to prevent it," *Cox*, 146 S. Ct. at 969, has no application here.

Moreover, Google's argument ignores the bedrock notion that at the judgment-on-the-pleadings stage, allegations in a complaint are construed in the light most favorable to the non-moving party. *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 299 n.1 (2d Cir. 2021). To the extent there is any question as to whether the counterfeit works were advertised by Google or instead only by the pirates, on a 12(c) motion, the issue must be construed in Plaintiffs' favor.

### D.  Google's other arguments are unavailing.

Google's remaining arguments against inducement liability are unavailing. First, Google cites to three cases finding inducement to argue this claim "sets a high bar" that requires "egregious behavior by defendants." Mot. at 12–13 (citing *Columbia Pictures Industries, Inc. v. Fung*, 710 F.3d 1020, 1036 (9th Cir. 2013); *Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 427 (S.D.N.Y. 2011); *Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 132 (S.D.N.Y. 2009)). None of these cases articulate the standard Google advances, nor do they purport to provide the *minimum* culpable conduct necessary to show inducement. *See Usenet.com*, 633 F. Supp. 2d at 154 (noting "questions of intent and witness credibility are traditionally reserved for a jury"). Under Supreme Court precedent, the standard for inducement is "actively encourag[ing] infringement through specific acts," not so-called "egregious" behavior. *Cox*, 146 S. Ct. at 967.

Moreover, these cases demonstrate that Plaintiffs easily *have* alleged that Google induced infringement. For example, the defendant in *Fung* was found liable at summary judgment for inducement because he encouraged users of his website to "upload torrents" containing copyrighted content, including by posting "messages to the [website's] forum" requesting users to upload specific files, and he "urg[ed] users to download" other files by "provid[ing] links to torrent files" containing "copyrighted movies." *Fung*, 710 F.3d at 1036 (cleaned up). Google's

18

advertisements similarly encouraged its users to download files containing infringing ebooks and provided links to websites hosting those files. The Ninth Circuit explicitly analogized "Fung's posts" to "Grokster's advertisements," noting they "were explicitly 'designed to stimulate others to commit [copyright] violations,'" and therefore were "highly probative of an unlawful intent." *Fung*, 710 F.3d at 1036 (quoting *Grokster*, 545 U.S. at 937). Google's advertisements for known infringing ebooks similarly evidence its unlawful intent. *Id.*

Next, Google attempts to rely on two decisions where courts did not find inducement. Mot. at 13–15 (citing *Cox*, 146 S. Ct. at 968; *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007)). Neither were decided on the pleadings, nor are they analogous to the allegations here. *Cox* is readily distinguishable. As an initial matter, Google misstates the record in that case. Relying on language from the decision below, Google claims Cox "'knew of specific instances of repeat copyright infringement occurring on its network'" and "'traced those instances to specific users.'" Mot. at 14 (quoting *Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 236–37 (4th Cir. 2024), *rev'd*, 146 S. Ct. 959 (2026)). But the Supreme Court expressly rejected that reasoning. It found Cox, a generic ISP, had "limited knowledge about how their Internet services are used and who uses them," and because IP addresses could relate to households or college dormitories with multiple users, Cox "cannot determine which individual" specifically infringed. *Cox*, 146 S. Ct. at 965. Accordingly, the Supreme Court's statement that one does not induce by merely "supplying a product with knowledge that the recipient will use it to infringe copyrights" must be read in the context of this "limited knowledge." *Id.* at 965, 968. Conversely, "'[i]f the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.'" *Perfect 10*, 508 F.3d at 1171 (quoting Restatement (Second) of Torts § 8A cmt. b (1965)). As the Ninth Circuit

19

has recognized, knowledge that a buyer is *substantially certain* to use a product to infringe is the entire basis for imputing intent under the "tailored to infringement" theory. *Perfect 10*, 508 F.3d at 1171 (noting that by "import[ing] patent law's staple article of commerce doctrine into the copyright context," the Supreme Court necessarily adopted this "principle[] of imputed intent") (cleaned up).

