**O+Z** | Oppenheim + Zebrak, LLP

WASHINGTON – NEW YORK

Yunyi Chen
461 5th Avenue, 19th Floor
New York, NY 10017
Tel. 212.951.1156
ychen@oandzlaw.com

May 11, 2026

**VIA ECF**

The Honorable Barbara Moses
U.S. District Court for the Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

> Re:   ***Cengage Learning, Inc. et al. v. Google LLC**, No. 24:cv-04274-JLR-BCM*
> **Plaintiffs' Letter Reply in Support of Plaintiffs' Letter Motion (Dkts. 871–72)**
> **for *In Camera* Review of Clawed-Back Documents**

[Redacted]

Dear Judge Moses,

Plaintiffs' Dkts. 871–72 motion ("Motion" or "Mot.") requests *in camera* review or production of three documents clawed back by Google: GOOG-CENG-00422871, GOOG-CENG-00422896, and GOOG-CENG-00416837, plus the "final version" of the GOOG-CENG-00422896 draft presentation corresponding to Dkt. 593-2, PrivLog ID 107 (the "Final Presentation").

After refusing to provide basic information requested by Plaintiffs, Mot. 2–4, Google now purports to provide additional information in opposing the Motion through three declarations. Dkt. 897 ("Hsieh"); Dkt. 901 ("Tomkowiak"); Dkt. 921 ("Yadav"). Google's submissions have not obviated the need for *in camera* review of these relevant documents.

### I.   *In camera* review of GOOG-CENG-00422871 is necessary to ascertain whether the purported advice is truly "legal."

Google has not established that the portion of GOOG-CENG-00422871, on which Plaintiffs' counsel had begun to depose Google's witness (the "Questioned Section"), is properly redacted.

Plaintiffs allege that Google possessed the requisite knowledge for monetary damages from direct trademark infringement (15 U.S.C. § 1114(1)(b)) in part because Plaintiffs' notices of infringement informed Google that the pirate sellers identified in those notices were not authorized to sell Plaintiffs' works or use their trademarks. Dkt. 38 ¶¶143–144. Google is likely to dispute such knowledge by arguing that Plaintiffs generally sent notices through the *copyright*, instead of the trademark, channel. *See*, *e.g.*, Dkt. 28 at 17. But Google also instructed its employees to ███████ ███████████████████████████████████████████████████████████. *See* Attorney Declaration of Yunyi Chen ("Reply Decl."), Ex. 1 at -4933 ¶3. This type of instructions shows that Google knew the infringing Shopping ads subject to Plaintiffs' copyright infringement notices also involved trademark infringement. Mot. at 1. Plaintiffs accordingly questioned Ms. ███████ on that specific instruction. Reply Decl. Ex. 2 at 237:15–238:25. Ms.███████ testified that the instruction was part of ████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ Ex.

Hon. Barbara Moses
May 11, 2026
Page 2 of 5

2 at 239:16–19. Ms. ███████ also testified on the meaning of the instruction, and Google did not contend that such an instruction reflected any confidential legal advice. *Id.* at 243:12–244:25.

In this context, Plaintiffs questioned Ms. ███████ about the Questioned Section and whether Google had a ████████ to ███████ certain infringement notices ████████ ███████." Mot. 1. Plaintiffs also asked Ms. ██████ whether her team instructed rightsholders who sent counterfeit notices or trademark notices instead to send copyright notices. Ex. 2 at 286:7–18. Yet when Plaintiffs' counsel introduced GOOG-CENG-00422871, and read a section of the document into the record, Google clawed back the document. Mot. 1; *see also* Ex. 2 at 230:11–231:10. Google now claims the Questioned Section contained legal advice from Google's in-house counsel, Ms. Hsieh. Google has not carried its burden to establish that it properly clawed back the Questioned Section.

First, Ms. Hsieh's declaration does not explain how her "advice" was any different from other instructions to Google employees concerning the contours of Google's internal policies, which Google agreed were discoverable and did not attempt to claw back. *See, e.g.*, Ex. 1 at -4933 ¶3; Ex. 2 at 237:15–238:25; 243:12–244:25; 286:7–18. Where, like here, "there are several possible interpretations of a document based upon the surrounding circumstances, the party asserting the privilege must produce evidence sufficient to satisfy a court that legal, not business, advice is being sought." *Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, 2006 WL 1004472, at *6 (S.D.N.Y. Apr. 18, 2006). Ms. Hsieh has not supplied such "evidence" because her declaration fails to explain how any advice in the Questioned Section "involves the interpretation and application of legal principles to guide future conduct or to assess past conduct," *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007), but the policy instructions in documents like Ex. 1 at -4933 are properly produced.

