**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; ELSEVIER INC.; ELSEVIER B.V.; and MCGRAW HILL LLC,<br><br>                                 *Plaintiffs*,<br><br>v.<br><br>GOOGLE LLC,<br><br>                                 *Defendant*. | Case No. 1:24-cv-04274-JLR-BCM<br><br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF**
**MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ............................................................................................................................1

    I.      Plaintiffs' Brief Confirms Google Did Not Induce Infringement............................1

            A.     Neutral, Passive Advertising Platforms Like Google Shopping Are Not Liable for Inducement...............................................................................2

            B.     Plaintiffs' Theory That Google Induced Infringement by Failing to Take Down Infringing Advertisements or Terminate Pirate Merchants Is Foreclosed by *Cox*...................................................6

                    1.     Merely Failing to Take Down an Advertisement for an Allegedly Infringing Product Is Not Inducement ...........................7

                    2.     At a Minimum, Failing to Terminate Service for Accounts Associated with Allegedly Infringing Advertisements Is Not Inducement...............................................................................8

    II.     Plaintiffs' Brief Confirms Shopping Is Not Tailored to Infringement ..................10

    III.    The Court Should Dismiss This Claim Now .........................................................11

CONCLUSION.........................................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alibaba.com Hong Kong Ltd v. P.S. Products, Inc.*,
  2012 WL 1668896 (N.D. Cal. May 11, 2012) ...........................................................6

*Arista Recs. LLC v. Lime Grp. LLC*,
  784 F. Supp. 2d 398 (S.D.N.Y. 2011)........................................................................4

*Arista Recs. LLC v. Usenet.com Inc.*,
  633 F. Supp. 2d 124 (S.D.N.Y. 2009)........................................................................4

*Cal. Beach Co. v. Exqline, Inc.*,
  2020 WL 6544457 (N.D. Cal. Nov. 7, 2020) ..........................................................3, 6

*Carson Optical Inc. v. eBay Inc.*,
  202 F. Supp. 3d 247 (E.D.N.Y. 2016) ........................................................................6

*Columbia Pictures Indus., Inc. v. Fung*,
  710 F.3d 1020 (9th Cir. 2013) ....................................................................................4

*Conair Corp. v. Jarden Corp.*,
  2014 WL 3955172 (S.D.N.Y. Aug. 12, 2014)............................................................5

*Concord Music Grp., Inc. v. Anthropic PBC*,
  No. 5:24-cv-03811 (N.D. Cal. May 15, 2026).........................................................11

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
  146 S. Ct. 959 (2026)........................................................................... *passim*

*Crypto Rsch., LLC v. Assa Abloy, Inc.*,
  236 F. Supp. 3d 671 (E.D.N.Y. 2017) ........................................................................5

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*,
  443 F.2d 1159 (2d Cir. 1971).....................................................................................5

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011).....................................................................................................1

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005)............................................................................................1, 2, 4, 7

*Nazemian v. Nvidia Corp.*,
  2026 WL 1229583 (N.D. Cal. May 5, 2026)..........................................................4, 11

*Nexon Am., Inc. v. S.H.*,
    2011 WL 13217951 (C.D. Cal. Dec. 13, 2011) ................................................................4

*Paige v. N.Y. City Hous. Auth.*,
    2018 WL 3863451 (S.D.N.Y. Aug. 14, 2018) ...........................................................7

*Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc.*,
    256 F. Supp. 399 (S.D.N.Y. 1966).............................................................................5

*Sony Corp of Am. v. Universal City Studios*,
    464 U.S. 417 (1984).................................................................................................10

*Symbology Innovations, LLC v. Nat. Nectar Inc.*,
    2020 WL 9814098 (E.D.N.Y. Aug. 21, 2020).........................................................5

*Twitter, Inc. v. Taamneh*,
    143 S. Ct. 1206 (2023).............................................................................................7

*UMG Recordings, Inc. v. Verizon Commc'ns Inc.*,
    No. 1:24-cv-05285 (S.D.N.Y. Apr. 22, 2026) .......................................................11

