**O+Z** | Oppenheim
**+ Zebrak, LLP**

WASHINGTON – NEW YORK

Danae Tinelli
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.851.4070
danae@oandzlaw.com

May 22, 2026

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
500 Pearl Street, Room 740
New York, NY 10007

> Re:  *Cengage Learning, Inc. et al. v. Google LLC*, No. 24-cv-04274-JLR-BCM
> **Plaintiffs' Letter Response in Opposition to Google's Letter Motion re**
> **Plaintiffs' Document Retention Policies (Dkt. 926)**

[Redacted]

Dear Judge Moses,

We represent all Plaintiffs. Without raising any actual issues regarding document retention, Google seeks to compel Plaintiffs to produce their document retention policies. As the Court has already made clear, this is "discovery on discovery," which is "disfavored. We shouldn't go there first. We go there as a last resort when things are really quite dire." Mar. 10, 2026 Hr'g Tr. 42:10-23. No such discovery is justified here.[1]

**I.      Google Has Not Met Its Burden to Obtain Discovery on Discovery.**

Google admits that it seeks Plaintiffs' retention policies to "evaluate the appropriateness of another spoliation motion." Mot. at 3. Google even refers to its prior spoliation motion (Dkt. 379) against McGraw Hill as a basis for this motion. Mot. at 3. But Google *fails to acknowledge* that the Court denied that motion. Dkt. 539. Indeed, this motion represents another attempt by Google to engage in a fishing expedition. Throughout this case, Google has moved the goal posts, demanding expanding and irrelevant discovery from Plaintiffs (while resisting important discovery itself). *See* Dkt. 510 (denying Google's motion to compel Plaintiffs to add search terms and expand RFPs). Avoiding such a result is precisely why courts "'closely scrutinize' requests for discovery on discovery,'" i.e., "'in light of the danger of extending the already costly and time-consuming discovery process ad infinitum.'" *Carambot v. NYC Health & Hosps. Corp.*, 2026 WL 112119, at *1 (S.D.N.Y. Jan. 14, 2026). Google faces a heavy burden. Relying on misrepresented facts and irrelevant arguments, Google fails to meet it.

---

[1] The Court made these statements at a hearing after which it granted Plaintiffs' motion to compel Google's retention policies. Dkt. 751. In contrast to Google's motion, Plaintiffs put forth specific evidence regarding gaps in Google's productions that likely were tied to document retention. *See* Dkt. 650. The Court also rejected Google's request to require Plaintiffs to produce their retention policies at that time. Mar. 10, 2026 Hr'g Tr. 95:1-2; 114:10-23.

Hon. Barbara Moses
May 22, 2026

### A.        Macmillan Learning ("Macmillan")

Google points to a 2019 email chain between ███████████ of Macmillan, ███ of McGraw Hill, and ███████ of Cengage (each employed in anti-piracy) related to notices that a vendor sent on behalf of these three Plaintiffs to Google Shopping. *See* Mot. at 1-2; Bladow Decl. Ex. 6 ("Email Chain").[2] The Email Chain consists of four documents, which were produced from ███████ files in August and October 2025.[3] For the first time at ██████ April 28 deposition, Google asked about the Email Chain and why it was not produced from ██. ██████ files. Declaration of Danae Tinelli ("Decl.") ¶4. ████████ did not know why, but she was familiar with the Email Chain and answered Google's substantive questions. *Id.*

When Google raised this matter after the deposition, Macmillan promptly investigated and learned that it did not produce the Email Chain due to "a limited issue regarding archived email files from the Macmillan legal department's transition from Outlook to Gmail in or about 2022." *See* Decl. ¶5. When ████████ emails were collected for this case, an archived file was not included due to human error. *Id.* ¶6. In complex cases such as this one, involving millions of documents, "no one could or should expect perfection . . . [a]ll that can be legitimately expected is a good faith, diligent commitment to produce all responsive documents." *Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings Inc.*, 2014 WL 584300, at *2 (S.D.N.Y. Feb. 14, 2014); *see also* Mar. 10, 2026 Hr'g Tr. 54:23-55:6 (Google's counsel arguing that a "good-faith effort" in discovery "occasionally produces mistakes….That's life. Life is not perfect.").

