**Sarah A. Tomkowiak**
Direct Dial: +1.202.637.2335
sarah.tomkowiak@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

# LATHAM&WATKINS LLP

May 29, 2026

| FIRM / AFFILIATE OFFICES | |
| --- | --- |
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

**VIA ECF**

The Honorable Barbara C. Moses
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, New York 10007

> Re:   *Cengage Learning, Inc. et al. v. Google LLC*, No. 1:24-cv-04274-JLR-BCM
> Reply in Support of Google's Letter Motion for Pre-Motion Conference
> Regarding Plaintiffs' Document Retention Policies

Dear Judge Moses:

## I.    INTRODUCTION

Google has sounded the alarm about Plaintiffs' anemic productions since September 2025, but Plaintiffs repeatedly dismissed these now-substantiated concerns, claiming that the dearth of their productions was due to ineffective search terms.

Only after Google filed this Motion (its third raising concerns with Plaintiffs' productions) did Plaintiffs bother to consider that there might be errors in their document collection process. Plaintiffs' Opposition (Dkt. No. 964) admits that the deficiencies Google's Motion (Dkt. No. 926) identified with respect to the productions from Ms. B's and Mr. R's[1] files were the product of human errors.  Opp. at 2-3.  Plaintiffs further concede that–with thirty-four days left until fact discovery closes–these errors resulted in an untold number of documents that have not been reviewed and produced.[2]  *See, e.g.*, Opp. at 2.  Plaintiffs' delay in identifying these errors and continued lack of diligence to confirm whether Plaintiffs' sparse productions are the result of other errors has prejudiced Google, who is only learning of these missteps and receiving additional documents *after* deposing Plaintiffs' witnesses.

Google remains concerned that Plaintiffs have not produced, or failed to preserve, relevant documents, particularly from the earliest years relevant to this case.  Plaintiffs were actively engaged in litigation against alleged pirate sellers of their textbooks by November 2019.  Mot. at 4.  Those cases specifically alleged that those pirates advertised Plaintiffs' works on Google's

---

[1] To avoid burdening the Court with a sealing motion, the Parties agreed to identify Plaintiffs' employees by their last initial.  Google notes that Ms. B and Mr. R maintain public LinkedIn profiles identifying their employer and job title.

[2] Plaintiffs claim to have produced the missing documents in the last 24 hours.

LATHAM&WATKINSLLP

Shopping platform, and gave rise to a duty to preserve relevant data and documents regarding Plaintiffs' anti-piracy efforts and advertising on Google. Yet, none of the ten custodians identified in Google's motion have produced custodial documents dating back to January 2020, and eight of these custodians have produced no documents earlier than April 2021. Mot. at 4.

Plaintiffs attempt to shrug this off, but other than the two errors identified in their Opposition, Plaintiffs have identified no other errors that would explain these production gaps. And, Plaintiffs refuse to provide the retention policies that would show how long, in the ordinary course of business, relevant documents from 2020 or 2021 should have been retained. If relevant documents in these custodians' files should exist today pursuant to Plaintiffs' retention policies, that begs the question of whether other errors are responsible for their absence. If those custodial documents would have been deleted in ordinary course pursuant to standard retention policies, that begs the question of why those auto-deletion policies were not suspended in light of Plaintiffs' litigation against the pirates and then Google. If custodial emails were archived pursuant to policies, that begs the question of whether those archives were searched.

Plaintiffs' Opposition does not shed light on any of these questions, which are for another day. Ordering Plaintiffs to produce their retention policies is the first step to getting the answers Google is entitled to.

## II.    ARGUMENT

### A.    Plaintiffs Concede That Multiple Errors Led To A Failure To Collect and Review Responsive Documents

Plaintiffs claim that the deficiencies Google identified with respect to the productions from Ms. B's and Mr. R's files were the product of isolated "human error[s]" that bear "no relation to document retention." *See* Opp. at 2. Not so.

For example, Plaintiffs claim that the missing documents from Ms. B's productions were caused by Macmillan failing to collect responsive "archived email files" during discovery. *Id*. This relates to document retention because production of Macmillan's (and the other Plaintiffs') retention policies is necessary to enable Google to understand when and for how long email files are "archived" at Macmillan and whether other Plaintiffs also archive emails (that may have not been collected).

