

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
jkane@oandzlaw.com

June 1, 2026

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

> Re:    *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM
> **Plaintiffs' Letter Motion for Discovery Conference on Google's Refusal to
> Produce Rule 30(b)(6) Testimony on Certain Topics**

[Redacted]

Dear Judge Moses,

We represent all Plaintiffs in this matter. We write to request a discovery conference regarding Google's repeated and meritless objections to multiple critical 30(b)(6) topics. Google has refused to present a corporate witness on numerous fundamental issues, such as a Shopping feature that tracked how often users who clicked on the pirate ads at issue in the case actually purchased the counterfeit work, the total revenue Google earned from the pirates at issue, and documents showing that ███████████████████████████████ ███████████ "zero strike" policy. After issuing "updated" responses and objections to more than 25 topics nearly three months after Plaintiffs served their notice, and despite *nine* meet-and-confers, Google continues to obstruct moving forward on many of Plaintiffs' topics. Indeed, the extent of Google's objections is so numerous so as to preclude briefing all of them in a single letter motion. Attached hereto is a complete chart of the disputed topics. Plaintiffs request a hearing to review Google's objections and obtain rulings so that Plaintiffs may take appropriate discovery.

## I.    Legal standards

Rule 30(b)(6) allows for corporate testimony on "information known or reasonably available to the organization." FED. R. CIV. P. 30(b)(6). To prove contributory copyright infringement, a plaintiff needs to show that the defendant "induced the infringement or the provided service is tailored to that infringement." *Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 967 (2026) (citations omitted). "A provider induces infringement if it actively encourages infringement through specific acts." *Id.* (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 at 942 (2005).) "[E]ncouraging a particular consumer to infringe a copyright can give rise to secondary liability for the infringement that results." *Grokster*, 545 U.S. at 940 n.13. Intent is a fact-intensive determination that can be inferred "from statements and actions showing" the defendant's "objective." *Id.* at 941. Moreover, failing to comply with an internal policy can demonstrate intent. *Solomon v. Fordham Univ.*, No. 18-cv-4615, 2020 WL 7711697, at *12 (S.D.N.Y. Dec. 29, 2020) ("An employer's noncompliance with its own anti-discrimination policy may give rise to an inference of discriminatory intent."); Dkt. 971 at 8–9 (collecting cases).

Hon. Barbara Moses
June 1, 2026
Page 2 of 4

In determining statutory damages for copyright infringement, courts consider "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 127 (2d Cir. 2014) (citations omitted). The standard for trademark statutory damages is similar. *See*, *e.g.*, *Kaws, Inc. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A Hereto*, No. 22-cv-9073, 2023 WL 5717517, at *4 (S.D.N.Y. Sept. 5, 2023) (applying the copyright analysis for trademark damages).

## II.   Google must produce Rule 30(b)(6) testimony on how Google monitored, promoted, and financially benefited from Shopping ads.

Google possesses critical information about the pirate merchants with whom it was doing business. For example, Google tracked whether the users who clicked on its ads ultimately purchased the counterfeit ebooks (Topic 33 (conversion tracking)). This is important evidence of, e.g., direct infringement and damages. To determine which ad it would show in response to a given user query, Google conducted an "auction" where merchants, including pirates, placed bids. Google then has an "automated bidding" feature where Google would place bids on behalf of merchants, including known pirates (Topic 41), and provided the pirates with reports explaining how often they appeared, and who they competed against (Topic 49). This is relevant to damages and to countering Google's narrative that it could not have possessed the requisite intent because it is merely a "passive," "neutral" platform. Dkts. 843 at 20; 954 at 2. Google likewise possesses considerable information regarding the pirates' business operations, which likely revealed these operations' illegal nature, in addition to information Google had from Plaintiffs' notices. (Topic 56). This is relevant to Google's knowledge, which is relevant to intent and willfulness, and the need for deterrence. *See*, *e.g.*, *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 635 (S.D.N.Y. 2018) (jury reasonably determined that "only a large award would effectively promote deterrence" given "Defendants' lengthy history of infringement," where "evidence of willfulness was overwhelming").

Google also must present a witness to address several revenue-related matters. The jury will need to know the revenue that the Defendant entity, Google LLC, earned during the relevant period (Topic 42) from these pirates overall, and to understand how Google earned that revenue (Topic 44), so the jury can assess how much of an award is needed to deter Google from infringing again. It is likewise necessary to understand Google's financial incentive to continue infringement. And, Google must present a witness on any expenses it claims are associated with the piracy at issue (Topic 45); 17 U.S.C. § 504(b) (part of actual damages).

Google also must present a witness concerning its document retention policies so that Plaintiffs and the Court can understand what evidence would not have been retained (Topic 63). Google's policies are sufficiently nuanced that explanation from a witness is necessary.

## III.   Google must testify on how its DMCA policy was supposed to be implemented versus how it was implemented in response to Plaintiffs' notices.

Google refuses to produce a witness on several topics that relate directly to how Google handled notices, including from Plaintiffs.

