# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; ELSEVIER INC.; ELSEVIER B.V.; and MCGRAW HILL LLC, <br><br> Plaintiffs, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No. 24-cv-04274-JLR-BCM <br> ***Contains materials marked Confidential or Attorneys' Eyes Only pursuant to a protective order*** <br><br> ***Shared with Defendant Google LLC solely pursuant to, and for the purposes described in, Order at Dkt. 510 *** |

## PLAINTIFFS' RULE 30(b)(6) NOTICE OF DEPOSITION TO DEFENDANT

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs will take the deposition of Defendant Google LLC ("Google"). Pursuant to Rule 30(b)(6), Google is directed to designate one or more of its officers, directors, managing agents, or other persons to testify on its behalf who have knowledge reasonable to it on the matters set forth in the topics listed below. Google has a duty to promptly meet and confer in good faith about the matters for examination and to designate each person who will testify. The deposition will commence at the office of Oppenheim + Zebrak, LLP, 461 5th Avenue, 19th Floor, New York, NY 10017, on April 16, 2026, beginning at 9:30 a.m. ET and continuing from day-to-day until concluded, or may be continued until completed at a future date or dates. The deposition will be taken before a notary public or other officer authorized by law to administer oaths and will be recorded by both stenographic and videographic means. Pursuant to the Court's order at Dkt. 510

1

¶ 6, Plaintiffs have made a good-faith effort to identify all topics that Plaintiffs will cover in their 30(b)(6) deposition. However, Plaintiffs reserve the right to supplement or amend this Notice at a later time, per Dkt. 510 ¶ 6 and Hr'g Tr. 119:23–126:12 (Jan. 13, 2026).

## DEFINITIONS AND INSTRUCTIONS

Unless otherwise indicated, the following definitions apply to these requests:

1.    Unless otherwise specified, capitalized terms used herein have the same meaning as the definitions for those terms set forth in the Amended Complaint (Dkt. 38).

2.    "1,500 Pirate Websites" and "Pirate Websites" refer to the 1,500 pirate websites Plaintiffs identified to Google on December 24, 2024 and October 24, 2025.

3.    The term "Action" refers to the lawsuit, *Cengage Learning, Inc. et al., v. Google LLC*, No. 1:24-cv-04274, in the United States District Court for the Southern District of New York.

4.    The term "Ads Account Data" refers to the data that Google produced showing the Ads accounts associated with merchants that are associated with the 1,500 Pirate Websites, including the data contained in GOOG-CENG-00419904.

5.    "Ads Data" refers to records Google produced purporting to show the dates on which offers contained in the Offer Data were displayed to Google users as ads, including, e.g., Google's twentieth and forty-fifth productions.

6.    The term "any" should be understood to include and encompass "all" and vice versa, and the term "or" should be understood to include and encompass "and" and vice versa.

7.    The term "███████" refers to the ████████████████████ ██████████, as described in GOOG-CENG-00441959.

8.    The term "concerning" means relating to, referring to, describing, evidencing, or constituting.

2

9. The term "Copyright Policy" refers to any Google policies, practices, procedures, or processes concerning copyright-related Infringement Notices, Your obligations under or efforts to comply with copyright law, or that otherwise concern copyright law, including the DMCA.

10. The term "Counterfeit Goods" refers to "[a] product that uses a trademark, logo, or unique design that is identical to or substantially indistinguishable from that of the brand owner," as defined by Google's internal document in GOOG-CENG-00404388 at -4392.

11. The term "describe" means to provide a complete description and explanation of the requested subject matter, including, as applicable, persons and dates involved in the subject matter at issue.

12. The term "DMCA Policy" refers to any Google policies, practices, procedures, or processes concerning Google's obligations under, intended compliance with, or efforts to qualify for a safe-harbor defense under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, with regard to Shopping Ads or the activities of Shopping Ads Merchants, including as described in GOOG-CENG-00000001, GOOG-CENG-00000683 and GOOG-CENG-00000685.

13. The term "Ebooks" refers to books, test banks, or solutions manuals in electronic or digital form, including PDF, EPUB, or other electronic or digital file format.

14. The term "Ebooks Ban" refers to Google's policies, practices, procedures, or processes to disallow Paid Ads for Ebooks, including as described in GOOG-CENG-00423343 at -3417.

15. The term "Ebooks Piracy" refers to the advertisement and/or sale of Ebooks, through Google Shopping, by a Shopping Merchant who is not authorized to reproduce, sell, or otherwise distribute such Ebooks or reproduce or otherwise use the trademark displayed on such Ebooks.

3

16.     The term "Google Shopping" refers to Google's Shopping platform, including as described in Google's webpages beginning at https://www.google.com/shopping and as referenced as "Google's Shopping platform" or "Shopping platform" in Google's Amended Answer, Dkt. 271 throughout.

17.     The term "includes" or "including" should be understood to mean "including but not limited to."

18.     The term "Infringement Notice" refers to a notice sent to Google informing Google that one or more Shopping Ads Merchants allegedly infringed a copyright or trademark, or that one or more Shopping Ads allegedly advertised an infringing product, including a notice sent pursuant to the DMCA.

19.     The term "Merchant Account Data" refers to data that Google produced listing account numbers, merchant or account identifying information, account creation/suspension dates, domains with which Merchant Center accounts presently or previously were associated, or other similar information for Merchant Center accounts, including the data contained in GOOG-CENG-00000703, GOOG-CENG-00000704, GOOG-CENG-00392941, GOOG-CENG-00392942, GOOG-CENG-00403547, GOOG-CENG-00618604, and GOOG-CENG-00618605.

20.     The term "Merchant Center" refers to the Google Merchant Center.

21.     The term "Notice and Response Data" refers to the notices of infringement and responses contained in, e.g., in Google's seventh, ninth, twelfth, fifteenth, seventeenth, and forty-sixth productions.

