**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC D/B/A MACMILLAN LEARNING; MACMILLAN HOLDINGS, LLC; ELSEVIER INC.; ELSEVIER B.V.; and MCGRAW HILL LLC, <br><br> *Plaintiffs*, <br><br> v. <br><br> GOOGLE LLC, <br><br> *Defendant*. | Case No. 1:24-cv-04274-JLR-BCM |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS'**
**MOTION FOR RECONSIDERATION OF THE COURT'S ORDER (Dkt. 923)**

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  LEGAL STANDARD...........................................................................................2

III.  ARGUMENT.......................................................................................................3

    A.  Plaintiffs' Motion Is Improper .........................................................................3

    B.  Plaintiffs Have Not Shown Clear Error or Manifest Injustice...............................4

        1.  Plaintiffs Have Not Shown the Court Misinterpreted § 512(l)....................4

        2.  Plaintiffs Have Not Shown Manifest Injustice ............................................9

IV.  CONCLUSION..................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arista Records LLC v. Lime Group LLC*,
   784 F. Supp. 2d 398 (S.D.N.Y. 2011)........................................................................................8

*Arista Records LLC v. Usenet.com, Inc.*,
   633 F. Supp. 2d 124 (S.D.N.Y. 2009)......................................................................................7, 8

*BDG Gotham Residential, LLC v. W. Waterproofing Co.*,
   2024 WL 5201596 (S.D.N.Y. Dec. 23, 2024) (Moses, J.).........................................................3

*Business Casual Holdings, LLC v. YouTube, LLC*,
   2022 WL 837596 (S.D.N.Y. Mar. 21, 2022) ............................................................................6

*Cooper Crouse-Hinds, LLC v. City of Syracuse*,
   2022 WL 344053 (N.D.N.Y. Feb. 4, 2022) ...............................................................................3

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
   146 S. Ct. 959 (2026)..............................................................................................................1, 5

*Gagliano v. United States*,
   816 F. Supp. 3d 353 (E.D.N.Y. 2026) .....................................................................................10

*Hikma Pharms. USA, Inc. v. Amarin Pharma, Inc.*,
   2026 WL 1593307 (June 4, 2026) ............................................................................................8

*In re Frontier Communications Corp.*,
   658 B.R. 277 (Bankr. S.D.N.Y. 2024).......................................................................................6

*In re Iraq Telecom Ltd.*,
   2019 WL 5080007 (S.D.N.Y. Oct. 10, 2019)...........................................................................10

*In re Platinum-Beechwood Litig.*,
   400 F. Supp. 3d 2 (S.D.N.Y. 2019).......................................................................................2, 3

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
   2020 WL 8810814 (S.D.N.Y. Sept. 25, 2020) (Moses, J.).......................................................2

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*,
   729 F.3d 99 (2d Cir. 2013).......................................................................................................2

*LM Ins. Corp. v. Safety Nat'l Cas. Corp.*,
   705 F. Supp. 3d 83 (E.D.N.Y. 2023) ........................................................................................4

*McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*,
   293 F. Supp. 3d 394 (S.D.N.Y. 2018)........................................................................................5

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005)......................................................................................................4, 8, 9

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
  454 F. Supp. 2d 966 (C.D. Cal. 2006) ...........................................................................8

*Polsby v. St. Martin's Press, Inc.*,
  2000 WL 98057 (S.D.N.Y. Jan. 18, 2000) .....................................................................3

*RJE Corp. v. Northville Indus. Corp.*,
  2002 WL 1750763 (E.D.N.Y. July 29, 2002)..................................................................3

*S.E.C. v. Stewart*,
  2024 WL 382370 (S.D.N.Y. Feb. 1, 2024)......................................................................2

*S.K. v. New York City Dep't of Educ.*,
  2023 WL 3646935 (S.D.N.Y. May 25, 2023) (Rochon, J.)..............................................4

*Scott v. Chipotle Mexican Grill, Inc.*,
  306 F.R.D. 120 (S.D.N.Y. 2015) ....................................................................................3

