## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| CENGAGE LEARNING, INC.;<br>BEDFORD, FREEMAN & WORTH<br>PUBLISHING GROUP, LLC D/B/A<br>MACMILLAN LEARNING;<br>MACMILLAN HOLDINGS, LLC;<br>ELSEVIER INC.; ELSEVIER B.V.; and<br>MCGRAW HILL LLC,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Civil Action No. 24-cv-04274-JLR-BCM<br><br>[Redacted] |

**Plaintiffs' Reply Memorandum of Law in Support of Plaintiffs'**
**Motion for Reconsideration of the Court's Order (Dkt. 923)**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

ARGUMENT............................................................................................................................... 1

    I.      The Opinion's misreading of Section 512(*l*) and *Cox* is clear error............................ 1

    II.    The Court's reasoning would lead to a manifest injustice.......................................... 3

    III.   Plaintiffs' motion for reconsideration is proper ....................................................... 5

CONCLUSION............................................................................................................................ 6

**INTRODUCTION**

Plaintiffs ask the Court to reconsider an important element of its decision not to require certain discovery into Google's overall DMCA program. Dkt. 923 (Court's Memorandum and Order), Dkt. 971 (Plaintiffs' motion), Dkt. 995 (Google's opposition). The Court's explanation that "now that Google has withdrawn the safe harbor defense, discovery designed to show whether Google 'follow[ed] its own DMCA policy,' Pl. Opp. at 1, is no longer relevant to the parties' claims and defenses . . . ." (Dkt. 923 at 7) goes further than was necessary, and is incorrect. Even *Google* has not taken the position that, for example, it need not produce a 30(b)(6) witness to address the features and implementation of Google's DMCA policy. Dkt. 1001 at 3. And, subsequent to its Memorandum and Order (Dkt. 923), this Court ordered Google to produce a document concerning its DMCA policies. Dkt. 944 at 2. The Court's statement that further discovery into Google's DMCA program is unnecessary also is based on a misreading of 17 U.S.C. § 512(*l*). That provision states that a defendant's failure to qualify for the DMCA safe-harbor does not automatically give rise to liability or nullify any other defense. It does not, as the Court's Memorandum and Google suggest, mean that discovery into the defendant's failure to follow its own DMCA policy somehow is irrelevant. Indeed, Google cannot point to a single case supporting this reading. Allowing a defendant to extoll the virtues of its DMCA program, while stopping a plaintiff from taking discovery to test that claim, would be a manifest injustice. Plaintiffs respectfully ask the Court to reconsider these portions of its Memorandum.

**ARGUMENT**

**I.      The Opinion's misreading of Section 512(*l*) and *Cox* is clear error.**

Plaintiffs respectfully contend that the Court's reading of Section 512(*l*) was clear error. The plain language of Section 512(*l*) is controlling: "The failure of a service provider's conduct to qualify for limitation of liability under this section shall not bear adversely upon the consideration

1

of a defense by the service provider . . . ." The language "shall not bear adversely" is limited to a service provider's "*failure* . . . to qualify for limitation of liability." 17 U.S.C. § 512(*l*). As every court to address the issue prior to this one has held, this simply means Plaintiffs cannot argue Google "is liable *because* it failed to qualify for a DMCA safe harbor." *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 2023 WL 11938218, at *11 (W.D. Tex. May 11, 2023), *judgment vacated on other grounds,* 2026 WL 922501 (U.S. Apr. 6, 2026) (emphasis added). For this reason, the provision does not even apply to Google, whose eligibility for the safe-harbor will not be adjudicated because Google withdrew its assertion of the defense. As the heading "Other defenses not affected" shows, Congress intended Section 512(*l*) to clarify its creation of a new affirmative defense does not to affect determinations of liability, in either direction.

