

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
jkane@oandzlaw.com

June 15, 2026

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

>    **Re:**    ***Cengage Learning, Inc. et al. v. Google LLC***, **No. 24:cv-04274-JLR-BCM**
>    **Plaintiffs' Reply ISO Plaintiffs' Motion (Dkt. 983) re Google's Refusal to**
>    **Produce Rule 30(b)(6) Testimony on Certain Topics**

[Redacted]

Dear Judge Moses,

Plaintiffs write in response to Google's Opposition (Dkt. 1001, "Opp.") to Plaintiffs' Motion for Discovery Conference re Google's Refusal to Produce 30(b)(6) Testimony on Certain Topics (Dkt. 983, "Mot."). Google's letter contains much rhetoric. But once Google attempts to actually address why it should not produce a witness on the specific topics Plaintiffs raise, Google has no answer. Google complains that Plaintiffs repeatedly argue that these topics are relevant to knowledge, intent, willfulness, and damages. Opp. at 2. But those are fundamental issues in this case. That Plaintiffs' topics speak to these issues demonstrates that the topics are appropriate, not that they are irrelevant. Plaintiffs respectfully request that the Court schedule a conference to rule on several disputed 30(b)(6) topics.[1]

## I.    Google must produce Rule 30(b)(6) testimony on how Google monitored, promoted, and financially benefited from Shopping ads.

Google continues to refuse to produce 30(b)(6) testimony on crucial features of Google's Shopping platform.

- *Topic 33 (conversion tracking)*: Google does not deny that many of the 1,500 pirates at issue in this case used Google's conversion tracking feature (whereby Google records whether a Google user who clicked on an ad subsequently purchased the counterfeit book). Opp. at 3. Google touts that it has agreed to produce a witness "to testify generally regarding the types of 'conversion tracking' available to Merchant Center accounts . . . ." *Id.* at 3. This is insufficient (and does not appear to go beyond publicly available information). Google's conversion data is part of Plaintiffs' direct infringement evidence and counters Google's narrative that its platform is "passive."

---

[1] Subsequent to the filing of Plaintiffs' Motion, the parties reached agreement on Topics 41 and 59.

Hon. Barbara Moses
June 15, 2026
Page 2 of 5

Dkt. 954 at 2. Plaintiffs need to ask Google about this powerful data, including when Google collects it and what Google does with it.

- *Topic 49 (Auction Insight Reports)*: Google's "Auction Insight Reports" contain information regarding how often Google advertises a merchant's products and which competitor's products Google advertised, along with a host of other information about Google's ads. Google collected and provided this information to Plaintiffs and to the pirates at issue. Google's position that it shouldn't have to provide testimony concerning these reports simply because Plaintiffs produced these reports (which originated form Google) in discovery, is nonsensical. Not only did Google repeatedly ask the relevant Plaintiff witness about these reports, but they are based on *Google*'s data. Google needs to provide testimony explaining these, as well as what auction data it maintains in the ordinary course of business.

- *Topic 56 (Google's Business Operations Verification Process)*: Google has a verification process wherein it asks merchants questions about their "business model," "operational practices," "key relationships with third parties," and "details on products and services." Dkt. 389 at 3. Google avoided document discovery into this process by claiming this process is separate from the verification process about which Plaintiffs had filed a motion to compel. Hr'g Tr. 79:18–82:3, 83:14–84:14 (Jan. 20, 2026) (Dkt. 553). Yet in the argument, Google's counsel explained, "[C]andidly, we haven't done a lot of investigation into what that process entails." *Id.* at 84:3–4. A Google witness who knows what this process is must testify about it.

