

Lauren Bergelson
461 5th Avenue, 19th Fl.
New York, N.Y. 10017
Tel. 212.951.1872
lbergelson@oandzlaw.com

July 28, 2026

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

> **Re:  *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM**
> **Plaintiffs' Opposition to Google LLC's Letter Motion for Permission to**
> **Serve a Third-Party Deposition Subpoena (Dkt. 1076)**

[Redacted]

Dear Judge Moses,

Plaintiffs write in opposition to Defendant Google LLC's ("Google") Letter Motion for Permission to Serve a Third-Party Deposition Subpoena (Dkt. 1076) ("Motion" or "Mot."). Google's request to depose Performics, a marketing agency used by Plaintiff Elsevier Inc. ("Elsevier"), after the deadlines set by the Court should be rejected. *See* Dkt. 1037 at 3 (imposing June 26 cutoff for Google to notify Plaintiffs of the depositions it intends to take and July 23 as the deadline for doing so). First, Google's position that "the need to depose Performics was not reasonably foreseeable prior to obtaining" testimony from Elsevier's witnesses Frederic Guillaud and Rebecca Miller, Mot. at 1, is belied by the facts and history of the case. For instance, Google itself works with Performics on Elsevier's accounts, and even outside of its own business dealings, was well aware of the agency from documents that Elsevier produced as early as July 2025. Declaration of Attorney Lauren Bergelson ("Decl.") ¶ 2. Second, there is no real "need" for Google to depose Performics. Instead, the Motion represents yet another attempt by Google to expand Plaintiffs' discovery beyond the conduct at issue in this case. Indeed, Plaintiffs' "[a]dvertising on Google Shopping," writ large, is not "at the heart of Plaintiffs' copyright and trademark infringement claims." *See* Mot. at 2. Rather, "the heart" of the claims is Google's infringement through its advertisement of known infringing copies of Plaintiffs' ebooks. The Motion should be denied.

## I.    Performics' Deposition Is Not Needed.

Performics is a marketing agency that Elsevier engaged ███████████████████
████████████████████. Decl. Ex. A, Guillaud Tr. 22:5-23:11. Performics' work extends beyond Google Shopping campaigns, ████████████████████
████████████ not at issue in this case. Guillaud Tr. 29:8-15; 33:3-25. Even as to Google Shopping, ads for Elsevier's legitimate products are not the issue.

Hon. Barbara Moses
July 28, 2026
Page 2 of 4

Throughout this case, Google has attempted to burden Plaintiffs by expanding discovery into a broad range of marketing topics that simply are not relevant. The Court has rejected this approach, and it should do so again here. *See, e.g.*, Dkts. 510; 539. A post-discovery deposition to further this burdensome and needless effort goes too far. Plaintiffs' claims focus on the pirate ads for infringing products that Google served to users so they would buy those products. Even the issue of the ebook ban focuses on Google's decision to issue a policy purportedly banning ads for ebooks but not enforce the ban against pirates. Performics was involved in ads that Google did run for Elsevier's products.

## II.    Google's "Revelation" from Elsevier's July Depositions Is Manufactured.

Through a deposition of Performics, Google purports to seek: (i) "substantive testimony about Elsevier's advertising efforts"; and (ii) testimony about "relevant communications with Google." Mot. at 2. Despite Google's assertions to the contrary, Elsevier corporate designee, Mr. Guillaud, was prepared to provide testimony consistent with the parties' agreement regarding (i). And while Mr. Guillaud also provided testimony regarding (ii), Elsevier's other corporate designee, Kelly McCann, who was deposed on April 22 and June 16, was designated to testify regarding the parties' agreed upon scope of (ii). Google, however, decided not to direct those questions to Elsevier's designee. Google cannot now manufacture revelations from recent depositions and fabricate deficiencies in corporate designee preparation to correct its failure to direct relevant questions to Ms. McCann or subpoena Performics before the deadline (as it did with McGraw Hill's marketing agency, Arm Candy).

As an initial matter, Google misconstrues Elsevier's representation regarding Mr. Guillaud's testimony by quoting the deposition topics as originally drafted by Google and not the parties' agreement regarding the scope. Mot. at 2; Decl. ¶ 5. There is no excuse for this. In its Updated Objections & Responses to Google's 30(b)(6) topics and the parties' emails following conferrals, Elsevier represented that Mr. Guillaud would be prepared to testify on the following: "Elsevier Inc.'s general efforts to advertise the Asserted Works on Google Shopping," "Elsevier Inc.'s Google Merchant Center and Ads accounts generally with respect to Google Shopping," "Plaintiff's general practices concerning its efforts to market and promote the Asserted Works," and "generally as to where Google Shopping fits within Plaintiffs' broader advertising efforts on Google's platforms, and how *generally* those efforts changed as a result of the ebooks ban, *if at all*." *See* Piligian Decl. Ex. 1 at 19-20, 23 (Elsevier's responses to Topics 15-16, 20); Decl. ¶¶ 6-7.

Mr. Guillaud's transcript plainly shows that he was prepared to testify as to the negotiated scope of his topics. *See, e.g.*, Guillaud Tr. 30:10-33:16, 34:17-37:23 (testifying regarding efforts and strategy to advertise on Google Shopping); 17:22-18:7, 25:10-28:16, 169:3-170:4 (testifying regarding Elsevier's Merchant Center and Ads accounts); 79:10-83:13, 137:13-140:21 (testifying regarding advertising efforts following the ebook ban). Indeed, Google's counsel made no statement on the record that Mr. Guillaud was unprepared or that Google would hold his deposition open. *See, e.g.*, Guillaud Tr. 171:22-174:2. Google also complains that it did not know the substance of Mr. Guillaud's testimony until after the June 26 deadline for disclosing its remaining deponents. However, Google clearly understood the topics from its own notice and the parties'

2

Hon. Barbara Moses
July 28, 2026
Page 3 of 4

negotiations, and also had been scheduled to depose Mr. Guillaud before the deadline on June 19 but cancelled that deposition. Decl. ¶¶ 3-4.

