**Sarah A. Tomkowiak**
Direct Dial: +1.202.637.2335
sarah.tomkowiak@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C.  20004-1304
Tel: +1.202.637.2200  Fax: +1.202.637.2201
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

July 30, 2026

<u>**VIA ECF**</u>

The Honorable Barbara C. Moses
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, New York 10007

> Re:  *Cengage Learning, Inc. et al. v. Google LLC*, No. 1:24-cv-04274-JLR-BCM
> <u>Reply in Support of Google LLC's Letter Motion for Permission to Serve A
> Third-Party Deposition Subpoena (Dkt. 1076)</u>

Dear Judge Moses:

Google LLC ("Google") writes in reply to Plaintiffs' Opposition (Dkt. 1102) ("Opp.") to Google's Letter Motion for Permission to Serve a Third-Party Deposition Subpoena (Dkt. 1076) ("Mot.").  Plaintiffs primarily oppose Google's motion on two grounds: (1) that Google knew about the existence of Performics through Elsevier's document productions prior to deposing Elsevier's witnesses and (2) that Google's discovery into Plaintiffs' advertising efforts on Google extends "beyond the conduct at issue in this case."  Opp. at 1.  Plaintiffs' arguments ignore the fact that Google could not have known prior to deposing Elsevier's witnesses that Elsevier would not be able to testify about the content and context of the documents from Performics in Elsevier's productions.  Plaintiffs' tired claims that discovery into Plaintiffs' advertising efforts on Google Shopping is irrelevant are misguided, but in any event, the parties have already agreed to include in the scope of deposition testimony topics related to Plaintiffs' advertising on Google (which goes, in part, to Plaintiffs' ability to prove their trademark infringement claims and alleged harm).  Plaintiffs' remaining arguments fail to identify any burden to Plaintiffs from Google taking one more third-party deposition while the parties are still taking multiple fact witness depositions.

### A.    Google Could Not Have Predicted the Testimony of Elsevier's Witnesses.

The gravamen of Plaintiffs' opposition is that Google should have known it would need to depose Performics because it was "well aware of the agency from documents that Elsevier produced."  Opp. at 1.  This argument misses the point, as Google could not have predicted that Performics would need to be deposed for Google to obtain the necessary context about *Elsevier's* advertising efforts on Google as well as context for communications between *Elsevier* and Performics.  As Google showed, Mr. Guillaud's and Ms. Miller's testimony demonstrated that Elsevier completely outsourced their marketing and advertising operations to Performics, and both

witnesses disclaimed virtually any knowledge of what happened once information was passed to Performics. *See* Mot. at 2.

On this point, Plaintiffs make repeated claims that Google "mischaracterizes Mr. Guillaud's and Ms. Miller's testimony to manufacture gaps in their depositions." Opp. at 3. Not so. The testimony Plaintiffs point to only highlight Mr. Guillaud's and Ms. Miller's inability to provide testimony on the actual information Elsevier provided to Google via Performics to create its ads—information that is of critical importance to Plaintiffs' trademark infringement claim, as they allege that Google applied Elsevier's mark to the ads it ran. Compl. ¶ 141. For example, Mr. Guillaud was designated to testify as to Elsevier's general efforts to market the Asserted Works. *See* Dkt. 1076-2. But as Plaintiffs acknowledge, when asked what Performics would do with the information Elsevier provided to Performics to market the Asserted Works, Mr. Guillaud ████████████

████████████████. Opp. at 4. Plaintiffs also cite testimony from Ms. Miller to claim that she was able to provide "context" about a document from Performics on which she was the sole Elsevier recipient. *Id*. Contrary to Plaintiffs' assertions, when asked whether the document sent to her was ████████████████████████ Ms. Miller responded that she ████████████████████████ *See* Piligian Decl. Ex. 2, Miller Tr. ("Miller Tr.") 87:21-88:18. Plaintiffs' examples thus do not prove that Elsevier's witnesses have "provided responses to Google's questions"—they prove the opposite. Opp. at 3-4. What's more, Google's recent deposition of another Plaintiff's marketing agency, Arm Candy, suggests that Performics will be able to provide clear testimony on what information was provided, and in what form, to Google for purposes of listing Elsevier's ads.

Plaintiffs next maintain that Mr. Guillaud's testimony must have been sufficient because Google did not hold his deposition open. Opp. at 2. That Google did not hold Mr. Guillaud's deposition open—one in which the timing, location, and legality of deposing Mr. Guillaud outside of the United States[1] was hotly contested—is beside the point: Mr. Guillaud made clear in his testimony that Elsevier's advertising efforts were entirely outsourced to Performics, and he deferred to them. *See* Piligian Decl. Ex. 1, Guillaud Tr. ("Guillaud Tr.") 24:11-25 (testifying that

████████████████); *id*. at 25:3-9 (same). What became crystal clear at Mr. Guillaud's deposition is that Performics, not Elsevier (and therefore not its corporate designee) has the relevant knowledge of the information Google needs concerning Elsevier's marketing and advertising of the Asserted Works. As discussed in the Motion, Elsevier could have educated Mr. Guillaud on these communications but chose not to do so. *See* Mot. at 3.

