

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
jkane@oandzlaw.com

August 6, 2026

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

> **Re:** ***Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM**
> **Plaintiffs' Letter Motion for Discovery Conference on Google's Refusal to**
> **Produce Rule 30(b)(6) Testimony on Topic 32**

**[Redacted]**

Dear Judge Moses,

We represent all Plaintiffs in this matter. We write to request a discovery conference regarding Google's refusal to produce Rule 30(b)(6) testimony on Plaintiffs' Topic 32.[1]

Topic 32 seeks testimony on the data included in the GOOG-CENG-00441970 spreadsheet that Google produced pursuant to Dkt. 221 ¶ (c), which was supposed to identify the dates Google claims to have delisted the at-issue domains. Dkt. 985-2 at 18. But both the scope of the data contained in GOOG-CENG-00441970, and the meaning of the dates listed therein, are confusing on their face and require explanation. Dkt. 370 at 1–2. Google produced GOOG-CENG-00441970 in response to a discovery order compelling "documents or data sufficient to identify the date on which it delisted each of the challenged documents." Dkt. 221 ¶ (c). Google should produce 30(b)(6) testimony on what that spreadsheet actually shows and does not show.

### I. Google must produce Rule 30(b)(6) testimony on its delisting-date spreadsheet (Topic 32).

Last October, the Court ordered Google to produce any "documents or data sufficient to identify the date on which it delisted each of the challenged [URLs]" at issue. Dkt. 221 ¶ (c). Those delisting dates are the dates on which Google claims to have stopped advertising particular URLs in response to Plaintiffs' notices informing Google that the URLs contained infringing copies of Plaintiffs' works. In response, Google produced one spreadsheet, GOOG-CENG-00441970. Declaration of Attorney Jeff Kane ("Decl."), Ex. 1. Plaintiffs understand the data in

---

[1] The parties conducted a meet-and-confer concerning Topic 32 (and other 30(b)(6) topics) on July 9, 2026. The conferral lasted approximately 25 minutes. The participants were Yunyi Chen, Jeff Kane, and Uriel Lee (Plaintiffs' counsel) and Roberto Borgert, Caroline Clarke, Sarah Tomkowiak.

Hon. Barbara Moses
August 6, 2026
Page 2 of 2

the spreadsheet to be limited to data pertaining to the 1,500 pirate-domains at issue in this case. The spreadsheet is highly relevant.

Plaintiffs need to confirm whether the dates in the spreadsheet correspond to actual delisting events or just hypothetical dates on which URLs were supposed to be delisted. This is necessary for understanding whether and, if so, when Google actually did stop advertising the infringing products sold at the URLs listed in the spreadsheet. Whether and/or for how long Google continued running ads for products it knew were infringing is relevant to key issues in this case, including the extent of Google's misconduct, Google's intent and the need for deterrence.

But Google's GOOG-CENG-00441970 spreadsheet is confusing, to say the least. First, it is incomplete. It contains less than ▮▮▮ URLs, whereas another Google source claims Google removed more than ▮▮▮▮▮ URLs just from the initial 1,239 domains Plaintiffs identified. Dkt. 370 at 1 n.1. And the spreadsheet does not give any indication as to how this small percentage of the at least more than ▮▮▮▮ relevant URLs were selected.

Further, more than ▮▮ of the entries in the spreadsheet do not have a URL listed at all. For those entries that *do* have a URL listed, it is unclear the date on which Google claims to have delisted the URL. Some entries have a date, a URL, and say ▮▮▮▮▮▮▮▮▮▮. E.g., Ex. 1, "OZ Sorted" tab, cells G30 through K30. But it is unclear whether that is the date that Google claims to have delisted the URL, or is simply the date a Google system checked to see if ads for that URL in fact were still running. And in more than ▮▮ cases, the spreadsheet says ▮▮▮▮▮▮▮▮▮, which would seem to indicate that the URL was *not* removed.

And each row of the spreadsheet lists one "Offer ID" (an identification number for the ad that the merchant asked Google to run). Offers can be associated with only one URL at a time. Yet in some instances, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

It is therefore unclear what GOOG-CENG-00441970 actually purports to show, and only Google can explain it. Google must produce a 30(b)(6) witness to explain this spreadsheet.

## II.    Conclusion

Plaintiffs respectfully submit that Google should be ordered to produce testimony on Plaintiffs' 30(b)(6) Topic 32.

/s/ *Jeff Kane*
Jeff Kane

*Counsel for Plaintiffs*