# EXHIBIT 4

# [Filed Under Seal]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------:

CENGAGE LEARNING, INC.,        : Case No.: 24-cv-4274

et al.,                        :

                Plaintiff, :

    v.                         :

GOOGLE LLC,                    : New York, New York

             Defendant. : July 1, 2026

------------------------------:


TRANSCRIPT OF STATUS CONFERENCE HEARING

BEFORE THE HONORABLE BARBARA C. MOSES

UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:          OPPENHEIM & ZEBRAK, LLP
                        BY: Jeff Kane, Esq.
                            Yunyi Chen, Esq.
                            Uriel Lee, Esq.
                        4530 Wisconsin Avenue NW
                        Washington, DC 20016

For Defendant:          LATHAM & WATKINS LLP
                        BY:  Sy Damle, Esq.
                             Caroline Clarke, Esq.
                        555 Eleventh Street NW
                        Washington, DC 20004


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

AMM TRANSCRIPTION SERVICE  -  631.334.1445

testimony about the ███████ project.

MR. KANE: So the witness about whom -- the two witnesses about whom we've discussed the -- with whom we've discussed the ██████████ both said that they were only, sort of, tangentially involved, i.e., that they were involved with one, sort of, incarnation of the project, but it was short lived and they didn't do a whole lot on the project. They weren't able to actually, like, testify about what it was, ████████████████████; that kind of thing.

The corollary to the ██████████ is 60C, which is the Beta program.

THE COURT: Right.

MR. KANE: So in, I believe, late 2024, or maybe early 2025, Google did, in fact, create an allow list. It did the thing that plaintiffs had been suggesting it do, but it excluded plaintiffs from the program; in other words, it allowed a handful of publishers to advertise e-books on Shopping despite retaining the overall ban on e-books, but it wouldn't allow plaintiffs --

THE COURT: Your clients.

MR. KANE: Exactly. It wouldn't allow plaintiffs to do it.

THE COURT:  And you think that's because your clients were being so pesky and threatening and bringing litigation?

MR. KANE:  As a matter of fact, a Google document and an e-mail from Google's attorney both said the reason plaintiffs weren't being included in the program was because of this litigation.

THE COURT:  All right.  So you already know that this Beta program was implemented.  You already know that your clients were excluded from it.  And you already know -- or at least you just told me that you already know why.

What else do you need?

MR. KANE:  A big thing we need is, how are they able to do it?  So --

THE COURT:  What do you mean, "how are they able to do it"?

MR. KANE:  How were they able to make the allow list happen?

What they had been telling plaintiffs when plaintiffs were suggesting this for a couple years is an allow list ███████████  ███████████

████████████████████████████████

██████  How is it that they suddenly were able to do it?

AMM TRANSCRIPTION SERVICE  -  631.334.1445

THE COURT:  Why does that matter if, in one way or another -- your pitch is going to be, one way or another, obviously, they were.  Either they weren't telling us the truth when they told us they couldn't do it, or they figured it out between then and now, and -- but not for our benefit.

I mean --

MR. KANE:  Two reasons:  One, if it turns out it was pretty easy and they were able to just do it, that says a lot about intent.

In other words, the reason they weren't dealing with this problem wasn't that it was really hard and they had to work hard to figure it out; it was, in fact, that they just weren't prioritizing it.

Second, we think what actually happened is Google was --

THE COURT:  Just to --

MR. KANE:  Sure.

THE COURT:  -- relate that back to what your ultimate burden is, this is, then, going to be one of the little nudges, right?

Your argument at some point down the road is going to be, here's a whole bunch of things, ladies and gentlemen of the jury, or here's a whole

AMM TRANSCRIPTION SERVICE  -  631.334.1445

bunch of things, Judge Rochon, that show that Google was actually inducing copyright infringement by these pirates. And one of the -- one of the elements of this pro-piracy ecosystem was that they couldn't get off their rear ends -- or claim they couldn't get off their rear ends to do this thing, which, in fact, they could.

MR. KANE: I think it's partly that. I think it probably goes to intent. And I think it probably goes to the need for deterrence. In other words, Google was not sufficiently motivated to solve the problem of piracy. It prioritized other things over solving that problem; therefore, a large award is needed to deter Google from having that mis-prioritization in the future.

THE COURT: Okay.

But you could -- relevance to liability and relevance to deterrence is not going to be two separate arguments here because you could make the same two arguments about anything which you say shows that Google was insufficiently active to combat piracy.

