**Sarah Tomkowiak**
Direct Dial: +1.202.637.2335
sarah.tomkowiak@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200 Fax: +1.202.637.2201
www.lw.com

LATHAM & WATKINS LLP

FIRM / AFFILIATE OFFICES
Austin Milan
Beijing Munich
Boston New York
Brussels Orange County
Chicago Paris
Dubai Riyadh
Düsseldorf San Diego
Frankfurt San Francisco
Hamburg Seoul
Hong Kong Silicon Valley
Houston Singapore
London Tel Aviv
Los Angeles Tokyo
Madrid Washington, D.C.

September 4, 2026

**VIA ECF**

The Honorable Barbara C. Moses
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, New York 10007

Re: *Cengage Learning, Inc. et al. v. Google LLC*, No. 1:24-cv-04274-JLR-BCM
Defendant's Opposition to Plaintiffs' Letter Motion to Compel Targeted Additional Discovery and Extend Plaintiffs' Discovery Cutoff (Dkt. 1177)

Dear Judge Moses:

The night before the close of a two-year fact discovery period, Plaintiffs filed a motion (Dkt. 1177, the "Motion" or "Mot") effectively seeking to reopen discovery, asking for additional documents, additional deposition testimony, and a one-month extension of all deadlines.[1] Plaintiffs' sole justification is that they purportedly "learned last week in a deposition that [redacted]" Mot. 1. As Plaintiffs know and as was discussed extensively at the September 1 hearing, that is not true. **First**, that is not what Mr. R. said. On August 26, Mr. R. testified in his personal capacity that, for reasons unknown to him, [redacted]. Dkt. 1169-1, 364:19-368:23; *see also id.* 375:6-10 ("[redacted]"). **Second**, Plaintiffs did not learn about this [redacted] for the first time last week. Ms. B., Google's corporate representative on the [redacted] testified on June 24 that [redacted] *See* Dkt. 1094-1, 293:11-295:4; *see generally* Dkt. 1173, 2-3.

That (actual) factual conclusion, learned over *ten weeks ago* and *before* Plaintiffs took the depositions of the five individuals Plaintiffs identified to the Court as having knowledge about Google's DMCA policy, *see* Dkt. 998, Hr'g Tr., 49:18-51:16 (June 8, 2026) (identifying A.B.,

[1] Almost all deadlines Plaintiffs seek to extend (*e.g.*, Plaintiffs' deadline for responding to Google's reformatted Interrogatory 16) are unrelated to the additional discovery Plaintiffs demand. *See* Dkt. 1178-1.

LATHAM&WATKINS LLP

B.B., J.E., Ms. Kelly, and W.R.), cannot justify reopening discovery. And Plaintiffs' unrelated demand for additional discovery into Google's *misrepresentation* policy [redacted] is completely without merit. Plaintiffs already possess the data they need to understand which at-issue merchants were suspended under other Google policies (and why). The Court should deny Plaintiffs' Motion in full.

## I. Plaintiffs Have Not Demonstrated Good Cause To Reopen Discovery

Apart from two short depositions ordered by the Court on September 1, fact discovery is now closed. Requests to reopen discovery are governed by Rule 16(b)(4), "which requires a litigant to show 'good cause' to modify a pretrial scheduling order." *Reed v. Logan*, 2025 WL 3241159, at *2 (S.D.N.Y. Nov. 20, 2025) (Moses, J.). In assessing good cause, courts consider factors like "whether the moving party was diligent in obtaining discovery," "the foreseeability of the need for additional discovery in light of the time allowed," and "the likelihood that the discovery will lead to relevant evidence." *Yusupov-Milleovoi v. Kingyum Transports LLC*, 349 F.R.D. 491, 495 (S.D.N.Y. 2025). No good cause exists here.

