O+Z Oppenheim + Zebrak, LLP
WASHINGTON – NEW YORK

Michele H. Murphy
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.450.5643
michele@oandzlaw.com

September 8, 2026

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

**Re: *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM**
**Plaintiffs' Letter Motion to Compel Production of Google's Communications with At-Issue Pirates**

[REDACTED]

Dear Judge Moses,

We represent all Plaintiffs in this matter. We write to request a discovery conference for an order compelling Google to produce its communications with the very pirates at issue in this case. Recent deposition testimony makes clear that Google hid the ball regarding these communications. Among other things, Google's communications with the pirates are probative of Google's intent and willfulness in promoting the pirates' known infringing products.

Plaintiffs diligently have been attempting to resolve these issues with Google since the depositions at issue. *See* Decl. of Michele H. Murphy ("Decl.") ¶¶ 12–15. Based on the parties' extensive back-and-forth, Plaintiffs reasonably believed a resolution could be reached. However, after weeks of stonewalling and statements that counsel was "still conferring with their client," Google ended up categorically refusing Plaintiffs' requests (even as narrowed). *Id.* Plaintiffs therefore bring this motion.[1] Plaintiffs should not be denied this discovery on account of Google's misrepresentations, material omissions, and failure to search for and produce clearly relevant documents in good faith.

## I. Background

Google had full knowledge of the 1,500 pirate domains that are associated with the merchant accounts Plaintiffs identified to Google as pirate sellers. Google's communications with these pirates necessarily speak to their business relationship, Google's ads for the infringing products the pirates sell, warnings or disapprovals (if any) Google sent the pirates, and more.

Plaintiffs propounded RFPs 29 and 115 seeking communications between Google and the 1,500 pirates. Decl. ¶¶ 7–9. In the parties' discussions about these RFPs, Google represented that the way to retrieve these communications was through its [redacted] database. *Id.* ¶¶ 10–11.

1 The parties met-and-conferred on August 4 and 28 (for about 36 and 33 minutes, respectively, during which several issues were discussed). *Id.* ¶¶ 12–15.

Specifically, Google explained that, in [redacted]" *Id.* ¶ 11. And the only way to search [redacted] is by [redacted] number. *Id.* ¶ 10. Relying on these representations, Google refused to conduct any other searches in response to RFPs 29 and 115. To deter Plaintiffs from further probing, Google took the position that "[t]o the extent Plaintiffs move on RFP 115, we intend to seek fees and costs." *Id.* ¶ 11. Despite this, Plaintiffs continued to seek information about repositories other than the [redacted] database, and ways to search [redacted] other than by [redacted] but to no avail. *Id.*

However, recent depositions have made clear that Google's search for pirate communications was deficient in three ways. First, [redacted] can be searched by [redacted], not just by [redacted]. Second, Google communicated with the pirates via a separate mechanism: Google's Merchant Center user interface. Third, Google's [redacted] Google must produce these communications.

## II. Google must produce its communications with the at-issue pirates.

Google's search of the [redacted] database was incomplete, and it failed to search communications sent via the Merchant Center interface at all.

Despite information provided by Google during a November 19, 2024 meet-and-confer that the [redacted] database could only be searched by [redacted], two Google witnesses, Ms. B and Ms. Kelly, testified that [redacted] Decl. Ex. 1, 311:16–312:2; Ex. 2, 144:6–25; ¶ 10. Plaintiffs also never agreed that Google's productions in response to Plaintiffs' RFPs 29 and 115 should be limited to only communications about Plaintiffs' copyright infringement notices. Decl. ¶ 17.

It is now clear that, by only searching for [redacted] associated with Plaintiffs' copyright notices, Google excluded from production other highly relevant communications with pirates. For instance, Google's search would have excluded its communications with a pirate about account suspensions and reactivations under non-DMCA policies, such as pursuant to Google's "[redacted] its ebook "ban." *See* Decl. Ex. 3 (Mr. L Dep. Tr.), 285:21–286:24. The significance of this omission came to light on August 11, when Google finally produced the complete data showing voluminous suspensions and reactivations of the at-issue pirates under non-DMCA policies (which Plaintiffs learned only at Mr. Weibel's June 17 deposition that Google had withheld). *See* Dkt. 1177 at 4; Decl. ¶ 18. Google's search also would not have included communications Google sent via its Merchant Center interface.

Indeed, Google's 30(b)(6) witness, Ms. B, testified that "[redacted] *Id.* 303:9–12. [redacted]" *Id.* 226:25–228:5. Another dual capacity witness, Mr. Weibel, testified that Google's Shopping ads sometimes reflect [redacted], undermining Google's "neutral, passive platform" argument. *See* Decl. ¶ 12; Ex. 5, 227:25–230:14. And when asked if Google notifies the merchant

about these actions, Mr. Weibel explained that "[redacted]." Ex. 5, 229:20–230:4. Google not only failed to produce Merchant Center communications with the very pirates that Plaintiffs repeatedly identified to Google – it failed even to disclose the Merchant Center as a source of communications during written discovery.[2] Decl. ¶ 16.

