Oppenheim + Zebrak, LLP
WASHINGTON – NEW YORK

Jeff Kane
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.499.2940
jkane@oandzlaw.com

September 10, 2026

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

**Re: *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM**
**Plaintiffs' Reply ISO Plaintiffs' Letter Motion (Dkt. 1177) to Compel Targeted Additional Discovery and Extend Plaintiffs' Discovery Cutoff**

**[Redacted]**

Dear Judge Moses,

Plaintiffs write in support of their Letter Motion (Dkt. 1177) for targeted discovery, and in response to Google's opposition (Dkt. 1192). Google must produce discovery regarding the just-disclosed fact that [redacted].[1] For three or more years, [redacted]. Google's contention that this was due to a [redacted] necessitates discovery beyond the 30(b)(6) witness the Court already ordered. This motion seeks the relevant *underlying* information. Not requiring Google to produce documents on this potentially dispositive issue would be unjust.

## I. Plaintiffs' requests are timely.

Google argues that Plaintiffs should have read the tea leaves and gleaned from misleading deposition testimony what only Mr. R later revealed: that [redacted]. But prior witnesses' testimony and Google's conduct misled Plaintiffs.

Plaintiffs asked prior deponents questions that should have revealed these facts. Those questions were met with either instructions not to answer or materially misleading testimony. Ms. Kelly testified that based on her review, "[redacted]." Declaration of Attorney Jeff Kane ("Decl.") Ex. 2 (AK Tr.) 73:3–9; *id.* 61:14–66:21 (same). When Plaintiffs asked Ms. Kelly [redacted], Google's counsel instructed her not to answer. *Id.* 89:19–91:15; 170:16–171:12; 92:22–93:15. Similarly, Ms. B testified that [redacted]. Ex. 4 (SB Tr.) 242:22–243:12. When she later testified that "[redacted]

[1] An updated proposed discovery schedule is attached as Exhibit 1.

[redacted],” Plaintiffs naturally didn’t interpret this to mean that Google [redacted] pirates for copyright infringement.

Ms. B testified that there was [redacted] Dkt. 1094-1 (SB Tr.) at 293:24–25. No one would call a multi-year [redacted] And when Plaintiffs asked Ms. Kelly whether there was a [redacted], she was instructed not to answer. Ex. 2 (AK Tr.) 109:21–110:5.

And, Google’s conduct must be viewed against the backdrop that Google knew it [redacted]

When Mr. R finally testified that [redacted], Plaintiffs immediately raised the issue. Dkt. 1169. The discovery Plaintiffs seek is targeted to address that testimony and the unanswered questions it raises. Google continues to insist that [redacted] Precluding Plaintiffs from having the same factual information as Google has would be fundamentally unfair and severely prejudice Plaintiffs. *See Star Direct Telecom, Inc. v. Glob. Crossing Bandwidth, Inc.*, 272 F.R.D. 350, 359 (W.D.N.Y. 2011).

## II. Plaintiffs should be permitted to take additional targeted depositions.

The Court should require Google to produce one of its vendor personnel for deposition. Plaintiffs suggest Dheeraj Yadav. While Google claims to be unable to produce vendor agents for deposition, Ex. 6 (Sep. 1, 2026 Hr’g Tr.) 129:24, Mr. Yadav provided Google with a declaration concerning the 2024 investigation. Dkt. 921. The Court relied on that declaration in upholding Google’s privilege claim. Dkt. 998 at 5:8–6:8 (June 8, 2026 Hr’g Tr.). Given the circumstances, Mr. Yadav can be expected to have relevant knowledge. If Google can have Mr. Yadav provide a declaration, Google can produce him for deposition.

Second, Plaintiffs argued in their opening brief that the Court should order short depositions of several Google employees. Dkt. 1177 at 2–3. At the September 1 hearing, the Court’s solution was to order Google to produce a 30(b)(6) witness to address these issues. Ex. 6 at 155:5–9. Plaintiffs are skeptical that second-hand, potentially hearsay testimony from a 30(b)(6) witness will disclose all the relevant facts, particularly given Google’s history of designating irrelevant and uninformed 30(b)(6) witnesses. If the 30(b)(6) deposition does not adequately address these issues, Plaintiffs request that additional witnesses provide testimony. Given the Court’s intervening ruling, however, Plaintiffs submit that this question can be held in abeyance.

## III. Google must produce relevant documents.

Google contends that it in fact did [redacted]. Dkt. 1192 at 2–3; Ex. 3 (WR Tr.) 368:19–369:6. Instead, Google says there was a [redacted]. Dkt. 1094-1 (SB Tr.) at 293:23–294:4. To test that contention, Plaintiffs are entitled to documents, communications, and any audits or reviews concerning the implementation of Google’s DMCA policy. Dkt. 1177 at 2. Google is the most knowledgeable party about how to locate these materials. But Google’s production should include three categories of documents.

First, Google should produce any additional notes from meetings between Google and the vendors going back to 2018 (Mr. R was unable to say when vendors stopped implementing the policy, or whether their impression had ever been corrected, Ex. 3 (WR Tr.) 361:4–7, 370:23–371:9, 378:14–380:22).

Second, Google should produce any additional pre-existing documents it located during its investigation that bear on Google's implementation of its DMCA policy or its [redacted]. Plaintiffs are not seeking any work-product, just documents that Google gathered that have not been produced.

