**Sarah A. Tomkowiak**
Direct Dial: +1.202.637.2335
sarah.tomkowiak@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200 Fax: +1.202.637.2201
www.lw.com

LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES
Austin, Beijing, Boston, Brussels, Chicago, Dubai, Düsseldorf, Frankfurt, Hamburg, Hong Kong, Houston, London, Los Angeles, Madrid, Milan, Munich, New York, Orange County, Paris, Riyadh, San Diego, San Francisco, Seoul, Silicon Valley, Singapore, Tel Aviv, Tokyo, Washington, D.C.

September 11, 2026

**VIA ECF**

The Honorable Barbara C. Moses
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, New York 10007

Re: *Cengage Learning, Inc. et al. v. Google LLC*, No. 1:24-cv-04274-JLR-BCM: Google's Response to Plaintiffs' Letter Motion to Compel Production of Additional Documents Regarding the At-Issue Merchant Center Accounts (Dkt. 1202)

Dear Judge Moses:

Google writes in opposition to Plaintiffs' Letter Motion (Dkt. 1202 or the "Motion") to compel additional "communications" with the roughly 22,000 Merchant Center accounts tied to the 1,500 at-issue domains. Google and Plaintiffs came to an agreement on the scope of RFP 29 in November 2024. Nearly two years later and after the close of fact discovery, Plaintiffs ask the Court—for a second time—to renegotiate discovery the Parties "already put … to bed, [and] closed the door on." Hr'g Tr., Dkt. 763, at 5:10-11 (Mar. 10, 2026). No meaningful, new information has emerged since the Court denied Plaintiffs' first motion to reopen the scope of RFP 29[1] (Dkt. 751, "Order"). Plaintiffs' speculation that these communications—to the extent they even exist—will reveal that sales representatives knowingly assisted pirate merchants to sell infringing products is highly implausible and grounded in nothing but wishful thinking. Google produced over a *terabyte* of data and thousands of custodial documents during fact discovery (which is over) and Plaintiffs have no evidence to carry their high contributory infringement burden established by *Cox*. Instead, they resort to deposition snippets about technical abilities to locate discrete information to try to justify a sweeping fishing expedition. This Hail Mary with no time left on the clock is desperate. The Court should again deny Plaintiffs' requested relief.

## I. Plaintiffs Point To No New Evidence To Justify Their Latest Request For (Potential) Communications between "Pirates" and Sales Representatives

Earlier this year, Plaintiffs moved to compel, and were denied, the exact discovery they seek here. They justify their request for reconsideration by arguing that the Court's ruling denying

[1] As previously explained, RFP 115 is duplicative of RFP 29. Dkt. 632 at 3 & n.4.

LATHAM&WATKINS LLP

Plaintiffs' motion to compel communications with sales representatives "was based on factual representations by Google's counsel" that have since been "contradict[ed]" by witness testimony. Dkt. 1202 at 3. Plaintiffs are wrong.

First, this Court's Order was not based on Google's counsel's representations—it was based on Plaintiffs' failure to make the required showing that they were missing relevant communications and locating them would be proportional to the needs of the case. "It is the burden of the party seeking the documents to demonstrate that the documents are relevant and within the bounds of discovery permitted by Rule 26(b)." *Averbach v. Cairo Amman Bank*, 2022 WL 17730096, at *2 (S.D.N.Y. Dec. 16, 2022). At the March 10 hearing, the Court explained that Plaintiffs had "not adequately made the case that there are relevant and discoverable documents to be found as a result of the additional searches that Plaintiffs are recommending." Hr'g Tr. at 41:7-11. That has not changed.

