Oppenheim + Zebrak, LLP
WASHINGTON – NEW YORK

Michele H. Murphy
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.450.5643
michele@oandzlaw.com

September 15, 2026

**VIA ECF**

The Honorable Barbara Moses
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 740
New York, NY 10007

**Re: *Cengage Learning, Inc. et al. v. Google LLC*, No. 24:cv-04274-JLR-BCM**
**Plaintiffs' Reply ISO Plaintiffs' Letter Motion (Dkt. 1202) to Compel Production of Google's Communications with At-Issue Pirates**

[Redacted]

Dear Judge Moses,

Plaintiffs write in support of their Letter Motion ("Motion," Dkt. 1202) for Google's communications with the at-issue pirates, and in response to Google's opposition ("Opposition," Dkt. 1222). Google does not dispute that Google's communications with the pirates are highly relevant. Instead, Google resorts to blaming Plaintiffs for bringing their Motion "late" when Google's own conduct caused the delay. To cover this up, Google argues that it should not be required to produce clearly relevant documents because i) Plaintiffs should have caught Google sooner, ii) producing these documents would be burdensome, or iii) the documents would be duplicative. None of these arguments passes scrutiny.

## I. Google must produce communications between the pirates and Google sales representatives.

Google does not dispute the relevance of the communications between the pirates and Google sales representatives. Instead, Google complains about the timing of Plaintiffs' motion, and downplays the new evidence that has emerged. Opp. 1–3. Both arguments fail. Plaintiffs brought the Motion promptly after learning new facts: that sales representative information can be viewed easily in [redacted] and [redacted]. This shows that Google never, and still has not, carried its burden to show burden.

Plaintiffs learned of the [redacted] "connected tab" at the August 20 Kelly deposition, and about the [redacted] tool at the September 1 J.W. deposition. Mot. 4. Plaintiffs promptly brought their motion on September 8.

It is Google's conduct that has caused these issues to surface late in discovery. First, Google did not disclose the existence of the [redacted] "connected tab" and the [redacted] tool during the March hearing on Plaintiffs' Dkt. 625 motion. The Court's proportionality analysis necessarily relied on Google's counsel's representations about burden. 03/10/2026 Hr'g Tr. 41:24–42:2. The Court specifically asked Google about the identification of the pirates' sales representatives, and Google argued the representatives could not be identified without substantial burden. *Id.* 25:23–

28:10. But Google chose to not disclose that the sales representative information was accessible through a tab in [redacted], or that [redacted] displayed all of a merchant's [redacted]. *Compare id. with* Mot. 3–4. Had Google done so, the Court could have questioned Google on how information viewable in those surfaces could be pulled, and could have assessed any related claims of burden.

Second, Plaintiffs noticed the deposition of Ms. Kelly on *October 24, 2025*. Declaration of Michele H. Murphy ("Decl.") ¶ 2. Google then scheduled Ms. Kelly's deposition for May 5, 2026 but abruptly cancelled it on April 24. *Id.* ¶ 3. Google eventually rescheduled Ms. Kelly's deposition for August 20, the *then-deadline* of fact discovery. Plaintiffs asked Google whether it could make Ms. Kelly available on an earlier date as she was an important fact witness, and Google refused. *Id.*

Google has also failed to carry its "burden to establish burden." *See* 10/08/2025 Hr'g Tr. 67:11–12. Google's latest excuse that it "would need to manually and individually pull data" is pure attorney argument unsupported by the underlying declaration. *Compare* Opp. 2 *with* Dkt. 1222-1¶ 6; *see also* 03/10/2026 Hr'g Tr. 27:2–7. The declaration does not even identify what the "[redacted]" storing the accounts manager information is, or how the data stored in the "[redacted]" can be pulled.[1] *See* Dkt. 1222-1¶ 6.

It is also irrelevant that sales representatives are formally linked to a seller's Ads account, rather than her Merchant Center account. Dkt. 1222-1 ¶ 6(a). These sales representatives nonetheless assist the seller with *Shopping* ads. Mot. 3–4; Dkt. 1204-4, 232:25–233:3. Google knows all the at-issue domains used by the pirates, and should be able to identify all relevant Ads accounts during the relevant period, and identify their assigned sales representatives.

