O+Z Oppenheim + Zebrak, LLP
WASHINGTON – NEW YORK

Michele H. Murphy
4530 Wisconsin Ave, NW, Suite 5
Washington, DC 20016
Tel. 202.450.5643
michele@oandzlaw.com

October 19, 2026

**VIA ECF**

Honorable Jennifer L. Rochon
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

**Re**: ***Cengage Learning, Inc. et al. v. Google LLC*, No. 24-cv-04274-JLR-BCM**
**Response to Defendant's Notice of Supplemental Authority in Support of Google's Motion for Judgment on the Pleadings**

Judge Rochon:

We represent Plaintiffs in the above-referenced matter. We write in response to Defendant's Notice of Supplemental Authority in Support of Google's Motion for Judgment on the Pleadings, Dkt. No. 1241 ("Notice").[1] Google's Notice cites the Southern District of Ohio's recent, nonbinding decision in *Weekend Warrior Clothing, LLC v. Google, LLC*, No. 1:25-cv-668, 2026 WL 3071519 (S.D. Ohio Oct. 14, 2026) ("Order").[2] Google's claim that the *Weekend Warrior* court was "faced with allegations materially indistinguishable from those Plaintiffs have made here," and that the *Weekend Warrior* court "explicitly rejected the same inducement argument that Plaintiffs have made in this case," Notice at 1, blatantly mischaracterizes the *Weekend Warrior* litigation and its relevance to this case.

---

[1] Like with Google's prior notices of supplemental authority, Google continues to ignore the rule that it is generally "improper for a notice [of supplemental authority] to include legal argument accompanying the cited authority," thus necessitating this response. *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 517 F. Supp. 3d 32, 33 (D. Mass. 2021) (collecting cases).

[2] Google's Notice also cites a summary judgment decision in *Weekend Warrior Clothing, LLC v. Amazon.com Services, LLC*, No. 1:23-cv-752, 2026 WL 3072022 (S.D. Ohio Oct. 14, 2026), merely stating that it is an "analogous decision" that "once again underscores that Plaintiffs' allegations do not state a claim for contributory copyright infringement." Notice at 2. But that 61-page decision, which concerns a case involving different allegations, addressed contributory liability in only three paragraphs, the first of which stated, "[o]f note, in Weekend Warrior's summary judgment motion, it barely states the standard for contributory infringement, and it does not apply that standard here at all. . . That matters." *Weekend Warrior Clothing, LLC v. Amazon.com Services, LLC*, No. 1:23-cv-752, 2026 WL 3072022, at *19 (S.D. Ohio Oct. 14, 2026). That decision should not move the needle here.

***First***, the *Weekend Warrior* court dismissed a theory of liability that is different from what Plaintiffs allege here. The *Weekend Warrior* court considered whether Google promoted its *overall Shopping platform* as useful for advertising infringing content. Order at 20–21 (finding Weekend Warrior failed to allege "that Google [intended] for users to download or stream copyrighted content when it *designed the Shopping Ads service*.") (emphasis added). While promoting one's entire platform as useful for infringement is *one* way to commit inducement, a defendant naturally commits inducement by *advertising the infringing product itself*. Pls' Mem. of Law in Opp. to Def's Mot. for Partial J. on the Pleadings, Dkt. 929 ("Opp. to 12(c) Motion") at 12–16. While Plaintiffs have advanced that theory here; the *Weekend Warrior* court did not address it.

Similarly, the *Weekend Warrior* court appears to have construed that plaintiff's claim to be that the advertisements *themselves* constituted infringing *displays*. *See, e.g.*, Order at 6 (plaintiff "asserted claims for direct and contributory copyright infringement based on the display of the image of the infringing products").[3] Here, Plaintiffs allege that Google induced an infringing *transaction*: the purchase of an infringing copyrighted work by a user (who infringes a Plaintiff's right of reproduction when she downloads the pirated book), and the sale of an infringing work by a pirate (who violates a Plaintiff's rights of reproduction and distribution when she sells the work). *See, e.g.*, Am. Compl. ¶¶ 53, 122, 126 (Google's ads were "specifically designed to entice users to visit the Pirate Sites and buy the Infringing Works"). Advertising that leads to a purchase of an infringing product is "[t]he classic instance of inducement . . . ." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005).