More importantly, the allegations of inducement here could not be more different than those in *Cox*. After a trial on the merits, the Supreme Court found Cox did not induce infringement because "Sony provided no 'evidence of express promotion, marketing, and intent to promote' infringement." *Cox*, 146 S. Ct. at 968. Had Cox advertised specific copyrighted works for its users to download, as Google did here, the result would have been different. Google created and served advertisements that expressly promoted and marketed products Google knew to be infringing. Sections II.A.1, 2 *supra*. Whereas Cox "did not 'induce' or 'encourage' its subscribers to infringe in any manner," or engage in "express promotion [and] marketing" concerning infringement, Plaintiffs allege Google did just that thousands of times. *Cox*, 146 S. Ct. at 968 (citing *Grokster*, 454 U.S. at 930).

*Perfect 10* is likewise distinguishable. There, the Ninth Circuit affirmed in part a denial of a preliminary injunction because the plaintiff had not demonstrated a likelihood of success on the merits of its inducement claim. *Perfect 10*, 508 F.3d at 1170–73. Perfect 10 owned the copyrights to various images. *Id.* at 1157. Third-party websites infringed these copyrights by displaying the images on their sites. *Id.* at 1169. In response to a search query, Google's search engine would in-line link to the images, i.e., open a window on the user's screen and instruct the user's computer to retrieve the infringing images from the third-party's website. *Id.* at 1155–57.The Ninth Circuit found Google did not induce infringement on these third-party sites because it "did not undertake

20

any substantial promotional or advertising efforts to encourage visits to infringing websites." *Id.* at 1172. The Complaint here alleges just the opposite: Google created and served thousands of advertisements specifically encouraging its users to purchase unauthorized products from pirate sites. Sections I.A.1, 2, *supra*. Moreover, the *Perfect 10* court found that there was "no evidence in the record directly establishing that users of Google's search engine have stored infringing images on their computers." *Perfect 10*, 508 F.3d at 1169. So naturally, that court could not find that Google induced search-engine users' infringement because the requisite direct infringement wasn't established. Here, there is no such question about the underlying direct infringements.

Google is also wrong to suggest the allegedly "wholly automated" nature of its advertisement platform makes any claim that it intended to encourage infringement "implausible." Mot. at 17. First, Google's platform is far from "wholly automated." Humans at Google ultimately decide with whom it will do business, and Google also decides which ads to run based in part on an analysis of the merchant's (or pirate's) landing page and the products the merchant (or pirate) wishes to sell. Compl. ¶¶ 41–42, 75. Again, Google misstates the standard by asking the Court to construe the Complaint in *Google's* favor. Second, caselaw demonstrates that automated features of an advertising platform do not preclude the intent necessary for secondary liability. *Bouck v. Meta Platforms, Inc.*, 2026 WL 810036, at *7 (N.D. Cal. Mar. 24, 2026) (rejecting defendant's argument that reliance on "automated technological systems" disproves defendant's knowledge of fraudulent advertisements on its platforms). The *Bouck* court found it was the defendant's "decision to use technological review tools to screen ads, and it does not now get to claim it had no idea what was going on because it tasked some software program with doing the first pass." *Id.* Google likewise cannot hide behind its design choices here. *See also Am. Broad. Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431, 444 (2014) (rejecting the argument that because users were involved

21

in selecting copyrighted content, the defendant was merely an "equipment supplier.").

Finally, Google argues it is implausible to allege that Google intended to induce infringement because its terms of service nominally prohibit infringement. Mot. at 18–19. This is nothing more than lipstick on a pig. The allegations demonstrate overwhelmingly that Google was telling the world that it opposed infringement, while at the same time getting paid handsomely to advertise it. Resolving Google's intent to infringe at the pleading stage (in the light most favorable to Google), based on terms of service that Google deliberately ignored, would be improper. *Carson*, 202 F. Supp. 3d at 251 (finding plaintiff stated a claim for inducement despite defendant's policy which permitted "intellectual property owners [to] easily report listings that infringe their rights"); *Alibaba.com*, 2012 WL 1668896, at *2 (similar). Dismissing Plaintiffs' claims based on terms of service generically warning users not to infringe also would ignore *Grokster*'s lesson that warning customers that infringement is against the rules, while flouting those rules yourself, does not insulate a defendant from secondary liability. *Grokster*, 545 U.S. at 926 (noting Grokster "sent e-mails warning users about infringing content when it received threatening notice from the copyright holders"). Indeed, a company's failure to follow its own copyright policies is evidence of the company's intent to induce infringement or willfulness. *Usenet.com, Inc.*, 633 F. Supp. 2d at 153 n.20   (citing the fact that the defendants "violated their own [copyright] policies" as "evidence of their intent to foster copyright infringement by their users"); *Lime Grp.*, 784 F. Supp. 2d at 431 ("Failure to utilize existing technology to create meaningful barriers against infringement is a strong indicator of intent to foster infringement."); *see also Rothman v. Gregor*, 220 F.3d 81, 90–91 (2d Cir. 2000) (in a securities fraud case, a "reckless failure to follow an announced policy" was evidence of scienter).