Second, Ms. Hsieh states that the Meeting Minutes are from "recurring meetings" between herself and "Google's trademark and counterfeit operations teams," which she organized "for the primary purpose of providing legal advice." Hsieh ¶¶8–9. But in reproducing GOOG-CENG-00422871, Google left most of the meeting notes unredacted. *See generally* Dkt. 873-1. If "the primary purpose" of these meetings truly was to "provide[] legal advice," it seems odd that the GOOG-CENG-00422871 appears to be primarily non-privileged. *Cf. Erie*, 473 F.3d at 421 n.8 ("[R]edaction is available for documents which contain legal advice that is *incidental to the nonlegal advice that is the predominant purpose* of the communication.") (emphasis added).

Third, contrary to Google's characterization, Google's withdrawal of privilege claim over a document selected by Plaintiffs for *in camera* review reveals more than a mere oversight corrected "after further review." Dkt. 895 at 3. Google has yet to explain how it could have conducted a "thorough re-review" of that document and affirmatively represented to Plaintiffs that "confidential legal advice . . . pervades the document," only for that document to turn out to contain *no* legal advice. Mot. 2.

## II.    Google still fails to establish that either GOOG-CENG-00422896 or the Final Presentation is privileged, or that any privilege has not been waived.

Ms. Hsieh asserts that GOOG-CENG-00422896 and the Final Presentation contain her advice about ████████ ██████ Hsieh ¶6. Like with GOOG-CENG-00422871, Ms. Hsieh's representations do not establish how GOOG-CENG-00422896 "involve[d] the interpretation and application of legal

Hon. Barbara Moses
May 11, 2026
Page 3 of 5

principles," *Erie*, 473 F.3d at 413, such that GOOG-CENG-00422896 and the Final Presentation are properly withheld, but other instructions on the contours of Google's policies, *see*, *e.g.*, Ex. 1 at -4933, are properly produced.

Further, Google did not take the position that GOOG-CENG-00422896 contained any legal advice even after having a month to "re-review[]" it. Dkt. 593-6 at 18. This unexplained delay indicates that it is *not* apparent from the face of the document that it is privileged. Nor does Ms. Hsieh's characterization of her advice or of non-attorneys' ██████████ to the presentation, Hsieh ¶¶5–6, establish that the presentations are privileged in their entirety.

Finally, before Plaintiffs filed the Motion, Google had repeatedly refused to provide any participant information at Plaintiffs' request because "Google [had] met its obligation under the governing law." Mot. 3. Google now belatedly shares that the participants at the Final Presentation were ████████████████████████████████ Hsieh ¶6. *In camera* review will reveal whether the Final Presentation contains "legal" advice, and if so, whether ████████ ████████ were indeed "in a position to act or rely on" such advice. *See Valassis Commc'ns, Inc. v. News Corp.*, 2018 WL 4489285, at *3 (S.D.N.Y. Sept. 19, 2018) (issues of waiver by disclosure to employees and "confidentiality" are "better decided in the context of *in camera* review.").

### III. Google's belated explanation of GOOG-CENG-00416837 shows that Plaintiffs cannot obtain equivalent information without undue hardship.

Unlike Google's April 23 explanation, which does not identify the litigation to which GOOG-CENG-00416837 purportedly related, Dkt. 873-8, Google now claims that GOOG-CENG-00416837 was prepared "in connection with this lawsuit." Tomkowiak ¶8; Yadav ¶3. At the parties' April 24 meet-and-confer, Google took the position that it needed not provide any additional information, Dkt. 873 ¶16. But Google now claims that ██████████████████████████ █████████████████████████████████████████ ██████ regarding ████████ ██████████████ ██ ████████ ████ ██████████ Tomkowiak ¶¶6–8 (emphasis added); Yadav ¶¶3–5. *Compare with* Dkt. 873-8 (no mention of ████████). Google's new explanation for its privilege claim is insufficient for at least three reasons.