## STATUTES

17 U.S.C.
    § 512(i)(1)(A)...........................................................................................................9
    § 512(l)......................................................................................................................9

## RULES

Fed. R. Civ. P. 12(c) ........................................................................................................11

## OTHER AUTHORITIES

*Induce*, Webster's New International Dictionary 1269 (2d ed. 1945).............................1

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13E.03[B] (rev. ed. 2026) ......5

## PRELIMINARY STATEMENT

In their opposition, Plaintiffs concede that the Supreme Court's decision in *Cox* eliminated the material contribution theory on which their contributory copyright infringement claim depended. *See* Dkt. 929 at 11 ("Opp.") (conceding "the *Cox* Court's rejection of the material contribution/knowledge standard"). And they do not dispute that the only remaining routes to contributory infringement are inducement or tailoring. *See id.* at 6, 24. As a last-ditch effort, they now attempt to contort their allegations to fit an inducement or tailoring claim. That attempt fails: the allegations fit neither theory, and no discovery that could fix the defects in Plaintiffs' claim. The Court should grant Google's motion and dismiss Plaintiffs' contributory copyright infringement claim with prejudice.

## ARGUMENT

## I.     PLAINTIFFS' BRIEF CONFIRMS GOOGLE DID NOT INDUCE INFRINGEMENT

Plaintiffs agree that pleading inducement requires them to allege that Google engaged in "specific acts" that "actively encouraged infringement." Opp. 6 (quoting *Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 967 (2026)).[1] This requires allegations that Google engaged in affirmative conduct to influence users to infringe. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005) (explaining inducement requires "[e]vidence of 'active steps taken to encourage direct infringement'"); *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011) ("The term 'induce' means 'to lead on; to influence; to prevail on; to move by persuasion or influence.'" (quoting *Induce*, Webster's New International Dictionary 1269 (2d ed. 1945))).

---

[1] Unless noted otherwise, all emphasis is added, citations and alterations are omitted, and undefined terms have the meaning in Google's opening brief. *See* Dkt. 843 ("Mot.").

Plaintiffs point to three categories of "acts" by Google that they contend qualify as such affirmative conduct. *See* Opp. 6-12. First, they argue Google induced infringement because Google itself advertised infringing works. *See id.* at 6-7. Second, they argue Google induced infringement by continuing to run specific advertisements for infringing works after Plaintiffs submitted infringement notices about those advertisements. *See id.* at 4, 8-10. Third, they argue Google induced infringement because Plaintiffs reported some advertisements for infringing textbooks run by certain "pirate sellers," but Google continued to permit these merchants to run other (unreported) advertisements. *See id.* at 4. None of these arguments involves affirmative acts *by Google*, so none supports an inducement claim.

A.    **Neutral, Passive Advertising Platforms Like Google Shopping Are Not Liable for Inducement**

In their complaint, Plaintiffs repeatedly described Google Shopping as an "advertising platform" where others post advertisements for products sold on their own websites. *See, e.g.*, FAC ¶¶ 40, 46, 93, 135. Recognizing that this characterization would vitiate their contributory infringement claim after *Cox*, Plaintiffs now try to describe Google Shopping as a place where *Google* is consciously and directly engaged in advertising each of the hundreds of millions of products that appear there. *See* Opp. 7 ("*Google's* advertising of infringing copies of Plaintiffs' works to the customers who bought them are 'specific acts' that 'encouraged infringement.'"); *see also id.* at 6 (asserting *Google* "creat[ed] and distribut[ed] advertisements promoting infringing ebooks"). Plaintiffs seek to take advantage of the Supreme Court's statement in *Grokster* that "the classic instance of inducement is by advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations." *Id.* at 6-7 (quoting *Grokster*, 545 U.S. at 937).