████████ is the only Macmillan custodian impacted by this issue. Decl. ¶6. Further, because she is in the legal department and reports to in-house counsel, the great majority of her documents are privileged. *See* Dkt. 305-1 (Plaintiffs' privilege log showing hundreds of entries for ████████). Macmillan promptly addressed this issue once it became aware of it. Macmillan is now in the process of reviewing any new emails for ████████ that hit on the search terms, and if there are any additional documents to produce, will do so promptly. Decl. ¶6. Crucially, for this motion, the matter has no relation to *document retention*.

### B.        McGraw Hill ("McGraw")

As to McGraw, Google claims that it raised issues regarding ████████████ files more than six months ago, but cites only to its motion to compel, which generically lists the number of documents produced per custodian. Mot. at 2. Google references two emails between ███ ████████ and Corsearch, a vendor McGraw used to send notices to Google ("Corsearch Emails"). Mot. at 3. Corsearch produced these and other documents in January 2026 in response to Google's subpoena. Decl. ¶7. Corsearch, as a third party, did not have the search terms. Indeed, the Corsearch Emails do not hit on the search terms that govern Plaintiffs' custodial production. *Id.* Google also raised these emails for the first time on May 6 *during* the parties' meet-and-confer

---

[2] This earlier-in-time notice program is unrelated to BCGuardian, the anti-piracy specialist retained by Plaintiffs' counsel.

[3] Google suggests that it does not have a copy of a "more inclusive email chain." Mot. at 2. This is not correct. Decl. ¶3.

Hon. Barbara Moses
May 22, 2026

regarding *sealing* for this motion. *Id.* Google claimed that Plaintiffs' motion for Google's retention policies was untimely. Dkt. 692 at 3. If that were the case, Google's motion is extremely untimely.

In addition, Google refers to a Corsearch Power of Attorney ("POA") document and speculates that it should have been maintained in and produced from a "central, non-custodial repositor[y]." Mot. at 3-4. However, the document is in fact attached to an email from █████ ████████ to Corsearch, and also does not hit on the search terms or fall within McGraw's agreed response to Google's RFPs. Decl. ¶9.

After Google raised the issue regarding the Corsearch Emails and POA, McGraw confirmed that they had been retained in █████████ files. *Id.* ¶10. In the course of checking this, McGraw learned that a third party it used to collect some files to send to Plaintiffs' e-discovery vendor inadvertently keyed in an incorrect date related to █████████ and Mr. McFadden's emails (not other types of documents or as to other custodians). *Id.* Accordingly, McGraw is in the process of reviewing any new emails for █████████ and Mr. McFadden that hit on the search terms, and if there are any additional documents to produce, will do so promptly. Again, this issue involved human error in a complex discovery case, but not *document retention*.

### C.    Digital Rights Management ("DRM")

DRM is technology that, amongst other things, protects digital works from being copied and further distributed. For Plaintiffs, the term implicates a wide range of business matters. Decl. ¶11. Unlike legitimate distributors, the pirate sellers distribute infringing copies of Plaintiffs' ebooks without DRM. Compl. ¶82-83. Although the pirates are obviously not "authorized distributors," Google insisted that Plaintiffs produce their authorized distributor agreements via non-custodial productions. Decl. ¶11. Relevance aside, to resolve the dispute, Plaintiffs agreed. *Id.* These agreements generally contain Plaintiffs' DRM guidelines, about which Google questioned Plaintiffs at their depositions. *Id.*

Google's argument about the DRM search-string[4] (or others) rests on the flawed premise that the number of hits is predictive of responsive documents that were not produced. *See* Mot. at 3. The Court has already rejected this argument. Mar. 10, 2026 Hr'g Tr. 102:15-21 ("[C]omparing numbers and giving me raw numbers is just not very helpful here."). Plaintiffs reviewed the documents and determined they were non-responsive. Decl. ¶12. For example, of 607 hits, 458 are from Cengage custodians, including █████████ . *Id.* With "piracy" in her title, any documents mentioning DRM hit on the search-string, but none were responsive. *Id.*

### D.    Document Counts, Dates in a Vacuum, and Other Litigation Does Not Support Google's Motion.

Google's snapshot of Plaintiffs' custodial productions mischaracterizes the record and omits critical context. Mot. at 3. First, Plaintiffs applied 18 search-strings across 25 custodians (not 10 across 22). Decl. ¶13. Second, Google's custodians "chart" ignores that the search terms

---

[4] This search-string is (piracy OR pirate OR illegal*) w/10 (DRM).