The fact that the identified deficiencies in Plaintiffs' productions were caused by human errors does not negate the need for Plaintiffs' retention policies.[3] If anything, these errors make

---

[3] Plaintiffs claim the documents produced by a third-party that are missing from Mr. R's productions do not present retention issues because they "do not hit on the search terms." Opp. at 2-3. But McGraw Hill's communications with the vendor hired to monitor and report intellectual property infringements to Google on McGraw Hill's behalf, clearly "fall[s] within McGraw's agreed response to Google's RFPs." Opp. at 3. With respect to the Power of Attorney that McGraw Hill failed to produce, Plaintiffs' claim that the document was "attached to an email from

LATHAM&WATKINS LLP

the production of Plaintiffs' retention policies even more necessary.[4]  Plaintiffs' retention policies may show that Plaintiffs should have retained, in ordinary course, documents from as early as 2019.  Yet, Google identified ten custodians across all Plaintiffs who have not produced documents dating back to August 2019.  Mot. at 4.  That would suggest that there may be more "errors" across all Plaintiffs that have yet to be investigated.  Indeed, Plaintiffs admit that at least one Plaintiff used an incorrect date to collect its documents.  But Plaintiffs have not investigated if similar "errors" may have impacted the search for documents from any other Plaintiff.  *See* Opp. at 2-3 (confirming Plaintiffs' investigation was limited to the custodians impacted by the identified errors).  Thus, contrary to Plaintiffs' contention, Opp. at 4, Google's concerns are not resolved by the identification of two errors impacting three custodians, and *all Plaintiffs* should be required to produce their retention policies.

Plaintiffs' only response is that the relevant time period for most search strings began in January 2020, not August 2019.  *See* Opp. at 3-4.  This distinction is meaningless:  none of the ten custodians identified in Google's motion have produced documents dating back to January 2020, and eight of these custodians have produced no documents earlier than April 2021.  Mot. at 4.

The absence of any justification for this discrepancy (and the unwillingness to produce retention policies[5]) is concerning.  Plaintiffs' privilege logs–and public court filings against the alleged pirates–demonstrate that Plaintiffs were actively engaged in litigation against the alleged pirates by November 2019 and preserved *some* documents from that time.  *See* Mot. at 4.  Those cases specifically alleged infringement, including with respect to the alleged pirates' advertisements on Google Shopping.  *Id*.  By that date, Plaintiffs would have been under a duty to preserve relevant documents and suspend any ordinary course retention policies.  *Id*.  In response, Plaintiffs claim that Google's cited cases are "inapposite."  Opp. at 4.  Plaintiffs miss the point:  Plaintiffs should have preserved relevant documents as well as suspended any automatic-deletion policies in connection with their lawsuits against alleged pirates.  Production of Plaintiffs' retention policies is necessary to enable Google to meaningfully evaluate whether Plaintiffs failed to take necessary steps to preserve relevant documents.[6]

---

Mr. R[]," Opp. at 3, which was similarly not produced, only highlights the gaps in Plaintiffs' productions.

[4] Plaintiffs' delay in even investigating whether any issues existed in their discovery process demonstrates that they have not made the "good faith, diligent commitment to produce all responsive documents uncovered when following the protocols to which the parties have agreed," as required by Plaintiffs' own cited authority.  *Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings, Inc*., 2014 WL 584300, at *2 (S.D.N.Y. Feb. 14, 2014); *see* Opp. at 2.

[5] McGraw Hill's claim that no written documentation of their retention policy exists is not supported by the declaration provided at Dkt. 407-3.