Hon. Barbara Moses
June 1, 2026
Page 3 of 4

For example, Google ████████████████████████████████ █████████████████████████████████████████████████████ █ zero-strike policy ████████████████████████████████ . Dkt. 185 at 5–6. The Court ordered Google to provide discovery on this policy. Dkt. 221 ¶ (b)(ii). But Google refuses to produce a 30(b)(6) witness to address it (Topic 10). Likewise, when a rightsholder sent an infringement notice, but Google continued to advertise the infringing product, rightsholders like Plaintiffs often sent a follow-up notice. Google had a practice (and even a scripted response) of responding to these notices by threatening to stop processing all notices from that rightsholder if it continued sending "duplicative" notices. Dkt. 160 at 3–5. Google refuses to produce a witness on this issue (Topics 11 and 36(d)). Google likewise refuses to produce a witness to explain its criteria for ████████████████████████████████████████████████████ ████████████████████████████████ (Topic 18). Declaration of Attorney Jeff Kane ("Decl."), ¶ 8). Google refuses to present a witness to testify about the ████████████████████████ ██████████████████████████████████████████ (Topic 25). *See* Dkt. 593-8 at -0687. Google refuses to explain its practice of identifying ████████████████ (Topic 9), to provide a witness to testify about basic data concerning Google's DMCA program (Topics 13, 23), or about the listservs Google utilized for communications concerning piracy (Topic 62), two of which the Court ordered Google to treat as custodians (Dkt. 185 at 2–3; Dkt. 221 ¶ (a)(iii), (iv)). And Google refuses to produce a witness on spreadsheets evaluating how Google processed infringement notices, including several of Plaintiffs' notices (Topics 36(f) and (k)). All of this evidence goes to Google's liability and damages. That Google's DMCA policy was so conducive to infringement, and that Google failed to even follow that flawed policy, speaks directly to Google's intent, and to the need for damages. Dkts. 846, 971.

**IV.     Google must testify about ebooks piracy on Shopping.**

Google possesses ██████████ that it used to implement its ebook "ban," ████████ ████████████████████████████████████████████ Yet Google refuses to produce a witness to testify about this ██████████ database (Topics 27 and 28). And it refuses to present a witness to testify about the financial impact of the ebook "ban," either on legitimate sellers like Plaintiffs, or on Google itself (Topics 51 and 59(d)). Google's ebook ban, which Google in practice applied only to legitimate publishers, actively encouraged infringement, including because pirates didn't face competing ads from legitimate publishers. Yet Google refuses to present a witness to testify about Google's attempts to effectuate the ban or to ████████████████████████████████████████ ██████████████████████████ (a solution Plaintiffs had long urged Google to implement) (Topics 60(b)–(c), 61). And Google refuses to present a witness to testify about problems of ███████████████████████████ ), and ████████████████████████████████████████ that Google claims to have investigated (Topic 38).

All of this is evidence of Google's knowledge and statements about, and actions concerning, ebooks piracy on Shopping, including specifically in response to concerns expressed by Plaintiffs. Google's knowledge that its ebooks ban was only blocking legitimate ads but not pirate ads, what Google was able to do using that knowledge, and how it eventually acted despite that knowledge and capability, bears squarely on its intent. *Supra* §I; *Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 431 (S.D.N.Y. 2011) (defendant's decision "not to implement any

Hon. Barbara Moses
June 1, 2026
Page 4 of 4

meaningful infringement-reduction strategies" was "a strong indicator of intent to foster infringement").

**V.      Google must testify on its knowledge regarding Plaintiffs' Trademarks.**

Finally, Google refuses to produce a witness to testify about whether Google utilized a tool with which it "████████████████████████████████████ ████████" in any way in enforcing its trademark, counterfeit and DMCA policies (Topic 70). This testimony will shed light on Google's actual knowledge of, or willful blindness toward, its infringement of Plaintiffs' trademarks. *See* 15 U.S.C. § 1114(1)(b) (knowledge required for damages); *Fendi Adele S.r.l. v. Ashley Reed Trading, Inc.*, No. 06-cv-0243, 2010 WL 11586410, at *6 (S.D.N.Y. Aug. 12, 2010) ("[W]illful blindness is equivalent to actual knowledge for purposes of the Lanham Act.") (citations omitted).

**VI.      Plaintiffs request a conference with the Court to discuss Google's objections.**

Plaintiffs have met and conferred with Google *nine* times regarding Plaintiffs' 30(b)(6) notice, and have reached agreement on several disputed issues. Decl. ¶ 6. Unfortunately, Google has delayed the presentation of the remaining issues to the Court. Google took 38 days to deliver its responses and objection to Plaintiffs. *Id.* ¶ 3. Google then substantially revised its R&Os on April 21, 2026, changing its response to at least 26 topics. Decl. ¶ 5. During conferrals, Google's counsel repeatedly claimed it would take Plaintiffs' positions back to Google and revert with Google's response, only to take weeks to provide its revised position, if at all. Decl. ¶ 7. Indeed, there remain several issues on which Google has yet to revert with its revised position. *Id.*

Because the disputed topics are numerous and often grounded in specific documents produced in this case, Plaintiffs respectfully submit that Plaintiffs are unable to provide detailed briefing for each disputed Topic within this Court's 2,000-word limit for discovery motions. *See* Ind. R. § 2(b). For the efficient resolution of the disputed topics, Plaintiffs seek a discovery conference with the Court, wherein the parties may present their positions with respect to each topic in greater detail. Should the Court prefer more fulsome briefing for each disputed topic, Plaintiffs respectfully seek the Court's leave to file the full briefing with an expanded word limit of 4,000 words.

In the attached Exhibit 1, Plaintiffs have identified (1) the disputed topics, (2) Google's written responses, (3) any different position Plaintiffs understood Google to have taken during or following conferrals, and (4) Plaintiffs' requested relief.

Plaintiffs respectfully request that the Court conduct a discovery hearing to resolve the parties' dispute concerning the topics at issue in Ex. 1.

/s/ *Jeff Kane*
Jeff Kane

*Counsel for Plaintiffs*