22.     The term "Notice and Response Data Spreadsheets" refers to spreadsheets Google produced listing notices of infringement Google received, and actions taken in response to those notices, including GOOG-CENG-00380265, GOOG-CENG-00380266, GOOG-CENG-

00380267, GOOG-CENG-00380268, GOOG-CENG-00392939, GOOG-CENG-00392940, GOOG-CENG-00403539, GOOG-CENG-00403540, GOOG-CENG-00403541, GOOG-CENG-00403542, GOOG-CENG-00403543, GOOG-CENG-00403544, GOOG-CENG-00403545, GOOG-CENG-00404296, and GOOG-CENG-00599177.

23.    "Offer Data" refers to records Google produced purporting to show the "offers" associated with certain domains or Merchant Center accounts, including, e.g., in Google's sixth, fourteenth, and fortieth productions.

24.    The term "Plaintiffs" refers individually or collectively to Cengage Learning, Inc. ("Cengage"), Bedford, Freeman & Worth Publishing Group, LLC d/b/a Macmillan Learning ("Macmillan Learning"), Elsevier Inc., Elsevier B.V. (together with Elsevier Inc., "Elsevier"), Macmillan Holdings, LLC (together with Macmillan Learning, "Macmillan"), and McGraw Hill LLC ("McGraw Hill").

25.    The term "Process" and its cognates, with respect to an Infringement Notice, used as a verb or a noun, means to receive/the act of receiving the notice, review/the act of reviewing the notice, and to take/the act of taking an action in response to the notice, including recording the notice; ███████████████████████████████████; forwarding the notice to or otherwise informing the Shopping Ads Merchant of the notice; suspending, terminating, reinstating or reactivating the Shopping Ads Merchant's Merchant Center account, Google Ads account, or advertising privileges; or issuing a warning to the Shopping Ads Merchant.

26.    The term "Repeat Infringer Policy" refers to any Google policies, practices, or procedures, or processes concerning Google's obligations under, intended compliance with, or efforts to qualify for a safe-harbor defense under the DMCA, with regards to Google platforms other than Google Shopping.

27.    The term "Shopping Ads" refers to advertisements on Google Shopping that include product images, including "product listing ads," and including Free Ads and Paid Ads.

28.    The terms "Shopping Merchant" or "Shopping Ads Merchant" refer to any Google user who advertises or whose products are advertised in Shopping Ads.

29.    The term "Trademark Policy" refers to any policies, practices, procedures, or processes You have concerning trademark-related Infringement Notices, Your obligations under or efforts to comply with trademark law, or that otherwise concern trademark law or Counterfeit Goods. This includes the policy set out at GOOG-CENG-00000372.

30.    The terms "You," "Your," "Defendant," and "Google" refer to Google LLC, its parents, subsidiaries, affiliates, officers, directors, agents, employees, and any other person or entity currently or previously acting or purporting to act on its behalf.

31.    Where a document is cited in this Notice, Plaintiffs have made a good-faith attempt to assign the document to the most relevant topic. If, however, a document more properly should be considered part of a topic other than the one to which it is assigned here, Google should so inform Plaintiffs. Likewise, the citing of a document with respect to a particular topic is not an indication that no other documents are relevant to that topic, including because document production is ongoing.

TOPICS FOR DEPOSITION

**TOPIC NO. 1**

The members and function of all teams within Google responsible for Google Shopping as it pertains to the Ebooks Ban; Your DMCA Policy, Copyright Policy, and Trademark Policy; and Processing Infringement Notices, including: ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, Engineering, Legal, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆

6

██████████████████████████████████████████ ), Sales, ████████████████ , Strategic Partnerships, ██████████████████████████████████████████, and the team "primarily responsible for implementing policy enforcement on the Google Shopping Platform," (Dkt. 59, ¶ 2).

**TOPIC NO. 2**

The major features and functionalities of Google Shopping, including the evolution of and significant changes to the platform from January 2020 to March 2025.

**TOPIC NO. 3**

The major features and functionalities of Google Ads, including the relations and distinctions between Google Ads and Google Shopping from January 2020 to March 2025.

**TOPIC NO. 4**

The relationship and distinctions between Google Search and Google Shopping from January 2020 to March 2025.

**TOPIC NO. 5**

The terminology Google uses as related to its DMCA Policy or Copyright Policy, including the meaning of the following terms (or alternative forms or conjugations of these terms): "suspend"; "account suspension"; "terminate"; "delist"; "deindex"; "disable"; "account holder"; "Domain Status" (*see, e.g.*, GOOG-CENG-00461806, ██████████████████████████ ██████████████████████████████████████████ "merchant account"; "merchant shopping account"; ██████████████████ "remove"; "strike"; ████████████ ████████████ ; and "zero strike".

**TOPIC NO. 6**

The extent to which a merchant's status as a/an ███████████████████

████████████████████; the merchant's volume of advertisements on Google; or other

features or aspects of the merchant's value or revenue to Google are considered in determining

whether to suspend, terminate, or take other action as to the merchant, including whether such

status results in escalation of matters related to the account.

**TOPIC NO. 7**

Google's policies, practices, procedures, processes, or other efforts concerning identifying

and/or taking action with respect to any Shopping Ads Merchants or their Google accounts who

run Shopping Ads or otherwise use Google Shopping in a manner that violates one or more Google

policies, including Your DMCA Policy, Copyright Policy, or Trademark Policy.

**TOPIC NO. 8**

Google's policies, practices, procedures, processes, or other efforts concerning identifying

and/or taking action with respect to the "████████████████████████

████████████████████████" outside the Shopping platform, including as

referenced in GOOG-CENG-00474324 at -4328.

**TOPIC NO. 9**

Google's policies, practices, procedures, processes, or other efforts concerning identifying

and/or taking action with respect to:

    a.  Identifying "██████" and/or "██████" (*see, e.g.,* GOOG-CENG-00419029 at -

       9029);

b. Identifying "███████" and the "█████████████████████" (*see, e.g.*, Google's "Legal Removals Copyright Strike Policy for Google Ads & Shopping", GOOG-CENG-00000688, GOOG-CENG-00441738, GOOG-CENG-00408671 at -8671).