*Shub v. Westchester Cmty. Coll.*,
  2008 WL 1957731 (S.D.N.Y. Apr. 28, 2008)..................................................................8

*Smith v. New York City Dep't of Educ.*,
  524 F. App'x 730 (2d Cir. 2013) ....................................................................................4

*Stone v. Theatrical Inv. Corp.*,
  80 F. Supp.3d 505 (S.D.N.Y. 2015)................................................................................9

*Westcon Grp., Inc. v. CCC Techs., Inc.*,
  2023 WL 2058709 (S.D.N.Y. Feb. 16, 2023)..................................................................9

**STATUTES**

17 U.S.C.
  § 512(i)(1)(A)...............................................................................................................5, 7
  § 512(*l*)................................................................................................................1, 4, 5, 6

**RULES**

Local Rule 6.3 ...........................................................................................................................1, 3

**OTHER AUTHORITIES**

*Bear on,* Merriam-Webster, https://www.merriam-
  webster.com/dictionary/bear%20on#dictionary-entry-1 (last accessed June 1,
  2026) ..............................................................................................................................5

## I.    INTRODUCTION

Plaintiffs' Motion for Reconsideration (Dkt. 971, "Mot.") does not actually seek reconsideration of the outcome of the Court's May 8, 2026 Vacatur Order (Dkt. 923, "Order"). Instead, it asks the Court to rewrite the *reasoning* of that order. This unusual motion should be denied.

Plaintiffs accept the Vacatur Order's conclusion that the data at issue in the December 22, 2025 Sampling Order is no longer relevant or proportional following the Supreme Court's ruling in *Cox* and Google's withdrawal of its DMCA defense. Yet they ask the Court to "reconsider" one sentence they believe will preclude additional "critical discovery" into Google's DMCA policy. Disagreement with the Order's reasoning, but not its conclusion, is not a proper basis for reconsideration. Plaintiffs also violate Local Rule 6.3 by raising new arguments and citing evidence not in their opposition to Google's Vacatur Motion.

Procedural defects aside, Plaintiffs' Motion fails on the merits because it shows neither clear error nor "manifest injustice." First, Plaintiffs contend that the Court misinterpreted 17 U.S.C. § 512(*l*) and *Cox* to reject their newly articulated theories of relevance. But it is Plaintiffs who misread those authorities. Under § 512(*l*), the "failure to comply with the safe-harbor rules … 'shall not bear adversely upon the consideration of a defense by the service provider that the service provider's conduct is not infringing.'" *Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 969 (2026) (quoting 17 U.S.C. § 512(*l*)). This Court simply reiterated the Supreme Court's holding; there was nothing erroneous about doing so.

Second, Plaintiffs speculate that Google will "tout" its DMCA policy at summary judgment or trial and the Order's reasoning will unfairly deprive them of the opportunity to rebut that claim. But the Court already considered and rejected that conjecture-based argument. Besides, Plaintiffs' assertion that existing discovery does not allow them to understand the "contours" of Google's

DMCA policy rings hollow.  Google produced more than a terabyte of data reflecting its treatment of notices and accounts tied to the 1,500 domains Plaintiffs claim infringed the Asserted Works. *See* Dkt. 251 at 4.

At bottom, Plaintiffs are flailing to articulate a viable theory of liability against Google in light of *Cox*.  They have pinned their hopes on a fishing expedition into Google's DMCA policy implementation writ large.  But without Google's assertion of the DMCA safe-harbor defense to justify such extensive discovery, the Court correctly recognized that additional DMCA implementation discovery is no longer relevant.  Plaintiffs' disappointment does not justify rewriting the Court's Order.