Whether Google had a copyright infringement policy that Google deliberately flouted speaks directly to Google's state of mind (a critical factor for knowledge and intent) and should be considered by the jury in determining damages. But Google reads the Court's order to preclude Plaintiffs from even collecting evidence on Google's policy and Google's failure to comply with it. Google argues the order means "a service provider's *conduct* that fails to qualify for the DMCA safe harbor shall have no effect on or relate to its liability for copyright infringement." Dkt. 995 at 5 (emphasis added). According to Google, the order means "a service provider … is not liable"— and indeed cannot be liable—"for conduct that fails to so qualify" for the safe-harbor, contrary to the plain language and express intent of Congress. S. REP. NO. 105-190, at 19, 40. Google withdrew its doomed safe-harbor defense. By definition, all of its conduct has now failed to qualify it for the DMCA safe-harbor and would be shielded from discovery under Google's hyper-literal interpretation of the Court's Order.

While Google relies on *Cox*, that decision actually supports Plaintiffs' reading because it

2

states "[t]he DMCA merely creates new *defenses*," it does not affect the underlying liability determination. *Cox Commc'ns, Inc. v. Sony Music Ent.*, 146 S. Ct. 959, 969 (2026). In briefly discussing Section 512(*l*), the Supreme Court rejected Sony's argument that "Congress must have enacted the DMCA on the presumption that Internet service providers could be held liable in cases such as these," which is not an argument relevant to this case. *Cox*, 146 S. Ct. at 969. Contrary to Google's suggestion, the Supreme Court did not adopt this Court's reading of the statute by simply quoting the language from Section 512(*l*).

Incredibly, Google now claims the Court's reading is "uncontroversial." Dkt. 995 at 6. But Google cannot identify a single case suggesting that Section 512(*l*) shields from discovery any conduct that could have—but ultimately did not—qualify a service provider for the safe-harbor. As explained in Plaintiffs' Motion, *Frontier* and *Bus. Casual Holdings* simply say the *failure* to qualify cannot itself be a basis for liability, as did the court in *Grande* and myriad other decisions. Dkt. 971 at 4–5. Tellingly, even Google never argued Section 512(*l*) could be read so broadly prior to its opposition to Plaintiffs' Motion. Google's motion to vacate and reply never mention Section 512 as a basis for limiting discovery. *See, e.g.*, Dkt. 861 at 2. In deciding a motion to vacate—and with cumulativeness and other grounds to support its decision—this Court should not be the first to adopt this sweeping interpretation of Section 512(*l*).

## II.    The Court's reasoning would lead to a manifest injustice.

Allowing Google to extoll the virtues of its DMCA program, while stopping Plaintiffs from further discovery to test that claim, would also be a manifest injustice. None of Google's arguments to the contrary suggest otherwise.

Google claims Plaintiffs are speculating that Google will invoke its DMCA program in its defense in this case. Dkt. 995 at 9–10. Google could neutralize any speculation easily by committing not to invoke this argument at trial. Google has refused to do so, both in a meet-and-

confer with Plaintiffs, Dkt. 971 at 8, and in its brief to this Court. Indeed, just last month, Google argued that it could not have intended to induce infringement because Google has a DMCA program it claims operates to prevent infringement. Dkt. 843 at 18–20. Google's limited retort that this argument is only referencing Plaintiffs' allegations, Dkt. 995 at 10, simply reflects that Google made these statements in a 12(c) motion, where Plaintiffs' allegations are the focus. Google invoked its DMCA program to argue that it lacks the requisite intent, and plans to do the same at summary judgment and at trial.

Google then claims that Google already has produced discovery concerning "the 'contours' of Google's DMCA policy . . . ." Dkt. 995 at 10–11 ("Third"). But the discovery Google produced has raised more questions than answers. As Plaintiffs explained in their opening brief (Dkt. 971 at 9–10), Google produced hardly any documents concerning its "zero strike policy," █████████

██████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████, its treatment of "marketplace" domains, and whether Google suspended all accounts that a pirate operated or just a subset of those accounts. Tellingly, Google's opposition does not even attempt to argue otherwise. Dkt. 995 at 10–11. Discovery into these features of Google's DMCA program will inform why Google had such an abysmal performance responding to Plaintiffs' infringement notices and why deterrence damages are necessary here. It likewise will reveal that Google's DMCA program, both in design and in operation, favored Google's revenue over compliance with copyright laws.