- *Topic 42 (revenue earned by Google LLC) and Topic 45 (antipiracy expenses):* Google claims that rather than disclose its overall revenue, it should be allowed to disclose only the revenue it earned from its Shopping platform. Opp. at 3. Google's erroneously conflates two damages issues. In *On Davis v. The Gap, Inc.*, 246 F.3d 152, 160–61 (2d Cir. 2001), Opp. at 3, the Second Circuit only addressed actual damages, i.e., the "profits of the infringer that are attributable to the infringement." *See* 17 U.S.C. § 504(b). With respect to the deterrence factor of *statutory* damages available under § 504(c), the jury is entitled to know and consider "Defendants' total profits" and "deterrence." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 634 (S.D.N.Y. 2018); Mot. at 2. This makes sense: A defendant who earned $1 million per year will be deterred by a far smaller award than a defendant who earned many billions of dollars (as Google did). And contrary to Google's claim (Opp. at 3 n.8), the revenue the entity Google LLC earned is not disclosed by the 10-K for Google LLC's parent company, Alphabet Inc.

- *Topic 44 (how Google generates revenue from the information it gathers about Shopping ads)*: The jury likewise is entitled to understand that Google's ads generate revenue not just from clicks on the ads, but from Google's use and sale of the information it gathers from those clicks. Google must produce a witness to explain this.

Hon. Barbara Moses
June 15, 2026
Page 3 of 5

**II.      Google must testify on how its DMCA policy was supposed to be implemented versus how it was implemented in response to Plaintiffs' notices.**

Google has agreed to produce a witness about some of the features of its DMCA policy. But in its Opposition, Google tries to use this agreement to *avoid* producing a witness about the most damaging features of its DMCA program. Many of these features affected the 1,500 pirates at issue, and all demonstrate Google's intent, willfulness, and the need for deterrence. Google should not be allowed to hide these features.

- *Topic 10 (zero-strike policy)*: Google had a policy that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ zero-strike policy. That the policy was deprecated in November 2020 (more than a year after Plaintiffs started talking to Google about its pirate ads and Google agreed to look into it) is extremely probative of Google's intent, knowledge, and willful blindness. Moreover, the Court has used January 1, 2020–March 31, 2025 as a general time-period for discovery. E.g., Dkts. 217 ¶ 1(e) (prior DMCA policies), 472 ¶ 5(a) (overall DMCA program). Many of the parties' productions have also used this start date.

- *Topic 11 and Topic 36(d) (duplicate notices)*: When a rightsholder sent a follow-up infringement notice because Google ran an ad that that the rightsholder had informed Google promoted an infringing product, Google responded by threatening to stop processing notices from that rightsholder. Dkts. 160 at 3–5, 983 at 3. Google so threatened Plaintiffs on several occasions. PL0000188745; PL0000188757; PL0000188783. Google inexplicably will not present a corporate witness to testify about this practice, which speaks to Google's intent and willfulness.

- *Topic 18 (whether suspension for copyright infringement on other platforms affects Shopping)*: Google inexplicably refuses to present a witness to explain whether, when it suspended merchants for copyright infringement on platforms *other than Shopping*, it likewise suspended the merchant on Shopping.

- *Topic 25 (*▮▮▮▮▮▮▮▮▮▮*)*: Google has agreed to present a witness to explain ▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, but refuses to present a witness to testify about the list of ▮▮▮▮▮ merchants that Google produced, GOOG-CENG-00000757. There is no principled basis for Google's refusal.

- *Topic 9 (Google's* ▮▮▮▮▮ *and* ▮▮▮▮▮▮ *systems)*: Google kept a list of "▮▮▮▮▮▮," and maintained an intake system for Google personnel to report "▮▮▮▮▮," for which Topic 9 specifically identifies related documents. 26.03.04 O+Z Email; 26.02.17 O+Z Email; Dkt. 985-2 at 8–9. Yet Google refuses to designate a witness who will explain what these systems are.

- *Topic 13 (Shopping notices treated as Search notices)*: Google incorrectly processed approximately ▮▮▮ of Plaintiffs' *Shopping* notices as *Search* notices. Dkt. 550 at 1 and n.1. Yet Google refuses to produce a witness to discuss this error, or how the error affected how Google responded to Plaintiffs' notices.

Hon. Barbara Moses
June 15, 2026
Page 4 of 5

- *Topic 23 (basic data about the DMCA program)*: Google refuses to present a corporate witness concerning the limited data Google produced concerning its overall DMCA program, on which Google has not otherwise designated a witness to testify.