Moreover, Google did not attempt to elicit the testimony it now claims to need from Ms. McCann, an Elsevier dual-capacity witness who first testified on April 22. *See* Decl. Ex. B, McCann Tr. 1:13; 21:6-22. Ms. McCann, not Mr. Guillaud, was designated as Elsevier's corporate witness on Topic 21, which concerns communications with Google, including by a third-party. *Id.*; Piligian Decl. Ex. 1 at 23-24. However, Google asked Ms. McCann only limited questions about communications with Google, and none about Performics. *See* McCann Tr. 51:17-52:7; 57:15-58:6; 159:22-160:11 (concerning communications regarding the ebook ban or pirate sellers). Google specifically complains that neither Mr. Guillaud nor Ms. Miller "could testify about relevant communications with Google concerning ███████████████████████████████" (an issue that pertains to legitimate ads in any event). Mot. at 2. Google introduced a document at Ms. McCann's deposition concerning this very issue (McCann Tr. 59:10-66:20; Decl. Ex. C, PL0000545804 at 6 (█████████████████████████████████████████████████████ )) but did not ask about Performics or the "███████" that it provided. Google cannot now correct its oversight by complaining about a different corporate designee (Mr. Guillaud) or an individual deposed in her individual capacity (Ms. Miller).

### III.  Google Repeatedly Misconstrues Mr. Guillaud's and Ms. Miller's Testimony.

Additionally, Google repeatedly mischaracterizes Mr. Guillaud's and Ms. Miller's testimony to manufacture gaps in their depositions when none exist. For example, in a parenthetical, Google summarizes Mr. Guillaud's testimony as follows: "████████████████████████████████████████████████████." Mot. at 2 (citing Piligian Decl. Ex. 2 21:24-23:5). But the testimony directly following Google's citation makes clear that it is, in fact, ██████████████████████████████████████████████ Piligian Decl. Ex. 2 23:6-13.

Google also states that "neither Mr. Guillaud nor Ms. Miller could explain what information is provided to Google to create advertisements for the Asserted Works," Mot. at 2, but the testimony included in or directly following Google's citations does not support that assertion. *See* Piligian Decl. Ex. 2 27:9-18 (when asked if "████████████████████████████████████████████ Mr. Guillaud testified that "██████████████████████████████"); Piligian Ex. 3 81:11-20 (when asked "████████████████████████████" Ms. Miller stated that "████████████████████████████████", i.e., others within Elsevier). Moreover, Google possesses any Elsevier information that was provided to Google for Google to create ads for Elsevier products. Therefore, even if this were an issue in the case, which it is not, Google does not need a deposition to explore it, let alone a post-discovery one.

Google also asserts that Mr. Guillaud and Ms. Miller "repeatedly deferred to Performics when asked about the specifics of any advertising efforts on Google Shopping." Mot. at 2. But even within the same excerpts Google cites, both witnesses provided responses to Google's

Hon. Barbara Moses
July 28, 2026
Page 4 of 4

questions. When asked if a spreadsheet "███████████████████████████████████████████████████" Mr. Guillaud testified "████████████████████████████████████████████████████████" Piligian Ex. 2 44:18-45:3. Though Mr. Guillaud ████████████████████████████████████████████████████████, he testified that "████████████████████████████████████████████████████████" Piligian Ex. 2 45:19-46:4. Ms. Miller did not "refus[e] to provide testimony about a document Performics sent to her," as Google said. Mot. at 2. Instead, she provided context for why the sender sent her the information, explained who would be responsible for working with the "internal e-commerce technical people," and explained that she could not confirm what the "final version" looks like because she did not work on it herself. Piligian Ex. 3 86:16-87:25. Google's mischaracterizations do not carry muster when reviewed against the actual transcripts.

### IV.    Plaintiffs Will Be Prejudiced If Google's Motion Is Granted.

Google asserts that "Plaintiffs will not be prejudiced" if the Court grants its Motion. Mot. at 3. This is not correct.[1] In making this argument, Google disingenuously asserts that "the fact discovery deadline is August 20, 2026." Mot. at 3. Google cannot use the deadline for Plaintiffs to complete their discovery from Google as a basis for granting its Motion to take discovery from Elsevier's vendor. Each side has different fact discovery deadlines for a reason. The Court ruled that Google was required to notice its depositions and complete them earlier than Plaintiffs after Plaintiffs argued that, unlike Google, Plaintiffs had timely designated and made their witnesses available. See, e.g., June 18, 2026 Hr'g Tr. 74:22-75:4; 76:2-9; 82:6-13. Plaintiffs should not have to prepare for another fact deposition to be taken by Google, especially an unnecessary one, after the deadline, and when they are focused on completing multiple depositions of Google witnesses due to Google's refusal to schedule them earlier.

### V.    Conclusion

Plaintiffs respectfully request that the Court deny Google's Motion.

/s/ Lauren Bergelson
Lauren Bergelson

*Counsel for Plaintiffs*

---

[1] Plaintiffs also disagree that "Google is not seeking to enlarge the deposition limits in this case, as [the requested deposition] will only be Google's nineteenth noticed deposition." Mot. at 3. In questioning two of Plaintiffs' 30(b)(6) and not dual-capacity witnesses (Morgan Wolbe, Cengage; Catherine Bogin, Macmillan Learning), Google exceeded the witnesses' designated topics, as noted by Plaintiffs' counsel on the record. See Decl. ¶ 8.