As a last-ditch effort, Plaintiffs argue alternatively that Google simply asked the wrong questions of the wrong person. As their argument goes, despite the fact that Mr. Guillaud and Ms.

---

[1] Plaintiffs incorrectly note that Google "cancelled" an earlier deposition of Mr. Guillaud that had been scheduled before the deadline on June 19. Opp. at 3. What actually happened is that Plaintiffs withdrew their confirmation of Mr. Guillaud's June 19 deposition after Google raised the fact that France's blocking statutes would not allow for Mr. Guillaud to be deposed in France, and as a corporate representative of an entity that had chosen to sue Google in New York, Mr. Guillaud must appear in the United States for the deposition. *See* Piligian Decl. ¶¶ 3-4.

Miller appeared on nearly *all* of the advertising-related communications with Performics, it was Ms. McCann who was designated on Topic 21, and that she, not Mr. Guillaud, should have been asked questions about Performics in a corporate capacity. Opp. at 3. This is revisionist history. Ms. McCann's role at Elsevier related to ███████████████████████. McCann Tr. 7:14-22; 9:25-10:12. While Ms. McCann was designated to testify generally to Elsevier's communications with Google, at all times, Google's counsel understood Plaintiffs' position to be that advertising and marketing were separate topics that would be designated to separate individuals, and while some overlap was inevitable, communications regarding these topics would not fall to Plaintiffs' anti-piracy focused designees. Ms. McCann's testimony underscores this fact, as she ██████████████████████████████████████████████. *See* Piligian Decl. Ex. 3, McCann Tr. ("McCann Tr.") 246: 8-24, 274:13-19. Notably, in her testimony related to the communications Elsevier had with Google, Ms. McCann did not raise Performics a single time as an entity communicating with Google. And as to the exhibit referenced by Plaintiffs that has individuals from Performics copied on it, Ms. McCann's testimony centered around *her* statements and *her* knowledge of the ebook ban, as ████████████████████████ ████████████████████ *See* Dkt. 1104-2, Ex. C at 6-7. Tellingly, Mr. Guillaud was ████████████ ███████████████, and he could not testify to ████████████ ████████████████████████ Guillaud Tr. 91:23-92:3.

### B.     Performics' Deposition Is Necessary.

Plaintiffs also make the audacious claim that because Google was in communication with Performics, it should already have the information Performics provided to Google for Elsevier's ads, rendering Performics' deposition unnecessary. Opp. at 3. That Google may also possess some information provided to Google by Performics ignores that (i) it is unclear how Google would verify that Performics provided specific information in an advertisement for an Elsevier Asserted Work; and (ii) the information sought from Performics as an agent of Elsevier goes beyond the mere information in Elsevier's Google advertisements. Google has attempted to obtain this information from a party, Elsevier, but it deflected to Performics, thus rendering Performics' deposition necessary. Moreover, even with respect to the Performics-related documents that Elsevier's witnesses did attempt to testify to, they baldly called into question information they received from Performics. For example, when asked about a presentation from Performics that discussed ████████████ ███████ Mr. Guillaud insinuated that the presentation was provided in order to sell additional services to Elsevier. Piligian Decl. Ex. 1, Guillaud Tr. 162:19-164:6; 167:19-25. Ms. Miller similarly testified that the numbers included in the presentation were ████████████" and "████████ ████████████" Piligian Decl. Ex. 2, Miller Tr. 231:20-232:14. However, when asked what information was inflated, Ms. Miller testified that she thought the "████████████████ ████████" were made to look ████ and that she did not know ████████████████ *Id.* at 236:3-19. Both Mr. Guillaud and Ms. Miller similarly could not testify about numerous other feed-related issues that Performics reported to Elsevier. Mot. at 2-3. This testimony, which must be elicited from Performics, is both relevant and necessary, as it relates to the harm (or lack thereof) that Elsevier suffered as a result of the alleged piracy of its Asserted Works on Google and Google's "ebook ban." Coupling that with the testimony related to Plaintiffs' trademark claim surrounding the materials provided to Google on behalf of Elsevier for purposes of its advertisements, render the deposition of Performics critical to Google's defenses. Not allowing

3

Google to depose Performics would also allow Elsevier to be the only Plaintiff who does not have to speak directly on these topics.

Finally, Plaintiffs claim that this deposition would be burdensome simply because they would have to prepare for "another fact deposition" that falls outside Google's discovery deadline. Opp. at 4. This argument does not speak to burden. Fact depositions in this case remain ongoing. Google remains within its limit of twenty depositions.[2] Performics is a third party and Google seeks only its oral deposition. Plaintiffs' counsel have separate teams working on offensive and defensive depositions and only one attorney needs to attend this deposition, remotely if they prefer. For the above reasons, the Court should grant Google's request.

Respectfully submitted,

/s/ Sarah A. Tomkowiak
Sarah A. Tomkowiak (*pro hac vice*)
of LATHAM & WATKINS LLP

cc:    All Counsel of Record (via ECF and email)

---

[2] Plaintiffs' footnote contention that their scope objections to certain questions somehow renders their corporate designees "dual-witnesses" and thus those depositions count against Google's deposition limit is a non-starter. Opp. at 4 n.1. At best, those objections speak to whether the objected-to testimony will be admissible at trial as corporate testimony.

4