MR. KANE: Yeah. The distinction I had in mind is just, for this one, like, how hard it was to do makes a difference. In other words, if they were

able to just throw the Beta program together in response to this pressure from the potential partner that they had, that's a lot different than if it took them years to figure out how to even implement the Beta program.

In other words, if Google's story is, we didn't do this because it was too hard and it turns out they were able to do it very easily, that's a lot different than if they said, we can't do this because it's too hard and, eventually, they just did a lot of work and figured out how to do it.

THE COURT:  Or there was some technological breakthrough that made it easier or whatever.

MR. KANE:  Exactly.  Yeah.  We --

THE COURT:  All right.

Ms. Clarke?

MS. CLARKE:  Sure.

So just starting with ██████████, I just want to remind the Court that we had a dispute related to ████████, I believe, in January that I argued before you.  And as part of the dispute, we made clear, this ████████ initiative was extremely broad and was actually related to a much larger project that Google was undertaking.  A lot of it related to ████████████████████

AMM TRANSCRIPTION SERVICE  -  631.334.1445

████████████████████████████████   So to the extent that that program is part of it, then I expect testimony will come through.

But, again, as you noted, plaintiffs already have received significant testimony about this pretty small program, so designating a whole other topic on it just does not make sense, and the burden would be much stronger on Google.

THE COURT:  Now, what about the Beta program?  This is the program which, as I understand it, actually is happening, but not for the benefits of Mr. Kane's client?

MS. CLARKE:  Yes.  So, again, this has been discussed in at least two witnesses' depositions.  And, in fact, one of our 30(b)(6) witnesses was involved in creating the ████████████████

████████████████████████████████

Beta program.  I don't -- ██████████████████

████     Our understanding is that was done by counsel and would be privileged discussions anyway.

So he did testify about that and did clarify that a lot of these discussions were made by Google's legal counsel, so even if we were to designate someone on this topic, a lot of it would be privileged discussions.  And he's already

provided the foundation of ███████████████████ ██████████████████████████████, the purpose of it, and things like that. So, again, no need to burden another witness with this specific topic.

THE COURT: So, Mr. Kane, focusing on Subsection C, the Beta program, you've had, it sounds like, some testimony.

I'm hearing two things from Ms. Clarke. First, you've had some testimony on the Beta program. And second, the question that you really want to know the answer to, which is, why are my clients not included, is going to be behind a privilege wall.

What do you expect to get if I direct Google to provide a 30(b)(6) witness on the Beta program?

MR. KANE: So two things: One is, the witness yesterday didn't know much about the Beta program. He was, sort of, tangentially involved, but he left the company in the middle of the Beta program and really didn't know a whole lot about it. So I think Ms. Clarke is overstating what we've learned about the Beta program already.

I would actually say the thing we really

want to know is not so much why were our clients excluded, I think we have a pretty clear answer on that.  It's more, how is it that they were able to do this?

Like, for years, they were telling us ████ ████████████████████████████, and then --

THE COURT:  So you want, sort of, an engineering look at it.  Well, we did this and we did this, and we had this new whiz kid from MIT who wrote a new algorithm for us, or something like that.

MR. KANE:  It would be an engineer if the solution was an engineering solution.  I don't think it was.

I think what happened is ██████████ ████████████████████████ ██████████████████████████████ ████████████████████████████████ ██████████████████████████████ ████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████

THE COURT:  You think Google just got motivated.

AMM TRANSCRIPTION SERVICE  -  631.334.1445

MR. KANE:  Exactly.

We think what actually happened is not that they figured out a solution, but that once there was enough money involved --

THE COURT:  So you want a businessperson -- if it were a percipient witness, it would be a businessperson.  A 30(b)(6) witness might have to be educated by various business types.

MR. KANE:  That's --

THE COURT:  To, sort of, tell you the C-suite story behind it.

MR. KANE:  That's my suspicion, is that that's the actual explanation for this, and that's what the documents seem to say.

THE COURT:  All right.

No on the ███████████.  Yes on the Beta program from a business perspective.

What I would like to do now is take a ten-minute break -- we have been going over an hour and a half -- in part so that I can carve out a little extra time for you and we can come back and do the rest of them.  I have to make a couple of calls to make that happen.  So we'll reconvene in ten minutes, and we will stand in recess until then.

(Recess)