Plaintiffs' Motion is premised on a blatant misrepresentation of Mr. R's testimony: he did not testify that [redacted] *See* Mot. 1. [redacted] *See supra*, 1. Plaintiffs' assertion that Google "attempted to shroud" in secrecy information about the facts uncovered in Google's investigation is wrong, too. Google affirmatively *educated* Ms. B., Google's corporate designee on the [redacted] about the investigation and the facts it uncovered (including regarding a [redacted]). Ms. B. testified to those facts during her deposition, which occurred *before* Plaintiffs deposed any witnesses with percipient knowledge of [redacted] during the relevant period (including A.B. on July 14, B.B. on August 4, Ms. Kelly on August 20, and W.R. on August 26). And the undersigned attempted in good faith to allow S.B., Ms. Kelly, and W.R. to provide *factual* information (even though learned through the investigation and not contemporaneously during the relevant period) while instructing them not to testify to privileged communications or reveal protected work product. *See* Hr'g Tr., 150:18-151:12 (Sept. 1, 2026).

To the extent there are more facts to learn, Plaintiffs will have an opportunity to learn them during the supplemental deposition ordered by the Court. No good cause exists for any additional discovery beyond that.

## II. Google Has Already Produced Contemporaneous Records of Its DMCA Policy Implementation[2]

[2] While Plaintiffs also mention "documents that Google collected in its investigation" and Google's "investigation file," *see* Mot. 2 & n.3, those categories were the subject of Plaintiffs' previous motion (Dkt. 1093) that the Court resolved on September 1, Dkt. 1187. We do not understand Plaintiffs to seek those categories of documents in this Motion, too. To the extent Plaintiffs do seek them, Google respectfully

LATHAM&WATKINS LLP

Plaintiffs first demand that Google produce "any not-yet produced documents" reflecting four categories of information related to Google's implementation of its DMCA policy and associated work by its vendors. Mot. 2. Plaintiffs concede that they already asked for each of these categories and that Google produced documents in response. *See id.* Indeed, Google ran the parties' agreed-upon search terms (many of which targeted these categories of documents) over the custodial files of *all* the Google employees Mr. R. identified [redacted], *see* Dkt. 1169-1, 376:3-23, as well as the custodial files of five vendor agents. Declaration of Caroline Clarke ("Decl.") ¶ 4. Any non-privileged documents and communications have already been produced. *See id.* ¶¶ 5-6 Plaintiffs used certain [redacted] as exhibits in depositions without issue (*id.* ¶ 6), and do not need Google to identify these documents for them.

Plaintiffs speculate that there must be "significant gaps" in what Google produced because Plaintiffs "did not receive the [redacted] showing that Google [redacted]. *Id.* To be clear: no witness testified that [redacted] *supra*, 1, and the exhaustive discovery in this case has not surfaced any [redacted] Plaintiffs' rank speculation that there are additional responsive documents is inadequate to carry their burden to show good cause. *See Harris v. Computer Assocs. Int'l, Inc.*, 204 F.R.D. 44, 45 (E.D.N.Y. 2001) ("When a party merely speculates as to what evidence would be produced upon further discovery, a court is correct in denying the party's request to allow more discovery.").

## III. Plaintiffs Do Not Require "Follow-Up" Depositions

Plaintiffs also seek what they describe as "targeted follow-up depositions" concerning "[redacted]" Mot. 2-3. But, as described above, there are no additional contemporaneous documents to produce. And Plaintiffs had ample opportunity to question each of the relevant Google employees with percipient knowledge of [redacted] (including A.B., B.B., J.E., Ms. Kelly, and W.R.) during their depositions in July and August *after* Plaintiffs learned about the [redacted]. The Court has already considered and rejected Plaintiffs' argument that they could not have known what to ask these individuals until Mr. R. testified on August 26. *See* Hr'g Tr., 103:19-105:22 (Sept. 1, 2026). To the extent Plaintiffs think there is more to learn, they will be able to explore those issues during the two additional hours of 30(b)(6) testimony the Court ordered earlier this week. Dkt. 1187. Good cause does not exist for any additional deposition testimony.[3]

---

refers the Court to its argument in Dkt. 1114. *See also* Hr'g Tr., 150:4-151:2 (Sept. 1, 2026) (finding that Google properly withheld investigatory materials and did not waive privilege or work product protections).