This is precisely why discovery should not be a game where the requesting party has to guess what the producing party might not be telling them. *See Winfield v. City of New York*, No. 15-cv-05236-LTS-KHP, 2017 WL 5664852, at *9 (S.D.N.Y. Nov. 27, 2017) ("[P]arties cannot be permitted to jeopardize the integrity of the discovery process by engaging in halfhearted and ineffective efforts to identify and produce relevant documents.") (internal citations and quotation marks omitted); *Star Direct Telecom, Inc. v. Glob. Crossing Bandwidth, Inc.*, 272 F.R.D. 350, 359 (W.D.N.Y. 2011) ("If the Federal Rules of Civil Procedure are to be effective and meaningful, parties should not be permitted to conceal potential sources of responsive information in the hope that the opposing party does not discover their deliberate omission until the discovery deadline has expired."). So that Google is not rewarded for its tactic of deliberate omissions, Google should be ordered to 1) search the [redacted] associated with Merchant Center accounts related to the 1,500 domains at issue, 2) search for communications between Google and the at-issue pirates sent via the Merchant Center interface, and produce all documents responsive to RFPs 29 and 115 from the searches.

## III. Google must produce communications between Google's representatives and the at-issue merchants.

Additionally, Plaintiffs request that the Court reconsider and grant their Letter Motion for Discovery Conference re Communications between the Pirates and Google Sales Representatives (Dkts. 625, 632, 683, 751). The Court's ruling denying this motion was based on factual representations by Google's counsel. Dkt. 751. However, recent deposition testimony flatly contradicts Google's representations to the Court about how these communications could be identified. *See Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 217 F. Supp. 2d 423, 428–29 (S.D.N.Y. 2002) (court has inherent authority and discretion to reconsider its prior rulings, including based on new evidence) (citing FED. R. CIV. P. 54(b)) (additional citations and unrelated subsequent history omitted). Accordingly, Google should be ordered to 1) produce a list of any of the 1,500 pirates that had a Google representative, and 2) to the extent not captured in the communications described in Section II *supra*, Google should produce all communications between the relevant pirates and their Google representatives.

Google's representatives (often called "account managers" or "sales representatives") play a critical role in Google's [redacted]. Indeed, as Mr. W testified on September 1, [redacted]." Ex. 4, 232:25–233:3. Google's practice of [redacted]

[2] In the parties' recent conferrals, Google has resorted to splitting hairs, claiming that Merchant Center communications are "automatic notifications," which are not "communications." *Id.* ¶ 14. That is absurd—Google's messages to merchants are clearly "communications."

[redacted], undercuts Google's narrative that it merely operates a "neutral, passive platform." Importantly, Google relies on this false narrative to argue that it should prevail under *Cox Communications v. Sony Music Ent. See, e.g.*, Dkt. 954 at 2.

Yet Google previously argued that it could not even readily identify *if* the pirates had Google representatives. Indeed, when Plaintiffs brought this issue to the Court in March 2026, the Court asked Google's counsel why Google's opposition letter "explain[ed] all these reasons why, in your view, it's not likely that the alleged pirates had sales reps assigned rather than simply going and checking and telling me whether, and if so, how many of these pirates had sales reps assigned?" Google's counsel responded that they had "been trying to investigate how many of the merchants at issue in this case had sales representatives, and we still don't have a clear picture." Mar. 10, 2026 Hr'g Tr. at 26:1–13. Further, despite not knowing basic information, Google represented that it would be "highly unlikely" that the pirates would even have sales representatives. *Id.* at 28:3–10 (MS. SAMPOLI: "[Un]fortunately, I don't have a definitive number of how many of these merchant accounts are connected to Ads accounts that are connected at some point during the five-year period to an account representative, but our understanding remains that it is highly unlikely that . . . more than a handful would have had any sort of representation.").

However, as Ms. Kelly's August 20, deposition testimony makes clear, these representatives easily can be identified in a *single* tab in the [redacted] tool, from which Google has already produced data. Ex. 2, 346:20–26. According to Ms. Kelly, [redacted] *Id.* 352:21–25; 353:1–3. And she or a colleague would learn that "[redacted]" through the merchant's [redacted] *Id.* This testimony directly contradicts what Google represented at the March 10th hearing.

In addition to [redacted], a Google witness recently revealed that another tool, [redacted], conveniently shows all of a merchant's [redacted]. Ex. 4, 21:8–12. To the extent Google cannot retrieve information on these sales representatives from [redacted], Plaintiffs request that Google search the [redacted] tool.

The Court should order Google to identify the Google representatives assigned to any pirates and produce the communications between them. If what Google surmised at the hearing is correct, and only a handful of pirates had representatives, this will not be a burdensome endeavor.

## IV. Conclusion

Plaintiffs respectfully submit that the Court should grant this motion and order Google to produce the communications at issue.

/s/ *Michele H. Murphy*
Michele H. Murphy

*Counsel for Plaintiffs*