Third, Google should use appropriate search terms and custodians to capture any guidance from Google to its vendors, and [redacted] Google conveniently claims that "[a]ny non-privileged documents and communications have already been produced," because Google "ran the parties' agreed-upon search terms." Dkt. 1192 at 3. Those search terms, however, were negotiated more than a year before depositions even began, long before Mr. R testified. Google should design a search that will capture these documents. But at a minimum, Google should use the term:

> (Suspen* OR terminat* OR remov* OR disabl* OR guidance OR strike*) AND ("Shopping" OR PLA OR "Product Listing Ad*" OR Ads OR merchant* OR advertis* OR account OR domain)

Google should apply that term to the existing custodians who communicated with the vendors,[2] the vendor custodians,[3] Dheeraj Yadav (the above-referenced vendor agent), and [redacted], who appears to have been responsible for initiating suspensions. Decl. ¶ 2. Google should use a date range of January 1, 2018 through March 31, 2025. In addition, Google's upcoming 30(b)(6) witness should be prepared to address whether there are documents addressing these issues.

**IV. Google must produce the notes and comments that its personnel recorded when reviewing the pirates at issue.**

**A. This information is highly relevant.**

Google's Misrepresentation policy is a "'catch-all' policy" that prohibits [redacted] GOOG-CENG-00430692 at -0695; GOOG-CENG-00628134.R at -8134.R. Google's Misrepresentation is a critical fact issue for several reasons.

First, Google claims that although its ebook ban did not apply to free listings, Dkt. 1066-2 (GOOG-CENG-00426568) at -6568, [redacted] Dkt. 1066-4 at 220:1–21 (AL Tr.). The Misrepresentation policy is thus a key part of Google's enforcement of the ebook ban.

---

[2] AB, April Kelly, BB, JE, MK, SP, WR.

[3] AM, BN, MJ, PS, VVLKP.

Second, Google claims to have suspended (or re-suspended) accounts associated with the relevant pirates for violating the Misrepresentation policy more than [redacted] times. Decl. ¶ 5. Of the [redacted] merchant accounts that Google says are associated with the 1,500 pirate domains, [redacted] were suspended at least once under the Misrepresentation policy (many of them after Plaintiffs filed this lawsuit). *Id.* ¶ 6. And, Google claims to have *reactivated* [redacted] of the accounts it suspended for Misrepresentation. Decl. ¶ 7. That Google suspended *and reactivated* these merchants is clear evidence of intent; Google advertised infringing products on behalf of merchants Google knew were fraudsters.

Plaintiffs thus have requested the notes and comments that human reviewers manually recorded when they reviewed the at-issue pirates for violations of Google's Misrepresentation policy. Dkt. 1177 at 3–4. Google tries to downplay the importance of these notes and comments by saying it produced some of the data that Google personnel consulted when conducting their review. Dkt. 1192 at 4–5. But Google's documents make clear that it is the reviewer's [redacted] that determines whether a pirate will be suspended. "[redacted]," GOOG-CENG-00604643, at -4649; *Id*. at -4657 ("[redacted]"). Indeed, reviewers have the power to [redacted] "[redacted]" GOOG-CENG-00601063, at -1066.

Moreover, the data that Google has already produced does not explain anything about a reviewer's decision to *re*-approve a suspended account; a reviewer's evaluation of a merchant's appeal is [redacted]. GOOG-CENG-00600753. A reviewer is required to "[redacted]" when deciding whether to re-approve a suspended account. *Id.* at 0755. Google must produce these notes and comments.

**B. The Court should not reward Google's obstruction and delay.**

Plaintiffs learned only in deposition that so many of Google's claimed suspensions were pursuant to the [redacted] In October 2025, Google refused to answer or clarify which of the policy labels in its suspension data corresponded to Google's DMCA policy. 26.10.02 O+Z Email; 26.10.24 Latham Email. It was not until a June 17, 2026 deposition that Google revealed that the two most frequent policy labels in Google's suspension data denote a violation of Google's *Misrepresentation* policy. Ex. 5 (Christophe Weibel Tr.) 152:19–154:22. Moreover, Google did not produce *complete* suspension data until August 11, 2026. Mr. Weibel admitted in deposition that [redacted] *Id.*, 154:24–159:12. When Google finally produced additional suspension data, the data reflected an additional [redacted] suspensions under Google's Misrepresentation policy. Decl. ¶ 9.

Similarly, Mr. L testified on May 21, 2026 that [redacted] Dkt. 1066-4 at 220:1–21. The next day, Plaintiffs requested from Google the records of any of the 1,500 pirates who were subjected to the Misrepresentation review, including the notes and comments at issue in this Motion. 26.05.22 O+Z Email. The parties negotiated Google's production of this data in the succeeding

months, and reached agreement on most of it.[4] But Google represented that producing the notes and comments "would require Google to manually screenshot the review panel" for each merchant that underwent this review. 26.06.08 Latham Email; 26.06.17 Latham Email. Plaintiffs learned in a meet-and-confer *on August 28, 2026* that Google in fact does *not* need to "manually screenshot" the review panel, but can retrieve these documents *en masse*. Decl. ¶ 10. When Google refused to do so, Plaintiffs brought this motion. Google's misrepresentations throughout the parties' negotiations on its alleged "burden" must not be rewarded.

/s/ *Jeff Kane*
Jeff Kane

*Counsel for Plaintiffs*

[4] As of June 8, Google had agreed to produce (1) additional [redacted] for the merchants at issue, (2) data showing whether a pirate was designated as "[redacted]" or "[redacted]" when the manual Misrepresentation review was completed, (3) data showing the "suggested actions" from the [redacted]. 2026.06.08 Latham Email. Regardless of this motion, Google should be required to promptly produce this data.