Second, the testimony Plaintiffs identify to justify their reconsideration request is entirely consistent with Google's counsel's representations at the March 10 hearing. At the hearing, Google's counsel described the difficulty in identifying sales representatives *at scale*, explaining that "if we had been talking here about one, two or three Merchant Center accounts, we think it would have been relatively easy to go in and find out if there was a sales representative assigned to individual accounts." Hr'g Tr. at 26:8-13. Ms. K's deposition testimony confirmed that representation. Ms. K described the process for manually reviewing information about *individual* accounts in [redacted] explaining that there is a [redacted] Dkt. 1204-2 at 352:23-353:1. That [redacted]. Declaration of Sarah Tomkowiak ("Decl.") ¶ 6(c). Google never represented that it is not possible to manually identify a sales representatives for an Ads account. But that is not what Plaintiffs have demanded. Plaintiffs want Google to identify potential sales representatives connected (via over 10,000 Ads accounts) to over 20,000 Merchant Center accounts, which, as Google's counsel explained, would require performing manual data pulls. Hr'g Tr. at 27:2-7. That data cannot be pulled from [redacted] (the application described by Ms. K), because it is not a database that stores information. Decl. ¶ 6(d); Exhibit 1 at 48:20-22 ("[redacted] does not store anything. [redacted] displays things that are stored elsewhere.").

Regardless of where the data is stored, identifying sales representatives and locating any hypothetical responsive communications related to the at-issue Merchant accounts would be exceedingly burdensome. *See* Dkt. 632 at 4. First, Google would need to manually and individually pull data identifying not just currently assigned sales representatives for each account, but *historically* assigned representatives as well. And even if Google could do that, because sales representatives are assigned to Ads accounts, not Merchant center accounts, Decl. ¶ 6(a), Google would then need to determine whether any Ads accounts with sales representatives were connected

LATHAM&WATKINS LLP

to one of the at-issue Merchant Center accounts at the same time they were assigned a sales representative.[2]

Assuming Google could clear these initial steps, it would then have to identify and collect emails, which are not stored in either [redacted] or [redacted] for any (unknown number of) representatives identified (who could be linked to an unknown number of accounts, including ones unrelated to the merchants at issue), negotiate and run search terms, review "hits" for responsiveness and privilege, and produce (or log) responsive emails—*if any exist*, which remains speculative despite access to a voluminous discovery record. And this could take months.

As this Court has acknowledged, "[t]he later in the discovery schedule that someone comes up with a new set of search terms or a new set of custodians," the more the "proportionality analysis" weighs against the movant. Hr'g Tr., Dkt. 223, at 15:8-14 (Oct. 14, 2025). Even in March, the Court concluded this exact discovery was "not … worth it at this point," Hr'g Tr. at 41:25-42:1 (Mar. 10, 2026), and expressed concern "about the lateness of the day" particularly given the "layers of 'what if' in [Plaintiffs'] presentation." *Id.* at 25:7-11. If this discovery was not "worth it" and belatedly requested in March, it certainly is not worth it six months later after fact discovery is closed.

## II. Plaintiffs' Demand for Additional [redacted] Communications is Untimely

Plaintiffs' inexcusable delay in raising this separate dispute counsels against ordering additional discovery. The Parties reached agreement on the scope of RFP 29 nearly two years ago. Indeed, in November 2024, Plaintiffs' counsel confirmed their understanding that Google would produce communications from its [redacted] database "associated with [redacted] *associated with notices concerning the Infringing Merchants*."[3] Decl. ¶ 3. For Plaintiffs to now claim, after the close of fact discovery, that they did not know or agree that Google's search of the [redacted] database would be limited to notices associated with the at-issue merchants is, at best, disingenuous. And Plaintiffs' suggestion that they were not aware merchant accounts may have been suspended for other policy violations, including of Google's misrepresentation policy, until Google produced additional suspension data is equally perplexing. Plaintiffs have known all along that Google had other policies through which merchants were suspended. Indeed, Plaintiffs cited suspension under Google's misrepresentation policy in their complaint, Dkt. 38 ¶ 70-71, the merchant account data Google produced beginning in February 2025 reflected numerous

---

[2] Ads accounts and Merchant Center accounts are not permanently linked. These account types can be linked and unlinked at any time such that Ads accounts may not be connected to Merchant Center accounts for their entire life and vice versa. Decl. ¶ 6(b). Sales representative assignments are also [redacted] *Id.* ¶ 6(c). Even when assigned, [redacted].