Google speculates that [redacted], and the Ads accounts associated with the pirates' Merchant Center accounts *may have* also changed over time. Opp. 3 n.2. But *Google* is the only party able to determine whether this happened, and Google offers nothing that substantiates its conjecture. At the very least, Google could have found out how many sales representatives are *currently* connected to these accounts through the [redacted] "connected tab" or [redacted], but chose not to.

Finally, Google fails to explain how the fact that communications between the pirates and Google are not "stored" in [redacted] or [redacted] would make pulling information displayed in these tools burdensome. In fact, Google's counsel's declaration says nothing about [redacted] at all. Dkt. 1222-1¶ 6.

In short, Google provides *no* specifics to justify its vague claim of burden. As the Court has previously found, that is insufficient. *See, e.g.*, 10/14/2025 Hr'g Tr. 116:14–19. Because these communications are highly relevant, and Google fails to make any concrete showing of burden in light of newly-uncovered information, Plaintiffs' request should be granted.

---

[1] Google's generalized claim that producing [redacted] data is burdensome should carry little, if any, weight. *See* Mot. 4; Dkt. 1211 ¶ 10.

**II. Google must search for all relevant communications with the pirates in its [redacted] tool.**

Google's [redacted] database apparently contains Google's communications with the pirates at issue concerning suspensions or other enforcement actions for policies *other than* Google's DMCA policy. Dkt. 1173 at 3–4. Google does not contest that such communications are relevant. Indeed, Google acknowledges that during the claim period, [redacted]. Dkt. 1211-3, 364:12–365:3. Yet Google refuses to produce these communications.

Contrary to Google's suggestions, Opp. 3, Plaintiffs never agreed that Google could restrict its production to communications concerning DMCA notices. Plaintiffs had proposed "an approach for creating a custodian/search-term list" to capture *all of* Google's communications with pirates. Decl. ¶ 5. Google rejected this approach, representing that "any communications between Google and the Infringing Merchants (RFP 29) . . . should be contained within Google systems/databases, and so a custodian/search term approach is not necessary." *Id.* Google then identified what its counsel, Holly Victorson, called a "[redacted]," as likely to house some of this information. Decl. ¶ 6. Google did not disclose what Plaintiffs have now learned: that the database includes communications concerning violations of policies *other than* the DMCA policy, but Google was not searching for or producing those communications. Decl. ¶¶ 4–6. That communication was part of the parties' ongoing negotiations to identify and produce "*any communications* between Google and the Infringing Merchants (RFP 29)," Decl. ¶ 5 (emphasis added), not an agreement that Google would search only for communications concerning DMCA notices. Google's counsel only told Plaintiffs that the "[redacted]" was actually called "[redacted]" in February 2026 and would not identify any other source of merchant communications when pressed. Decl. ¶ 7; Dkt. 1204 ¶ 11. Plaintiffs only learned that [redacted] can be searched by "[redacted]," not just by [redacted], at Ms. B's deposition, Dkt. 1204-1, 311:16–312:2, and promptly followed up with Google. Dkt. 1204 ¶ 12.

Moreover, the importance of Google's suspensions for non-DMCA violations did not become apparent until a June 17, 2026 deposition and an August 11, 2026 production. Nearly a year ago, Plaintiffs asked Google to explain which label in its suspension data corresponded to which policy; Google refused. Decl. ¶ 8. Making matters worse, Google then claimed its Misrepresentation policy was "wholly irrelevant to Plaintiffs' allegations." Decl. ¶ 10. It was not until a June 17, 2026 deposition that Google revealed that [redacted]. Dkt. 1211-5, 152:19–154:22. Neither of the policy identifiers in Google's data ("[redacted]" and "[redacted]") are remotely clear on their face. Decl. ¶ 9. Moreover, Google did not produce complete suspension data until August 11, 2026. Dkt. 1204 ¶ 18. That data reflected an additional [redacted] suspensions under Google's Misrepresentation policy. Dkt. 1211 ¶ 9.[2]