***Second***, the allegations in *Weekend Warrior* of Google's active steps to encourage infringement are radically different than those here. In dismissing the plaintiff's contributory infringement claim, the *Weekend Warrior* court found that "Weekend Warrior has not alleged that Google somehow distinguishes between infringing and non-infringing products in Google's automatic process to populate the sponsored results. It does not argue that out of the products submitted to Google's Merchant Center, it somehow privileges the infringing ones." Order at 18. But Plaintiffs' allegations regarding Google's "ebook ads ban" allege just that. *See, e.g.*, Am.

---

[3] Plaintiffs do not allege direct copyright infringement, and the volitional conduct analysis does not apply to secondary liability. *See* Order at 13. While the *Weekend Warrior* court relied on Google's description of how its Shopping ads work (outside the complaint), Order at 13-14, Plaintiffs' Amended Complaint includes detailed allegations that contradict what the *Weekend Warrior* court relied on. *See, e.g.*, Am. Compl., Dkt. 38 ¶ 41 ("Google itself creates each Shopping Ad . . . ."); *id*. ¶ 42 ("Google targets the ad to users Google determines are most likely to buy the product, then arranges the ad, along with other competing ads, on the user's page. Google explains in its 'My Ad Center' that it ranks Paid Ads by 'advertiser bid and ad quality,'. . . 'ad quality' encompasses the relevance of the ad to the user's search and Google's evaluation of 'the website the ad points to.'").

Compl. ¶ 9 ("Google refuses to allow legitimate sellers like the Publishers to advertise standalone digital books on Google's Shopping platform, but allows such ads from pirate sellers. As a result, the textbook market is upside down, as the worlds' largest online advertising business advertises ebooks for pirates but rejects ebook ads for legitimate sellers."). Indeed, with respect to ebooks, Google ensured that the pool of merchants seeking to have Google advertise their products consisted only of pirates and not legitimate publishers. *See, e.g.*, *id.* ¶ 68.

***Third***, Google inaccurately claims (without citation to any of Plaintiffs' filings) that Plaintiffs argue "that Google 'promoted' infringement by continuing to display Shopping Ads for allegedly infringing products to users." Notice at 1. Whether that was true in *Weekend Warrior*, it is not true here: As Plaintiffs have explained at length, Google's knowing advertisement of infringing works, which included extensive intentional acts from Google, is what induced infringement. *See, e.g.*, Am. Compl. ¶¶ 40-45, 47, 53, 126 (alleging various specific acts Google took to induce users to purchase infringing copies of Plaintiffs' works); *id.* ¶¶ 9, 64-68, 110 (referencing Google's ebook ban, Plaintiffs' repeated notifications to Google that pirate sellers "are able to advertise standalone digital books on Google while legitimate publishers are not," Google's discussion of reversing the practice, and its continuation of such practice); Opp. to 12(c) Motion at 6-12, 16-18. Critically absent in *Weekend Warrior* were Plaintiffs' extensive allegations here of Google's active involvement in the creation and promotion of advertisements promoting infringing products. *See, e.g.*, Am. Compl. ¶¶ 40-42, 47, 64-68, 126.[4]

The *Weekend Warrior* court found that, based on the complaint before it, Weekend Warrior merely seeks to "hold Google accountable for allegedly possessing knowledge of infringement and failing to take adequate steps to stop it," and, crucially, did not allege that "Google 'promot[ed], market[ed], [or] inten[ded] to promote' infringement on its platform." Order at 18 (citing *Cox Commc'ns, Inc. v. Sony Music Entm't, et al.*, 146 S. Ct. 959, 968 (2026)). Plaintiffs squarely and plausibly allege just that. *See, e.g.*, Opp. to 12(c) Motion at 6-12, 16-18; Am. Compl. ¶¶ 40-42, 47, 64-68, 126.

Respectfully Submitted,

*/s/ Michele H. Murphy*____________
Michele H. Murphy
OPPENHEIM + ZEBRAK, LLP
Counsel for Plaintiffs

[4] Google's Notice omits that the *Weekend Warrior* court found the plaintiff "potentially could cure" the identified deficiencies and allowed it to seek leave to amend. Order at 21.