### E. Nothing turns on the Complaint's use of the term "induce".

Faced with this mountainous collection of allegations, Google retreats to arguing that

22

Plaintiffs' Complaint should be dismissed for failing to use the word "induce." Mot. at 15. But as the Supreme Court has recognized, "a complaint need not pin plaintiff's claim for relief to a precise legal theory" or provide "an exposition of his legal argument[s]." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). Instead, "[t]he focus is on the facts." *Katz v. ABP Corp.*, 2013 WL 2444605, at *1–2 (E.D.N.Y. June 4, 2013) (denying motion to dismiss complaint plausibly alleging facts supporting required "states of mind"); *see also Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) ("[T]he central inquiry is not whether a complaint pleads the magic words."). Here, the Complaint asserts a claim for "contributory copyright infringement" (Compl. Count I), and its factual allegations properly state a claim under the theory of inducement. As this Court recognized in its opinion on Google's motion to dismiss, "*Grokster*'s inducement standard is best understood as another variant of contributory infringement." Dkt. 111 at 9 n.3. *Cox* confirms this. 146 S. Ct. at 964. Moreover, the Complaint refers to Google "promoting" pirate ads or pirate sellers more than twenty times. *See Cox*, 146 S. Ct. at 968 (referencing "promotion" of infringement). The Complaint also specifically alleges that Google "encouraged" infringement and did so "intentional[ly]." Compl. ¶¶ 86, 125–26, 129; *see Cox*, 146 S. Ct. at 967 (inducement is "actively encourag[ing] infringement through specific acts"). Google acknowledged that Plaintiffs were alleging inducement in a hearing in January 2026. "[Google's Counsel:] [I]f [Plaintiffs] want to make the argument that the verification of those 609 ads accounts somehow constituted material contribution or inducement to infringement, I don't understand why they need anything more." Dkt. 553 at 85:18–22.

If the Court were to find nonetheless that use of the term "induce" was required, it should grant leave for Plaintiffs to add this phrase because the factual allegations in the Complaint support this theory, particularly in light of the intervening decision in *Cox* and the additional discovery

produced to date. *Hi Bar Cap. LLC v. Getter*, 2025 WL 2989120, at *8 (E.D.N.Y. Oct. 12, 2025) (in a Rule 12(b) context, stating "[w]here the court determines that a party could allege additional facts that would support its claims, leave to amend a complaint should be freely granted.") (internal quotation omitted); *see also Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 325 (2d Cir. 2011). If notwithstanding this law and the pleading standard of Rule 8(a), the Court believes the Complaint must be more tailored in light of *Cox*, Plaintiffs can do so, and providing such leave would be warranted under Rule 15(a)(2). *See Id.*

## II.    Google's ads for infringing ebooks were "tailored to infringement."

Though the Court need not reach the issue, Google is also contributorily liable because its infringing shopping ads are "tailored to infringement." *Cox*, 146 S. Ct. at 967. A product or service is "tailored to infringement if it is not capable of substantial or commercially significant noninfringing uses." *Id.* (quotation omitted).

Here, Plaintiffs allege Google created thousands of advertisements enticing its users to download unauthorized reproductions of Plaintiffs' ebooks. The Complaint makes clear that unlicensed ebooks sold by pirates are not "capable of 'substantial' or 'commercially significant' noninfringing uses." *Cox*, 146 S. Ct. at 968; *see also Uniloc United States of Am., Inc. v. Apple Inc.*, 2018 WL 2392561, at *5 (N.D. Cal. May 25, 2018) (noting the "component" without substantial noninfringing uses may be "the entire product").