First, even assuming that the GOOG-CENG-00416837 is protected work product, it is still discoverable because Plaintiffs have a "substantial need" for it, and cannot "obtain their substantial equivalent" "without undue hardship," if at all. [1] *See EFCG, Inc. v. AEC Advisors, LLC*, 2020 WL 6378943, at *2 (S.D.N.Y. Oct. 30, 2020) (citing Fed. R. Civ. P. 26(b)(3)(A)) (Moses, J.).

Google engaged ████████ during part of the relevant period to enforce Google's copyright policy for Shopping. Plaintiffs thus sought ████████ Rule 30(b)(6) testimony on ████████ implementation and enforcement of Google's copyright policy and served a notice of deposition in early March. Reply Decl. ¶6. However, ████████ reported that it was unable to produce a witness because all the individuals with knowledge of this subject are outside the United States.

---

[1] The Second Circuit has held that "reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party." *Bayway Refin. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226–27 (2d Cir. 2000) (quotation omitted).

Hon. Barbara Moses
May 11, 2026
Page 4 of 5

Reply Decl. ¶¶7–8. Google has not taken the position that the content of the memo can be obtained by another source, and Google's request that ▮▮▮▮▮▮ prepare the memo indicates that it cannot. Based on the information provided for the first time in Dkt. 901, i.e. ▮▮▮▮▮▮ role in the preparation of the document, GOOG-CENG-00416837 may well be the only method through which Plaintiffs can obtain equivalent information. *See* Reply Decl. ¶¶5–8; *see also Weber v. Paduano*, 2003 WL 161340, at *14 (S.D.N.Y. Jan. 22, 2003) (finding "undue hardship" where "plaintiff has no means of obtaining" equivalent information). Further, nothing in Dkts. 901 or 921 suggests that GOOG-CENG-00416837 contains "opinion" work product. *See EFCG,* 2020 WL 6378943 at *2 ("Outside of core 'opinion' work product . . . . the protection provided by the work product doctrine is not absolute.").

Plaintiffs have a substantial need for information on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for Shopping. For instance, Google refuses to say that it will not argue to the jury what it previously alleged in this case: that "Google has taken substantial steps to assist intellectual property owners in protecting their rights by adopting industry-leading practices to combat infringement across its Shopping platform." Dkt. 271 at 1; Dkt. 846 at 2. Google also claims to have processed Plaintiffs' notices to Google under its copyright policy. Indeed, even *Google* has not taken the position that it need not prepare any 30(b)(6) witness on Google's implementation of its DCMA policy, i.e., its copyright policy. Dkt. 914 at 4; Dkt. 915 ¶12. Accordingly, Plaintiffs have a substantial need for this information. *See Paduano*, 2003 WL 161340 at *14 ("substantial need" exists when the information sought "is 'crucial' to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues").

Second, Google still has not provided any basic information, such as title, author, date, sender, or recipient, for GOOG-CENG-00416837. If this document actually is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, basic information like title, sender, and recipient should make that apparent.

Third, Google's nondisclosure of basic information is also problematic given Google's failure to explain why it took *five weeks* to provide even the cursory explanation on April 23. Nor does Google attempt to explain why it clawed back GOOG-CENG-00416837 more than *five months* after Plaintiffs emailed Google about the document, Mot. 4, when Google's external counsel had reviewed GOOG-CENG-00416837 and presumably would have quickly recognized the document as work product – either by context in which the document was shared, or by content. *See* Tomkowiak ¶¶6–8. These delays also indicate that it is *not* apparent from the face of the document that it is privileged or protected and further tip in favor of *in camera* review. *See Interfase*, 2006 WL 1004472 at *6. The Protective Order, Dkt. 82 ¶26, does not allow Google to claw back responsive but inconvenient documents without establishing that it did so properly. *See id.* ("The Producing Party shall bear the burden of establishing the privileged or protected nature of the document(s).").

## IV.   Conclusion

Plaintiffs respectfully request that the Court grant Plaintiffs' Motion.

Hon. Barbara Moses
May 11, 2026
Page 5 of 5

Respectfully submitted,


*/s/  Yunyi Chen*
Yunyi Chen