But "Google" does not "advertise" any allegedly infringing textbooks in any relevant sense—merchants do. Plaintiffs do not dispute that merchants choose when to advertise their

2

products on Shopping, that all product data and images are supplied by merchants, that ads are created at merchants' request using templates supplied by Google using only the information supplied by merchants, and that merchants set the price they are willing to pay for their ads to appear in Google Search results. *See* FAC ¶¶ 41-42, 73, 88. Plaintiffs do not allege that Google performs any human review or curation of merchants' ads before display, or participates in creating any ad, except through automatic systems at merchants' direction. *See* FAC ¶¶ 37-38.[2] Plaintiffs cannot now, after *Cox*, escape their repeated admission in their FAC that Shopping is a general-purpose "advertising platform."

Plaintiffs protest that "Google is not a list-serve or modern-day bulletin board like Craigslist, passively allowing users to post listings," but rather "a sophisticated ad agency at scale." Opp. 17. In support, Plaintiffs highlight various features of Google Shopping they say distinguish it from Craigslist. *Id.* at 16-17. But all these features are automatic, and Plaintiffs do not allege facts otherwise demonstrating Google plays any intentional role in creating or promoting any ads. Nor do their allegations support that any features are intended to further infringement. To the contrary, Plaintiffs do not dispute that *all* these features apply equally to *all advertisements*— regardless of what is being advertised. *Cf.* Opp. 16-18.[3] And there are no allegations that Google designed Shopping to favor infringing products or treat them differently than legitimate ones. That alone forecloses any inducement claim premised on these alleged features. *See, e.g.*, *Cal. Beach*

---

[2] Plaintiffs argue Google asks the Court to draw inferences in Google's favor. Opp. 18. But Plaintiffs' own allegations and characterizations concede Google's processes are automated. *See, e.g.*, FAC ¶¶ 41-45 (referring to numerous features that are plainly automated); *id.* ¶¶ 39, 41 (incorporating Google websites); Opp. 17 (asserting Google "us[es] data Google collects about each user, and a proprietary algorithm to target the users most likely to click on the ad").

[3] Content-neutral "autofill" features (e.g., "PDF") are no different. There is nothing nefarious about "PDF" or even "ebook," since ebooks (including from legitimate publishers) *are not banned* for free listings. FAC ¶ 58.

*Co. v. Exqline, Inc.*, 2020 WL 6544457, at *2 (N.D. Cal. Nov. 7, 2020) (rejecting inducement claim when "no aspect of [defendant]'s alleged *ordinary* provision of services to all comers lets us plausibly infer that [defendant] recommended, encouraged, promoted, or suggested infringement" (emphasis in original)).  At bottom, Google is situated no differently than Cox:  it "provided [the Shopping] service to its customers, but it did not intend for that service to be used to commit copyright infringement."  *Cox*, 146 S. Ct. at 968; *id.* ("Cox simply provided Internet access, which is used for many purposes other than copyright infringement.").

Plaintiffs next argue that even if Google merely provides an advertising platform for *others* to advertise *their own* products, it may still be liable for inducement.  Opp. 12-16.  But none of their cases support that contention.  The paradigmatic inducement cases involve a defendant advertising *its own product* for infringing uses.  That was true in *Grokster* where "[t]he companies promoted and marketed *their software* as a tool to infringe copyrights."  *Cox*, 146 S. Ct. at 967 (citing *Grokster*, 545 U.S. at 926).  It was true in *Fung*, where the defendant actively encouraged users to upload infringing content to *his own website*.  *See Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1036 (9th Cir. 2013).  It was true in *Lime Group*, where LimeWire "purposefully marketed LimeWire"—i.e., *the defendant's own service*—for infringement.  *Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 427 (S.D.N.Y. 2011).  It was true in *Usenet*, where the defendant marketed *its own service* to "infringement-minded users."  *Arista Recs. LLC v. Usenet.com Inc.*, 633 F. Supp. 2d 124, 132, 152-53 (S.D.N.Y. 2009).  It was true in *Nexon*, where the defendant advertised *his own* infringing software.  *Nexon Am., Inc. v. S.H.*, 2011 WL 13217951, at *2-3, *5-6 (C.D. Cal. Dec. 13, 2011).  And it was true in *Nazemian*, where the defendant's *own product* was allegedly being used to download infringing content.  *Nazemian v. Nvidia Corp.*, 2026 WL 1229583, at *1 (N.D. Cal. May 5, 2026).  Plaintiffs' patent cases are similar; they likewise