Hon. Barbara Moses
May 22, 2026

and date parameters begin January 1, 2020 for all but four search-strings.[5] Mot. at 4; Decl. ¶13. Third, the "earliest date sent" for custodians' emails says nothing about the earliest date for responsive emails. Mot. at 3. Fourth, the same is true for the number of custodial documents produced per custodian. Indeed, when Plaintiffs agreed to compromise to add search terms and custodians, they repeatedly explained that Google's proposed additions would likely yield unresponsive and/or duplicative information. *See* Bladow Ex. 1 at 3-4, 6. It is improper for Google to weaponize the foreseeable result of that compromise, namely that certain added custodians or search terms would yield few or no responsive documents, to attack Plaintiffs' productions.

Google's argument also suggests that Plaintiffs should have produced documents outside of the agreed upon subjects. That too is incorrect, and the Court has rejected Google's attempts to expand discovery into areas Google now suggests are responsive (e.g., broad antipiracy and marketing efforts). Jan. 13, 2026 Hr'g Tr 66:10-18 ("This is a case about Google Shopping. It's not a case about whether the plaintiffs have been injured by misconduct [on other platforms]…or the effectiveness of [their] antipiracy program…or how much money [they] lost" through other platforms). Google also points to the pirate suits, making the irrelevant argument that they "should have triggered a mandatory duty to preserve documents," but Google fails to acknowledge that Plaintiffs agreed to produce specific documents regarding the pirate suits, and points to no documents that Plaintiffs failed to preserve or produce in any event.[6] Mot. at 4; Decl. ¶15.

The above also is the entirety of Google's argument regarding Cengage and Elsevier. Google does not even attempt to argue why these Plaintiffs should be ordered to provide "discovery on discovery" and produce their retention policies.[7]

Lastly, Google's authorities are inapposite and do not support compelling Plaintiffs' retention policies. *See, e.g., Marcelletti v. GEICO Gen. Ins. Co.*, 2025 WL2828261, at *2 (W.D.N.Y. Oct. 6, 2025) (ordering policy production where an "underlying dispute over Defendant's redactions raise[d] fair questions" about discovery reliability); *Smalls v. New York Hospital Medical Center of Queens*, 2013 WL 12333083, at *6 (E.D.N.Y. Oct. 15, 2013) (finding a request for information about defendant's retention policies discoverable where plaintiff identified emails sent to defendant that had not been produced at all). Here, there is no such

---

[5] The four search-strings that begin on August 1, 2019 relate to anti-piracy enforcement (plus the names of the pirates at issue). Decl. ¶13. These terms would have little to no application to the custodians listed in Google's chart, who do not work in anti-piracy. *Id.* ¶14.

[6] Google's cited decisions discuss a duty to preserve that arose due to anticipation of litigation of that specific case, not a prior case, and are inapposite. *See, e.g., Anderson v. Sotheby's Inc.*, 2005 WL 2583715, at *4 (S.D.N.Y. Oct. 11, 2005); *Crown Castle USA Inc. v. Fred A. Nudd Corp.*, 2010 WL 1286366, at *10 (W.D.N.Y. Mar. 31, 2010); *Metrokane, Inc. v. Built NY, Inc.*, 2008 WL 4185865, at *4 (S.D.N.Y. Sept. 3, 2008).

[7] Google's argument that McGraw has "refused" to produce documents supporting its Chief Information Officer's prior declaration is false. Mot. at 3. This declaration discusses an unwritten practice concerning employees who leave the company – a fact which McGraw told Google. Dkt. 407-3 ¶3. Moreover, Google misleadingly cites its Dkt. 379 motion to argue that "McGraw Hill failed to preserve plainly relevant documents in anticipation of this litigation." Mot. at 3. That also is false, and the Court denied Google's motion. Dkt. 539.

4

Hon. Barbara Moses
May 22, 2026

underlying dispute, Plaintiffs have provided concrete explanations, engaged in ongoing remediation where needed, and demonstrated compliance with obligations and the ESI Protocol, and the documents at issue have been already produced.

## II.    Conclusion

Google has raised no issue regarding unretained documents and instead repeats its previously rejected contentions that Plaintiffs have not produced "enough" documents. Google's motion should be denied.

Respectfully submitted,

*/s/ Danae Tinelli*
Danae Tinelli
OPPENHEIM + ZEBRAK, LLP
*Counsel for Plaintiffs*