[6] Plaintiffs rely on the Court's denial of Google's prior spoliation motion to argue that the present motion, on an entirely different issue, should be denied.  Opp. at 1.  This reliance is misplaced: the Court's ruling regarding whether there was spoliation of two specific former employee (would-be custodians') documents that warranted sanctions is a separate issue from Plaintiffs' failure to

LATHAM&WATKINSLLP

Plaintiffs emphasize that courts "closely scrutinize" requests for "discovery on discovery" to argue that Google is not entitled to its requested relief. Opp. at 1. However, the single case Plaintiffs cite to support this point is entirely distinguishable from the circumstances here, where Google has already provided more than an "adequate factual basis" to justify its sought relief. *Carambot v. NYC Health & Hosps. Corp.*, 2026 WL 112119, at *1-2 (S.D.N.Y. Jan. 14, 2026) (denying motion regarding the preservation of recordings that the party had no basis to believe was ever created). As Plaintiffs concede, courts have granted requests for the production of a party's retention policies where there are fair questions about the thoroughness of a party's discovery process, including through the identification of emails that likely should have been produced. *See* Mot. at 5 (citing cases). Moreover, Plaintiffs do not claim that the production of their retention policies would be burdensome. When the burden of responding does not outweigh the benefit of production, courts generally permit discovery into a party's retention policies. *See id.*

**B.      Google Has Been Prejudiced By Plaintiffs' Failure to Timely Investigate**

Plaintiffs' Opposition turns a blind eye to the indisputable fact that Google has raised questions about Plaintiffs' deficient productions since September of 2025. *See, e.g.*, Dkt. 289 ¶ 23. Only after Google filed three motions related to those deficiencies[7] did Plaintiffs consider investigating if there were errors in their collection process, but even then, Plaintiffs have only undertaken such an investigation with respect to two of their twenty-five custodians.[8] Opp. at 2-3. Plaintiffs' attempt to twist their delay in investigating their discovery process into an argument that this Motion is untimely should be rejected. Opp. at 2-3. As detailed in Google's Motion, the particular issues regarding Ms. B's and Mr. R's files came to light only recently and Google promptly raised concerns regarding retention policies in connection with those issues. Mot. at 2.

Plaintiffs' Opposition fails to acknowledge the prejudice Plaintiffs have inflicted on Google by delaying their investigation. The parties are nearing the end of fact discovery and Google has deposed many of Plaintiffs' witnesses, including all three custodians for which Plaintiffs have confirmed there were issues, without any guarantee that Plaintiffs have produced all relevant documents in this case. In addition to the production of Plaintiffs' document retention

preserve, collect, and/or search all relevant data for all existing custodians. Moreover, the Court denied Google's prior motion in part because, after Google moved, Plaintiffs capitulated to Google's requested relief of adding a specific custodian, which largely remediated the spoliation at issue. Jan. 20, 2026 Hr'g Tr. 23:6-15; 38:2-10.

[7] The Opposition's reference to a different, prior motion to compel filed by Google omits the fact that Plaintiffs were not compelled to add additional search terms and custodians because Plaintiffs capitulated to most of the additional discovery that Google sought. Opp. at 1. Plaintiffs' claim that these added search terms and custodians "would yield few or no responsive documents," Opp. at 4, is contradicted by the fact that those later-added search terms and custodians have yielded more than double the number of custodial documents than Plaintiffs initially produced.

[8] Google agrees with Plaintiffs' count of total search-strings and custodians. The count of search-strings and custodians in the Motion did not account for search-strings agreed upon by the parties prior to January 2026 or custodians voluntarily added by Plaintiffs.

**LATHAM&WATKINS**LLP

policies, to cure this prejudice, the Court should consider other remedies, such as ordering Plaintiffs to reproduce Ms. B in her corporate capacity, Mr. R, and Mr. McFadden for supplemental depositions. Google also reserves the rights to seek costs, fees, and sanctions in the event that Plaintiffs have, in fact, failed to preserve relevant documents.

## III.    CONCLUSION

Plaintiffs' failure to preserve custodial files, assertion of privilege over documents from a period for which ten custodians have no produced documents, and failure to investigate until *after* Google deposed Plaintiffs' employees and filed the Motion create precisely the situation where discovery on discovery is necessary. Google will seek all appropriate relief. For now, Google respectfully requests that the Court order Plaintiffs to produce all data or document retention policies in effect from January 1, 2020 through March 31, 2025.

Respectfully submitted,

*/s/ Sarah A. Tomkowiak*
Sarah A. Tomkowiak (*pro hac vice*)
of LATHAM & WATKINS LLP

cc:    All Counsel of Record (via ECF)