**TOPIC NO. 10**

Any DMCA Policy in effect during the period from January 2020 to October 2025, including any DMCA Policy involving "zero strike" or "Shopping Zero Strike Tab of the ████ as referenced in GOOG-CENG-00415345 and GOOG-CENG-00415327, and/or involving █████ ██████████ as referenced in GOOG-CENG-00441738, and including but not limited to with respect to the following:

a. The month and year that Google adopted and implemented each DMCA Policy;

b. When and how Google informed its users of each DMCA Policy, including pursuant to 17 U.S.C. § 512(i)(A);

c. To the extent not addressed under Topic Nos. 5 and 6, the definitions of terms set forth in each DMCA Policy; including, for the DMCA Policy described in GOOG-CENG-00000758 at -0758, what it means for ██████████████████████ ██████████████████████████████████;

d. To the extent not addressed under Topic Nos. 5 and 6, under each DMCA Policy, the scope and effect of account restriction, suspension, or termination as applicable, including whether the DMCA Policy restricts, suspends, or terminates any Merchant Center accounts, Google Ads accounts, or other Google accounts currently or previously associated with the same Shopping Ads Merchant;

e. How each DMCA Policy operates on a step-by-step basis, and any rationale underlying each step, including how ████ ██ ███ █ █

9

███████████████████████" (GOOG-CENG-00439752.C, and all prior versions (GOOG-CENG-00439609 through GOOG-CENG-00439618) and GOOG-CENG-00000761), how suspensions are initiated and by whom, how long it takes for the suspension to come into effect once initiated, the personnel that approves or oversees the suspension, how any exceptions (e.g., with respect to ██████████████████ ████ ██████████) are evaluated and applied, how suspended accounts are reinstated/reactivated, and the role of Google's in-house counsel in each step;

f.  Any criteria, requirements, or considerations Google analyzed when it reviewed an account for suspension and the rationale for those considerations, including considerations of the revenue Google derived from specific Shopping Ads Merchants as described in GOOG-CENG-00441738 below "██████████████████████ ██████";

g.  Whether and to what extent Google's DMCA Policy, or other policies, practices, procedures, or processes concerning Merchant Center account or Google Ads account suspension or termination, included efforts to determine whether specific Merchant Center accounts or Google Ads accounts are owned or controlled by a common account holder;

h.  How Google determines whether an Infringement Notice "abuses" the DMCA Process and how Google responds to such Infringement Notices, including any circumstances where the same notice-sender sends two or more Infringement Notices concerning the same URL for a landing page to which a Shopping Ad links, as described in Dkt. 38 ¶ 110, PL0000188745, PL0000188757, and PL0000188783;

i.  The data contained in GOOG-CENG-00429457, and the meaning of all fields contained therein;

j.  Google's rationale(s) underlying the deprecation or modification of each previous DMCA Policy in favor of each new DMCA Policy during the stated time period.

**TOPIC NO. 11**

Any practice of Google responding to Infringement Notices by warning the sender of the notice not to send duplicate notices, i.e., a notice naming the same landing page URLs as a previous notice from the same sender. GOOG-CENG-00420452; This includes any data Google produced concerning its sending of such responses, including GOOG-CENG-00419903.

**TOPIC NO. 12**

The factual basis for any argument or defense Google intends to raise regarding "fraudulent" Infringement Notices, i.e., Google's receipt of Infringement Notices that Google suspects or claims may have been sent to Google by someone other than the rightsholder (or authorized representative of the rightsholder) named in the notice. *See, e.g., Google LLC v. Nguyen Van Duc et al.*, 5:23-cv-05824, Dkt. 1 ¶¶ 31–33, 38 (N.D. Cal.) (Nov. 13, 2023).

**TOPIC NO. 13**

In instances where Google did not apply a DMCA Policy to an Infringement Notice:

a.  Whether and how Google applied any different policy, practice, procedure, or process concerning Google's obligations under, intended compliance with, or efforts to qualify for a safe-harbor defense under the DMCA, intended for another Google platform; and

b.  Whether that Infringement Notice resulted in a delisting of the noticed Shopping Ad and/or the restriction, suspension or termination of a Merchant Center account,

11



including the notices listed in the spreadsheet titled "██████████████████████ ██████████████████" that have a value other than "████████" in the "███████" field.

**TOPIC NO. 14**

The circumstances under which Google will review or check the landing page to which a Shopping Ad links for compliance with Google policies, including when and how such a review is conducted, and whether and where the results are recorded.

**TOPIC NO. 15**

Any differences between the scope and effect of a "██████████████," a "██████████████," and a "██████████," as differentiated in, for example, GOOG-CENG-00466043 at -6048 (reference to ██████████████"), -6053 (reference to "██████████████"), and -6055 (reference to "██████████").

**TOPIC NO. 16**

Google's adoption(s) of intellectual property-related policies for the advertisement or sale of Ebooks, as well as Google's rationales and considerations underlying such adoption(s), for Google platforms other than Google Shopping, including:

a. "████████████████████████████████████████████████", as described in GOOG-CENG-00468131 at -8132;

b. The policy adopted for Google Play, whereby "████████████████████████" is "████████████████," as described in GOOG-CENG-00407052 at -7052–53.

**TOPIC NO. 17**

The Repeat Infringer Policies for Google platforms other than Google Shopping, and Google's considerations and rationales underlying its adoption of these Repeat Infringer Policies,

12

including how and why they differ from those adopted for Google Shopping. *See, e.g.,* GOOG-CENG-00431947 (referencing policies for other platforms); GOOG-CENG-00433652.

**TOPIC NO. 18**

Whether and how account restriction, suspension, reactivation/reinstatement or termination of a user pursuant to Repeat Infringer Policies for Google platforms other than Google Shopping affect the Merchant Center account(s) associated with that same user.

**TOPIC NO. 19**

Google's policies, practices, procedures, or processes, and the implementation of such policies, practices, procedures, or processes, for responding to Infringement Notices or other complaints regarding a Shopping Ad or a Shopping Ads Merchant that implicate Google's DMCA Policy or Copyright Policy in instances also involving other alleged violations of Google's policies, practices, procedures, or processes, including violation of any Trademark Policy. This includes the use of automated tools or systems, or any tools or systems involving artificial intelligence and machine learning.