## II.    LEGAL STANDARD

"The standard for granting [a reconsideration motion] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked … that might reasonably be expected to alter the conclusion reached by the court." *In re Platinum-Beechwood Litig.,* 400 F. Supp. 3d 2, 4 (S.D.N.Y. 2019).[1]  Reconsideration is appropriate only when there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013).  Even then, reconsideration is "an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2020 WL 8810814, at *3 (S.D.N.Y. Sept. 25, 2020) (Moses, J.).  "[R]econsideration is not warranted unless the prior decision is 'dead wrong.'" *S.E.C. v. Stewart*, 2024 WL 382370, at *5 (S.D.N.Y. Feb. 1, 2024).  A "motion to reconsider should not be granted where the moving

---

[1] Internal quotations and citations omitted and emphasis added unless otherwise noted.

party seeks solely to relitigate an issue already decided," *Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 124 (S.D.N.Y. 2015), nor is it an opportunity for the moving party to take a "second bite at the apple." *BDG Gotham Residential, LLC v. W. Waterproofing Co.*, 2024 WL 5201596, at *1 (S.D.N.Y. Dec. 23, 2024) (Moses, J.).

## III.   ARGUMENT

### A.   Plaintiffs' Motion Is Improper

Plaintiffs' Motion should be denied at the threshold as procedurally defective.  Plaintiffs admit they do not seek to undo the Vacatur Order—instead, they ask the Court to reconsider a single *statement* in that Order.  Mot. at 1.  That is not a proper basis for reconsideration because the Motion does not request that the court "alter [its] conclusion."  *Platinum-Beechwood,* 400 F. Supp. 3d at 4; *see also RJE Corp. v. Northville Indus. Corp.*, 2002 WL 1750763, at *1 (E.D.N.Y. July 29, 2002).

To the extent Plaintiffs seek "clarification" rather than reconsideration, the Motion should still be denied because Plaintiffs "identified no ambiguity or difficulty understanding the Court's holding.  Rather, [Plaintiffs are] simply expressing [their] disagreement." *Cooper Crouse-Hinds, LLC v. City of Syracuse*, 2022 WL 344053, at *4 (N.D.N.Y. Feb. 4, 2022).

Plaintiffs' Motion also violates Local Rule 6.3 by raising new arguments and citing evidence not included with their opposition to Google's Vacatur Motion.  "On such a motion [under Local Rule 6.3], a party may not 'advance new facts, issues or arguments not previously presented to the Court.'" *Polsby v. St. Martin's Press, Inc.*, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000).  Plaintiffs disregard that rule.  *See* Mot. at 3 (new argument regarding effect of Google's withdrawal of DMCA defense); *id.* at 5-6 (new arguments regarding Google's "affirmative steps"); *id.* at 6-7 (new sword-and-shield caselaw); *id.* at 9-10 (new arguments and documents relating to "contours" of DMCA policy).  Plaintiffs also improperly augment the evidentiary record by

3

incorporating by reference several pages of their opposition to Google's Motion for Judgment on the Pleadings that rely on documents Plaintiffs could have—but did not—cite in their opposition. *See id.* at 6-7. A party may not "supplement the record" on a motion for reconsideration. *Smith v. New York City Dep't of Educ.*, 524 F. App'x 730, 734 (2d Cir. 2013).

A reconsideration motion is not "an invitation to parties to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's ruling." *S.K. v. New York City Dep't of Educ.*, 2023 WL 3646935, at *1 (S.D.N.Y. May 25, 2023) (Rochon, J.). That is precisely what Plaintiffs seek to do, and the Court should reject it.

**B.      Plaintiffs Have Not Shown Clear Error or Manifest Injustice**

The substance of Plaintiffs' Motion is also meritless. Plaintiffs identify no controlling law or facts the Court overlooked, no intervening changes of law, and no new evidence. Plaintiffs argue that one statement in the Court's Order is "clear error," creating "a manifest injustice" because it "misinterprets 17 U.S.C. § 512(*l*)" and "misunderstands Google's withdrawal of its DMCA safe-harbor defense." Mot. at 2-3. But the Court's Order was correct—certainly not "dead wrong." Plaintiffs' attempt to substitute their judgment for the Court's on these issues should be rejected.