If the Court's ruling were correct, Google could argue to the jury all it wanted about its "robust" anti-piracy program (Dkt. 116 at 1) *beyond* just Plaintiffs' notices. But Plaintiffs would

not be allowed even to ask Google's witnesses about this program. But even Google has not taken that extreme a position. Google agreed to designate a 30(b)(6) witness to discuss Google's DMCA program and its implementation. Dkt. 995 at 11; Dkt. 1001 at 3 ("Google has agreed to provide wide-ranging corporate testimony related to implementation of its DMCA policy, and specifically treatment of DMCA notices (including from Plaintiffs), even though Google has withdrawn its DMCA defense."). Allowing Google to rely on its DMCA policy without allowing Plaintiffs or the Court to understand these key exceptions to Google's policy would be a manifest injustice.

### III.        Plaintiffs' motion for reconsideration is proper

Google's procedural arguments are also unavailing. Google complains that since Plaintiffs are not seeking to reverse the Court's decision on discovery into the 300 domains, Plaintiffs' motion is improper. Plaintiffs' discretion should be the subject of praise, not protest. Plaintiffs' motion properly asks the Court to "alter [its] conclusion" that Section 512(*l*) categorically precludes discovery into whether a defendant followed its own copyright infringement policies if the defendant withdraws its safe-harbor defense, or to clarify if this was not the Court's intent. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). This conclusion formed a substantial portion of the Court's analysis. Dkt. 923 at 6–7. Google cites no precedent requiring a motion for reconsideration to challenge the totality of a disputed order. *RJE Corp. v. Northville Indus. Corp.*, on which Google relies, concerned a request to deem portions of a prior opinion *dicta*. 2002 WL 1750763, at *1 (E.D.N.Y. July 29, 2002). Here, Plaintiffs challenge the basis of the Court's order, not *dicta*.

Second, Plaintiffs' motion does not improperly raise new arguments, issues, or facts. Plaintiffs advance the same argument here that they advanced in opposition to Google's motion to vacate, namely that "[a]lthough Google no longer invokes the DMCA's safe-harbor from damages, this discovery remains important both to liability and to damages." Dkt. 848 at 1 (citing 17 U.S.C.

5

§ 512). Contrary to Google's suggestion, nothing precludes Plaintiffs from elaborating on this argument, including with additional, supporting caselaw.

## **CONCLUSION**

Plaintiffs respectfully ask the Court to reconsider its holding that Google's withdrawal of its safe harbor defense means discovery into whether Google followed its own DMCA policy is no longer relevant to the parties' claims and defenses.

Dated: June 12, 2026

Respectfully submitted,

/s/ Matthew J. Oppenheim
Matthew J. Oppenheim

Matthew J. Oppenheim
Michele H. Murphy
Jeff Kane
Danae Tinelli
Uriel Lee
OPPENHEIM + ZEBRAK, LLP
4530 Wisconsin Avenue NW, 5th Floor
Washington, DC 20016
202-480-2999 telephone
866-766-1678 fax
matt@oandzlaw.com
michele@oandzlaw.com
jkane@oandzlaw.com
danae@oandzlaw.com
ulee@oandzlaw.com

Lauren Bergelson
Yunyi Chen
OPPENHEIM + ZEBRAK, LLP
461 5th Avenue, 19th Floor
New York, NY 10017
847-562-6677 telephone
866-766-1678 fax
lbergelson@oandzlaw.com
ychen@oandzlaw.com

*Counsel for Plaintiffs*

## CERTIFICATION OF COMPLIANCE WITH WORD LIMIT

The instant brief complies with the word limit in Local Rule 6.3. According to the word processing system used to prepare it, the brief is 1,744 words in length, excluding the cover page, table of contents, signature block, and this Certification.

/s/ *Jeff Kane*
Jeff Kane