- *Topic 62 (listservs) and Topic 63 (retention policies)*: The Google departments involved in this case utilized numerous listservs. One document Google produced lists over one hundred listservs associated with just one of the departments at issue here. GOOG-CENG-00439415. Plaintiffs have asked Google to prepare a 30(b)(6) witness on just five listservs (Dkt. 985-1 at 16), two of which the Court ordered Google to treat as custodians (Dkt. 185 at 2–3; Dkt. 221 ¶¶ (a)(iii), (iv)). This and Topic 63 go to the basic parameters of Google's document discovery.

- *Topics 36(f) and 36(k) (Google's processing of notices)*: Google refuses to produce a witness to testify about spreadsheets evaluating the performance of Google personnel in processing notices, including several of Plaintiffs' notices. Google should not be allowed to refuse to address this important evidence.

**III.    Google must testify to its treatment of ebooks and ebooks piracy on Shopping.**

Google likewise tries to take credit for producing a witness to testify generally about the ebook ban, a key event in this case. But Google refuses to produce a witness to discuss the salient facts and data surrounding the ban and again focuses only on matters that Google considers helpful to its case.

- *Topic 38 (███████ and ███████)*: Google tries to dismiss the problem it had with "███████", i.e., ███████████████████, as "tangentially related to the ban." Opp. at 4. But "███████" could be one reason why Google repeatedly advertised pirated ebooks despite voluminous notices from Plaintiffs alerting Google to these specific ads/pirates. Google therefore must testify on this issue.

- *Topic 27 and Topic 28 (███████)*: Google touts that it produced "significant data" from "███████" (Opp. at 4), a database Google used for enforcing the ebook ban, and to determine whether merchants were "███████" as part of that process. Mot. at 3. Yet Google refuses to produce a corporate witness to explain what this database is and how it works, and the limited testimony Google provided is insufficient to provide context for this key discovery.

- *Topic 51 (feedback on the ebook ban, and the financial impact of the ebook ban)*: Google still wishes to hide the fact that other publishers and distributors besides Plaintiffs informed Google that despite the ebook "ban", Google was blocking ads for *legitimate* publishers' ebooks while advertising *pirated* ebooks. Google likewise wishes to hide its knowledge of the financial impact of the ebook "ban" on Shopping ads merchants, and on Google itself. Opp. at 4.

- *Topic 60(b) and 60(c) (allow lists)*: Google likewise seeks to bury the fact that it considered implementing the very solution Plaintiffs suggested (allowing ads from legitimate publishers but not pirates), and that it eventually *did* implement that solution, but *excluded Plaintiffs* from participating in it. Opp. at 4. Google's long refusal to

Hon. Barbara Moses
June 15, 2026
Page 5 of 5

implement this solution, and its eventual decision to do so but to exclude Plaintiffs, coupled with Google's knowledge that the ban was not really a "ban", so ebook piracy continued to harm publishers who could not access this solution, is key evidence on intent, willfulness, and deterrence.

- *Topic 61 (Project ▮▮▮▮ as it relates to the ebook ban)*: Google likewise wishes to hide its recognition that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (GOOG-CENG-00474324 at -4328), and what Google did in response to this recognition. Dkt. 985-2 at 31. This is not tangential. Opp. at 4. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is a core issue.

## IV.     Google must testify about its knowledge of Plaintiffs' Trademarks.

Topic 70 concerns Google's "▮▮▮▮▮▮▮▮▮▮" tool, which "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." GOOG-CENG-00412515 at -2515. Google complains that Plaintiffs did not ask one of Google's witnesses, ▮▮▮▮▮▮▮, about the ▮▮▮▮▮▮▮▮▮ tool, but leaves out that Google had refused to produce a witness on this topic, and so didn't designate ▮▮▮▮▮ to testify about it. Google must produce a witness to explain this tool that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, presumably including Plaintiffs' marks. *Id.*

## V.     Conclusion

Plaintiffs respectfully request that the Court conduct a conference to order Google to produce a witness to testify about the above topics.

/s/ *Jeff Kane*
Jeff Kane

*Counsel for Plaintiffs*