[3] Plaintiffs' claim they may "need to depose Google's vendors" is inconsistent with their representation to the Court that they could not. *See* Hr'g Tr., 140:15-141:15 (Sept. 1, 2026). But Plaintiffs' ability to depose those vendors is not within Google's control, and the Court should not grant leave for Plaintiffs to exceed the twenty-deposition limit to attempt to depose them now, when Plaintiffs chose not to pursue their notices to the vendors and instead deposed additional Google employees. *See* Dkt. 998, Hr'g Tr., 55:5–21 (June 8, 2026).

LATHAM&WATKINS LLP

## IV. Further Discovery Regarding Google's Misrepresentation Policy Is Not Proportional

Wholly untethered from the purportedly "new" fact Plaintiffs supposedly learned at Mr. R.'s deposition, Plaintiffs also demand voluminous (and duplicative) discovery related to merchant suspensions under Google's Shopping misrepresentation policy. Good cause does not support Plaintiffs' belated demand for this data.

Under the misrepresentation policy, Google may suspend [redacted]. Ex. A, 97:5-99:5, 235:6-241:25. [redacted], which has been the subject of other discovery disputes. *Id.* 305:24-306:5. Months ago, Google produced, for the merchants at issue, the data from [redacted]o assess whether a merchant should be [redacted]. Decl. ¶ 7. Google also produced [redacted] selected by Plaintiffs, for each merchant ([redacted]). *Id.* This data was the subject of 30(b)(6) Topics 27 and 28 at the July 1 hearing. Dkt. 983; Dkt. 1047.

Plaintiffs first requested additional [redacted] data on May 22 shortly after deposing A.L. Decl. ¶ 8. For months, Google worked in good faith to resolve this dispute, notwithstanding Google's position that Plaintiffs' demands were disproportionate, particularly given Google already produced the [redacted] and [redacted] *Id.* ¶¶ 9-13. Google ultimately agreed to produce notes and comments [redacted] for a sample of 30 merchants (and 3 other categories of data). *Id.* ¶ 13. After extensive negotiations, the parties agreed to a sampling protocol with each side selecting 15 merchants. *Id.* ¶¶ 14-23.

By demanding *all* notes and comments [redacted] for the at-issue merchants, Plaintiffs appear to be abandoning that hard-fought compromise. Plaintiffs know that producing notes and comments for the [redacted] would be impossibly burdensome. Not only would Google need to collect and image the notes and comments (of which there are [redacted], it would need to review each note and comment for privilege prior to producing. Decl. ¶ 26. Google estimates it would need to image and review over [redacted]. *Id.* While burdensome to produce, these notes are far from critical to Plaintiffs' understanding of why merchants were suspended. The [redacted] violated the misrepresentation policy because it shows [redacted]. The notes and comments provide no additional information—they are simply [redacted] to determine their response.

These notes and comments are also irrelevant to Plaintiffs' claim of contributory infringement. Google's [redacted]. Ex. A, 97:5-99:5. The [redacted] *id.*, and the underlying notes and comments are even more attenuated. Plaintiffs try to shoehorn in the argument that

LATHAM & WATKINS LLP

Google's August 11 supplemental production of suspension and reactivation data necessitated this Motion,[4] but the suspension data is only tangentially related to the notes and comments [redacted] (about which the parties have been negotiating for months). Regardless, Plaintiffs already possess [redacted] and have secured testimony on both. There is no additional relevance of the notes and comments that could warrant Google undertaking this burden at this late stage (after Plaintiffs delayed resolving this dispute).

* * *

The Court should deny Plaintiffs' Motion.

Respectfully,

*/s/ Sarah A. Tomkowiak*
Sarah A. Tomkowiak (*pro hac vice*)
of LATHAM & WATKINS LLP

cc: All Counsel of Record (via ECF and email)

[4] Google agreed to provide the data it produced on August 11 as a compromise, but disputes Plaintiffs' suggestion that Google's earlier productions were deficient.