[3] Plaintiffs' Motion incorrectly states that Google's production was limited to "communications about Plaintiffs' copyright infringement notices." Dkt. 1202 at 2. Google searched for and produced documents, including communications, related to *all* infringement notices, including those from rightsholders other than Plaintiffs.

suspensions for other policy violations, and Plaintiffs spent significant time during Mr. Weibel's deposition asking about these suspensions. Decl. ¶ 5.

Plaintiffs chose not to pursue discovery into communications concerning these other suspension types. Plaintiffs' failure to act diligently cannot justify imposing on Google the substantial burdens associated with searching for additional communications in [redacted] reviewing any communications located, and producing responsive communications—to the extent any even exist—after the close of fact discovery and all while proceeding with expert discovery in parallel. *See Capozzi v. Gale Grp., Inc.*, 2002 WL 1627626, at *2 (D. Conn. June 4, 2002) (denying motion to compel when "plaintiff had ten months and three discovery deadlines to file the motion to compel"); *Colon v. City of New York*, 2014 WL 4100607, at *3 (S.D.N.Y. Aug. 20, 2014) (denying motion to compel filed after document discovery deadline as untimely).

Indeed, Plaintiffs' motion does not make any "showing that the documents [they] seek[] exist." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2018 WL 11585535, at *3 (S.D.N.Y. Feb. 2, 2018) (Moses, M.J.). Plaintiffs only assume, without pointing to any evidence, that documents between Google and policy-circumventing merchants "about account suspensions and reactivations under non-DMCA policies" exist. Dkt. 1202 at 2; *see also Lam v. State St. Corp.*, 2025 WL 834885, at *2 (S.D.N.Y. Mar. 17, 2025) ("[M]ere speculation is insufficient to warrant an order to compel."). As the Court has instructed before, "the further along we get in the discovery calendar … the stronger threshold showing the plaintiff is required to make in order to expand the scope of discovery, which is already quite broad and quite deep in this case." Hr'g Tr. at 41:19-23 (Mar. 10, 2026). Plaintiffs have not made *any* showing (much less a strong one) that the additional [redacted] communications they demand exist. And the "hypothetical possibility" of finding new "relevant and discoverable documents … is not enough for a motion to compel." *Id.* at 41:7-16.

## III. Plaintiffs Fail to Justify Their Need for Merchant Center Notifications

Finally, Plaintiffs' claim that Google "hid the ball" with respect to Merchant Center notifications rings hollow. Merchant Center does not contain "communications with" merchants that Google can simply pull from a central location; notifications in Merchant Center are [redacted]. Decl. ¶ 7(b). Plaintiffs cannot claim they were unaware of this platform or these notifications. Plaintiffs are, *themselves*, Google merchants and would have reviewed notifications in Merchant Center in the ordinary course. *See* Hr'g Tr. at 61:23-62:8 (Oct. 14, 2025) (denying Plaintiffs' request to add sales representatives Plaintiffs should have known about before lawsuit). Indeed, that Plaintiffs did not raise Merchant Center notifications at the start of discovery indicates their low importance.

Moreover, it is unclear what incremental information these notifications will provide. Discovery must be limited if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiffs already have voluminous data and information related to the at-issue merchants' Shopping offers as well as full suspension and reactivation history. Notifications from Merchant Center would be needlessly duplicative. And even if not completely duplicative, this

LATHAM & WATKINS LLP

discovery is disproportionate to the needs of the case. Because the notifications are not true "communications," they are not [redacted] Decl. ¶ 7(b). To identify what past notifications looked like, Google would need to [redacted]. *Id.* ¶ 7(c)-(d). The [redacted] frequently changes; to [redacted] for every notification for the at-issue merchants would be a nearly impossible task. *Id.* ¶ 7(d)-(e). This immense burden cannot be justified, particularly after fact discovery has closed.

* * *

For these reasons, the Court should deny Plaintiffs' Motion.

Respectfully submitted,

*/s/ Sarah A. Tomkowiak*
Sarah A. Tomkowiak (*pro hac vice*)
of LATHAM & WATKINS LLP

cc: All Counsel of Record (via ECF and email)