---

[2] Google cites the Amended Complaint to argue that "Plaintiffs have known all along that Google had other policies through which" the pirates were suspended. Opp. 3. Not so. Plaintiffs cited the "Misrepresentation" section of Google's public "Help Center" to show that Google has the "legal right" to "terminate" pirate merchants "from Google's platforms." Dkt. 38 ¶¶ 70–71. It does not follow that Plaintiffs even knew what Google's Misrepresentation policy was at that time,

Google's eleventh-hour testimony that [redacted], Dkt. 1169 at 2; Dkt. 1210 at 1–2, underscores the importance of these communications. Plaintiffs now know that Google cannot rely on its copyright policy to justify its conduct toward the pirates. If Google will not rely on its Misrepresentation policy or the ebook "ban" for its defense, Google should say so. Otherwise, to deny Plaintiffs the complete record of Google-pirate communications would be unjust.

Google's testimony makes clear that Google communicates with merchants regarding suspensions and reactivations. Ex. 1, 174:22–175:18. Google must produce them.

**III. Google must produce communications sent to the pirates via the Merchant Center interface.**

Google does not dispute that notifications it sent to the pirates through the Merchant Center user-interface are highly relevant. "Notifications" Google sent to merchants are obviously communications. *Contra* Mot. at 3 n.2; Decl. ¶ 11. Instead, Google claims that producing these communications would be "burdensome" and "duplicative." Opp. 4–5. Neither claim is convincing.

Mr. Weibel testified that Google's Shopping ads sometimes reflect [redacted] of a product, and related messages are shown "in the Merchant Center." Dkt. 1204-5, 227:25–230:14. Google does not substantiate its claim that "[n]otifications from Merchant Center would be needlessly duplicative." Opp. 4. If the offer data Google produced reflects such edits, Google should have explained this during the 2.5 months during which Plaintiffs attempted in good faith to resolve this dispute. Dkt. 1204 ¶¶ 12–15. If it does not, but the information can be provided outside of notifications, that is a path forward. For instance, Ms. B referred to [redacted] kept as [redacted] of Merchant Center notifications. Ex. 2, 308:8–16. Google does not address these issues.

Further, Google's counsel's new representations about burden do not pass muster. Before the Opposition, Google never took the position that pulling Merchant Center communications would be burdensome. Decl. ¶ 12. The factual representations Google is now making are through an attorney declaration that is entirely hearsay. And Google's counsel's characterization that the process would be "extremely complex and time-consuming" is conclusory and unconvincing. Dkt. 1222-1¶ 7(e). Google's counsel does not explain how many times "[t]he Merchant Center user interface has changed" during the relevant period. *Id.* ¶ 7(d). Nor does counsel's declaration explain why [redacted] would be burdensome. *Id.* This would not be the first time that Google's counsel made factual representations about burden that turned out not to be true. *See, e.g.*, Dkt. 1211 ¶ 10.

Google blames Plaintiffs for not uncovering Google's omissions before the depositions that exposed them. However, "it does not matter whether or not [Plaintiffs] had enough

---

let alone knew that Google [redacted]. Dkt. 1211¶¶ 4–8.

information to prompt them to hunt independently for the documents that [Google] failed to produce." *Au New Haven LLC v. YKK Corp.*, No. 1:15-cv-3411, 2023 WL 2612204, at *11 (S.D.N.Y. Mar. 23, 2023). Google was "responsible for the creation" of Merchant Center communications that are squarely "responsive to outstanding discovery requests." *Id.* Google "cannot take refuge from their failure to produce such documents by arguing that [Plaintiffs] should have caught [Google] sooner." *Id.*

## IV. Conclusion

Plaintiffs respectfully request that the Court grant Plaintiffs' Motion.

/s/ *Michele H. Murphy*
Michele H. Murphy

*Counsel for Plaintiffs*