Instead, Google argues that "the Google Shopping Platform" itself is not a service tailored to infringement. Mot. at 20–22. But defining the "service" so broadly does not make sense here. *See Nazemian*, 2026 WL 1229583, at *6 (finding plaintiff alleged specific scripts distributed as part an AI framework were tailored to infringement even though the framework "as a whole may have other, non-infringing uses"). Google is not like the defendant in *Sony*, who distributed millions of identical Betamax video tape recorders to the general public and "had no direct

24

involvement with any Betamax purchasers" after the sale. *Sony*, 464 U.S. 417, 426. Nor is Google like Cox; the internet access that Cox provided to infringers was identical to the internet access it provided to non-infringers. Google specifically "tailored" the ads in question to induce purchases of the infringing works. And Google targeted those ads to specific users that Google predicted *would* purchase the infringing works. Compl. ¶ 42. Those ads thus were "tailored" to infringement.

### III.       The Court should decide Google's intent on a full record.

The Court should decline to entertain Google's belated motion for judgment on the pleadings. Plaintiffs filed this lawsuit in June 2024. The parties served their first document requests in September 2024. After nearly two years and over 30 discovery disputes, fact discovery is set to close in July 2026. *See* Apr. 14, 2026 Hearing Tr. ("Tr.") at 57:3–4. "[O]nce the parties have invested substantial resources in discovery," as the parties here clearly have, "a district court should hesitate to entertain a Rule 12(c) motion that asserts a complaint's failure to satisfy the plausibility requirement." *Horn*, 383 F. Supp. 3d at 125 n.7 (quotation omitted).

This is particularly true here, as "[i]ntent [to induce infringement] is a factual determination particularly within the province of the trier of fact." *Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1378 (Fed. Cir. 2005) (citation omitted). *Cox* was decided on a full trial record. 146 S. Ct. at 966. *Grokster* was decided on summary judgment. 545 U.S. at 927. Deciding the fact-intensive question of Google's intent on a motion for judgment on the pleadings is not sensible, as additional discovery will only assist this Court, and the ultimate fact-finder, in evaluating Google's state of mind.

It makes particularly little sense to address Plaintiffs' fact-intensive inducement claim now on the pleadings, when Plaintiffs have developed considerable evidence in support of that claim over the last two years. For example,

25

██████. Dkt. 803-1 (GOOG-CENG-00469041) at -9043. As the Complaint alleges, for each work-in-suit, Plaintiffs notified Google either that the ad promoted an infringing work, or that the merchant was a pirate seller. ¶ 122. But ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ Dkt. 238 ¶ 14. ████████████████

████████████████████████████████████████████████████████

████████. ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████. *Id.*

¶ 12; *see also* Aug. 22, 2025 Order, Dkt. 191 at 6–7 (in denying Google's stay request, finding that Plaintiffs' "works-in-issue continue to be advertised by pirate sellers on the Google Platform"); Tr. at 56:1–6 (same). At the very least, this discovery moots any argument Google could raise regarding the plausibility of allegations in the Amended Complaint. *Ideal Steel Supply*, 652 F.3d at 325 (evidence produced in discovery may "fill the perceived gaps in the Complaint" on a motion under 12(c)). The Court should not ignore that discovery by deciding Google's intent based on the pleadings.

## CONCLUSION

This Court should deny Google's motion for partial judgment on the pleadings.

Dated:  May 8, 2026                    Respectfully submitted,

/s/ Jeff Kane
Jeff Kane

Matthew J. Oppenheim
Michele H. Murphy
Jeff Kane
Danae Tinelli
Uriel Lee
OPPENHEIM + ZEBRAK, LLP

26

4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202-480-2999 telephone
866-766-1678 fax
matt@oandzlaw.com
michele@oandzlaw.com
jkane@oandzlaw.com
danae@oandzlaw.com
ulee@oandzlaw.com

Lauren Bergelson
Yunyi Chen
OPPENHEIM + ZEBRAK, LLP
461 5th Avenue, 19th Floor
New York, NY 10017
847-562-6677 telephone
866-766-1678 fax
lbergelson@oandzlaw.com
ychen@oandzlaw.com

*Counsel for Plaintiffs*

27

## <u>CERTIFICATION OF COMPLIANCE WITH</u>
## <u>WORD LIMIT</u>

The instant brief complies with the word limit in Rule 3(C) of this Court's Individual Rules of Practice in Civil Cases. According to the word processing system used to prepare it, the brief is 8,624 words in length, excluding the cover page, table of contents, table of authorities, signature block, and this Certification.

/s/ <em>Jeff Kane</em><br>
Jeff Kane

28