4

involve the defendant continuing to *sell its own* infringing product after being put on notice of a conflicting patent—not *advertise a third party's* product. *See Conair Corp. v. Jarden Corp.*, 2014 WL 3955172, at *3 (S.D.N.Y. Aug. 12, 2014); *Symbology Innovations, LLC v. Nat. Nectar Inc.*, 2020 WL 9814098, at *4 (E.D.N.Y. Aug. 21, 2020); *Crypto Rsch., LLC v. Assa Abloy, Inc.*, 236 F. Supp. 3d 671, 687 (E.D.N.Y. 2017).

Plaintiffs fall back on a case decided over half a century ago: *Screen Gems-Columbia Music, Inc. v. Mark-Fi Records, Inc.*, 256 F. Supp. 399 (S.D.N.Y. 1966). But *Screen Gems* is not an inducement case. It is a precursor of the Second Circuit's abrogated knowledge-and-material-contribution standard. *See Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162-63 (2d Cir. 1971) (citing *Screen Gems*). It held an advertising agency and radio stations contributorily liable not because their advertisements induced infringement, but because the defendants had "knowingly participated in or furthered the tortious conduct," and should be liable for aiding and abetting infringement. 256 F. Supp. at 403-05; *see* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13E.03[B] (rev. ed. 2026) (categorizing *Screen Gems* as a material contribution case, and discussing "arranging the advertising for [an] infringing product or activity" as material contribution). Indeed, Plaintiffs concede that multiple other cases they say found contributory liability based on "a defendant's knowing advertisement of infringing products" only did so under the defunct "knowledge/material contribution standard." Opp. 11-12.[4]

---

[4] Plaintiffs assert that "Google may also be liable for inducement because it aided and abetted infringement." Opp. 12 n.3. That is impossible to square with *Cox*. The majority explicitly rejected aiding and abetting liability. *See* 146 S. Ct. at 967. And the concurrence treated it as separate from inducement. *See id.* at 969-76 (Sotomayor, J., concurring in the judgment).

That leaves Plaintiffs with two outlier patent cases.  Opp. 15 (citing *Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 262 (E.D.N.Y. 2016); *Alibaba.com Hong Kong Ltd v. P.S. Products, Inc.*, 2012 WL 1668896 (N.D. Cal. May 11, 2012)).  Both are inapposite.  Neither addressed the requirement in *Cox* that the defendant "actively encourage[] infringement *through specific acts*."  146 S. Ct. at 967.  Indeed, Judge Alsup, who decided *Alibaba*, later distinguished that case when rejecting an inducement claim against the shopping platform Shopify, noting that *Alibaba* "did not address Alibaba's affirmative conduct which might have induced that infringement."  *Cal. Beach*, 2020 WL 6544457 at *3.  He ruled that Shopify could not be held liable as it "provided only the virtual resources—as it did to all of its merchants."  *Id.* The same is true here.  In any event, to the extent *Carson Optical* and *Alibaba* held defendants liable for inducement based only on knowledge of infringing articles and failure to take down the articles' listings, they are inconsistent with *Cox*, which explicitly rejected liability on that basis.  *Cox*, 146 S. Ct. at 968-69 ("[C]ontributory liability cannot rest only on a provider's knowledge of infringement and insufficient action to prevent it.").