**TOPIC NO. 20**

Google's policies, practices, procedures, or processes for applying account restriction, suspension, or termination to Merchant Center accounts or other accounts associated with Shopping Ads Merchants for reasons other than violation of any DMCA Policy, including for violation of other Google's policies, practices, procedures, or processes, including a Shopping Ads Merchant's failure to timely pay Google, or for any reasons reflected in, e.g., GOOG-CENG-00439755. This includes the use of automated tools or systems, or any tools or systems involving artificial intelligence and machine learning.

13

**TOPIC NO. 21**

Google's policies, practices, procedures, or processes concerning the internal "escalation" of complaints from copyright-holders and trademark-holders concerning Google's responses (or a lack thereof) to Infringement Notices, including escalations between lower-level and higher-level Google personnel (such as full time employees ("FTEs") or executives) and collaboration between or consultations among personnel from Google's Engineering, ██████████, Legal, ████, ████████████████████████████, Strategic Partnerships, and Sales departments, as referenced in, e.g., GOOG-CENG-00405296 at -5329. This includes:

    a.  Escalations that occur "███████████████████████████", as referenced in, e.g., GOOG-CENG-00000683 at -0687 ████ █ ████████ ████ █ ████ ███████████████████████████████████ ████████ ");

    b.  Escalation of complaints to or from higher-level Google personnel, specifically including managers, directors, and vice presidents (*see e.g.*, GOOG-CENG-00405333 at -5335);

    c.  Escalations of Infringement Notices for instances of suspicious activity; and

    d.  The purpose and use of the "██████" (*see, e.g.*, GOOG-CENG-00429643 at -9644).

**TOPIC NO. 22**

Google's policies, procedures, practices, or processes concerning the reinstatements and reactivations of accounts that were suspended or terminated for copyright infringement, including the criteria Google used to determine whether a suspended or terminated website or account should be reinstated or reactivated. This includes data Google produced concerning reactivations or

14

reinstatements, including GOOG-CENG-00419910 and GOOG-CENG-00439756, including which category(ies) in column A in GOOG-CENG-00419910 relate to copyright infringement.

**TOPIC NO. 23**

Google's data concerning its overall DMCA program (i.e., not limited to the 1,500 Pirate Websites) including data contained in GOOG-CENG-00419902, GOOG-CENG-00419903, GOOG-CENG-00419905, GOOG-CENG-00439755, and data that Google will produce subsequently, including in accordance with Dkts. 472 and 510 ¶ 5 by March 6, 2026.

**TOPIC NO. 24**

The number and circumstances of any terminations (as opposed to suspensions) of Shopping Ads merchants or accounts pursuant to Google's DMCA Policy.

**TOPIC NO. 25**

The meaning of any designation or description of a website, domain, Merchant Center account, or Google Ads account as '███████████████████ including the actions that can be taken or consequences that can result from such a designation or description. This includes any actions taken as a result of a ████████████ designation (as referenced in, e.g., GOOG-CENG-00388352, ████████████████████) or designation of the 1,500 Pirate Websites, and the data contained in GOOG-CENG-00000757 ('████████████').

**TOPIC NO. 26**

The meaning of any designation or description of a Pirate Website or Merchant Center account or Ads account as '████████████" (as referenced in, e.g., GOOG-CENG-00388352, ████████████████████"), including the actions that can be taken or consequences that can result from such a designation or description, and including any actions taken as a result of a ████████████ designation or description of the 1,500 Pirate Websites.

15

**TOPIC NO. 27**

Google's ▇▇▇▇▇ tool/interface/database, including all ▇▇▇▇▇ fields and signals and how these fields are retrieved, evaluated, and used (e.g., ▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ etc.), and including any reviews, assessments, or evaluations that are evaluated within or with respect to ▇▇▇▇, as shown in, e.g., any "▇▇▇▇▇▇▇▇" and "▇▇▇▇▇▇▇" as described in GOOG-CENG-00605191.

**TOPIC NO. 28**

The nature and categories of ▇▇▇▇ data and analyses concerning the 1,500 Pirate Websites and whether it was used to take any action concerning their Merchant Center accounts, Google Ads accounts, or Shopping Ads that link to their websites.

**TOPIC NO. 29**

Data concerning Merchant Center accounts, Shopping Ads Merchants, and/or Shopping Ads that Google determined were implicated by Plaintiffs' Infringement Notices, including the meaning of the data fields contained in the following files, the sources of this data, and Google's methodology and process for locating and producing it. This includes:

    a.  The Merchant Account Data, including Christophe Weibel's claims in Dkt. 59, and GOOG-CENG-00404297;

    b.  The Offer Data and the Ads Data, including:

        i.  The meaning of all field names (e.g., ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇");

16

ii. The meaning of the file names contained in this data (e.g., "███████"

(GOOG-CENG-00479526) versus "███████████" (GOOG-CENG-

00479529));

iii. The format of all values (e.g., values that list "██████████" as 1,000,000);

and

iv. Generally how the data contained in these records is tracked by Google's

systems;

c. The Notice and Response Data, including the Notice and Response Data Spreadsheets.

**TOPIC NO. 30**

The "██████████████████████" (GOOG-CENG-00439752.C, and all prior versions

(GOOG-CENG-00439609 through GOOG-CENG-00439618) and GOOG-CENG-00000761),

including the methodology by which it is compiled and maintained, whether Google's practice is

to delete information from it, and the date through which each file was updated.

**TOPIC NO. 31**

With respect to any DMCA Policy in effect during the period from January 2020 to October

2025:

a. The purpose, features, functions, and manners of use of any tools, databases, or

programs used to implement the DMCA Policy (e.g., Buganizer, █████████

███████ ██████ ████████████ ██████ ██ ██████ ██

██████████████████████ as mentioned in Google's DMCA Policy);

b. The use of automation in implementing any part of the DMCA Policy or Processing

Infringement Notices, including the use of automation in the decision to delist or not to

delist any specific Shopping Ads;

17

c.  The use of manual processes in implementing any part of the DMCA Policy or Processing Infringement Notices, including a description of the use of the LR Manual Strike Spreadsheet;

d.  Google's use of third-party vendors to Process Infringement Notices, including the scope of such use; Google's provision of training, feedback, and supervision to third-party vendors and their employees; and Google's evaluation of such third-party vendors and their employees' performance, productivity, or effectiveness;

e.  Description and role of all Google's personnel (including in-house counsel), in implementing any aspect of any DMCA Policy, including escalation of accounts and account reinstatements;

f.  Google's process and timing for delisting the landing pages contained in Shopping Ads pursuant to any DMCA Policy; and

g.  Whether any landing page delisted pursuant to any DMCA Policy is also delisted from or restricted on any other Google platform.