1.      Plaintiffs Have Not Shown the Court Misinterpreted § 512(*l*)

Plaintiffs' disagreement with the Court's relevance determination, based on its interpretation of *Cox* and 17 U.S.C. § 512(*l*), is insufficient to show clear error. "A party's 'disagreement' with the court's 'explication of the relevant legal standards and application of the standards to the facts of [the] case' does not satisfy the 'clear error' standard." *LM Ins. Corp. v. Safety Nat'l Cas. Corp.*, 705 F. Supp. 3d 83, 86 (E.D.N.Y. 2023). The Court's Order thoroughly considered *Cox* (and its application of *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545

4

U.S. 913 (2005)) as well as persuasive in-circuit authority on the interaction between the DMCA safe harbor and copyright infringement liability.  *See* Order at 6-8.  Plaintiffs' Motion cites no contrary controlling Supreme Court or Second Circuit authority.  Reconsideration is inappropriate. *See*, *e.g.*, *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 398 (S.D.N.Y. 2018) (denying reconsideration motion where movant made "no attempt to point to any controlling precedent … that this Court overlooked").

Plaintiffs, not the Court, misinterpret § 512(*l*).  That statute states that "[t]he failure of a service provider's conduct to qualify for limitation of liability under [the DMCA's safe harbor provision] ***shall not bear adversely*** upon the consideration of a defense by the service provider that [its] conduct is not infringing[.]"  17 U.S.C. § 512(*l*).  Under that provision's plain meaning, a service provider's conduct that fails to qualify for the DMCA safe harbor *shall have no effect on* or *relate to* its liability for copyright infringement.  *See Bear on*, Merriam-Webster, https://www.merriam-webster.com/dictionary/bear%20on#dictionary-entry-1 (last accessed June 1, 2026) (defining "bear on" to mean "to have an effect on" or "to apply or relate to").  The Supreme Court interpreted § 512 the same way in *Cox*.  There, it rejected the rightsholders' argument that the DMCA "presupposes" that service providers can be held liable for "continu[ing] to serve repeat infringers with full knowledge that they will continue to infringe."  Brief for Respondents at 39, *Cox Comm'cns v. Sony Music Ent.*, 146 S. Ct. 959 (2026) (No. 24-171), 2025 WL 2960179.  Instead, it explained that "the DMCA makes clear that failure to comply with the safe-harbor rules 'shall not bear adversely upon … a defense by the service provider that the service provider's conduct is not infringing.'"  146 S. Ct. at 969 (quoting 17 U.S.C. § 512(*l*)). Simply put, whether a service provider fails to "adopt[] and reasonably implement[]" a repeat infringer policy, *see* 17 U.S.C. § 512(i)(1)(A), shall have no effect on whether the provider is

5

culpable for copyright infringement.[2]   In opposing vacatur, Plaintiffs argued that the sample data remained relevant for precisely that purpose.  They argued that it would "show whether Google actually followed its DMCA policy" with respect to merchants other than those associated with the 1,500 at-issue domains and "be important evidence for the jury" in determining Google's culpability.  Dkt. 846 at 2.  Based on a straightforward application of § 512(*l*) and *Cox*, this Court correctly held that Plaintiffs could not use this "evidence" to show Google's "culpability" and, as a result, discovery designed solely to test whether Google reasonably implemented its DMCA policy was no longer relevant to Plaintiffs' contributory infringement claim or Google's defenses. Order at 6-8.

Plaintiffs advance two primary arguments to try to avoid this holding.  First, they argue § 512(*l*) does not apply because Google withdrew its DMCA defense and so is not attempting to "qualify" for the safe harbor.  This argument misapprehends why § 512(*l*) matters:  not because Google intends to rely on the safe harbor defense (it doesn't), but because Plaintiffs continue to insist on extensive discovery into Google's administration of its DMCA policy as evidence that *Google should be liable a contributory infringer*.  To the extent *Plaintiffs* continue to seek discovery on that basis, § 512(*l*) and *Cox* make clear that is not a valid theory of proving liability. In any event, there is no support for Plaintiffs' reading that a defendant must assert a § 512 defense for § 512(*l*) to apply.  *See, e.g.*, *Bus. Casual Holdings*, 2022 WL 837596, at *5 (relying on § 512(*l*) to dismiss infringement claim based on YouTube's alleged failure "to comply with the DMCA's repeat infringer provision" before YouTube filed answer).  That reading is nonsensical.  According