> **B.** **Plaintiffs' Theory That Google Induced Infringement by Failing to Take Down Infringing Advertisements or Terminate Pirate Merchants Is Foreclosed by *Cox***

Next, Plaintiffs argue they have adequately alleged inducement because Google "continued to run" advertisements on Shopping after receiving infringement notices.  This argument has two flavors.  The first targets *specific* advertisements subject to Plaintiffs' infringement notices.  Opp. 4, 8-10.  The second targets *all* advertisements by so-called "pirate merchants," whose accounts were allegedly affiliated with some advertisements subject to Plaintiffs' notices.  *Id.* at 4.  Neither establishes inducement.

### 1. *Merely Failing to Take Down an Advertisement for an Allegedly Infringing Product Is Not Inducement*

First, Plaintiffs argue Google engaged in affirmative acts inducing infringement because "Plaintiffs sent Google notice-after-notice identifying specific Shopping ads that were promoting pirated products," and Google "chose to run the specific ads Plaintiffs told Google were infringing." Opp. 8; *see also id.* (asserting "Plaintiffs identif[ied] ads for specific infringing products …, but Google kept advertising those infringing products anyway on multiple occasions").

This argument relies on a semantic trick. What Plaintiffs characterize as Google "choosing to run" an advertisement or "continuing to advertise" a product actually describes nothing more than Google's *failure to remove* an advertisement a *merchant* created and posted on Google Shopping. Plaintiffs cannot recast Google's alleged *passive inaction* and *nonfeasance* in the face of infringement as *active conduct* and *misfeasance* intended to further infringement. *See, e.g.*, *Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1227 (2023) ("[T]he claim here rests less on affirmative misconduct and more on an alleged *failure to stop* ISIS from using these platforms."); *Paige v. N.Y. City Hous. Auth.*, 2018 WL 3863451, at *11 (S.D.N.Y. Aug. 14, 2018) ("Plaintiffs assert a failure to take action, which cannot be transformed into an affirmative act.").

Properly reframed, Plaintiffs' argument fails. As the Supreme Court has repeatedly observed, "contributory liability cannot rest only on a provider's knowledge of infringement *and insufficient action to prevent it.*" *Cox*, 146 S. Ct. at 969; *id.* at 968 ("'[M]ere indifferent supposition or knowledge on the part of the seller' that the buyer will use the product unlawfully is 'not enough' to make the seller liable for the buyer's conduct."); *Grokster*, 545 U.S. at 939 n.12 ("[A] court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement."). Plaintiffs' allegations that Google knew these

7

specific advertisements were for infringing textbooks based on Plaintiffs' notices are therefore irrelevant. *See* Opp. 8-9.

Indeed, this is the same evidence the respondents in *Cox* relied on to try to establish contributory liability. *See* Brief for Respondents at *16-18, *22-28, *Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959 (2026) (No. 24-171), 2025 WL 2960179 (relying on Cox's receipt of infringement notices, failure to act on notices, failure to terminate subscribers, and purported disdain for DMCA). But the Court did not treat *any* of that evidence as relevant to the question whether Cox induced infringement. *See generally Cox*, 146 S. Ct. at 967-69. Instead, *Cox* rejected contributory infringement liability premised on "supplying a product with knowledge that the recipient will use it to infringe copyrights." 146 S. Ct. at 968. That is fatal to Plaintiffs' claims here.

### 2. *At a Minimum, Failing to Terminate Service for Accounts Associated with Allegedly Infringing Advertisements Is Not Inducement*

Next, Plaintiffs argue Google engaged in affirmative acts inducing infringement because "Plaintiffs sent Google notice-after-notice identifying … specific merchants who were pirate sellers," but "Google chose to … promote the very pirate sellers Plaintiffs identified in their notices." Opp. 8; *id.* at 9 ("Google chose to run more ads promoting these known pirate merchants."). This argument relies on the same impermissible semantic trick as the first one, by spinning Google's *failure to terminate* "pirate merchant" accounts into affirmative conduct to "promote" those merchants. *See supra* at 7. Again, that tactic fails.