**TOPIC NO. 32**

The file GOOG-CENG-00441970 (which Plaintiffs understand to concern ████████████),
including the meaning of each field in the "██████" column, and how the entries included in this file were selected.

**TOPIC NO. 33**

Google's "conversion tracking" feature for Google Shopping, including generally how "conversion tracking" is accomplished, what merchants must do in order to utilize conversion tracing, any Google features or services for which use of "conversion tracking" is required, Google's tracking of whether merchants utilize conversion tracking, and generally how Google

uses data it obtains from conversion tracking to inform Google's practices or to improve its products and services.

**TOPIC NO. 34**

The Infringement Notices Google received from or on behalf of Plaintiffs, and Google's responses to and handling of such notices, including:

a. Communications between Google and Plaintiffs or any Plaintiff, or any representative or agent acting on behalf of any Plaintiff, concerning the Infringement Notices or copyright or trademark infringement;

b. The universe of Pirate Sellers identified in Infringement Notices Google received from or on behalf of Plaintiffs, including how Google identified those Pirate Sellers;

c. Infringement Notices Google received from third parties concerning the Pirate Sellers identified in Infringement Notices Google received from or on behalf of Plaintiffs;

d. Counternotices, appeals, or other objections that Google received from the Pirate Sellers concerning Infringement Notices from Plaintiffs or their agents or representatives, such as BCGuardian, LLC ("BCGuardian") or Covington & Burling LLP;

e. Any different treatment that Google applied to Infringement Notices received from or on behalf of Plaintiffs, i.e., treatment or responses that differed from Google's DMCA Policy.

**TOPIC NO. 35**

For each of the 1,500 Pirate Websites:

19

a. Google's communications with the operator of the website, email address for the website, or other contact for the website, such as those listed in the corresponding Merchant Center or Ads accounts;

b. Any sales representatives, account managers, account strategists, or other Google representatives assigned to or who otherwise worked with the Pirate Websites;

c. Any analyses, checks, evaluations, or other reviews Google conducted of the Pirate Website's Google accounts, including their Merchant Center and Ads accounts;

d. Any decision Google made to suspend (or not to suspend) or terminate (or not to terminate) any Google account connected to the Pirate Website;

e. Any instance in which a Google account of the Pirate Website was reinstated or reactivated after being suspended or terminated; and

f. Any instance in which Google determined that a Pirate Website was operating multiple Merchant Center accounts or multiple Ads accounts.

**TOPIC NO. 36**

The following documents, including the general subject of this data, the meaning of each data field, and the method used to retrieve the data:

a. GOOG-CENG-00419898

b. GOOG-CENG-00419899

c. GOOG-CENG-00419900

d. GOOG-CENG-00419903

e. GOOG-CENG-00599176; GOOG-CENG-00403546

f. GOOG-CENG-00416948

g. GOOG-CENG-00388170; GOOG-CENG-00388171

20

h. GOOG-CENG-00413050

i. GOOG-CENG-00416515

j. GOOG-CENG-00416832

k. GOOG-CENG-00416904

l. GOOG-CENG-00426565

m. GOOG-CENG-00404954

n. GOOG-CENG-00429457

**TOPIC NO. 37**

For each of the Pirate Websites:



a. Any instance in which the site ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (GOOG-CENG-00474324) and what product verticals they were involved in;

b. Any instance in which the site was identified as "▮▮▮▮" and/or "▮▮▮▮";

c. Any instance in which the site was identified as "▮▮▮▮" or within the "▮▮▮▮ ▮▮▮▮";

d. Any instance in which the site was within any "▮▮▮" or "▮▮▮", or was subject to a "▮▮▮▮";

e. Any instance in which the site was identified through Google's ▮▮▮" fraud and piracy prevention efforts;

f. Any instance in which the site was involved in any "▮▮▮▮";

g. Any instance in which the site was involved in any "▮▮";

h. Any instance in which the sites were found to be selling prohibited products.

21

**TOPIC NO. 38**

The nature and context of the below issues, including Google's discovery of, attempts to address, and results of attempting to address, these issues:

    a. "█████████" of previously suspended merchants, including as described at GOOG-CENG-00426035, -6038, -6068;

    b. "█████████" of Ebook Sellers (e.g., GOOG-CENG-00426035).

**TOPIC NO. 39**

The creation, features, functionalities, and use of a Shopping Ads Merchant's Merchant Center account and Ads accounts, including:

    a. How individuals or entities become Shopping Ads Merchants;

    b. How specific domains become, or cease to be, associated with Merchant Center accounts;

    c. The total number of Merchant Center accounts and Ads accounts an individual or entity can open or maintain;

    d. The relationship between Merchant Center accounts and Ads accounts;

    e. Any relationships between multiple Merchant Center accounts;

    f. The relationships between multiple Ads accounts;

    g. The relationship between Merchant Center accounts, Ads accounts, and any other Google account a Shopping Ads Merchant may have;

    h. Whether and how Google keeps track of the number of Merchant Center accounts and Ads accounts associated with any one individual or entity;

    i. Communications and channels of communications between Shopping Ads Merchants and Google;

j.  The roles and functionalities of Google personnel and teams involved in communicating with Shopping Ads Merchants;

k.  The creation, purpose, functionalities, designation, and evaluation of  ████████████████████████████████████.

**TOPIC NO. 40**

The creation, features, functionalities, and use of Shopping Ads, including:

a.  The process by which a Shopping Ad is created, including how Google uses images, texts, and other data or "feeds" uploaded by Shopping Ads Merchants to create a Shopping Ad;

b.  Generally, how Google targets particular users with Shopping Ads;

c.  How Shopping Ads appear on platforms other than Google Shopping, as alluded to in Dkt. 252 ¶ 11 ("██████████████████████████████████");

d.  How Google determines the placement and order of Shopping Ads on the search engine results page, and on the Google Shopping results page.