---

[2] As the Vacatur Order acknowledged, other courts in this district have similarly recognized this uncontroversial conclusion.  Order at 6-7 (citing *Business Casual Holdings, LLC v. YouTube, LLC*, 2022 WL 837596, at *5 (S.D.N.Y. Mar. 21, 2022), and *In re Frontier Communications Corp.*, 658 B.R. 277, 296 (Bankr. S.D.N.Y. 2024)).

to Plaintiffs, Congress created a statutory scheme permitting failure to qualify for the safe harbor defense to be used as proof of liability when a defendant *has not even asserted that defense*, despite enacting a statutory provision that explicitly says failure to qualify for the defense *shall not* be used that way.  That cannot be the law.

Second, Plaintiffs argue they "do not seek discovery related to Google's failure to qualify for the safe-harbor," and instead seek discovery "into Google's failure to abide by its own DMCA policy."  Mot. at 3.  This is a distinction without a difference, since the DMCA requires service providers to "reasonably implement[]" a repeat infringer policy to qualify for the safe harbor.  17 U.S.C. § 512(i)(1)(A).  The substance of the discovery Plaintiffs seek confirms that their inquiry is directed squarely at the safe-harbor framework:  Plaintiffs want to probe how Google processed takedown notices, whether it properly terminated repeat infringers, and whether there were "features" that made the policy ineffective.  *See* Mot. at 9-10.  Each of these topics maps directly onto the criteria determining whether a service provider has "reasonably implemented" its repeat-infringer policy under § 512(i)(1)(A).

Plaintiffs fail to put forward any controlling case law, overlooked by the Court, to support their position that discovery into Google's implementation of its *entire* DMCA policy remains relevant.  *See* Mot. at 6.  They renew their reliance on *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124 (S.D.N.Y. 2009), but the Court already considered and distinguished it.  *See* Order at 7 n.3.  Plaintiffs argue that the Court misinterpreted that case because it "does not declare a minimum threshold of conduct that is required in order for a company's failure to follow its own policy to be relevant."  Mot. at 8.  But as this Court explained in its Order, the defendants in *Usenet* did not merely "fail to follow" their own policies; they "violated their own policies by engaging in the very conduct those policies prohibited," including by personally downloading the

7

copyrighted works.  Order at 7 (quoting *Usenet*, 633 F. Supp. 2d at 152-53).  Plaintiffs' motion

does not grapple with this distinction.[3]

Otherwise, Plaintiffs rely principally on the district court's remand decision in *Grokster*.

Mot. at 5-6 (citing 454 F. Supp. 2d 966 (C.D. Cal. 2006)).  That out-of-circuit case is insufficient

to show the Vacatur Order was clearly erroneous, since "decisions from other circuits or district

courts, even courts in the Southern District of New York," are not controlling authority

appropriately considered on a motion for reconsideration.  *Shub v. Westchester Cmty. Coll.*, 2008

WL 1957731, at *2 (S.D.N.Y. Apr. 28, 2008); *cf. id.* at *4 n.2 (declining to consider case from

Eighth Circuit).  And the Supreme Court's recent decision in *Hikma Pharms. USA, Inc. v. Amarin*

*Pharma, Inc.*, undermines its analysis.  *See* 2026 WL 1593307, at *8 (June 4, 2026) (plaintiffs

"may not rely on mere omissions, inactions, or nonfeasance to allege active inducement" under

the patent laws).  In discussing *Grokster*, the *Hikma* Court emphasized that the defendants' "**overt**

**efforts** to entic[e] or persuad[e]" its users to "engage in copyright infringement" were what

"over[came] the law's reluctance to find liability when a defendant merely sells a commercial

product suitable for some lawful use," not their failure to prevent infringement.  *Id.* at *7 (citing

545 U.S. at 935-36).  At any rate, the facts in *Grokster* are readily distinguishable.  There, the court

*conceded* that StreamCast's failure to "develop filtering tools or other means of diminishing the

use of its products for infringement" would be insufficient on its own to support liability.  454 F.