This argument also fails on a more fundamental level. Plaintiffs' theory is that Google should be liable for inducement because it "continued to run" advertisements from merchants associated with (an unspecified number of) advertisements for which Plaintiffs submitted infringement notices. *See* Opp. 8-9. According to Plaintiffs, Google's failure to terminate these

8

"pirate merchant" accounts suffices to show intent to induce infringement with respect to all *future* advertisements by such merchants, even if Google received no notices about those advertisements. That theory is on all fours with the theory the respondents advanced in *Cox*: "that Cox contributed to its users' infringement by continuing to provide Internet service to subscribers whose IP addresses it knew were associated with infringement." *Cox*, 146 S. Ct. at 966. Replace "internet" with "Shopping" and "IP addresses" with "Merchant Center accounts" and the description fits Plaintiffs' theory to a tee. Such a theory cannot state an inducement claim against Google when it could not state one against Cox. *Id.* at 968 ("Holding Cox liable merely for failing to terminate Internet service to infringing accounts would expand secondary copyright liability beyond our precedents.").

And a theory premised on a duty to terminate "pirate merchants" is especially objectionable because it imports DMCA safe harbor obligations, *see* 17 U.S.C. § 512(i)(1)(A) (protecting service providers if they terminate repeat infringers "in appropriate circumstances"), into the standard for contributory *liability*. That contradicts the Supreme Court's recognition that "failure to qualify for the safe-harbor defense 'shall not bear adversely upon the consideration of a defense by the service provider that the service provider's conduct is not infringing.'" *Cox*, 146 S. Ct. at 965 (quoting § 512(*l*)). On Plaintiffs' theory, once Google knows (or should know) that an account belongs to a "pirate merchant," Google is *presumed* to have intended infringement facilitated by additional advertisements from that merchant, even those for which Google received no notices. Under any rational conception of "specific act[s]" that "actively encourage infringement," that cannot be the law.

## II.    PLAINTIFFS' BRIEF CONFIRMS SHOPPING IS NOT TAILORED TO INFRINGEMENT

Alternatively, Plaintiffs offer a half-hearted argument that Google "is also contributorily liable because its infringing shopping ads are 'tailored to infringement.'" Opp. 24. But this argument relies on an impermissible gerrymandering of the relevant Google "service."

Plaintiffs argue the relevant "provided service" for analyzing whether Google "tailored" that service to infringement is *each advertisement* for each allegedly infringing work—not the Shopping platform as a whole. *Id.* at 24-25; *id.* at 12-16 (defining the service as "the specific Shopping ad that promotes [each] infringing work"). But *Cox* is clear: Google "is contributorily liable for [users'] infringement only if it intended that *the provided service*"—i.e., Shopping—"be used for infringement." 146 S. Ct. at 967. If Plaintiffs were correct, the *Cox* Court would not have analyzed inducement at the level of Cox's provision of general internet service—it instead would have asked whether Cox had induced infringement through the provision of "internet service to repeat infringers." *Cf. id.* at 968 ("Cox provided *Internet service* to its subscribers, but it did not intend for *that service* to be used to commit copyright infringement.").

The relevant "service" is Google's Shopping platform—not individual advertisements. Plaintiffs do not dispute that there is only one "Shopping" service—it works identically whether advertisements are from legitimate sellers or alleged pirate sellers; whether advertising "non-infringing fishing-poles and garden-hoses" or "infringing ebooks." Opp. 2. Plaintiffs do not allege that Google designed any "component" of Shopping distinct or specific to the advertisements for allegedly infringing works that can be analyzed separately from its service as a whole. The Shopping platform is analytically no different than the "millions of identical Betamax video tape recorders" at issue in *Sony*. Opp. 24; *see Sony Corp of Am. v. Universal City Studios*, 464 U.S. 417, 442 (1984).

10

That distinguishes Google Shopping from the service at issue in *Nvidia*. *Cf.* Opp. 24-25. There, the question was whether a distinct and separable component of the product (specific "scripts"), in isolation, had substantial noninfringing uses. 2026 WL 1229583, at *6. The court concluded those discrete, separately analyzable components did not. *Id.* Here, Plaintiffs have no similar allegations. Their theory is that *the same* Shopping service available to all was misused by some users. That does not establish that Shopping lacks substantial noninfringing uses, and Plaintiffs therefore cannot plead contributory infringement on this theory either.