**TOPIC NO. 41**

Google's automated bidding feature, including generally how the feature works, and generally the data used to facilitate it, including any tracking or recordkeeping Google performs that would show the rankings of bids for each auction of each Shopping Ad, including the use of historical bid information to facilitate Google's automated bidding feature.

**TOPIC NO. 42**

The total yearly revenue Google LLC generated from January 2020 through the present.

**TOPIC NO. 43**

The total yearly revenue Google generated within Google Shopping from January 2020 through the present.

**TOPIC NO. 44**

Google's generation of revenue from Shopping Ads from January 2020 through March 2025, including but not limited to:

a. How Google generates revenue from the "auction" process by which Shopping Ads Merchants bid for Shopping Ads impressions and placement positions (including generally how the auction process works and generally how the price of an ad is determined);

b. How Google generates revenue from users' clicks on Shopping Ads;

c. How Google generates revenue from the use, or sale, of information gathered about users who click on Shopping Ads;

d. The total revenue Google generated from Shopping Ads, including through the channels described in subparts (a), (b), (c) of this Topic;

e. The total revenue Google earned from the 1,500 Pirate Websites, and all Google accounts associated with or connected to the same, including through which channels such revenue was earned;

f. Google's revenue data (including GOOG-CENG-00419901, GOOG-CENG-00404298, GOOG-CENG-00419904, GOOG-CENG-00479528), including an understanding of how this data was retrieved.

24

**TOPIC NO. 45**

Google's expenses associated with addressing Ebooks Piracy and other forms of piracy that occurs by means of Google's services, e.g., including, but not limited to: operations of Google's ███████████ department in relation to Google Shopping, or third-party vendors in relation to Processing Infringement Notices.

**TOPIC NO. 46**

Any data, reports, estimates, or analyses conducted on Google's revenue impact when Google suspends or terminates a Pirate Seller, for the period of January 2020 through March 2025.

**TOPIC NO. 47**

The revenue Google has generated from Plaintiffs, including any data, reports, estimates, or analyses Google conducted regarding Plaintiffs' revenue, for the period of January 2020 through March 2025.

**TOPIC NO. 48**

Any data, reports, estimates, or analyses conducted regarding revenue impact from the Ebooks Ban. This includes the revenue impact for Google, Plaintiffs, any representatives or agents of Plaintiffs, or any copyright owners or trademark owners affected by the Ebooks Ban (e.g., Association of American Publishers, BCGuardian, Corsearch, Inc., Pearson Education, Inc., and VitalSource Technologies LLC).

**TOPIC NO. 49**

Google's Auction Insight Reports (*see, e.g.,* "Use Auction insights to compare performance, available at https://support.google.com/google-ads/answer/2579754?hl=en (last visited Jan. 30, 2026), including the fields listed in the reports, generally how Google determines which competitors to include in the reports, generally how the statistics in the reports (e.g.,

25

impression share, outrank share, and overlap rate) are calculated, the extent to which these categories are measured differently for different businesses, and Google's retention of auction insights data and use of such data in its connection with its customer relationships.

**TOPIC NO. 50**

The processes and procedures to review, identify, flag, escalate, disapprove, approve, suspend, terminate, restrict, reinstate, or reactivate " ██████████ " or " ██████████ " accounts, as described in GOOG-CENG-00604643 and GOOG-CENG-00605191. This includes, but is not limited to:

    A. Any automated systems or tools used,

    b. "██████████,"

    c. "██████████,"

    d. "██████████,"

    e. "██████████,"

    f. "██████████,"

    g. "██████████████████████,"

    h. "██████████,"

    i. "██████████,"

    j. "██████████,"

    k. "██████████,"

    l. "██████████."

**TOPIC NO. 51**

Google's awareness of the nature, extent, cause, trend, financial impact, impact on Shopping Ads Merchants, and impact on copyright owners and trademark owners, of the Ebooks

26

Piracy occurring on Google Shopping; this includes Google's awareness of relevant market research, studies, surveys, reports and/or analyses.

**TOPIC NO. 52**

To the extent not addressed under Topic No. 59, Google's external communications regarding the Ebooks Ban and Ebooks Piracy during the period from January 2020 to present. This includes, but is not limited to, Google's communications (including Google's in-house and outside counsel) with Plaintiffs, the Association of American Publishers, those authorized to distribute Plaintiffs' Ebooks, other copyright owners and trademark owners affected by the Ebooks Ban and Ebooks Piracy, and any representatives or agents of Plaintiffs (e.g., BCGuardian, Corsearch, Inc., Covington & Burling LLP).

**TOPIC NO. 53**

The impact or effectiveness of any of antipiracy practices, procedures, or processes being applied to Google Shopping, including any DMCA Policy, Copyright Policy, or Trademark Policy, in stopping or slowing copyright or trademark infringement committed through using Google's services.

**TOPIC NO. 54**

Google's policies, practices, procedures, or processes for its ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮, including the criteria a rightsholder should meet for inclusion in ▮▮▮; whether and how ▮▮▮ applies to or affects Google Shopping, Shopping Ads Merchants, and Shopping Ads; and Google's considerations and rationales underlying these policies, practices, procedures, or processes.

27

**TOPIC NO. 55**

Google's policies, practices, procedures, or processes concerning the Ads Transparency Center or the "verification" of users, Merchant Center accounts, and Google Ads accounts, including as referenced in, e.g., GOOG-CENG-00380370, including:

a.  Whether, once the verification process is completed with respect to one domain, Ads account, or Merchant Center account, the "verification" can be applied to another domain, Ads account, or Merchant Center account;

b.  The data contained at GOOG-CENG-00419904, including the meaning of each data field/column header;

c.  The verification "badge" that appears at, e.g., Dkt. 419-1 at 3 ("Advertiser's identity verified by Google"), and the purpose of displaying that badge to Google users;

d.  The data contained in GOOG-CENG-00419911, including the meaning of all field names, the verification process to which the data relates, the time period to which the data relates, and how the verification changes if the information on which it is based changes.