Supp. 2d at 984; *see also id.* at 989 (recognizing that "secondary liability may not be premised"

---

[3] Plaintiffs improperly cite a new case, *Arista Records LLC v. Lime Group LLC*, for the proposition that a defendant's decision "not to implement any meaningful infringement-reduction strategies was a strong indicator of intent to foster infringement."  Mot. at 8-9.  But in *Lime Group*, the evidence showed LimeWire chose not to implement infringement-reduction strategies because doing so would cause its customers to switch to another file-sharing application.  *See* 784 F. Supp. 2d 398, 431 (S.D.N.Y. 2011).  That is distinguishable from Plaintiffs' attempt to demonstrate that Google's DMCA policy was ineffective "due to poor execution or poor design."  Order at 7-8.

on failure to take "affirmative steps to prevent infringement" alone (citing 545 U.S. at 939 n.12)). Only "viewed in conjunction with other evidence," including internal communications and advertising designs that "expressed an intent to target Napster users, a community well-known for copyright infringement," and that Streamcast's business model depended on the "overwhelmingly infringing" use of its software did its lack of anti-infringement tools "underscore[] StreamCast's unlawful objective." *Id.* at 984. The only "active steps," *Grokster*, 545 U.S. at 936, Plaintiffs allege here to justify examining Google's DMCA policy—that Google "actively participated" in infringement by running advertisements it knew were infringing for merchants it knew were infringers (Mot. at 6)—are not "active steps" at all. They, too, are examples of alleged passive inaction to infringement insufficient on their own to support a contributory infringement claim. *See also* Dkt. 954 at 6-9 (making same argument on reply in support of Google's Rule 12(c) Motion).

### 2.     Plaintiffs Have Not Shown Manifest Injustice

Plaintiffs have also not shown manifest injustice. Manifest injustice "is defined as an error committed by the trial court that is direct, obvious, and observable." *Westcon Grp., Inc. v. CCC Techs., Inc.*, 2023 WL 2058709, at *2 (S.D.N.Y. Feb. 16, 2023). Plaintiffs argue that "allowing Google to tout its DMCA policy, while denying Plaintiffs discovery into whether Google followed that policy, would be a manifest injustice." Mot. at 2-3. This argument fails for three reasons.

First, Plaintiffs already presented the same "sword and shield" argument to the Court. *See* Dkt. 846 at 1-2 (arguing that "Google likely will cite its DMCA Policy" to show lack of intent and culpability, so "Google must produce the evidence" relating to its implementation of its DMCA Policy to allow Plaintiffs to rebut those assertions). The Court rejected it. Plaintiffs' blatant attempt to reassert the same argument—without pointing to any controlling authority the Court overlooked—is improper. *See Stone v. Theatrical Inv. Corp.*, 80 F. Supp.3d 505, 506 (S.D.N.Y.

9

2015) (motion for reconsideration not "an occasion for repeating old arguments previously rejected"). Plaintiffs' attempt to introduce *new* caselaw not in their opposition, *see* Mot. at 6-7, is also improper. *See Gagliano v. United States*, 816 F. Supp. 3d 353, 355 (E.D.N.Y. 2026) ("New arguments—including new case authority—preclude reconsideration.").

Second, this argument rests entirely on speculation about what Google will do at summary judgment or trial. Plaintiffs state "[i]t is clear that Google intends to invoke its DMCA program to argue that it lacked the requisite intent and/or that it should be subject to reduced damages." Mot. at 7. But the "evidence" they cite does not support this. They point to (1) Google's Rule 12(c) Motion, where Google argued that *Plaintiffs*' allegations were insufficient to state a contributory infringement claim; (2) deposition testimony of a former Google employee testifying in his personal capacity in response to *Plaintiffs*' questions; and (3) public statements Google made *outside* this litigation, including about anti-counterfeiting, rather than anti-copyright-infringement efforts. *Id.* at 7-8. "[S]peculations of what may happen in the future" are insufficient to justify reconsideration. *In re Iraq Telecom Ltd.*, 2019 WL 5080007, at *2 (S.D.N.Y. Oct. 10, 2019). To the extent Plaintiffs believe the Vacatur Order should preclude Google from making some argument at trial, they can seek that relief from the district court then.