## III.    THE COURT SHOULD DISMISS THIS CLAIM NOW

Finally, Plaintiffs argue that "[t]he Court should decline to entertain Google's belated motion for judgment on the pleadings," and urge the Court to resolve contributory infringement "on a full trial record." Opp. 25. This motion is timely. Fed. R. Civ. P. 12(c) (motion should be "early enough not to delay trial"). *Cox* fundamentally clarified the standard for contributory infringement. Google filed its motion within weeks of that decision. More importantly, there is no benefit from delaying. Plaintiffs argue that *Cox* was decided on a full trial record and that *Grokster* was decided on summary judgment. Opp. 25. But the Court did not need the trial record in *Cox*, because its elimination of the material contribution theory was sufficient to resolve the case on the pleadings. *See* Dkt. 55, *UMG Recordings, Inc. v. Verizon Commc'ns Inc.*, No. 1:24-cv-05285 (S.D.N.Y. Apr. 22, 2026) (voluntarily dismissing post-*Cox*); Dkt. 713, *Concord Music Grp., Inc. v. Anthropic PBC*, No. 5:24-cv-03811 (N.D. Cal. May 15, 2026) (stipulating to dismissal). And Plaintiffs do not suggest the evidence resembles the record in *Grokster* here.

Plaintiffs' evidence—presumably the best they have—confirms this. The first document Plaintiffs cite contradicts their theory, since it states that the " ███████████████████ ███████████████████████████████████████████████ ████ ." Dkt. 803-1 at -9042. Second, of the "hundreds of thousands" of notices Plaintiffs

11

submitted, Dkt. 104, Hr'g Tr. at 54:6-7 (May 15, 2025), they were only able to identify

. *See* Dkt. 238 ¶ 14.  Trying to combat infringement but failing to succeed in

does not demonstrate intent to promote infringement.

Plaintiffs have had two years to discover evidence of specific acts intended to promote infringement using Google Shopping.  They've come up empty because there is none.

## CONCLUSION

Google's motion should be granted.

Dated: May 18, 2026

Respectfully submitted,

**LATHAM & WATKINS LLP**

*/s/ Sarang Vijay Damle*

Sarang Vijay Damle
Sarah A. Tomkowiak (*pro hac vice*)
Holly K. Victorson (*pro hac vice*)
Laura E. Bladow (*pro hac vice*)
Roberto J. Borgert (*pro hac vice*)
Brent T.F. Murphy (*pro hac vice*)
Sara E. Sampoli (*pro hac vice*)
Jennifer Ferrigno (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: sy.damle@lw.com
        sarah.tomkowiak@lw.com
        holly.victorson@lw.com
        laura.bladow@lw.com
        roberto.borgert@lw.com
        brent.murphy@lw.com
        sara.sampoli@lw.com
        jennifer.ferrigno@lw.com

Allison L. Stillman
Caroline F. Clarke (*pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: alli.stillman@lw.com
        caroline.clarke@lw.com

Joseph R. Wetzel
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: joe.wetzel@lw.com

*Attorneys for Defendant Google LLC*

13

**CERTIFICATION OF WORD COUNT**

I certify that the foregoing memorandum of law complies with the formatting and word limit requirements set forth in Rule 3.C of the Court's Individual Rules and Procedures for Civil Cases because it contains 3,497 words, excluding the cover page, table of contents, table of authorities, signature block, and certification of word count.  This memorandum of law also complies with the applicable formatting rules because it has been prepared in 12-point font and all text is double-spaced.

In preparing this certification, I relied on the word count of the Microsoft Word computer program used to prepare this memorandum of law.


Dated:  May 18, 2026                                   */s/ Sarang Vijay Damle*
                                                                Sarang Vijay Damle