**TOPIC NO. 56**

To the extent not covered by Topic No. 55, Google's "Business Operations Verification Process," including as described at https://www.youtube.com/watch?v=I6tB4bP5OzQ, and including the circumstances under which merchants or other Google accountholders are required or invited to complete the process, and how the process relates to the verification reflected in GOOG-CENG-00419904.

**TOPIC NO. 57**

Google's handling of preliminary and permanent injunctions and other legal process from Plaintiffs in connection with the following actions, including Google's communications with the plaintiffs in those actions or their representatives; any action taken by Google concerning the defendants' use of Google services, including Google Shopping; whether the defendants' involvement in the actions were communicated to those involved in Google Shopping outside of the legal department; and whether Google took any action to ensure such defendants did not create new Merchant Center or Ads accounts:

    a.  *Bedford, Freeman & Worth Publishing Group, LLC et al. v. Nguyen et al.*, No. 19-cv-10524-LAK (S.D.N.Y., filed Nov. 13, 2019);

    b.  *Cengage Learning, Inc. et al. v. Nguyen et al.*, No. 20-cv-769-JGK (S.D.N.Y., filed Jan. 29, 2020);

    c.  *McGraw Hill, LLC et al. v. Tran Van et al.*, No. 20-cv-6368-GHW (S.D.N.Y., filed Aug. 12, 2020);

    d.  *Elsevier Inc. et al. v. Quttainah et al.*, No. 20-cv-8438-LLS (S.D.N.Y., filed Oct. 9, 2020);

    e.  *Pearson Education, Inc., et al. v. Najji, et al.*, No. 21-cv-03486-RA (S.D.N.Y., filed Apr. 20, 2021);

    f.  *Bedford, Freeman & Worth Publishing Group, LLC et al. v. English et al.*, No. 21-cv-6691-ER (S.D.N.Y., filed Aug. 9, 2021);

    g.  *McGraw Hill LLC, et al. v. Nazaryan, et al.*, No. 23-cv-2798-LLC (S.D.N.Y., filed Apr. 4, 2023);

h. *Cengage Learning, Inc. et al. v. Smith et al.*, No. 23-cv-7193-VM (S.D.N.Y., filed Sept. 18, 2023).

**TOPIC NO. 58**

The "Ebook Link," "Page Link," "PDF Link," and "Textbook Link" filters that Google provides to Shopping users. Dkt. 38 ¶ 58. This includes:

a. How the filters come to be shown to a user (i.e., what causes the filter to appear and how Google's systems determine which filter to show);

b. Whether and how Google considered the effect that the filters could have on Ebooks Piracy;

c. Whether Google discontinued, suppressed, or otherwise stopped the appearance or use of these filters.

**TOPIC NO. 59**

The features and implementation of Google's Ebooks Ban, including:

a. The development of the Ebooks Ban;

b. The purpose of, and any rationale underlying, the Ebooks Ban;

c. Google's assessment of the effectiveness the Ebooks Ban, and its impact on users affected by Ebooks Piracy;

d. Google's assessment of the Ebooks Ban's financial impact on Google, and its financial impact on copyright-holders and trademark-holders (including Plaintiffs) affected by Ebooks Piracy;

e. Google's communications with users concerning the Ebooks Ban;

30

f.  All processes, procedures, and tools used to enforce the Ebooks Ban, including automated and manual tools, including but not limited to █████████" and "█████"; and

g.  Any increases in Ebooks Piracy following the Ebooks Ban.

**TOPIC NO. 60**

Google's policies, plans, or attempts to allow Paid Ads for digital books or Ebooks products after the implementation of the Ebooks Ban, and any reasoning for why and how each of these policies, plans, or attempts were modified, deprioritized, or cancelled. This includes, but is not limited to:

a.  The plan to ██████████████████████████████ as described in GOOG-CENG-00426568 at -6569;

b.  The "██████████" project; and

c.  The ██████████, including Google's decision not to allow Plaintiffs to participate in the ██████████.

**TOPIC NO. 61**

Google's enforcement against fraud and piracy on Google Shopping, including Google's "█████" working group and Google's enforcement efforts against fraud and piracy in light of the Ebooks Ban. *See* GOOG-CENG-00474324 at -4328 ("████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████").

**TOPIC NO. 62**

The tools, databases, and email distribution lists or "listservs" used by Google employees or any third-party vendor personnel to communicate about issues relevant to this case, including

31

any written or unwritten policy, practice, manual, guidance, or procedure concerning the use of these tools and the functionalities and lists of participants in each listserv. The tools include, but are not necessarily limited to, emails, Google Chat messages, text messages, Google Hangouts, Google Talk, ██████████████████████████ ████████████████████████████ and the Buganizer. The listservs include, but are not necessarily limited to, ████████████████████████ ████████████  ██████████████████  ██████████████ ████████████████████████████████ ████████████  ██████████████████  shopping-dmca@google.com; lrmonetized@google.com;  ████████████████  ██  ████████████ ██████████████

For purposes of this Topic, issues relevant to this case include (i) Ebooks Piracy; (ii) Infringement Notices; (iii) whether to apply account restriction, suspend, terminate, reinstate or reactivate a Merchant Center account or other accounts associated with a given individual or entity; (iv) and the formulation, review, implementation, and assessment of any DMCA Policy.

**TOPIC NO. 63**

Google's document retention policies effective during the period of January 2020 through March 2025, including with respect to any communications, data/databases, documents, tools, and listservs pertinent to this case. This includes:

a. The circumstances under which data showing the ads that a merchant initiated will be deleted. *See, e.g.,* 25.07.08 Latham Email ██████████████████████ ██████████████████████████████ ████████████████"); 25.06.19 Latham Email; 25.05.07 Latham Email;

b.  The circumstances under which merchant account data (including records of which Merchant Center accounts were associated with which domains) will be deleted; and

c.  Whether any Merchant Center account data or Ads account data was retained or placed on a litigation hold in connection with this Action.