Third, no matter what Google argues at summary judgment or trial, there is no "sword and shield" issue. As this Court determined, "[P]laintiffs have already had ample discovery concerning the 'contours' of Google's DMCA policy." Order at 8. Plaintiffs argue that this statement is "factually incorrect." Mot. at 9. It is not. After nearly two years of document discovery, Google has produced thousands of custodial documents, including regarding Google's DMCA policy implementation. *See, e.g.*, Dkt. 502 at 4 (document production numbers); Dkt. 221 (ordering Google to add custodians and search terms related to its DMCA policy and search terms for the

10

specific Merchant Center and Ads accounts at issue); Dkt. 217 (ordering Google to add custodians related to its DMCA policy and produce its DMCA policies in effect from January 2020 through the present).  Google has also produced "voluminous documents and data, spanning a period of four years, with regard to the 1,500 'pirate' domains (websites) that plaintiffs identified."  Order at 2.  That data includes information reflecting how Google processed copyright notices regarding those 1,500 domains and whether Google suspended associated Merchant Center accounts.  *Id.* at 3.  Finally, without conceding relevance, Google has agreed to provide high-level corporate testimony regarding Google's DMCA policy implementation in an effort to compromise.  *See* Dkt. 985-3 at 17 (Topic 10).  All told, this discovery is more than sufficient to allow Plaintiffs to "understand the parameters" of Google's approach to copyright infringement on its platform, particularly as it applied to the merchants and advertisements actually at issue.  Mot. at 9.

Plaintiffs' assertion that further discovery into Google's DMCA policy remains "relevant" does not identify "manifest injustice"—it simply asks the Court to revisit its relevance (and, inherently, its proportionality) determinations and come out the other way.  Plaintiffs present no basis to conclude the Court committed a "direct, obvious, and observable" error in either determination.

IV.    CONCLUSION

The Court should deny Plaintiffs' Motion.

Dated:  June 5, 2026

Respectfully submitted,

**LATHAM & WATKINS LLP**

*/s/ Sarang Vijay Damle*
Sarang Vijay Damle
Sarah A. Tomkowiak (*pro hac vice*)
Holly K. Victorson (*pro hac vice*)
Laura E. Bladow (*pro hac vice*)
Roberto J. Borgert (*pro hac vice*)
Brent T.F. Murphy (*pro hac vice*)
Sara E. Sampoli (*pro hac vice*)
Jennifer Ferrigno (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: sy.damle@lw.com
        sarah.tomkowiak@lw.com
        holly.victorson@lw.com
        laura.bladow@lw.com
        roberto.borgert@lw.com
        brent.murphy@lw.com
        sara.sampoli@lw.com
        jennifer.ferrigno@lw.com

Allison L. Stillman
Caroline F. Clarke (*pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: alli.stillman@lw.com
        caroline.clarke@lw.com

Joseph R. Wetzel
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
Email: joe.wetzel@lw.com

*Attorneys for Defendant Google LLC*

12

**CERTIFICATION OF WORD COUNT**

I certify that the foregoing memorandum of law complies with the formatting and word limit requirements set forth in Local Rule 6.3 because it contains 3,495 words, excluding the cover page, table of contents, table of authorities, signature block, and certification of word count.  This memorandum of law also complies with the applicable formatting rules because it has been prepared in 12-point font and all text is double-spaced.

In preparing this certification, I relied on the word count of the Microsoft Word computer program used to prepare this memorandum of law.


Dated:  June 5, 2026                                    */s/ Sarang Vijay Damle*
                                                       Sarang Vijay Damle