**TOPIC NO. 64**

Google's actions to preserve documents and communications in connection with this case. This includes, but is not limited to, all data, documents, and communications including custodial documents, emails, Google Chat messages, text messages, Google Hangouts, Google Talk, ████

████████████████████████████████████████████

████████████████████████ , and the Buganizer.

**TOPIC NO. 65**

The capabilities of, and information hosted within, the tools and databases used by Google employees or third-party vendors in addressing Ebooks Piracy and/or in implementing any DMCA Policy, including tools known as Buganizer, ██████████████████████████████ ████ (*see, e.g.*, GOOG-CENG-00442493), ██████████████████████████████ as mentioned in Google's DMCA Policy or any other relevant ████ including Google's claims concerning the Buganizer's search capabilities in Dkt. 177 (Declaration of Andre Golueke).

**TOPIC NO. 66**

The process Google deployed to generate the 300 domains referenced at Dkt. 472 ¶ 5, including how these domains were selected, any sampling protocols utilized, and any validation or quality-control procedures deployed.

**TOPIC NO. 67**

Google's policies, practices, procedures, or processes, and the implementation of such policies, practices, procedures, or processes, for receiving, responding to, or otherwise taking action upon notices of trademark infringement in relation to Shopping Ads, including:

a. Any version of Google's Trademark Policy, including the policies described in GOOG-CENG-00000372, GOOG-CENG-00410132 at -0139 and GOOG-CENG-00423654 at -3662;

b. Any policies, practices, procedures, or processes, and the implementation of such policies practices, procedures, or processes, concerning notices of trademark infringement in relation to Shopping Ads advertising digital books or Ebooks products;

c. To the extent not covered by subpart (a), any version of the policy concerning Counterfeit Goods, including the policies described in GOOG-CENG-00404590 and GOOG-CENG-00409970;

D. Any "proactive" measures implemented by Google as referenced in GOOG-CENG-00404590 at -4592 ("███████████████"), GOOG-CENG-00409388 at -9394–5 ("███████████████████████████"), GOOG-CENG-00409892 at -9919 ███████████████") and GOOG-CENG-00409780 at -9782 ███████████████████") in relation to any Trademark Policy;

e. Any policies, practices, procedures, or processes, and the implementation of such policies practices, procedures, or processes, whereby Google claims to███████████ ████████████████████," which Google

claims to have "███████████████████████████████████████

███████████████" as stated in GOOG-CENG-00409388 at -9394–5;

f.  Google's understanding of the effectiveness of the policies, practices, procedures, or processes and their implementation described in subparts (a)–(e) above, and Google's basis for such understanding;

g.  "██████████████", ██████████████████████████", and ████████████

████████████" as part of the implementation of any Trademark Policy, as referenced in GOOG-CENG-00409780 at -9782;

h.  The description and role of all Google's personnel (including in-house counsel) involved in implementing any aspect of any Trademark Policy, and their communications and interactions with Google's personnel handling copyright Infringement Notices;

i.  Google's practices for communicating with the subjects of trademark infringement notices;

j.  Any policies, practices, procedures, or processes for suspending, terminating, or otherwise taking action upon the accounts of Shopping Ads Merchants for repeated violations of any Trademark Policy;

k.  Whether any of the 1,500 Pirate Websites were the subject of trademark infringement notices; and

l.  Whether Google reviewed, considered, or evaluated any of the Plaintiffs' trademarks, including the rights, authorizations, and permissions (or lack thereof) associated with those trademarks, including those identified on Amended Exhibit B to the Amended Complaint (Dkt. 120-2).

**TOPIC NO. 68**

The images that appear in Shopping Ads, including product images, trademark(ed) images, or trademarked text within an image, including:

a. The source of such images, including from a link or photo provided by the merchant, or otherwise;

b. Google's retrieval of such images; How such images come to be applied to or appear in Shopping Ads;

c. Google's claim that "the *Pirate Sellers* reproduce and apply the marks in the images and information that they provide to Google for purposes of the advertisements," Dkt. 44 at 22;

d. Any reviews, checks, or screening Google performs with respect to such images, including to determine that an image is suitable for a Shopping Ad;

e. Any adjustments Google makes to the image, including "experiment[ing] with the best display options for the format" and employing the "automatic cropping" of images "to focus more on the product," as described in What makes up a Shopping ad, https://support.google.com/googleads/answer/6275294 (last visited on January 30, 2026).

**TOPIC NO. 69**

The extent to which adverse actions Google takes against a merchant for violating Google's Trademark Policy are considered in deciding whether to suspend a merchant for copyright infringement.

36

**TOPIC NO. 70**

The purpose and functionalities of, and all the ways in which Google uses, Google's internal tool referenced as ███████████████ in GOOG-CENG-00412515 at -2515 described as a tool ████████████████████████████████████████ ███████████, *id.*, and/or Google's internal tool referenced as ████████████████ in GOOG-CENG-00412589 at −2590, if and to the extent different from "█████████████" referenced in GOOG-CENG-00412515 at -2515, in connection with the implementation of any Trademark Policy or DMCA Policy.

**TOPIC NO. 71**

The factual bases for Google's Responses and Objections to Plaintiffs' Interrogatories.

**TOPIC NO. 72**

The factual bases for defenses Google as asserted or intends to assert in this Action, including the affirmative defenses asserted in Google's Answer (Dkt. 116).

**TOPIC NO. 73**

The factual bases for Google's factual allegations and statements in its Answer.

DATED: January 30, 2026

/s/ Jeff Kane
Matthew J. Oppenheim
Michele H. Murphy
Jeff Kane
Danae Tinelli
Uriel Lee
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202-480-2999 telephone
866-766-1678 fax
matt@oandzlaw.com
michele@oandzlaw.com
jkane@oandzlaw.com
danae@oandzlaw.com
ulee@oandzlaw.com

Lauren Bergelson
Yunyi Chen
OPPENHEIM + ZEBRAK, LLP
461 Fifth Avenue, 19th Floor
New York, NY 10017
Telephone: (212) 951-1156
lbergelson@oandzlaw.com
ychen@oandzlaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via Electronic Mail on the 30th day of January, 2026, upon counsel of record.

Dated: January 30, 2026

/s/ Uriel Lee

39